IN THE UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF ARKANSAS
TEXARKANA DIVISION

| | | |
|---|---|---|
| JOHN WARD, JR. | § | |
| | § | |
| | § | |
| v. | § | C.A. NO. 08-4022 |
| | § | JURY TRIAL DEMANDED |
| CISCO SYSTEMS, INC AND | § | |
| RICK FRENKEL | § | |

**CISCO SYSTEMS, INC.'S MEMORANDUM OF LAW IN SUPPORT
OF ITS MOTION TO DISMISS FOR IMPROPER VENUE, OR IN THE
ALTERNATIVE, MOTION TO TRANSFER VENUE**

TO THE HONORABLE COURT:

Defendant Cisco Systems, Inc. ("Cisco") files this Memorandum of Law in Support of its

Motion to Dismiss for improper venue, or in the Alternative, Motion to Transfer Venue (the

"Motion") pursuant to 28 U.S.C. § 1406, 28 U.S.C. § 1631, 28 U.S.C. § 1404(a) and Rule

12(b)(3) of the Federal Rules of Civil Procedure, and shows the Court the following:

## I. INTRODUCTION

This action is based on allegations by John Ward, Jr. ("Ward"), an attorney practicing

law in Gregg County, Texas,[1] that defendants Cisco and Rick Frenkel ("Frenkel") published

defamatory statements regarding Ward's filing of a lawsuit in the United States District Court for

the Eastern District of Texas. These allegations have no connection, nexus or relation to the

Western District of Arkansas. The Court should dismiss or transfer this case because:

- This is an improper district under 28 U.S.C. § 1391(a)(1) because Frenkel is not an Arkansas resident;

- This is an improper district under 28 U.S.C. § 1391(a)(2), which allows for venue in a district in which a substantial part of the events or omissions giving rise to the lawsuit

---

[1] Gregg County is located in the United States District Court for the Eastern District of Texas, Tyler Division. 28 U.S.C. § 124(c)(1).

5066360v.3

take place, because none of the events or omissions giving rise to this lawsuit took place in Arkansas;

- This is an improper venue under 28 U.S.C. § 1391(a)(3) because the Tyler Division is a proper venue under 28 U.S.C. § 1391(a)(2); and

- This is an improper venue under 28 U.S.C. § 1631 because it does not have personal jurisdiction over Frenkel.

The Court should transfer the case to the Tyler Division because:

- The case could have been brought in the Tyler Division;

- Transfer to the Tyler Division will allow for consolidation with a related and almost identical lawsuit pending there;

- Transfer to the Tyler Division will prevent an inconsistent result in the related lawsuit pending there; and

- The Tyler Division has jurisdiction over the parties.

Alternatively, if the Court finds that venue is proper in this district, the Court should transfer the case to the Tyler Division pursuant to 28 U.S.C. § 1404(a) because this case could have been brought in the Tyler Division, and transfer to the Tyler Division would promote convenience and is in the interest of justice because, among other things, it will promote judicial economy.

## II. FACTUAL BACKGROUND

This case is about a Gregg County, Texas, lawyer who alleges he was injured by California Defendants' defamatory statements made on a blog called Patent Troll Tracker. (Complaint at ¶¶1-3; 7-11). Ward is licensed to practice law in Texas and practices almost exclusively in the Eastern District of Texas. (*Id.* at ¶1, 7). In fact, this lawsuit was originally filed in state district court in Gregg County (the "Gregg County Case"). (A true and correct copy of Plaintiff's First Amended Petition is attached as Exhibit A to the Motion.) Ward non-suited the Gregg County case prior to Defendants' answer date. (A true and correct copy of the Notice

of Non-Suit is attached as Exhibit B to the Motion.)  This case was filed the same day as the non-suit in the Gregg County Case.

Defendant Cisco is a California corporation with its principal place of business in California.  (*Id.* at ¶2).  Frenkel is an individual residing in California and licensed to practice law in California.  (*Id.* at ¶¶3, 8).

Ward does not allege that any of the events or omissions giving rise to this lawsuit occurred in Arkansas.  Ward alleges that Frenkel published defamatory statements while working for Cisco in California.  (*Id.* at ¶¶9-11).  Ward further alleges that these defamatory statements "could result in disciplinary proceedings before the State Bar of Texas," could "[subject] Ward to suit in the Eastern District of Texas," and that Ward has suffered damages in the form of financial loss, shame, embarrassment, humiliation, mental pain and anguish, and damage to the reputation of his business practice in Texas.  (*Id. at* ¶¶9, 11, 21).  Ward does not contend that any of these events took place in Arkansas nor that his alleged damages occurred in Arkansas.  He also acknowledges that "litigants and attorneys accessed the [Patent Troll Tracker] seeking information relating to the Eastern District of Texas."  (*Id.* at ¶12).

### III.  THE COURT SHOULD DISMISS OR TRANSFER THE CASE FOR IMPROPER VENUE AND LACK OF PERSONAL JURISDICTION

**A.      Venue is not proper in this district.**

The Court should dismiss this case or, as discussed infra at III(C), transfer the case under Rule 12(b)(3) of the Federal Rules of Civil Procedure and 28 U.S.C. § 1406(a) because venue in this district is improper under 28 U.S.C. § 1391.  Section 1391 provides that when jurisdiction is founded on diversity of citizenship,[2] except as otherwise authorized by law, a civil action may only be brought in:

---

[2] Ward alleges that subject matter jurisdiction is proper under 28 U.S.C. § 1332.  (Complaint at ¶4).

(1) a judicial district where any defendant resides, if all defendants reside in the same State,

(2) a judicial district in which a substantial part of the events or omissions giving rise to the claim occurred, or a substantial part of property that is the subject of the action is situated, or

(3) a judicial district in which any defendant is subject to personal jurisdiction at the time the action is commenced, if there is no district in which the action may otherwise be brought.

The Western District of Arkansas is an improper venue under each of these provisions.

### (1) This is an improper district under 28 U.S.C. § 1391(a)(1) because Frenkel is not an Arkansas resident.

Venue is improper in this district under Section 1391(a)(1) because both defendants do not reside in Arkansas. *See Dashman v. Peter Letterese and Assoc. Inc.*, 999 F.Supp. 553, 555 (S.D.N.Y. 1998) (stating that "Section 1391(a)(1) cannot be read, however, to mean that as long as all defendants reside in the same state, venue is proper in a district in some other state where any corporate defendant happens to be subject to personal jurisdiction. The language of § 1391(a)(1) contemplates venue in a judicial district within the state in which all defendants reside"); *Swanson v. Endres*, No. 07 C 1185, 2007 WL 1655230, at *2 (N.D. Il. June 6, 2007) (unpublished opinion) (stating that "[b]ecause all defendants reside in Wisconsin, plaintiff must be arguing that this district is proper venue because it is a district where one defendant resides and all defendants reside in the same state, albeit a different state than where venue is being asserted. This argument, however, does not further the purpose of the statute and has been consistently rejected"); *see also What Statutory Drafting Errors Teach Us About Statutory Interpretation*, 69 Geo. Wash. L. Rev. 309, 318 (2001) (stating that "the whole point of § 1391(a)(1) would, in fact, be utterly thwarted if it could be transformed from a statute providing that defendants could be sued in judicial districts reasonably near their homes to a statute

permitting a clever plaintiff's counsel to drag defendants clear across the country when they have the misfortune to have a corporation as a codefendant.")

A corporation is deemed to reside in any judicial district in which it is subject to personal jurisdiction at the time the action is commenced. 28 U.S.C.A. § 1391(c) (West 2006). An individual is deemed to reside where he has his permanent residence or legal domicile. *See Rosenfeld v. S.F.C Corp.*, 702 F.2d 282, 284-85 (1st Cir. 1983) (citing *Shaw v. Quincy Mining Co.*, 145 U.S. 444 (1892)); *Manley v. Engram,* 755 F.2d 1463, 1466 n. 3 (11th Cir. 1985); *MacNeil v. Whittemore*, 254 F.2d 820, 821 (2nd Cir. 1958).

In this case, Cisco is a resident of the Western District of Arkansas because it is subject to personal jurisdiction there. However, Frenkel's permanent residence is in California. (Complaint at ¶3). Because Frenkel is not a resident of Arkansas, this district is an improper venue under Section 1391(a)(1). *Dashman*, 999 F.Supp. at 555; *What Statutory Drafting Errors Teach Us About Statutory Interpretation*, 69 Geo. Wash. L. Rev. at 318.

> **(2) This is an improper district under 28 U.S.C. § 1391(a)(2), which allows for venue in a district in which a substantial part of the events or omissions giving rise to the lawsuit take place, because none of the events or omissions giving rise to this lawsuit took place in Arkansas.**

Section 1391(a)(2) provides that venue is appropriate in a district in which a substantial part of the events or omissions giving rise to the lawsuit took place. This provision does not allow for jurisdiction in this district case because none of the events or omissions giving rise to the lawsuit occurred in Arkansas. Ward has alleged that Frenkel posted a defamatory internet blog regarding litigation in the Eastern District of Texas in the course and scope of his employment for Cisco in California and that Cisco had knowledge of the blog. (Complaint at ¶¶9-12). Ward alleges that the "litigants and attorneys accessed his web blog seeking

information relating to the Eastern District of Texas." (Complaint at ¶12). Ward has not made a single allegation that any of the events giving rise to this lawsuit occurred in Arkansas.

Ward is a Texas attorney, and the blog posting at issue concerned Ward's filing of a lawsuit in a the Tyler Division.[3] (Complaint at ¶¶7-12). The blog post at issue does not specifically target Arkansas in any way. (Exhibit A to the Complaint). This district is therefore is an improper venue under Section 1391(a)(2).

### (3) This is an improper district under 28 U.S.C. § 1391(a)(3) because the Tyler Division is a proper venue under 28 U.S.C. § 1391(a)(2).

Venue is also not proper under Section 1391(a)(3), which expressly provides that it applies only "if there is no district in which the action may otherwise be brought." This provision does not apply because this case could have been brought in the Tyler Division under Section 1391(a)(2). Pursuant to Section 1391(a)(2), an action may be brought in "a judicial district in which a substantial part of the events or omissions giving rise to the claim occurred."

A substantial part of the events or omissions giving rise to this claim occurred in Gregg County, Texas, so this case could have been brought there. In fact, Ward initially brought the case in Gregg County. (Exhibit A to the Motion). Ward alleges that Frenkel and Cisco published defamatory statements about Ward's filing of a case in federal court in the Eastern District of Texas. (Complaint at ¶9-11). Ward also alleges that these defamatory statements could result in disciplinary proceedings before the State Bar of Texas and that he suffered

_____

[3] The fact that the article was posted on the internet does not support venue. *See, e.g., Miller v. Asensio,* 101 F. Supp.2d 395, 405-07 (D. S.C. 2000) (holding that venue was not appropriate in South Carolina where the defendants, who resided in New York, "merely posted information on a website in New York that could be read anywhere in the world by anyone, so long as the person had access to the Internet"); *see also Steinbuch v. Cutler,* No. 07-1509, 2008 WL 596747 (8th Cir. Mar. 6, 2008) (holding that personal jurisdiction was not proper in Arkansas where a defamatory novel could be purchased in the state because the plaintiff did now "show that [the defendant] knew that 'the brunt of the injury would be felt by [him] in the State in which [he] lives and works'" or that the defendant "intentionally targeted the forum state"); *Revell v. Lidov,* 317 F.2d 467, 476 (5th Cir. 2002) (holding that an internet bulletin board where "a visitor may participate in an open forum hosted by the website" did not subject a defendant to jurisdiction in Texas because the article "contained no reference to Texas, nor does it refer to the Texas activities of Revell, and it was not directed at Texas readers distinguished from readers in other states.")

damages in the form of financial loss, shame, embarrassment, humiliation, mental pain and anguish, and damage to the reputation of his business, which he admits is conducted "almost exclusively in the Eastern District of Texas." (*Id. at* ¶¶7, 11, 21). Because Plaintiff alleges that Ward's statements were aimed at his activities in Gregg County, Texas, venue is proper in the Tyler Division. *See MCSi, Inc. v. Woods*, No. C-02-02865.JF(RS), 2002 WL 32059741, at *2-5 (N.D. Cal. Oct. 7, 2002) (unpublished opinion) (holding that personal jurisdiction and venue were proper in California where "[the defendant's] postings clearly were aimed at California, as [the defendant] knew that [the plaintiff] was based in California and that [its] management was located there"); *Calder v. Jones*, 465 U.S. 783, 788-89 (1984) (holding that personal jurisdiction in California was proper where the defendants' libel was "expressly aimed" at California because the statements "impugned the professionalism of an entertainer whose career was centered in California," [t]he article was drawn from California sources, and the brunt of the harm, in terms both of respondent's emotional distress and the injury to her professional reputation, was suffered in California.") This district is an improper venue under 1391(a)(3) because this action could be brought in the Tyler Division pursuant to Section 1391(a)(2).

**B.      The Court does not have jurisdiction over Frenkel.**

The Court should also transfer this case pursuant to 28 U.S.C. § 1631 because the Court does not have personal jurisdictional over Frenkel. Section 1631 provides that when a "court finds that there is a want of jurisdiction, the court shall, if it is in the interest of justice, transfer such action or appeal to any other court in which the action or appeal could have been brought at the time it was filed or noticed." *See Hempstead County and Nevada County Project v. U.S. E.P.A.*, 700 F.2d 459, 462-63 (8th Cir. 1983) (holding that the case should be transferred to another district because court did not have jurisdiction and "legislative history prompts us to

conclude that this matter is precisely the situation Congress contemplated when it enacted § 1631").

This Court does not have personal jurisdiction over Frenkel. When determining whether there is personal jurisdiction over a defendant, a federal court must apply the law of the state in which it sits. *Birnstill v. Home Sav. of America*, 907 F.2d 795, 797 (8th Cir.) 1990. The Arkansas long-arm statute provides that the courts of Arkansas "shall have personal jurisdiction of all persons, and all causes of action or claims for relief, to the maximum extent permitted by the due process of law clause of the Fourteenth amendment of the United States Constitution." Ark. Code Ann. § 16-4-101(B) (1999)).

In this case, the Court's jurisdiction over Frenkel would offend due process. Numerous cases have held that an internet publication alone does not subject one to personal jurisdiction in a particular state merely because harm was suffered there. *See, e.g., Revell v. Lidov*, 317 F.3d 467, 469-476 (5th Cir. 2002) (holding that internet bulletin board where "a visitor may participate in an open forum hosted by the website" did not subject a defendant to jurisdiction in Texas because the article "contained no reference to Texas, nor does it refer to the Texas activities of Revell, and it was not directed at Texas readers distinguished from readers in other states"); *Reynolds v. Int.'l Amateur Athletic Fed'n*, 23 F.3d 1110, 1120 (6th Cir. 1994) (holding that an allegedly defamatory press release dealing with the plaintiff's activities in Monaco did not subject the defendant to jurisdiction in Ohio); *Young v. New Haven Advocate*, 315 F.3d 256, 263-64 (4th Cir. 2002) (holding that "the fact that the newspapers' websites could be accessed anywhere, including Virginia, does not by itself demonstrate that the newspapers were intentionally directing their website content to a Virginia audience.")

