IN THE UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF ARKANSAS
TEXARKANA DIVISION

| | |
|---|---|
| JOHN WARD, JR. | § <br> § <br> § |
| v. | §    C.A. NO. 08-4022 <br> §    JURY TRIAL DEMANDED |
| CISCO SYSTEMS, INC AND <br> RICK FRENKEL | § <br> § |

**CISCO SYSTEMS, INC.'S REPLY TO PLAINTIFF'S OPPOSITION
TO DEFENDANT CISCO SYSTEMS, INC.'S MOTION TO
DISMISS FOR IMPROPER VENUE, OR IN THE
ALTERNATIVE, MOTION TO TRANSFER VENUE**

TO THE HONORABLE COURT:

Defendant Cisco Systems, Inc. ("Cisco") files this Reply ("Reply") to Plaintiff's Opposition ("Opposition") to Defendant Cisco Systems, Inc.'s Motion to Dismiss for Improper Venue, or in the Alternative, Motion to Transfer Venue ("Motion") as follows:

**I. INTRODUCTION**

Defendant Cisco has no doubt that, as Plaintiff John Ward, Jr. ("Ward") contends, the Texarkana Bar Association "holds many events throughout the year" including last year's Christmas party, which was apparently hosted at Gary Nutter's home in Texarkana, Arkansas. Cisco likewise does not contest that the "many events" are "attended by lawyers from both sides of the (Texas/Arkansas) border." (Nutter Declaration attached to Plaintiff's Opposition ("Opposition") to Defendant's Motion to Dismiss or Transfer ("Motion")). Having read the several testimonials to the harmony of the Texarkana Bar attached to the Opposition, which Cisco also does not doubt, Cisco remains puzzled about the relevance of this evidence since neither Ward nor the

5095298v.2                                         1

Defendants are members of the Texarkana Bar Association, they do not reside in that community, and there is no evidence that they have attended any of the "many events," including the Nutter Christmas party. In fact, Mr. Nutter has executed a second declaration (attached hereto as Exhibit A) wherein he states that "John Ward, Jr. did not attend the Bar Christmas party at my home last year." (Nutter Decl. ¶5.) Mr. Nutter also confirms that Ward "is not a member" and "has never paid dues" and "has never attended a meeting of the Texarkana Bar Association." (*Id.*)

Indeed, the Plaintiff is a resident of Gregg County, some 92 miles from Texarkana but only 37 miles from Tyler. (Plaintiff's Original Complaint ("Complaint") at ¶1 and Exhibit B, map showing distance from Gregg County to Tyler and Texarkana.) Plaintiff concedes that, under Texas venue rules, his suit against the Defendants could only be brought in Gregg County (Opposition at p. 3), not Bowie County where Texarkana is located, and further that, had he not non-suited the Gregg County case, it could have been removed to the Eastern District of Texas, Tyler Division where a companion case is pending.[1]

What Plaintiff does not explain is what connection this case has to Arkansas. There is no evidence that the allegedly defamatory publication was even published in Arkansas, none of the parties live there, the subject of the website posting was about a filing in the Eastern District of Texas, not Arkansas. As to the witnesses: the Plaintiff is a Gregg County resident, the Defendants are from California and all of the nonparty witnesses live in Texas, most of them in Tyler and few if any that we know of in Texarkana. Also inexplicable is the Ward's reluctance to try the case in his own

---

[1] The companion case, *Albritton v Cisco Systems, Inc. and Richard Frenkel*; Civil Action No. 6:08-CV-89; in the United States District Court for the Eastern District of Texas, Tyler Division, was removed the day after the *Ward* case was non-suited.

community, the Eastern District of Texas where, according to his complaint, he practiced "almost exclusively since 1997" (Complaint at ¶2), where his practice is "concentrated" (*id.*) and where his "business reputation" will be "seriously injured" (*id.* at ¶6).[2]

The Opposition raises the straw man of recusal, apparently in the belief that no judge in the Eastern District of Texas could fairly try the case. (Opposition at p. 7.) This is an argument unsupported by law (no case is cited) or evidence. Indeed, the evidence is to the contrary. In the companion case, Judge Michael Schneider, who has not recused or been asked to recuse, is moving forward with the case and has scheduled a hearing for June 5, 2008. Cisco has no plans to request recusal of Judge Schneider and certainly believes it can receive a fair trial in that court.

