IN THE UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF ARKANSAS
TEXARKANA DIVISION

| | | |
|---|---|---|
| JOHN WARD, JR. | § | |
| | § | |
| | § | C. A. NO. 08-4022 |
| v. | § | JURY TRIAL DEMANDED |
| | § | |
| CISCO SYSTEMS, INC. | § | |

**DEFENDANT CISCO SYSTEMS, INC.'S RESPONSE TO PLAINTIFF'S MOTION TO COMPEL RESPONSES TO INTERROGATORY NOS. 1-9**

TO THE HONORABLE DISTRICT COURT JUDGE:

Cisco Systems, Inc. ("Cisco") hereby files its Response to Plaintiff's Motion to Compel Responses to Interrogatory Nos. 1-9

### I.    INTRODUCTION

This set of interrogatories is just one part of an obvious campaign to harass Cisco with discovery and discovery motions.

On or about October 18, 2007, Richard Frenkel, a non-party to this lawsuit, published an internet article on his blog, the Patent Troll Tracker. Frenkel, who was a Cisco employee at that time, maintained the blog as his personal blog, but one of his direct supervisors was aware that he was authoring the blog. However, nobody other than Frenkel wrote, edited or read the article before it was published.

On or about March 13, 2008, Plaintiff sued Cisco and Frenkel for defamation concerning the October 18 article. After Frenkel moved to dismiss or transfer venue on the basis that the Court lacked personal jurisdiction over him, Plaintiff moved to dismiss Frenkel from the lawsuit. The Court dismissed Frenkel from this lawsuit on August 28, 2008.

On December 12, 2008 Plaintiff served its First Set of Requests for Production, which requested all the documents produced in an almost identical case pending in the Eastern District of Texas, which is set for pretrial conference on March 2, 2009.

When Cisco withheld its privileged documents from production, the parties began discussing a protective order. Cisco requested that this Court enter a protective order (Docket No. 42) and has requested a non-waiver agreement with respect to privileged documents so that Cisco could produce the relevant communications but avoid any waiver with respect to any other privileged and work-product materials that relate to the *ESN v. Cisco* Litigation. Ward <u>refused</u>. Ward filed an opposition to Cisco's proposed protective order, stating that "Ward does not believe that a protective order is necessary." (Docket No. 45 at p. 1). Thereafter, Ward insisted that the parties enter into a protective order that shift the burden when the media seeks Cisco's privileged and work-product documents. Cisco and Plaintiff are still in the process of negotiating this protective order, yet in the Motion to Compel, Plaintiff argues that the Court should find that Cisco waived its attorney-client and work-product protections without even mentioning these negotiations.

On December 29, 2008, Plaintiff served its Special Interrogatories on Cisco. The Special Interrogatories were overly broad and sought discovery of Cisco's proprietary data storage systems, which have nothing to do with this case. The Special Interrogatories contained multiple subparts. (See <u>Exhibit A</u>). Cisco responded but stated that it cannot provide responses until a protective order is reached.

On December 30, 2008, Plaintiff served the Interrogatories that are the subject of this Motion on Plaintiff. The Interrogatories are overly broad and attempt to require Defendants to

catalog documents it has produced despite the fact that the burden of locating the requested information is no less burdensome for Plaintiff than Cisco, among other deficiencies.

On January 16, 2009, Plaintiff served his First Set of Requests for Admissions and Plaintiff's Second Set of Interrogatories on Cisco. (See Exhibits B and C, respectively). The Second Set of Interrogatories contains a request that requires Cisco to provide four sets of information with respect to every Request for Admission that is denied. As such, it is multiple interrogatories (up to 35, as the Request for Admissions has 35 requests) disguised as one.

That same day, Plaintiff served its Second Set of Requests for Production, which contained **194 requests**, most (if not all) of which are also overly broad, especially in light of the production Cisco has already made in this case. (See Exhibit D). Including Cisco's Response to Plaintiff's First Request for Production and Second Request for Production, Cisco has produced over 1,695 pages in this case—all of the documents Cisco produced in the Albritton case except its privileged documents and documents that relate only to Albritton's damages.

