# IN THE UNITED STATES DISTRICT COURT
## WESTERN DISTRICT OF ARKANSAS
### TEXARKANA DIVISION

| | | |
|---|---|---|
| **JOHN WARD, JR.** | § | |
| | § | |
| **Plaintiff** | § | No.  08-4022 |
| | § | |
| **v.** | § | JURY TRIAL DEMANDED |
| | § | |
| **CISCO SYSTEMS, INC. and RICK** | § | |
| **FRENKEL** | § | |
| | § | |
| **Defendants.** | § | |

## REPLY TO CISCO'S RESPONSE TO PLAINTIFF'S MOTION TO COMPEL RESPONSES TO INTERROGATORY NOS. 1-9

Dockets.Justia.com

## TABLE OF CONTENTS

I.      Introduction ..................................................................................................... 1

II.     Cisco's Interrogatory Responses Are Deficient ............................................. 4

        1.      Cisco's Blanket Objections Are Improper ........................................... 4

        2.      Cisco Should Be Ordered to Provide a Full
                Response to Interrogatory No. 1 .......................................................... 5

        3.      Cisco Should Be Ordered to Provide a Full Response
                to Interrogatory Nos. 2-4 .................................................................... 9

        4.      Cisco Should be Ordered to Provide a Full Response
                to Interrogatory No. 5 ....................................................................... 12

        5.      Cisco Should be Ordered to Provide a Full Response
                to Interrogatory No. 6 ....................................................................... 17

        6.      Cisco Should be Ordered to Provide a Full Response
                to Interrogatory No. 7 ....................................................................... 20

        7.      Cisco Should be Ordered to Provide a Full Response
                to Interrogatory No. 8 ....................................................................... 20

        8.      Cisco Should be Ordered to Provide a Full Response
                to Interrogatory No. 9 ....................................................................... 21

III.    Conclusion ..................................................................................................... 23

To The Honorable Court:

Plaintiff John Ward Jr. hereby files his Reply to Defendant Cisco's Response to Plaintiff's Motion to Compel Responses to Interrogatory Nos. 1-9.

## I. Introduction

Ward's opening brief laid out facts demonstrating why his motion to compel should be granted. Cisco's response attempts to divert the Court from the facts at hand by making baseless accusations that Ward is serving discovery simply to harass Cisco. Ward has served legitimate discovery aimed at identifying relevant information and narrowing the issues for trial. Tellingly, Cisco does not identify a single piece of discovery that it claims was served for purpose of harassing Cisco. Instead, Cisco's argument appears to be that Cisco should dictate the scope and timing of Ward's discovery and any discovery that does not fit Cisco's schedule is harassing.

Rather than admit that its interrogatory responses are deficient and commit to providing full responses, Cisco adopts a "shift the blame" approach. Cisco attempts to divert this Court from the real issues by suggesting that it tried to negotiate a protective order in this case but Ward refused.[1] The response offers a gross mischaracterization of the record. During the parties' Rule 26 conference, Ward's counsel and Cisco's counsel discussed the possibility of agreeing to a proposed protective order to be used in this case. Cisco proposed using the protective order in the *Albritton v. Cisco* litigation pending in the Eastern District of Texas. Ward objected because the *Albritton* protective order is confusing, cumbersome and is one-sided in permitting Cisco to pick and choose which documents are made available to Ward. Cisco's counsel acknowledged that the *Albritton v. Cisco* protective order had resulted in some confusion at the clerk's office in the Eastern District of Texas and the parties agreed that Ward would send Cisco a draft protective order.

---

[1] Cisco's argument is confusing given that Ward has not sought to compel the production of documents but rather for full responses to his **interrogatories**.

1

On December 1, 2008, Ward sent Cisco a proposed protective order. *See* Exh. A. On December 5, 2008, when the deadline for submitting a proposed protective order to the Court was at hand, and without ever attempting to discuss Ward's draft protective order with his counsel, Cisco unilaterally submitted a version of the *Albritton v. Cisco* protective order to the Court for adoption. Ward responded to the Court (as it had already told Cisco) saying that no such protective order was warranted in this case. Cisco seeks to protect a very narrow set of documents. The corresponding protective order should likewise be narrow. The protective order cannot be used by Cisco as a catalyst to unduly hamper public access to the record in this case or to curtail Ward's ability to challenge Cisco's designations.

On February 6, 2009, Cisco's counsel finally responded to Ward's proposed protective order. *See* Exh. B. Cisco attempted to draw an impermeable wall around any communications between Cisco lawyers and sought to ensure that any document it designated under the protective order (whether or not it is actually privileged) would never see the light of day. Ward could not agree to those terms and sent Cisco revisions to the draft protective order. Ward's revisions were sent to Cisco five days later on February 11, 2009. *See* Exh. C. As of today (nearly a month later), Cisco has not responded.

In the meantime, in the *Albritton* case, Cisco filed a motion *in limine* asking Judge Schell to close the courtroom to the public each time one of the documents that Cisco designated under the protective order in that case was discussed at trial. *See* Exh. D at page 5 of 14 (Cisco's Motion *in Limine* No. 4 in the *Albritton v. Cisco* litigation). Cisco cited the fact that no protective order had been entered in this case as justification for its motion to exclude the public from the *Albritton v. Cisco* trial. *See id.* It isn't difficult to discern which party had a motive to ensure that no protective order was entered in this case.

In any event, Cisco's response, which constantly detours into a discussion of the negotiations surrounding the protective order, completely misses the mark. Cisco's interrogatory responses moot the need for a protective order covering Cisco's documents. As the Court is

aware, Ward sued Cisco for defamation.  Cisco's defamatory statements were published by a Cisco in-house attorney, Richard Frenkel, with the involvement of Frenkel's direct supervisor at Cisco and Cisco's Senior Public Relations Director.  *See* Exh. E (Cisco.000390-391).  Cisco has defended itself in this case by asserting that even if Cisco's statements are defamatory, they are not actionable because Cisco did not act with actual malice.  *See* Docket Entry No. 8 (Cisco's Answer) at ¶ 8.  Actual malice is a constitutional standard that requires that Ward demonstrate that at the time it posed the false and defamatory statements, Cisco knew that those statements were false or acted with reckless disregard for the truth.[2]  In its interrogatory responses, Cisco asserted that the advice it received from counsel is evidence of its lack of malice.  *See* Exh. F at 7 (Cisco's response to Ward's Interrogatory No. 5.).

