# IN THE UNITED STATES DISTRICT COURT
## WESTERN DISTRICT OF ARKANSAS
### TEXARKANA DIVISION

| | | |
|---|---|---|
| **JOHN WARD, JR.** | § | |
| | § | |
| **Plaintiff** | § | No.  08-4022 |
| | § | |
| **v.** | § | JURY TRIAL DEMANDED |
| | § | |
| **CISCO SYSTEMS, INC. and RICK** | § | |
| **FRENKEL** | § | |
| | § | |
| **Defendants.** | § | |


## PLAINTIFF WARD'S MOTION TO COMPEL
## COMPLIANCE WITH THE COURT'S MARCH 30, 2009 ORDER
## AND FOR SANCTIONS

Dockets.Justia.com

# TABLE OF CONTENTS

**Page(s)**

I.   INTRODUCTION ............................................................................................................1

II.  FACTUAL BACKGROUND .........................................................................................2

III. APPLICABLE LAW .....................................................................................................7

IV.  ARGUMENT .................................................................................................................8

   A.   The Court Ordered Cisco to Provide Full and Complete Responses to
        Interrogatory Nos. 5 & 6 ...................................................................................8

   B.   Cisco Violated the Court's Order by Taking Back Its Original Responses,
        Rewriting Ward's Interrogatories, and Then Omitting a Relevant
        Fact From Its Newly Minted Responses ...........................................................9

   C.   Cisco Violated the Court's Order by Withholding Allegedly
        Privileged Information From Its Responses .....................................................13

   D.   Cisco's Willful Failure to Comply With the Court's March 30, 2009
        Order Merits Sanctions ....................................................................................15

V.   CONCLUSION .............................................................................................................17

# TABLE OF AUTHORITIES

**<u>CASES</u>**                                                   **Page(s)**

*Boogaerts v. Bank of Bradley*,
    961 F.2d 765, 768 (8th Cir. 1992) ...................................................................8

*Burress v. Union Pac. R.R.*,
    2007 U.S. Dist. LEXIS 1749 (E.D. Ark. Jan. 8, 2007)......................................6

*Chrysler Corp. v. Carey*,
    186 F.3d 1016, 1021 (8th Cir. 1999) ................................................................7

*Comiskey v. JFTJ Corp.*,
    989 F.2d 1007, 1012 (8th Cir. 1993) ................................................................7

*Martin v. DaimlerChrysler Corp.*,
    251 F.3d 691, 694 (8th Cir. 2001) ....................................................................7

*New York Times Co. v. Sullivan*,
    376 U.S. 254 ......................................................................................................2

*Nick v. Morgan's Foods, Inc.*,
    270 F.3d 590, 595 (8th Cir. 2001) ....................................................................7

*Roadway Express v. Piper*,
    447 U.S. 752, 763-764 (1980) ..........................................................................7

*Union County, Iowa v. Piper Jaffray & Co., Inc.*,
    248 F.R.D. 217, 220-23 (S.D. Iowa 2008).......................................................6

*United States v. Bilzerian*,
    926 F.2d 1285, 1294 (2d Cir. 1991)..................................................................6

*United States v. Exxon Corp.*,
    94 F.R.D. 246, 249 (D.D.C. 1981)....................................................................6

*United States v. Workman*,
    138 F.3d 1261, 1264 (8th Cir. 1998) ................................................................6

*Wells v. Liddy,*
     37 Fed. Appx. 53, 65 (4th Cir. Md. 2002) ................................................................6, 10

# I.   INTRODUCTION

On March 30, 2007, this Court ordered Cisco to provide full and complete responses to Ward's Interrogatory Nos. 5-6.  In its Order, the Court clearly and unambiguously ruled that because Cisco put its good faith at issue in this case, it waived the right to withhold discovery bearing on its good faith defense.  The Court ordered Cisco to provide complete responses within 15 days of its Order.

Cisco did not comply.  Instead, Cisco granted itself the right to redo its original responses, unexplainably rewrote Ward's interrogatory to narrow its scope, then provided an Amended Answer that omitted the key (and responsive) fact that Frenkel relied on information that he received from counsel when he wrote his accusations about Ward.  After reworking both Ward's interrogatory and its response, Cisco unilaterally decided it no longer needed to comply with the Court's directive to provide answers that include allegedly privileged information.

The Court did not give Cisco the option of rewriting Ward's interrogatories.  The Court did not give Cisco the option of omitting responsive facts from its responses.  The Court did not give Cisco the option of withholding allegedly privileged information in light of its newly-minted responses.  It ordered Cisco to provide <u>all</u> the information requested in Ward's interrogatories.  Cisco did not ask the Court to reconsider its order.[1]  It simply decided not to comply.

