Ward v. Cisco Systems, Inc. et al — Doc. 61 Att. 9
Case 4:08-cv-04022-JLH   Document 61-10   Filed 04/27/09   Page 1 of 8
30(b)(6) Deposition of Mallun Yen   11/17/2008
CONFIDENTIAL - Subject to the Protective Order

Page 1

IN THE UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF TEXAS

TYLER DIVISION

ERIC M. ALBRITTON,

    Plaintiff,

vs.                                          No. 6:08-CV-00089

(1) CISCO SYSTEMS, INC.,
(2) RICHARD FRENKEL, (3) MALLUN
YEN and (4) JOHN NOH,

    Defendants.

CONFIDENTIAL - SUBJECT TO PROTECTIVE ORDER

30(b)(6) DEPOSITION OF MALLUN YEN

Monday, November 17, 2008

SHEILA CHASE & ASSOCIATES
REPORTING FOR:
West Court Reporting Services
221 Main Street, Suite 1250
San Francisco, California  94105
Phone:  (415) 321-2300
Fax:  (415) 618-0743

Reported by:
JANIS JENNINGS, CSR, CRP, CLR
CRS-100282-019

Dockets.Justia.com
bb36ddad-f94f-4a52-976c-478125b44270

1  know who, got a filing date that was a day before he
2  or she intended to file it, that what that attorney
3  did was file a motion with the court to amend the
4  docket to reflect the date that he or she had
5  intended it to be filed.
6      Q.   Where is that case pending?
7      A.   I am not sure.  I think somewhere in the
8  northeast.
9      Q.   Okay.  It wasn't a Texas case?
10     A.   I don't believe it was a Texas case.
11     Q.   Okay.  Do you know what the Texas rules
12 are about what you're supposed to do when an event
13 like that occurs where there's a question about the
14 filing date?
15          MR. McWILLIAMS:  Objection to form.
16          MR. BABCOCK:  Same objection.
17          THE WITNESS:  I have not specifically read
18 the Texas rules.
19 BY MR. PATTON:
20     Q.   Have you -- have you not looked at the
21 Texas rules that would answer questions about issues
22 that arise on filing dates and times of filing?
23     A.   I rely on my --
24          MR. McWILLIAMS:  Objection to form.
25 Excuse me.

```
 1              MR. BABCOCK:  Yes.  Same objection.
 2   BY MR. PATTON:
 3        Q.   Huh?
 4        A.   I rely on my outside counsel.
 5        Q.   Are you saying that your outside counsel
 6   has told you that this is improper?
 7              MR. BABCOCK:  Again, don't discuss what
 8   myself or my co-counsel have talked to you about.
 9   BY MR. PATTON:
10        Q.   I asked you a question.
11        A.   There was no question in anyone's mind
12   that this was improper.
13        Q.   That -- what are we talking about when you
14   say it's improper?  What are you talking about?
15        A.   The fact that plaintiff's counsel
16   unilaterally approached the court clerk and
17   persuaded the court clerk to change the date.
18        Q.   You think that's what happened?
19        A.   Yes.
20        Q.   Okay.  Do you know what the Texas rules
21   say you're supposed to do when you have a question
22   about a filing?
23              MR. McWILLIAMS:  Objection.  Form.
24              MR. BABCOCK:  Object to the form.
25   BY MR. PATTON:
```

Page 94

1   BY MR. PATTON:
2       Q.   Well, somebody sure made a lot of
3   accusations, didn't they?
4            MR. BABCOCK:  Object to the form.
5            MR. McWILLIAMS:  Object to the form.
6   BY MR. PATTON:
7       Q.   Do you think Mr. Frenkel knew what the
8   local rule was?
9            MR. McWILLIAMS:  Object to form.
10           MR. BABCOCK:  Object to the form.
11           THE WITNESS:  I don't know.
12  BY MR. PATTON:
13      Q.   Have you ever talked to him about it?
14      A.   What is "it"?
15      Q.   The local rule for problems with filing,
16  have you ever talked to Mr. Frenkel about that?
17      A.   No.
18      Q.   Okay.  Did you undertake any investigation
19  at all about this October 18th blog that had the
20  words "conspiracy," "Banana Republic," "changed
21  records," "altered records," did you undertake any
22  investigation about the merits of those accusations?
23           MR. BABCOCK:  Do you have a time period
24  again, Nick?  Are you talking about October?
25           MR. PATTON:  Ever.

