Ward v. Cisco Systems, Inc. et al  Doc. 61 Att. 13
Case 4:08-cv-04022-JLH   Document 61-14   Filed 04/27/09   Page 1 of 10
30(b)(6) Deposition of Richard G. Frenkel 11/18/2008
CONFIDENTIAL - Subject to the Protective Order

Page 1

IN THE UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF TEXAS

TYLER DIVISION

ERIC M. ALBRITTON,

    Plaintiff,

vs.                                          No. 6:08-CV-00089

(1) CISCO SYSTEMS, INC.,
(2) RICHARD FRENKEL, (3) MALLUN
YEN and (4) JOHN NOH,

    Defendants.

CONFIDENTIAL - SUBJECT TO PROTECTIVE ORDER

DEPOSITION OF RICHARD G. FRENKEL

Tuesday, November 18, 2008

SHEILA CHASE & ASSOCIATES
REPORTING FOR:
West Court Reporting Services
221 Main Street, Suite 1250
San Francisco, California  94105
Phone:  (415) 321-2300
Fax:  (415) 618-0743

Reported by:
JANIS JENNINGS, CSR, CRP, CLR
CRS-100282-023

Page 63

1    hour.  It is now 1:45.
2            MR. McWILLIAMS:  Do you want to take a
3    break?
4            MR. PATTON:  Let's take a short break.
5    Yeah.
6            THE VIDEOGRAPHER:  Going off the record.
7    The time is 1:45 p.m.
8            (Off the record.)
9            THE VIDEOGRAPHER:  We are back on the
10   record.  The time is 1:56 -- I'm sorry.  Yes.  1:56
11   p.m.
12   BY MR. PATTON:
13       Q.  Mr. Frenkel, I want to change subjects for
14   a while.
15           You know you have been offered as a
16   30(b)(6) witness in several different areas?
17       A.  Yes.
18       Q.  You do know that?
19       A.  Yes.
20       Q.  Okay.  I want to talk about the
21   affirmative defenses for a minute, okay, in this
22   lawsuit, and I want you to tell me what the
23   affirmative defenses to our lawsuit are.
24           MR. McWILLIAMS:  Objection.  Form.
25           THE WITNESS:  One of them is truth.

1        MR. BABCOCK:  You know, we've pled the
2   affirmative defenses if you want to look at them
3   there in the answer.
4   BY MR. PATTON:
5        Q.   All right.  What are the facts that would
6   support your affirmative defenses?
7        MR. BABCOCK:  Object to the form.
8        MR. McWILLIAMS:  Same objection.
9        THE WITNESS:  There are many facts, and if
10  I were to recite them all to you, I'd be sitting
11  here for a good long time.  Do you want me to do
12  that?
13  BY MR. PATTON:
14       Q.   Why don't you try to abbreviate them.
15       MR. McWILLIAMS:  Objection.  Form.
16       MR. BABCOCK:  Same objection.
17       THE WITNESS:  I couldn't possibly
18  abbreviate them.  I could start going through them.
19  BY MR. PATTON:
20       Q.   What are the facts you've got that would
21  support the truth defense?
22       A.   Okay.  There is the fact that the
23  complaint was stamped with an October 15th date on
24  numerous pages and the civil cover sheet was stamped
25  with an October 15th date.  It was signed on

1  October 15th.
2          There is the fact that the docket, when it
3  was originally -- when the complaint was originally
4  filed, the docket said it had been filed on
5  October 15th.
6          There is the fact that Mr. Albritton's
7  office called the district court clerk and asked
8  them to change the date, and there is the fact that
9  the district court clerk did in fact change the date
10 on the complaint and the docket.
11         There is the fact that the patent that was
12 at issue in the ESN lawsuit had not -- did not issue
13 until October 16th, 2008.
14    Q.   Okay.
15    A.   There may be more, but I'd have to review
16 documents and see what else there is.
17    Q.   Okay.  Would you do this for me.  If you
18 do come up with additional things that you think of,
19 would you notify your attorney, and he can notify me
20 and we'll try to find out what they are.
21         MR. McWILLIAMS:  We have no agreement as
22 to that, and he'll discuss that with his counsel.
23         MR. PATTON:  What now, George?
24         MR. McWILLIAMS:  I said we're making no
25 agreement for that.  You can ask him any questions

1    A.    Ask me questions about it.
2    Q.    The issue of malice -- did you make a
3 reasonable investigation to determine what facts you
4 have to support the defense of a lack of malice?
5    A.    I don't know that that is an affirmative
6 defense or -- but if it is, I believe that I've made
7 a reasonable investigation of that, too.
8    Q.    Okay.  And what did you find that would
9 indicate to you that there wasn't any malice here?
10   A.    Well --
11         MR. BABCOCK:  Object to the form.  Define
12 malice.
13         THE WITNESS:  That's exactly what I want
14 to know.  What do you mean by "malice"?
15 BY MR. PATTON:
16   Q.    Were you told what it was you were
17 supposed to testify about as a 30(b)(6) witness?
18         MR. McWILLIAMS:  Objection.  Form.
19 BY MR. PATTON:
20   Q.    Were you informed?
21   A.    Yes.
22   Q.    Okay.  Were you informed that one of the
23 things that you would have to support was that there
24 was no malice here?
25   A.    I was told that you would ask me questions

