Ward v. Cisco Systems, Inc. et al          Doc. 61 Att. 14
Case 4:08-cv-04022-JLH   Document 61-15   Filed 04/27/09   Page 1 of 9
Beckwith, Marta                                    11/19/2008
Confidential - Subject To The Protective Order

Page 1

IN THE UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF TEXAS

TYLER DIVISION

ERIC M. ALBRITTON,

       Plaintiff,

-vs-                              CASE NO.  6:08-CV-00089

CISCO SYSTEMS, INC.,
RICHARD FRENKEL,
MALLUN YEN and JOHN NOH,

       Defendants.
_____/


CONFIDENTIAL - SUBJECT TO PROTECTIVE ORDER

DEPOSITION OF MARTA BECKWITH

Wednesday, November 19, 2008




SHEILA CHASE & ASSOCIATES
Reporting For
WEST COURT REPORTING SERVICES
221 Main Street, Suite 1250
San Francisco, California 94105
Phone:  (415) 321-2300
Fax:  (415) 618-0743



Reported by
SHEILA CHASE, CSR, RPR
License No. 4934

1          MR. McWILLIAMS:  Objection.  Form.
2          MR. PATTON:  Q.  Do you think he was?
3          MS. PARKER:  Objection.  Form.
4          THE WITNESS:  I think he was a person
5    responsible for talking to the media.
6          MR. PATTON:  Q.  Okay.  What do they call
7    those in Washington, D.C., these days?
8      A.   I don't know.
9      Q.   How about "spin doctor"?
10         MS. PARKER:  Objection.  Form.
11         MR. McWILLIAMS:  Same objection.
12         MR. PATTON:  Q.  Did you suggest to
13   Mr. Frenkel that he inform Mr. Noh that he was the Troll
14   Tracker?
15     A.   I don't believe so.
16     Q.   When the controversy about the filing arose,
17   Ms. Beckwith, were you involved at all?
18         MS. PARKER:  Objection.  Form.
19         MR. McWILLIAMS:  Same objection.
20         THE WITNESS:  I'm not sure what you mean about
21   controversy.
22         MR. PATTON:  Q.  Let me describe this.  I
23   think you're probably aware of it.  There's a
24   controversy about whether the ESN complaint was actually
25   filed on the 15th of October or the 16th.  You're aware

```
1    of that, are you not?
2         A.   I am.
3         Q.   That is the controversy I'll be talking about.
4         A.   Okay.
5         Q.   Okay.  Were you aware of that controversy?
6         A.   I was aware that the complaint appeared to
7    have been filed on the 15th.  We have a --
8         Q.   The case what?
9         A.   That the case appeared to be filed on the
10   15th, according to what we received.  And then later it
11   was claimed that it was actually filed on the 16th.
12        Q.   Okay.  Were you involved in the effort to
13   determine what happened?
14        A.   I was aware in the effort to determine what to
15   do about what had happened.
16        Q.   Okay.  Were you -- are you aware that Baker
17   Botts was contacted regarding that?
18        A.   Yes.
19        Q.   And what was the purpose of contacting Baker
20   Botts in the Dallas office?
21             MS. PARKER:  I'm going to instruct you not to
22   answer anything that has to do with litigation strategy.
23             MR. PATTON:  What litigation are we talking
24   about?
25             MR. McWILLIAMS:  Well, you're just asking
```

Page 16

1  about the ESN litigation and the controversy, and now
2  you are going into communications with counsel.
3           MR. PATTON:  No, I'm not.  I'm asking if they
4  contacted Baker Botts about this issue.
5           MS. PARKER:  You asked her what the purpose of
6  the call was.
7           MR. PATTON:  Q.  You did contact Baker Botts?
8       A.  Yes.
9       Q.  Did they undertake some work for you?
10      A.  Yes.
11      Q.  What was the work that they did?
12          MS. PARKER:  I'm going to instruct her not to
13  answer.
14          MR. PATTON:  There are e-mails here that say
15  they contacted the clerk.
16          MS. PARKER:  She is testifying they contacted
17  the clerk.  You haven't asked her whether she --
18          MR. PATTON:  Q.  Did Baker Botts contact the
19  clerk's office?
20      A.  I believe they did.
21      Q.  Okay.  You received an e-mail that basically
22  informed you that they did, did you not?
23      A.  Yes.
24      Q.  And the e-mail told you -- there are a number
25  of e-mails, but they basically told you what they

1  thought had occurred?
2         MR. McWILLIAMS:  Objection.  Form.
3         MS. PARKER:  Objection.  Form.
4         THE WITNESS:  What they had heard had
5  occurred.
6         MR. McWILLIAMS:  There wasn't a question on
7  the table, and you answered one that wasn't there.
8         MR. PATTON:  Q.  Whatever the question would
9  have been, you just answered it.  Okay.
10        Did you ask Baker Botts to determine what
11 happened -- you or someone on your team ask the Baker
12 Botts lawyer to determine what had happened about the
13 ESN filing?
14    A.   We were trying to determine what to do with
15 what had happened.
16    Q.   Was Baker Botts to assist in giving you the
17 information so that you could determine what to do?
18    A.   Yes.
19    Q.   Okay.  Why did you call Baker Botts?
20    A.   They had been working on the prelitigation
21 issues with ESN.
22    Q.   Were they one of the firms that was under
23 consideration to represent Cisco in that litigation?
24    A.   I don't remember if they were under
25 consideration.  But they did not end up representing us

