IN THE UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF ARKANSAS
TEXARKANA DIVISION

| | | |
|---|---|---|
| JOHN WARD, JR. | § § § | |
| | § | C. A. NO. 08-4022 |
| v. | § | JURY TRIAL DEMANDED |
| | § | |
| CISCO SYSTEMS, INC. | § § | |

**DEFENDANT CISCO SYSTEMS, INC.'S RESPONSE TO PLAINTIFF'S MOTION TO COMPEL COMPLIANCE WITH THE COURT'S MARCH 30, 2009 ORDER AND FOR SANCTIONS AND MOTION TO AMEND OR CLARIFY ITS MARCH 30, 2009 ORDER REGARDING <u>WAIVER OF ATTORNEY-CLIENT PRIVILEGE</u>**

TO THE HONORABLE DISTRICT COURT JUDGE:

Cisco Systems, Inc. ("Cisco") hereby files its Response to Ward's Motion to Compel Compliance with the Court's March 30, 2009 Order and for Sanctions ("Motion") and moves the Court to amend or clarify its March 30, 2009 Order with respect to waiver of attorney-client privilege.

### I.   INTRODUCTION

Plaintiff complains about Cisco's answers to interrogatories 5 and 6 following the Court's order compelling more complete answers.[1]  Cisco's amended answers fully respond to both interrogatories and are totally compliant with the Court's order. Ward purports to dislike the answers because they apparently frustrate his desire to cause a complete "subject matter" waiver of privileged communication between Cisco and its counsel, Baker Botts, attorneys who represented Cisco regarding claims made by ESN. Ward, the plaintiff here, represents ESN with

---

[1] Cisco had provided initial answers although it also lodged objections, which the court overruled.

respect to those claims in the *ESN v Cisco* case, which is currently pending before Judge Folsom.[2] (Friedman Declaration, <u>Exhibit A</u> at ¶3).

Regardless of Plaintiff's motives, Cisco's answers are truthful and complete as an examination of the questions and responses reveals. Plaintiff complains that Cisco "redid" and "rewrote" its answers to the interrogatories (Motion at p. 1) which, we think, shows our compliance with, not disobedience of, the Court's order. The order could hardly have been obeyed without rewriting the original answers, which Plaintiff said were "anemic." (Motion at p. 5). It is often the case that discovery responses are amended during legal proceedings. If Plaintiff thinks the original answers are inconsistent with the amended answers he can point that out at the appropriate time. It is not the stuff of sanctions.

Interrogatory 5 asks Cisco to identify "all information **relied** upon by Rick Frenkel" in making the allegedly defamatory statements. Plaintiff changes the question when he argues that Cisco was required to answer "facts about what Frenkel and Cisco knew" (Motion at p. 2). What Frenkel relied upon and what he knew are two different things. The interrogatory asked about what he <u>relied</u> upon not what he <u>knew.</u>

With respect to the October 17 article, Defendant identified eleven items of information[3]; as to the October 18 article, Cisco identified ten items of information; and for the so-called October 19 or revised October 18 article (which eliminated some language and modified other phrases from the October 18 article), Cisco listed the same ten items as the October 18 article.

---

[2] *ESN v. Cisco et al*, Cause No. 5:08-CV-00020 in the United States District Court for the Eastern District of Texas—Texarkana Divison.

[3] It should have identified twelve. Item 1 under the October 18 article should have been item 12 under the October 17 article. Also, Amanda Ernst was the author of the IP 360 article and was properly listed on item 4 under the October 17 article. She should not have been listed under item 5. *See* Frenkel Declaration, Exhibit B at ¶3.

It will be recalled that Frenkel was nonsuited as a defendant in this case and left Cisco's employment before these interrogatories were served. Friedman Declaration, Exhibit A at ¶9. He was, however, deposed in the related *Albritton v. Cisco*[4] litigation by these same lawyers who, of course, had the opportunity to ask Mr. Frenkel what he relied upon in writing the October 17 and October 18 articles. His responses to their questions are consistent with Cisco's answer to Interrogatory 5. Furthermore, we have asked Mr. Frenkel, and he has agreed, to verify that Cisco's answer to interrogatory 5 is accurate as to what he **relied** upon in writing the subject articles. His declaration is attached as Exhibit B hereto.

