IN THE UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF ARKANSAS
TEXARKANA DIVISION

| | | |
|---|---|---|
| JOHN WARD, JR., | § | |
| | § | |
| Plaintiff, | § | |
| | § | C.A. NO. 08-4022 |
| v. | § | JURY TRIAL DEMANDED |
| | § | |
| CISCO SYSTEMS, INC., | § | |
| | § | |
| Defendant. | § | |

**PLAINTIFF'S REPLY IN SUPPORT OF ITS MOTION TO COMPEL
COMPLIANCE WITH THE COURT'S MARCH 30, 2009 ORDER
AND FOR SANCTIONS**

Dockets.Justia.com

# TABLE OF CONTENTS

Page(s)

I.  Introduction ........................................................................................................... 1

II.  Argument ............................................................................................................... 2

    A.  Cisco's Request to "Amend or Modify" Is An Attempt to Mask Its
    Non-Compliance With This Court's Order ......................................................... 2

    B.  Cisco Waived the Privilege It Continues to Advance in Controvention
    Of The Court's Order ......................................................................................... 5

        1.  The Court's Prior Order Finding An "At Issue" Waiver Should
        Control ....................................................................................................... 5

        2.  The Court Correctly Found That Cisco Triggered An "At Issue"
        Waiver ....................................................................................................... 6

        3.  Cisco's Belated Arguments Do Not Undermine The Court's
        Order ....................................................................................................... 10

            a.  The Legal Issues In This Case Support The Court's Order
            Finding An "At Issue" Waiver ........................................................... 10

            b.  Cisco Has Affirmatively Placed Communications With Counsel
            "At Issue" .......................................................................................... 12

    C.  Cisco's Amended Interrogatory Responses Deliberately Circumvent The
    Court's Order ................................................................................................... 14

        1.  Cisco Failed to Provide the "Full and Complete" Response to
        Interrogatory No. 5 As Ordered By The Court ...................................... 15

        2.  Cisco Refused to Provide the "Full and Complete" Response to
        Interrogatory No. 6 As Ordered By The Court ...................................... 19

    D.  Ward Is Not Required to Accept The Broken Albritton Agreement .............. 22

    E.  Cisco's Blatant Disregard Of The Court's March 30, 2008 Order
    Warrants Sanctions ......................................................................................... 25

III.  Conclusion ......................................................................................................... 29

# TABLE OF AUTHORITIES

**Cases**                                                                    **Page(s)**

*Adams Land & Cattle Co. v. Hartford Fire In. Co.,*
  2008 U.S. Dist. LEXIS 4089 ............................................................................8

*Avionic Co. v. Gen. Dynamics Corp.,*
  957 F.2d 555 (1992)....................................................................................26

*Best Buy Stores, L.P. v. Developers Diversified Reality Corp.,*
  2008 U.S. Dist. LEXIS 46217 ...............................................................26, 27

*Bowne of New York City, Inc. v. AmBase Corp.,*
  150 F.R.D. 465 (S.D.N.Y. 1993) ....................................................................8

*Burress v. Union Pac. R.R.,*
  2007 U.S. Dist. LEXIS 1749 ......................................................................6, 13

*Harte-Hanks Commc'ns, Inc., v. Connaughton,*
  491 U.S. 657 (1989)..................................................................................11, 13

*In re Chrysler Motors Corp. Overnight Evaluation Program Litigation,*
  860 F.2d 844 (8th Cir.1988) ...........................................................................7

*In re Grand Jury Invest. Of Ocean Trans.,*
  604 F.2d 672 (D.C. Cir. 1979)........................................................................6

*In re Sealed Case,*
  877 F.2d 976 (D.C. Cir. 1989)...................................................................7, 25

*In re Sealing & Non-Disclosure,*
  562 F. Supp.2d 876 (S.D. Tex. 2008) .............................................................4

*In re Trout,*
  984 F.2D 977 (8th Cir. 1993).........................................................................2

*Keefer v. Provident Life & Accident Ins. Co.,*
  238 F.3d 937 (8th Cir. 2000) .........................................................................26

*Kemart Corp. v. Printing Arts Research Lab, Inc.,*
  269 F.2d 375 ........................................................................................11, 14

*Network Computing Services Corp. v. Cisco Systems, Inc.,*
  223 F.R.D. 392 (D.S.C. 2004) ......................................................................29

*NHL v. Metro. Hockey Club,*
  427 U.S. 639 (1976)......................................................................................26

*Sedco International S.A. v. Cory,*
 683 F.2d 1201 (8th Cir. 1982) .......................................................7

*Sentis Group, Inc., v. Shell Oil Co.,*
 559 F.3d 888 (8th Cir. 2009) ......................................................26

*Springdale Memorial Hosp. V. Director of Labor,*
 34 Ark. App. 266 (Ark. Ct. App. 1991).......................................21

*Suggs v. Stanley,*
 324 F.3d 672 (8th Cir. 2003) ......................................................14

*Trestman v. Axis Surplus, Inc. Co.,*
 2008 U.S. Dist. LEXIS 40687 .......................................................9

*United States v. Big D. Enters.,*
 184 F.3d 924 (8th Cir. 1999) ......................................................26

*United States v. Cote,*
 456 F.2d 142 (8th Cir. 1972) ........................................................9

*United States v. Workman,*
 138 F.3d 1261 (8th Cir. 1998) ................................6, 7, 9, 12, 13, 22

*United States v. Young,*
 806 F.2d 805 (8th Cir. 1986) ........................................................2

*Wells v. Liddy,*
 37 Fed. Appx. 53 (4th Cir. 2002)...........................................8, 9, 12

**Statutes**

A.C.A. § 16-63-503 .....................................................................13

A.C.A. § 16-63-504 .....................................................................13

**Rules**

Fed. R. Civ. P. 26........................................................................11

Fed. R. Civ. P. 37........................................................................17

Fed. R. Civ. P. 59..........................................................................2

Fed. R. Civ. P. 60..........................................................................2

I.    Introduction:

Cisco's Response boils down to an argument that, "if the Court would have just understood that we should have won the underlying motion, then it will certainly understand our refusal to comply."  Cisco doesn't mince words about its position, telling the Court that its Order should "disappear."  *See* Response at 5.  Cisco cannot pick and chose which Court Orders it deems worthy of compliance. The fact that it did so here merits sanctions.

The other thing Cisco would like to "disappear" is its original sworn interrogatory responses and the record evidence in the *Albritton* Case.  Although Cisco's original responses state that Frenkel relied on "privileged discussions with legal counsel" in making his defamatory statements about Ward, the Response does not acknowledge Cisco's prior answer at all.  The Response never explains why the word "relied" has different a different meaning when it is used by Cisco than it does when it is used by Ward.  Nor does the Response ever explain how its sworn testimony in the *Albritton* Case is "consistent" with the sanitized responses it has re-drafted to circumvent the Court's Order.

The few explanations that Cisco provides are farcical.  Cisco would have this Court believe that it was unclear about the reach of the Court's Order.  Of course, Cisco understood the Order enough to recreate narrowly-parsed and disingenuous answers aimed at avoiding it.  Cisco would have this Court believe that information passed to Frenkel through his colleagues at Cisco falls outside of the scope of Ward's interrogatories under its new "indirect reliance" theory.  And, Cisco would have this Court believe that an interrogatory that asks about "ESN" does not include "ESN's counsel."  Cisco's arguments don't pass the straight-face test.  Sadly, Cisco has violated the Court's Order for no good purpose.  Its amended responses include citation to information provided to Frenkel by Baker Botts (albeit indirectly) and Cisco cannot avoid a subject-matter waiver even after its herculean efforts to evade the Court's Order.

Cisco's conduct cannot be condoned.  The Court should enforce its Order and enter those sanctions that it finds just, proper and necessary to deter Cisco and others from this kind of blatant misconduct.

II.    Argument:

> A.  Cisco's Request To "Amend or Modify" Is An Attempt To Mask Its Non-
>     Compliance With This Court's Order

Cisco spends the bulk of its Response trying to reargue its lost cause.  Although Cisco

admits that it never asked the Court to reconsider, amend or modify its Order, it now feigns

confusion.  *See* Response at 4.  Cisco's request should be denied as untimely.  If Cisco were

honestly confused by the Court's Order, the burden was on Cisco to file a motion for

clarification.  It did not.  In fact, it still has not.  Cisco waited until after Ward filed a motion for

compliance and for sanctions before Cisco discovered it needed some unstated clarification, and

then raised that argument only as a defensive mechanism to explain away its non-compliance

with the Court's Order.  Cisco's dilatory conduct bars the relief it seeks.  *See* Fed. R. Civ. P.

59(e), 60(c).

