JILLIAN POWELL,     MARCH 27, 2009

Page 1

IN THE UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF TEXAS
TEXARKANA DIVISION

```
JOHN WARD, JR.,                  *
     Plaintiff,                  *
VS.                              *   CIVIL ACTION NO.:
CISCO SYSTEMS, INC. AND RICK     *
FRENKEL,                         *
     Defendants.                 *   08-4022
```

\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*

ORAL VIDEOTAPED DEPOSITION OF

JILLIAN POWELL

\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*

    ANSWERS AND DEPOSITION OF JILLIAN POWELL, produced as a witness at the instance of the Plaintiff, taken in the above-styled and -numbered cause on the 27th day of March, 2009, A.D., beginning at 10:38 a.m., before Kelly Hassell, a Certified Shorthand Reporter in and for the State of Texas, in the offices of Baker Botts, L.L.P., located at 2001 Ross Avenue, Suite 1100, Dallas, Texas, in accordance with the Federal Rules of Civil Procedure and the agreement hereinafter set forth.

Esquire Deposition Services, LLC
(800) 866-5560

Dockets.Justia.com
f7308c80-377d-47c3-a66c-747f53837e6e

JILLIAN POWELL,    MARCH 27, 2009

Page 8

1  having been first duly cautioned and sworn to testify the
2  truth, the whole truth and nothing but the truth, testified
3  on her oath as follows:
4                    DIRECT EXAMINATION
5  BY MS. PEDEN:
6       Q    Will you please state your full name for the
7  record.
8       A    Jillian Michelle Powell.
9       Q    And your address, please.
10      A    213 Rockbrook Drive, Wylie, Texas 75098.
11      Q    Ms. Powell, have you been deposed before?
12      A    No.
13      Q    Have you ever given testimony in a court
14 proceeding before?
15      A    No.
16      Q    Are you represented by counsel today?
17      A    Yes.
18      Q    And who is your counsel?
19      A    Joseph Cheavens.
20      Q    Are you represented by Mr. Babcock?
21      A    No.
22      Q    And how about Ms. Parker?
23      A    No.
24      Q    Are you represented by anybody at Jackson Walker?
25      A    No.

Page 12

1            (Exhibit Number 1 was marked.)
2       Q    (BY MS. PEDEN)  Okay.  The court reporter has
3  previously marked Exhibit 1.
4            MS. PEDEN:  If the court reporter can hand
5  that to the witness, please.
6       Q    (BY MS. PEDEN)  Ms. Powell, have you seen this
7  document before?
8       A    Yes.
9       Q    And when did you see it?
10      A    I was served at my home.  I don't remember what
11 day.
12      Q    Okay.  And are you here today to testify pursuant
13 to this subpoena?
14      A    Yes.
15      Q    What did you do to prepare for your deposition
16 today?
17      A    I spoke with my attorney this morning and that's
18 all I remember.
19      Q    So you had one meeting with your attorney this
20 morning?
21      A    Yes.
22      Q    Did you have any other meetings with your
23 attorney?
24      A    No.
25      Q    How long was the meeting this morning?

JILLIAN POWELL,   MARCH 27, 2009

Page 13

1    A    An hour.
2    Q    And where did that meeting occur?
3    A    In a conference room at Baker Botts.
4    Q    So it was here?
5    A    Yes.
6    Q    Was Mr. Babcock present at that meeting?
7    A    No.
8    Q    Or Ms. Parker?
9    A    Yes.
10   Q    Can you tell me what you discussed at that
11 meeting, please.
12   A    The procedures for the deposition.
13   Q    Did you discuss any substantive questions I might
14 ask you?
15   A    Yes.
16   Q    And what were those?
17          MR. CHEAVENS:  I'm going to instruct the
18 witness not to answer.  That's privileged.
19          MS. PEDEN:  With Mr. -- with Ms. Parker
20 present, it's privileged?
21          MR. CHEAVENS:  We have a joint client.
22          MS. PEDEN:  Do you have a joint defense
23 agreement?
24          MR. CHEAVENS:  Not in writing.
25          MS. PEDEN:  Do you have one that's an

1  understanding?
2           MR. CHEAVENS:  Yes.  Sure.  The substance of
3  those communications are privileged and I'll instruct the
4  witness not to answer, so --
5           MS. PEDEN:  Okay.  So what privileges are
6  you claiming, Mr. Cheavens?
7           MR. CHEAVENS:  Attorney/client privilege and
8  work product privilege.
9           MS. PEDEN:  How long has this joint defense
10 agreement been in existence?
11          MR. CHEAVENS:  Since I first learned about
12 this lawsuit in the Albritton case.
13          MS. PEDEN:  When was that?
14          MR. CHEAVENS:  I don't know.  I think when
15 we were first served with a document subpoena in the
16 Albritton case last summer.
17          MS. PEDEN:  Okay.  I think we might need to
18 take a recess and call chambers.  Let me just say on the
19 record that I think having opposing counsel in a witness
20 prep session right before the witness is to be deposed
21 about her testimony waives attorney/client privilege.
22 Cisco's request for admissions filed in this case
23 identifies Baker Botts as a third party.  They refuse to
24 provide discovery that's in Baker Botts's possession
25 because they're a third party.  I just think it's an

