```
                 IN THE UNITED STATES DISTRICT COURT

                      EASTERN DISTRICT OF TEXAS

                            TYLER DIVISION


    ERIC M. ALBRITTON,

              Plaintiff,

    -vs-                              CASE NO.  6:08-CV-00089

    CISCO SYSTEMS, INC.,
    RICHARD FRENKEL,
    MALLUN YEN and JOHN NOH,

              Defendants.
    _____/




           CONFIDENTIAL - SUBJECT TO PROTECTIVE ORDER

                 DEPOSITION OF MARTA BECKWITH

                 Wednesday, November 19, 2008
```

```
               SHEILA CHASE & ASSOCIATES
                    Reporting For
             WEST COURT REPORTING SERVICES
             221 Main Street, Suite 1250
           San Francisco, California 94105
                Phone:  (415) 321-2300
                 Fax:   (415) 618-0743
```

Reported by
SHEILA CHASE, CSR, RPR
License No. 4934

```
 1                MR. McWILLIAMS:  Objection.  Form.
 2                MR. PATTON:  Q.  Do you think he was?
 3                MS. PARKER:  Objection.  Form.
 4                THE WITNESS:  I think he was a person
 5     responsible for talking to the media.
 6                MR. PATTON:  Q.  Okay.  What do they call
 7     those in Washington, D.C., these days?
 8          A.    I don't know.
 9          Q.    How about "spin doctor"?
10                MS. PARKER:  Objection.  Form.
11                MR. McWILLIAMS:  Same objection.
12                MR. PATTON:  Q.  Did you suggest to
13     Mr. Frenkel that he inform Mr. Noh that he was the Troll
14     Tracker?
15          A.    I don't believe so.
16          Q.    When the controversy about the filing arose,
17     Ms. Beckwith, were you involved at all?
18                MS. PARKER:  Objection.  Form.
19                MR. McWILLIAMS:  Same objection.
20                THE WITNESS:  I'm not sure what you mean about
21     controversy.
22                MR. PATTON:  Q.  Let me describe this.  I
23     think you're probably aware of it.  There's a
24     controversy about whether the ESN complaint was actually
25     filed on the 15th of October or the 16th.  You're aware
```

```
 1   of that, are you not?
 2        A.   I am.
 3        Q.   That is the controversy I'll be talking about.
 4        A.   Okay.
 5        Q.   Okay.  Were you aware of that controversy?
 6        A.   I was aware that the complaint appeared to
 7   have been filed on the 15th.  We have a --
 8        Q.   The case what?
 9        A.   That the case appeared to be filed on the
10   15th, according to what we received.  And then later it
11   was claimed that it was actually filed on the 16th.
12        Q.   Okay.  Were you involved in the effort to
13   determine what happened?
14        A.   I was aware in the effort to determine what to
15   do about what had happened.
16        Q.   Okay.  Were you -- are you aware that Baker
17   Botts was contacted regarding that?
18        A.   Yes.
19        Q.   And what was the purpose of contacting Baker
20   Botts in the Dallas office?
21             MS. PARKER:  I'm going to instruct you not to
22   answer anything that has to do with litigation strategy.
23             MR. PATTON:  What litigation are we talking
24   about?
25             MR. McWILLIAMS:  Well, you're just asking
```

1  about the ESN litigation and the controversy, and now
2  you are going into communications with counsel.
3          MR. PATTON:  No, I'm not.  I'm asking if they
4  contacted Baker Botts about this issue.
5          MS. PARKER:  You asked her what the purpose of
6  the call was.
7          MR. PATTON:  Q.  You did contact Baker Botts?
8      A.   Yes.
9      Q.   Did they undertake some work for you?
10     A.   Yes.
11     Q.   What was the work that they did?
12         MS. PARKER:  I'm going to instruct her not to
13  answer.
14         MR. PATTON:  There are e-mails here that say
15  they contacted the clerk.
16         MS. PARKER:  She is testifying they contacted
17  the clerk.  You haven't asked her whether she --
18         MR. PATTON:  Q.  Did Baker Botts contact the
19  clerk's office?
20     A.   I believe they did.
21     Q.   Okay.  You received an e-mail that basically
22  informed you that they did, did you not?
23     A.   Yes.
24     Q.   And the e-mail told you -- there are a number
25  of e-mails, but they basically told you what they

