IN THE UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF ARKANSAS
TEXARKANA DIVISION

| | | |
|---|---|---|
| JOHN WARD, JR. | § | |
| | § | |
| | § | C. A. NO. 08-4022 |
| v. | § | JURY TRIAL DEMANDED |
| | § | |
| CISCO SYSTEMS, INC. | § | |
| | § | |

**DEFENDANT CISCO SYSTEMS, INC.'S SUR-REPLY TO PLAINTIFF'S
MOTION TO COMPEL COMPLIANCE WITH THE COURT'S
MARCH 30, 2009 ORDER AND FOR SANCTIONS AND
DEFENDANTS' MOTION TO AMEND OR CLARIFY
THE MARCH 30, 2009 ORDER REGARDING
<u>WAIVER OF ATTORNEY-CLIENT PRIVILEGE</u>**

TO THE HONORABLE DISTRICT COURT JUDGE:

Cisco Systems, Inc. ("Cisco") hereby files its Sur-Reply in response to Plaintiff's Reply ("Reply") and to supplement its Response (the "Response") to Ward's Motion to Compel Compliance with the Court's March 30, 2009 Order and for Sanctions (the "Motion") and Cisco's Motion to Amend or Clarify its March 30, 2009 Order Regarding Waiver of Attorney-Client Privilege.

I.    INTRODUCTION (IN SUR-REPLY TO PLAINTIFF'S RESPONSE AT P. 1)

It seems to us that the question for the Court is whether Cisco obeyed the Court's order compelling an answer to interrogatories five and six.  Plaintiff does not dispute that the two questions are answered.  His argument appears to be that Cisco should have answered the questions in a particular way that Plaintiff can then use to justify its argument that Cisco has waived the attorney-client privilege.

Dockets.Justia.com

Plaintiff says that the Court's phrase that "it appears to the Court that the 'privileged' attorney client communications have been waived" should not be modified or clarified because Cisco "has not identified the legal basis" for its position. But Cisco could not have been clearer: Plaintiff manufactured a good-faith-advice-of-counsel defense, which the Defendant never asserted and will not assert and, on that basis, confused the record.

Cisco, not Ward, gets to decide the defenses it will assert; no matter how insistent Ward is, he cannot chose the defenses asserted by his opponent. *See, e.g., Claffey v. River Oaks Hyundai*, 486 F. Supp. 2d 776, 778 (N.D. Ill. 2007) ("The plaintiffs have offered no authority for the proposition that *they* can force a waiver of [Defendants'] attorney-client privilege simply by injecting the issue of willfulness into the case, or that [Defendant] has waived the privilege simply by denying the plaintiffs' willfulness allegation... The fact that [Defendants'] state of mind theoretically might have been affected by advice of legal counsel does not put the privilege in issue, unless [Defendant] uses advice by counsel to support its denial of willfulness"); *Advertising to Women, Inc. v. Gianni Versace*, 1999 WL 608711 (N.D. Ill. Aug. 4, 1999) (it is "defendant's unpalatable choice" whether to waive privilege or to decide instead not to assert a defense that puts the privilege at issue; to force that choice upon a defendant who merely asserts laches would run contrary to the principle that a waiver of the attorney-client privilege will not be lightly implied") (Attached as Exhibit A); *Dixie Mill Supply Co., Inc. v. Continental Cas. Co.*, 168 F.R.D. 554 (E.D. La. 1996) (defendant may not force waiver of privilege by asserting in the complaint that the defendant acted in bad faith, which the defendant then denies and says that, to the contrary, it acted in good faith); *In re ML-Lee Acquisition Fund II, L.P.*, 848 F.Supp. 527, 565 (D. Del. 1994) (holding that privilege will only be waived if the defendant asserts reliance-on-counsel defense despite plaintiff's claim that defendant is asserting the defenses.)

## II.   THE MOTION FOR SANCTIONS SHOULD BE DENIED

**1.   Cisco fully complied with the Court's order with respect to Interrogatory No. 5 (in sur-reply to Plaintiff's Reply at pp. 15-19)**

Relying on rhetoric and hyperbole rather than reason, Ward makes the same arguments that Cisco has already shown the Court are unfounded. He claims that Cisco failed to identify, in response to an interrogatory asking what Frenkel "relied on" in making the complained-of statements. But Ward ignores Frenkel's declaration (Exhibit B to the Response) that Cisco's response identified <u>everything</u> Frenkel relied on in writing the Complained-of Article.

