IN THE UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF ARKANSAS
TEXARKANA DIVISION

| | | |
|---|---|---|
| **JOHN WARD, JR.** | § § | |
| **Plaintiff** | § § | No. 08-4022 |
| **v.** | § § | JURY TRIAL DEMANDED |
| **CISCO SYSTEMS, INC.** | § § § | |
| **Defendant.** | § § | |

**PLAINTIFF WARD'S RESPONSE TO
NEW ARGUMENT RAISED IN CISCO'S SUR-REPLY**

I.     Introduction

Plaintiff John Ward Jr. hereby files this brief to address new case law and argument raised for the first time in Cisco's Sur-Reply.

1. <u>Cisco's Motion For Reconsideration Should Be Denied</u>

Cisco asked the Court to reconsider its ruling. In Response, Ward argued that Cisco had cited no Rule, authority, or justification for seeking reconsideration. *See* D.E. 64 (Ward's Reply) at 2-5. Cisco provides the legal basis of its request for the first time in Sur-Reply, citing "Fed. R. Civ. P. 60 (a), (b) and (c)."[1] *See* D.E. 67 at 8.

Cisco still leaves it to the Court to speculate regarding which of the six enumerated alternatives found in Rule 60(b) it believes are applicable. Cisco's failure to state the grounds for its motion precludes the relief it seeks. *See Broadux v. Moore*, 1993 U.S. App. LEXIS 16360, at *2-3 (8th Cir. July 7, 1993) ("A motion can be considered under Rule 60(b) . . . ***only if it states grounds for relief available under the rule***."), citing *Reyher v. Champion Int'l Corp.*, 975 F.2d 483, 488 (8th Cir. 1992) and attached hereto as Exh. A.

Cisco's request meets none of the requirements of Rule 60(b). *See* Fed. R. Civ. P. 60(b) (listing grounds for relief as including (1) mistake, inadvertence, surprise, or excusable neglect, (2) newly discovered evidence, (3) fraud, misrepresentation or misconduct of an adverse party, (4) void judgment, (5) satisfaction or inequitable judgment, or (6) sufficient justification for relief from judgment). The Court's Order was not the result of mistake, inadvertence, or excusable neglect, Cisco doesn't purport to rely on newly-discovered evidence, Ward's reliance on Cisco's interrogatory responses stating that Frenkel relied on privileged communications with counsel is not fraudulent, the judgment has not been satisfied or excused, and Cisco has offered no other reason justifying relief from this Court's Order.

---

[1] Cisco seeks to portray its Response as an independent motion. *See* D.E. 67 (Sur-Reply) at 1 (Title of pleading is not limited to Ward's motion but also contains a reference to Defendant's "Motion to Amend or Clarify the March 30, 2009 Order Regarding Waiver of Attorney-Client Privilege."). Cisco does not have a motion for reconsideration pending . Cisco's "motion" also fails to state the grounds for its motion with "particularity" as required by Fed. R. Civ. P. 7(b)(1)(B) or to meet the Local Rules requirement that all motions "be accompanied by a brief consisting of a concise statement of relevant facts and applicable law." *See* L.R. 7.2.

1

Relief is available under Rule 60(b) only where exceptional circumstances have denied the moving party a full and fair opportunity to litigate his claim. *See Furminator, Inc. v. Munchkin, Inc.*, 2009 U.S. Dist. LEXIS 36015, at *5 (E.D. Mo. Apr. 28, 2009), *citing Harley v. Zoesch*, 413 F.3d 866, 871 (8th Cir. 2005), attached hereto as Exh. B. Cisco had a full and fair opportunity to argue its position during the underlying Motion to Compel, and the fact that it lost is not "exceptional" circumstances justifying Rule 60 relief. Cisco's arguments based on its "amended" and "superseding" interrogatory responses cannot serve to overturn this Court's Order which was properly decided on the record before it. *See e.g., Miller v. Baker Implement Co.*, 439 F.3d 407, 415 (8th Cir. 2006) (court correctly based denial of reconsideration on the record produced by the parties).

