# EXHIBIT B

Dockets.Justia.com

Westlaw

Not Reported in S.W.3d
Not Reported in S.W.3d, 2008 WL 4767468 (Ark.App.)
**(Cite as: 2008 WL 4767468 (Ark.App.))**

Page 1

Only the Westlaw citation is currently available.

NOTICE: NOT DESIGNATED FOR PUBLICATION. SEE REVISED SUPREME COURT RULE 5-2.

NOT DESIGNATED FOR PUBLICATION

Court of Appeals of Arkansas.
L. Catherine LOGAN, Appellant
v.
SMITH READY MIX, INC., Appellee.
**No. CA 08-387.**

Oct. 29, 2008.

Appeal from the Hot Spring County Circuit Court [No. CV-2005-211-1], Chris E. Williams, Judge.

JOSEPHINE LINKER HART, Judge.

*1 Appellant, L. Catherine Logan, filed an amended complaint alleging negligence and intentional infliction of mental distress by appellee, Smith Ready Mix, Inc. Relying on Rule 12(b)(6) of the Arkansas Rules of Civil Procedure, the circuit court dismissed the cause of action without prejudice, after finding that appellant failed to plead a sufficient cause of action. She appeals that decision, but we affirm it.

In an appellate review of a circuit court's decision on a motion to dismiss under Rule 12(b)(6), the facts alleged in the complaint are treated as true and viewed in the light most favorable to the plaintiff, all reasonable inferences are resolved in favor of the complaint, and the pleadings are liberally construed. See, e.g., Perry v. Baptist Health, 358 Ark. 238, 189 S.W.3d 54 (2004). A complaint, however, must state facts-not mere conclusions-in order to entitle the pleader to relief, and the appellate court will look to the underlying facts supporting an alleged cause of action to determine whether the matter has been sufficiently pled. Id.

According to appellant's complaint, on May 2, 2003, appellant's son, Aaron Paul Logan, was walking on a catwalk when his jacket or shirt became entangled in the conveyer belt of a conveyer system used by appellee. Logan's hand and arm were pulled under the conveyer belt, causing his head to strike a metal speed reduction box, resulting in his death. When appellee's other employees stopped the conveyer, Logan was suspended from the top of the conveyer system, dead. Appellee's employees called appellant and informed her of a "tragic accident" involving Logan, but she was not informed of her son's death.

After receiving the call, appellant drove at high speeds to appellee's place of business. Upon arrival, appellant identified herself as Logan's mother and "inquired as to his location." She was "informed that he was in the plant yard, and, inexplicably, was allowed to proceed unabated to the yard." The complaint states that "[u]pon arrival at the plant yard," appellant "looked up and saw her son ... in his lifeless condition, suspended from the top of the conveyor system," and that "[f]or quite some time, she stood there looking up at her son in his lifeless condition, with his head almost severed from his neck, still suspended from the top of the conveyer system."

In stating her claim for intentional infliction of emotional distress, appellant's complaint stated that appellee "failed to take any action whatsoever to adequately protect [appellant] from such a ghastly and horrific experience." She stated that since that time she has suffered from "severe emotional distress and mental suffering and anguish directly resulting from the scene she observed ... and her son's physical condition." She asserts that appellee's "conduct ... was extreme and outrageous, beyond all bounds of decency, and utterly intolerable in a civilized society." She stated that appellee's actions were the "direct and proximate result" of her "severe emotional distress and mental suffering and anguish that have resulted from what she observed" and that "the severe emotional distress and mental suffering and anguish" was "so severe that no reasonable person could be expected to endure."

*2 In stating her claim of negligence, appellant asserted that appellee "owed a duty to [appellant] to use ordinary care to protect her from viewing her son, in his lifeless condition, suspended from the top of the ... conveyer system" and that appellee "failed to ade-

© 2009 Thomson Reuters/West. No Claim to Orig. US Gov. Works.

quately protect her from such a ghastly and horrific experience" and this was a "failure to use ordinary and reasonable care." She asserted that appellee should have cautioned her "of the situation and that it was not advisable to view her son's body," but that appellee "took no such action." She states that, as a result, she was "allowed to stand" in appellee's business "looking up for some period of time at a young son she had birthed, raised and prepared for life, viewing his lifeless body suspended from the conveyor system with his head practically detached from his body." The complaint alleges that since that time, appellant suffered from "severe emotional distress and mental suffering and anguish, as well as bodily injuries that have manifested, that directly and proximately resulted from what she observed of the condition of her son."

