IN THE UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF ARKANSAS
TEXARKANA DIVISION

| | | |
|---|---|---|
| JOHN WARD, JR. | § | |
| | § | |
| | § | |
| v. | § | C.A. NO. 08-4022 |
| | § | JURY TRIAL DEMANDED |
| CISCO SYSTEMS, INC. AND RICK | § | |
| FRENKEL | § | |
| | § | |

**PLAINTIFF JOHN WARD, JR.'S SUBMISSION LOG AND
MOTION FOR AN ORDER DIRECTING CISCO TO PROVIDE
IDENTIFED DOCUMENTS TO THE COURT FOR *IN CAMERA*
REVIEW**

TO THE HONORABLE COURT:

Plaintiff John Ward, Jr., files this motion to provide the Court with Plaintiff's submission

log and to ask the Court to order Cisco to provide the documents listed on Plaintiff's submission

log to the Court for *in camera* review.

## I.    INTRODUCTION:

On June 12, 2009, the Court ordered the parties to work together to identify documents to

be submitted to the Court for *in camera* review and to come to an agreement on a joint

submission log.  Without making an honest attempt to reach an agreement with Plaintiff, Cisco

submitted a joint submission log that includes only those documents that Cisco believes the

Court should review based on Cisco's interpretation of the disputed issues.  Cisco's submission

log does not contain all of the documents that Ward believes fall within the scope of the subject

matter waiver found by the Court.  Therefore, Ward respectfully requests that the Court accept

Dockets.Justia.com

Plaintiff's submission log and order Cisco to produce all documents contained on Plaintiff's log for *in camera* review.

## II.   FACTUAL BACKGROUND AND DISCUSSION:

On June 12, 2009, the Court held a telephonic hearing on the issue of whether Cisco complied with the Court's Order to identify documents responsive to Plaintiff's interrogatories. During the hearing, the Court and the parties discussed the documents produced in the *Albritton v. Cisco* case, using them as a point of reference to discuss the legal issues before the Court.[1]

At the end of the hearing, the Court asked the parties if they would agree to submit the documents at issue in this case to the Court for *in camera* review.  The parties agreed to prepare a joint submission log and to provide the identified documents to the Court.  The Court stated that it wanted to have "everything put in front of [it] that [the parties] have an argument about." *See* D.E. No. 72 at 30:19-23.  The Court cautioned that it did not want to spend Court resources evaluating Cisco's documents only to have Plaintiff come to the Court later and claim that Cisco did not submit for review all of the documents at issue.  *See* D.E. No. 72 at 30:14-17.  In short, the Court wanted all documents at issue so it could resolve the privilege dispute once and for all.

After the hearing, Cisco took the now familiar position that the Court didn't mean what it said.  According to Cisco, the only documents the Court ordered submitted are those that Cisco chose to produce to Albritton.  Cisco's position ignores the Court's March 30 Order, the Court's instructions during the June 12 hearing, the legal issues before the Court, and Plaintiff's briefing which repeatedly argued that Plaintiff is entitled to all documents within the Court ordered waiver, whether or not Cisco chose to produce them to Albritton.  *See* D.E. No. 72 at 18:23-19:3; 19:12-14; 20:6-11; 20:24-21:3; 27:14-16; D.E. 64 at 22-25, 23 ("Plaintiff's counsel believes that

---

[1] When asked by the Court, Plaintiff's counsel stated that she believed that Cisco had not complied with the Court's March 30, 2009 Order because Cisco produced documents in the Albritton case that should have been identified in response to Plaintiff's interrogatories, but were not.  *See* D.E. 72 at 26:12-18.  The Court asked Cisco whether documents produced to Albritton had been produced to Plaintiff in this case.  *See* D.E. 72 at 22:6-24:9.  Cisco confirmed that they had not.  *See id.*

the Albritton Agreement permitted Cisco to withhold documents on its privilege log that appear to Plaintiff not to be privileged.").[2]

Cisco again misreads (or refuses to acknowledge) the Court's instructions.  The Court did not set limits on the documents it was willing to review.  The Court did not give Cisco the option of unilaterally choosing what documents are relevant and responsive to Plaintiff's discovery.[3] The Court did not order that Plaintiff was limited to selecting documents prepared before certain dates or prepared by specific individuals.  Nor did Cisco speak up during the hearing to make clear that it intended to impose any such restrictions on the Court's review.  Cisco's belated interpretation—which it knows is not correct because the Court's law clerk already told Cisco that the Court's intent was to see all the documents—is just another meritless attempt to circumvent its discovery obligations.

