IN THE UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF ARKANSAS
TEXARKANA DIVISION

JOHN WARD, JR.                          §
                                        §
                                        §        C. A. NO. 08-4022
v.                                      §        JURY TRIAL DEMANDED
                                        §
CISCO SYSTEMS, INC.                     §

**DEFENDANT CISCO SYSTEMS, INC.'S RESPONSE TO PLAINTIFF'S SUBMISSION
LOG AND MOTION FOR AN ORDER DIRECTING CISCO TO PROVIDE
IDENTIFIED DOCUMENTS TO THE COURT FOR *IN CAMERA* REVIEW**

TO THE HONORABLE DISTRICT COURT JUDGE:

Plaintiff's intent here is clear. He represents ESN in what ESN claims is multi-million dollar patent litigation against Cisco now pending in the Eastern District of Texas—Texarkana Division before Judge Folsom. Cisco has filed a motion to dismiss the ESN case for lack of subject matter jurisdiction, as it seems that ESN does not actually own the patent in suit. Ward now seeks a waiver of privilege in this case so that he can have access to Cisco's opinion work product in the *ESN v. Cisco* case to use against Cisco in that litigation. For instance, he insists that Cisco produce its invalidity analysis of the patent at issue in the *ESN v. Cisco* lawsuit even though it has no plausible relationship to this lawsuit. Ward is clearly using this defamation case to gain access to highly privileged, work product material to which he is not entitled. The Court should see trough this transparent ploy and deny this request.

As set forth below, the Eighth Circuit is equally clear that Ward is not entitled to these documents, and therefore the Court should not require that they be produced *in camera*.

Dockets.Justia.com

## I.  THE COURT ASKED CISCO TO PRODUCE THE ALBRITTON DOCUMENTS *IN CAMERA*

One need not quibble with what the Court asked Cisco to produce *in camera*; despite Plaintiff's claims to the contrary, the transcript of the hearing regarding that matter is clear.  The Court asked that Cisco produce *in camera* the documents Cisco produced in the *Albritton v. Cisco* case under the protective order and non-waiver agreements in that case—documents that all the parties acknowledged that Plaintiff's counsel had already seen.

In that hearing, the Court specifically asked counsel for Plaintiff what documents she was requesting, and she responded that she was requesting the documents that were produced in the Albritton case:

> Judge Hendren:      But you're saying they have documents that are responsive to that interrogatory that they won't identify or give you copies of.  And the reason you say that is because you believe those selfsame documents that you're interested in **have been produced in the Albritton case** under a protective order.  Is that right?

> Patty Peden:          Absolutely correct.

(Exhibit A, Declaration of William W. Friedman,[1] Tab 5 at 26:5-10) (emphasis added).  Charles L. Babcock, counsel for Cisco, clarified that these selfsame documents that had been produced under the agreements in Albritton (the "Albritton Documents") were the ones he was referring to, that counsel for Ward already had those documents, and that "I didn't have any objection in the other case to letting them see them, and I don't have any objection here if they just won't claim attorney-client waiver in the ESN case." (*Id.* at 27:10-13).  The Court responded with respect to those selfsame documents that:

> Judge Hendren:      Why wouldn't it be possible for you to submit to the Court in camera **those selfsame communications** so that I can look at them and make up my own mind…

---

[1] Tabs 2 and 4 have been redacted for filing and have been produced *in camera* to the Court.

(*Id.* at 28:12-15) (emphasis added).

Cisco agreed to produce the selfsame documents—that is, the Albritton Documents—to the Court for *in camera* inspection. (*Id.* at 28:18-19). The Court then clarified again that he was asking that the documents produced in the Albritton case be produced *in camera.*

| Judge Hendren: | If I could get these emails and communications in which you're interested and which you believe are certainly relevant and discoverable in this case, **and apparently you know of them because they were discovered or they were made available in the Albritton case,** and apparently you want to get those same documents here… Maybe one way to get this thing off dead center is to have those things submitted to me *in camera*… |
|---|---|

(*Id.* at 28:24-29:7). Ms. Peden agreed. (*Id.* at 29:12). Mr. Babcock again stated that he didn't think there was any mystery "because both Mr. Patton and Ms. Peden are in the Albritton case, so they have seen the documents in that [case]" (*Id.* at 31:16-19). Judge Hendren responded: "Well, I kind of suspected that, but I wasn't going to come out and say that… But why don't we try to do that…" (*Id.* at 31:20-21).

