# EXHIBIT "B"

Dockets.Justia.com

IN THE UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF ARKANSAS
TEXARKANA DIVISION

| | | |
|---|---|---|
| JOHN WARD, JR. | § | |
| | § | |
| | § | |
| | § | C.A. NO. 08-4022 |
| v. | § | JURY TRIAL DEMANDED |
| | § | |
| CISCO SYSTEMS, INC. | § | |

**PLAINTIFF'S OBJECTIONS AND ANSWERS TO
CISCO SYSTEM, INC.'S FIRST SET OF INTERROGATORIES**

TO:   Cisco Systems, Inc., by and through its attorneys of record, Mr. Charles Babcock, Mr. Richard Griffin and Ms. Crystal Parker, JACKSON WALKER, LLP, 1401 McKinney, Suite 1900, Houston, Texas 77010.

COMES NOW, John Ward, Jr., Plaintiff, and submits these objections and answers, under oath, to the Interrogatories propounded to him by Cisco Systems, Inc., in accordance with Rule 33 of the Federal Rules of Civil Procedure.

Nicholas H. Patton
State Bar No. 63035
Patton, Tidwell & Schroeder, LLP
4605 Texas Boulevard
Texarkana, Texas 75503
903.792.7080 / 903.792.8233 (Fax)

Patricia L. Peden
California Bar No. 206440
LAW OFFICE OF PATRICIA L. PEDEN
5901 Christie Ave., Suite 201
Emeryville, California 94608
Telephone: 510.268.8033

ATTORNEYS FOR PLAINTIFF

## CERTIFICATE OF SERVICE

This is to certify that on this 11th day of May, 2009, a true and correct copy of the foregoing was served electronically via electronic mail:

Richard E. Griffin
Charles Babcock
Crystal Parker
JACKSON WALKER, LLP
1401 McKinney
Suite 1900Houston, Texas 77010


_____
Nicholas H. Patton

## I.     General Objections

1.  Plaintiff objects to the extent that the interrogatories seek material reflecting attorney-client communications, other privileged communications and/or materials protected by the work-product doctrine, each such interrogatory is overbroad and seeks information that is beyond the scope of discovery permitted by the Federal Rules of Civil Procedure. Any inadvertent disclosure thereof shall not be deemed a waiver of any privilege or protection with respect to such information.

2.  Plaintiff objects to the extent that the interrogatories seek information that is confidential, proprietary, covered by a protective order in another case, protected by a confidentiality agreement with a third party, and/or a trade secret or privileged information of a third-party.

3.  Plaintiff objects to the interrogatories to the extent that they seek confidential or proprietary business data or information, trade secret information, personal financial information, or seek other personal confidential information for which Plaintiff has a right to privacy.

4.  Plaintiff objects to the interrogatories to the extent that they seek information that is neither relevant to the subject matter involved in this litigation, nor reasonably calculated to lead to the discovery of admissible evidence.  Plaintiff reserves all objections or other questions as to the competency, relevance, materiality, privilege or admissibility as evidence.

5.  Plaintiff objects to the interrogatories to the extent that they are overly burdensome and oppressive, vague and ambiguous, overly broad, annoying, or harassing.  Many of the interrogatories fail to specify any responsive time period and seek an identification of any and all information and/or documents without limitation or identification of subject matter.

6.  Plaintiff objects to the interrogatories to the extent that they call for information not reasonably available to or not within the possession, custody, or control of Plaintiff.  The responses herein are based on information reasonably available to Ward and documents within Ward's possession, custody, or control, including Ward's knowledge of the same.

7.  Plaintiff objects to the interrogatories to the extent that the information requested has already been provided, or is otherwise already within the possession, custody, or control of Defendant.

8.  Plaintiff objects to the interrogatories to the extent that the information requested is a matter of public record or is equally available to or readily ascertainable by Defendant.

9. Plaintiff objects to the interrogatories as compound, containing multiple subparts that count towards Defendant's total number of interrogatories. Plaintiff will treat single numbered interrogatories as multiple interrogatories where the interrogatories are compound.

10. Plaintiff objects to the interrogatories, including Defendant's definitions and instructions to the extent that they can be construed to impose obligations upon Plaintiff that are beyond the scope of the Federal Rules, the Court's Scheduling Orders or Docket Control Orders, and/or the Local Rules. Plaintiff has responded to these interrogatories in accordance with those rules and not necessarily in accordance with Defendant's definitions and instructions.

11. Plaintiff objects to each interrogatory as premature to the extent it seeks responses for which discovery has not yet been taken or expert discovery, the schedule for which is set forth in the Court's Case Management and Scheduling Orders. To the extent that the interrogatories are premature contention interrogatories, Plaintiff will not respond to those interrogatories until after it has obtained the necessary discovery, after the submission of expert reports, or at another appropriate time during this litigation.

12. Ward objects to Cisco's definition of "You" to the extent it purports to require Ward to respond with information in the possession of any company, individual, or entity not under Plaintiff's control. Ward also objections to Cisco's definition of "You" as being unreasonably broad, unduly burdensome and oppressive in seeking to have Ward respond with information in the possession of "past and present agents and representatives, including anyone who has ever acted on behalf of John Ward, Jr" without any attempt to narrow the definition to persons reasonably connected to the above captioned case or without any attempt to reasonably narrow the temporal scope of the request.

13. Plaintiff objects to Cisco's definition of "Frenkel," which includes any of Frenkel's "respective past and present agents and representatives." Ward is not in a position to know all of Frenkel's past and present agent and representative relationships.

14. Plaintiff objects to Cisco's definition of "Cisco," which includes any of Cisco's "respective past and present agents and representatives." Ward is not in a position to know all of Cisco's past and present agent and representative relationships.

15. Plaintiff objects to Cisco's definition of the "Article" to the extent that Cisco's definition seeks to narrow Ward's cause of action to a single Troll Tracker Article. Plaintiff specifically asserts that the Troll Tracker Article dated October 17, 2007 and the two Troll Tracker Articles dated October 18, 2007 (the original October 18th post and the revised version of that post also dated October 18, 2007) are false and defamatory of Ward. Plaintiff specifically contends that all three Troll Tracker Articles, individually

4

and collectively, are false and defamatory of Ward and create a false and defamatory impression of Ward.

16. Plaintiff objects to Cisco's Definitions of the words "persons," "communications," "evidencing," "relating," "documents" and "identify" to the extent that they impose duties beyond those imposed by the Federal Rules, Local Rules, and the court's Scheduling Order. Plaintiff objects to Cisco's definitions as unreasonably broad, unduly burdensome and oppressive in seeking responses from all persons without making an attempt to narrow the definition to persons reasonably connected to the above captioned case or without any attempt to reasonably narrow the temporal scope of the request.

17. Plaintiff objects to Cisco's "rules of construction" to the extent that the application of those rules renders any interrogatory vague, ambiguous.

18. Plaintiff objects that some of the Requests are unintelligible and fail to describe the information sought with reasonable particularity. Plaintiff will nevertheless employ his best efforts to construe such interrogatories.

19. Plaintiff objects that some of the Interrogatories are intentionally misleading in seeking an admission based on incomplete facts.

20. Plaintiff's responses to Defendant's interrogatories are based on the information and documents available at this time and upon such investigation as is reasonable for Plaintiff to undertake under the circumstances. Plaintiff anticipates conducting additional discovery in this case, both on his own and from others, and may discover additional facts, information, and documents through that discovery.

21. Plaintiff reserves the right to seek an appropriate protective order with regard to any of the above general objections or privileges or any of the specific objections or privileges asserted below.

Plaintiff incorporates the General Objections stated above into each and every interrogatory responded to separately below as though fully set forth therein. As required by the Local Rules, Plaintiff sets forth his specific objections and responses below:

## II.   Specific Objections and Responses To Interrogatories

### INTERROGATORY NO. 1:

**Identify each person in the United States District Court for the Eastern District of Texas with whom you have communicated in either oral or written form regarding either the ESN Texas Case or ESN Connecticut Case.**

### ANSWER TO INTERROGATORY NO. 1:

Plaintiff specifically objects to Defendant's interrogatory for the following reasons: (1) the interrogatory seeks attorney-client privileged information, attorney work product and otherwise privileged information; (2) the interrogatory is overly broad, overly burdensome and oppressive and fails to limit the information sought to a reasonable number of persons or a reasonable time period.

Subject to the foregoing General and Specific Objections, Plaintiff responds as follows:

Plaintiff was counsel of record on a Motion to Enjoin Defendants Cisco and Linksys From Prosecuting Later-Filed Parallel Litigation in Connecticut filed by ESN and submitted to Judge Folsom in the *ESN v. Cisco* case.

On May 1, 2009, Plaintiff had a conference call with Lon Outland. Cisco's local counsel, Mike Jones, was on the call.

Plaintiff's response is based on the information and documents available at this time and upon such investigation as is reasonable for Plaintiff to undertake under the circumstances. Plaintiff anticipates conducting additional discovery in this case and he reserves the right to amend and/or supplement his response.

**INTERROGATORY NO. 2:**

**Describe in detail each and every instance in which you have requested court personnel (whether state or federal) to change, alter, or modify a court document. Include in your answer the style of the case, court in which the case was pending, court personnel that you spoke with, and specific request that you made.**

**ANSWER TO INTERROGATORY NO. 2:**

Plaintiff specifically objects to Defendant's interrogatory for the following reasons: (1) the interrogatory seeks information that is neither relevant nor reasonably calculated to lead to the discovery of admissible evidence in that communications regarding other cases where Ward is counsel of record are not relevant to any issue in this case; (2) the interrogatory is overly broad, overly burdensome and oppressive and fails to limit the information sought to a reasonable subject matter, a reasonable number of identified persons, or a reasonable time period; (3) the interrogatory is vague and ambiguous with respect to the words "court personnel" and "court document"; (4) the interrogatory is argumentative in its use of the word "alter," which implies criminal conduct.

