EXHIBIT "D"

Dockets.Justia.com

IN THE UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF ARKANSAS
TEXARKANA DIVISION

JOHN WARD, JR.                          §
                                        §
                                        §
                                        §       C.A. NO. 08-4022
v.                                      §       JURY TRIAL DEMANDED
                                        §
CISCO SYSTEMS, INC.                     §

**PLAINTIFF'S SUPPLEMENTAL OBJECTIONS AND RESPONSES TO
CISCO SYSTEM, INC.'S FIRST SET OF INTERROGATORIES**

TO:    Cisco Systems, Inc., by and through its attorneys of record, Mr. Charles Babcock, Mr.
       Richard Griffin and Ms. Crystal Parker, JACKSON WALKER, LLP, 1401 McKinney,
       Suite 1900, Houston, Texas 77010.

       COMES NOW, John Ward, Jr., Plaintiff, and submits these supplemental objections and

answers, under oath, to the Interrogatories propounded to him by Cisco Systems, Inc., in

accordance with Rule 33 of the Federal Rules of Civil Procedure.

_____
Nicholas H. Patton
State Bar No. 63035
Patton, Tidwell & Schroeder, LLP
4605 Texas Boulevard
Texarkana, Texas 75503
903.792.7080 / 903.792.8233 (Fax)

Patricia L. Peden
California Bar No. 206440
LAW OFFICE OF PATRICIA L. PEDEN
1316 67th Street
Emeryville, California 94608
Telephone: 510.268.8033

ATTORNEYS FOR PLAINTIFF

## CERTIFICATE OF SERVICE

This is to certify that on this 29th day of June, 2009, a true and correct copy of the foregoing was served electronically via electronic mail:

    Richard E. Griffin
    Charles Babcock
    Crystal Parker
    JACKSON WALKER, LLP
    1401 McKinney
    Suite 1900Houston, Texas 77010

_____
Nicholas H. Patton

Plaintiff sets forth his specific objections and responses below:

## INTERROGATORY NO. 1:

**Identify each person in the United States District Court for the Eastern District of Texas with whom you have communicated in either oral or written form regarding either the ESN Texas Case or ESN Connecticut Case.**

## ANSWER TO INTERROGATORY NO. 1:

Plaintiff specifically objects to Defendant's interrogatory for the following reasons: (1) the interrogatory seeks attorney-client communications that are privileged from disclosure. in that it seeks communications with any person concerning the ESN cases (without any limitations as to subject-matter or time), which would necessarily include Plaintiff's client, ESN, and his counsel in connection with this case. The breadth of this request would require Plaintiff to respond with every communication he has ever had with his client and legal counsel from whom he has sought advice in connection with the above-captioned case. Asking Plaintiff to identify every such communication is burdensome, unreasonable and harassing.; (2) the interrogatory is overly broad, overly burdensome and oppressive and fails to limit the information sought to a reasonable number of persons or a reasonable time period; (3) Cisco's definition of "You" is unreasonably over broad and unduly burdensome to the extent it purports to require Plaintiff to respond with information in the possession of any company, individual, or entity not under his control. Plaintiff also objects to Cisco's definition of "You" as being unreasonably broad, unduly burdensome in including anyone who has ever acted on behalf of John Ward. Jr" without any attempt to narrow the definition to persons reasonably connected to the above captioned case or without any attempt to reasonably narrow the temporal scope of the request; (4) Plaintiff objects to Cisco's Definition of the word "person" as unreasonably broad, unduly burdensome

3

and oppressive in seeking a responses from all persons without making an attempt to reasonably narrow the temporal scope of the request

Subject to the foregoing objections, Plaintiff responds as follows:   Plaintiff was counsel of record on a Motion to Enjoin Defendants Cisco and Linksys From Prosecuting Later-Filed Parallel Litigation in Connecticut filed by ESN and submitted to Judge Folsom in the *ESN v. Cisco* case.

On May 1, 2009, Plaintiff had a conference call with Lon Outland.  Cisco's local counsel, Mike Jones, was on the call.

Plaintiff's response is based on the information known to him at this time and upon such investigation as is reasonable for Plaintiff to undertake under the circumstances.  Plaintiff anticipates conducting additional discovery in this case and he reserves the right to amend and/or supplement his response.

**INTERROGATORY NO. 2:**

**Describe in detail each and every instance in which you have requested court personnel (whether state or federal) to change, alter, or modify a court document.  Include in your answer the style of the case, court in which the case was pending, court personnel that you spoke with, and specific request that you made.**

**ANSWER TO INTERROGATORY NO. 2:**

Plaintiff specifically objects to Defendant's interrogatory for the following reasons:  (1) the interrogatory seeks information that is neither relevant nor reasonably calculated to lead to the discovery of admissible evidence in that communications regarding other cases where Ward is counsel of record are not relevant to any issue in this case; (2) the interrogatory is overly broad, overly burdensome and oppressive and fails to limit the information sought to a reasonable subject matter, a reasonable number of identified persons, or a reasonable time

4

period; (3) the interrogatory is vague and ambiguous with respect to the words "court personnel" and "court document"; (4) the interrogatory is argumentative in its use of the word "alter," which implies criminal conduct; (5) Cisco's definition of "You" is unreasonably over broad and unduly burdensome to the extent it purports to require Plaintiff to respond with information in the possession of any company, individual, or entity not under his control without any attempt to narrow the definition to persons reasonably connected to the above captioned case or without any attempt to reasonably narrow the temporal scope of the request..

Subject to the foregoing objections, Plaintiff responds as follows:

Plaintiff has never asked the Court to alter a court document.

On May 1, 2007, Plaintiff sent an e-mail the court coordinator regarding answer of Defendant sent to him and not filed with the Court.  Plaintiff requested that the clerk's office file the Answer.  .

Plaintiff's legal assistant has, on occasion, called the administrative clerk's office to have Plaintiff removed from the court's ECF notice system after Plaintiff withdrew from a pending case.  Plaintiff recalls asking to be removed from the Court's ECF notice system in *Maria Aantos Lopez Domiguez, et al. v. Gulf Coast Marine & Associates*, 9:08-cv-00200-TH, in the United States District Court for the Eastern District of Texas, Lufkin Division and in *Orion IP, LLC v. Hyundai Motor America*, 6:05-cv-00322-LED, in the United States District Court for the Eastern District of Texas, Tyler Division, *Triton IP, LLC v. Sage Group, PLC et al*, case number 6:07-cv-00067, *Triton IP, LLC v. Salesforce.com, Inc.*, case number 6:07-cv-00249, *Orion IP, LLC v. Mercedes-Benz USA, LLC*, case number 6:07-cv-00451, and *Orion IP, LLC v. Snap-On Incorporated, et al.*, case number 6:07-cv-00296.

Plaintiff is aware of instances in which his legal assistant has called the administrate clerk's office where a document was tagged by the clerk for being filed in error for failure to attach a certificate of service or to inquire about filing requirements and problems associated with filed pleadings. Those calls include:

May 1, 2006, case number 6:06-cv-142, *z4 Technologies, Inc. v. Microsoft Corp, et al.*, call to the clerk's office because judgment concerning a criminal case was incorrectly entered in the case. September 14, 2007, case number 5:07-cv-142, 6:-7-cv-447, *Priority Access Solutions Corp. v. IBM*, sent email to clerk to obtain cause number for original complaint to be filed and to follow up on that email, which was sent to the wrong division. December 12, 2007, case number 6:07-cv-066, *USData Patent Holdings LLC v. G E Fanuc Automation Americas Inc.*, called clerk's office to inquire about how to file a name change for a client. January 15, 2008, case number 6:07-cv-467, *Digital Reg. of Texas v. LFP Internet Group, LLC, et. al.*, called clerk's office about clerical error on the docket in which the client's name was misspelled. July 10, 2008, case number 2:08-cv-99, *Aloft Media LLC v. Nokia Inc. et. al.*, called clerk to seek clarification of an error report. November 24, 2008, case number 5:08-cv-20, *ESN LLC v. Cisco Systems, Inc. et. al*, called court clerk to request that error message be sent for a document filed that contained clerical errors. February 18, 2009, case number 2:06-cv-545, *Callum v. Tyson Foods, Inc.*, called clerk to report incorrect email address on Notice of Appearance. Plaintiff does not recall any other communications.

Plaintiff's response is based on the information known to him at this time and upon such investigation as is reasonable for Plaintiff to undertake under the circumstances. Plaintiff anticipates conducting additional discovery in this case and he reserves the right to amend and/or supplement this response.

**INTERROGATORY NO. 3:**

If you contend that any statement in the Article creates a defamatory implication or impression, identify each statement. For each statement you identify, describe with specificity each and every implication or impression that you contend arises from that statement.

**ANSWER TO INTERROGATORY NO. 3:**

Plaintiff specifically objects to Defendant's interrogatory for the following reasons: (1) the interrogatory seeks to improperly narrow Plaintiff's cause of action to a single complained-of article, when Plaintiff specifically alleges that the October 17, 2007 Troll Tracker post and both of the Troll Tracker posts dated October 18, 2007 (one of which was written on October 19, 2007) are false and defamatory of Plaintiff (2) the interrogatory is vague, ambiguous and over broad with respect to the words "each and every implication or impression" (3) the interrogatory seeks information outside of Plaintiff's custody and control in that the defamatory impression and implication created by the Troll Tracker posts implicate the understanding that readers of that post obtained from reading the statements made therein; (4) Plaintiff objects to this Interrogatory in that its answer may be determined by examining Cisco Systems, Inc. and Richard Frenkel's documents, in particular the email received by Frenkel by readers who understood the Troll Tracker to accuse Ward of criminal conduct; (5) the interrogatory is a premature contention interrogatory for which discovery has not yet been taken and for which Plaintiff cannot yet provide a full and complete response, particularly in light of the fact that Cisco has not produced the emails received by Frenkel in which his readers were critical of the criminal accusations he made about Ward; (6) Cisco's definition of "You" is unreasonably over broad and unduly burdensome to the extent it purports to requires Plaintiff to respond with information in the possession of any company, individual, or entity not under his control without

7

any attempt to narrow the definition to persons reasonably connected to the above captioned case
or without any attempt to reasonably narrow the temporal scope of the request

Subject to the foregoing objections, Plaintiff responds as follows: Frenkel's October 17,
2007, October 18 2007, and revised October 18, 2007 posts are, in their entirety, defamatory of
Plaintiff. Frenkel's defamatory posts, in their entirety, and when read in context, create the false
impression that Ward engaged in criminal behavior, unethical behavior, conduct for which he
could be disbarred, and conduct unbefitting a member of the bar. Therefore, the following
statements are defamatory of Plaintiff:

