IN THE UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF ARKANSAS
TEXARKANA DIVISION

| | | |
|---|---|---|
| JOHN WARD, JR. | § | |
| | § | |
| | § | |
| | § | C.A. NO. 08-4022 |
| v. | § | JURY TRIAL DEMANDED |
| | § | |
| CISCO SYSTEMS, INC. AND RICK | § | |
| FRENKEL | § | |

**PLAINTIFF JOHN WARD, JR.'S REPLY TO DEFENDANT'S
RESPONSE TO PLAINTIFF'S SUBMISSION LOG AND
MOTION FOR AN ORDER DIRECTING CISCO TO PROVIDE
IDENTIFIED DOCUMENTS TO THE COURT FOR *IN CAMERA* REVIEW**

Dockets.Justia.com

## I.     Introduction:

Cisco's Response takes the now familiar approach of avoiding the issues by attacking Ward.  Cisco's accusations are ridiculous.  Plaintiff's intent is only to have ***the Court*** decide what documents should be produced.  Cisco's accusations to the contrary do nothing to focus this Court on the legal issues it must decide.  If Cisco had spent more time briefing the law instead of attacking Ward, it would not have needed to file an untimely brief making its "opinion work product" argument for the first time months after this Court's March 30th Order issued.[1]

Cisco argues that Ward has sought review of Cisco's privileged documents to gain access to Cisco's infringement analysis in the ESN v. Cisco litigation.  *See* Response at 1.  Cisco knows that is not true.  As Plaintiff's proposed submission log clearly states, Ward does not seek documents to which he is not entitled.[2]  The problem is that Cisco did not respond to Ward's interrogatories aimed at identifying the documents that should be produced.  Therefore, Ward has no way of knowing what documents Cisco is improperly withholding under its now defunct claims of privilege.  So, Ward has asked the Court to decide the issue.  If the documents are relevant and no longer privileged, the Court can order them produced.  Likewise, the Court can order documents be redacted or that they not be produced.  All Ward asks is that ***the Court***, rather than Cisco make that call.

Cisco provides no justification for its refusal to let the Court review its documents.[3]  The Court ordered an *in camera* review so that the Court could make an informed decision regarding the privilege and waiver issues presented.  Cisco never says why the Court cannot be trusted to

---

[1] Cisco did not argue that the documents at issue were work product in the underlying motion to compel.  Cisco didn't take that position in Response to Plaintiff's Motion for Compliance and for Sanctions.  Although Cisco has known from the outset of this issue the scope of the documents at issue, it waited until its Sur-Reply on the second round of briefing to address this issue.

[2] Ward has specifically stated that Cisco's infringement analysis, in all likelihood, is not relevant and should not be produced.

[3] The Court has not ordered that documents be produced ***to Plaintiff***.  Only that Cisco provide them for the Court's review.

review all of the documents in dispute.[4]  Instead, Cisco wants the Court to agree to let Cisco decide what documents the Court reviews and to blindly accept Cisco's assertions of privilege for those documents it opted to withhold.  But, as Cisco's "superseding" and "amended" interrogatory responses demonstrate, Cisco is not being candid with its claims of privilege. Cisco's refusal to comply with the Court's March 30th Order led to this *in camera* review.  Cisco cannot now be heard to complain that its claims of privilege are subject to judicial scrutiny.  If, as Cisco claims, it has complied with the Court's Order, it should welcome a full review by the Court, which is the only way to get a final resolution of this issue.

However, Cisco still will not agree to a full and fair review of its documents.  Ward cannot simply accept Cisco's assertions of privilege; assertions that have been a continually shifting and moving target.  First, in the underlying motion to compel, Cisco argued that it ***had*** responsive privileged documents but those were identified on Cisco's privilege log.  *See* D.E. No. 58 at 10 ("Notably, Cisco has produced a privilege log and documents that provide the very information that Plaintiff is seeking.")  Then, after the Court found waiver, Cisco "amended" its interrogatory responses and argued that Cisco ***has no privileged documents*** to identify.[5]  *See* D.E. 63 at 10 (arguing that Cisco's amended responses fully comply with the Court's Order because there are no privileged responsive documents.)  Cisco understood that it could not claim privilege in its amended responses, so it opted instead to try to convince the Court that it fully complied with the Court's Order because there were no responsive privileged documents.  *See* D.E. 72 at 22:10-12.

Now that Cisco has been ordered to provide documents to the Court, the Court will see for itself that Cisco withheld formally privileged documents responsive to Plaintiff's

---

[4] Cisco has fought at every turn to keep its documents from the Court.  The Court will recall that Ward asked Cisco to provide the documents to the Court during the underlying briefing.  Cisco refused.  When the Court ordered the documents be produced, Cisco agreed.  Now Cisco has backtracked—even in direct violation of the Court's instructions—and refused to produce all the documents at issue.  The amount of energy Cisco has spent refusing to produce the documents to ***the Court*** is telling.
[5] Cisco never argued or asserted the "opinion work product" argument it now makes.

interrogatories.  So Cisco again reverses itself, this time arguing that responsive documents are protected as "opinion work product," although Cisco never before made that argument.  Given Cisco's changing positions, it is not surprising that Ward has asked the Court to review *all* the implicated documents and to decide the issue.  What is surprising is that Cisco intentionally disobeyed the Court's instructions to provide all disputed documents for *in camera* review in a blatant attempt to deprive the Court of information it needs to understand that Cisco violation the Court's Order.  More importantly, the Court must see all of the documents in dispute in order to bring this dispute to a final resolution.

