# EX. B

JILLIAN POWELL,    MARCH 27, 2009

Page 1

IN THE UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF TEXAS
TEXARKANA DIVISION

JOHN WARD, JR.,                  *
    Plaintiff,               *
VS.                              *   CIVIL ACTION NO.:
CISCO SYSTEMS, INC. AND RICK     *
FRENKEL,                         *
    Defendants.              *   08-4022

\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*

ORAL VIDEOTAPED DEPOSITION OF

JILLIAN POWELL

\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*

    ANSWERS AND DEPOSITION OF JILLIAN POWELL, produced as a witness at the instance of the Plaintiff, taken in the above-styled and -numbered cause on the 27th day of March, 2009, A.D., beginning at 10:38 a.m., before Kelly Hassell, a Certified Shorthand Reporter in and for the State of Texas, in the offices of Baker Botts, L.L.P., located at 2001 Ross Avenue, Suite 1100, Dallas, Texas, in accordance with the Federal Rules of Civil Procedure and the agreement hereinafter set forth.

JILLIAN POWELL,    MARCH 27, 2009

1    A    An hour.

2    Q    And where did that meeting occur?

3    A    In a conference room at Baker Botts.

4    Q    So it was here?

5    A    Yes.

6    Q    Was Mr. Babcock present at that meeting?

7    A    No.

8    Q    Or Ms. Parker?

9    A    Yes.

10    Q    Can you tell me what you discussed at that meeting, please.

12    A    The procedures for the deposition.

13    Q    Did you discuss any substantive questions I might ask you?

15    A    Yes.

16    Q    And what were those?

17    MR. CHEAVENS: I'm going to instruct the witness not to answer. That's privileged.

19    MS. PEDEN: With Mr. -- with Ms. Parker present, it's privileged?

21    MR. CHEAVENS: We have a joint client.

22    MS. PEDEN: Do you have a joint defense agreement?

24    MR. CHEAVENS: Not in writing.

25    MS. PEDEN: Do you have one that's an

JILLIAN POWELL,    MARCH 27, 2009

Page 14

1    understanding?
2             MR. CHEAVENS: Yes. Sure. The substance of
3    those communications are privileged and I'll instruct the
4    witness not to answer, so --
5             MS. PEDEN: Okay. So what privileges are
6    you claiming, Mr. Cheavens?
7             MR. CHEAVENS: Attorney/client privilege and
8    work product privilege.
9             MS. PEDEN: How long has this joint defense
10   agreement been in existence?
11            MR. CHEAVENS: Since I first learned about
12   this lawsuit in the Albritton case.
13            MS. PEDEN: When was that?
14            MR. CHEAVENS: I don't know. I think when
15   we were first served with a document subpoena in the
16   Albritton case last summer.
17            MS. PEDEN: Okay. I think we might need to
18   take a recess and call chambers. Let me just say on the
19   record that I think having opposing counsel in a witness
20   prep session right before the witness is to be deposed
21   about her testimony waives attorney/client privilege.
22   Cisco's request for admissions filed in this case
23   identifies Baker Botts as a third party. They refuse to
24   provide discovery that's in Baker Botts's possession
25   because they're a third party. I just think it's an

Esquire Deposition Services, LLC
(800) 866-5560

1   Q    What do you mean by "not in that detail"?
2   A    Well, all I remember is she said a civil
3  complaint had been filed.
4   Q    Did Ms. LaFitte tell you that Eric Albritton
5  signed a civil cover sheet stating that the complaint had
6  been filed on October 15th?
7   A    Not in that much detail, no.
8   Q    Did you tell anyone that Eric Albritton signed a
9  civil cover sheet stating that the ESN complaint had been
10 filed on October 15th of 2007?
11  A    I don't remember.
12  Q    Is there anything you can look at to refresh your
13 recollection?
14  A    I don't know.
15  Q    You said that you discussed the filing of the ESN
16 complaint with Ms. LaFitte, right?
17  A    Yes.
18  Q    Did you understand that the complaint in the ESN
19 case had been filed after midnight?
20  A    It had -- it had been filed before midnight.  It
21 had been filed before midnight is what she told me, I
22 believe.  I don't remember exactly.
23  Q    Is it possible that Ms. LaFitte told you that
24 ESN's counsel had logged on to the system and started
25 uploading documents before midnight, but did not officially

