IN THE UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF ARKANSAS
TEXARKANA DIVISION

| | |
|---|---|
| JOHN WARD, JR. | § <br> § <br> §    C. A. NO. 08-4022 <br> v.                 §    JURY TRIAL DEMANDED <br> § <br> CISCO SYSTEMS, INC.     § |

### CISCO SYSTEM, INC.'S REPLY AND BRIEF TO PLAINTIFF'S REPSONSE TO CISCO'S MOTION TO DISMISS FOR FAILURE TO STATE A CLAIM UPON WHICH RELIEF MAY BE GRANTED

TO THE HONORABLE DISTRICT COURT JUDGE:

Defendant Cisco Systems, Inc. hereby files its Reply and Brief ("Reply") to Plaintiff's Response (the "Response") to Cisco's Motion to Dismiss for Failure to State a Claim upon which Relief May be Granted (the "Motion") as set forth below.

### I.  INTRODUCTION

We agree with Plaintiff (Response at p. 2) that the Court, in deciding a Rule 12(b)(6) motion, must assume all facts in the complaint to be true and construe all reasonable inferences from those facts in the light most favorable to the pleader. Nor do we quarrel with the proposition that "once a claim has been stated adequately" (*id.*) any consistent set of facts may support it. Plaintiff also seems to recognize (Response at p. 7) the United States Supreme Court's holding in *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007) that the complaint must allege "enough facts to state a claim to relief that is plausible on its face." As the Court described it "we look for plausibility in this complaint" (*id.* at 564); that is, does the complaint warrant "dismissal because it failed in toto to render plaintiff's entitlement to relief plausible." (*Id.* at 569 n. 14). Measured by that standard (which replaced the "no set of facts" rule of *Conley*

*v. Gibson*, 355 U.S. 41 (1957)) (*id.* at 561-562) we think the Plaintiff's claim of outrage must be dismissed under the undisputed elements of the tort.

The Eighth Circuit has described the Arkansas "outrage" tort as requiring, among other things, conduct that is "extreme and outrageous beyond all possible bounds of decency and intolerable in a civilized community" and that, in addition, "the emotional distress sustained by the plaintiff was so severe that no reasonable person could be expected to endure it." *Steinbuch v Cutler*, 518 F.3d 580, 590-91 (8th Cir. 2008), cert. denied 129 S.Ct. 223 (2008). Even if the court gives all the deference the Plaintiff's allegations are due (and he does not even plead that he suffered emotional distress so severe that no reasonable person could be expected to endure it), this claim fails as a matter of law.

The Plaintiff is described in the First Amended complaint ("FAC") as someone engaged in "the private practice of law" (FAC at p. 2, ¶7), who enjoyed an "excellent reputation," and was "AV (rated) by his peers." (*Id.* at ¶6). In October 17, 2007, the FAC alleges, an anonymous internet blogger calling himself the Patent Troll Tracker published an article that falsely said "ESN's (plaintiff) counsel, including Ward" (FAC at p. 7, ¶32) filed a patent suit where there was no jurisdiction. The article also said, according to the FAC, that the case would be transferred to Connecticut and asked "Wonder how Johnny Ward will play there?" (*Id.*) The October 17 article is before the court.

The Plaintiff also complains about an October 18, 2007 article, which was revised the next day (these articles are also before the court). Neither the original nor revised October 18 article mentions Ward by name, but the FAC says that it accuses him of "criminal conduct, unethical conduct" (FAC at p. 7, ¶32). The FAC also states that the author of the article, Richard Frenkel, a Cisco employee, knew the statements were false. The FAC does not allege that these

articles are still available on the internet, nor could it as the articles were removed when Ward initially filed this claim against Cisco and Frenkel in state court in Texas (the case was nonsuited and this action was then brought). Indeed, Plaintiff admits the articles were only posted on the internet "for nearly five months." (Response at p. 4). So the legal question for the court is whether these facts, even if true (which they are not), state a claim "plausible on its face." As we discuss below they do not.

As for the Arkansas SLAPP statute, we think the issue is now moot in light of Plaintiff's concession that "the pleading is verified" (Response at p. 7) as required by the statute. Therefore, Defendant withdraws its motion to dismiss for failure to comply with ARK. CODE ANN. § 16-63-505.

