IN THE UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF ARKANSAS
TEXARKANA DIVISION

| | | |
|---|---|---|
| JOHN WARN, JR. | § § § § | |
| | § | C.A. NO. 4:08cv4022 |
| v. | § | JURY TRIAL DEMANDED |
| | § | |
| CISCO SYSTEMS, INC. | § § | |

**PLAINTIFF SUR-REPLY REGARDING DEFENDANT'S MOTION
TO DISMISS FOR FAILURE TO STATE A CLAIM
UPON WHICH RELIEF MAY BE GRANTED**

**I.     INTRODUCTION**

Cisco acknowledges that the Court is to review its 12(b)(6) motion by accepting Ward's allegations as true and construing all reasonable inferences in his favor. Yet in reply, Cisco persists in spinning Ward's allegations in its favor and plays mere lip service to the standard announced in *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007). Likewise, Cisco ignores Arkansas precedent that requires courts to evaluate the conduct underlying an outrage claim "on a case by case basis." *Kiersy v. Jeffrey*, 253 S.W.3d 438, 441 (Ark. 2007). Instead, Cisco insists on comparing its version of Ward's allegations to allegations that arose from entirely different circumstances in other cases. Finally, Cisco restates its now all too familiar diatribe on the historical protection of anonymous speech; all the while ignoring the true import that its anonymous posts lend to these facts: that Cisco was emboldened to falsely accuse Ward of criminal and unethical conduct to enhance its litigation position and harm Ward because it never thought the Troll Tracker's posts would be traced back to Cisco.

Like Ward, Cisco's lawyers such as Frenkel and Yen, are officers of the court. Through its lawyers, Cisco made knowing, false accusations that Ward conspired with court clerks to defraud the Court by manufacturing subject matter jurisdiction. These accusations were made anonymously in a forum of Ward's peers to ensure the most harm to Ward's reputation. The accusations were drafted in a manner that would mislead readers to believe that the author was not connected to Cisco. Cisco accused Ward of conduct that, if true, could cost him his law license or subject him to criminal penalties. Despite knowing the accusations were false, Cisco published them on the internet for the world to read for nearly five months. And, contrary to Cisco's assertions, the defamatory articles are still available on the internet, albeit not on the Troll Tracker Blog. Moreover, the defamatory articles, read together and in context, make clear that Cisco (in disguise) made serious accusations about Cisco's opposing counsel in a pending case to advance Cisco's litigation position. No civilized society can tolerate the type of

financially motivated intentional attack on a person's reputation that Ward has alleged against Cisco. Ward has alleged conduct on Cisco's part that exceeds any bounds of decency. Because Ward has alleged conduct that is sufficiently outrageous and extreme to support this claim for outrage (at least at the pleading stage), Cisco's motion should be denied in full.

## II.     ARGUMENT

### A.     Recovery is More Than "Plausible" on Ward's Allegations

Ward has alleged facts which far exceed the low threshold announced in *Twombly*. *See* 550 U.S. at 569 n.14 (explaining that dismissal was appropriate because the complaint "failed *in toto* to render plaintiff's entitlement to relief plausible."). Cisco acknowledges this standard but persists in advancing its spin on Ward's allegations. Perhaps not surprisingly, Cisco's version ignores allegations that are key to the Court's determination of plausibility. By way of example only: Cisco is alleged to have publicly and anonymously accused Ward of conspiring to manufacture subject matter jurisdiction to keep the ESN litigation in the Eastern District of Texas – when it knew the accusations were false (DE 66 at ¶¶ 32, 33, 34, 51, 56, 60, 61); Cisco is alleged to have been motivated by ill will and spite towards Ward and to have made the accusations to gain a litigation advantage, protect its financial interests and damage Ward's reputation (DE 66 at ¶¶ 63, 70, 77, 82, 84); Cisco's accusations, if true, could serve as the basis for disbarment or criminal penalties (DE 66 at ¶¶ 32, 33, 34, 35); Cisco's accusations were published in a forum of Ward's peers – a place where they would do the most damage (DE 66 at ¶¶ 82, 83); Cisco used words to specifically convey that Ward engaged in criminal behavior though he did not, and Cisco knew it (DE 66 at ¶33); Cisco took steps to mislead readers that the Troll tracker was not associated with Cisco (DE 66 at ¶¶ 50, 86); and though Cisco knew the accusations were untrue, it took steps to maximize their dissemination (DE 66 at ¶¶ 54, 68, 69, 83). In looking for plausibility, the Court's review of Ward's complaint must be guided by the allegations contained in the complaint – not Cisco's version of those allegations. The allegations

far exceed Rule 8's requirement of a short, plain statement showing Ward is entitled to relief as well as *Twombly's* plausibility standard.

