# EXHIBIT D

Ward v. Cisco Systems, Inc. et al — Doc. 92 Att. 4
Dockets.Justia.com

IN THE UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF ARKANSAS
TEXARKANA DIVISION

JOHN WARD, JR. §
 §
 § C. A. NO. 08-4022
v. § JURY TRIAL DEMANDED
 §
CISCO SYSTEMS, INC. §

## DECLARATION OF WILLIAM W. FRIEDMAN

I, WILLIAM W. FRIEDMAN, declare and state as follows:

1. My name is William W. Friedman. I am a Senior Corporate Counsel employed by Cisco Systems, Inc. ("Cisco"), the defendant in the above-captioned lawsuit (the "Ward case"). I am over the age of twenty-one years and am competent to make this Declaration, and am authorized to do so by Cisco. Through my personal involvement and information obtained from others in Cisco's Intellectual Property Legal Team, Government Affairs Department, and Public Relations Department, I have knowledge of the facts set forth below, unless otherwise stated, and they are true and correct.

2. I am a graduate of Boston College Law School and was licensed to practice law in California in 2001. I am the in-house lawyer at Cisco responsible for the Ward case and a related lawsuit filed in the United States District Court for the Eastern District of Texas styled *Eric Albritton v. Cisco Systems, Inc., et al.* (the "Albritton case").

3. In the Albritton case, Cisco produced certain documents which are protected from disclosure by the attorney-client privilege and/or the attorney work product privilege, and are recognized as privileged under agreements with counsel for Albritton which provide that the voluntary production of these documents would not be claimed by Albritton or his counsel as waiver of any privilege. True and correct copies of those agreements are attached to this affidavit at Tab 1. Nicholas Patton and Patricia Peden are counsel for John Ward Jr. in this case and are also counsel for Albritton in the Albritton case. In addition, the documents recognized as privileged in the Albritton case are the subject of a protective order which prevents their disclosure to parties or counsel not involved in the Albritton case.

4. I have reviewed the Cisco Submission Log attached hereto at Tab 4, which was compiled by Cisco's outside counsel in the above-captioned lawsuit, and am familiar with its contents. I also have reviewed, and am familiar with, the Court's Order dated July 8, 2009, and filed July 9, 2009, ordering Cisco "to produce to the Court, for *in camera* review, any and all documents which *could be* responsive to plaintiff's interrogatories numbers 5 and 6 and . . . [ordering] that such production shall include, specifically, all documents listed in plaintiff's submission log[.]" The attached Submission Log, this Declaration, and the accompanying documents constitute Cisco's compliance with the Court's July 8, 2009, Order Granting Plaintiff

Declaration of William F. Friedman – Page 1

CISCO RECORD 001267

John Ward, Jr.'s Motion for Order Directing Cisco to Provide Identified Documents to the Court for In Camera Review (document # 75).

5. Cisco employs in-house and outside attorneys for legal counsel and representation in a variety of matters. As part of counsel's duties, other Cisco employees often communicate with Cisco's attorneys for the purpose of obtaining professional advice or services for Cisco. The persons listed on the attached Submission Log as attorneys or legal staff are attorneys or legal staff employed and/or retained by Cisco to provide legal advice and legal services to Cisco. Specifically, the following persons are Cisco employees who provide professional legal advice and legal services to Cisco:

Mallun Yen, Cisco Vice President, Worldwide Intellectual Property (attorney)
Marnie Willhoft (legal assistant to Ms. Yen)
Marta Beckwith, Director, Cisco IP Legal Team (attorney)
Dan Lang, Director, Cisco IP Legal Team (attorney)
Mark Michels, Managing Attorney, Cisco IP Legal Team (attorney)
Richard Renfree, Cisco Litigation Team (paralegal)
Michael Ritter, Senior Corporate Counsel, Cisco IP Legal Team (attorney)
Neal Rubin, Cisco Vice President, Litigation (attorney)
John Corcoran, Senior Director and General Counsel, Linksys (Cisco division) (attorney)
Richard Frenkel, former employee, Director, Cisco IP Legal Team (attorney)

6. In addition, the following law firms and attorneys have been retained by Cisco to provide professional advice and legal services to Cisco, or were consulted in anticipation of litigation by Cisco concerning their possible retention by Cisco to provide professional advice and legal services to Cisco:

