IN THE UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF ARKANSAS
TEXARKANA DIVISION

JOHN WARD, JR.                    §
                                  §
                                  §      C. A. NO. 08-4022
v.                                §      JURY TRIAL DEMANDED
                                  §
CISCO SYSTEMS, INC.               §

**DEFENDANT CISCO SYSTEMS, INC.'S MOTION TO COMPEL RESPONSES TO
CISCO SYSTEM, INC.'S FIRST REQUEST FOR PRODUCTION AND BRIEF IN
SUPPORT THEREOF**

TO THE HONORABLE DISTRICT COURT JUDGE:

Cisco System, Inc. ("Cisco") hereby files its Motion to Compel Responses to Cisco

System, Inc.'s First Set of Requests for Production as set forth below.

## I.   INTRODUCTION

Plaintiff brought this action on March 13, 2008, claiming that Cisco had published

defamatory articles about him that have damaged his reputation and caused him mental anguish.

Plaintiff claims that the articles accused him of a crime and/or an ethical violation and that they

are so outrageous that he is entitled to mental anguish, reputational and punitive damages for

libel, false light invasion of privacy and the tort of outrage, a tort designed for only the most

heinous of conduct.

On March 30, 2009, Cisco served its First Request for Production on Plaintiff, which was

aimed at discovering essential information relating to Plaintiff's claims and so that Cisco could

prepare for depositions and further discovery in this case.  Ward's served his responses on May

11, 2009 (attached as Exhibit A), which did not include any responsive documents.  Although

Ward later provided a few documents, he has not come close to responding fully to the requests,

Dockets.Justia.com

even failing to produce documents that his co-counsel, Eric Albritton, produced in the *Albritton v. Cisco* case, which Plaintiff has easy access to since he is represented by the same counsel as Albritton. In addition, Ward included many documents on his privilege log that he now admits are not privileged but continues to withhold from production.

On May 12, 2009, counsel for Cisco sent Plaintiff's counsel a letter setting forth the deficiencies in Ward's response, including requesting that Plaintiff remove all blanket and unfounded objections and produce responsive documents. (Exhibit B).

On June 9, 2009, counsel for Cisco and Plaintiff held a meet and confer by telephone, during which Plaintiff's counsel agreed to remove improper objections and that she would serve more complete responses. However, instead of working in good faith to resolve the deficiencies in his responses, Plaintiff served an amended response on June 19, 2009 (the amended answers is referred to herein as "Second Response" and attached as Exhibit C) that failed to remove the baseless objections, made new and untimely objections to the requests, and continued to call the requests "premature," though Plaintiff has had approximately 18 months to investigate his claims, and the discovery period ends on October 1, 2009. More importantly, Ward appears to be withholding documents based on these baseless objections. Indeed, he has failed to produce even a single document concerning his damages.

On multiple occasions in August of 2009, counsel for Cisco again attempted to meet and confer regarding privilege issues. However, the parties have not been able to reach an agreement, thus necessitating this motion. For these reasons, Cisco seeks an order overruling Ward's objections and directing Ward to produce or log all responsive documents, as set forth more fully below, and to produce certain documents that are not privileged.

## II.   ARGUMENT

### 1.   The Court should Overrule Plaintiff's Untimely Objections.

Despite arguing to this Court that blanket objections are not permitted under the Local Rules (see Docket 57 at p. 1 filed on February 13, 2009 claiming that "Cisco's responses… contain a list of blanket objections that violate Fed. R. Civ. P. 33(b) and Local Rule 33.1(b)"), when Plaintiff served his First Response just two months after that filing, his responses contained three pages of 19 separate blanket objections referred to as "General Objections" that purported to apply to every response.   (Exhibit A at pp. 3-5).  Indeed, his response recognizes that these General Objections are ineffective under the Local Rules.  (Exhibit A at p. 3.  "As required by the Local Rules, Plaintiff sets forth his specific objections and responses below.")

When Cisco asked Plaintiff to withdraw these impermissible blanket objections on May 12, 2009, Ward responded by serving "supplemental" objections and responses in a Second Response (Exhibit C) on June 19, 2009, over a month after his responses were originally due, that removed the impermissible "General Objections" but added untimely new objections to his responses.

