IN THE UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF ARKANSAS
TEXARKANA DIVISION

| | |
|---|---|
| JOHN WARD, JR. § | |
| § | |
| § | C. A. NO. 08-4022 |
| v. § | JURY TRIAL DEMANDED |
| § | |
| CISCO SYSTEMS, INC. § | |

**CISCO SYSTEMS, INC.'S MOTION TO COMPEL RESPONSES FROM
<u>NONPARTY ROBERT CHIAVIELLO, JR.</u>**

TO THE HONORABLE COURT:

Defendant Cisco Systems, Inc. ("Cisco") hereby files this Motion to Compel pursuant to Rules 26, 30, and 37 of the Federal Rules of Civil Procedure and would show the Court the following:

### I. FACTUAL BACKGROUND

Plaintiff John Ward, Jr. is an attorney who, along with attorney Eric M. Albritton, filed a patent infringement lawsuit against Cisco on behalf of ESN, LLC ("ESN"), *ESN, LLC v. Cisco Systems, Inc. and Cisco-Lynksys, LLC*, Civil Action No. 5:07-cv-156-DF-CMC, in the United States District Court for the Eastern District of Texas-Texarkana Division (the "ESN Litigation"). In this case, Ward sued Cisco for defamation, alleging that a Cisco employee, Richard Frenkel, published articles on the Patent Troll Tracker blog that falsely accused Ward of conspiring with a court clerk to alter the filing date of the complaint in the ESN Litigation. Ward claims that the alleged defamation damaged his reputation. Specifically, he alleges that Frenkel's statements "expose Plaintiff to public hatred, shame, and ridicule, have harmed his reputation, and have caused Plaintiff mental anguish." Plaintiff's First Amended Complaint

(Doc. #66), ¶ 35, at 9.  Plaintiff also alleges that he "has and will in the future be seriously injured in his personal reputation[.]"  *Id.* ¶ 99, at 23.

In his First Supplemental Disclosures (attached here as Exhibit 1), Plaintiff identified Robert Chiaviello of the law firm Fulbright & Jaworski as a person with knowledge of "damage done to Plaintiff's reputation by Defendant's statements" and "Plaintiff's reputation in the legal community."  Exhibit 1, at 7.  In addition, in his deposition, Mr. Ward testified about Mr. Chiaviello as follows:

> Q.  . . . You say there was another instance . . . where somebody was reporting what somebody else had said?
>
> A.  Right.
>
> Q.  And who was that?
>
> A.  Bob Chiaviello at Fulbright & Jaworski.
>
> Q.  And what did Mr. Chiaviello say?
>
> A.   Same general type of thing.  They were enrolled in a beauty contest, and he brought up that:  Hey, we use Johnny Ward as local counsel.  We could help you out.
>
>  . . . .
>
> And whoever his contact -- and he said it happened on more than one occasion.  He didn't give a client name to me.  He just said that people have said: We've -- we've heard about that guy; we've read about him; we're not going to use him.
>
> And he attributed it to the Patent Troll Tracker specifically.
>
> Q.  Okay.
>
> A.  So I assume that these folks raised the articles to him.
>
> Q.   Okay.  And Chiaviello said that he heard about it from how many clients?
>
> A.   I don't know if it was one or several.  It seems like it was on more -- more than one occasion that he had been trying to land some business and had referenced me by name and --

>    Q.  Okay.
>
>    A.  He did not specify a client, though.
>
>    Q.  Okay.
>
>    A.  And I kind of had the same conversation:  Bob, I hate to put you in this situation, but can I give your name to my lawyers?  Would you be willing to talk to them about what's happened?
>
>    Q.  Uh-huh.  And he -- he said yes?
>
>    A.  He said --
>
>    Q.  Okay.
>
>    A.  -- whatever you need to do.

Exhibit 2 (Ward Deposition), at 84:13-86:5.

Accordingly, Cisco took Mr. Chiaviello's deposition on September 23, 2009.  *See* Exhibit 3 (Chiaviello Deposition Notice and Subpoena).  In his deposition, Mr. Chiaviello repeated the statements he claims that clients made to him about Mr. Ward, but, having revealed the substance of those clients' statements, refused to disclose the identity of the clients or otherwise answer any other questions about them:

>    Q.  Mr. Ward has testified that you told him that there were clients or potential clients, and I believe he's testified that -- that there were -- in his recollection, that this happened more than once, but in any event, that there was at least one client who – who refused to hire Mr. Ward because of the patent troll -- Patent Troll Tracker blogs.  Is that true?
>
>    A.  Yes, sir.
>
>    Q.  And do you recall how many -- first, how many clients or potential clients there were?
>
>    A.  By my recollection, there were three instances.
>
>    . . . .
>
>    Q.  Okay.  And who were those clients?
>
>    MS. COLLINS:  Objection, privileged.

