## IN THE UNITED STATES DISTRICT COURT
## WESTERN DISTRICT OF ARKANSAS
## TEXARKANA DIVISION

| | | |
|---|---|---|
| **JOHN WARD, JR.** | § | |
| | § | |
| **Plaintiff** | § | No.  4:08cv4022 JLH |
| | § | |
| **V.** | § | JURY TRIAL DEMANDED |
| | § | |
| **CISCO SYSTEMS, INC.** | § | |
| | § | |
| **Defendant.** | § | |

### PLAINTIFF'S RESPONSE TO DEFENDANT CISCO SYSTEMS, INC.'S MOTION TO COMPEL RESPONSES TO CISCO SYSTEM, INC.'S FIRST REQUEST FOR PRODUCTION AND BRIEF IN SUPPORT THEREOF

## TABLE OF CONTENTS

**Page(s)**

I.      INTRODUCTION ................................................................1

II.     ARGUMENT .....................................................................1

    A.      Cisco's Certificate Of Conference Misrepresents To The Court
        That Cisco Conferred On The Issues Raised In Its Motion ........................1

    B.      Cisco's Motion To Compel Is Meritless .......................................6

        1.      Ward's Objections Are Not Untimely And Were
            Provided At Cisco's Request ............................................6

        2.      Ward's Premature Objections Are Entirely Proper ........................8

        3.      Ward Has Already Produced The Documents Cisco
            Complains About And His One Remaining Privilege
            Objection Is Well Founded .............................................9

        4.      Ward Is Not Required To Produce Documents Not In
            His Possession, Custody or Control Or That Are Already
            In Cisco's Possession .................................................10

        5.      Cisco's Motion to Compel Responses To Request
            Numbers 4-5, 9, 11, and 17 are Without Merit. ..........................12

            a.      Cisco's Request Nos. 4 & 5 Rest On A Null
                Pleading And Are Moot ......................................12

            b.      Cisco's Motion To Compel Plaintiff's Tax
                Returns And Financial Documents Must Fail
                Because They Are Not Relevant To The Issues
                In This Case And Cisco Cannot Demonstrate The
                "Compelling Need" Necessary To Overcome
                Plaintiff's Right To Privacy .................................14

                i.      Cisco Cannot Demonstrate Clear Relevance
                      And A Compelling Need For Ward's Tax
                      Returns And Financial Documents ..................14

                ii.     Cisco Is Not Entitled To Ward's
                      Confidential And Propriety Client Lists
                      That May Result In The Disclosure Of
                      Confidential Client Information ..................22

i

iii.    The Discovery Cisco Seeks Is Unnecessary,
Unreasonably Cumulative, Overly Broad
And Sought For The Purpose Of Harassing
Ward ........................................................................23

7.    Cisco's Motion to Compel Documents Responsive To
Request No. 10 Is Wholly Unnecessary ........................................26

8.    Cisco Is Not Entitled To An Unlimited Medical Release
To Four Years Of Ward's Medical Records For
Treatment He Has Told Cisco He Did Not Seek ..........................26

9.    Any Concern Cisco Has With Ward's Production of
ESN Documents Is The Result of Cisco's Overly Broad
Requests ........................................................................29

10.    Cisco's Motion to Compel Documents Evidencing
Ward's Communications With The EDTX Court Clerks
Should Be Denied ........................................................32

11.    Ward Has Already Provided A Complete Response to
Request No. 18 ............................................................33

12.    Cisco's Motion to Compel Documents Responsive to
Request Nos. 23 – 25 Should Be Denied .......................................34

12.    Cisco's Motion to Compel Documents Responsive to
Request Nos. 26 and 26 (incorrectly numbered) Should
Be Denied ........................................................................35

III.    CONCLUSION ........................................................................37

## TABLE OF AUTHORITIES

**CASES**                                                      **Page(s)**

*American Bonding Co. v. Morris*, 104 Ark. 276, 148 S.W. 519 (1912) ..................................... 13

*Barton v. Cascade Regional Blood Servs.*, No. C06-5644RBL, 2007 U.S. Dist.
LEXIS 59424, (W.D. Wash., Aug. 6, 2007) ...................................................... 14

*Batiste-Davis v. Lincare, Inc.*, 526 F.3d 377 (8th Cir. Ark. 2008) ............................................. 28

*Broderick v. Shad*, 117 F.R.D. 306  (D.D.C. 1987) .................................................................... 27

*Brown Sheet Iron & Steel Co. v. Maple Leaf Oil & Refining Co.*, 68 F.2d 787 (8th
Cir. 1934) ................................................................................................................ 13

*Camp v. Correctional Med. Servs.*, Civ. Act. No. 2:08cv227-WKW, 2009 U.S.
Dist. LEXIS 12034 (M.D. Ala., Feb. 17, 2009)............................................ 17, 19, 20, 21

*Clark v. Bakker*, 1999 Ark. App. LEXIS 403 (Ark. Ct. App. May 26, 1999) ............................ 28

*Dochniak v. Dominium Mgmt. Servs.*, 2006 U.S. Dist. LEXIS 81200 (D. Minn.
July 26, 2006) ................................................................................................... 28

*Dunlap v. Mid-Coast-Little Rock Inc.*, 166 F.R.D. 29 (E.D. Ark. 1995) .................................... 17

*EEOC v. Ceridian Corp.*, 610 F.Supp.2d 995 (D. Minn. 2008) ....................................... 15, 16, 17

*Ellis v. Price*, 337 Ark. 542, 990 S.W.2d 543 (1999) ................................................................. 18

*Faulkner v. Arkansas Children's Hosp.*, 347 Ark. 941 (2002) ................................................... 27

*FMC Corp. Inc. v. Helton*, 202 S.W.3d 490, 360 Ark. 465 (Ark. 2005) .............................. 17, 27

*Freeman v. Brown Hiller, Inc.*, 102 Ark. App. 76 (Ark. Ct. App. 2008) .................................... 22

*Garcel, Inc. v. Hibernia Nat. Bank*, Civ. No. 01-0772 Sec. "T" (4), 2002 U.S.
Dist. LEXIS 2390 (E.D. La., Jan. 23, 2002) ..................................................... 21, 23, 24

*Garrett v. Sprint PCS*, 2002 U.S. Dist. LEXIS 1914 (D. Kan. Jan. 31, 2002) ........................... 28

*Hilkene v. WD-40 Co.*, No. 04-2253-KHV-DJW, U.S. Dist. LEXIS 52766 (D.
Kan., Jul. 25, 2006).......................................................................................... 20

*HIT Servs., L.P. v. Caddo Energy Co.*, LLC, 2009 U.S. Dist. LEXIS 12235 (W.D.
Ark. Jan. 23, 2009)......................................................................................... 2, 5

*Hutchinson v. Proxmire*, 443 U.S. 111, 135 (1979) .............................................................. 34, 36

*In re Grand Jury Proceedings*, 73 F.R.D. 647 (M.D. Fla. 1977) ................................................. 10

*Kiersey v. Jeffrey*, 253 S.W.3d 438 (Ark. 2007)....................................................................... 28

*McCarthy v. Southeastern Pa. Transp. Auth.*, 1993 U.S. Dist. LEXIS 14419 (E.D.
    Pa. Oct. 13, 1993) ............................................................................................................ 28

*McElroy v. Benefield*, 299 Ark. 112 (1989).............................................................................. 19

*Miles v. Century 21 Real Estate*, No. 4:05-cv-1088 GTE, 2006 U.S. Dist. LEXIS
    67974 (E.D. Ark. Sept. 21, 2006) ........................................................................ 26, 27, 28

*Mitchell v. Potter*, Civil No. 05-5159, U.S. Dist. LEXIS 3801 (W.D. Ark., Jan. 18,
    2007) ................................................................................................................................ 29

*Natural Gas Pipeline Co. of Am. v. Energy Gathering, Inc.*, 2 F.3d 1397 (5th Cir.
    1993) ................................................................................................................................ 15

*Northport Health Servs, Inc.. v. Owens*, 356 Ark. 630, 158 S.W.3d 164, (2004) ...................... 18

*Payne v. Howard*, 75 F.R.D. 465 (D.D.C. 1977)....................................................................... 15

*Premium Serv. Corp. v. Sperry & Hutchinson Co.*, 511 F.2d 225 (9th Cir. 1975).................... 15

*Rogers v. Rogers*, Ca. No. DR200-1602-4, 2007 WL 2713580 (Sept. 19, 2007)...................... 17

*Ross v. Patterson*, 307 Ark. 68 (Ark. 1991)............................................................................. 28

*Schmidt v. Stearman*, 253 S.W.3d 35 (Ark. Ct. App. 2007)..................................................... 28

*Schoenbaum v. E.I. Dupont De Nemours and Co.*, No. 4:05CV01108 ERW, 2009
    U.S. Dist. LEXIS 7208 (E.D. Mo., Feb. 2, 2009)..................................................... 15, 17

*Schoffstall v. Henderson*, 223 F.3d 818 (8th Cir. 2000) ........................................................... 28

*Simpson v. University of Colorado*, 220 F.R.D. 354 (D. Colo. 2004) ........................................ 28

*Spiegelberg Mfg. v. Hancock*, No. 3-07-CV-1314-G, 2007 U.S. Dist. LEXIS
    88987 (N.D. Tex., Dec. 3, 2007) .................................................................................24, 25

*St. Croix Printing Equip., Inc. v. Sexton*, Civil No. 06-4273, 2008 U.S. Dist.
    LEXIS 81918 (D. Minn., Jul. 18, 2008) ............................................................. 15, 18, 23

*State Farm Fire & Cas. Co. v. Benson*, 2008 U.S. Dist. LEXIS 21867 (W.D. Ark. Mar. 19, 2008) ........................................................................................ 13, 18

*Terrell v. Arkansas Trucking Serv.*, 60 Ark. App. 93 (Ark. Ct. App. 1998) .............................. 28

*Terwilliger v. York Int'l Corp.*, 176 F.R.D. 214 (W.D. Va. 1997) ............................. 16

*U.S. v. Gentry*, 119 F. 70 (8th Cir. 1902) .................................................................. 13

*Walker v. Rent-A-Center, Inc.*, No. 5:02CV3, 2006 U.S. Dist. LEXIS 72232 (E.D.T.X., Oct. 3, 2006) .................................................... 15, 16, 17, 21, 23

26 U.S.C. §§ 6103, 7213(a) .......................................................................... 15

Fed. R. Civ. P. 26(b)(1) .................................................................................. 17

Fed. R. Civ. P. 26(b)(2)(C)(i)-(iii) ............................................................ 23, 24, 25

Fed. R. Civ. P. 26(b)(5)(c)(1) ...................................................................... 23

Fed. R. Civ. P. 33(b) ...................................................................................... 6

Federal Rule 37(a)(1)(b) ................................................................................. 1

I.R.C. § 6103 ................................................................................................ 14

Local Rule 7.2 ................................................................................................ 1

Local Rule 7.2(g) .............................................................................. 1, 2, 5, 14

Local Rule 33.1(b) .......................................................................................... 6

## I.    INTRODUCTION

Cisco's Motion to Compel is premature.  Cisco did not meet and confer in good faith to resolve any of the issues raised in its Motion, except one.  Nor had the parties come close to the impasse required by the Local Rules before Cisco was permitted to file its Motion.  As a result of Cisco's rush to brief discovery issues not yet vetted, its Motion fails to narrow and frame the issues for the Court.  Many of the issues briefed by Cisco did not need to be addressed by the Court at all, and motion practice could have been avoided had Cisco complied with its meet and confer obligations.  Cisco's motion should be denied for failing to comply with Local Rule 7.2(g).[1]

On the merits, Cisco's motion fails across the board.  In responding to Cisco's discovery, Plaintiff interpreted Cisco's Requests in good-faith, undertook a reasonable search for documents, and produced responsive documents.  Thus, Cisco's reasonable and valid Requests have been complied with and are not in dispute.  The Requests that remain in dispute are poorly drafted, or grossly overreach the bounds of discovery.  For example, although Ward has not made a claim for lost-profit damages in this case, Cisco seeks an order requiring him to produce his tax returns.  Cisco understands that its quest for Plaintiff's tax returns and other private financial records is an uphill battle because it lost the same battle three times in the Albritton case.  The other document Requests briefed in Cisco's motion are similarly meritless.  Plaintiff respectfully requests that, if the Court reaches the merits of Cisco's unripe motion, it be denied.

