# Ex. M

LEXSEE


Analysis
As of: Oct 06, 2009

ST. CROIX PRINTING EQUIPMENT, INC., Plaintiff, v. DEBBIE SEXTON, et al., Defendants.

CIVIL NO. 06-4273 (PAM/JSM)

UNITED STATES DISTRICT COURT FOR THE DISTRICT OF MINNESOTA

2008 U.S. Dist. LEXIS 81918

July 18, 2008, Decided
July 18, 2008, Filed

**SUBSEQUENT HISTORY:** Summary judgment granted by St. Croix Printing Equip., Inc. v. Sexton, 2008 U.S. Dist. LEXIS 60841 (D. Minn., Aug. 7, 2008)

**PRIOR HISTORY:** St. Croix Printing Equip., Inc. v. Debbie Sexton, 578 F. Supp. 2d 1195, 2008 U.S. Dist. LEXIS 82457 (D. Minn., May 29, 2008)

**CASE SUMMARY:**

**PROCEDURAL POSTURE:** Plaintiff printing company sued defendant printing press manufacturer's subsidiary, alleging tortious interference with contract, defamation, deceptive trade practices, and vicarious liability. The subsidiary served document production requests on the company. Pursuant to Fed. R. Civ. P. 26(b)(1), the subsidiary moved to compel the company to produce documents bearing on its claim for damages and the subsidiary's various counterclaims.

**OVERVIEW:** Although the document requests were clearly overbroad and sought information that had no bearing on any of the claims or defenses, the limited information the subsidiary now sought surrounding the acquisition and sale of a press was relevant to the company's damages claims flowing from the loss of a sale. The company was allowed to redact the identity and contact information of the purchaser of the press as the subsidiary failed to show that the purchaser's identity would have assisted in evaluating the substance of the transaction and its impact on the company's claim for damages. The motion to compel production of the company's tax returns and financial documents was denied where the company represented that its damage to reputation and deceptive trade practices claims were confined to damages it had suffered or would suffer with respect to two customers, not its general business reputation. The request to compel production of documents related to the subsidiary's counterclaims was denied as the counterclaims had been dismissed. Finally, the subsidiary's request for sanctions was denied as the company's conduct did not warrant sanctions.

**OUTCOME:** The motion to compel was granted as to the documents related to a sale and acquisition of a printing press, but was otherwise denied.

**CORE TERMS:** customer, printing presses, Printing, interrogatories, deceptive, trade practices, purchaser, counterclaims, discovery, tax returns, defamation, reputation, chip, discovery of admissible evidence, produce documents, false statements, tortious, objected, confined, invoice, e-mail, buy, authorized dealer, subject matter, obtain discovery, reasonably calculated to lead, manufactured, calculated, privileged, trademark

**LexisNexis(R) Headnotes**

*Civil Procedure > Discovery > Disclosures > General Overview*
[HN1]Parties may obtain discovery regarding any matter, not privileged, that is relevant to the claim or defense of any party. Relevant information need not be admissible

Page 1

at trial if the discovery sought appears reasonably calculated to lead to the discovery of admissible evidence at trial. Fed. R. Civ. P. 26(b)(1).

**COUNSEL:** [*1] For St. Croix Printing Equipment, Inc., a Minnesota corporation, Plaintiff, Counter Defendant: Jeffrey E Grell, LEAD ATTORNEY, Ricoact.com LLC, St. Paul, MN.

For Debbie Sexton, St. Croix Printing Equipment Imports, LTD, an Iowa corporation, Defendants: G John Veith, LEAD ATTORNEY, Brown & Carlson, PA, Mpls, MN.

For Shinohara USA, Inc., a Florida corporation, Shinsuke Kubota, Defendants: Anthony J Bruozas, Gerald L Morel, LEAD ATTORNEYS, Masuda Funai Eifert & Mitchell, Ltd, Chicago, IL; Jon S Swierzewski, LEAD ATTORNEY, Larkin Hoffman Daly & Lindgren Ltd, Mpls, MN.

For Shinohara USA, Inc., a Florida corporation, Counter Claimant: Anthony J Bruozas, Gerald L Morel, LEAD ATTORNEYS, Masuda Funai Eifert & Mitchell, Ltd, Chicago, IL; Jon S Swierzewski, LEAD ATTORNEY, Larkin Hoffman Daly & Lindgren Ltd, Mpls, MN.

