IN THE UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF ARKANSAS
TEXARKANA DIVISION

JOHN WARD, JR.                    §
                                  §
                                  §    C. A. NO. 08-4022
v.                                §    JURY TRIAL DEMANDED
                                  §
CISCO SYSTEMS, INC.               §

**DEFENDANT CISCO SYSTEMS, INC.'S REPLY TO PLAINTIFF'S RESPONSE TO
DEFENDANT'S MOTION TO COMPEL RESPONSES TO CISCO SYSTEMS, INC.'S
FIRST REQUEST FOR PRODUCTION AND BRIEF IN SUPPORT THEREOF**

TO THE HONORABLE DISTRICT COURT JUDGE:

Cisco Systems, Inc. ("Cisco") hereby files its Reply to Plaintiff's Response (the

"Response") to Defendant's Motion to Compel Responses to Cisco Systems, Inc.'s First Set of

Requests for Production (the "Motion") as set forth below.

1.    **Cisco complied with its meet and confer obligations and the issues in the Motion are
      ripe for determination by the Court (Reply to Response at pp. 1-5).**

Plaintiff's complaints about the meet and confer are meritless and misrepresent the

parties' communications regarding the Motion.  Cisco provided a detailed letter setting forth the

deficiencies in Plaintiff's response dated May 12, 2009.  (Exhibit B to the Motion).  On May 18,

2009, Plaintiff's counsel made clear that he was not willing to make the requested revisions,

stating "I believe our objections are well-founded and that our responses are accurate and

complete."  (Exhibit A).  On May 21, 2009, Ms. Peden and Nick Patton, counsel for Plaintiff,

and Mary Lou Flynn-Dupart and Crystal Parker, counsel for Defendant, conducted a 50-minute

meet and confer about the responses to Cisco's requests for production and requests for

Dockets.Justia.com

admissions,[1] during which counsel for Defendant addressed Defendant's May 12 letter.  (*See* Declaration of Crystal Parker, Exhibit B at ¶4; email correspondence regarding call, Exhibit B-1; phone record reflecting call, Exhibit B-2).  Ms. Peden indicated that Plaintiff was unwilling to compromise on almost all the issues, but indicated that some minor issues remained outstanding.

On June 9, the parties discussed the responses to the requests for production for a second time, along with discussions of other issues.  (Exhibit B at ¶5).  After that call, counsel for Defendant sent Plaintiff's counsel a letter confirming the discussion.  (Exhibit B-3).  Plaintiff agreed to remove the impermissible blanket objections from his responses and to state where he had no responsive documents, which was the main reason for the agreed amendment.  Plaintiff also agreed to make a few other minor revisions to the responses, but the parties reached an impasse regarding almost every other issue set forth in the May 12 letter, and those issues were ripe for decision by the Court.  Defendant wished to file only one motion to compel with respect to the requests for production for the sake of judicial economy and therefore waited until an impasse was reached with respect to all issues set forth in the Motion before filing.

On June 19, Plaintiff served "supplemental" responses to the requests for production.  The "supplemental" responses confirmed Plaintiff's refusal to correct the same deficiencies addressed in the May 12 letter and the two phone conversations.  Instead, it added new objections, and Plaintiff continued to refuse to produce the requested documents.  Defendant's counsel advised Plaintiff by phone that these new objections were improper and urged Plaintiff not to do the same thing in subsequent meet and confer sessions.  (Exhibit B at ¶6).  Plaintiff's counsel disagreed.  (Exhibit B at ¶6).  Indeed, Defendant, in subsequent meet and confer sessions for amendments to discovery responses, advised Plaintiff that it could not wait so long next time

---

[1] A very small amount of those 50 minutes were spent on other issues; however there was no substantive discussion of the other issues because lead counsel for Defendant could not join the call, and those issues needed to be addressed by him.

for amendments to discovery because Plaintiff had abused the meet and confer process by purporting to "supplement" discovery, but instead just added new objections and making almost none of the revisions Defendant had requested, which wasted valuable time. (Exhibit B-7).

On several occasions in late July and August, Defendant tried again to reach an agreement. On July 31, counsel for Defendant sent Plaintiff's counsel an email regarding a new "agreement" regarding privilege that she had referenced in the "supplemental" responses. The parties corresponded several times regarding this matter and discussed the issue by phone. (Exhibit B at ¶7; Exhibit B-5). On August 19, Plaintiff confirmed by email that the parties had reached an impasse on the issue. (*Id.*). On August 24, 2009, the parties conducted a call regarding privilege and other issues. (Exhibit B at ¶7; email correspondence regarding call, Exhibit B-4). The parties reached an impasse on that issue as well. At that point, Defendant had met and conferred on each of the issues in the Motion.

The record is clear that Cisco attempted time and time again to resolve these issues with Plaintiff and that the issues are ripe for determination by this Court. Indeed, Cisco attempted until the last date possible (the end of the discovery period, which was later extended) to work out issues with Plaintiff, and Plaintiff continued to refuse. It is telling that Ms. Peden, the attorney who discussed these issues with Defendant's counsel, did not sign an affidavit certifying that Cisco did not meet and confer, but rather the affidavit was signed by a paralegal, Marcie Long. Ms. Long does not even work for Ms. Peden, but rather Ms. Peden's co-counsel, and is located in Texas, whereas Ms. Peden's office is located in California. Cisco is not aware of whether Ms. Long attended each of the calls referenced above. It may be true that Ms. Long wasn't aware of the multiple meet and confer sessions.

It is also telling that Plaintiff never contacted Cisco after the Motion to Compel to resolve or narrow the issues. Instead, it is clear that Ms. Peden meant what she said when she advised Defendant's counsel numerous times that she would not make the revisions Defendant had requested or produce the documents Defendant requested.

