**IN THE UNITED STATES DISTRICT COURT**
**WESTERN DISTRICT OF ARKANSAS**
**TEXARKANA DIVISION**

| | | |
|---|---|---|
| **JOHN WARD, JR.** | § | |
| | § | |
| **Plaintiff** | § | No. 4:08cv4022 JLH |
| | § | |
| **V.** | § | JURY TRIAL DEMANDED |
| | § | |
| **CISCO SYSTEMS, INC.** | § | |
| | § | |
| **Defendant.** | § | |

# PLAINTIFF'S MOTION FOR PARTIAL SUMMARY JUDGMENT

Dockets.Justia.com

# TABLE OF CONTENTS

Page(s)

I. INTRODUCTION ....................................................................................1

II. SUMMARY JUDGMENT STANDARD ....................................................1

III. ARGUMENT ....................................................................................1

A. Ward is a Private Figure ....................................................................2

B. Ward is Not a Public Figure....................................................................4

1. The ESN Filing Was A Private Dispute Until Cisco Published Libelous Statements About Ward ....................................5

2. Ward Has Done Nothing to Voluntarily and Purposefully Inject Himself Into The Controversy Surrounding Patent Reform .............8

IV. CONCLUSION ....................................................................................12

## TABLE OF AUTHORITIES

**CASES** **Page(s)**

*Celotex Corp. v. Catrett*,
477 U.S. 317 (1986)........................................1

*Gertz v. Robert Welch, Inc.*
418 U.S. 323 (1974)........................................*passim*

*Hutchinson v. Proxmire*
443 U.S. 111 (1979)........................................5, 6, 8, 11, 12

*Lundell Mfg. Co. v. ABC, Inc.*, ........................................1, 2, 4, 5, 6,
98 F.3d 351 (8th Cir. 1996)

*Mann v. Yarnell*
497 F.3d 822 (8th Cir. 2007) ........................................1

*Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*
475 U.S. 574 (1986)........................................1

*Time, Inc. v. Firestone*
424 U.S. 448 (1976)........................................9

*Wolston v. Reader's Digest Ass'n*
443 U.S. 157 (1979)........................................1, 8, 9, 10, 11, 12

I. Introduction

In defamation law, the classification of the plaintiff as a private figure of public figure determines his burden of proof. *See Lundell Mfg. Co. v. ABC, Inc*., 98 F.3d 351, 356 (8th Cir. 1996), citing *Gertz v. Robert Welch, Inc*., 418 U.S. 323 (1974). A private figure only has to prove negligence to prevail, while a public figure may have to prove actual malice. *See id.* Whether Ward is a private or public figure is an issue of law to be resolved by the Court. *See Lundell*, 98 F.3d at 364. A ruling on the private/public figure issue now will narrow and frame the issues for trial [1] Thus, Plaintiff moves the Court for a ruling as a matter of law that Ward is a private figure plaintiff.

II. Summary Judgment Standard

To prevail on a no evidence summary judgment motion, the moving party must demonstrate "an absence of evidence to support the non-moving party's case." *Celotex Corp. v. Catrett*, 477 U.S. 317 (1986). Once the moving party demonstrates that the record does not disclose a genuine dispute on a material fact, the non-moving party may not rest on mere allegations or denials of his pleading but must "come forward with 'specific facts showing that there is a genuine issue for trial.'" *Matsushita Elec. Indus. Co. v. Zenith Radio Corp*., 475 U.S. 574, 587 (1986) (quoting Fed. R. Civ. P. 56(e)). "The nonmoving party's allegations must be supported by sufficient probative evidence that would permit a finding in his favor on more than mere speculation, conjecture, or fantasy." *Mann v. Yarnell*, 497 F.3d 822, 825 (8th Cir. 2007) (citations and internal quotation omitted).

