IN THE UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF ARKANSAS
TEXARKANA DIVISION

| | | |
|---|---|---|
| JOHN WARD, JR. | § | |
| | § | |
| v. | § | NO. 4:08cv4022 |
| | § | |
| CISCO SYSTEMS, INC. | § | JURY |
| | § | |

**PLAINTIFF'S MOTION FOR RECONSIDERATION OF THE
COURT'S ORDER REGARDING THE SCOPE OF
CISCO'S SUBJECT-MATTER WAIVER OF PRIVILEGE**

Dockets.Justia.com

# TABLE OF CONTENTS

Page(s)

I.   INTRODUCTION ........................................................................................... 1

II.  LEGAL STANDARD ..................................................................................... 3

III. ARGUMENT ................................................................................................. 3

    A.  The Scope Of The Court's Subject-Waiver Should Include
    October 19, 2007 ...................................................................................... 4

        1.  The Articles At Issue In This Case Include October 19, 2007 ................................ 4

        2.  Documents Created On October 19th Are Highly Relevant
          Because They Show That Cisco Published The October 19th
        Post With Knowledge Of The Falsity Of The Information
        Contained Therein And With Reckless Disregard Of The Truth ........................... 5

            a.  Baker Botts Told Cisco Its Accusations Were Not True ................................... 6

            b.  Cisco Learned From The *Hertz v. Enterprise* Case That
              It's Accusations Were Not True ........................................................................ 7

            c.  Cisco Learned From Its Own Legal Research That Its
              Accusations Were Not True ............................................................................... 9

            d.  Cisco Learned From ESN's Pleading In The Eastern District
              Of Texas That Its Accusations Were Not True ................................................. 9

            e.  Even After Obtaining All Of The Information Discussed Above,
              Cisco Published Another Defamatory Post on October 19, 2007 ................... 10

    B.  The Scope Of The Court's Subject-Matter Waiver Should
    Include Cisco Employees Frenkel, Yen, Noh and Beckwith ........................................ 11

        1.  The Scope Of The Court's Waiver Order Should Include Yen
          And Noh Because They Participated In The Publication Of
           Cisco's Libelous Accusations About Ward ............................................................ 12

        2.  The Scope Of The Court's Waiver Order Should Include Yen
          And Beckwith Because They Furnished Information To
          Frenkel That Cisco Admits He Relied Upon In Making
          His False Accusations About Ward ...................................................................... 15

III. CONCLUSION ............................................................................................. 17

i

# TABLE OF AUTHORITIES

**CASES** **Page(s)**

*Amway Corp. v. P&G, Co.*
  2001 U.S. Dist. LEXIS 4561 (W.D. Mich. Apr. 3, 2001) ........................................ 11, 15

*Burress v. Union Pac. R.R.*,
  2007 U.S. Dist. LEXIS 1749 (E.D. Ark. Jan. 8, 2007)..................................................... 2

*Fort James Corp. v. Solo Cup Co.*,
   412 F.3d 1340 (Fed. Cir. 2005)...................................................................................... 3

*Minn. Specialty Crops v. Minn. Wild Hockey Club*, L.P.,
  210 F.R.D. 673 (D. Minn. 2002)..................................................................................... 3

*United States v. Workman*
  138 F.3d 1261 (8th Cir. 1998) ........................................................................................ 2

## I. Introduction

On March 30, 2009, this Court entered an Order finding that Cisco waived attorney client privilege and work product protection regarding all information known to Frenkel at the time he published defamatory statements about Ward.  *See* D.E. 89 at ¶ 7.  The Court's decision has been affirmed by the Eighth Circuit, is law of the case, and Cisco produced some documents to Ward on October 9, 2009.  There is no issue raised in this motion about the Court's Order finding waiver.

The issue here is the <u>scope</u> of the Court's waiver.  Plaintiff respectfully submits that the Court's Order should have included October 19, 2007.  The Court concluded that Cisco's subject-matter waiver includes all information known to Frenkel "on or before he made the last blog postings at issue."  *See id.* at ¶ 8.  The Court's Order limited the waiver to October 18th because Cisco represented to the Court that documents after that date were created after the accused articles had already been published.  *See id.*  Cisco apparently misrepresented the facts.[1] There are three articles at issue in this case:  one published on October 17, 2007, one published on October 18, 2007, and one published on <u>October 19, 2007</u>.  The October 19th post was an edited version of the October 18, 2007 post, although it contains an erroneous date because Frenkel did not change the date when he posted the new article.[2]  That post has been referred to the parties in this case as either the "revised October 18th post" (revised on Oct. 19th) or the "October 19th post."[3]  Thus, the scope of the waiver ordered by the Court should include October 19, 2007.