To subject the author or publisher of an internet publication to personal jurisdiction, the publication must be "aimed at" the particular state. *See Steinbuch v. Cutler*, No. 07-1509, 2008 WL 596747 at *4 (8th Cir. Mar. 6, 2008) (holding that personal jurisdiction was not proper in Arkansas where a defamatory novel could be purchased in the state because the plaintiff did now "show that [the defendant] knew that 'the brunt of the injury would be felt by [him] in the State in which [he] lives and works'" or that the defendant "intentionally targeted the forum state") (quoting *Calder v. Jones*, 465 U.S. 783, 789-90 (1984); *Revell v. Lidov*, 317 F.3d 467, 469-476 (5th Cir. 2002) (holding that an internet bulletin board where "a visitor may participate in an open forum hosted by the website" did not subject a defendant to jurisdiction in Texas because the article "contained no reference to Texas, nor does it refer to the Texas activities of Revell, and it was not directed at Texas readers distinguished from readers in other states.")). In this case, Frenkel's acts were not "expressly aimed" at Arkansas. The blog post at issue related to a Texas lawyer's filing of a lawsuit in the Eastern District of Texas. (Exhibit A to Complaint). The blog posting's only connection with Arkansas was that it could be viewed there. Therefore, this Court lacks personal jurisdiction over Frenkel, and the Court should dismiss or transfer the case pursuant to Section 1631.

## C. The Court should dismiss the case or transfer the case to the Eastern District of Texas, Tyler Division.

When a case is filed in an improper venue or where the court does not have jurisdiction over one of the parties, the district court in which the case is filed should dismiss the case, or if it is in the interest of justice, transfer the case to any district or division in which it may have been brought. 28 U.S.C. § 1406(a) (transfer for improper venue); 28 U.S.C. § 1631 (transfer because of lack of personal jurisdiction). Transfer is favored over dismissal of a case. *See Russo v. Ballard Med. Prods.*, 352 F.Supp.2d 177, 182 (D. R.I. 2005) (stating that "transfer, rather than

dismissal provides all parties with an opportunity for a speedy resolution of the matter. Transfer prevents Plaintiff from facing unnecessary statute of limitation issues, and lastly, transfer rather than dismissal provides for a more efficient use of judicial resources"); *see also Orion Shipping & Trading Co. v. U.S.*, 247 F.2d 755, 757 (9th Cir. 1957) (stating that since "it is clear that the proper venue of the third party libel is in the Southern District of New York where, the parties agree, appellants have their principal places of business" and that "the district court's dismissal of the third party libel against the United States is reversed and the cause is remanded to the district court with instructions to transfer the third party libel to the district court for the Southern District of New York"); *Subsalve USA Corp. v. Watson Mfg., Inc.*, 462 F.3d 41, 43 (1st Cir. 2006) (stating that "a dismissed action is a nullity, so a court desirous of effectuating a transfer under Section 1631 should not dismiss the action but, rather, after making a finding that it lacks jurisdiction, should order transfer based on that finding.")

The Court should transfer the case to the Tyler Division because (1) the case could have been brought there; (2) it will allow for consolidation with a related lawsuit pending in the Tyler Division; (3) it will avoid an inconsistent result in the related lawsuit in the Tyler Division; (4) and the Tyler Division has personal jurisdiction over all of the parties.

**(1) This case could have been brought in the Tyler Division pursuant to 28 U.S.C. § 1391(a)(2).**

This case could have been brought in The Tyler Division under Section 1391(a)(2) because a substantial part of the events or omissions giving rise to the claim occurred in Texas as set forth in Section III(A)(3), above.

**(2) Transfer to the Tyler Division will allow for consolidation with an almost identical lawsuit pending there.**

Second, transferring the case to the Eastern District of Texas, Tyler Division will allow the consolidation of the case with *Eric Albritton v. Cisco Systems, Inc. and Richard Frenkel*, Civil Action Number 6:08-cv-89, in the United States District Court for the Eastern District of Texas, Tyler Division (the "Albritton Case"). In the Albritton Case, the plaintiff alleges the same kinds of damages arising out of the same publication as this case. (A true and correct copy of Plaintiff's Original Petition[4] in the Albritton Case is attached as Exhibit C to the Motion.) The Court should transfer this action because it arises out of the same transaction as the Albritton Case. *See Wyndham Assoc. v. Bintliff*, 398 F.2d 614, 619-20 (2nd Cir. 1968) (stating that "[t]here is a strong policy favoring the litigation of related claims in the same tribunal in order that pretrial discovery can be conducted more efficiently, duplicitous litigation can be avoided, thereby saving time and expense for both parties and witnesses, and inconsistent results can be avoided.")

**(3) Transfer to the Tyler Division will prevent an inconsistent result in the related lawsuit pending there.**

Third, transferring the case to the Tyler Division would avoid the possibility of inconsistent results in the Albritton Case. *See id.* (stating that "[t]here is a strong policy favoring the litigation of related claims in the same tribunal in order that […] inconsistent results can be avoided.").

**(4) The Tyler Division has jurisdiction over all of the parties.**

The Court should also transfer the case to the Tyler Division because it has jurisdiction over all of the parties. 28 U.S.C. § 1631. The Tyler Division has jurisdiction over Ward because

---

[4] The Albritton Case was originally filed in state court but has been removed to federal court.

- 11 -

he resides there. (Complaint at ¶1). Cisco does not dispute personal jurisdiction in the Texas and has answered the Albritton Case pending in the Eastern District of Texas, Tyler Division. (Cisco's Original Answer in the Albritton case is attached as Exhibit D to the Motion.) Similarly, Frenkel will not contest jurisdiction in Texas. Because the Tyler Division has jurisdiction over all the parties, the Court should transfer the case to the Tyler Division.

## IV. ALTERNATIVELY, THE COURT SHOULD TRANSFER THE CASE FOR THE CONVENIENCE OF THE PARTIES AND WITNESSES

Alternatively, if the Court finds that this district is an appropriate venue under Section 1391, the Court should still transfer the case to the Tyler Division for the convenience of the parties pursuant to Section 1404(a). Section 1404(a) provides that a court may transfer any civil action to any other district or division where it might have been brought "for the convenience of parties and witnesses, in the interest of justice." The Court should transfer this case to the Tyler Division because it could have been brought there and because the Tyler Division is a more convenient forum for the parties and witnesses.

**A.      This case could have been brought in the Tyler Division.**

The first issue the Court must address is whether the Tyler Division qualifies under the applicable venue statutes as a judicial district where the civil action might have been brought. *See* 28 U.S.C. § 1404(a). This action could have been brought in the Tyler Division because a substantial part of the events or omissions giving rise to the claim occurred there, as discussed in Section III(A)(3), above.

**B.      Transfer to the Tyler Division would promote convenience and is in the interests of justice.**

Next, the Court must consider the convenience of the parties and witnesses and the interests of justice. *Terra Int'l, Inc. v. Miss. Chem. Corp.*, 119 F.3d 688, 691 (8th Cir. 1996).

The plaintiff's choice of venue may be considered, but it is neither determinative nor conclusive. *See In re Horseshoe Entm't*, 337 F.3d 429, 433 (5th Cir. 2003). When the operative facts occurred primarily in another forum, the plaintiff's choice of forum is minimized. *See Nat'l Mortgage Network v. Home Equity Ctrs.*, 683 F.Supp. 116, 119 (E.D. Pa. 1988). The location of counsel is irrelevant and may not be considered. *Rosenthal v. Blue Diamond Growers, Inc.*, No. SA-03-CV-424-RF, 2003 WL 22736550, at *2 (W.D. Tex. Nov. 12, 2003) (unpublished opinion); *Triangle Indus., Inc. v. Kennecott Copper Corp.*, 325 F.Supp. 150, 152 (E.D. Pa. 1971).

**(1) The convenience of the parties and witnesses supports transfer the case to the Tyler Division.**

The determination of "convenience" turns on a number of private and public interest factors. *Terra Int'l*, 119 F.3d at 686. These factors include (1) the convenience of the parties, (2) the convenience of the witnesses; (3) the accessibility to records and documents; (4) the location where the conduct complained of occurred; and (5) the applicability of each forum state's substantive law. *Id.*

These factors favor Texas over Arkansas. First, Ward resides in Gregg County, Texas, and none of the parties reside in Arkansas. (Complaint at ¶¶1-3). In addition, transfer of this case to the Tyler Division would allow for it to be consolidated with the Albritton Case or allow the lawsuits to go forward in the same location. *See Wyndham*, 398 F.2d at 619-20.

Texas is also a more convenient than Arkansas for witnesses. To Cisco's knowledge, there are no witnesses in Arkansas. And because Ward's alleged damages all occurred in Texas, presumably his witnesses would also be in Texas. Moreover, because the issues in this case are so interconnected to those in the Albritton Case, witnesses in that case would already be

traveling to Texas and therefore should find it more convenient to appear as a witness in the Tyler Division than in another venue.

Defendants' records and documents in this case should also be located in Tyler because the Defendants' documents will be in Tyler for the Albritton Case. Ward's records will also be in Texas because he resides in Texas and alleges that his damages occurred there. (Complaint at ¶1, 7, 11, 12, 21). Finally, the conduct complained of occurred in the Tyler Division as discussed in Section III(A)(2), above.

**(2)     It is in the interest of justice to transfer the case to the Tyler Division.**

Public interest factors include (1) judicial economy; (2) the plaintiff's choice of forum; (3) the comparative costs to the parties of litigating in each forum; (4) each party's ability to enforce a judgment; (5) obstacles to a fair trial; (6) conflict of law issues; and (7) the advantages of having a local court determine questions of local law. *Id.*

The first factor—judicial economy—strongly favors transfer to the Tyler Division because the Albritton Case is located there. *See Wyndham Assoc.*, 398 F.2d at 619-20 (recognizing efficiency and judicial economy of litigating related claims in the same tribunal). This factor also weighs heavily against venue in this court because Frenkel is not subject to personal jurisdiction in this court. *See* Section III(B), above. Where a case is brought in a court that does not have personal jurisdiction over a defendant, this "decidedly tilts the scales" in favor of an alternative venue where there court would have personal jurisdiction. *Sparling v. Hoffman Const. Co., Inc.*, 864 F.2d 635, 639 (9th Cir. 1988).

The second factor—the local interest in having localized controversies decided at home—also heavily weighs in favor of transferring the case to the Tyler Division. After all, "[t]he United States Supreme Court has determined that '[j]ury duty is a burden that ought not to be imposed upon the people of a community which has no relation to the litigation.'" *American*

*Dredging Co. v. Miller*, 510 U.S. 443, 448 (1994). An Arkansas jury would have no relation to the litigation. That the blog was accessible by Arkansas via the internet does make the case a matter of local interest in this District because the blog was about an event in Texas and was aimed at a Texas audience. *See Jamba Juice Co. v. Jamba Group, Inc.*, No. C-01-4846 RW 2002 WL 1034040, at *2 (N.D. Cal. May 15, 2002); *see also Miller v. Asensio,* 101 F. Supp. 2d 395, 405-07 (D. S.C. 2000).

On the other hand, a Texas jury has a strong interest in resolving this dispute. The gravamen of the case will be whether the defendants are liable for statements made in a blog about two Gregg County lawyers' activities in a filing performed in the Eastern District of Texas. Whether a defendant should be held liable for its reporting on a potential threat to the legal system is a matter of local concern. To paraphrase one court: "There simply is no justification for preventing this case from being decided within the communities most impacted." *Colondy v. Iverson, Yoakum, Papiano & Hatch*, No. 93-1464-CIV-T-17C, 1994 WL 150835, at *3 (M.D. Fla. Apr. 14, 1994) (unpublished opinion). Gregg County is most impacted by the case, and therefore the case should be heard by the Tyler Division.

The third factor also favors transfer to the Tyler Division. The comparative costs to the parties of the litigation will be much less if the parties litigate in Tyler than in Texarkana. Ward resides in Gregg County, Texas, so the cost will be less to him than traveling to Texarkana. Moreover, the Defendants' costs will be less if the case is transferred to Tyler because the Defendants will be involved in the Albritton Case in Tyler.

Litigation in Tyler will not affect the parties' ability to enforce the judgment when compared to this venue, and there are no obstacles to a fair trial in the Tyler Division.

For these reasons, if this case is not dismissed, it should be transferred to the United States District Court for the Eastern District of Texas, Tyler Division.

WHEREFORE, Defendant Cisco Systems, Inc. respectfully requests that this cause be dismissed for improper venue, or, in the alternative, transferred to the United States District Court for the Eastern District of Texas, Tyler Division, and for all other relief to which Defendant Cisco may be entitled.

Respectfully submitted,

JACKSON WALKER L.L.P.

By: _____
    Richard E. Griffin
    Arkansas Bar No.: 63020
    Email: rgriffin@jw.com
    Charles L. Babcock[5]
    Federal Bar No.: 10982
    Email: cbabcock@jw.com
    Crystal J. Parker[6]
    Federal Bar No.: 621142
    Email: cparker@jw.com
    1401 McKinney
    Suite 1900
    Houston, Texas 77010
    (713) 752-4200
    (713) 752-4221 – Fax

ATTORNEY FOR DEFENDANT
CISCO SYSTEMS, INC.

---

[5] Pro Hac Vice pending.

[6] Pro Hac Vice pending.

**CERTIFICATE OF SERVICE**

     This is to certify that on this _8th_ day of April, 2008, a true and correct copy of the foregoing Cisco Systems, Inc.'s Memorandum of Law in Support of its Motion to Dismiss for Improper Venue, or in the Alternative, Motion to Transfer Venue was served electronically, upon:

     Nicholas H. Patton
     Patton, Tidwell & Schroeder, LLP
     4605 Texas Boulevard
     Texarkana, Texas 75503
     **Attorney for Plaintiff John Ward, Jr.**

     Michael D. Barnes
     Wright, Lindsey & Jennings LLP
     200 West Capitol Avenue
     Little Rock, Arkansas 72201
     **Attorney for Defendant Richard Frenkel**

     George L. McWilliams
     406 Walnut
     P.O. Box 58
     Texarkana, Texas 75504-0058
     **Attorney for Defendant Richard Frenkel**

_____
     Richard E. Griffin

# Appendix of Unpublished Opinions

1. *Colondy v. Iverson, Yoakum, Papiano & Hatch*, No. 93-1464-CIV-T-17C, 1994 WL 150835, at *3 (M.D. Fla. Apr. 14, 1994)

2. *Jamba Juice Co. v. Jamba Group, Inc.*, No. C-01-4846 RW 2002 WL 1034040, at *2 (N.D. Cal. May 15, 2002)

3. *MCSi, Inc. v. Woods*, No. C-02-02865.JF(RS), 2002 WL 32059741, at *2-5 (N.D. Cal. Oct. 7, 2002)

4. *Rosenthal v. Blue Diamond Growers, Inc.*, No. SA-03-CV-424-RF, 2003 WL 22736550, at *2 (W.D. Tex. Nov. 12, 2003)

5. *Steinbuch v. Cutler*, No. 07-1509, 2008 WL 596747 at *4 (8th Cir. Mar. 6, 2008)

6. *Swanson v. Endres,* No. 07 C 1185, 2007 WL 1655230, at *2 (N.D. Il. June 6, 2007)

1

Westlaw.

Not Reported in F.Supp.
Not Reported in F.Supp., 1994 WL 150835 (M.D.Fla.)
**(Cite as: Not Reported in F.Supp.)**

**H**

Colodny v. Iverson, Yoakum, Papiano & Hatch
M.D.Fla.,1994.
Only the Westlaw citation is currently available.
United States District Court, M.D. Florida,
Tampa Division.
Leonard COLONDY, Plaintiffs,
v.
IVERSON, YOAKUM, PAPIANO & HATCH, a
California general partnership, and John M. Garrick
individually and as a general partner of Iverson,
Yoakum, Papiano & Hatch, Defendants.
**No. 93-1464-CIV-T-17C.**

April 14, 1994.

Sanford Lewis Bohrer, Bohrer & Aprill, P.A.,
Miami, FL, for plaintiff.
Steven George Schember, Charles P. Campbell, Jr.,
Shumaker, Loop & Kendrick, Tampa, FL, John M.
Garrick, Iverson, Yoakum, Papiano & Hatch, Los
Angeles, CA, for defendant.