Plaintiff argues that mandatory venue under 28 U.S.C. §1391(a)(1) is proper if the co-defendant Richard Frenkel ("Frenkel") is dismissed, but Plaintiff's motion to dismiss Frenkel without prejudice is opposed. (PACER Doc. #17.) The Court certainly could transfer the case with the opposed motion to nonsuit pending and let the Texas judge decide the terms of the dismissal. Cisco agrees, however, that if Frenkel is dismissed, then §1391 (a) is satisfied, and it will fall to the court to determine whether the case should be transferred under 28 U.S.C. §1404 (a). As we argue below, we think that it should.

---

[2] Plaintiff states that: "Cisco has not argued that Ward's reputation in Texarkana, Arkansas was not harmed." (Complaint at 4.) Yes it has. (*See* Cisco's Answer at p.10.) "Plaintiff has not suffered any actual, special, consequential or other damages." To the extent Plaintiff wants clarification, publication is a prerequisite to damages, and Cisco believes there was no publication in Arkansas. (*See* PACER Doc. #4 at III(A)(2), III(B)). Furthermore, Plaintiff hasn't argued or pleaded that his reputation has suffered in Arkansas, where he is not even licensed to practice law.

## II. VENUE IS NOT PROPER IN THIS DISTRICT

A.   **Venue is not appropriate under 28 U.S.C. § 1391(a)(1) because Frenkel is still a party to this case pursuant to Rule 41(a)(2) of the Federal Rules of Civil Procedure (in reply to the Opposition at pp. 4-5).**

Ward alleges in the Opposition that Frenkel is no longer a party because Ward has dismissed him from the lawsuit. (Opposition at p. 4.) However, Ward must seek an order from this Court to dismiss Frenkel. Frenkel filed an answer (PACER Doc. #11) prior to Ward's attempt to dismiss Frenkel. Thus, Ward's voluntary dismissal motion is governed by Rule 41(a)(2) of the Federal Rules of Civil Procedure, which provides that "an action may be dismissed at the plaintiff's request only by court order, on terms that the court considers proper." Frenkel filed his response to Plaintiff's motion for dismissal without prejudice on April 25, 2008 (PACER Doc. #17), requesting that the Court impose conditions on the requested dismissal.

Ward incorrectly alleges that Cisco has admitted that Frenkel is no longer a defendant and that Ward has dismissed Frenkel from the lawsuit. (Opposition at p. 5.) Pursuant to Rule 41(a)(2), Frenkel is not dismissed until this Court orders his dismissal on terms it deems proper.

As long as Frenkel is a party to this case, venue is not proper in this district for the reasons stated Section III(A)(1) of the Memorandum and the case must be dismissed or transferred. If Frenkel is dismissed, however, Cisco concedes that venue is proper under Section 1391(a)(1), but that the Court should transfer the case to the Tyler Division for the convenience of the parties and for consolidation with an almost identical case pending there, as set forth in Section III, below.

B.  **Venue is not appropriate under 28 U.S.C. § 1391(a)(2) because no events or omissions giving rise to the claim occurred in this district; Ward's damages allegations cannot create venue in this district as a matter of law.**

If Frenkel is a party at the time the Motion is decided, Ward appears to be arguing that venue is proper under U.S.C. § 1391(a)(2) (Opposition at p. 4). However, there is no basis for venue under Section 1391(a)(2).

For purposes of venue, courts consider each district as a separate state. *See* 28 U.S.C. § 1391(a)(2) (stating that venue is proper "in a judicial district where any defendant resides") (emphasis added), § 1391(c) (stating that when determining venue, the court should treat each district as a separate state for purposes of determining personal jurisdiction). Therefore, even separate districts within the same state are treated separately, no matter whether they are adjacent to one another or closely related. *See id.*

In order for Ward to show that this is a proper district under 1391(a)(2), Ward must demonstrate that sufficient events or omissions giving rise to a lawsuit occurred in Hempstead, Howard, Lafayette, Little River, Miller, Nevada or Sevier counties in Arkansas; otherwise venue is not proper under 1391(a)(2). *See* 28 U.S.C. §§ 1391(a)(2), 83(b)(1). Ward cannot establish venue in this district because no events or omissions giving rise to this lawsuit occurred in these counties.