Between January 28 and 30, 2009, Plaintiff served subpoenas on non-parties Richard Frenkel, Baker Botts LLP, John Noh, Kevin Meek, Jillian Powell, and Google. The depositions of Meek and Powell were to occur just two weeks later. When counsel for both the witnesses and for Cisco requested that these depositions be moved because of the witnesses' and counsel's prior commitments, Plaintiff refused, forcing Cisco and the witnesses to file Motions to Quash and Motions for Protection. After the witnesses and Cisco had incurred this expense, Plaintiff agreed to postpone the depositions.

On February 5, Plaintiff sent Cisco's counsel a letter demanding a response regarding the interrogatories at issue just four days later. Plaintiff never attempted to contact Cisco or otherwise resolve the issue in the Motion to Compel before filing it. Meanwhile, Plaintiff's

attorneys were well aware that Cisco's counsel was preparing for trial in another matter (Cisco's counsel informed Plaintiff's counsel of this during discussions regarding the aforementioned subpoenas) and preparing pretrial motions in the Albritton v. Cisco case (in which Plaintiff's counsel represents Albritton). Plaintiff never attempted to call Cisco to resolve the issue in the Motion to Compel before filing it.

Plaintiff's Motion to Compel is part of a pattern of discovery that has caused Cisco to incur substantial and unnecessary costs in this case. Cisco does not and has not objected to providing relevant, non-privileged discovery. As set forth below, the Court should deny the Motion to Compel and should sustain Cisco's objections.

## II.   ARGUMENTS AND AUTHORITIES

**1.   Plaintiff's complaint about "blanket" objections to most of the requests**

The Court should sustain Cisco's objections notwithstanding Plaintiff's misleading argument that the objections are impermissible "blanket" objections. Plaintiff clearly objected to each individual request as required by the Federal Rules and Local Rules. (*See* Exhibit B to the Motion). Plaintiff's efforts to confuse the issue by omitting Cisco's specific objections to each request in its arguments and claiming that Cisco made "blanket objections" in the Motion is unfair. As the Court can see from the objections themselves, they are not identical. The common elements in many of the objections are caused in part by Plaintiff's overly broad definitions, which are repeated within many of the requests. Therefore, the Court should sustain Cisco's objections notwithstanding Plaintiff's claim that they are impermissible "blanket" objections (which they are not).

2.  **Interrogatory No. 1**

    IDENTIFY and DESCRIBE all actions undertaken by YOU or at YOUR direction to retain, locate, and produce communications between the Troll Tracker and/or Rick Frenkel or any other PERSONS, CONCERNING ESN, the filing of the ESN complaint, Plaintiff Ward, Ward's co-counsel Eric Albritton, the law firm of McAndrews Held & Malloy, or any other information that may be relevant to this case, INCLUDING the gMail account Frenkel used to correspond as the Troll Tracker, and separately and for each action IDENTIFY the persons involved, the DATE of the action, and DESCRIBE DOCUMENTS AND COMMUNICATIONS that were obtained.

Cisco objected on several grounds to this request. First, Cisco objected on the basis of relevancy. This request is not relevant to the issues in this lawsuit and therefore is not discoverable. *See* FED. R. CIV. P. 26(b)(1). Even if the requested information was relevant, the burden or expense of the proposed discovery outweighs its likely benefit, taking into account the needs of the case, the amount in controversy, the parties' resources, the importance of the issues at stake in the litigation, and the importance of the proposed discovery in resolving the issues. *See* FED. R. CIV. P. 26(b)(2)(C). Moreover, this information is protected by the work-product doctrine and the attorney-client privilege. The request also purports to expand Defendant's obligations beyond what is required by the Federal Rules of Civil Procedure by attempting to require Defendant to "identify" or "describe" documents rather than produce the documents. *See* FED. R. CIV. P. 33(d). The request is also overly broad because it calls for information outside the custody and control of Cisco, such as communications on Cisco's employees' private email accounts. Cisco objected to this request on the basis of each of these points.

Plaintiff complains that the response is incomplete, yet a party is only required to answer to the extent the interrogatory is not objected to. FED. R. CIV. P. 33(c). Because the request called for irrelevant information and attempts to invade the work-product and attorney-client privilege, Cisco did not respond to that extent. For example, Cisco is not required to reveal its

privileged conversations regarding communications, nor is it required to "describe"[1] them. Plaintiff complains that the response is limited to "email," yet the response clearly states that Cisco later "did a broader search of the main and backup servers" and lists the 23 custodians whose records were searched.