Cisco cannot abuse the discovery process by using its claims of privilege as both a sword and as a shield.  *See United States v. Workman*, 138 F.3d 1261, 1264 (8th Cir. 1998).  Consequently, Cisco's reliance on advice of counsel has triggered an implied waiver of privilege, and Cisco cannot withhold discovery concerning the advice it and Frenkel received from counsel regarding the filing of the ESN complaint irrespective of whether or not there is a protective order in this case.  Having provided a partial answer that includes reliance on advice of counsel to aid its cause, Cisco cannot now be heard to complain that Ward wants a complete response to his interrogatories, including the communications with counsel that Cisco has placed at issue.

Separate and apart from the mischaracterization of the facts surrounding the protective order, the response goes on to take issue with every piece of discovery Ward has ever served.  Cisco's shot-gun list of objections to other discovery served in this case is pointless and irrelevant.  So too is its insistence that Ward's counsel should have called Cisco before filing its motion because Cisco was busy.  Ward's counsel provided Cisco with a detailed list of the deficiencies in Cisco's responses and gave Cisco more than sufficient time to respond.  Certainly

---

[2] Ward disagrees that this is the operable standard of fault to be applied in this case.  But, in any event, Cisco's decision to advance this line of defense makes discovering information known to Cisco at the time it posted the accused statements critical to the issues in this case.

Cisco's counsel could have found 30 seconds to send an email saying we are too busy to discuss the issue this week but would be happy to discuss it next week, or even the week after.  Ward's counsel would have been more than willing to accommodate counsel's schedule if they would have given Ward the courtesy of a response.  Cisco cannot completely ignore Ward's attempt to resolve discovery disputes and then complain when a motion to compel is filed.

More importantly, the response's litany of complaints loses sight of the relevant issue. The issue before this Court is not the protective order, or Cisco's counsel's busy schedule, or whether or not Cisco can withhold documents under a claim of privilege.  The issue before the Court is whether Cisco's responses to Ward's <u>First Set of Interrogatories</u> are deficient and whether Cisco should be ordered to provide supplemental interrogatory responses.  Ward respectfully suggests that even a cursory review of Cisco's interrogatory responses demonstrates that the answer to that question is yes.  Therefore, Ward requests that the Court order Cisco to provide full and complete interrogatory responses within ten days of this Court's order.

## II.  Cisco's Interrogatory Responses Are Deficient

### 1.  Cisco's blanket objections are improper

The response argues that because Defendants' cut-and-paste objections are not identical, they are not "blanket objections."  *See* Response at 4 ("As the Court can see from the objections themselves, they are not identical.").  Cisco misunderstands what a blanket objection is.  It is not enough that Cisco's objections are not "identical."  If it were, the Local Rule would prohibit "identical objections."  Instead, Local Rule 33.1(b) states:  "It is not sufficient to state that the interrogatory or request is burdensome, improper, or not relevant.  **The ground or grounds for the objection must be stated with particularity**."  (emphasis added).  Cisco's objections do not provide any specific grounds for the objections, let alone the particularity required under the Local Rules.  Cisco's cookie-cutter objections are specifically prohibited in this district, and the Court should not consider those objections.  *See Csiszer v. Wren*, 2008 U.S. Dist. LEXIS

100583, 4-5 (W.D. Ark. Nov. 25, 2008); Local Rule 33.1(b) (A blanket objection to a set of interrogatories, requests for admissions, or requests for production will not be recognized.)

       2.   *Cisco Should Be Ordered To Provide A Full Response to Interrogatory No. 1*

Ward's Interrogatory No. 1 asked Cisco to:

> "IDENTIFY and DESCRIBE all actions undertaken by YOU or at YOUR direction to retain, locate, and produce COMMUNICATIONS between the Troll Tracker and/or Rick Frenkel or any other PERSONS CONCERNING ESN, the filing of the ESN complaint, Plaintiff Ward, Ward's co-counsel Eric Albritton or the law firm of McAndrews Held & Malloy or any other information that may be relevant to this case, INCLUDING the gMail account Frenkel used to correspond as the Troll Tracker, and separately and for each action IDENTIFY the persons involved, the DATE of the action, and DESCRIBE DOCUMENTS AND COMMUNICATIONS that were obtained.

Ward's motion pointed out that Cisco's response omitted information concerning Cisco's efforts to locate relevant <u>communications</u>, omitted documents from the gMail account used by Frenkel to communicate as the Troll Tracker, and failed to provide the date information requested, the names of the individuals involved, and the identities of persons from whom Cisco collected documents "early in the lawsuit."

The response argues that Cisco is relieved from its obligation to provide a full response because the interrogatory (1) asks for irrelevant information, (2) is overly burdensome, (3) calls for information protected by privilege, (4) calls for information outside of Cisco's custody and control, and (5) is properly answered under Rule 33(d).  *See* response at 5-7.  None of Cisco's arguments justify the vague and incomplete response provided by Cisco.