Not only did Cisco clearly violate the Court's Order, it did so intentionally.  It is <u>a fact</u> that Frenkel relied on information he received from Baker Botts, and he has provided sworn testimony stating so.  Yet, Cisco omits that fact from its interrogatory responses, and then leverages its incomplete answer to withhold allegedly privileged information that the Court ordered it to produce.  Cisco's decision to drop a responsive fact from its responses, in an attempt to do an end-run around the Court's Order, evidences a blatant disregard for the Court.

---

[1] Cisco certainly knew it had this option.  It moved the Court to reconsider its Order denying Cisco's Motion to Transfer Venue not once, but twice.  The fact that Cisco did not ask the Court to reconsider here is strong evidence that Cisco intentionally decided to ignore this Court's Order.

## II.  FACTUAL BACKGROUND

On October 17, 18, and 19 of 2007, an anonymous web blogger known as the Troll Tracker posted defamatory statements about Plaintiff John Ward, Jr.  The Troll Tracker accused Ward of conspiring with the court clerks in the Eastern District of Texas to alter governmental records to ensure that a case filed on behalf of his client, ESN LLC, against Cisco was not dismissed for lack of subject matter jurisdiction.  *See* Exh. A (Oct. 18, 2007 Troll Tracker post – Ward 000009).

As it turned out, the anonymous Troll Tracker was Richard Frenkel, Director of Intellectual Property, Consumer and Emerging Technologies for Cisco—the defendant in the *ESN v. Cisco* litigation.  Cisco has admitted that Frenkel was acting within the course and scope of his employment at Cisco when he published the articles at issue.  *See* Docket Entry ("D.E.") No. 8 at ¶ 10.  Frenkel published the defamatory posts at the encouragement of Cisco's Vice President, Worldwide Intellectual Property, Mallun Yen and a Cisco Public Relations manager, John Noh; both of whom were among several high-level Cisco employees who knew that Rick Frenkel was the anonymous Troll Tracker Blogger.  *See* Exh. B (Chandler Depo.) at 34:6-15; Exh. C (Noh. Depo.) at 40:6-14.

On March 13, 2008, Ward filed a complaint against Cisco in this Court.[2]  Cisco answered that the statements made by Frenkel are true and that Cisco cannot be liable for defamation in this case because Ward "cannot prove sufficient facts of any actual malice on Defendants' part to entitle him to relief."  *See* D.E. at 8 ¶¶ 28, 29 & 32.  Cisco claims that Ward must prove Constitutional "actual malice" under *New York Times Co. v. Sullivan*, 376 U.S. 254 before he can hold Cisco accountable for its libelous acts.  Cisco argues that Ward cannot meet that burden of proof because Frenkel did not know at the time he posted his statements they were false and that he did not act with reckless disregard of the truth.  *See* D.E. 8 at ¶¶ 28, 29 & 32.  Thus, facts about what Frenkel and Cisco knew and when they knew are important in this case.

---

[2] Ward's co-counsel, in the *ESN v. Cisco* case, Eric Albritton, also filed a lawsuit against Cisco.  That case is pending in the Eastern District of Texas.  Discovery in that case has closed and pretrial is set for early May.

Discovery has unveiled some key facts showing that Cisco acted in bad faith in defaming Ward.  Before Frenkel posted his accusations, he and Cisco had several oral and written communications with Cisco's outside counsel, Baker Botts.  *See* Exh. D (Cisco's Privilege Log) at entries 1-5, 8, 34, 53, 58, 62-64, 78-80, 85, 91-92, 95, 114.  Cisco asked Baker Botts to investigate the facts surrounding the filing of the ESN complaint.  *See* Exh. E (Cisco's Answer to Request for Admission No. 20).  Baker Botts partner, Kurt Pankratz, directed a paralegal in his office, Jillian Powell, to call the Eastern District of Texas clerk's office to determine what had happened with respect to the filing of ESN's complaint against Cisco.  *See* Exh. F (Powell Depo.) at 34:22-35:7.  Powell called the clerk's office on the morning of October 18, 2007.  *See* Exh. G (Cisco's Amended Answers) at 50; Exh. H (document produced at Ark.000318-319 showing Frenkel's article including information he received from Baker Botts was published before 12:23 Central time).  Powell learned from the clerk that ESN had not actually filed the ESN Complaint until October 16 — not on October 15 as Frenkel alleged.  *See* Exh. F (Powell Depo.) at 77:19-78:9; 96:7-16; 104-105:18.; Exh. I (Exh. 6 to Powell Depo.) and corresponding testimony at 66:18-68:2.