1          MR. BABCOCK:  Ever.
2          Don't reveal conversations you had with me
3  or with --
4          THE WITNESS:  Can you please repeat the
5  question?
6  BY MR. PATTON:
7     Q.   Did you yourself or anyone at your
8  direction ever undertake to see what the local rules
9  were, what the federal rules were regarding problems
10 with the timing of a filing?
11         MR. McWILLIAMS:  Objection.  Form.
12         MR. BABCOCK:  Same objection.
13         THE WITNESS:  Yes.
14 BY MR. PATTON:
15    Q.   Who?  Who undertook that?
16    A.   The document showed on October 15th -- the
17 complaint showed an October 15th date and then it
18 reflected an October 16th date.
19    Q.   Okay.
20    A.   Various people had that document,
21 including our outside counsel.
22    Q.   And what?  Somebody said -- somebody said
23 that there was a conspiracy?  Did someone tell you
24 that?  Other than Mr. Frenkel, of course.
25         MR. McWILLIAMS:  Objection to form.

1    A.    Docket.
2    Q.    What was the last one?
3    A.    Docket entry.
4    Q.    Okay.
5         MR. BABCOCK:  Docket entry.  I'll just
6    translate for you guys.
7         THE WITNESS:  That was dated October 15th.
8    And then shortly, very quickly thereafter the
9    docket entry was changed to read October 16th.
10   and I remember seeing the little notation in that
11   docket entry that said "Docket amended" or "Docket
12   changed" -- I can't remember the exact word -- that
13   said "Docket changed October 17th."
14   BY MR. PATTON:
15   Q.    Altered.
16   A.    Altered.  "Altered October 17th."  And
17   received a new complaint or saw a new complaint
18   that was largely the same dated October 16th.
19   And then we called -- I called -- or we were in
20   communications with our local counsel in Texas --
21   Q.    Baker Botts?
22   A.    Yes.  -- who investigated to see what
23   has happened.  And what they reported back was that
24   they -- that Albritton's office had convinced the
25   court to change the docket to reflect the earlier

1  date.
2      Q.   Okay.  Did you yourself ever look at the
3  local rules for the Eastern District of Texas?
4      A.   I did not.
5      Q.   You were a U.S. District Court law clerk
6  for two years.
7      A.   I was.
8      Q.   And were you not told, and as a former law
9  clerk sitting here, you're supposed to check the
10 local rules when issues arise?
11          MR. McWILLIAMS:  Objection.  Form.
12          MR. BABCOCK:  Object to form.
13 BY MR. PATTON:
14     Q.   That's pretty simple, isn't it, Miss Yen?
15          MR. BABCOCK:  Object to form.
16          MR. McWILLIAMS:  Objection.
17          THE WITNESS:  I know that it's improper to
18 have a court clerk or to ask a court clerk to change
19 a date unilaterally.
20 BY MR. PATTON:
21     Q.   Okay.  Do you know what the electronic
22 stamp on the face of the complaint shows as the
23 filing time, Miss Yen?
24          MR. McWILLIAMS:  Objection.  Form.
25          MR. BABCOCK:  Same objection.

1  Q. What are you saying?
2  A. I saw a copy of the docket sheet that
3  had an entry dated October 15th, 2007 complaint
4  filed. And I also saw a copy of the complaint that
5  had a mark or a date stamped on it or affixed to it
6  that said October 15th, 2007.
7  Q. Okay. You never talked to the clerk
8  yourself. You never inquired of the clerk what's
9  the official time of the filing of the complaint,
10 did you?
11 A. I did not. I had one of our outside
12 counsel.
13 Q. Who?
14 A. Kirk Pankratz of Baker Botts.
15 Q. Okay. Well, he's the one that told you
16 this is going to be muddy, didn't he? Isn't that
17 right?
18 A. He wrote an email where he used the word
19 "muddy."
20 Q. "This will be muddy," didn't he?
21 A. He wrote that.
22 Q. You saw it?
23 A. I saw that email.
24 Q. Yes. And yet, whatever that date was, the
25 18th or 17th or whatever date it was, are you aware