Page 72

1  relating to that defense, and I would have to answer
2  those questions to the best of my ability after
3  having -- for example, if you put documents in front
4  of me.
5       Q.   Okay.
6       A.   I wasn't told I had to memorize every fact
7  in the case and...
8       Q.   Okay.  You're aware, of course, that you
9  did use the terminology there was a lack of malice?
10      A.   Yes.
11           MR. BABCOCK:  Object to the form.
12           MR. McWILLIAMS:  Same objection.
13  BY MR. PATTON:
14      Q.   Okay.  What facts can you tell me about
15  that would support that assertion on your part?
16      A.   If you put documents in front of me, I'll
17  be able to remember whether they do.  All the facts
18  that I told you about with the truth, though --
19      Q.   Okay.
20      A.   -- also apply to the lack of malice
21  defense.
22      Q.   Okay.
23      A.   I think -- I don't remember if I testified
24  before that we had Baker Botts call the district
25  court clerk and ask them what had happened, but

1    that's part of what the lack of malice -- that would
2    go into the lack of malice part of it, too.
3         Q.   Speaking of that, having the Baker Botts
4    people call the court clerk, there has been
5    criticism by an expert about Mr. Albritton's office
6    calling the court clerk.  Are you aware of that?
7              MR. McWILLIAMS:  Objection.  Form.
8              MR. BABCOCK:  Same objection.
9              THE WITNESS:  No.
10   BY MR. PATTON:
11        Q.   You don't know there is an expert named
12   Herring (phonetic) that so opines that that might be
13   an ethical breach?
14             MR. McWILLIAMS:  Objection.  Form.
15             MR. BABCOCK:  Same objection.
16             THE WITNESS:  I knew there's an expert
17   named Herring, but I haven't -- I don't know what's
18   in his report.
19   BY MR. PATTON:
20        Q.   Okay.  Do you think it was unethical for
21   the Baker Botts people to call the clerk without
22   getting Mr. Albritton on the phone with them?
23             MR. McWILLIAMS:  Objection.  Form.
24             MR. BABCOCK:  Objection.  Form.
25             THE WITNESS:  No.

Page 120

1    A.   I said "wittingly or unwittingly." I said
2 the clerk was wittingly or unwittingly conspiring
3 with a non-practicing entity to try to manufacture
4 subject matter jurisdiction. That's not trying to
5 accuse anyone of a crime.
6    Q.   Of course, there are a couple of flaws in
7 this conspiracy.
8         Do you know if anything on here -- did you
9 verify it? Did you look at the rules? Did you look
10 at the local rules?
11        MR. McWILLIAMS: Objection. Form.
12        THE WITNESS: Yes.
13 BY MR. PATTON:
14   Q.   You did?
15   A.   Yes.
16   Q.   You looked at the local rules?
17   A.   I believe that I did.
18   Q.   Okay. And what were you looking for?
19   A.   The filing date information.
20   Q.   Okay. And you're telling me you couldn't
21 find it?
22   A.   No, I found it.
23   Q.   And it told you that the electronic file
24 stamp was the official record of the filing, did it
25 not?

Page 121

1        MR. McWILLIAMS:  Objection.  Form.
2        THE WITNESS:  It confirmed for me that the
3  original stamp that was placed on the complaint in
4  the docket of October 15th, 2007, were indeed
5  correct.
6  BY MR. PATTON:
7     Q.   That the case was filed on the 15th was
8  correct?
9     A.   Yes.
10    Q.   Have you ever asked anybody in the clerk's
11 office whether or not that statement is correct?
12       MR. McWILLIAMS:  Objection.  Form.
13       THE WITNESS:  We asked Baker Botts to call
14 the clerk's office to find out what had happened,
15 and they informed us that they had changed the date
16 from October 15th to October 16th.
17 BY MR. PATTON:
18    Q.   So you were -- you didn't engage Baker
19 Botts until after you had already posted it, did
20 you?  Did you post it before or after you engaged
21 Baker Botts?
22    A.   Engaged?  I'm sorry.  I don't understand
23 what you mean.
24    Q.   I thought you had hired -- I thought you
25 said we engaged Baker Botts to do something, did you

Page 127

1  violation, so I don't know what you're talking about
2  right now.
3      Q.  Well, I thought that was pretty simple.
4  Did you call the clerk yourself?  That's a pretty
5  simple question.  Did you?
6      A.  Did me, Rick Frenkel, call the clerk?
7      Q.  Uh-huh.
8      A.  No, I had somebody do it for me.
9      Q.  You had the lawyers in Dallas do that?
10     A.  Yes.
11     Q.  And did they give you information that
12 satisfied you that some bad thing had occurred?
13         MR. McWILLIAMS:  Objection.  Form.
14         MR. BABCOCK:  Same objection.
15         THE WITNESS:  I mean it satisfied me that
16 the date had been changed based on a call to the
17 clerk's office.
18 BY MR. PATTON:
19     Q.  Did the correspondence you received from
20 Baker Botts give you pause that this might not be
21 real clear-cut?
22         MR. McWILLIAMS:  Objection.  Form.
23         THE WITNESS:  No.
24 BY MR. PATTON:
25     Q.  Do you recall the comment in the email,