1  with respect to the later portions of the case.
2      Q.  Well, I must not have understood what you
3  first told me.  Why did you call Baker Botts?
4      A.  We did not have and had not yet decided on
5  litigation counsel on a going-forward basis.  They had
6  been helping us with respect to the prelitigation
7  matters.  So when we needed immediate help, they were
8  available and knowledgeable.
9      Q.  Did you know that Baker Botts practices in the
10 Eastern District of Texas?
11     A.  Yes.
12     Q.  And that they regularly do so?
13     A.  Yes.
14     Q.  And am I correct in assuming that you wanted
15 someone who was familiar with the Eastern District of
16 Texas practice to help you out with this matter?
17         MR. McWILLIAMS:  Objection.  Form.
18         MS. PARKER:  Objection.  Form.
19         MR. McWILLIAMS:  Ms. Beckwith, we will
20 instruct you not to answer about the litigation strategy
21 within Cisco.
22         MR. PATTON:  Q.  But, whatever the reason,
23 Baker Botts did assist with this?
24         MR. McWILLIAMS:  Objection.  Form.
25         MR. PATTON:  You object to what?

Page 19

1         MR. McWILLIAMS:  I objected to the form.
2    Whatever reason.
3         MS. PARKER:  Same objection.
4         THE WITNESS:  Baker Botts helped us.
5         MR. McWILLIAMS:  Whoa, Ms. Beckwith.
6         THE WITNESS:  Sorry.
7         MR. PATTON:  Are you telling her not to answer
8    the question?
9         MR. McWILLIAMS:  Well, I'm telling her not to
10   the answer a question that's not asked.
11        MR. PATTON:  There is a question, is there
12   not?
13                  (Record read as follows:
14              Q.  But, whatever the reason, Baker
15              Botts did assist with this?)
16        THE WITNESS:  That's not a question.
17        MR. McWILLIAMS:  Did you put a question mark
18   at the end of that?
19        MR. PATTON:  Q.  Did Baker Botts assist --
20      A.  Baker Botts assisted when the ESN case was
21   filed.
22      Q.  Is that privileged, you think, that they
23   assisted you?
24        MR. McWILLIAMS:  Objection.  Form.  And I
25   instruct her not to answer that.

1             MR. PATTON:  Q.  Right.
2        A.   I'm not sure, to this day, that I actually
3   know what occurred.
4        Q.   Okay.  Well, do you think that the serious
5   words in that blog, like "conspiracy" and the others
6   that I have mentioned to you -- don't you think you need
7   to have determined what really happened before you blog
8   about it?
9             MS. PARKER:  Objection.  Form.
10            MR. McWILLIAMS:  Same objection.
11            THE WITNESS:  I believe that the blog reflects
12  what occurred.
13            MR. PATTON:  Q.  All right.
14       A.   We received a file-stamped copy of the
15  complaint dated the 15th.  Magically, the file stamp was
16  changed to reflect the 16th.
17       Q.   You say "magically" why?
18       A.   Because a motion should -- if your client and
19  ESN believed that something had happened and that the
20  date on that complaint was not the actual date of
21  filing, a motion should have been brought, so that we
22  could have all found out what had occurred.
23       Q.   Well, why didn't you guys file one?
24            MS. PARKER:  Objection.  Form.
25            MR. McWILLIAMS:  Same objection.

1        THE WITNESS:  We ended up taking a different
2   tact.
3        MR. PATTON:  Q.  I see.  I want you to tell me
4   all of the things that you are aware of that was done to
5   investigate this incident with the filing, everything
6   you can remember about the investigation.
7        A.   Baker Botts talked with the clerk.  We
8   discussed the issue with other attorneys who had been in
9   similar circumstances.  And eventually we decided to
10  take a different tact with ESN --
11       MR. McWILLIAMS:  Ms. Beckwith --
12       THE WITNESS:  Sorry.  You are right.
13       MS. PARKER:  I'm going to instruct you not to
14  answer anything that has to do with your litigation
15  strategy in the ESN case.
16       MR. PATTON:  Q.  What else?  What else did you
17  do in the investigation?
18       A.   Those are the --
19       Q.   You talked to the clerk, or Baker Botts talked
20  to the clerk.  What else?
21       A.   As I said, we discussed it with other
22  attorneys who had been in similar circumstances.
23       Q.   And that would be who?
24       A.   I spoke with Tony Downs, at Goodwin Procter.
25       Q.   Okay.  What else?