We also note that Plaintiff repeatedly contends that the answer to interrogatory 5 relates to a "good faith defense" which Cisco has allegedly asserted. Plaintiff goes so far as to say that Defendant has asserted a "good faith" or "good faith reliance on advice of counsel defense," throughout the Motion. (*See* Motion at pp. 1, 3, 5, 6 and 8.) Cisco has not asserted any such defenses and we have repeatedly told Plaintiff's counsel that. *See* Exhibit C (Powell Deposition at pp. 18-19, 75-76) attached hereto. Defendant has reviewed its answer in this case and finds no such defense asserted. (*See* Docket No. 8 at pages 9-10 ("Affirmative Defenses and Other Defensive Matters")).

What has caused the confusion (if that's what it is) is Plaintiff's use of the term "actual malice." In libel cases "actual malice" is a term of art which does **not** mean, as one would think, ill will or bad faith but rather (i) knowledge of falsity by the publisher at the time of publication or (ii) reckless disregard of the truth, that is, the publisher at the time of publication in fact entertained serious doubt as to the truth of the publication. *See New York Times v. Sullivan*, 376

---

[4] *Albritton v. Cisco*, Cause No. 5:08-CV-00089 in the United States District Court for the Eastern District of Texas.

U.S. 254, 286-87 (1967); *Campbell v. Citizens for Honest Government, Inc.*, 255 F.3d 560, 569 (8th Cir. 2001).

Actual malice is not a defense but rather something a public figure or public official such as Plaintiff must prove by clear and convincing evidence. Not only is it an element of his claim but it is constitutionally compelled. *Id.* In arguing so strenuously that he needs discovery on "actual malice" we assume Plaintiff is conceding he is a public figure.

Interrogatory 6 asks when Cisco first became aware that "**ESN** claimed that the filing date of the complaint as listed on the court's docket was an error..." Cisco responded that it first learned that **ESN** was claiming this when it received a pleading from ESN making such a claim. For completeness Cisco also responded that a Baker Botts paralegal had heard from a deputy clerk that **Eric Albritton**, one of ESN's counsel, was making that claim prior to the pleading referenced above.[5] Cisco has not claimed privilege with respect to the paralegal's conversation with the clerk, as is obvious from Exhibit F to the Plaintiff's motion, deposition excerpts of the paralegal (Jilliam Powell) who is questioned by Ms. Peden about the conversation.

Plaintiff faults Cisco for not moving the court to reconsider its motion to compel order in light of, Plaintiff says, the "clear and unambiguous" ruling that Defendant waived the attorney client privilege. (Motion at p. 1). The criticism may be well founded and we seek to rectify it now, but we did not read the court's order as being so clear and unambiguous. The court said only that, with respect to Interrogatory Numbers 5 and 6, "it appears to the Court that the 'privileged' attorney client communications have been waived." This "appearance" was created by Plaintiff's false claim that Cisco was asserting a good faith defense generally or based on

---

[5] It is sometimes the case that lawyers take preliminary positions that the client later decides not to take. The interrogatory asked about ESN but since Albritton was its counsel we included that information as well for completeness.

advice of counsel.[6] Even if the privilege has been waived it does not change Cisco's answer to interrogatories 5 and 6, and we ask the court to reconsider or, perhaps more properly, clarify its ruling because of the implications waiver will have for the ESN case. We think after the court learns that Cisco is not asserting, and never has asserted, a good faith defense nor an advice of counsel defense the "appearance" should "disappear."

We address these matters in turn.