Cisco opted not to bring a motion at the appropriate time because it knew the

interrogatory responses that served as the basis of the Court's ruling fully supported the Court's

Order.  So Cisco opted for a different course.  It took the time allotted by the Court to replace its

answers with disingenuous answers designed to avoid the reach of the Court's Order.  Now,

Cisco offers the Court its reworked answers, asking that the Court modify its Order based on the

do-over that Cisco unilaterally granted itself.  Under no reading of any Federal Rule does Cisco's

conduct merit reconsideration by the Court.

Cisco is not entitled to the "extraordinary relief" of reconsideration, which can only be

granted upon a showing of "exceptional circumstances." *United States v. Young*, 806 F.2d 805,

806 (8th Cir. 1986) (per curiam).  Apparently, Cisco agrees.  Cisco has not identified the legal

basis of its request for reconsideration, let alone provided a legal argument showing its request

has merit.  Courts in this Circuit demand that counsel identify the rule under which

reconsideration is sought so as not to leave the Court relying upon its own "somewhat

enlightened guess" as to the basis of a party's request.  *See In re Trout*, 984 F.2d 977, 978 (8th

Cir. 1993).  Because Cisco has cited no rule or law for its argument, it is impossible for the Court

2

to evaluate, let alone accept, the legal merit of Cisco's position.

Even if the Court were inclined to overlook Cisco's shenanigans, Cisco's request to amend or clarify the Court's Order fails on its merits.  There was nothing confusing about this Court's March 30, 2007 Order, and the Response does not seriously contend otherwise.  Tellingly, not one time in its seventeen-page Response does Cisco state what it would like the Court to "amend or clarify."

Cisco doesn't seek clarification at all.  It seeks to have this Court overturn its prior Order and to do so based on rewritten interrogatory responses that were not before the Court.  Cisco argues the Court was misled by Ward's "false claim" that Cisco is asserting a good faith defense or reliance on advice of counsel defense.  *See* Response at 4-5.  With all due respect, any falsity briefed to the Court falls at Cisco's feet.  Cisco provided an interrogatory response that unambiguously stated that Frenkel relied on privileged communications with legal counsel when he defamed Ward.  *See* Exh. 1 (Cisco's interrogatory responses) at 7.  Cisco's responses informed this Court's decision about claims Cisco put "at issue" in this case.  Although Cisco has since withdrawn its response in an attempt to unravel this Court's Order, Ward can hardly be held responsible for Cisco's misrepresentations.  *See* Exh. 2 (Cisco's amended responses).  And the Court cannot be faulted for a correct ruling based on the interrogatory responses before it.  The only "false claim" is Cisco's insistence that it complied with this Court's Order.

There is no reason for the Court to revisit its prior Order because it is crystal clear.  When Judge Schell, who is presiding over the *Albritton v. Cisco* litigation in the Eastern District of Texas, reviewed this Court's Order, he had little difficulty concluding that this Court had found a waiver.  *See* Exh. 3 at 4.  Cisco understood this Court's Order, as evidenced by the measures it took to circumvent the Court's ruling.  Cisco's amended responses removed any reference to the fact that Frenkel relied on communications with counsel, demonstrating it understood the Court's Order enough to craft responses aimed at avoiding it.

Cisco asks the Court to reconsider its ruling because of the "implications" it will have on the *ESN v. Cisco* case pending in the Eastern District of Texas before Judge Folsom.  *See*

3

Response at 5.  This argument is also meritless.  Cisco made the "implications for the *ESN* case" argument in its underlying briefing to the Court.  *See* D.E. 58 at 11.  The Court did not accept Cisco's argument the first time around, and Cisco offers the Court nothing more than the same conclusory allegations of some undisclosed harm to support its request for reconsideration.  As Plaintiff explained in his Reply in support of his Motion to Compel, the jurisdictional issue in the *ESN v. Cisco* case has long been resolved and nothing in the communications concerning the filing of the *ESN* complaint remains case-sensitive information.  *See In re Sealing & Non-Disclosure*, 562 F. Supp. 2d 876, 895 (S.D. Tex. 2008) (Publicity will not threaten the integrity of a proceeding that is no longer active.).  Cisco has not offered the Court a single declaration describing the harm that would befall Cisco should the implicated documents be identified in Cisco's interrogatory responses.[1]  Incredibly, Cisco refused Ward's request that it agree to submit the documents at issue to the Court for *in camera* review.  *See* Exh. 4.  Cisco's failure to offer declarations and refusal to provide the Court with its documents demonstrates what Ward's counsel has long known, nothing in the implicated documents is sufficiently harmful to Cisco to justify keeping that important evidence from Ward.

        Not only did Cisco lose its "implications for the *ESN* case" argument before this Court, it lost the same arguments in the *Albritton* Case.  There, Cisco filed two motions asking Judge Schell to enter a non-waiver order and ordering that the *Albritton* Trial be closed to the public, arguing that disclosure of its privileged documents would cause Cisco some unstated harm in the *ESN v. Cisco* case.  *See* Exh. 5 at 3.  Judge Schell denied Cisco's motions.  *See* Exh. 3 at 4.  Having lost this argument once before this Court and again before Judge Schell, it is disingenuous of Cisco to resurrect it as an excuse for violating the Court's Order.  As Cisco admits, the documents it seeks to shield from discovery will be a matter of public record in

---

[1] Tellingly, Cisco offers a declaration from a Cisco attorney in support of its Response but that declaration is silent about any alleged harm to Cisco should the implicated documents be disclosed in Cisco's interrogatory responses. *See* D.E. 63, Exh. A.

September.  *See* Response at 12, fn. 13.  Judge Schell's Order is firm.[2]  *See* Exh. 3 at 4.  There is no reason to hinder Ward's ability to move forward with discovery in this case to protect documents that Cisco has already produced to *Albritton* and that are inevitably going to be made public.

        B.    Cisco Waived The Privilege It Continues To Advance In Contravention Of The Court's Order.

Although Cisco argues that it has "fully" complied with the Court's Order, it contradicts itself by extensively arguing that the Court's Order was wrong, implying that its non-compliance was justified.  *Compare* Response at 1 (Cisco claims its amended answers "fully respond" and are "totally compliant" with the Court's Order, which found an "at issue" waiver based on Cisco's good-faith defense) with Response at 3 (Cisco contends that it has not asserted a "good faith" defense).  Cisco insists that the Court should ignore Cisco's interrogatory answers, assertions made in its Answer, and the record evidence in the *Albritton* Case and instead simply accept Cisco's assertion that it never asserted a "good faith" or "reliance on advice of counsel" defense.  *See* Response at 3, 10.  Try as it might, Cisco cannot avoid facts well documented in the record, including its original interrogatory responses, all of which support the Court's Order.

        1.    The Court's Prior Order Finding An "At Issue" Waiver Should Control

Although the Response argues that Court's Order was wrongly decided, it offers the Court nothing but conclusory argument to support its position.  Cisco cites no case law regarding "at issue" waiver or "reliance on advice of counsel waiver."[3]  Nor does Cisco honestly evaluate the reasoning behind this Court's Order.  If Cisco were forced to discuss the merits of the motion that the Court actually decided—rather than the thinly-disguised motion to vacate the Court's Order it now advances—it would have no argument to make.

---

[2] Judge Schell gave the parties permission to file one motion for reconsideration of his May 8, 2009 Orders, which included Cisco's two motions seeking non-waiver orders.  Cisco did not request reconsideration of Judge Schell's Orders denying Cisco's requests for the entry of a non-waiver order.  .

[3] If Cisco really wanted to have this Court reconsider its prior ruling, one would think that Cisco would, at a minimum, give the Court citation to authority supporting its arguments.  Although Cisco cites three cases for the unremarkable proposition that relevant documents need not be produced if privileged (Response at 11), it cites no authority addressing the "at issue" waiver underlying the Court's Order nor does it address the relevant case law cited by Ward.

Rather than address the merits of the Court's prior order, the Response seeks only to reargue its lost cause.  Plaintiff should not be forced to reargue the waiver issues already resolved by the Court.  The Court's Order is binding on Cisco.  If Cisco believed the Court had erred, it was required to file a motion for reconsideration instead of simply ignoring the Court's Order.  Cisco cannot be permitted to pick and choose which Court Orders it deems worthy of compliance.  And Ward should not be required to continually brief Cisco's lost motions to force discovery he served on December 30th of last year, that Cisco has been ordered to provide, particularly under these circumstances where Cisco has offered new argument and new discovery responses as a mechanism by which to evade the Court's Order.

> 2.   The Court Correctly Found That Cisco Triggered An "At Issue" Waiver

Cisco's attempt to reargue the underlying motion also fails on the merits.  The Court correctly found that Cisco triggered an "at issue" privilege waiver by interjecting and disclosing Frenkel's reliance on communications with counsel.  *See* D.E. No. 60 at 7-8.