Page 15

1   improper assertion of privilege and I'm happy to take it up
2   with the Court if we need to do that.
3                   MR. CHEAVENS:  Sure.
4                   MS. PEDEN:  Okay.
5                   THE VIDEOGRAPHER:  Go off the record?
6                   MS. PEDEN:  Yes.
7                   THE VIDEOGRAPHER:  We are off the record.
8   The time is 10:48 a.m.
9                   (Break was taken from 10:48 a.m. to
10  11:01 a.m.)
11                  MS. PEDEN:  We're calling in.  We're in the
12  middle of a deposition.  This is Patricia Peden and I
13  represent the Plaintiff, Mr. Ward.  And we noticed the
14  deposition of Baker Botts's paralegal, who is a fact
15  witness in our case.  And as I was -- well, also present --
16  and just so you know, also present in the room are counsel
17  for Cisco, Mr. Babcock and Ms. Parker, and the witness,
18  Ms. Powell's, lawyer, Mr. Cheavens.
19                  So Plaintiff is taking the deposition of a
20  third party and when I asked the witness about her depo
21  prep before coming in to testify this morning, I asked her
22  if she was represented by Mr. Cheavens.  She said yes.  I
23  asked her if she was represented by either Mr. Parker --
24  Ms. Parker or Mr. Babcock, to which the witness responded
25  no.  And then when I asked her about her preparations in

Page 86

1  called Ms. LaFitte?
2       A    No.
3       Q    Okay.  So when you placed the call to
4  Ms. LaFitte, what -- what did you say to her?
5       A    I don't know the exact details of the
6  conversation.  I don't remember the exact details of the
7  conversation.
8       Q    Okay.  Can you give me the gist of what you said?
9       A    I believe it was -- I had called and asked
10 directly about the filing date of the ESN original
11 complaint and asked to -- the discrepancy on the document
12 banners on two different days.
13      Q    Okay.  So when you called her -- I'm just
14 trying -- what specifically did you ask her?  And I'm not
15 asking you to -- I know it was a long time ago.  I'm not
16 saying that it's verbatim.  But when you called her, you
17 were asking her for an explanation of something, right?
18      A    Yes.
19      Q    Okay.  And what did you ask her to explain to
20 you?
21      A    I asked for the factual information based on the
22 filing, the factual progression of the filing.
23      Q    What do you mean by "factual progression"?
24      A    How -- as to how there was two different dates
25 and what the process was to -- what the process was in the

JILLIAN POWELL,   MARCH 27, 2009

Page 87

```
 1   different filing dates.
 2        Q    Okay.  I'm still --
 3        A    It's -- I don't remember the details of the
 4   conversation, honestly.
 5        Q    Okay.  So you called her up and you said -- tell
 6   me if I'm mischaracterizing this because I don't want to
 7   put words in your mouth, okay?  So you called her up and
 8   you said, I'm calling about the ESN versus Cisco case,
 9   right?
10        A    Yes.
11        Q    You would have had to identify what case you were
12   calling about?
13        A    Yes.
14        Q    Did you give her a case number?
15        A    I don't remember.
16        Q    Okay.  And then you said to her, I have a
17   question about this case, something along those lines?
18        A    Yes.  Yeah.  I just -- I really can't remember
19   exactly what I said.  I remember the outcome, but not
20   exactly how I asked the questions.
21        Q    Okay.  So what information were you trying to get
22   from her?
23        A    I was asking for the factual -- the facts as to
24   the complaint and the document banners and the filing date,
25   as to what the true filing date was and how that came to
```

JILLIAN POWELL,    MARCH 27, 2009

Page 88

1  be.
2      Q    Okay.  So you said -- at that time, did you have
3  the docket in front of you?
4      A    I don't remember.
5      Q    Okay.  Well, did you call her and say, the docket
6  reflects one date; do you remember?
7      A    I don't -- I don't remember.
8      Q    Is there anything that you could look at that
9  would refresh your recollection?
10     A    No.
11     Q    Okay.  So you do -- you do remember, however,
12 that you were calling to ask about the filing date of the
13 ESN complaint?
14     A    Yes.
15     Q    Okay.  And so however you posed the question to
16 Ms. LaFitte, you were trying to figure out what the filing
17 date of the ESN complaint was?
18     A    Yes.
19     Q    Okay.  What did she say to you?
20     A    The summary I got was that it had originally
21 been -- the filing had begun before midnight -- had ended
22 after midnight, but posted the date of the day before and
23 that someone had called and the -- and it had been
24 corrected to reflect the 10, dash, 16 date.
25     Q    Did Ms. LaFitte tell you that the civil cover