Page 50

1  trying to do it throughout the United States Congress?
2          MS. PARKER:  Objection.  Form.
3          MR. PATTON:  Q.  Weren't you?
4          MR. McWILLIAMS:  Same objection.
5          THE WITNESS:  Cisco was trying to reform
6  through Congress.
7          MR. PATTON:  Q.  Right?
8      A.  But we have also filed amicus in some of the
9  cases pending in front of the Federal Circuit of the
10 Supreme Court.
11         MR. PATTON:  Okay.  Let's take a short break.
12         VIDEOGRAPHER:  The time is 9:52.  Off the
13 record.
14                 (Recess taken.)
15         (Exhibit 1 was marked for identification.)
16         VIDEOGRAPHER:  The time is 10:06.  On the
17 record.
18         MR. PATTON:  Q.  You had some conversations
19 with Tony -- is it Downs?  What was his last name?
20     A.  His name is Tony Downs.
21     Q.  I want to ask you a few questions about those,
22 Ms. Beckwith.
23         There's an e-mail that I have right in front
24 of me that's from you, and it's on the 18th of October,
25 11:48, and you stated you just asked Tony for the

Page 51

1    documents.  Do I need to show you that?
2           MS. PARKER:  Is that Exhibit 1?
3           THE WITNESS:  Yes.
4           MR. PATTON:  Q.  Right down near the bottom,
5    "Just asked Tony for the docs too."
6       A.   I see that.
7       Q.   Okay.  When did -- or did Tony respond?
8       A.   I believe so.
9       Q.   And do you know when he responded?
10      A.   I don't remember.
11      Q.   Okay.  What did he say when he responded?
12      A.   I believe he sent me the documents from his
13   case.
14      Q.   Did he do it by e-mail?
15      A.   I think he e-mailed me the documents.
16      Q.   Okay.  Were they attached, an attachment to
17   the e-mail?
18      A.   I believe so.
19      Q.   Okay.  Did you talk to him?
20      A.   I don't remember.
21      Q.   You don't remember whether you had a
22   conversation, telephone --
23      A.   I believe I had a conversation with him before
24   this (indicating).
25      Q.   And what was the gist that conversation?

Page 52

1      A.   He had had a situation in which someone had
2  had an issue with electronic filing.
3      Q.   And that's what was -- it was because of the
4  ESN problem that you were talking to someone that maybe
5  had had a similar case?
6           MS. PARKER:  Objection.  Form.
7           MR. PATTON:  Q.  Is that right?
8           MS. PARKER:  Objection.  Form.
9           MR. McWILLIAMS:  Same objection.
10          THE WITNESS:  We were trying to find out --
11          MR. McWILLIAMS:  Ms. Beckwith --
12          THE WITNESS:  Yes.  Sorry.
13          MR. McWILLIAMS:  Do not discuss any strategy
14  about the litigation with counsel.
15          THE WITNESS:  I don't think I can answer the
16  question then.
17          MR. PATTON:  Okay.  Then I'm gathering that it
18  was a strategy privileged decision surrounding the ESN
19  conversations and documents around her?
20          MR. McWILLIAMS:  You can make what whatever
21  conclusions you want.
22          MR. PATTON:  Okay.  Well, that was the basis
23  of your objection, George.
24          MR. McWILLIAMS:  Right.
25          MR. PATTON:  So are you instructing her not to