Because he can't show any omission of something Frenkel relied on, Ward complains about undisclosed conversations <u>other people</u> had. But the interrogatory asked what <u>Frenkel relied on</u>, not conversations of other people or unrelated, privileged conversations Frenkel had regarding other issues in the underlying ESN case. Frenkel could certainly not "rely on" conversations he was not privy to, nor could he "rely on" communications that took place <u>after</u> the complained-of articles were written. Ward admits that Frenkel did not rely on conversations or written communications with Baker Botts prior to posting the complained-of articles (p. 16 of the Reply). Moreover, Ward's claim that <u>other employees'</u> knowledge is relevant and thus should have been provided (Reply at p. 8) fails for the simple reason that the Interrogatory did not ask for such information—it asked for what <u>Frenkel</u> relied on.[1] Sanctions should be denied because Cisco complied fully with the Court's order.

---

[1] Ward misrepresents his own pleadings when he claims that he had plead responsibility of Yen and John Noh. His Original Complaint (Docket No. 1), which was in effect at the time of Cisco's responses and remains in effect until two days ago does not even mention Yen or Noh, despite his claim. (Reply at p. 18). This explains why Ward filed his Amended Complaint just minutes after the Court's Order permitting the amendment was issued. Nor does the "record support" that Yen or Noh published the article (which is an essential element of libel) as Ward claims. Indeed, Ward lost this same argument in the Albritton case, where the Court granted summary judgment with respect to Noh and Yen because they did not write, edit or even see the articles at issue until after their publication, which Ward cannot now deny. The same would be true in this case, which involves the exact same publication. Ward is certainly not permitted to amend his pleadings <u>retroactively</u> in attempt to make it look as though Cisco was hiding something, especially where the interrogatory sought only the things Frenkel relied on.

**2.    Cisco fully complied with the Court's order with respect to Interrogatory No. 6 (sur-reply to Plaintiff's Reply at pp. 19-22)**

Ward also tries to convince the Court that a document was not identified in response to Interrogatory 6, focusing solely on an email from a Baker Botts paralegal (Jillian Powell) to a Baker Botts attorney that Ward says "clearly falls within the subject matter of what Baker Botts learned and reported back to Cisco/Frenkel." (Reply at pp. 21-22). We disagree. Interrogatory No. 6 does not ask what "Baker Botts learned and reported back to Cisco/Frenkel"; it asks "the date and time that <u>Cisco</u> first became aware that <u>ESN</u> claimed that the filing date of the complaint as listed on the court's docket was an error..." (Interrogatories, <u>Exhibit B</u>) (emphasis added). As we previously have discussed, ESN first made that claim in a pleading. Cisco responded as to when it first learned about this pleading. The Powell email does not relate to what <u>ESN</u> claimed because it relates to a conversation Albritton, not ESN, had with the Court clerk. Cisco could not be sure (and still cannot be sure) that Albritton consulted with ESN before calling the clerk. Indeed, it was discovered in the Albritton case that Albritton's paralegal made five calls to the clerk to have the docket altered, though Albritton admitted he supported what the paralegal had done. Cisco complied fully with the Court's Order, and Ward cannot show otherwise.[2] His Motion should therefore be denied.

**3.    The Sanctions requested by Ward are unsupported and should be denied (in sur-reply to Plaintiff's Reply pp. 25-29)**

As stated in Cisco's Response, Ward has not even attempted to meet the standard required for sanctions under Rule 37, and his Sur-Reply suffers the same lacking. Ward has not

---

[2] In a last-ditch effort, Ward claims that Cisco demonstrated its "intent to violate this Court's Order" by arguing that "even if the communications are relevant, that doesn't mean they are discoverable because they are properly withheld from production when they are privileged." (Reply at p. 22). In support of this assertion, Ward cites p. 11 of Cisco's Response, which has nothing to do with its response to Interrogatories 5 and 6, but rather related to Cisco's request for modification or clarification of the Court's order. Cisco has asserted numerous times that <u>it did not withhold responsive, privileged documents</u> from Interrogatories 5 and 6, and none of Ward's attempts to take Cisco's statements out of context changes that.

shown any willful violation of the Court's order nor prejudice, and therefore sanctions are not proper under Rule 37. *See Nuckles v. Wal-Mart Stores, Inc.*, 2007 WL 1546092 at *3 (E.D. Ark. May 25, 2007, no pet.) (denying sanctions because "Plaintiff has not shown that discovery delays were deliberately designed to thwart the [discovery] process"); *Smith v. Gold Dust Casino*, 526 F.3d 402, 405 (8th Cir. 2008) (reversing sanctions because "the record does not show that Smith intended to delay the proceedings by failing to comply with discovery… nor, does the record support the district court's characterization that Smith contentiously refused to comply with court orders," and the court found that there had been no express warning that the party would be sanctioned). These cases show that in circumstances like this one, where there is no showing that Cisco has deliberately thwarted the discovery process and the Court has made no express warning that Cisco would be sanctioned, sanctions are not appropriate.