In deciding if Cisco's Rule 60(b) "motion" is timely, the Court is entitled to consider that Cisco failed to bring a "motion" for reconsideration until after Ward was forced to move for compliance and for sanctions. *See e.g., id.* at 414 (noting that movant "failed to avail himself to available discovery remedies before the district court issued its order. . . .").

2. Cisco's Newly-Offered Legal Authority Does Nothing To Undermine The Court's Order

Cisco waited until its Sur-Reply (when Ward would not have an opportunity to respond) to cite legal authority in support of its non-waiver argument; legal authority that Ward pointed out was completely absent from Cisco's Response. *See* D.E. 64 at 5, n. 3. None of the non-controlling authority cited by Cisco undermines the correctness of this Court's March 30th Order.

Cisco's citation to *Claffey v. River Oaks Hyundai*, 486 F. Supp. 2d 776, 778 (N. D. Ill. 2007) actually undermines its argument. *See* Sur-Reply at 2. There, the Court held that the fact that the defendant's state of mind **might have been "theoretically"** affected by advice of legal counsel is not enough to waive privilege. *See id.* at 778 (emphasis added). The Court expressly stated, however, that where a party uses advice provided by counsel to defend itself against plaintiff's claims, it triggers a waiver. *See id.*

Here, the fact that information obtained by Baker Botts affected Frenkel's state of mind is

2

far from "theoretical." Information obtained by Baker Botts was referenced in Frenkel's October 18, 2007 post. Cisco and Frenkel have stated several times under oath in the Albritton case that Frenklel relied on information he received from Baker Botts. *See* D.E. 61 at 10-13. Cisco's original interrogatory response expressly stated that Frenkel relied on "privileged discussions with legal counsel." *See id.,* Exh. K at 7. Cisco has yet to explain why it has taken a different position only after this Court's Order issued. Even then, Cisco admits that Frenkel was party to an oral conversation with Yen or Beckwith wherein he obtained information provided by Baker Botts upon which he relied in making accusations about Ward. *See* D.E. 64, Exh. 2 at 48, no. 4.

Cisco claims that there can be no waiver because Frenkel didn't get information **directly** from Baker Botts. Cisco's "indirect communication" argument cannot insulate it from the Court's Order finding waiver, as the *Claffey* case cited by Cisco makes clear. In a part of the Court's opinion not cited by Cisco, the *Claffey* Court distinguished "theoretical" reliance that doesn't trigger a waiver from "indirect reliance," that does. *See* 486 F. Supp. 2d at 778-79. The *Claffey* Court expressly found that waiver would be found if the defendant offered even **indirect** communications with counsel in support of its defense. *See id.* The Court held:

> "Though [defendant] says it does not intend to argue that its personnel *actually* consulted with counsel, its introduction of such documents would leave a fact finder with the distinct impression that [defendant] relied on advice by counsel on the matters at issue in this case. Were [defendant] allowed to create this impression but still maintain its attorney-client privilege; it would in effect be using the privilege as both a shield and a sword, which is not permitted. [Defendant] cannot have it both ways; [it] cannot seek refuge in consultation with counsel as evidence of [its] good faith yet prevent [plaintiffs] from discovering the contents of the communication."

*See id.* (emphasis in original) (internal citation omitted), *citing United States v. Bilzerian*, 926 F.2d 1285, 1292 (2d Cir. 1991). The *Claffey* Court would find waiver on the facts of this case.

Cisco's reliance on *Advertising to Women, Inc. v. Gianni Versace*, 1999 WL 608711 (N.D. Ill. Aug. 4, 1999) is equally misplaced. The affirmative defense at issue in that case was the equitable doctrine of laches. The Court held that the elements required to prove a laches defense ***do not require an inquiry into the defendant's state of mind***. *Id.* at *6 (emphasis added). The Court distinguished cases finding waiver when the related defense of equitable

3

estoppel was asserted as presenting a different factual situation because equitable estoppel requires an inquiry into the defendant's state of mind. *See id.* The Court stated that when equitable estoppel was asserted (and therefore putting the defendant's state of mind at issue) and when a defendant relied on information received from counsel in support of that defense, waiver of privilege is appropriate. *See id.*