Appellee filed a motion to dismiss pursuant to Rule 12(b)(6). In dismissing the cause of action without prejudice, the court held that appellant "failed to plead a sufficient cause of action ... for intentional infliction of emotional distress, also known as the tort of outrage."[FN1] The circuit court further found that appellant's "claim for negligent infliction of emotional distress ... is not recognized as a cause of action in Arkansas."

> FN1. Appellant asserts that the circuit court's order contains a factual error, as it states that appellant was notified of her son's death. Although the circuit court's order misstated the allegations found in the complaint, we may nevertheless affirm when the circuit court reached the right result but for the wrong reason. *Faulkner v. Ark. Children's Hosp.,* 347 Ark. 941, 69 S.W.3d 393 (2002).

Appellant appeals from the circuit court's dismissal, first arguing that she pleaded facts to support a claim for the tort of outrage. She notes that according to the complaint, appellee informed her of a "tragic accident," and she asserts that appellee "should have expected that a mother would come to her son's job site to make sure he was not injured too severely" and that appellee "should have known it was likely to cause emotional distress in allowing the mother of a fatally injured employee on the grounds." She notes that the complaint stated that she was allowed to view his body "for quite some time." She asserts that it was "intolerable" that appellee allowed her to move throughout the plant when a fatality had occurred, particularly considering the effect on her as the mother of the decedent, and it was also "intolerable" that appellee did not screen Logan's body from view.

To establish a claim for outrage, a plaintiff must demonstrate the following elements: (1) the actor intended to inflict emotional distress or knew or should have known that emotional distress was the likely result of his conduct; (2) the conduct was extreme and outrageous, beyond all possible bounds of decency, and was utterly intolerable in a civilized community; (3) the actions of the defendant were the cause of the plaintiff's distress; and (4) the emotional distress sustained by the plaintiff was so severe that no reasonable person could be expected to endure it. *Faulkner v. Ark. Children's Hosp.,* 347 Ark. 941, 69 S.W.3d 393 (2002).

*3 The conduct described in appellant's complaint as extreme and outrageous is as follows: (1) she was informed of a "tragic accident" involving her son but was not told that he was dead; (2) she "inquired as to his location," and was "informed that he was in the plant yard"; (3) she "was allowed to proceed unabated to the yard"; (4) appellee "failed to take any action whatsoever to adequately protect [her] from such a ghastly and horrific experience ." None of the allegations support a finding of the second element required to prove a claim of outrage. Though appellee did not inform appellant of her son's death, what appellee did was provide appellant with information and allow her to proceed as she wished, and ultimately she viewed her son's body "for quite some time." We cannot say that these facts establish that appellee's conduct was extreme and outrageous, beyond all possible bounds of decency, and was utterly intolerable in a civilized community. Thus, appellant failed to plead sufficient facts to establish her outrage claim, and we affirm the dismissal of the claim.

As for the negligence claim, the complaint alleged that appellee "owed a duty to [appellant] to use ordinary care to protect her from viewing her son, in his lifeless condition, suspended from the top of the ... conveyer system" and that appellee "failed to adequately protect her from such a ghastly and horrific experience" and this was a "failure to use ordinary and reasonable care." She argues that she suffered a physical injury as a result of appellee's negligence in

© 2009 Thomson Reuters/West. No Claim to Orig. US Gov. Works.

Not Reported in S.W.3d
Not Reported in S.W.3d, 2008 WL 4767468 (Ark.App.)
(Cite as: 2008 WL 4767468 (Ark.App.))

Page 3

breaching its duty to protect and warn invitees, and that her claim is a "stand alone claim for negligence for action and inaction in [appellee's] breach of its duty to warn and protect her from what she encountered" at appellee's place of business. The complaint further alleges that appellant suffered from "severe emotional distress and mental suffering and anguish, as well as bodily injuries that have manifested, that directly and proximately resulted from what she observed of the condition of her son."

In Arkansas, a claimant's right to recover for emotional distress, as well as related injuries, may be had only upon proof of the existence of willful and wanton wrongdoing on the part of the tortfeasor. *Dalrymple v. Fields,* 276 Ark. 185, 633 S.W.2d 362 (1982). There is no allegation in her negligence claim that appellee's conduct was willful and wanton. And Arkansas does not recognize negligent infliction of emotional distress. *FMC Corp. v. Helton,* 360 Ark. 465, 202 S.W.3d 490 (2005). Accordingly, we affirm the dismissal of appellant's negligence claim.

Affirmed.

GLADWIN and HEFFLEY, JJ., agree.

Ark.App.,2008.
Logan v. Smith Ready Mix, Inc.
Not Reported in S.W.3d, 2008 WL 4767468 (Ark.App.)

END OF DOCUMENT

© 2009 Thomson Reuters/West. No Claim to Orig. US Gov. Works.