The Court requested to see all the disputed documents so it could decide for itself whether the documents are privileged, responsive, and/or entitled to any remaining claim of privilege in light of the Court's March 30, 2009 Order.  *See* D.E. 72 at 28:11-17.  Cisco's refusal to give the Court documents identified by Plaintiff is a clear disregard of this Court's instructions.

A.  The Parties' Meet and Confer

The Court ordered the parties to submit a joint submission log before June 26, 2009.

On Wednesday, June 17, 2009, Cisco sent a proposed joint submission log to Plaintiff. Cisco's proposed submission log included only those documents produced "under the Protective Order and non-waiver agreements in the Albritton v. Cisco case."  *See* Exh. 2 at 2 (06/17/09 7:58 email from C. Parker).  The log that Cisco sent to Plaintiff did not include any of the claims of privilege (ordinary v. opinion) included in the submission log Cisco provided the Court.  In fact,

---

[2] Plaintiff rejected Cisco's insistence that it can dictate what documents are produced when he refused to adopt the Albritton Agreement in this case.
[3] If the Court's request were limited as Cisco suggests, there would be no documents for the Court to review because Cisco claims that it is not withholding any documents responsive to Ward's interrogatories.  *See* D.E. 72 at 22:10-12; 23:21-25; 25:8-15.

although Cisco has long known that the Albritton documents are at issue, it never argued that those documents contained opinion work product exempt from discovery.  Even if it had, Cisco would have lost the argument because its decision to give its work product documents to Albritton resulted in a total waiver of Cisco's work product privilege.  *See In re Chrysler Motors Corp. Overnight Evaluation Program Litigation*, 860 F.2d 844, 846 (8th Cir. 1988); *see also Salomon Bros. Treasury Litig. v. Steinhardt Partners, L.P.* (In re Steinhardt Partners, L.P.), 9 F.3d 230, 235 (2d Cir. N.Y. 1993) ("Once a party allows an adversary to share the otherwise privileged thought processes of counsel, the need for the privilege disappears.").

Plaintiff objected to Cisco's unilateral decision to submit only the Albritton documents for the Court's review in this case.  The issue before this Court from the start has been whether Cisco identified **all** documents.  Although Cisco reversed its prior refusal to produce any documents to the Court for *in camera* review, when pressed by the Court during the telephonic hearing, it agreed to provide documents to the Court.  Cisco now claims that it never agreed to a full review of its documents; only those it produced to Albritton.  In essence, Cisco is using its submission to the Court to force upon Ward the same limitations of the Albritton Agreement that he has steadfastly refused to accept.  That issue has been briefed to the Court at length and Cisco cannot credibility argue that it didn't know that Ward wanted the Court to review all documents.  Cisco's submission log evidences that it has no intention of giving the Court all of the documents at issue.

Plaintiff responded that the submission log should include documents that Baker Botts gave Cisco for production in the Albritton case and other relevant documents that Cisco opted not to produce to Albritton.  *See* Exh. 2 at 2 (06/17/09 12:32 email from P Peden).  *See* Exh. 2 at 1 (06/17/09 3:13 email from C. Parker).  Plaintiff told Cisco that its refusal to identify all documents was wrong and contrary to the Court's instructions.  *See* Exh. 2 at 1 (06/19/2009 3:43 email from N. Patton).  Plaintiff's counsel had his office call the Court to schedule another telephonic hearing to ensure that Cisco provided the Court with all the disputed documents.  *See* Exh. 2 at 1 (06/19/2009 3:43 email from N. Patton).  The Court's law clerk called Cisco's

counsel, Crystal Parker, and explained that the Court's intent was to have Cisco produce all documents that Plaintiff designated for review.  *See* Exh. 2 at 1 (06/19/09 email from C. Parker). Cisco understood the Court's instructions.  *See* Exh. 2 at 1 (06/19/09 email from C. Parker).

Plaintiff agreed to provide a revised proposed submission log to Cisco before Tuesday, June 23rd.  *See* Exh. 3.  Plaintiff contemplated that the parties would then meet and confer to discuss disputes concerning specific documents and, ultimately, the parties would reach an agreed-to submission.

At Cisco's urging that the matter was time sensitive and that it needed to have Plaintiff's identification of documents as soon as possible, Plaintiff sent his revised proposed submission log to Cisco on Monday, June 24th.  *See* Exh. 4, 5.  Plaintiff heard nothing from Cisco on Tuesday.