When Judge Hendren asked the parties to come to an agreement and produce the documents during the week after Defendant's counsel returned from vacation, counsel for Plaintiff did not ask for further documents other than those that had been produced in the *Albritton case* but instead said: "I don't see any reason, Judge, why that can't be done because **we all know what the documents are.**" (*Id.* at 32:16-23; 33:17-18). If Ward wanted to request submission of additional documents *in camera*, it was his burden to raise that issue with the Court at the hearing. He did not do so, and has instead tried to leverage that into forcing Cisco to produce documents with no request from the Court, refusing to come to an agreement to produce the documents at issue with respect to the two interrogatories.

Nor did this Court's law clerk[2] tell Cisco what Judge Hendren's intent was; indeed as stated in an email with counsel for Defendant she stated that **she had not spoken with Judge Hendren** about the issue but urged the parties to agree to produce **what Ward thought was responsive to the two interrogatories at issue**. Cisco attempted to meet and confer with Ward on this issue, even offering to produce *in camera* all but Cisco's opinion work product that had not been produced in the Albritton case, informing Ward's counsel that this contained Cisco's core work product and legal strategy in the ongoing *ESN v. Cisco* case that Ward was clearly not entitled to under Eighth Circuit law. Ward's counsel agreed that he was not entitled to opinion work product but still refused to limit his request as the Court's law clerk requested to documents he believed to be responsive to the two interrogatories and refused to agree to anything but production of **every document** on Cisco's privilege log (Exhibit B), including opinion work product, which Ward's counsel has admitted it was not entitled to.

Plaintiff certainly did not request production *in camera* of documents produced by Baker Botts, which would be procedurally improper and redundant. It would be procedurally improper because those documents are kept by Baker Botts in Dallas, and thus a subpoena to Baker Botts through the proper court is required. FED. R. CIV. P. 45(a)(2)(C). Plaintiff's counsel, of course, knows this. At the deposition of Jillian Powell, the Baker Botts paralegal, counsel for Plaintiff Patty Peden unsuccessfully sought a ruling from Judge Ramirez in the Northern District of Texas, the judge assigned to the subpoena, that communications between Baker Botts and Cisco were not privileged. The judge declined to issue a ruling but requested briefing because Ms. Peden indicated that she would not agree to be bound by the ruling. (Exhibit D at pp. 17-20.)

---

[2] Plaintiff called the Court's law clerk regarding the merits of the parties' positions without advising counsel for Defendant, who would have gladly joined on the call, and therefore Defendant does not know what the Court's clerk told Plaintiff. The law clerk then called the associate working on the case for Defendant, who advised her that she was not authorized by the client to agree to produce anything further than what was agreed and advised the clerk that she would attempt to work with counsel for Ward to come to an agreement. Ward refused.

Moreover, the Baker Botts production is redundant because the documents produced by Baker Botts were also produced by Cisco and have already been logged and submitted to the Court. Indeed, Cisco asked Plaintiff to identify any Baker Botts documents that were missing from Cisco's log and Plaintiff was unable to do so, despite having access to all of the documents at issue. (Exhibit C). If Plaintiff wishes to also have those documents produced again by Baker Botts, Plaintiff must subpoena those documents from Baker Botts through the Court that has jurisdiction over the Baker Botts office in Dallas. FED. R. CIV. P. 45(a)(2)(C).

## II.    WARD'S REFUSAL TO COME TO AN AGREEMENT

Moreover, it was Ward, not Cisco, that refused to meet and confer in good faith regarding the submission log. Though the order and transcript of the hearing clearly show that the parties agreed to production *in camera* of the Albritton documents, Plaintiff's counsel made it crystal clear from the beginning that she would not speak with Defendant's counsel in good faith to narrow the issues for the Court. Cisco informed Ward's counsel on June 19, 2009, that the Court had only requested the Albritton documents, and Ward's counsel refused to attempt to come to an agreement, stating instead that all of Cisco's privileged documents must be included and that **"we will not sign off on Cisco's submission until these items are included."** (Exhibit B). Ward's counsel never budged from this position and consistently refused to limit the documents to those that he thought were responsive to the interrogatories at issue. Ward's counsel even refused to discuss an agreement when Cisco offered to produce *in camera* all but a few documents that are core, opinion work product and that his counsel acknowledged she is not entitled to.

### III.   WARD IS NOT ENTITLED TO CISCO'S OPINION WORK PRODUCT

Cisco has good reason for protecting its opinion work product, which the Eighth Circuit has held is entitled to "almost absolute immunity." *General Motors Corp. v. Baker*, 209 F.3d 1051, 1054-55 (8th Cir. 2000) (holding that it was an abuse of discretion to order production of work product where the opposing party argued "at issue" waiver); *In re Grand Jury Proceedings*, 473 F.2d 840, 848 (8th Cir. 1973); *In re Chrysler Motors Corp. Overnight Evaluation Program Litigation*, 860 F.2d 844, 846 (8th Cir. 1988) ("opinion work product enjoys a very nearly absolute immunity and can be discovered only in very rare and extraordinary circumstances.") Opinion work product encompasses "counsel's mental impressions, conclusions, opinions or legal theories" prepared in anticipation of litigation. *Baker*, 209 F.3d at 1054.  Many of the documents at issue in this lawsuit are protected by the opinion work product doctrine, as well as other privileges. *See* Exhibit A at ¶¶ 11-12, proving Cisco's privileges.