Subject to the foregoing General and Specific Objections, Plaintiff responds as follows: Plaintiff has made no such request. Plaintiff's legal assistant has, on occasion, called the administrative clerk's office to have Plaintiff removed from the court's ECF notice system after Plaintiff withdrew from a pending case. Plaintiff specifically recalls asking to be removed from the Court's ECF notice system in *Maria Aantos Lopez Domiguez, et al. v. Gulf Coast Marine & Associates*, 9:08-cv-00200-TH, in the United States District Court for the Eastern District of Texas, Lufkin Division and in *Orion IP, LLC v. Hyundai Motor America*, 6:05-cv-00322-LED, in the United States District Court for the Eastern District of Texas, Tyler Division. Plaintiff is

aware of multiple instances in which his legal assistant has called the administrate clerk's office

where a document was tagged by the clerk for being filed in error for failure to attach a

certificate of service.  Plaintiff's legal assistant has also called the administrative clerk's office to

inquire about filing requirements and problems associated with filed pleadings.  Plaintiff does

not recall the dates and times of those calls.

Plaintiff's response is based on the information and documents available at this time and

upon such investigation as is reasonable for Plaintiff to undertake under the circumstances.

Plaintiff anticipates conducting additional discovery in this case and he reserves the right to

amend and/or supplement this response.

## INTERROGATORY NO. 3:

**If you contend that any statement in the Article creates a defamatory implication or impression, identify each statement.  For each statement you identify, describe with specificity each and every implication or impression that you contend arises from that statement.**

## ANSWER TO INTERROGATORY NO. 3:

Plaintiff specifically objects to Defendant's interrogatory for the following reasons:  (1)

the interrogatory seeks to improperly narrow Plaintiff's cause of action to a single complained-of

article, when Plaintiff specifically alleges that the October 17, 2007 Troll Tracker post and both

of the Troll Tracker posts dated October 18, 2007 are false and defamatory of Plaintiff (2) the

interrogatory is vague and ambiguous with respect to the words "each and every implication or

impression" (3) the interrogatory seeks information outside of Plaintiff's custody and control in

that the defamatory impression and implication created by the Troll Tracker posts implicate the

understanding that readers of that post obtained from reading the statements made therein; (4) Plaintiff objects to this Interrogatory in that its answer may be determined by examining Cisco Systems, Inc. and Richard Frenkel's documents, in particular the email received by Frenkel by readers who understood the Troll Tracker to accuse Ward of criminal conduct; (5) the interrogatory is a premature contention interrogatory for which discovery has not yet been taken and for which Plaintiff cannot yet provide a full and complete response, particularly in light of the fact that Cisco has not produced the emails received by Frenkel in which his readers were critical of the criminal accusations he made about Ward.

Subject to the foregoing General and Specific Objections, Plaintiff responds as follows: Frenkel's posts in their entirety are defamatory of Plaintiff.  Frenkel's defamatory posts, in their entirety, and when read in context, create the false impression that Ward engaged in criminal behavior, unethical behavior, conduct for which he could be disbarred, and conduct unbefitting a member of the bar.  Therefore, the following statements are defamatory of Plaintiff:

The Troll Tracker Post of Wednesday, October 17, 2007 "Troll Jumps the Gun, Sues Cisco Too Early."  "Well, I knew the day would come.  I'm getting my troll news from Dennis Crouch now.  According to Dennis, a company called ESN sued Cisco for patent infringement on October 15th, while the patent did not issue until October 16th.  I looked, and ESN appears to be a shell entity managed by the President and CEO of DirectAdvice, and online financial website.  And, yes, he's a lawyer.  He clerked for a federal judge in Connecticut, and was an attorney at Day, Berry & Howard.  Now he's suing Cisco on behalf of a non-practicing entity.  I asked myself, can ESN do this?  I would think that the court would lack subject matter jurisdiction, since ESN owned no property right at the time of the lawsuit, and the passage of time should not cure that.  And, in fact, I was right: A declaratory judgment of "invalidity" or

9

"noninfringement" with respect to Elk's pending patent application would have had no legal meaning or effect. The fact that the patent was about to issue and would have been granted before the court reached the merits of the case is of no moment. Justiciability must be judged as of the time of filing, not as of some indeterminate future date when the court might reach the merits and the patent has issued. We therefore hold that a threat is not sufficient to create a case or controversy unless it is made with respect to a patent that has issued before a complaint is filed. Thus, the district court correctly held that there was no justiciable case or controversy in this case at the time the complaint was filed. GAF contends, however, that the issuance of the '144 patent cured any jurisdictional defect. We disagree. Later events may not create jurisdiction where none existed at the time of filing. *GAF Building Materials Corp. v. Elk Corp. of Texas*, 90 F.3d 479, 483 (Fed. Cir. 1996) (citations and quotations omitted). One other interesting tidbit: Cisco appeared to pick up on this, very quickly. Cisco filed a declaratory judgment action (in Connecticut) yesterday, the day after the patent issued, it should stick in Connecticut. Perhaps realizing their fatal flaw (as a couple of other bloggers/news items have pointed out), ESN (represented by Chicago firm McAndrews Held & Malloy and local counsel Eric Albritton and T. Johnny Ward) filed an amended complaint in Texarkana today – amending to change absolutely nothing at all, by the way, except the filing date of the complaint. Survey says? XXXXXX (insert "Family Feud" sound here). Sorry, ESN. You're on your way to New Haven. Wonder how Johnny Ward will play there? Posted by Troll Tracker at 7:00 PM

The Troll Tracker Post of Thursday, October 18, 2007 "ESN Convinces EDTX Court Clerk To Alter Documents To Try To Manufacture Subject Matter Jurisdiction Where None Existed" I got a couple of anonymous emails this morning, pointing out that the docket in ESN v. Cisco (the Texas docket, not the Connecticut docket), had been altered. One email suggested

**10**

that ESN's local counsel called the EDTX court clerk, and convinced him/her to change the docket to reflect an October 16 filing date, rather than the October 15 filing date. I checked, and sure enough, that's exactly what happened – the docket was altered to reflect an October 16 filing date and the complaint was altered to change the filing date stamp from October 15 to October 16. Only the EDTX Court Clerk could have made such changes. Of course, there are a couple of flaws in this conspiracy. First, ESN counsel Eric Albritton signed the Civil Cover Sheet stating that the complaint had been filed on October 15. Second, there's tons of proof that ESN filed on October 15. Heck, Dennis Crouch may be subpoenaed as a witness! You can't change history, and it's outrageous that the Eastern District of Texas is apparently, wittingly or unwittingly, conspiring with a non-practicing entity to try to manufacture subject matter jurisdiction. This is yet another example of the abusive nature of litigating patent cases in the Banana Republic of East Texas. (n.b.: don't be surprised if the docket changes back once the higher-ups in the Court get wind of this, making this post completely irrelevant). Posted by Troll Tracker at 1:13 PM

The Troll Tracker Post of October 18th Post was later amended to read: "ESN Convinces EDTX Court Clerk To Alter Documents To Try To Manufacture Subject Matter Jurisdiction Where None Existed" I got a couple of anonymous emails this morning, pointing out that the docket in ESN v. Cisco (the Texas docket, not the Connecticut docket), had been altered. One email suggested that ESN's local counsel called the EDTX court clerk, and convinced him/her to change the docket to reflect an October 16 filing date, rather than the October 15 filing date. I checked, and sure enough, that's exactly what happened – the docket was altered to reflect an October 16 filing date and the complaint was altered to change the filing date stamp from October 15 to October 16. Only the EDTX Court Clerk could have made such changes. Of

11

course, there are a couple of flaws in this conspiracy. First, ESN counsel Eric Albritton signed the Civil Cover Sheet stating that the complaint had been filed on October 15. Second, there's tons of proof that ESN filed on October 15. Heck, Dennis Crouch may be subpoenaed as a witness! You can't change history, and it's outrageous that the Eastern District of Texas may have, wittingly or unwittingly, helped a non-practicing entity to try to manufacture subject matter jurisdiction. Even if this was a "mistake," which I can't see how it could be, given that someone emailed me a printout of the docket from Monday showing the case, the proper course of action should be a motion to correct the docket. (n.b.: don't be surprised if the docket changes back once the higher-ups in the Court get wind of this, making this post completely irrelevant). EDIT: You can't change history, but you can change a blog entry based on information emailed to you from a helpful reader. Posted by Troll Tracker at 1:13 PM

Plaintiff's response is based on the information and documents available at this time and upon such investigation as is reasonable for Plaintiff to undertake under the circumstances. Plaintiff anticipates conducting additional discovery in this case and he reserves the right to amend and/or supplement this response.

**INTERROGATORY NO. 4:**

**If you contend that the October 17, 2007 Patent Troll Tracker article is defamatory, identify all statements that you contend are defamatory. Do not include in your answer the statements that are not defamatory but that that provide the context for the statements that you contend are defamatory.**

**ANSWER TO INTERROGATORY NO. 4:**

Plaintiff specifically objects to Defendant's interrogatory for the following reasons: (1) the interrogatory seeks to improperly narrow Plaintiff's cause of action to a single complained-of

12

article, when Plaintiff specifically alleges that the October 17, 2007 Troll Tracker post and both
of the Troll Tracker posts dated October 18, 2007 are false and defamatory of Plaintiff; (2) the
interrogatory improperly seeks to have Plaintiff limit his response by not including the "context"
for Defendant's defamatory statements when Plaintiff has alleged that the consecutive posts,
together and in their entirety, are false, defamatory, and create a defamatory impression of
Plaintiff, which necessarily requires the context of the allegations made; (3) the interrogatory is
vague, ambiguous and misleading with respect to the phrase "not defamatory but that provide the
context for the statements" (4) the interrogatory seeks information outside of Plaintiff's custody
and control in that the defamatory impression created by the Troll Tracker posts implicate the
understanding that readers of that post obtained from reading the statements made therein; (5)
Plaintiff objects to this interrogatory in that its answer may be determined by examining Cisco
Systems, Inc. and Richard Frenkel's documents, in particular the email received by Frenkel by
readers who understood the Troll Tracker to accuse Ward of criminal conduct; (6) the
interrogatory is a premature contention interrogatory for which discovery has not yet been taken
and for which Plaintiff cannot yet provide a full and complete response, particularly in light of
the fact that Cisco has not produced the emails received by Frenkel in which his readers were
critical of the criminal accusations he made about Ward.