The Troll Tracker Post of Wednesday, October 17, 2007 "Troll Jumps the Gun, Sues
Cisco Too Early." "Well, I knew the day would come. I'm getting my troll news from Dennis
Crouch now. According to Dennis, a company called ESN sued Cisco for patent infringement
on October 15[th], while the patent did not issue until October 16th. I looked, and ESN appears to
be a shell entity managed by the President and CEO of DirectAdvice, and online financial
website. And, yes, he's a lawyer. He clerked for a federal judge in Connecticut, and was an
attorney at Day, Berry & Howard. Now he's suing Cisco on behalf of a non-practicing entity. I
asked myself, can ESN do this? I would think that the court would lack subject matter
jurisdiction, since ESN owned no property right at the time of the lawsuit, and the passage of
time should not cure that. And, in fact, I was right: A declaratory judgment of "invalidity" or
"noninfringement" with respect to Elk's pending patent application would have had no legal
meaning or effect. The fact that the patent was about to issue and would have been granted
before the court reached the merits of the case is of no moment. Justiciability must be judged as
of the time of filing, not as of some indeterminate future date when the court might reach the
merits and the patent has issued. We therefore hold that a threat is not sufficient to create a case

or controversy unless it is made with respect to a patent that has issued before a complaint is filed. Thus, the district court correctly held that there was no justiciable case or controversy in this case at the time the complaint was filed. GAF contends, however, that the issuance of the '144 patent cured any jurisdictional defect. We disagree. Later events may not create jurisdiction where none existed at the time of filing. *GAF Building Materials Corp. v. Elk Corp. of Texas*, 90 F.3d 479, 483 (Fed. Cir. 1996) (citations and quotations omitted). One other interesting tidbit: Cisco appeared to pick up on this, very quickly. Cisco filed a declaratory judgment action (in Connecticut) yesterday, the day after the patent issued, it should stick in Connecticut. Perhaps realizing their fatal flaw (as a couple of other bloggers/news items have pointed out), ESN (represented by Chicago firm McAndrews Held & Malloy and local counsel Eric Albritton and T. Johnny Ward) filed an amended complaint in Texarkana today – amending to change absolutely nothing at all, by the way, except the filing date of the complaint. Survey says? XXXXXX (insert "Family Feud" sound here). Sorry, ESN. You're on your way to New Haven. Wonder how Johnny Ward will play there? Posted by Troll Tracker at 7:00 PM

The Troll Tracker Post of Thursday, October 18, 2007 "ESN Convinces EDTX Court Clerk To Alter Documents To Try To Manufacture Subject Matter Jurisdiction Where None Existed" I got a couple of anonymous emails this morning, pointing out that the docket in ESN v. Cisco (the Texas docket, not the Connecticut docket), had been altered. One email suggested that ESN's local counsel called the EDTX court clerk, and convinced him/her to change the docket to reflect an October 16 filing date, rather than the October 15 filing date. I checked, and sure enough, that's exactly what happened – the docket was altered to reflect an October 16 filing date and the complaint was altered to change the filing date stamp from October 15 to October 16. Only the EDTX Court Clerk could have made such changes. Of course, there are a

9

couple of flaws in this conspiracy.  First, ESN counsel Eric Albritton signed the Civil Cover

Sheet stating that the complaint had been filed on October 15.  Second, there's tons of proof that

ESN filed on October 15.  Heck, Dennis Crouch may be subpoenaed as a witness!  You can't

change history, and it's outrageous that the Eastern District of Texas is apparently, wittingly or

unwittingly, conspiring with a non-practicing entity to try to manufacture subject matter

jurisdiction.  This is yet another example of the abusive nature of litigating patent cases in the

Banana Republic of East Texas.  (n.b.:  don't be surprised if the docket changes back once the

higher-ups in the Court get wind of this, making this post completely irrelevant).  Posted by Troll

Tracker at 1:13 PM

   The Troll Tracker Post of October 18th Post was later edited to read:  "ESN Convinces

EDTX Court Clerk To Alter Documents To Try To Manufacture Subject Matter Jurisdiction

Where None Existed"  I got a couple of anonymous emails this morning, pointing out that the

docket in ESN v. Cisco (the Texas docket, not the Connecticut docket), had been altered.  One

email suggested that ESN's local counsel called the EDTX court clerk, and convinced him/her to

change the docket to reflect an October 16 filing date, rather than the October 15 filing date.  I

checked, and sure enough, that's exactly what happened – the docket was altered to reflect an

October 16 filing date and the complaint was altered to change the filing date stamp from

October 15 to October 16.  Only the EDTX Court Clerk could have made such changes.  Of

course, there are a couple of flaws in this conspiracy.  First, ESN counsel Eric Albritton signed

the Civil Cover Sheet stating that the complaint had been filed on October 15.  Second, there's

tons of proof that ESN filed on October 15.  Heck, Dennis Crouch may be subpoenaed as a

witness!  You can't change history, and it's outrageous that the Eastern District of Texas may

have, wittingly or unwittingly, helped a non-practicing entity to try to manufacture subject matter

jurisdiction.  Even if this was a "mistake," which I can't see how it could be, given that someone

emailed me a printout of the docket from Monday showing the case, the proper course of action

should be a motion to correct the docket.  (n.b.:  don't be surprised if the docket changes back

once the higher-ups in the Court get wind of this, making this post completely irrelevant).  EDIT:

You can't change history, but you can change a blog entry based on information emailed to you

from a helpful reader.  Posted by Troll Tracker at 1:13 PM

     Plaintiff's response is based on the information known to him at this time and upon such

investigation as is reasonable for Plaintiff to undertake under the circumstances.  Plaintiff

anticipates conducting additional discovery in this case and he reserves the right to amend and/or

supplement this response.

## INTERROGATORY NO. 4:

     **If you contend that the October 17, 2007 Patent Troll Tracker article is defamatory,
identify all statements that you contend are defamatory.  Do not include in your answer the
statements that are not defamatory but that that provide the context for the statements that
you contend are defamatory.**

## ANSWER TO INTERROGATORY NO. 4:

     Plaintiff specifically objects to Defendant's interrogatory for the following reasons:  (1)

the interrogatory seeks to improperly narrow Plaintiff's cause of action to a single complained-of

article, when Plaintiff specifically alleges that the October 17, 2007 Troll Tracker post and both

of the Troll Tracker posts dated October 18, 2007 (one of which was written on October 19,

2007) are false and defamatory of Plaintiff;  (2)  the interrogatory improperly seeks to have

Plaintiff limit his response by not including the "context" for Defendant's defamatory statements

when Plaintiff has alleged that the consecutive posts, together and in their entirety, are false,

defamatory, and create a defamatory impression of Plaintiff, which necessarily requires the

context of the allegations made; (3) the interrogatory is vague, ambiguous and misleading with respect to the phrase "not defamatory but that provide the context for the statements" (4) the interrogatory seeks information outside of Plaintiff's custody and control in that the defamatory impression created by the Troll Tracker posts implicate the understanding that readers of that post obtained from reading the statements made therein; (5) Plaintiff objects to this interrogatory in that its answer may be determined by examining Cisco Systems, Inc. and Richard Frenkel's documents, in particular the email received by Frenkel by readers who understood the Troll Tracker to accuse Ward of criminal conduct; (6) the interrogatory is a premature contention interrogatory for which discovery has not yet been taken and for which Plaintiff cannot yet provide a full and complete response, particularly in light of the fact that Cisco has not produced the emails received by Frenkel in which his readers were critical of the criminal accusations he made about Ward; (7) Cisco's definition of "You" is unreasonably over broad and unduly burdensome to the extent it purports to require Plaintiff to respond with information in the possession of any company, individual, or entity not under his control without any attempt to narrow the definition to persons reasonably connected to the above captioned case or without any attempt to reasonably narrow the temporal scope of the request.

Subject to the foregoing objections, Plaintiff responds as follows:  Frenkel's October 17, 2007 Post in its totality, and in context when read in context of the two October 18, 2007 posts (one of which was written on October 19, 2007), is defamatory of Plaintiff.  Frenkel's defamatory posts, in their entirety, and when read in context, create the false impression that Ward engaged in criminal behavior, unethical behavior, conduct for which he could be disbarred, and conduct unbefitting a member of the bar.  Therefore, the following statements are defamatory of Plaintiff:

12

The Troll Tracker Post of Wednesday, October 17, 2007 "Troll Jumps the Gun, Sues Cisco Too Early." "Well, I knew the day would come. I'm getting my troll news from Dennis Crouch now. According to Dennis, a company called ESN sued Cisco for patent infringement on October 15th, while the patent did not issue until October 16th. I looked, and ESN appears to be a shell entity managed by the President and CEO of DirectAdvice, and online financial website. And, yes, he's a lawyer. He clerked for a federal judge in Connecticut, and was an attorney at Day, Berry & Howard. Now he's suing Cisco on behalf of a non-practicing entity. I asked myself, can ESN do this? I would think that the court would lack subject matter jurisdiction, since ESN owned no property right at the time of the lawsuit, and the passage of time should not cure that. And, in fact, I was right: A declaratory judgment of "invalidity" or "noninfringement" with respect to Elk's pending patent application would have had no legal meaning or effect. The fact that the patent was about to issue and would have been granted before the court reached the merits of the case is of no moment. Justiciability must be judged as of the time of filing, not as of some indeterminate future date when the court might reach the merits and the patent has issued. We therefore hold that a threat is not sufficient to create a case or controversy unless it is made with respect to a patent that has issued before a complaint is filed. Thus, the district court correctly held that there was no justiciable case or controversy in this case at the time the complaint was filed. GAF contends, however, that the issuance of the '144 patent cured any jurisdictional defect. We disagree. Later events may not create jurisdiction where none existed at the time of filing. *GAF Building Materials Corp. v. Elk Corp. of Texas*, 90 F.3d 479, 483 (Fed. Cir. 1996) (citations and quotations omitted). One other interesting tidbit: Cisco appeared to pick up on this, very quickly. Cisco filed a declaratory judgment action (in Connecticut) yesterday, the day after the patent issued, it should stick in

13

Connecticut. Perhaps realizing their fatal flaw (as a couple of other bloggers/news items have pointed out), ESN (represented by Chicago firm McAndrews Held & Malloy and local counsel Eric Albritton and T. Johnny Ward) filed an amended complaint in Texarkana today – amending to change absolutely nothing at all, by the way, except the filing date of the complaint. Survey says? XXXXXX (insert "Family Feud" sound here). Sorry, ESN. You're on your way to New Haven. Wonder how Johnny Ward will play there? Posted by Troll Tracker at 7:00 PM.

Plaintiff's response is based on the information known to him at this time and upon such investigation as is reasonable for Plaintiff to undertake under the circumstances. Plaintiff anticipates conducting additional discovery in this case and he reserves the right to amend and/or supplement this response.