II.     **The Court Made It Clear To All Parties That It Intended To Review All Of The Disputed Documents, And Cisco's Argument To The Contrary Knowingly Violates This Court's Instructions**

        The Response unabashedly asserts that it is "clear" that the Court limited its *in camera* review to the documents that Cisco chose to produced to Albritton.  Cisco is not being fully candid with the Court.  This very dispute was brought to the Court's attention days before the parties filed their competing submission logs.  The Court's lawyer called Cisco's attorney, Crystal Parker, and told her that the Court's intent was to see all the documents; not just the Albritton documents.[6]  Ms. Parker understood the Court's directions as is evidenced by her email to Plaintiff's counsel asking Plaintiff to identify the non-Albritton documents.  *See* Exh. A-1 at 4:17 p.m. email.  Now, Cisco argues that Ms. Parker told the Court's lawyer that Cisco would only produce the Albritton documents.  *See* Response at 4, n. 2.  Cisco's assertions are belied by its own email to the contrary.  *See* Exh. A-1 at 4:17 p.m. email.  There is no doubt that Cisco understood the Court's directions and that it chose to ignore them.

_____

[6] Cisco takes aim at Plaintiff's counsel for calling the law clerk without conferencing Cisco in on the call.  To be clear, Plaintiff's counsel did not speak to the law clerk.  A secretary in counsel's office called the Court to schedule another telephonic hearing to have the issue concerning the non-Albritton documents resolved.  The Court's lawyer, who was present during the telephonic hearing and understood the Court to have ordered all disputed documents, be submitted to the Court called Ms. Parker.  Ms. Parker is the only counsel in this case who spoke directly to the Court's lawyer.  Ms. Parker's understanding of the lawyer's directions is clear.  Yet, Cisco chose to ignore the Court's directions and decided unilaterally, and without meeting and conferring in good faith, to ignore the Court and submit only those documents that Cisco chose to submit for *in camera* review.

3

During the hearing, the Court acknowledged that the parties had a disagreement about what documents have been sought, what documents should be produced, and whether there is a waiver of privilege for those documents.  *See* D.E. 31:24-32:1.  The Court ordered the parties to file a joint submission log to ensure they were "both on the same page in terms of the facts that I'm getting everything put in from to me that we have an argument about."  *See* D.E. 72 at 30:19-23.  The Court admonished that it did not want to undertake multiple reviews of Cisco's documents.  *See* D.E. 72 at 30:14-17.

Despite the Court's directive to submit all disputed documents, Cisco insists that the Court's instructions were limited to the Albritton documents.  Plaintiff never understood that to be the case.  The Court's lawyer did not understand that to be the case.  The only party who got it wrong is Cisco.  Plaintiff does not understand the confusion.  Although the discussion during the Court's hearing—cited by Cisco at length—focuses on the Albritton documents, the reason for that is clear: the Court was asking Plaintiff's counsel why Plaintiff believed that Cisco had responsive documents that it was withholding under a claim of privilege.  Plaintiff's counsel responded that she knew that Cisco didn't comply with the Court's Order because there were documents produced in the Albritton case that should have been identified by Cisco.  Plaintiff's counsel could not have responded to the Court's questions by discussing the documents that Cisco never produced to Albritton because Plaintiff cannot know the contents of those documents.

The hearing transcript makes clear that Plaintiff was seeking discovery of ***all*** documents that fell within the scope of Cisco's waiver.  *See* D.E. 72 at 16:13-19 (arguing that Cisco cannot be permitted to pick and chose what documents get produced to Plaintiff); 18:21-19:3) (arguing that the waiver is not a document-by-document waiver and Plaintiff is entitled to other documents, without limiting it to those produced to Albritton); 19:12-14 (arguing that Plaintiff is entitled to see "everything" for which there has been a waiver); 20:6-11 (arguing that Plaintiff

4

will be handicap if not permitted all the same documents concerning good faith that Cisco has access to).

Likewise, the briefing submitted by the parties in the underlying motions also makes clear that Plaintiff is seeking all relevant and responsive documents for which privilege has been waived, irrespective of whether Cisco produced them to Albritton. No other interpretation makes sense in light of Plaintiff's refusal to accept the terms of the Albritton Agreement in this case, which would have limited the scope of Cisco's discovery obligations to those it seeks to impose by fiat by ignoring the Court's Orders. *See* D.E. No. 64 at 23 ("Plaintiff's counsel believes that the Albritton Agreement permitted Cisco to withhold documents on its privilege log that appear to Plaintiff not to be privileged" and "Ward cannot agree to let Cisco decide which documents it is willing to produce in this case.").

Cisco also understood the scope of the documents at issue to include those not produced in the Albritton case. Cisco's briefing to the Court included an argument that not all of the documents at issue were produced in the Albritton case. *See* D.E. 67 at 11 & n.4. Cisco also argued that the Court should take back its finding of waiver because it could require production of documents on Cisco's privilege log that reveal Cisco's invalidity analysis for the patent asserted in the ESN v. Cisco litigation; a document that was not produced to Albritton. *See* D.E. 67 at 12 ("one of the documents on Cisco's privilege log is Cisco's invalidity analysis of the very patent at issue in the ESN v. Cisco case."). Having argued that the Court should not order production of those documents not produced to Albritton, Cisco is hard pressed to argue now that it never knew those documents were at issue.

Finally Cisco argues that Plaintiff's submission log containing documents produced by Baker Botts is impermissible because Plaintiff must get those documents from Baker Botts.[7]

---

[7] Cisco's brief rehashes the same telephonic conference with Judge Ramirez already discussed in prior briefing. It is not clear to Plaintiff why Cisco believes that this issue has any relevance to whether or not Cisco has Baker Botts documents in its possession, custody, or control. In any event, the facts and argument surrounding that irrelevant issue have previously been briefed by Plaintiff at D.E. 64 at 9, n. 6.