JILLIAN POWELL,   MARCH 27, 2009

Page 94

```
 1   file until after midnight?
 2              MR. BABCOCK:  Object to the form of the
 3   question.
 4        A    Can you repeat the question?
 5              (Requested portion read.)
 6        A    I don't remember exactly.
 7        Q    (BY MS. PEDEN)  You don't remember Ms. LaFitte
 8   using the words "officially filed after midnight"?
 9        A    No.
10        Q    Did Ms. LaFitte tell you that the ESN complaint
11   had been officially filed before midnight?
12        A    Ms. LaFitte said that it had been filed and
13   stamped before midnight.  No, I -- I don't remember
14   exactly.  I don't remember exactly.
15              MS. PEDEN:  Counsel, do you object to me
16   showing the witness her E-mail that -- that records her
17   recollection of her testimony -- or her conversation with
18   Ms. LaFitte?
19              MR. BABCOCK:  If they're privileged, I do,
20   if you're asking me.
21              MS. PEDEN:  It's designated as privileged,
22   although it's --
23              MR. CHEAVENS:  Well, this was the document
24   produced in the Albritton case pursuant to the stipulation
25   there, including the protective order?
```

```
 1              MS. PEDEN:  Yes, it's the E-mail that
 2   Ms. Powell wrote that records the factual information that
 3   she learned from Ms. LaFitte.
 4              MR. BABCOCK:  If we -- if we designated it
 5   as privileged in the Albritton case, then yes, I do object.
 6              MS. PEDEN:  Mr. Cheavens?
 7              MR. CHEAVENS:  This is Cisco's privilege.
 8   You've heard what he said.
 9              MS. PEDEN:  Well, there's a work product
10   privilege out there too, which I think --
11              MR. CHEAVENS:  Okay.  Pursuant to the
12   instructions of our counsel -- our client, we invoke the
13   privilege.  I think the document you're talking about was
14   produced under a stipulation and it is pursuant to a
15   protective order in the other case.
16              MS. PEDEN:  Right.  I understand your
17   position.  My -- my position is that, you know --
18              MR. CHEAVENS:  And you want to violate the
19   protective order?
20              MS. PEDEN:  No.  You know, I didn't just
21   hand her the document.  I'm conferring with counsel about
22   the document.  I think the document contains only factual
23   information that she learned from a third party.  It
24   memorializes a conversation with a third party.  I'm not
25   sure that it was -- that it's properly claimed as
```

JILLIAN POWELL,    MARCH 27, 2009

Page 96

1  privileged and the witness is having a hard time
2  recollecting the conversation and I think that document
3  would help her refresh her recollection and move things
4  along.
5             MR. CHEAVENS:  The problem is it's under the
6  protective order.
7       Q    (BY MS. PEDEN)  Ms. Powell, when you talked to
8  Ms. LaFitte, did you discuss the fact that ESN's attorneys
9  had contacted the clerk's office?
10      A    She mentioned that they had contacted the clerk's
11 office.
12      Q    Did she tell you that ESN's counsel contacted the
13 clerk's office to explain that they had actually filed the
14 complaint after midnight?
15      A    She said they had completed the filing after
16 midnight.
17      Q    And did you understand that ESN's counsel had
18 called the clerk's office to ask about the docket entry?
19      A    I can't remember.
20      Q    But you understood that ESN's counsel had called
21 to ask the court clerk about the same filing that you were
22 calling to ask the court clerk about; is that right?
23      A    Yes.
24      Q    Did Ms. LaFitte tell you who called the clerk's
25 office from ESN's side?