## II. THE OUTRAGE CLAIM FAILS AS A MATTER OF LAW
(In Reply to Plaintiff's Response pp. 1, 3-5)

Plaintiff argues that the FAC "contains sixty-six paragraphs of factual allegations" (Response at p. 4) and that, if these facts are taken as true, an outrage claim is "plausible on its face." (Response at p. 7). He characterizes Cisco's position as "highly technical" and inconsistent with notice pleading. (Response at p. 1). We think not and ask this Court to do exactly what you did in *R.P. v Springdale Sch. Dist.*, No. 06-5014, 2007 WL552117, at *7 (W.D. Ark. Feb 21, 2007) and determine whether "the facts alleged by (plaintiff) ... rise to the level of extreme and outrageous conduct sufficient to support a claim of outrage."[1] *Id.* The conduct at issue in *Springdale* – that Defendant was "deliberately indifferent" to the plight of a mentally retarded student who was repeatedly subjected to "acts of cruelty, humiliation, ridicule and assault" by other students – was certainly as "outrageous" as what is alleged here, if not more

---

[1] Plaintiff attempts to avoid the holding of this court in *Springdale* by incorrectly arguing that "plaintiffs did not oppose the motion to dismiss" (Response at 5). The court noted that Plaintiffs' papers did not address the argument on the outrage claim but does not say it was unopposed. This court, in any event, reached the merits of the motion and granted it.

so. And Plaintiff cites no cases to support his position that the publication of two internet articles that barely mention him on a blog that ceased to exist less than five months after publication of the allegedly offensive articles plausibly states a claim of outrage.

Indeed, *Steinbuch v. Hachette Book Group*, No. 4:08CV456 JLH, 2009 WL 963588 (E.D. Ark. Apr. 8, 2009) appears to be on point and refutes Plaintiffs' claim. As here, the *Hachette* case involved publication of written material ("the publication, commercialization, distribution of a book," Exhibit 1 to Plaintiff's response (the *Hachette* complaint)). As here, there was a claim of defamation (*Id.* at p. 7) and a claim that the book published "false and harmful statements" with "actual malice" (knowing falsity) and that Defendant acted "intentionally," "reckless(ly)" and "intended to cause Plaintiff to suffer damages." (*Id.*) Plaintiff alleged "severe emotional distress" (*Id.* at p. 8), the same allegation made by Plaintiff in this case. As here, there was an "outrage" claim. The Court in *Hachette* did just what Your Honor did in *Springdale*, which was to compare the allegations against the elements of the outrage tort. Judge Holmes concluded, just as Your Honor had in *Springdale*, that "[t]he complaint here does not state a claim for the tort of outrage." *Hachette* at *2. The court ruled on the pleadings, granting a 12(b)(6) motion regarding the allegations which are nearly identical to those made by the Plaintiff here. Although Ward attached the complaint in *Hachette* to his response, he does not discuss the case.[2]

The only factual difference between this case and *Hachette* is that here the articles were published under a pseudonym (The Patent Troll Tracker). The Plaintiff makes much of this in

---

[2] Instead he discusses a related case, *Steinbuch v. Cutler*, (Response at p. 5) but mistakenly cites to the complaint in the *Hachette* case, which he attaches to the Response as Exhibit 1. *Cutler* was a decision by Judge Wilson dismissing an outrage claim as to two defendants under Rule 12 (b)(6) and dismissing for lack of in personam jurisdiction over the other defendants. See *Steinbuch v. Cutler*, No. 4:06CV00620-WRW, 2007 WL 486626, at *7-8 (E.D. Ark. Feb. 7, 2007). The Eighth Circuit affirmed the dismissal of the outrage claim and affirmed the jurisdictional decision as to all but one defendant. *See* 518 F.3d 580 (8th Cir. 2008).

his response pointing out that "Cisco's agents ... anonymously accused Ward of criminal and unethical conduct" (Response at p. 4) and "Cisco made its attacks anonymously" (*Id.*) But anonymous speech is constitutionally protected in this country and is the opposite of something that is "intolerable in a civilized community" as the outrage tort requires.

Indeed, the United States Supreme Court held in *McIntyre v. Ohio Elections Commission* that: "an author's decision to remain anonymous, like other decisions concerning omissions or additions to the content of a publication, is an aspect of the freedom of speech protected by the First Amendment." *McIntyre v. Ohio Elections Comm'n*, 514 U.S. 334, 342 (1995) (striking down a statute imposing a fine for distributing anonymous leaflets). The Supreme Court recognized in that case that "[t]he decision in favor of anonymity may be motivated by fear of economic or official retaliation, by concern about social ostracism, or merely by a desire to preserve as much of one's privacy as possible... anonymous pamphleteering is not a pernicious, fraudulent practice, but an honorable tradition of advocacy and dissent." *Id.* at 341-342, 357

Anonymous speech has a long tradition in this country. Thomas Paine published "Common Sense" anonymously on January 10, 1776. It was signed "Written by An Englishman" and has been described as "the most incendiary and popular pamphlet of the entire Revolutionary era." Gordon S. Wood, The American Revolution: A History 55 (Modern Library, 2002). Common Sense advocated overthrow of the government. The Federalist Papers, a series of 85 articles advocating ratification of the U.S. Constitution, were written by Alexander Hamilton, James Madison and John Jay under the pseudonym "Publius" in honor of Roman consul Publius Valerius Publicola. Albert Furtwangler, The Authority of Publius: A Reading of The Federalist Papers 51 (Cornell Univ. 1984). So anonymous speech is not something that is "beyond all possible bounds of decency" but rather an honored tradition in our society.