Though the Arkansas Supreme Court has made clear that the conduct at issue in outrage cases must be evaluated on a case by case basis, Cisco persists in comparing its spin on Ward's allegations to allegations that arose in different circumstances in other cases. In several instances, Cisco relies on cases of inaction, a failure to use requisite care or indifference.[1] Though those cases involve disturbing facts, the plaintiffs in each failed to allege outrageous or extreme conduct by the defendants in part because the Court determined that inaction is not outrageous. By contrast, Ward's allegations detail the affirmative, intentional, and malicious campaign that Cisco affirmatively undertook to attack Ward for its own financial gain.

In another instance, Cisco relies on *Steinbuch v. Hachette Book Group*, 2009 WL 963588 (E.D. Ark. April 8, 2009), a case that dismissed an outrage claim that was predicated on the barest of pleadings.[2] In response to Cisco's efforts to compare Ward's allegations to those in *Hachette*, Ward attached the complaint from that case. *See* DE 74 at Ex. 1. Though Ward mistakenly referred to *Steinbuch v. Cutler* (a related case) in his brief, his citation, attachment and discussion are directed at the *Hachette* case. *See* DE 74 at 5 & Ex. 1. In *Hachette* the court determined that Steinbuch offered no more than labels, conclusions and a formulaic recitation of the elements to support five of his claims – including an outrage claim. To support his claim for public disclosure of private facts, Steinbuch included some facts, but failed to even allege Hachette's involvement in the book at issue or allege any facts to support distributor liability. As a result, the court granted the motion to dismiss (but allowed Steinbuch an opportunity to re-plead). As explained in Ward's response, there simply is no comparison between the *Hachette*

---

[1]   *See* DE 70 (relying on *R.P. v. Springdale School District*, 5:06-cv-5014, DE# 10 (W.D. Ark. Feb. 21, 2007), *Shepherd v. Washington County*, 962 S.W.2d 779, 792 (Ark. 1998) and *Wolfe v. Fayetteville Ark. School Dist.*, 600 F.Supp.2d 1011 (W.D. Ark. 2009). *See also* DE 74 (Ward explaining the fallacy of Cisco's reliance on these authorities).

[2]   *See* DE 70 (relying on *Steinbuch v. Hachette Book Group*, 2009 WL 963588 (E.D. Ark. April 8, 2009).

complaint (DE 74 at Ex. 1) and Ward's allegations against Cisco. Cisco's contention that the allegations in *Hachette* are "nearly identical to those made by Plaintiff here," is an absurdity that is revealed by even the most cursory review of the respective pleadings. *Compare* DE 66 with DE 74 at Ex. 1.

Relying on cases from outside the Eighth Circuit, the Reply argues that Plaintiff's cause of action for the tort of outrage must be dismissed because accusations of a crime are not sufficiently outrageous conduct.[3] *See* Reply at 6-7. The cases cited by Cisco, however, do not change the facts of ***this case***, which, as pleaded, are more than sufficient to survive Cisco's motion to dismiss.

Case law from this district demonstrates that Ward has pleaded sufficient facts to support a tort of outrage claim at the pleading stage. In *Peoples Bank & Trust Co. of Mountain Home v.*

---

[3] Cisco relies on *Coliniatis v. Dimas*, 848 F.Supp. 462 (S.D.N.Y. 1994). In that case, a lawyer wrote a letter informing his client that one of the client's employees was involved in a possible kickback scheme. *See id.* at 466. The letter was subsequently published in a newspaper. *See id*. On those facts, where the attorney had an obligation to his client, wrote a letter stating that the there was "possible" criminal activity, signed his name to the letter, and did not affirmatively act to have his accusations disseminated to the public, the court found that the conduct alleged was not sufficient to establish a cause of action intentional infliction of emotional distress. *See id*. at 471. In contrast, Ward has pleaded conduct by Cisco that demonstrates that far from upholding the ethical responsibilities of its lawyers, as in *Coliniatis*, Cisco's lawyers compromised their ethical obligations to attack Cisco's opposing counsel and the court. Unlike the lawyer in *Coliniatis*, Cisco did not suggest that there was "possible" criminal conduct; it affirmatively alleged that Ward had conspired to alter governmental records. And, unlike *Coliniatis*, in this case the information didn't just find its way to the press; Cisco took affirmative steps to ensure that its false criminal accusations were disseminated as far and wide as possible—all the while concealing from Ward and the public that Cisco was the source of Frenkel's lies.