**Baker Botts, LLP**
Kurt Pancratz (attorney)
Bart Showalter (attorney)
Jillian Powell (paralegal)
Steve Shortgen (attorney)
Doug Kubehl (attorney)

**McKool Smith, PC**
Garret Chambers (attorney)
Sam Baxter (attorney)

**Quinn Emanuel Urquhart Oliver & Hedges, LLP**
Victoria Maroulis (attorney)
Kevin Smith (attorney)
Charles Verhoeven (attorney)
Katherine Bennett (attorney)
Sayuri Sharper (attorney)

**Day Pitney, LLP**
Michael Bucci (attorney)
Sicilian James (attorney)

**Weil Gotshal & Manges, LLP**
Edward Reines (attorney)
Matthew Powers (attorney)

**McDermott Will & Emery, LLP**
Paul Devinsky (attorney)

**McCarter & English, LLP**
William J. O'Shaughnessy (attorney)

**Winston & Strawn, LLP**
Dan K. Webb (attorney)

7. All of the other persons listed on Cisco's Submission Log are Cisco employees or were Cisco employees at the time the documents listed on Cisco's Submission Log were created and/or distributed, and had authority to solicit legal advice, obtain legal services, or to act on legal advice, on behalf of Cisco, or were communicating with Cisco's lawyers in the scope of their employment to effectuate legal representation for Cisco. Specifically, the following persons had authority to solicit legal advice, to obtain legal services, or to act on legal advice, on behalf of Cisco, or were communicating with Cisco's lawyers in the scope of their employment to effectuate legal representation for Cisco:

Matthew Tanielian, Director, Federal Government Affairs
Paul Redifer, Government Affairs
Michael Timmeny, Government Affairs

Terry Anderson, Public Relations
Robyn Nicole Blum, Public Relations
Penelope Bruce, Public Relations
Jennifer Greeson, Public Relations
Kenneth M. Lotich, Jr., Public Relations
Marc Musgrove, Public Relations
Anita Kirsten Weeks, Public Relations
John Earnhardt, Public Relations
John Noh, former employee, Public Relations

8. The e-mails between Cisco employees and Cisco's counsel listed on Cisco's Submission Log were taken directly from Cisco's server and/or the files of Cisco's attorneys.

9. Other than as described above, the documents listed on Cisco's Submission Log have not been disseminated to any other persons other than Cisco employees and attorneys, including Cisco's counsel in the Ward case.

Declaration of William F. Friedman – Page 3

CISCO RECORD 001269

10. Cisco's counsel and other employees prepare various documents when litigation, or the threat of litigation, arises. Cisco's counsel and other employees prepared such documents that are sought in this lawsuit following the receipt, in August 2006, of an e-mail from Brian Hollander, a member of ESN, LLC ("ESN"), alleging that Cisco was a potential infringer of United States Patent Number 7,283,519 ("the `519 Patent"), which ultimately was issued on October 16, 2007. ESN did in fact file a patent infringement lawsuit against Cisco in October 2007 (the exact date of the filing of that lawsuit being in dispute) (the "ESN case").

11. On February 27, 2008, Ward brought suit on the articles complained-of in this case in Texas state court, although he later dismissed that case and filed this case in federal court. On March 3, 2008, Albritton brought suit on the same articles in Texas state court, and that case was later removed to federal court.

12. Cisco recognized that, no later than August 2006, there was a substantial likelihood of litigation concerning the '519 Patent, and that, no later than April 7, 2008, there was a substantial likelihood of litigation concerning the Patent Troll Tracker blog.

13. The documents listed on the attached Cisco's Submission Log contain communications to Cisco's counsel for the purpose of requesting legal advice or facilitating the rendition of professional legal service; documents prepared by Cisco's counsel containing core opinion work product, ordinary work product, and attorney-client privileged communications; documents from the Albritton case which are privileged, which were acknowledged by counsel for Albritton as privileged, and which are subject to a protective order in the Albritton case (at tab 3); and/or documents prepared by Cisco and Cisco's counsel in good faith in preparation for the litigation at issue as well as other threatened litigation noted above which Cisco reasonably anticipated would ensue.