Ward is not permitted to knowingly violate the rules and turn his own violations into an excuse to add additional, untimely objections.  By failing to object specifically to the requests for production by the due date, Ward waived all other objections and cannot make them now.  FED. R. CIV. P. 34(b)(2); Local Rule 33.1(b) ("blanket objections to … requests for production… will not be recognized.  Objections must be made to the specific… request…")  Indeed, this Court ruled that Cisco waived objections because it made the same objection to several discovery requests.  (Docket No. 60).

Ward should certainly not be permitted to benefit from his failure to make timely objections here where he knowingly violated the discovery rules, then attempted to make additional objections long after the deadline had passed. Moreover, the meet and confer process should not be used to add new objections that were not timely raised. The process is designed to eliminate issues for the Court, not produce new ones. Therefore, the Court should strike all objections that were not properly raised in Ward's First Response because they are untimely and should limit Ward to the specific objections raised in his First Response. *See* FED. R. CIV. P. 34(b)(2).

**2.      The Court should Overrule Plaintiff's "Premature" Objections.**

The Court should overrule all of Plaintiff's blanket, form objections that the requests are "premature." Cisco's requests for production are certainly not premature. Ward filed this case on March 13, 2008 and has had over 18 months to discover his damages and the claims he made in his complaint. The discovery period ends on October 1, 2009, just weeks away. Ward has had more than enough time to discover responsive documents. Moreover, Cisco needs these documents for depositions in this case. For example, Ward has refused to produce any documents concerning his alleged damages in this case. Cisco is certainly entitled to these and other documents before discovery is completed in this case so that Cisco may seek further information and testimony based on the documents. Indeed, Cisco has already lost the valuable opportunity to ask the Plaintiff about these documents without deposing him a second time.

Ward also claims that the requests are "premature to the extent [they] seek documents that may be related to expert reports." This is an improper objection; the expert designation deadline controls the expert report, not documents that "may relate" to experts. *See* FED. R. CIV. P. 34(a)(2)(A); 26(a)(2). Indeed, if that were the case, core documents in every case could be

withheld until expert reports were due, which would improperly delay all discovery. Cisco sought information on the subject matters in the requests for production to gain probative evidence for trial and so that it could conduct further discovery. To the extent Ward is withholding responsive information, he is purposefully thwarting Cisco's ability to conduct such discovery. Moreover, it appears from the Court's orders that the deadline to designate experts has already passed. Accordingly, Cisco requests that the Court overrule Ward's "premature" objections and order Ward to fully respond to each and every request for production. Plaintiff is certainly obligated to amend his discovery in a timely manner if he learns of additional responsive information, but he is not entitled to withhold information simply because he doesn't want to disclose it yet. *See* FED. R. CIV. P. 33(b)(3), 26(e). The Court should therefore order Plaintiff to respond fully to these requests for production.

## 3.     The Court Should Overrule in Part Plaintiff's Privilege Objections

Plaintiff states numerous times that "Per party agreement, documents exchanged between Ward and his counsel need not be included on Ward's privilege log." There is no such agreement. Cisco attempted to reach an agreement that neither party is required to produce or log communications with their attorneys or among their attorneys regarding legal work and case strategy in this litigation, but was unable to reach an agreement on this issue, as Plaintiff maintained that Cisco had to log its privileged documents with some counsel but that Plaintiff did not.

Presumably all responsive documents came from Ward and thus were "exchanged" between Ward and his counsel. Cisco certainly never agreed that Ward was not required to produce documents that were "exchanged" between Ward and his counsel. Therefore, the Court

should overrule all objections based on any alleged "agreement" and order Plaintiff to produce or log all responsive documents as required under the Federal Rules.

Plaintiff has also logged documents in his privilege log (<u>Exhibit D</u>) that he admits are not privileged but has still failed to produce.  Plaintiff has agreed that he is required to produce documents numbered 2, 6 and 13 on his privilege log, yet he has failed to do so despite numerous requests from Cisco's counsel.  (<u>Exhibit E</u>).  Moreover, at least some of the content of document number 14 on the list does not appear to be privileged.  Number 14 states that it is an email "re potential case and comment regarding Troll Tracker post."  (<u>Exhibit D</u>).  Cisco fails to see how a comment regarding the articles at issue in this lawsuit could be privileged when the conversation was not between Plaintiff and his attorneys.  Indeed, Ward could not say at his deposition why this document was privileged.  (<u>Exhibit F</u>).  During its meet and confer, Cisco even offered to allow Plaintiff to redact the portion of the email about seeking legal advice, but Plaintiff still refuses to produce the document, which is certainly relevant.  Ward claims that his professional reputation was injured by the articles at issue, yet this email suggests that someone who was discussing the articles with Ward was seeking his legal advice.