    A.  Yeah, I'm not going to reveal the names.

    Q.  (BY MR. SCHWARZ)  Okay.  When did these -- when did these events occur?

    A.  My recollection is it was at the end of 2007, early part of 2008.

    Q.  Without naming the clients -- let me back up for a moment.  Let's just make sure our record's clear.

    Would you please name those clients for us?

    MS. COLLINS:  Objection, privileged.

    A.  I will not name the clients.

    Q.  (BY MR. SCHWARZ)  Okay.

    MR. SCHWARZ:  Are you instructing your client not to answer the question?

    MS. COLLINS:  Yes, sir.

    MR. SCHWARZ:  Okay.

    Q.  (BY MR. SCHWARZ)  Did these clients -- if -- did any of these clients say that they did not want to retain Mr. Ward solely because of the Patent Troll Tracker blogs?

    A.  In all three instances, that was identified as the reason, yes, sir.

    Q.  When you said "the reason," was it the only reason?

    A.  To the best as I recall, that was the stated reason.

    Q.  Okay.  Did you try to convince them otherwise?

    A.  Yes, sir.

    Q.  Okay.  And could I ask you first what it was that they said was their reason for not wanting to retain Mr. Ward?

    A.  Well, again, I -- the specific communication is privileged, and I don't remember the exact – exact words.  But in all three instances, there was – there was mention of these statements and the concern about Mr. Ward being somebody to -- a concern about his honesty and their willingness to have him act as their attorney.

> Q. Okay. And what did you tell them, to the extent that you can, to disabuse them of the notion that there was a problem with Mr. Ward's integrity?
>
> A. Well, again, in all three cases, I was outraged and tried to defend Mr. -- Mr. Ward's integrity. But in those cases, I was unsuccessful.
>
> Q. Okay. Did you say that the blogs were untrue?
>
> A. Yes.

Exhibit 4 (Chiaviello Deposition), at 58:1-60:13. Later in his deposition, Mr. Chiaviello testified as follows:

> Q. . . . And could I ask you to describe any other instances where you heard of something or otherwise received information that suggested that Mr. Ward's reputation had been – had been injured or diminished in any way?
>
> A. You know, in -- as a result of your questions, I do recall another instance where we gave a presentation to a client and had recommended Mr. Ward and received a very harsh response. And it was very -- it was a troubling meeting because one of my colleagues mentioned to me later that I was probably too aggressive in trying to defend him in that meeting.
>
> Q. Did anyone in -- well, first, let's run through this. Would you please identify the folks that you were speaking with?
>
> A. I will not. It's a client of the firm.
>
> Q. Okay. And so you're invoking privilege?
>
> A. Yes, sir.
>
> Q. Okay. You said there was a harsh response and that it was -- it was a troubling meeting. Did anyone in that meeting make reference to the Patent Troll Tracker blog?
>
> A. As I'm recalling it now, yes, sir.
>
> Q. And could you tell us what was said about the Patent Troll Tracker blog?
>
> A. Again, without disclosing a privileged communication, it was cited again as an authority for -- a reason for not wanting Mr. Ward to be on the trial team.
>
> Q. And I believe you said that you defended Mr. Ward's reputation in that meeting?

>    A.  I was -- I was, again, truly outraged by it.
>
>    Q.  I take it Mr. Ward was not retained in that case?
>
>    A.  That's correct.
>
>    Q.  Okay.  I just want to make sure.  I don't think we had covered that -- that small detail.
>
>    So that makes a total of four clients who have declined to retain Mr. Ward?
>
>    A.  Yeah.  And just to be specific, one of them is not a client.  It was a -- it was another lawyer who would -- who we were investigating co-counsel together.
>
>    Q.  Okay.  But someone had come to you with the intention of at least possibly retaining your services and those of Mr. Ward?
>
>    A.  That's correct, yes, sir.
>
>    Q.  Okay.  Can you think of any other instances, now that we've gone through those four, where anyone has declined to retain Mr. Ward?
>
>    A.  No, sir.

Exhibit 4 (Chiaviello Deposition), at 76:22-78:21.