## II.    ARGUMENT

### A.    Cisco's Certificate Of Conference Misrepresents To The Court That Cisco Conferred On The Issues Raised In Its Motion

Cisco fails to understand that the meet and confer obligations imposed by Federal Rule 37(a)(1)(b) and this Court's Local Rule 7.2(g) are mandatory and enforced.  Local Rule 7.2 provides in pertinent part:

---

[1] With the exception of Issue No. 3 raised in Cisco's motion for which the parties did have sufficient meet and confer.

1

(g) All motions to compel discovery and all other discovery-enforcement motions and all motions for protective orders *shall contain a statement by the moving party that the parties have conferred in good faith on the specific issue or issues in dispute and that they are not able to resolve their disagreements without the intervention of the Court.* If any such motion lacks such a statement, that motion may be dismissed summarily for failure to comply with this rule.

*HIT Servs., L.P. v. Caddo Energy Co.*, LLC, 2009 U.S. Dist. LEXIS 12235 (W.D. Ark. Jan. 23, 2009) (emphasis in original), attached hereto as Exh. A (denying motion to compel in part for failure to meet and confer as required by Local Rule 7.2(g)).  "Simply demanding compliance with a discovery request does not amount to a good faith effort to resolve a discovery dispute. Further, merely attaching such demands as exhibits to the Motion does not comply with Rule 7.2(g)."  *Id.*  The Rule requires that counsel identify *specific* disputes and then make a good faith effort to resolve those specific disputes before burdening the Court with a discovery motion. When counsel fails to do so, the Court may deny the motion on that basis alone.  *See id.*; Local Rule 7.2(g).

Cisco did not comply with Local Rule 7.2(g).  Cisco's certificate of conference admits as much by failing to include the representations required by the Rule.  Cisco could not tell the Court that the parties had conferred in good faith about the specific issues briefed in its motion because Cisco did not confer with Ward's counsel about those issues before filing its motion.[2] *See* Exh. B (Long Decl.) at ¶ 6.  Instead, Cisco's certificate of conference is carefully parsed to leave the false impression that the "issues in the motion" have been discussed by the parties on "multiple occasions" over a two month time span.  *See* D.E. 101 at 22 (certificate of conference

---

[2] Cisco failed to meet and confer with Plaintiff on the following issues it has briefed to the Court:  (1) The objections contained in Plaintiff's responses after they were supplemented to make Plaintiff's objections more specific at Cisco's request; (2) Cisco's complaint that Plaintiff improperly objected to Cisco's requests as premature after Plaintiff amended his responses; (3) Plaintiff's objections to and position regarding what documents were in his possession, custody and control (4) Cisco's requests for Ward's tax returns and other financial documents; (5) Cisco's request for a copy of the credit card statement showing the charge for the filing of the ESN Complaint; (6) Cisco's request for a medical authorization release form from Ward; (7) documents concerning the filing of the ESN Complaint, including attorney-client communications between Ward and his client, ESN; (8) documents concerning communications with the Eastern District of Texas court clerks; (9) publicly available documents commenting on the filing of the ESN Complaint, (10) documents concerning any instance where Ward has served as a guest commentator, spoken at seminars or written articles; and (11) documents relating to any efforts by Ward to influence patent litigation reform or to influence legislation. *See* Exh. B (Long Decl.) at ¶ 6.

signed by Ms. Parker).  With the exception of point number 3 in Cisco's motion, at no time

before seeking Court intervention did Cisco meet and confer with Plaintiff's counsel about the

specific concerns Cisco has with respect to Ward's supplemental responses.  The elusiveness of

Cisco's representation cannot overcome the facts.

> Cisco's certificate of compliance states:

> On August 26, 2009, counsel for Cisco called counsel for Defendant and discussed this motion.  An agreement regarding the relief requested by Cisco could not be reached because Plaintiff opposes a stay of the order.  Therefore, this motion is opposed, leaving an open issue for the Court.

> On May 12, 2009, counsel for Cisco sent Plaintiff's counsel a letter setting forth the deficiencies in Ward's response, including requesting that Plaintiff remove all blanket and unfounded objections and produce responsive documents.  On June 9, 2009, counsel for Cisco and Plaintiff held a meet and confer by telephone, during which Plaintiff's counsel agreed to remove improper objections and that she would serve more complete responses.  However, instead of working in good faith to resolve the deficiencies in his responses, Plaintiff served amended response [sic] on June 19, 2009 that added new objections and did not produce the requested documents.  On multiple occasions in August and September of 2009, counsel for Cisco again attempted to meet and confer regarding issues in the motion.  However, the parties have not been able to reach an agreement, thus necessitating this motion.

The August 26, 2009 telephone conference referenced in Cisco's certificate did not

address "this motion" as Cisco represents to the Court.  Instead, Cisco called to ask if Ward's

counsel if he would oppose a stay of the Court's Order requiring Cisco to produce documents on

its privilege log for which the Court found waiver.  *See* Exh. C (Aug. 26 email from Ms. Parker

to Ms. Peden).  Counsel for Cisco, Ms. Parker, called to inform Plaintiff's counsel that Cisco was

going to file a motion to stay the Court's Order and wanted to know if Plaintiff opposed the

motion, stating that Cisco needed an answer within 24 hours.  *See id.*  The August 26th call had

nothing to do with the issues raised in Cisco's motion.  Cisco's inclusion of that call in its

certificate of conference demonstrates the lengths it has gone to erect a smokescreen around its

failure to meet and confer.

Cisco's certificate then goes on to discuss meet and confer discussions that occurred surrounding Ward's underlined original responses. Cisco wrote to Ward's counsel stating it wanted more complete responses to its document requests. Ward agreed to, and did, provide supplemental responses to Cisco. There is nothing in this part of the certificate of compliance that discusses any discovery discussions initiated by Cisco _after_ Plaintiff's supplemental responses were served. After Ward served his supplemental responses, it was incumbent on Cisco to bring to Plaintiff's attention any remaining dissatisfaction with his supplemental responses. Thereafter, the parties could have met and conferred to resolve, or at least narrow, the remaining disputes before involving the Court. Cisco made no such effort.

Finally, the Certificate of Conference states "[o]n multiple occasions in August and September of 2009, counsel for Cisco again attempted to meet and [sic] regarding issues in this motion." That statement is also a misrepresentation of the record. Although the parties did have meet and confer discussions in August and September, those were initiated by *Plaintiff* for the purpose of meeting and concerning about *Ward's discovery* to Cisco. At no time during those conferences did Cisco raise the specific issues included in its motion. *See* Exh. B (Long Decl.).

The only issue briefed by Cisco for which the parties met and conferred is Cisco's point number 3, addressing production of four documents from Ward's privilege log. Cisco admits that fact in the body of its motion stating that "on multiple occasions in August of 2009, counsel for Cisco again attempted to meet and confer *regarding privilege issues*." Mot. at 2. Absent from Cisco's statement is any mention of the multiple non-privilege issues it has briefed to the Court. Yet, Cisco's Certificate of Compliance is carefully worded to avoid telling the Court that it only met and conferred on this single issue. Cisco's representation to the Court that it complied with its obligations under the Local Rule is misleading.

This is not the first time that Ward's counsel has been forced to respond to a motion for which Cisco failed to meet and confer. On July 1, 2009, Cisco filed a motion to compel interrogatory responses in which it briefed a host of issues never raised with Ward's counsel during meet and confer. Ward's response identified Cisco's failure to follow the Rules and the

requirement understood by lawyers practicing in this district that discovery issues should not be briefed to the Court until after the parties have attempted *in good faith* to resolve the issues and have reached an *impasse*. *See* D.E. No. 83.  In that instance, like here, not only had the parties not reached an impasse but Cisco failed to bring issues briefed to the Court to Plaintiff's attention before seeking the Court's intervention.  Cisco did not file a reply brief and thus never explained its blatant disregard of Local Rule 7.2(d).

Cisco's continued refusal to follow the Local Rules should not go unaddressed.  This is not a case of no-harm-no-foul.  Because Cisco did not meet and confer, Ward's counsel is forced to devote resources drafting a response to issues that could have been resolved, or at least narrowed, by party agreement.  At the same time, Ward's counsel is sitting through laborious multi-hour meet and confer calls with Cisco's counsel, agreeing to narrow his discovery requests to avoid motion practice, and waiting for replies from Cisco about what it is willing to produce before filing motions to compel with the Court a time consuming process that Cisco gets to avoid by ignoring the rules.  Likewise, Cisco's lack of effort forces the Court to devote substantial resources to resolve unframed and overly broad discovery issues.  Cisco should not be allowed to avoid the time required to narrow and resolve discovery disputes by shifting the burden of narrowing and refining its discovery off of its shoulders and onto the Court's.  Not only can the parties' discovery disputes be resolved without draining the Court's resources, Local Rule 7.2(g) demands that counsel attempt to do so.

The Court's Rule puts counsel on notice that failure to meet and confer may result in a denial of the motion.  *See* Local Rule 7.2(g).  Courts in this district have denied discovery motions for failing to follow that Rule.  *See HIT Servs.*, 2009 U.S. Dist. LEXIS 12235.  Here, Cisco made no attempt to even minimally comply with the Court's Rule.  Thus, Points 1, 2, 4, 5, (six is missing), 7, 8, 9, 10, 11, 12, 12 (improperly numbered) in Cisco's motion should be denied for failure to follow Local Rule 7.2(g).  Only then will Cisco understand that the meet and confer requirement in this Court is not optional.

B.      Cisco's Motion To Compel Is Meritless

1.      Ward's Objections Are Not Untimely And Were Provided At Cisco's Request

Cisco's Motion argues that some unspecified objections in Plaintiff's responses to Cisco's document requests are untimely.  *See* Mot. at 3 (issue no. 1).  Cisco complains that Plaintiff's "general objections," each of which had been incorporated by reference in Plaintiff's specific objections to Cisco's document requests, were improper blanket objections under the Local Rules.  Plaintiff's general objections were meant to state objections that applied to each of Cisco's ill-drafted requests without the redundancy of restating those objections to each request the same approach consistently employed by Cisco in its own discovery responses.[3] Notwithstanding that fact, Plaintiff did not refuse Cisco's request for supplemental responses. After Cisco asked Plaintiff to remove his "general objections," Plaintiff promptly provided supplemental responses that withdrew his "general objections" and included the substance of those timely objections in Plaintiff's specific objection to make clear to Defendant the precise basis of Plaintiff's objections.

There is nothing improper about Plaintiff's supplemental responses that were made in a good-faith effort to identify for Cisco the basis of Plaintiff's objections at Cisco's request. Plaintiff did not "waive" his objections under Fed. R. Civ. P. 33(b), as Cisco contends, because he specifically and timely made his objections in his initial responses.  *See id.* (objections must be made within 30 days and stated with specificity, but not addressing the use of general objections applying to the entire set of discovery responses).