**JUDGES:** JANIE S. MAYERON, United States Magistrate Judge.

**OPINION BY:** JANIE S. MAYERON

**OPINION**

*ORDER*

JANIE S. MAYERON, U.S. Magistrate Judge

The above matter came on before the undersigned on May 19, 2008 upon Defendant Shinohara USA, Inc.'s Motion to Compel Plaintiff to Produce Documents and Answer Interrogatories [Docket No. 86]. Jeffrey E. Grell, Esq. appeared on behalf of plaintiff; G. John Veith, Esq. appeared [*2] on behalf of defendants Debbie Sexton and St. Croix Printing Equipment Imports, Ltd.; and Anthony J. Bruozas, Esq. appeared on behalf of defendants Shinohara USA, Inc. and Shinsuke Kubota.

The Court, being duly advised in the premises, upon all of the files, records, and proceedings herein, and for the reasons stated on the record at the hearing, now makes and enters the following Order.

IT IS HEREBY ORDERED that Defendant Shinohara USA, Inc.'s Motion to Compel Plaintiff to Produce Documents and Answer Interrogatories [Docket No. 86] is GRANTED in part and DENIED in part as set forth in the Memorandum below. Plaintiff shall produce the documents governed by this Order to Shinohara USA, Inc. on or before August 4, 2008.

Dated: July 18, 2008

/s/ Janie S. Mayeron

JANIE S. MAYERON

United States Magistrate Judge

*MEMORANDUM*

**I. FACTUAL BACKGROUND**

Plaintiff St. Croix Printing Equipment, Inc. instituted this action against defendants in October of 2006, alleging tortious interference with contract, defamation, deceptive trade practices, and vicarious liability. Defendant Shinohara USA, Inc., ("Shinohara") is the United States subsidiary of Shinohara Machinery Co., Ltd., a manufacturer of printing presses. [*3] Shinsuke Kubota is the Vice President of Shinohara USA. Defendant St. Croix Printing Equipment Imports, Ltd. ("St. Croix Iowa") is an authorized dealer and distributor of Shinohara, and defendant Debbie Sexton ("Sexton") is the controlling shareholder or partner of St. Croix Iowa.

The general facts surrounding this litigation are as follows:

> Plaintiff St. Croix Printing Equipment, Inc., sells used commercial printing presses. Plaintiff's principals are John Diana and his son, Blake; the business is located in Stillwater, Minnesota. In the early 1980s, John Diana ("Diana") and Defendant Debbie Sexton together owned a company also called St. Croix Printing Equipment, Inc. In 1989, Diana and Sexton had a parting of the ways and Sexton opened her own business, called St. Croix Printing Equipment Imports, Ltd. This business is located in Iowa. Diana retained the St. Croix Printing Equipment, Inc. name, and after a bit of litigation, the parties apparently agreed to live and let live.
>
> Sexton's business ("St. Croix Iowa") is an authorized dealer for new printing presses manufactured by the Japanese parent company of Defendant Shinohara USA, Inc. ("Shinohara"). Plaintiff ("St. Croix Minnesota") [*4] sells various brands of used printing presses, among them used Shinohara printing presses.

Page 2

> [fn.1 omitted] St. Croix Minnesota is not an authorized Shinohara dealer.
>
> \*\*\*
>
> St. Croix Minnesota contends that Defendants committed unfair, deceptive, and false trade practices. In particular, St. Croix Minnesota contends that Defendants approached customers who had contracted to purchase used printing presses from St. Croix Minnesota and told these customers false and misleading things about the used presses and about St. Croix Minnesota, causing the customers to break their contracts with St. Croix Minnesota and instead purchase new presses from St. Croix Iowa.
>
> Shinohara's Counterclaims are mirror images of the claims in the Complaint. It contends that St. Croix Minnesota's dealings with the customers who are the subject of the Complaint (and perhaps other customers) constitute trademark infringement, trademark dilution [fn. 2 omitted] and false designation of origin in violation of the Lanham Act, 15 U.S.C. §§ 1114 et seq., unfair competition in violation of Minnesota common law, and deceptive trade practices in violation of the Minnesota Deceptive Trade Practices Act ("DTPA"), Minn. Stat. §§ 325D.43 et seq.

Memorandum [*5] and Order dated May 29, 2008, pp. 1-3. [Docket No. 115].