Indeed, after Plaintiff missed the deadline to respond to the Motion to Compel, Plaintiff contacted counsel for Defendant and requested more time, which Defendant agreed to, yet Plaintiff <u>never</u> indicated to Cisco that there was any room for agreement or narrowing of the issues for the Court. (Exhibit B at ¶9). That is because the parties had already conferred in good faith on the specific issues in dispute, and they were not able to resolve their disagreements without intervention of the Court.[2] Plaintiff's claims to the contrary are simply an effort to divert this Court's attention from the merits of the Motion.

### 2.   Ward has no excuse for his untimely objections except a non-existent "request" from Defendant (Reply to Response at pp. 6-8).

Ward's claim that his untimely objections are not void because they "were provided at Cisco's request" is simply not true. Ward was well aware when he made blanket objections purporting to apply to all of his responses that they were null and void, as he had previously made this same argument to this Court. (*See* Motion at pp. 3-4). Defendant requested that he "**remove** all blanket objections on pages 3-5." (Exhibit B to the Motion at ¶3) (emphasis added). Defendant <u>never</u> agreed that Plaintiff could add new, untimely objections. (Exhibit B at ¶6. Plaintiff lost his right to assert the objections in the "blanket objections" when his time to respond to the requests for production expired. Fed. R. Civ. P. 34(b)(2); Local Rule 33.1(b); this

---

[2] Plaintiff attempts to claim that the certificate of conference is insufficient because it failed to use these exact words. Notably, the Local Rules do not require the use of these specific words; Defendant attempted to go further than this requirement by setting forth more specific actions taken by Defendant. However, Defendant has no problem certifying to the exact words of the Local Rule and does so here.

Court's Order at Docket No. 60 (holding that repeated objections to requests were void under the Local Rules).[3]

**3.   Ward's "premature" objections are absurd since he has had well over a year and a half to locate the requested documents (Reply to Response at pp. 9-10).**

Ward in essence concedes that the requests are not premature, as he must given that he filed this case over a year and a half ago and thus has had plenty of time to discover responsive information.  His "premature" objections should be overruled.[4]

**3.   Ward's refusal to produce and delay in producing non-privileged documents (Reply to Response at pp. 9-10).**

Defendant withdraws its motion with respect to three of the documents at issue in the Motion, which Plaintiff admitted were not privileged and produced after the Motion was filed. Plaintiff misleads the Court regarding the timing of this request.  Plaintiff knew at least by August 10, 2009, that the documents at issue were not privileged based on Plaintiff's own testimony.  Counsel for Cisco sent Plaintiff's counsel an email on August 24, 2009 specifically requesting the documents.  (Exhibit B-4).  Plaintiff had until September 11, 2009 to produce the three documents, which he had admits were not privileged.  A month is certainly sufficient time to locate and produce three emails that were already on his privilege log.  Defendant was forced

---

[3] Ward also misrepresents to this Court that Defendant did not meet and confer regarding this issue.  Defendants' counsel advised Plaintiff by phone that these new objections were improper and urged Plaintiff not to do the same thing in subsequent meet and confer sessions, but Plaintiff disagreed.  (Exhibit B at ¶11-12).  In subsequent meet and confer sessions for amendments to discovery responses, Defendant reiterated the impropriety of adding these new objections by advising Plaintiff that it could not give as much time during meet and confer sessions because Plaintiff had abused the meet and confer process by purporting to "supplement" discovery, but instead just adding new objections and making almost none of the revisions Defendant had requested, which wasted valuable time. (Exhibit B-7, last paragraph).

[4] Ward misleads this Court when he alleges that Cisco did not meet and confer on the issue of Ward's "premature" objections.  By letter dated May 12, 2009, Cisco advised Ward that the objections to numerous requests on the basis that they were premature were unfounded and requested that Plaintiff remove these objections and comply fully with each request.  (Exhibit B to the Motion at ¶5).  Plaintiff refused by letter.  (Exhibit A).  Counsel for the parties conducted a meet and confer during which counsel for Defendant discussed each paragraph of the letter, one by one, with Ms. Peden and requested that she remove the objections.  (Exhibit B at ¶10).  Despite Cisco's efforts, Plaintiff refused to remove the many "premature" objections.  Plaintiff's subsequent amendment to add new objections but failure to remove the "premature" objections confirmed that the issue was ripe for the Court.  Cisco's letter and phone call with Ms. Peden certainly meets this Court's meet and confer requirement.

to file the Motion because, despite having advised Plaintiff of the end of the discovery period[5] and that Defendant would have to file the Motion if the documents were not produced (see email from Ms. Parker to Ms. Peden, Exhibit B-6), Plaintiff still failed to produce the documents, thus necessitating the Motion.  Defendant was candid about this situation in the Motion to Compel. (Motion at p. 6).  Plaintiff's attempt to use his own dilatory conduct in producing these non-privileged documents to make Defendant appear unreasonable is transparent.

Plaintiff also mischaracterizes the document he refuses to produce under a claim of privilege.  Plaintiff's counsel advised Defendant that the document at issue contained statements about the Patent Troll Tracker that were not privileged in the same email as a discussion of other legal issues relating to Plaintiff's representation of his client.  (Exhibit B at ¶11-12).  Defendant offered to accept a redacted version of the communication, leaving the discussion of the Patent Troll Tracker, which Plaintiff's counsel admitted was not privileged, and redacting the privileged portion.  (*Id.*)  Plaintiff refused.  Plaintiff is obligated to produce the portion that his counsel has admitted is not privileged.  FED. R. CIV. P. 34(a)(2)(C).  Indeed, Plaintiff could not even say how this document was privileged at his deposition.  (Exhibit F to the Motion).  Plaintiff also ignores Defendant's request that he submit the document *in camera* to determine whether it is privileged. Defendant therefore requests that the Court order Plaintiff to produce it to Defendant or to produce it *in camera* to determine whether the document (or portions of it) are not privileged.