III. Argument

Cisco bears the burden of proving that Plaintiff is a public figure. *See Lundell*, 98 F.3d at 364 (requiring defendant to show elements of public figure test); *see also Wolston v. Reader's Digest Ass'n*, 443 U.S. 157, 168 (U.S. 1979) (a libel defendant must show and justify the

[1] In the *Albritton v. Cisco* case, arising from the same articles and accusation at issue in this case, the private versus public figure issue was resolved by the Court on summary judgment. There, Judge Schell ruled that Albritton was a private figure plaintiff. *See Albritton v. Cisco*, case number 6:08-cv-00089, Eastern District of Texas, Tyler Division, docket entry no. 217 (attached hereto as Exh. A).

application of the demanding burden of *New York Times*). Because Ward is a private figure, and Cisco has no evidence to the contrary, the Court should rule as a matter of law that Ward is a private figure plaintiff.

A. Ward Is A Private Figure

In *Gertz v. Robert Welch, Inc*., 418 U.S. 323, 325-32 (1974), the Supreme Court established the controlling precedent for determining whether a defamation case involves a private or public figure plaintiff. *See Lundell*, 98 F.3d at 356, citing *Gertz*, 418 U.S. 323. In *Gertz*, a Chicago police officer named Nuccio was convicted of the murder of Ronald Nelson. *See Gertz*, 418 at 325. Mr. Nelson's family hired Elmer Gertz, an attorney, to represent the family in civil litigation against Officer Nuccio. *See id.* Defendant, Robert Welch, published a monthly magazine voicing the views of the John Birch Society. An article in the magazine alleged that Nuccio's murder trial had been part of a communist conspiracy to discredit the local police. *See id.* at 325-26. The article alleged that Gertz was a communist front person, implied that he had a criminal record, and accused Gertz of arranging Nuccios' "frame-up." *See id.* at 326. Gertz successfully sued for defamation, but the courts below refused to impose liability on the publisher because Gertz had not shown that the article was published with actual malice. *See id.* at 329-332.

The Supreme Court reversed. The *Gertz* Court found that the status of the plaintiff determined the applicable standard of fault. *See id*. at 344-47. The Court further held that the higher actual malice standard of fault was inappropriate in suits brought by private plaintiffs. *See Lundell*, 98 F.3d at 356, citing *Gertz,* 418 U.S. at 344-47. Under the Court's holding in Gertz, when the defamation plaintiff is a private figure, the states are free to apply a standard of fault that is less demanding than actual malice as long as they do not impose liability without fault. *See Gertz*, 418 U.S. at 346-47.

Turning to the facts before it, the *Gertz* Court concluded that Gertz was a private figure. *See* 418 U.S. at 352. The Court rejected the defendant's argument that Gertz's appearance at the coroner's inquest in connection with his representation of the Nelson family made Gertz a public

figure. The Court denounced the defendant's attempt to label Gertz a public figure as a result of his work on behalf of a client, stating that such a rule "would sweep all lawyers under [the higher actual malice] rule as officers of the court and distort the plain meaning of the 'public official' category beyond all recognition." *Id.* at 351. Although Gertz was a prominent attorney and legal scholar, had been active in community and professional affairs, had served as an officer of local civic groups and of various professional organizations, had published several books and articles on legal subjects, and was well-known in some circles, the Court found those facts insufficient to make Gertz even a limited purpose public figure. *Id.* at 351-52. The Court concluded that the lawsuit giving rise to the defamation of Gertz "related solely to his representation of a private client," and that Gertz "did not thrust himself into the vortex of [the] public issue, nor did he engage the public's attention an attempt to influence the outcome." *Id*. at 352.

Here too, the only thing that Ward can be said to have done with respect to Cisco's accusations about him is to represent his client, ESN, in a lawsuit it brought against Cisco. In this case, unbeknownst to Ward or anyone else, Cisco's in-house counsel had an anonymous web blog that he used, at Cisco's direction, to make false accusations about Ward. Cisco's defamatory statements about its opposing counsel arose solely out of Ward's representation of his client in a private lawsuit against Cisco.[2] Under *Gertz*, Ward must be found to be a private figure. In fact, Gertz was found to be a private figure, despite evidence showing that he was a legal scholar and a community activist; activities that thrust him into the public eye to a far greater degree than can be said about Ward. If Gertz could not be a public figure, neither can Ward.