The scope of the Court's wavier should also included include Cisco employees, Yen, Noh, and Beckwith.  Cisco is the defendant in this case and Cisco waived privilege.  The Court's

---

[1] The representations that the Court is referring to are made in Cisco's submission log, wherein Cisco states that documents created on October 18th and October 19th were created after the publication of the accused posts.  *See* Exh. A. (Group 1 submission log) at 27b, 27c, 36a, 36b, 36c, 36d, 36e, 36f, 40a, 40b, 40c; Exh. B (Group 2 submission log) at 7a, 16a, 24a, 27a, 31a, 31b, 37a, 37b, 37c, 53a, 53b, 53c, 65a, 66a, 66b, 66c, 68a.  Because Plaintiff did not have an opportunity to respond to arguments made in Cisco's log, those statements went unchallenged.
[2] There is no dispute between the parties that there was a separate publication on October 19, 2007.  *See* Exh. C (Frenkel Depo.in Albritton case) at 106:6-108:23; 112:3-12): D.E. No. 71 at ¶¶ 34, 42.
[3] For clarification, from this point forward, Plaintiff will refer to this post at the October 19th post.

waiver should encompass Cisco; not just one of its employees.  Cisco carefully worded its discovery responses to give the impression that the articles at issue were published by one of its employees:  Rick Frenkel.  As it turns out, that is not true.  At least one of the accused articles, if not more, was published as a joint effort between Frenkel, his direct supervisor, Cisco's Vice President, Mallun Yen, and Cisco's Public Relations Manager, John Noh.  Information known to Yen and Noh must be produced because Ward is entitled to learn what Cisco knew at the time it participated in, adopted, and ratified the accused publications.

Lastly, Cisco's discovery responses expressly state that Frenkel relied on information he obtained from either Mallun Yen or another Cisco lawyer, Marta Beckwith, in making his libelous accusations about Ward.[4]  *See* Exh. D (Cisco's Amended Responses to Plaintiff's First Set of Interrogatories) at pg. 48, no. 4.  The Court's Order, however, does not appear to require production of this subset of information, although it was admittedly relied on by Frenkel.  *See id.* Plaintiff believes that the Court's omission of this category of communications was an oversight given that the Court's clear intent was to have Cisco produce to Plaintiff all information relied upon by Frenkel on the dates he published the accused articles.  The Court's Order should be clarified to state that Yen and Beckwith's communications during the limited three-day period ordered by the Court should be produced.

Ensuring that the scope of the Court's waiver includes October 19th and Yen, Noh, and Beckwith is just, fair, and consistent with the Court's ruling, which was intended to remedy the fundamental unfairness of permitting Cisco to rely on communications with counsel while at the same time withholding those communications from Ward.[5]  Expanding the scope to include one

---

[4] Frenkel can't remember who he received this information from so it is necessary to have a subject-matter waiver that encompasses both.  *See* D.E. No. 61 (Cisco's Response to Plaintiff's Motion to Compel and for Sanctions) at 7, fn. 8; Exh. D (Cisco's Amended Responses to Plaintiff's First Set of Interrogatories) at pg. 48, no. 4; D.E. no. 72 at 10:20-11:23).  Kurt Pankratz at Baker Botts testified that he provided the information that Cisco requested from Baker Botts to both Yen and Beckwith.  *See* Exh. E (9/15/09 Albritton Trial Transcript.) at 503:21-504:12; 519:14-520:13.

[5] *See United States v. Workman*, 138 F.3d 1261, 1263-64 (8th Cir. 1998) (at its core, waiver is designed to prevent the fundamental unfairness of allowing a party to rely on communications with counsel to benefit its cause, while at the same time depriving its adversary of the evidence needed to test, challenge, and rebut its claims); *Burress v. Union Pac. R.R.*, 2007 U.S. Dist. LEXIS 1749, at *4-5 (E.D. Ark. Jan. 8, 2007) ("[A] defendant may not use the

additional day and three additional Cisco employees is sufficiently limited so as not to run afoul of the Court's concern about not giving Plaintiff an unlimited waiver.

## II.  Legal Standard

When, as here, a waiver of the attorney-client and work product privileges have been waived by putting at issue Cisco's reliance on communications with legal counsel, the scope of the waiver is not confined to particular dates or persons, but rather extends to all communications on the same "subject matter." *See Fort James Corp. v. Solo Cup Co*., 412 F.3d 1340, 1349 (Fed. Cir. 2005) (The widely applied standard for determining the scope of a waiver is that the waiver applies to all other communications relating to the same *subject matter*.).  When a waiver has been found, the relevant legal advice becomes a "factual issue, and opposing counsel is entitled to know not only whether such an opinion was obtained but also its content and what conduct it advised."  *Minn. Specialty Crops v. Minn. Wild Hockey Club*, L.P., 210 F.R.D. 673, 677 (D. Minn. 2002).  The waiving party "must produce not only other communications and opinions of the same attorney, but also privileged information from other counsel involving the same subject."  *See id. at* 679.  "There is no bright line test for determining what constitutes the subject matter of a waiver, rather courts weigh the circumstances of the disclosure, the nature of the legal advice sought and the prejudice to the parties of permitting or prohibiting further disclosures." *Fort James Corp.,* 412 F.3d at 1350.