ORDER DENYING MOTION TO TRANSFER
VENUE

KOVACHEVICH, District Judge.
**\*1** This cause is before the Court on Defendant's
motion to transfer venue to the appropriate United
States District Court in the District of Columbia
and response thereto.

STATEMENT OF FACTS

Defendant Garrick, a general partner in the Defend-
ant California law firm Iverson, Yoakum, Papiano
& Hatch (Iverson) wrote a letter to the editor, pub-
lished in the *Tampa Tribune.* The letter contains
one statement which was pertaining to Mr.
Colodny, a resident of Tampa. The letter states:
"We are confident that full disclosure of all the tape
recordings made by Colodny will expose Colodny's
book, '*Silent Coup*' as a fraud." The letter was writ-
ten in response to *Tampa Tribune* columns critical

of John Dean, Defendant's client, who with his wife
is suing Colodny and three others for libel and nine
other claims in a 108 page, several hundred para-
graph complaint in Washington, D.C. Defendants
spent a significant portion of their time arguing that
the issues in this lawsuit are identical to the issues
in the lawsuit in Washington, D.C. However, the
distinction between the two cases lies in the fact
that this action is based on one sentence in one let-
ter published in Florida by Defendants while the
other is based on several statements, many not by
Mr. Colodny at all, and none occurring or being
published in Tampa, Florida.

The letter was not written in connection with or re-
sponse to anything taking place in Washington,
D.C., including Mr. Deans' lawsuit pending in the
District Court for the District of Columbia. Defend-
ants claim that their writing of the letter constitutes
transacting business in Washington, D.C. because
the letter "relates" to Mr. Dean's lawsuit in Wash-
ington, D.C., but in fact the letter was not filed by
Defendants in Mr. Dean's lawsuit and they have not
stated how "addressing misinformation" by writing
a letter to Florida is transacting business in Wash-
ington, D.C.

Defendants assert that their writing of the letter was
part of their representation of Mr. Dean in his law-
suit in Washington. However, their memorandum in
support of their motion to dismiss (at page 20)
makes it seem as if the letter was written Mr. Gar-
rick without the consent or authority of his law firm:
The Garrick letter was not authorized by Defendant
Iverson, Yoakum, Papiano, and Hatch ("Iverson"),;
nor was it authorized by any partner in Iverson ex-
cept for Garrick. The Garrick letter was not part of
Iverson's "usual" business.

Plaintiff claims damages to his reputation in the
Tampa, Florida, area from publication of the letter
there. He does not claim any injury in Washington,
D.C. from the letter.

© 2008 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.
Not Reported in F.Supp., 1994 WL 150835 (M.D.Fla.)
(Cite as: Not Reported in F.Supp.)

## DISCUSSION

### I. *Change of Venue*

Defendant has moved the Court, pursuant to 28 U.S.C. Section 1404(a), to transfer venue with respect to the Florida plaintiff. Plaintiff opposes this motion by arguing that venue is proper in Tampa, Florida, pursuant to Tampa, Florida, being the place of residence for the plaintiff and also the place where the letter was published. In addition, Plaintiff asserts that the actionable statement was not published in the District of Columbia and does not concern any event that occurred there. The Court concludes that the present forum is convenient for the parties and the witnesses and, thus, that it should deny Defendant's motion to change venue in this case.

*2 Defendant relies on 28 U.S.C. Section 1404(a) to support its motion for a change of venue with respect to the Florida plaintiff. Section 1404(a) provides that:

[f]or the convenience of the parties and witnesses, in the interests of justice, a district court may transfer any civil action to any other district or division where it might have been brought.

This "change of venue statute applies by its express terms to 'any civil action,' . .."*Adkins v . Kellwood Co.,* 36 Fair Empl.Prac.Cas. (BNA) 1062 (W.D.N.C.1984). When seeking a change of venue pursuant to Section 1404(a), "[t]he movant has the burden of making a strong case for transfer and if the transfer would merely shift inconvenience from one party to the other, or if the balance of all factors is but slightly in favor of the movant, plaintiff's choice of forum should not be disturbed and transfer should be denied." *Grey v. Continental Marketing Associates, Inc.,* 315 F.Supp. 826, 831 (N.D.Ga.1970) (Edenfield, J.) (footnote omitted). In this case, Defendant has not carried its burden.

"Section 1404(a) establishes three general criteria upon which a transfer motion is to be determined:

(1) the convenience of the parties; (2) the convenience of witnesses; and (3) the interest of justice." *Delay & Daniels, Inc. v. Allen M. Campbell Co.,* 71 F.R.D. 368, 371 (D.S.C.1976). These factors have been analyzed many times before and, in this case, clearly indicate that transfer is improper.

### 1. *Convenience of the Parties and Witnesses.*

With respect to the first criterion, it is well established that "the fact that counsel may be inconvenienced is [almost] irrelevant to whether the motion for transfer should be granted." *Prather v. Raymon Constr. Co.,* 570 F.Supp. 278, 284 (N.D.Ga.1983) (Ward, J.). Thus, the Defendant's argument that they are already in litigation in the District of Columbia and that they would be inconvenienced if required to litigate in Florida is without merit.

Secondly, Defendant's argument that their sources of proof are located in the District of Columbia is unfounded. The actionable statement was that the tapes will show the book to be fraud. The relevant tapes are in the possession of Colodny's counsel in Florida. The actionable statement did not reference the purported 100 witnesses (from all over America, including Tampa) that the Defendants allege they may call at trial, all of whom will be deposed (if they are deposed) where they live. However, regardless of the relevance of such witnesses to the Dean lawsuit, they are not relevant here. Therefore, Defendants did not present sufficient evidence to establish their inconvenience or the inconvenience of any witnesses. Finally, the Court notes that this forum was not chosen by the Plaintiff so much as it was by Defendants when they published the actionable statement in Tampa.

### 2. *Interest of Justice.*

Defendants' arguments previously mentioned, fail to take into account that " 'there is an appropriateness ... in having the trial ... in a forum that is at home with the state law that must govern the case.' " *Delay & Daniels,* 71 F.R.D. at 373 (citations

© 2008 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.
Not Reported in F.Supp., 1994 WL 150835 (M.D.Fla.)
**(Cite as: Not Reported in F.Supp.)**

Page 3

omitted in original).

*3 Defendants' arguments also overlook the public
interests of justice that are served by transferring or
leaving these cases to the localities in which they
arose. As noted by the Supreme Court in its applic-
ation of the doctrine of forum non conveniens:
Factors of public interest also have a place in ap-
plying the doctrine. Administrative difficulties fol-
low for courts when litigation is piled up in conges-
ted centers instead of being handled at its origin.
Jury duty is a burden that ought not to be imposed
upon the people of the community which has no re-
lation to the litigation. In cases which touch the af-
fairs of many persons, there is reason for holding
the trial in their view and reach rather than in re-
mote parts of the country where they can learn of it
by report only. There is a local interest in having
localized controversies decided at home.

*Gulf Oil Corp. v. Gilbert,* 330 U.S. 501, 508-09, 67
S.Ct. 839, 843 (1947).

Defendants have failed to persuade the Court that
the interests of justice would be served by deciding
their case in a forum so completely unrelated to the
place where the cause of action arose. There simply
is no justification for preventing this case being de-
cided within the communities most impacted. In
this case, such communities would be those in and
around Tampa, Florida, where the alleged action-
able statement was published by Defendants. Like-
wise, there is no justification for imposing the bur-
den of deciding Plaintiffs case upon a community
which has no relation to the litigation. Accordingly,
it is

ORDERED that this motion for transfer of venue be
Denied.

DONE AND ORDERED.

M.D.Fla.,1994.
Colondy v. Iverson, Yoakum, Papiano & Hatch
Not Reported in F.Supp., 1994 WL 150835
(M.D.Fla.)

END OF DOCUMENT

© 2008 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Westlaw.

Not Reported in F.Supp.2d
Not Reported in F.Supp.2d, 2002 WL 1034040 (N.D.Cal.)
(Cite as: Not Reported in F.Supp.2d)

▷

Jamba Juice Co. v. Jamba Group, Inc.
N.D.Cal.,2002.
Only the Westlaw citation is currently available.
United States District Court, N.D. California.
JAMBA JUICE COMPANY, a California corporation, Plaintiff,
v.
JAMBA GROUP, INC, a California corporation, Defendant.
**No. C-01-4846 VRW.**

May 15, 2002.

ORDER

WALKER, District J.
*1 Defendant moves to dismiss for improper venue, pursuant to 28 USC § 1406(a), or, in the alternative, to transfer this matter to the United States District Court for the Central District of California. Docs5, 9, 12. The court finds this matter appropriate for disposition without oral argument. See Civ LR 7-1(b). The hearing scheduled for May 16, 2002, is hereby VACATED.

On December 10, 2001, plaintiff filed its complaint, asserting trademark violations by defendant. Plaintiff's complaint states that federal jurisdiction arises under the Lanham Act, 15 USC § 1501 et seq. Compl (Doc # 1). Plaintiff also asserts that venue is proper in the Northern District under 28 USC § 1 391(b) b ecause "a substantial part of the events giving rise to these claims occurred in this district" and "because Defendant's contacts with this district would be sufficient to subject it to personal jurisdiction if this district were a separate state."Id at ¶ 2.

Defendant, in its words, "provid[es] voice enabled services uniting the Internet, telephone and speech recognition, primarily to the optical profession."Harding Decl (Doc # 6) at ¶ 2. Defendant is a small company, incorporated in the city of Downey,

California, which is located in Los Angeles County. See id at ¶ 4. Defendant's sole office is located in Sante Fe Springs, California, which is also in Los Angeles County. See id at ¶ 5. Defendant contends that its contacts with the Northern District are insufficient to establish venue in this district and that the matter should either be dismissed or transferred to the Central District.

As the Lanham Act does not have its own venue provision, the general venue statute, 28 USC § 1391, is applicable. See *Woodke v. Dahm,* 70 F3d 983, 985 (8th Cir1995).Section 1391(b) governs venue for federal-question actions. This section provides that venue is only appropriate in:
(1) a judicial district where any defendant resides, if all defendants reside in the same State, (2) a judicial district in which a substantial part of the events or omissions giving rise to the claim occurred, or a substantial part of property that is the subject of the action is situated, or (3) a judicial district in which any defendant may be found, if there is no district in which the action may otherwise be brought.

Pursuant to § 1391(c), a corporate defendant "resides" in any district in which it is subject to personal jurisdiction at the time the action is commenced. When an action is filed in an improper district, upon the filing of a timely motion the court must either dismiss the action or transfer it to any appropriate district. 28 USC § 1406(a). When an appropriate jurisdiction does exist, transfer is preferable to dismissal. See *Minnette v. Time Warner,* 997 F.2d 1023-1026-27 (2d Cir1993).

Plaintiff contends that venue is appropriate in the Northern District because a substantial part of the events or omissions giving rise to its claims occurred in this district. Plaintiff alleges that because defendant operates a website that may be accessed in the Northern District and because plaintiff's principal place of business is in San Francisco, the "confusion caused by Defendant's activities most likely will occur and will continue to occur in the

© 2008 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Northern District."Pl Opp (Doc # 15) at 6.

**\*2** The fact that defendant operates a website, which may be accessed anywhere in the United States, and that plaintiff's principal place of business is in the Northern District does not, however, establish that venue is proper in the Northern District. To accept plaintiff's contention would be to adopt a rule that would subject any corporation with a website to venue in the district in which plaintiff does business. Such a rule, however, would dramatically alter the present venue statute.

In fact, plaintiff's contention was essentially rejected in a case cited by plaintiff: *Woodke v. Dahm,* 70 F3d 983 (8th Cir1995). In *Woodke,* Woodke filed suit under the Lanham Act in the federal district of his residence, alleging that venue was appropriate there as it was the location of the ultimate effect of appellee's infringing activities. The Eighth Circuit rejected this contention, holding that to permit venue in such a district would be impermissibly to rewrite the venue statute:
While it is true that the Lanham Act requires a plaintiff who "believes that he or she is likely to be damaged" by defendant's conduct, 15 USC § 1125(a)(1), we believe that accepting Mr Woodke's argument would work a transformation of the venue statute that Congress could not have intended. One of the central purposes of statutory venue is to ensure that a defendant is not "haled into a remote district having no real relationship to the dispute."*Cottman Transmission Sys, Inc v Martino,* 36 F3d 291, 294 (3d Cir1994). While the present venue statute was certainly intended to expand the number of venues available to a plaintiff, we are reluctant to impute to Congress an intent to abandon altogether the protection of defendants as a relevant consideration in venue matters. We think it far more likely that by referring to "events or omissions giving rise to the claim," Congress meant to require courts to focus on relevant activities of the defendant, not of the plaintiff. * * * [I]f Congress had wanted to lay venue where the plaintiff was residing when he was injured, it could have said so

expressly.

Id at 985.

This determination, that the events or omissions inquiry focuses on the location of the defendant's conduct in Lanham Act cases, is consistent with that of other courts considering the issue. See, e g, *Cottman,* 36 F3d at 295-96. Accordingly, to establish that venue is appropriate in the Northern District, plaintiff must point to some events or omissions by defendant giving rise to its claim that occurred in this district.

It is, however, essentially uncontroverted that defendant's business contacts with the Northern District have been extremely limited. According to defendant, as of the date the lawsuit was filed, defendant had no clients in northern California in its client database. Harding Decl (Doc # 6) at ¶ 6. Defendant does not advertise in the yellow pages in the Northern District. Defendant does no direct advertising in northern California, nor does defendant send any advertising mailers, brochures or letters into northern California. See id at ¶ 9. Defendant, in short, does not direct any business activities at the Northern District, nor profit from any business activities in this district.

**\*3** Plaintiff contends that the fact that defendant operates a general access website that may be accessed by residents within the Northern District provides a basis for venue in this district. As noted, if this were the case, venue would be appropriate in any district in the United States. Although the court is not aware of any decision discussing the effect of an internet site on venue, the Ninth Circuit has made it clear in a series of recent decisions that in order to establish personal jurisdiction, a plaintiff must show "something more" than the operation of a general access website, specifically, "conduct directly targeting the forum." *Rio Properties, Inc v. Rio Int'l Interlink,* 284 F3d 1007, 1020 (9th Cir2002), discussing *Cybersell, Inc v. Cybersell, Inc,* 130 F3d 414, 418-20 (9th Cir1997). This "something more" occurs, for example, when a

© 2008 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.2d
Not Reported in F.Supp.2d, 2002 WL 1034040 (N.D.Cal.)
**(Cite as: Not Reported in F.Supp.2d)**

Page 3

company places print and radio advertisements in the forum state. See, e g, *Rio Properties,* 248 F3d at 1020-22.

Defendant, however, has not done anything more in the Northern District than operate a website that is accessible in this district. Moreover, defendant's website is a general access site that is "essentially passive." *Cybersell,* 130 F3d at 420. Although defendant's website apparently contains hyperlinks, allowing a visitor to access different levels of information, see Pranger Decl (Doc # 15, Exh B), this website is not "interactive," in that users of the site cannot transact business with the host computer. *Cybersell,* 130 F3d at 418. See Pranger Decl (Doc # 15, Exh B). A user cannot, for example, order any products or services from the website.

Finally, plaintiff contends that defendant's partnership with Dialogic, an Intel Company, constitutes contact with this district sufficient to establish personal jurisdiction. As defendant notes, however, although Intel resides in the Northern District, Dialogic itself is a New Jersey corporation and all of defendant's contacts with Dialogic have been through New Jersey.