Ward has not alleged that a single event giving rise to this lawsuit occurred in the Texarkana Division of Arkansas. Ward appears to argue that venue is appropriate in Arkansas by alleging that his reputation is known among members of the Texas and Arkansas bars. However, Ward has never alleged that he is licensed to practice law in Arkansas. Instead, he admits that he practices "almost exclusively in the Eastern

District of Texas" (Petition at ¶7) and that he resided in Gregg, County at all relevant times (Petition at ¶1). The Petition alleges that Ward's reputation is centered around his "successful practice concentrated largely in intellectual property disputes in the Eastern District of Texas." (Petition at ¶7.) In fact, neither Ward nor his partner, Bruce A. Smith, is licensed to practice law in Arkansas based on their web site. (Exhibit C.) Nor is Ward a member of the Texarkana Bar Association. (Nutter Declaration, Exhibit A at ¶5.)

Ward attempts to obscure this point by attaching affidavits of Arkansas attorneys who note their own dual practices in Arkansas and Texas. These affidavits are completely irrelevant to Ward. No matter how closely related the districts are, Ward cannot alleged that he is damaged by statements affecting his reputation in a jurisdiction where he is not even licensed to practice. Because Ward has not presented any allegations or evidence that any events or omissions giving rise to the lawsuit occurred in Hempstead, Howard, Lafayette, Little River, Miller, Nevada or Sevier counties in Arkansas, venue is not proper in this district under Section 1391(a)(2). 28 U.S.C. §§ 1391(a)(2), 83(b)(1).

Moreover, even if Ward had suffered damages in the Texarkana Division (which Cisco disputes), that fact would not be sufficient to make this division an appropriate venue. *See, e.g., Wisland v. Admiral Beverage Corp.*, 119 F.3d 733, 736 (8th Cir. 1997) (stating that venue was not proper in Wisconsin where a plaintiff alleging a personal injury obtained medical treatment because "the events giving rise to her action involve the alleged negligence of the defendants in South Dakota, not the nature of her medical treatment in Wisconsin"); *Lomanno v. Black,* 285 F.Supp.2d 637,

642-43 (E.D. Pa. 2003) (holding that "venue will not be proper in a district for a defamation claim if injury is the only event occurring in that district"); *Greenblatt v. Gluck,* 265 F.Supp.2d 346, 352 (S.D. N.Y. 2003) (holding that venue was not proper in the district where "the only potential contact with New York is that [the plaintiff] claims his New York business was somehow peripherally affected by the alleged tort"); *Clark Prods., Inc. v. Rymal,* No. 02 C 6893, 2002 WL 31572569, at *4 (N.D. Ill. Nov. 19, 2003) (holding that venue was not proper in Illinois where "all the tortious acts underlying Clark Products' injury in Illinois occurred in Michigan" even when the injury occurred in Michigan).

Otherwise, the plaintiff's residence would always be a proper venue, thwarting Congress's removal of the plaintiff's residence from the venue provision in the 1990 amendments to Section 1391(a). *See* 15 Charles Alan Wright and Arthur R. Miller, Federal Practice and Procedure § 3806.1 at pp. 215-16 (2nd ed. 1984) (stating that "most courts have found that the suffering of economic harm within a district is not sufficient without more to warrant transactional venue in that district. This is probably the correct view, because otherwise venue most always would be proper at the place of the plaintiff's residence, an option that Congress explicitly removed with the 1990 amendments to the diversity portion of the statute.").

As this Court is aware, if venue is not appropriate under Rule 1391(a)(2), the case must be dismissed or transferred to a district where venue is appropriate. Only when venue is proper in a district do the factors of convenience come into play.

# III. THE COURT SHOULD TRANSFER FOR THE CONVENIENCE OF THE PARTIES
## (In reply to Opposition at pp. 5-9)

Ward convolutes Cisco's request for a more convenient forum by arguing the relationship of the Texarkana, Texas and Texarkana, Arkansas courthouses. (Opposition at p. 7.) Cisco has not requested transfer to the Texarkana, Texas courthouse for convenience (nor even alleged that Texarkana is an appropriate venue), but has rather requested transfer to the Tyler Division. Ward's arguments about the relationship between the two Texarkana venues are therefore irrelevant.