Plaintiff then complains that Cisco didn't describe efforts taken by Frenkel, its former employee. Cisco does not have custody or control of Frenkel and is not required to answer for Frenkel. At the time the searches were made, Frenkel was a party to this action. Cisco has revealed the steps it took to search Frenkel's accounts in its response. Plaintiff argues that Frenkel's documents are "perhaps the most relevant documents in this case," yet Plaintiff voluntarily and over Cisco's objection dismissed Frenkel from this lawsuit. Moreover, this information is protected by the work-product doctrine and the attorney-client privilege.

Finally, Plaintiff complains that Cisco failed to "identify" each communication. However, Rule 33 provides that, "if an answer to an interrogatory may be determined by examining, auditing, compiling, abstracting, or summarizing a party's business records, and if the burden of deriving or ascertaining the answer will be substantially the same for either party, the responding party may answer by... giving the interrogating party a reasonable opportunity to examine and audit the records..." Here, with respect to the communications that were obtained in Cisco's search, which were produced in this case, Cisco is not required to provide the date of the communication, the method of transmission, all recipients of the communication, the sender of the communication, and the contents of the communication as Plaintiff insists (see Exhibit A to the Motion, definition 15, p. 4). Cisco's response states that Cisco has produced all relevant, non-privileged documents that were located, and it has done so. Certainly Plaintiff can identify

---

[1] The overly broad definition of "describe" with respect to this interrogatory should be taken into account.

just as easily as Cisco which of the produced documents are communications. Therefore, Cisco is not required to expend the vast time and effort to "identify" these communications. FED. R. CIV. P. 33(d).

Plaintiff's argument that Cisco did not "invoke" Rule 33 is disingenuous. Plaintiff plainly objected on the basis that the interrogatory "purports to expand Defendant's obligations beyond what is required by the Federal Rules of Civil Procedure by attempting to require Defendant to 'identify' or 'describe' documents rather than produce the documents."

2.  **Interrogatory Nos. 2-4**

Because these three interrogatories are almost identical except for the subject matter of the communications inquired about, Cisco addresses them together to avoid repetition.

2.  IDENTIFY each PERSON or COMPANY with whom CISCO or its EMPLOYEES had any COMMUNICATION between October 14, 2007 and March 7, 2008 CONCERNING the Troll Tracker October 17, 2007 Post, the October 18, 2007 Post, and the revised October 18, 2007 Post, and separately and for each COMMUNICATION IDENTIFY the DATE, TIME, PERSONS involved, the purpose of the COMMUNICATION, DESCRIBE THE COMMUNICATION and IDENTIFY ANY DOCUMENTS CONCERNING that COMMUNICATION.

3.  IDENTIFY each PERSON or COMPANY with whom CISCO or its EMPLOYEES had any COMMUNICATION between October 14, 2007 and March 7, 2008 CONCERNING the filing of the ESN complaint, Ward's role in that filing, the role of Ward's co-counsel, Eric Albritton, in that filing, and the role of Ward's co-counsel McAndrews Held & Malloy in that filing, and separately and for each COMMUNICATION IDENTIFY the DATE, TIME, PERSONS involved, the purpose of the COMMUNICATION, DESCRIBE THE COMMUNICATION and IDENTIFY ANY DOCUMENTS CONCERNING that COMMUNICATION.

4.  IDENTIFY ALL COMMUNICATIONS between CISCO and any PERSON and/or COMPANY CONCERNING whether the allegations made in the October 17, 2007 Post, the October 18, 2007 Post, and/or the revised October 18, 2007 were accusations of criminal, unethical or improper conduct, and separately and for each COMMUNICATION IDENTIFY the DATE, TIME, PERSONS involved, DESCRIBE the purpose of the COMMUNICATION, DESCRIBE the

COMMUNICATION, and IDENTIFY ANY DOCUMENTS CONCERNING that COMMUNICATION.