First, Cisco's relevancy objection is without merit.  "It is insufficient for the party objecting to discovery based on relevance to simply make conclusory allegations that the request is irrelevant."  *Creighton Saint Joseph Reg'l Healthcare, LLC v. Lakeland Eng'g Equip. Co*., 2007 U.S. Dist. LEXIS 86752 (D. Neb. Nov. 13, 2007).  That is exactly what Cisco has done in its response.  Moreover, Cisco's relevance objection is baseless.  In this case, there are key documents missing from Cisco's production.  For example, although the Troll Tracker was a Cisco employee who worked on the Troll Tracker Blog at work, Cisco has only produced a

single email from the Troll Tracker's email.  *See* Exh. G (Cisco.000253).  It is clear from the produced email that Rick Frenkel used his Troll Tracker account to communicate with his colleagues at Cisco, including Yen and Noh who participated in Frenkel's publication of defamatory statements about Ward.  *See* Exh. E (Cisco 390-391).  Communications between the Troll Tracker and his cohorts at Cisco are relevant to the falsity/truth and bad/good faith issues in this case.  Ward is entitled to a response from Cisco describing what efforts Cisco undertook to obtain and produce all relevant documents, not just the one that Cisco chose to produce.  *See Dickard v. Okla. Mgmt. Servs. for Physicians,* LLC, 2007 U.S. Dist. LEXIS 62851 (W.D. Ark. Aug. 24, 2007) (interrogatory asking Defendant to describe in detail the effort it has made to preserve, search for, identify, collect, review, and produce relevant document is a reasonable request).

Second, Cisco's burdensome objection can be dismissed out of hand.  Cisco, as the party resisting discovery, has the burden to show ***facts*** demonstrating that the time or expense involved in responding to requested discovery is unduly burdensome. *See Creighton*, 2007 U.S. Dist. LEXIS 86752, at *5-6.  Cisco must provide the Court with sufficient detail and an explanation about the nature of the burden in terms of time, money and procedure required to produce the requested documents.  *See id*.  Cisco's response fails to make a specific showing of burden.  Nor can Cisco make this showing given the financial and technical resources at its disposal.  *See* Exh. H.  Cisco's boilerplate burden objection should be denied.

To the extent that Cisco argues burden based on the fact that the interrogatory calls for information rather than the production of documents, that argument too fails.  *See* Response at 5 (objecting that Ward has asked Cisco to describe documents that were obtained).  Interrogatory No. 1 clearly asks Cisco to provide information regarding actions, the people involved in those actions, and to provide a general description of documents and communications identified by Cisco.  There is nothing improper about seeking discovery concerning matters not memorialized in writing.  In fact, one of the key features of interrogatories is they permit a party to obtain

information about oral communications and actions that are not apparent from a party's document production.  Cisco's objection to describing documents is meritless, and in any event is only directed to one small part of the information requested.

Third, Cisco's insistence that it can avoid providing a full response to Ward's interrogatory under a broad and unspecified claim of privilege is also meritless.  There is nothing in Interrogatory No. 1 that implicates attorney-client communications or work product.  The interrogatory asks Cisco to identify ***facts***—not communications or work product documents.  Facts are not privileged, even under Cisco's broad definition of privilege.  *See Upjohn Co. v. United States*, 449 U.S. 383, 395-96 (1981) ("The protection of the privilege extends only to *communications* and not to facts.  A fact is one thing and a communication concerning that fact is an entirely different thing.").  At a minimum, Cisco should have provided a response that sets forth the facts concerning dates, the names of the individuals involved, and the persons from whom Cisco collected documents, including those whose files were searched "early in the lawsuit."

Fourth, Cisco rests its opposition on an insupportable "lack of custody and control" argument.  Cisco argues that Interrogatory No. 1 improperly seeks information from Cisco's employees' personal email accounts.  Not true.  Interrogatory No. 1 seeks information regarding all emails that are in Cisco's possession custody and control.  Frenkel sent email from his gMail account to Cisco employees.  *See* Exh. G.  He also logged on to his Troll Tracker account at work.  *See id*.  To the extent that Cisco has access to documents to or from the Troll Tracker because they were accessed at work, are contained in emails stored in the files of Cisco employees, or got swept up in Cisco's backup and archived systems, they are in Cisco's custody and control.  The same holds true for emails authored or received by other Cisco employees, whether from their Cisco email or from another email account, if that email made its way into Cisco's files.  If Cisco has access to the email, it is in Cisco's custody and control.  Ward's

interrogatory legitimately seeks to discover whether or not Cisco has searched for those documents.

Moreover, Cisco's response again seeks to divert the Court's attention from an important issue. Here, Ward served an interrogatory specifically asking Cisco to identify all communications (including emails, documents, in person meetings and telephone conversations not memorialized in documents). Cisco's response raises a smoke screen around access to email accounts, but never explains why its response is limited to its efforts to search "email accounts."

Fifth, Cisco's reliance on Rule 33(d) is wholly improper. Cisco's response argues that "with respect to communications that were obtained in Cisco's search, which were produced in this case, Cisco is not required to provide [the information sought]." *See* Response at 6. Again, Cisco impermissibly narrows its response to "documents obtained during Cisco's search" when the interrogatory specifically seeks information regarding "communications"—oral and written—not just "documents collected by Cisco." The interrogatory requires that Cisco identify each communication and then separately and for each communication identify the date, time, persons involved, the purpose of the communication, and describe the communication.

Even as to its narrowed response, Cisco seeks to avoid providing a full response by making a conclusory argument that Ward can identify which of Cisco's documents are communications. Cisco asks this Court to ignore that to invoke Rule 33(d),[3] Cisco must specifically identify the responsive documents. *See Bldg. Constr. Enters. v. Gary Meadows Constr. Co.*, 2007 U.S. Dist. LEXIS 64836, 7-8 (E.D. Ark. Aug. 31, 2007) ("the Rule requires that a party in control of the documents, who is obviously more familiar with the organizational system, must 'specify the records from which the answer may be derived or ascertained' in a

---

[3] Cisco argues that it is disingenuous to state that Cisco has not invoked Rule 33(d) because Cisco objected on the basis that Plaintiff's interrogatories imposed obligations beyond those required by the Federal Rules of Civil Procedure. *See* Response at 7. Cisco confuses two separate and distinct issues: burden and the option to identify records in place of a response. Cisco objected (albeit a blanket objection) based on burden. What Cisco's responses do not do is set forth that it was opting to respond under Rule 33(d) by identifying documents that would provide the answer to the interrogatory. Perhaps that explains why Cisco's responses don't identify the documents as is required by Rule 33(d).

manner which is 'in sufficient detail to permit the interrogating party to locate and to identify, as readily as can the party served, the records from which the answer may be ascertained.'").  If identifying the documents is as easy as Cisco claims, it should have little problem providing a response that complies with Rule 33(d).  Cisco has produced a lengthy privilege log in this case.  To the extent that any of those documents are responsive to Interrogatory No. 1, Cisco should identify the documents on its privilege log that are responsive to the interrogatory.  That information is only in Cisco's possession and control, and Cisco cannot credibly argue that identifying the responsive communications is no more burdensome to Ward than it is to Cisco.