Through Powell, Baker Botts learned that ESN had followed the Eastern District of Texas's requirements for the electronic filing of its complaint.  In October of 2007, before a complaint could be electronically filed the Eastern District of Texas, the Court required counsel to send a signed Civil Cover Sheet to the clerk's office via email.  *See* Exh. I (Exh. 4 to Powell Depo.).  The court clerk then used the Civil Cover Sheet to create a "shell case file."  *See id*. Thereafter, counsel had 24 hours in which to file its complaint.  *See id.*  When Powell called the clerk's office she learned that ESN's counsel emailed the court clerk a Civil Cover Sheet on October 15th, as required.  *See* Exh. F (Powell Depo.) at 89:21-91:10.  The court clerk emailed ESN's counsel the shell case information.  Later that night, the legal assistant charged with filing the ESN Complaint logged onto the ECF system and began to upload the documents she needed to file the complaint.  *See id.* at 105:6-12.  ESN did not actually submit the Complaint for filing, however, until after midnight.  *See id.*  The Court's Notice of Electronic filing shows that the

3

Complaint was received by the Court at 12:01 on October 16th. *See id.* at 66:23-68:2; Exh. I (Exh. 6 to Powell Depo.).

On the morning of October 18 (before Frenkel's libelous October 18 post), Powell obtained information from the court clerk demonstrating that ESN had filed the complaint on October 16. *See* Exh. G (Cisco's Amended Answer to Interrogatory No. 6); Exh. F (Powell Depo.) at 105:6-12. Powell also learned that when ESN's counsel discovered that there was an error in the date reflected on the Court's docket, the legal assistant who filed the ESN Complaint called the court clerk to find out what had caused the error. *See* Exh. F (Powell Depo.) at 105:6-15. The clerk's office told Powell that there had been an error, and that the clerk's office made a docket entry to correct the error. *See* Exh. F (Powell Depo.) at 104:3-105:25. Powell reported the information she received from the clerk's office back to Baker Botts' Pankratz. *See* Exh. F (Powell Depo.) at 106:15-107:11. Pankratz passed the information onto Cisco. *See* Exh. J (Yen Depo.) at 100:16-101:1; 179:7-14. At the same time, Frenkel and Cisco were exchanging several emails with Baker Botts discussing the events surrounding the filing of the ESN Complaint. *See* Exh. D (Cisco's Privilege Log) at entries 1-5, 8, 12-13, 18, 21-22, 34, 53, 58, 62-64, 78-80, 85, 91-92, 95, 114.

It is undisputed that Frenkel learned that ESN's local counsel had contacted the clerk's office from Baker Botts. It is also undeniable that he learned that information before he posted his October 18 post because the call Baker Botts made to the clerk is referenced in Frenkel's October 18 post, which states:

> "One email suggested that ESN's local counsel called the EDTX court clerk, and convinced him/her to change the docket to reflect an October 16, filing date, rather than the October 15 filing date. I checked, and sure enough, that's exactly what happened – the docket was altered to reflect an October 16 filing date and the complaint was altered to change the filing date stamp from October 15 to October 16. . . . Of course, there are a couple of flaws in this conspiracy. First, ESN counsel Eric Albritton signed a civil cover sheet stating that the complaint had been filed on October 15. Second, there's tons of proof that ESN filed on October 15. . . . You can't change history and it is outrageous that the Eastern District of Texas is apparently, wittingly or unwittingly, conspiring with a non-practicing entity to try to manufacture subject matter jurisdiction. This is another

4

example of the abusive nature of litigating patent cases in the Banana Republic of East Texas." *See* Exh. A (Ward 000009-10).

What Frenkel meant by "I checked" was that Cisco had Baker Botts check.  Baker Botts reported back to Cisco and someone at Cisco, either Mallun Yen or Marta Beckwith (Cisco won't say who)[3] told Frenkel what Baker Botts reported.  *See* Exh. G (Cisco's Amended Answers) at 48 n. 4.  Frenkel's posts claimed to have investigated and verified his allegations, without ever saying that Baker Botts' investigation uncovered facts demonstrating that ESN and Ward had done nothing wrong.  Instead, Frenkel assured the reader that there was "tons of proof" of Ward's misdeeds, and that he didn't see how there could have been a mistake.  Frenkel used words involving criminal conduct such as "conspiracy" "proof" "witnesses", "subpoenas" and "testimony" all to convey to the reader that Ward had committed a criminal and unethical offense.  Frenkel kept the libelous posts on his blog after learning that their content was false.  They were removed only after Frenkel was forced to disclose that he was the anonymous Troll Tracker.  But for the revelation of Frenkel's identity, Cisco would have continued to make false and libelous statements about Ward indefinitely.

On December 30, 2008—nearly four months ago—Ward served interrogatories aimed at discovering the information relied upon by Frenkel in making the statements contained in the Troll Tracker Blog, to identify when Frenkel and Cisco first learned those facts, and to uncover documents concerning Cisco's claim that it acted in good faith when it published the libelous statements about Ward.

Cisco's interrogatory responses were anemic.  Cisco refused to provide substantive responses, claiming that they sought privileged information.  In responding to Cisco's claims of privilege, Ward pointed out that Cisco has asserted that Frenkel acted in good faith in publishing his accusations about Ward.  The facts that Cisco offered in support of its good faith defense included, among other things, discussions Frenkel had with legal counsel.  Ward argued that

---

[3] Cisco certainly knows which of its employees had this conversation with Frenkel, yet it refuses to say which one in its interrogatory responses. *See* Exh. G (Cisco's Amended Answers) at 48, no. 4.