## II.   INTERROGATORY 5 HAS BEEN FULLY ANSWERED

Interrogatory 5 asks:

IDENTIFY ALL information relied upon by Richard Frenkel in making the statements contained in the Troll Tracker October 17, 2007, October 18, 2007 and revised October 18, 2007 posts, and separately and for each piece of information IDENTIFY the DATE and TIME the information was received by Frenkel, IDENTIFY all DOCUMENTS CONCERNING the information received, IDENTIFY ALL PERSONS involved in the information received, IDENTIFY the nature of any COMMUNICATION involved INCLUDING the DATE, TIME, and ALL PERSONS involved in the COMMUNICATION, and IDENTIFY all DOCUMENTS CONCERNING that COMMUNICATION.

Cisco's answer to that interrogatory is attached to the Motion as Exhibit G. As to the October 17 Article, the answer states what information Frenkel relied upon. Contrary to Plaintiff's assertions ("Cisco merely elected not to identify responsive documents") (Motion at p. 14), where Cisco had a responsive document it is identified to both interrogatories. From this information Frenkel titled the article: Troll Jumps the Gun, Sues Cisco Too Early. The article begins by crediting the Dennis Crouch article (item 3[7]) which first commented on the early filing ("Well, I knew the day would come. I'm getting my troll news from Dennis Crouch now.") He

---

[6] The only time an advice of counsel defense is asserted in a libel case is when an attorney has performed a pre-publication review of the publication alleged to be defamatory. *See, e.g. Kemart Corp. v. Printing Arts Research Lab, Inc.*, 269 F.2d 375, 394 at n. 10 (9th Cir. 1974). There was no such pre-publication review here by Baker Botts or anyone else.

[7] The items correlate to the numbered items in response to Interrogatory 5.

quotes the Crouch article as saying "a company called ESN sued Cisco for patent infringement on October 15th, while the patent did not issue until the 16th." He confirms what Crouch said by looking at the pleadings and the Patent office web site. (Items 1,2,6 and 7).

Frenkel then describes ESN and its manager. (Item 11). As stated in the answer to Interrogatory 5, Frenkel obtained this information from the internet, including the web site zoom.com. Frenkel then asks the rhetorical question whether you can sue before the patent issues. He answers the question by quoting the *GAF* case (item 9), which holds that you can not. Frenkel then reports that Cisco filed a declaratory judgment action in Connecticut, relying upon the pleading (item 10) filed there by Cisco. He then refers to other bloggers/news items (items 4 and 5), noting that an amended complaint had been filed in the *ESN v. Cisco* case (item 1 mistakenly listed under October 18). He finishes by speculating that the *ESN v Cisco* case was on its way to New Haven and wonders how Johnny Ward will play there after noting that Ward, Albritton and a Chicago firm represent ESN. This is the only time Ward is mentioned in any of these articles.

The October 18 article was titled "ESN Convinces EDTX Court Clerk To Alter Documents To Try To Manufacture Subject Matter Jurisdiction When None Existed." It begins by saying that Frenkel got a couple of anonymous emails (items 2 and 3) which pointed out that a docket entry for the *ESN v Cisco* case had been changed. He states that ESN's local counsel called the EDTX court clerk and convinced him/her to change the docket. (Items 2 and 4.) He further states that he "checked" and "that's exactly what happened." (Items 4-6, 8-10 for October 18). *See* Exhibit B at ¶4. He then goes on to comment about the "change (of) history" which he opines you can't do, and then further opines that this is "yet another example of the abusive nature

of litigating patent cases in the Banana Republic of East Texas." He removed this last sentence the next day and modified the language of the paragraph.

When counsel held a conference call to confer about this Motion, Plaintiff's counsel (Ms. Peden) asserted that Mr. Frenkel had relied upon "advice of counsel Baker Botts," much like she repeats in the Motion. (Motion at p. 5.) We consulted with Mr. Frenkel (an ex-employee, non-party) and determined that the interrogatory answer was accurate in this regard. Mr. Frenkel was told by Mallun Yen or Marta Beckwith[8] that Ms. Powell (the Baker Botts paralegal) had checked with the clerk and learned that it was local counsel (Albritton) who had convinced the clerk to "change the docket."[9] As Plaintiff's counsel well knows, Mr. Frenkel testified about this in his deposition in the Albritton case. *See* Exhibit D at p. 122 (deposition excerpts of Frenkel).