Because the assertion of privilege has an "adverse effect on the full disclosure of the truth, it must be narrowly construed."  *In re Grand Jury Invest. of Ocean Trans.*, 604 F.2d 672, 675 (D.C. Cir. 1979).  As Ward explained in his underlying motion, the attorney-client privilege may be waived when a party places the subject matter of the privileged communication "at issue" in litigation.  *See United States v. Workman*, 138 F.3d 1261, 1263 (8th Cir. 1998).  The "at issue" waiver, at its core, is designed to prevent the fundamental unfairness of allowing a party to rely on communications with counsel to benefit its cause, while at the same time depriving its adversary of the evidence needed to test, challenge, and rebut its claims.  *See id.* at 1263-64 (client privilege cannot be used as both a shield and a sword, and a party cannot claim in his defense that he relied on communications with counsel without permitting his opponent to explore the substance of that claim.); *Burress v. Union Pac. R.R.*, 2007 U.S. Dist. LEXIS 1749, at *4-5 (E.D. Ark. Jan. 8, 2007) ("[A] defendant may not use the privilege to prejudice his opponent's case by disclosing selected communications for self-serving purposes. Thus, the privilege may be waived when a party asserts a claim that, in all fairness, requires examination of

6

each party's protected communications."), attached hereto as Exh. 6.

The Eighth Circuit has identified three different non-exclusive factual situations under which "at issue" waiver is commonly found, including (1) when a party testifies concerning portions of the attorney-client communication, (2) when a party places the attorney-client relationship directly at issue in a litigation; and (3) when a party asserts reliance on an attorney's advice as an element of a claim or defense. *See Sedco International, S. A. v. Cory*, 683 F.2d 1201, 1206 (8th Cir. 1982). An "at issue" waiver is broader than (although it includes) waiver based on reliance on advice of counsel. *See Workman*, 138 F.3d at 1263 (<u>one</u> way privilege may also be implicitly waived is by raising attorney advice as a defense)(emphasis added). Here, Cisco has triggered an "at issue" waiver under all three common factual scenarios:

Cisco has provided sworn testimony in the *Albritton* Case regarding Frenkel and Cisco's communications with legal counsel. As demonstrated by the evidence cited in Ward's opening brief—evidence that the Response never addresses—Frenkel and Cisco have repeatedly told the Texas Court that Frenkel relied on communications with Baker Botts. *See* D.E. 61 at 10-13 (Ward's opening brief chronicling Cisco's admissions in the *Albritton* Case). Cisco cannot, as it contends here, selectively waive privilege for one litigation opponent but shield those communications from another litigation opponent.[4]

A party seeking to withhold relevant evidence under a claim of privilege must treat those communications as if they were "crown jewels." *See In re Sealed Case*, 877 F.2d 976, 980 (D.C. Cir. 1989). The law will only condone withholding relevant information from the finder of fact if that information is truly held in confidence. Once privileged information is disclosed, even if done so in another case, and even if done under a confidentiality agreement, the justification for keeping those communications  hidden is gone. *See In re Chrysler Motors Corp. Overnight Evaluation Program Litigation*, 860 F.2d 844, 847 (8th Cir. 1988) (waiver by voluntarily

---

[4] Nor can the fact that Cisco disclosed some of the communications with counsel under a confidentially agreement reached with Albritton be the basis for protecting information it voluntarily disclosed in the *Albritton v. Cisco* Case. *See In re Chrysler Motors Corp. Overnight Evaluation Program Litigation*, 860 F.2d 844, 847 (8th Cir. 1988). Even if it could, the communications at issue were openly disclosed in Cisco's motion for summary judgment, the declaration that Frenkel offered in support of that motion, and in unsealed deposition testimony.

disclosing evidence to litigation adversaries, even though disclosure was made under confidentiality agreement); *Bowne of New York City, Inc v. AmBase Corp*., 150 F.R.D. 465, 479-481 (S.D.N.Y. 1993) (a party who for tactical reasons chooses to permit discovery of privileged information, even if done under the terms of an agreement preventing other subject-matter waiver, waives its privilege because it cannot be permitted to pick and choose among its opponents, waiving the privilege for some but obstructing others.); *Adams Land & Cattle Co. v. Hartford Fire Ins. Co*., 2008 U.S. Dist. LEXIS 4089, at *6 (D. Neb. Jan. 18, 2008) ("turning information over to litigation adversary, even with the stipulation that the confidentiality should be maintained, waives the privilege"), attached hereto as Exh. 7.   The privilege Cisco claims has been lost by disclosing documents and testimony to Albritton.  Cisco cannot now withhold that evidence from Ward.

Cisco waived privilege when it put Frenkel's communications with counsel at issue in ***this case***.  It did so when it served its first signed interrogatory responses making the express claim that Frenkel relied on privileged communications with legal counsel. *See* Exh. 1 at 7. Cisco's interrogatory responses served as the basis of this Court's Order finding waiver.  There is nothing Cisco can do to unring the waiver bell.  *Wells v. Liddy*, 37 Fed. Appx. 53, 66 (4th Cir. 2002) (a party may not reattach the privilege just because the issues in the case have "shifted."). Cisco put communications with counsel at issue again in its amended responses.  *See* Exh. 2 at 48, no. 4.  Although Cisco's "amended" responses take out the express statement that Frenkel relied on privileged communications with legal counsel, they do not change the ***substance*** of Cisco's claim.  Cisco still contends that Frenkel relied on information provided by Baker Botts communicated to him by either Mallun Yen (his boss) or Marta Beckwith (his Cisco colleague). *See* Response at 10; Exh. 2 at 48, no. 4.

Cisco would have this Court believe it recaptured its lost privilege by identifying only Frenkel's ***direct*** communications.  Cisco claims that because Frenkel did not hear the results of Baker Botts's call to the court clerk ***directly*** from Baker Botts, Cisco need not provide that

information to Ward.[5]  What Cisco fails to recognize is the "at issue" waiver is a "***subject-matter***" waiver; not a conversation-by-conversation waiver.  *See Wells,* 37 Fed. Appx. at 64 ("testimony as to a *part of any communication* waives the whole communication)(emphasis in original), *citing United States v. Cote*, 456 F.2d 142, 145 (8th Cir. 1972)(disclosure waives the privilege not only to the transmitted information but also as to subject matter); *see also Workman*, 138 F.3d at 1263 (same).  The fact that Frenkel relied on information he obtained from Baker Botts puts at issue the entire subject matter of the information he received, regardless of how many people touched the communications before they reached Frenkel.  The full scope of what Baker Botts learned, how that information was passed to Frenkel, and what Frenkel and Cisco understood that information to mean at the time Frenkel published each of the accused posts falls within the scope of the subject-matter waiver already found by the Court.  *See Wells*, 37 Fed. Appx. At 64; *Cote*, 456 F.2d at 145; *Trestman v. Axis Surplus Ins. Co*., 2008 U.S. Dist. LEXIS 40687, at *14 (E.D. La., Apr. 29, 2008) (partial disclosure of communications critical to alleged defenses of "good faith" triggered "at issue" waiver for entire subject-matter of disclosed communications), attached hereto as Exh. 8.  Nothing in Cisco's "amended" responses changes the fact that it has triggered a subject-matter waiver in this case.

Cisco has failed to offer the Court any real explanation of why it should reconsider its Order.  Instead, Cisco seeks to portray Ward's counsel as unreasonable[6] for not ignoring the facts

---

[5] Interestingly, Cisco never took that position in the *Albritton* Case (where the same communications were at issue) and where Cisco was quick to argue that Frenkel ***relied*** on information he received from Baker Botts.  *See* D.E. 61 at 10-13.  To the contrary, Cisco repeatedly cited Frenkel's reliance on communications with Baker Botts as affirmative evidence of his lack of malice.  *See id.*  Cisco only discovered its "indirect" reliance theory after this Court's Order issued.