1  sheet or the JS44 had been received earlier and that it had
2  been logged?
3              MR. BABCOCK:  Before you answer that
4  question, I believe you're reading from a privileged
5  document in another case, Ms. Peden; so I'm going to object
6  to you doing that.  That's a document that you're not
7  supposed to use in this litigation.
8              MS. PEDEN:  Well, Mr. Babcock, I'm trying to
9  ascertain the facts from this witness and she's having a
10 difficult time remembering the facts and I think the fact
11 of what she spoke with and what she learned from the
12 third-party clerk is not privileged.
13             MR. BABCOCK:  The protective order in the
14 other case specifically says that you're not to allow --
15 you're not allowed to use documents produced in that case
16 subject to the protective order in other litigation, and
17 that's exactly what you're doing.  I don't have any problem
18 with your questioning this witness about her recollection
19 of conversations with the clerk.  I do have a problem with
20 you using a privileged document in another case.
21      Q    (BY MS. PEDEN)  Ms. Powell, did you discuss the
22 civil cover sheet, the JS44, in the ESN versus Cisco case
23 with Ms. LaFitte?
24      A    I don't remember.
25      Q    Did you understand that the court's office had --

1  or the clerk's office had received the civil cover sheet
2  before the complaint was filed?
3      A   I believe that's -- the clerk had mentioned that
4  the complaint -- or the summons had been received, yes.
5      Q   And did the clerk mention that the civil cover
6  sheet had been received earlier?
7      A   She had -- she had mentioned that it had been
8  received.  I can't remember earlier.
9      Q   Did she mention that it had been received before
10 the complaint was filed?
11     A   I can't recall exactly.
12     Q   Do you remember if the information that you
13 received about the civil cover sheet from Ms. LaFitte was
14 consistent with the court's procedures that we were looking
15 at earlier today about receiving a civil cover sheet,
16 logging it and then having 24 hours to file the complaint?
17     A   Can you ask that again?
18     Q   Yeah.  So earlier today we were looking at the
19 procedure, the new procedure for the filing of a complaint;
20 do you remember that document?
21     A   Yes.
22     Q   Okay.  And we were looking at the procedure that
23 you could E-mail to the court clerk a civil cover sheet,
24 and that you had 24 hours to file the complaint; do you
25 remember that?

1      A    Yes.
2      Q    And my question is, the information that you
3  received from Ms. LaFitte, was it consistent with that
4  court practice?
5      A    I don't know the exact details of when -- I can't
6  remember when she said it was received; so I don't know if
7  that was consistent.
8      Q    Do you remember if she said it was received
9  before the complaint was filed?
10     A    Yes.
11     Q    Did Ms. LaFitte tell you that the civil cover
12 sheet had been filed?
13     A    I can't remember exactly.
14     Q    If that were the case, if the civil cover sheet
15 had been received by the Court and the Court used it to
16 follow those procedures and set up a case file, but the
17 complaint wasn't filed until later that night, would that
18 explain why -- why there was -- why the complaint wasn't
19 available online?
20          MR. BABCOCK:  Object to the form.
21     A    I feel like we're getting into court logistics
22 that I don't know all the details of within the clerk's --
23 within the court system from my end.
24     Q    (BY MS. PEDEN)  Okay.  So my question is, we were
25 looking at the procedure earlier today about how you could

```
 1    E-mail a civil cover sheet --
 2         A    Uh-huh.
 3         Q    -- and would open up a case file, essentially,
 4    right?
 5         A    Yes.
 6         Q    And that you would have 24 hours in which to file
 7    the complaint?
 8         A    Yes.
 9         Q    Okay.
10         A    Yeah.
11         Q    So my question is, if that procedure had been
12    followed in the ESN versus Cisco case, would that have
13    explained why, even though you could see that a case had
14    been opened, you weren't able to find the complaint?
15              MR. BABCOCK:  Object to the form.
16         A    I don't know -- I don't know if that explains it
17    because I don't know some -- you know, the logistics of
18    PACER on that end.
19         Q    (BY MS. PEDEN)  Was that your understanding at
20    the time?
21         A    I don't remember.
22         Q    Did Ms. LaFitte tell you that Eric Albritton
23    signed a civil cover sheet stating that the complaint had
24    been filed on October 15th?
25         A    No, not in that detail.
```