Page 53

1  answer?
2          MR. McWILLIAMS:  Any strategic decisions and
3  conversations regarding litigation.
4          MR. PATTON:  All right.
5      Q.  Were the conversations, what you saw from
6  Tony, things that would involve strategy, lawsuit
7  strategy?
8      A.  The communications were, in part, what we used
9  to determine strategy for the ESN case.
10     Q.  Okay.
11         MR. McWILLIAMS:  She answered your question.
12         MR. PATTON:  Q.  Did you have any discussions
13 with her -- with him that fall into the area of not
14 being privileged because they were strategy?
15         MS. PARKER:  Objection.  Form.
16         MR. McWILLIAMS:  Same objection.
17         THE WITNESS:  I believe that the reason -- I
18 think that the communications were privileged.
19         MR. PATTON:  Okay.  Then there won't be any
20 testimony at trial about this, correct?
21         MR. McWILLIAMS:  No.  We've provided documents
22 and Cisco has provided documents that -- under our
23 agreement that they may be privileged, but we are not
24 waiving any privileges.
25         MR. PATTON:  Well, at some point you got to

Page 54

1   declare, George.  They are either privileged or they are
2   not, and you are telling this woman don't answer
3   strategy decisions around the ESN matter.  So if she's
4   not going to, that's fine.  If you think that's
5   privileged information, that's fine.
6          MR. McWILLIAMS:  The documents have been
7   produced.  And without waiving the privilege -- and you
8   can ask her any questions you want to about the
9   documents, but when you go into litigation strategy,
10  that's different.
11         MR. PATTON:  Q.  The documents that you
12  reviewed, I gather, helped you form the litigation
13  strategy.  Would that be correct?
14     A.   They did.
15         MR. PATTON:  Now will you let her talk about
16  it, or you want to claim privilege?
17         MS. PARKER:  That isn't --
18         THE WITNESS:  The doc -- I mean, if we are
19  talking about the actual motion papers we received, the
20  motion papers themselves are publically filed, and I
21  don't believe that the motion papers are privileged.
22         MR. PATTON:  Q.  No.  What we are talking,
23  though, is about your conversations with Tony, the
24  e-mail with Tony, those kind of things.
25         MS. PARKER:  And we have discussed that, and

1  we will let you ask her questions about the documents
2  that we have produced to you under our agreement.  But
3  we are not going to open up the privilege to let you --
4  we are not going to waive the privilege and let you ask
5  her about any other conversations.
6           MR. PATTON:  So we are faced with the
7  proposition, as I understand what the two of you are
8  saying over there, that the witness can pick and choose
9  what relates to strategy and therefore may be
10 privileged --
11          MS. PARKER:  That's not true.  That's why I'm
12 not letting her pick and choose right now.
13          MR. PATTON:  Okay.
14          MS. PEDEN:  Can I just -- I need to ask a
15 clarification.  I need to understand, because my
16 understanding is that you can't use privilege as both a
17 sword and a shield.
18          So if her communications with Tony are going
19 to be claimed by Cisco as not privileged and offered in
20 any form as proof at trial, then we are entitled to
21 inquire as to those communications in her deposition.
22          If, on the other hand, those communications
23 are being claimed as privileged, then I'm assuming that
24 Cisco won't be offering any of those communications at
25 trial.

1             MR. McWILLIAMS:  You can't assume anything
2    about what we might do at trial.
3             What we have got here, and Nick was not in on
4    our agreements and neither were you, about privileged
5    communications -- and some of these documents have been
6    produced under the agreement that they may be
7    privileged, but we are not waiving any privileges now.
8             The documents that she got from Tony, or
9    whatever those documents were public and whatever these
10   e-mails say, inquire about them.
11            MS. PEDEN:  But that's improperly limiting our
12   inquiry as to what you chose to produce, the documents,
13   and our questions are to communications.
14            MS. PARKER:  We are limiting the privilege to
15   matters that have to do with their strategy in the ESN
16   litigation.
17            MS. PEDEN:  So if we ask questions about --
18            MR. PATTON:  You are limiting the claim of
19   privilege to those matters?
20            MS. PARKER:  We are limiting her responses to
21   your questions.  We will not allow her to testify on
22   those matters.
23            MR. PATTON:  On matters that relate to
24   strategy.  Is that what I understand?
25            MS. PARKER:  That's right.