Ward has not even attempting to distinguish the case law cited by Cisco that demonstrates that sanctions are not warranted. For instance, *Greyhound Lines, Inc. v. Wade*, 485 F.3d 1032, 1035-36 (8th Cir. 2007), affirming the denial of sanctions where the moving party contended that Greyhound had given evasive and misleading responses in discovery, but the moving party "received responsive answers months before trial" and thus was not prejudiced. *Id.* Similarly, in *Dockery v. Leonard*, 46 Fed. Appx. 868, at *1-2 (8th Cir. 2002), the Eighth Circuit reversed sanctions on the basis that the party responding to discovery "asserted that she had 'done everything in [her] power' to comply with the requests and had provided 'answers to the best of [her] knowledge.'" In *Bunting v. Sea Ray, Inc.*, 99 F.3d 887, 890 (8th Cir. 1996), the Eighth Circuit also held that the denial of sanctions was appropriate where the plaintiff claimed that he received  information he requested via interrogatories late and was thus denied adequate time to prepare for depositions, the same claim made by Ward. Noting that the Plaintiff had

failed to ask the district court for more time to prepare for the witnesses or for more time to obtain rebuttal evidence, the Eighth Circuit held that the Plaintiff had not shown prejudice, and accordingly affirmed the denial of sanctions. *Id.*

Ward failed to distinguish these cases because he cannot. As in *Greyhound, Dockery*, and *Bunting*, here, Cisco has provided responsive, accurate answers months before trial (which is currently set for August 31, 2009 and therefore has not been prejudiced. He still over a month before the discovery deadline. Moreover, the Parties filed an agreed motion to continue the deadlines in this case for three months, and thus there has been no prejudice to Plaintiff.

Ward also has no answer to case law cited by Cisco showing that actual malice and falsity are both Constitutional elements that Ward must prove (*See New York Times v. Sullivan*, 376 U.S. 254, 286-87 (1967); *Campbell v. Citizens for Honest Government, Inc.*, 255 F.3d 560, 569 (8th Cir. 2001)) and elements of Arkansas' SLAPP statute. It would be improper for the Court to decide these essential issues based on Ward's complaints about Cisco's interrogatory responses, which are truthful and complete. Indeed, the Constitution and the Arkansas SLAPP statute compel that these fact issues be addressed directly, not awarded to the opposing party as a sanction. *Id.*; A.C.A. § 16-63-504.

Nor can Ward find a single case that would permit the Court to order the production of documents in response to interrogatories, though he purports to, citing *Best Buy Stores*, 2008 U.S. Dist. LEXIS 46217 at *4-5, which does not hold that the Court may require a party to produce documents in response to interrogatories. Indeed, the Court in that case reversed adverse inference sanctions and ordered that, where a party had failed to comply with a court's order compelling a document production "the most appropriate sanction is to reopen discovery

for the limited purpose of allowing defendants to request and Best Buy to produce all responsive documents." *Id.* at \*11-12.

Nor did Cisco admit that the documents Ward seeks (it is unclear what documents he is even asking for) are "relevant and not privileged" as Ward claims. (Reply at p. 28). How could it when Ward has failed to identify what documents it is asking the Court to order Cisco to produce? What Cisco did admit is that the information Frenkel relied on (meaning, as defined by Dictionary.com as "to depend confidently; put trust in") is relevant and that Frenkel did not rely on any privileged information in preparing the articles other than his conversations with Yen or Beckwith, which were identified in Cisco's response to the interrogatories. (Response at p. 10). Cisco has not withheld a single document that Frenkel relied on, and thus this issue is moot. Moreover, this case is nothing like the case cited by Ward, *Network Computing Services Corp. v. Cisco Systems, Inc.*, 223 F.R.D. 392, 401 (D.S.C. 2004), where the Court found "intentional destruction of material evidence, bad faith obstruction of discovery, and misrepresentations to the Court," as well as having already ordered monetary sanctions against the party being sanctioned. *Id.* at 396, 400. Indeed, in that case the Court held that a jury instruction as a sanction is appropriate in "rare cases" cases where there has been "clear and sanctionable conduct." *Id.* at 400. This is certainly not a "rare case" of "clear and sanctionable conduct," and the Court should therefore deny the Motion for Sanctions. *See id.*

### III.   THE COURT SHOULD GRANT CISCO'S MOTION TO MODIFY OR CLARIFY ITS MARCH 30, 2009 ORDER WITH RESPEC TO PRIVILEGE

Cisco seeks a modification or clarification of the reach of the Court's Order, which Cisco contends extends only to the interrogatory responses, the only thing at issue in the Order, but which Ward now claims extends to whatever privileged communications Ward wants.