In this case, Cisco has asserted defenses (including affirmative defenses) that require an inquiry into whether it and Frenkel acted in "good faith." Cisco has triggered an "at issue" waiver by putting good faith at issue, offering portions of the communications between Baker Botts and Cisco (Powell's call to the court clerk and Yen/Beckwith's conveyance of that information to Frenkel) to support its defenses, and by providing sworn declarations, deposition testimony, and interrogatory responses stating that Frenkel relied on information provided by Baker Botts. On these facts, the *Advertising to Women* Court would find waiver.

Cisco also newly cites *Dixie Mill Supply Co., Inc. v. Continental Cas. Co.*, 168 F.R.D. 554 (E.D. La. 1996) (a bad faith insurance case) for the proposition that pleading bad faith is not a basis upon which to find waiver. The *Dixie Mill* Court rejected the idea that a Plaintiff's pleading bad faith in its Complaint is sufficient alone to trigger a waiver of Defendant's privilege. *See id.* at 556. But that Court held that it would find waiver where the withholding party "will be forced inevitably to draw upon a privileged communication at trial in order to prevail" or when "the privilege holder[s] have committed [themselves] to a course of action that will require the disclosure of a privileged communication." *Id.* at 557.

Even under the reasoning applied in *Dixie Mill*, Cisco triggered a waiver in this case. In arguing that it acted in good faith and by asserting affirmative defenses that require a showing of good faith, Cisco must explain to the jury how Frenkle learned that ESN's counsel called the court clerk, why Frenkel believed the information he received was reliable, why Frenkel omitted known facts demonstrating that there was no "conspiracy" to "alter" governmental records, and why, in light of contrary evidence, he still opted to use words that accuse Ward of criminal and unethical conduct. Information provided by Baker Botts will inevitably be introduced at trial, as

4

Cisco has acknowledged in its interrogatory responses. *See* D.E. 61 *See id.*, Exh. K at 7 and D.E. 64, Exh. 2 at 48, no. 4. The *Dixie Mills* Court would likely find that Cisco has committed itself to a course of action that requires disclosure of the privileged communications it is withholding.

Cisco cites to *In re ML-Lee Acquisition Fund II, L.P.*, 848 F. Supp. 527, 565 (D. Del. 1994) for the proposition that a Court can find waiver only if the defendant asserts a reliance on advice of counsel defense. Cisco continues to ignore the broader reach of the "at issue" waiver and continues to wrongly argue that before a waiver can be found in this case, it must have affirmatively pleaded a reliance on advice of counsel defense. Cisco need not expressly plead "reliance on advice of counsel" as a separate and distinct affirmative defense in order to trigger a waiver. *See Sedco Inter'l, S.A. v. Cory*, 683 F.2d 1201, 1206 (8th Cir. 1982). Such a rule would permit any party to use privilege as a shield and a sword so long as it was careful not to use specific "buzz words" in its Answer. The law of waiver, which is grounded in fundamental fairness, does not depend on such formalistic rules.

Nothing in *ML-Lee* supports Cisco's attempt to undo the waiver this Court has already found. In *ML-Lee*, the Court held that a ruling on the issue of waiver was premature given that Defendants had not yet filed an Answer. *Id.* at 565. Although Court did not resolve the issue and thus Cisco has cited mere dicta, the Court did hold that ***"[i]f, after a review of the documents in light of Defendants' witnesses deposition testimony as cited by the Plaintiffs, the Court determines that Defendants are using the privilege as a shield to liability***, <u>***or***</u> if Defendants subsequently raise a reliance on counsel defense, the Court ***will*** order Defendants to produce the requested discovery." *Id.* (emphasis added).

Here, Cisco is using communications with counsel as a shield to liability. Cisco intends to argue to the jury that facts uncovered by Baker Botts were true and conveyed by Frenkel to his readers in good faith. Cisco cannot make that argument to the jury and at the same time withhold documents from Ward demonstrating that Cisco's assertions are not true. That is the classic shield/sword problem for which the *ML-Lee* Court stated it too would find waiver.