On Wednesday, Cisco demanded a last minute meet and confer to discuss an additional brief regarding "core work product" that it plans to file with the Court.  During the meet and confer call, Plaintiff's counsel asked Ms. Parker when Plaintiff could expect to received Defendant's revised submission log.  Ms. Parker said that Mr. Babcock was working on it and they would get it to Plaintiff "as soon as possible."  Plaintiff received no further word from Cisco on Wednesday.

On Thursday, Plaintiff's counsel sent an email to both Mr. Babcock and Ms. Parker asking the status of Cisco's proposed revisions, and stating her concern that Cisco's delay would preclude Plaintiff from meaningfully responding to Cisco's proposed revisions.  *See* Exh. 6. Finally, at the close of business on Thursday, and the night before the parties' joint filing was due to be filed, Mr. Babcock responded—not with a revised proposed submission log as promised—but with an email saying the Cisco disagreed with the scope of the documents identified by Plaintiff—issues that Cisco had known about since Monday but decided to raise the night before the parties' intended filing.  *See* Exh. 6.

Plaintiff does not believe that Cisco complied with the Court's order to work with Plaintiff in good faith to reach a joint submission.  If Cisco had a problem with any of the

documents identified by Plaintiff, it should have sent Plaintiff a revised submission log explaining its objections.  Cisco should have tried to meet and confer about documents selected by Plaintiff.  If Cisco had an objection based on the contents of its documents, it had an obligation to address the issue with Plaintiff because Plaintiff does not know the contents of Cisco's documents.  Instead, Cisco ignored Plaintiff's repeated requests that Cisco respond, feigned that it planned to provide Plaintiff with a revised submission log, and all the time it had already decided that it would not even attempt to meet and confer with Plaintiff about the issue. *See* Exh. 6.

At noon today—hours before the parties joint submission was due to be filed—Cisco's counsel called Plaintiff to say that Cisco believes that it does not have to submit any documents other than the Albritton documents and that it will not submit documents containing Cisco's "core-work" product for the Court to review *in camera*.  Although Plaintiff pointed out that Cisco's documents will only be seen by the Court, Cisco stated that it is not comfortable submitting its work product to the Court and that Cisco would not agree to do that absent a Court Order.  By this point, Plaintiff had already deduced that Cisco had no intention of filing a joint submission.  However, Plaintiff would have appreciated it if Cisco had been upfront about that fact days ago instead of leading Plaintiff to believe that Cisco would send revisions that it never intended to send.

B. Cisco's Submission Log

The submission log Cisco submitted to the Court has several deficiencies.  First, although Cisco claims that it agreed to submit all of the documents produced in the Albritton case for the Court's review, Cisco's submission log does not include all of the documents produced to Albritton.  It also does not include the documents Cisco obtained from Baker Botts and produced in the Albritton case.  The attached submission log provided by Plaintiff includes all of the documents produced by Cisco to Albritton.

Cisco's submission log omits email correspondence exchanged among persons involved in Cisco's libelous posts and during key dates in which the events in this case occurred.  Cisco is withholding documents that were created on the very dates that Frenkel wrote his libelous posts about Ward, that were written by Frenkel, with encouragement and help by Yen, Noh, Beckwith and Baker Botts—all the same parties that were involved in the underlying events and the Troll Tracker's libelous posts.  For some of these documents, Cisco claims of privilege are far-fetched because the documents were sent to Cisco's public relations and governmental relations personnel—non lawyers whose very function is to publicly disseminate information.  The fact that these documents were never produced to Albritton does not mean they are not relevant or responsive, or even that they are privileged.  It only means Cisco opted not to produce them. That fact makes this Court's review of those documents even more necessary.

To the extent that Cisco has provided any reasoning to Plaintiff, it is flawed.  Cisco claims that all documents created after the accused Troll Tracker posts were published are irrelevant.  Cisco's broken logic is obvious.  A relevant discussion of events can occur long after they occurred.  By way of example, if Frenkel wrote an email to Yen six months after he published false and defamatory statements saying "Mallun, I really should have listened to Baker Botts when they told me before I wrote my posts that there was absolutely nothing wrong with the filing in the ESN case and that I should not accuse Ward of a crime.  I was wrong on the facts and I should not have been so reckless," that document would clearly be relevant even if it were written six months after the events Frenkel is discussing.  That is certainly the case with the email written by Jillian Powell wherein she memorializes her conversation with the Eastern District of Texas Court clerk, *after* the conversation occurred.  Cisco's insistence on a date restriction evidences a misunderstanding of the definition of relevance and a clear disregard for this Court's directive to submit all documents at issue so the Court can decide for itself if the documents are relevant.