In his new briefing to the Court on work product (Docket No. 69), Ward implicitly admitted, as he must, that his "at issue" argument had no application to these opinion work product documents.  Instead, Ward argued in the New Brief for the first time that he had "substantial need" for the documents that should override Cisco's work product privilege.  Ward cited no case law whatsoever that "substantial need" can overcome work product protection. Nor could he; the law is clear that "substantial need" does not overcome opinion work product. *See* Fed. R. Civ. P. 26(b)(3) (permitting discovery of ordinary work product upon a showing that a party "has substantial need for the materials to prepare its case and cannot, without undue hardship, obtain their substantial equivalent by other means" but that the Court must protect from disclosure "the mental impressions, opinions, or legal theories of a party's attorney or other representative concerning the litigation").

The United States Supreme Court has held that mental impressions of attorneys deserve "special protection" and that simply showing "substantial need and inability to obtain the equivalent without undue hardship" is not sufficient. *Upjohn Co. v. United States*, 449 U.S. 383, 400 (1981). As the Eighth Circuit has also made clear, "[o]pinion work product... enjoys a nearly absolute immunity and can be discovered only in very rare and extraordinary circumstances." *In re Green Grand Jury Proceedings*, 492 F.3d 976, 980 (8th Cir. 2007) (citations omitted). Indeed, the Eighth Circuit has held that it was "clear error" to order the production of work product. *Baker*, 209 F.3d at 1054-55.

The Eighth Circuit has recognized that it would be "an intolerable intrusion on the bargaining process to allow one party to take advantage of the other's assessment of his prospects for victory..." *Simon v. G.D. Searle & Co.*, 816 F.2d 397, 406 (8th Cir. 1987) (citations omitted). Indeed, the very purpose of work product protection is to "prevent unwarranted inquiries into the files and mental impressions of an attorney" because "it is essential that a lawyer work with a certain degree of privacy, free from unnecessary intrusion by opposing parties and their counsel." *Id.* at 400 (citations omitted).

This "intolerable intrusion" is exactly what Ward, who represents ESN in the *ESN v. Cisco* litigation, seeks to do here. The publication at issue in this lawsuit concerned the changing of the court's official docket at the request of ESN's counsel without a motion. Ward represents ESN in that case and is using this case to seek Cisco's work product—its very strategy in the case ESN is litigating against Cisco—to gain an advantage in the *ESN v. Cisco* litigation, which is ongoing. (*See* Exhibit A at ¶ 7.) Indeed, if this was not his goal Ward would simply agree to Cisco's offer to permit him to use the documents produced in the Albritton case freely in this litigation as long as ESN agrees not to use the documents or argue waiver of privilege in the *ESN*

*v. Cisco* case. (*See id.*) The Court should prevent this "intolerable intrusion" by denying Ward's efforts to obtain Cisco's opinion work product and refusing to order *in camera* inspection of those documents.

Even if substantial need could overcome opinion work product, which it cannot, Ward cannot show that he has a "substantial need for the materials to prepare its case and cannot, without undue hardship, obtain their substantial equivalent by other means" as required to overcome even ordinary work product. Indeed, he does not even try to other than making the conclusory allegation that he has "substantial need." Cisco's work product in this and the ESN case is protected by almost absolute immunity, and Plaintiff certainly cannot overcome that here. The categories of documents Ward requests for *in camera* review show that Ward's true purpose here is to gain access to privileged, work product material for his use in the ESN case and reveal the true and improper purpose of this request. For instance, what need in *this case* does Ward have to access Cisco's patent invalidity analysis in the ESN lawsuit, other than impermissibly attempting to use that information in the ESN suit, where Ward represents ESN? Or Cisco's discussions about who to hire as local counsel? Why does Ward have any need for documents Frenkel never received, as Frenkel was the only author of the articles at issue?[3] Or communications that took place after the articles were written? Or communications that relate to other lawsuits and have nothing to do with the ESN lawsuit? As Frenkel has testified, he did not rely on any privileged information in writing the complained-of articles (Frenkel Declaration, Docket No. 63 at <u>Exhibit B</u>), and therefore Ward cannot show how he has substantial need for work product relating to the ESN case. Because Ward cannot show substantial need, the Court should deny his Motion to Compel. *See Pittman v. Frazer*, 129 F.3d 983, 988 (8th Cir. 1997).