Subject to the foregoing General and Specific Objections, Plaintiff responds as follows:
Frenkel's October 17, 2007 Post in its totality, and in context when read in context of the two
October 18, 2007 posts, is defamatory of Plaintiff.  Frenkel's defamatory posts, in their entirety,
and when read in context, create the false impression that Ward engaged in criminal behavior,
unethical behavior, conduct for which he could be disbarred, and conduct unbefitting a member
of the bar.  Therefore, the following statements are defamatory of Plaintiff:

13

The Troll Tracker Post of Wednesday, October 17, 2007 "Troll Jumps the Gun, Sues Cisco Too Early." "Well, I knew the day would come. I'm getting my troll news from <u>Dennis Crouch</u> now. According to Dennis, a company called ESN sued Cisco for patent infringement on October 15[th], while the patent did not issue until October 16th. I looked, and ESN appears to be a shell entity managed by the President and CEO of DirectAdvice, and online financial website. And, yes, he's a lawyer. He clerked for a federal judge in Connecticut, and was an attorney at Day, Berry & Howard. Now he's suing Cisco on behalf of a non-practicing entity. I asked myself, can ESN do this? I would think that the court would lack subject matter jurisdiction, since ESN owned no property right at the time of the lawsuit, and the passage of time should not cure that. And, in fact, <u>I was right</u>: A declaratory judgment of "invalidity" or "noninfringement" with respect to Elk's pending patent application would have had no legal meaning or effect. The fact that the patent was about to issue and would have been granted before the court reached the merits of the case is of no moment. Justiciability must be judged as of the time of filing, not as of some indeterminate future date when the court might reach the merits and the patent has issued. We therefore hold that a threat is not sufficient to create a case or controversy unless it is made with respect to a patent that has issued before a complaint is filed. Thus, the district court correctly held that there was no justiciable case or controversy in this case at the time the complaint was filed. GAF contends, however, that the issuance of the '144 patent cured any jurisdictional defect. We disagree. Later events may not create jurisdiction where none existed at the time of filing. *GAF Building Materials Corp. v. Elk Corp. of Texas*, 90 F.3d 479, 483 (Fed. Cir. 1996) (citations and quotations omitted). One other interesting tidbit: Cisco appeared to pick up on this, very quickly. Cisco filed a declaratory judgment action (in Connecticut) yesterday, the day after the patent issued, it should stick in

Connecticut. Perhaps realizing their fatal flaw (as a couple of other bloggers/news items have

pointed out), ESN (represented by Chicago firm McAndrews Held & Malloy and local counsel

Eric Albritton and T. Johnny Ward) filed an amended complaint in Texarkana today – amending

to change absolutely nothing at all, by the way, except the filing date of the complaint. Survey

says? XXXXXX (insert "Family Feud" sound here). Sorry, ESN. You're on your way to New

Haven. Wonder how Johnny Ward will play there? Posted by Troll Tracker at 7:00 PM.

Plaintiff's response is based on the information and documents available at this time and

upon such investigation as is reasonable for Plaintiff to undertake under the circumstances.

Plaintiff anticipates conducting additional discovery in this case and he reserves the right to

amend and/or supplement this response.

**INTERROGATORY NO. 5:**

**Identify all statements that you contend are defamatory in the October 18, 2007 Article
referred to in paragraph 9 of Plaintiff's Original Complaint. Do not include in your
answer the statements that are not defamatory but that that provide the context for the
statements that you contend are defamatory.**

**ANSWER TO INTERROGATORY NO. 5:**

Plaintiff specifically objects to Defendant's interrogatory for the following reasons: (1)

the interrogatory seeks to improperly narrow Plaintiff's cause of action to a single complained-of

article, when Plaintiff specifically alleges that the October 17, 2007 Troll Tracker post and both

of the Troll Tracker posts dated October 18, 2007 are false and defamatory of Plaintiff; (2) the

interrogatory improperly seeks to have Plaintiff limit his response by not including the "context"

for Defendant's defamatory statements when Plaintiff has alleged that the entirety of the

15

consecutive posts, together and in their entirety, are false, defamatory, and create a defamatory impression of Plaintiff, which necessarily requires the context of the allegations made; (3) the interrogatory is vague, ambiguous and misleading with respect to the phrase "not defamatory but that provide the context for the statements" (4) the interrogatory seeks information outside of Plaintiff's custody and control in that the defamatory impression created by the Troll Tracker posts implicate the understanding that readers of that post obtained from reading the statements made therein; (5) Plaintiff objects to this interrogatory in that its answer may be determined by examining Cisco Systems, Inc. and Richard Frenkel's documents, in particular the email received by Frenkel by readers who understood the Troll Tracker to accuse Ward of criminal conduct; (6) the interrogatory is a premature contention interrogatory for which discovery has not yet been taken and for which Plaintiff cannot yet provide a full and complete response, particularly in light of the fact that Cisco has not produced the emails received by Frenkel in which his readers were critical of the criminal accusations he made about Ward.

Subject to the foregoing General and Specific Objections, Plaintiff responds as follows: Frenkel's two October 18, 2007 Posts in their totality and in context when read in context of the October 17, 2007 post, are defamatory of Plaintiff. Frenkel's defamatory posts, in their entirety, and when read in context, create the false impression that Ward engaged in criminal behavior, unethical behavior, conduct for which he could be disbarred, and conduct unbefitting a member of the bar. Therefore, the following statements are defamatory of Plaintiff

The Troll Tracker Post of Thursday, October 18, 2007 says "ESN Convinces EDTX Court Clerk To Alter Documents To Try To Manufacture Subject Matter Jurisdiction Where None Existed" I got a couple of anonymous emails this morning, pointing out that the docket in ESN v. Cisco (the Texas docket, not the Connecticut docket), had been altered. One email

suggested that ESN's local counsel called the EDTX court clerk, and convinced him/her to change the docket to reflect an October 16 filing date, rather than the October 15 filing date. I checked, and sure enough, that's exactly what happened – the docket was altered to reflect an October 16 filing date and the complaint was altered to change the filing date stamp from October 15 to October 16. Only the EDTX Court Clerk could have made such changes. Of course, there are a couple of flaws in this conspiracy. First, ESN counsel Eric Albritton signed the Civil Cover Sheet stating that the complaint had been filed on October 15. Second, there's tons of proof that ESN filed on October 15. Heck, Dennis Crouch may be subpoenaed as a witness! You can't change history, and it's outrageous that the Eastern District of Texas is apparently, wittingly or unwittingly, conspiring with a non-practicing entity to try to manufacture subject matter jurisdiction. This is yet another example of the abusive nature of litigating patent cases in the Banana Republic of East Texas. (n.b.: don't be surprised if the docket changes back once the higher-ups in the Court get wind of this, making this post completely irrelevant).

Posted by Troll Tracker at 1:13 PM

The October 18th Post was later amended to read: "ESN Convinces EDTX Court Clerk To Alter Documents To Try To Manufacture Subject Matter Jurisdiction Where None Existed" I got a couple of anonymous emails this morning, pointing out that the docket in ESN v. Cisco (the Texas docket, not the Connecticut docket), had been altered. One email suggested that ESN's local counsel called the EDTX court clerk, and convinced him/her to change the docket to reflect an October 16 filing date, rather than the October 15 filing date. I checked, and sure enough, that's exactly what happened – the docket was altered to reflect an October 16 filing date and the complaint was altered to change the filing date stamp from October 15 to October 16. Only the EDTX Court Clerk could have made such changes. Of course, there are a couple

17

of flaws in this conspiracy. First, ESN counsel Eric Albritton signed the Civil Cover Sheet

stating that the complaint had been filed on October 15. Second, there's tons of proof that ESN

filed on October 15. Heck, Dennis Crouch may be subpoenaed as a witness! You can't change

history, and it's outrageous that the Eastern District of Texas may have, wittingly or unwittingly,

helped a non-practicing entity to try to manufacture subject matter jurisdiction. Even if this was

a "mistake," which I can't see how it could be, given that someone emailed me a printout of the

docket from Monday showing the case, the proper course of action should be a motion to correct

the docket. (n.b.: don't be surprised if the docket changes back once the higher-ups in the Court

get wind of this, making this post completely irrelevant). EDIT: You can't change history, but

you can change a blog entry based on information emailed to you from a helpful reader. Posted

by Troll Tracker at 1:13 PM

> Plaintiff's response is based on the information and documents available at this time and
upon such investigation as is reasonable for Plaintiff to undertake under the circumstances.
Plaintiff anticipates conducting additional discovery in this case and he reserves the right to
amend and/or supplement this response.

**INTERROGATORY NO. 6:**

**Identify each statement that "accused Plaintiff of committing a crime" verbatim referred to
in paragraph 11 of Plaintiff's Original Complaint. Do not include in your answer the
statements that you contend do not accuse Plaintiff of a crime but that that provide the
context for the statements that you contend accuse him of a crime.**

18

**ANSWER TO INTERROGATORY NO. 6:**

Plaintiff specifically objects to Defendant's interrogatory for the following reasons: (1) the interrogatory seeks to improperly narrow Plaintiff's cause of action to a single complained-of article, when Plaintiff specifically alleges that the October 17, 2007 Troll Tracker post and both of the Troll Tracker posts dated October 18, 2007 are false and defamatory of Plaintiff; (2) the interrogatory improperly seeks to have Plaintiff limit his response by not including the "context" for Defendant's defamatory statements when Plaintiff has alleged that the entirety of the consecutive posts, together and in their entirety, are false, defamatory, and create a defamatory impression of Plaintiff, which necessarily requires the context of the allegations made; (3) the interrogatory is vague, ambiguous and misleading with respect to the phrase "not defamatory but that provide the context for the statements" (4) the interrogatory seeks information outside of Plaintiff's custody and control in that the defamatory impression created by the Troll Tracker posts implicate the understanding that readers of that post obtained from reading the statements made therein; (5) Plaintiff objects to this interrogatory in that its answer may be determined by examining Cisco Systems, Inc. and Richard Frenkel's documents, in particular the email received by Frenkel by readers who understood the Troll Tracker to accuse Ward of criminal conduct; (6) the interrogatory is a premature contention interrogatory for which discovery has not yet been taken and for which Plaintiff cannot yet provide a full and complete response, particularly in light of the fact that Cisco has not produced the emails received by Frenkel in which his readers were critical of the criminal accusations he made about Ward.