**INTERROGATORY NO. 5:**

**Identify all statements that you contend are defamatory in the October 18, 2007 Article referred to in paragraph 9 of Plaintiff's Original Complaint. Do not include in your answer the statements that are not defamatory but that that provide the context for the statements that you contend are defamatory.**

**ANSWER TO INTERROGATORY NO. 5:**

Plaintiff specifically objects to Defendant's interrogatory for the following reasons: (1) the interrogatory seeks to improperly narrow Plaintiff's cause of action to a single complained-of article, when Plaintiff specifically alleges that the October 17, 2007 Troll Tracker post and both of the Troll Tracker posts dated October 18, 2007 (one of which was written on October 19, 2007) are false and defamatory of Plaintiff; (2) the interrogatory improperly seeks to have Plaintiff limit his response by not including the "context" for Defendant's defamatory statements when Plaintiff has alleged that the entirety of the consecutive posts, together and in their entirety, are false, defamatory, and create a defamatory impression of Plaintiff, which necessarily requires

14

the context of the allegations made; (3) the interrogatory is vague, ambiguous and misleading with respect to the phrase "not defamatory but that provide the context for the statements" (4) the interrogatory seeks information outside of Plaintiff's custody and control in that the defamatory impression created by the Troll Tracker posts implicate the understanding that readers of that post obtained from reading the statements made therein; (5) Plaintiff objects to this interrogatory in that its answer may be determined by examining Cisco Systems, Inc. and Richard Frenkel's documents, in particular the email received by Frenkel by readers who understood the Troll Tracker to accuse Ward of criminal conduct; (6) the interrogatory is a premature contention interrogatory for which discovery has not yet been taken and for which Plaintiff cannot yet provide a full and complete response, particularly in light of the fact that Cisco has not produced the emails received by Frenkel in which his readers were critical of the criminal accusations he made about Ward; (7) Cisco's definition of "You" is unreasonably over broad and unduly burdensome to the extent it purports to requires Plaintiff to respond with information in the possession of any company, individual, or entity not under his control without any attempt to narrow the definition to persons reasonably connected to the above captioned case or without any attempt to reasonably narrow the temporal scope of the request.

Subject to the foregoing objections, Plaintiff responds as follows: Frenkel's two October 18, 2007 Posts in their totality and in context when read in context of the October 17, 2007 post, are defamatory of Plaintiff. Frenkel's defamatory posts, in their entirety, and when read in context, create the false impression that Ward engaged in criminal behavior, unethical behavior, conduct for which he could be disbarred, and conduct unbefitting a member of the bar. Therefore, the following statements are defamatory of Plaintiff

15

The Troll Tracker Post of Thursday, October 18, 2007 says "ESN Convinces EDTX Court Clerk To Alter Documents To Try To Manufacture Subject Matter Jurisdiction Where None Existed" I got a couple of anonymous emails this morning, pointing out that the docket in ESN v. Cisco (the Texas docket, not the Connecticut docket), had been altered. One email suggested that ESN's local counsel called the EDTX court clerk, and convinced him/her to change the docket to reflect an October 16 filing date, rather than the October 15 filing date. I checked, and sure enough, that's exactly what happened – the docket was altered to reflect an October 16 filing date and the complaint was altered to change the filing date stamp from October 15 to October 16. Only the EDTX Court Clerk could have made such changes. Of course, there are a couple of flaws in this conspiracy. First, ESN counsel Eric Albritton signed the Civil Cover Sheet stating that the complaint had been filed on October 15. Second, there's tons of proof that ESN filed on October 15. Heck, Dennis Crouch may be subpoenaed as a witness! You can't change history, and it's outrageous that the Eastern District of Texas is apparently, wittingly or unwittingly, conspiring with a non-practicing entity to try to manufacture subject matter jurisdiction. This is yet another example of the abusive nature of litigating patent cases in the Banana Republic of East Texas. (n.b.: don't be surprised if the docket changes back once the higher-ups in the Court get wind of this, making this post completely irrelevant). Posted by Troll Tracker at 1:13 PM

The October 18th Post was later edited to read: "ESN Convinces EDTX Court Clerk To Alter Documents To Try To Manufacture Subject Matter Jurisdiction Where None Existed" I got a couple of anonymous emails this morning, pointing out that the docket in ESN v. Cisco (the Texas docket, not the Connecticut docket), had been altered. One email suggested that ESN's local counsel called the EDTX court clerk, and convinced him/her to change the docket to

16

reflect an October 16 filing date, rather than the October 15 filing date. I checked, and sure enough, that's exactly what happened – the docket was altered to reflect an October 16 filing date and the complaint was altered to change the filing date stamp from October 15 to October 16. Only the EDTX Court Clerk could have made such changes. Of course, there are a couple of flaws in this conspiracy. First, ESN counsel Eric Albritton signed the Civil Cover Sheet stating that the complaint had been filed on October 15. Second, there's tons of proof that ESN filed on October 15. Heck, Dennis Crouch may be subpoenaed as a witness! You can't change history, and it's outrageous that the Eastern District of Texas may have, wittingly or unwittingly, helped a non-practicing entity to try to manufacture subject matter jurisdiction. Even if this was a "mistake," which I can't see how it could be, given that someone emailed me a printout of the docket from Monday showing the case, the proper course of action should be a motion to correct the docket. (n.b.: don't be surprised if the docket changes back once the higher-ups in the Court get wind of this, making this post completely irrelevant). EDIT: You can't change history, but you can change a blog entry based on information emailed to you from a helpful reader. Posted by Troll Tracker at 1:13 PM

Plaintiff's response is based on the information known to him at this time and upon such investigation as is reasonable for Plaintiff to undertake under the circumstances. Plaintiff anticipates conducting additional discovery in this case and he reserves the right to amend and/or supplement this response.

**INTERROGATORY NO. 6:**

**Identify each statement that "accused Plaintiff of committing a crime" verbatim referred to in paragraph 11 of Plaintiff's Original Complaint. Do not include in your answer the statements that you contend do not accuse Plaintiff of a crime but that that provide the context for the statements that you contend accuse him of a crime.**

17

**ANSWER TO INTERROGATORY NO. 6:**

Plaintiff specifically objects to Defendant's interrogatory for the following reasons: (1) the interrogatory seeks to improperly narrow Plaintiff's cause of action to a single complained-of article, when Plaintiff specifically alleges that the October 17, 2007 Troll Tracker post and both of the Troll Tracker posts dated October 18, 2007 (one of which was written on October 19, 2007) are false and defamatory of Plaintiff; (2) the interrogatory improperly seeks to have Plaintiff limit his response by not including the "context" for Defendant's defamatory statements when Plaintiff has alleged that the entirety of the consecutive posts, together and in their entirety, are false, defamatory, and create a defamatory impression of Plaintiff, which necessarily requires the context of the allegations made; (3) the interrogatory is vague, ambiguous and misleading with respect to the phrase "not defamatory but that provide the context for the statements" (4) the interrogatory seeks information outside of Plaintiff's custody and control in that the defamatory impression created by the Troll Tracker posts implicate the understanding that readers of that post obtained from reading the statements made therein; (5) Plaintiff objects to this interrogatory in that its answer may be determined by examining Cisco Systems, Inc. and Richard Frenkel's documents, in particular the email received by Frenkel by readers who understood the Troll Tracker to accuse Ward of criminal conduct; (6) the interrogatory is a premature contention interrogatory for which discovery has not yet been taken and for which Plaintiff cannot yet provide a full and complete response, particularly in light of the fact that Cisco has not produced the emails received by Frenkel in which his readers were critical of the criminal accusations he made about Ward; (7) Cisco's definition of "You" is unreasonably over broad and unduly burdensome to the extent it purports to requires Plaintiff to respond with information in the possession of any company, individual, or entity not under his control..

18

Subject to the foregoing objections, Plaintiff responds as follows:   The Troll Tracker
Post of Wednesday, October 17, 2007 "Troll Jumps the Gun, Sues Cisco Too Early."  "Well, I
knew the day would come.  I'm getting my troll news from Dennis Crouch now.  According to
Dennis, a company called ESN sued Cisco for patent infringement on October 15[th], while the
patent did not issue until October 16th.  I looked, and ESN appears to be a shell entity managed
by the President and CEO of DirectAdvice, and online financial website.  And, yes, he's a
lawyer.  He clerked for a federal judge in Connecticut, and was an attorney at Day, Berry &
Howard.  Now he's suing Cisco on behalf of a non-practicing entity.  I asked myself, can ESN
do this?  I would think that the court would lack subject matter jurisdiction, since ESN owned no
property right at the time of the lawsuit, and the passage of time should not cure that.  And, in
fact, I was right:  A declaratory judgment of "invalidity" or "noninfringement" with respect to
Elk's pending patent application would have had no legal meaning or effect.  The fact that the
patent was about to issue and would have been granted before the court reached the merits of the
case is of no moment.  Justiciability must be judged as of the time of filing, not as of some
indeterminate future date when the court might reach the merits and the patent has issued.  We
therefore hold that a threat is not sufficient to create a case or controversy unless it is made with
respect to a patent that has issued before a complaint is filed.  Thus, the district court correctly
held that there was no justiciable case or controversy in this case at the time the complaint was
filed.  GAF contends, however, that the issuance of the '144 patent cured any jurisdictional
defect.  We disagree.  Later events may not create jurisdiction where none existed at the time of
filing. *GAF Building Materials Corp. v. Elk Corp. of Texas*, 90 F.3d 479, 483 (Fed. Cir. 1996)
(citations and quotations omitted).  One other interesting tidbit:  Cisco appeared to pick up on
this, very quickly.  Cisco filed a declaratory judgment action (in Connecticut) yesterday, the day

19

after the patent issued, it should stick in Connecticut. Perhaps realizing their fatal flaw (as a couple of other bloggers/news items have pointed out), ESN (represented by Chicago firm McAndrews Held & Malloy and local counsel Eric Albritton and T. Johnny Ward) filed an amended complaint in Texarkana today – amending to change absolutely nothing at all, by the way, except the filing date of the complaint. Survey says? XXXXXX (insert "Family Feud" sound here). Sorry, ESN. You're on your way to New Haven. Wonder how Johnny Ward will play there? Posted by Troll Tracker at 7:00 PM. Frenkel's two October 18, 2007 Posts in their totality and in context when read in context of the October 17, 2007 post, are defamatory of Plaintiff. Frenkel's defamatory posts, in their entirety, and when read in context, create the false impression that Ward engaged in criminal behavior, unethical behavior, conduct for which he could be disbarred, and conduct unbefitting a member of the bar. Therefore, the following statements are defamatory of Plaintiff

The Troll Tracker Post of Thursday, October 18, 2007 says "ESN Convinces EDTX Court Clerk To Alter Documents To Try To Manufacture Subject Matter Jurisdiction Where None Existed" I got a couple of anonymous emails this morning, pointing out that the docket in ESN v. Cisco (the Texas docket, not the Connecticut docket), had been altered. One email suggested that ESN's local counsel called the EDTX court clerk, and convinced him/her to change the docket to reflect an October 16 filing date, rather than the October 15 filing date. I checked, and sure enough, that's exactly what happened – the docket was altered to reflect an October 16 filing date and the complaint was altered to change the filing date stamp from October 15 to October 16. Only the EDTX Court Clerk could have made such changes. Of course, there are a couple of flaws in this conspiracy. First, ESN counsel Eric Albritton signed the Civil Cover Sheet stating that the complaint had been filed on October 15. Second, there's

tons of proof that ESN filed on October 15. Heck, Dennis Crouch may be subpoenaed as a

witness! You can't change history, and it's outrageous that the Eastern District of Texas is

apparently, wittingly or unwittingly, conspiring with a non-practicing entity to try to manufacture

subject matter jurisdiction. This is yet another example of the abusive nature of litigating patent

cases in the Banana Republic of East Texas. (n.b.: don't be surprised if the docket changes back

once the higher-ups in the Court get wind of this, making this post completely irrelevant).