Cisco is wrong, and is continuing to erect hurdles to Ward's discovery without justification. Cisco's Amended Answer admits that Baker Botts was acting as an agent of Cisco. D.E. 71 at ¶¶ 51 & 52. Cisco and Baker Botts have a joint defense agreement in this case, which presumably means that the parties have agreed to share documents and resources. *See* Exh. B, (Powell Depo.) at 13:17 – 14:16. There is no dispute that the Baker Botts documents on Plaintiff's submission log are in Cisco's possession, and Cisco has not argued otherwise. All documents in Cisco's possession, custody, and control and for which Cisco has the ability to obtain those documents, can be ordered produced by this Court. Thus, the Court can order Cisco to produce to Ward the Baker Botts documents setting in Cisco's files. Cisco's attempt to argue third-party status of its agent and joint defense participant is neither credible nor a proper objection because it has control of the requested documents.[8]

### III.    Cisco Never Intended To Reach An Agreed Joint Submission Log

Incredibly, the Response accuses of Ward of refusing to meet and confer in good faith regarding the Court ordered joint submission log. *See* D.E. 77 at 5. While ordinarily Plaintiff would not engage in the type of tit-for-tack discovery dispute that courts so abhor, a discussion is mandated here to demonstrate that Cisco is being disingenuous in arguing that only the Albritton documents are properly before the Court.

After the Court ordered the parties to file a joint submission log, the following events occurred.

- On Wednesday, June 17, Cisco's counsel, Crystal Parker, sent Plaintiff's counsel a version of Cisco's proposed submission log containing the privileged documents produced in the Albritton v. Cisco case (except one). Ms. Parker stated "as we agreed in our hearing with Judge Hendren, Cisco will submit these documents for *in camera* inspection on or before next Friday. Judge Hendren asked us to come to an agreement

---

[8] The Court has previously rejected similar efforts by Cisco to obstruct Ward's discovery. *See, e.g.* D.E. 60 at 5, 6, 7, & 8 (rejecting, among other objections that the requested discovery was not within Cisco's possession, custody or control). Here there can be no serious contention that the Baker Botts documents are not accessible or that Cisco does not have possession, custody, control or the ability to obtain documents previously produced by its agent and joint defense participant.

regarding this list.  Please confirm that these are all the privileged documents produced under the Protective Order and non-waiver agreements in the Albritton v. Cisco case. You will notice that one document is missing: CISCO PRIVILEGED.000014[9], which was inadvertently produced as a privileged document, when it is only responses to privileged documents but not itself privileged." *See* Exh. A-1 at 7:58 a.m. email.

- Within hours of receiving the email above, Plaintiff's counsel responded to Cisco saying that Plaintiff "will look through the list and confirm that it includes all of the documents produced in the Albritton case.  It will take us a day or two to do that and get back to you. Cisco's submission log should also include the documents that Baker Botts gave Cisco for production in the Albritton case.  Also, there are documents on Cisco's privilege log separate and apart from the documents produced in the Albritton case that should be submitted.  We will identify those documents for inclusion on Cisco's list." *See* Exh. A-1 at 12:32 p.m. email.

- Two days later, on June 19, Ms. Parker sent the following email to Plaintiff's counsel: "We all agreed that Cisco would produce to the Court *in camera* the privileged documents Cisco produced in the Albritton case.  I believe the log contains all of those documents.  If you will let me know whether there are any documents produced in the Albritton case that were not identified, we will add them to the list.  Otherwise, we will get the documents to the Court." *See* Exh. A-1 at 3:13 p.m. email.

- A few minutes after receiving Ms. Parker's email, Plaintiff's counsel responded: "Crystal:  I don't believe that is accurate and I believe what the judge had in mind was all documents which have not been produced under claim of privilege.  ***I am having [my secretary] call to see if Judge Hendren is available for a call on monday.***"  *See* Exh. A-1 at 3:43 p.m. email.

- In another email near the same time, Plaintiff's counsel told Ms. Parker that "the Court did not limit his *in camera* review to the documents produced in the Albritton case. That would make no sense in light of the arguments made in the parties briefing, the scope of waiver the Court ordered, and our explanation that the Albritton Agreement was flawed in that it let Cisco pick and choose which documents it wanted to produce.  The Court is not going to want to conduct an *in camera* review twice, which is exactly what will happen if the Court affirms the March 30 Order and Cisco continues to withhold documents on its privilege log."  Plaintiff's counsel continued.  "Cisco's position that it is going to submit only the Albritton documents, whether we agree or not, is unacceptable." Plaintiff's counsel concluded, "[Plaintiff] is reviewing Cisco's proposed submission log

---

[9] Plaintiff's counsel has long believed this document was not privileged and was being improperly withheld by Cisco.  It was only produced after Cisco knew that the Court would determine it was not privileged, further demonstrating the need for a full in camera review of Cisco's claimed privileged documents.

to ensure that all of the documents produced in the Albritton case have been listed.  We should be able to get back to you about the completeness of the log in this respect by Tuesday of next week. ***Hopefully, Judge Hendren is available for clarification of this issue on Monday so that we will have time to get the other documents identified on the log before Friday's submission.***"  *See* Exh. A-2 at 4:15 p.m. email.

- Shortly after the email exchange above, Plaintiff's counsel had his secretary call the Court to schedule a hearing.  The lawyer to whom she spoke called Ms. Parker and informed her that the Court's intent was to have ***all*** disputed documents submitted for in camera review.  The Court's lawyer likewise called Plaintiff's office and told counsel's secretary that she had called Cisco's counsel and urged Cisco's counsel to work the parties' disagreements. ***The Court's lawyer said that if the issue had not been resolved, Plaintiff could contact the Court to set up a conference call later in the week.***  *See* Exh. C. Although the Court's lawyer had not yet spoken to the Court, one assumes that she did so and that the Court agreed.  Otherwise, the Court would have called the parties back with different instructions.  There was no other communication from the Court.