With the advent of the internet, courts have continued to honor the American tradition of anonymous speech. *See, eg. Doe v. Cahill*, 884 A.2d 451, 456 (Del. 2005) where the Delaware Supreme Court wrote that anonymity on the internet "'promises to make public debate in cyberspace less hierarchical and discriminatory' than in the real world because it disguises status indicators such as race, class, and age… Anonymous internet speech in blogs or chat rooms in some instances can become the modern equivalent of political pamphleteering." *Cahill*, 884 A.2d at 456. Thus, this reliance by Plaintiff on the anonymous nature of the speech is misplaced.

Plaintiff also places emphasis on his contention that the articles call him "a crook and a cheat" (Response at 4) but, even if the articles said that (which they don't), the courts have dismissed similar comments. In other jurisdictions the outrage tort is called intentional infliction of emotional distress and many such claims, more outrageous than this one, have been dismissed on the pleadings. For example, The Court in *Coliniatis v. Dimas*, 848 F.Supp. 462, 471 (S.D.N.Y. 1994) dismissed a claim for intentional infliction of emotional distress based on an accusation that plaintiff was engaged in an illegal scheme to defraud an arm of the government of Greece because, "[w]hile Coliniatis contends that the Dimas Defendants intended to charge him with criminal conduct, allegations of criminal conduct cannot be viewed as so outrageous in character and so extreme in degree as to go beyond all possible bounds of decency.".

In *Perry v. City of Norfolk*, 1999 WL 731100, at *4 (4th Cir. Sept. 20, 1999), the Court held that, taking the plaintiff's allegations as true, the intentional misaddressing of an envelope to deprive plaintiff of his right to contest being listed as a child abuser, which ultimately caused him to lose his job, "simply is not 'outrageous' under Virginia law. Indeed, it is the rare case that will satisfy the outrageousness standard." Similarly in *Rivers v. Towers, Perrin, Forster & Crosby Inc.*, No. CV-07-5441, 2009 WL 817852 at *8 (E.D.N.Y. Nov. 27, 2009) the Court

dismissed an intentional infliction of emotional distress claim based on plaintiff's allegations that the defendant "intentionally, falsely and maliciously asserted [to the police] that plaintiff had committed various crimes...".

### III. CONCLUSION

As the Arkansas Supreme Court has held "[m]erely describing the conduct as outrageous does not make it so ... [w]e have taken a strict approach in determining the validity of outrage cases, and recognized that 'the tort of outrage should not and does not open the doors of the Courts to every slight insult or indignity one must endure in life.'" *Crockett v. Essex*, 19 S.W.3d 585, 589 (Ark. 2000). The Plaintiff, by his own account, a well respected trial lawyer can not "plausibly" claim that he has suffered such severe emotional distress that no reasonable person could endure it as a result of these articles which, under all the cases cited by Defendant, without contrary citation from Plaintiff are not "beyond all possible bounds of decency and intolerable in a civilized society." Defendant's motion should be granted.

Respectfully submitted,

JACKSON WALKER L.L.P.

By: *Charles L. Babcock*
    Richard E. Griffin
    Arkansas Bar No.: 63020
    Email: rgriffin@jw.com
    Charles L. Babcock
    Federal Bar No.: 10982
    Email: cbabcock@jw.com
    Crystal J. Parker
    Federal Bar No.: 621142
    Email: cparker@jw.com
    1401 McKinney
    Suite 1900
    Houston, Texas 77010
    (713) 752-4200
    (713) 752-4221 – Fax

ATTORNEY FOR DEFENDANT
CISCO SYSTEMS, INC.

## CERTIFICATE OF SERVICE

This is to certify that on this 10th day of July, 2009, a true and correct copy of the foregoing was served via electronic mail upon:

| | |
|---|---|
| Patricia L. Peden<br>Law Offices of Patricia L. Peden<br>5901 Christie Avenue<br>Suite 201<br>Emeryville, CA 94608<br>***Attorney for Plaintiff John Ward, Jr.*** | Nicholas H. Patton<br>Patton, Tidwell & Schroeder, LLP<br>4605 Texas Boulevard<br>P.O. Box 5398<br>Texarkana, Texas 75505-5398<br>***Attorney for Plaintiff John Ward, Jr.*** |

/s/ *Charles L. Babcock*
Charles L. Babcock