Cisco's reliance on *Perry v. City of Norfolk*, 1999 WL 731100 (4th Cir. Sept. 20, 1999) is also misplaced. In that case, a social worker concluded that Perry was a child abuser. *See id*. at *3. The social worker prepared a letter notifying Perry of his right to contest his designation, but the letter was misaddressed and Perry never received it. *See id.* When Perry later heard of that he had been registered as a child abuser, he sued for intentional infliction of emotional distress. The court found that misaddressing an envelope, even if done intentionally, simply did not rise to the requisite level of outrageousness. *See id*. at *11-12. Cisco's attempt to recast its intentional and highly offense conduct in an attempt to equate it with a misaddressed envelope should be rejected.

Likewise, *Rivers v. Towers, Perrin, Foster & Crosby, Inc*., 2009 WL 817852 (E.D.N.Y. Mar. 27, 2009) does not support Cisco's argument. There, the Plaintiff brought a cause of action for intentional infliction of emotion distress, alleging he was unlawfully subjected to false arrest and imprisonment as the result of false accusations. *See id*. at *2. The court found that Plaintiff's allegations of providing false information to the police, were not sufficient for an intentional infliction of emotion distress claim. Here, Cisco did far more than make an accusation to the police for further investigation (and presumably to benefit the public). Cisco made knowingly false accusations about Plaintiff, accusing him of criminal and unethical behavior, and did so in a manner that ensured that anyone with access to the internet could see its anonymous and false accusations. Cisco's conduct was not aimed at protecting the public, but rather Cisco's pocketbook.

4

*Globe Int'l, Inc*., 786 F. Supp. 791 (W.D. Ark. 1992), Judge Waters was presented with a fact scenario more like the facts before this Court.  In *People's Bank*, a newspaper published false and defamatory statements about the Plaintiff, who subsequently filed a lawsuit alleging defamation, invasion of privacy, and intentional infliction of emotional distress.  *See id*. at 792.  At trial, a jury in Harrison, Arkansas found that the defendant's conduct amounted to intentional infliction of emotional distress.  *See id.* at 793.

Defendant moved for judgment as a matter of law, arguing that there was no evidence that its conduct was extreme and outrageous or that it resulted in extreme emotional distress, as Cisco does here.  *See id.* at 794.  Judge Waters had little difficulty overruling Defendant's motion, holding "the essence of the tort of outrage is the injury to the plaintiff's emotional well-being because of outrageous treatment by the defendant.  If the conduct is sufficiently flagrant to give rise to the tort, then the injury the law seeks to redress is the anguish itself. . . ."  *Id.* at 795.  Judge Waters appreciated that publicly disseminated lies made by an author writing under a pseudonym is flagrant and offensive conduct, equating the Plaintiff's experience to that of "a person who has been dragged slowly through a pile of untreated sewage."  *Id.* at 769.  On those facts, the law in this Circuit permits an injured person to seek just compensation under the tort of outrage.  *See id*. at 795-797, *affirmed in relevant part*, 978 F.2d 1065 (8th Cir.1992).

Ward's allegations of Cisco's conduct are to be judge on their own, but even if it were appropriate to compare them to those of other cases, Ward has alleged conduct that is so extreme and outrageous that it exceeds the bounds of decency. His entitlement to relief on his outrage claim is far more than plausible and more than sufficient at the pleading stage.[4]

---

[4] Ward has pleaded sufficient facts to withstand Cisco's motion to dismiss.  Cisco's Motion appears to attack the sufficiency of the facts underlying Plaintiff's claim.  Cisco's argument is premature.  During discovery, Plaintiff will obtain evidence sufficient to support his allegations.  However, if, as Cisco claims, the facts of this case do not support a tort of outrage claim, then Cisco can move for summary judgment on that issue.  Plaintiff submits that Rule 56—not Rule 12—is the proper context in which to evaluate Cisco's objection to the sufficiency of Plaintiff's evidence.

B.     **The First Amendment Does Not Insulate Cisco From Liability**

The Reply insists that the fact that Cisco attacked Ward anonymously cannot serve as one of the facts supporting Plaintiff's cause of action for outrage. Cisco's argument misses the mark for several reasons.

First, that Frenkel and Cisco attacked Ward under a cloud of anonymity is one fact showing that Plaintiff has sufficiently pleaded an outrage cause of action. However, it is only one fact among many pleaded in Plaintiff's 103 paragraph complaint. Cisco's attempt to narrow Plaintiff's outrage cause of action to this one fact is disingenuous.

Second, Cisco stretches its First Amendment argument too far. The First Amendment provides protections for speech in the form of substantive standards for liability, but it strains all reason to suggest what Cisco suggests here—that the First Amendment grants Cisco special protection from tort liability. Cisco's dissemination of lies about Ward is not afforded First Amendment protection at all. *See Herbert v. Lando*, 441 U.S. 153, 171 (1979) ("Spreading false information in and of itself carries no First Amendment credentials."). It defies logic to suggest that because this case may have First Amendment overtones,[5] the Court must dismiss Ward's outrage cause of action because anonymous speech is subject to a different set of pleading rules.