14. The privilege or privileges, if any, which attach to each document listed on the attached Cisco's Submission Log are noted on Cisco's Submission Log as well as on each document listed in Cisco's Submission Log. All documents marked as "Work Product (opinion)" on the attached Cisco's Submission Log contain Cisco's counsel's mental impressions, conclusions, opinions or legal theories prepared in anticipation of litigation in this case, the ESN case, or the Albritton case. All documents marked "Work Product (ordinary)" are ordinary work product documents, because they were prepared by Cisco or its attorneys in anticipation of litigation. All documents marked "Work Product (ordinary and opinion)" fall into both of the above-explained categories of attorney work product. All documents marked "Attorney Client" are protected by the attorney-client privilege, because they contain communications among Cisco's attorneys, the client and their representatives that were made in confidence for the rendition of legal advice and/or services.

15. The attached Cisco's Submission Log and accompanying documents constitute Cisco's compliance with the Court's July 8, 2009, Order Granting Plaintiff John Ward, Jr.'s Motion for Order Directing Cisco to Provide Identified Documents to the Court for In Camera Review (document # 75). That Order (document # 81) provides, *inter alia*, that Cisco produce to the Court, for *in camera* review, two categories of documents: (1) "any and all documents which *could be* responsive to plaintiff's interrogatories numbers 5 and 6;" and (2) "all documents listed

CISCO RECORD 001270

in plaintiff's submission log." I was the Cisco attorney responsible for collecting the information in response to interrogatories numbers 5 and 6. Those interrogatories read as follows:

INTERROGATORY FIVE:

> IDENTIFY ALL information relied upon by Richard Frenkel in making the statements contained in the Troll Tracker October 17, 2007, October 18, 2007 and revised October 18, 2007 posts, and separately and for each piece of information IDENTIFY the DATE and TIME the information was received by Frenkel, IDENTIFY all DOCUMENTS CONCERNING the information received, IDENTIFY ALL PERSONS involved in the information received, IDENTIFY the nature of any COMMUNICATION involved INCLUDING the DATE, TIME, and ALL PERSONS involved in the COMMUNICATION, and IDENTIFY all DOCUMENTS CONCERNING that COMMUNICATION.

INTERROGATORY SIX:

> IDENTIFY the DATE and TIME that CISCO first became aware that ESN claimed that the filing date of the complaint as listed on the court's docket was an error and DESCRIBE the circumstances under which CISCO obtained that knowledge INCLUDING ALL PERSONS involved, all COMMUNICATIONS involved and separately and for each COMMUNICATION the DATE, TIME, ALL PERSONS involved, the content of the COMMUNICATION, what prompted the COMMUNICATION, the form of the COMMUNICATION, and IDENTIFY ALL DOCUMENTS CONCERNING CISCO's knowledge.

15. With respect to interrogatory number 5, no Cisco employee other than Rick Frenkel (now a former employee), wrote, edited, or reviewed the internet articles or posts which are the subject of this case, before Frenkel published them. As a result, only Frenkel could have relied on documents in preparing the articles. To provide a complete answer to interrogatory number 5, I consulted with Frenkel to determine what information, including documents, he relied upon in preparing the articles. Mr. Frenkel made a Declaration setting forth the materials that he relied on in preparing the articles at issue in the case; a copy of that Declaration is attached hereto at Tab 2.

16. With respect to interrogatory 6, as Cisco stated in its response, Cisco first became aware that ESN claimed that the filing date of the complaint as listed on the court's docket was an error when Cisco was served with ESN's Motion to Enjoin filed on October 18, 2007. None of the documents tendered to the court *in camera* reveal when Cisco first learned that ESN was claiming that the filing was in error. There is one document, Cisco Privileged.000005, which discusses a conversation a Baker Botts paralegal had with a clerk of the court where it was reported that Eric Albritton, *not ESN*, was claiming that the filing was in error. That communication was disclosed in the answer to the interrogatory.

17. Based on the information received from Frenkel, and the documents themselves, Cisco believes that "documents listed in plaintiff's submission log" is a category of documents which includes documents which *could not possibly be, and are not,* responsive to plaintiff's

**Declaration of William F. Friedman** – Page 5

CISCO RECORD 001271

interrogatories numbers 5 and 6. Accordingly, to further assist the Court in its review of these documents, Cisco has noted on Cisco's Submission Log as well as on each document listed in Cisco's Submission Log, the reason or reasons, if any, why each document listed on the attached Cisco's Submission Log could not be responsive to plaintiff's interrogatories numbers 5 and/or 6.

18. I declare under penalty of perjury that the foregoing facts are true and correct.

Signed this 14th day of July at San Jose, California.

WILLIAM W. FRIEDMAN