For these reasons, the Court should order Plaintiff to produce immediately the documents he admits are not privileged and order Plaintiff to produce or submit for *in camera* review document No. 14, which appears not to be privileged.

**4.      The Court Should Overrule Plaintiff's Objections that Documents are in Cisco's Custody or Control**

Plaintiff also objects on the basis that the requested documents are not in his custody or control or are in the custody or control of Defendant.  While Cisco does not expect Plaintiff to produce documents that Cisco has already produced in this case, Plaintiff is required to produce all documents in his custody or control that relate to each request and cannot avoid production

with such baseless objections.   Therefore, the Court should overrule this objection and require Ward to either produce the responsive documents or identify them so that Cisco knows what documents Ward claims are responsive and can obtain those documents.

Moreover, it is clear that Ward has custody and control over documents that he appears to be withholding from production.  For example, he has custody and control of documents in the litigation file of ESN, which documents are obviously essential in this case, where Ward claims that the complained-of articles about the ESN litigation are false.  Indeed, Ward has gone to great lengths in his attempts to discover Cisco's documents from the ESN case.  Ward has failed to produce or log even documents that were produced in the *Albritton v. Cisco* litigation, which Ward and his counsel obviously have custody and control over (Ward and Albritton are both represented by Nick Patton and Patricia Peden).  Indeed, this Court held that Cisco had custody and control of non-party Frenkel's documents where Plaintiff had argued that that Cisco had custody through its counsel's representation in the *Albritton v. Cisco* case.  (Docket No. 60).

**5.      The Court Should Order Plaintiff to Respond to Request Nos. 4-5, 9, 11 and 17.**

Request No. 4 asks:

Produce all documents relating to your contention in paragraph 17 of the Complaint that as a result of the complained-of Article, "Plaintiff sustained monetary damage," including all documents relating to the amount of such monetary damages.

Request No. 5 asks:

Produce all documents relating to your contention in paragraph 19 of the Complaint that as a result of the complained-of Article, Plaintiff has suffered "damages to his business," including all documents relating to the amount of such damage.

Request No. 9 asks:

Produce John Ward, Jr. and Ward & Smith Law Firm's tax returns for 2002 through the present.

Request No. 11 asks:

Produce all annual and interim balance sheets, income statements, and statements of cash flow for the Ward & Smith Law Firm for 2002 through the present.

Requests No. 17 asks:

Produce all documents relating to all of Plaintiff's new matters or clients since October 16, 2007, including but not limited to engagement letters concerning such clients and matters.

With respect to these requests, Plaintiff raised the same blanket objections set forth above, which should be overruled. He also objected on the basis that Ward's financial documents are not relevant and responded that he "declines to produce his private financial documents." However, Plaintiff's financial documents are relevant here, where Ward has put both his mental condition and his professional reputation at issue.

Ward intends to argue to the jury that his business reputation suffered and that he suffered mental anguish. Defendant expects that Ward will argue that he is entitled to damages for reputational harm because of lost business because the complained-of articles, though he admits he cannot meet the burden to prove lost income.

Defendant's requests for documents concerning Ward's financial information are reasonably calculated to lead to the discovery of admissible evidence regarding these claims. *See Dunlap v. Midcoast-Little Rock, Inc.*, 166 F.R.D. 29, 30 (E.D. Ark.) (holding that tax returns were relevant to the plaintiff's claims of mental anguish damages because of the plaintiff's claim that he suffered depression due to his inability to work and financial problems caused by the Defendant); *Rogers v. Rogers*, Ca. No. DR200-1602-4, 2007 WL 2713580 (Sept. 19, 2007) (Exhibit G) (holding that records regarding the income and assets of a law firm were relevant where an attorney in the firm had put his earning ability at controversy by filing a motion to reduce child support); *FMC Corp. Inc. v. Helton*, 202 S.W.3d 490, 478 (Ark. 2005) (holding that

the lower court properly permitted cross examination concerning tax returns where the plaintiff alleged emotional distress).