The only stated grounds for Mr. Chiaviello's refusal to answer these question is attorney-client privilege.  Mr. Chiaviello's refusal to answer questions about conversations with clients (or a potential client) is improper and without legal basis, in light of the fact that he has voluntarily disclosed the substance of his clients' statements, and his responses to those statements.  The information sought by Cisco is not privileged, so Mr. Chiaviello should be compelled to answer Cisco's legitimate questions.  Furthermore, having voluntarily waived any privilege which could have existed, Mr. Chiaviello cannot refuse to answer questions about the conversations he voluntarily disclosed.

## II.   ARGUMENT AND AUTHORITIES

### A.   The Information Sought is Relevant and Discoverable.

Under the Federal Rules of Civil Procedure, a party may obtain discovery from a non-party through a subpoena. FED. R. CIV. P. 45(a)(1)(D). The scope of discovery from a non-party is the same as the scope of discovery from a party under Rule 26(b)(1) of the Federal Rules of Civil Procedure. *Hussey v. State Farm Lloyds Ins. Co.*, 216 F.R.D. 591, 596 (E.D. Tex. 2003). Thus, a non-party is subject to discovery "regarding any matter, not privileged, that is relevant to the claim or defense of any party," and the information sought need not be admissible at trial as long as "the discovery appears reasonably calculated to lead to the discovery of admissible evidence." FED. R. CIV. P. 26(b)(1); *see Hussey*, 216 F.R.D. at 594 (applying Rule 26(b)(1)'s discovery standard to a non-party subpoena).

The Federal Rules of Civil Procedure create a "broad right to discovery" because "wide access to relevant facts serves the integrity and fairness of the judicial process by promoting the search for truth." *Shoen v. Shoen*, 5 F.3d 1289, 1292 (9th Cir. 1993). The question of relevancy is construed "liberally and with common sense," and discovery should be allowed unless the information sought has absolutely no conceivable bearing on the case. *Soto v. City of Concord*, 162 F.R.D. 603, 610 (C.D. Cal. 1995). Indeed, a relevant matter is "any matter that bears on, or that reasonably could lead to other matters that could bear on, any issue that is or may be in the case." *Oppenheimer Fund, Inc. v. Sanders*, 437 U.S. 340, 351 (1978).

Under the Federal Rules of Civil Procedure, the information sought by Cisco's questions to Mr. Chiaviello is relevant and discoverable. Mr. Ward has put his reputation at issue in this case. Mr. Chiaviello has on at least two occasions – first when he conveyed the information to Mr. Ward, then in his deposition – disclosed the substance of his conversations with clients (and

potential client). Mr. Chiaviello has also disclosed that he told these clients (and potential client) that Mr. Ward is an honorable person and that the statements made about him by Mr. Frenkel were untrue, as well as other matters about litigating cases in the Eastern District of Texas. Cisco is entitled to depose those clients, and the potential client, to further explore what they said and whether they, in fact, declined to hire Mr. Ward because of anything Mr. Frenkel said on the patent Troll Tracker blog. Mr. Chiaviello cannot hide the identity of his clients (and potential client) by invoking an attorney-client privilege which does not cover the information sought by Cisco and which Mr. Chiaviello voluntarily waived.

### B.     The Information Sought is Not Privileged.

The attorney-client privilege does not cover all communications between a client and his or her attorney; rather, it extends only to *confidential* communications from a client to his or her attorney. The United States Supreme Court has defined "confidential communications" as encompassing "only those disclosures necessary to obtain informed legal advice which might not have been made absent the privilege." *See Fisher v. United States,* 425 U.S. 391, 403, 96 S.Ct. 1569, 1577. Accordingly, the identity of a client falls outside the privilege. *See In re Grand Jury Proceedings (85 Misc. 140),* 791 F.2d 663, 665 (8th Cir.1986); *United States v. Sindel*, 53 F.3d 874, 875 (8th Cir.1995); *In re Berkley & Co.,* 629 F.2d at 552. Furthermore, none of the questions asked of Mr. Chiaviello by Cisco concerned confidential information, or information which would not have been disclosed but for the privilege – as evidenced by Mr. Chiaviello's voluntary disclosures of the substance of his conversations with his client and potential client. In addition, the information sought by Cisco cannot seriously be deemed to be privileged – all Cisco wants to know is whether the undisclosed entities actually read Mr. Frenkel's blog and, if

they did, whether it impacted their view of Mr. Ward or willingness to hire him; and their response to Mr. Chiaviello's defense of Mr. Ward.

Because the information sought by Cisco is not privileged and is highly relevant to the allegations in this case, the Court should grant Cisco's Motion to Compel, overrule Mr. Chiaviello's assertion of the attorney-client privilege, and compel him to answer Cisco's questions about Mr. Ward, his reputation, and litigating cases in the Eastern District of Texas.