Nor was there anything improper about Plaintiff restating his timely general objections to comply with the Local Rule 33.1(b).  The purpose of the Local Rule in this regard is to ensure

---

[3] Recently, Cisco has taken the same position, making General Objections to Plaintiff's Second Set of Requests for Production because, according to Cisco, Cisco's objections to Plaintiff's Instructions and Definitions applied to all the responses, rather than repeat them for each request, Cisco thought it more efficient to list them as a general objections.  *See* Exh. D at p. 2.  Cisco agreed to amend its responses to withdraw those objections, just as Plaintiff did here.  *See id.*  Certainly Cisco would not agree that by amending its responses to withdraw the general objections, it has waived the right to incorporate those objections into specific responses.  If Cisco wins this point in this motion, it should be bound by the same ruling and any general objection made in its discovery responses should be deemed waived for all purposes and for all time.

that the factual basis of the objection is provided to opposing counsel so that it can evaluate the merit of the objection and then meet and confer in good faith to narrow or define its discovery, if warranted.  It is not, as Cisco contends, a "gotcha" waiver of all objections that were otherwise timely made in the form of general objections.

Cisco understands each of Plaintiff's objections—and it does not contend otherwise—but has not sought to meet and confer about those objections.  Instead, Cisco seeks to punitively waive all of Plaintiff's objections to avoid addressing Plaintiff's legitimate concerns about the deficiencies in Cisco's document requests.  The Local Rule's requirement that objections be made with specificity has been complied with, Cisco knows the factual basis of each of Plaintiff's objections, and the Court has the information needed to evaluate Plaintiff's objections.

Cisco's insistence that Plaintiff cannot supplement his responses in any substantive way without acting in "bad faith" rings hollow in light of the discovery positions Cisco has taken in this case.  Cisco has taken the position that it can discard the substance of its prior discovery responses (not just objections) altogether, even after a court order directing Cisco to provide more complete responses.  *See* D.E. #63 at 2 (Cisco arguing that "[i]t is often the case that discovery responses are amended during legal proceedings.")  Cisco has told the Court that such an approach to discovery is altogether permissible because "[i]t is sometimes the case that lawyers take preliminary positions that the client later decides not to take."  *See id.* at 4 n.5.  Yet Cisco complains when Plaintiff voluntarily supplements his discovery responses—without Court intervention and in response to Cisco's request for supplemental responses—to make his objections clear.  Ward did not act in bad faith.  Rather, he sought to give Cisco more information concerning Plaintiff's objections and the bases upon which those objections rest. Unlike Cisco's own discovery responses, Plaintiff's supplemental responses provided Cisco with more information, not less.

The Court should address Plaintiff's objections the same way the Court considered Cisco's general objections to Plaintiff's discovery, by taking them up in the context of each request.  *See* D.E. #60 at 4 (finding Cisco's objections were not specific, as required by the Local

Rules, but nonetheless considering the objections on an individual basis).  Alternatively, the Court should rule that any time a party in this case makes general objections in its initial discovery responses, those objections are waived for all purposes and for all time, a ruling Cisco would have to live with because it would result in Cisco waiving many of the objections it continues to assert in response to Plaintiff's discovery.

2. Ward's Premature Objections Are Entirely Proper

Cisco's motion misstates the basis of Ward's premature objections.  *See* Mot. at 2 (issue no. 2).  Because Cisco never met and conferred about this issue, it does not understand Plaintiff's position and therefore fails to properly frame the issue for the Court.  To be clear: Ward is not withholding responsive documents currently in his possession based on a premature objection. Ward has made every effort to find and produce the documents Cisco has asked for.[4]  Ward has outstanding document requests from which he may discover additional evidence.  He will supplement his discovery to provide newly found documents to Cisco.  But, to the extent Plaintiff is withholding any documents at this time he is doing so under other valid objections.

Ward's objection that Cisco's requests are premature is intended to cover the production of documents that may be identified or obtained by any expert witnesses retained by Plaintiff. Ward cannot produce those documents now because he doesn't have them.  Only if and when an expert witness finds a document and relies on it for use in his or her expert report would that document be available and discoverable.  If that situation occurs, Ward will produce the document when expert disclosures are due under the Court's scheduling Order.  Until then, Cisco's requests are premature.

Ward had no choice but to include a premature objection in his responses.  If he had not done so he would face the same argument that Cisco raises above that his failure to include the objection (although it wouldn't be applicable at the time of the response) waived the objection for all time.  So, out of an abundance of caution, Ward's counsel asserted the objection to let

---

[4] Of course, some of Cisco's requests are overly broad, preventing Ward from knowing what documents Cisco really wants, but even then he has done his best to search for and produce responsive documents.  If Cisco believes that Plaintiff's good faith efforts were insufficient, it should have identified the specific concern for Plaintiff.

Cisco know that additional responsive documents may be produced after expert reports are due. The objection was intended to give Cisco more information by highlighting that additional documents may become available.  Ward's objection is not an attempt to play games with his discovery obligations.  All other responsive, non-privileged documents for which Ward has not made an otherwise valid objection have been produced, and no document currently in Ward's possession is being withheld on a claim that production is premature.

Cisco cannot refuse to meet and confer about Ward's objections, fail to ascertain the basis of the objections, fail to determine what documents have or have not been produced, and then run to the Court with a vague, overly broad motion to compel.  There is no merit to Cisco's insistence that Plaintiff is opting to withhold documents until he chooses to produce them. Plaintiff understands his discovery obligations and has complied with them.  Cisco's insistence to the contrary is based on an ignorance of Plaintiff's position.

> 3.     Ward Has Already Produced The Documents Cisco Complains About And His One Remaining Privilege Objection Is Well Founded

Cisco's motion complains about four documents withheld on Ward privilege log.[5]  For three of the four documents, Ward agreed to produce those documents to avoid motion practice (the benefit of actually meeting and conferring). Notwithstanding, Cisco moved to compel on that issue because Plaintiff did not produce the documents in the two days between the time his counsel agreed to produce the documents and the date Cisco filed its motion.  *Compare* Exh. E (email dated Sept. 9, 2009 confirming that documents will be produced) with D.E. No. 101

---

[5] Cisco maintains that Plaintiff has insisted that Cisco log documents on its privilege log that he is not willing to log. *See* Mot. 5.  First, it is not apparent to Plaintiff why Cisco raises that issue in its motion when it is only seeking production of four specific documents on Ward's privilege log.  Cisco's rant about the parties' disagreement over who should be included on the privilege log has nothing to do with the documents at issue in Cisco's motion. Second, Cisco's statement of the disagreement is grossly exaggerated.  Plaintiff agreed that neither Cisco nor Plaintiff would be required to log attorney-client privileged communications between the parties *and their counsel in this case*.  Thus, Cisco would not need to log attorney client privilege communications between Cisco and the Jackson Walker lawyers.  Plaintiff would not need to log his communications with Patton, Tidwell & Schroeder and Ms. Peden.  However, Cisco wanted to expand that agreement to include the law firm of Baker Botts and other lawyers, none of whom represent Cisco in this case.  In fact, Cisco has refused to produce documents from Baker Botts by insisting that they are a "third party."  Cisco cannot have it both ways:  either Baker Botts represents Cisco in this case or it does not.

(dated Sept. 11, 2009).  Those documents have since been produced.  Cisco's insistence on briefing this issue is petty.

The one remaining document includes an express statement by the author, who is a client of Mr. Ward's, asserting his attorney-client privilege.  The attorney-client communication privilege asserted does not belong to Mr. Ward, it belongs to his client.  Only the client can waive his attorney-client privilege.  *See In re Grand Jury Proceedings*, 73 F.R.D. 647, 652 (M.D. Fla. 1977) (the attorney client privilege belongs to the client, not the attorney).  Mr. Ward is not free to ignore or waive his client's claim of privilege, and, in fact, is ethically obligated to honor it.[6]  Even if Mr. Ward wanted to disclose the document to Cisco to avoid motion practice, his ethical obligation to his client would prevent him from doing so.  To Plaintiff's knowledge Cisco has not sought to obtain that document from the author.  Instead, it has sought to force Mr. Ward to jeopardize his ethical obligation to his client.  Thus, Cisco's motion must be denied.

4. Ward Is Not Required To Produce Documents Not In His Possession, Custody or Control Or That Are In Already In Cisco's Possession

The crux of Cisco's argument appears to be that Ward failed to produce:  (1) documents contained in ESN's files and (2) documents produced in the Albritton case.

Documents in the ESN case file are publically available to Cisco using the government's Pacer System.  Cisco has told Plaintiff that it will not produce documents responsive to Plaintiff's document requests that are available on Pacer because Cisco doesn't want to pay eight cents a page to download those documents when they are publicly available online.  Plaintiff agreed to let Cisco identify those documents, although it has not yet done so, for Plaintiff to download at his expense.  In the same vein, the ESN v. Cisco case file is equally accessible to Cisco online.

---

[6] An attorney's ethical obligation to maintain client confidences is broader than the attorney-client privilege. Attorneys have an ethical obligation to maintain client confidences, even if they are not privileged.  *See* Canon Four of the ABA Model Code of Professional Responsibility (A lawyer should preserve the confidence and secrets of a client); DR 4-101 of the Mode Code (a lawyer should not knowingly reveal a confidence or secret of his client); ABA Model Rules of Professional Conduct Rule 1.6 (a lawyer shall not reveal information related to the representation of a client).

Other ESN documents reside with ESN's counsel in Chicago, with Mr. Albritton, or with ESN. Cisco has no basis to assert that all ESN documents are located in Ward's office, and factually, that is incorrect. Ward has made a reasonable search of his files and has produced or logged the responsive documents he has. If Cisco wants additional documents, it can obtain those from outside counsel in Chicago, who Cisco has already deposed. They can seek documents from ESN. Cisco already has all the documents Mr. Albritton produced. What Cisco cannot do is serve up overly broad requests for all "ESN documents" and then insist that Ward has not produced some undefined documents that may or may not be in his possession. This is the type of issue that must be discussed, defined and resolved through the meet and confer process that did not occur here.

The same holds true for documents produced in the Albritton v. Cisco case. What documents? Cisco never says. Nor did Cisco raise the issue with Plaintiff before filing its motion to allow him to evaluate the merit of Cisco's accusations. The fact that Mr. Albritton may have documents in his possession concerning the filing of the ESN complaint does not mean Mr. Ward does. Cisco knows that to be true because many of the emails produced in the Albritton case were not sent by or to Mr. Ward. Mr. Albritton is not employed by Mr. Ward, and he is not his agent; he is a third-party. The documents that Mr. Albritton has are third-party documents equally accessible to Cisco. If Cisco has a specific complaint about document it though should have been produced, Cisco should raise that specific issue with Plaintiff, preferably filing a motion. Otherwise, its general accusations not tethered to any specific documents or document requests should be ignored.

Cisco's argument that documents must have been withheld because Mr. Albritton and Mr. Ward have the same counsel is nonsensical. The fact that parties employed the same counsel does not mean they have the same documents. Cisco's document requests seek documents *from Plaintiff*, not Plaintiff's counsel. Thus, the documents Plaintiff's counsel may or may not have as a result of working on a different case for a different client are immaterial to Cisco's requests to

Plaintiff in this case.[7]  The absurdity of Cisco's argument to the contrary is apparent.  Plaintiff could not serve document requests on each of Jackson Walker's clients asking them to produce any information they have about the Troll Tracker Blog and then insist that they comply because Jackson Walker represents both their company and Cisco.  Likewise, Cisco cannot seriously maintain that Plaintiff's counsel's representation of two different clients compels Ward to produce documents he doesn't have.  That is even more the case here where many of the Albritton documents are under a Protective Order and Cisco has demanded that they be destroyed.