Central to the dispute that bears on Shinohara's motion to compel are two transactions that plaintiff contends that defendants caused to be cancelled as a result of false statements by Sexton and Kubota. The first transaction involved a contract between plaintiff and Schuster Graphics, Inc. ("Schuster"), in which Schuster agreed to purchase a Shinohara press, serial number 100200061 ("the '61 press"), from plaintiff.

Sometime in 2006, Ken Williams of Graphic Consulting agreed to buy the '61 press from Graphic Engineering.[1] Williams then agreed to sell the '61 press to plaintiff for $ 179,000. On May 24, 2006, Schuster and plaintiff entered into an agreement in which Schuster agreed to buy the '61 press from plaintiff for $ 360,000. However, on June 12, 2006, Schuster telephoned plaintiff and cancelled the purchase of the '61 press based on several allegedly false statements by Sexton and Kubota to Schuster regarding the press. Thereafter, Schuster bought a printing press from St. Croix Iowa. Plaintiff claims that based on the actions of Sexton and Kubota, all of the defendants tortiously interfered with plaintiff's contract with [*6] Schuster, and that their false statements constitute defamation and deceptive trade practices.[2]

> 1   Shinohara contends that it, and not Graphic Engineering, owned the '61 press at the time of this transaction.
> 2   During the course of litigation, defendants learned that plaintiff eventually bought the '61 press and then immediately sold it to Ken Williams at Graphic Consulting, which then sold the press to Stacy Stolworthy. As part of the transaction, Graphic Consulting sold plaintiff a Komori printing press, which it had received from Stolworthy as a trade-in upon the sale of the '61 press by Williams to Stolworthy.

The second transaction involved the sale of a used Shinohara printing press in 2001 to Tandem Printing ("Tandem") for $ 175,000. This press required a language computer conversions chip to operate. Plaintiff claims that it ordered the chip for Tandem for the cost of $ 600, but that Sexton stopped the order claiming that as the exclusive Shinohara parts dealer for Minnesota, only St. Croix Iowa could sell the part to Tandem. St. Croix Iowa then ordered the computer chip for Tandem, and charged Tandem $ 40,000 for the chip. When Tandem learned that the computer chip would cost $ [*7] 40,000 rather than $ 600, it refused to buy the printing press from plaintiff for the agreed-upon price. Consequently, plaintiff was forced to reduce the price of the press by approximately $ 40,000, which plaintiff asserts defendants are liable to pay based on the theory of tortious interference.

Plaintiff also alleges that all of the defendants' conduct constitutes tortious interference with its prospective economic advantage or contractual relations with Schuster and Tandem.

During the course of discovery, Shinohara served interrogatories on plaintiff. Interrogatory No. 11 asked plaintiff to "[i]dentify the amount of St. Croix's damages and the method or basis by which such damages were calculated." Plaintiff's Supplemental Response to Interrogatory No. 11 stated as follows:

> Subject to its previously stated objections, St. Croix states its damages related to the Schuster/Technagraphics transaction are $ 180,675.00, which is the difference between St. Croix's cost for the press and the sales price that had been accepted by Schuster. St. Croix's damages related to the Tandem Printing transaction

are $ 39,428.40, which is the amount of money that the customer demanded that St. Croix offset [*8] against the purchase price of the press and to settle related litigation. St. Croix's damages related to lost sales are currently estimated to be $ 145,000.00, which is the profit made on the sale of a used press to Tandem in 2002. (Deposition Exhibit 189 and 190.) St. Croix will also seek damages of or about $ 300,000 arising from Defendants' defamation and deceptive trade practices. In the alternative or in addition thereto, St. Croix may employ a disgorgement method of calculating its damages. The amount of damages St. Croix will seek pursuant to a disgorgement method of calculation cannot be determined until Defendants fully comply with St. Croix's earlier issued discovery.

On December 14, 2007, Shinoraha served a second set of document production requests on plaintiff and Shinohara produced some documents. Shinohara now moves the Court to compel plaintiff to produce documents bearing on its claim for damages and Shinohara's various counterclaims. At issue are Document Request Nos. 6, 15, 16, 19 and 21. [3]

3   While various submissions to the Court suggest that Shinohara was seeking to compel relief with respect to Interrogatory No. 11 *(e.q.* Docket Nos. 86, 87), others do not (proposed [*9] Order, and Docket Nos. 88-91). In any event, a review of Shinohara's supporting memorandum, and in particular its request for relief, reveals that it only was seeking documents with respect to the document requests listed above.