**4.     The requested documents are in Plaintiff's custody or control (Reply to Response at pp. 10-12).**

Ward clearly has custody or control of ESN's documents.  Ward would have the Court believe that Ward only has custody or control of documents "located in Ward's office."

---

[5] The discovery period was at that time set to end on October 1, 2009, and this Court's scheduling order requires that all discovery motions be filed far enough in advance of the discovery deadline to give the opposing party enough time to file a response and the Court to make a ruling (Docket No. 47).  Accordingly, Defendant waited to the last minute to file the Motion, hoping Plaintiff would comply with his agreement.

(Response at p. 11). Yet "custody or control" does not mean possession, but rather the ability to obtain the documents upon demand. Ward and Albritton are co-counsel in the *ESN v. Cisco* lawsuit. This Court has already found at Plaintiff's insistence (an argument that Plaintiff made to this Court but now claims is "absurd") that Cisco had access to documents of non-parties because Cisco's attorneys had access to those documents in the *Albritton v. Cisco* case.[6] (Docket No. 60). The Plaintiff must be held to the same standard. Plaintiff should therefore be ordered to withdraw this baseless objection and either produce all responsive documents or identify the documents with enough specificity that Cisco can locate them in the public record.

Plaintiff's claim that he would "investigate complaints" about these objections if he knew what they were fails for the obvious reason: Cisco already asked for what it wants in the requests for production. Plaintiff's objection doesn't permit Cisco to determine what responsive documents Plaintiff is withholding from discovery; only Plaintiff knows what he is withholding from discovery. The Court should order Plaintiff to comply fully with the requests.[7]

5.      **Plaintiff is required to produce his financial records  (Reply to Response at pp. 12-21)**

        a.      **Financial records other than tax returns**

        Plaintiff's claim that Requests Nos. 4 and 5 are improper because Plaintiff has amended his pleadings is unfounded. The United States Supreme Court has held that "[c]onsistently with

---

[6] Plaintiff argues that the Court's order is not analogous because Rick Frenkel was a former Cisco employee, yet the Court's order was not limited to documents created during Frenkel's employment, and the Court also ordered Cisco to respond with respect to documents in the custody of Baker Botts. Nor has Mr. Frenkel ever been identified as a 30(b)(6) witness in this case as Plaintiff suggests; indeed Plaintiff has never even provided topics for corporate representative depositions in this case.

[7] Plaintiff also misrepresents to the Court that Defendant did not meet and confer regarding Plaintiff's broad objections to numerous requests that documents were in Cisco's custody and control. Cisco sent Plaintiff a letter on this specific issue on May 12, 2009. (Exhibit B to the Motion at ¶¶ 9-10). Thereafter, counsel for Defendant had a phone conversation with Ms. Peden, counsel for Plaintiff, wherein Defendant discussed this issue with Ms. Peden. (Exhibit B at ¶13). Defendant advised Plaintiff's counsel that if she would just identify the responsive documents in a way that Defendant could locate them, there would be no issue for the Court. Ms. Peden refused, and Plaintiff's subsequent amendment to the discovery did not cure this defect or remove the objection. (*Id.*) Therefore, the issue is ripe for the Court.

the notice-pleading system established by the Rules, discovery is not limited to the issues raised by the pleadings, for discovery itself is designed to help define and clarify the issues." *Oppenheimer Fund, Inc. v. Sanders*, 437 U.S. 340, 351 (1978) (citations omitted).

Instead, "the court should and ordinarily does interpret 'relevant' very broadly to mean matter that is relevant to anything that is or may become an issue in the litigation." *Id.* at n. 12 (citations omitted). Plaintiff's financial records are clearly relevant to claims that are or may become an issue in this litigation and are thus discoverable. Indeed, that is likely why financial records such as those requested here have been held discoverable and been found relevant for purposes of trial, as set forth in the Motion at pp. 8-11. Plaintiff makes a half-baked attempt[8] to distinguish these cases in a footnote, but his attempt fails. These cases make clear that in cases such as this one where Plaintiff alleges that he has lost client opportunities, his reputation has suffered, and he has suffered mental anguish that has affected his ability to work, he has put his financial information at issue; and thus it is discoverable. *See* Motion at pp. 8-10.

Evidence of the amount of Plaintiff's damages, if any, is also important evidence to which Defendant is entitled. *See Northport Health Services, Inc.*, 158 S.W.3d 164 (Ark. 2004) ("the jury was privy to the base pay and experience of [the plaintiffs] and could calculate the appropriate damages in connection with the defamation."); *Bentley v. Bunton*, 94 S.W.3d 561, 605 (Tex. 2002) (reversing an award of $7 million in mental anguish on the basis there was insufficient evidence that the amount would "fairly and reasonably compensate" the plaintiff for his loss). Plaintiff's financial records will rebut his claims for mental anguish and injury to reputation, and Defendant is entitled to discover these records.

---

[8] For instance, Plaintiff quibbles with cases discussing relevance of financial information at trial. If information is sufficiently relevant for admission at trial, it is certainly relevant for purposes of discovery.

Because Plaintiff's records are discoverable under the Federal Rules, he attempts to mislead the Court into applying the "compelling need" requirement that applies only to tax returns. Not a single one of the cases or statutes cited by Plaintiff applies a "compelling need" requirement to the financial records requested in Defendant's First Request for Production (including balance sheets, income statement and statements of cash flow) other than tax returns.[9]

Plaintiff's attempt to compare this case to the *Albritton* case also fails. In the *Albritton* case, Albritton was not claiming damage to his reputation. Indeed, Judge Schell in that case ordered that Albritton could not claim damage to his reputation because of his refusal to provide discovery on that issue. (Excerpt from Motion in Limine and Order granting same, Exhibit C). Unlike *Albritton*, here Ward is plainly claiming damage to his professional reputation. Therefore, he has put his financial records at issue, and they are discoverable.[10]

---

[9] Indeed, many of the cases relied on by Plaintiff ordered production of the very types of documents Defendant seeks here. *Barton v. Cascade Regional Blood Services*, 2007 U.S. Dist. LEXIS 59424 at *2 (W.D. Wash., Aug. 6, 2007) (Exhibit K to Response), relied on by Plaintiff, held that the parties' financial records other than tax returns were discoverable. Similarly, in *Walker v. Rent-A-Center, Inc.*, No. 5:02CV3, 2006 U.S. Dist. LEXIS 72232, at *9 (E.D. Tex., Oct. 3, 2006) (Exhibit L to the Response), the court specifically noted that the compelling need requirement did not apply to records other than tax returns. Also, in *Payne v. Howard*, 75 F.R.D. 465, 470 (D.D.C. 1977) (where, unlike here, the Court even questioned the relevance of the information) the Court ordered production of the Plaintiff's appointment records to show his workload.