[2] This point was further articulated in the concurring opinion in *Gertz*: "The petitioner here was performing a professional representative role as an advocate in the highest tradition of the law, and under that tradition the advocate is not to be invidiously identified with his client. The important public policy which underlies this tradition—the right to counsel—would be gravely jeopardized if every lawyer who takes an unpopular case, civil or criminal, would automatically become fair game of irresponsible reporters and editors who might, for example, describe the lawyer as a 'mob mouthpiece' for representing a client with a serious prior criminal record, or as an 'ambulance chaser' for representing a claimant in a personal injury action." 418 at 354-355 (concurring opinion of Chief Justice Burger).

B. Ward Is Not A Public Figure

In reaching its decision that Gertz was a private figure, the Court defined two classifications of public figures; both of which it found not to apply to Gertz. *See Lundell*, 98 F.3d at 362. The first classification, a "general purpose public figure," applies to celebrities, politicians and others who have attained such large-scale public recognition that they may be considered a public figure for all purposes and in all contexts. *See id., citing Gertz,* 418 U.S. at 351. Ward clearly does not fall into this category, and Plaintiff does not believe that Cisco will contend otherwise.

The second classification, "limited purpose public figures" applies to plaintiffs who have voluntarily interjected themselves into a particular public controversy, and thereby become a public figure for the limited range of issues concerning that particular controversy. *See id*. Generally speaking, this category of public figure is limited to those who have thrust themselves into the public limelight by speaking out on a certain issue. While the *Gertz* Court noted that "hypothetically, it may be possible for someone to become a public figure through no purposeful action of his own, [] the instances of truly involuntary public figures must be exceedingly rare." *See Lundell*, 98 F.3d at 362, citing *Gertz*, 418 U.S. at 345.

The United States Court of Appeals for the Eight Circuit has defined a limited-purpose public figure as a person who purposefully and voluntarily injects himself into the particular public controversy giving rise to the defamation in an attempt to influence the resolution of that controversy. *See Lundell*, 98 F.3d at 362, citing *Gertz*, 418 U.S. at 352. Cisco has no evidence to support a finding that Ward is a limited purpose public figure because there was no existing controversy about the subject matter of Cisco's articles at the time it libeled Ward, and even if there was on ongoing controversy about "patent reform" as alleged by Cisco, that debate is not connected to Cisco's libelous posts and Ward had done nothing to purposefully interject himself into the public debate on that issue.

1. The ESN Filing Was A Private Dispute Until Cisco Published Libelous Statements About Ward

The first task is for the Court to identify the particular public controversy said to give rise to the defamatory speech. *See Lundell*, 98 F.3d at 364. A general concern or interest will not suffice. *See Hutchinson v. Proxmire,* 443 U.S. 111, 135 (1979). That a concern is shared by others, even most, does not make it a sufficient public controversy to bestow public figure status on a defamation plaintiff. *See id.* As the Supreme Court has stated, the "use of such subject-matter classifications to determine the extent of constitutional protection afforded defamatory falsehoods may too often result in an improper balance between the competing interests in this area [of law]." *Id.* Therefore, before Cisco can attempt to elevate Ward to public figure status, it must identify a specific public controversy, and then show that Ward took purposeful and voluntary steps to interject himself into the public spotlight concerning that specified issue in an attempt to influence the outcome. Cisco cannot make the required showing.