## III.  Argument

After Cisco waived privilege, the Court could have ordered a waiver of all Cisco communications concerning the subject matter of the filing of the ESN Complaint.  The waiver would have been fully justified given that Cisco is the defendant in this case, Cisco waived privilege, and there were many Cisco employees investigating the events surrounding the filing of the ESN Complaint and feeding information to Frenkel before he published false statements about Ward.  Plaintiff wanted a subject matter waiver that would have included all

---

privilege to prejudice his opponent's case by disclosing selected communications for self-serving purposes."), attached hereto as Exh. F.

communications on the subject matter of the filing of the ESN Complaint and Cisco's accusations concerning those facts. Cisco wanted no waiver. The Court fashioned a scope of waiver that was somewhere in between. In so doing, the Court likely thought that its Order included the publication dates of all of the libelous posts, all persons at Cisco responsible for the creation of the libelous posts, and all information relied upon by Cisco in publishing its false accusations. The language of the Court's Order, however, did not include all of those documents because the Court had incorrect or incomplete information at the time of its Order. Thus, Plaintiff respectfully requests that the Court reconsider the scope of the waiver it ordered to ensure that Cisco produces all the documents to which the Court believes Ward is entitled.

**A.    The Scope Of The Court's Subject-Waiver Should Include October 19, 2007**

The Court's Order states that based upon Frenkel's affidavit and other submissions, the Court believes the last of the postings occurred on October 17 and 18, 2007. *See* D.E. 89 at ¶ 8. Cisco's submission log claims that documents created on October 18[th][6] and October 19th were created after the articles at issue.[7]  Cisco's representations left the Court with a false impression. Plaintiff requests that the Court correct the issue now and include October 19, 2007 in the scope of the waiver it has ordered.

**1.    The Articles At Issue In This Case Include The October 19th Post**

There is no dispute that the last article was posted by Frenkel on October 19, 2007. *See* D.E. 71 at ¶ 34.[8]  The October 19, 2007 post was an edited version of Cisco's October 18, 2007 post, but was actually written and posted on October 19, 2007. *See* Exh. C (Frenkel Depo. in Albritton case at 106:6-108:23). Cisco fully understands that the October 19, 2007 has been pleaded in this case. The October 19th article is specifically pleaded in Ward's Amended Complaint. *See* D.E. 66 at ¶ 34. Cisco's Amended Answer admits that Frenkel published

---

[6] Plaintiff does not understand how Cisco could claim on its submission log that documents created on October 18th were created before the articles were published. The Court, however, need not take up that issue because it has already ordered Cisco to produce documents created on or before October 18th.

[7] *See* footnote 1.

[8] During meet and confer, Cisco did not dispute that the October 19th article was at issue, but said that it could not agree to Plaintiff's motion because it could not agree to any waiver.

another post on October 19th.  *See* D.E. 71 at ¶ 34.  Cisco has served discovery specifically asking for information about the October 19th post.  *See* Exh. G (deposition questions to be sent to P. McAndrews).  Cisco asked Ward about the October 19th post during his deposition.  *See* Exh. H (Ward Depo. at 72:24-74:18.)  The October 19th article was also pleaded in the Albritton case and tried to a jury.  There is no doubt in either mind that the October 19th post is at issue in this case.  Thus, the Court's Order should have included October 19, 2007.

> 2. <u>Documents Created On October 19th Are Highly Relevant Because They Show That Cisco Published The October 19th Post With Knowledge Of The Falsity Of The Information Contained Therein And With Reckless Disregard Of The Truth</u>

Cisco's October 19th  communications are critical to the issues in this case.  The documents in this case show that Cisco knew at the time the October 19th post was published that it was wrong about the facts underlying the filing of the ESN complaint and other statements made in Cisco's October 17th and October 18th posts, yet it published another false post about Ward on October 19th.

Cisco's October 17th and 18th posts insisted that the ESN complaint was filed on October 15th and that the Texas Court did not have subject-matter jurisdiction at the time because the patent had not yet issued.  Building upon that false premise, Cisco accused ESN's local counsel (Albritton and Ward) of conspiring with the court clerks to alter the date stamp on the ESN complaint to create subject matter jurisdiction where none otherwise existed, to benefit their client, ESN, at Cisco's expense.  Cisco's October 18th post stated that Frenkel got a couple of anonymous emails pointing out that the docket had been "altered" and that one email suggested that ESN's local counsel called the EDTX court clerk and convinced him/her to change the docket to reflect the wrong date.  The post goes on to say that there is "tons of proof" that the complaint had been filed on October 15th and that "you can't change history, and it's outrageous that the Eastern District of Texas is apparently, wittingly or unwittingly, conspiring with a non-practicing entity to try to manufacture subject matter jurisdiction.  This is yet another example of the abusive nature of litigating patent cases in the Banana Republic of East Texas. (n.b.:  don't be

5

surprised if the docket changes back once the higher-ups in the Court get wind of this, making this post completely irrelevant)."