In short, there have been minimal, if any, "events or omissions" by defendant in the Northern District giving rise to plaintiff's claims. At most, there have been residual effects in the Northern District, by virtue of plaintiff's business operations here. Accordingly, venue is not proper pursuant to § 1391(b)(2). Moreover, defendant's minimal contacts with the Northern District are insufficient to establish personal jurisdiction in this district. Accordingly, venue is not proper pursuant to § 1391(b)(1). Venue, therefore, is not proper in this district.

Venue is undoubtedly proper in the Central District of California. In the interests of justice, therefore, this matter shall be transferred to the Central District. See 28 USC § 1406(a). Defendant's motion to dismiss (Docs 5, 9, 12) is DENIED; defendant's motion to transfer venue (Doc5, 9, 12) is GRAN-

TED.

This matter is hereby TRANSFERRED to the United States District Court for the Central District of California, Central Division.

**\*4** IT IS SO ORDERED.

N.D.Cal.,2002.
Jamba Juice Co. v. Jamba Group, Inc.
Not Reported in F.Supp.2d, 2002 WL 1034040 (N.D.Cal.)

END OF DOCUMENT

© 2008 Thomson/West. No Claim to Orig. U.S. Govt. Works.

**H**MCSi, Inc. v. Woods
N.D.Cal.,2002.
Only the Westlaw citation is currently available.
United States District Court,N.D. California.
MCSI, INC., a Maryland Corporation, Plaintiff,
v.
Robert B. WOODS, an individual; the Whitlock
Group, a Virginia Corporation and Does 2 through
10, inclusive, Defendant.
**No. C-02-02865 JF(RS).**

Oct. 7, 2002.

Manufacturer of audio-visual equipment filed state
court action alleging that competitor's employee
posted negative and defamatory information about
manufacturer on internet chat boards under
pseudonym. After removal to federal court,
defendants moved to dismiss. The District Court,
Fogel, J., held that: (1) competitor was subject to
specific personal jurisdiction in California, and (2)
employee waived any possible venue objection.

Motions denied.

West Headnotes

**[1] Federal Courts 170B 76.25**

170B Federal Courts
   170BII Venue
      170BII(A) In General
         170Bk76 Actions Against Non-Residents;
"Long-Arm" Jurisdiction in General
            170Bk76.25 k. Tort Cases. Most Cited
Cases
Virginia company was subject to specific personal
jurisdiction in California in suit alleging that
company's employee posted negative and defamatory
information about California competitor on internet
chat board, where company knew that competitor
was based in California, competitor alleged that
company purposefully planned to and did
misappropriate competitor's trade secrets and other
confidential information, then used that information,
in conjunction with concerted campaign to disparage
competitor, to lure away competitor's customers,

employees and vendors, and that postings were in
furtherance of that plan, and company had close
business relationships with dozens of California
vendors and had solicited business in California.

**[2] Federal Courts 170B 95**

170B Federal Courts
   170BII Venue
      170BII(A) In General
         170Bk95 k. Objections, Waiver and
Consent. Most Cited Cases
Non-resident defendant waived any possible venue
objection by stipulating to removal of action. 28
U.S.C.A. § 1391.

ORDER DENYING DEFENDANT WHITLOCK'S
MOTION TO DISMISS FOR LACK OF
PERSONAL JURISDICTION AND FOR
IMPROPER VENUE AND DENYING
DEFENDANT WOODS' MOTION TO DISMISS
FOR IMPROPER VENUE

FOGEL, J.
**\*1** On October 7, 2002, the Court heard motions to
dismiss brought by Defendant Audio Fidelity
Communications Corporation, d/b/a The Whitlock
Group ("Whitlock") and Defendant Robert B. Woods
("Woods"). The Court has read the moving and
responding papers and has considered the oral
arguments of counsel. For the reasons set forth
below, both motions will be denied.

I. BACKGROUND

Plaintiff MCSi, Inc. ("MCSi") is a Maryland
Corporation with its principal place of business in
Ohio. Defendant Whitlock is incorporated in and has
its principal place of business in Virginia. Defendant
Robert B. Woods ("Woods") is a resident of Texas.

MCSi alleges that Whitlock committed numerous
acts of unfair competition against a California-based
high-technology company, the Intellisys Group, Inc.
("Intellisys"), from whom MCSi purchased
substantially all Intellisys assets, including all legal
claims (i.e. the instant claims against Whitlock).

MCSi does not allege that any of the activities took place anywhere other than in Texas, where Intellisys and Whitlock both had branch offices.

MCSi filed the instant action on August 29, 2001 in Santa Clara County Superior Court, asserting unfair competition claims against Woods based upon his negative statements about MCSi posted on internet chat boards, under a pseudonym. On May 17, 2002, MCSi served Whitlock with a First Amended Complaint alleging (1) common-law unfair competition; (2) statutory unfair business practices; (3) misappropriation of trade secrets; (4) conversion; (5) negligent training, supervision and retention of employees; (6) libel; (7) slander; (8) trade libel; (9) intentional interference with contracts; (10) negligent interference with contracts; (11) intentional interference with prospective economic advantage; and (12) negligent interference with prospective economic advantage.

On June 14, 2002 Whitlock removed the case to this Court. On June 18, 2002, Whitlock filed the instant Motion to Dismiss for Lack of Personal Jurisdiction and Improper Venue. On June 24, 2002 Woods filed the instant Motion to Dismiss for Improper Venue.[FN1]

> FN1. Woods also filed a special motion to strike pursuant to Cal. Civ. P.Code § 425.16. That motion will be addressed in a separate order.

## II. Whitlock's Motion to Dismiss for Lack of Personal Jurisdiction

### A. Legal Standard

"It is well recognized that California may exercise personal jurisdiction over a party on any basis not inconsistent with the state or federal Constitutions. (Code Civ. Proc., § 410.10.)"*Nai Tam Electronics, Inc. v. Joetitzer,* 93 Cal.App. 4th 1301, 1309 (internal punctuation omitted)."Due process demands that the defendant have 'certain minimum contacts' with the forum 'such that the maintenance of the suit does not offend traditional notions of fair play and substantial justice.;"*Ochoa v. J.B. Martin and Sons Farms, Inc.,* 287 F.3d 1182, 1188 (9th Cir.2002), *quoting Int'l Shoe Co. V. Washington,* 326 U.S. 310, 316, 66 S.Ct. 154, 90 L.Ed. 95 (1945).

When a nonresident defendant raises a challenge to personal jurisdiction, the plaintiff bears the burden of establishing that jurisdiction exists. *Data Disc, Inc. v. Systems Tech. Assoc.,* 557 F.2d 1280, 1285 (9th Cir.1977). The plaintiff may meet this burden by making a prima facie showing of personal jurisdiction. *Id.* at 1285.The documents submitted by the plaintiff are construed in the light most favorable to the plaintiff and all doubts are resolved in the plaintiff's favor. *Metropolitan Life Ins. V. Neaves,* 912 F.2d 1062, 1064 n. 1 (9th Cir.1990).

**\*2** If the nonresident defendant's contacts with California are "substantial" or "continuous and systematic," the defendant is subject to "general jurisdiction" and the federal court can exercise jurisdiction as to any cause of action, even if unrelated to defendant's activities within the state. *Doe v. Unocal Corp.,* 248 F.3d 915, 923 (9th Cir.2001). If a nonresident defendant's contacts with the forum state are not sufficiently continuous and systematic for general jurisdiction, it may still be subject to "specific" jurisdiction on claims related to its activities or contacts in the forum state. *Data Disc,* 557 F.2d at 1287.

The Ninth Circuit has established a three-factor test for determining when a state may constitutionally exercise specific jurisdiction over a defendant:
(1) the nonresident defendant must do some act or consummate some transaction with the forum state or perform some act by which it purposefully avails itself of the privilege of conducting activities in the forum state, thereby invoking the benefits and protections of its laws; (2) the claim must arise out of or result from the defendant's forum-related activity; and (3) the exercise of jurisdiction must be reasonable. *Ochoa,* 287 F.3d at 1188-1189.

### B. Discussion

[1] MCSi argues that this Court has specific jurisdiction over Whitlock. The Court agrees.

The purposeful availment requirement for specific jurisdiction is analyzed in intentional tort cases under the "effects test" derived from *Calder v. Jones,* 465 U.S. (1984). The effects test requires: (1) intentional actions; (2) expressly aimed at the forum state, (3) causing harm, the brunt of which is suffered and the

© 2008 Thomson/West. No Claim to Orig. U.S. Govt. Works.

defendant know is likely to be suffered-in the forum state.*Id.* at 789-790.

MCSi alleges that Whitlock purposefully planned to and did misappropriate Intellisys trade secrets and other confidential information, then used that information, in conjunction with a concerted campaign to disparage Intellisys/MCSi, to lure away Intellisys/MCSi customers, employees and vendors. MCSi further alleges that Woods, as part of this plan purposefully and continuously posted negative and defamatory information about Intellisys on the MCSi message board.

Woods' postings clearly were aimed at California, as Woods knew that Intellisys was based in California and that Intellisys' key management was located there. "Woods even told MCSi executives of his anger towards 'California,' by which he meant senior management."Roberts Decl., ¶ 19. Under agency principles, Woods' California contacts are attributable to Whitlock. Where an individual is acting as an agent of a corporation, that individual's actions in a forum state can subject the corporation to jurisdiction in that forum. *See Wells Fargo Co. V. Wells Fargo Express Co.,* 556 F.2d 406, 419 (9 th Cir.1977). Here, Woods is an employee of Whitlock. Furthermore, MCSi alleges that senior executives were aware that Woods was making the allegedly defamatory postings and encouraged the misbehavior.

**\*3** The injury in libel and defamation cases extends beyond the plaintiff to the residents of a state who are injured by receiving false information; "False statements of fact harm both the subject of the falsehood and the readers of the statement. [A forum state] may rightly employ its libel laws to discourage the deception of its citizens."*Keeton v. Hustler Magazine,* 465 U.S. 770, 776, 104 S.Ct. 1473, 79 L.Ed.2d 790 (1984).

Once it has been decided that a defendant purposefully availed itself of the forum state, it "must present a compelling case that the presence of some other considerations would render jurisdiction unreasonable" in order to defeat personal jurisdiction. *Burger King Corp. V. Rudzewicz,* 471 U.S. 462, 477, 105 S.Ct. 2174, 85 L.Ed.2d 528 (1985). In determining whether the exercise of jurisdiction comports with fair play and substantial justice, and is therefore reasonable, the Court considers seven

factors: (1) the extent of the defendant's purposeful injection in the forum state's affairs; (2) the burden on the defendant of defending in the forum; (3) the extent of conflict with the burden on the defendant's state; (4) the forum state's interest in adjudicating the dispute; (5) the most efficient judicial resolution of the controversy; (6) the importance of the forum to the plaintiff's interest in convenient and effective relief; and (7) the existence (or availability) of an alternative forum. *Glencore Grain Rotterdam B.V. v. Shivnath Rai Harnarian Co.,* 284 F.3d 1114 (9th Cir.2002). Almost all of these factors weigh in favor of the reasonableness of exercising personal jurisdiction over Whitlock.

As previously noted, the Court has determined that Whitlock directed its activities at California to a degree sufficient to satisfy the purposeful availment requirement. Additionally, MCSi has alleged that Whitlock has close business relationships with dozens of California vendors and that Whitlock has solicited business in California.

It does not appear that Whitlock would be greatly burdened by litigating in California. Whitlock is a major corporation with significant annual revenue and offices throughout the country. In this era of modern technology, it is not a due process violation to make a resident of one state, especially a major corporation like Whitlock, litigate in another state. "Defendants may confer with their counsel by telephone, fax and e-mail, and under this Court's Local Rules may even make telephonic court appearances."*Yahoo! Inc. v. La Ligue Contre Le Racisme Et, L'Antisemitisme,* 145 F.Supp .2d 1168, 1177 (N.D.Cal.2001). Whitlock has not alleged that any conflicts exist between the laws of California and the laws of Virginia, where Whitlock is based.

California courts have a strong interest in protecting California citizens from defamatory and false information. *Keeton,* 465 U.S. at 776.

The most efficient forum for hearing a claim ordinarily is where the injury occurred and where the witnesses are located. *Ochoa,* 287 F.3d at 1192. The location of the documents also is an important factor. *Rio Properties Inc. v. Rio International Interlink,* 284 F.3d 1007 (9th Cir.2002). This case has been litigated in California for more than a year now and the Court has become familiar with the substance of the case.

© 2008 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Furthermore, many of the important documents that have been collected by MCSi are with MCSi's counsel in California. On the other hand, many important witnesses are located in Texas.

**\*4** MCSi has a significant interest in having this lawsuit decided in this forum. Woods has already consented to jurisdiction in this forum. Granting the Motion to Dismiss would mean that MCSi would have to refile in another venue and maintain two duplicative lawsuits-one against Woods in California and one against Whitlock elsewhere. Such an outcome would be highly inefficient.

Alternative forums for resolving this dispute do exist, such as Ohio, where MCSi is based, Virginia, where Whitlock is headquartered, or Texas, where many of the events at issue took place.

As is apparent from the foregoing, almost all of the reasonableness factors favor MCSi's choice of forum. The Court thus concludes that the balance of the seven factors weighs in favor of Plaintiff and that jurisdiction over Defendants is reasonable.

III. Whitlock's Motion to Dismiss for Improper Venue

A. Legal Standard

Pursuant to 28 U.S.C. section 1391, venue is appropriate in a civil action where jurisdiction is founded on diversity of citizenship in (1) the judicial district where any of the defendants reside, if all defendants reside in the same state, (2) the judicial district in which a substantial part of the events or omissions giving rise to the claim occurred or a substantial part of the property that is subject to the action is situated, or (3) a judicial district in which any defendant is subject to personal jurisdiction at the time the action is commenced, if there is no district in which the action might otherwise be brought. Section 1391(c) provides that for the purposes of venue, a defendant that is a corporation shall be deemed to reside in any judicial district in which it is subject to personal jurisdiction at the time the action is commenced.

B. Discussion

Defendants do not all reside in the same state. Further, no factual information is set forth that would indicate that a substantial part of events or omissions giving rise to the claim occurred in California. However, based on the record of this Court and for the reasons discussed above, the Court has personal jurisdiction over Whitlock. For venue purposes, a corporation generally is a resident of, and thus venue is proper in, any judicial district in which the corporation is subject to personal jurisdiction when the action commenced. 28 U.S.C. § 1391(c). As the Court has personal jurisdiction over defendants, MCSi sustained its burden of establishing proper venue.

IV. Woods' Motion to Dismiss for Improper Venue

Woods consented to jurisdiction when he answered MCSi's original Complaint in Santa Clara County Superior Court more than a year ago, on or about October 26, 2001. After co-defendant Whitlock was served with MCSi's First Amended Complaint, Woods' counsel submitted a declaration supporting Whitlock's petition for removal, expressly consenting to the removal of this action from the Santa Clara County Superior Court to this Court. See Eisenberg Decl., Exh. B. The declaration states: "As legal counsel, I am providing consent on behalf of my client Woods to the removal of the State action to the federal district court."See Id.

**\*5**[2] By stipulating to the removal of this action to this Court, Woods waived any possible venue objection. Moreover, venue is proper for the reasons discussed above.

VI. ORDER

(1) Whitlock's Motion to Dismiss for Lack of Personal Jurisdiction and Improper Venue is DENIED; and
(2) Woods' Motion to Dismiss for Improper Venue is DENIED.

N.D.Cal.,2002.
MCSi, Inc. v. Woods
Not Reported in F.Supp.2d, 2002 WL 32059741 (N.D.Cal.)

END OF DOCUMENT

© 2008 Thomson/West. No Claim to Orig. U.S. Govt. Works.