### A. Venue in the Tyler Division is more convenient for the parties.

Ward's argument that venue is more convenient in this division than the division where he lives and works is disingenuous. (Opposition at p. 6.) Plaintiff admits that he has resided in Gregg County at all relevant times (Petition at ¶1), and his web site states that his office is in Longview, Texas, which is in Gregg County (Exhibit C). Ward initially brought the case in state court in Gregg County, Texas. (Exhibit A to the Motion.)

The Tyler Division is also more convenient for Cisco because it will already be litigating there in the Albritton case (Exhibit C to the Motion), which involves the same publication and will involve the same issues and documents as this case. In contrast, the ESN litigation Ward discusses does not involve the same issues, documents or witnesses as this lawsuit.

### B. Venue in the Tyler Division will be more convenient for the witnesses.

Ward also attempts to persuade this Court that the Texarkana Division will be more convenient for the witnesses, who Ward alleges will have to go across the hall to

the Arkansas courthouse. (Opposition at p. 6.) However, the witness Ward discusses—the Clerk of the Eastern District of Texas—is David Maland, who works in the courthouse located in Tyler, Texas. (Exhibit D.) Moreover, because Tyler is the headquarters of the Eastern District of Texas (Exhibit D), presumably other clerks of the Eastern District of Texas who were involved in the filing of ESN Case are also located in Tyler. Ward has not identified a single witness that will be inconvenienced by litigating this case in the Tyler Division. On the other hand, the Tyler Division will obviously be the most convenient venue for witnesses who will also be called to testify in the Albritton lawsuit pending in Tyler, such as David Maland. Witnesses regarding Ward's reputation should also be located in the Eastern District of Texas since his office is located there (Exhibit C) and he practices "almost exclusively in the Eastern District of Texas." (Petition at ¶7.) Accordingly, the Tyler Division is the most convenient venue for the witnesses and parties.

**C. Venue in the Tyler Division is in the interest of justice.**

(i) The judges of the Tyler Division will not be disqualified.

Ward's argument that all of the judges in the Tyler Division will be disqualified pursuant to 28 U.S.C. § 455(a) (Opposition at p. 7) is also a red herring. Ward argues that all judges in the Tyler Division may be disqualified because the publication at issue allegedly suggests that criminal acts were committed by a clerk of the Eastern District of Texas and the son of a judge sitting on the bench in the Eastern District of Texas. (Opposition at p. 7.) However, both arguments fail.

Ward has cited no authority, and Cisco has found none, to support the proposition that judges would have any authority to recuse themselves because a party

to a lawsuit was the child of another judge in the district. Instead, 28 U.S.C. § 455(b)(5) provides that a judge should disqualify himself if a relation within the third degree is a party to the proceeding. However, there is nothing in the rule suggesting that other judges within the district are also disqualified. To do so would deprive the party related to the judge of venue in an entire district. This would be an absurd result, especially considering that "there is as much an obligation for a judge not to recuse where there is no occasion for him to do so as there is for him to do so when there is." *See United States v. Harmon*, 21 F.Supp.2d 642, 646 (N.D. Tex. 1998) (citations omitted).

The argument that the alleged defamation of the court clerk would disqualify the entire bench of the Tyler Division is similarly absurd. Judges are presumed to be impartial, so disqualification is warranted only when the influence of bias is strong enough to overcome the presumption of the judge's honesty and integrity. *In re Larson*, 43 F.3d 410, 414 (8th Cir. 1994) (holding that a "judge is presumed to be impartial, and Petitioners bear the substantial burden of proving otherwise"); *Del Vecchio v. Illinois Dep't of Corrections*, 31 F.3d 1363, 1375 (7th Cir. 1994) *cert. denied*, 514 U.S. 1037(1995) (holding that the issue of disqualification begins by "presuming the honesty and integrity of those serving as adjudicators" an is "required only when the biasing influence is strong enough to overcome that presumption.").

A complaint alleging misconduct against even the judge assigned to the case (which is not present here) is generally not sufficient to warrant recusal of the complained-of judge. *In re Mann*, 229 F.3d 657, 658-59 (7th Cir. 2000) (stating that there is no "rule or decision supporting the sweeping idea that a judge must

automatically disqualify herself from a lawsuit simply because a disgruntled litigant currently alleges (or has previously alleged) judicial misconduct"); *Standing Comm. v. Yagman*, 55 F.3d 1430, 1444 (9th Cir. 1995) (holding that a party's criticism of a judge, although "harsh and intemperate," "cannot force a judge to recuse himself"); *United States v. Studley,* 783 F.2d 934, 939-40 (9th Cir.1986) (holding that litigant's "intemperate and scurrilous attacks" on judge could not compel judge's disqualification); *U.S. v. Grismore*, 564 F.2d 929 (10th Cir. 1977) *cert. denied*, 435 U.S. 954 (1978) (holding that "a judge is not disqualified merely because a litigant sues or threatens to sue him," even when a litigant "intemperately and scurrilously attacks" the judge).