Cisco objected on several grounds to these requests. First, Cisco objected on the basis of relevancy, especially to the extent it requests all communications for all Cisco employees. Cisco employs approximately 65,000 people and could not possibly respond to these requests for each one. Even if the request was relevant, the burden or expense of the proposed discovery outweighs its likely benefit, taking into account the needs of the case, the amount in controversy, the parties' resources, the importance of the issues at stake in the litigation, and the importance of the proposed discovery in resolving the issues. *See* FED. R. CIV. P. 26(b)(2)(C). Moreover, the requests call for information that is protected by the work-product doctrine and the attorney-client privilege. The request also purports to expand Defendant's obligations beyond what is required by the Federal Rules of Civil Procedure by attempting to require Defendant to "identify" or "describe" documents rather than produce the documents. *See* FED. R. CIV. P. 33(d). The requests are also overly broad because they call for information outside the custody and control of Cisco, such as Cisco's employees' private communications. *See* FED. R. CIV. P. Cisco objected on the basis of each of these points.

Cisco responded by stating that its responsive, privileged documents had been produced or logged in Cisco's privilege log, which had already been provided to Plaintiff. Plaintiff argues that Cisco did not respond properly. However, as set forth above, pursuant to Rule 33, Cisco is not required to catalog its documents. Certainly Plaintiff can identify just as easily as Cisco which of the produced documents are communications containing the information Plaintiff seeks, and the communications themselves contain the requested information. Therefore, Cisco is not required to expend the vast time and cost to "identify" these communications. FED. R. CIV. P.

33(d). Plaintiff's argument that Cisco did not "invoke" Rule 33 is disingenuous, as set forth above.

Plaintiff also argues that the response is incomplete in other respects. However, a party is only required to answer to the extent the interrogatory is not objected to. FED. R. CIV. P. 33(c). For example, Cisco did not respond by asking every one of Cisco's 65,000 employees whether they had any conversations regarding the issues identified, which occurred well over a year ago, nor did it attempt to catalog the communication, the method of transmission, all recipients of the communication, the sender of the communication, and the contents of the communications as the Plaintiff requested because this request is overly broad and overly burdensome.

3. **Interrogatory No. 5**

> IDENTIFY ALL information relied upon by Richard Frenkel in making the statements contained in the Troll Tracker October 17, 2007, October 18, 2007 and revised October 18, 2007 posts, and separately and for each piece of information IDENTIFY the DATE and TIME the information was received by Frenkel, IDENTIFY all DOCUMENTS CONCERNING the information received, IDENTIFY ALL PERSONS involved in the information received, IDENTIFY the nature of any COMMUNICATION involved INCLUDING the DATE, TIME, and ALL PERSONS involved in the COMMUNICATION, and IDENTIFY all DOCUMENTS CONCERNING that COMMUNICATION.

Cisco objected on several grounds to this requests. First, Cisco objected on the basis that the request calls for discovery of matters that are not relevant to the parties' claims or defenses. The request seeks discovery regarding three articles, but the Complaint complains of only one— the October 18 article. Second, Cisco objected on the basis that the burden or expense of the proposed discovery outweighs its likely benefit, taking into account the needs of the case, the amount in controversy, the parties' resources, the importance of the issues at stake in the litigation, and the importance of the proposed discovery in resolving the issues. *See* FED. R. CIV. P. 26(b)(2)(C). Certainly the burden and expense of cataloging each responsive document that

has already been produced in this case has no benefit to either party and is intended only to harass Cisco and increase its costs. Moreover, Rule 33(d) specifically provides that this is not required. With respect to privileged communications, such communications have already been cataloged and provided to Plaintiff in Cisco's privilege log. The request is also overly broad because it calls for information outside the custody and control of Cisco since Richard Frenkel is no longer a Cisco employee and is not a defendant in this case. Moreover, the requests call for information that is protected by the work-product doctrine and the attorney-client privilege.

Cisco responded by stating: "Subject to and without waiving the foregoing objections, Richard Frenkel relied on documents on the official court website, the official court docket, correspondence he received from various individuals, privileged discussions with legal counsel, legal research, and his own experience with the electronic filing system. See documents produced by Cisco. Responsive, privileged documents have been logged in Cisco's privilege log, which has previously been provided."