   *3.   Cisco Should Be Ordered To Provide A Full Response to Interrogatory Nos. 2-4*

Ward's Interrogatory Nos. 2-4 asks Cisco to:

> Interrogatory No. 2:  "IDENTIFY each PERSON or COMPANY with whom CISCO or its EMPLOYEES had any COMMUNICATION between October 14, 2007 and March 7, 2008 CONCERNING the Troll Tracker October 17, 2007 Post, the October 18, 2007 Post, and the revised October 18, 2007 Post, and separately and for each COMMUNICATION IDENTIFY the DATE, TIME, PERSONS involved, the purpose of the COMMUNICATION, DESCRIBE THE COMMUNICATION and IDENTIFY ANY DOCUMENTS CONCERNING that COMMUNICATION."

> Interrogatory No. 3:  "IDENTIFY each PERSON or COMPANY with whom CISCO or its EMPLOYEES had any COMMUNICATION between October 14, 2007 and March 7, 2008 CONCERNING the filing of the ESN complaint, Ward's role in that filing, the role of Ward's co-counsel, Eric Albritton, in that filing, and the role of Ward's co-counsel McAndrews Held & Malloy in that filing, and separately and for each COMMUNICATION IDENTIFY the DATE, TIME, PERSONS involved, the purpose of the COMMUNICATION, DESCRIBE THE COMMUNICATION and IDENTIFY ANY DOCUMENTS CONCERNING that COMMUNICATION."

> Interrogatory No. 4:  "IDENTIFY ALL COMMUNICATIONS between CISCO and any PERSON and/or COMPANY CONCERNING whether the allegations made in the October 17, 2007 Post, the October 18, 2007 Post, and/or the revised October 18, 2007 were accusations of criminal, unethical or improper conduct, and separately and for each COMMUNICATION DESCRIBE the COMMUNICATION, IDENTIFY the DATE, TIME, PERSONS involved, the purpose of the COMMUNICATION, DESCRIBE the COMMUNICATION, and IDENTIFY ANY DOCUMENTS CONCERNING that COMMUNICATION."

9

Ward's motion to compel demonstrated that Cisco's responses are not proper responses under Rule 33(d) and that Cisco failed to respond to the interrogatories propounded, which seek information regarding all "communications," not just documents.  The response continues to avoid the larger issues, choosing instead to focus on Cisco's document production.  Again, to be clear, Ward's interrogatories were specifically drafted to illicit information regarding oral and in person communications - evidence that he could not obtain by reviewing Cisco's documents.

The response also argues that Cisco is relieved from its obligation to provide a full response because the interrogatory (1) asks for irrelevant information, (2) is overly burdensome, (3) calls for information protected by privilege, (4) calls for information outside of Cisco's custody and control, and (5) is properly answered under Rule 33(d).  *See* response at 8-9.  None of Cisco's blanket objections justify its vague and incomplete responses.

First, Cisco's relevance objection is without merit.  The interrogatories seek to discover the identities of persons with information regarding the facts surrounding the filing of the ESN complaint, the publication of Cisco's false and defamatory statements about Ward stemming from the filing of the ESN complaint, information regarding the false statements made in the accused internet posts, and to identify communications between individuals involved in Cisco's tortious conduct.  The information sought is calculated to lead to relevant and admissible evidence.  Cisco's only specific relevance objection is that the interrogatory response would require Cisco to query its 65,000 employees.  That objection appears to be more of an overly burdensome objection than one based on relevance, but in any event, Cisco's objection is exaggerated.  Cisco has been litigating a similar case in the Eastern District of Texas that is on the verge of going to trial.  Cisco knows the persons within its organization who are likely to have relevant and responsive information.  Nonetheless, Cisco has failed to provide <u>any</u> response to these interrogatories.  Cisco does not remotely suggest that it has undertaken the smallest of efforts to provide responses based on information gathered from the most likely sources.  Cisco

cannot rely on the fact that it is a large company as a reason to avoid providing any responsive information.

Second, Cisco's overly burdensome objection fails to specify its burden in responding and should be denied.

Third, Cisco's privilege objection should be overruled. Cisco cannot withhold facts under a claim of privilege. At a minimum, Cisco must provide responses that identify facts concerning persons, times, dates, and the subject matter of the communications—just as it would have to provide that information on a privilege log in response to a request for documents. Cisco cannot simply argue privilege without providing Ward with enough information to evaluate the merit of Cisco's claim.

Fourth, Cisco argues that these interrogatories call for information outside Cisco's custody and control because they ask for information regarding "Cisco's employees' private communications." Nonsense. The interrogatories are directed to a specific subject matter: the filing of the ESN complaint, the publication of false and defamatory statements about Ward, and information known to Cisco employees about how readers of Cisco's defamatory articles understood Cisco's statements. Each of these communications are directly relevant to the actions of Cisco's employees with respect to the publication of defamatory statements about Ward—action they took within the scope of their employment at Cisco. To the extent those persons are still employed at Cisco, Cisco has access and control over those individuals and can ask them if they have information responsive to Ward's interrogatories. Cisco's argument to the contrary is disingenuous. Even as to Frenkel and Noh, who are no longer employed at Cisco, Cisco's attorneys have been representing them or working hand-in-hand with them in the *Albritton v. Cisco* litigation. It is inconceivable that Cisco does not have control over those individuals for the purpose of responding to Ward's interrogatories.