Cisco's reliance on a good faith defense put "at issue" everything that Frenkel relied upon in making his accusations about Ward, including Cisco's communications with counsel.[4]

Ward argued that any other conclusion would let Cisco use its claims of privilege as both a shield and a sword.  On the one hand, Cisco wants to defend itself by arguing to the jury that Ward cannot prove that Frenkel knew or should have known that his accusations against Ward were false, or that he acted with reckless disregard of the truth when making his accusations.  On the other hand, Cisco wants to withhold discovery concerning what Baker Botts and others told Frenkel and Cisco before the accused articles were published.  Ward argued that Cisco cannot have it both ways.  Because Cisco has asserted good faith as a defense, Cisco must provide discovery to Ward about that defense.

On March 30, 2009, this Court agreed with Ward and issued an Order directing Cisco to provide <u>full and complete</u> interrogatory responses.  In dealing with Cisco's objections, the Court found that Cisco had waived the claims of privilege because Cisco's claim of good faith put at issue facts known to Frenkel and Cisco when the defamatory articles were published.  *See* D. E. No. 60 at 1, 7 & 8.

On April 14, 2008 Cisco served Ward with its Amended Answers.  Cisco's Amended Answers do not state any objections, conceding that it no longer has privilege objections to

---

[4] *See Wells v. Liddy, 37 Fed. Appx. 53, 65* (4th Cir. Md. 2002) (Defendant in defamation case waived privilege by filing a declaration in support of a motion for summary judgment wherein he cited information he received from counsel as evidence of good faith); *United States v. Workman*, 138 F.3d 1261, 1264 (8th Cir. 1998) (The attorney client privilege cannot be used as both a shield and a sword); *United States v. Bilzerian*, 926 F.2d 1285, 1294 (2d Cir. 1991) ("A defendant may not use the privilege to prejudice his opponent's case or to disclose some selected communications for self-serving purposes. . . .Thus, privilege may implicitly be waived when defendant asserts a claim that in fairness requires examination of protected communications."); *United States v. Exxon Corp.*, 94 F.R.D. 246, 249 (D.D.C. 1981) (Where the waiver is generated by the injection of an entire defense, the waiver must pertain to all documents bearing upon the subject matter of the defense. "Otherwise, the party interposing the defense is free to divulge only those documents that are most favorable to his defense; this is precisely the inequitable result that the waiver doctrine seeks to avoid."); *Union County, Iowa v. Piper Jaffray & Co., Inc.*, 248 F.R.D. 217, 220-23 (S.D. Iowa 2008) (An implied waiver occurs where the client has placed in issue a communication which goes to the heart of the claim in controversy); *Burress v. Union Pac. R.R.*, 2007 U.S. Dist. LEXIS 1749 (E.D. Ark. Jan. 8, 2007) (privilege may be waived when a party asserts a claim that, in all fairness, requires examination of each party's protected communications).

assert.  Yet, Cisco's Amended Responses include <u>none</u> of the allegedly "privileged" information the Court ordered Cisco to provide.

### III. APPLICABLE LAW

Federal Rule of Civil Procedure 37(b) authorizes sanctions for failure to comply with discovery orders.  *Roadway Express v. Piper*, 447 U.S. 752, 763-764 (1980).  The District Court is given a wide range of discretion in awarding sanctions, including barring the disobedient party from introducing certain evidence, or it may direct that certain facts shall be "taken to be established for the purposes of the action."  *Id*.  The Rule also permits the trial court to strike claims from the pleadings, and even to dismiss the action or render a judgment by default against the disobedient party. *See id*. (internal citation omitted)  "Rule 37 sanctions must be applied diligently both to penalize those whose conduct may be deemed to warrant such a sanction, and to deter those who might be tempted to such conduct in the absence of such a deterrent."  *Id*. (internal citation omitted); *see also Comiskey v. JFTJ Corp.,* 989 F.2d 1007, 1012 (8th Cir. 1993).

Federal Rule of Civil Procedure 16(f) provides that, if a party or party's attorney fails to obey a pretrial order, the judge may enter any order with regard to the parties' disobedience that is just.  *See Nick v. Morgan's Foods, Inc*., 270 F.3d 590, 595 (8th Cir. 2001).  Rule 16(f) permits the district court to require the party, the party's attorney, or both to pay reasonable expenses incurred because of noncompliance with the rule.  *See id*. These sanctions may be imposed in lieu of, or in addition to, any other sanctions the judge deems appropriate.

The Court also has authority to impose sanctions under the inherent authority doctrine. *Id*. at 595 n.2.  The sanctioning provisions of the Federal Rules and the district court's inherent power to sanction are not mutually exclusive.  *Id*.