### III. INTERROGATORY 6 HAS BEEN FULLY ANSWERED

Interrogatory 6 Provides as Follows:

> IDENTIFY the DATE and TIME that CISCO first became aware that ESN claimed that the filing date of the complaint as listed on the court's docket was an error and DESCRIBE the circumstances under which CISCO obtained that knowledge INCLUDING ALL PERSONS involved, all COMMUNICATIONS involved and separately and for each COMMUNICATION the DATE, TIME, ALL PERSONS involved, the content of the COMMUNICATION, what

---

[8] Ward attempts to claim that Cisco violated the Court's order because Frenkel cannot remember whether he spoke with Yen or Beckwith prior to writing the article. However, a party cannot be sanctioned for not remembering. It would be disingenuous for Cisco to have answered any other way.

[9] Ward attempts to create speculation that Cisco withheld responsive documents by referring to Cisco's privilege log, which is misleading because Frenkel did not rely on these communications. Indeed, several of the communications Ward identified are from Frenkel. Most of them are after the complained-of articles were written, and thus Frenkel could not have relied on them. Indeed, Frenkel is not even a recipient of many of the emails Ward identifies, and thus, again, he could not have relied on those communications. Others are clearly not related, such as discussions regarding hiring local counsel and discussions regarding case law on venue. Ward's citation to these communications is an attempt to convince the Court that Frenkel relied on these privileged communications so that Ward can seek discovery of Cisco's privileged case strategy in the ESN case. Indeed, Ward has refused to agree not to attempt to use Cisco's privileged communications in the ESN case itself (which has since been refiled and is still pending). Ward's attempt to mislead the Court into thinking that Frenkel relied on these communications is disingenuous attempt to get access to Cisco's non-responsive, privileged documents so they can be used against Cisco in the ESN case.

prompted the COMMUNICATION, the form of the COMMUNICATION, and IDENTIFY ALL DOCUMENTS CONCERNING CISCO's knowledge.

The bulk of Plaintiff's motion focuses on interrogatory 5 and not interrogatory 6. Plaintiff appears to be complaining, as to Cisco's interrogatory 6 response, that Cisco "merely elected not to identify responsive documents." (Motion at 14.) That is patently false. Cisco stated that it first became aware that ESN was contending the Court's docket was in error when it was served with ESN's Motion to Enjoin making that claim on October 18, 2007, which Cisco characterized as "a pleading" which is, of course, a document. The pleading was the first time that ESN made the claim about the error in filing. In the answer we listed as "Communications Involved": "ESN's Motion to Enjoin."

## IV. CISCO HAS NOT ASSERTED A GOOD FAITH DEFENSE OR ADVICE OF COUNSEL DEFENSE AND ASKS THE COURT TO MODIFY OR CLARIFY ITS ORDER REGARDING PRIVILEGE

Plaintiff repeatedly claims that "Cisco put its good faith at issue," (Motion at p. 1) that "key facts show that Cisco acted in bad faith" (Motion at p. 2), that "Cisco has asserted that Frenkel acted in good faith in publishing his accusations against Ward," (Motion at p. 5) that "because Cisco has asserted good faith as a defense, Cisco must provide discovery," (Motion at p. 6) and that Plaintiff is merely "seeking to discover facts about Cisco's 'good faith' defense." (Motion at p. 8). Plaintiff has created this "good faith" defense out of whole cloth.

The so-called good faith defense is not in Cisco's answer (Docket No. 8) which lists its affirmative defenses at pages 9-10. One would think that if Cisco was asserting a "good faith" defense that the words "good faith" would be somewhere under the heading "Affirmative Defenses and Other Defensive Matters." The words do not appear.