[6] Cisco disingenuously portrays the parties' discovery hotline call during the Powell deposition as a failed attempt by Ward's counsel to argue this issue to Magistrate Judge Ramirez.  The impetus for Plaintiff's call to the Court was Cisco's counsel's preparation of Powell (a third-party witness) for her deposition in this case.  During initial questioning, Powell testified that she was not represented by Jackson Walker but that one of Jackson Walker's attorneys, Crystal Parker, had participated in preparing her for deposition.  *See* Exh. 9 (Powell Depo.) at 8:6-25.  Ward's counsel sought to question Powell, about her communications with Cisco's counsel.  For the first time, Cisco and Baker Botts claimed to have a joint defense agreement.  *Id.* at 12:15-15:8.  Ward's counsel pointed out that Cisco has refused to produce discovery in this case claiming that Baker Botts is a third-party, and that she thought it improper for Cisco's counsel to be preparing third-party witnesses, particularly where Cisco wasn't represented by Baker Botts in ***this case***.  *Id.* 15:11-18:7; Exh. 10 at 8 (Cisco's response to RFA 31 & 32).  That issue prompted a call to the court.  When Cisco argued the joint defense privilege, Ward's counsel explained that Ward believed that there had been a subject-matter waiver in this case.  Judge Ramirez said that she thought the issue

9

and the record and blindly accepting Cisco's self-serving assertions that it wasn't relying on communications with counsel. *See* Response at 3, 9. Plaintiff is not required to accept Cisco's arguments, particularly where they are so squarely contradicted by the record. One would hardly expect Cisco' counsel to admit there had been a waiver, and no such intention or admission is required. *See Ocean Transp.*, 604 F.2d at 675 ("An intent to waive one's privilege is not necessary for such a waiver to occur. A privileged person would seldom be found to waive, if his intention not to abandon could alone control the situation.")(internal citation omitted). Here, the record speaks much louder than Cisco's words.

The law and the facts support this Court's Order, which, in any event, is final and binding on Cisco. Cisco has offered the Court nothing that compels a different result.

### 3. Cisco's Belated Arguments Do Not Undermine The Court's Order

The Response advances new legal arguments aimed at overturning the Court's Order, or at least to justify Cisco's non-compliance with the Order. If the Court is inclined to revisit the issue, it will find that Cisco's new arguments are no more meritorious than its first failed arguments.

### a. The Legal Issues In This Case Support The Court's Order Finding An "At Issue" Waiver

Cisco argues that the "actual malice" standard does not permit waiver in this case because it requires a showing that Frenkel published his accusations about Ward with knowledge that they were false or with reckless disregard of the truth. *See* Response at 3. It is not entirely clear to Plaintiff what Cisco hopes to gain from this argument. The definition offered by Cisco supports the Court's Order. If, as Cisco contends,[7] Ward must prove that Frenkel knew at the

---

required briefing, but would give the parties a ruling if they would agree to be bound by her decision. *Id.* at 19:23-20:13. Because the issue had already been briefed to this Court, Plaintiff thought it appropriate for this Court to resolve the issue. The Court's Order issued three days later.

[7] Cisco seeks to turn Ward's briefing to the Court about what Cisco's has alleged in this case into some sort of binding admission that Ward "concedes he is a public figure." Response at 4, 10. Cisco's argument is too clever by half. There is nothing in Ward's argument that can even remotely be read as an admission that he is a "public figure," as Cisco well knows. Ward's argument is based on ***Cisco's contentions*** in this case; contentions that Cisco will ultimately lose but for which Ward is nonetheless entitled to discovery to prepare his case. Cisco's attempt to turn briefing about Cisco's discovery violations into a "gottcha" argument to influence the Court's view of a legal issue it will ultimately have to decide demonstrates the type of absurd positions taken by Cisco in this case.

time he posted the accused articles that they were untrue or that he acted recklessly about the truth, it would seem that the information Frenkel obtained from Baker Botts (which explained that the date on the *ESN* docket was the result of a software error corrected by the court clerk and not a conspiracy to alter governmental records) is even more relevant and important to the issues in this case. *See* Exh. 9 at 88:15-24. Cisco has put those facts at issue in both of its interrogatory responses. Thus, the information Cisco is withholding as "privileged," is compelling evidence that will persuade the jury that Cisco acted with malice. That information is exclusively in Cisco's control and Ward can get it from no other source. Far from undermining the Court's Order, Cisco's "actual malice" argument demonstrates why this Court's Order was correct.

Cisco also argues that Ward's argument is misguided because "actual malice" does not mean "ill will, desire to injure, or political or profit motive." *See* Response at 10. Again, Cisco's argument misses the mark. Facts demonstrating Cisco's motive, intent, negligence, intentional disregard of contradictory evidence, failure to verify facts, overstating the facts, the cumulative nature of the evidence, along with appropriate inferences to be drawn from those facts is all evidence that Ward can use to prove that Cisco (and Frenkel acting on its behalf) acted with "actual malice." *See Harte-Hanks Commc'ns, Inc. v. Connaughton*, 491 U.S. 657, 668 (1989). That evidence is also clearly relevant to the punitive damages Ward seeks. Ward is not limited to discovering only those things that Cisco unilaterally deems relevant. Because the responsive information is not privileged, Ward is entitled to discover all information reasonably calculated to lead to the discovery of admissible evidence to support Plaintiff's theories of the case. *See* Fed. R. Civ. P. 26(b).

Cisco argues that finding a waiver based on reliance on advice of counsel is only appropriate in a libel case when an attorney has performed a prepublication review of the article. *See* Response at 5, fn. 6. Cisco's argument is not supported by the law, including the single case it cites for that position; *Kemart Corp. v. Printing Arts Research Lab, Inc.*, 269 F.2d 375 at n.10 (9th Cir. 1974). *See* Response at 5, fn. 6, 9. Cisco mischaracterizes the holding in *Kemart*. The *Kemart* Court specifically found that the "advice of counsel defense" was not before the Court.

*Id.*  And, the Court certainly didn't find that the only time an advice of counsel defense is asserted in a libel case is when there has been a prepublication review, as represented by Cisco. *See* Response at 5 at fn.6.  Moreover, Cisco ignores the broader "at issue" waiver that formed the basis of the Court's Order.  Waiver can be found in a defamation case, just like in any other case, when a party attempts to use its claims of privilege as both a shield and a sword.  *Wells*, 37 Fed. Appx. at 66.

       b.  **Cisco Has Affirmatively Placed Communications With Counsel "At Issue"**

       Cisco argues that no waiver can be triggered in this case because Cisco has not asserted an ***affirmative defense*** that puts at issue Frenkle's communications with counsel.[8]  *See* Response at 3-4.  Incredibly, Cisco seeks to convince the Court that unless the precise words "good-faith" or "reliance on advice of counsel" appear word-for-word in Cisco's Answer, there can be no waiver.  *See* Response at 8.  ("One would think that if Cisco was asserting a "good faith" defense that the words "good faith" would be somewhere under the heading 'Affirmative Defenses and Other Defensive Matters.  ***The words*** do not appear.") (emphasis added).  As the Court well knows, in deciding what issues are raised in pleadings, the Court is not limited to the exact language chosen by Cisco.  Cisco's argument to the contrary stretches credibility.

       An affirmative defense need not be pleaded before an "at issue" waiver can be found. The Eighth Circuit's opinion in *Workman* is instructive.  There, the Court reviewed a trial court's finding that a criminal defendant waived privilege by relying on communications with counsel. The Court expressly acknowledged that the State carried the burden of proving that Workman knowingly and intentionally converted government funds when he cashed pension checks sent to his deceased father.  138 F.3d at 1264.  Workman sought to negate the State's case by arguing that he believed it was permissible for him to cash the checks based on information provided by his lawyer.  Although the Court expressly acknowledged that the State carried the burden of proof, the Court had no trouble concluding that Workman's use of privileged communications in

---

[8] Of course, this Court's Order already found waiver; a fact ignored in Cisco's argument.

his defense waived privilege. *Id*. at 1264-65. Other courts have specifically held that the position that Cisco advances here is incorrect. *See Burress*, 2007 U.S. Dist. LEXIS 1749, at *3-4 (Exh. 6) (although a party must affirmatively raise a factual or legal issue that involves privileged communications in order to trigger waiver, the "issue need not be raised as an affirmative defense or by the party's pleadings."). Tellingly, Cisco does not cite a single authority in support of its "affirmative defense is required" argument. Moreover, although *Workman* and *Burrell* were both cited in Plaintiff's opening brief, the Response makes no attempt to distinguish those cases.

Even if an affirmative defense is required—and it's not—Cisco has pleaded affirmative defenses that place its good faith reliance on information received from legal counsel directly at issue in this case. Paragraph 25 of Cisco's Answer pleads that Cisco is immune from civil liability pursuant to Section 16-63-504 of the Arkansas Code. *See* Exh. 11 at 9. Section 16-63-504 reads:

> "Any person making a privileged communication or performing an act in furtherance of the right of free speech or the right to petition government for a redress of grievances under the United States Constitution or the Arkansas Constitution in connection with an issue of public interest or concern shall be immune from civil liability, ***unless a statement or report was made with knowledge that it was false or with reckless disregard of whether it was false***."

A.C.A. § 16-63-504. (emphasis added).