1    Q    What do you mean by "not in that detail"?
2    A    Well, all I remember is she said a civil
3    complaint had been filed.
4    Q    Did Ms. LaFitte tell you that Eric Albritton
5    signed a civil cover sheet stating that the complaint had
6    been filed on October 15th?
7    A    Not in that much detail, no.
8    Q    Did you tell anyone that Eric Albritton signed a
9    civil cover sheet stating that the ESN complaint had been
10   filed on October 15th of 2007?
11   A    I don't remember.
12   Q    Is there anything you can look at to refresh your
13   recollection?
14   A    I don't know.
15   Q    You said that you discussed the filing of the ESN
16   complaint with Ms. LaFitte, right?
17   A    Yes.
18   Q    Did you understand that the complaint in the ESN
19   case had been filed after midnight?
20   A    It had -- it had been filed before midnight.  It
21   had been filed before midnight is what she told me, I
22   believe.  I don't remember exactly.
23   Q    Is it possible that Ms. LaFitte told you that
24   ESN's counsel had logged on to the system and started
25   uploading documents before midnight, but did not officially

1  file until after midnight?
2           MR. BABCOCK:  Object to the form of the
3  question.
4      A    Can you repeat the question?
5           (Requested portion read.)
6      A    I don't remember exactly.
7      Q    (BY MS. PEDEN)  You don't remember Ms. LaFitte
8  using the words "officially filed after midnight"?
9      A    No.
10     Q    Did Ms. LaFitte tell you that the ESN complaint
11 had been officially filed before midnight?
12     A    Ms. LaFitte said that it had been filed and
13 stamped before midnight.  No, I -- I don't remember
14 exactly.  I don't remember exactly.
15          MS. PEDEN:  Counsel, do you object to me
16 showing the witness her E-mail that -- that records her
17 recollection of her testimony -- or her conversation with
18 Ms. LaFitte?
19          MR. BABCOCK:  If they're privileged, I do,
20 if you're asking me.
21          MS. PEDEN:  It's designated as privileged,
22 although it's --
23          MR. CHEAVENS:  Well, this was the document
24 produced in the Albritton case pursuant to the stipulation
25 there, including the protective order?

JILLIAN POWELL,   MARCH 27, 2009

Page 95

1     MS. PEDEN:  Yes, it's the E-mail that
2  Ms. Powell wrote that records the factual information that
3  she learned from Ms. LaFitte.
4     MR. BABCOCK:  If we -- if we designated it
5  as privileged in the Albritton case, then yes, I do object.
6     MS. PEDEN:  Mr. Cheavens?
7     MR. CHEAVENS:  This is Cisco's privilege.
8  You've heard what he said.
9     MS. PEDEN:  Well, there's a work product
10 privilege out there too, which I think --
11    MR. CHEAVENS:  Okay.  Pursuant to the
12 instructions of our counsel -- our client, we invoke the
13 privilege.  I think the document you're talking about was
14 produced under a stipulation and it is pursuant to a
15 protective order in the other case.
16    MS. PEDEN:  Right.  I understand your
17 position.  My -- my position is that, you know --
18    MR. CHEAVENS:  And you want to violate the
19 protective order?
20    MS. PEDEN:  No.  You know, I didn't just
21 hand her the document.  I'm conferring with counsel about
22 the document.  I think the document contains only factual
23 information that she learned from a third party.  It
24 memorializes a conversation with a third party.  I'm not
25 sure that it was -- that it's properly claimed as

Esquire Deposition Services, LLC
(800) 866-5560

f7308c80-377d-47c3-a66c-747f53837e6e

Page 96

1  privileged and the witness is having a hard time
2  recollecting the conversation and I think that document
3  would help her refresh her recollection and move things
4  along.
5          MR. CHEAVENS:  The problem is it's under the
6  protective order.
7      Q   (BY MS. PEDEN)  Ms. Powell, when you talked to
8  Ms. LaFitte, did you discuss the fact that ESN's attorneys
9  had contacted the clerk's office?
10     A   She mentioned that they had contacted the clerk's
11 office.
12     Q   Did she tell you that ESN's counsel contacted the
13 clerk's office to explain that they had actually filed the
14 complaint after midnight?
15     A   She said they had completed the filing after
16 midnight.
17     Q   And did you understand that ESN's counsel had
18 called the clerk's office to ask about the docket entry?
19     A   I can't remember.
20     Q   But you understood that ESN's counsel had called
21 to ask the court clerk about the same filing that you were
22 calling to ask the court clerk about; is that right?
23     A   Yes.
24     Q   Did Ms. LaFitte tell you who called the clerk's
25 office from ESN's side?