### 1.   Cisco's Motion for a Modification or Clarification is timely

Cisco seeks modification or clarification of the Court's order, which the Court may do "on motion or on its own" "for any reason that justifies relief" within a "reasonable time." FED. R. CIV. P. 60 (a), (b) and (c).   Ward fails to explain why Cisco's motion was not made within a reasonable time.   Indeed, the rule itself contemplates that one year is a "reasonable time." FED. R. CIV. P. 60(c)(1).   Less than six weeks from the date the order was issued is certainly a "reasonable time," especially here where it was unclear at the time of the order that Ward would argue that the relief stretched beyond the relief requested in Ward's motion to compel interrogatory responses. *See id.*

### 2.   The Court should modify or clarify its Order because it is based on Ward's misrepresentation of Cisco's defense

Despite Cisco's numerous representations that it is not asserting a good faith reliance on counsel defense because Frenkel did not rely on legal advice from counsel in writing the complained-of articles (Frenkel Declaration, Exhibit B to the Response), Ward continues to misrepresent to this Court that Cisco is claiming such a defense, citing case law that held that defenses don't always have to be plead if they are otherwise asserted.   These cases are inapposite here where Cisco is <u>not asserting</u> the defense.   As Cisco's amended interrogatory and the Response make clear, Frenkel relied only on the facts he learned from his communication with

Yen or Beckwith—that is that ESN's local counsel called the court clerk and convinced the clerk to change the docket date of a pleading—not legal advice from them or anyone else.[3]

Ward's argument that this interrogatory response makes it "crystal clear" that Cisco is asserting a good faith reliance-on-counsel defense is absurd. Ward cannot make Cisco assert a defense it does not have to force Cisco to waive its privilege. *See* citation *infra* at p. 2. Indeed, Ward cites no case law holding that a litigant may force its opponent to claim an unfounded defense. Moreover, Frenkel's reliance on facts learned from counsel does not trigger "at issue" wavier. Ward claims that Cisco "waived privilege when it put Frenkel's communications with counsel at issue in ***this case***" by "making the express claim that Frenkel relied on privileged communications with legal counsel." (Response at p. 8). The underlying facts of the call to the court clerk, even if learned in a privileged conversation with counsel as here, are not privileged. *Sedco International, S.A. v. Cory*, 683 F.2d 1201, 1205 (8th Cir. 1982). Thus, "at issue" waiver is not implicated because privileged information is not "at issue." "At issue" are the facts as Frenkel received them from Yen or Beckwith, which are not privileged. *See id.*

As Ward has admitted, "at issue" waiver is designed to prevent a party from relying on privileged communications with counsel to benefit its cause, while at the same time shielding information that is harmful to him. In other words, a party may not rely on some privileged communications, using them as a sword, while hiding other privileged communications, using the privilege as a shield. This theory does not apply here for the simple reason that Cisco is not using privilege as a sword. Indeed, Cisco isn't using any privileged communications at all. It is uncontested that the fact of Albritton's conversation with the clerk of the court (and Ward's, if he had any) regarding changing the docket date for the ESN complaint were not privileged. Nor is

---

[3] Cisco has never altered or withdrawn this response as alleged by Ward.

the fact that Frenkel discovered that non-privileged fact from in-house counsel at Cisco privileged. *Id.* Cisco does indeed contend that it did not act with actual malice or with "bad faith," but it does not rely on any privileged communications to make that claim, and therefore it has not put privileged communications "at issue" or used privilege as a sword. *Id.*

Moreover, because Cisco is not relying on privileged communications, not one of the cases cited by Ward is applicable. It is telling that Ward relies on a case from the D.C. Circuit dated 1979 (*In re Grand Jury Invest. Of Ocean Trans.*, 604 F.2d 672, 675 (D.C. Cir. 1979)), in which the Court held that counsel had waived privilege where he produced documents, which were later brought to his attention, yet he "declined to assert the privilege," which is obviously inapplicable here where Cisco has steadfastly asserted and defended its privilege.