5

3.  After Insisting That It Was Not Offering A "Good Faith" Defense, Cisco's Sur-Reply Now Asserts Its Defamatory Statements Were Made In "Good Faith"

Cisco repeatedly argued in its Response that it was not asserting a "good faith" defense. *See* D.E. 63 (Cisco's Response) at 4 (stating that Ward falsely claims that Cisco is asserting a good faith defense generally); at 5 (Cisco "is not asserting, and never has asserted a good faith defense"; at 8 (heading IV: "Cisco Has Not Asserted a Good Faith Defense," "Plaintiff has created this "good faith" defense out of whole cloth" and "One would think that if Cisco was asserting a "good faith" defense that the words "good faith" would be somewhere [in Cisco's Answer]).

Ward's Reply argued that if Cisco is truly not claiming that it acted in "good faith," then it should have no objection to the Court instructing the jury to that effect. *See* D.E. 64 at 28.

In Sur-Reply, Ward believes that Cisco has reversed itself by arguing that "Cisco does indeed contend that it did not act with actual malice or with 'bad faith.'" *See* Sur-Reply at 10. There is no way out of Cisco's conundrum. If Cisco is not asserting a "good faith" defense, then the jury should be instructed to that effect. If Cisco is going to argue to the jury—as it says in Sur-Reply it will—that its statements were made in "good faith" and without malice, Cisco must produce the requested discovery to Ward.

What Cisco *chooses* to use to present its side of the story is immaterial. Cisco cannot selectively argue facts that support its case while withholding evidence from Ward (and the jury) showing that its professed "good faith" is false. Cisco wants to lift the privilege veil far enough to let in some information (Powell called the court clerk, Baker Botts gave that information to Yen or Beckwith and they passed along to Frenkel) from which it can argue that Frenkel thought in good faith that his accusations were true. At the same time, Cisco wants the Court's permission to withhold evidence demonstrating that Baker Botts told Cisco that there had been an error in the Court's software, that the *ESN* Complaint was filed on October 16, 2007, that the Court had jurisdiction in the *ESN* case, that the Court merely made a correcting entry, and that there was no "conspiracy" to "alter" governmental records. Cisco would also withhold evidence

that Cisco's Vice President, Mallun Yen, engaged the help of Cisco's Public Relations Manager, John Noh, Frenkel and, upon information and belief, others at Cisco in a deliberate effort to make false public accusations about Ward out of spite. Cisco would prevent the jury from hearing that Yen, Noh, and Frenkel opted to defame Ward anonymously so that its accusations could not be traced back to Cisco. Cisco also doesn't want the jury to see evidence showing that Cisco was hoping to turn the events surrounding the filing of the *ESN* Complaint to its advantage in settlement discussions with ESN.

The jury is entitled to hear all relevant facts in deciding whether it will accept Cisco's claims of good faith and lack of malice—not just those that Cisco opts to introduce. Having relied upon some of the communications between Cisco and Baker Botts, Cisco has triggered a waiver as the entire subject-matter of "good faith"; a conclusion that is necessary to prevent Cisco's attempt to cherry-pick from the evidence. *See Burress v. Union Pac. R.R.*, 2007 U.S. Dist. LEXIS 1749, at *4-5 (E.D. Ark. Jan. 8, 2007) ("[A] defendant may not use the privilege to prejudice his opponent's case by disclosing selected communications for self-serving purposes. Thus, the privilege may be waived when a party asserts a claim that, in all fairness, requires examination of each party's protected communications."), attached to D.E. 64 as Exh. 6.

4. The Sur-Reply's Argument That "The Documents At Issue Are Protected By Opinion Work Product Doctrine And Are Entitled To "Almost Absolute Immunity" Does Not Undermine The Court's March 30, 2009 Order Or Excuse Cisco's Noncompliance

Although the privilege issue now before the Court was briefed in the underlying Motion to Compel and in Cisco's Response, Cisco waited until its Sur-Reply to argue that the Court must modify or amend its March 30, 2009 Order because some of the implicated documents may contain "core" opinion work product afforded "almost absolute immunity." *See* D.E. 67 at 13.