Cisco also claims that it doesn't have to submit documents because Plaintiff has not identified those documents he thinks are relevant to the interrogatories at issue.  Plaintiff served

7

the interrogatories on Cisco to have <u>Cisco</u> identify responsive documents—that was the point of the interrogatories.  Cisco said there were no responsive privileged documents.  Now Cisco wants to prevent the Court from reviewing documents because Plaintiff can't identify all responsive documents.  Cisco can't seriously object to Ward's inability to identify Cisco documents (including documents for which Plaintiff has no idea of the contents) when it refused to answer discovery aimed at doing just that.

The only remaining argument that Cisco has made (to the best of Plaintiff's ability to discern Cisco's positions) is that it need not submit documents containing Cisco's "core work product" to the Court for *in camera* review.  The problem with Cisco's position is that it never identified the documents it asserts contain "core-work product" to Plaintiff.  If it had, Plaintiff would have sought in good faith to address Cisco's concerns.  Cisco can't refuse to identify documents to Plaintiff, refuse to provide a revised submission log identifying those documents, refuse to meet and confer about specific documents, and simply decide for itself that it doesn't have to submit its unidentified documents to the Court.  Having refused to give Plaintiff the information necessary to evaluate Cisco's claims—or to even identify the specific documents at issue—Cisco cannot now be heard to complain when Plaintiff asks the Court to review those documents.

Cisco's latest flip-flop claiming that it never agreed to submit any documents other than the Albritton documents for *in camera* review is just the latest example of Cisco's shifting sands approach to discovery.  Cisco originally stated that it relied on communications with counsel to support its defense in this case, but then took it back and claimed that it never made that representation.  Cisco originally claimed that there were documents responsive to Plaintiff's interrogatories logged on its privilege log, but now claims there are no responsive privilege documents.  Plaintiff can hardly be blamed for not wanting to accept at face value Cisco's assertions concerning what documents should be submitted to the Court for *in camera* review.

There is no harm to Cisco in providing any of its documents to the Court because they won't be disclosed to Plaintiff unless the Court finds they should.  Cisco has no legitimate basis

upon which to refuse to provide its documents to the Court.  Cisco claims to be looking out for the Court in not wanting to submit too many documents for review.  Plaintiff suggests that if that were really Cisco's motivation, it would have met and conferred in an attempt to reduce the number of documents and to avoid what has become the never-ending briefing on this issue.  As the Court has already recognized, the most efficient resolution of this issue is to let the Court review all of the documents at issue.  Unfortunately for Cisco, that includes the documents that Plaintiff wants reviewed too.

## III.   CONCLUSION

Plaintiff served the interrogatories at issue in December of last year.  After a motion to compel, a motion for compliance and sanctions, and Court Ordered submission of documents for *in camera* review, Cisco still has not identified all of the documents at issue.  Cisco can claim they are not responsive or that there hasn't been a privilege waiver all it wants, but Plaintiff disagrees.  That is the entire reason the Court agreed to review the documents *in camera*— because the parties disagree about the legal issues in the underlying motions.  Cisco has decided the legal issues for itself, decided what documents are subject to waiver and what documents it believes it is entitled to withhold from Plaintiff.  Cisco's conduct demonstrates its continued disregard for this Court's Orders.  Therefore, Plaintiff respectfully requests that this Court accept for filing Plaintiff's submission log (Attached hereto as Exh 1), and order Cisco to produce for *in camera* review the documents identified on Plaintiff's submission log.

Respectfully submitted,

_____

Nicholas H. Patton (SBN: 63035)
PATTON, TIDWELL & SCHROEDER, LLP
4605 Texas Boulevard - P. O. Box 5398
Texarkana, Texas 7550505398
(903) 792-7080          (903) 792-8233 (fax)

Patricia L. Peden
LAW OFFICE OF PATRICIA L. PEDEN
1316 67th Street
Suite 6
Emeryville, CA 94608
Telephone: (510) 268-8033

ATTORNEYS FOR PLAINTIFF


## CERTIFICATE OF SERVICE

This is to certify that on this 27th day of June, 2009, a true and correct copy of the foregoing Plaintiff's Response to New Argument Raised in Cisco's Sur-Reply was served electronically upon:

Richard E. Griffin                    Attorney for Defendant Cisco Systems, Inc.
Charles Babcock
Crystal Parker
JACKSON WALKER, LLP
1401 McKinney
Suite 1900
Houston, Texas 77010


_____

Nicholas H. Patton

10