---

[3] This is why interrogatory 5 asked for the documents **Frenkel** relied on in making the statements contained in the Troll Tracker October 17, 2007, October 18, 2007 and revised October 18, 2007 posts

Nor would it be proper to require production of opinion work product because of production in the Albritton case under a Protective Order and non-waiver agreement. While the Eighth Circuit has held that disclosure to the opposing party waives work product if the producing party intends that the opposing party see the documents, the converse applies here; that is, because Cisco never intended that Ward see the work product documents, and indeed guarded against him seeing them by having a Protective Order and non-waiver agreement in place,[4] there has been no waiver with respect to Ward. *See Gundacker v. Unisys. Corp.*, 151 F.3d 842, 848 (8th Cir. 1998) (disclosure only waives work product where there is "an intention that the opposing party see the work product"); *U.S. v. Johnson*, 378 F. Supp. 1041, 1047 (N.D. Iowa) (holding that disclosure to a third party other than the person seeking waiver did not waive the work product protection because work product is premised on the vitality of the adversary system rather than simply seeking to preserve confidentially, which is the goal of the attorney-client privilege); *St. Paul Reinsurance Co. v. Commercial Financial Corp.*, 197 F.R.D. 620, 639 (N.D. Iowa) (waiver by production only applies when there was an intent upon production that the person claiming waiver actually see the documents produced).

Ward continues to rely on *In re Chrysler Motors Corp. Overnight Evaluation Program Litigation*, 860 F.2d 844, 847 (8th Cir. 1988), even though that case is clearly distinguishable because the Court explicitly found that opinion work product was not at issue and, unlike this case, the attorneys (who are also Ward's attorneys) and ESN expressly agreed in the Albritton case not to argue waiver of privilege on the basis of the production. (Docket No. 67 at Exhibit C). *Id.* at 846.

---

[4] At the time of these agreements and the production of the privileged documents in the Albritton case, Ward and Albritton were not represented by the same counsel. Therefore, Cisco had reason to expect that Ward and his counsel would never see the documents produced.

Moreover, even if work product was waived with respect to the documents produced under the non-waiver agreement in the Albritton case (Cisco contends it was not), Ward cannot dispute that there has been no waiver of work product with respect to any documents that were not produced in the Albritton case. Disclosure of opinion work product does not destroy work product protection for <u>any</u> documents that were not disclosed, even if those documents concern the same subject matter. *Pittman v. Frazer*, 129 F.3d 983, 988 n. 3 (8th Cir. 1997) ("disclosure of some documents does not destroy work product protection for other documents of the same character") (citing Wright & Miller, § 2024 at 209); *St. Paul*, 197 F.R.D. at 639. Therefore, Cisco's opinion work product protection has not been waived with respect to any documents that were not produced in the Albritton case. In other words, Ward's alleged "subject matter waiver" does not apply to opinion work product. *Id.* Moreover, the documents that were produced in the Albritton case only concerned the timing of ESN's filing of the ESN case, and therefore work product on other issues does not fall into a subject matter waiver even if the doctrine did apply.

For these reasons, Cisco requests that the Court deny the Motion and rule that Cisco's opinion work product is protected from discovery and therefore need not be submitted *in camera.*

Respectfully submitted,

JACKSON WALKER L.L.P.

By:  *Charles L. Babcock*
      Richard E. Griffin
      Arkansas Bar No.: 63020
      Email: rgriffin@jw.com
      Charles L. Babcock
      Federal Bar No.: 10982
      Email: cbabcock@jw.com
      Crystal J. Parker
      Federal Bar No.: 621142
      Email: cparker@jw.com
      1401 McKinney
      Suite 1900
      Houston, Texas 77010
      (713) 752-4200
      (713) 752-4221 – Fax

ATTORNEYS FOR DEFENDANT
CISCO SYSTEMS, INC.

## CERTIFICATE OF SERVICE

This is to certify that on this 30th day of June, 2009, a true and correct copy of the foregoing was served via electronic mail upon:

Patricia L. Peden
Law Offices of Patricia L. Peden
5901 Christie Avenue
Suite 201
Emeryville, CA 94608
***Attorney for Plaintiff John Ward, Jr.***

Nicholas H. Patton
Patton, Tidwell & Schroeder, LLP
4605 Texas Boulevard
P.O. Box 5398
Texarkana, Texas 75505-5398
***Attorney for John Ward, Jr.***

*/s/ Charles L. Babcock*
Charles L. Babcock