Subject to the foregoing General and Specific Objections, Plaintiff responds as follows:

The Troll Tracker Post of Wednesday, October 17, 2007 "Troll Jumps the Gun, Sues Cisco Too Early." "Well, I knew the day would come. I'm getting my troll news from <u>Dennis</u>

19

Crouch now. According to Dennis, a company called ESN sued Cisco for patent infringement on October 15th, while the patent did not issue until October 16th. I looked, and ESN appears to be a shell entity managed by the President and CEO of DirectAdvice, and online financial website. And, yes, he's a lawyer. He clerked for a federal judge in Connecticut, and was an attorney at Day, Berry & Howard. Now he's suing Cisco on behalf of a non-practicing entity. I asked myself, can ESN do this? I would think that the court would lack subject matter jurisdiction, since ESN owned no property right at the time of the lawsuit, and the passage of time should not cure that. And, in fact, I was right: A declaratory judgment of "invalidity" or "noninfringement" with respect to Elk's pending patent application would have had no legal meaning or effect. The fact that the patent was about to issue and would have been granted before the court reached the merits of the case is of no moment. Justiciability must be judged as of the time of filing, not as of some indeterminate future date when the court might reach the merits and the patent has issued. We therefore hold that a threat is not sufficient to create a case or controversy unless it is made with respect to a patent that has issued before a complaint is filed. Thus, the district court correctly held that there was no justiciable case or controversy in this case at the time the complaint was filed. GAF contends, however, that the issuance of the '144 patent cured any jurisdictional defect. We disagree. Later events may not create jurisdiction where none existed at the time of filing. *GAF Building Materials Corp. v. Elk Corp. of Texas*, 90 F.3d 479, 483 (Fed. Cir. 1996) (citations and quotations omitted). One other interesting tidbit: Cisco appeared to pick up on this, very quickly. Cisco filed a declaratory judgment action (in Connecticut) yesterday, the day after the patent issued, it should stick in Connecticut. Perhaps realizing their fatal flaw (as a couple of other bloggers/news items have pointed out), ESN (represented by Chicago firm McAndrews Held & Malloy and local counsel

Eric Albritton and T. Johnny Ward) filed an amended complaint in Texarkana today – amending to change absolutely nothing at all, by the way, except the filing date of the complaint.  Survey says? XXXXXX (insert "Family Feud" sound here).  Sorry, ESN.  You're on your way to New Haven.  Wonder how Johnny Ward will play there?  Posted by Troll Tracker at 7:00 PM. Frenkel's two October 18, 2007 Posts in their totality and in context when read in context of the October 17, 2007 post, are defamatory of Plaintiff.  Frenkel's defamatory posts, in their entirety, and when read in context, create the false impression that Ward engaged in criminal behavior, unethical behavior, conduct for which he could be disbarred, and conduct unbefitting a member of the bar.  Therefore, the following statements are defamatory of Plaintiff

The Troll Tracker Post of Thursday, October 18, 2007 says "ESN Convinces EDTX Court Clerk To Alter Documents To Try To Manufacture Subject Matter Jurisdiction Where None Existed"  I got a couple of anonymous emails this morning, pointing out that the docket in ESN v. Cisco (the Texas docket, not the Connecticut docket), had been altered.  One email suggested that ESN's local counsel called the EDTX court clerk, and convinced him/her to change the docket to reflect an October 16 filing date, rather than the October 15 filing date.  I checked, and sure enough, that's exactly what happened – the docket was altered to reflect an October 16 filing date and the complaint was altered to change the filing date stamp from October 15 to October 16.  Only the EDTX Court Clerk could have made such changes.  Of course, there are a couple of flaws in this conspiracy.  First, ESN counsel Eric Albritton signed the Civil Cover Sheet stating that the complaint had been filed on October 15.  Second, there's tons of proof that ESN filed on October 15.  Heck, Dennis Crouch may be subpoenaed as a witness!  You can't change history, and it's outrageous that the Eastern District of Texas is apparently, wittingly or unwittingly, conspiring with a non-practicing entity to try to manufacture

21

subject matter jurisdiction.  This is yet another example of the abusive nature of litigating patent cases in the Banana Republic of East Texas.  (n.b.:  don't be surprised if the docket changes back once the higher-ups in the Court get wind of this, making this post completely irrelevant).

Posted by Troll Tracker at 1:13 PM

The October 18th Post was later amended to read: "ESN Convinces EDTX Court Clerk To Alter Documents To Try To Manufacture Subject Matter Jurisdiction Where None Existed"  I got a couple of anonymous emails this morning, pointing out that the docket in ESN v. Cisco (the Texas docket, not the Connecticut docket), had been altered.  One email suggested that ESN's local counsel called the EDTX court clerk, and convinced him/her to change the docket to reflect an October 16 filing date, rather than the October 15 filing date.  I checked, and sure enough, that's exactly what happened – the docket was altered to reflect an October 16 filing date and the complaint was altered to change the filing date stamp from October 15 to October 16.  Only the EDTX Court Clerk could have made such changes.  Of course, there are a couple of flaws in this conspiracy.  First, ESN counsel Eric Albritton signed the Civil Cover Sheet stating that the complaint had been filed on October 15.  Second, there's tons of proof that ESN filed on October 15.  Heck, Dennis Crouch may be subpoenaed as a witness!  You can't change history, and it's outrageous that the Eastern District of Texas may have, wittingly or unwittingly, helped a non-practicing entity to try to manufacture subject matter jurisdiction.  Even if this was a "mistake," which I can't see how it could be, given that someone emailed me a printout of the docket from Monday showing the case, the proper course of action should be a motion to correct the docket.  (n.b.:  don't be surprised if the docket changes back once the higher-ups in the Court get wind of this, making this post completely irrelevant).  EDIT:  You can't change history, but

22

you can change a blog entry based on information emailed to you from a helpful reader.  Posted
by Troll Tracker at 1:13 PM.

Plaintiff's response is based on the information and documents available at this time and
upon such investigation as is reasonable for Plaintiff to undertake under the circumstances.
Plaintiff anticipates conducting additional discovery in this case and he reserves the right to
amend and/or supplement this response.

**INTERROGATORY NO. 7:**

**Identify all false and defamatory statements referred to in paragraphs 16-20 of Plaintiff's
Original Complaint.**

**ANSWER TO INTERROGATORY NO. 7:**

Plaintiff specifically objects to Defendant's interrogatory as a premature contention
interrogatory for which discovery has not yet been taken and for which Plaintiff cannot yet
provide a full and complete response, particularly in light of the fact that Cisco has not produced
the emails received by Frenkel in which his readers were critical of the criminal accusations he
made about Ward.

Subject to the foregoing General and Specific Objections, Plaintiff responds as follows:

The Troll Tracker Post of Wednesday, October 17, 2007 "Troll Jumps the Gun, Sues
Cisco Too Early."  "Well, I knew the day would come.  I'm getting my troll news from Dennis
Crouch now.  According to Dennis, a company called ESN sued Cisco for patent infringement
on October 15[th], while the patent did not issue until October 16th.  I looked, and ESN appears to
be a shell entity managed by the President and CEO of DirectAdvice, and online financial

website. And, yes, he's a lawyer. He clerked for a federal judge in Connecticut, and was an

attorney at Day, Berry & Howard. Now he's suing Cisco on behalf of a non-practicing entity. I

asked myself, can ESN do this? I would think that the court would lack subject matter

jurisdiction, since ESN owned no property right at the time of the lawsuit, and the passage of

time should not cure that. And, in fact, I was right: A declaratory judgment of "invalidity" or

"noninfringement" with respect to Elk's pending patent application would have had no legal

meaning or effect. The fact that the patent was about to issue and would have been granted

before the court reached the merits of the case is of no moment. Justiciability must be judged as

of the time of filing, not as of some indeterminate future date when the court might reach the

merits and the patent has issued. We therefore hold that a threat is not sufficient to create a case

or controversy unless it is made with respect to a patent that has issued before a complaint is

filed. Thus, the district court correctly held that there was no justiciable case or controversy in

this case at the time the complaint was filed. GAF contends, however, that the issuance of the

'144 patent cured any jurisdictional defect. We disagree. Later events may not create

jurisdiction where none existed at the time of filing. *GAF Building Materials Corp. v. Elk Corp.*

*of Texas*, 90 F.3d 479, 483 (Fed. Cir. 1996) (citations and quotations omitted). One other

interesting tidbit: Cisco appeared to pick up on this, very quickly. Cisco filed a declaratory

judgment action (in Connecticut) yesterday, the day after the patent issued, it should stick in

Connecticut. Perhaps realizing their fatal flaw (as a couple of other bloggers/news items have

pointed out), ESN (represented by Chicago firm McAndrews Held & Malloy and local counsel

Eric Albritton and T. Johnny Ward) filed an amended complaint in Texarkana today – amending

to change absolutely nothing at all, by the way, except the filing date of the complaint. Survey

says? XXXXXX (insert "Family Feud" sound here).  Sorry, ESN.  You're on your way to New
Haven.  Wonder how Johnny Ward will play there?  Posted by Troll Tracker at 7:00 PM.