Posted by Troll Tracker at 1:13 PM

   The October 18th Post was later edited to read: "ESN Convinces EDTX Court Clerk To

Alter Documents To Try To Manufacture Subject Matter Jurisdiction Where None Existed" I

got a couple of anonymous emails this morning, pointing out that the docket in ESN v. Cisco

(the Texas docket, not the Connecticut docket), had been altered. One email suggested that

ESN's local counsel called the EDTX court clerk, and convinced him/her to change the docket to

reflect an October 16 filing date, rather than the October 15 filing date. I checked, and sure

enough, that's exactly what happened – the docket was altered to reflect an October 16 filing

date and the complaint was altered to change the filing date stamp from October 15 to October

16. Only the EDTX Court Clerk could have made such changes. Of course, there are a couple

of flaws in this conspiracy. First, ESN counsel Eric Albritton signed the Civil Cover Sheet

stating that the complaint had been filed on October 15. Second, there's tons of proof that ESN

filed on October 15. Heck, Dennis Crouch may be subpoenaed as a witness! You can't change

history, and it's outrageous that the Eastern District of Texas may have, wittingly or unwittingly,

helped a non-practicing entity to try to manufacture subject matter jurisdiction. Even if this was

a "mistake," which I can't see how it could be, given that someone emailed me a printout of the

docket from Monday showing the case, the proper course of action should be a motion to correct

the docket. (n.b.: don't be surprised if the docket changes back once the higher-ups in the Court get wind of this, making this post completely irrelevant). EDIT: You can't change history, but you can change a blog entry based on information emailed to you from a helpful reader. Posted by Troll Tracker at 1:13 PM.

Plaintiff's response is based on the information known to him at this time and upon such investigation as is reasonable for Plaintiff to undertake under the circumstances. Plaintiff anticipates conducting additional discovery in this case and he reserves the right to amend and/or supplement this response.

**INTERROGATORY NO. 7:**

**Identify all false and defamatory statements referred to in paragraphs 16-20 of Plaintiff's Original Complaint.**

**ANSWER TO INTERROGATORY NO. 7:**

Plaintiff specifically objects to Defendant's interrogatory as a premature contention interrogatory for which discovery has not yet been taken and for which Plaintiff cannot yet provide a full and complete response, particularly in light of the fact that Cisco has not produced the emails received by Frenkel in which his readers were critical of the criminal accusations he made about Ward.

Subject to the foregoing objections, Plaintiff responds as follows: The Troll Tracker Post of Wednesday, October 17, 2007 "Troll Jumps the Gun, Sues Cisco Too Early." "Well, I knew the day would come. I'm getting my troll news from Dennis Crouch now. According to Dennis, a company called ESN sued Cisco for patent infringement on October 15[th], while the patent did not issue until October 16th. I looked, and ESN appears to be a shell entity managed by the President and CEO of DirectAdvice, and online financial website. And, yes, he's a

22

lawyer. He clerked for a federal judge in Connecticut, and was an attorney at Day, Berry &

Howard. Now he's suing Cisco on behalf of a non-practicing entity. I asked myself, can ESN

do this? I would think that the court would lack subject matter jurisdiction, since ESN owned no

property right at the time of the lawsuit, and the passage of time should not cure that. And, in

fact, I was right: A declaratory judgment of "invalidity" or "noninfringement" with respect to

Elk's pending patent application would have had no legal meaning or effect. The fact that the

patent was about to issue and would have been granted before the court reached the merits of the

case is of no moment. Justiciability must be judged as of the time of filing, not as of some

indeterminate future date when the court might reach the merits and the patent has issued. We

therefore hold that a threat is not sufficient to create a case or controversy unless it is made with

respect to a patent that has issued before a complaint is filed. Thus, the district court correctly

held that there was no justiciable case or controversy in this case at the time the complaint was

filed. GAF contends, however, that the issuance of the '144 patent cured any jurisdictional

defect. We disagree. Later events may not create jurisdiction where none existed at the time of

filing. *GAF Building Materials Corp. v. Elk Corp. of Texas*, 90 F.3d 479, 483 (Fed. Cir. 1996)

(citations and quotations omitted). One other interesting tidbit: Cisco appeared to pick up on

this, very quickly. Cisco filed a declaratory judgment action (in Connecticut) yesterday, the day

after the patent issued, it should stick in Connecticut. Perhaps realizing their fatal flaw (as a

couple of other bloggers/news items have pointed out), ESN (represented by Chicago firm

McAndrews Held & Malloy and local counsel Eric Albritton and T. Johnny Ward) filed an

amended complaint in Texarkana today – amending to change absolutely nothing at all, by the

way, except the filing date of the complaint. Survey says? XXXXXX (insert "Family Feud"

sound here). Sorry, ESN. You're on your way to New Haven. Wonder how Johnny Ward will play there? Posted by Troll Tracker at 7:00 PM.

Frenkel's two October 18, 2007 Posts in their totality and in context when read in context of the October 17, 2007 post, are defamatory of Plaintiff. Frenkel's defamatory posts, in their entirety, and when read in context, create the false impression that Ward engaged in criminal behavior, unethical behavior, conduct for which he could be disbarred, and conduct unbefitting a member of the bar. Therefore, the following statements are defamatory of Plaintiff.

The Troll Tracker Post of Thursday, October 18, 2007 says "ESN Convinces EDTX Court Clerk To Alter Documents To Try To Manufacture Subject Matter Jurisdiction Where None Existed" I got a couple of anonymous emails this morning, pointing out that the docket in ESN v. Cisco (the Texas docket, not the Connecticut docket), had been altered. One email suggested that ESN's local counsel called the EDTX court clerk, and convinced him/her to change the docket to reflect an October 16 filing date, rather than the October 15 filing date. I checked, and sure enough, that's exactly what happened – the docket was altered to reflect an October 16 filing date and the complaint was altered to change the filing date stamp from October 15 to October 16. Only the EDTX Court Clerk could have made such changes. Of course, there are a couple of flaws in this conspiracy. First, ESN counsel Eric Albritton signed the Civil Cover Sheet stating that the complaint had been filed on October 15. Second, there's tons of proof that ESN filed on October 15. Heck, Dennis Crouch may be subpoenaed as a witness! You can't change history, and it's outrageous that the Eastern District of Texas is apparently, wittingly or unwittingly, conspiring with a non-practicing entity to try to manufacture subject matter jurisdiction. This is yet another example of the abusive nature of litigating patent cases in the Banana Republic of East Texas. (n.b.: don't be surprised if the docket changes back

24

once the higher-ups in the Court get wind of this, making this post completely irrelevant).

Posted by Troll Tracker at 1:13 PM

The October 18th Post was later amended to read: "ESN Convinces EDTX Court Clerk To Alter Documents To Try To Manufacture Subject Matter Jurisdiction Where None Existed" I got a couple of anonymous emails this morning, pointing out that the docket in ESN v. Cisco (the Texas docket, not the Connecticut docket), had been altered. One email suggested that ESN's local counsel called the EDTX court clerk, and convinced him/her to change the docket to reflect an October 16 filing date, rather than the October 15 filing date. I checked, and sure enough, that's exactly what happened – the docket was altered to reflect an October 16 filing date and the complaint was altered to change the filing date stamp from October 15 to October 16. Only the EDTX Court Clerk could have made such changes. Of course, there are a couple of flaws in this conspiracy. First, ESN counsel Eric Albritton signed the Civil Cover Sheet stating that the complaint had been filed on October 15. Second, there's tons of proof that ESN filed on October 15. Heck, Dennis Crouch may be subpoenaed as a witness! You can't change history, and it's outrageous that the Eastern District of Texas may have, wittingly or unwittingly, helped a non-practicing entity to try to manufacture subject matter jurisdiction. Even if this was a "mistake," which I can't see how it could be, given that someone emailed me a printout of the docket from Monday showing the case, the proper course of action should be a motion to correct the docket. (n.b.: don't be surprised if the docket changes back once the higher-ups in the Court get wind of this, making this post completely irrelevant). EDIT: You can't change history, but you can change a blog entry based on information emailed to you from a helpful reader. Posted by Troll Tracker at 1:13 PM.

25

Plaintiff's response is based on the information known to him at this time and upon such investigation as is reasonable for Plaintiff to undertake under the circumstances. Plaintiff anticipates conducting additional discovery in this case and he reserves the right to amend and/or supplement this response.

## INTERROGATORY NO. 8:

**With respect to your allegation in paragraph 11 of the Petition that Frenkel accused you of a crime, state all crimes (including the specific statute) that you allege Frenkel accused you of.**

## ANSWER TO INTERROGATORY NO. 8:

Plaintiff specifically objects to Defendant's interrogatory for the following reasons: (1) the interrogatory cannot be answered based on first-hand knowledge but rather calls for speculation regarding what criminal statute Frenkel had in mind when he accused Plaintiff of criminal conduct, (2) the interrogatory seeks information outside of Plaintiff's custody and control; (3) the information requested is in Defendant's possession, custody or control and in the possession, custody and control of Frenkel from whom Cisco has the practical ability to obtain the information it seeks; (4) the interrogatory imposes obligations upon Plaintiff that exceed his obligations under the Federal Rules in asking for information in Frenkel's possession, custody, and control; (5) the interrogatory is a premature contention interrogatory for which discovery has not yet been taken and for which Plaintiff cannot yet provide a full response; (6) Cisco's definition of "You" is unreasonably over broad and unduly burdensome to the extent it purports to requires Plaintiff to respond with information in the possession of any company, individual, or entity not under his control; (7) Plaintiff objects to Cisco's definition of "Frenkel," which includes any of Frenkel's "respective past and present agents and representatives." Ward is not in a position to know all of Frenkel's past and present agent and representative relationships.

26

Subject to the foregoing objections, Plaintiff responds as follows:  Frenkel's October 17, 2007 and two October 18, 2007 posts include accusations that a reasonable reader of his posts would have understood to accuse Plaintiff of criminal behavior.  Frenkel specifically used the words "alter" "conspiracy" "witnesses" "subpoenas" and "proof" all to allege and to create the impression that Ward conspired with others to alter official governmental records.  Those facts, if true, could have subjected Ward to criminal prosecution.

The particular criminal statutes that serve as the basis of Frenkel's statements are known only to Frenkel and Cisco.

Frenkel's readers also understood him to accuse Ward of criminal conduct.  The particular criminal statutes that serve as the basis of Frenkel's readers' understanding are known only to those yet unidentified third-parties, and perhaps to Frenkel and Cisco.  Cisco has not produced the emails Frenkel received critical of his criminal accusations concerning Ward.  Therefore, Ward is unable to identify any criminal statute that Frenkel's readers identified as the basis of Frenkel's criminal allegations.

Frenkel's accusations of criminal conduct are false and defamatory of Ward, irrespective of whether his assertions technically violated a statute, or whether or not Ward could have been prosecuted for the conduct that Frenkel alleged to be criminal.  Although no criminal statute need be violated before Defendant can be held accountable for Cisco and Frenkel's false and defamatory statements about Ward, Plaintiff alleges that several criminal statutes may cover the type of conduct that Frenkel alleged to have occurred, including but not limited to, 18 U.S.C. § 1001, 18 U.S.C. § 1512, Texas Penal Code 37.10(a)(1); Arkansas Code Annotated § 5-54-121.

Plaintiff's response is based on the information known to him at this time and upon such investigation as is reasonable for Plaintiff to undertake under the circumstances.  Plaintiff

27

anticipates conducting additional discovery in this case and he reserves the right to amend and/or supplement this response.