- An hour after talking to the Court's lawyer, Cisco's counsel, Ms. Parker, responded with an email that includes the following language:  "I just received a call from Erin, who said she thinks Judge Hendren's intent was for Cisco to produce ***all*** the documents that you believe are responsive to the 2 interrogatories at issue *in camera*, though she said she couldn't be sure because she hasn't had a chance to speak with Judge Hendren. I think we may be able to resolve this if you will identify from our privilege log all the documents you think are responsive to the 2 interrogatories at issue. We have already provided you a privilege log in the Ward case, so if you can identify for me the documents from the log that you think are responsive to the Interrogatories 5 and 6, I think that may get the ball rolling."  At this point, Cisco clearly knows that those documents not produced in the Albritton case are to be submitted to the Court *in camera*. *See* Exh. A-1 at 4:17 p.m. email.

- Shortly thereafter, Plaintiff wrote to Ms. Parker to inquire about the Baker Botts documents that, in Plaintiff's opinion, should be included in the submission log.  Plaintiff's counsel asked Ms. Parker, "Is the privilege log we have current?  Also, does it include documents in Cisco's possession that it received from Baker Botts?"  Ms. Parker responded.  "[t]he privilege log is current.  I believe that all the Baker Botts documents are on it; if you see that any are missing please let me know."  Cisco never stated that it had any objection to the Baker Botts documents being listed on Plaintiff's submission log. *See* Exh. A-2 at 5:30 p.m. email.

- On Monday, June 22, 2007, Ms. Parker wrote to Plaintiff's counsel's secretary and asked that she "[p]lease get [the joint submission log] to [Cisco] as soon as possible since we

will have to come to an agreement regarding this, collect the documents, and get them to the Court by Friday. *See* Exh. D.

- Although Plaintiff was not to have his revisions to Cisco until Tuesday, he sent them to Cisco late on Monday because Cisco insisted that time was critical. The proposed joint submission log included the Baker Botts documents and Plaintiff's description of those documents, which was provided for Cisco's review. *See* Exh. E.

- The following day on Tuesday, June 23rd, Plaintiff heard nothing from Cisco about his proposed submission log. However, Cisco sent an email asking to meet and confer about a new motion that it wanted to file with the Court. *See* Exh. F

- On Wednesday, June 24th, Cisco still did not provide any comments to Plaintiff about his proposed joint submission log. Plaintiff's counsel sent Ms. Parker an email asking when Plaintiff could expect to receive Cisco's proposed revisions. Ms. Parker responded "We are working on it and will get it to you as soon as possible." *See* Exh. G.

- That same day, Wednesday, June 24th, during the meet and confer call concerning Cisco's new motion, Plaintiff's counsel asked about the status of the submission log. Ms. Parker responded that Mr. Babcock was working on it and they would get it to Plaintiff "as soon as possible." Ms. Parker said nothing about Cisco insisting that the log only include the Albritton documents, or that it not include the Baker Botts documents. Nor did she complain about Plaintiff's description of any of the documents on his submission log. Instead, Plaintiff was led to believe that Cisco fully understood the Court's instructions as conveyed to Cisco by the Court's lawyer five days earlier.

- On Thursday, June 25th, Plaintiff still had heard nothing from Cisco about the proposed submission log. Plaintiff's counsel sent an email stating her concern that time was running out. *See* Exh. H at 12:41 p.m. email. Finally, at the close of business the day before the submission log was to be filed with the Court, Mr. Babcock responded with an email making clear that Cisco objected to submitting any document other than those produced to Albritton. His email was silent about when Plaintiff could expect Cisco's revisions. Mr. Babcock never stated that Cisco would not be providing a revised submission log as promised on multiple occasions by Cisco. *See* Exh. H at 2:59 p.m. email. Plaintiff's counsel responded that Plaintiff now believed that Cisco had no intent of sending its promised revisions to Plaintiff. *See* Exh. H at 8:10 p.m. email.

- On Friday, June 26th—the day the joint submission log was due to be filed—Cisco's counsel asked for a last minute discussion regarding the submission log. *See* Exh. H at 10:53 a.m. email. Cisco stated that it wanted Plaintiff's agreement to submit only those

documents that Cisco agreed to.[10]   Cisco made clear that it would not consent to having the Court and the Court's lawyers review Cisco's core-work product documents *in camera*.  When Plaintiff asked why Cisco had not followed through with its promises to send Ward a revised submission log, Ms. Parker responded that Cisco's counsel "need time to confer with their client."  Of course, Ward's counsel had conferred with Cisco's enough to know that Cisco would refuse to submit some documents for *in camera* review.

- On Monday, June 30, 2009—after Plaintiff filed the proposed submission log that he had sent to Cisco eight days earlier—Cisco contacted Plaintiff's counsel to complain about the way that Plaintiff had described the Baker Botts documents on its submission log. Cisco's failure to bring those issues to Plaintiff's attention in advance suggests that it never reviewed Plaintiff's submission log in detail, as one would expect if Cisco were working toward a joint submission. *See* Exh. I.

The long history of the parties' correspondence demonstrates Cisco never had any intention of providing Plaintiff with a revised submission log, even though Plaintiff sought to meet and confer in good faith. Cisco never intended to give Plaintiff a revised submission log because it knew that if it had insisted on giving the Court only those documents Cisco chose to produce to Albritton, Plaintiff would have called the Court to schedule the hearing that the Court's lawyer offered.  Cisco did not want the Court to address the issue before the submission log was filed, because then it would have had no choice but to provide its documents to the Court for *in camera* review.  So it opted for a course of delay and deceit—promising to provide a revised log to Plaintiff until it was too late for Plaintiff to seek the Court's intervention.  Cisco certainly didn't try to work the issues out with Plaintiff, as directed by the Court's lawyer.  Nor did it have any intention of doing so where it ran the risk of having to produce its documents to the Court.  Cisco wanted a chance to reargue the issue before the Court; an opportunity that it granted itself by again simply ignoring the Court's instructions.