Neither of the cases Cisco cites for its "special protection" argument is on point, and they both actually undermine Cisco's argument. In *McIntyre v. Ohio Elections Commission*, 514 U.S. 334, 341 (1994), a pamphleteer challenged a fine imposed by the Ohio Elections Commission for distributing anonymous leaflets opposing a proposed school tax. There, the Court reviewed a governmental regulation of speech (subject to and entirely different strict scrutiny analysis) and held that a person or organization has a First Amendment right to anonymously publish in support of or opposition to legislation or a candidate. *Id.* at 357. Cisco's reliance on *McIntrye* misses a key distinction; *McIntrye* is not a ***defamation*** case. *McIntrye* does not apply where the

---

[5] Ward responds to Cisco's reliance on the First Amendment for the purpose of responding to Cisco's motion. However, Ward contends that this case does not implicate the First Amendment at all. *See Snead v. Georgetown Railroad Co., Inc*., 998 F.2d 1325, 1330 (5th Cir. 1993).

6

Court is required to balance the protections afforded by the First Amendment with the legitimate need to protect persons from defamation. *See Gertz v. Robert Welch, Inc.*, 418 U.S. 323, 343 (1974) (discussing the competing interests that must be weighed in defamation cases). The *McIntyre* Court noted early in its Opinion that, in that case, there was "no suggestion that the text of the message was false, misleading or libelous." 514 U.S. at 336; *see also In re Baxter*, 2001 U.S. Dist. LEXIS 26001, 27-28 (W.D. La. Dec. 19, 2001) (internet defamation case distinguishing *McIntrye*'s holding on the anonymity issue). In *McIntrye*, "Justice Stevens noted more than once that the issue of falsity or libel was not present in the speech at issue and he noted that 'the state interest in preventing fraud and libel stands on *a different footing*' than the decision with regard to truthful pamphleteering." 514 U.S. at 350; *Baxter*, 2001 U.S. Dist. LEXIS 26001, at *29-30. (emphasis added). The Court's holding in *McIntrye* is "very limited," and is inapplicable in this case. *See Baxter*, 2001 U.S. Dist. LEXIS 26001, at *32. While a limited right of anonymity exists, it does not apply to Cisco's libelous, misleading, and defamatory statements about Ward. *See id.* at *33.

Likewise, *Doe v. Cahill* does nothing to aide Cisco's cause. *See* Reply at 6, citing 884 A.2d 451, 456 (Del. 2005). Here, Cisco's argument appears to be that because Cisco published lies about Ward anonymously, they are afforded absolute protection. But, anonymous speech is afforded the same protection as other speech; no more and no less. As *Cahill* makes clear, a lie is not accorded First Amendment protection—even when made anonymously. *See id*. at 456 ("It is [] clear that the First Amendment does not protect defamatory speech."). Lies are afforded no Constitutional protection because they do not contribute the exposition of ideas, are of slight value, and any minimum value is clearly outweighed by society's interest in protecting persons against false character assassination. *See id*. at 456.

The fact that Cisco's libelous conduct occurred under a cloud of anonymity does not insulate it from liability. In this case, Cisco's intentional and affirmative decision to attack its

7

litigation opponent in secret, and for its own economic gain, is one fact among many that adequately state a cause of action for the tort of outrage.

## III.  CONCLUSION

For the foregoing reasons and those stated in his response, Plaintiff respectfully requests that Cisco's Motion to Dismiss be denied in full.

>
> Respectfully submitted,
>
> /s/ Nicholas H. Patton
> _____
> Nicholas H. Patton (SBN: 63035)
> PATTON, TIDWELL & SCHROEDER, LLP
> 4605 Texas Boulevard - P. O. Box 5398
> Texarkana, Texas 7550505398
> (903) 792-7080
> (903) 792-8233 (fax)
> Email: nickpatton@texarkanalaw.com
>
> Patricia L. Peden
> LAW OFFICE OF PATRICIA L. PEDEN
> 1316 67th Street
> Suite 6
> Emeryville, CA 94608
> Telephone: (510) 268-8033
> Email: ppeden@pedenlawfirm.com
>
> ATTORNEYS FOR PLAINTIFF

**CERTIFICATE OF SERVICE**

  This is to certify that on this 30th day of July, 2009, a true and correct copy of the foregoing Response to Defendant's Motion to Compel Responses to Cisco System, Inc.'s First Set of Interrogatories was served electronically upon:

| | |
|---|---|
| Richard E. Griffin<br>Charles Babcock<br>Crystal Parker<br>JACKSON WALKER, LLP<br>1401 McKinney<br>Suite 1900<br>Houston, Texas 77010 | Attorney for Defendant Cisco Systems, Inc. |

                    Nicholas H. Patton