For instance, Cisco expects that records showing Ward's new clients and new cases will show that his business has not suffered but indeed has flourished and that his clients continue to come to him for new litigation matters.  This is relevant and reasonably calculated to lead to discovery concerning Ward's mental anguish claim because it will show that his alleged anguish did not prevent him from working and conducting a successful law practice.  On the other hand, evidence that Ward was struggling financially for reasons unrelated to the complained-of articles may lead to evidence that Ward's alleged mental anguish was caused by something other than the complained-of articles.

The requested discovery is also relevant to Ward's claim that his reputation as an attorney suffered.  The jury is entitled to know that despite Ward's complaint that his reputation as an attorney suffered, in fact his business prospered.   Cisco also expects that Ward's and his firm's financial records will show that he has not lost business but that instead, he has made the same if not more money than preceding years.

According to the American Psychological Association's report on Stress in America for 2008 (Exhibit H), the top ten causes of stress include money, work, health problems affecting one's family, relationships, personal health concerns, and job stability.  Notably, issues related to one's job (money, economy, work, and job stability) occupy four of the top ten causes of stress.  Ward failed to produce any documents concerning his finances.  Ward's refusal to produce any documents relating to these top four causes of stressors deprives Defendant of powerful, probative evidence in its defense.

The financial records of a plaintiff alleging defamation and resulting reputational damages are evidence concerning not only the existence of damages, but also the proper amount of damages. *See Northport Health Services, Inc.*, 158 S.W.3d 164 (Ark. 2004) (Holding with respect to damage to reputation in a defamation case that "[T]he jury was privy to the base pay and experience of [the plaintiffs] and could calculate appropriate damages in connection with the defamation"). Indeed, it is one of the few, if not the only, tangible thing the jury could evaluate to determine whether Ward was indeed damaged. Plaintiff's financial records and records of new clients are thus relevant and discoverable. *See* Fed. R. Civ. P. 26(b).

While most financial records are discoverable merely because they are relevant, some courts have held that tax returns (as opposed to the other records also requested by Cisco) are discoverable only when there is a compelling need for the record—that is, whether the information is "readily obtainable from another source." *See E.E.O.C. v. Ceridian Corp.*, 610 F. Supp.2d 995, 997 (D. Minn. 2008). The Plaintiff has the burden to show that the information in the tax returns is obtainable elsewhere. *Id.* Only upon such a showing can the plaintiff avoid production of the tax returns. *Id.*

Plaintiff cannot meet his burden to show that the information in the tax returns is obtainable elsewhere because Cisco has a compelling need for these documents. Ward has refused to produce any discovery regarding his finances, and his attorneys have claimed that they will not permit Ward or his wife to testify regarding their finances. (Email from Patricia Peden, Exhibit I). Indeed, Ward has refused to produce a single piece of discovery that relates to his claims of "monetary damage" or "damage to his business." Therefore, Cisco does not have an alternative source for Ward's financial information, and Ward therefore must produce his tax returns. *Id.*

Ward's claim that the requests call for privileged information or confidential information of his clients is also unfounded.  Cisco fails to see how any of the requested information is privileged, inasmuch as Ward has claimed that he has lost business and that his professional reputation has suffered.  Cisco is entitled to know the identity of Ward's new clients and the types of lawsuits at issue, including the amount of money at issue.  This information is certainly relevant to Ward's reputation.  Defendant expects that these documents will show that Ward has obtained prestigious new clients and maintained prestigious clients since the complained-of articles and that clients continue to trust Plaintiff in litigation where extremely large sums of money are at stake.  Ward chose to put his finances at issue when he claimed reputational harm in this lawsuit and therefore cannot now complain that this information is too personal.  *See Dunlap*, 166 F.R.D. at 30.

Plaintiff has also alleged that tax returns are not discoverable because of I.R.C. § 6103.  However, that provision prevents the disclosure by the I.R.S., not the person who files the tax return, and thus is inapplicable.  I.R.C. § 6103(a).

For these reasons, the Court should overrule Plaintiff's objections and order Plaintiff to respond fully to Request Nos. 4 and 5, 9, 11, and 17.

**7.     The Court Should Order Plaintiff to Respond to Request for Production No. 10**

Request No. 10 asks:

Produce a copy of the credit card statement that shows the charge for the filing of the Complaint in the ESN lawsuit on October 15 or 16, 2007 and all correspondence with any person regarding such credit card charge.