**C.      Mr. Chiaviello Waived Any Privilege Which May Have Existed.**

Mr. Ward put his reputation at issue in this case by claiming that Cisco damaged his reputation.  Mr. Chiaviello voluntarily disclosed information obtained from his clients which is relevant to Mr. Ward's claim that his reputation has been damaged, but he refused to disclose the identity of his clients (and potential client), notwithstanding the fact that by disclosing the substance of the attorney-client conversations, he waived any privilege which may have attached to them.  "The attorney/client privilege is waived by the voluntary disclosure of privileged communications, and courts typically apply such a waiver to all communications on the same subject matter."  *PaineWebber Group, Inc. v. Zinsmeyer Trusts Partnership*, 187 F.3d 988, 992 (8th Cir. 1999), *citing United States v. Workman*, 138 F.3d 1261, 1263 (8th Cir.1998). "Voluntary disclosure of attorney client communications expressly waives the privilege.  The waiver covers any information directly related to that which was actually disclosed." *Workman*, 138 F.3d at 1263 (8th Cir.1998) (citations omitted).

Here, Mr. Chiaviello volunteered allegedly privileged information from discussions he had with his clients and a potential client about Mr. Ward, his reputation, and litigating cases in the Eastern District of Texas.  Any privilege which may have attached to communications Mr.

Chiaviello had with his clients about Mr. Ward, his reputation, and litigating cases in the Eastern District of Texas, has been waived by Mr. Chiaviello's voluntary disclosures.

Because Mr. Chiaviello waived any privilege which may have attached to the information sought by Cisco, that information is no longer privileged, and the Court should grant Cisco's Motion to Compel, overrule Mr. Chiaviello's assertion of the attorney-client privilege, and compel him to answer Cisco's questions about Mr. Ward, his reputation, and litigating cases in the Eastern District of Texas.

### III.   CONCLUSION

For the reasons set forth above, Cisco requests that the Court grant Cisco's Motion to Compel, overrule Mr. Chiaviello's assertion of the attorney-client privilege, and compel Mr. Chiaviello to answer Cisco's questions about Mr. Ward, his reputation, and litigating cases in the Eastern District of Texas, including the identities of the clients and potential client to which he alluded in his deposition. Cisco also requests such further relief to which it may be justly entitled.

                Respectfully submitted,

                JACKSON WALKER L.L.P.

                By: /s/ Kurt Schwarz
                    Charles L. Babcock
                    Federal Bar No.: 10982
                    Email: cbabcock@jw.com
                    Crystal J. Parker
                    Federal Bar No.: 621142
                    Email: cparker@jw.com
                    1401 McKinney
                    Suite 1900
                    Houston, Texas 77010
                    (713) 752-4200
                    (713) 752-4221 – Fax
                    Kurt A. Schwarz
                    Texas Bar No.: 17871550.
                    901 Main Street, Suite 6000
                    Dallas, Texas 75202
                    Telephone: (214) 953-6000
                    Telecopier: (214) 953-5822
                    Email: kschwarz@jw.com

                ATTORNEYS FOR DEFENDANT
                CISCO SYSTEMS, INC.

## CERTIFICATE OF CONFERENCE

Counsel for Cisco has complied with the meet and confer requirement in Local Rule CV-7(h) as of the date of filing this Motion. On September 28 and 29, 2009, Kurt Schwarz and Crystal Parker, counsel for Cisco, Conferred with counsel for Mr. Chiaviello, who opposes this motion, and counsel for Plaintiff, who neither supports nor opposes the motion. Accordingly, Cisco now seeks the Court's assistance.

Certified this 1st day of October, 2008.

/s/ Kurt Schwarz
Kurt Schwarz


## CERTIFICATE OF SERVICE

This is to certify that on this 1st day of October, 2009, a true and correct copy of the foregoing was served via electronic mail upon:

| | |
|---|---|
| Patricia L. Peden | Nicholas H. Patton |
| Law Offices of Patricia L. Peden | Patton, Tidwell & Schroeder, LLP |
| 5901 Christie Avenue | 4605 Texas Boulevard |
| Suite 201 | P.O. Box 5398 |
| Emeryville, CA 94608 | Texarkana, Texas 75505-5398 |
| **Attorney for Plaintiff John Ward, Jr.** | **Attorney for Plaintiff John Ward, Jr.** |

In addition, this motion was served on counsel for Robert Chiaviello by certified mail, return receipt requested, and electronic mail:

Joni Collins
Fulbright & Jaworski, LLP
2200 Ross Avenue
Suite 2800
Dallas, TX 75201-2784

/s/ Kurt Schwarz
Kurt Schwarz