Plaintiff is willingly investigate Cisco's complaints about his failure to produce third party documents for which Cisco thinks he has control if he knew what they were.  Plaintiff would work in good faith to alleviate Cisco's concerns so as to avoid motion practice, if it were not too late.  Cisco's motion should be denied.

     5.    Cisco's Motion to Compel Responses To Request Numbers 4-5, 9, 11, and 17 are Without Merit.

        a.    Cisco's Request Nos. 4 & 5 Rest On A Null Pleading And Are Moot

Cisco's Requests No. 4 & 5 seek documents referenced in Ward's outdated and inoperable Original Complaint—a fact that Cisco fails to mention in its motion.  Cisco's Request No. 4 asks Ward to:  Produce all documents relating to paragraph 17 of the Complaint that as a result of the complained-of Article, "Plaintiff sustained monetary damage," including all documents relating to the amount of such monetary damages.  Cisco's Request No. 5 asks: Produce all documents relating to your contention in paragraph 19 of the Complaint that as a result of the complained-of Article, Plaintiff has suffered "damages to his business," including

---

[7] Cisco's reference to this Court's Order directing Cisco to produce documents from Rick Frenkel is not analogous as Cisco's motion suggests.  *See* Mot. at 7.  Rick Frenkel was a Cisco *employee*, Cisco has admitted that he was within the course and scope of his employment at Cisco at the time of the events in question, Cisco's interrogatory responses show that it has been actively working with Mr. Frenkel to produce documents in this case, Mr. Frenkel has served as a Rule 30(b)(6) witness for Cisco, and Plaintiff believes that Cisco is paying Mr. Frenkel's legal expenses in this case.  That is a very different situation than the one Cisco argues here—that Plaintiff is compelled to search for and provide documents produced in a different case by a different Plaintiff.

all documents relating to the amount of such damage.  *See* Mot. at 7.  Paragraphs 17 and 19 referenced in Cisco's requests are paragraphs set forth in Plaintiff's original complaint.

On June 6, 2009, Plaintiff filed an Amended Complaint; a filing that was agreed to by Cisco.  Plaintiff's Amended Complaint withdrew all allegations of damage to his business or any form of lost profit damages.  *See* D.E. 66.  Courts do not "give attention to the previous pleadings," where they have been superseded by an amended complaint. *State Farm Fire & Cas. Co. v. Benson*, 2008 U.S. Dist. LEXIS 21867 (W.D. Ark. Mar. 19, 2008), *citing Brown Sheet Iron & Steel Co. v. Maple Leaf Oil & Refining Co.*, 68 F.2d 787, 788 (8th Cir. 1934), attached hereto as Exh. F.  *See also American Bonding Co. v. Morris*, 104 Ark. 276, 148 S.W. 519 (1912), (an amended complaint "took the place of the original complaint, which thereafter could not be considered a pleading in the case."); *U.S. v. Gentry*, 119 F. 70, 75 (8th Cir. 1902) (the original complaint becomes *functus officio* from the date of the filing of its successor.).

Cisco's motion to compel documents based on a Complaint with no legal effect is misguided.  Plaintiff's Amended Complaint makes clear that he is not seeking to recover damages to his business or lost profit damages.  Plaintiff's responses to Cisco's Request Nos. 4 & 5 expressly disavow any such damages.  *See* Mot. Exh. C at 7-9.  Plaintiff told Cisco during his deposition that he is not seeking to recover damages to his business or lost profit damages. *See* Exh. G (Ward Depo.) at 7:22-24; 86:19-87:7.  Because Cisco's motion to compel responses to its Request Nos. 4 & 5 rests on an inoperative and null pleading, the Court should deny Cisco's motion.  *See State Farm Fire & Cas.*, 2008 U.S. Dist. LEXIS 21867.  To the extent that Cisco seeks documents concerning the damages alleged by Plaintiff in his Amended Complaint, the proper course is to serve document requests based on the operative complaint, rather than trying to compel documents based on allegations that have no legal effect or relevance to this lawsuit.[8]

---

[8] Cisco has had four months since the filing of Plaintiff's Amended Complaint to serve new document requests on Plaintiff but has not done so.

      b.     Cisco's Motion To Compel Plaintiff's Tax Returns And Financial Documents Must Fail Because They Are Not Relevant To The Damages In This Case And Cisco Cannot Demonstrate A "Compelling Need" Necessary To Overcome Plaintiff's Right To Privacy

Incredibly, Cisco asks the Court to force Plaintiff to produce his most sensitive and private financial records (and those of his non-party law firm partners) without having first having ever met and conferred about Plaintiff's well-founded objections to see if a reasonable compromise could be reached.  Cisco's motion admits that Plaintiff's counsel told Cisco on May 12, 2009 that Plaintiff's tax returns and financial information are not relevant to any issue in this case.  *See* Mot. at Exh. I.  Yet, in the ensuing <u>four months</u>, Cisco did not seek to meet and confer a single time about this sensitive issue before filing its motion to compel. *See* Exh.B (Long Decl. at ¶ 6.  Cisco's motion should be denied for failure to comply with Local Rule 7.2(g).

On the merits, Cisco's motion should be denied because Ward's tax returns and financial documents are not relevant and Cisco cannot demonstrate the compelling need required for their disclosure.  Here, Cisco's motion mirrors arguments made and lost by Cisco in the Albritton v. Cisco case.  In Albritton, the Texas Court continually refused Cisco's repeated efforts to force Albritton to turn over his tax returns, balance sheets, income statements, statements of cash flow and documents relating to all new matters generated in his law firm—the same documents Cisco seeks from Ward in this case—finding that Plaintiff's right to privacy outweighed the same relevance arguments advanced by Cisco here.  *See* Exh. H (Cisco's motion to compel in the Albritton case).  This Court should follow the well-reasoned decision from the Eastern District of Texas Court and deny Cisco's motion.  *See* Exh. J (the Court's Orders denying Cisco's motion).

      i.     Cisco Cannot Demonstrate Clear Relevance And A Compelling Need For Ward's Tax Returns And Financial Documents

Congress has guaranteed that federal income tax returns will be treated as confidential communications between the taxpayer and the government, creating a public policy against the disclosure of those returns. *See* I.R.C. § 6103;[9] *See Barton v. Cascade Regional Blood Servs.*,

---

[9] 26 U.S.C. § 6103 provides that tax returns and return information "shall be confidential . . ."  *See Camp v. Correctional Med. Servs.*, Civ. Act. No. 2:08cv227-WKW, 2009 U.S. Dist. LEXIS 12034, at *7 (M.D. Ala., Feb. 17, 2009), attached hereto as Exh. I.  "This code section prohibits officers or employees of the United States from

No. C06-5644RBL, 2007 U.S. Dist. LEXIS 59424, at *2 (W.D. Wash., Aug. 6, 2007) (citing 26 U.S.C. §§ 6103, 7213(a)), attached hereto as Exh. K.  Consequently, "federal courts generally resist discovery of tax returns."  *EEOC v. Ceridian Corp.*, 610 F.Supp.2d 995, 996 (D. Minn. 2008);[10] *Payne v. Howard,* 75 F.R.D. 465, 470 (D.D.C. 1977) (noting that courts have broadly applied a general federal policy against disclosure of tax returns). "Income tax returns are highly sensitive documents; [thus] courts are reluctant to order their routine disclosure as party of discovery."  *Walker v. Rent-A-Center, Inc.,* No. 5:02CV3, 2006 U.S. Dist. LEXIS 72232, at *7 (E.D.T.X., Oct. 3, 2006), citing *Natural Gas Pipeline Co. of Am. v. Energy Gathering, Inc.,* 2 F.3d 1397, 1411 (5th Cir. 1993), attached hereto as Exh. L.

Disclosure is disfavored because "[n]ot only are the taxpayer's privacy concerns at stake, but unanticipated disclosure also threatens the effective administration of our federal tax laws given the self-reporting, self-assessing character of the income tax system." *Id.*; *Premium Serv. Corp. v. Sperry & Hutchinson Co.*, 511 F.2d 225, 229 (9th Cir. 1975) (a public policy against the disclosure of tax returns exists to encourage full disclosure).  Courts have extended the heightened showing of relevance required for production to other "general financial documents" as well. *St. Croix Printing Equip., Inc. v. Sexton*, Civil No. 06-4273, 2008 U.S. Dist. LEXIS 81918, at *16 (D. Minn., Jul. 18, 2008) (refusing to compel the production of general financial documents and tax returns), attached hereto as Exh. M; see also *Walker*, 2006 U.S. Dist. LEXIS 72232, at *9 (requiring showing of relevance tied to claim); Exh. J (E.D. Tex. Order denying Cisco's motion to compel Albritton's tax returns and other financial documents).

Good cause must be shown before tax returns are discoverable.  *See Schoenbaum v. E.I. Dupont De Nemours and Co.*, No. 4:05CV01108 ERW, 2009 U.S. Dist. LEXIS 7208, at *5 (E.D.

---

disclosing the information except under certain circumstances.  While not determinative of [] discovery issue[s], Congress' recognition of the privacy interests associated with tax returns is informative [to the court's decision]. *Id.*
[10] Citing to the same *EEOC v. Ceridian* case, Cisco attempts to minimize this strong judicial policy by indicating that the holding of that case is that "some" courts required a heighted showing before tax returns are ordered produced.  *See* Mot. at 10.  The holding in *EEOC* is much stronger than Cisco insinuates.  In *EEOC*, the Court reviewed case law from the Eighth Circuit, as well as authority from other Circuits, and concluded that cases failing to recognize a right to protect from disclosure tax returns in which a party has a recognized privacy interest were "so dated, and so inconsistent with current authorities on this topic" that they had no persuasive value. *See id.* at *8.

Mo., Feb. 2, 2009), attached hereto as Exh. N.  Tax returns are not discoverable unless the moving party can meet a two-part standard demonstrating that tax returns should be disclosed.[11] Under that standard, Cisco must first show both that Ward's tax returns are relevant to the subject matter of the action.  *See EEOC*, 610 F. Supp. 2d at 997.  If Cisco is able to demonstrate relevance, there must also be a compelling need for the tax returns in that the information contained therein is not otherwise obtainable from another source.  *See id.*

In applying this two-part standard, most courts use a burden shifting test.  *See EEOC*, 610 F. Supp. 2d at 996-97.  The party seeking discovery, here Cisco, has the burden to show that the tax returns are relevant.  *Id*. at 997.  If Cisco can make a sufficient showing of relevance, under the burden-shifting view, the burden then shifts to Ward to show the information contained in the tax returns is available from another less intrusive source.  Other courts hold that the privacy interests at stake require the moving party to demonstrate both relevance and a compelling need, placing the burden squarely on the shoulders of the moving party.  *See Walker*, 2006 U.S. Dist. LEXIS 72232, at * 8 (party seeking disclosure required to show relevance and compelling need); *Terwilliger v. York Int'l Corp*., 176 F.R.D. 214, 216 (W.D. Va. 1997) (the party seeking discovery has the burden to show that tax returns are the best available source).