## II. DISCUSSION

[HN1]Parties may obtain discovery regarding any matter, not privileged, that is relevant to the claim or defense of any party. Relevant information need not be admissible at trial if the discovery sought appears reasonably calculated to lead to the discovery of admissible evidence at trial. *See* Fed. R. Civ. P. 26(b)(1) ("parties may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense"); *see also Minnesota Specialty Crops, Inc. v. Minnesota Wild,* 210 F.R.D. 673, 675 (D.Minn. 2002) ("Generally, discovery may inquire into all information, not otherwise privileged, that is relevant to the subject matter of the action, provided that it is reasonably calculated to lead to the discovery of admissible evidence."); *Walker v. Northwest Airlines Corp.,* No. Civ. 00-2604 MJD/JGL, 2002 U.S. Dist. LEXIS 27592, 2002 WL 32539635 at *1 (D. Minn., Oct. 28, 2002) ("In the context of discovery, 'relevant' has been defined as encompassing 'any matter [*10] that bears on, or that reasonably could lead to other matters that could bear on, any issue that is or may be in the case.'") (quoting *Hickman v. Taylor,* 329 U.S. 495, 501, 67 S. Ct. 385, 91 L. Ed. 451 (1947)).

### 1. *Damages Document Requests*

Request No.6:

Documents sufficient to show, for each of the years 2001 through 2007, the total dollar volume of Plaintiffs sales of all printing presses, other products and/or services (a) to customers located in the State of Minnesota and (b) to all customers in the United States, together with documents showing such annual sales by customer.

Request No 16:
Produce all documents which may tend to establish or support the amount and basis of St. Croix's alleged damages, as well as the method by which such damages were calculated.

Request No. 19:
Plaintiff's tax returns for the United States and for the State of Minnesota.

Request No. 21:
All documents that relate to Plaintiff selling printing presses, or parts or providing services for printing presses other than those manufactured by Shinohara.

As to Document Request Nos. 6, 16, and 21, plaintiff objected to these requests on a variety of grounds including relevancy, breadth, and burdensomeness. However, it did produce some documents [*11] in response to Document Request Nos. 6 and 16 supporting its claims for damages. As to Document Request No. 19, plaintiff objected to producing its confidential tax returns based on relevancy and burden and produced no documents responsive to this Request.

With respect to Document Request Nos. 6 and 21, Shinohara asserted that it was only seeking information surrounding the Komori press transaction -- *i.e.* those documents relating to the sale of the Komori press by Williams at Graphic Consulting to plaintiff, and the various documents that reflected the specifics of the sale of the Komori press by plaintiff to its customer. Shinohara maintained that these documents would show the value received for that exchange and profit allocation between Williams and plaintiff and were necessary to evaluate the damages claimed by plaintiff. *See* Shinohara Mem., pp. 5, 6, 14, 20. According to Shinohara, while plaintiff prepared and produced a summary of the sale of the Komori press, this summary did not identify the purchaser of the press, the purchase order, invoice number, costs associated with the sale, delivery and installation of the press, or any information regarding the allocation of alleged [*12] profits between plaintiff and Williams at Graphic Consulting. *Id.*, p. 14. Shinohara submitted that plaintiff should be required to produce the actual documents surrounding the Komori transaction. *Id.*

Plaintiff opposed Shinohara's attempt to obtain the underlying documents surrounding the Komori press transaction, arguing that Shinohara had never requested such documents from plaintiff. *See* Plaintiff's Opp. Mem., pp. 27-30. In addition, plaintiff objected to divulging to defendants the identity and contact information of the customer who purchased the Komori press from plaintiff for fear that defendants or their attorneys would engage in conduct that would interfere with its relationship with this customer. *Id.*, p. 31.