[10] Plaintiff also misrepresents to the Court that Defendant did not meet and confer regarding production of Plaintiff's financial records. Defendant sent a letter to Plaintiff specifically on this issue. (Exhibit B to the Motion at ¶6). Thereafter, counsel for Defendant spoke with Ms. Peden, about this issue. (Exhibit B at ¶14). Counsel for Defendant specifically advised Ms. Peden that this case is different from the *Albritton* case, where Albritton was not permitted to allege damages to his professional reputation. (*Id.*) Plaintiff refused to produce the documents and refused to attempt to reach any compromise on this matter. (*Id.*; Exhibit A) Plaintiff's amended responses confirmed that Plaintiff was continuing to refuse to produce the documents. Plaintiff's Response even admits that Plaintiff advised Defendant that Plaintiff would not produce these records. (Response at p. 14). But Plaintiff complains that Defendant waited four months after her refusal. Defendant waited four months because it was attempting to come to an agreement regarding other matters in the Motion as stated above and to avoid filing numerous motions. Indeed, even today, Plaintiff admits that his position has not changed, though he suggests a stipulation that he never offered in the previous discussions would resolve the issue (though it will not since he still refuses to permit discovery of his income). This is simply another attempt to deflect attention from the fact that his argument on the merit fails.

**b.    Tax returns**[11]

As set forth in the Motion, Defendant has clearly shown that the requested tax returns are relevant.[12] (*See* pp. 8-11). Indeed, Ward fails to even dispute the reasons Defendant set forth in the Motion, instead arguing that he is not seeking lost profits, a claim Defendant did not make in the Motion. As Defendant set forth in the Motion, there is vast case law demonstrating that claims such as Plaintiff's for mental anguish and/or reputational damages put his finances at issue and therefore they are relevant. (*See* Motion at pp. 8, 10).

Even where a plaintiff does not seek lost profits, where he asks a jury to award damages for alleged mental anguish that impacts his work life and for damages to his professional reputation, the defendant is entitled to financial records showing that Plaintiff's claims are unfounded and/or the amount of the financial impact on the Plaintiff. *See* Motion at pp. 8-9. None of the cases Plaintiff cites (see pp. 18-19) even relate to whether a defendant is entitled to discovery of such evidence; they relate only to the <u>Plaintiff's</u> burden of proof at trial.

Plaintiff is disingenuous when he claims that he will not introduce evidence at trial that he has lost business because of the complained-of articles. In Ward's deposition, he alleged as evidence of damage to his reputation that clients would not hire him because of the articles, albeit through several layers of hearsay. (Exhibit G at pp. 81-88). Indeed, he listed in his disclosures the individuals identified in this testimony as witnesses concerning his damages. (Exhibit D). Defendant is entitled to rebut this by showing the level of financial success of Plaintiff's business since the publication as compared with his success before the publication.

---

[11] Despite Plaintiff's claim that Defendant cited the wrong standard to the Court (Response at p. 16), Cisco specifically advised the Court that <u>tax returns</u> are subject to the additional requirement that they are "discoverable only when there is a compelling need for the record—that is, whether the information is 'readily obtainable from another source'" (Motion at p. 10)—the same standard Plaintiff identified in the Response, though Plaintiff incorrectly claims that Defendant has the burden of showing that the information is not readily obtainable from another source.

[12] Ward now admits that his claim that the tax returns were privileged or could not be produced pursuant to statute is unfounded.

Plaintiff's attempt to import a "clearly relevant" standard fails.  Plaintiff has not cited any law holding that the normal relevancy standard does not apply here.  The Federal Rules define relevance as "evidence having **any tendency** to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence."  FED. R. EVID. 401 (emphasis added).  Plaintiff is plainly wrong in his argument that the fact that the documents requested "may show" that Plaintiff was not damaged is insufficient; the Federal Rules are clear that it is.[13]  Moreover, it is clear that Plaintiff's records <u>will</u> show the amount of increase in Plaintiff's clients, matters, and financial gain the very year he claims his professional reputational was damaged and he suffered such severe mental anguish, considering Plaintiff's admission that this was the case (Response at p. 19).

Plaintiff also cannot show that the information Cisco has requested is obtainable through some other source, nor has he even tried.  It is Plaintiff's burden to Defendant to show lack of compelling need, which Plaintiff concedes means that the information is not obtainable from another source (Response at p. 16).  *See E.E.O.C. v. Ceridian Corp.*, 610 F.Supp.2d 995, 997 (D. Minn. 2008).  Indeed, Plaintiff admits that "most courts" require the party resisting discovery to bear this burden.  (Response at p. 16).