Cisco claims that the articles at issue addressed "the public controversy regarding the abuse of the patent system by non-practicing entities in the Eastern District of Texas, including the issue of non-practicing entities attempting to maintain venue in the Eastern District of Texas because of advantages of maintaining their case there." *See* Cisco's Motion for Summary Judgment (defining the public controversy) in *Albritton v. Cisco*, case number 6:08-cv-00089, Eastern District of Texas, Tyler Division, docket no. 97 at18-19, attached hereto as Exh. B. In an attempt to tie Ward to its declared "patent reform" controversy, Cisco recently filed a motion to compel, asking for documents relating to any trips taken by Ward to Washington D.C. and any meetings he had with legislators regarding patent reform, claiming that Ward's lobbying activities on the issue of patent reform are relevant to his status as a public figure. *See* D.E. 101 at 19-20. Thus, Cisco has framed the public controversy as relating to "the specific issue of patent reform." *See* D.E. 101 at 20.

Try as it might, Cisco cannot leverage the general public debate surrounding patent reform legislation into the particularized controversy underlying its defamatory articles. If that

were the case, all defendants would do what Cisco seeks to do here; reach out into the ether to find a general public controversy, manufacture a connection between that controversy and its defamatory statements, and force upon the plaintiff a higher burden of proof in every defamation case. Avoiding that type of insincere argument is precisely why the law holds that generalized controversies will not suffice. *See Hutchinson,* 443 U.S. at 135 (1979).

In determining Ward's status, the Court must focus on "the particular controversy *giving rise to the defamation*." *See Lundell*, 98 F.3d at 352 (emphasis added). The controversy giving rise to Cisco's defamation of Ward was the filing of the complaint in a private litigation between ESN and Cisco. The defamatory allegations about Ward were that he conspired with the Court to alter governmental records to benefit his client, ESN, at Cisco's expense. There is nothing in the accused posts that discusses the myriad of patent reform issues that have been the subject of public discourse, let alone discusses Ward's role in that broad general controversy. There is no statement to that effect because that was not the point of the articles. The posts were part of Cisco's attempt to gain an advantage for Cisco in the ESN v. Cisco litigation by advancing Cisco's "DJ strategy." *See* Exh. C (Cisco emails) at privileged.0000184; privileged.000276-277. Cisco was looking for every litigation advantage possible, including finding the "right" counsel to champion its attempt to have the ESN case moved to a venue of Cisco's choosing. *See id.* at privileged.000184; privileged.000214. Cisco's Vice President, Mallun Yen, and Cisco's Public Relations Manager, John Noh commissioned an article from Frenkel as a vehicle through which to advance Cisco's litigation objectives in the ESN case. *See See id.* at privileged.000110; Ark.002029; Ark.000318-19. Although Cisco learned that there had been an error in the way the Court's electronic filing system automatically generated the docket entry, and although Cisco learned that its argument had only a 10-20% chance of prevailing on the merits, Cisco continued to falsely accuse Ward of altering documents until Frenkel's identity was uncovered. *See id.* at privileged.000213; privileged.000005. Cisco used the Troll Tracker posts to make false allegations that it could not have made in a pleading filed with the Court.

The accused articles are not about the general issue of patent reform. Rather, they are malicious accusations about Cisco's opposing counsel, made out of spite and ill-will because Cisco never thought the Troll Tracker posts would be traced back to Cisco. Cisco's spite and underhanded litigation tactics do not create a public controversy even if they emanated from Cisco's opinions about the Eastern District of Texas and patent reform.

Prior to Cisco's creation of the accused Troll Tracker posts, there was no public debate about the ESN case, John Ward, Jr.'s alleged criminal or unethical behavior in representing his clients, or any alleged improprieties in the Eastern District of Texas clerk's office. That is why Cisco asked Frenkel to create a news story; because there wasn't one until Cisco ginned one up. *See id*. at privileged.000011-000012; Cisco.000390-91. The fact that Cisco could quickly and broadly disseminate false accusations using the Troll Tracker blog does not transform a private litigation into a public controversy.