The following day, on October 19th, Frenkel rewrote and republished the allegations he had made the day before.  Frenkel's new post removed his reference to the "Banana Republic of East Texas."  Frenkel also removed the reference to the court clerks "conspiring" with ESN's local counsel and replaced it with "helped."  However, Frenkel continued to state in the headline and body of the new article that ESN's counsel conspired to alter official court documents for a nefarious purpose.  The October 19th posts continues to assert that there is "tons of proof" that the ESN complaint was filed on the 15th and that witnesses and subpoenas may be necessary to prove up Ward's conspiratorial conduct.  The amended post also includes a new comment stating "[e]ven if this was a 'mistake,' which I can't see how it could be, given that someone emailed me a printout of the docket from Monday showing the case, the proper course of action should be a motion to correct the docket."

By the time he published Cisco's October 19th post, Frenkel clearly knew there had been a mistake with the court's software, that the ESN complaint had been filed on October 15th, there was no "conspiracy" to create subject matter jurisdiction in the ESN case.  The few emails that Cisco has produced in this case show that Cisco and Frenkel knew its accusations about Ward were false; certainly by the time the October 19th amended post was published.

### a. Baker Botts Told Cisco Its Accusations Were Not True

Kurt Pankratz, an attorney at Baker Botts, was investigating the filing of the ESN complaint for Cisco.  On the morning of October 18th, he asked a paralegal in his office, Jillian Powell, to call the Eastern District of Texas clerk's office to find out why the document banner on the ESN complaint said it was filed on October 16th.  *See* Exh. E (Albritton Trial Transcript) at 9/15/09 458:1-461:7; 462:24-468:22.  Powell called the clerk and learned that ESN's local counsel had logged onto the ECF system before midnight, but had actually filed after midnight. *See id.*  Powell reported what she learned back to Pankratz.  *See id.* at 470:18-20.  Pankratz understood that there had been an error in the court's software and he passed that information to

6

Mallun Yen and Marta Beckwith at Cisco.  *See id.* (Albritton Trial Transcript) at 9/15/09 503:21-504:12; 519:18-520:13.  Yen or Beckwith told Frenkel.  *See* Exh. D (Cisco's Amended Responses to Plaintiff's First Set of Interrogatories) at pg. 48, no. 4.

Frenkel relied on the information he obtained from Baker Botts (via either Yen or Beckwith) when he wrote "one email suggested that that ESN's local counsel called the EDTX court clerk and convinced him/her to change the docket . . . ."  *See* Exh. D (Cisco's Amended Responses to Plaintiff's First Set of Interrogatories) at pg. 48, no. 4. D.E. 72 at 10:20-11:23.  That information came from the Baker Botts investigation done by Pankratz and Powell.  *See* Exh. E (Albritton Trial Transcript) at 9/15/09 475:10-476:21.  Frenkel's post, however, left out the rest of what Pankratz said:

> "From the court clerk:  Albritton claims the filing date was an error.  They submitted the Civil Cover Page on Monday, which I believe opened up the electronic filing for the case.  He logged on and began submitting the complaint before midnight on Monday, but did not finalize until after midnight (if this happens you will get the earlier day's date).  This will be muddy."[9]

Frenkel responded to Pankratz's email saying:

> "Sorry, but what does it mean to file a complaint, exactly?  Filing dates are jurisdictional events.  Mistakes fall into the "too bad so sad category.  At least that's how I think the courts enforce these kinds of situations.  If Albritton logged in before midnight, and if the effect of that is you get the earlier day's date, then they are stuck with it.  Should we write a brief letter to the court clerk, memorializing the discussion, and emphasizing the fact that he began submitting the complaint on 10/15, which is why he got that filing date?  Kurt, can you do the first draft, after which we can talk about it?"[10]

Cisco never wrote Frenkel's proposed letter to the court clerk, and for good reason.

Cisco learned that Frenkel's statement about the effect of logging in before midnight and filing after midnight did not mean a filer got stuck with the earlier day's date.

### b. *Cisco Learned From The Hertz v. Enterprise Case That Its Accusations Were Not True*

---

[9] Cisco Privileged 000236-237.
[10] Cisco Privileged 000236.

Yen understood immediately that Frenkel's response to Pankratz's "this will be muddy" warning meant there was a problem.  She responded to Frenkel saying:

> This happened in the Enterprise v. Hertz or Hertz v. Enterprise case.  We will get the documents.[11]

Yen had prior knowledge that a similar issue concerning the software glitch in the Federal Court's filing software happened in the *Hertz* case.  Cisco asked for and received the *Hertz* documents on October 18th.[12]  Cisco lawyer, Marta Beckwith, sent a copy of the documents to Frenkel.[13]  The pleadings in the *Hertz* case told Cisco that its accusations about the filing of the ESN complaint were wrong.