© 2008 Thomson/West. No Claim to Orig. U.S. Govt. Works.

## Westlaw.

Not Reported in F.Supp.2d                                    Page 1
Not Reported in F.Supp.2d, 2003 WL 22736550 (W.D.Tex.)
**(Cite as: Not Reported in F.Supp.2d)**

**C**

Rosenthal v. Blue Diamond Growers, Inc.
W.D.Tex.,2003.
Only the Westlaw citation is currently available.
United States District Court,W.D. Texas, San Antonio Division.
Richard ROSENTHAL, Ceynada Rosenthal, Rosenthal Associates, Inc., and Purelight Technologies, LLC, Plaintiffs,
v.
BLUE DIAMOND GROWERS, INC. Defendant.
**No. SA-03-CV-424-RF.**

Nov. 12, 2003.

Bruce Burleson, Naman, Howell, Smith & Lee, Temple, TX, David G. Henry, Naman, Howell, Smith & Lee, Waco, TX, Christopher James Kling, Naman, Howell, Smith & Lee, LPP, College Station, TX, for Plaintiff.
Edward F. Valdespino, Strasburger & Price, LLP, San Antonio, TX, Michael A. Duncheon, Gordon D. McAuley, Hanson, Bridgett, Marcus, Vlahos & Rudy, LLP, San Francisco, CA, for Defendant.

### ORDER GRANTING DEFENDANT'S MOTION TO TRANSFER VENUE

FURGESON, J.

**\*1** Before the Court is Defendant Blue Diamond Growers, Inc.'s Motion to Transfer Venue to the United States District Court for the Eastern District of California, Sacramento Division, as well as Plaintiff's Response and Defendant's Reply. Because Defendant has shown that transfer would not substantially inconvenience Plaintiffs, that failure to transfer would inconvenience witnesses and parties, and that transfer would further the interests of justice, the Court will grant Defendant's Motion to Transfer Venue (Docket No. 7).

### BACKGROUND AND PROCEDURAL HISTORY

The Plaintiffs in this lawsuit allege causes of action

for patent infringement, breach of contract, fraud and misrepresentation, breach of fiduciary duty, and conversion against Defendant Blue Diamond Growers ("Blue Diamond"), a California corporation that produces and markets almonds. Plaintiffs' claims arise out of Blue Diamond's purchase for evaluation of a prototype called the Purelight Exposure System ("PES"), used to pasteurize almonds. The parties dispute whether the PES was patented, and if so, when. Plaintiffs claim that they relied upon prior negotiations with Blue Diamond, in which Blue Diamond represented its desire to purchase additional PES machines if the prototype was accepted, when they offered the PES prototype at a reduced cost. In short, Plaintiffs allege that Defendant obtained the use of Plaintiffs' patented machine technology and infringed on the Plaintiffs' patent by using the machine without permission and in violation of the limited licensing agreement.

Plaintiffs Richard and Ceynada Rosenthal are both citizens of the State of California, as is Rosenthal & Associates, Inc. ("RA"). Plaintiff Purelight Technologies, LLC ("Purelight") is a California limited liability company, which is owned in shares: 50% by Andy and Steffanie Smith, 47.5% by the Rosenthals, and 2.5% by Blue Diamond. The Smiths are also residents of California, and have not at this time been joined as Defendants. Blue Diamond is a California corporation with its principal place of business in California. Blue Diamond filed a Motion to Dismiss for Lack of Personal Jurisdiction and Improper Venue or in the Alternative to Transfer Venue on July 24, 2003. A hearing was held on August 21, 2003 at which time, the Court severed the issues. In a subsequent Order, the Court denied Blue Diamond's Motion to Dismiss, finding that Blue Diamond maintains sufficient minimum contacts with the Western District of Texas to maintain personal jurisdiction. In the remaining Motion to Transfer Venue, Defendant argues that transfer to the Eastern District of California, Sacramento Division would serve the convenience of the

© 2008 Thomson/West. No Claim to Orig. U.S. Govt. Works.

parties and witnesses and the interests of justice, as is required under 28 U.S.C. § 1404(a). Plaintiffs respond that Defendant has not met its burden to support a transfer and that concerns for delay and prejudice weigh against a transfer. Both Plaintiffs and Defendant support their briefs with supplemental evidence that has been admitted by the Court.

## DISCUSSION

*2 Defendants are proceeding under 28 U.S.C. § 1404(a), which permits a district court to transfer a civil action "to any other district or division where it might have been brought" if to do so is appropriate "[f]or the convenience of parties and witnesses, [and] in the interest of justice."The Fifth Circuit has determined that the first issue in consideration of a motion to transfer under § 1404(a) is that of whether the district or division to which transfer is sought is in fact one where the action "might have been brought." [FN1]Accordingly, the Court must make the threshold determination of whether the Eastern District of California is a judicial district in which this action might have been brought.

> FN1.*In re Horseshoe Entm't,* 337 F.3d 429, 433 (5th Cir.2003).

A federal district court is a forum in which suit "might have been brought" if both jurisdictional and venue requirements are satisfied.[FN2]Here, a court sitting in the Eastern District of California would have subject-matter jurisdiction and jurisdiction of the person of the defendant, and venue there would have been appropriate in the first instance because the Eastern District of California is a judicial district in which Defendant resides and maintains its principal place of business.[FN3]

> FN2.*Cowan v. Ford Motor Co.,* 713 F.2d 100, 103 n. 4 (5th Cir.1983) (citing *Van Dusen v. Barrack,* 376 U.S. 612, 621-22, 84 S.Ct. 805, 11 L.Ed.2d 945 (1964)).

> FN3. Appropriate venue in federal question cases, such as patent infringement

cases, is prescribed in 28 U.S.C. § 1391(b) which refers to the place of residence of the defendant. 28 U.S.C. § 1391(c) provides for the determination of a corporate defendant's residence:

... [A] defendant that is a corporation shall be deemed to reside in any judicial district in which it is subject to personal jurisdiction at the time the action is commenced. In a State which has more than one judicial district and in which a defendant that is a corporation is subject to personal jurisdiction at the time an action is commenced, such corporation shall be deemed to reside in any district in that State within which its contacts would be sufficient to subject it to personal jurisdiction if that district were a separate State, and, if there is no such district, the corporation shall be deemed to reside in the district within which it has the most significant contacts.

The Court is thus, in the exercise of its discretion, left to parse the relative importance of the private and the public interests contemplated in section 1404(a) in order to determine whether factors relevant to those interests require transfer to the alternative venue proposed by Defendant. The United States Supreme Court has noted that "Section 1404(a) is intended to place discretion in the district court to adjudicate motions for transfer according to an individualized, case-by-case consideration of convenience and fairness."[FN4]Such an exercise of discretion will not be disturbed on appeal, absent an abuse of discretion.[FN5]The burden is on the moving party to establish why there should be a change in forum.[FN6]In doing so, Defendant must persuade the Court that transfer would signify more than a shift in inconvenience from one party to another.[FN7]The court must consider "all relevant factors to determine whether or not on balance the litigation would more conveniently proceed and the interests of justice be better served by transfer to a different forum."[FN8]

> FN4.*Stewart Org., Inc. v. Ricoh Corp.,* 487 U.S. 22, 29, 108 S.Ct. 2239, 101 L.Ed.2d

© 2008 Thomson/West. No Claim to Orig. U.S. Govt. Works.

22 (1988).

FN5.*Peteet v. Dow Chemical Co.,* 868 F.2d 1428, 1436 (5th Cir.1989) (citing *Marbury-Pattillo Constr., Co. v. Bayside Warehouse Co. .,* 490 F.2d 155, 158 (5th Cir.1974).

FN6.*Time, I nc. v. Manning,* 3 66 F.2d 690, 698 (5th Cir.1966).

FN7.*Van Dusen,* 376 U.S. at 646.

FN8.15 C. WRIGHT & A. MILLER & E. COOPER, FEDERAL PRACTICE AND PROCEDURE § 3847 at 370 (1986).

Plaintiff's choice of forum is relevant, though not dispositive.[FN9]The weight that is to be assigned to this factor is imprecise in the abstract because in each case the facts may be more or less compelling. Here, Plaintiffs initiated the action in the Western District of Texas, San Antonio Division, reflecting their desire to litigate in San Antonio, specifically, or the Western District of Texas more broadly. On the other hand, Plaintiffs are not residents of the forum chosen, and therefore, their choice may be given less weight in ruling on a discretionary transfer.[FN10]

FN9.*In re Horseshoe Entm't,* 305 F.3d 354, 358-59 (5th Cir.2002) (citing *Garner v. Wolfinbarger,* 433 F.2d 117, 119 (5th Cir.1970)); *see also Norwood v. Kirkpatrick,* 349 U.S. 29, 32, 75 S.Ct. 544, 99 L.Ed. 789 (1955) (noting that a plaintiff's choice of forum is but one relevant factor for consideration under § 1404(a)).

FN10.*See New Image, Inc. v. Travelers Indem. Co.,* 536 F.Supp. 58, 59 (E.D.Pa.1981).

Defendant argues that transfer would serve the interest of justice and the convenience of the witnesses. Defendant repeatedly urges that all events underlying the cause of action occurred in Califor-

nia, that all parties are residents of California, and that all witnesses and evidence remain in California to this date. The only reason for the cause to remain in Texas, Defendant claims, is for the convenience of Plaintiffs' counsel. Defendant cites *In re Horseshoe Entertainment,*[FN11] and states that the convenience of counsel may not be considered as a relevant factor in the transfer analysis. This case was withdrawn by the Fifth Circuit,[FN12] but in the substituted opinion,[FN13] the majority reaffirmed that the location of counsel "is irrelevant and improper for consideration in determining the question of transfer of venue."[FN14]Thus, the Court disposes of the location of counsel as relevant to the instant analysis.

FN11.305 F.3d 354, 358 (5th Cir.2002).

FN12.*In re Horseshoe Entm't,* 2003 U.S.App. LEXIS 15372 (Jul. 1, 2003).

FN13.*In re Horseshoe Entm't,* 337 F.3d 429 (5th Cir.2003).

FN14.*Id.* at 434.

**\*3** Plaintiffs, on the other hand, allege that additional factors require denial of the motion to transfer venue. Plaintiffs claim that Defendant has failed to carry its burden, by failing to submit any evidence beyond affidavit that witnesses would be inconvenienced by trial in Texas. Plaintiffs indicate that they, as witnesses and representatives for the two corporate plaintiffs, stand ready and willing to travel to Texas without inconvenience. Plaintiffs cite to evidence of frequent travel by employees and representatives of Blue Diamond to points within Texas and throughout the world and claim that such evidence indicates that travel will not be an inconvenience for Defendant. Finally, Plaintiffs claim that the quantity of documentary evidence has not been established by Defendant as so voluminous or cumbersome as to prevent transport to Texas. Plaintiffs agreed to conduct discovery in California, and they concede that the all of the wrongful conduct complained of occurred in Cali-

© 2008 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.2d
Not Reported in F.Supp.2d, 2003 WL 22736550 (W.D.Tex.)
**(Cite as: Not Reported in F.Supp.2d)**

Page 4

fornia.

Defendant must do more than show that the Western District of Texas is an inconvenient forum. Defendant has to convince the Court "that Plaintiff would not be substantially inconvenienced by a transfer."[FN15]In light of this burden and in reply to Plaintiffs' objections to transfer, Defendant filed supplemental briefing on the motion. More importantly, Defendant also filed supplemental evidence, indicating the names and residences of witnesses that Blue Diamond expects to call, as well as the expected subject matter of each witness's testimony.[FN16]In reviewing Defendant's filings, the Court finds that Defendant has presented sufficient facts to support a transfer.

> FN15.15 C. WRIGHT & A. MILLER & E. COOPER, FEDERAL PRACTICE AND PROCEDURE § 3849, at 229.

> FN16. D's Supplemental Decl. of Gordon D. McAuley In Support of D's Mot. to Transfer Venue, ex. A.

First, with regard to the convenience of the witnesses and the parties, Defendant provides that its current and former employees, independent contractors, and other third party witnesses who will be called as witnesses at trial are located in areas surrounding Sacramento and Northern California, generally. Defendant has identified these witnesses, their current location, and status with respect to the case. Defendant has summarized what each witness might be expected to testify to on Defendant's behalf.[FN17]Plaintiffs object that Defendant has failed to elaborate as to why these witnesses would be especially inconvenienced by travel to San Antonio and argues that past habits of travel indicate that each employee witness would not be so inconvenienced. A company's travel schedule is not evidence that additional travel for the purposes of litigation is convenient. Moreover, Defendant has identified with particularity several former employees as witnesses, as well as the one-half owners of Purelight, the Smiths. Each of these witnesses lives in Califor-

nia, and Defendant avers that travel to litigate in Texas would be, at a minimum, inconvenient. Plaintiffs, on the other hand, offer no witness residing in the Western District of Texas, for whom the transfer would be inconvenient. In this case, all parties are located in California; all witnesses are located in California; and all underlying events occurred in California. The Court finds that a transfer of forum in this case would not work a transfer of inconvenience from one party to another or from one witness to another, but rather would substantially alleviate inconvenience to most, if not all, parties and witnesses, and cause inconvenience to none. Granted, Plaintiffs may suffer disappointment, as their opposition to the instant motion reveals. But the briefs and evidence before the Court suggest that Plaintiffs primary motivation in opposing the motion are their hope that a case filed in this district will resolve more speedily than will one in Sacramento. In support of their theory, Plaintiffs provide the docket statistics suggesting that Sacramento's heavier docket should weigh against transfer. The relevant factors in determining a transfer of forum, however, do not include speediness to trial or resolution.[FN18] Instead, as stated above, the Court is to consider the availability and convenience of the parties and witnesses and the interests of justice.

> FN17.*See Dupre v. Spanier Marine Corp.,* 810 F.Supp. 823, 825 (S.D.Tex.1993).

> FN18.*In re Horseshoe,* 337 F.3d at 434 ("We recognized that in rare and special circumstances a factor of 'delay' ... might be relevant ... but only if such circumstances are established by clear and convincing evidence."*Id.* As true in *Horseshoe,* here, "[n]o such evidence exists...." *Id.*).

*\*4* Second, Defendant argues that the interests of justice weigh in favor of a transfer. Defendant cites the burden posed by the Court's need to apply the law of a state other than that in which the Court sits. California law will apply to all of Plaintiffs'

© 2008 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Page 6 of 6

Not Reported in F.Supp.2d                                                    Page 5
Not Reported in F.Supp.2d, 2003 WL 22736550 (W.D.Tex.)
(Cite as: Not Reported in F.Supp.2d)

state law claims: breach of the written exclusivity agreement; breach of oral agreement to purchase machines; fraudulent misrepresentation; breach of fiduciary duty; and conversion. The Court finds that this argument has little heft because the law to be applied is that pertaining to contracts generally. Federal courts are often called upon to apply the laws of various states, and therefore the interests of justice do not require a transfer on the grounds of this point, especially in the absence of a showing that any significant burdens would attach to applying a particular body of law.

Finally, the Court finds that the documentary evidence - or books and records factor, as it is sometimes called - cuts neither in favor nor against transfer. Plaintiffs have already consented to conduct discovery in California, thereby demonstrating that litigation there will not inconvenience them. Additionally, Defendant states that all relevant documents were entered into and are maintained in California. Plaintiffs, on the other hand, aver that documents necessary to their prosecution of claims are already in Texas. The Court finds that all documentary evidence is present in California, and some documentary evidence has been copied and transferred to Texas with Plaintiffs' counsel. This factor does not shed light on the instant question, and instead, the Court relies upon the substantive concern of convenience of parties and witnesses to grant the motion to transfer venue.