In *U.S. v. Bray*, for example, the 10th Circuit held that a party's article calling for impeachment of the judge, a telegram against the judge, and a brief accusing the judge of bribery, conspiracy and obstruction of justice were not sufficient to warrant recusal of the judge. *U.S. v. Bray*, 546 F.2d 851 (10th Cir. 1976) (stating that "[i]t is well settled that prior written attacks upon a judge are legally insufficient to support a charge of bias or prejudice on the part of the judge toward the author of such a statement.").

This is also the law in Texas. *See, e.g., United States v. Harmon*, 21 F.Supp.2d 642, 646 (N.D. Tex. 1998) (citing *U.S. v. Bray* and holding that a judge is not required to recuse himself "simply because a party, or an attorney for a party, has personally attacked the judge in other proceedings") (internal quotations and citations omitted). Therefore, the judges of the entire Tyler Division would not be disqualified because of the statements allegedly made by the Defendants.

Not only is it improper for a judge to recuse himself for statements made about him, but it is certainly improper for a judge to recuse himself because of statements made about other judges in the district. *Rafferty v. Nynex Corp*, 60 F.3d 844, 848 n. 5 (D.C. Cir. 1995) (refusing a party's argument that all judges in the district should be disqualified because "if other district judges in the District of Columbia were aware that [the party] filed a judicial misconduct complaint, that knowledge alone would not establish that they could not be impartial in adjudicating his case," stating that if a judge could recuse himself because of a complaint made about a colleague, a litigant could "judge-shop."). The 9th Circuit has even held that a party's threats against the lives of three judges did not require recusal of the other judges of the same court. *See Clemens v. United States Dist. Court*, 428 F.3d 1175, 1178-1180 (9th Cir. 2005) (stating that "disqualification of an entire district is not justified except under highly exceptional circumstances, which are not present here."). Therefore, Ward has no basis for claiming that an allegation of impropriety against the clerk of a court would disqualify the entire Tyler Division.[3]

    (ii)    <u>The Court should transfer the case to the Tyler Division because an almost identical case is pending there.</u>

Ward also alleges that consolidation is not a factor for transfer to the Tyler Division because there is no guarantee that the case will be consolidated. (Opposition at p. 8.) Many courts have rejected this reasoning. *See Ferens v. John Deere Co.*, 494 U.S. 516, 531 (1990) (stating that "[t]o permit a situation in which two cases involving precisely the same issues are simultaneously pending in different District Courts leads

---

[3] Notably, if Ward's recusal argument had merit, given that the alleged statement concerned misconduct concerning a filing in the Texarkana Division, arguably this court should also recuse itself given the relationship Ward alleges between the Texarkana Divisions of Texas and Arkansas.

to wastefulness of time, energy and money that Section 1404(a) was designed to prevent") (quoting *Continental Grain Co. v. Barge FBL-585*, 364 U.S. 19, 26 (1960)); *see also Brown v. Connecticut Gen. Life Ins. Co.*, 934 F.2d 1193, 1196 (11th Cir. 1991) (acknowledging that "no matter where the case was heard, some party to this litigation would suffer a financial hardship," but that transfer was appropriate because "it was important that both these case proceed in a single district to permit consolidation."). Courts do not require certainty of consolidation to warrant transfer to the district where a related case is pending. *See In re Nine Mile Ltd.*, 692 F.2d 56, 60 (8th Cir. 1982) *overruled on other grounds by Missouri Housing Dev. Com'n v. Brice,* 919 F.2d 1306 (8th Cir.1990) (stating that the "possibility" of consolidations weighs in favor of consolidation); *Fairfax Dental (Ireland) Ltd, v. S.J. Filhol Ltd.*, 645 F.Supp. 89, 92 n. 2 (E.D. N.Y. 1986) (stating that "[t]here is no requirement, however, that consolidation be certain before this Court can consider the fact that a related action is pending in the proposed transferee court"); *see also FUL Inc. v. Unified School Dist. No. 204*, 839 F.Supp. 1307, 1313 (N.D. Ill. 1993) (stating that consolidation need not be certain to support transfer because "[a]ctual consolidation of this case with the [related] proceeding is the primary, but not the only advantage of cases being in the same district."). If uncertainty of consolidation defeated a transfer, consolidation would never be a factor in transfer because it will be unclear at the time of transfer whether the transferee court would consolidate the actions.