Nonetheless, Plaintiff complains that Cisco failed to state the date of communications, the method of transmission, all recipients of the communication, the sender of the communication, and the contents of the communication (Exhibit A to the Motion at p. 4) for every communication Frenkel, who is no longer a Cisco employee, had with any person regarding the articles. This request impermissibly attempts to require Cisco to provide discovery of someone who is no longer its employee. Moreover, Cisco does not have access to Frenkel's personal email accounts. Plaintiff should be required to seek discovery of Frenkel from Frenkel.

Notably, Cisco has produced a privilege log and documents that provide the very information that Plaintiff is seeking. Requiring Cisco to now catalog those documents, which would be equally burdensome for Plaintiff, is impermissible. *See* FED. R. CIV. P. 33(d). Cisco is

not required to inquire of every one of its 65,000 employees regarding the specifics of any conversations such employees have had regarding the articles because a party is only required to answer to the extent the interrogatory is not objected to. FED. R. CIV. P. 33(c).

Plaintiff's waiver argument is even more disingenuous. The Plaintiff's defamation claim concerns an article that discussed the ESN v. Cisco litigation, which has been refiled and is pending. The privileged communications that Plaintiff seeks relate to that case. For this reason, Cisco requested that the Court enter a protective order (Docket No. 42) and has requested a non-waiver agreement with respect to privileged documents so that Cisco could produce the relevant communications but avoid any waiver with respect to any other privileged and work-product materials that relate to the ESN v. Litigation, and Ward <u>refused</u>. Ward filed an opposition to protective order, stating that "Ward does not believe that a protective order is necessary." (Docket No. 45 at p. 1). Thereafter, Ward insisted that the parties enter into a protective order that would make it easier for the media to obtain access to Cisco's privileged and work-product materials. The parties are still negotiating the protective order.

Plaintiff misleadingly cites to various cases for support that the Court should waive Cisco's privilege and work product simply because some of the documents might relate to this case, yet none of the cases support this theory, especially where the defendant has offered to produce the relevant documents under a protective order that would protect the privileged communications and work product. *Harte-Hanks Communications, Inc. v. Connaughton*, 491 U.S. 657, 668 (1989) does not even mention privilege or waiver, but merely held that that a lower court's ruling on actual malice was not based on, but was merely supported by, evidence of ill motive.

In *United States v. Bilzerian*, 926 F.2d 1285, 1294 (2nd Cir. 1991) is also inapplicable. In that case, the Second Circuit held that a witness would have waived the privilege if he testified about the privileged matter at trial, and thus it was not an abuse of discretion to order that the opposing party could cross examine the witness on the same subject matter. None of the cases cited involve a request from the testifying witness that the privileged matter remain confidential. Plaintiff should not be permitted to refuse a protective order and non-waiver agreement so that any privileged documents would be used only for this litigation, then argue to this Court that Cisco's privileged documents should be revealed to whomever it wishes. If the purpose is as Plaintiff claims—that Plaintiff has access to documents at issue for this case—Plaintiff should have no objection to maintaining the confidentiality of those records. It should be noted that Plaintiff's attorney has been quoted on several occasions in the media about this litigation, and Defendants have an obvious concern that the privileged documents that Plaintiff seeks will merely be fodder for its next round of media interviews, thus waiving the privilege.

Moreover, the waiver theory Plaintiff asserts <u>only</u> applies to privileged communications that are inconsistent with the defense, not a full subject-matter waiver as Plaintiff alleges. *See id.* As cases cited by Plaintiff explain, the purpose is to prevent a party from using the helpful parts of privileged communications but preventing use of the parts that support the opposing side's position. *See Union County, Iowa v. Piper Jaffray & Co., Inc.*, 248 F.R.D. 217 (S.D. Iowa 2008) (where the Court conducted an *in camera* review of the privileged documents and held that the privileged was only waived with respect to some of the documents); *see U.S. v. Workman*, 138 F3d 1261, 1263-64 (8th Cir. 1997).

To the extent the Court requires the production of relevant, privileged or work-product materials, the Court should condition the production on the entry of a protective order that would

(1) protect Cisco from disclosure of the privileged communications for any purpose other than this litigation, (2) limit to whom the documents could be disclosed to prevent dissemination of the documents, and (3) enter a non-waiver order pursuant to Rule 502 of the Federal Rules of Evidence.