Fifth, Cisco's response telling Ward to "see documents produced by Cisco" is unacceptable. Cisco's response is not permitted by Rule 33(d). In any event, these

interrogatories ask for all "communications"—not just documents.  They cannot be answered with a reference to produced documents.  A written response is required.  Nothing in Cisco's response compels a different conclusion.  Because Cisco bears the burden of showing that it is properly withholding discovery—a burden it has not and cannot meet—it should be ordered to provide full responses to Interrogatories 2-4.

> *4.   Cisco Should Be Ordered To Provide A Full Response to Interrogatory No. 5*

Ward's Interrogatory No. 5 asks Cisco to:

> "IDENTIFY ALL information relied upon by Richard Frenkel in making the statements contained in the Troll Tracker October 17, 2007, October 18, 2007 and revised October 18, 2007 posts, and separately and for each IDENTIFY the DATE and TIME the information was received by Frenkel, IDENTIFY all DOCUMENTS CONCERNING the information received, IDENTIFY ALL PERSONS involved in the information received, IDENTIFY the nature of any COMMUNICATION involved INCLUDING the DATE, TIME, and ALL PERSONS involved in the COMMUNICATION, and IDENTIFY all DOCUMENTS CONCERNING that COMMUNICATION."

Cisco responded as follows:

> "Subject to and without waiving the foregoing objections, Richard Frenkel relied on documents on the official court website, the official court docket, correspondence he received from various individuals, privileged discussions he had with legal counsel, legal research, and his own experience with the electronic filing system.  *See* documents produced by Cisco.  Responsive privileged documents have been logged in Cisco's privilege log, which has previously been provided."

Ward's motion to compel pointed out that although Cisco states that Frenkel relied on "documents on the official court website," and "correspondence he received from various individuals," Cisco failed to <u>identify</u> those documents and individuals as required by the interrogatory.  Ward also objected to Cisco asserting that Frenkel relied upon communications with counsel to defend itself in this case, while at the same time refusing to respond to the substantive questions set forth in the interrogatory by claiming they are privileged.

In response Cisco argues the same blanket objections that have been discussed repeatedly above.  *See* Response at 9-13.  Incredibly, Cisco asserts a relevance objection.  *See* Response at

9.  Cisco cannot seriously contend that although it has claimed that it acted without malice and therefore cannot be held accountable for its defamation of Ward, the information relied upon by Richard Frenkel in making the accused statements (from which Cisco will argue that Frenkel acted in good faith) is not relevant or likely to lead to the discovery of relevant admissible evidence.[4]

Second, Cisco's overly burdensome objection fails to specify its burden in responding and should be denied.

Third, Cisco's assertion that Interrogatory No. 5 calls for information in the possession of Rick Frenkel, over whom it does not have custody or control is belied by its limited response. Cisco's response to Interrogatory No. 5 sets forth the information that it claims Frenkel relied upon in making his accusations against Ward.  How is it that Cisco can obtain the information it needs from Frenkel to provide a partial answer to aid its defense, but Frenkel is beyond Cisco's custody and control when it comes to providing a full response to the information sought by Ward?  While Frenkel may no longer be employed by Cisco, in the *Albritton v. Cisco* case, Cisco's counsel has been actively involved in defending Frenkel, has tendered him as a Rule 30(b)(6) witness on Cisco's behalf, and has obtained declarations from Frenkel to offer in support of Cisco's motion for summary judgment.  *See* Exh. I (Frenkel Depo. in the *Albritton v. Cisco* litigation at 71:16-73:2 and Exh. J (Frenkel declaration in support of Cisco's motion for summary judgment in the *Albritton v.* Cisco litigation).  It is also very likely that Cisco is paying Frenkel's legal fees in this case.  Cisco's claims of lack of custody or control over Frenkel stretches its credibility.

Cisco claims that it has produced a privilege log and documents that provide the very information that Ward seeks.  *See* Response at 10.  Again, Cisco misses the point.  Ward's interrogatory does not simply ask Cisco to identify <u>documents</u>.  Instead, the interrogatory asks

---

[4] Ward's opening brief cited *Harte-Hanks Communications, Inc. v. Connaughton,* 491 U.S. 657, 668 (1989) for the proposition that the information Ward seeks is relevant.

for information that may not have been discernable from the documents.  For example, Cisco's response states that Frenkel relied upon his own experience with the court's filing system and his own legal research.  That information would not have been available in the documents that Cisco is withholding on its privilege log.  Nor is the information about <u>when</u> Frenkel undertook the legal research he claims to have relied upon available from Cisco's documents.  Cisco must provide a full answer to Interrogatory No. 6, including providing the date and time information that is critical to determining what Frenkel and Cisco knew and when.  Ward must have that discovery to prove at trial that Cisco knew that its accusations where false at the time they were published, or at a minimum, it acted with reckless disregard or purposeful avoidance of the truth when it defamed Ward.  Ward cannot obtain from that information from any other source.

Finally, Cisco's insistence that a protective order be entered in this case—and on Cisco's terms—before Cisco is required to fully respond to Interrogatory No. 5 is a red herring.  Cisco insists that a protective order is necessary to protect its privileged communications.  But, as Ward explained in his opening brief, Cisco cannot use its claims of privilege as both a sword and a shield.  Having put Frenkel's reliance on advice of counsel at issue in this case, Cisco has waived privilege as to that subject matter.  *See Workman*, 138 F.3d at 1264; *see also United States v. Bauer*, 551 F.3d 786 (8th Cir. 2008); *Union County, Iowa v. Piper Jaffray & Co., Inc.,* 248 F.R.D. 217, 223 (S.D. Iowa 2008); *Burress v. Union Pac. R.R.,* 2007 U.S. Dist. LEXIS 1749 (E.D. Ark. Jan. 8, 2007).  Because Cisco's claims of privilege have been waived, no protective order is needed to protect those communications.  Non-privileged documents do not require special protection.