A party who willfully withholds information directly responsive to an interrogatory is subject to sanctions.  *Martin v. DaimlerChrysler Corp*., 251 F.3d 691, 694 (8th Cir. 2001) (sanctions warranted where a party willfully withheld information directly responsive to interrogatory); *Chrysler Corp. v. Carey*, 186 F.3d 1016, 1021 (8th Cir. 1999) (same).

A party's failure to provide interrogatory responses ordered by the Court is likewise sanctionable conduct. *Boogaerts v. Bank of Bradley*, 961 F.2d 765, 768 (8th Cir. 1992) (sanctions for failure to amend interrogatory answers after court order).

## IV. ARGUMENT

Cisco deliberately violated this Court's March 30, 2009 Order. That Order was clear, unambiguous and direct: All of Cisco's objections to Ward's interrogatories were overruled and Cisco was ordered to provide full and complete responses on or before April 14, 2009. Cisco did not comply with the Court's Order. Instead, it unilaterally granted itself the right to rewrite Ward's interrogatory, completely redo[5] its original responses, withhold relevant and responsive facts, and to reassert claims of privilege that the Court expressly overruled.

### A. The Court Ordered Cisco to Provide Full and Complete Responses to Interrogatory Nos. 5 & 6

The Court ordered Cisco to provide full and complete responses to Ward's interrogatories seeking to discover facts about Cisco's "good faith" defense. Specifically, Ward's Interrogatory Nos. 5 and 6 asked Cisco to identify all information relied upon by Frenkel in making the statements contained in the Troll Tracker Blog, to identify when Frenkel and Cisco first learned those facts, and to identify when Cisco first learned ESN's version of the facts.

Cisco's original response stated "Frenkel relied on documents on the official court website, the official court docket, correspondence he received from various individuals, privileged ***discussions with legal counsel***, legal research, and his own experience with the electronic filing system." *See* Exh. K at 7 (Cisco's original interrogatory responses) (emphasis added). Cisco's response also stated "Richard Frenkel learned that ESN claimed that the filing date of the complaint on the official court docket was an error on October 18, 2007, but he does

---

[5] The Federal Rules of Civil Procedure permit parties to "supplement" previous interrogatory responses. They do not let a party take back a prior sworn response at whim. Such a rule would mean that no party could ever obtain useful discovery because anything meaningful obtained in an interrogatory response could be yanked back as soon as the responding party discovered that opposing counsel could use the information to its benefit. There is no justification for Cisco's approach to "we'll take back what we want if we lose the motion" discovery.

not recall the time, persons involved, or exact content of the communications." *Id.* at 7-8.

Cisco refused to give full responses to Ward's interrogatories, based either on meritless blanket objections or by claiming that the information sought was privileged.

The Court overruled Cisco's privilege objections. In ordering Cisco to provide a "full" response to Ward's Interrogatory No. 5, the Court ruled:

> "[G]iven Cisco's position that it acted in good faith, the information requested by the interrogatory is clearly relevant. The Court notes that, although there has been considerable discussion about a "protective order" . . . none is yet in place nor is now needed since it appears to the Court that the "privileged" attorney client communications have been waived." *See* D.E. 60 at 7.

In ordering Cisco to provide a "full" response to Ward's Interrogatory No. 6, the Court ruled:

> "any privilege appears to be waived as Cisco argues that Frenkel acted in good faith, in party relying on communications with counsel." *See* D.E. 60 at 8.

The Court ordered Cisco to respond to Interrogatory No. 5 and 6 "***in full***." *See* D.E. 60 at 7, 8.

**B. Cisco Violated The Court's Order By Taking Back Its Original Responses, Rewriting Ward's Interrogatories, And Then Omitting A Relevant Fact From Its Newly-Minted Responses**

Cisco did not provide "full" responses to Ward's interrogatories as ordered by the Court. It opted instead to serve Ward with "Amended Answers To Plaintiff's Interrogatories" which purport to "supersede the answers previously provided." *See* Exh. G (Cisco's Amended Answers) at 1.

The problem with Cisco's Amended Answers is threefold.

First, the Court did not give Cisco the option of changing its answers. The Federal Rules require Cisco to provide responses within 30 days. Cisco's counsel took their full time to respond, and presumably did so after conferring with their client to make sure that Cisco's responses were truthful. Cisco's original responses truthfully stated that Frenkel relied on privileged communications with counsel. Because that fact is relevant to Cisco's "good faith" defense, the Court correctly ordered Cisco to provide full discovery on that issue. The Court did

not give Cisco the option of withdrawing its prior answers so as to avoid complying with the Court's Order.  Judicial resources have already been expended to resolve Ward's motion to compel, and the Court has entered its Order.  Cisco cannot unilaterally grant itself the right to turn-back the clock, rewrite its written discovery, and undo this Court's Order.  *Wells v. Liddy*, 37 Fed. Appx. 53, 66 (4th Cir. 2002) (disclosing party "may not reattach the privilege [after] the issues in the case have shifted.").  Once the Court's Order issued, Cisco had only two options—comply or face sanctions.  Cisco chose the latter.