Plaintiff's counsel, of course, knows this. At the deposition of Jillian Powell, the Baker Botts paralegal, the following exchange took place when Patty Peden unsuccessfully sought a

ruling from the judge assigned to the subpoena[10] that communications between Baker Botts and Cisco were not privileged[11]:

> MS. PEDEN: The Defendant in this case, Cisco Systems, has claimed as a defense that they are not liable for defamation because there's no actual malice because they relied on the advice of counsel that they received from Baker Botts.
>
> MR. BABCOCK: Judge, this is Chip Babcock, representing Cisco. That is absolutely not true...

Exhibit C at pp. 18-19. Ms. Peden made similar statements during the Baker Botts depositions and was told every time that Cisco is not asserting this defense:

> MS. PEDEN: So I'm going to go ahead and ask about the chronology of events and communications and just state for the record that I think that I've formulated my questions to ask for facts that aren't covered by privilege and that if they were covered by privilege, they've been waived by Cisco placing at issue its reliance on advice that it received from Baker Botts...
>
> MR. BABCOCK: As long as we're getting things on the record, we are not relying on advice of counsel defense... we have not asserted that either by pleading or in any other way.

Exhibit C at pp. 75-76.

There are times when a publisher like Frenkel will have his article reviewed by an attorney prior to publication and, in subsequent litigation, will argue that he relied on advice of counsel in defending a libel claim. *See, e.g. Kemart Corp. v. Printing Arts Research Lab, Inc.*, 269 F.2d 375, 394 at n. 10 (9th Cir. 1974). But that didn't happen here. No one (much less Frenkel's lawyer) reviewed Frenkel's article, which he wrote himself.

---

[10] Since the non-party witnesses (Baker Botts) were in Dallas, Ms. Peden contacted the Magistrate Judge for the Northern District of Texas that was assigned to the subpoena.

[11] In accordance with the Federal Rules of Civil Procedure, which require rulings regarding subpoenas to be made by the court from which the subpoena issued, and thus the court that has jurisdiction over the subpoenaed witness, the parties contacted Judge Ramirez of the Northern District of Texas. The judge declined to issue a ruling because Ms. Peden indicated that she would not agree to be bound by the ruling. Exhibit C at pp. 19-20.

What Plaintiff may be confused about is the term "actual malice" which as the cases hold does not mean "ill will, desire to injure, or political or profit motive." *Campbell*, 255 F. 3d at 569. What it does mean is that when the plaintiff is a public figure, as is apparently conceded by Plaintiff here,[12] the burden is for the plaintiff to show by clear and convincing evidence that the publication was made with "actual malice." As the Eighth Circuit held in *Campbell*:

> Even if the defendant's remarks are proven both defamatory and false, a public figure plaintiff must also prove by clear and convincing evidence that the defendant acted with actual malice—that is, that the defendant made false remarks with a high degree of awareness of probably falsity, or that the defendant entertained serious doubts as to the truth of his publications.

*Id.*

So the "actual malice" issue is not a defense but rather an element of Plaintiff's proof. *Id.* Since it is not a defense and since Defendant has not pleaded nor relied upon the "good faith" or "good faith reliance on the advice of counsel" defenses, the claimed rationale for waiver of the attorney-client privilege is not present. We ask that the court modify or clarify its order. We do agree that because this public figure plaintiff has the burden of proving "actual malice," a burden which the Eighth Circuit accurately describes as "a daunting one," (*id.*) the issue of what Frenkel relied upon is indeed relevant. Frenkel did not rely on any attorney-client information in preparing the articles, although he did have a conversation with either Mallun Yen or Marta Beckwith, who told him about Powell's conversation with the clerk (item 4 in response to Interrogatory No. 5). Plaintiff's counsel knows about this conversation because he asked about it in depositions: Exhibit D (Frenkel at p. 122) ("I believe that the conversation [with Baker Botts] was not with me but with Marta Beckwith or Mallun Yen"). Plaintiff's counsel agrees that this

---

[12] We assume this otherwise the Plaintiff would hardly be so aggressively seeking discovery about a matter it thinks is irrelevant.

conversation is not privileged. (*See* <u>Exhibit E</u>, Email from Patty Peden, counsel for Plaintiff to Charles Babcock, counsel for Cisco, about filing their amended complaint).