Additionally, Paragraph 27 of Cisco's Answer specifically pleads an affirmative defense of "privilege." *See* Exh. 11 at 9. A "privileged communication" is defined in Section 16-63-503 with the "actual malice" standard set forth the First Amendment case law. "A "privileged communication" ***does not include a statement or report made with knowledge that it was false or with reckless disregard of whether it was false.***" A.C.A. § 16-63-503. (emphasis added); *Harte-Hanks Commc'ns*, 491 U.S. at 659. Cisco knows that it will not have a statutory privilege defense to assert if the evidence demonstrates that it knew Frenkel's accusations where false or if it acted with reckless disregard of their falsity. Cisco's interrogatory responses identifying the

13

facts supporting its immunity and privilege affirmative defenses specifically list lack of malice as evidence supporting those defenses.  *See* Exh. 12 at 16-17, 23.  Cisco's affirmative defenses put its good faith directly at issue in this case.

Cisco seeks to mislead the Court into believing that because its affirmative defenses do not use the buzz words "good faith," it has not put good faith at issue.[9]  But controlling Eighth Circuit authority on this point—again, none of which is cited by Cisco—demonstrates the sophistry of Cisco's argument.  "Good faith" is the flip-side of "actual malice."  Under Arkansas law a communication is covered by qualified privilege "***when it is made in good faith***."  *Suggs v. Stanley*, 324 F.3d 672, 679 (8th Cir. 2003) (emphasis added). The privilege is lost if the speaker "***is motivated by malice*** rather than by the public interest that calls the privilege into being."  *Id.* (emphasis added).  It follows that a party who acts in good faith, does not act with malice, and vice-versa.  Cisco's affirmative defenses of immunity and privilege affirmatively put at issue whether its libelous accusations about Ward were made in "good faith" or "without actual malice."

Cisco wants to argue to the jury that Frenkel's statements were true and made in good faith, in part because he learned from legal counsel that ESN's local counsel called the Court clerk—the very events that he discusses and calls conspiratorial in the accused articles—while at the same time limiting Ward's opportunity to fully explore the subject-matter necessary to rebut Cisco's arguments.  Cisco cannot be permitted to lift the privilege veil only so far as to let enough evidence seep through to support its cause, but lower the veil to the hide the evidence of Cisco's malice that Ward needs to rebut Cisco's case.

C.  Cisco's Amended Interrogatory Responses Deliberately Circumvent The Court's Order

---

[9] Cisco knows it has put its "good-faith"/lack of "actual malice" at issue in this case because that was the issue presented in *Kemart Corp. v. Printing Arts Research Lab, Inc.*, 269 F.2d 375 at n.10 (9th Cir. 1974), cited in the Response.  *See* Response at 5, fn. 6.  In *Kemart*, the Court found that Defendant's affirmative defense required that it prove that it acted in "good faith" or the show the "absence of malice."  *Id.*  In support of its affirmative privilege defense, Defendant argued that it believed its statements to be true based on information it received from counsel, the same way Cisco has here.  *See* Exh. 11 at 9; Exh. 12 at 16-17, 23.

The only issue legitimately before the Court is whether Cisco complied with this Court's Order. Cisco does not dispute that the documents Ward asked Cisco to identify are relevant. *See* Response at 10. Nor does Cisco dispute that it no longer has a privilege objection to assert. *See* Response at 1, fn. 1. Instead, Cisco is left with the singular argument that it has provided the "full and complete" interrogatory responses the Court ordered. In an attempt to hide its noncompliance, the Response spends pages discussing the information that Cisco chose to include in its newly crafted amended responses. *See* Response at 2-8. But the salient question is not what is included in Cisco's answers, but what is missing. The information Cisco withheld demonstrates its clear intent to violate the Court's Order.

      1.   Cisco Failed To Provide The "Full And Complete" Response To Interrogatory No. 5 Ordered By The Court

Ward served interrogatory No. 5 to obtain the facts underlying Cisco's claim that Frenkel acted in good faith when he posted each of the posts defaming Ward. Interrogatory No. 5 asked Cisco to:

> "Identify all information relied upon by Richard Frenkel in making the statements contained in the Troll Tracker October 17, 2007, October 18, 2007, and revised October 18th posts, and separately and for each piece of information identify the date and time the information was received by Frenkel, identify ***all documents concerning the information received***, identify the nature of any communication involved including the date, time, ***and all person involved in the communication***, and identify ***all documents*** concerning that communication. (emphasis added).

Cisco's Answer stated:

> "Richard Frenkel relied on documents on the official court website, the official court docket, correspondence he received from various individuals, ***privileged discussion with legal counsel***, legal research, and his own experience with the electronic filing system. See documents produced by Cisco. Responsive privileged documents have been logged in Cisco's privilege log, which has previously been provided."

*See* Exh. 1 (Cisco's Responses) at 7.

Ward moved for a complete answer to Interrogatory No. 5, including an identification of ***all persons*** involved in the communications and ***all documents*** concerning those communications. The Court found that Cisco's reliance on communications with legal counsel

put at issue the facts sought in Ward's interrogatory and that Cisco must provide a full and complete response. *See* D.E. 60 at 7.

Cisco did not provide a full and complete response; it narrowed its response and then refused to provide the critical information the Court ordered it to produce. Cisco's amended response identifies all of the same information Cisco identified in its original response with the notable exception of any privileged discussions with legal counsel, Baker Botts. *See* Exh. 2 at 45-50.

In place of Cisco's express statement of reliance on legal counsel, Cisco substituted an oral conversation that occurred between either Yen or Beckwith[10] and Frenkel, wherein Yen or Beckwith told Frenkel that Baker Botts learned that the clerk's office corrected the docket because of an error in the Court's electronic case filing software. *See* Response at 10 (Frenkel "had a conversation with either Mallun Yen or Marta Beckwith, who told him about Powell's conversation with the court clerk."); Exh. 2 at 48, no. 4. Although Cisco knows that Yen or Beckwith discussed Baker Botts's findings with Frenkel, Cisco's interrogatory response provides a generic description intended to hide that Frenkel ***relied*** on the information he received, albeit indirectly through Yen or Beckwith. *See* Exh. 13 (Frenkel Depo.) at 127:3-23; 121:13-19. Also absent from Cisco's amended response is an identification of any of the crucial formerly privileged communications that the Court ordered it to identify.

Cisco has offered a few strained excuses for its failure to comply with the Court's Order. None of them have any merit.[11]

First, Cisco defends its decision to rewrite its interrogatory responses, claiming that it had no choice and that amending interrogatory responses is routine in litigation. *See* Response at 2.

---

[10] Cisco contends that its responses did not include a concrete identification of the person from whom Frenkel learned the information obtained by Baker Botts (Yen or Beckwith) because Frenkel doesn't remember who he talked to. *See* Response at 7, fn. 8. But Cisco never says whether Yen or Beckwith—persons still employed by Cisco—remember the conversation. Cisco's narrowly-parsed answer demonstrates the extent to which Cisco will go to avoid giving Ward discovery in this case.

[11] Cisco insinuates that it is somehow excused from its inconsistent interrogatory responses because Frenkel "left Cisco's employment before these interrogatories were served." *See* Response at 3. The Court has already overruled Cisco's objection that Frenkel is outside of Cisco's custody and control. *See* D.E. 60 at 7-8.

While it is true that interrogatory responses are routinely *supplemented* to include additional information, they are not routinely *"superseded"* to avoid a Court Order. *See* Exh. 2 at 1. If that were true, every court order would become an advisory opinion and nothing more than a roadmap for litigants seeking to thwart discovery. Cisco cannot circumvent this Court's Orders by rewriting the facts each time it loses a discovery motion.

Second, Cisco argues that under its newly disclosed and narrowly-parsed definition of "relied," Frenkel did not rely on communications with legal counsel. Cisco makes that assertion for the very first time in the nearly two years this case and the *Albritton* Case have been litigated, and has done so only after this Court's Order issued.[12] But, facts are stubborn things. They don't just go away because Cisco decides not to include them as ordered by the Court. It is a fact that Frenkel relied on information he received from Baker Botts. *See* D.E. 61 at 11-12. Cisco's failure to include that responsive fact violates Fed. R. Civ. P. 37(a)(4) (an evasive or incomplete disclosure, answer, or response must be treated as a failure to disclose, answer, or respond). Although Cisco contends that "what Frenkel relied upon and what he knew are two different things" (Response at 2) it never explains why Cisco offered sworn testimony in the *Albritton* Case saying Frenkel "relied" on communications with counsel, why it understood the word "relied" in its original responses, or why it has come to a different understanding of the word "relied" only after this Court's Order issued.