Just as inapplicable is *United States v. Workman*, 138 F.3d 1261, 1263 (8th Cir. 1998), where the Court held that attorney-client privilege may be waived by "raising attorney advice as a defense." This clearly does not apply here, where Cisco is <u>not</u> relying on confidential communications with counsel in its defense. Nor does *Sedco International, S.A. v. Cory*, 683 F.2d 1201 (8th Cir. 1982) support Ward's waiver argument as he alleges. Instead, in that case, the Court found that there had been <u>no waiver</u> because, as in this case, the party had only placed at issue <u>facts</u> communicated by the attorney, which were not privileged, and had not put the attorneys' legal advice at issue. *Id.* at 1205-07.

Similarly, in *Burress v. Union Pac. R.R.*, 2007 U.S. Dist. LEXIS 1749 (E.D. Ark. Jan. 8, 2007), the Court held that "as a general rule, a party does not waive the attorney-client privilege by simply bringing or defending a lawsuit… A protected communication is not place in issue just because it is relevant" but rather is "waived when the party attempts to prove the claim or defense by disclosing or relying on attorney client communication." *Id.* at *4. Unlike *Burress*,

in this case Frenkel did not rely on any privileged communications in making the complained-of statements, as Plaintiff admits (Exhibit E to the Response, Email from Patty Peden, counsel for Plaintiff to Charles Babcock), and thus Cisco does not attempt to claim a defense by disclosing or relying on privileged communications. Therefore, the privilege had not been waived. *Id.*

Ward's last argument is simply that he thinks the documents are relevant, which is not sufficient to overcome privilege. *See, e.g.*, *Baker v. General Motors Corp.*, 209 F.3d 1051, 1055 (8th Cir. 2000); *Nuckles v. Wal-Mart Stores, Inc.*, 2007 WL 1546092 at *1-2 (E.D. Ark. May 25, 2007, no pet.) (holding that relevant conversations with a former employee were privileged and thus not discoverable.) He claims that the Court should find waiver because he thinks that Cisco will make factual representations that he suspects will allegedly be contrary to what privileged documents will reveal. However, this is also not a proper basis for waiver. *Baker*, 2009 F.3d at 1055 (rejecting this same argument and holding that it was "clear error" to waive privilege on this basis.) Therefore, there has been no waiver.

The fact that some[4] (certainly not all) of the privileged documents in the case were produced under protective orders and non-waiver agreements in the Albritton case does not waive the privilege, especially here where the very lawyers representing Ward agreed to be bound by the non-waiver agreement, in which they agreed not to argue that production of the documents waived privilege. (Exhibit C); FED. R. EVID. 501(d) (an agreement on the effect of disclosure is binding on the parties to the agreement).

None of the case law cited by Ward supports his position. In *In re Chrysler Motors Corp. Overnight Evaluation Program Litigation*, 860 F.2d 844, 847 (8th Cir. 1988) the discussion of waiver was dicta because the Court held that the government had overcome the privilege by

---

[4] Albritton doesn't claim exactly what documents he is alleging are no longer privileged. It should be clear, however, that Cisco did NOT produce all of its privileged and work product documents in the Albritton case as Ward implies.

showing hardship, a claim that Ward has never asserted. *Id.* at 845. Moreover, in that case, the Court had modified the protective order, which made the privileged tape discoverable. *Id.* at 845. In the Albritton case, the Protective Order still stands and protects the confidentiality of the privileged documents that were produced, although the privileged documents that were produced may be used at trial. Moreover, unlike the *Chrysler* case, in the Albritton case, the attorneys expressly agreed not to argue waiver of privilege on the basis of the production. (Exhibit C).

Nor has the Albritton Court held that Cisco waived privilege as Ward baldly alleges, but rather refused to close the courtroom during the Albritton trial because of the public right of access.

Ward's complaints about the "Albritton agreement" are also unfounded, as Cisco has agreed to permit Ward to use the documents Cisco produced in the Albritton case freely in this case, unlike the Albritton case in which Albritton complains that the Protective Order required that such documents be filed under seal, so long as ESN (as it already has agreed) will not attempt to use the production as a grounds for waiver in the *ESN v. Cisco* case. If Ward truly believed, as he argues in the Reply, that the documents are irrelevant to that case and that Cisco will not be harmed by their production (Reply at p. 5), it is a mystery why he would not agree to this arrangement, especially where as here ESN has already agreed. (Exhibit C).