Cisco bears the initial burden of proving a factual basis establishing the applicability of the privilege it asserts. *See Brawner v. Allstate Indem. Co.*, 2007 U.S. Dist. LEXIS 84801, at *8 (E.D. Ark. Oct. 29, 2007), *citing Rabushka v. Crane Co.*, 122 F.3d 559, 565 (8th Cir. 1997), attached hereto as Exh. C. To meet that burden, Cisco was required to provide the Court with a detailed privilege log and an affidavit from counsel supporting its claims of privilege. *See id.*,

7

citing *Zar v. South Dakota Bd. of Examiners of Psychologists*, 976 F.2d 459, 463-64 (8th Cir. 1992). Only if Cisco had made that showing would the burden then have shifted to Ward to prove "substantial need" and "undue hardship." *See id.*

Not only did Cisco fail to meet its burden of proving work product protection, it took affirmative steps to ensure that the Court could not evaluate the merit of its claims. After Cisco complained that Ward had not identified the documents at issue,[2] Ward asked Cisco to agree to submit documents to the Court for *in camera* review. Cisco refused. *See* D.E. 64, Exh. 4. Cisco cannot now—and only in Sur-Reply—assert a "core work-product" privilege that it has not argued, has not sought to prove, and for which it has taken affirmative steps to prevent the Court from evaluating its claims.

Even if Cisco could belatedly assert a "core work product" privilege, Cisco's argument does nothing to undermine the Court's Order. The vast majority of the documents at issue—and the documents that Ward's counsel expected to see listed in response to Ward's Interrogatory Nos. 5 & 6—have been produced in the *Albritton* case. For those documents, Cisco has no work product privilege left to assert. The case law in this Circuit is clear: disclosure of work product to an adversary waives privilege protection, even if disclosure is made under a confidentiality agreement. *See In re Chrysler Motors Corp. Overnight Evaluation Program Litig.*, 860 F.2d 844, 846 (8th Cir. 1988).

For the small number of remaining documents, as Ward argued in his Reply, he has demonstrated "substantial need" because he cannot get discovery about Cisco and Frenkel's state of mind from any other source. *See* D.E. 64 at 11. Ward cannot obtain that evidence from witness testimony because Cisco has instructed deposition witnesses (and will continue to instruct without a finding of waiver) not to answer Ward's questions on the basis of privilege. *See* D.E. 64, Exh. 9 at 92:22-96:6.

---

[2] Ward cannot be faulted for not identifying documents responsive to Interrogatories No. 5 & 6, which were served for the express purpose of having Cisco identify the documents at issue. Although Ward's counsel is familiar with the documents Cisco produced in the *Albritton* case, they cannot identify the documents to the Court without being accused by Cisco of violating the Albritton Protective Order, as witnessed by the unfounded accusations of Protective Order violations made in Cisco's Response. *See* D.E. at 12; Exh. A at ¶¶ 6-7.

The case newly-cited in the Sur-Reply does nothing to aid Cisco's cause. In *Baker*, the moving party could not demonstrate substantial need and undue hardship because it merely sought corroborative evidence to counter the testimony of an otherwise available witness. *See Baker v. GMC*, 209 F.3d 1051, 1055 (8th Cir. 2000). Here, Ward is seeking critical evidence on key issues in this case for which there is no other source of discovery. *See Brawner*, 2007 U.S. Dist. LEXIS 84801, at *10 (overruling work product claims and finding that discovery sought was necessary to address bad faith issues in case).

> 5. The Sur-Reply's New Argument That Ward's Counsel's Representation Of Albritton Makes The Albritton Agreement Binding On Ward Is Meritless

In its Response, Cisco acknowledged that the Albritton Agreement had not been accepted by Ward, but urged the Court to force Ward to accept that agreement. *See* D.E. 63 at 12 ("We have suggested that the proper way to handle this situation is to have an agreement whereby ESN, Albritton, Ward and Cisco enter into an agreement about the scope of production all parties are willing to make. . . . Although the parties are still discussing the matter, **no agreement has yet been reached.**"). *Id.* (emphasis added).