Frenkel's two October 18, 2007 Posts in their totality and in context when read in context
of the October 17, 2007 post, are defamatory of Plaintiff.  Frenkel's defamatory posts, in their
entirety, and when read in context, create the false impression that Ward engaged in criminal
behavior, unethical behavior, conduct for which he could be disbarred, and conduct unbefitting a
member of the bar.  Therefore, the following statements are defamatory of Plaintiff.

The Troll Tracker Post of Thursday, October 18, 2007 says "ESN Convinces EDTX
Court Clerk To Alter Documents To Try To Manufacture Subject Matter Jurisdiction Where
None Existed"  I got a couple of anonymous emails this morning, pointing out that the docket in
ESN v. Cisco (the Texas docket, not the Connecticut docket), had been altered.  One email
suggested that ESN's local counsel called the EDTX court clerk, and convinced him/her to
change the docket to reflect an October 16 filing date, rather than the October 15 filing date.  I
checked, and sure enough, that's exactly what happened – the docket was altered to reflect an
October 16 filing date and the complaint was altered to change the filing date stamp from
October 15 to October 16.  Only the EDTX Court Clerk could have made such changes.  Of
course, there are a couple of flaws in this conspiracy.  First, ESN counsel Eric Albritton signed
the Civil Cover Sheet stating that the complaint had been filed on October 15.  Second, there's
tons of proof that ESN filed on October 15.  Heck, Dennis Crouch may be subpoenaed as a
witness!  You can't change history, and it's outrageous that the Eastern District of Texas is
apparently, wittingly or unwittingly, conspiring with a non-practicing entity to try to manufacture
subject matter jurisdiction.  This is yet another example of the abusive nature of litigating patent
cases in the Banana Republic of East Texas. (n.b.:  don't be surprised if the docket changes back

25

once the higher-ups in the Court get wind of this, making this post completely irrelevant).

Posted by Troll Tracker at 1:13 PM

The October 18th Post was later amended to read: "ESN Convinces EDTX Court Clerk To Alter Documents To Try To Manufacture Subject Matter Jurisdiction Where None Existed" I got a couple of anonymous emails this morning, pointing out that the docket in ESN v. Cisco (the Texas docket, not the Connecticut docket), had been altered. One email suggested that ESN's local counsel called the EDTX court clerk, and convinced him/her to change the docket to reflect an October 16 filing date, rather than the October 15 filing date. I checked, and sure enough, that's exactly what happened – the docket was altered to reflect an October 16 filing date and the complaint was altered to change the filing date stamp from October 15 to October 16. Only the EDTX Court Clerk could have made such changes. Of course, there are a couple of flaws in this conspiracy. First, ESN counsel Eric Albritton signed the Civil Cover Sheet stating that the complaint had been filed on October 15. Second, there's tons of proof that ESN filed on October 15. Heck, Dennis Crouch may be subpoenaed as a witness! You can't change history, and it's outrageous that the Eastern District of Texas may have, wittingly or unwittingly, helped a non-practicing entity to try to manufacture subject matter jurisdiction. Even if this was a "mistake," which I can't see how it could be, given that someone emailed me a printout of the docket from Monday showing the case, the proper course of action should be a motion to correct the docket. (n.b.: don't be surprised if the docket changes back once the higher-ups in the Court get wind of this, making this post completely irrelevant). EDIT: You can't change history, but you can change a blog entry based on information emailed to you from a helpful reader. Posted by Troll Tracker at 1:13 PM.

26

Plaintiff's response is based on the information and documents available at this time and upon such investigation as is reasonable for Plaintiff to undertake under the circumstances. Plaintiff anticipates conducting additional discovery in this case and he reserves the right to amend and/or supplement this response.

**INTERROGATORY NO. 8:**

**With respect to your allegation in paragraph 11 of the Petition that Frenkel accused you of a crime, state all crimes (including the specific statute) that you allege Frenkel accused you of.**

**ANSWER TO INTERROGATORY NO. 8:**

Plaintiff specifically objects to Defendant's interrogatory for the following reasons: (1) the interrogatory cannot be answered based on first-hand knowledge but rather calls for speculation, (2) the interrogatory seeks information outside of Plaintiff's custody and control; (3) the information requested is in Defendant's possession, custody or control; (4) the interrogatory imposes obligations upon Plaintiff that exceed his obligations under the Federal Rules; (5) the interrogatory is a premature contention interrogatory for which discovery has not yet been taken and for which Plaintiff cannot yet provide a full response.

Subject to the foregoing General and Specific Objections, Plaintiff responds as follows:

Frenkel's October 17, 2007 and two October 18, 2007 posts include accusations that a reasonable reader of his posts would have understood to accuse Plaintiff of criminal behavior. Frenkel specifically used the words "alter" "conspiracy" "witnesses" "subpoenas" and "proof" all to allege and to create the impression that Ward conspired with others to alter official governmental records. Those facts, if true, could have subjected Ward to criminal prosecution.

The particular criminal statutes that serve as the basis of Frenkel's statements are known only to Frenkel and Cisco.

27

Frenkel's readers also understood him to accuse Ward of criminal conduct. The particular criminal statutes that serve as the basis of Frenkel's readers' understanding are known only to those yet unidentified third-parties, and perhaps to Frenkel and Cisco. Cisco has not produced the emails Frenkel received critical of his criminal accusations concerning Ward. Therefore, Ward is unable to identify any criminal statute that Frenkel's readers identified as the basis of Frenkel's criminal allegations.

Frenkel's accusations of criminal conduct are false and defamatory of Ward, irrespective of whether his assertions technically violated a statute, or whether or not Ward could have been prosecuted for the conduct that Frenkel alleged to be criminal. Although no criminal statute need be violated before Defendant can be held accountable for Cisco and Frenkel's false and defamatory statements about Ward, several criminal statutes may cover the type of conduct that Frenkel alleged to have occurred, including but not limited to, 18 U.S.C. § 1001, 18 U.S.C. § 1512, Texas Penal Code 37.10(a)(1); Arkansas Code Annotated § 5-54-121.

Plaintiff's response is based on the information and documents available at this time and upon such investigation as is reasonable for Plaintiff to undertake under the circumstances. Plaintiff anticipates conducting additional discovery in this case and he reserves the right to amend and/or supplement this response.

**INTERROGATORY NO. 9:**

**With respect to your allegation in paragraph 11 of the Petition that Frenkel accused you of engaging in conduct that could result in disciplinary proceedings before the State Bar of Texas, state the rules or regulations that you allege Frenkel accused you of violating (including the specific rule or regulation) and all statements from the Article that accuse you of such violation.**

**ANSWER TO INTERROGATORY NO. 9:**

Plaintiff specifically objects to Defendant's interrogatory for the following reasons: (1) the interrogatory cannot be answered based on first-hand knowledge but rather calls for speculation, (2) the interrogatory seeks information outside of Plaintiff's custody and control; (3) the information requested is in Defendant's possession, custody or control; (4) the interrogatory imposes obligations upon Plaintiff that exceed his obligations under the Federal Rules; (5) the interrogatory is a premature contention interrogatory for which discovery has not yet been taken and for which Plaintiff cannot yet provide a full response.

Subject to the foregoing General and Specific Objections, Plaintiff responds as follows:

Frenkel's October 17, 2007 and two October 18, 2007 posts include accusations that a reasonable reader of his posts would have understood to accuse Plaintiff of unethical behavior. The incorrect facts alleged in the Troll Tracker's posts, if true, could have subjected Ward to disciplinary proceedings before the State Bar of Texas. The Troll Tracker posts state that ESN's counsel, including Ward, convinced the EDTX court clerk to alter documents to try to manufacture subject matter jurisdiction where none existed, that he had been successful in improperly convincing the court clerk "alter" the record, including the filing date stamp, to benefit his client at Cisco's expense, and that Ward's conduct was abusive litigation conduct that would be corrected by the "higher-ups" in the Court. Frenkel went on to say that Ward's conduct could not have been a "mistake" and that Ward acted improperly by not filing a motion to correct the docket instead of contacting the clerk's office. Those accusations, taken in context and in conjunction with the statements made in all three Troll Tracker posts accuse Ward of unethical conduct. Additionally, any attorney convicted of a felony is subject to disciplinary

29

proceedings before the state bar. Thus, Frenkel's accusations that Ward engaged in criminal conduct also accuse him of unethical conduct.

The particular ethical violations that serve as the basis of Frenkel's statements are known only to Frenkel and Cisco. Likewise, the particular ethical violations that serve as the basis of any of the Troll Tracker's readers' understanding that Ward engaged in unethical conduct are known only to those yet unidentified third-parties, and perhaps to Frenkel and Cisco. Cisco has not produced the emails Frenkel received critical of his criminal accusations concerning Ward. Therefore, Ward is unable to identify any ethical violation that Frenkel's readers may have identified as the basis of Frenkel's allegation that Ward was acting unethically and improperly in the ESN case.

Frenkel's accusations of unethical conduct are false and defamatory of Ward, irrespective of whether his assertions technically violated an ethical rule, or whether or not Ward could have been disciplined by the State of Texas for the conduct that Frenkel alleged to be unethical. Although no ethical rule need be violated before Defendant can be held accountable for Cisco and Frenkel's false and defamatory statements about Ward, several ethical rules may cover the type of conduct that Frenkel falsely alleged occurred, including but not limited to, Texas Disciplinary Rules of Professional Conduct Rules 3.03, 3.04, 3.05, 5.03, and 8.04.

Plaintiff's response is based on the information and documents available at this time and upon such investigation as is reasonable for Plaintiff to undertake under the circumstances. Plaintiff anticipates conducting additional discovery in this case and he reserves the right to amend and/or supplement this response.

**INTERROGATORY NO. 10:**

**If you contend that Amie Mathis was not working on your behalf when she contacted the clerks of the Eastern District of Texas regarding the ESN Texas filing, state all facts supporting your contention.**

**ANSWER TO INTERROGATORY NO. 10:**

Plaintiff specifically objects to Defendant's interrogatory for the following reasons: (1) the interrogatory is overly broad, overly burdensome and oppressive and fails to limit the information sought to a reasonable subject matter or time period; (2) the interrogatory is vague and ambiguous with respect to the words "ESN Texas filing": (3) the interrogatory fails to describe the information requested with reasonable particularity.