## INTERROGATORY NO. 9:

**With respect to your allegation in paragraph 11 of the Petition that Frenkel accused you of engaging in conduct that could result in disciplinary proceedings before the State Bar of Texas, state the rules or regulations that you allege Frenkel accused you of violating (including the specific rule or regulation) and all statements from the Article that accuse you of such violation.**

## ANSWER TO INTERROGATORY NO. 9:

Plaintiff specifically objects to Defendant's interrogatory for the following reasons: (1) the interrogatory cannot be answered based on first-hand knowledge but rather calls for speculation, (2) the interrogatory seeks information outside of Plaintiff's custody and control; (3) the information requested is in Defendant's possession, custody or control; (4) the interrogatory imposes obligations upon Plaintiff that exceed his obligations under the Federal Rules; (5) the interrogatory is a premature contention interrogatory for which discovery has not yet been taken and for which Plaintiff cannot yet provide a full response; (6) Cisco's definition of "You" is unreasonably over broad and unduly burdensome to the extent it purports to requires Plaintiff to respond with information in the possession of any company, individual, or entity not under his control without any attempt to narrow the definition to persons reasonably connected to the above captioned case or without any attempt to reasonably narrow the temporal scope of the request; (7) Plaintiff objects to Cisco's definition of "Frenkel," which includes any of Frenkel's "respective past and present agents and representatives." Ward is not in a position to know all of Frenkel's past and present agent and representative relationships.

Subject to the foregoing objections, Plaintiff responds as follows: Frenkel's October 17, 2007 and two October 18, 2007 posts include accusations that a reasonable reader of his posts

would have understood to accuse Plaintiff of unethical behavior. The incorrect facts alleged in the Troll Tracker's posts, if true, could have subjected Ward to disciplinary proceedings before the State Bar of Texas. The Troll Tracker posts state that ESN's counsel, including Ward, convinced the EDTX court clerk to alter documents to try to manufacture subject matter jurisdiction where none existed, that he had been successful in improperly convincing the court clerk "alter" the record, including the filing date stamp, to benefit his client at Cisco's expense, and that Ward's conduct was abusive litigation conduct that would be corrected by the "higher-ups" in the Court. Frenkel went on to say that Ward's conduct could not have been a "mistake" and that Ward acted improperly by not filing a motion to correct the docket instead of contacting the clerk's office. Those accusations, taken in context and in conjunction with the statements made in all three Troll Tracker posts accuse Ward of unethical conduct. Additionally, any attorney convicted of a felony is subject to disciplinary proceedings before the state bar. Thus, Frenkel's accusations that Ward engaged in criminal conduct also accuse him of unethical conduct.

The particular ethical violations that serve as the basis of Frenkel's statements are known only to Frenkel and Cisco. Likewise, the particular ethical violations that serve as the basis of any of the Troll Tracker's readers' understanding that Ward engaged in unethical conduct are known only to those yet unidentified third-parties, and perhaps to Frenkel and Cisco. Cisco has not produced the emails Frenkel received critical of his criminal accusations concerning Ward. Therefore, Ward is unable to identify any ethical violation that Frenkel's readers may have identified as the basis of Frenkel's allegation that Ward was acting unethically and improperly in the ESN case.

29

Frenkel's accusations of unethical conduct are false and defamatory of Ward, irrespective
of whether his assertions technically violated an ethical rule, or whether or not Ward could have
been disciplined by the State of Texas for the conduct that Frenkel alleged to be unethical.
Although no ethical rule need be violated before Defendant can be held accountable for Cisco
and Frenkel's false and defamatory statements about Ward. Plaintiff alleges that several ethical
rules may cover the type of conduct that Frenkel falsely alleged occurred, including but not
limited to, Texas Disciplinary Rules of Professional Conduct Rules 3.03, 3.04, 3.05, 5.03, and
8.04.

Plaintiff's response is based on the information known to him at this time and upon such
investigation as is reasonable for Plaintiff to undertake under the circumstances. Plaintiff
anticipates conducting additional discovery in this case and he reserves the right to amend and/or
supplement this response.

**INTERROGATORY NO. 10:**

**If you contend that Amie Mathis was not working on your behalf when she
contacted the clerks of the Eastern District of Texas regarding the ESN Texas filing, state
all facts supporting your contention.**

**ANSWER TO INTERROGATORY NO. 10:**

Plaintiff specifically objects to Defendant's interrogatory for the following reasons: (1)
the interrogatory is overly broad, overly burdensome and oppressive and fails to limit the
information sought to a reasonable subject matter or time period; (2) the interrogatory is vague
and ambiguous with respect to the words "ESN Texas filing": (3) the interrogatory fails to
describe the information requested with reasonable particularity; (4) Cisco's definition of "You"
is unreasonably over broad and unduly burdensome to the extent it purports to requires Plaintiff
to respond with information in the possession of any company, individual, or entity not under his

30

control without any attempt to narrow the definition to persons reasonably connected to the above captioned case or without any attempt to reasonably narrow the temporal scope of the request.

Subject to the foregoing objections, Plaintiff responds as follows: Amie Mathis is not employed by Plaintiff. Amie Mathis was not working under his direction or supervision at the time she filed the ESN Complaint on October 16, 2007. Amie Mathis was an employee of the Albritton Law Firm, Ward's co-counsel in the *ESN v. Cisco* litigation.

Plaintiff's response is based on the information known to him at this time and upon such investigation as is reasonable for Plaintiff to undertake under the circumstances. Plaintiff anticipates conducting additional discovery in this case and he reserves the right to amend and/or supplement this response.

## INTERROGATORY NO. 11:

**Identify all actions undertaken by you or at your direction to retain, locate, and produce documents requested in Cisco System Inc.'s First Request for Production or any other information that may be relevant to this case, and separately and for each action identify the persons involved, the date of the action, and describe the documents and communications that were obtained.**

## ANSWER TO INTERROGATORY NO. 11:

Plaintiff specifically objects to Defendant's interrogatory for the following reasons: (1) the interrogatory seeks attorney client communications and work product privileged information to the extent that it requests communications between Plaintiff and his counsel in this case; (2) the interrogatory is overly broad, overly burdensome and oppressive and fails to limit the information sought to a reasonable time period; (3) the interrogatory is vague and ambiguous with respect to the words "or any other information" "may be relevant" and "describe"; (4) the interrogatory imposes obligations upon Plaintiff that exceed his obligations under the Federal

Rules; (5) Cisco's definition of "You" is unreasonably over broad and unduly burdensome to the extent it purports to requires Plaintiff to respond with information in the possession of any company, individual, or entity not under his control without any attempt to narrow the definition to persons reasonably connected to the above captioned case or without any attempt to reasonably narrow the temporal scope of the request.

Subject to the foregoing objections, Plaintiff responds as follows:  Plaintiff's documents are located on a single document server system to which only Plaintiff and his limited office staff have access.  In response to Defendant's First Request for Production, Plaintiff reviewed all files in his possession, custody and control, including all email correspondence.  Plaintiff reviewed all emails sent and received on his computer system.  In an abundance of caution, Plaintiff reviewed his deleted emails accounts to ensure that no relevant documents had been deleted from his records.  Plaintiff also reviewed his case files for both the above captioned case and the ESN v. Cisco litigation to ensure all responsive, relevant, and non-privileged documents were located. Plaintiff undertook these efforts within days of receiving Cisco's First Request for Production of Documents.  The persons involved in collecting Plaintiff's documents include Plaintiff and his counsel.  All relevant, responsive and non-privileged documents located have been produced or have been logged on Plaintiff's privilege log.

Plaintiff's response is based on the information known to him at this time and upon such investigation as is reasonable for Plaintiff to undertake under the circumstances.  Plaintiff anticipates conducting additional discovery in this case and he reserves the right to amend and/or supplement this response.

32

**INTERROGATORY NO. 12:**

     **Identify each person or company with whom you communicated or from whom you received any communication regarding the Article, and separately for each communication, identify the date, time, persons involved, the purpose of the communication, the substance of the communication and identify any documents related to that communication.**

**ANSWER TO INTERROGATORY NO. 12:**

     Plaintiff specifically objects to Defendant's interrogatory for the following reasons:  (1) the interrogatory improperly seeks to limit Plaintiff's cause of action to a single complained-of article when Plaintiff asserts that all three Troll Tracker posts are false and defamatory; (2) the interrogatory seeks information protected by the attorney-client privilege and work product doctrine privileges.  To the extent that Cisco is seeking all such communications in response to this interrogatory, its request is overly broad, unreasonably burdensome and harassing.  The breath of this request can be read to require Plaintiff to respond with every privilege communication regarding the accused articles that he has ever had with any person (including his counsel in this case) at any time, without limitation.  The Federal Rules do not require plaintiff to respond with every privileged communication he has had over the course of that last two years or to disclose the substance of each such privileged communication;(3) the interrogatory seeks confidential or proprietary information for which Plaintiff has an obligation to third-parties not to disclose; (4) the interrogatory is vague and ambiguous regarding the phrase "communication regarding the article"; (5) the interrogatory, which asks for communications regarding "the article" fails to describe the information requested with reasonable particularity; (6) Cisco's definition of "You" is unreasonably over broad and unduly burdensome to the extent it purports to require Plaintiff to respond with information in the possession of any company, individual, or entity not under his control without any attempt to narrow the definition to persons reasonably

33

connected to the above captioned case or without any attempt to reasonably narrow the temporal scope of the request; (7) Plaintiff objects to Cisco's Definitions of the words "person" as unreasonably broad, unduly burdensome and oppressive in seeking responses from all persons without making an attempt to narrow the definition to persons reasonably connected to the above captioned case or without any attempt to reasonably narrow the temporal scope of the request.. Plaintiff has nevertheless employed his best efforts to construe Defendant's interrogatory and to provide responsive information.

Subject to the foregoing objections, Plaintiff responds as follows:

Plaintiff has had various communications with counsel for the purpose of seeking legal advice with respect to the above-captioned lawsuit. Those communications are privileged and are therefore not included in Plaintiff's response. There are documents evidencing Plaintiff's communications with his legal counsel in connection with this case but, per party agreement, those documents are not listed on Plaintiff's privilege log. Likewise, each such oral communication between Plaintiff and his legal counsel in connection with this case has not been included in Plaintiff's response.

Plaintiff has had communications with various other persons regarding the allegations made by Frenkel. Those communications are memorialized in documents. All responsive, relevant and non-privileged documents have either been produced to Defendant or, if privileged, have been logged on Plaintiff's privilege log. *See* entries 7, 8, 13, and 14..

Plaintiff had oral communications with Ray Niro between the dates of October 17, 2007 and March 1, 2007. Those communications concerned Mr. Niro's efforts to identify the anonymous Troll Tracker Blogger and Plaintiff's interest in determining the Troll Tracker's identity. Plaintiff cannot recall any other specific non-privileged oral communications.

34

The Interrogatory broadly defines "You" as including Plaintiff, and his respective past and present agents and representatives, including anyone who has ever acted on his behalf. Defendant's request therefore can be read broadly to include communications by Plaintiff's counsel in this case. Plaintiff believes that his counsel in this case has had oral communications with persons from the media. However, Plaintiff was not a party to those communications and does not have personal knowledge sufficient to respond to this interrogatory if it is read broadly to include those communications.