---

[10] Cisco never proposed, as it now claims, that it would agree to produce all but a few "core-work product" documents to the Court. *See* Response at 5.  Rather, Cisco insisted at all times that it be permitted to decide which documents were submitted to the Court.  In any event, any such agreement would be unworkable given Cisco's lack of credibility concerning the waiver issues in this case.

To add insult to injury, Cisco disingenuously argues that Ward's counsel refused to meet and confer because she took the position in a June 19th email that Plaintiff would not agree to a joint submission log that did not include documents not produced to Albritton.  Importantly, the email to which Cisco refers was written ***before*** the Court's lawyer called Ms. Parker to tell her the Court's intent was to see all the documents.  The email to which Cisco refers was written ***before*** Cisco represented on multiple occasions that it was working on revisions and would provide them "as soon as possible."  The email referenced by Cisco took a position that the Court's lawyer later told Cisco was correct.  In the days following Plaintiff's June 19th email, Cisco feigned that it was going to provide a revised submission log and was going to meet and confer about documents not produced to Albritton, even though it had no intention of doing so.[11] Cisco has absolutely no justification for pretending to follow the Court's instructions or for promising Plaintiff a revised submission log that it never intended to send.  Cisco was told by the Court that its position lacked merit and to cooperate with Plaintiff.  It insisted on getting its way and the only way to do that was to refuse to negotiate with Plaintiff but to do so in a way that prevented Plaintiff from seeking Court intervention until after the submission log was due.

Cisco is free to conduct itself during discovery as it sees fit.  It cannot however, recast its refusal to confer in good faith—even after ordered by the Court to do so—as Ward's failure.  The correspondence between the parties in this regard is undeniable and Cisco must own up to its decision to ignore this Court's directives.

## IV.   Ward Is Entitled To Have The Court—Not Cisco—Decide What Documents He Is Entitled To In This Case.

---

[11] If Plaintiff's counsel's June 19th email insisting that documents not produced to Albritton be included on the submission log caused the breakdown in the parties' meet and confer, as Cisco deceptively asserts, then Cisco would not have promised to provide Plaintiff with a revised submission log after it received that email.  But Cisco did promise to provide a revised submission log after June 19th.  *See* Exh G.  Cisco just never followed through with its promise because it had already determined that it would not submit any documents for *in camera* review that had not been produced to Albritton.  Cisco's attempt to shift the blame makes no sense and is contradicted by the email record.

Although Cisco has long known the scope of the documents at issue, Cisco never made its belated "opinion work product" argument during the underlying motion to compel.  Nor did it make that argument in response to Plaintiff's Motion for Compliance and For Sanctions.  Cisco could not make that argument because it sought to convince the Court that there were no privileged documents at issue.  Cisco could not credibly argue that it had complied with the Court's order and identified all responsive formally-privileged documents and at the same time assert a privilege that the Court already found to be waived.  So, Cisco opted to argue that it complied with the Court's Order and that there were no responsive privilege documents being withheld from Ward.  Now that Cisco knows the Court is not going to accept that argument, it belatedly seeks to insert a new privilege argument that was not before the Court in the underlying motion.  Cisco's late argument cannot serve to overturn this Court's Order.  Cisco's "opinion work product" argument is untimely and waived.  But, even if the Court were to consider Cisco's last-ditch attempt to assert privilege, Cisco's argument fails on its merits.

Cisco's "opinion work product" argument is best viewed in the context of the three categories of documents identified in Plaintiff's submission log.  Plaintiff has separated the documents he seeks to have the Court review into three categories:  (1) documents produced to Albritton; (2) documents not produced to Albritton but that likely fall within the Court's March 30 Order finding waiver; and (3) those documents that may contain core work product for which the Court should be careful to redact information to which Ward is not entitled.

### A.       Documents Cisco Produced To Albritton

As to the first category of documents—those documents produced by Cisco to Albritton—Cisco has no claim of privilege left to assert because those materials were disclosed to its adversary.  *See In re Chrysler Motors Corp. Overnight Evaluation program Litigation*, 860 F.2d 844, 846 (8th Cir. 1988) (explaining that Chrysler "waived any work product protection by voluntarily disclosing the computer tape to its adversaries"); *see also Adams Land & Cattle Co. v. Hartford Fire Ins. Co.*, 2008 U.S. Dist. LEXIS 4089 (D. Neb. Jan. 18, 2008) (citing *Chrysler*

and holding that disclosure amounted to waiver of privilege), attached hereto as Exh. J. Even opinion work product loses its immunity when disclosed to an adversary. In *Chrysler*, though the Court discussed whether the computer tape at issue was ordinary or opinion work product, it concluded that it need not resolve that issue because "…Chrysler waived **any** work product protection by voluntarily disclosing the computer tape to its adversaries …." *Id*. at 846 (emphasis added).  There, as here, the disclosure of the disputed material to a litigation opponent waived any claim to work protection, regardless of whether the material was ordinary or opinion work product. *Id*. That was true in *Chrysler* even though the computer tape was disclosed under a confidentiality agreement.

Cisco argues there is no waiver because it did not intend to give its documents to Ward. The holding in *Chrysler* flatly rejects this argument. *In re Chrysler*, 860 F.2d 846-47 (disclosure to class action plaintiffs waived any work product protection such that computer tape was discoverable by **another** litigation opponent in different litigation); *see also U.S. v. Massachusetts Inst. of Tech.*, 129 F.3d 681, 687 (1st Cir. 1987) (holding that disclosure of work product and attorney-client materials to auditing arm of DoD waived any such protections as to IRS). Disclosure to one adversary waives privilege or work product protections as to all adversaries. *In re Chrysler*, 860 F.2d at 846-47 (explaining that "'[c]onfidentiality is the dispositive factor in deciding whether [material] is privileged'" and holding that Chrysler waived work product protection when it disclosed the disputed computer tape to the class action plaintiffs such that it was discoverable by **another** litigation opponent, the Government).