The objections to Request No. 10 are also improper.  The request is not vague or ambiguous, nor is the request premature.  Indeed, Plaintiff admits that Albritton produced the credit card receipt in the *Albritton v. Cisco* case.  Nor is the credit card receipt outside Plaintiff's

custody or control.  The payment was made in the *ESN v. Cisco* litigation, in which Ward is counsel.  It has been produced by his co-counsel in that case, and therefore Plaintiff's counsel has it since they also represent Ward.  It is certainly in his custody and control.

Moreover, Cisco is entitled to production of this document by Ward for use in this trial. Indeed, Plaintiff has insisted that Cisco re-produce documents in this case that were produced in the Albritton case for the very same reason, which Cisco has done without requiring Plaintiff to incur the expense of a motion to compel and without wasting this Court's time and resources.

The Court should also overrule Plaintiff's objection that correspondence relating to the credit card charge is privileged.  While Defendants do not seek correspondence between Ward and his counsel in this case or among Ward's counsel in this case regarding this litigation, Plaintiff must produce or log any other responsive documents.  He has failed and refused to do so.  The Court should overrule his objections and order him to produce all documents responsive to Request No. 10.

**8.    The Court Should Order Plaintiff to Respond to Request for Production No. 12**

Request No. 12 asks:

Produce a medical authorization for John Ward, Jr.'s medical records (a form is attached).

The objections to Request No. 12 are also not proper.  Ward claims that the documents requested are privileged under ARK. RULE EVID. 503, "highly sensitive," "private," and not relevant.  Accordingly, he "declines to produce the requested documents."

Cisco is entitled to Ward's medical records, including records from his psychotherapists, if any, because he has put his mental condition at issue.  *Schoffstall v. Henderson*, 223 F.3d 818, 823 (8th Cir. 2000).  The Eighth Circuit has held that when medical records are requested in discovery, the proper inquiry is whether those records are relevant.  *Id.*  Where the plaintiff has

placed his or her medical condition at issue by alleging mental anguish, the medical records are relevant and thus discoverable unless the plaintiff provides evidence that the request was intended to harass, embarrass or annoy. *Id.*; *see also Batiste-Davis v. Lincare, Inc.*, 526 F.3d 377, 381 (8th Cir. 2007) (holding that it is appropriate to admit evidence of the plaintiff's previous depression and treatment with electroconvulsive therapy where she claimed her mental anguish was caused by subsequent conduct by the defendant, stating that "It is elementary that a witness may be impeached by contradictory evidence.") (citations omitted). Moreover, the Eighth Circuit has held that any privilege that attaches to records regarding psychotherapy is waived by the plaintiff when he places his medical condition at issue by claiming mental anguish. *Schoffstall*, 223 F.3d at 823.

Mental health information is certainly critical when Plaintiff is seeking mental anguish damages. *See Garrett v. Sprint PCS*, 2002 WL 181364 at *2 (D. Kan. 2002, no pet.) (When a plaintiff seeks damages for mental anguish, "[t]he medical and psychological information sought by… requests for production are relevant as to both causation and the extent of plaintiff's alleged injuries and damages"); *McCarthy v. Se. Pa. Transp. Auth.,* No. CIV. A. 92-7188, 1993 WL 409858, at *2 (E.D.Pa. Oct. 13, 1993, no pet.) ("the medical records sought by Defendants are relevant and may provide evidence concerning whether marital problems were the source of or contributed to Plaintiff's stress which she attributed to the unlawful conduct of Defendants… When she put her stress at issue in this lawsuit, however, she abandoned whatever privacy interest she had in keeping these records confidential").

Plaintiff's medical records in this case are clearly relevant and discoverable because Plaintiff has put his mental condition at issue by claiming mental anguish. Indeed, Ward's claim for the tort of outrage requires that he prove not just "garden variety" mental anguish but rather

that he suffered mental anguish that was "so severe that no reasonable person could be expected to endure it." *See Schmidt v. Stearman*, 253 S.W.3d 35, 44 (Ark. App. 2007). Cisco is entitled to evidence that Ward's mental anguish was not severe or that it was caused by something other than the articles he complains about.

Moreover, the request is not overly broad because Cisco has already agreed to limit the request to the past four years. (Exhibit B).