Cisco cannot show good cause to overcome Ward's legitimate privacy interests. Contrary to the argument in Cisco's motion, this test is not the same "may lead to the discovery of relevant evidence" that is typically applied in the discovery context.  *See* Mot. at 8 (stating that Cisco need only show that Ward's financial documents, including tax returns, "are reasonably calculated to lead to the discovery of admissible evidence.").[12]  Because of the privacy interests at issue, Cisco must show that the tax returns are *clearly* relevant *to the subject*

---

[11] The two-part standard is applied by a preponderance of authorities addressing this issue.  *See EEOC*, 610 F. Supp. 2d at 996-97.

[12] Even if the Court were to apply the ordinary discovery relevance standard, Cisco's motion would fail.  Federal Rule of Civil Procedure 26(b)(1) is highly flexible to accommodate all relevant interests that may arise.  *See Camp*, 2009 U.S. Dist. LEXIS 12034, at *6 (internal citation omitted).  "In particular, considerations of the public interest, the need for confidentiality, and privacy interest are relevant factors to be balanced."  *Id*.  Under this balancing test, Cisco's motion should still be denied because there is a public policy against disclosing tax returns, Ward has a right and need to privacy in his tax returns, and Cisco cannot demonstrate the sufficient relevance to warrant disclosure.

*matter of the action.*[13]  *See Camp v. Correctional Med. Servs.,* Civ. Act. No. 2:08cv227-WKW, 2009 U.S. Dist. LEXIS 12034, at *6 (M.D. Ala., Feb. 17, 2009) (tax returns are ordered produced only when relevance is "clear."); *EEOC*, 610 F. Supp. 2d at 997 (must relate to the subject matter of the action); *Schoenbaum*, 2009 U.S. Dist. LEXIS 7208, at *8 (same); *Walker*, 2006 U.S. Dist. LEXIS 72232, at *8 (same).  Cisco cannot demonstrate that Ward's tax returns are clearly relevant to the issues in this case to merit overriding his privacy interests because Ward has made no claim for lost-profit damages.

Cisco's motion to compel repeatedly states it has a compelling need for Ward's most private financial documents, including his tax returns, because Ward claims to have "lost business because of the complained-of articles."  Mot. at 8.  Ward has clearly and unambiguously told Cisco that he is not seeking to recover lost profit damages or any form of economic damage to his business as a result of Cisco's defamatory statements.  Cisco's motion ignores that critical fact.  Ward's responses to Cisco's Request Nos. 4, 5, 9, 11, and 17 expressly state that Ward amended his Complaint to make it clear to Cisco that he is not seeking lost profit damages.  *See* Mot. Exh. C at 7-9, 15, 17, 25-26.  Ward's responses state that he "filed an Amended Complaint clarifying that he is only seeking to recover general damages, including to his reputation and damages for his mental anguish, and punitive damages."  *See id*.

The scope of discovery is defined by the allegations in Ward's complaint, which makes no claim for lost profit damages.  *See* Fed. R. Civ. P. 26(b)(1).  Plaintiff's binding representation

---

[13] The cases Cisco cites in support of its argument do nothing to support its failed cause.  *See* Mot. at 8-9.  Cisco's reliance on *Dunlap v. Mid-Coast-Little Rock Inc*., 166 F.R.D. 29 (E.D. Ark. 1995) is misplaced.  Courts have expressly disavowed reliance on *Dunlap* for the proposition that tax returns should be produced because, although that Court noted in dicta that tax returns were relevant, it ordered disclosure chiefly because the party resisting discovery did not timely serve objections.  *See* EEOC, 610 F. Supp. 2d at 998 (Dunlap does not advance an analysis regarding the production of tax returns).  Cisco's citation to *FMC Corp. Inc. v. Helton*, 202 S.W.3d 490, 478 [sic] (Ark. 2005) is also problematic.  That case does not discuss the right to discover tax returns, but rather the use of already produced tax returns at trial.  In that case the Plaintiff had claimed that the economic losses caused by defendant caused her emotional distress.  On those facts, defendant was permitted to cross-examine Plaintiff about other times she had been faced with economic losses as demonstrated in her tax returns.  Here, the issue is whether the tax returns are discoverable in the first instance.  *FMC* supports a finding that they are not because Ward has not claimed that Cisco's libelous statements have caused him financial emotional stress.  Finally, *Rogers v. Rogers*, Ca. No. DR200-1602-4, 2007 WL 2713580 (Sept. 19, 2007) is clearly distinguishable.  *Rogers* is a divorce and child support case in which tax returns were needed to determine income.  *Rogers* is not a case where a party has put his income at issue; income was the issue.

that he would not seek lost profit damages should have ended the matter. *See St. Croix Printing*, 2008 U.S. Dist. LEXIS 81918, at *16 (refusing to compel the production of general financial documents and tax returns where Plaintiff represented that it would not claim that its general business reputation had been damaged).  Cisco completely ignores Ward's Amended Complaint to build its argument on the false premise, as it must, that Ward is seeking to recover lost profit damages in this case.  Cisco argues that Ward must produce his financial documents because he has produced no discovery relating to his claims of "monetary damage" or "damage to his business."  *See* Mot. at 10.  The quoted language in Cisco's argument comes from the same paragraphs of Plaintiff's original complaint (paragraphs 17 and 19) relied on by Cisco to compel production of documents in response to Request Nos. 4 & 5 (discussed above).  That complaint is null and void, and Cisco's arguments based on that complaint are baseless.  *State Farm*, 2008 U.S. Dist. LEXIS 21867.  Cisco's argument disingenuously relies on an allegation in an inoperable complaint that is no longer at issue in this case and Plaintiff has specifically disavowed any claim to lost profit damages; a clear indication that Cisco knows that Plaintiff's disavowal of lost profit damages, precludes discovery of his tax returns.

Cisco argues that Plaintiff's financial records are the only evidence of the existence and proper amount of damages to be awarded by the jury.  *See* Mot. at 10.  Cisco's argument appears to be that Plaintiff is required to prove monetary losses before he is permitted to recover reputational damages.  Cisco is wrong.  Although Arkansas law requires Plaintiff to offer facts proving that his reputation has been harmed, the showing required is minimal and Plaintiff's testimony alone is sufficient to establish reputational harm.  *See Ellis v. Price,* 337 Ark. 542, 990 S.W.2d 543, 546 (1999).  Proof of actual out-of-pocket expenses is not required before Plaintiff can recover for harm to his reputation.  *See Northport Health Servs. v. Owens,* 356 Ark. 630, 158 S.W.3d 164, 172 (2004).[14]  The amount of compensation to which Ward is entitled upon proving

---

[14] Cisco cites *Northport Heath Services, Inc. v. Owens*, 356 Ark. 630, 643-44 (2004) as purportedly holding that damages resulting from defamation were permitted only where the jury could calculate a damages number based on lost pay.  *See* Mot. at 10.  But in that case the Court did not say that proof of lost pay was required to prevail on a defamation claim, only that some information to that effect was presented in that particular case.  No lost profit damage need be claimed or proved for Ward to prevail, and he seeks no such damages.

Cisco's liability will be determined by the jury.  *See McElroy v. Benefield*, 299 Ark. 112, 117

(1989) ("[c]ompensation for pain and suffering must be left to the sound discretion of a trial

jury.")

Here, Plaintiff will ask the jury to compensate him for the harm Cisco caused to his reputation.

He will not seek to prove lost profits.  Thus, Cisco's insistence that it needs Plaintiff's financial

records to rebut an argument that will not be made at trial is without merit.

Undeterred, Cisco argues that Plaintiff must produce his tax returns because he intends to

argue to the jury that he has lost business because of the complained-of articles, when in fact his

business has not suffered and he has made more money in the years following the libelous posts

anonymously published by Cisco.  *See* Mot. at 8-9.  Plaintiff's response is two-fold.  First,

Plaintiff could not be clearer:  he does not seek to introduce evidence at trial that he has lost

business because of the complained-of articles.[15]  Second, Cisco does not need Ward's tax

returns to show that he made more money in the years after the defamatory statements were

made.  Ward already provided that information to Cisco during his deposition, which takes away

Cisco's need to obtain his tax returns. *See* Exh. G (Ward Depo.) at 8:8-10; 9:6-12; 14:1-25;

86:19-87:7. Moreover, Plaintiff will stipulate to that fact — a stipulation Cisco would have

known was available if it had met and conferred with Plaintiff's counsel before filing its motion.

Cisco's remaining arguments are far-fetched attempts to find some relevance hook upon

which it can make a "will lead to admissible evidence" argument.  But, as discussed above, it is

not enough for Cisco to argue that Ward's tax returns "may be relevant" or "may lead to relevant

evidence."  Instead, Cisco must demonstrate that the tax returns are clearly relevant.  *See Camp*,

2009 U.S. Dist. LEXIS 12034, at *6.  None of Cisco's arguments come close to demonstrating

relevance.  Cisco arguments include a claim that financial records will prove to the jury that

Cisco's defamation of Plaintiff did not prevent him from working and conducting a successful

law practice (*See* Mot. at 9); that Plaintiff's financial records could reveal that he was struggling

---

[15] Plaintiff will limit his proof to show that others think less of him because of the libelous statements made by
Cisco.  Plaintiff will not argue to the jury that he is entitled to compensation for lost revenue and Cisco is free to ask
the Court to instruct the jury that Plaintiff is not seeking lost-profit damages.

financially for reasons unrelated to the complained-of articles (See Mot. at 9); and that evidence of financial strain is relevant to Plaintiff's mental anguish damages because it may lead to evidence that Plaintiff's mental anguish was caused by something other than the complained-of articles (See Mot. at 9).[16]  Cisco's "may show" arguments are not sufficient to meet its burden of demonstrating relevance.

Cisco's arguments lack the requisite showing of relevance required to compel production of Ward's tax returns and related financial documents.  Increases or decreases in Ward's (and his non-party law firm partners) revenue may result from a myriad of reasons unrelated to the defamation disseminated by Cisco.  Ward has already testified that Cisco's malicious attacks did not prevent him from making a living and that he is making no claim that his law practice has been negatively affected in its finances. *See* Exh. G (Ward Depo.) at 8:8-10; 9:6-12; 14:1-25; 86:19-87:7.  Both Ward and his wife have testified that they are not suffering financial stress. *See* Exh. G (Ward Depo) at 9:6-12; 86:19-87:7; Exh. P (N. Ward Depo) at 8:7-12.  Not only is this "might show" argument insufficient to show the type of relevance needed to compel production of his tax returns, Cisco has no need for that evidence even if it were relevant because it already knows the answer to the questions posed.  *See id.*  Thus, Ward's tax returns and related financial information will provide no additional relevant information.

Cisco's insistence that Ward's private financial records "could reveal" something new is a speculative fishing expedition though Plaintiff's private documents; not the required showing of relevance. The possibly relevant evidence that Cisco thinks Ward's tax returns "could reveal" has either already been produced to Cisco, or is the type of speculation and conjecture that courts have found far too tenuous to warrant the production of tax returns. *See Camp*, 2009 U.S. Dist. LEXIS 12034, at *7-8 (refusing to order production of tax returns based on relevance arguments resting on speculation and conjecture); *Hilkene v. WD-40 Co.,* No. 04-2253-KHV-DJW, U.S. Dist. LEXIS 52766, at * 3 (D. Kan., Jul. 25, 2006) (mere speculation insufficient to compel tax

---

[16] Cisco cites the same "Stress in America" Report that it relied on in the Albritton case to no success.  *See* Mot. at 9; Exh. Q (Cisco's Motion for Reconsideration in the Albritton case).

returns), attached hereto as Exh. Q. The Court should reject Cisco's attempt to manufacture relevance where none exists. Cisco should not be allowed to undertake an unlimited search through Ward's most sensitive documents which are both irrelevant and confidential.  *See Garcel, Inc. v. Hibernia Nat. Bank*, Civ. No. 01-0772 Sec. "T" (4), 2002 U.S. Dist. LEXIS 2390, at *8 (E.D. La., Jan. 23, 2002) (refusing to order production of financial documents), attached hereto as Exh. R.