While Document Request Nos. 6 and 21, as written, are clearly overbroad and seek information having no bearing on any of the claims or defenses in this litigation, this Court finds that the limited information that Shinohara now seeks to obtain from these requests surrounding the acquisition and sale of the Komori press is relevant to plaintiff's claims of damages, including lost profits, flowing from the loss of the Schuster sale. Therefore, plaintiff is ordered to produce [*13] the following documents sought by Shinohara:

> (a) all documents regarding plaintiff's purchase and receipt of the Komori printing press from Ken Williams at Graphic Consulting, including all e-mails, faxes, letters, purchase orders, invoices, receipt acknowledgments, shipping and rigging documents to and from either, Ken Williams at Graphic Consulting (including any employee, agent or officer of Ken Williams Graphic Consulting), or Stacy Stolworthy (or any employee or agent of) to plaintiff's and/or plaintiff's customer who received and purchased said Komori press from plaintiff;
>
> (b) all documents regarding plaintiff's sale of said Komori press to his customer, including but not limited to initial e-mail/letter communications to and from plaintiff regarding plaintiff's efforts to sell said Komori press;
>
> (c) all sales documents between plaintiff and the purchaser of said Komori Press, including all purchase orders, invoices, offers, acceptances, shipping documents, ancillary documents with all entities who shipped, rigged and installed the Komori press into the facility of the purchaser.

With respect to plaintiff's concern about disclosing to defendants the identity of the customer who purchased [*14] the Komori press from plaintiff, Shinohara has not convinced this Court that the identity of the purchaser (presumably for the purpose of contacting the purchaser) will assist Shinohara in evaluating the substance of the transaction and its impact on plaintiff's claim for damages. Having concluded that the identity of the customer has no relevance to the claims, defenses or subject matter of the litigation, plaintiff may redact from the above documents the identity and contact information of the purchaser of the Komori press.

As to Document Request Nos. 16 and 19, Shinohara submitted that it was entitled to plaintiff's state and federal tax returns and other financial ledgers and statements in order to evaluate the alleged diminished value of the corporation from defendants' alleged defamation. *See* Shinohara's Mem., p. 6. Plaintiff has claimed "$ 300,000 in damages arising from defendants' defamation and deceptive practices." Plaintiff's Supplemental Response to Interrogatory No. 11. Shinohara argued that plaintiff's financial and tax records would evidence plaintiff's financial condition before and after the transactions at issue in the case, and therefore, it was entitled to the financial [*15] information that would support such a claim. *See* Shinohara's Mem. pp. 13-14.

In response, plaintiff asserted that Shinohara was not entitled to its tax returns and other financial documents because the damages it seeks for injury to its reputation are limited to the few customers identified in its response to Interrogatory No. 18 [4], and that it was not seeking damages to its general reputation, as evidenced by its lack of expert testimony on this topic. See Plaintiff's Opp. Mem., pp. 33-34. In addition, plaintiff indicated that in response to Document Request No. 17, it had

Page 5

produced general profit/loss statements for 2001 through 2006. *Id.,* p. 36.

> 4  Neither party submitted plaintiff's answer to Interrogatory No. 18. Nevertheless, based on plaintiff's discussion in its opposition memorandum that its claim for damage to reputation was confined to the transactions at issue, the Court presumes that this claim is confined to Schuster and Tandem.

Plaintiff has represented to this Court that its damage to reputation and deceptive trade practices claims are confined to any damages that it has suffered or will suffer with respect to Schuster and Tandem. Plaintiff has also represented to this Court [*16] that it will not claim that its general business reputation has been damaged, and that it will offer no expert opinions to support such a claim. Therefore, based on plaintiff's representations, and Shinohara's failure to satisfy this Court that general financial documents and tax returns will contain information leading to the discovery of admissible evidence at trial bearing plaintiff's claims for damages relating to Schuster or Tandem, Shinohara's motion to compel these documents from plaintiff is denied.

### 2. *Counterclaim Documents*

Document Request No. 15:

> All documents relating to plaintiff's advertising or promotion of its company, printing presses for sale, parts and other services, including but not limited to letters, e-mails, other communications, and notes or records of communications between Plaintiff, its counsel or any other representative with the person or entity which manages and updates plaintiff's webpage since its inception, and with any trade journal, publication magazine, newspaper or other media form ill which plaintiff placed advertisements since 1999.

The basis for Shinohara's request for the documents sought by Document Request No. 15 was that they bore on its counterclaims. [*17] Plaintiff moved for summary judgment on these claims, and on May 29, 2008, the District Court granted plaintiff's motion and Shinohara's counterclaims were dismissed. *See* Memorandum and Order dated May 29, 2008. [Docket No. 115]. Thus, Shinohara's motion to compel as it relates to Document Request No. 15 is denied as moot.

Finally, the Court denies Shinohara's request for expenses and sanctions related to the present motion. Sanctions are not warranted where Shinohara was successful on only some parts of its motion, and the plaintiff's conduct did not rise to a level warranting sanctions.

J.S.M.