Plaintiff fails to rebut Defendant's argument that the financial information in his tax returns (amount of income from his law practice in particular) is not obtainable through another

---

[13] The cases Plaintiff cites for this proposition (p. 20-21) also don't support it.  In *Camp*, 2009 U.S. Dist. LEXIS 12034, at *7-8 (Exhibit I to the Response), the Court held that the party seeking discovery <u>already had</u> the financial information that the tax return would reveal and couldn't show otherwise.  That is clearly not applicable here where Plaintiff has provided no financial information.  In *Helkene v. WD-40 Co.*, No. 04-2253-KHV-DJW, U.S. Dist. LEXIS 52766, at *3 (D. Kan., Jul. 25, 2006) (Exhibit Q to the Response) the Court held that there was only speculation that the records were relevant.  Here, Defendant has shown the relevance:  Ward made more money after the publication than before, and the records will show exactly how much more.  His client records will show that many clients hired him after the publications and that existing clients opened new matters with him.  There is no speculation here.  *Garcel, Inc. v. Hibernia Nat. Bank*, Civ. No. 01-0772, 2002 U.S. Dist. LEXIS 2390, at *8 (E.D. La. Jan. 23, 2002) (Exhibit R to the Response) does not even come close to supporting Plaintiff's claim; the Court there found that the party seeking discovery <u>was</u> entitled to some but not all of the requested financial documents because some but not all of them were relevant to the Plaintiff's claim.

source because he cannot.  As set forth in the Motion, Plaintiff has refused to testify about his income before or after the complained-of articles.  (Motion at p. 10; Exhibit I to the Motion). Plaintiff has failed to offer a stipulation of his income for these years.  It is clear that Defendant has no alternative source of this information.  Accordingly, Plaintiff has failed to demonstrate that there is not compelling need for his tax returns.

The cases relied on by Plaintiff support a finding that Plaintiff must produce the requested tax returns or are clearly distinguishable from this case.  *See Schoenbaum v. E.I. Dupont De Nemours and Co.*, No. 4:05CV01108 ERW, 2009 U.S. Dist. LEXIS 7208, at *6 (E.D. Mo., Feb. 2, 2009) (plaintiff ordered to produce part of a tax return and allowed to request further parts if the information needed was not provided in the that portion); *EEOC v. Ceridian Corp.*, 610 F.Supp.2d 995, 9967 (D. Minn. 2008) ("Because the EEOC provided Ceridian with W-2s and 1099s, this Court is satisfied that the information about Mr. Shelton's earnings is readily available from other sources.");  *Walker v. Rent-A-Center, Inc.*, No. 5:02CV3, 2006 U.S. Dist. LEXIS 72232, at *9 (E.D. Tex., Oct. 3, 2006) (declining to order production because the financial information had already been provided through testimony and other sources).  In stark contrast to these cases, Plaintiff has steadfastly refused to provide his financial information.[14]

In the unlikely event the Court does not require Plaintiff to produce his tax returns based on his representations in his Response, the Court should require him to stipulate to the jury the representations he made in his Response:  (1) the articles did not prevent him from making a living and he is making no claim that his law practice has been negatively affected in its finances

---

[14]  The other cases cited do not even apply here.  *See Premium Serv. Corp. v. Sperry & Hutchinson Co.*, 511 F.2d 225, 229 (9th Cir. 1975) (subpoena of a non-party's tax returns); *Barton v. Cascade Regional Blood Services*, 2007 U.S. Dist. LEXIS 59424 at *2 (W.D. Wash., Aug. 6, 2007) (Exhibit K to Response) (tax returns not relevant); *St. Croix Printing Equip., Inc. v. Sexton*, Civil No. 06-4273, 2008 U.S. Dist. 81916, at *16 (D. Minn., Jul. 18, 2008) (tax returns held not discoverable because the Plaintiff had made a judicial admission that it "will not claim that its general reputation has been damaged"); *Payne v. Howard*, 75 F.R.D. 465, 469-70 (D.D.C. 1977) (denying request for production of tax returns because requested information was obtainable from other sources).

(p. 20); (2) he is not claiming that he has lost business because of the complained-of articles (p. 19); (3) he has suffered no "monetary damage" or "damage to his business" as a result of the complained-of articles (p. 18); and (4) he made more money in 2008 than he did in 2007 (p. 19).

       **c.**      **Plaintiff cannot claim clients think less of him then shield his clients' identities from discovery.**

Plaintiff argues that all of his clients' files are not relevant, yet that is clearly not what Cisco requested.   Only by broadening Cisco's requests can Plaintiff make them look unreasonable and outside the bounds of the Federal Rules.   Cisco only asked for documents showing Plaintiff's new matters and new clients since the articles he complains about were published—not privileged information.  The identity of Plaintiff's clients is not privileged. *Klein v. Henry S. Miller Residential Services, Inc.*, 82 F.R.D. 6, 9  (N.D. Tex. 1978), *citing, inter alia, United States v. Ponder*, 475 F.2d 37, 39 (5th Cir. 1973) ("There is generally no attorney-client privilege as to the identity of the client, conditions of employment or matters involving receipt of fees"); *see also In re Grand Jury Proceedings (85 Misc. 140),* 791 F.2d 663, 665 (8th Cir.1986) (same). Plaintiff's nebulous claim of "harm" to "third parties" from disclosure of Plaintiff's new clients and matters cannot overcome his obligation to comply with discovery; Plaintiff is not exempt from the discovery rules due to his status as an attorney.   Plaintiff has not shown any "harm" and has failed to show how this imagined "harm" overcomes his obligations under the Federal Rules of Civil Procedure.

Plaintiff's new matter and new client information is relevant and probative of important issues in this case.  Plaintiff claims that certain clients have refused to hire him because of the articles at issue and that his professional representation has suffered.  Cisco's ability to rebut that allegation by showing that Plaintiff has been hired by the clients he says refused him, that he has been hired by many clients since the publication of the articles, that he would not have been able

to accept employment from the clients at issue because of conflicts of interest, and that he has attracted large and impressive clients or new matters from such clients since the publication of the articles are certainly relevant to this issue. Plaintiff should not be permitted to claim to a jury that he has been harmed because clients will no longer hire him, then hide behind a shroud of secrecy regarding who has indeed hired him.