There is little doubt that Cisco's argument lacks merit. In fact, it has already been told that the articles at issue were not about a public controversy. In the *Albritton v. Cisco* case, the Court rejected Cisco's "public controversy over patent reform" argument, finding that the articles at issue discussed the ESN v. Cisco case and that "[t]he *ESN* lawsuit was not a matter of public concern." *See* Exh. A at 10. Cisco had a full and fair opportunity to make its argument to the Texas Court. It did; and it lost. This Court should avoid inconsistent results in federal court proceedings concerning the same legal question and the same accused articles by adopting the Texas Court's ruling against Cisco.

If there was no public controversy at the time Cisco libeled plaintiff, the first prong of the limited-public figure test cannot be met and Ward is a private figure. But, even if the Court were to adopt Cisco's alleged controversy, as discussed below, Ward cannot be a limited public figure because Cisco cannot show that Ward voluntarily and purposefully injected himself into the controversy surrounding patent reform.

2. Ward Has Done Nothing To Voluntarily and Purposefully Inject Himself Into The Controversy Surrounding Patent Reform

After identifying the particular controversy giving rise to the defamation, the Court must examine the "nature and extent" of Ward's involvement in the particular controversy. *See Lundell*, 98 F.3d at 364. This inquiry is necessary to determine whether Ward has "thrust himself to the forefront of the particular public controversy in order to influence the resolution of the issues involved." *Id.*, citing *Gertz*, 418 U.S. at 345 (internal citation omitted). This Circuit has made clear that it is the plaintiff's role in the controversy that is determinative of limited public figure status. *See Lundell*, 98 F.3d at 364, citing *Hutchinson*, 443 U.S. at 135; *Wolston*, 443 U.S. at 167.

Ward has not thrust himself into the forefront of the public debate surrounding patent reform. As Ward testified in his deposition, he has not made any trips to lobby Congress on the issue of patent reform and has not met with any representatives to discuss that issue. *See* Exh. D (Ward Depo.) at 138:4-139:24. Cisco cannot point to a single instance where Ward has purposefully and voluntarily interjected himself into the public spotlight to influence the outcome of patent reform. *See Lundell*, 98 F.3d at 363. Far from engaging in more public debate about patent reform than others, Ward has engaged in less. Again, the Texas Court's finding in the *Albritton* case is instructive. There, the Texas Court found that Albritton was a private figure with respect to the same articles and the same alleged controversy advanced by Cisco in this case. In the *Albritton* case, Albritton had actually accompanied other persons when they took trips to Washington D.C. to meet with legislators. Ward has not. Albritton had appeared on television to discuss non-patent related topics. Ward has not. Albritton had written published articles on non-patent related legal issues. Ward has not. Albritton's activities were insufficient to show that he had thrust himself into the public spotlight on the issue of patent reform. *See* Exh. A at 11. Here, where Ward has taken no trips to Washington D.C. to discuss patent reform and has not appeared on television or print let alone on the issue of patent reform, Cisco's argument is even weaker than its failed argument in the *Albritton* case. *See id.*

Even if one were to assume for the sake of argument only that Cisco had any evidence to support its argument—and it does not—its argument is still destined to fail because the predicate for Cisco's argument is itself fatally flawed. A limited purpose public figure finding takes a person out of the private realm only for a limited issue. Thus, there must be some nexus between that person's public activities and the specific public issue underlying the defamatory statements. In other words, limited purpose public figures are just that: public figures only as to a specific topic. Here, Ward's public figure status would be limited to discussions about the patent reform act or his role in connection with that act. It would not render Ward a public figure with regard to defamatory statements on issues other than patent reform. *See Gertz*, 418 U.S. at 352; *Wolston,* 443 U.S. at 166. The defamatory posts that are the subject of this litigation arise from the filing of a complaint in a private lawsuit between ESN and Cisco. The posts say nothing about positions held or actions taken by Ward in connection with patent reform and are not germane to the patent reform debate that Cisco relies on to support its argument.