The *Hertz* case was a race to the courthouse in a patent case; the same facts underlying the ESN v. Cisco case.  *See* Exh. I (Hertz pleading) at Cisco2.000002.  Hertz's counsel logged onto the ECF system before midnight, but actually transmitted the complaint to the court after midnight.  *See id.*  The Court's ECF system incorrectly recorded on the docket the date that counsel logged in to the system instead of when the complaint was received by the Court.  *See id.* at Cisco2.000002-03.  Hertz's counsel immediately called the court clerk's office and also called the court's docket clerk to bring the error to the court's attention and to see if it could be corrected.  *See id.* at Cisco2.000008.  The court clerk referred counsel to the operations manager for the court who indicated that she had not encountered this problem before.  *See id.*  She suggested that a motion to correct the docket be filed.[14]  *See id.*  The *Hertz* pleadings clearly set forth how the software error occurs, cite and apply relevant case authority, attach case law holding that a document is deemed filed when it is ***received*** by the Court, cite the Federal Rules the local rules and apply "simple common sense" to explain that the filing date is ***the time*** reflected on the Notice of Electronic filing.  *See id.* at Cisco2.000001-131.  The time on the Notice of Electronic Filing for the ESN Complaint has always shown 12:01 am.

---

[11] Cisco Privileged.000236
[12] Cisco Privileged.000212
[13] Cisco Privileged.000212
[14] In ESN's case, the court clerk offered counsel two options:  ESN could file a motion with the court or it could contact the clerk's office in Tyler.  *See* Exh. J (Moore Depo. in Albritton case) at 12:7-22.

### c. Cisco Learned From Its Own Legal Research That Its Accusations Were Not True

After receiving the *Hertz* documents, Frenkel decided to do some legal research of his own. He found that Cisco's position was unsupported by the law, and that it was likely that Cisco would lose its attempt to convince the Court otherwise. He writes to Yen and Beckwith:

> Note that I did some Westlaw research today, and a few courts have held that cases are filed NOT when the Civil Cover Sheet is lodged with the Court, NOT when the attorney logs into ECF to file the complaint, even if that the date stamped on the complaint, but when the complaint is actually received by the Court. The only way to verify that is on the Notice of Electronic Filing, which the attorney should have received after e-filing. ***From what Kurt found today, that Notice of Electronic Filing probably says 12:01 am***.
>
> This comes up a lot in the bankruptcy context. I did find one case that appears to have gone the other way. Since I have almost forgotten how to use Westlaw, we should get whoever we hire to do this case to do a full search, obviously. But ***I give us only a 10-20% chance of being the first-filed case now.***
>
> That being said, I think Marta has the right approach. We don't ask for an extension, and instead we file a motion to dismiss for lack of subject matter jurisdiction, or in the alternative, to transfer to Connecticut, where our case was filed only 10 hours later then when we ESN alleges their case was filed, and which makes much more sense."[15] (emphasis added).

At this point, Cisco clearly understands that the filing date of the ESN complaint will depend on the time it is received by the Court, and that time is going to be 12:01 am on October 16, 2007. Cisco knows that the entire premise of the accusations it made on the Troll Tracker Blog stating that ESN filed too early and had to conspire with the court clerks to create subject matter jurisdiction is wrong. Yet, the Troll Tracker does not take down his accusations, and no one at Cisco asked him to.

### d. Cisco Learned From ESN's Pleading In The Eastern District Of Texas That Its Accusations Were Not True

Cisco learned again that the factual statements made in Frenkel's posts were wrong when ESN filed a motion in the Eastern District of Texas on October 18th seeking to enjoin Cisco from

---

[15] Cisco Privileged.000262.

moving ahead with parallel litigation in Connecticut. Frenkel reviewed ESN's filing the evening of October 18th.[16] ESN's motion explained in detail the error in the Court's ECF system with respect to the filing of the ESN complaint, provided a copy of the Notice of Electronic Filing, and explained that the ESN Complaint was received by the Court and thus filed on October 16, 2007. *See* Exh. K (ESN's Motion To Enjoin) at 4-6. ESN's pleading specifically pointed out that the time on the NEF controlled, and that the time on the NEF for the ESN Complaint was 12:01. *See id.* ESN also attached a copy of the NEF. *See* Exh L (Exhibit C to ESN's Motion to Enjoin). Tellingly, Cisco never responded to ESN's motion. Frenkel received a copy of ESN's Motion to Enjoin on October 18th, and he forwarded it to the Cisco team, including Beckwith and Yen.[17]

From the information Cisco received on October 18th, it should have corrected its accusations about Ward. It should have told the Troll Tracker readers what really happened. Cisco did none of that, choosing instead to continue its deceitful publication of half-truths and lies.