## CONCLUSION

In consideration of the foregoing, the Court finds that both the convenience of the parties and witnesses and the interests of justice would be better served by a transfer to the Eastern District of California. Defendant met its burden by proffering sufficient facts to overcome Plaintiff's choice of forum in this case. Though the transferee forum is not Plaintiffs' first choice, they can not be inconvenienced by transfer to a court over one thousand miles closer to their own home, to the site of the conduct giving rise to the claim, to all witnesses

and evidence. The interest of justice in this case favors transfer.

Accordingly it is ORDERED that Defendant's Motion to Transfer Venue to the Eastern District of California, Sacramento Division is hereby GRANTED.

W.D.Tex.,2003.
Rosenthal v. Blue Diamond Growers, Inc.
Not Reported in F.Supp.2d, 2003 WL 22736550 (W.D.Tex.)

END OF DOCUMENT

© 2008 Thomson/West. No Claim to Orig. U.S. Govt. Works.

5

**H**Steinbuch v. Cutler
C.A.8 (Ark.),2008.
Only the Westlaw citation is currently available.
United States Court of Appeals,Eighth Circuit.
Robert STEINBUCH, Plaintiff-Appellant,
v.
Jessica CUTLER; Hyperion Books; Disney
Publishing Worldwide; Home Box Office; Time
Warner, Defendants-Appellees.
No. 07-1509.

Submitted: Jan. 14, 2008.
Filed: March 6, 2008.

**Background:** Law professor brought action against
author, publisher, and distributor for invasion of
privacy and intentional infliction of emotional
distress arising from the publication of author's
sexually explicit novel and the potential development
of a future television series based on it. The United
States District Court for the Eastern District of
Arkansas, William R. Wilson, Jr., J., 2007 WL
486626, dismissed professor's action. Professor
appealed.

**Holdings:** The Court of Appeals, Murphy, Circuit
Judge, held that:
(1) professor was entitled to jurisdictional discovery
to determine whether personal jurisdiction was
justified;
(2) professor failed to show that parent company was
subject to personal jurisdiction; and
(3) speculation regarding television production
company and its parent company was insufficient to
state privacy and outrage claim.

Affirmed in part and reversed in part.

**[1] Federal Courts 170B 🔑96**

170B Federal Courts
    170BII Venue
        170BII(A) In General
            170Bk96 k. Affidavits and Other Evidence.
Most Cited Cases

**Federal Courts 170B 🔑776**

170B Federal Courts
    170BVIII Courts of Appeals
        170BVIII(K) Scope, Standards, and Extent
            170BVIII(K)1 In General
                170Bk776 k. Trial De Novo. Most
Cited Cases
Court of Appeals reviews a dismissal for lack of
personal jurisdiction de novo, and the party asserting
jurisdiction bears the burden of establishing a prima
facie case.

**[2] Federal Courts 170B 🔑94**

170B Federal Courts
    170BII Venue
        170BII(A) In General
            170Bk94 k. Pleading Venue. Most Cited
Cases
To survive a motion to dismiss for lack of personal
jurisdiction, the plaintiff must state sufficient facts in
the complaint to support a reasonable inference that
defendants may be subjected to jurisdiction in the
forum state.

**[3] Appeal and Error 30 🔑840(2)**

30 Appeal and Error
    30XVI Review
        30XVI(A) Scope, Standards, and Extent, in
General
            30k838 Questions Considered
                30k840 Review of Specific Questions
and Particular Decisions
                    30k840(2) k. Questions of
Jurisdiction. Most Cited Cases

**Courts 106 🔑12(2.1)**

106 Courts
    106I Nature, Extent, and Exercise of Jurisdiction
in General
        106k10 Jurisdiction of the Person
            106k12 Domicile or Residence of Party
                106k12(2) Actions by or Against
Nonresidents; "Long-Arm" Jurisdiction in General
                    106k12(2.1) k. In General. Most

© 2008 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Cited Cases

Arkansas long arm statute confers jurisdiction to the fullest constitutional extent, limiting appellate inquiry to whether such an exercise of jurisdiction would comport with due process. U.S.C.A. Const.Amend. 14; West's A.C.A. § 16-4-101(B).

**[4] Constitutional Law 92 ☞3964**

92 Constitutional Law
    92XXVII Due Process
        92XXVII(E) Civil Actions and Proceedings
            92k3961 Jurisdiction and Venue
                92k3964 k. Non-Residents in General.
Most Cited Cases

Due process requires minimum contacts between a nonresident defendant and the forum state, such that the maintenance of the suit does not offend traditional notions of fair play and substantial justice. U.S.C.A. Const.Amend. 14.

**[5] Federal Courts 170B ☞76.5**

170B Federal Courts
    170BII Venue
        170BII(A) In General
            170Bk76 Actions Against Non-Residents; "Long-Arm" Jurisdiction in General
                170Bk76.5 k. Contacts with Forum State. Most Cited Cases

Minimum contact inquiry to exercise of personal jurisdiction focuses on whether the defendant purposely availed itself of the privilege of conducting activities within the forum state and thereby invoked the benefits and protections of its laws.

**[6] Federal Courts 170B ☞76.5**

170B Federal Courts
    170BII Venue
        170BII(A) In General
            170Bk76 Actions Against Non-Residents; "Long-Arm" Jurisdiction in General
                170Bk76.5 k. Contacts with Forum State. Most Cited Cases

A state may exercise "general jurisdiction" if a defendant has carried on in the forum state a continuous and systematic, even if limited, part of its general business; in such circumstances the alleged injury need not have any connection with the forum state.

**[7] Federal Courts 170B ☞96**

170B Federal Courts
    170BII Venue
        170BII(A) In General
            170Bk96 k. Affidavits and Other Evidence.
Most Cited Cases

For an exercise of general jurisdiction, plaintiff must make a prima facie showing, that the defendant's contacts were not random, fortuitous, or attenuated.

**[8] Federal Courts 170B ☞76.10**

170B Federal Courts
    170BII Venue
        170BII(A) In General
            170Bk76 Actions Against Non-Residents; "Long-Arm" Jurisdiction in General
                170Bk76.10 k. Defendant's Activities in Forum State; Cause of Action Arising Therefrom.
Most Cited Cases

"Specific jurisdiction" is appropriate only if the injury giving rise to the lawsuit occurred within or had some connection to the forum state, meaning that the defendant purposely directed its activities at the forum state and the claim arose out of or relates to those activities.

**[9] Federal Courts 170B ☞76.5**

170B Federal Courts
    170BII Venue
        170BII(A) In General
            170Bk76 Actions Against Non-Residents; "Long-Arm" Jurisdiction in General
                170Bk76.5 k. Contacts with Forum State. Most Cited Cases

To evaluate the sufficiency of a defendant's contacts, for purposes of an exercise of personal jurisdiction, court considers five factors, affording the first three primary importance: (1) the nature and quality of the defendant's contacts with the forum state; (2) the quantity of such contacts; (3) the relation of the cause of action to the contacts; (4) the interests of the forum state in providing a forum for its residents; and (5) the convenience of the parties.

**[10] Federal Courts 170B ☞76.5**

© 2008 Thomson/West. No Claim to Orig. U.S. Govt. Works.

170B Federal Courts
   170BII Venue
      170BII(A) In General
         170Bk76 Actions Against Non-Residents; "Long-Arm" Jurisdiction in General
            170Bk76.5 k. Contacts with Forum State. Most Cited Cases

**Federal Courts 170B ☞76.10**

170B Federal Courts
   170BII Venue
      170BII(A) In General
         170Bk76 Actions Against Non-Residents; "Long-Arm" Jurisdiction in General
            170Bk76.10 k. Defendant's Activities in Forum State; Cause of Action Arising Therefrom. Most Cited Cases

For purposes of an exercise of personal jurisdiction, factor governing the relation of the cause of action to the contacts, applies only in the specific jurisdiction context and is immaterial in a general jurisdictional inquiry.

**[11] Federal Courts 170B ☞81**

170B Federal Courts
   170BII Venue
      170BII(A) In General
         170Bk77 Corporations, Actions by or Against
            170Bk81 k. Sales, Solicitation and Advertising. Most Cited Cases

Percentage of a company's sales in a given state is generally not relevant to the general jurisdiction analysis as the focus lies on whether the contacts are continuous and systematic.

**[12] Federal Courts 170B ☞81**

170B Federal Courts
   170BII Venue
      170BII(A) In General
         170Bk77 Corporations, Actions by or Against
            170Bk81 k. Sales, Solicitation and Advertising. Most Cited Cases

Mere placement of a product into the stream of commerce, without more, is insufficient to constitute

purposeful availment, for purposes of an exercise of general jurisdiction.

**[13] Federal Civil Procedure 170A ☞1269.1**

170A Federal Civil Procedure
   170AX Depositions and Discovery
      170AX(A) In General
         170Ak1269 Grounds and Objections
            170Ak1269.1 k. In General. Most Cited Cases

Law professor was entitled to jurisdictional discovery to determine whether general personal jurisdiction over publisher would be justified in professor's action against publisher alleging invasion of privacy and intentional infliction of emotional distress, which arose from publication of author's sexually explicit and fictionalized novel based upon her encounters with men such as professor, where professor had offered documentary evidence, and not merely speculations or conclusory allegations, about publisher's contacts in Arkansas. West's A.C.A. § 16-4-101(B).

**[14] Federal Courts 170B ☞820**

170B Federal Courts
   170BVIII Courts of Appeals
      170BVIII(K) Scope, Standards, and Extent
         170BVIII(K)4 Discretion of Lower Court
            170Bk820 k. Depositions and Discovery. Most Cited Cases

Court of Appeals employs an abuse of discretion standard in reviewing a district court's denial of discovery.

**[15] Federal Courts 170B ☞82**

170B Federal Courts
   170BII Venue
      170BII(A) In General
         170Bk77 Corporations, Actions by or Against
            170Bk82 k. Agent Within District; Parent and Subsidiary. Most Cited Cases

Before a party may obtain personal jurisdiction over a parent company, the plaintiff must show that the parent dominates and controls the subsidiary; mere ownership of subsidiary is insufficient to justify personal jurisdiction.

© 2008 Thomson/West. No Claim to Orig. U.S. Govt. Works.

**[16] Federal Courts 170B ☞82**

170B Federal Courts
   170BII Venue
     170BII(A) In General
       170Bk77 Corporations, Actions by or Against
         170Bk82 k. Agent Within District; Parent and Subsidiary. Most Cited Cases
Whether a subsidiary is subject to personal jurisdiction in the state has no effect on the jurisdictional inquiry regarding its parent.

**[17] Federal Courts 170B ☞82**

170B Federal Courts
   170BII Venue
     170BII(A) In General
       170Bk77 Corporations, Actions by or Against
         170Bk82 k. Agent Within District; Parent and Subsidiary. Most Cited Cases
Law professor failed to show that parent company dominated or controlled its subsidiary publisher, so as to warrant exercise of general jurisdiction in Arkansas over professor's action against parent company for invasion of privacy and intentional infliction of emotional distress, which arose from publication of author's sexually explicit and fictionalized novel based upon her encounters with men such as professor, notwithstanding various newspaper articles which referred to publisher and parent company as publisher of the novel, the distribution agreement's citation of parent company as publisher, parent company's offering of television programming within state of Arkansas, or parent company's appointment of agent for service of process in Arkansas more than one year after publication of the novel. West's A.C.A. § 16-4-101(B).

**[18] Federal Courts 170B ☞82**

170B Federal Courts
   170BII Venue
     170BII(A) In General
       170Bk77 Corporations, Actions by or Against
         170Bk82 k. Agent Within District;

Parent and Subsidiary. Most Cited Cases
Parent company of publisher was not subject to exercise of specific jurisdiction in law professor's invasion of privacy and intentional infliction of emotional distress action in Arkansas, which arose from publication of author's sexually explicit and fictionalized novel based upon her encounters with men such as professor, absent credible evidence that parent company had any involvement in the publication or distribution of the novel. West's A.C.A. § 16-4-101(B).

**[19] Torts 379 ☞329**

379 Torts
   379IV Privacy and Publicity
     379IV(A) In General
       379k329 k. Types of Invasions or Wrongs Recognized. Most Cited Cases
An invasion of privacy claim in Arkansas incorporates the theories of (1) misappropriating the plaintiff's name or likeness for the defendant's commercial benefit; (2) intrusion upon seclusion; (3) public disclosure of private facts; and (4) false light in the public eye.

**[20] Damages 115 ☞57.21**

115 Damages
   115III Grounds and Subjects of Compensatory Damages
     115III(A) Direct or Remote, Contingent, or Prospective Consequences or Losses
       115III(A)2 Mental Suffering and Emotional Distress
         115k57.19 Intentional or Reckless Infliction of Emotional Distress; Outrage
           115k57.21 k. Elements in General. Most Cited Cases
To establish a claim of outrage under Arkansas law, a plaintiff must demonstrate that (1) the defendant intended to inflict emotional distress or knew or should have known that the emotional distress would be the likely result of the conduct; (2) the conduct was extreme and outrageous beyond all possible bounds of decency and intolerable in a civilized community; (3) the actions of the defendant were the cause of plaintiff's distress; and (4) the emotional distress sustained by the plaintiff was so severe that no reasonable person could be expected to endure it.

**[21] Damages 115 🔑57.25(3)**

115 Damages
   115III Grounds and Subjects of Compensatory Damages
     115III(A) Direct or Remote, Contingent, or Prospective Consequences or Losses
       115III(A)2 Mental Suffering and Emotional Distress
         115k57.19 Intentional or Reckless Infliction of Emotional Distress; Outrage
           115k57.25 Particular Cases
              115k57.25(3) k. Media and Publications. Most Cited Cases

**Damages 115 🔑149**

115 Damages
   115VIII Pleading
     115k149 k. Mental Suffering and Emotional Distress. Most Cited Cases

**Torts 379 🔑412**

379 Torts
   379IV Privacy and Publicity
     379IV(D) Actions in General
       379k412 k. Grounds and Conditions Precedent. Most Cited Cases

**Torts 379 🔑415**

379 Torts
   379IV Privacy and Publicity
     379IV(D) Actions in General
       379k415 k. Pleading. Most Cited Cases
Law professor's speculation that television production company might injure his privacy rights at some time in the future, after it acquired an option to develop a television series based on author's sexually explicit and fictionalized novel based upon her sexual encounters with men including professor, was insufficient to state claims of invasion of privacy and outrage under Arkansas law.

J. Thomas Sullivan, argued, Little Rock, AR (Jonathan Rosen, Bedminster, NJ, on the brief), for appellant.
Philip S. Anderson, argued, Little Rock, AR (Jess Askew III and Clayborne S. Stone, on the brief), for appellees, Hyperion books and Disney Publishing.
Nathan M. Norton, argued, Little Rock, AR (Claire Shows Hancock and Gary D. Marts, Jr., on the brief) for appellees, HBO and Time Warner.

Before LOKEN, Chief Judge, MURPHY, Circuit Judge, and JARVEY,[FN1]District Judge.

MURPHY, Circuit Judge.
*1 Robert Steinbuch brought this action against Jessica Cutler and several corporate entities for invasion of privacy and intentional infliction of emotional distress arising from the publication by Hyperion Books of Cutler's sexually explicit novel and the potential development of a future television series based on it. The district court [FN2] dismissed Steinbuch's action against Cutler, Hyperion Books, and Disney Publishing Worldwide for lack of personal jurisdiction and against Home Box Office and Time Warner for failure to state a claim. Steinbuch appealed, but his appeal of the dismissal of Cutler was stayed after she filed a bankruptcy petition in New York.[FN3]We affirm except as to Hyperion Books.

I.