Moreover, it is clear that the Eastern District of Texas favors consolidation, which can avoid inconsistent results. Local Rule CV-42 states that parties to a civil matter must inform the Court of other matters that involve the same subject matter or

operative facts. (Exhibit E.) The same rule provides that when two or more actions pending before the court involve either common questions of law or fact, the same parties and issues, or different parties and issues all of which arise out to the same transaction or occurrence, the judge may order that the actions be consolidated. (*Id.*) Because the Albritton case and this case are almost identical, they will most certainly be consolidated.

(iii) <u>Court congestion does not favor transfer</u>.

Ward's expediency argument that the Eastern District of Texas is more congested than this district also fails. Ward alleges that as of March 2007, the Eastern District of Texas had over 2,600 cases pending, while the Western District of Arkansas had 668. (Opposition at p. 8.) However, the Eastern District of Texas has 8 judges, 7 magistrate judges, and 2 bankruptcy judges. (Exhibit F.) By contrast, the Western District of Arkansas has only 3 district judges and 2 magistrate judges. The Eastern District of Texas has 260 cases per judge compared to the Western District of Arkansas, which has 223 cases per judge. This difference, based on numbers from March of 2007, is insufficient even to merit consideration.

Moreover, the relevant statistics in determining court congestion are the median months from filing to disposition and the median months from filing to trial. *Law Bulletin Publ'g Co. v. LRP Publications, Inc.*, 992 F.Supp. 1014, 1020 (N.D. Ill. 1998); *Costco Wholesale Corp. v. Liberty Mut. Ins. Co.*, 472 F.Supp.2d 1183, 1196 (S.D. Cal. 2007) (comparing the median time from filing to disposition or trial and noting that the "key inquiry in docket congestion is 'whether a trial may be speedier in another court because of its less crowded docket.'") In this case, the median time from filing to

disposition in the Eastern District is 9 months compared to 11.9 months for the Western District of Arkansas. (Exhibit F to the Opposition.) Therefore, the expediency factor weighs in favor of the Eastern District of Texas.

WHEREFORE, PREMISES CONSIDERED, Cisco respectfully requests that its Motion to Dismiss, or in the Alternative, Motion to Transfer be in all things granted; that this cause of action be dismissed for improper venue, or in the alternative, transferred to the Tyler Division of the Eastern District of Texas; and that Cisco be granted such other relief, both at law and in equity, as the Court deems just and proper.

Respectfully submitted,

JACKSON WALKER L.L.P.

By: /s/ Charles L. Babcock
Charles L. Babcock
Federal Bar No.: 10982
Email: cbabcock@jw.com
Richard E. Griffin
Arkansas Bar No.: 63020
Email: rgriffin@jw.com
Crystal J. Parker
Federal Bar No.: 621142
Email: cparker@jw.com
1401 McKinney
Suite 1900
Houston, Texas 77010
(713) 752-4200
(713) 752-4221 – Fax

ATTORNEYS FOR DEFENDANT
CISCO SYSTEMS, INC.

# CERTIFICATE OF SERVICE

This is to certify that on this ___8th___ day of May, 2008, a true and correct copy of the foregoing was served electronically, upon:

Nicholas H. Patton
Patton, Tidwell & Schroeder, LLP
4605 Texas Boulevard
Texarkana, Texas 75503
**Attorney for Plaintiff John Ward, Jr.**

Michael D. Barnes
Wright, Lindsey & Jennings LLP
200 West Capitol Avenue
Little Rock, Arkansas 72201
**Attorney for Defendant Richard Frenkel**

George L. McWilliams
406 Walnut
P.O. Box 58
Texarkana, Texas 75504-0058
**Attorney for Defendant Richard Frenkel**

_Charles R. Babcock_
Charles L. Babcock       s/b/p