4.  **Interrogatory No. 6**

    IDENTIFY the DATE and TIME that CISCO first became aware that ESN claimed that the filing date of the complaint as listed on the court's docket was an error and DESCRIBE the circumstances under which CISCO obtained that knowledge INCLUDING ALL PERSONS involved, all COMMUNICATIONS involved and separately and for each COMMUNICATION the DATE, TIME, ALL PERSONS involved, the content of the COMMUNICATION, what prompted the COMMUNICATION, the form of the COMMUNICATION, and IDENTIFY ALL DOCUMENTS CONCERNING CISCO's knowledge.

Cisco objected on several grounds to this request. First, Cisco objected on the basis that the request calls for discovery of matters that are not relevant to the parties' claims or defenses, in part due to the overly broad definitions. (*See* Exhibit A.) For example, the request calls for the time that any employee of Cisco learned certain things, which is irrelevant. Only Frenkel published the complained-of article (Cisco has admitted that he was in the course and scope of his employment). Therefore, the knowledge of anyone else is irrelevant. Moreover, it would be overly burdensome to require Cisco to inquire of each of its 65,000 employees when they learned about something that is irrelevant. Cisco also objected on the basis that the request calls for information protected by the work-product and attorney-client privilege.

Cisco further objected on the basis that Rule 33(d) specifically provides that the rules do not require a cataloging of communications reflected in documents that have been produced. The request is also overly broad because it calls for information outside the custody and control of Cisco since Richard Frenkel is no longer a Cisco employee and is not a defendant in this case.

Cisco responded by stating that "Richard Frenkel learned that ESN claimed that the filing date of the complaint on the official court docket was an error on October 18, 2007, but he does not recall the time, persons involved, or exact content of the communication. See documents produced by Cisco. Responsive, privileged documents have been logged in Cisco's privilege log, which has previously been provided."

Plaintiff complains that the request is incomplete because there is not a response for every Cisco employee. However, as set forth above, Cisco is not required to respond to this because it is irrelevant and overly broad. *See* FED. R. CIV. P. 33(c). As stated above, because Frenkel is the only person who published the complained-of article, only his knowledge is relevant.

Plaintiff also complains that the response is incomplete because Plaintiff argues that Cisco knows more than it is revealing. Yet Plaintiff is not required to reveal privileged conversations and work product, and Cisco plainly stated in its response that the information known to Cisco is contained in the documents produced and the privilege log.

Plaintiff again complains that Cisco failed to catalog the documents it refers to. As stated above, Cisco is not required to do this since the burden for both parties is the same.

5.   **Interrogatory No. 7**

> IDENTIFY ALL PERSONS or COMPANIES who knew that Richard Frenkel was the Troll Tracker before he publicly identified himself as such on the Troll Tracker Blog, and separately and for each PERSON or COMPANY IDENTIFY the DATE upon which they obtained that knowledge, IDENTIFY the source of that knowledge (who told them), IDENTIFY all PERSONS involved in the COMMUNICATION, DESCRIBE the circumstances leading to the disclosure, and IDENTIFY all DOCUMENTS CONCERNING that disclosure.

Cisco objected to this request because it calls for discovery regarding matters that are not relevant to any party's claims or defenses.

Because the request is overly broad, Cisco did not respond. *See* FED. R. CIV. P. 33(c). Plaintiff argues that the request is relevant because it seeks to identify "Cisco employees who suggested, encouraged or participated in the publication" of the posts. However, this argument is disingenuous. The request itself is not limited to Cisco employees, but rather asks for "all persons or companies." Nor is the request limited to the complained-of articles, but rather seeks information about the entire website. Moreover, the request calls for more than just the identity of such persons. Plaintiff's own argument demonstrates that the request is overbroad.

6. **Interrogatory No. 8**

> IDENTIFY ALL COMMUNICATIONS and DOCUMENTS CONCERNING whether any CISCO EMPLOYEE should be disciplined, reprimanded, chastised, admonished, warned or corrected CONCERNING the posting of the Troll Tracker October 17, 2007, October 18, 2007 and revised October 18, 2007 posts, and separately and for each COMMUNICATION or DOCUMENT IDENTIFY the DATE, TIME, ALL PERSONS involved, the nature of the COMMUNICATION or the subject-matter of the DOCUMENT, and IDENTIFY all DOCUMENTS CONCERNING each COMMUNICATION.