Cisco takes objection to what it calls Ward's insistence on a protective order that would make it easier for the media to obtain access to Cisco's privilege and work-product materials.  Cisco is not being candid with the Court.  It is unlikely that Cisco is really worried about attorney-client communications concerning the filing of the *ESN v. Cisco* litigation.  The filing of the complaint in the ESN case gave rise to Cisco's accusations that Ward and his co-counsel

14

conspired with the court clerk in the Eastern District of Texas to alter a governmental record to create subject matter jurisdiction where none existed.  Cisco's accusations were made in the context of a race to the court house.  ESN filed its complaint on October 16, 2007.  A computer glitch in the court's electronic filing system wrongly recorded the docket entry as October 15, 2007.  Because ESN's patent did not issue until the morning of the 16th, if the complaint had been filed on October 15th the Eastern District of Texas Court may have lacked subject matter jurisdiction.  Cisco saw an opportunity to avoid a jurisdiction it viewed as hostile to defendants and to gain settlement leverage with ESN, and filed a declaratory judgment action in Connecticut.  In the end, after the issue was briefed in both courts, Cisco stipulated to jurisdiction in the Eastern District of Texas.  The jurisdictional issue in the *ESN v. Cisco* case has long been resolved and nothing in the communications concerning the filing of the ESN complaint remains case-sensitive information.  *See In re Sealing & Non-Disclosure*, 562 F. Supp. 2d 876, 895 (S.D. Tex. 2008) (Publicity will not threaten the integrity of a proceeding that is no longer active.).

What is sensitive, however, is Cisco's perception of how the conduct of its employees who specifically set out to defame Ward will impact its corporate image.  Cisco spends money every year on public relations personnel and does not want to be perceived by the public as a bad actor.  Cisco is afraid that if documents surface showing the alacrity of spirit with which Cisco went about defaming Ward, its image will be tarnished.  So, although Cisco must produce documents demonstrating what Frenkel knew and when he knew it to prove that Frenkel acted in good-faith, it insists on doing so under a self-serving protective order that shields those documents from public view.  In the *Albritton* case, Cisco has even gone so far as to ask the Court to seal the courtroom during trial.  *See* Exh. D at 5 of 14.  Cisco's need to protect its corporate image is not justification for entering a protective order that precludes the public from viewing documents in this highly publicized case.

At the same time that Cisco insists that documents harmful to its image are sequestered, it has no problem making public statements calling Ward's case meritless and telling the public that the only reason Ward has brought this cause of action is to "curry favor with the local judges." *See* Exh. K.  It is little wonder that Ward refuses to agree to Cisco's one-sided protective order.  Cisco should not be permitted to file its pleadings unsealed but insist that Ward's responses be kept from the public.  Cisco cannot make snide remarks to the press knowing that Ward's hands are tied and he cannot respond without violating a protective order insisted on by Cisco for the sole purpose of advancing its one-sided public relations campaign.

Cisco has placed Frenkel's communications with counsel at issue in this case by including that information in its interrogatory response.  That Cisco intends to rely on that information in this case to aid its cause is indisputable.  Cisco has taken the same approach in the *Albritton* case, submitting a declaration from Frenkel stating that he relied in good faith on the advice of his counsel, Baker Botts.  *See* Exh. J at ¶ 8.  In the *Albritton* case, Frenkel, acting as Cisco's Rule 30(b)(6) witness, testified that Cisco relied on the advice of its counsel.  *See* Exh. I (Frenkel Depo in the *Albritton v. Cisco* litigation at 71:16-73:2).  By adopting that defense in this case, Cisco has triggered an "at issue" waiver of privilege.  Cisco must provide a full and complete response to Interrogatory No. 5—including information for which privilege has been waived.  Any other result would impermissibly allow Cisco to use its claims of privilege a both a sword and a shield.

Interestingly, Cisco's response does not even attempt to argue that is has not triggered an implied waiver.  Instead, Cisco attempts to distinguish one of the cases cited by Ward by suggesting that case doesn't apply here where there has been "a request from the testifying witness that the privilege matter remain confidential."[5]  *See* Response at 12.  Cisco does not cite

---

[5] Cisco makes no attempt to distinguish the other cases cited by Ward for the proposition that Cisco has triggered an implied waiver of privilege:  *U.S. v. Workman*, 138 F.3d 1261, 1263-64 (8th Cir. 1997); *Union County, Iowa v. Piper Jaffray & Co., Inc.,* 248 F.R.D. 217, 223 (S.D. Iowa 2008); *Rotoworks Int'l Ltd. v. Grassworks USA, LLC*, 2007 U.S. Dist. LEXIS 66505 (W.D. Ark. Sept. 7, 2007); *United States v. Bauer*, 551 F.3d 786 (8th Cir. 2008); *Burress v. Union Pac. R.R.,* 2007 U.S. Dist. LEXIS 1749 (E.D. Ark. Jan. 8, 2007); *Baker v. GMC*, 197 F.R.D. 376, 388.

a single authority for the proposition that a party is permitted to use privilege as a shield and a sword so as long as it asks for permission first.  In essence, Cisco says it can ask the Court to hold its shield for it while it uses privileged communications as a sword, then, when it is ready for its shield again, it can take it up with impunity.  That is not the law.  If it were, it is difficult to see any circumstance in which an implied waiver would ever be found.

Finally, to the extent that Cisco believes that some of its documents fall outside of the implied waiver, Ward asks the Court to order those documents produced to the Court for an *in camera* review.  That issue, however, is separate from the issue now before the Court, which is Cisco's response to Ward's <u>Interrogatories</u>.  Cisco has provided a partial answer to Interrogatory No. 5, including only that information that Cisco wants to rely on in its case.  Fairness dictates that Cisco provide a full and complete interrogatory response to the entire question asked, including an identification of Frenkel's communications with counsel.