Second, Cisco's Amended Answers attempt to rewrite Ward's interrogatory—an interrogatory that Cisco answered one way in its original responses, but seeks to reinterpret now only after losing the motion to compel.  Cisco's amended responses indicate that it is somehow narrowing Ward's interrogatory to fit some unstated interpretation by Cisco.  Cisco's responses underlines the word "relied" contained in Ward's Interrogatory No. 5, although no such emphasis is contained in the interrogatory Ward served.  Cisco's effort to reword and reinterpret Ward's interrogatory does not shield it from providing the more complete response ordered by the Court.  Nor should the Court entertain any argument to the contrary.  No discovery dispute could ever be resolved if a losing party is permitted a "do-over" every time it comes out on the losing side of a court order.  Cisco's approach would turn this Court's discovery orders into advisory opinions.

Third, and most troubling, is that Cisco has provided false answers to Ward's interrogatories in a blatant attempt to skirt the Court's Order.  After losing the motion to compel, Cisco adopted a new litigation strategy; one premised on withholding the true and responsive fact that Frenkel relied on information he received from Baker Botts before he posted his accusations about Ward.  Cisco somehow believes that it can opt not to include that fact in its interrogatory responses thereby withholding information that the Court ordered it to provide to Ward.

Cisco's evasive maneuvering cannot provide cover for its failure to comply with the Court's Order.  Ward's interrogatory asked Cisco for facts.  It is an undeniable fact that Frenkel

10

relied on information he received from counsel, including Baker Botts, in making his accusations about Ward. That fact is apparent from reading the October 18th Troll Tracker post itself, wherein Frenkel admits that he received information that ESN's local counsel had called the court clerk. *See* Exh. A (October 18, 2007 Troll Tracker Post). Cisco admits that information came from Baker Botts. *See* Exh. G (Cisco's Amended Answers) at 50.

There is additional evidence demonstrating the indisputable fact that Frenkel relied on information he received from Baker Botts. Because discovery has closed in the Albritton case pending in the Eastern District of Texas, Frenkel's reliance on information he received from Baker Botts is a fact that has been established in that case.

In the Albritton case, Frenkel and Cisco have repeatedly represented to the Court and have given sworn testimony attesting to the fact that Frenkel relied on information obtained from Baker Botts. In its Motion for Summary Judgment, Cisco offered the Texas Court the ***undisputed material fact*** that "Frenkel ***relied*** on . . . a report from Baker Botts that Albritton's office had called the clerk to have them change the file date from 10/15 to 10/16." *See* Exh. L (Cisco's Motion for Summary Judgment in *Albritton v. Cisco*). at 9 (Cisco's Uncontested Fact No. 26) (emphasis added). In the same motion, Cisco also made the following representations to the Court:

- "[Frenkel] was also advised by Baker Botts, a trusted and respected law firm, that Albritton's office called the court clerk to have the docket changed to October 16, 2007." *Id*. at 26.

- "Frenkel [] learned that ESN's local counsel had convinced the clerk to change the date and decided to write another article on October 18, 2007 regarding the ESN v. Cisco litigation (the "Oct. 18 Article.")." *See id.* at 5.

- "Frenkel also learned, as he reported, that 'ESN's local counsel called the Eastern District of Texas court clerk, and convinced him/her to change the docket to reflect an October 16 filing date, rather than the October 15 filing date." *Id*. at 6.

11

In addition, Frenkel filed a declaration in support of Cisco's Motion for Summary Judgment in which he set forth the information he relied on in making the accusations in the articles at issue in this case.  Frenkel's sworn declaration states "I learned from Baker Botts that the docket sheet and stamp on the complaint had been altered at the request of local counsel for ESN."  *See* Exh. M (Frenkel Declaration) at ¶8.

Frenkel, serving as Cisco's Rule 30(b)(6) witness in the Albritton case on the topic of Cisco's defenses, testified that Cisco's request that Baker Botts call the court clerk was evidence of Cisco's (and his) lack of malice.  *See* Exh. N (Frenkel Depo.) at 63:13-25; 65:5-66:10; 71:22-73:2; 120:6-121:16.  Frenkel testified that Baker Botts' call to the clerk's office "satisfied him" that the date had been changed.  *See id.* at 127:3-23.

Mallun Yen, Vice President, Worldwide Intellectual Property at Cisco and Frenkel's boss, testified that she asked Baker Botts to investigate what happened in connection with the filing of the ESN Complaint, including calling the clerk's office, and that Baker Botts had reported back to Cisco.  *See* Exh. J (Yen Depo.) at 100:16-101:4; 179:7-14.  Yen testified that that she ***relied*** on Baker Botts to advise her with respect to other information that Frenkel purports to rely on as evidence of his good faith, including the local rules applicable to the filing of the ESN Complaint.  *See* Exh. J (Yen Depo.) at 91:11-92:4; 92:20-92:2; 94:18-95:21; 100:16-101:4.