But even if there was some other privileged conversation that is relevant, that does not mean attorney-client communications are discoverable. FED. R. CIV. P. 26(b) ("Parties may obtain discovery regarding any **nonprivileged** matter that is relevant to any party's claim or defense") (emphasis added); *Baldrige v. Shapiro*, 455 U.S. 345, 360 (1982) ("If a privilege exists, information may be withheld, even if **relevant** to the lawsuit and essential to the establishment of plaintiff's claim") (emphasis added); *Gagnon v. Sprint Corp.*, 284 F.3d 839, 855 (8th Cir. 2002) (affirming district court's refusal to compel privileged documents); *Nuckles v. Wal-Mart Stores, Inc.*, 2007 WL 1546092 at *1-2 (E.D. Ark. May 25, 2007, no pet.) (holding that relevant conversations with a former employee were privileged and thus not discoverable.)

What is going on here is Plaintiff is trying to bust the privilege for purposes of the ESN case. He has all the information he needs for this case where he has suffered no damages. To the extent he wants the privileged documents which Cisco produced in the Albritton case, all he has to do is make the same agreement as Albritton made which we describe below.

## V. TREATMENT OF PRIVILEGED DOCUMENTS IN THE ALBRITTON CASE

James Holmes was initially the attorney for the Plaintiff in the Albritton case. He and Mr. Babcock (representing Cisco) worked out an agreement where each side would produce what would otherwise be treated as attorney-client privileged documents with the understanding that the production of any document would never be claimed as a waiver and that the documents would be treated as confidential under a protective order which had been entered by Judge Schneider. (Friedman Declaration, Exhibit A at ¶5). Subsequently, Albritton wanted (in Cisco's view) to release Cisco's privileged documents to the press and asked for modification of the

protective order. *Id.* The parties subsequently entered into an agreement on that issue, and the motion to modify the protective order was denied. *Id.*

The arrangement was important to Cisco to ensure that there would be no waiver of the attorney client privilege in the underlying *ESN v. Cisco* litigation. *Id.* at ¶6. To date there has been no public disclosure of either Cisco's privileged documents or ESN's privileged documents (which Albritton produced) in the Albritton case[13] although it appears to Cisco that some of the documents from the Albritton case have been used in this motion. Ward's lawyers have access to the privileged documents because Nick Patton and Patty Peden replaced Mr. Holmes as lead counsel on October 27, 2008 in the Albritton case.

We have suggested that a proper way to handle this situation is to have an agreement whereby ESN, Albritton, Ward and Cisco enter into an agreement about the scope of production all parties are willing to make regarding what would otherwise be privileged documents. *Id.* at ¶8. Although the parties are still discussing the matter, no agreement has yet been reached. *Id.*

### IV. SANCTIONS ARE NOT WARRANTED

Ward argues that sanctions are warranted under Rules 37(b) and 16(f) of the Federal Rules of Civil Procedure. Rule 37(b) provides that sanctions may be issued for failing to obey an order to permit discovery. Since there has been no disobedience of the order here no sanctions are warranted.

While district courts have wide discretion in ordering sanctions, that discretion narrows as the severity of the sanction increases. *Sentis Group, Inc. v. Shell Oil Co.*, 559 F.3d 888, 898 (8th Cir. 2009). Indeed, to warrant the sanctions that Ward argues, which would be dispositive of

---

[13] The court should be aware that there is a potential that the documents will be made public in the upcoming Albritton trial as the trial judge on May 8, 2009 denied Cisco's motion to keep them out of the public record. There will be further argument about that at trial.

major issues in the case, he must show (1) an order compelling discovery, (2) a willful violation of that order and (3) prejudice to the other party. *Sentis Group, Inc. v. Shell Oil Co.*, 559 F.3d 888, 898 (8th Cir. 2009). A party may not avoid this requirement by citing to other rules granting the court inherent power to issue sanctions, as Ward has attempted to do by citing Rule 16(f). *Id.* at 900 (holding that more general sanctions rules cannot obviate the requirements of Rule 37 for sanctions in discovery disputes).