Third, Cisco appears to be making the argument that because Frenkel received the information via an indirect communication, it is not responsive. Of course, there is nothing in Ward's interrogatory that limits responsive information to that which Frenkel received *directly*. To the contrary, the interrogatory expressly asks for an identification of *all persons* and *all documents*. Under this Court's Order, Cisco was required to identify all information, including *all persons* involved in and *all documents* concerning what Frenkel learned from Baker Botts,

---

[12] Cisco makes only the conclusory statement that "Cisco's answer to interrogatory 5 is accurate as to what he relied upon in writing the subject articles." *See* Response at 3. The Declaration Cisco provides from Frenkel never swears that his representations in the *Albritton* Case are "consistent" with Cisco's interrogatory responses.

including each person in the string of communications through which Frenkel learned information supplied by Baker Botts. For each of those communications, Cisco was required to indentify **all documents**. Cisco has done none of that. Instead, it intentionally narrowed its response to the last communication in the daisy-chain and then refused to provide responsive information outside of its narrowly confined answer.

Fourth, Cisco seemly believes that by including only Yen or Beckwith's conversation with Frenkel, it has avoided the subject-matter waiver ordered by the Court. Not so. Cisco's subject-matter waiver is just that; a **subject-matter** waiver. It is not, as Cisco seemingly believes, a communication-by-communication waiver. Even in its post-Order responses to interrogatories, Cisco admits that Frenkel obtained information from Baker Botts (via Yen or Beckwith) that he used in making his accusations about Ward. *See* Response at 10; Exh. 2 at 48, no. 4. Yen or Beckwith learned from Baker Botts that ESN called the court clerk and that there had been an error in the docket entry. Frenkel's reliance on that information triggers a **subject-matter** waiver regarding what Baker Botts told Cisco and Frenkel. Nothing in Cisco's amended responses, changes that fact. Cisco was required to provide all communications regarding information learned from Baker Botts and that information is missing from its responses.

Cisco half-heartedly attempts to defend its indefensible "indirect reliance is not reliance" position claiming that only Frenkel's state of mind is relevant. Cisco ignores that Cisco is the defendant in this case. Ward has asserted, and the record supports that Mallun Yen and John Noh—both Cisco employees—participated in, encouraged, suggested, and ratified Frenkel's tortious conduct. *See* Exh. 14. What Yen, Noh, and other Cisco employees knew when they prodded Frenkel to defame Ward is relevant to the truth, fault, and punitive damages issues in this case.

Finally, Cisco has told the Court that even if the Court's privilege finding holds, it has identified all responsive documents.[13]  Cisco's argument is belied by facts it doesn't want the

---

[13] Cisco suggests that Plaintiff took the conflicting position of requiring Cisco to catalog its documents, rather than produce them, and has now flopped on that issue by seeking a production of documents. *See* Response at 16.

Court to have.  As is obvious from Cisco's privilege log, Frenkel had numerous communications with counsel during the time-frame relevant to the issues in this case.  Those communications should have been listed in Cisco's interrogatory answers.  The Response takes Ward to task for what it calls Ward's "attempt to create speculation that Cisco withheld responsive documents by referring to Cisco's privilege log."  *See* Response at 7, fn. 9.  Ward sought to alleviate Cisco's concern by asking Cisco to agree to an *in camera* review of its documents.  Cisco refused.  *See* Exh. 4.  Cisco knows that if the Court where to see the documents it would likely find that Frenkel had direct communications with Baker Botts that fall within the subject-matter waiver ordered by the Court.  Cisco would not be able to explain why those documents are not listed in Cisco interrogatory response.  *See* Exh. 2 at 45-50.

Cisco's attempt to redefine the word "relied"—a word that it used in the *Albritton* Case and in its own interrogatory responses—and to leverage its new definition to exclude all but one direct communication between Frenkel and counsel demonstrates its contempt of the Court's Order.

### 2.   Cisco Refused To Provide The "Full And Complete" Response To Interrogatory No. 6 As Ordered By The Court

Cisco also plays games in defending its response to Interrogatory No. 6.  *See* Response at 4.  Ward's Interrogatory No. 6 asked:

> "identify the date and time that Cisco first became aware that ESN claimed that the filing date of the complaint as listed on the court's docket was an error, to describe the circumstances under which Cisco obtained that knowledge including **all** persons involved, **all** communications involved, the persons involved in **each** communication, the **content** of the communication, what prompted the communication, the form of the communication, and to identify **all documents** concerning **Cisco's knowledge**.  *See* Exh. 1 at 7.  (emphasis added).

Cisco's Answer stated:

> "Richard Frenkel learned that ESN claimed that the filing date of the complaint on the official court docket was an error on October 18, 2007, but he does not recall the time, persons, involved, or exact content of the communication.  See documents produced by

---

Cisco's argument is disingenuous.  Ward objected to Cisco's interrogatory responses which essentially stated "go find the documents we produced."

Cisco.  Responsive, privileged documents have been logged in Cisco's privilege log, which has previously been provided.  *See* Exh. 1 at 7-8.

Cisco's new "amended" answer states:

> Cisco first became aware that ESN was claiming that the filing date of the complaint as listed on the Court's docket was an error when it was served with ESN's Motion to Enjoin filed on October 18, 2007. Cisco does not recall when it was served with that pleading. Also on October 18, 2007, at an unknown time, ***Cisco's counsel, Baker Botts, most probably through Jillian Powell, learned from a court clerk that Eric Albritton was claiming the filing date was in error.***  Circumstances under which Cisco obtained that knowledge: ESN filed a Motion to Enjoin Defendant Cisco and Linksys From Prosecuting Later Filed Parallel Litigation In Connecticut. ESN claimed, in that document, that the October 15, 2007 date on the docket was in error. Cisco does not know what person at the company first saw that document.  Persons Involved: Unknown. Communications Involved: ESN's Motion to Enjoin.  *See* Exh. 2 at 50.

It is clear what is missing from Cisco's response:  an identification of all persons involved in passing the information Jillian Powell learned from the court clerk on to Cisco, and ultimately onto Frenkel.  The complete response ordered by the Court would have, at a minimum identified Jillian Powell, Kurt Pankratz (Powell's boss), either Mallun Yen or Marta Beckwith, and then Frenkel.  Not only does Cisco not identify the persons involved, it doesn't provide a description of the content of the communications.  And, most tellingly, although Cisco concedes that it no longer has any privilege objection to assert, its amended response fails to identify a single document that its earlier response states exist, are "responsive" but have been "logged on Cisco's privilege log."  *See* Exh. 1 at 7-8.

Cisco argues that it didn't needed to respond with information about what Jillian Powell learned from the Court clerk because the interrogatory asked Cisco when it learned that **ESN** was claiming there had been an error; not when **ESN's counsel** made that claim.  *See* Response at 4. Cisco suggests that it only gratuitously included the fact that Baker Botts learned from the clerk that ESN's counsel claimed that there was an error.  Cisco's Response drops a cryptic footnote stating "it is sometimes the case that lawyers take preliminary positions that the client later decides not to take.  The interrogatory asked about ESN but since Albritton was its counsel we included that information as well for completeness."  *See* Response at 4, fn. 5.  Cisco's

distinction between Cisco and its lawyers is not only a feeble attempt to explain away its noncompliance, it also finds no support in the law.  *See Springdale Memorial Hosp. v. Director of Labor*, 34 Ark. App. 266, 267-268 (Ark. Ct. App. 1991) (is a rule of general application that a client is bound by the acts of his attorney); *Ocean Transp*., 604 F.2d at 674 (lawyers responses on behalf of client are binding on client).

What is remarkable about Cisco's position with respect to Interrogatory No. 6 is that it expects the Court to accept Cisco's disingenuous and hair-splitting response, which rests on the incredible assertion that a responsive answer as to "ESN" does not include its "ESN's counsel." Cisco first learned that ESN claimed that the filing date of the complaint as listed on the Court's docket was incorrect from Baker Botts, who reported back to Cisco the contents of Powell's conversation with the court clerk.  No amount of wordsmithing can change that fact.  But, as Cisco knows, if it were to admit that Cisco first learned about the error through Powell, then Cisco would have to identify documents concerning Powell's call to the court clerk.  Those documents would include an email Ms. Powell wrote memorializing her conversation with the Court clerk..  *See* Exh. 9 (Powell Depo.) at 86:3-96:6.  Cisco has withheld that document in this case under its now defunct claim of privilege.  Since it no longer has a privilege to assert, if it provided a true response to Ward's interrogatory it would have to produce that document.  Thus, it has offered the Court an argument that "ESN" does not mean "ESN's counsel" to justify its noncompliance.  The Court should not condone such blatant gamesmanship.