The harm of a waiver to Cisco is evident. Cisco's privileged documents reveal its legal strategy in that case, which is ongoing. Indeed, one of the documents on Cisco's privilege log is Cisco's invalidity analysis of the very patent at issue in the *ESN v. Cisco* case. Numerous cases have noted the importance of keeping opinion work product safe from discovery, even holding that such documents are entitled to "almost absolute immunity." *Baker v. General Motors Corp.*, 209 F.3d 1051, 1054-55 (8th Cir. 2000); *see also In re Grand Jury Proceedings*, 473 F.2d 840,

848 (8th Cir. 1973); *In re Chrysler Motors Corp. Overnight Evaluation Program Litigation*, 860 F.2d 844, 846 (8th Cir. 1988). These cases recognize the inherent harm Cisco would suffer if the Court deprived Cisco of its privilege and work product protection.

3.      **Documents at issue are protected by opinion work product doctrine and are entitled to "almost absolute immunity"**

        Many of Cisco's documents and communications in this case are not only protected by the attorney-client privilege, but also work product protection, an issue that Ward fails to even address for good reason, as the Eight Circuit has held that opinion work product is entitled to "almost absolute immunity." *Baker*, 209 F.3d at 1054-55 (holding that it was an abuse of discretion to order production of work product where the opposing party argued "at issue" waiver); *In re Grand Jury Proceedings*, 473 F.2d at 848; *In re Chrysler Motors Corp. Overnight Evaluation Program Litigation*, 860 F.2d at 846 ("opinion work product enjoys a very nearly absolute immunity and can be discovered only in very rare and extraordinary circumstances.") This is because the attorneys' mental processes should not be revealed. *See Baker*, 209 F.3d at 1054. Indeed, the Eighth Circuit has held even at "at issue" waiver of attorney-client privilege does not waive work product. *Id.* at 1055. Therefore, Albritton cannot overcome Cisco's work product protection, and the Court should modify the Order accordingly.

4.      **Modification of the Order**

        What the parties dispute, and what Cisco believes is unclear about the Order, is exactly what privilege the Court says "appears" to be waived. As stated in the Response, Cisco believes this "appearance" was caused by Ward's effort to assert a defense that Cisco did not assert and claim that Cisco would rely on privileged documents, which it does not. Therefore, the Court should amend the Order to state that although Cisco must comply with the interrogatory (which it has already done), it has not waived any privilege.

Even if the Court finds that Cisco has waived a privilege, Cisco seeks clarification of what it has waived.  For instance, Cisco requests a modification to state that there has been no waiver of work product protection, which is protected by "almost absolute immunity."  Cisco also requests a clarification of the scope of the waiver.  For instance, Cisco alleges that, if any, it should be limited to communications or documents that Frenkel relied on in making the post— exactly the interrogatory posed by Ward (there would be no responsive privileged communications).

For these reasons, the Ward's Motion should be denied in its entirety and the Court should grant Cisco's motion clarifying that although Cisco must comply with the interrogatory (which it has already done), (1) the Order relates only to Cisco's interrogatory responses; (2) there has been no waiver of Cisco's attorney-client privilege; (3) there has been no waiver of Cisco's work product protection.  Cisco requests that the court grant it a hearing on this issue pursuant to the Due Process Clause of the United States Constitution.

Respectfully submitted,

JACKSON WALKER L.L.P.

By: */s/ Charles L. Babcock*
      Charles L. Babcock
      Federal Bar No.: 10982
      Email: cbabcock@jw.com
      Crystal J. Parker
      Federal Bar No.: 621142
      Email: cparker@jw.com
      1401 McKinney
      Suite 1900
      Houston, Texas 77010
      (713) 752-4200
      (713) 752-4221 – Fax

ATTORNEYS FOR DEFENDANT
CISCO SYSTEMS, INC.

## CERTIFICATE OF SERVICE

This is to certify that on this 4th day of June, 2009, a true and correct copy of the foregoing was served via electronic mail upon:

| | |
|---|---|
| Patricia L. Peden | Nicholas H. Patton |
| Law Offices of Patricia L. Peden | Patton, Tidwell & Schroeder, LLP |
| 5901 Christie Avenue | 4605 Texas Boulevard |
| Suite 201 | P.O. Box 5398 |
| Emeryville, CA 94608 | Texarkana, Texas 75505-5398 |
| *Attorney for Plaintiff John Ward, Jr.* | *Attorney for John Ward, Jr.* |

*/s/ Charles L. Babcock*
Charles L. Babcock