Ward's Reply explained why he cannot accept the broken *Albritton* Agreement. *See* D.E. # 64 at 22-25.

The Sur-Reply does not address Ward's criticisms of the *Albritton* Agreement. Instead, Cisco newly argues that because Ward's counsel in this case also represents Albritton in the Texas Case, Ward's counsel has already agreed to be bound by the terms of the *Albritton* Agreement, and therefore there can be no waiver. *See* D.E. 67 at 11.

Cisco's new argument rests on misleading facts and faulty logic. As Cisco's own exhibits demonstrate, Ward's counsel was not original counsel of record for Albritton. *See* D.E. 67, Exh. C at 5 (Cisco negotiating with Jamey Holmes). Because the *Albritton* Agreement had already been negotiated at the time that Mr. Patton and Ms. Peden replaced Mr. Holmes as lead counsel, they accepted the terms of the agreement.

More importantly, the Plaintiff *in this case*, never agreed to Cisco's terms. The record on

9

that point is clear. The emails attached to Cisco's Sur-Reply demonstrate that Albritton's counsel knew that he was going to have to "reach-out" to Ward's counsel to get any such agreement. *See id.* Ward did not agree. Cisco produced its documents to Albritton even in the absence of an agreement with Ward. Early in this case, Cisco sought to force its one-sided terms on Ward by insisting on a Protective Order that included many of the terms Cisco obtained in the agreement with Albritton. Ward refused. At every turn, Ward has refused to be bound by the terms of the *Albritton* Agreement, which are designed to let Cisco pick and choose what evidence the jury hears. Cisco has no credible basis for arguing that an agreement reached by attorneys in another case while acting for another client can bind Ward to an unfair agreement that he has steadfastly refused to accept in his case.

The Sur-reply cites to Fed. R. Evid. 501(d) for the proposition that the *Albritton* Agreement is binding on Ward.[3] *See* D.E. 67 at 11. Cisco twice sought an Order from Judge Schell in the *Albritton* Case asking him to make the *Albritton* Agreement binding on non-parties, including Ward. *See* Exhs. D & E. Judge Schell denied Cisco's requests, which were both based on the same argument now advanced by Cisco. *See* Exh. F. It is wrong for Cisco to argue that the *Albritton* Agreement is binding on Ward when Judge Schell found otherwise.

Cisco's citation to the Federal Rules of Evidence for support is flawed because the Rules cannot convert a document that is no longer privileged by virtue of a party's deliberate and knowing production into one that is privileged. Indeed, the only place where the Rules expressly deal with purposefully produced documents is in connection with whether the Court should compel production of even more materials (the sword/shield issue). *See* FRE 502(a). In that regard, Rule 502 undermines Cisco's argument.

Cisco's new argument seeks to portray Ward as a party to the *Albritton* Agreement via his counsel's work for Albritton to overcome the holding *In re Chrysler Motors Corp. Overnight*

---

[3] Cisco's newly-offered citation cannot support its argument because there is no Fed. R. Evid. 501(d). Ward believes that Cisco meant to argue Fed. R. Evid. 502(d), which was adopted after this case was filed and is likely not applicable. Even if that Rule were to apply, the Rule addresses inadvertent waiver during document production and does not apply to the type of substantive "at issue" waiver or waiver by intentional production before the Court.

*Evaluation Program Litigation*, 860 F.2d 844, 847 (8th Cir. 1988), wherein the Court held that the production of documents to a litigation opponent waives privilege—even if there is a confidentiality agreement in place. *See* D.E. 67 (Sur-Reply) at 11. Cisco's new argument is futile. Ward is not a party to the *Albritton* case. Ward did not sign-off on the *Albritton* Agreement. Nonetheless, Cisco voluntarily produced to Albritton the very documents it now claims are too confidential to give Ward. Cisco's decision to produce its documents to Albritton, waives its right to assert any claim of privilege for those documents. *Id.*; *Adams Land & Cattle Co. v. Hartford Fire Ins. Co.*, 2008 U.S. Dist. LEXIS 4089, at *6 (D. Neb. Jan. 18, 2008) (same). The very cornerstone of the attorney-client privilege is confidentiality. Once confidentiality has been intentionally breached, the communication can no longer be said to be privileged. The ship of privilege has sailed. It cannot come back, no matter how many times Cisco shouts from the dock.