Subject to the foregoing General and Specific Objections, Plaintiff responds as follows: Amie Mathis is not employed by Plaintiff. Amie Mathis was not working under his direction or supervision at the time she filed the ESN Complaint on October 16, 2007. Amie Mathis was an employee of the Albritton Law Firm, Ward's co-counsel in the *ESN v. Cisco* litigation.

Plaintiff's response is based on the information and documents available at this time and upon such investigation as is reasonable for Plaintiff to undertake under the circumstances. Plaintiff anticipates conducting additional discovery in this case and he reserves the right to amend and/or supplement this response.

**INTERROGATORY NO. 11:**

**Identify all actions undertaken by you or at your direction to retain, locate, and produce documents requested in Cisco System Inc.'s First Request for Production or any other information that may be relevant to this case, and separately and for each action identify the persons involved, the date of the action, and describe the documents and communications that were obtained.**

31

**ANSWER TO INTERROGATORY NO. 11:**

Plaintiff specifically objects to Defendant's interrogatory for the following reasons: (1) the interrogatory seeks privileged information; (2) the interrogatory is overly broad, overly burdensome and oppressive and fails to limit the information sought to a reasonable time period; (3) the interrogatory is vague and ambiguous with respect to the words "or any other information" "may be relevant" and "describe"; (4) the interrogatory imposes obligations upon Plaintiff that exceed his obligations under the Federal Rules.

Subject to the foregoing General and Specific Objections, Plaintiff responds as follows:

Plaintiff's documents are located on a single document server system to which only Plaintiff and his limited office staff have access. In response to Defendant's First Request for Production, Plaintiff reviewed all files in his possession, custody and control, including all email correspondence. Plaintiff reviewed all emails sent and received on his computer system. In an abundance of caution, Plaintiff reviewed his deleted emails accounts to ensure that no relevant documents had been deleted from his records. Plaintiff also reviewed his case files for both the above captioned case and the ESN v. Cisco litigation to ensure all responsive, relevant, and non-privileged documents were located. Plaintiff undertook these efforts within days of receiving Cisco's First Request for Production of Documents. The persons involved in collecting Plaintiff's documents include Plaintiff and his counsel. All relevant, responsive and non-privileged documents located have either been produced or will be produced in Plaintiff's upcoming document production.

Plaintiff's response is based on the information and documents available at this time and upon such investigation as is reasonable for Plaintiff to undertake under the circumstances.

32

Plaintiff anticipates conducting additional discovery in this case and he reserves the right to amend and/or supplement this response.

**INTERROGATORY NO. 12:**

**Identify each person or company with whom you communicated or from whom you received any communication regarding the Article, and separately for each communication, identify the date, time, persons involved, the purpose of the communication, the substance of the communication and identify any documents related to that communication.**

**ANSWER TO INTERROGATORY NO. 12:**

Plaintiff specifically objects to Defendant's interrogatory for the following reasons: (1) the interrogatory improperly seeks to limit Plaintiff's cause of action to a single complained-of article when Plaintiff asserts that all three Troll Tracker posts are false and defamatory; (2) the interrogatory seeks information protected by the attorney-client privilege, work product doctrine and other applicable privileges; (3) the interrogatory seeks confidential or proprietary information for which Plaintiff has an obligation to third-parties not to disclose; (4) the interrogatory seeks information that is neither relevant nor reasonably calculated to lead to the discovery of admissible evidence; (5) the interrogatory is vague and ambiguous regarding the phrase "communication regarding the article"; (6) the interrogatory, which asks for communications regarding "the article" fails to describe the information requested with reasonable particularity. Plaintiff has nevertheless employ his best efforts to construe Defendant's interrogatory.

Subject to the foregoing General and Specific Objections, Plaintiff responds as follows:

33

Plaintiff has had various communications with counsel for the purpose of seeking legal advice with respect to the above-captioned lawsuit. Those communications are privileged and are therefore not included in Plaintiff's response.

Plaintiff has had communications with various other persons regarding the allegations made by Frenkel. Those communications are memorialized in documents. All responsive, relevant and non-privileged documents have either been produced to Defendant or will be produced to Defendant in Plaintiff's upcoming document production.

Plaintiff had oral communications with Ray Niro between the dates of October 17, 2007 and March 1, 2007. Those communications concerned Mr. Niro's efforts to identify the anonymous Troll Tracker Blogger and Plaintiff's interest in determining the Troll Tracker's identity.

Plaintiff's response is based on the information and documents available at this time and upon such investigation as is reasonable for Plaintiff to undertake under the circumstances. Plaintiff anticipates conducting additional discovery in this case and he reserves the right to amend and/or supplement this response.

**INTERROGATORY NO. 13:**

**If you have spoken at any seminars or meetings of any kind in the past five years, state the name of the seminar, the topic of your speech, whether you provided any written materials, and the date and location of the speech.**

**ANSWER TO INTERROGATORY NO. 13:**

Plaintiff specifically objects to Defendant's interrogatory for the following reasons: (1) the interrogatory seeks information that is neither relevant nor reasonably calculated to lead to the discovery of admissible evidence; (2) the interrogatory is overly broad, overly burdensome

34

and oppressive and fails to limit the information sought to a reasonable subject matter; (3) the interrogatory is vague and ambiguous with respect to the words "meetings of any kind."

Subject to the foregoing General and Specific Objections, Plaintiff responds as follows:

Plaintiff spoke at the Eastern District of Texas Bar Conference on October 25 and 26 of 2007 at Moody Gardens, Galveston, Texas on the topic of the local patent rules in the Eastern District of Texas. No written materials were prepared by Plaintiff.

Plaintiff's response is based on the information and documents available at this time and upon such investigation as is reasonable for Plaintiff to undertake under the circumstances. Plaintiff anticipates conducting additional discovery in this case and he reserves the right to amend and/or supplement this response.


**INTERROGATORY NO. 14:**

**If you have written any articles or been quoted in any publication of any kind in the past five years, state the title of the article, the topic of the article, and the date and location the article was published.**

**ANSWER TO INTERROGATORY NO. 14:**

Plaintiff specifically objects to Defendant's interrogatory for the following reasons: (1) the interrogatory is overly broad, overly burdensome and oppressive and fails to limit the information sought to a reasonable subject matter; (2) the interrogatory is vague and ambiguous with respect to the words "any publication of any kind"; (3) the interrogatory seeks information outside of Plaintiff's custody and control; (4) the information requested is a matter of public record and it would be no more burdensome for Defendant to obtain that information than it would be for Plaintiff; (5) the interrogatory imposes obligations upon Plaintiff that exceed his obligations under the Federal Rules.

Subject to the foregoing General and Specific Objections, Plaintiff responds as follows: To the best of Plaintiff's knowledge, none.

Plaintiff's response is based on the information and documents available at this time and upon such investigation as is reasonable for Plaintiff to undertake under the circumstances. Plaintiff anticipates conducting additional discovery in this case and he reserves the right to amend and/or supplement this response.

**INTERROGATORY NO. 15:**

**Describe your policies and procedures pertaining to data retention and destruction from October 14, 2007 to the present, identify whether your policy has changed since that date, and if so, describe the changes to your policy and the date such changes were implemented, and identify the three people most knowledgeable about the implementation of your data retention and destruction policies and procedures.**

**ANSWER TO INTERROGATORY NO. 15:**

Plaintiff responds as follows:  Plaintiff's policy and procedure is to save all received emails, with the exception of junk e-mail, sent email and deleted emails (which would include non-case related emails for which Plaintiff would have no need to maintain records).  Plaintiff retains client communications and case-related correspondence in case folders in his computer system.  Plaintiff archives his email files.  Plaintiff maintains a computer backup of his electronic files.

Although Plaintiff's past practices included performing a hard delete every 6-9 months to purge his system of correspondence not otherwise saved, he discontinued that practice after he anticipated the above-captioned case to ensure that he did not inadvertently delete documents that may be relevant to the issues in this case.  Plaintiff has made a good faith attempt to retain and preserve all documents that may be relevant to the above-captioned case.

36

Plaintiff's response is based on the information and documents available at this time and upon such investigation as is reasonable for Plaintiff to undertake under the circumstances. Plaintiff anticipates conducting additional discovery in this case and he reserves the right to amend and/or supplement this response.

## INTERROGATORY NO. 16:

**With respect to injury or damages you claim you suffered as a result of any actions on the part of Defendants, (i) please state and itemize each element of damages and the dollar amount assigned to each element of damage; (ii) state the manner in which you determined or computed your damages; (iii) if you have not yet determined specific dollar amounts of your alleged damages, state the method, formula or theory by which you will compute your alleged damages; (iv) identify each person with whom you have consulted or in any way participated in the computation, derivation, construction, creation of your alleged damages, and each method, formula, or theory by which you have computed or you will compute damages; (v) identify each document which relates to your damages or any other matter set forth in your answer to this interrogatory; (vi) state all actions taken by you to reduce or mitigate your alleged damages; and (vii) state the facts upon which you rely in support of your claim for punitive or exemplary damages.**

## ANSWER TO INTERROGATORIES 16(i)-16(vii):

Plaintiff specifically objects to Defendant's interrogatory as being seven separate interrogatories counting toward the total number of interrogatories permitted by the Federal Rules and the Court's Scheduling Order.  Plaintiff will respond to each interrogatory separately below:

## INTERROGATORY NO. 16(i) (Defendant's No. 16)

**With respect to injury or damages you claim you suffered as a result of any actions on the part of Defendants, (i) please state and itemize each element of damages and the dollar amount assigned to each element of damage.**

## ANSWER TO INTERROGATORY NO. 16(i) (Defendant's No. 16).

Plaintiff specifically objects to Defendant's interrogatory for the following reasons: (1) the interrogatory seeks privileged information; (2) the interrogatory is overly broad, overly burdensome and oppressive and fails to limit the information sought to a reasonable subject matter or time period; (3) the interrogatory is vague and ambiguous with respect to the words "any actions on the part of Defendants"; (4) the interrogatory imposes obligations upon Plaintiff that exceed his obligations under the Federal Rules; (5) the interrogatory is a premature contention interrogatory for which discovery has not yet been taken and for which Plaintiff cannot yet provide a response.