Plaintiff's response is based on the information known to Plaintiff at this time and upon such investigation as is reasonable for Plaintiff to undertake under the circumstances. Plaintiff anticipates conducting additional discovery in this case and he reserves the right to amend and/or supplement this response.

## INTERROGATORY NO. 13:

**If you have spoken at any seminars or meetings of any kind in the past five years, state the name of the seminar, the topic of your speech, whether you provided any written materials, and the date and location of the speech.**

## ANSWER TO INTERROGATORY NO. 13:

Plaintiff specifically objects to Defendant's interrogatory for the following reasons: (1) the interrogatory seeks information that is neither relevant nor reasonably calculated to lead to the discovery of admissible evidence; (2) the interrogatory is overly broad, overly burdensome and oppressive and fails to limit the information sought to a reasonable subject matter; (3) the interrogatory is vague and ambiguous with respect to the words "meetings of any kind"; (4) Plaintiff objects to Cisco's definition of "You" to the extent it purports to require Plaintiff to respond with information in the possession of any company, individual, or entity not under Plaintiff's control. Plaintiff also objects to Cisco's definition of "You" as being unreasonably

35

broad, unduly burdensome and oppressive in seeking to have Ward respond with information in

the possession of "past and present agents and representatives, including anyone who has ever

acted on behalf of John Ward. Jr" without any attempt to narrow the definition to persons

reasonably connected to the above captioned case.

Subject to the foregoing objections, Plaintiff responds as follows:   Plaintiff spoke at the

Eastern District of Texas Bar Conference on October 25 and 26 of 2007 at Moody Gardens,

Galveston, Texas on the topic of the local patent rules in the Eastern District of Texas.  No

written materials were prepared by Plaintiff.

Plaintiff's response is based on the information known to him at this time and upon such

investigation as is reasonable for Plaintiff to undertake under the circumstances.  Plaintiff

anticipates conducting additional discovery in this case and he reserves the right to amend and/or

supplement this response.

### INTERROGATORY NO. 14:

**If you have written any articles or been quoted in any publication of any kind in the
past five years, state the title of the article, the topic of the article, and the date and location
the article was published.**

### ANSWER TO INTERROGATORY NO. 14:

Plaintiff specifically objects to Defendant's interrogatory for the following reasons:  (1)

the interrogatory is overly broad, overly burdensome and oppressive and fails to limit the

information sought to a reasonable subject matter; (2) the interrogatory is vague and ambiguous

with respect to the words "any publication of any kind"; (3) the interrogatory seeks information

outside of Plaintiff's custody and control; (4) the information requested is a matter of public

record and it would be no more burdensome for Defendant to obtain that information than it

would be for Plaintiff; (5) the interrogatory imposes obligations upon Plaintiff that exceed his

36

obligations under the Federal Rules; (6) Plaintiff objects to Cisco's definition of "You" to the extent it purports to require Plaintiff to respond with information in the possession of any company, individual, or entity not under Plaintiff's control. Plaintive also objects to Cisco's definition of "You" as being unreasonably broad, unduly burdensome and oppressive in seeking to have Ward respond with information in the possession of "past and present agents and representatives, including anyone who has ever acted on behalf of John Ward. Jr" without any attempt to narrow the definition to persons reasonably connected to the above captioned case.

Subject to the foregoing objections, Plaintiff responds as follows: To the best of Plaintiff's knowledge, none.

Plaintiff's response is based on the information known to him at this time and upon such investigation as is reasonable for Plaintiff to undertake under the circumstances. Plaintiff anticipates conducting additional discovery in this case and he reserves the right to amend and/or supplement this response.

## INTERROGATORY NO. 15:

**Describe your policies and procedures pertaining to data retention and destruction from October 14, 2007 to the present, identify whether your policy has changed since that date, and if so, describe the changes to your policy and the date such changes were implemented, and identify the three people most knowledgeable about the implementation of your data retention and destruction policies and procedures.**

## ANSWER TO INTERROGATORY NO. 15:

Plaintiff objects to Cisco's definition of "Your" to the extent it purports to require Plaintiff to respond with information in the possession of any company, individual, or entity not under Plaintiff's control. Plaintiff also objects to Cisco's definition of "You" as being unreasonably broad, unduly burdensome and oppressive in seeking to have Ward respond with information in the possession of "past and present agents and representatives, including anyone

37

who has ever acted on behalf of John Ward. Jr" without any attempt to narrow the definition to persons reasonably connected to the above captioned case.

Subject to the foregoing objection, Plaintiff responds as follows: Plaintiff's policy and procedure is to save all received emails, with the exception of junk e-mail, sent email and deleted emails (which would include non-case related emails for which Plaintiff would have no need to maintain records). Plaintiff retains client communications and case-related correspondence in case folders in his computer system. Plaintiff archives his email files. Plaintiff maintains a computer backup of his electronic files.

Although Plaintiff's past practices included performing a hard delete every 6-9 months to purge his system of correspondence not otherwise saved, he discontinued that practice after he anticipated the above-captioned case to ensure that he did not inadvertently delete documents that may be relevant to the issues in this case. Plaintiff has made a good faith attempt to retain and preserve all documents that may be relevant to the above-captioned case.

Plaintiff's response is based on the information known to him at this time and upon such investigation as is reasonable for Plaintiff to undertake under the circumstances. Plaintiff anticipates conducting additional discovery in this case and he reserves the right to amend and/or supplement this response.

## INTERROGATORY NO. 16:

**With respect to injury or damages you claim you suffered as a result of any actions on the part of Defendants, (i) please state and itemize each element of damages and the dollar amount assigned to each element of damage; (ii) state the manner in which you determined or computed your damages; (iii) if you have not yet determined specific dollar amounts of your alleged damages, state the method, formula or theory by which you will compute your alleged damages; (iv) identify each person with whom you have consulted or in any way participated in the computation, derivation, construction, creation of your alleged damages, and each method, formula, or theory by which you have computed or you**

will compute damages; (v) identify each document which relates to your damages or any other matter set forth in your answer to this interrogatory; (vi) state all actions taken by you to reduce or mitigate your alleged damages; and (vii) state the facts upon which you rely in support of your claim for punitive or exemplary damages.

## ANSWER TO INTERROGATORIES 16(i)-16(vii):

Plaintiff specifically objects to Defendant's interrogatory as being seven separate interrogatories counting toward the total number of interrogatories permitted by the Federal Rules and the Court's Scheduling Order. Plaintiff will respond to each interrogatory separately below:

## INTERROGATORY NO. 16(i) (Defendant's No. 16)

With respect to injury or damages you claim you suffered as a result of any actions on the part of Defendants, (i) please state and itemize each element of damages and the dollar amount assigned to each element of damage.

## ANSWER TO INTERROGATORY NO. 16(i) (Defendant's No. 16).

Plaintiff specifically objects to Defendant's interrogatory for the following reasons: (1) the interrogatory seeks attorney-client and work product privileged information to the extent that it can be read broadly enough to cover Plaintiff's privileged work product in connection with the case; (2) the interrogatory is overly broad, overly burdensome and oppressive and fails to limit the information sought to a reasonable subject matter or time period; (3) the interrogatory is vague and ambiguous with respect to the words "any actions on the part of Defendants"; (4) the interrogatory imposes obligations upon Plaintiff that exceed his obligations under the Federal Rules; (5) the interrogatory is a premature contention interrogatory for which discovery has not yet been taken and for which Plaintiff cannot yet provide a response; (6) Plaintiff objects to Cisco's definition of "You" to the extent it purports to require Plaintiff to respond with information in the possession of any company, individual, or entity not under Plaintiff's control.

39

Plaintiff also objects to Cisco's definition of "You" as being unreasonably broad, unduly burdensome and oppressive in seeking to have Ward respond with information in the possession of "past and present agents and representatives, including anyone who has ever acted on behalf of John Ward. Jr" without any attempt to narrow the definition to persons reasonably connected to the above captioned case or without any attempt to reasonably narrow the temporal scope of the request.

Subject to the foregoing objections, Plaintiff responds as follows:  Plaintiff has suffered general damages including past and future harm to his reputation and has suffered past mental anguish and will suffer mental anguish in the future. These general damages may not be susceptible to computation.  Plaintiff is entitled to punitive damages.  Plaintiff cannot further provide a response without disclosing attorney-client communications and work product, at least at this stage of the litigation before discovery is complete and before expert reports are due under the Court's Scheduling Order.

Plaintiff's response is based on the information known to him at this time and upon such investigation as is reasonable for Plaintiff to undertake under the circumstances.  Plaintiff anticipates conducting additional discovery in this case and he reserves the right to amend and/or supplement this response.

**INTERROGATORY NO. 16(ii) (Defendant's 17th Interrogatory)**

**With respect to injury or damages you claim you suffered as a result of any actions on the part of Defendants, (ii) state the manner in which you determined or computed your damages.**

**ANSWER TO INTERROGATORY NO. 16(ii) (Defendant's 17th Interrogatory)**

Plaintiff specifically objects to Defendant's interrogatory for the following reasons:  (1) the interrogatory specifically seeks privileged information; (2) the interrogatory is overly broad,

overly burdensome and oppressive and fails to limit the information sought to a reasonable subject matter, non-privileged information, or an identifiable time period; (3) the interrogatory is vague and ambiguous with respect to the words "actions on the part of defendants"; and "manner"; (4) the interrogatory is a premature contention interrogatory for which discovery has not yet been taken and for which Plaintiff cannot yet provide a response; (5) Plaintiff objects to Cisco's definition of "You" to the extent it purports to require Plaintiff to respond with information in the possession of any company, individual, or entity not under Plaintiff's control. Plaintiff also objects to Cisco's definition of "You" as being unreasonably broad, unduly burdensome and oppressive in seeking to have Ward respond with information in the possession of "past and present agents and representatives, including anyone who has ever acted on behalf of John Ward. Jr" without any attempt to narrow the definition to persons reasonably connected to the above captioned case or without any attempt to reasonably narrow the temporal scope of the request.

Subject to the foregoing objections, Plaintiff responds as follows:   Plaintiff cannot provide a response without disclosing attorney-client communications and work product, at least at this stage of the litigation before discovery is complete and before expert reports are due under the Court's Scheduling Order.

Plaintiff's response is based on the information known to him at this time and upon such investigation as is reasonable for Plaintiff to undertake under the circumstances.  Plaintiff anticipates conducting additional discovery in this case and he reserves the right to amend and/or supplement this response.