Cisco's reliance on *Gundacker v. Unisys Corp.*, 151 F.3d 842 (8th Cir. 1998) is misplaced because there Unisys inadvertently produced a document and promptly sought its return on grounds that it was privileged attorney work product. *Id*. at 845. Accordingly, the Eighth Circuit determined Unisys had not voluntarily waived work product protection. *Id*. at

848.[12] By contrast, here Cisco intentionally produced material to Albritton that it now contends is protected work product. Moreover, Cisco knew along that the same documents would be at issue in Ward's case.  It tried to "reach out" to Ward to get the same agreement it made with Albritton, but Ward said no.  It disclosed to Albritton anyway.  Cisco was only concerned with preserving waiver as against ESN; it didn't care about Ward.  This is the kind of selective disclosure among adversaries that the law will not permit.

Cisco's reliance on *U.S. v. Johnson*, 378 F.Supp.2d 1041, 1049 (N.D. Iowa 2005) is similarly flawed. There the court concluded that given the closeness of the question, **in a death-penalty case**, "it is better to err on the side of upholding the privilege and decline to find waiver." The *Johnson* Court also noted that while in the Eighth Circuit an actual intention that an opponent see work product is *sufficient* to waive protection, there is no *requirement* of such an actual intention.  *Id*. at 1046.[13] Even though not required, here we have that actual intention. Cisco actually intended its adversary, Albritton, to see the documents it produced to him yet now claim are not discoverable under the work product doctrine.

Cisco's continued reliance on *Baker v. GMC*, 209 F.3d 1051 (8th Cir. 2000) is also fruitless. *Baker* is not a case where a party expressly waived work product protection by producing materials that it later maintained were protected by the doctrine. Baker could not demonstrate substantial need and undue hardship because he sought merely corroborative evidence to counter testimony of a witness.  Here, Ward seeks crucial evidence on key issues in the case for which there is no other source of discovery. *See Brawner v. Allstate Indem. Co*, 2007 U.S. Dist LEXIS 84801 at *10 (E.D. Ark. Oct. 29, 2007), attached hereto as Exh. K.

---

[12] Moreover and irrespective of the waiver issue, the *Gundacker* Court determined that the disputed material should have been "obtained through the normal channels of discovery." *Id*. Here Ward has no other avenue of obtaining Cisco's documents or their substantial equivalent. *See* Fed. R. Civ. P. 26(b)(3).

[13] Cisco also relies on *St Paul Reinsurance Co. v. Commercial Financial Corp.*, 197 F.R.D. 620, 639 (N.D. Iowa 2000). D.E. 77 at 9. *St Paul* purports to follow *Gundacker* for a proposition that was questioned five years later by the court in *U.S. v. Johnson*, 378 F.Supp.2d at 1046.

These documents will be available to the public in September anyway as they will be used in the public Albritton trial.  Cisco has no privilege of any kind to assert over the documents it produced to Albritton now and it will have even less justification to keep those documents from Ward after the Albritton trial.  Ward should not have to wait two months to obtain non-longer privileged documents he needs to prepare his case.  Cisco expressly waived all privileges with respect to the documents it produced to Albritton and the Court should order Cisco to produce those documents to Ward.

### B.   Documents Not Produced To Albritton, But That Likely Fall Within The Court's Waiver

The second category of documents is the most critical for the Court to review *in camera*. The documents in this category appear to be of the same general character as those that Cisco produced to Albritton—but these are the documents that Cisco withheld under its selective production agreement with Albritton.  Most of these documents were written on the same dates as the key events in this case.  The Court will recall that Frenkel published his slanderous statements about Ward on three separate dates:  October 17, 2007, October 18, 2007 and October 19, 2007.  These documents are communications among the principle persons involved in investigating the filing of the ESN complaint against Cisco—Frenkel, Yen, Noh, Pankratz and others at Cisco and Baker Botts.  Other documents in this category appear to be created shortly after Frenkel published his false accusations about Ward but are about the filing of the ESN Complaint; the subject matter of Frenkel's libelous posts.  These documents likely contain critical information about what Frenkel and Cisco knew about the true facts at the time it made public lies about Ward.  Thus they are highly relevant to the issues of malice, reckless disregard of the truth and negligence issues in this case.

In reviewing these documents, the Court's analysis must begin by first ascertaining whether the documents are privileged, as claimed by Cisco.  To the extent that any of these documents contain information already provided to Albritton, they are not privileged and should

be produced.  Moreover, some of the documents at issue were sent to Cisco's public relations and governmental affairs personnel (John Noh and Matthew Tanielian) and other non-lawyers (Marnie Willhoft).  Documents sent to Cisco's public relations and governmental affairs personnel—the very people at Cisco charged with disseminating information to the public—are not privileged because they were not created for the purpose of obtaining legal advice.  Instead, they were created for the purpose of disseminating lies about Plaintiff.  Those documents do not meet the elements required for a valid claim of privilege.

If the Court finds that some of the documents are properly claimed as privileged, then the Court must decide whether Cisco's assertions of privilege have been waived.  In Response, Cisco has not argued the attorney-client privilege.  The assertion of attorney-client privilege would be meritless, in any event, because that privilege is subject to this Court's March 30, 2009 Order finding waiver.  Thus, Cisco has no attorney-client privilege left to assert.  Moreover, documents that do nothing more than memorialize attorney-client communications are also discoverable in light of Cisco's waiver.  *See In re EchoStar Communs. Corp.*, 448 F.3d 1294, 1304 (Fed. Cir. 2006) (work product that references a specific communication to the client is discoverable because it will aid the parties in determining what communications were made to the client).  Here, Cisco's documents—including Powell's email memorializing her conversation with the court clerk—do little more than capture communications with third parties, or memorialize attorney-client communications, which are either not privileged, or are not longer privileged in light of Cisco's waiver.  Those documents are discoverable because Cisco has waived its attorney-client communication privilege.