Defendant does not intend to harass or annoy Plaintiff as he claims but merely seeks evidence to rebut Plaintiff's claims, as Defendant believes that Plaintiff has not suffered any mental anguish as a result of the complained-of articles. Medical records or testimony regarding medical treatment has proven dispositive of many mental anguish claims because it has demonstrated that the plaintiff's complained-of damages were not caused by the defendant or that the defendant had not suffered compensable mental anguish. *See Schmidt v. Stearman*, 253 S.W.3d 35, 44 (Ark. App. 2007) (testimony by physician demonstrated that the plaintiff was depressed over medical conditions related to diabetes, not just the conduct of the defendant as alleged, resulting in a directed verdict for the defendant on the claim of outrage); *See Kiersey v. Jeffrey*, 253 S.W.3d 438, 442 (Ark. 2007) (holding that testimony that the party in interest's psychiatrist, who the party had seen since he was three years old, had never said that the party suffered any emotional distress and anything of that sort and had never needed to see a psychiatrist or take medication because of the event at issue in the lawsuit negated plaintiff's claim of emotional distress); *Terrell v. Arkansas Trucking Service, Inc.*, 959 S.W.2d 70, __ (Ark. App. 1998) (noting in a case involving Workers Compensation that the plaintiff's medical records demonstrated that his mental anguish was not caused by his workplace injury); *Ross v. Patterson*, 817 S.W.2d 418, 421-22 (Ark. 1991) (noting that testimony from plaintiff's

psychologist showed that her mental anguish stemmed from an event for which the defendant was not liable, not from the complained-of conduct, and dismissing plaintiff's claim of outrage on that basis).  Denying Defendants' motion to compel would deprive the Defendants of this probative rebuttal evidence.

Here, where Ward claims that his mental injury was caused by Defendant, Defendant is certainly entitled to rebut that by showing that (1) there is no such mental injury and (2) if there is such a mental injury, it was not caused by Defendant. *See Clark v. Bakker, D.D.S.*, 1999 WL 349808, Ca. No. 95-976 (Ark. App. May 26, 2006) (affirming admission of medical records to rebut plaintiff's claim that mental anguish was caused by Defendant and stating that "[W]hen a proponent opens the door to a line of questioning, the opposing party may fight fire with fire by introducing rebuttal evidence on that issue.")  Therefore, the Court should order Plaintiff to produce the requested authorization for medical records, including records mental health.

**9.     The Court Should Order Plaintiff to Respond to Request Nos. 13 and 15**

Request No. 13 asks:

Produce all documents relating to the initial filing of the complaint and the filing of the amended complaint in the ESN Texas Case, including but not limited to all correspondence or relating to the initial filing and the filing of the amended complaint in the ESN Texas Case.

Request No. 15 asks:

Produce all documents relating to communications between or among ESN, LLC (including its attorneys, agents, or anyone acting on its behalf) and any other person relating to the filing of the ESN Lawsuit.  Include communications between ESN, LLC, Eric M. Albritton, Amie Mathis, T. John Ward, Jr., McAndrews Held & Malloy, Ltd., and anyone purporting to act on their behalf.

The objections to Request Nos. 13 and 15 (which Ward "declined" to respond to completely) are also not proper.  Ward claims that the requests call for privileged documents between attorneys in the ESN case.  However, Ward failed to identify on his privilege log any

responsive documents.  Ward is certainly required to log responsive communications between ESN and its attorneys.  Ward also complains that the requests would "require Ward to log his entire file for the ESN case on his privilege log... [which is] unreasonable, overly burdensome, and harassing."  Ward's complaint fails because the requests specifically limit the documents requested to those "relating to the filing of the ESN lawsuit."  Indeed, Ward has required that Cisco log documents relating to the same thing in its privilege log, as the Court is aware, and has even moved to compel all of those communications.  Cisco's request is narrowly tailored to lead to the discovery of admissible evidence and therefore is permissible.  FED. R. CIV. P. 26(b)(1). Accordingly, the Court should overrule this objection and order Ward to log all responsive documents as set forth above.

Ward also makes other blanket objections, such as claiming that the request seeks "confidential" and "trade secret" documents and documents protected by a protective order. Cisco fails to see how any of the requested documents are immune from discovery on any basis; Cisco has not requested any "trade secrets" but has limited its request to documents relating to the filing of the ESN case—exactly what Ward has put at issue by filing this lawsuit.

Plaintiff also claims that the request calls for documents that are not within his custody or control.  Plaintiff is counsel for ESN and certainly has custody or control of ESN's documents. Indeed, Ward has claimed in this litigation (and the Court apparently agreed, as it required Cisco to produce the documents of third parties to the Court *in camera*) that Cisco has custody of third parties' documents because counsel has access to those documents because of its participation in the Albritton case.   Similarly, Ward need only access his litigation file to obtain these documents.