Even if Cisco could show relevance—and it hasn't—Cisco does not have a compelling need for Ward's sensitive financial information.  When the information sought is otherwise available from the tax payer's testimony or less sensitive sources, the tax returns should not be disclosed. *See Walker*, 2006 U.S. Dist LEXIS 72232, at *9 (denying motion to compel tax returns where information needed was available from party deposition); *Camp*, 2009 U.S. Dist. LEXIS 12034, at *8 (refusing to order production of tax returns where other discovery methods were available to obtain the information sought).  To the extent that Cisco seeks information related to Ward's damaged reputation, that information is available through Ward's testimony and/or is otherwise available from other less-sensitive sources. As discussed above, the information Cisco seeks has already been provided to Cisco through deposition testimony.

Moreover, If Cisco had met and conferred as required, Cisco would have learned that Plaintiff was willing to stipulate that he is not seeking lost profit damages or economic damages to his business as a result of Cisco's defamatory statements.  Plaintiff will stipulate that he made more money in 2008 (the year after he was defamed by Cisco) than he did in 2007 (the date of the defamatory articles).  In fact, he already provided that information to Cisco during his deposition. *See* Exh. G (Ward Depo.) at 8:8-10.  Ward understands that such a stipulation will prevent him from introducing any evidence of lost profit damages at trial.  The stipulation offered by Plaintiff is more than sufficient to provide Cisco with the evidence it claims it needs without forcing Ward to turn over his (and others') highly sensitive financial documents that are not relevant to any of the damages issues in this case.  Thus, Cisco's request for Ward's financial documents should be denied. *See Id.* at *9.

21

ii.    Cisco Is Not Entitled To Ward's Confidential And Propriety Client Lists
That May Result In The Disclosure Of Confidential Client Information

Cisco argues that "[it] fails to see how any of the requested information is privileged, inasmuch as Ward has claimed that he has lost business and that his professional reputation has suffered." *See* Mot. at 11. Cisco's broken logic is apparent. The claims Ward makes in his pleadings (which again don't include lost-profit damages), are separate and district from whether documents are privileged from disclosure. Ward's claim that his reputation has been harmed does not make every document in his law firm files, including those for which his clients have a legitimate expectation of privacy and confidentially, open for Cisco's inspection. Cisco cites no authority for its assertion to the contrary.

Ward is a practicing attorney who actively represents clients. He has an ethical obligation to his clients to keep information about their cases confidential. He has other case obligations in the form of protective orders, settlement agreements, and other confidentially obligations. For some of the clients Ward represents, their cases are in a pre-filing stage. Disclosure of the fact that those clients have sought counsel or have engaged Mr. Ward's legal services, before it is otherwise publically available, would result in serious harm to a myriad of third-parties who have no connection with this lawsuit. Cisco has not shown that Ward's client lists are relevant to any issue in this case, and Ward has already testified his income the year after the accused articles were published did not drop.

Of course, many of Ward's clients are known, as that information is easily accessible on the Court's PACER System. Cisco has already produced a report showing persons and companies represented by Mr. Ward. If it wants to make an argument that he continues to have success and attract substantial business, it has the information it needs. Asking Mr. Ward to disclose a list of all "new matters," whether the client is known, whether the matter is public, or whether the matter has anything to do with patent litigation—the area of law related to the accused articles—seeks to invade Plaintiff's right to keep his otherwise unknown client list as a confidential business trade secret. *See Freeman v. Brown Hiller, Inc.*, 102 Ark. App. 76, 82

(Ark. Ct. App. 2008) (the single most important asset of most businesses is their stock of customers and protection of that asset is a legitimate interest.).  Courts have found that a Plaintiff does not need to disclosure the identity of customers when their identity has no relevance to the subject matter of the litigation.  *See St. Croix Printing Equip.*, 2008 U.S. Dist. LEXIS 81918, at *13-14.  Here, the information Cisco seeks does not merely identify ordinary business customers, as in *St. Croix*, but rather clients who are consulting Ward on sensitive legal matters.  Cisco has not shown any real need for the confidential information it demands.  *See Eglin Fed. Cred. Union v. Cantor*, 91 F.R.D. 414, 416 (N.D. Ga. 1981) (greater showing of need required to order a party to disclose the names of clients not involved in the lawsuit).  On this record, there is no reason to divulge confidential third-party information that is, at best, tangentially related to the issues in this case.

> iii.   The Discovery Cisco Seeks Is Unnecessary, Unreasonably Cumulative, Overly Broad And Sought For The Purpose Of Harassing Ward

All discovery is subject to the limitations imposed by Rule 26(b)(2)(i)-(iii). *See Walker*, 2006 U.S. Dist. LEXIS 72232, at *4. The rules expressly provide that the court "must" limit the frequency or extent of discovery when "the discovery sought is unreasonably cumulative or duplicative or can be obtained from some other source that is more convenient, less burdensome or less expensive" or "the burden or expense of the proposed discovery outweighs its likely benefit, considering the needs of the case, the amount in controversy, the parties resources, the importance of the issues at stake in the action and the importance of the discovery in resolving the issues." *See* Fed. R. Civ. P. 26(b)(2)(C)(i)-(iii).

Further, upon a showing of good cause, the court may issue orders necessary to "protect a party or person from annoyance, embarrassment, oppression, or undue burden or expense." *See* Fed. R. Civ. P. 26(b)(5)(c)(1). Although the discovery rules are given liberal treatment to affect their purpose of informing litigants, those rules have "ultimate and necessary boundaries." *Garcel,* 2002 U.S. Dist. LEXIS 2390, at *8.  The discovery sought must have evidentiary value before an order to compel disclosure of otherwise inadmissible material will issue. *Id.* at *7.

23

Courts have likewise recognized the legal tenet that the rules should not be misapplied so as to allow "fishing expeditions in discovery." *Id.*  In such circumstances, courts will enter a protective order preventing the propounding party from abusing the discovery process. *See Id.* at *8.

Cisco moves to compel Ward to produce his law firm's balance sheets, income statements and statements of cash flows *for every year since 2002*, his firm's federal tax returns for every year *since 2002* and *all documents relating to all of Plaintiff's new matters or new clients since October of 2007*.  Because the discovery Cisco seeks is not relevant to any claim or defense in this case, is unnecessary, unreasonably cumulative and duplicative, unduly burdensome and sought only for purposes of harassment, Cisco's Motion should be denied.

The burden of Cisco's proposed discovery outweighs its likely benefit, considering the needs of the case, the amount in controversy, the parties' resources, the importance of the issues at stake in the action and the importance of the discovery in resolving the issues.  FED. R. Civ. P. 26(b)(2)(C)(i)-(iii). Cisco seeks tax returns and a host of financial documents from *2002 forward*—**five years before Cisco's statements were even made**—and *all documents evidencing new matters opened in Ward's law practice*, "including but not limited to engagement letters." *See* Mot. at 7-8. Cisco's requests are unreasonably over broad both as to the time period involved and in its failure to reasonably narrow its request for Ward's documents.  *See Garcel*, 2002 U.S. Dist. LEXIS, at * 8; *Spiegelberg Mfg. v. Hancock*, No. 3-07-CV-1314-G, 2007 U.S. Dist. LEXIS 88987, at *10-11 (N.D. Tex., Dec. 3, 2007) (refusing to order tax returns and supporting documents produced where the financial information was not "directly related" to damages).

Additionally, the documents Cisco seeks include not only Ward's tax returns and financial information, but the financial information of the partners in his law firm and his wife; none of whom are parties to this lawsuit.  Cisco also seeks Ward's confidential client lists that impacts potentially privileged client information belonging to his clients.  Cisco's weak (at best) relevance argument is outweighed by the over-broad and oppressive nature of requiring Ward to

produce those documents.  Because Cisco's requests are not limited to the financial information directly related to this case its requests should be denied as overly broad.  *See Spiegelberg Mfg.,* 2007 U.S. Dist. LEXIS 88987, at *10-11

The discovery Cisco seeks should also be denied because it seeks to annoy, embarrass or harass Ward.  *See* 26(b)(5)(c)(1). Under the circumstances presented here, where Ward has stated that he will not claim damages for loss in income, Cisco's instance on unlimited access to six years of his financial records is vexatious and harassing. Few governmental agencies have as much access to personal information as does the IRS.  The tax returns Cisco seeks may contain not only highly sensitive information about Ward's revenue, but also his gifts to charity, the charities he supports, his religious affiliation, property he owns, bad debts he has incurred, the amount of interest he pays on his mortgage, political contributions, payment and benefits provided to employees, including sick pay, vacation pay and bonuses, medical expenses incurred by family members, his investment choices, retirement accounts, bank accounts, membership dues paid to various organizations, college accounts set up for his children, and a many other indications of private data that Cisco is not entitled to discover.  Moreover, Cisco's insistence that Ward disclose the identity of all "new matters" in his law firm, whether or not that information is publically known, is an attempt to harass Ward because it places him the position of advancing his case against Cisco to the detriment of his clients; something he will not do. Given the lack of relevance, Cisco's attempt to force Ward to produce those documents is an attempt to annoy and embarrass Ward, and an attempt to punish him for bringing this lawsuit to clear his good name.

To the extent that the documents Cisco seeks have any marginal relevance, they are duplicative of the evidence adduced in Ward's deposition. *See* Fed. R. Civ. P. 26(b)(2)(C)(i). Ward's testimony that he cannot identify any specific lost employment or income attributable to Defendants' conduct eliminates Cisco's claimed need to discover his client lists, engagement letters, tax returns, and confidential financial statements.  *See* Exh. G (Ward Depo.) at 8:8-10; 9:6-12; 86:19-87:7.  Cisco's demand for additional discovery is unreasonable, especially given

the sensitive nature of the documents it seeks.  Cisco's motion should be denied.

       7.[17]    Cisco's Motion to Compel Documents Responsive To Request No. 10 Is Wholly Unnecessary

Cisco's motion seeks to compel Ward to produce a credit card billing statement for a credit card owned by Mr. Albritton.  *See* Mot. at 11.  Mr. Ward and Mr. Albritton do not work in the same firm.  They do not share the same credit card account.  The credit card statement that Cisco seeks belongs to Mr. Albritton; not Mr. Ward.  It is not in Mr. Ward's custody, possession or control.  Cisco can ask Mr. Albritton for a copy of that statement, just as Plaintiff would have to do to produce it to Cisco.

Beyond that, Cisco's motion is frivolous.  Cisco *already has* the credit card statement it included in its motion to compel.  Mr. Albritton produced the credit card statement to Cisco in the Albritton v. Cisco litigation.  That statement is not subject to a protective order.  Cisco should have already produced that document in this case in response to Ward's First Set of RFPs to Cisco, which asked Cisco to produce all documents Cisco obtained or produced in the Albritton v. Cisco case.  In any event, if Cisco did not produce the document, nothing prevents it from doing so now.  If it wants to use the credit card statement in this case, it only need put a production number on the document and send it to Ward's counsel.  The process would take about five minutes, and would have certainly taken less time than briefing the issue to the Court.