This information is also relevant because Plaintiff will likely claim (as his co-counsel Eric Albritton did at trial) that he was unable to concentrate on his work because of his alleged mental anguish. The fact that he was able to pursue new clients during this time is certainly evidence of his ability to concentrate and his mental serenity. (See pp. 8-9 of the Motion). Therefore, the Court should order him to produce these documents.

Plaintiff's attempt to claim that his clients are a confidential business trade secret also fails. Plaintiff relies on a case that explains that customer lists are only a trade secret when there is a showing that the list is "obtained through use of a business effort, and the expenditure of time and money that are not readily ascertainable." *Freeman v. Brown Hiller, Inc.*, 102 Ark. App. 76, 84 (Ark. Ct. App. 2008). Plaintiff has not even attempted to make this showing and therefore cannot withhold documents on this basis.[15] Indeed, Plaintiff testified that he does not participate in the usual "beauty contest" efforts to locate clients, but rather that the same lawyers pick him in their cases as local counsel. (Exhibit G at pp. 83-84) Accordingly, his client lists are not trade secrets. *See id.*

---

[15] And unlike the other cases cited (*St. Croix Printing Equip.*, 2008 U.S. Dist. LEXIS 81918, at *13-14 and *Eglin Fed. Cred. Union v. Cantor*, 91 F.R.D. 414, 416 (N. D. Ga. 1981)), where the courts specifically found that the identity of customers was not relevant, here the identity of customers is clearly relevant because Defendant may be able to show Plaintiff was hired by the very clients that he says would not hire him because of the articles, or that the identity of the clients shows that Plaintiff is still being hired by large, successful companies (and thus rebut the claim that the articles harmed his reputation), among other things listed above.

**d.    The requests for Plaintiff's financial information is not unnecessary, unreasonably cumulative, overly broad or sought for the purpose of harassment.**

Plaintiff fails to show how the discovery of his financial information is protected from disclosure by Rule 26(b)(2)(C)(i)-(iii) except for making conclusory statements that it meets the standard of the rule.  Defendant seeks Plaintiff's tax returns from 2002 forward to show that the general trends of increases in Plaintiff's business income since 2002 continued even after the publication that he claims damaged his business reputation and caused him such severe emotional distress that no reasonable person could be expected to endure it.  The fact that his income increased at the same rate as it had over the past 5 years tends to show that his business reputation was not harmed as he claims and that he wasn't so severely distressed that he couldn't continue working at the same or similar rate that he had been working at previously.  Indeed, if Plaintiff had been willing to testify about his business income for these years, Defendant would not have had to request these documents, but Plaintiff refused.  (Exhibit I to the Motion).

Moreover, to the extent Plaintiff claims that the number of years for which financial records were requested was unreasonable, he is still required to comply with the discovery to the extent it was not unreasonable.  FED. R. CIV. P. 34(a)(2)(C).  The same is true with respect to Plaintiff's new clients and new matters.  *Id.*

Nor is Defendant attempting to harass Plaintiff.  Indeed, Defendant would consent to a redaction of Plaintiff's financial information except his business income.  However, Plaintiff has failed to provide <u>any</u> of his financial information.  (Exhibit I to the Motion).  The requests are not cumulative for the same reason.

Nor does Plaintiff explain how producing the identity of his clients would be to their "detriment," as he claims.  Simply identifying his new clients does not harm them.  Moreover,

Defendant would consent to a redaction of information other than the identity of the client, the matter, and scope of representation to eliminate any potential harm to Plaintiff's clients.

Plaintiff's grumbles about being "punished" for "bringing this lawsuit to clear his good name" are also unfounded.  Indeed, if Plaintiff merely wished to "clear his good name," his financial records would not be relevant.  Plaintiff has <u>chosen</u> to allege in this lawsuit that some clients will no longer hire him as evidence of his allegedly damaged professional reputation. Defendant is certainly permitted to discover evidence to show that Plaintiff's claims are unfounded, and Defendant should not be accused of harassment for seeking to defend itself. None of Plaintiff's cited cases support his refusal to produce responsive financial information.

**7.      Plaintiff concedes Defendant's argument regarding Request No. 10 and therefore should be ordered to comply with the request (Reply to Response at p. 26).**

Plaintiff does not even attempt to defend his baseless objections to Request No. 10, as set forth in the Motion, and completely avoids discussion of the request for correspondence regarding the credit card receipt.  As set forth in the Motion, the request calls not only for the receipt itself (Plaintiff does not deny that his counsel has the receipt, therefore Plaintiff should produce it, which Plaintiff admits would take "five minutes"), but also communications about the receipt.  Plaintiff's Response provides no legally recognized basis for hiding either, and therefore his objections should be overruled.

**8.      Defendant should be granted access to medical records relating to Plaintiff's claims (Reply to Response at p. 26-29).**

Defendant tacitly admits that Plaintiff's medical records that deal with mental anguish after the articles at issue are relevant (Response p. 26).  Accordingly, he should have complied with the request to that extent. Fed. R. Civ. P. 34(a)(2)(C).  He should be ordered to do so.

Defendant complains that the remainder of the request is too broad because it (1) is too broad as to time and (2) is not "limited to those medical conditions at issue in the case." (Response at p. 29). First, Defendant's request for medical records is not overly broad as to time as Plaintiff alleges. In this case, Plaintiff has alleged that he had trouble sleeping and had to take medication (Tylenol PM) to help him sleep because of his alleged mental anguish. (Exhibit G at pp. 19-20). Defendant is certainly entitled to medical records before the articles at issue were written that would show that Plaintiff's sleeping problems, if any, predated the articles at issue, thus rebutting causation.