The futility of Cisco's attempt to saddle Ward with the heighted burden of proof allotted to public figures is underscored by Supreme Court case law. The Court has revisited its holding in *Gertz* three times since issuing that opinion and each time the Court reversed a lower court's decision finding the plaintiff to be a public figure.

In *Time, Inc. v. Firestone*, 424 U.S. 448 (1976), Time Magazine wrote an article about the divorce proceedings of a member of a prominent family of industrialists. *See id.* at 450. The press displayed a great deal of interest in the sensational accusations made by both parties to the proceedings. After Time wrote a story about the accusations made in the lawsuit, Mrs. Firestone brought a successful defamation claim against Time. Time appealed to the Supreme Court, arguing that Mrs. Firestone was required to prove the heightened actual malice standard because she was a public figure and because the article at issue reported on judicial proceedings. *See id.* at 453. The Court refused to label Mrs. Firestone as either a general purpose public figure or a limited purpose public figure with respect to the court proceedings discussed in the Time article. The Court held that Mrs. Firestone could not be a public figure because she did not assume any

role of "especial prominence in the affairs of society, other than perhaps Palm Beach society, and she did not thrust herself into the forefront of any particular public controversy in order to influence the resolution of the issues involved in it." *Id.* Although Mrs. Firestone had given public press conferences about the divorce proceedings, that was insufficient to make her a public figure because the press conferences were not undertaken for the purpose of affecting the outcome of a public issue. *See id.* at 455 n.3. Nor was the fact that the public was interested in the Firestones' divorce sufficient to make Mrs. Firestone a public figure. The Court reasoned that not all controversies that garner public attention are matters of "public interest" sufficient for a finding of public figure status under *Gertz*. *See id.* at 454. Finally, the Court rejected Time's argument that because it was reporting on proceedings in our Nation's courts, Mrs. Firestone was required to prove actual malice. The Court held that Mrs. Firestone's actions, both in instituting the litigation and in its conduct did not turn her private dispute in to a public one.[3] *Id.* at 454-55. The Court concluded that Mrs. Firestone was a private figure.

In *Wolston v. Reader's Digest Ass'n*, 443 U.S. 157 (1979), publishers of a book falsely described Wolston as being a Soviet agent who had been indicted for espionage. *Id.* at 160. In Wolston's defamation lawsuit, the lower court held that he was a limited public figure with respect to public controversy surrounding the propriety of the actions of law enforcement officials in investigating and prosecuting suspected Soviet agents. *See id*. at 166, n. 8. Wolston appealed and the Supreme Court reversed. *See id.* at 161. First, the Supreme Court addressed the litany of information publically disseminated about Wolston: his aunt and uncle were convicted spies and he had been questioned by authorities in connection with a suspected Soviet espionage ring; he had given grand jury testimony about Soviet espionage; he had refused to appear in response to a grand jury subpoena on one occasion, resulting in at least seven news stories about his failure to appear; he pleaded guilty to contempt of court for failing to comply

[3] The Court also noted that "[t]he details of many, if not most, courtroom battles would add almost nothing toward advancing the uninhibited debate on public issues thought to provide principal support of the decision in *New York Times*." *See id.* at 457.

with the grand jury subpoena, resulting in another 15 news reports about those proceedings; he was mentioned in a book entitled "My Ten Years as a Counterspy"; and he was mentioned in a report prepared by the FBI entitled "Expose of Soviet Espionage." *See id*. at 161-163. After considering the public information about Wolston, the Court rejected defendant's argument that the press surrounding Wolston's actions made him a limited purpose public figure.[4] The Court reasoned that although Wolston's conduct was likely to attract media attention, it was not the type of activity that conferred public figure status. *Id.* at 167. The Court found that Wolston had neither "voluntarily thrust" nor "injected" himself into defendant's stated public controversy. *See id*. at 166. Wolston did not discuss the matter with the press and limited his involvement to defending the contempt charges. *Id.* at 166. The Court noted "[i]t would be more accurate to say that [Wolston] was dragged unwillingly into the controversy." *Id.* at 166. Further, the Court found that Wolston could not be classified as a limited public figure because he did not seek to "engage[] the attention of the public in an attempt to influence the resolution of the issues involved." *Id.* at 168. Because "[a] private individual is not automatically transformed into a public figure just by becoming involved in or associated with a matter that attracts public attention," Wolston was a private figure. *Id.* at 167.