### e. *Even After Obtaining All Of The Information Discussed Above, Cisco Published Another Defamatory Post On October 19, 2007*

Even after obtaining all of the information above, Frenkel posted ***another*** blog post the next day, October 19th, accusing Ward of conspiring with the court clerk to alter records in order to create subject matter jurisdiction for his client. The October 19th post continued to assert that that the ESN complaint was filed on October 15th, although Cisco knew that was wrong. Incredibly, it continued to accuse ESN's counsel of conspiring with the court clerk to alter governmental records to create subject matter jurisdiction that Cisco already knew existed.

Cisco's libelous publications did not end on the 18th. Cisco made false accusations again on October 19th. Nor did Cisco's investigation and internal discussion of the ESN filing end on the 18th, as the dates of the many documents remaining on Cisco's privilege log demonstrate.

---

[16] Cisco Privileged.000170
[17] Cisco Privileged.000170.

Documents generated on October 19th fall within the scope of the Court's waiver. Expanding the scope of the subject matter waiver to include the date on which Cisco's third post was published is consistent with the intent of the Court's Order giving Ward access to all information known to Frenkel on the dates he published all of his false accusations. Relying on false information contained in Cisco's submissions to the Court, the Court's Order erroneously excluded one of those days—and arguably the most important day. Therefore, Plaintiff respectfully asks the Court to correct its Order accordingly.

      **B.**    **The Scope Of The Court's Subject-Matter Waiver Should Include Cisco Employees Frenkel, Yen, Noh and Beckwith**

Plaintiff brought this lawsuit against <u>Cisco</u>. <u>Cisco</u> waived privilege in this case. The scope of the Court's Order is properly viewed through what <u>Cisco</u> knew, did, relied upon, or ignored with reckless disregard of the truth in connection with the libelous posts. *See Amway Corp. v. P&G, Co*., 2001 U.S. Dist. LEXIS 4561, at *12 (W.D. Mich. Apr. 3, 2001) (waiver by corporate defendant was waiver of corporate documents), attached hereto as Exh. M. Cisco admits that Frenkel was acting in the course and scope of his employment at Cisco when he published the accused posts. *See* D.E. 71 at ¶¶41-43. Therefore, Frenkel's actions—even if viewed alone—are Cisco's actions.[18] Cisco publically stated that it takes full responsibility for the libelous posts, but no one but Frenkel had a hand in what he wrote before they were published. *See* Exh. E (Albritton Trial statements by Mr. Babcock) at 09/14/09 at 132:21-133:9; 09/16/09 at 701:2:-15. So even if Cisco is permitted to assert that Frenkel wasn't acting for Cisco, Ward is entitled to evidence from which he can test and rebut at trial Cisco's representations that no one else at Cisco libeled Ward. The relevant question for the purpose of Cisco's subject matter waiver is therefore what Cisco knew, when Cisco knew it, and whether Cisco acted with negligence and/or malice in defaming Ward.

---

[18] Cisco denies that Yen, Noh, and Beckwith were acting within the course and scope of their employment. See D.E. 71 at 44 and 46.

1.      The Scope Of The Court's Waiver Order Should Include Yen And Noh Because They Participated In The Publication Of Cisco's Libelous Accusations About Ward

Moreover, the facts show that Frenkel was not acting alone when he made his libelous posts about Ward. Cisco employees Mallun Yen and John Noh commissioned the Troll Tracker's defamatory statements. The Court did not have that information at the time of its Order because Cisco withheld as privileged documents showing Yen and Noh's participation. Cisco documents show that the scope of the waiver should include Cisco employees Mallun Yen, John Noh and Marta Beckwith.[19]

From the very beginning of Cisco's investigation into the filing of the ESN complaint, Frenkel was sending email back and forth to Yen, Beckwith, and others on the Cisco team. It is apparent from the documents that there was a core group of Cisco lawyers working with Baker Botts to plan Cisco's strategy in responding to the filing of the ESN Complaint. It is also apparent that Cisco was hoping to leverage the computer glitch associated with the filing of the ESN complaint to Cisco's advantage in the ESN litigation. Cisco called it their "DJ strategy" as referenced in the following email from Cisco's General Counsel, Mark Chandler:

> "Dan Webb claims to be a best friend of Judge Folsom and called me about this case, and claims to have "right" local counsel in Texarkana on his team. I explained to him **_the DJ strategy_** but told him we might want to talk to him about getting the case dismissed."[20] (emphasis added).