Robert Steinbuch is currently a law professor at the University of Arkansas in Little Rock. Prior to assuming that position in the summer of 2005,[FN4] he worked in Washington, D.C. While serving as counsel to then Senator Mike DeWine on the United States Senate Judiciary Committee, Steinbuch engaged in a sexual relationship with fellow staff member Jessica Cutler. Unbeknownst to him, Cutler was chronicling physical encounters with him and five other men in her internet weblog entitled *The Washingtonienne.*The weblog, a graphic online diary which achieved particular notoriety in Washington, D.C. when posted in May 2004, describes intimate details of Cutler's relationship with Steinbuch and her other lovers. Steinbuch was not identified by name in the weblog; he was generally referred to by his initials "RS" although Cutler at least once called him "Rob." She also revealed some personal information, including his place of employment, religious affiliation, and physical attributes. ("RS looks just like George Clooney when he takes off his glasses."). Steinbuch does not dispute that he had a brief liaison with Cutler but denies particular statements she made in her weblog about some of his alleged sexual

preferences and practices, including spanking and use of handcuffs.

Approximately one year after her weblog posting, Cutler authored a fictionalized book based on its content. Like the weblog, her novel is entitled *The Washingtonienne* and describes a young woman's trysts with numerous men in Washington, D.C., including a Congressional committee staff lawyer. The novel concerns fictional characters and does not refer to Steinbuch by name or by his initials. It was published in June 2005 by Hyperion Books (Hyperion), an imprint of Buena Vista Books Inc. (Buena Vista), which is a wholly owned subsidiary of Disney Publishing Worldwide (Disney). The novel was distributed throughout the United States by Time Warner Book Group, Inc., now Hachette Book Group, USA. Time Warner Book Group, Inc. was a subsidiary of Time Warner.

Steinbuch filed his complaint in the federal district court for the Eastern District of Arkansas, alleging invasion of privacy and intentional infliction of emotional distress-the tort of outrage-for the book's graphic description of his sexual relationship with Cutler. In addition to Cutler, he sued the publisher, its parent corporation Disney, as well as Home Box Office (HBO) and its parent Time Warner. HBO has secured an option to develop a television series based on the book.

**\*2** None of the defendants reside, are incorporated, or have their principal place of business in Arkansas. Cutler, Hyperion, and Disney argued in the district court that they lacked the requisite minimum contacts with Arkansas and were therefore entitled to dismissal pursuant to Fed. R. Civ. Proc. 12(b)(2). Time Warner and HBO filed a Fed. R. Civ. Proc. 12(b)(6) motion for failure to state a claim upon which relief could be granted. In response to these motions, Steinbuch petitioned the district court for a three month extension to file a reply. Defendants asked the court to stay discovery pending its ruling on their dismissal motions because they wanted to avoid potentially broad discovery requests and the risk of waiving their jurisdictional claims before their motions were ruled on. Steinbuch filed a motion opposing a stay of discovery; the motion made no explicit request to conduct limited discovery tailored to the specific issue of personal jurisdiction. The district court allowed Steinbuch an extension of about

two months to file his reply, but granted the defense motion to stay discovery until ruling on the motions.

The district court noted that all the corporate defendants sold their products or services in Arkansas and analyzed whether it could exercise personal jurisdiction over them under either specific or general personal jurisdiction. It found that *The Washingtonienne* and other books published by Hyperion were being sold in Arkansas bookstores. There was no evidence that Hyperion had mounted a large advertising campaign, and the court observed that only about fifty copies had been sold to wholesale and retail accounts in Arkansas. The district court concluded that the exercise of personal jurisdiction over Hyperion would be unwarranted because its contacts with Arkansas were too attenuated and the injury to Steinbuch did not occur as a result of its activities directed at the forum state, especially since Steinbuch had moved to Arkansas only after publication of the novel.

The action against Disney was also dismissed for lack of personal jurisdiction because it is a separate corporate entity from Hyperion and played no role in publishing the novel. Since Steinbuch had failed to rebut Disney's affidavits that it had no direct involvement in the novel's publication, the district court concluded that he had not made a prima facie case that Disney had engaged in conduct causing his injury or that it maintained the requisite contacts with Arkansas to be subject to personal jurisdiction.

In concluding that no personal jurisdiction could be exercised over defendants, the district court noted Arkansas' relatively small interest in the dispute since the claims did not arise in the state and the alleged injuries occurred prior to Steinbuch's move to Arkansas. The court also suggested that the District of Columbia, where the novel's events took place and where potential witnesses resided, would serve as a more appropriate forum.

**\*3** The district court also granted the dismissal motions of HBO and its corporate parent Time Warner for failure to state a claim for relief under Arkansas law, concluding that the complaint offered no indication that they had invaded Steinbuch's privacy, committed outrage, or had breached a duty toward him.

On appeal Steinbuch asks us to reverse the district court's dismissal of his claims against Hyperion and Disney for lack of personal jurisdiction and against HBO and Time Warner for failure to state a claim. He also appeals the district court's stay of discovery pending its ruling on the motions to dismiss.

II.

[1][2][3] We review a dismissal for lack of personal jurisdiction de novo, and the party asserting jurisdiction bears the burden of establishing a prima facie case. _Johnson v. Woodcock,_ 444 F.3d 953, 955 (8th Cir.2006). To survive a motion to dismiss, the plaintiff must state sufficient facts in the complaint to support a reasonable inference that defendants may be subjected to jurisdiction in the forum state. _Dever v. Hentzen Coatings, Inc.,_ 380 F.3d 1070, 1072 (8th Cir.2004). The Arkansas long arm statute confers jurisdiction to the fullest constitutional extent, limiting our inquiry to whether such an exercise of jurisdiction would comport with due process. _Id._ at 1073;_see also_Ark.Code Ann. § 16-4-101(B)(1999).

[4][5] Due process requires "minimum contacts" between a nonresident defendant and the forum state, such that the maintenance of the suit does not offend "traditional notions of fair play and substantial justice."_World-Wide Volkswagen Corp. v. Woodson,_ 444 U.S. 286, 291-92, 100 S.Ct. 559, 62 L.Ed.2d 490 (1980). The minimum contact inquiry focuses on whether the defendant purposely availed itself of the privilege of conducting activities within the forum state and thereby invoked the benefits and protections of its laws. _Hanson v. Denckla,_ 357 U.S. 235, 253, 78 S.Ct. 1228, 2 L.Ed.2d 1283 (1958).

[6][7][8] The Supreme Court has recognized two theories for evaluating personal jurisdiction: general and specific jurisdiction._Helicopteros Nacionales de Colombia, S.A. v. Hall,_ 466 U.S. 408, 414-15, 104 S.Ct. 1868, 80 L.Ed.2d 404 (1984). A state may exercise general jurisdiction if a defendant has carried on in the forum state a continuous and systematic, even if limited, part of its general business; in such circumstances the alleged injury need not have any connection with the forum state. _Keeton v. Hustler Magazine, Inc.,_ 465 U.S. 770, 779, 104 S.Ct. 1473, 79 L.Ed.2d 790 (1984). The plaintiff must make a prima facie showing, however, that the defendant's contacts were not "random," "fortuitous,"

or "attenuated." _Id._ at 774, 104 S.Ct. 1473.Specific jurisdiction on the other hand is appropriate only if the injury giving rise to the lawsuit occurred within or had some connection to the forum state, meaning that the defendant purposely directed its activities at the forum state and the claim arose out of or relates to those activities._Burger King Corp. v. Rudzewicz,_ 471 U.S. 462, 472, 105 S.Ct. 2174, 85 L.Ed.2d 528 (1985).

[9][10] To evaluate the sufficiency of a defendant's contacts, we consider five factors, affording the first three primary importance: 1) the nature and quality of the defendant's contacts with the forum state; 2) the quantity of such contacts; 3) the relation of the cause of action to the contacts; 4) the interests of the forum state in providing a forum for its residents; and 5) the convenience of the parties. _Burlington Industries, Inc. v. Maples Industries, Inc.,_ 97 F.3d 1100, 1102 (8th Cir.1996). The third factor-the relation of the cause of action to the contacts-applies only in the specific jurisdiction context and is immaterial in a general jurisdictional inquiry. See _Johnson,_ 444 F.3d at 956.

A.

*4 Hyperion contends that it maintained no contacts with Arkansas which would justify the exercise of either theory of personal jurisdiction and asserts that no specific jurisdiction is warranted because this litigation did not result from injuries arising out of or relating to Hyperion's activities in Arkansas. See _Burlington Industries, Inc.,_ 97 F.3d at 1103.Steinbuch responds that specific jurisdiction exists over Hyperion, suggesting that he suffered harm due to the publisher's activities directed at Arkansas which resulted in the purchase of Cutler's novel by state residents. To sustain his argument, Steinbuch would have to show that Hyperion knew that "the brunt of the injury would be felt by [him] in the State in which [he] lives and works" and intentionally targeted the forum state. See _Calder v. Jones,_ 465 U.S. 783, 789-90, 104 S.Ct. 1482, 79 L.Ed.2d 804 (1984). This is an unlikely proposition, since the publication of _The Washingtonienne_ occurred around the same time as Steinbuch's move to Arkansas.

While Steinbuch claims that he became an Arkansas resident just prior to the publication of the novel and produced an employment offer letter from the

© 2008 Thomson/West. No Claim to Orig. U.S. Govt. Works.

University of Arkansas to begin his position on June 1, 2005, he failed to assert in his first and amended complaints that he resided in Arkansas at the time and provided no affidavit to the district court declaring his date of residency in the state. Hyperion refuted Steinbuch's residency claim by pointing to his failure to allege this fact in his complaints. Steinbuch's cause of action appears to have no direct connection with the forum state or to have arisen out of or relate to Hyperion's activities in Arkansas. *See Burger King Corp., 471 U.S. at 472, 105 S.Ct. 2174.*None of the events described in the novel took place in Arkansas, and Steinbuch has failed to show that Hyperion's contacts with Arkansas and the relationship between his cause of action and those contacts are sufficient to justify the exercise of specific jurisdiction. *See Burlington Industries, Inc., 97 F.3d at 1102.*

Hyperion asserts that no general jurisdiction exists because it did not conduct business in the forum state as defined by Arkansas statute in Ark.Code. Ann § 4-27-1501 (a foreign corporation may not transact business in Arkansas until it obtains a certificate of authority from the secretary of state). Hyperion also argues that it is not responsible for the distribution of its books and that it lacks formalized ties to Arkansas such as a bank account, a registered agent, a corporate office, or real estate. *See, e.g., Dever, 380 F.3d at 1074* (noting absence of these factors in finding a lack of general jurisdiction); *but see Vandelune v. 4B Elevator Components Unlimited, 148 F.3d 943, 948 (8th Cir.1998)* (absence of these factors, while significant, is not determinative on question of market presence). Steinbuch counters that Hyperion purposely availed itself of the protections of the forum state laws by continuously and deliberately exploiting the Arkansas market. *See Keeton, 465 U.S. at 781, 104 S.Ct. 1473.*In support of his argument, Steinbuch produced a list of approximately thirty different Hyperion book titles available in a particular Arkansas bookstore, affidavits by several individuals who purchased Cutler's novel in Arkansas, and an affidavit declaring that *The Washingtonienne* is available at all major bookstores in Arkansas, as well as through the state's central public library system.

**\*5**[11] In finding a lack of general jurisdiction, the district court emphasized the relatively small number of sales of *The Washingtonienne* in Arkansas and the

lack of a substantial advertising campaign for the book in the state. In a general jurisdiction inquiry, however, we must look not to the sales of that particular novel but to Hyperion's general presence in Arkansas. *See id. at 779-81, 104 S.Ct. 1473* (nonresident magazine publisher subject to general personal jurisdiction for alleged defamation because it carried out part of its general business in the forum state and benefitted from the magazine sales there). The percentage of a company's sales in a given state is generally not relevant to the general jurisdiction analysis as the focus lies on whether the contacts are continuous and systematic. *See Lakin v. Prudential Securities, Inc., 348 F.3d 704, 709 (8th Cir.2003).* Since the affidavits by individuals who purchased *The Washingtonienne* in Arkansas imply that Hyperion has profited from the sale of its books in the state, the inquiry centers on whether the publisher's forum contacts are such that it purposely availed itself of the privilege of conducting business in the state and should therefore have reasonably anticipated being haled into court. *See Johnson, 444 F.3d at 955.*

[12] While mere placement of a product into the stream of commerce, without more, is insufficient to constitute purposeful availment, *Dever, 380 F.3d at 1075,* we have recognized a state's exercise of jurisdiction over a seller who delivered its products to a regional distributor with an expectation that the distributor would penetrate the forum state. *See Vandelune, 148 F.3d at 948.*Seeking to demonstrate that it exercised no influence over the distribution of its books, Hyperion disclosed to the district court its agreement with distributor Time Warner Book Group, Inc. Although the agreement granted the distributor the exclusive right and sole responsibility for distribution of the books throughout the United States and did not explicitly target specific states or regions, it did provide for written monthly sales reports to the publisher. The fact that it contracted to receive monthly sales reports, especially if these reports were to display sales on a state by state basis, would permit an inference that Hyperion had reasonable expectations and knowledge that its products were going to be offered in the Arkansas market. *See Barone v. Rich Bros. Display Fireworks Co., 25 F.3d 610, 613 (8th Cir.1994)* (foreign fireworks producer's alleged lack of knowledge of distribution "defies reason and could aptly be labeled 'willful' "); *but see Guinness Import Co. v. Mark VII Distributors, Inc., 153 F.3d 607, 615 (8th Cir.1998)*

(foreign beer manufacturer whose title over the beer passed to importer in Jamaica and who exercised no control over selection of distributor in the United States not subject to jurisdiction in Minnesota).

There is also evidence, as a result of Hyperion's disclosure of the distribution agreement, that the publisher was actively involved in marketing plans and promotions of books placed in stores. Hyperion's distribution agreement provides that "Publisher will consult with Distributor with respect to establishing marketing plans, sales forecasting, determining appropriate print runs, and planning advertising and promotional campaigns for the Books, and Publisher will make and notify Distributor of final decisions."See _Sondergard v. Miles Inc.,_ 985 F.2d 1389, 1397 (8th Cir.1993) (noting that cold medicine manufacturer did not limit where its products may be purchased and was therefore subject to general jurisdiction). It thus appears that Hyperion may have been involved in the promotion and marketing of its books and might have reasonably expected their distribution in Arkansas.

**\*6** Although carrying less weight than the nature, quality, and quantity of Hyperion's contacts with the forum, other relevant factors are the interest of the state in protecting its residents and the need to ensure that a suit in the forum would not offend defendant's due process rights. _Dever,_ 380 F.3d at 1074.Although Steinbuch is a relatively new resident, Arkansas has an interest in protecting his privacy rights as it is the forum where he would appear to suffer the most direct effects of Hyperion's activities. Cf. _Lakin,_ 348 F.3d at 713 (state has significant interest in giving insolvent insurance companies a forum to litigate). The burden of litigation to a corporate publisher such as Hyperion, which is incorporated in California and derives profits from the sale of its books across the country, would not appear to be so great as to require dismissal. _See Burger King Corp.,_ 471 U.S. at 473-74, 105 S.Ct. 2174 (unfairness could arise if parties which purposefully derive benefit from interstate activities were allowed to escape from consequences arising from those activities).