Cisco objected to this request on the basis that it calls for discovery regarding matters not relevant to any party's claim or defense. Subject to that response, Cisco responded that "no responsive, non-privileged communications have been identified or located.

Plaintiff argues that this response is insufficient because "Ward is entitled to discover each individual who participated in Cisco's defamation of Ward." Yet this request doesn't ask who participated in Cisco's defamation of Ward.

Moreover, Cisco <u>responded</u> to the request: Cisco could not locate any such communications.

7. **Interrogatory No. 9**

> IDENTIFY all DOCUMENTS AND COMMUNICATIONS between CISCO and any PERSON or COMPANY CONCERNING Ward's Reputation INCLUDING whether CISCO has been asked by any PERSON or COMPANY

about Ward, about hiring Ward, or about CISCO's perception of WARD, separately and for each COMMUNICATION DESCRIBE the COMMUNICATION, IDENTIFY the DATE, TIME, PERSONS involved, the purpose of the COMMUNICATION, DESCRIBE the COMMUNICATION, and IDENTIFY ALL DOCUMENTS CONCERNING each COMMUNICATION.

Cisco objected to this request because "it is overly broad because it is not limited in time and because it calls for communications of all Cisco employees." Few Cisco employees were even aware that Frenkel was the Patent Troll Tracker at the time of the publication, and therefore their thoughts about Ward are irrelevant. Moreover, only Frenkel published the article at issue, and therefore Cisco's 65,000 employees' opinions of Plaintiff, to the extent they had any, are irrelevant. For this reason, the burden or expense of the proposed discovery outweighs its likely benefit, taking into account the needs of the case, the amount in controversy, the parties' resources, the importance of the issues at stake in the litigation, and the importance of the proposed discovery in resolving the issues. Cisco also objected on the basis that responsive information is protected by the work-product doctrine and the attorney-client privilege. Cisco also objected on the basis that the request attempts to require Cisco to "identify" or "describe" documents rather than produce the documents. Finally, Cisco objected on the basis that the request calls for information outside the custody and control of Cisco. For instance, Cisco cannot review its employees' private email accounts.

Cisco responded subject to these objections that "despite a diligent investigation, no responsive, non-privileged communications have been identified or located."

Plaintiff complains that Cisco's response implies that it is only responding with respect to documents, yet Cisco used the same term—"communications"—is the same term used by Plaintiff in the request. Moreover, Cisco is not required to respond to the extent the request is overly broad. *See* FED. R. CIV. P. 33(c).

Plaintiff also complains that the response does not contain a catalog of privileged communications regarding the subject matter. However, Cisco should not be required to catalog its privileged communications (which also constitute work product) with counsel in this litigation regarding Ward's reputation and lack of harm thereto, nor could it since there is no record of such communications and Cisco does not remember the exact dates, times, etc.

### III.   CONCLUSION AND PRAYER

For these reasons, Cisco requests that the Court sustain its objections to the Interrogatories and deny Plaintiff's Motion to Compel.

Respectfully submitted,

JACKSON WALKER L.L.P.

By: */s/ Charles L. Babcock*
    Charles L. Babcock
    Federal Bar No.: 10982
    Email: cbabcock@jw.com
    Crystal J. Parker
    Federal Bar No.: 621142
    Email: cparker@jw.com
    1401 McKinney
    Suite 1900
    Houston, Texas 77010
    (713) 752-4200
    (713) 752-4221 – Fax

ATTORNEYS FOR DEFENDANT
CISCO SYSTEMS, INC.

## CERTIFICATE OF SERVICE

This is to certify that on this 24th day of February, 2009, a true and correct copy of the foregoing was served via electronic mail upon:

Patricia L. Peden
Law Offices of Patricia L. Peden
5901 Christie Avenue
Suite 201
Emeryville, CA 94608
*Attorney for Plaintiff John Ward, Jr.*

Nicholas H. Patton
Patton, Tidwell & Schroeder, LLP
4605 Texas Boulevard
P.O. Box 5398
Texarkana, Texas 75505-5398
*Attorney for John Ward, Jr.*

/s/ *Charles L. Babcock*
Charles L. Babcock