### 5. *Cisco Should Be Ordered To Provide A Full Response to Interrogatory No. 6*

Ward's Interrogatory No. 6 asks Cisco to

> "IDENTIFY the DATE and TIME that CISCO first became aware that ESN claimed that the filing date of the complaint as listed on the court's docket was an error and DESCRIBE the circumstances under which CISCO obtained that knowledge INCLUDING ALL PERSONS involved, all COMMUNICATIONS involved and separately and for each COMMUNICATION the DATE, TIME, ALL PERSONS involved, the content of the COMMUNICATION, what prompted the COMMUNICATION, the form of the COMMUNICATION, and IDENTIFY ALL DOCUMENTS CONCERNING CISCO's knowledge."

Cisco responded as follows:

> "Richard Frenkel learned that ESN claimed that the filing date of the complaint on the official court docket was an error on October 18, 2007, but he does not recall the time, persons involved, or exact content of the communication.  See documents produced by Cisco.  Responsive, privileged documents have been logged in Cisco's privilege log, which has previously been provided."

Ward's motion pointed out that Cisco's response identified the date that Frenkel first became aware that there had been a mistake with the Court's electronic filing software, but did not respond with respect to the broader question of <u>Cisco's knowledge</u>, including an identification of the persons from whom <u>Cisco</u> first learned that the filing of the ESN complaint was an error, an explanation of what prompted the communication, the form of the communication, and an identification of relevant documents.

The response argues that Cisco need not provide the information called for in Interrogatory No. 6 because (1) the knowledge of any other Cisco employee other than Frenkel is not relevant, (2) the interrogatory is overly broad, (3) the interrogatory calls for privileged information, (4) calls for information outside of Cisco's custody and control. *See* Response at 13-14.

Cisco's relevance argument is misguided. Cisco argues that because Frenkel is the Cisco employee who actually posted the defamatory statements about Ward, his knowledge of the true facts is the only information relevant to Ward's interrogatory. Cisco is wrong. Federal Rule of Civil Procedure 26 permits discovery of information that is reasonably calculated to lead to the discovery of admissible evidence. Here, the knowledge of Cisco employees more than meets the relevance threshold. Ward was not defamed by Frenkel acting alone. Cisco has admitted that Frenkel was acting within the course and scope of his employment at Cisco at the time he made the false and defamatory accusations about Ward. *See* Response at 13. Frenkel's direct supervisor, Mallun Yen and Cisco's public relations point person, John Noh were involved in Frenkel's publication of the accused statements. *See* Exh. E (Cisco 390-391). If Noh and Yen knew that the filing date of the complaint as listed on the court's docket was an error, and they did not report that information to Frenkel allowing him to post false statements about Ward, or if they did report that information but Frenkel posted false accusations anyway, that information is certainly relevant to the bad faith, negligence, and malice issues in this case. The same holds

true for any Cisco employee involved in trying to determine what occurred with respect to filing of the ESN complaint and what to do about it.

Cisco's burdensome objection fails for lack of specificity.  In any event, the fact that it may be overly burdensome for Cisco to query all of its employees for relevant information does not excuse its failure to query any employee; particularly those employees that Cisco knows have responsive information.  At a minimum, Cisco's response should demonstrate that it asked persons at Cisco involved in the events surrounding the filing of the ESN complaint and the subsequent anonymous posting by Cisco when they learned that the filing date of the complaint on the official court docket was an error and that Cisco has provided that information in response to Interrogatory No. 6.

Cisco's privilege objection to this interrogatory demonstrates why this Court should find that an implied waiver regarding the subject matter of the filing of the *ESN v. Cisco* complaint and communications surrounding the posting of the accused Troll Tracker Blog posts.  On the one hand, Cisco asserts that Frenkel relied on communications with counsel and therefore Cisco cannot be held accountable because it acted in good faith.  On the other hand, Cisco does not deny that it is withholding relevant communications but says that it is not required to reveal conversations it has logged on its privilege log.  *See* Response at 14.  Cisco has placed Frenkel's knowledge at issue.  The basis of his (and Cisco's) knowledge is fair game, and Cisco should be ordered to provide a full response to Interrogatory No. 6.

Finally, Cisco continues to argue that it can answer by providing a "go look at our documents" response.  *See* Response at 14.  If Cisco intends to rely on Rule 33(d) for its response, it must confirm that all relevant information is located in its documents, that there are no oral, in person, or other communications as defined in the interrogatory, and it must specifically identify the responsive documents.

### 6. *Cisco Should Be Ordered To Provide A Full Response to Interrogatory No. 7*

Ward's Interrogatory No. 7 asks Cisco to:

> "IDENTIFY ALL PERSONS or COMPANIES who knew that Richard Frenkel was the Troll Tracker before he publicly identified himself as such on the Troll Tracker Blog, and separately and for each PERSON or COMPANY IDENTIFY the DATE upon which they obtained that knowledge, IDENTIFY the source of that knowledge (who told them), IDENTIFY all PERSONS involved in the COMMUNICATION, DESCRIBE the circumstances leading to the disclosure, and IDENTIFY all DOCUMENTS CONCERNING that disclosure."

Cisco refused to provide an answer based on relevance. *See* Exh. F (Cisco's Interrogatory Responses at 8). Ward's motion to compel demonstrated the relevance of the information sought. In response, Cisco does not address the relevance issue, but raises for the first time an overly broad objection not set forth in its interrogatory responses. *See* Response at 15. That objection has been waived and is, in any event, meritless as demonstrated by Cisco's decision to resort to it only after its relevance argument was in trouble. To the extent that the Court believes that Ward's interrogatory is overly broad, Cisco should provide a response based on its interviews with persons in its control, including Frenkel. Cisco's overly broad objection does not give it a license to provide no response at all.