Marta Beckwith, another in-house attorney at Cisco who was working with Frenkel on the *ESN v. Cisco* case, testified that Cisco asked Baker Botts to investigate the facts surrounding the filing of the ESN Complaint and report back to Cisco so that Cisco could determine what to do.  *See* Exh. O (Beckwith Depo.) at 14:22-19:25; 30:4-31:15.

Either Yen or Beckwith reported that information to Frenkel.  *See* Exh. G (Cisco's Amended Answers) at 48 at no. 4.

There is abundant evidence demonstrating the <u>fact</u> that Frenkel relied on information he received from Baker Botts.  Thus it is not surprising that Cisco's original interrogatory response (signed by its counsel in both this case and the Albritton case) included the fact that Frenkel

relied on communications with counsel.  What is surprising is that Cisco believes that it can just omit that responsive fact in this case to evade this Court's Order.[6]  Cisco's attempt to do so runs afoul of Rules requiring Cisco to respond to interrogatories by providing ***complete factual information***.  *See* Fed. R. Civ. P. 37(a)(4) (an evasive or incomplete disclosure, answer, or response must be treated as a failure to disclose, answer, or respond) (emphasis added).  Cisco's attempt to argue that somehow Frenkel did not "rely" on information obtained from Baker Botts now, and only after losing a motion before this Court, places it in the unenviable position of explaining why it made representations to the Texas Court that are inconsistent with its sworn and verified interrogatory responses in this case.

Cisco cannot pick and choose what evidence gets introduced in this case.  Facts that are not good for Cisco's case are relevant and discoverable.  There is no justification for Cisco intentionally serving incomplete and misleading interrogatory responses, particularly where it is evident it did so to avoid complying with this Court's Order.

### C.  Cisco Violated The Court's Order By Withholding Allegedly Privileged Information From Its Responses

Cisco's Amended Answers demonstrate an utter disregard of the Court's Order by continuing to withhold information that it claims is privileged, even after the Court overruled Cisco's privilege objections.

Cisco's claims of privilege were extensively briefed to the Court.  *See* D.E. 57 at 8-10; D.E. 58 at 9-14; D.E. 59 at 3, 14, 16, 19.  The Court decided the privilege issue in Ward's favor, finding that Cisco had waived its privilege objections by putting its good faith at issue in this case.  *See* D.E. 60 at 7 & 8.

The privilege issue primarily concerned Ward's Interrogatory Nos. 5 & 6, which asked Cisco to identify communications and <u>documents</u> concerning information relied on by Frenkel before he posted his defamatory posts, and all communications and <u>documents</u> concerning

---

[6] This puts Cisco in the awkward position of explaining whether it intentionally provided a false answer in its original response, or whether its Amended Responses are false.

Cisco's first knowledge that ESN claimed the court's docket contained an error.  *See* Exh. K (Cisco's original responses) at 6 & 7.

Importantly, in opposing Ward's motion to compel, Cisco admitted that it has documents that "***provide the very information that Plaintiff is seeking***" and those documents have been cataloged on Cisco's privilege log.  *See* D.E. No. 58 at 10.  Yet, despite the fact that the Court overruled Cisco's privilege objections, Cisco's Amended Answers to Interrogatory Nos. 5 & 6 fail to identify a single document from its privilege log.

Cisco's Amended Answers do not assert any privilege objections, nor can they given this Court's Order.  Cisco therefore had two options.  Option 1:  It could identify the documents required by the Interrogatories and the Court's Order, thus identifying documents that must be produced to Ward.  Option 2:  It could ignore the Court's Order by providing an incomplete response.  Cisco's options were limited because it didn't have the choice of doing what it did with its other interrogatory responses, which was to identify the documents but do so under a claim of privilege.  Here, Cisco had no privilege to assert.

Cisco opted for the course that it knew violated the Court's Order.  Unlike its other interrogatory responses, in response to Interrogatories 5 & 6, Cisco merely elected not to identify responsive documents.  Cisco's responses do not identify any of the oral or written communications that Frenkel had with Baker Botts.  Nor do Cisco's responses identify allegedly privileged documents discussing Powell's call to the court clerk.  Cisco's responses don't even identify documents concerning the facts that it did selectively identify, including allegedly privileged documents concerning the ESN docket sheet, the Civil Cover Sheet, and the ESN Complaint.  Cisco has documents responsive to Interrogatory Nos. 5 & 6, it knows what those documents are, it knows those documents are responsive, and it knows it has no basis upon which to refuse to identify documents.  It just refused to do so.

Cisco's Amended Answers are not truthful, and intentionally so, because Cisco does not want to comply with the Court's Order.  This Court should not permit such gamesmanship.

14

Cisco must be ordered to comply with the Court's Order and be held to answer for its intentional refusal to do so.