Ward has not even attempted to meet the standard under Rule 37, nor could he. Indeed, when stripped of its rhetoric and exaggeration, Ward's complaint is that he doesn't like the answers to the interrogatories, not that they did not comply the Court's order. Ward has not shown any willful violation of the Court's order or prejudice and therefore sanctions are not proper under Rule 37. Therefore, sanctions are not warranted. *See Nuckles*, 2007 WL 1546092 at *3 (denying sanctions because "Plaintiff has not shown that discovery delays were deliberately designed to thwart the [discovery] process"); *Smith v. Gold Dust Casino*, 526 F.3d 402, 405 (reversing sanctions because "the record does not show that Smith intended to delay the proceedings by failing to comply with discovery... nor, does the record support the district court's characterization that Smith contentiously refused to comply with court orders," and the court found that there had been no express warning that the party would be sanctioned).

In *Greyhound Lines, Inc. v. Wade*, 485 F.3d 1032, 1035-36 (8th Cir. 2007), the Eighth Circuit affirmed the denial of sanctions where the moving party contended that Greyhound had destroyed evidence and given evasive and misleading responses in discovery. In that case, the moving party alleged that Greyhound had indicated certain information in its initial interrogatory response but later revealed further responsive information. *Id.* The district court denied sanctions because Greyhound's answers were responsive and because the opposing party

"received responsive answers months before trial" and thus was not prejudiced. *Id.* Similarly, in *Dockery v. Leonard*, 46 Fed. Appx. 868 at *1-2, the Eighth Circuit reversed dismissal sanctions on the basis that the party responding to discovery "asserted that she had 'done everything in [her] power' to comply with the requests and had provided 'answers to the best of [her] knowledge.'" In *Bunting v. Sea Ray, Inc.*, 99 F.3d 887, 890 (8th Cir. 1996), the Eighth Circuit also held that the denial of sanctions was appropriate where the plaintiff claimed that he received information he requested via interrogatories late and was thus denied adequate time to prepare for depositions. Noting that the Plaintiff had failed to ask the district court for more time to prepare for the witnesses or for more time to obtain rebuttal evidence, the Eighth Circuit held that the Plaintiff had not shown prejudice, and accordingly affirmed the denial of sanctions. *Id.*

As in *Greyhound*, *Dockery*, and *Bunting*, here, Cisco has provided responsive answers to the best of its knowledge months before trial (which is currently set for August 31, 2009), and thus there has been no prejudice to Plaintiff. Accordingly, sanctions are not appropriate.

Indeed, it is clear that Ward has suffered no prejudice. He has received full responses to the interrogatories, and discovery is continuing in this case. Despite Ward's citations to numerous depositions, those depositions (except Jillian Powell) were taken in the Albritton case, not this case. Only two depositions have taken place in this case, and the discovery period does not end until July 1, 2009. Therefore, unlike the cases cited by Ward, Ward has suffered no prejudice with respect to the ability to conduct discovery in this case or in any other respect. Because Ward has failed to show prejudice, pursuant to Rule 37, the Court should deny his Motion.

Ward admits that if sanctions are warranted (which they are not) the Court must impose "the least amount of sanctions needed for deterrence" and that he won't attempt to argue what

sanctions are warranted, just before he requests that the Court issue death penalty sanctions, including deeming an admission that the complained-of articles are false and made with malice, striking pleadings of truth and lack of malice, and instructing the jury that Cisco intentionally withheld information in willful violation of a specific court order. (Motion at pp. 15-16, n. 8, 9). Not only are these sanctions not warranted, they are not permitted under these facts. Ward has failed to demonstrate any willful noncompliance with the Court's order and has failed to show that he has been prejudiced.