To deflect the Court away from the fact that documents concerning Powell's call to the clerk have not been identified in Cisco's response to Interrogatory No. 6, Cisco insists that it "has not claimed privilege with respect to [Powell's] conversation with the clerk."  *See* Response at 4.  Cisco cites the fact that Ms. Powell was questioned at her deposition about the conversation with the court clerk as evidence that Cisco has not withheld privileged information.  *Id*.  What Cisco fails to tell the Court is that it would not let Powell see or testify about the email memorializing her call to the Court clerk, claiming it was privileged.  *Id*.  That document clearly falls within the subject matter of what Baker Botts learned and reported back to Cisco/Frenkel

and it should have been identified in response to Interrogatories  No. 5 and 6.  It wasn't.

Demonstrating its intent to violate this Court's Order, Cisco argues that even if the communications are relevant, that doesn't mean that they are discoverable because they are properly withheld from production when they are privileged.  *See* Response at 11.  The problem with Cisco's argument is that the Court has found Cisco's privilege has been waived, yet those communication are still absent from Cisco's interrogatory responses.  Cisco's failure to include all discoverable information in its response to Interrogatory No. 6 violates the Court's Order.

Cisco cannot pick and choose what information known to Frenkel gets introduced in this case.  If Cisco intends to argue that Frenkel's statements were true and made without malice based on part in what he was told by legal counsel, Ward is entitled to discover ***all*** facts needed to rebut Cisco's claims.  Cisco's selective disclosure of information is exactly the kind of "shield and sword" use of privilege that the "at issue" waiver is designed to prevent.  *See Workman*, 138 F.3d at 1264.

D.  Ward Is Not Required To Accept The Broken *Albritton* Agreement

The Response argues that this Court should force Ward to accept the same broken agreement with Cisco concerning the disclosure of Cisco's confidential documents that it struck with Albritton.  Cisco's eagerness to adopt the *Albritton* Agreement is understandable, but not for the reasons Cisco states in its Response.  Cisco would have the Court impose the *Albritton* Agreement because that agreement permitted Cisco to withhold relevant discovery that it was unwilling to produce.  *See* Response at 12 (Cisco suggests that "a proper way" to handle the privilege issues in this case is to force Ward to enter into an agreement with Cisco identifying the scope of production all parties are ***"willing"*** to make regarding what would otherwise be privileged "documents.").  Ward cannot agree to let Cisco decide what documents get produced according to Cisco's terms.[14]

In the *Albritton* Case, Albritton and Cisco agreed that both parties could produce

---

[14] Cisco's refusal to even identify documents in its Interrogatory response demonstrates the futility of any such agreement.

documents that it deemed relevant but for which it had claimed privilege and those documents would be hid from public view under the blanket Protective Order.  The Agreement covered the production of ***documents*** only, and prevented the parties from seeking other discovery by arguing subject-matter waiver.  *See* Exh. 3 at 2-4.  Plaintiff's counsel believes that the *Albritton* Agreement permitted Cisco to withhold documents on its privilege log that appear to Plaintiff not to be privileged.  That is not to say that Cisco doesn't believe that the documents it withheld in the *Albritton* Case are privileged, much as it continues to wrongly assert privilege here.  But, because the *Albritton* Agreement precluded Plaintiff from arguing subject-matter waiver, there was little Albritton could do to challenge the designations of the documents Cisco withheld.  . Ward cannot agree to let Cisco decide which documents it is "willing" to produce in this case. That is an open invitation for Cisco to invoke the same "shield and sword" disclosures that prompted this motion.

Because the *Albritton* Agreement by its terms was limited to ***document*** production, during depositions in the *Albritton* Case Cisco continued to assert privilege objections to questions covering the same ***subject-matter*** as the documents.  *See e.g.*, Exh. 15 (Beckwith Depo) at 14:22-16:13; 50:18-56:2; Exh. 16 (Pankratz Depo.) at 5:20-7:11.  In this case, the Court has found a ***subject-matter*** waiver.  That waiver will permit Ward to ask deponents about the subject-matter of Cisco's claims of good-faith.  If the Court were to impose the *Albritton* Agreement on Ward, the result would be that the ***subject-matter waiver*** now in place would be replaced by the unworkable *Albritton* ***limited document*** waiver, resulting in an endless number of deposition disputes when Ward's counsel asks Cisco witnesses about information they learned from Baker Botts.  Moreover, Cisco would rely on the narrowness of the waiver, as it did in the *Albritton* Case, to direct witnesses not to answer questions that fall within the subject-matter of the waiver Cisco has triggered by putting its communications with counsel at issue in this case.

Then, Cisco attempted to use the *Albritton* Agreement as a vehicle by which to close the *Albritton* Trial to the public.  *See* Exh. 5.  That issue was extensively briefed to Judge Schell and he ultimately denied Cisco's request.  *See* Exh. 3.  Ward's reputation has been publicly tainted

by Cisco and he seeks public vindication.  He will not agree to the *Albritton* Agreement because Cisco will use it to seek a closed-trial in this case.

      Finally, Cisco used the *Albritton* Agreement as a free pass to take pot shots at Albritton and Ward in the press.  Albritton agreed to withdraw his designation of documents under the Protective Order so that Cisco's Motion for Summary Judgment would not have to be filed under seal.  Albritton sought to file his response publicly but Cisco would not agree.  Thereafter, Cisco made public statements about the pending summary judgment motions, claiming that Frenkel's accusations were true and that Ward and Albritton brought their lawsuits to "curry favor" with the local judges.  *See* Exh. 17.  It is little wonder that Ward's counsel is not eager to go down that path again.

      There is no reason to use the *Albritton* Agreement in this case.  This Court has already found a subject-matter waiver.  *See* D.E. 60 at 7-8.  Cisco already sought and lost its attempt to have the *Albritton* Agreement forced upon Ward.  *See* Exh. 3.  Cisco should not be permitted to again ask this Court to impose that Order on Ward, having lost that argument twice before.  Nor is there any reason to enter such an order to protect documents that will be made public in the *Albritton* Trial.  Any such agreement will only hinder Ward's efforts to discover evidence that the jury is entitled to hear.

      Ward's counsel has explained to Cisco's counsel on at least three separate occasions the problems with the *Albritton* Agreement and has explained why Ward will not agree to be bound by its terms.  On April 22, 2009, after Ward's counsel explained that the *Albritton* Agreement was unworkable, Cisco's counsel offered to draft a proposed agreement to be sent to Ward's counsel that would take into consideration Plaintiff's concerns.  It never happened.  Apparently, Cisco has also come to the conclusion that there is no way to revise the *Albritton* Agreement in a way that is suitable for use in this case.

      As Ward's counsel also explained to Cisco, Plaintiff believes that the fact intensive issues of privilege and waiver are best resolved by the presiding judge.  Plaintiff took that position in the Powell deposition, refusing to defer to a ruling by a magistrate judge unfamiliar with the

facts briefed to this Court.  Likewise, Plaintiff believes that whatever privilege and waiver issues may be involved in the *ESN v. Cisco* case are best resolved by Judge Folsom.  *See In re Sealed Case*, 877 F.2d at 981 (waiver of privilege depends heavily on context and is best left to the trial judge's discretion).

Despite the fact that Ward's counsel has told Cisco's counsel on multiple occasions that Plaintiff believes the *Albritton* Agreement is rife with problems, the Response makes repeated accusations that Ward will not accept that agreement in this case because he is seeking discovery in this case to uncover Cisco's "privileged case strategy in the *ESN* case."  *See* Response at 7, fn. 9, *and* at 1, *and* at 11, *and* 12.  Cisco outright accuses Ward of nefarious motives and questionable tactics.

Cisco's attacks on Ward and his counsel are unwarranted, unprofessional and untrue.  Ward's counsel is directing the discovery efforts in this case; not *ESN v. Cisco*.  Ward's counsel is not involved in the underlying *ESN v. Cisco* case.  The motive behind Plaintiff's discovery efforts is to ensure that Ward gets from Cisco the discovery to which he is entitled and that he needs to prove his case at trial.  Ward's counsel is not using this case as a vehicle by which to obtain documents for ESN.  Obviously, Cisco does not want to comply with the Court's Order as evidenced by the farcical word play arguments it has advanced in its Response.  But Cisco cannot justify its noncompliance by projecting its own lack of good faith discovery onto Ward.

E.  Cisco's Blatant Disregard Of The Court's March 30, 2008 Order Warrants Sanctions.

The Response argues that that the sanctions requested by Ward are impermissible.  Cisco claims that the sanctions requested require a heightened showing of non-compliance and prejudice because they are "dispositive of major issues in this case."  *See* Response at 12-13.  Ward's requested sanctions are not case dispositive and Ward has not sought dismissal in his favor.  To the contrary, Ward asked the Court to warn Cisco that its failure to comply with the Court's Order may result in future exclusionary sanctions.  *See* D.E. 61 (opening brief) at 16.  Thus, the arguments and case law offered by the Response are inapposite.