6. The Constitution And the Arkansas SLAPP Statue Do Not Inoculate Cisco Against Sanctions

In Sur-Reply, Cisco newly argues that the Court is prevented from awarding sanctions in this case because "the Constitution and the Arkansas SLAPP statute compel that these fact issues be addressed directly, not awarded to the opposing party as a sanction."[4] *See* D.E. 67 at 6, citing *Campbell v. Citizens for Honest Government, Inc.*, 255 F.3d 560, 569 (8th Cir. 2001)[5]; A.C.A. § 16-63-504.[6]

Cisco's new argument finds no support in the law. Federal Rule of Civil Procedure 37 does not restrict the Court's ability to order sanctions in cases raising constitutional issues. To find otherwise would give litigants with constitutional claims free reign to ignore Court orders that all other litigants must obey. There is "no special First Amendment exception" to prevent

---

[4] In Response to Ward's request for Sanctions, Cisco made a vague and conclusory argument to the effect that ordering sanctions in this case would have "Constitutional implications." *See* D.E. 63 (Cisco's Response) at 16.
[5] Cisco's citation to this case does not support its cause. Nothing in that case holds that a Court cannot order Rule 37 sanctions in a defamation case.
[6] Cisco's citation to A.C.A. § 16-63-504 is likewise meritless because nothing in that statute gives defamation defendants immunity from Rule 37 sanctions.

11

sanctions where a party disregards its discovery obligations and willfully violates a Court Order. *See Metro. Opera Ass'n v. Local 100, Hotel Emples. & Rest. Emples. Int'l Union*, 2004 U.S. Dist. LEXIS 17093, at *44 (S.D.N.Y. Aug. 27, 2004), attached hereto as Exh. G.  There is "no case law holding that a judgment on liability cannot be entered on a defamation claim either generally or specifically as a sanction for misconduct under Rules 26 and 37, 28 U.S.C. § 1927 or the Court's inherent power. . . . . To the contrary, a number of cases have directed the entry of judgment against defendants on defamation claims as a discovery sanction or for failure to answer." *Id.*

  Cisco is subject to the same rules as any other litigant in this Court.  Cisco's right to present its case, just like those of any other litigant, are conditioned on compliance with the rules.  *See id.*  And, whether or not Cisco's defenses rest on First Amendment principals, it is equally subject to sanctions, including sanctions striking its "good faith" or "lack of malice defenses" for failure to comply with the Court's March 30, 2009 Order.  *See id.*

                Respectfully submitted,

                */s/ Nicholas H. Patton*
                Nicholas H. Patton (SBN: 63035)
                PATTON, TIDWELL & SCHROEDER, LLP
                4605 Texas Boulevard - P. O. Box 5398
                Texarkana, Texas 7550505398
                (903) 792-7080  (903) 792-8233 (fax)

                Patricia L. Peden
                LAW OFFICE OF PATRICIA L. PEDEN
                1316 67th Street
                Suite 6
                Emeryville, CA 94608
                Telephone: (510) 268-8033

                ATTORNEYS FOR PLAINTIFF

## CERTIFICATE OF SERVICE

    This is to certify that on this l2th day of June, 2009, a true and correct copy of the foregoing document was served electronically upon:

| | |
|---|---|
| Richard E. Griffin<br>Charles Babcock<br>Crystal Parker<br>JACKSON WALKER, LLP<br>1401 McKinney<br>Suite 1900<br>Houston, Texas 77010 | Attorney for Defendant Cisco Systems, Inc. |

/s/ Nicholas H. Patton

Nicholas H. Patton

13