Subject to the foregoing General and Specific Objections, Plaintiff responds as follows:

Plaintiff has suffered general damages including past and future harm to his reputation and has suffered past mental anguish and will suffer mental anguish in the future. These general damages may not be susceptible to computation. Plaintiff is entitled to punitive damages. Plaintiff cannot further provide a response without disclosing attorney-client communications and work product, at least at this stage of the litigation before discovery is complete and before expert reports are due under the Court's Scheduling Order.

Plaintiff's response is based on the information and documents available at this time and upon such investigation as is reasonable for Plaintiff to undertake under the circumstances. Plaintiff anticipates conducting additional discovery in this case and he reserves the right to amend and/or supplement this response.

**INTERROGATORY NO. 16(ii) (Defendant's 17th Interrogatory)**

**With respect to injury or damages you claim you suffered as a result of any actions on the part of Defendants, (ii) state the manner in which you determined or computed your damages.**

**ANSWER TO INTERROGATORY NO. 16(ii) (Defendant's 17th Interrogatory)**

Plaintiff specifically objects to Defendant's interrogatory for the following reasons: (1) the interrogatory specifically seeks privileged information; (2) the interrogatory is overly broad, overly burdensome and oppressive and fails to limit the information sought to a reasonable subject matter, non-privileged information, or an identifiable time period; (3) the interrogatory is vague and ambiguous with respect to the words "actions on the part of defendants"; and "manner"; (4) the interrogatory is a premature contention interrogatory for which discovery has not yet been taken and for which Plaintiff cannot yet provide a response.

Subject to the foregoing General and Specific Objections, Plaintiff responds as follows:

Plaintiff cannot provide a response without disclosing attorney-client communications and work product, at least at this stage of the litigation before discovery is complete and before expert reports are due under the Court's Scheduling Order.

Plaintiff's response is based on the information and documents available at this time and upon such investigation as is reasonable for Plaintiff to undertake under the circumstances. Plaintiff anticipates conducting additional discovery in this case and he reserves the right to amend and/or supplement this response.

**INTERROGATORY NO. 16(iii) (Defendant's 18th Interrogatory)**

**With respect to injury or damages you claim you suffered as a result of any actions on the part of Defendants, (iii) if you have not yet determined specific dollar amounts of your alleged damages, state the method, formula or theory by which you will compute your alleged damages.**

39

**ANSWER TO INTERROGATORY NO. 16(iii) (Defendant's 18th Interrogatory)**

Plaintiff specifically objects to Defendant's interrogatory for the following reasons: (1) the interrogatory specifically seeks privileged information; (2) the interrogatory is overly broad, overly burdensome and oppressive and fails to limit the information sought to a reasonable subject matter, non-privileged information, or an identifiable time period; (3) the interrogatory is vague and ambiguous with respect to the words "actions on the part of defendants"; and "method, "formula" and "theory"; (4) the interrogatory is a premature contention interrogatory for which discovery has not yet been taken and for which Plaintiff cannot yet provide a response.

Subject to the foregoing General and Specific Objections, Plaintiff responds as follows:

The general damages that Plaintiff seeks may not be susceptible to computation. Plaintiff cannot provide further response without disclosing attorney-client communications and work product, at least at this stage of the litigation before discovery is complete and before expert reports are due under the Court's Scheduling Order.  Plaintiff may seek to calculate punitive damages based on some percentage of Cisco's net worth.

Plaintiff's response is based on the information and documents available at this time and upon such investigation as is reasonable for Plaintiff to undertake under the circumstances. Plaintiff anticipates conducting additional discovery in this case and he reserves the right to amend and/or supplement this response.

**INTERROGATORY NO. 16(iv) (Defendant's 19th Interrogatory)**

**With respect to injury or damages you claim you suffered as a result of any actions on the part of Defendants, (iv) identify each person with whom you have consulted or in any way participated in the computation, derivation, construction, creation of your alleged damages, and each method, formula, or theory by which you have computed or you will compute damages.**

**ANSWER TO INTERROGATORY NO. 16(iv) (Defendant's 19th Interrogatory)**

Plaintiff specifically objects to Defendant's interrogatory for the following reasons: (1) the interrogatory specifically seeks privileged information; (2) the interrogatory is overly broad, overly burdensome and oppressive and fails to limit the information sought to a reasonable subject matter, non-privileged information, or an identifiable time period; (3) the interrogatory is vague and ambiguous with respect to the words "actions on the part of defendants"; "consulted" "or in any way participated," "computation, derivation, construction, creation," and "method, formula or theory"; (4) the interrogatory is a premature contention interrogatory for which discovery has not yet been taken and for which Plaintiff cannot yet provide a response.

Subject to the foregoing General and Specific Objections, Plaintiff responds as follows:

The general damages that Plaintiff seeks may not be susceptible to computation. Plaintiff cannot provide further response without disclosing attorney-client communications and work product, at least at this stage of the litigation before discovery is complete and before expert reports are due under the Court's Scheduling Order.

Plaintiff's response is based on the information and documents available at this time and upon such investigation as is reasonable for Plaintiff to undertake under the circumstances. Plaintiff anticipates conducting additional discovery in this case and he reserves the right to amend and/or supplement this response.

**INTERROGATORY NO. 16(v) (Defendant's 20th Interrogatory)**

**With respect to injury or damages you claim you suffered as a result of any actions on the part of Defendants, (v) identify each document which relates to your damages or any other matter set forth in your answer to this interrogatory.**

**ANSWER TO INTERROGATORY NO. 16(v) (Defendant's 20th Interrogatory)**

Plaintiff specifically objects to Defendant's interrogatory for the following reasons: (1) the interrogatory specifically seeks privileged information; (2) the interrogatory is vague and ambiguous with respect to the words "actions on the part of defendants" and "any other matter"; (3) the interrogatory is a premature contention interrogatory for which discovery has not yet been taken and for which Plaintiff cannot yet provide a response.

Subject to the foregoing General and Specific Objections, Plaintiff responds as follows:

The general damages that Plaintiff seeks may not be susceptible to computation. Plaintiff cannot provide further response without disclosing attorney-client communications and work product, at least at this stage of the litigation before discovery is complete and before expert reports are due under the Court's Scheduling Order.

Plaintiff's response is based on the information and documents available at this time and upon such investigation as is reasonable for Plaintiff to undertake under the circumstances. Plaintiff anticipates conducting additional discovery in this case and he reserves the right to amend and/or supplement this response.

**INTERROGATORY NO. 16(vi) (Defendant's 21st Interrogatory)**

**With respect to injury or damages you claim you suffered as a result of any actions on the part of Defendants, (vi) state all actions taken by you to reduce or mitigate your alleged damages.**

**ANSWER TO INTERROGATORY NO. 16(vi) (Defendant's 21st Interrogatory)**

Plaintiff specifically objects to Defendant's interrogatory for the following reasons: (1) the interrogatory seeks privileged information; (2) the interrogatory is overly broad, overly

burdensome and oppressive and fails to limit the information sought to a reasonable subject matter or time period; (3) the interrogatory is vague and argumentative in that it appears to shift the burden of proving mitigation onto Plaintiff when mitigation of damages is an affirmative defense for which Plaintiff is not required to offer affirmative evidence; (4) the information requested is in Defendant's possession, custody or control; (5) the information requested is a matter of public record and it would be no more burdensome for Defendant to obtain that information than it would be for Plaintiff.

Subject to the foregoing General and Specific Objections, Plaintiff responds as follows:

Plaintiff's reputation was publically attacked by Defendant.  Plaintiff brought the above-captioned lawsuit to publically clear his good name.  Plaintiff engaged in good-faith settlement negotiations with Defendant in which Plaintiff demanded that Defendant print a public retraction and apology in an attempt to publically clear his good name.  Plaintiff was compelled to respond to inquiries from persons and the media seeking to ascertain the true facts surrounding the filing of the ESN Complaint, the basis for this lawsuit, and the accusations made by Defendant. Plaintiff continues to practice law and continues to do so in a professional and ethical manner.

Plaintiff's response is based on the information and documents available at this time and upon such investigation as is reasonable for Plaintiff to undertake under the circumstances. Plaintiff anticipates conducting additional discovery in this case and he reserves the right to amend and/or supplement this response.

## INTERROGATORY NO. 16(vii) (Defendant's 22nd Interrogatory)

**With respect to injury or damages you claim you suffered as a result of any actions on the part of Defendants, (vii) state the facts upon which you rely in support of your claim for punitive or exemplary damages.**

**ANSWER TO INTERROGATORY NO. 16(vii) (Defendant's 22nd Interrogatory)**

Plaintiff specifically objects to Defendant's interrogatory for the following reasons:  (1) the interrogatory is vague and ambiguous with respect to the words "any actions on the part of Defendants" (2)  the interrogatory seeks information outside of Plaintiff's custody and control; (3) the information requested is in Defendant's possession, custody or control; (4) the interrogatory is a premature contention interrogatory for which discovery has not yet been taken and for which Plaintiff cannot yet provide a response.  Discovery in this case is not complete. Defendants have not yet produced documents relevant to the subject-matter of this interrogatory and have refused to produce those documents even after the Court has ordered it do to so. Therefore, Defendant's interrogatory is premature and Plaintiff cannot yet provide a full and complete response.

Subject to the foregoing General and Specific Objections, Plaintiff responds as follows:

Plaintiff will rely on facts demonstrating that Cisco acted with knowledge that its statements were false, with reckless disregard of the falsity of its statements, with negligence, with intentional ignorance of or disregard of contradictory evidence, that it failed to verify facts, that it rushed to defame Plaintiff although there was no pressing deadline or need to disseminate the Troll Tracker Blog posts before ensuring that the information contained therein was true, that the posts overstated and misstated facts, juxtaposed facts to make Plaintiff's conduct appear criminal and unethical, and that it did so with ill motive and intent.