**INTERROGATORY NO. 16(iii) (Defendant's 18th Interrogatory)**

**With respect to injury or damages you claim you suffered as a result of any actions on the part of Defendants, (iii) if you have not yet determined specific dollar amounts of**

41

**your alleged damages, state the method, formula or theory by which you will compute your alleged damages.**

## ANSWER TO INTERROGATORY NO. 16(iii) (Defendant's 18th Interrogatory)

Plaintiff specifically objects to Defendant's interrogatory for the following reasons:  (1) the interrogatory specifically seeks attorney-client and work product privileged information; (2) the interrogatory is overly broad, overly burdensome and oppressive and fails to limit the information sought to a reasonable subject matter, non-privileged information, or an identifiable time period; (3) the interrogatory is vague and ambiguous with respect to the words "actions on the part of defendants"; and "method, "formula" and "theory"; (4) the interrogatory is a premature contention interrogatory for which discovery has not yet been taken and for which Plaintiff cannot yet provide a response; (4) Plaintiff objects to Cisco's definition of "You" to the extent it purports to require Plaintiff to respond with information in the possession of any company, individual, or entity not under Plaintiff's control.  Plaintiff also objects to Cisco's definition of "You" as being unreasonably broad, unduly burdensome and oppressive in seeking to have Plaintiff respond with information in the possession of "past and present agents and representatives, including anyone who has ever acted on behalf of John Ward, Jr" without any attempt to narrow the definition to persons reasonably connected to the above captioned case or without any attempt to reasonably narrow the temporal scope of the request.

Subject to the foregoing objections, Plaintiff responds as follows:   The general damages that Plaintiff seeks may not be susceptible to computation. Plaintiff cannot provide further response without disclosing attorney-client communications and work product, at least at this stage of the litigation before discovery is complete and before expert reports are due under the Court's Scheduling Order.  Plaintiff may seek to calculate punitive damages based on some percentage of Cisco's net worth.

Plaintiff's response is based on the information known to Plaintiff at this time and upon

such investigation as is reasonable for Plaintiff to undertake under the circumstances.  Plaintiff

anticipates conducting additional discovery in this case and he reserves the right to amend and/or

supplement this response.

## INTERROGATORY NO. 16(iv) (Defendant's 19th Interrogatory)

**With respect to injury or damages you claim you suffered as a result of any actions on the part of Defendants, (iv) identify each person with whom you have consulted or in any way participated in the computation, derivation, construction, creation of your alleged damages, and each method, formula, or theory by which you have computed or you will compute damages.**

## ANSWER TO INTERROGATORY NO. 16(iv) (Defendant's 19th Interrogatory)

Plaintiff specifically objects to Defendant's interrogatory for the following reasons:  (1)

the interrogatory specifically seeks attorney client and work product privileged information; (2)

the interrogatory is overly broad, overly burdensome and oppressive and fails to limit the

information sought to a reasonable subject matter, non-privileged information, or an identifiable

time period; (3) the interrogatory is vague and ambiguous with respect to the words "actions on

the part of defendants"; "consulted" "or in any way participated," "computation, derivation,

construction, creation," and "method, "formula or theory"; (4) the interrogatory is a premature

contention interrogatory for which discovery has not yet been taken and for which Plaintiff

cannot yet provide a response; (5) Plaintiff objects to Cisco's definition of "You" to the extent it

purports to require Plaintiff to respond with information in the possession of any company,

individual, or entity not under Plaintiff's control.  Plaintiff also objects to Cisco's definition of

"You" as being unreasonably broad, unduly burdensome and oppressive in seeking to have Ward

respond with information in the possession of "past and present agents and representatives,

including anyone who has ever acted on behalf of John Ward. Jr" without any attempt to narrow

43

the definition to persons reasonably connected to the above captioned case or without any attempt to reasonably narrow the temporal scope of the request.

Subject to the foregoing objections, Plaintiff responds as follows:   The general damages that Plaintiff seeks may not be susceptible to computation. Plaintiff cannot provide further response without disclosing attorney-client communications and work product, at least at this stage of the litigation before discovery is complete and before expert reports are due under the Court's Scheduling Order.

Plaintiff's response is based on the information known to him at this time and upon such investigation as is reasonable for Plaintiff to undertake under the circumstances.  Plaintiff anticipates conducting additional discovery in this case and he reserves the right to amend and/or supplement this response.

### INTERROGATORY NO. 16(v) (Defendant's 20th Interrogatory)

**With respect to injury or damages you claim you suffered as a result of any actions on the part of Defendants, (v) identify each document which relates to your damages or any other matter set forth in your answer to this interrogatory.**

### ANSWER TO INTERROGATORY NO. 16(v) (Defendant's 20th Interrogatory)

Plaintiff specifically objects to Defendant's interrogatory for the following reasons:  (1) the interrogatory specifically seeks attorney client and work product privileged information; (2) the interrogatory is vague and ambiguous with respect to the words "actions on the part of defendants" and "any other matter"; (3) the interrogatory is a premature contention interrogatory for which discovery has not yet been taken and for which Plaintiff cannot yet provide a response; (4) Plaintiff objects to Cisco's definition of "You" to the extent it purports to require Plaintiff to respond with information in the possession of any company, individual, or entity not under Plaintiff's control.  Plaintiff also objects to Cisco's definition of "You" as being unreasonably

44

broad, unduly burdensome and oppressive in seeking to have Ward respond with information in

the possession of "past and present agents and representatives, including anyone who has ever

acted on behalf of John Ward. Jr" without any attempt to narrow the definition to persons

reasonably connected to the above captioned case or without any attempt to reasonably narrow

the temporal scope of the request.

Subject to the foregoing objections, Plaintiff responds as follows:  The general damages

that Plaintiff seeks may not be susceptible to computation. Plaintiff cannot provide further

response without disclosing attorney-client communications and work product, at least at this

stage of the litigation before discovery is complete and before expert reports are due under the

Court's Scheduling Order.

Plaintiff's response is based on the information known to him at this time and upon such

investigation as is reasonable for Plaintiff to undertake under the circumstances.  Plaintiff

anticipates conducting additional discovery in this case and he reserves the right to amend and/or

supplement this response.

**INTERROGATORY NO. 16(vi) (Defendant's 21st Interrogatory)**

**With respect to injury or damages you claim you suffered as a result of any actions on the part of Defendants, (vi) state all actions taken by you to reduce or mitigate your alleged damages.**

**ANSWER TO INTERROGATORY NO. 16(vi) (Defendant's 21st Interrogatory)**

Plaintiff specifically objects to Defendant's interrogatory for the following reasons:  (1)

the interrogatory seeks attorney client and work product privileged information; (2) the

interrogatory is overly broad, overly burdensome and oppressive and fails to limit the

information sought to a reasonable subject matter or time period; (3) the interrogatory is vague

and argumentative in that it appears to shift the burden of proving mitigation onto Plaintiff when

45

mitigation of damages is an affirmative defense for which Plaintiff is not required to offer

affirmative evidence; (4) the information requested is in Defendant's possession, custody or

control; (5) the information requested is a matter of public record and it would be no more

burdensome for Defendant to obtain that information than it would be for Plaintiff; (6) Plaintiff

objects to Cisco's definition of "You" to the extent it purports to require Plaintiff to respond with

information in the possession of any company, individual, or entity not under Plaintiff's control.

Plaintiff also objects to Cisco's definition of "You" as being unreasonably broad, unduly

burdensome and oppressive in seeking to have Ward respond with information in the possession

of "past and present agents and representatives, including anyone who has ever acted on behalf

of John Ward, Jr" without any attempt to narrow the definition to persons reasonably connected

to the above captioned case or without any attempt to reasonably narrow the temporal scope of

the request.

Subject to the foregoing objections, Plaintiff responds as follows:   Plaintiff's reputation

was publically attacked by Defendant.  Plaintiff brought the above-captioned lawsuit to

publically clear his good name.  Plaintiff engaged in good-faith settlement negotiations with

Defendant in which Plaintiff demanded that Defendant print a public retraction and apology in an

attempt to publically clear his good name.  Plaintiff's counsel was compelled to respond to

inquiries from persons and the media seeking to ascertain the true facts surrounding the filing of

the ESN Complaint, the basis for this lawsuit, and the accusations made by Defendant,

particularly where, as here, Cisco has used the media to taint Plaintiff's good name, to ensure

that its accusations were quickly disseminated to any individual with access to the world wide

web, and where Defendant's counsel has made public accusations about the above-captioned

46

lawsuit to members of the press  Plaintiff continues to practice law and continues to do so in a professional and ethical manner.

Plaintiff's response is based on the information known to him at this time and upon such investigation as is reasonable for Plaintiff to undertake under the circumstances.  Plaintiff anticipates conducting additional discovery in this case and he reserves the right to amend and/or supplement this response.

### INTERROGATORY NO. 16(vii) (Defendant's 22nd Interrogatory)

**With respect to injury or damages you claim you suffered as a result of any actions on the part of Defendants, (vii) state the facts upon which you rely in support of your claim for punitive or exemplary damages.**

### ANSWER TO INTERROGATORY NO. 16(vii) (Defendant's 22nd Interrogatory)

Plaintiff specifically objects to Defendant's interrogatory for the following reasons:  (1) the interrogatory is vague and ambiguous with respect to the words "any actions on the part of Defendants" (2)  the interrogatory seeks information outside of Plaintiff's custody and control; (3) the information requested is in Defendant's possession, custody or control; (3) Plaintiff objects to Cisco's definition of "You" to the extent it purports to require Plaintiff to respond with information in the possession of any company, individual, or entity not under Plaintiff's control. Plaintiff also objects to Cisco's definition of "You" as being unreasonably broad, unduly burdensome and oppressive in seeking to have Plaintiff respond with information in the possession of "past and present agents and representatives, including anyone who has ever acted on behalf of John Ward. Jr" without any attempt to narrow the definition to persons reasonably connected to the above captioned case or without any attempt to reasonably narrow the temporal scope of the request; (4) the interrogatory is a premature contention interrogatory for which discovery has not yet been taken and for which Plaintiff cannot yet provide a response.

Discovery in this case is not complete.  Defendants have not yet produced documents relevant to the subject-matter of this interrogatory and have refused to produce those documents even after the Court has ordered it do to so.  Therefore, Defendant's interrogatory is premature and Plaintiff cannot yet provide a full and complete response.

Subject to the foregoing objections, Plaintiff responds as follows:   Plaintiff will rely on facts demonstrating that Cisco acted with knowledge that its statements were false, with reckless disregard of the falsity of its statements, with negligence, with intentional ignorance of or disregard of contradictory evidence, that it failed to verify facts, that it rushed to defame Plaintiff although there was no pressing deadline or need to disseminate the Troll Tracker Blog posts before ensuring that the information contained therein was true, that the posts misstated facts and juxtaposed other facts to make Plaintiff's conduct appear criminal and unethical, and that it did so knowing its statements were false, with reckless disregard of their falsity, with negligence and with the ill motive and intent to harm Plaintiff.

Facts currently known to Plaintiff demonstrate that he is entitled to punitive or exemplary damages to punish Defendant for its defamatory conduct are set forth in Plaintiff's Amended Answer, which is incorporated herein by reference.  Additional specific information responsive to this Interrogatory is identified below:

Defendant posted false and defamatory comments about Ward as retaliation for his representing a client who was suing Cisco for patent infringement.  Defendant posted false and defamatory statements about Plaintiff for the purpose of obtaining a litigation advantage or financial advantage against ESN.  Defendant's libelous conduct was economically motivated.  Defendant's ill motive and effort to obtain a litigation advantage at Plaintiff's expense is evidence of conduct sufficient to warrant punitive damages.  Upon information and belief,

48

Cisco's conduct is evidenced in documents in Cisco's possession, custody and control including documents that are currently logged on Cisco's privilege log, documents produced by Baker Botts in the Albritton v. Cisco litigation, and deposition testimony provided in the Albritton v. Cisco litigation.