Cisco triggered an implied waiver of privilege by putting its communications with counsel at issue in this case.  Cisco advanced a defense that includes reliance on information Frenkel obtained from Baker Botts in support of Cisco's assertions that Frenkel acted in good faith and without malice.  Cisco has placed its counsels' actions at issue by claiming Frenkel relied on those communications.  Cisco is now precluded from asserting privilege as to any

16

documents which undermine the claim of good faith.  *See United States v. Western Elec. Co*., 132 F.R.D. 1, 3 (D.D.C. 1990).  Cisco's work-product waiver extends to all factual work product concerning the same subject matter as the disclosed work product.  *See In re EchoStar Communs.* 448 F.3d at 1302.  Thus, the Court must review these documents to determine which documents fall within the Court's March 30th Order finding waiver.

The Response rests its latest effort to thwart production of Cisco documents on a belated work product privilege argument.  The Court must decide whether it will permit Cisco to make this argument now after the Court's March 30th Order issued when Cisco did not raise the issue before the Court ruled on the record before it.  Cisco fails entirely to address the belated nature of its work product argument. Cisco failed to raise the work product doctrine in either its response or sur-reply to Ward's motion to compel.  Likewise, in responding to Ward's motion for compliance and for sanctions, Cisco made no mention of work product protection.  It was in Cisco's sur-reply to Ward's motion for compliance and for sanctions that Cisco finally raised the work product doctrine for the first time.  Even then though, Cisco failed to meet its burden to demonstrate the applicability of the doctrine because it failed to provide the Court with a detailed privilege log and an affidavit of counsel supporting the factual basis for the application of the doctrine. *See Brawner v. Allstate Indem. Co*, 2007 U.S. Dist LEXIS 84801 at *8 (E.D. Ark. Oct. 29, 2007) (attached hereto as Exh. K and citing *Rabushka v. Crane Co.*, 122 F.3d 559, 565 (8th Cir. 1997)).

Only in responding to Ward's submission log and related motion did Cisco finally attempt to satisfy its burden to demonstrate the applicability of the work product doctrine. Yet even then it made no effort to explain its failure to timely and properly present its argument in response to Ward's motion to compel. The time to make those arguments and present that evidence has long since passed. *See Peat, Marwick, Mitchell & Co. v. West*, 748 F.2d 540, 541 (10th Cir. 1984). In *Peat Marwick, Mitchell & Co.* the Tenth Circuit denied mandamus relief

17

from an order denying reconsideration of an earlier order finding waiver and compelling the production of purportedly privileged materials. *Id*. The trial court found that the defendant had waived privilege by failing to comply with Rule 34, that is, by failing to timely or specifically lodge its objections or provide sufficient detail to support the privileges it asserted. *Id*. Not unlike Cisco, Peat Marwick, Mitchell & Co. waited until its motion for reconsideration to provide the court with an affidavit identifying the disputed materials and setting forth the circumstances giving rise to the asserted privilege/protection. *Id*. "The applicability of the privilege turns on the adequacy and timeliness of the showing as well as on the nature of the document." *Id*. Cisco cannot be heard now to claim work product privilege or protection when it failed to timely or adequately demonstrate the applicability of the doctrine when it was time to meet that burden. *See id*. Even if Cisco could meet its burden now, it's far too late now. *See id*.

> Failure to do so is not excused because the document is later shown to be one which would have been privileged if a timely showing had been made. Even though it does not seem seriously disputed that the privilege would have attached if the objection had been timely and adequately asserted, that such a showing had not been made when the trial court was called upon to make its ruling defeats the privilege. It is not enough that a document would have been privileged if an adequate and timely showing had been made.

*Id.* Cisco simply cannot be permitted to make new and untimely arguments every time it loses an issue. Otherwise, no order from this Court will be final on any issue that is decided against Cisco. Ward raised the untimely and deficient nature of Cisco's work product argument in his response to Cisco's new arguments raised in sur-reply related to the motion for compliance. *See* D.E. 69 at 7-8. Cisco has failed to respond because it knows that it has long-waived its opportunity to claim privilege under the work product doctrine. *See id*.

If the Court is inclined to consider Cisco's untimely work product argument, then the Court must review the documents at issue to determine what kind of work product is contained in Cisco's documents. Work product can be either fact work product or opinion work product. Fact work product consists of documents prepared by an attorney that contain factual

information but do not contain the attorney's mental impressions about the case.  *See United States v. Under Seal*, 401 F.3d 247, 250 (4th Cir. 2005).  Most of these documents are likely fact work product.  These documents likely discuss the filing of the ESN Complaint, what Cisco knew about the error that caused the incorrect docket entry, what motivated Cisco to publish lies about Ward, and other information concerning the "good faith"/malice, negligence and motive issues in this case.  Cisco has no legitimate bases upon which to withhold documents discussing most of the issues in the ESN v. Cisco litigation.  The filing of the ESN complaint, discussions with Baker Botts concerning the filing of the ESN Complaint, communications with counsel concerning the Hertz v. Enterprise case, Cisco's motion for declaratory relief in Connecticut, information Baker Botts learned from the Court clerk, Cisco's agreement to stipulate to jurisdiction in the Eastern District of Texas, and communications between those working on Cisco's behalf that asked Frenkel to post his accusations about Ward are all facts that have been disclosed by Cisco.  Cisco has disclosed those facts in public pleadings, deposition testimony, and by producing documents to Albritton.  Likewise, it is public knowledge that Cisco hoped to leverage the error contained on the ESN docket to force a settlement with ESN.  *See* Exh. L (Frenkel Depo.) at 122:4-123:14.   Documents concerning those issues are ordinary fact work product that should fall within the Court's subject matter waiver.