Plaintiff's objections that the requested documents are in the public record also fail. While Cisco agrees that Plaintiff may respond by identifying documents in the public record, he cannot avoid responding by simply referring broadly to all public information.

### 10.   The Court Should Order Plaintiff to Respond to Request No. 14

Request No. 14 asks:

Produce all documents relating to communications with the United States District Court or any of its employees (including clerks) regarding the filing of the ESN Lawsuit and/or whether subject-matter jurisdiction existed in the ESN Lawsuit.

The objections to Request No. 14 are also not proper. Communications with the U.S. District Court or any of its employees could not be privileged or work product by definition. Moreover, as set forth above, to the extent there were any responsive privileged communications among ESN's attorneys, those communications are required to be logged in Cisco's privilege log.

Moreover, the request is not overly broad because it is specifically limited to the filing of the ESN Lawsuit and/or whether subject-matter jurisdiction existed in the ESN Lawsuit, which inherently limits the question in scope and time.

Nor is it a proper objection to refer to documents that are a matter of public record without identifying the responsive documents, as set forth above.

Plaintiff's objections make it unclear whether he is withholding or refusing to log responsive documents. Therefore Cisco requests that the Court overrule Ward's objections and order him to produce or log all responsive documents.

### 11.   The Court Should Order Plaintiff to Respond to Request No. 18

Request No. 18 asks:

Produce all documents that show or tend to show the truth or falsity of any statement in the complained-of articles.

The objections to Request No. 18 are not proper.  The blanket objections are improper as set forth above.  Ward's privilege objections are improper except to the extent they are limited to privileged communications in this case as set forth above.

Ward's objection on the basis that the request calls for documents in the public domain that are "available from the Court's website, available from the Internet Archive or 'Wayback Machine'" is improper.  Ward is required to either produce the documents or identify them with particularity.  Ward also cannot avoid production by referring to "documents produced in the *Albritton v. Cisco* litigation" without identifying the documents he is referring to.

The request is also not objectionable on the basis that it requires Ward to "make judgment calls" about what shows the truth or falsity of the articles, an essential issue in this case.  Indeed, that is a central purpose of discovery—to allow the parties a chance to discover the evidence that relates to the other parties' allegations.  The Court should therefore overrule Ward's objections and order him to respond fully to Request No. 18.

## 12.    The Court Should Order Plaintiff to Respond to Request Nos. 23-25

Request 23 asks:

Produce a video or other electronic copy of all instances in which John Ward, Jr. has served as a guest commentator or speaker at any seminar, event or meeting relating to patent litigation or practicing law in the Eastern District of Texas.

Request 24 asks:

Produce a copy of all brochures and materials provided at seminars at which John Ward, Jr. has spoken.

Request 25 asks:

Produce all articles written by you (alone or with a co-author) in the past five years.

The objections to Request Nos. 23-25 are also improper. Ward does not dispute that these requests are relevant to his status as a public figure. He does object, however, on the basis that the responsive items were not in his custody or control, are a matter of public record or imposes obligations beyond the Federal Rules of Civil Procedure, orders in this case, and local rules (he fails to say how). He also objects on the basis that the request is overly broad. His response makes it unclear whether he is withholding responsive documents or things on the basis of these objections.

Ward's objections are unfounded. To the extent there are responsive documents in the public domain, Ward must either identify them with particularity so that Cisco can obtain them or produce them. Nor is the request overly broad. The request specifically limits articles to those written in the past five years, and certainly Ward keeps a copy of such items. Moreover, it is not burdensome for Ward to produce copies of the items in his custody and control and to identify responsive items in the public domain, of which he has particular knowledge.

Accordingly, the Court should overrule Ward's objections and order him to produce the responsive documents.

## 12. The Court Should Order Plaintiff to Respond to Request Nos. 26 and 26 (incorrectly numbered)

Request No. 26 asks:

Produce all documents relating to any efforts by you to influence patent reform, including but not limited to all documents relating to trips to Washington D.C. or phone conversations to communicate with legislators or their staff.

Request No. 26 (incorrectly numbered) asks:

Produce all documents relating to any efforts by you to influence any legislation, including but not limited to all documents relating to trips to Washington D.C. or phone conversations to communicate with legislators or their staff.