       8.    Cisco Is Not Entitled To An Unlimited Medical Release To Four Years Of Ward's Medical Records For Treatment He Has Told Cisco He Did Not Seek

Cisco's Request No. 12 asks Ward to sign a complete medical release provided by Cisco that give it unfettered access to comb through Plaintiff's entire medical history without limitation.  *See* Mot. at 12.  Although Cisco has limited the time period of the request to four years, instead of its unlimited earlier request, it is still overly broad.  Cisco libeled Ward beginning on October 17, 2007.  Only those medical records after that date can be relevant to any mental anguish damages that Ward seeks to recover as a result of Cisco's misconduct. Cisco's request should be denied for being unreasonably limited in scope. *See Miles v. Century 21 Real*

---

[17] Plaintiff is tracking the numbering in Cisco's motion.  Cisco's motion omits heading number 6.

*Estate*, No. 4:05-cv-1088 GTE, 2006 U.S. Dist. LEXIS 67974, at 9 (denying motion to compel when it sought medical records before the events that allegedly caused the emotional distress).

Cisco's motion focuses on discovering medical records concerning Plaintiff's mental health because Cisco claims he has put his mental health at issue by asserting a cause of action for the tort of outrage.  There are four elements that are necessary to establish liability for the tort of outrage: (1) the actor intended to inflict emotional distress or knew or should have known that emotional distress was the likely result of his conduct; (2) the conduct was extreme and outrageous, was beyond all possible bounds of decency, and was utterly intolerable in a civilized community; (3) the actions of the defendant were the cause of the plaintiff's distress; and (4) the emotional distress sustained by the plaintiff was so severe that no reasonable person could be expected to endure it.  *See Faulkner v. Arkansas Children's Hosp.,* 347 Ark. 941 (2002).  A party can recover damages for mental anguish in the absence of a physical injury when he has been the target of a willful and wanton wrong committed with the intention of causing mental distress. *See FMC Corp. v. Helton*, 360 Ark. 465, 483 (Ark. 2005).

Here, the focus of Ward's Complaint is on the Cisco's libelous, outrageous, and willful and wanton conduct undertaken with the intent of causing him mental distress.  Any alleged waiver of the privileges covering Ward's medical records must be limited to medical records that "could fairly be considered within the scope of the complaint." *See Miles*, 2006 U.S. Dist. LEXIS 67947, at *10-11.  Ward's complaint alleges that he suffered mental anguish and extreme emotional distress as a result of Cisco's conduct.  However, Plaintiff did not seek or receive medical treatment for psychological stress, and therefore he has not put his medical records at issue.  *See id.* at *11.  Cisco learned that information during depositions in this case.  *See* Exh. P (N. Ward Depo.) at 21:9-15.  Ward will not offer medical records, counseling records, or expert testimony to prove his emotional distress claims.  Consequently, the documents Cisco seeks are not relevant to any issue in this case and should not be ordered produced.  *See id.* at *9 (Plaintiff demonstrated lack of relevance where he stipulated that he would offer no medical records or expert testimony in support of his mental anguish damages), citing *Broderick v. Shad*, 117

27

F.R.D. 306, 309 (D.D.C. 1987) (Plaintiff's allegations of severe psychological stress did not waive privilege for medical records where she offered an affidavit that she did not seek medical treatment for her stress).

But, Cisco's requested medical release goes even further than that. Cisco wants all of Mr. Ward's medical records, whether or not they have any bearing on mental anguish damages. Cisco's argument in support resembles an argument rejected in *Miles v. Century 21 Real Estate Unlimited*, 2006 U.S. Dist. LEXIS 67974, at *11-12. In *Miles*, the defendants argued, like Cisco does here, that production was warranted because "Plaintiff's medical records may show, for example, that plaintiff's alleged emotional distress was caused by factors unrelated to defendant's alleged acts . . . ." *See id*[18]. The *Miles* Court rejected that argument, finding that if Plaintiff were not going to use medical records and expert reports to support her claims, her medical records were irrelevant. *See id.* at *11-12; *see also Simpson v. University of Colorado*, 220 F.R.D. 354, 365 (D. Colo. 2004) (finding that medical records specifically referencing plaintiff's emotional or physical condition were relevant and should be disclosed, but disallowing disclosure of other medical records and names of medical physicians relating to physical injuries or conditions unrelated to claims at issue because the Complaint did not allege physical injury) (cited in *Miles*). In this case, Ward's claimed damages are for harm to reputation, mental anguish and punitive damages. As this Court has previously held, the

---

[18] The cases cited in Cisco's brief do not compel a different result. *See* Mot. at 12-15. In the *Schoffstall v. Henderson*, 223 F.3d 818, 823 (8th Cir. 2000) case relied on by Cisco, it appears the Plaintiff put her medical condition in controversy by agreeing to sign some limited medical releases, but not others.. While the *Schoffstall* Court held that Plaintiff put her medical condition in controversy it does not appear that this was a litigated issue. *See Dochniak v. Dominium Mgmt. Servs.*, 2006 U.S. Dist. LEXIS 81200, at *3 (D. Minn. July 26, 2006) (distinguishing *Schoffstall*). In *Batiste-Davis v. Lincare, Inc*., 526 F.3d 377, 381 (8th Cir. Ark. 2008), Plaintiff put her medical condition at issue by calling her treating social worker to testify. Ward plans to offer no such evidence. In *Garrett v. Sprint PCS*, 2002 U.S. Dist. LEXIS 1914, * 5 (D. Kan. Jan. 31, 2002) Plaintiff was only asked to respond to interrogatories; not provide a full release for opposing counsel to contact any and all treating physicians. *McCarthy v. Southeastern Pa. Transp. Auth*., 1993 U.S. Dist. LEXIS 14419 (E.D. Pa. Oct. 13, 1993) is similar to *Schoffstall* in that Plaintiff partially complied by selectively providing a medical release for one doctor. *Schmidt v. Stearman*, 253 S.W.3d 35, 44 (Ark. Ct. App. 2007), *Kiersey v. Jeffrey*, 253 S.W.3d 438, 444 (Ark. 2007), *Terrell v. Arkansas Trucking Serv.*, 60 Ark. App. 93, 97 (Ark. Ct. App. 1998); and *Ross v. Patterson*, 307 Ark. 68, 74 (Ark. 1991) are not discovery or waiver cases at all, but rather cases evaluation of claims for the sufficiency of the evidence. In *Clark v. Bakker*, 1999 Ark. App. LEXIS 403 (Ark. Ct. App. May 26, 1999), medical records were introduced over objection at trial because Plaintiff had opened the door to the records through her testimony.

relevance, if any, of medical records should be limited to those medical conditions at issue in the case. *See Mitchell v. Potter*, Civil No. 05-5159, U.S. Dist. LEXIS 3801, at *6 (W.D. Ark., Jan. 18, 2007). There is nothing about his claims that permit Cisco to contact every doctor, dentist, and optometrist that he has seen in the last four years.

> 9.   Any Concern Cisco Has With Ward's Production of ESN Documents Is The Result of Cisco's Overly Broad Requests

Cisco's asked Ward to produce all documents regarding the initial filing of the ESN Complaint and the Amended Complaint, and all communications between anyone connected to ESN (without limitation as to time) relating to the ESN lawsuit or Complaint. *See* Mot. 15. Cisco lodges four complaints with respect to Ward's responses to Request Nos. 13 and 15, taking issue with (1) Plaintiff's assertion of privilege; (2) assertion of confidentially from disclosure objections; (3) objection to producing third-party documents; and (4) objection to searching the web to obtain documents for Cisco.

Ward responded to Cisco's Request saying he would not log on his privilege log privileged communications between his counsel in this case and would not produce those documents, per what he believed was the parties' agreement. So, the privilege log does not contain communications between Ward and his counsel in this case, but it does include other documents located after a reasonable search. Other non-privileged documents located after a reasonable search were produced.

The problem, however, with logging "all" documents as Cisco insists is the sheer over breath of Cisco's request. Here, Cisco's requests are so unreasonably broad they place an unreasonable burden on Plaintiff. Literally read, Cisco's Requests would have Ward log every piece of paper ever connected in any way to the ESN case. Cisco's Requests ask for "all documents relating to the initial filing of the complaint" and "all documents relating to communications" with ESN, anyone connected with ESN, and without limit as to time. *See* Mot. at 15. "Relating" is a vague and ambiguous term meant to capture everything. While Cisco has drafted its requests to ensure that nothing falls outside their scope, they have also ensured that,

because nothing falls outside the scope, they are grossly overly broad.

It is impossible to tell the parameters of Cisco's requests.[19]  Are communications exchanged between the inventor and counsel months before the patent issues or the complaint is filed, but for which they believe a complaint will be filed "relating" to the complaint?  Are all of the pre-filing negotiations that occurred between ESN and Cisco months before the ESN Complaint was filed documents "relating" to the Complaint?  Plaintiff couldn't know, so he responded that he could not log every conceivable ESN document on his privilege log.  There are some documents that are clearly within the scope of Cisco's requests.  Those have been produced or logged on Plaintiff's privilege log.  Cisco made no attempt to narrow its request or to confer with Plaintiff about his continued objection to its scope before bringing this motion.  Thus, Cisco must now accept the deficiencies in its Requests and its motion should be denied as overly broad.

Cisco also takes issue with Plaintiff's objection to the extent that Cisco's overly broad Requests can be read to seek confidential information, trade secret information, or materials subject to a protective order.  Cisco claims it can't see how discovery of the broad category of documents sought in its Requests could be immune from discovery on any basis.  *See* Mot. at 16. But, as Ward's objections make clear, he cannot produce confidential information belonging to his client or a third party.  So, for example, to the extent that Cisco's Request asking for all communications with ESN or its agents, without limitation to persons or scope, can be read to seek documents from ESN that would otherwise fall within the protective order in place in the ESN v. Cisco case, or be otherwise protected as a trade secret or proprietary business information, Ward cannot produce those documents without consent.  Cisco certainly understands these types of limitations on discovery and, in fact, refused to produce any information about how Cisco stores and maintains its data until the parties agreed to a confidentially agreement.  The fact that companies other than Cisco have confidential and

---

[19] Cisco claims that it is only fair that Plaintiff log every scrap of paper exchanged with ESN because Ward forced Cisco to do the same thing.  *See* Mot. at 16.  Not so. There are no documents on Cisco's log that were created before October 15, 2007—the day before the ESN Complaint was filed.  Yet, Cisco's Requests would have Plaintiff log privilege documents without any limitation in time.

proprietary information can't be a surprise.

Cisco's remaining argument is the same custody and control argument that it raises above. In response, Ward has produced non-privileged responsive documents from the ESN file. He has logged others on his privilege log. He should not have to list every paper in the file without limitation to satisfy Cisco's overly broad requests. The ESN v. Cisco litigation file in online at PACER and is equally accessible to Cisco. The Albritton documents that Cisco maintains Ward should produce are not in Ward's possession—although they are in Cisco's. Ward's counsel in this case may have those documents, but many of them are under a protective order in the Albritton case. And, Cisco's discovery requests are to be answered based on the information Plaintiff has—not based on the information that Albritton has. Albritton is a third-party and is not analogous to the Court's Order with respect to Cisco which directed Cisco to produce documents from employees, agents, and persons for whom it was paying their attorney's bills. There is no employee relationship between Ward and Albritton. The relationship between Ward and ESN is different because an attorney does not have the legal right to control the client. Cisco already has all of the Albritton documents. Because Cisco was a party to the Texas case and Ward was not, Ward has asked Cisco to produce those documents to him. If Cisco wants to ensure their use in this case, they can stamp them with a production number and produce them to Ward.