Nor does *Miles v. Century 21 Real Estate*, No. 4:05-cv-1088, 2006 WL 2711534 (E.D. Ark. 2006), support Plaintiff's argument as he alleges. In that case the Court held the discovery was overly broad because it sought discovery of all medical records for the plaintiffs' <u>entire lives</u> and the plaintiffs had not alleged a specific medical issue that required medication as Plaintiff Ward has done here. *Id.* at *3. The Eighth Circuit addressed the situation here in *Batiste-Davis v. Lincare, Inc.*, 526 F.3d 377, 381 (8th Cir. 2007), where it held that plaintiff's previous depression treatment was discoverable where the plaintiff claimed mental anguish was caused by defendant, stating, "It is elementary that a witness may be impeached by contradictory evidence." *See also Patterson v. P.H.P. Healthcare Corp.*, 90 F.3d 927, 940 (5th Cir. 1996) *cert. denied*, 519 U.S. 1091 (1997) (holding that evidence of mental anguish "may include corroborating testimony or medical or psychological evidence"); *Doe v. Oberweis Dairy*, 456 F.3d 704, 718 (7th Cir. 2006), *cert. denied*; 127 S.Ct. 1828 (2007) ("If a plaintiff by seeking damages for emotional distress places his or her psychological state in issue, the defendant is entitled to discover **any** records of that state").

Nor is there any privilege covering Plaintiff's medical records as he alleges, citing to *Miles*. Indeed, *Miles* stated that there was <u>no</u> privilege for medical records. *Miles*, 2006 WL 2711534 at *3. With respect to records for psychotherapy, the Court held that that there is a limited privilege but that the privilege is waived when the plaintiff alleges "unusually severe distress." *Id.* at *5. Here, Plaintiff alleges distress so severe that no reasonable person could be expected to endure it. (Response at p. 27). This certainly waives any privilege with respect to such records. *Id.*; *see also Doe*, 456 F.3d at 718; *Patterson.*, 90 F.3d at 940.

Moreover, in this case Plaintiff testified that he spoke with a doctor who recommended medication. (Exhibit G at pp. 19-20). Plaintiff has opened the door to this evidence through his testimony. *Batiste-Davis*, 526 F.3d at 381.

Defendant merely seeks discovery of Plaintiff's medical practitioners (including mental health professionals), not his dentists and optometrists as Plaintiff suggests, and will so stipulate. Cisco is entitled to this probative evidence given Plaintiff's claims that he suffered emotional distress so severe that no reasonable person could be expected to endure it, his claim that the articles at issue caused him sleep problems that required medication, and his claim that he discussed the issue with a doctor who recommended medication. *See* Motion at pp. 13-15.

9.    **Plaintiff should be ordered to produce key documents in this case (Reply to Response at pp. 29-31).**

Plaintiff misleads the Court in claiming that Requests no. 13 and 15 request "every piece of paper ever connected in any way to the ESN case." Request No. 13 specifically limits the request to documents relating to the "initial filing of the complaint" and "the filing of the amended complaint" in the ESN case. Similarly, Request No. 15 is specifically limited to certain communications "relating to the filing of the ESN Lawsuit." This is the exact issue involved in the publication at issue in this lawsuit—the filing of the complaint and the filing of the amended

complaint—and is therefore narrowly tailored to lead to the discovery of admissible evidence regarding that issue. These communications certainly relate to the truth of the articles at issue and are therefore relevant.

Nor is the request unlimited in time. The complaint in the ESN case was filed in October of 2007, so the request is inherently limited. Presumably Plaintiff does not have communications dating prior to 2007 about a filing made in October of 2007 (if he does, such communications would be especially relevant and material). Indeed, during counsel's meet and confer on this issue, Defendant's counsel specifically discussed the issue of breadth, and Defendant's counsel pointed out the express limitation of the request to only communications about the _filing_ of the complaint and amended complaint—the very issue addressed in the article Plaintiff alleges is false and defamatory. (Exhibit B at ¶15). Plaintiff's objection to this request is utterly baseless.

Plaintiff also fails to explain how communications about the _filing_ of the complaint or amended complaint in the ESN case could be trade secrets or proprietary information. Defendant is not seeking technical information or other information subject to trade secret protection. Moreover, there is no privilege for confidential information or trade secrets. If Plaintiff seeks to shield its communications based on a claim of trade secret protection, he is required to at a minimum to explain why it is a trade secret and show how disclosure would cause harm. _In re Remington Arms Co., Inc._, 952 F.2d 1029, 1032 (8th Cir. 1991); _Cmedia, LLC v. Lifekey Healthcare, LLC_, 216 F.R.D. 387, 390-91 (N.D. Tex. 2003). Plaintiff has not done so here, nor could he.

Plaintiff's claim that the "ESN v. Cisco litigation file is online at PACER and is equally accessible to Cisco" is similarly absurd. Plaintiff's communications regarding the filing issue in this case are certainly not on PACER. Plaintiff should be required to produce them. And to the

extent Plaintiff knows of responsive, publically available documents, he should be required to produce or identify them.[16]

**10.     Plaintiff should be ordered to produce communications with the court and its personnel regarding the change of the docket at issue.  (Reply to Response at p. 32).**

Plaintiff claims that he should not be required to produce documents responsive to Request No. 14—communications relating to communications with the U.S. District Court or any of its employees (including clerks) regarding the filing of the ESN Lawsuit and/or whether subject-matter jurisdiction existed in the ESN Lawsuit—because they are privileged.  Plaintiff fails to even identify whether he has logged these documents on his privilege log, and indeed it appears that he has not.  He has therefore waived any privilege.