In *Hutchinson v. Proxmire*, 443 U.S. 111, (1979), Hutchinson, a research behavioral scientist, filed a defamation suit as the result of having the topic of his research, why monkeys clench their jaws, listed by Wisconsin Senator William Proxmire in his "Golden Fleece Awards" as an example of wasteful government spending. *See id.* at 117-18. Although Hutchinson was the Director of Research at a state hospital, an adjunct professor at a state university, had published his research, and had actively sought and received several publically funded research grants, the Court held that it was error to classify him as a public figure for the limited purpose of comment on his receipt of federal funds for research projects.[5] *See id*. at 114-115, 119, 134-35.

---

[4] The defendant did not argue that Wolston was a general public figure and the only issue before the Court was plaintiff's status as a limited purpose public figure. *See id*. at 165.

[5] Defendant did not argue that Hutchinson was a general public figure, only a limited purpose public figure for the purpose of comment on his receipt of federal funds for research projects. *See id.* at 134. Therefore the only issue before the Court was whether plaintiff was a limited purpose public figure. *See id*.

The Court found that Hutchinson could not be a limited purpose public figure because he "did not thrust himself or his views into public controversy to influence others." *Id.* at 135. The Court observed that Hutchinson had done nothing more than engage in activities undertaken by members of his profession. *Id.* at 135. The Court also held that the controversy alleged by defendants—the debate over public financing—was not a specific controversy, but was rather, at most, a general public concern insufficient to make Hutchinson a public figure. *See id.* at 135. To the extent that Hutchinson's activities became a matter of public controversy, it was only after Senator Proxmire's defamatory statements were published. That, the Court held, cannot be used to turn a plaintiff into a public figure because "those charged with defamation cannot, by their own conduct, create their own defense by making the claimant a public figure." *Id.* at 135.

In *Gertz*, *Firestone*, *Wolston*, and *Hutchinson*, each of the plaintiffs were much more in the spotlight than is Ward, and in each of those cases the Court found the plaintiff was a private figure. If Gertz, Firestone, Wolston, Hutchinson and Albritton are not public figures, Ward cannot be. Cisco cannot seriously contend otherwise. And, if it does, Cisco has no evidence on which to build its doomed argument.

IV. Conclusion

Plaintiff respectfully requests that the Court grant Plaintiff's Motion for Partial Summary Judgment and find as a matter of law that Ward is a private figure plaintiff.

Respectfully submitted,

Nicholas H. Patton
Arkansas Bar No.: 63035
PATTON, TIDWELL & SCHROEDER, LLP
4605 Texas Boulevard
P. O. Box 5398
Texarkana, Texas 7550505398
(903) 792-7080
(903) 792-8233 (fax)

Patricia L. Peden
LAW OFFICE OF PATRICIA L. PEDEN
1316 67th Street, Suite 6
Emeryville, CA 94608
Telephone: (510) 268-8033

ATTORNEYS FOR PLAINTIFF

**CERTIFICATE OF SERVICE**

This is to certify that on this 13th day of October, 2009, a true and correct copy of the foregoing document was served electronically via the Court's CM/ECF system upon:

Richard E. Griffin
Charles Babcock
Crystal Parker
Kurt Schwarz
JACKSON WALKER, LLP
1401 McKinney
Suite 1900
Houston, Texas 77010

Attorney for Defendant Cisco Systems, Inc.

Nicholas H. Patton