Cisco's "DJ strategy" was foiled because ESN had not filed the complaint on October 15th as Cisco hoped, but rather on October 16th. When the Eastern District of Texas corrected the docket to reflect the correct filing date, things at Cisco got tense. In response to Pankratz's email to Cisco explaining that the Court corrected the docket because ESN logged on before midnight but had not actually filed until after midnight, Yen wrote the following email:

---

[19] There may have been other Cisco employees who contributed to the libelous posts, but Plaintiff is not aware of them at this time. Plaintiff is not seeking a subject-matter waiver that includes all Cisco employees because he is mindful that the Court sought to limit the waiver to provide to Plaintiff documents necessary to rebut Cisco's claims, but at the same time not require Cisco to produce all documents. Plaintiff's offered approach limits the scope of Cisco's waiver to those employees most directly involved in the publication of the three defamatory articles.

[20] Cisco Privileged.000106

This is ridiculous.  The "buzz"[21] we're getting from various sources is that the local counsel persuaded the court clerk to change the filing date to October 16th.  Neal, the background is that ESN filed a lawsuit against us one day too early—a day before the patent actually issued.  We Djd them in Connecticut, and then yesterday, they arranged for the filing date to be changed to Oct. 16th, the day the patent issued. . . . ***Maybe a news story here?  Though we'll obviously keep getting data to track down what happened.*** Mallun." (emphasis added).[22]

Yen did not circulate her email to the members of the ESN v. Cisco litigation team.

Instead, she sent it to Cisco's General Counsel, Mark Chandler, another high-level Cisco lawyer,

Neal Rubin, Matthew Tanielian, who worked in Cisco's Governmental Affairs Department, and

John Noh, a Cisco Public Relations Manager.  Yen was not seeking legal advice, but rather

seeking to commission a "news story" or other publicity that could be generated by Tanielian

and Noh.  No one at Cisco cautioned her about not publishing a news story, or about the need to

make sure what happened ***before*** she made public allegations that were not true.

Cisco's Public Relations guy, Noh, understood what Yen was asking for and responded:

Mallun, in the simplest terms possible, are you saying that this troll filed a patent lawsuit against us before they even had the patent issued to them?  Can we have the Troll Tracker do a very simply worded blog about this?  I'd love to be able to send it out to a few of the legal reports and bloggers. I play a game with them now about I have no idea who the Troll Tracker is but I read his/her blog religiously.  TT: Would this be hitting too close to home in terms of dotted line between TT and Cisco?

Yen responds:

"actually someone sent an anonymous tip to the trolltracker about this, and perhaps he could reference that."[23]

Yen does not tell Frenkel to include the facts she learned from Pankratz; that there had

been an error in the Court's filing system or that ESN's counsel had logged on before midnight

but had actually filed after midnight and, that once the issue was explained, the court clerk

"corrected" the docket.  Instead, she wanted to make sure that the Troll Tracker story could not

be traced back to Cisco by suggesting that Frenkel tell his readers that the information he was

---

[21] Yen testified that the "buzz" came from Kurt Pankratz and Marta Beckwith.  *See* Exh. N (Yen Depo. in the Albritton case) at 210:3-25.
[22] Cisco privileged.000012
[23] Cisco privileged.000011-000012

relying on came from anonymous sources.  Apparently, Yen believed that the only important consideration about what Frenkel said was that Cisco not be held accountable for it.

Frenkel also understands what his boss wants and he responds to her and Noh, telling them:

"stay tuned."[24]

Thereafter Frenkel posts the October 18th (original) post.  Frenkel's post attributes the source of his information to anonymous emails, just as Yen requested.  He goes on to make statements of fact that are not true, to accuse Ward of conspiring to alter governmental records, to call East Texas a Banana Republic, and to suggest to his readers, which he knows includes court personnel, including judges, that the docket should be changed back to the date that Cisco wants.  As soon as he is finished writing the article, Frenkel sends a link of the post to Yen and Noh.  *See* Exh. O (Cisco.000390-391).

Yen adopts and ratifies Frenkel's statements and further publishes them by sending the post to Cisco's Governmental Affair's man (i.e. lobbyist) in Washington D.C., Matt Tanielian.[25] Yen doesn't tell Tanielian that she doesn't agree with any of the post's content or that there are key facts missing; instead, she adopts Frenkel's statements and sends them on.  Noh responds with praise and gratitude, saying:

"Brilliant.  Thank you."[26]

Yen and Noh's commission of, participation with, and ratification of Frenkel's libelous posts put at issue what Yen and Noh knew when they participated in the publication of the October 18th article.  If Yen or Noh had information at their disposal that they knew rendered Frenkel's statements false or that created a defamatory false impression, but they commissioned, ratified and adopted Frenkel's statements nonetheless, it is relevant to Cisco's negligence and malice in this case.  That is particularly true for Yen, who was Frenkel's direct supervisor.  Even

---

[24] Cisco Privileged.000014
[25] *See* Exh. P (Cisco2.000137)
[26] Cisco.000390

if those communications were otherwise privileged, Yen's participation demands that they fall within the subject-matter waiver ordered by the Court.