[13][14] Steinbuch claims that by granting a stay of discovery pending its rulings on the motions to dismiss his complaint, the district court wrongly deprived him of the opportunity to support his jurisdictional argument. We employ an abuse of

discretion standard in reviewing a district court's denial of discovery. _Lakin,_ 348 F.3d at 713.On the basis of the current record which reflects that Steinbuch offered documentary evidence, and not merely speculations or conclusory allegations, about Hyperion's contacts with Arkansas, the district court should not have dismissed his action against Hyperion without permitting him to take some jurisdictional discovery to establish whether general personal jurisdiction would be justified. _See Dever, 380 F.3d at 1074 n. 1._

At this point, however, Steinbuch has not adduced sufficient proof for a prima facie case of general personal jurisdiction over Hyperion. He has not shown enough specifics about the quality and quantity of Hyperion's contacts with the state or the publisher's exploitation of the Arkansas market. We therefore remand Steinbuch's claim against Hyperion for an opportunity for tailored discovery to elicit whether its contacts with Arkansas were so continuous and systematic as to warrant general personal jurisdiction over the publisher.

B.

Appellee Disney asserts that it has no connection to Steinbuch's claim, refuting a basis for either theory of personal jurisdiction. Challenging Steinbuch's assertion that it should be responsible for his injuries inflicted by Buena Vista's Hyperion imprint, Disney argues that it did not contract with Cutler, did not publish the novel, and was not party to the distribution agreement. Affidavits by Hyperion and Disney executives stated that while Disney is Buena Vista's parent, they are distinct corporate entities with separate bank accounts and books and records and Disney does not control the day to day affairs of Buena Vista. Disney maintained no registered agent, bank accounts, telephone listings, real estate, or offices in Arkansas at the time Steinbuch filed suit. Steinbuch contends, however, that Disney engages in continuous and systematic business activity in Arkansas, pointing to its cable television programs in the state and the registered agent for process Disney installed in September 2006.

**\*7**[15][16] Before a party may obtain personal jurisdiction over a parent company, the plaintiff must show that the parent dominates and controls the subsidiary; mere ownership of subsidiary is

© 2008 Thomson/West. No Claim to Orig. U.S. Govt. Works.

insufficient to justify personal jurisdiction. *Epps v. Stewart Information Services Corp.,* 327 F.3d 642, 648-49 (8th Cir.2003). Whether a subsidiary is subject to personal jurisdiction in the state has no effect on the jurisdictional inquiry regarding its parent. *Id.* at 649 ("A corporation is not doing business in a state merely by the presence of its wholly owned subsidiary.").

[17] Steinbuch failed to meet his burden of proving jurisdiction by providing any affidavits, testimony, or documents in response to Disney's affidavit denying control over Hyperion and challenging personal jurisdiction. *See Dever,* 380 F.3d at 1073.Steinbuch merely submitted various newspaper articles which referred to Hyperion/Disney as publisher of *The Washingtonienne.*The articles did not establish that Disney controls Hyperion and therefore did nothing to refute Disney's affidavit. Steinbuch additionally pointed to the distribution agreement governing the sales and marketing of the book as a basis for personal jurisdiction, citing to it as evidence that Disney published the novel under the Hyperion imprint, since the agreement includes a footnote on the bottom of each page that reads "CFR/Disney Agreement. 12.04.03(v5)." Even a cursory look at the distribution agreement, however, shows that it was entered into by the distributor Time Warner Book Group, Inc. and three publishers, not including Disney Publishing Worldwide. The plain language of the agreement excludes "books published by Publisher's parent company, The Walt Disney Company, and companies which are owned or controlled by The Walt Disney Company (other than Publisher)." The distribution agreement thus cannot serve to establish personal jurisdiction over Disney.

By not furnishing factual evidence in response to Disney's denial of continuous and systematic contacts in the state, Steinbuch fell short of establishing a prima facie case of general jurisdiction. Whether some arm of The Walt Disney Company media empire offers television programming in Arkansas does not determine the propriety of personal jurisdiction over appellee Disney Publishing Worldwide. The appointment of an agent for service of process in Arkansas occurred more than one year after the publication of *The Washingtonienne* and after Disney's motion to dismiss, and is but one factor in undertaking the minimum contacts inquiry; it is insufficient by itself to prove a prima facie case. *See*

*Pecoraro v. Sky Ranch For Boys, Inc.,* 340 F.3d 558, 562 (8th Cir.2003) ("Minimum contacts must exist either at time the cause of action arose, the time the suit is filed, or within a reasonable period of time immediately prior to the filing of the lawsuit.").

[18] In light of Steinbuch's failure to show that Disney had a connection with the dispute, we see no justification for the exercise of specific jurisdiction. *See Calder,* 465 U.S. at 788, 104 S.Ct. 1482 (specific jurisdiction inquiry focuses on "the relationship among the defendant, the forum, and the litigation"). Since Steinbuch offered no credible evidence that Disney had any involvement in the publication or distribution of the novel and instead made merely conclusory allegations about Disney's alleged role, the district court did not err in dismissing his claims for lack of personal jurisdiction.

**\*8** Finally, the district court did not abuse its discretion by granting a stay of discovery against Disney because Steinbuch failed to rebut its affidavits denying corporate control over Hyperion and offered only speculative and conclusory assertions about Disney's contacts with the forum state. *See Dever,* 380 F.3d at 1074.

### C.

We next address Steinbuch's allegation that he was harmed by HBO's acquisition of an option to produce a fictional television series based on *The Washingtonienne.*The district court granted the motion by HBO and Time Warner for dismissal under Fed. R. Civ. Proc. 12(b)(6) because it concluded that Steinbuch had failed properly to plead causes of action in his complaint for invasion of privacy and outrage.

[19][20] Applying de novo review to the district court's ruling, we assume as true all allegations in the complaint which must contain sufficient facts, as opposed to mere conclusions, in support of the legal requirements of the claim to avoid dismissal. *DuBois v. Ford Motor Credit Co.,* 276 F.3d 1019, 1022 (8th Cir.2002). An invasion of privacy claim in Arkansas incorporates the theories of (1) misappropriating the plaintiff's name or likeness for the defendant's commercial benefit; (2) intrusion upon seclusion; (3) public disclosure of private facts; and (4) false light in the public eye.*Milam v. Bank of Cabot,* 327 Ark.

--- F.3d ----
--- F.3d ----, 2008 WL 596747 (C.A.8 (Ark.))
(Cite as: --- F.3d ----)

Page 11

256, 937 S.W.2d 653, 657 (1997). To establish a claim of outrage, a plaintiff must demonstrate that (1) the defendant intended to inflict emotional distress or knew or should have known that the emotional distress would be the likely result of the conduct; (2) the conduct was extreme and outrageous beyond all possible bounds of decency and intolerable in a civilized community; (3) the actions of the defendant were the cause of plaintiff's distress; and (4) the emotional distress sustained by the plaintiff was so severe that no reasonable person could be expected to endure it. _Calvary Christian School, Inc. v. Huffstuttler,_ 367 Ark. 117, 238 S.W.3d 58, 68 (2006).

[21] HBO concedes that it has acquired an option to develop a television series based on Cutler's novel but asserts that it has not published anything whatsoever about Steinbuch and thus has not invaded his privacy or caused outrage. _See Calvary Christian,_ 238 S.W.3d at 68 (dismissing claim of outrage since the conduct has not yet occurred); _Restatement 2d Torts § 652A-E_ (invasion of privacy implies publicity of private facts of another). Steinbuch's complaint is devoid of any factual support for his allegation that he has been injured by the yet undeveloped television series.

Steinbuch merely speculates that HBO might injure his privacy rights at some time in the future, and its parent corporation Time Warner is not even mentioned in the body of the complaint. _See Levy v. Ohl,_ 477 F.3d 988, 991 (8th Cir.2007) (complaint must allege sufficient facts to avoid dismissal). In light of the complaint's failure to allege a colorable claim against HBO and Time Warner, there would be no basis for injunctive relief against the mere possibility of a future television series based on Cutler's novel [FN5] or against Time Warner for its alleged role as the distributor of _The Washingtonienne,_ an allegation which is nowhere to be found in the complaint. We also find no abuse of discretion in the district court's refusal to allow discovery against Time Warner and HBO because Steinbuch's complaint lacked sufficient allegations to state a claim.

III.

*9 Accordingly, we affirm the judgment of the district court dismissing Disney World Publishing, Time Warner, and Home Box Office. We reverse the final judgment entered in favor of Hyperion Books, and remand for further proceedings not inconsistent with this opinion and for discovery on the issue of whether general personal jurisdiction exists over Hyperion.

FN1. The Honorable John A. Jarvey, United States District Judge for the Southern District of Iowa, sitting by designation.

FN2. The Honorable William R. Wilson, Jr., United States District Judge for the Eastern District of Arkansas.

FN3. Steinbuch then filed a claim against Cutler in federal bankruptcy court for the Northern District of New York. His earlier action against Cutler in federal district court in Washington, D.C. has also been stayed.

FN4. Steinbuch claims in his brief that he has been a resident of Arkansas since June 1, 2005 and provided an employment offer letter from the university as supporting evidence; his complaint does not allege when he moved to Arkansas. The district court found that Steinbuch had not yet become a resident by the time the novel was published in June 2005.

FN5. We therefore need not discuss any potential First Amendment issues in respect to an injunction pertaining to these parties. _See Nebraska Press Ass'n v. Stuart,_ 427 U.S. 539, 559, 96 S.Ct. 2791, 49 L.Ed.2d 683 (1976) (prior restraints on speech and publication are the most serious and least tolerable infringement on First Amendment rights).

C.A.8 (Ark.),2008.
Steinbuch v. Cutler
--- F.3d ----, 2008 WL 596747 (C.A.8 (Ark.))

END OF DOCUMENT

Westlaw.

Slip Copy
Slip Copy, 2007 WL 1655230 (N.D.Ill.)
(Cite as: Slip Copy)

Swanson v. Endres
N.D.Ill.,2007.
Only the Westlaw citation is currently available.
United States District Court,N.D. Illinois,Eastern
Division.
Laura SWANSON, Plaintiff,
v.
Todd ENDRES, in his professional and individual
capacities and Brady Corporation, a Wisconsin cor-
poration, Defendants.
No. 07 C 1185.

June 6, 2007.

Kelly Q. Bennett, Bennett Law Offices, Aurora, IL,
for Plaintiff.
Patrick S. Nolan, Quarles & Brady, Milwaukee,
WI, for Defendants.

### MEMORANDUM OPINION AND ORDER

ROBERT W. GETTLEMAN, United States District
Judge.
*1 Plaintiff, Laura Swanson, has filed a two count
complaint against defendants Todd Endres and his
employer, Brady Corporation ("Brady"), seeking
damages for personal injuries sustained in an auto-
mobile accident that occurred in Racine, Wiscon-
sin. Defendants have moved to transfer venue to the
United States District Court for the Eastern District
of Wisconsin, pursuant to 28 U.S.C. § 1406(a). For
the reasons discussed below, defendant's motion is
granted.

### FACTS

According to the complaint, plaintiff is a citizen
and resident of Illinois. Defendant Brady is a Wis-
consin corporation with its principal place of busi-
ness in the Eastern District of Wisconsin. Defend-
ant, Todd Endres, is a citizen and resident of the
Eastern District of Wisconsin and an employee of
defendant Brady Corporation. The amount in con-

troversy for is in excess of $75,000 exclusive of in-
terest and costs.

On or about June 3, 2005, plaintiff and defendant
Endres, who was driving a company car and acting
within the scope of his employment with defendant
Brady Corporation, were involved in an accident in
Racine, Wisconsin. According to plaintiff, Endres
negligently drove his vehicle into plaintiff's lane of
travel causing her vehicle to collide with defendant
and a concrete median barrier. The accident resul-
ted in injuries to plaintiff for which she seeks com-
pensation.

### DISCUSSION

Defendants have moved to transfer the case pursu-
ant to 28 U.S.C. § 1406(a) to the Eastern District of
Wisconsin, arguing that venue is improper in
Illinois. In an action founded solely on diversity of
citizenship, venue is governed by 28 U.S.C. §
1391(a) which provides:
A civil action wherein jurisdiction is founded only
on diversity of citizenship may, except as otherwise
provided by law, be brought only in (1) a judicial
district where any defendant resides, if all defend-
ants reside in the same State, (2) a judicial district
in which a substantial part of the events or omis-
sions giving rise to the claim occurred, or a sub-
stantial part of property that is the subject of the ac-
tion is situated, or (3) a judicial district in which
any defendant is subject to personal jurisdiction at
the time the action is commenced, if there is no dis-
trict in which the action may otherwise be brought.

In the instant case, because both defendants reside
in Wisconsin venue is proper in any district in
which either one of the defendants resides. Because
both defendants reside in the Eastern District of
Wisconsin, venue is proper there.

Additionally, under 28 U.S.C. § 1391(a)(2) venue is
also proper in the Eastern District of Wisconsin be-
cause the events giving rise to the claim (the acci-

© 2008 Thomson/West. No Claim to Orig. U.S. Govt. Works.

dent) occurred there. Finally, 28 U.S.C. § 1391(a)(3) does not apply because it is reserved for those instances in which there is no district where the action may otherwise be brought.

Despite the fact that venue is proper in the Eastern District of Wisconsin, plaintiff has brought the case in the Northern District of Illinois, the district in which she resides. Although unclear, she appears to be asserting that venue is proper here under § 1391(a)(1) [FN1] because, as noted above, under § 1391(a)(2) venue lies in the Eastern District of Wisconsin and § 1391(a)(3) is inapplicable. Therefore, although not articulated well, plaintiff must be relying upon § 1391(a)(1).

> FN1. Plaintiff's brief confuses personal jurisdiction with venue, which are two very distinct legal concepts. Personal jurisdiction refers to the power of a court over the defendant. Venue designates the particular court among those with jurisdiction that may hear and determine a case.

*2 Under that subsection, because both defendants reside in the same state, venue is proper in any district in which either one of the defendants resides. As noted, all defendants reside in Wisconsin, making the district in which either defendant resides proper venue. As a corporation, however, Brady is also "deemed to reside in any judicial district in which it is subject to personal jurisdiction at the time the action is commenced." 28 U.S.C. § 1391(c). It is uncontested that Brady is subject to personal jurisdiction in the Northern District of Illinois and, therefore, resides in the district. Because all defendants reside in Wisconsin, plaintiff must be arguing that this district is a proper venue because it is a district where one defendant resides and all defendants reside in the same state, albeit a different state than where venue is being asserted. This argument, however, does not further the purpose of the venue statute and has been consistently rejected. *Difilippo v. Sherenian,* 1996 WL 58255 at * 2 (E.D.Pa.1996); *See Gerety v. Sunrise Exp., Inc.,* 121 N.C.App. 397, 467 S.E.2d 108, 1996 WL

19407 at * 2 (S.D.N.Y.1996). The statute requires that venue lie in a district in the state where all defendants reside. *See Gerety v. Sunrise Exp., Inc.,* 1996 WL 19047 at * 2 (S.D.N.Y.1996) (providing an explanation of the meaning and purpose of § 1391(a)(1)).

Under plaintiff's argument, venue would be proper in this case in any district, in addition to the Eastern District of Wisconsin, in which Brady is subject to personal jurisdiction. This makes no sense and contradicts the purpose of the venue requirement, which is to make litigation more convenient for all parties.

Because both defendants do not reside in Illinois and a substantial part of the events giving rise to the claim did not occur in Illinois, this district is not a proper venue. When venue is improper, 28 U.S.C. § 1406(a) allows the court to dismiss the case or, in the interest of justice, transfer the case to any district in which it could have been brought. The Eastern District of Wisconsin is the only district where venue is proper. Accordingly, in the interest of justice the court transfers this case to the Eastern District of Wisconsin.

### *CONCLUSION*

For the reasons discussed above, defendant's motion to transfer venue is granted. This case is transferred to the Eastern District of Wisconsin.

N.D.Ill.,2007.
Swanson v. Endres
Slip Copy, 2007 WL 1655230 (N.D.Ill.)

END OF DOCUMENT

© 2008 Thomson/West. No Claim to Orig. U.S. Govt. Works.