### 7. *Cisco Should Be Ordered To Provide A Full Response to Interrogatory No. 8*

Ward's Interrogatory No. 8 asks Cisco to:

> "IDENTIFY ALL COMMUNICATIONS and DOCUMENTS CONCERNING whether any CISCO EMPLOYEE should be disciplined, reprimanded, chastised, admonished, warned or corrected CONCERNING the posting of the Troll Tracker October 17, 2007, October 18, 2007 and revised October 18, 2007 posts, and separately and for each COMMUNICATION or DOCUMENT IDENTIFY the DATE, TIME, ALL PERSONS involved, the nature of the COMMUNICATION or the subject-matter of the DOCUMENT, and IDENTIFY all DOCUMENTS CONCERNING each COMMUNICATION."

Cisco's answer to this interrogatory contained a relevance objection and then stated that it did not have documents to produce. Ward's motion to compel explained why the information sought in Interrogatory No. 8 is relevant. The response takes issue with Ward's argument,

claiming that the interrogatory does not specifically ask who participated in Cisco's defamation of Ward. Ward does not have to ask the question the way Cisco would like it written before Cisco must provide a response. Ward asked Cisco to identify all communications and documents concerning whether any Cisco employee should be disciplined as a result of the defamatory statements made about Ward. Persons who were disciplined in connection with Cisco's defamatory statement were presumably involved or in some way responsible for Cisco's defamation of Ward.

The response takes the now familiar approach of ignoring that Ward's interrogatories asked for all "communications" not just documents. Although Cisco's response states that it was unable to locate "communications" the syntax of the sentence implies that Cisco searched only for documents. The response does not assert that no such communications took place. Cisco should either confirm that there are no <u>communications</u>, or provide a response that includes the communications that it has omitted.

Finally, the response does not deny that responsive communications are being withheld under a claim of privilege. If Cisco's investigation uncovered communications that it is withholding as privileged, its written response must identify the non-privileged facts for each communication, including the persons involved, the date, the time, and the basis for Cisco's claim that the content of the communication is protected by privilege. Alternatively, Cisco's response should state that no such communications exist.

   8.   *Cisco Should Be Ordered To Provide A Full Response to Interrogatory No. 9*:

Ward's Interrogatory No. 9 asks Cisco to:

> "IDENTIFY all DOCUMENTS AND COMMUNICATIONS between CISCO and any PERSON or COMPANY CONCERNING Ward's Reputation INCLUDING whether CISCO has been asked by any PERSON or COMPANY about Ward, about hiring Ward, or about CISCO's perception of WARD, separately and for each COMMUNICATION DESCRIBE the COMMUNICATION, IDENTIFY the DATE, TIME, PERSONS involved, the purpose of the COMMUNICATION, DESCRIBE the COMMUNICATION, and IDENTIFY ALL DOCUMENTS CONCERNING each COMMUNICATION."

Ward's motion took issue with two things in Cisco's response: (1) that the syntax of Cisco's response implied that Cisco searched only for documents and not the for all "communications" as required by the interrogatory and (2) Cisco's response did not include an identification of the facts required to determine the validity of Cisco's claims of privilege.

In response, Cisco makes a relevance objection not included in its interrogatory responses. *Compare* Exh. F at 9 (Cisco's Interrogatory Responses) with Response at page 16. Cisco's relevance argument has been waived. In any event, unless Cisco is willing to stipulate that Ward's reputation has been damaged by its defamatory posts, information regarding Ward's reputation is relevant. The fact that Ward asked Cisco for discovery on that topic is not objectionable or overly burdensome. Given that it was Cisco that set out to defame Ward, it is reasonable to seek discovery from Cisco to ascertain the extent of its success in damaging Ward's reputation among its employees, colleagues, outside counsel, and business associates. Any communications that bad-mouths Ward are also relevant evidence of bad faith, malice, ill will and spite, all of which are relevant to the fault and punitive damages issues in this case.

In response to Ward's concerns about the scope of Cisco's response, Cisco claims to have responded based on all "communications." *See* Response at 16. If Cisco is representing to the Court that it has undertaken an investigation consistent with the scope of Ward's interrogatory and that it has uncovered no communications (as defined in the Ward's interrogatories) responsive to Ward's interrogatory, it should provide that assurance in its supplemental response.

Finally, to the extent that Cisco is withholding information based on its claims of privilege, its written response must identify the facts for each such communication, including the persons involved, the date, the time, and the basis of Cisco's claim that the content of the communication is protected as privileged. Alternatively, Cisco's response should state that no such communications exist.

### III. Conclusion

For all of the forgoing reasons, Plaintiff Ward respectfully requests that his motion in all things be GRANTED, and that Cisco be ordered to respond fully to Ward's Interrogatory Nos. 1-9 within ten (10) days of this Court's Order.

Respectfully submitted,

Nicholas H. Patton
Texas Bar No.: 63035
PATTON, TIDWELL & SCHROEDER, LLP
4605 Texas Boulevard
P. O. Box 5398
Texarkana, Texas 7550505398
(903) 792-7080        (903) 792-8233 (fax)
nickpatton@texarkanalaw.com

Patricia L. Peden
LAW OFFICE OF PATRICIA L. PEDEN
610 16th Street, Suite 400
Oakland, California 94612
Telephone: 510.268.8033

23

## <u>CERTIFICATE OF SERVICE</u>

This is to certify that on this 4th day of March, 2009, a true and correct copy of the foregoing Reply to Defendant Cisco's Response to Plaintiff's Motion to Compel Responses to Interrogatory Nos. 1-9 was served electronically via the Court's CM/ECF system upon:

Richard E. Griffin                          Attorney for Defendant Cisco Systems, Inc.
Charles Babcock
Crystal Parker
JACKSON WALKER, LLP
1401 McKinney
Suite 1900
Houston, Texas 77010

_____
Nicholas H. Patton

24