### D. Cisco's Willful Failure to Comply With The Court's March 30, 2009 Order Merits Sanctions

Ward was forced to file a motion to compel to obtain relevant discovery, necessitated by Cisco's insistence that it can both argue that it acted in good faith in making its accusations about Ward, while at the same time refuse to provide discovery needed to disprove its good faith defense. Having gone through the effort and expense[7] of securing an order from the Court expressly overruling Cisco's objections and ordering it to produce full and complete responses, Ward expected Cisco to comply.

Cisco ignored this Court's Order and granted itself the right to opt for a new course. In pursuit of its new strategy, Cisco deliberately provided an incomplete and false response to Ward's interrogatory, and it did so to avoid complying with this Court's already existing Order.

Cisco did not move the Court for reconsideration, clarification or seek modifications to the Court's Order. To the contrary, Cisco feigned compliance, providing lengthy but evasive responses in an attempt to create the impression that it had complied with the Court's Order. In truth, Cisco simply reproduced its privilege log in the form of interrogatory responses where it could, and refused to identify documents where it could no longer claim privilege. Cisco's gamesmanship has put both Ward and the Court through the burden of additional motion practice and further delay. The Court should not permit Cisco to play a game of "hide the pea" with its discovery obligations. More importantly, the Court cannot permit Cisco to willfully violate this Court's Orders.

Mindful of the fact that the Court should impose the least amount of sanctions needed for

---

[7] Although an award of fees and costs associated with Ward's motion to compel may have been warranted, Ward did not seek to recover his costs.

15

deterrence[8] and to cure the prejudice to Ward, Ward respectfully requests that the Court impose the following sanctions:

- An Order directing Cisco to immediately and fully comply with the Court's March 30, 2009 Order, including cautioning Cisco that its failure to do so will result in exclusionary sanctions;

- An Order directing Cisco to produce to Ward within 15 days of the Court's Order all documents responsive to Interrogatory Nos. 5 & 6.

- An Order requiring Cisco's representative, William Friedman, (who verified Cisco's Amended Interrogatory Responses), and Cisco's counsel, Charles Babcock (who signed the Cisco's Amended Interrogatory Responses), appear and show cause why Cisco should not be sanctioned for violating the Court's March 30, 2009 Order;

- An express finding by the Court that Ward may offer evidence to the jury demonstrating Cisco's change in position between its original interrogatory response and the amended interrogatory responses, and that Ward will not be barred from arguing to the jury that Cisco's changed position and failure to voluntarily produce evidence demonstrates that its good faith defense lacks merit;

- An award of Ward's fees and costs associated with bringing this motion;

- Any other relief that the Court finds just and proper.[9]

---

[8] Ward understands that Cisco's violation of the Court's Order implicates the Court's need to monitor and correct the conduct of the parties who appear before it.  Ward has not attempted to argue what sanctions are warranted to deter this type of conduct, believing that issue is best left to the Court.

[9] Pursuant to Fed. R. Civ. P. 16(f) and 37(b)(2) this may include an order (1) preventing Cisco from supporting its claims or defenses with  information that was not provided in Cisco's interrogatory responses;  (2) finding that Cisco is deemed to have admitted for all purposes that Frenkel and Cisco's accusations about Ward are false and were made with malice; (3) striking those portions of Cisco's pleadings that plead truth or lack of malice; (4) instructing the jury that the Court has found that Cisco intentionally withheld information from Ward in willful violation of a specific court order to the contrary, and that the jury is entitled to consider this fact when determining the credibility of any witness called to testify on Cisco's behalf.

## V.  CONCLUSION

For all of the foregoing reasons, Ward respectfully requests the Court to grant his motion to compel compliance with the Court's March 30, 2009 Order and award sanctions as the Court determines are proper and just.

Respectfully Submitted,

Nicholas H. Patton
AR Bar No. 63035
Patton, Tidwell & Schroeder, LLP
4605 Texas Boulevard
Texarkana, Texas 75503
903.792.7080 / 903.792.8233 (Fax)

Patricia L. Peden
LAW OFFICE OF PATRICIA L. PEDEN
610 16th Street, Suite 400
Oakland, California 94612
Telephone: 510-268-8033

ATTORNEYS FOR PLAINTIFF

## <u>CERTIFICATE OF SERVICE</u>

This is to certify that on this 27th day of April, 2009, a true and correct copy of the foregoing was served electronically via the Court's CM/ECF electronic filing system upon:

> Richard E. Griffin
> Charles Babcock
> Crystal Parker
> JACKSON WALKER, LLP
> 1401 McKinney
> Suite 1900Houston, Texas 77010
>
> *Attorneys for Defendant Cisco Systems, Inc.*

_____
Nicholas H. Patton

## <u>CERTIFICATE OF CONFERENCE</u>

I hereby certify that a meet and confer was conducted on April 23, 2009 in good faith by telephone conference between the parties. The attempts to resolve this matter have conclusively ended in an impasse leaving an issue for the Court to resolve.

_____
Nicholas H. Patton

18