Ward argues that the potentially case dispositive sanctions are warranted because Cisco withheld information directly responsive to an interrogatory, citing *Martin v. DiamlerChrysler Corp.*, 251 F.3d 691, 694 (8th Cir. 2001) and *Chrysler Corp. v. Carey*, 186 F.3d 1016, 1021 (8th Cri. 1999). Yet Cisco has not done so, so sanctions are not warranted. Moreover, that is not even the holding of these cases, which are easily distinguishable from this case. In *Martin*, the plaintiff made affirmative misstatements and lied under oath regarding other lawsuits against her and health professionals whom she had seen. 251 F.3d at 694. Martin was the plaintiff, not the defendant, and the court struck her pleadings rather than making an affirmative finding of elements of a cause of action against her, as Ward seeks.

Ward also cites *Boogaerts v. Bank of Bradley*, 961 F.2d 765, 768 (8th Cir. 1992), which dismissed a plaintiff's RICO claim but left its common law claims intact for "deliberately, willfully and in bad faith" refusing to amend interrogatory responses. Similarly, in *Carey*, the Court found that drastic sanctions were warranted where "the defendants repeatedly lied during the discovery process, denying the existence of conversations and documents which had in fact occurred and did exist," prejudicing the plaintiff causing the plaintiff by causing the plaintiff to go to trial without essential evidence, which is "far more egregious conduct than simple foot-

dragging or even making unfounded challenges to discovery requests." 186 F.3d at 1021. Ward has made no such showing. The striking of a defense or even a court's finding of an element of plaintiff's cause of action, which would presumably result in the party paying damages even when no liability has been proven, is far more draconian than the dismissal of a plaintiff's claim, not to mention the constitutional implications of such a sanction in a case such as this one, where Frenkel was commenting on a matter of public concern. In this case, Ward has been denied no responsive evidence at all, but rather has received truthful responses to the questions asked.

Nor was Cisco required to produce any documents as Ward implies. Ironically, after arguing that Cisco <u>could not</u> produce responsive documents rather than cataloging its documents in the answers to interrogatories, causing Cisco to go to great expense to comply, Ward now claims that Cisco should be sanctioned for <u>not</u> producing documents. Neither the Federal Rules of Civil Procedure nor the Court's order require Cisco to produce any documents in response to interrogatories. Cisco took great time and effort to "identify" responsive documents as ordered by the Court. Moreover, Cisco is not aware of any authority that would require a party to produce documents in response to interrogatories, and Ward has cited none, though he claims that the Court should order Cisco to do so (Motion at p. 16).

For these reasons, the Motion should be denied in its entirety. Cisco requests that the court grant it a hearing on this issue pursuant to the Due Process Clause of the United States Constitution.

Respectfully submitted,

JACKSON WALKER L.L.P.

By: */s/ Charles L. Babcock*
Charles L. Babcock
Federal Bar No.: 10982
Email: cbabcock@jw.com
Crystal J. Parker
Federal Bar No.: 621142
Email: cparker@jw.com
1401 McKinney
Suite 1900
Houston, Texas 77010
(713) 752-4200
(713) 752-4221 – Fax

ATTORNEYS FOR DEFENDANT
CISCO SYSTEMS, INC.

## CERTIFICATE OF SERVICE

This is to certify that on this 10th day of May, 2009, a true and correct copy of the foregoing was served via electronic mail upon:

| | |
|---|---|
| Patricia L. Peden | Nicholas H. Patton |
| Law Offices of Patricia L. Peden | Patton, Tidwell & Schroeder, LLP |
| 5901 Christie Avenue | 4605 Texas Boulevard |
| Suite 201 | P.O. Box 5398 |
| Emeryville, CA 94608 | Texarkana, Texas 75505-5398 |
| ***Attorney for Plaintiff John Ward, Jr.*** | ***Attorney for John Ward, Jr.*** |

*/s/ Charles L. Babcock*
Charles L. Babcock