Federal Rule of Civil Procedure 37 affords the Court broad discretion to impose sanctions for Cisco's failure to comply with its March 30, 2009 Order. *See Best Buy Stores, L.P. v. Developers Diversified Realty Corp.*, 2008 U.S. Dist. LEXIS 46217, at \*4-5 (D. Minn. June 12, 2008), citing *United States v. Big D. Enters.*, 184 F.3d 924, 936 (8th Cir. 1999), attached hereto as Exh. 18. "Generally, sanctions may be triggered simply by noncompliance with an underlying discovery order. Thus, a finding of willfulness or contumacious conduct is not necessary to support sanctions that are less severe than dismissal or entry of a default judgment." *Id.*, citing 7 Moore, supra, § 37.50(2)(b). "Moreover, prejudice 'is not an essential prerequisite for the imposition of Rule 37(b) sanctions.'" *Id.*

Rule 37 sanctions are intended "to penalize those whose conduct may be deemed to warrant such a sanction and to deter those who might be tempted to such conduct in the future. *See id.*, citing *NHL v. Metro. Hockey Club*, 427 U.S. 639, 643 (1976) (per curiam). In fashioning a sanction appropriate for Cisco's non-compliance, the Court need not "impose the least onerous sanction available, but may exercise its discretion to choose the most appropriate sanction under the circumstances." *See id, citing Keefer v. Provident Life & Accident Ins. Co.*, 238 F.3d 937, 941 (8th Cir. 2000) (citation omitted). The Court can enter any sanction that is "just" and that related to the violated Order. *See id.*, citing *Avionic Co. v. Gen. Dynamics Corp.*, 957 F.2d 555, 558 (1992) (citation omitted).[15]

Cisco willfully violated the Court's Order. Cisco's deliberate decision to withhold ***all*** formerly-privileged documents from its interrogatory responses and did so by taking such meritless positions as "ESN" doesn't mean "ESN's counsel" and that the word "relied" has different meanings depending on whether it is offered by Cisco or Ward demonstrates Cisco's intentional non-compliance. That is particularly true here because the Court ordered Cisco to provide "full and complete" responses. *See* D. E. 60 at 7-8.

Cisco also argues that Plaintiff has not been prejudiced by Cisco's non-compliance. *See*

---

[15] The Court can also enter sanctions under the Court's inherent authority, but only if it finds that Rule 37 sanctions are insufficient. *See Sentis Group, Inc. v. Shell Oil Co.*, 559 F.3d 888, 900 (8th Cir. 2009).

Response at 13.  Not true.  Ward need not demonstrate prejudice before this Court can sanction Cisco for its willful discovery violation.  Moreover, Ward has been prejudiced.  Plaintiff served these interrogatories on December 30, 2008.  Now, nearly five months, a motion to compel, and a sanctions motion later, he still doesn't have full and complete responses from Cisco.  Ward served his discovery early, wanting to get all documents in hand before deposing Cisco's witnesses.  These interrogatories were aimed at identifying critical documents in this case, and then using Cisco's responses to narrow the documents Ward would use to question deposition witnesses.  To date, Ward has none of the documents his written discovery was designed to obtain and has been able to take but two depositions.

Because Cisco has not identified responsive communications and documents, Ward has not scheduled depositions.  At the Powell deposition, Ward's counsel was prevented from asking the witness questions about the very documents at issue in these interrogatory responses.  *See* Exh. 9 at 92:22-96:6.  Now, Plaintiff will be forced to file a motion to compel another deposition to compete his questioning of Powell.  Because Plaintiff did not want to repeat that process with every witness, he has waited to take additional depositions.  That delay has put Plaintiff in the position of having to take numerous depositions late in the discovery period; the very thing he hoped to avoid by serving early discovery.

 Cisco's blatant violation of the Court's Order alone merits sanctions.  Cisco does not dispute that if sanctions are warranted, Plaintiff should be awarded the fees and cost associated with the filling of this motion.  Nor does Cisco object to Ward's request that he be permitted to tell the jury about Cisco's changed position.  *See* Response at 2.  The Court should award those sanctions.

Cisco objects to Ward's request that it be ordered to produce all documents responsive to Interrogatories No. 5 & 6, claiming that interrogatories cannot be the basis of ordering document production.  Cisco misunderstands that the scope of the Court's authority under Rule 37 is broad, permitting it to grant relief that is just and proper.  *See Best Buy Stores,* 2008 U.S. Dist. LEXIS 46217, at *4-5 (Exh. 18).  Ordering Cisco to produce documents that it has put at issue but has

thus far shielded from discovery is a fair and reasonable sanction.  Ward asked Cisco to identify documents responsive to Interrogatory Nos. 5 & 6 so that he could narrow in on those documents most relevant to Cisco's claims of good faith.  The Court ordered Cisco to provide full and complete responses, including an identification of the documents.  Cisco refused.  Ward now seeks production of those documents because otherwise once Cisco finally produces the responsive information, he will have to fight another discovery battle before Cisco will actually produce documents.  Any further delay will reward Cisco for its non-compliance and dilatory conduct.

There is no reason not to order Cisco to produce all documents responsive to Interrogatory Nos. 5 & 6.  Cisco admits they are relevant and not privileged.  *See* Response at 10, 1, fn. 1.  If the Court finds, as Plaintiff believes that it must, that Cisco has failed to identify documents that are responsive to those interrogatories, Cisco will have no basis upon which to withhold those documents from Ward.  Therefore, the Court should order that those documents be produced so as to avoid any further delay to the preparation of Ward's case.

Finally Cisco objects to any instruction to the jury that Frenkel's statements are false and made with malice.  However, the Response has made repeated representation to the Court that Cisco is not offering a "good faith" defense and those words do not appear in Cisco's pleading. *See* Response at 3, 4-5, 8, 10.  Therefore, Cisco should have no objection to the Court instructing the jury that Cisco does not contend that it acted in good-faith.

The Court should also consider instructing the jury that Cisco intentionally withheld discovery from Ward.  The following instruction—slightly modified from an instruction offered on Cisco's behalf in a case where Cisco moved for sanctions because its litigation opponent failed to comply with discovery—should be acceptable to Cisco:

> Ladies and gentlemen, in this case as in every civil case in the federal court system, as part of the trial preparation process the parties are entitled to request information from each other in a process that is known as discovery. Occasionally, disputes arise as to exactly what information has to be produced and whether any such information is in existence. In this case, Plaintiff John Ward, Jr. asked its opponent, Cisco

Systems Inc, for a list of all information relied upon by Richard Frenkel in making the statements set forth in the posts at issue in this case, a request that this court determined to be an appropriate request for information. Cisco responded that Frenkel did not rely on information that he received from Baker Botts when he published the statements at issue in this case. However, Cisco made that statement in an attempt to avoid producing the emails exchanged between Baker Botts and Cisco. I have since ordered those documents to be produced to Mr. Ward. You may consider this conduct by Cisco, along with all the other evidence that you hear during the trial, in deciding the issues presented for your determination in this case.

See Network Computing Services Corp., Plaintiff, v. Cisco Systems, Inc, 223 F.R.D. 392, 401 (D.S.C. 2004).

Cisco's deliberate violation of this Court's March 30, 2009 Order merits sanctions. The scope of those sanctions is within the Court's discretion. Ward requests that the Court enter an order demanding full compliance with the Court's Order, warn Cisco that future non-compliance may result in exclusionary sanctions, and enter those sanctions that the Court finds are appropriate and just.

III.   Conclusion:

For all of the foregoing reasons, Ward respectfully requests the Court to grant his motion to compel compliance with the Court's March 30, 2009 Order and for sanctions.

Respectfully submitted,

Nicholas H. Patton
Texas Bar No.: 63035
PATTON, TIDWELL & SCHROEDER, LLP
4605 Texas Boulevard
P. O. Box 5398
Texarkana, Texas 7550505398
(903) 792-7080          (903) 792-8233 (fax)
nickpatton@texarkanalaw.com

29

Patricia L. Peden
LAW OFFICE OF PATRICIA L. PEDEN
610 16th Street, Suite 400
Oakland, California 94612
Telephone: 510.268.8033

## CERTIFICATE OF SERVICE

This is to certify that on this 21st day of May, 2009, a true and correct copy of the foregoing Reply In Support of Plaintiff's Motion to Compel Compliance with the Court's March 30, 209 Order and For Sanctions was served electronically via the Court's CM/ECF system upon:

Richard E. Griffin                    Attorney for Defendant Cisco Systems, Inc.
Charles Babcock
Crystal Parker
JACKSON WALKER, LLP
1401 McKinney
Suite 1900
Houston, Texas 77010


Nicholas H. Patton