Facts currently known to Plaintiff demonstrate that he is entitled to punitive or exemplary damages to punish Defendant for its defamatory conduct.

Defendant posted false and defamatory comments about Ward as retaliation for his representing a client who was suing Cisco for patent infringement.  Defendant posted false and

44

defamatory statements about Plaintiff for the purpose of obtaining a litigation advantage or financial advantage against ESN.  Defendant's libelous conduct was economically motivated. Defendant's ill motive and effort to obtain a litigation advantage at Plaintiff's expense is evidence of conduct sufficient to warrant punitive damages.

Cisco's Vice President, Mallun Yen, worked with John Noh of Cisco's public relations department to suggest that Rick Frenkel, who worked under Yen's supervision, post false and defamatory statements accusing Cisco's opposing counsel, Ward, of criminal and unethical conduct in a case.  Cisco acted for the purpose and with the intent of benefitting Cisco's litigation position against ESN.  Cisco involved its public relations department and governmental affairs department so as to ensure that the false and defamatory statements made about Ward were widely disseminated.  Cisco's intent to quickly and widely disseminate its false and defamatory statements is evidence of conduct sufficient to award punitive damages.

Defendant chose to make false and defamatory statements in a blog that it knew was read by intellectual property attorneys, inventors, corporations, members of the Senate and House of Representatives, the patent and Trademark Office, the Department of Justice, major law firms, judges, court personnel and the media.  Defendant knew that the Troll Tracker Blog counted almost 90, 000 visitors in a seven month period.  Defendant chose to disseminate its false and defamatory statements about Ward via a medium that would reach as many people as possible and in which Defendant's accusations would do the most harm to Ward.  Cisco's intent to quickly and widely disseminate its false and defamatory statements is evidence of conduct sufficient to award punitive damages.

Frenkel and Yen, both of whom are attorneys, knew that the words used in the Troll Tracker Blogs made allegations of criminal conduct and allegations of unethical behavior, but

they nonetheless published the articles knowing that the statements contained therein were false, with reckless disregard of the truth, with reckless disregard of the impact on Ward, and with actual and implied malice. The Troll Tracker Posts acknowledged that the author was a patent attorney and that fact, coupled with word choices aimed at portraying criminal accusations and accusations of professional misconduct, demonstrates that the Troll Tracker and Cisco intentionally sought to convey to the Troll Tracker readers that Ward engaged in criminal and/or unethical behavior. The words contained in the posts are evidence of conduct sufficient to award punitive damages.

Defendant's statements were specifically calculated to harm Ward in his business and profession and to allege he committed a criminal act. Cisco and Frenkel could have provided an objective recitation of the facts—including all facts known to Frenkel that demonstrated his accusations were false—but they didn't. Defendant opted to disseminate statements made by attorneys about another attorney in which readers (also attorneys) were told that Ward did something criminal and or unethical. The fact that Yen and Frenkel are lawyers who understood the seriousness of their accusations is evidence of conduct sufficient to award punitive damages.

Defendant had information demonstrating that Frenkel's accusations were false. Frenkel and Cisco learned from Baker Botts (and perhaps others) that there had been an error in the Court's electronic filing software. Despite having that information, Frenkel and Cisco left that information out of the posts and instead conveyed to the reader that Ward and his co-counsel had engaged in a conspiracy and unethical conduct. Cisco and Frenkel had access to the Court's website, which contained documents from which Cisco could have readily determined the true facts. Frenkel and Cisco had access to the pleadings in the *Hertz v. Enterprise* case in which an error with the Court's electronic filing software resulted in the same incorrect "header" or

"banner" and in which the publically available briefs explained that a complaint is deemed filed when received by the Court as reflected on the encrypted electronic document stamp at the bottom of the NEF. Cisco and Frenkel had access to Jillian Powell at Baker Botts who understood the significance of the encrypted electronic document stamp, understood that there had been an error reflected on the optional "banner" located on the ESN Complaint, and understood that there had been no conspiracy to alter governmental records. Frenkel and Cisco had access to the Court's local rules and ECF User's Manual which stated that a document is deemed filed when it is received by the Court. Frenkel and Cisco subsequently learned from others, including Michael Smith and Michael Barkley, that its statements were not true. Based on this information, Frenkel and Cisco knew at the time it posted that the accusations it made about Ward were false or acted with reckless disregard of the falsity of its statements. The fact that Frenkel and Cisco intentionally ignored and/or disregarded contradictory evidence and overstated, falsely stated, and created a false and defamatory impression with the statements it chose to make instead is evidence that merits the award of punitive damages.

Frenkel published defamatory statements three times, during which he obtained additional information demonstrating his accusations were false. Instead of correcting his accusations that Ward engaged in criminal and unethical conduct, he continued to publish the false and defamatory statements about Ward. Although Cisco made public statements making clear that it had every confidence in the judiciary of the Eastern District of Texas, it continued to publically disseminate the false accusations it made about Ward. Frenkel and Cisco's repeated defamation and repeated failure to come clean with the truth supports the imposition of punitive damages.

The language contained in the Troll Tracker Posts of October 17, 2007, October 18, 2007, and the revised October 18, 2007 Post demonstrates the contempt that the Defendant had against Ward and the joy with which Cisco defamed Ward. Cisco continued to defame Ward for months, and would continue to do so had Frenkel not been forced to reveal his identity. The statements contained in the Troll Tracker Blog posts are evidence of ill will and motive meriting the award of punitive damages.

Cisco did not call Ward to ascertain his account of the facts before publishing its false and defamatory statements. Nor did Defendant contact Ward's co-counsel or make other reasonable efforts to ascertain the truth before publishing false and defamatory statements about Ward. Defendant's failure to verify facts, particularly were there was no pressing deadline precluding it from doing so, is evidence that punitive damages are warranted.

Statements made by Frenkel, Yen and Noh demonstrate that Cisco acted with specific intent to defame Ward. Yen and Noh participated in, ratified, adopted and encouraged Frenkel's accusations about Ward. Although Frenkel purported not to use inside information in his blog posts, he did so on this occasion. Although Frenkel stated that docket reports are often inaccurate, he had no problem overlooking that fact on this occasion. These facts demonstrate that Cisco took unique steps to defame Ward. Cisco's conduct is evidence that supports the award of punitive damages.

Even today, long after Cisco knows that the statements made in the Troll Tracker Blogs are false and defamatory; it continues to assert that Frenkel's statements are true. Cisco's ongoing conduct is evidence supporting an award of punitive damages.

Cisco's refusal to acknowledge it was wrong, and to apologize to Ward is evidence supporting an award of punitive damages.

48

Shortly after Frenkel was unmasked as being the anonymous Troll Tracker, Cisco claimed that it had nothing to do with Frenkel's defamatory posts. In public statements, Cisco claimed that Frenkel wrote the blog independently of his job at Cisco, when, in fact, he was working in his role at Cisco and on a case for which he was responsible when he wrote the false and defamatory statements about Ward. Cisco claims only that some people were aware of Frenkel's Troll Tracker Blog, when in fact Frenkel's boss was participating in his writing of the false and defamatory posts about Ward. Frenkel's boss also forwarded those false accusations to others to ensure they were disseminated. Cisco played an active role in the defamatory posts.

Cisco did not reprimand any employee in connection with the posting of false and defamatory posts about Ward. Cisco has not offered Ward an apology. Cisco's failure to take responsibility for its tortious conduct is evidence supporting an award of punitive damages.

Frenkel and Cisco posted the false and defamatory statements about Ward under a cloud of anonymity, taking great care to ensure that his readers did not view the accusatory statements as coming from Cisco. Defendant's intentional efforts to conceal Cisco's involvement in the false and defamatory posts, and to mislead the Troll Tracker readers into crediting to the accusations made about Ward as being fair, objective, and true is evidence that punitive damages are warranted. Cisco acted with malice and recklessly toward Plaintiff because it never believed that its defamatory statements about Ward would ever be traced back to Cisco.

If Cisco truly believed that the ESN Complaint had been filed on October 15, 2007 and that the Court lacked subject matter jurisdiction, it could have briefed that issue to the Court. Its failure to do so demonstrates that it knew that its statements were false and that it made false and defamatory statements about Ward in an attempt to gain a litigation advantage or settlement

49

leverage against ESN.  Cisco's litigation motive is evidence supporting an award of punitive damages.

Defendant's refusal to provide documents in its possession custody and control, inconsistent discovery positions, and failure to retain and produce email correspondence with the Troll Tracker is also evidence of Cisco's actual and/or inferred malice toward Plaintiff.

Cisco has been sued for defamation in the past.  Cisco's repeated misconduct is evidence from which the jury could conclude that punitive damages must be assessed to prevent Cisco from continually defaming individuals.

Cisco continues to make public statements aimed at harming Ward.  For example, Cisco's counsel, Chip Babcock, is on record as stating that Ward's case has no merit and has been brought for the purpose of currying favor with the local judges.  Cisco's continued attacks on Ward are evidence in support of an award of punitive damages.

Cisco is a large company that generates significant profits.  Cisco was economically motivated to defame Ward.  The amount of Cisco's profits is evidence that is conduct will not be deterred if punitive damages are not awarded.

The cumulative nature of the evidence described above, along with appropriate inferences drawn from the evidence, all provide evidence supporting an award of punitive damages in this case.

Plaintiff's response is based on the information and documents available at this time and upon such investigation as is reasonable for Plaintiff to undertake under the circumstances. Plaintiff's ability to respond to this interrogatory in particular has been hampered by Defendant's refusal to produce all communications exchanged between Frenkel, Cisco, and persons involved in investigating the facts surrounding the filing of the ESN Complaint and Frenkel and Cisco's

50

subsequent dissemination of information regarding that investigation.  Plaintiff anticipates

conducting additional discovery in this case and he reserves the right to amend and/or

supplement this response.