Cisco's Vice President, Mallun Yen, worked with John Noh of Cisco's public relations department to suggest that Rick Frenkel, who worked under Yen's supervision, post false and defamatory statements accusing Cisco's opposing counsel, Ward, of criminal and unethical conduct in a case. Cisco acted for the purpose and with the intent of benefitting Cisco's litigation position against ESN. Cisco involved its public relations department and governmental affairs department so as to ensure that the false and defamatory statements made about Ward were widely disseminated. Cisco's intent to quickly and widely disseminate its false and defamatory statements is evidence of conduct sufficient to award punitive damages.

Defendant chose to make false and defamatory statements in a blog that it knew was read by intellectual property attorneys, inventors, corporations, members of the Senate and House of Representatives, the patent and Trademark Office, the Department of Justice, major law firms, judges, court personnel and the media. Defendant knew that the Troll Tracker Blog counted almost 90, 000 visitors in a seven month period. Defendant chose to disseminate its false and defamatory statements about Ward via a medium that would reach as many people as possible and in which Defendant's accusations would do the most harm to Ward. Cisco's intent to quickly and widely disseminate its false and defamatory statements is evidence of conduct sufficient to award punitive damages.

Frenkel and Yen, both of whom are attorneys, knew that the words used in the Troll Tracker Blogs made allegations of criminal conduct and allegations of unethical behavior, but

49

they nonetheless published the articles knowing that the statements contained therein were false, with reckless disregard of the truth, with reckless disregard of the impact on Ward, and with actual and implied malice.  The Troll Tracker Posts acknowledged that the author was a patent attorney and that fact, coupled with word choices aimed at portraying criminal accusations and accusations of professional misconduct, demonstrates that the Troll Tracker and Cisco intentionally sought to convey to the Troll Tracker readers that Ward engaged in criminal and/or unethical behavior.  The words contained in the posts are evidence of conduct sufficient to award punitive damages.

Defendant's statements were specifically calculated to harm Ward.  Cisco and Frenkel could have provided an objective recitation of the facts—including all facts known to Frenkel that demonstrated his accusations were false—but they didn't.  Defendant opted to disseminate statements made by attorneys about another attorney in which readers (also attorneys) were told that Ward did something criminal and or unethical.  The fact that Yen and Frenkel are lawyers who understood the seriousness of their accusations is evidence of conduct sufficient to award punitive damages.

Defendant had information demonstrating that Frenkel's accusations were false.  Frenkel and Cisco learned from Baker Botts (and perhaps others) that there had been an error in the Court's electronic filing software.  Despite having that information, Frenkel and Cisco left that information out of the posts and instead conveyed to the reader that Ward and his co-counsel had engaged in a conspiracy and unethical conduct.  Cisco and Frenkel had access to the Court's website, which contained documents from which Cisco could have readily determined the true facts.  Frenkel and Cisco had access to the pleadings in the *Hertz v. Enterprise* case in which an error with the Court's electronic filing software resulted in the same incorrect "header" or

50

"banner" and in which the publically available briefs explained that a complaint is deemed filed when received by the Court as reflected on the encrypted electronic document stamp at the bottom of the NEF. Cisco and Frenkel had access to Jillian Powell at Baker Botts who understood the significance of the encrypted electronic document stamp, understood that there had been an error reflected on the optional "banner" located on the ESN Complaint, and understood that there had been no conspiracy to alter governmental records. Frenkel and Cisco had access to the Court's local rules and ECF User's Manual which stated that a document is deemed filed when it is received by the Court. Frenkel and Cisco subsequently learned from others, including Michael Smith and Michael Barkley, that its statements were not true. Cisco and Frenkel had access to pleadings filed by ESN in the underlying ESN case and in the District of Connecticut case demonstrating the falsity of Cisco's statements. Based on this information, Frenkel and Cisco knew at the time it posted that the accusations it made about Ward were false or acted with reckless disregard of the falsity of its statements. The fact that Frenkel and Cisco intentionally ignored and/or disregarded contradictory evidence and overstated, falsely stated, and created a false and defamatory impression with the statements it chose to make instead is evidence that merits the award of punitive damages.

Frenkel published defamatory statements three times, during which he obtained additional information demonstrating his accusations were false. Instead of correcting his accusations that Ward engaged in criminal and unethical conduct, he continued to publish the false and defamatory statements about Ward. Although Cisco made public statements making clear that it had every confidence in the judiciary of the Eastern District of Texas, it continued to publically disseminate the false accusations it made about Ward. Frenkel and Cisco's repeated defamation and repeated failure to come clean with the truth supports the imposition of punitive

damages. Cisco left its false and defamatory statements about Ward publically available to users of the internet until March of 2008. Cisco and Frenkel never retracted the accusations made in the articles and continues still to claim those accusations are true when they know they are not.

The language contained in the Troll Tracker Posts of October 17, 2007, October 18, 2007, and the revised October 18, 2007 Post demonstrates the contempt that the Defendant had against Ward and the joy with which Cisco defamed Ward. Cisco continued to defame Ward for months, and would continue to do so had Frenkel not been forced to reveal his identity. The statements contained in the Troll Tracker Blog posts are evidence of ill will and motive meriting the award of punitive damages.

Cisco did not call Ward to ascertain his account of the facts before publishing its false and defamatory statements. Nor did Defendant contact Ward's co-counsel or make other reasonable efforts to ascertain the truth before publishing false and defamatory statements about Ward. Defendant's failure to verify facts, particularly were there was no pressing deadline precluding it from doing so, is evidence that punitive damages are warranted.

Statements made by Frenkel, Yen and Noh demonstrate that Cisco acted with specific intent to defame Ward. Yen and Noh participated in, ratified, adopted and encouraged Frenkel's accusations about Ward. Although Frenkel purported not to use inside information in his blog posts, he did so on this occasion. Although Frenkel stated that docket reports are often inaccurate, he had no problem overlooking that fact on this occasion. These facts demonstrate that Cisco took unique steps to defame Ward. Cisco's conduct is evidence that supports the award of punitive damages.

52

Even today, long after Cisco knows that the statements made in the Troll Tracker Blogs are false and defamatory; it continues to assert that Frenkel's statements are true. Cisco's ongoing conduct is evidence supporting an award of punitive damages.

Cisco's refusal to acknowledge it was wrong, and to apologize to Ward is evidence supporting an award of punitive damages.

Shortly after Frenkel was unmasked as being the anonymous Troll Tracker, Cisco claimed that it had nothing to do with Frenkel's defamatory posts. In public statements, Cisco claimed that Frenkel wrote the blog independently of his job at Cisco, when, in fact, he was working in his role at Cisco and on a case for which he was responsible when he wrote the false and defamatory statements about Ward. Cisco claims only that some people were aware of Frenkel's Troll Tracker Blog, when in fact Frenkel's boss was participating in his writing of the false and defamatory posts about Ward. Frenkel's boss also forwarded those false accusations to others to ensure they were disseminated. Cisco played an active role in the defamatory posts.

Cisco did not reprimand any employee in connection with the posting of false and defamatory posts about Ward. Cisco has not offered Ward an apology. Cisco's failure to take responsibility for its tortious conduct is evidence supporting an award of punitive damages.

Frenkel and Cisco posted the false and defamatory statements about Ward under a cloud of anonymity, taking great care to ensure that his readers did not view the accusatory statements as coming from Cisco. Defendant's intentional efforts to conceal Cisco's involvement in the false and defamatory posts, and to mislead the Troll Tracker readers into crediting to the accusations made about Ward as being fair, objective, and true is evidence that punitive damages are warranted. Cisco acted with malice and recklessly toward Plaintiff because it never believed that its defamatory statements about Ward would ever be traced back to Cisco.

53

If Cisco truly believed that the ESN Complaint had been filed on October 15, 2007 and that the Court lacked subject matter jurisdiction, it could have briefed that issue to the Court. Its failure to do so demonstrates that it knew that its statements were false and that it made false and defamatory statements about Ward in an attempt to gain a litigation advantage or settlement leverage against ESN. Cisco's litigation motive is evidence supporting an award of punitive damages.

Defendant's refusal to provide documents in its possession custody and control, inconsistent discovery positions, and failure to retain and produce email correspondence with the Troll Tracker is also evidence of Cisco's actual and/or inferred malice toward Plaintiff.

Cisco has been sued for defamation in the past. Cisco's repeated misconduct is evidence from which the jury could conclude that punitive damages must be assessed to prevent Cisco from continually defaming individuals.

Cisco continues to make public statements aimed at harming Ward. In a Troll Tracker Post dated November 7, 2007, Frenkel again discussed the ESN v. Cisco case anonymously on his Troll Tracker Blog. Frenkel stated that he thought there was a dueling jurisdictional battle between ESN and Cisco in the ESN Case. Frenkel goes on to state that "but then I read an article yesterday that ESN dismissed its case against Cisco. I looked and the same is true for the Cisco case against ESN: gone." These statements continue to make statements aimed at creating a false impression about Plaintiff. The statement gives the false impression that ESN dismissed its case because its Local Counsel was "caught" doing something wrong – not because, as was the case, that the parties reached a "cool down" period where both the Connecticut and Texas cases were dismissed while they tried to reach a settlement. Although Frenkel knew the facts, he omitted any reference to the fact that Cisco agreed to submit itself to the jurisdiction of the Texas

54

Court. At this time Cisco had concluded that it could not fight subject matter jurisdiction in

Texas, or it would not have agreed to jurisdiction in that Court if the parties' attempt at

settlement failed. Nonetheless, Cisco and Frenkel left false and defamatory statements accusing

Ward of criminal and unethical conduct to create subject-matter jurisdiction in the ESN Case

publically available until March of 2008—long after it knew jurisdiction was indisputable.

Frenkel continued to falsely portray himself and a disinterested observer rather than one of

Cisco's lawyers working on the *ESN v. Cisco* litigation.

 As another example, Cisco's counsel, Chip Babcock, is on record as stating that Ward's

case has no merit and has been brought for the purpose of currying favor with the local judges.

Cisco's continued attacks on Ward are evidence in support of an award of punitive damages.

 Cisco is a large company that generates significant profits as a result of selling products,

including those that ESN alleged infringed its patents. Cisco was economically motivated to win

the ESN v. Cisco case and that motivation and its animosity toward Plaintiff for representing

ESN motivated Cisco to defame Ward. The amount of Cisco's profits and the tortious conduct

that it willing to engage in to protect its profits is evidence that is conduct will not be deterred if

punitive damages are not awarded.

 The cumulative nature of the evidence described above, along with appropriate inferences

drawn from the evidence, all provide evidence supporting an award of punitive damages in this

case.

 Plaintiff's response is based on the information known to him at this time and upon such

investigation as is reasonable for Plaintiff to undertake under the circumstances. Plaintiff's

ability to respond to this interrogatory in particular has been hampered by Defendant's refusal to

produce all communications exchanged between Frenkel, Cisco, and persons involved in

investigating the facts surrounding the filing of the ESN Complaint and Frenkel and Cisco's subsequent dissemination of information regarding that investigation.  Plaintiff anticipates conducting additional discovery in this case and he reserves the right to amend and/or supplement this response.