A court order directing Cisco to produce documents containing ordinary work product is entirely proper because Ward has a substantial need for those documents and he cannot obtain the substantial equivalent of the materials without undue hardship.  *See* FED. R. CIV. P. 26(b)(3)(A).  Documents concerning Frenkel and Cisco's state of mind and what they knew before publishing falsehoods about Plaintiff are uniquely in Cisco's control.  Only Cisco has access to the documents created contemporaneously with its investigation of the facts and only Cisco has documents demonstrating that it knowingly, recklessly and negligently slandered Ward.  Cisco has refused to let fact witnesses testify regarding these topics, therefore depriving Ward of any alternative source of discovery.  *See* Exh. B (Powell Depo.) at 93:23-96:6.  It is hard

to see a more compelling need for discovery than those presented on the facts of this case.  *See e.g., Granite Partners, L.P. v. Bear, Stearns & Co.*, 184 F.R.D. 49, 56 (S.D.N.Y. 1999) (substantial need shown where party had no alternative means to obtain the information underlying opponent's assertions and the information was necessary to understand and challenge the opponent's case).

Documents concerning the facts are needed by Ward to rebut Cisco's false claims of good faith.  Those documents fall within the Court Ordered wavier and should be produced.  In any event, the Court must be permitted to see Cisco's documents before it can undertake any meaningful analysis, and the Court should strongly rebuke Cisco's continued attempts to hide its documents from judicial review.

## C.  Documents Not Produced To Albritton But That May Contain Cisco's Infringement Analysis.

Plaintiff listed these documents in a separate category because these documents may contain the type of mental impressions, opinions or legal theories of an attorney that are given added protection if kept confidential by Cisco.  The Court must apply the same analysis as described in connection with the second category of documents.  First, the Court must satisfy itself that the documents are in fact, privileged.  Then, the Court must also look to see if these documents contain information that has been disclosed in the Albritton case, because the subject matter of any work product (whether ordinary work product or "opinion" work product) disclosed to Albritton is no longer privileged.

If the Court finds that Cisco is entitled to make its untimely assertions of "opinion" work product, then the Court must review these documents to determine what, if anything, contained in these documents is opinion work product.  The line between "factual" work product and "opinion" work product is not always clear, especially when, as here, an attorney's opinion is itself "factual" work product.  When faced with deciding where the line between fact and opinion

20

work product lies, "a district court should balance the policies to prevent sword-and-shield litigation tactics with the policy to protect work product." *In re EchoStar Communs.*, 448 F.3d at 1302. In this case, that means the Court must review Cisco's documents in order to decide the issues at hand. Cisco's refusal to give the Court all disputed documents can only be seen as an attempt to hamper this Court's ability to determine whether Cisco complied with the Court's March 30th Order.

If the Court finds that any these documents contain pure attorney mental impressions and legal strategy unrelated to the information that formed the basis of Frenkel's false publications, that information can be redacted. However, Cisco cannot be permitted to withhold the entire document based on its assertions of "opinion work product" because the documents may also contain ordinary work product that is discoverable. Only the Court's review of these documents will give Plaintiff the assurance that he has received all of the documents to which he is entitled.

To be clear: Plaintiff is not seeking production of Cisco's infringement or invalidity analysis with respect to the ESN v. Cisco litigation. Ward does not seek to invade Cisco's core work product regarding the infringement issues in the ESN v. Cisco case because whether or not Cisco infringes ESN's patent is not at the heart of this case. What Ward is entitled to see are documents demonstrating the information known to Cisco and Frenkel about the filing of the ESN Complaint before they defamed Ward. Cisco's documents, however, may contain a mixed discussion of issues that are discoverable and an infringement or invalidity analysis that is not. To the extent the documents contain both, the Court should order the document be produced but that Cisco can redact its infringement analysis. Ward requests that the Court review these documents to ensure that Cisco is not improperly withholding documents under an ill conceived definition of opinion work product.

### III.   Conclusion:

Ward has no ill motives for asking the Court to review Cisco's documents *in camera*. Plaintiff has asked the Court to review the documents to ensure that Cisco has finally complied

with the Court's March 30, 2009 Order.  Once the Court has reviewed the documents and issued its Order, Ward will be content that he has received all documents to which he is entitled.  He asks for nothing more.

Cisco on the other hand continues to ignore the Court's instructions, refuses to provide the documents to the Court, and continues to insist that the Court's Orders mean something other than what they say.  Cisco has no rational explanation for why the Court cannot be trusted to review Cisco's documents and make a fair ruling.  The Court, however, cannot make any decisions without Cisco's documents.  Cisco cannot be permitted to continue to stonewall discovery in this case by insisting that it gets to set the rules for discovery—even after the Court has ruled to the contrary.  The Court should order Cisco to produce for *in camera* review all of the documents on Plaintiff's submission log.  Perhaps then this issue can be resolved and the endless briefing on this issue can finally come to an end.

Respectfully submitted,

Nicholas H. Patton (SBN: 63035)
PATTON, TIDWELL & SCHROEDER, LLP
4605 Texas Boulevard - P. O. Box 5398
Texarkana, Texas 7550505398
(903) 792-7080        (903) 792-8233 (fax)

Patricia L. Peden
LAW OFFICE OF PATRICIA L. PEDEN
1316 67th Street, Suite 6
Emeryville, CA 94608
Telephone: (510) 268-8033

ATTORNEYS FOR PLAINTIFF

22

## CERTIFICATE OF SERVICE

This is to certify that on this 8th day of July, 2009, a true and correct copy of the foregoing document was served electronically via the Court's CM/ECF system upon:

Richard E. Griffin                                        Attorney for Defendant Cisco Systems, Inc.
Charles Babcock
Crystal Parker
JACKSON WALKER, LLP
1401 McKinney
Suite 1900
Houston, Texas 77010

Nicholas H. Patton

23