The objections to Request No. 26 and the second Request No. 26 (incorrectly numbered) are also unfounded. Ward's lobbying efforts or efforts to influence patent reform are relevant to his status as a public figure and to Ward's apparent claim that Cisco's lobbying efforts with respect to patent reform are somehow nefarious. It would be quite relevant to show that Ward was doing the same thing that he claims is egregious. Moreover, evidence concerning Ward's efforts to influence legislation after the articles were published could lead to the discovery of admissible evidence concerning lobbying that took place before the complained-of articles were published. Ward claims privilege, yet he has not logged any documents in his privilege log that relate to this issue, nor does he explain how his lobbying efforts could be privileged. Ward's other objections are also unfounded; the request is narrowly tailored to lead to the discovery of Ward's lobbying efforts regarding the specific issue of patent reform, which has claimed is relevant to this lawsuit and which is relevant to his status as a public figure. Cisco does not believe the request is broad enough to cover Ward's voting history and agreed during the meet and confer that it was not requesting this information. (Exhibit B).

Nor can Ward avoid the request by claiming that it is "vague and ambiguous" by "impermissibly shifting the burden to Plaintiff to interpret what documents are responsive to Defendant's request." Every discovery request requires the opposing party to interpret what documents are responsive to discovery requests; this is not a proper objection under the Federal Rules. Ward also cannot claim that the request is "not limited to a reasonable time period." In meet and confer sessions regarding this request, Cisco agreed to limit the request to the past four years. (Exhibit B).

For these reasons, Cisco requests that the Court overrule Ward's objections and order Ward to produce or log all responsive documents.

### III.   CONCLUSION

For the reasons set forth above, Cisco requests that the Court overrule Plaintiff's objections and order Plaintiff to respond fully to all of Cisco's First Request for Production, including but not limited to producing or logging all documents responsive to request numbers: 4-5, 9, 10-13, 14-15, 17-18, 23-26 and 26 (incorrectly numbered).

Respectfully submitted,

JACKSON WALKER L.L.P.


Charles L. Babcock
Federal Bar No.: 10982
Email: cbabcock@jw.com
Richard E. Griffin
Arkansas Bar No.: 63020
Email: rgriffin@jw.com
Crystal J. Parker
Federal Bar No.: 621142
Email: cparker@jw.com
1401 McKinney
Suite 1900
Houston, Texas 77010
(713) 752-4200
(713) 752-4221 – Fax
Kurt A. Schwarz
Jackson Walker L.L.P.
901 Main Street, Suite 6000
Dallas, Texas 75202
Telephone: (214) 953-6000
Telecopier: (214) 953-5822

ATTORNEYS FOR CISCO SYSTEMS, INC.

## CERTIFICATE OF CONFERENCE

On August 26, 2009, counsel for Cisco called counsel for Defendant and discussed this motion. An agreement regarding the relief requested by Cisco could not be reached because Plaintiff opposes a stay of the order. Therefore, this motion is opposed, leaving an open issue for the Court.

On May 12, 2009, counsel for Cisco sent Plaintiff's counsel a letter setting forth the deficiencies in Ward's response, including requesting that Plaintiff remove all blanket and unfounded objections and produce responsive documents.    On June 9, 2009, counsel for Cisco and Plaintiff held a meet and confer by telephone, during which Plaintiff's counsel agreed to remove improper objections and that she would serve more complete responses.  However, instead of working in good faith to resolve the deficiencies in his responses, Plaintiff served amended response on June 19, 2009 that added new objections and did not produce the requested documents.  On multiple occasions in August and September of 2009, counsel for Cisco again attempted to meet and regarding issues in the motion.  However, the parties have not been able to reach an agreement, thus necessitating this motion.

*/s/ Crystal J. Parker*

## CERTIFICATE OF SERVICE

This is to certify that on this _____ day of September, 2009, a true and correct copy of the foregoing was served via electronic mail upon:

Patricia L. Peden
Law Offices of Patricia L. Peden
5901 Christie Avenue
Suite 201
Emeryville, CA 94608
**Attorney for Plaintiff John Ward, Jr.**

Nicholas H. Patton
Patton, Tidwell & Schroeder, LLP
4605 Texas Boulevard
P.O. Box 5398
Texarkana, Texas 75505-5398
**Attorney for John Ward, Jr.**

*/s/ Charles L. Babcock*
Charles L. Babcock