Finally, Ward is not required to produce or identify for Cisco document that are in the public domain and are equally accessible to Cisco. The burden of obtaining those documents is the same for Plaintiff as it is for Cisco. To the extent that Ward knows about public documents or has them in his files, he has produced them. But, the Rules do not require him to log onto Pacer, or to browse the internet looking for documents in order to have documents to produce in response to Cisco's document requests.

Cisco's Motion to Compel responses to Request Nos. 13 and 15 is far from ripe. The Requests are overly broad and the parties and the Court would have greatly benefitted from an honest attempt to discuss and narrow those requests before Cisco filed its motion. Cisco's

motion should be denied for failure to follow Rule 7.2(g).

          10.    **Cisco's Motion To Compel Documents Evidencing Ward's Communications With The EDTX Court Clerks Should Be Denied**

Cisco's Request asks Ward to "[p]roduce all documents relating to communications with the United States District Court or any of its employees (including clerks) regarding the filing of the ESN Lawsuit and/or whether subject matter jurisdiction existed in the ESN Lawsuit." *See* Mot. at 17.

Cisco complains about Ward's claims of privilege, arguing that "[c]ommunications with the U.S. District Court or any of its employees could not be privileged or work product by definition." Ward agrees. The problem is that Cisco's Request does not ask for communications "with" the court, it asks for "documents relating to communications" with the court. The difference is important.

If, as Cisco's Request states, it wants all documents "relating" to communication with the court, then Cisco's Request seeks documents that are work product protected. One of the fact issues in this case turns on what Mr. Albritton's assistant, Amie Mathis, discussed with the Court clerk when she called about the ESN Complaint. Another important issue is what Cisco's agent, Jillian Powell, discussed with the court clerk when she made the same call. The attorneys representing Ward have work product protected documents concerning those facts, and they "relate" to communications with the court.

If, on the other hand, what Cisco wants is communications that Ward had "with the court" regarding the filing of the ESN Complaint, as Cisco argues in its motion, then the answer is easy: there are none. Ward told Cisco that during his deposition. *See* Exh. G (Ward Depo.) at 48:19-49:6; 65:6-11. Ward also provided an interrogatory response that included all of his contacts with the Texas Court about the ESN case. *See* Exh. S (Plaintiff's Supplemental Responses to Cisco's First Set of Interrogatories) at pgs. 3-4. Plaintiff's Response to this Request is equally clear: he has no non-privileged documents to produce.

Contrary to Cisco's argument, this Request is overly broad. Cisco's request is not limited

to the filing of the ESN Complaint on October 16, 2007.  Instead, it is unlimited in time and asks for all information about the "regarding the filing of the ESN Lawsuit" and "subject-matter jurisdiction."  The ESN case is ongoing.  Thus, Ward has been forced to respond to the same question posed in Cisco's interrogatories by identifying documents he has filed on behalf of ESN during the later stages of that case because his ESN case filings are "communications with the court" about the "ESN Lawsuit."  If Cisco meant to narrow its request, it should have done so during meet and confer rather than waiting to rewrite its Request in a motion to compel.

Cisco's motion also claims that Ward is withholding documents that he claims are publically available but that he failed to identify to Cisco.  But, Ward identified those documents to the best of his ability, as a full recitation of his response demonstrates.  Ward responded "[t]he request seeks documents that are a matter of public record and are equally accessible to Defendant.  Specifically, deposition testimony and documents provide in the Albritton v. Cisco case are already in Cisco's possession.  The burden to Cisco of obtaining documents already in its possession is less that the burden to Plaintiff of producing those documents to Cisco."  Thus, Ward identified to Cisco that he believes that there are responsive documents in the Albritton case that Cisco already has.  Plaintiff could not be more specific because he is not a party to that litigation, and does not have clearance under the protective order covering some of the Albritton documents.  Because Cisco has the documents in its files and can (and already has) determine which ones are responsive to its own requests, it cannot complain that Plaintiff has not sought to specifically identify those documents for Cisco.

11.     Ward Has Already Provided A Complete Response To Request No. 18

Cisco's Request No. 18 asks Ward to "Produce all documents that show or tend to show the truth or falsity of any statement in the complained-of articles."  Mot. at 17.  Cisco takes issue with two of Plaintiff's objections.  First, Cisco complains that the documents identified with reasonable particularity in his response must be specifically identified or produced.  All non-privileged identifiable documents have been produced.  Additional documents will be produced in Ward's upcoming document production.

Second, Cisco takes issue with Plaintiff's objection that "[t]he request is over broad in requesting 'all documents that show or tend to show' and impermissibly requires Plaintiff to make a judgment call about what information is responsive to this Request." Cisco counters that the very purpose of discovery is "to allow the parties a chance to discover the evidence that relates to the other parties' allegations. *See* Mot. at 18. Cisco's argument would be valid if the discovery at issue was interrogatory responses. Then, Cisco could say "tell us what you think is true or not true." But, Cisco's Request is not proper in the context of a document request because it impermissibly shifts the burden onto Plaintiff to decipher what documents Cisco seeks. The point of lodging over breath and vagueness objections is to force the party serving discovery to frame its requests in a matter that is both protective and not overly burdensome. Cisco cannot ask Plaintiff to guess what Cisco believes falls within its amorphous Request. In addition, Cisco has made no reasonable effort to limit the request to a reasonable time period, identifiable persons or reasonable subject-matter. Cisco Request is fatally over broad and its motion to compel Ward to guess what documents Cisco seeks should be denied.

           12.    Cisco's Motion To Compel Documents Responsive To Request Nos. 23-25 Should Be Denied

Cisco is correct that the documents it seeks may be relevant to Mr. Ward's status as a private or public figure. However, Cisco is wrong in the scope of relevance it seeks to apply. Mr. Ward's private/public figure status must be determined as of the time he was libeled by Cisco. *See Hutchinson v. Proxmire*, 443 U.S. 111, 135 (1979) (for a plaintiff to be considered a limited purpose public figure, he must be involved in a public controversy *before* the defamatory statement is published, for "those charged with defamation cannot, by their own conduct, create their own defense by making the claimant a public figure."). Here, the operative date is October 17, 2007. Only documents before that date are relevant.

Although Cisco claims that its responses are limited to the last five years, Cisco's Request Nos. 23 and 24 are unlimited in time. *See* Mot. at 18-19. Additionally, Cisco's Request No. 25, which seeks documents after Ward was libeled by Cisco, is overly broad because it seeks

documents for the two years after Cisco's defamation, dates that are not relevant to Ward's status as a private or public figure.  Thus, Cisco's Requests are overly broad in that they seek the production of documents not relevant to any issue in this case.

But over breath aside, Cisco is wrong is stating that "certainly Ward keeps a copy of such items."  Mot. at 19.  Ward has no such copies.  In his supplemental responses to Cisco's First Set of Interrogatories, Nos. 13 and 14, Ward told Cisco he does not have the documents it seeks.  *See* Exh. G at pgs. 35-37. Ward's responses to Cisco's Request Nos. 23-25 likewise state that Ward has no documents to produce. There is no need to compel documents that Ward doesn't have. To the extent that these documents may be in the public domain, Ward doesn't know where they are.

12.[20]   Cisco's Motion To Compel Documents Responsive To Request Nos. 26 and 26 (Incorrectly Numbered) Should Be Denied.

Cisco's Requests are fatally overbroad and unduly burdensome in asking Ward for "all documents relating to any effort to influence patent reform without limitation to specific persons, time periods or reasonably narrow subject matter.  As Cisco's witnesses testified in the Albritton case, the term "patent reform" is a broad term that encompasses a multitude of issues.  Coupled with the phrase "any effort," Defendant's request is unreasonably over broad.  Read literally, Ward's personal vote for a political candidate who supports increasing funding for the United States Patent and Trademark Office would fall within the scope of Cisco's request.  So too would any effort to support a local ballot measure sponsoring legislation to increase funding for the local animal shelter.

If Cisco wanted specific information, it should have reasonably narrowed its Requests in time and scope.  Cisco says it did so during in the letter it sent out before Ward provided his supplemental responses.  *See* Mot. at 20, citing Mot. Exh. B.  But, the letter Cisco cites is silent about Plaintiff's concerns about the breath of the subject matter sought in Cisco's Request. Cisco's Requests are also unreasonably over broad because they are not limited to the relevant

---

[20] This is Cisco's second number 12.

time period before October 17, 2007.[21]  *See Hutchinson v. Proxmire*, 443 U.S. 111, 135 (1979).
Cisco could have narrowed its Request through meet and confer.  It didn't.  Now Cisco's
Requests must fail for being impermissibly over broad.

More importantly, Ward has already provided this information to Cisco, and it is hard to
imagine what additional information Cisco could need.  The following exchange took place
during Plaintiff's deposition:

Q:     Have you ever engaged in any lobbying efforts in Washington regarding patent
venue reform or the patent laws?

Objection and series of side comments

Q:     Have you ever gone to Washington, D.C. in connection with patent law?

A:     No.

Q:     Have you ever called any members of Congress regarding—regarding issues of
patent law?

A:     No.

Q:     Okay.  Have you ever been involved with any organization that has been on one
side or the other of the patent reform law debate?

A:     I think the American Association for Justice got involved, and so – I send money
to them.  I don't believe the Texas Trial Lawyers Association has weighed in on it.  So only the
AAJ.

Q:     Have you ever been to Washington, D.C. on business?

A:     Yes.

Q:     And while in Washington, D.C., did you ever meet with a member of Congress,
either a senator or representative –

A:     Never.

Q:     -- Or their staff?

---

[21] To the extent that Cisco is afforded any relief, the Court should at least force Cisco to narrow its Requests to seek
only pre-Oct, 2007 documents and expressly limit Cisco's requests to the topic of patent reform.

A:      Never.

Q:      Did you ever meet with a lobbyist, somebody who –either for AAJ or for the – anybody else who's lobbying Congress?

A:      Face-to-face meetings, no.

Q:      How about telephone meeting?

A:      Never on the telephone.

*See* Exh. G (Ward Depo.) at 138:4-139:23.  If Cisco is only seeking information to determine whether Ward has lobbied Congress in support of patent reform, Cisco already has its answer:  No.  It follows that Ward has none of the trip documents and lobbying communications that Cisco's Requests ask him to produce.  If, however, Cisco seeks documents regarding "any efforts" to "influence any legislation" at any time, then its Requests are egregiously over broad. Moreover, Cisco's Requests impermissibly shift the burden of Cisco's discovery onto Plaintiff by forcing him to decipher what type of activity Cisco means to include in its undefined terms. Thus, Cisco's motion should be denied either because there are no documents to produce, or because Cisco's Requests are overly broad and unreasonably vague.

III.    Conclusion:

For all the forgoing reasons, Plaintiff respectfully requests that Cisco's motion be in all things DENIED.

Respectfully Submitted,

Nicholas H. Patton
State Bar No. 63035
Patton, Tidwell & Schroeder, LLP
4605 Texas Boulevard
Texarkana, Texas 75503
903.792.7080 / 903.792.8233 (Fax)

Patricia L. Peden
LAW OFFICE OF PATRICIA L. PEDEN
1316 67th Street
Oakland, California 94612
Telephone: 510-268-8033

ATTORNEYS FOR PLAINTIFF

## CERTIFICATE OF SERVICE

This is to certify that on this 5th day of October, 2009, a true and correct copy of the foregoing was served electronically upon:

Richard E. Griffin                           Attorney for Defendant Cisco Systems, Inc.
Charles Babcock
Crystal Parker
JACKSON WALKER, LLP
1401 McKinney
Suite 1900
Houston, Texas 77010

_____
Nicholas H. Patton