Plaintiff also misrepresents the request in an attempt to make it appear overly broad.  He states that the request is "unlimited in time and asks for all information about the 'regarding the filing of the ESN lawsuit' and 'subject matter jurisdiction.'"  (Response on p. 33).  Yet the requests ask only for "all documents relating to communications with the United States District Court or any of its employees (including clerks) regarding the filing of the ESN Lawsuit and/or whether subject-matter jurisdiction existed in the ESN Lawsuit."  (Exhibit E) (emphasis added).  This request is inherently limited because the definitions in the requests limit the ESN Lawsuit to "Civil Action No. 5:07-cv-156-MF-CMC in the United States District Court for the Eastern District of Texas—Texarkana Division", Exhibit E at p. 2) which was dismissed on November 20, 2007 (Exhibit F at p. 2).  Contrary to Plaintiff's claim, that litigation is not ongoing, but rather a new ESN case with a new cause number was filed.  (*Id.*)  The request is specifically limited to the original lawsuit.  Therefore the request is inherently limited in time and scope and

---

[16] Plaintiff's claim that this issue is not ripe is similarly absurd.  Plaintiff refused to come to any agreement on these requests in the meet and confer on May 21, 2009, and to this day has never indicated any willingness to reach an agreement on these requests.  (Exhibit B at ¶15).

is not overly broad as Plaintiff claims (as Defendant has advised Plaintiff's counsel in the meet and confer).

Plaintiff's claim that he cannot review the documents in the ESN file is also disingenuous. He is an attorney in that case and not only can review the documents but certainly has reviewed them; to claim otherwise would be to admit to malpractice. Nor is he precluded from reviewing the case files in the ESN litigation because of a protective order in the *Albritton* case. He has always had access to the documents requested as an attorney in the ESN case; the Protective Order does not change that. Plaintiff has cited no basis to avoid producing the documents on this basis. Moreover, as a practical matter, Cisco cannot use the *Albritton* documents subject to the protective order in this case and thus is entitled to have them produced or logged in this case so that Cisco can use the documents in this case and can file any appropriate motions with respect to documents logged as privileged. Indeed, Plaintiff insisted that Cisco do the same thing with its documents that were duplicative of documents produced in the *Albritton* case, and Cisco agreed without wasting this Court's time on baseless objections.

## 11.   Plaintiff should be required to respond fully to Request No. 18 (Reply to Response at p. 33-34)

Plaintiff's Response appears to admit that his objections are unfounded, then claims that he has responded fully to Request No. 18, but then admits that he has not, stating that "Additional documents will be produced in Ward's upcoming document production." Plaintiff's objections should be overruled and he should be required to produce these "additional documents" immediately.

Plaintiff has no answer to Cisco's Motion except that it requires him to "guess" and is unlimited in time. Yet the request is inherently limited in both time and scope; it asks Plaintiff to "Produce all documents that show or tend to show the truth or falsity of any statement in the

complained-of articles."   Plaintiff does not have to "guess"; he will certainly argue at trial that certain documents evidence the truth or falsity of the complained of statements, and he should be required to produce those documents (indeed he admits it would be a proper interrogatory; if he could answer the interrogatory, he can produce the responsive documents).

**12.   Plaintiff should be ordered to respond fully to Request Nos. 23-25.   (Reply to Response at pp. 34-37).**

Plaintiff is incorrect that only documents before the publication are relevant; as Plaintiff's Response recognizes (p. 34), only publicity caused by the publication is not relevant, and the requests do not ask for such documents.   Indeed, Plaintiff did not even object specifically on this basis to the request and therefore waived this objection.   Moreover, Plaintiff has offered no evidence proving that these documents are not in his custody or control.   Plaintiff certainly knows about instances where he has spoken at a seminar or written articles and therefore can obtain copies of these items, or at the least identify them so that Defendant may obtain them. Cisco agrees to limit Request Nos. 23 and 24 to the past five years as it did in Request No. 25. To the extent documents exist in the public domain, Plaintiff must locate and identify them.   His response implies that he has not even made a good faith attempt to do so.   (Response at p. 35).

**13.   Plaintiff should be required to produce documents relating to his status as a public figure (Reply to Response at pp. 35-37).**

Plaintiff does not deny that his lobbying efforts on patent reform are relevant.   Instead, he makes the same complaint that Defendant attempted to address in the parties' meet and confer— that the request could be construed to cover his voting records.   Defendant specifically told Plaintiff during their meet and confer that Defendant was not seeking Plaintiff's voting records and reiterated this in the Motion at p. 20.   Plaintiff is obviously just trying to avoid responding to a valid discovery request.   Indeed, he is required by the Federal Rules of Civil Procedure to

respond to the part of the request to which he does not object.  Fed. R. Civ. P. 34(a)(2)(C).  If his answer is that there are no responsive records, he should remove his baseless objections and respond that he has no responsive documents.  Indeed, he could have done this when the parties met to confer about this request.

For these reasons, Cisco requests that the Court overrule Plaintiff's objections and order Plaintiff to produce or log all responsive documents.

Respectfully submitted,

JACKSON WALKER L.L.P.


/s/ Charles L. Babcock
Charles L. Babcock
Federal Bar No.: 10982
Email: cbabcock@jw.com
Richard E. Griffin
Arkansas Bar No.: 63020
Email: rgriffin@jw.com
Crystal J. Parker
Federal Bar No.: 621142
Email: cparker@jw.com
1401 McKinney
Suite 1900
Houston, Texas 77010
(713) 752-4200
(713) 752-4221 – Fax
Kurt A. Schwarz
Jackson Walker L.L.P.
901 Main Street, Suite 6000
Dallas, Texas 75202
Telephone: (214) 953-6000
Telecopier: (214) 953-5822

ATTORNEYS FOR CISCO SYSTEMS, INC.

## CERTIFICATE OF SERVICE

This is to certify that on this 13th day of October, 2009, a true and correct copy of the foregoing was served via electronic mail upon:

Patricia L. Peden                          Nicholas H. Patton
Law Offices of Patricia L. Peden            Patton, Tidwell & Schroeder, LLP
5901 Christie Avenue                        4605 Texas Boulevard
Suite 201                                   P.O. Box 5398
Emeryville, CA 94608                         Texarkana, Texas 75505-5398
*Attorney for Plaintiff John Ward, Jr.*      *Attorney for John Ward, Jr.*

*/s/ Charles L. Babcock*
Charles L. Babcock