Production of Noh's communications should be even more straightforward given that he is not a Cisco lawyer, but rather a Public Relations Manager working on disseminating a public statement as part of Cisco's public relations campaign, which is not "for the purpose of legal advice." *See Amway Corp.*, 2001 U.S. Dist. LEXIS 4561, at * 26 (public relations discussions about pending lawsuits are not privileged), attached hereto as Exh. M.  Noh's communications should not be privileged at all, but if they are they should fall within the scope of the Court's subject-matter waiver.  Moreover, Cisco indicated in a meet and confer call on October 16, 2007 that it intends to seek leave to amend is answer to make expressly plead that Cisco had no knowledge of what was going to be written in the Troll Tracker articles so fault and damages in this case are not attributable to Cisco.  Cisco cannot assert that its employees did not participate, condone, and ratify Frenkel's posts without producing documents to Ward from which he can test and rebut arguments that Cisco intends to make to the jury.

> 2.   The Scope Of The Court's Waiver Order Should Include Yen And Beckwith Because They Furnished Information To Frenkel That Cisco Admits He Relied Upon In Making His False Accusations About Ward

Plaintiff believes that the Court's Order was meant to give Plaintiff all information relied on by Frenkel on the three days he and Cisco published libelous statements about Ward.  Most of the communications were documents, so the Court's Order limiting the scope of the waiver made sense.  However, there is one important category of information relied on by Frenkel that is not in written form; information that Cisco employees Mallun Yen or Marta Beckwith provided to Frenkel via oral communications.

When Frenkel wrote in his October 18th post that "I checked, and sure enough, that's exactly what happened – the docket was altered to change the filing date stamp from October 15 to October 16" he was relying on information conveyed to him by Yen or Beckwith.  *See* Exh. D (Cisco's Amended Responses to Plaintiff's First Set of Interrogatories) at pg. 48, no. 4; D.E. no.

72 at 10:20-11:23.  The scope of the Court's wavier should include information known to Yen and Beckwith because Cisco expressly identified those employees as providing information to Frenkel upon which he relied.  *See* Exh. D (Cisco's Amended Responses to Plaintiff's First Set of Interrogatories) at pg. 48, no. 4.  What Yen and Beckwith conveyed to Frenkel is relevant to what he knew at the time he made libelous statements about Ward.  That information falls within the same subject matter as the scope of the Court's waiver Order, but because the Order is limited to Frenkel, it omits information known to those who admittedly provided information to Frenkel that he used in his posts.  If Yen or Beckwith provided Frenkel with false information, if they gave him misleading or misleadingly incomplete information, especially when Yen later asks him to post the October 18th blog, it is compelling evidence of Cisco's negligence and malice.

Ward must have Yen and Beckwith's communications to avoid ambush at trial.  If the Court does not include Yen and Beckwith's communications in its Order, Ward will not be permitted to discover through documents or deposition testimony what Yen and Beckwith knew and told Frenkel, and what part of their statements he relied upon or recklessly disregarded.  That would leave Cisco with an unfettered ability to introduce evidence to the jury about what Yen and Beckwith learned about the ESN Complaint and conveyed to Frenkel (currently withheld as privileged) for which Ward will have no evidence to counter, test or rebut Cisco's claims.  Such a result would condone the type of sword and shield use of privilege that the Court found triggered a waiver and sought to correct through its waiver Order.  The Court's intent was to give Plaintiff all information relied upon by Frenkel.  It is undisputed that Frenkel relied on Yen or Beckwith.  The wording of the Court's Order leaves this category of information outside the Court's waiver.  Plaintiff respectfully requests that the Court expressly including in the scope of its Order Cisco employees Yen and Beckwith.

### III.    Conclusion

For the reasons stated above, Plaintiff asks the Court to issue an Order stating the scope of Cisco's waiver included October 19, 2007 and communications to, from or copied to Yen, Beckwith, and Noh on or before October 19th.

Respectfully submitted,

Nicholas H. Patton (SBN: 63035)
PATTON, TIDWELL & SCHROEDER, LLP
4605 Texas Boulevard - P. O. Box 5398
Texarkana, Texas 7550505398
(903) 792-7080        (903) 792-8233 (fax)

Patricia L. Peden
LAW OFFICE OF PATRICIA L. PEDEN
1316 67th Street, Suite 6
Emeryville, CA 94608
Telephone: (510) 268-8033

ATTORNEYS FOR PLAINTIFF

17

## <u>CERTIFICATE OF SERVICE</u>

This is to certify that on this 19th day of October, 2009, a true and correct copy of the foregoing document was served electronically via the Court's CM/ECF system upon:

> Richard E. Griffin          Attorney for Defendant Cisco Systems, Inc.
> Charles Babcock
> Crystal Parker
> Kurt Schwarz
> JACKSON WALKER, LLP
> 1401 McKinney
> Suite 1900
> Houston, Texas 77010

_____
Nicholas H. Patton

18