# EX. M

Dockets.Justia.com



LEXSEE 2001 U.S. DIST. LEXIS 4561

**AMWAY CORPORATION, Plaintiff, v. THE PROCTER & GAMBLE CO., et al., Defendants.**

**Case No. 1:98cv 726**

**UNITED STATES DISTRICT COURT FOR THE WESTERN DISTRICT OF MICHIGAN, SOUTHERN DIVISION**

*2001 U.S. Dist. LEXIS 4561*

**April 3, 2001, Decided
April 3, 2001, Filed**

**DISPOSITION:** [*1] Plaintiff's motion to compel defendant Procter & Gamble to produce documents responsive to document request no. 105 (docket # 231) GRANTED.

**CASE SUMMARY:**

**PROCEDURAL POSTURE:** Plaintiff corporation filed a motion to compel defendant corporation to produce certain documents claimed to be privileged in plaintiff's civil action against defendant.

**OVERVIEW:** Plaintiff corporation brought a civil action against defendant corporation. Defendant claimed attorney-client and work-product privileges over certain documents during discovery. Plaintiff filed a motion to compel production of those documents, claiming that defendant waived its privilege. The court conducted an in camera review of the withheld documents for which defendant submitted an affidavit purporting to justify its claim of attorney-client privilege or work-product immunity. The court ordered defendant to produce all but five of the withheld documents. The court ordered sanctions for defendant's assertion of claims of privilege with no reasonable basis and for defendant's violation of the court's previous discovery order.

**OUTCOME:** Motion was granted, ordering defendant corporation to produce all but five of the withheld documents, and sanctioning defendant for its assertion of

claims of privilege with no reasonable basis.

**LexisNexis(R) Headnotes**

*Evidence > Privileges > Government Privileges > Waiver*
[HN1] A court-ordered disclosure of otherwise privileged documents does not operate as a waiver of the privilege. This principle is unobjectionable. A waiver is voluntary relinquishment of a known right. Consequently, courts hold that a party does not lose the protection of a privilege if disclosure was compelled erroneously or if the holder had no opportunity to assert the privilege.

*Evidence > Privileges > Attorney-Client Privilege > Waiver*
*Evidence > Privileges > Government Privileges > Waiver*
[HN2] A party waives its attorney-client privilege by affirmatively injecting its attorney's advice into the case.

*Business & Corporate Law > General Partnerships > Management Duties & Liabilities > Rights of Partners > General Overview*
*Business & Corporate Law > Limited Partnerships > General Overview*
*Evidence > Privileges > Government Privileges >*

*Waiver*

[HN3] Having claimed advice-of-counsel as a defense in one judicial proceeding, a party waives the privilege in any subsequent judicial proceeding.

*Evidence > Privileges > Attorney-Client Privilege > Scope*

[HN4] The burden of establishing an attorney-client privilege rests with the person asserting it. Likewise, the burden of establishing that a document was generated in anticipation of litigation rests upon the party opposing discovery. Such a showing must be made by deposition, affidavit, or in any other manner in which facts are established in pretrial proceedings. Such privileges and immunities do not prove themselves. Simply offering documents to the court for an in camera inspection will not be sufficient to carry the party's burden. The risk of nonpersuasion arising from a failure to establish facts supporting a claim of privilege falls upon the party asserting it.

*Evidence > Privileges > Attorney-Client Privilege > General Overview*

[HN5] In general, transmittal letters from counsel are not privileged where they contain no facts tending to reveal the client's confidences.

*Evidence > Privileges > Attorney-Client Privilege > General Overview*

[HN6] The attorney-client privilege shields only communications made in confidence by the client to the attorney in connection with seeking or rendering legal advice. Additionally, communications from the attorney to the client are protected to the extent that the attorney-to-client communication constitutes legal advice or tends to directly or indirectly reveal the substance of the confidences of the client.

*Evidence > Privileges > Attorney-Client Privilege > General Overview*

[HN7] A lawyer's communications, and those of the client, when the lawyer functions in any other capacity are not protected from compelled disclosure. Thus, for the privilege to be applicable, the proponent must demonstrate that the lawyer has acted in a legal capacity rather than in any of the other functions that legally trained individuals perform in our society. The mere fact that a certain function is performed by an individual with a law degree will not render the communications made to the individual privileged. Where in-house counsel appears as one of many recipients of an otherwise business-related memo, the federal courts place a heavy burden on the proponent to make a clear showing that counsel is acting in a professional legal capacity and that the document reflects legal, as opposed to business, advice.

*Civil Procedure > Discovery > Privileged Matters > Work Product > General Overview*

[HN8] The protection of work-product immunity applies only to those documents prepared in anticipation of litigation or for trial by a party or its representative. *Fed. R. Civ. P. 26(b)(3)*. The concept of anticipation of litigation embodies both a temporal and motivational aspect. To be in anticipation of litigation, a document must have been prepared before or during the time of the litigation. That temporal element, standing alone, is not sufficient, however. The document must have also been prepared for purposes of the litigation and not for some other purpose. Thus, materials may be prepared before or when litigation is imminent or pending without necessarily having been prepared in anticipation of litigation from a motivational point of view.

*Civil Procedure > Discovery > Privileged Matters > Work Product > General Overview*

[HN9] The work-product privilege is not applicable, however, unless some specific litigation is fairly foreseeable at the time the work product is prepared. The failure to specify the litigation for which documents were purportedly created is fatal to a claim of work-product protection. As a necessary corollary, when it is clear that documents would have been prepared independent of any anticipation of use in litigation (i.e., because some other purpose or obligation was sufficient to cause them to be prepared), no work product can attach.

*Civil Procedure > Discovery > Methods > General Overview*
*Civil Procedure > Discovery > Misconduct*

[HN10] *Fed. R. Civ. P. 37(a)(4)* authorizes the court to impose upon the party whose conduct necessitated a discovery motion the reasonable expenses incurred by the opponent in making the motion, including attorney's fees, unless the court finds that the party's nondisclosure or

2001 U.S. Dist. LEXIS 4561, *1

objection was substantially justified.

***Civil Procedure > Discovery > Methods > General Overview***
***Civil Procedure > Discovery > Misconduct***
***Civil Procedure > Pretrial Judgments > General Overview***
[HN11] *Fed. R. Civ. P. 37(b)(2)* applies where a party has violated a court's discovery order. Sanctions available under *Fed. R. Civ. P. 37(b)* go beyond the imposition of expenses and may include the entry of a default judgment, an order striking out claims or defenses, and other substantive relief. The availability of sanctions under *Fed. R. Civ. P. 37* is intended to have a deterrent effect arising from the possibility of serious consequences as a result of discovery abuse.

***Civil Procedure > Discovery > Methods > General Overview***
***Civil Procedure > Discovery > Misconduct***
***Civil Procedure > Appeals > Standards of Review > Abuse of Discretion***
[HN12] *Fed. R. Civ. P. 37(b)* sanctions are discretionary and are reviewed by the court of appeals under an abuse of discretion standard. There is a sequential approach to discovery sanctions. In determining the appropriate sanction, the trial courts are directed to consider the following factors (1) whether the party's failure to cooperate in discovery is due to willfulness, bad faith, or fault; (2) whether the adversary was prejudiced by the party's failure to cooperate in discovery; (3) whether the party was warned that failure to cooperate could lead to the sanction; and (4) whether less drastic sanctions were first imposed or considered.

***Civil Procedure > Discovery > Misconduct***
[HN13] The district court need not expressly articulate its consideration of lesser sanctions in order to make clear its consideration of imposition of less severe discovery sanctions.

**COUNSEL:** For AMWAY CORPORATION, plaintiff: Jasper A. Cragwall, Jr., Robert J. Jonker, Norbert F. Kugele, Warner, Norcross & Judd LLP, Grand Rapids, MI.

For AMWAY CORPORATION, plaintiff: Timothy Q. Delaney, James R. Sobieraj, Ralph J. Gabric, Jack C.

Berenzweig, Kelly J. Eberspecher, Janet A. Pioli, Vineet Gauri, Brinks Hofer Gilson & Lione, Chicago, IL.

For PROCTER & GAMBLE COMPANY, The, PROCTER & GAMBLE DISTRIBUTING COMPANY, The, defendants: Michael Paul Farrell, Dykema Gossett, PLLC, Grand Rapids, MI.

For PROCTER & GAMBLE COMPANY, The, PROCTER & GAMBLE DISTRIBUTING COMPANY, The, defendants: Daniel J. Stephenson, Dykema Gossett, Ann Arbor, MI.

For SIDNEY SCHWARTZ, defendant: John A.M. Ferguson, Jr., Grand Rapids, MI.

For SIDNEY SCHWARTZ, defendant: James B. Meade, Gordon, Thomas, Honeywell, Malanca, Peterson & Daheim, Tacoma, WA.

KENNETH LOWNDES, defendant, Pro se, Chesterton, IN.

For DINSMORE & SHOHL LLP, defendant: John M. DeVries, Eric S. Richards, Mika, Meyers, Beckett & Jones, PLC, Grand Rapids, MI.

For DOUG [*2] DRENTH, movant: Robert L. DeJong, Miller, Canfield, Paddock & Stone, PLC, Grand Rapids, MI.

For INTERNET SERVICES CORPORATION, objector: William H. Heritage, Jr., Wheeler Upham, PC, Grand Rapids, MI.

For PROCTER & GAMBLE COMPANY, PROCTER & GAMBLE DISTRIBUTING COMPANY, counter-claimants: Michael Paul Farrell, Dykema Gossett, PLLC, Grand Rapids, MI.

For PROCTER & GAMBLE COMPANY, PROCTER & GAMBLE DISTRIBUTING COMPANY, counter-claimants: Daniel J. Stephenson, Dykema Gossett, Ann Arbor, MI.

For AMWAY CORPORATION, counterdefendant: Jasper A. Cragwall, Jr., Norbert F. Kugele, Robert J. Jonker, Warner, Norcross & Judd LLP, Grand Rapids, MI.

For AMWAY CORPORATION, counterdefendant: James R. Sobieraj, Ralph J. Gabric, Jack C. Berenzweig,

Kelly J. Eberspecher, Janet A. Pioli, Vineet Gauri, Brinks Hofer Gilson & Lione, Chicago, IL.

**JUDGES:** Joseph G. Scoville, United States Magistrate Judge. Honorable Robert Holmes Bell.

**OPINION BY:** Joseph G. Scoville

**OPINION**

**MEMORANDUM OPINION and REPORT AND RECOMMENDATION ON SANCTIONS**

**Findings of Fact**

This is one of a series of protracted legal battles between two of the largest manufacturers and sellers of household products in the United [*3] States. This action, brought by Amway Corporation against Procter & Gamble Co. and other defendants, is substantially intertwined with two previous civil actions brought by Procter & Gamble against Amway: *The Procter & Gamble v. Haugen*, case no. 95-NC-94W (D. Utah), and *The Procter & Gamble Co. v. Amway Corp., 80 F. Supp. 2d 639* (S.D. Tex.). This matter is before the court after in camera review of 157 documents withheld by Procter & Gamble upon a claim of attorney-client privilege or work-product immunity.

The history of litigation concerning the discoverability of these documents is rather tortured. Amway first sought production of the documents in the Utah case. Procter & Gamble submitted the documents for *in camera* inspection by Magistrate Judge Ronald N. Boyce of that court. By order entered December 8, 1998, Magistrate Judge Boyce overruled the claims of privilege and immunity with regard to certain documents and ordered their production. The effectiveness of the order was stayed pending appeal to the district judge, and the resolution of that appeal was likewise delayed by appellate proceedings before the Tenth Circuit Court of Appeals. Although the matter [*4] is now back before the district court in Utah, it does not appear that the district judge has resolved an appeal of Procter & Gamble of the discovery order of December 8, 1998.

On October 6, 2000, Amway filed a motion in the present case (docket # 231) to compel Procter & Gamble to produce certain documents, including those responsive to Amway's document request no. 105, which sought copies of all documents that Magistrate Judge Boyce ordered Procter & Gamble to produce in his order of December 8, 1998. In response to Amway's motion, Procter & Gamble insisted that the order of the Utah magistrate judge was not binding because of the existence of an appeal and demanded a determination by this court of the privileged status of the withheld documents. The parties were directed to brief the issue separately. In a memorandum opinion and order entered December 14, 2000, this court determined that Procter & Gamble was not collaterally estopped by the order in Utah from litigating the question of privilege in this court. On this basis, the court determined that a *de novo* decision concerning privilege was required. The court therefore entered an order (docket # 276) on December 14, 2000, requiring [*5] Procter & Gamble to produce for *in camera* inspection all documents response to Amway's request no. 105. The order continued as follows: "The documents shall be accompanied by an affidavit sufficient to establish the attorney-client privilege or work-product immunity with regard to each withheld document, and a brief setting forth the legal basis for each such claim."

Procter & Gamble submitted 157 documents to the court for *in camera* inspection. It failed to submit document 405, in violation of the court's order. Further, it did not comply with the court's order that it support by affidavit its claim of privilege or immunity for each withheld document. Instead, Procter & Gamble has submitted unauthenticated copies of four-year-old affidavits bearing the caption of the Utah case, which were apparently submitted to Judge Boyce in connection with his *in camera* inspection. The affidavits are conclusory and do little more than assert the existence of a privilege without specific factual support for Procter & Gamble's claims. Procter & Gamble did not provide the court with any master list or index to facilitate review of the withheld documents. To further confuse matters, the [*6] affidavits address documents that are not at issue here. In the context of litigation in which the parties have spent tens of millions of dollars to pursue their claims, counterclaims and defenses, this haphazard method of proceeding is puzzling, to say the least. Procter & Gamble's conduct is made all the more puzzling because Judge Boyce, in his order of December 8, 1998, criticized Procter & Gamble for the form of its submission of documents, remarking that Procter & Gamble had "made it somewhat difficult for the court to determine what is the basis for the claim of privilege and which of the

various arguments of the parties have application to which documents." (Order, P 4, attached as tab 2 to Amway's Brief, docket # 301). The resubmission of the same confusing and conclusory affidavits that were found wanting by Judge Boyce leads this court to conclude that Procter & Gamble is attempting to impede and delay the orderly resolution of the privilege issue.

Most egregious is Procter & Gamble's failure to supply any affidavit at all addressing 50 of the withheld documents. This is a patent violation of this court's order of December 14, 2000.

I have reviewed *in camera* all of [*7] the withheld documents for which Procter & Gamble has submitted an affidavit at least purporting to justify its claim of attorney-client privilege or work-product immunity. For the reasons set forth below, Procter & Gamble will be ordered to produce all but five of the withheld documents forthwith. In addition, I recommend that Procter & Gamble be sanctioned for its assertion of claims of privilege with no reasonable basis and for its violation of this court's previous discovery order.

## Discussion

In its brief accompanying its submission of privileged documents (docket # 284), Procter & Gamble analyzes the withheld documents under three headings: "*Moore* documents; Category I documents; and Category II documents. The "*Moore*" documents relate to a 1986 malicious prosecution lawsuit brought against Procter & Gamble by parties that it had sued in connection with the Satanism rumor. The Category I documents consist of ten documents allegedly related to litigation brought by Procter & Gamble in the 1980's regarding the so-called "Satanism rumor." The documents in Category II were generated by a group of Procter & Gamble employees assigned to a public relations task force [*8] formed to respond to the Satanism rumor. This court will discuss the withheld documents by reference to the categories adopted by Procter & Gamble.

## A. Moore Documents

The so-called "Moore documents" were the subject of litigation in a malicious prosecution action, *Moore v. The Procter & Gamble Co.*, brought in the United States District Court for the Northern District of Florida in 1986. In that action, Procter & Gamble asserted a defense based upon advice of counsel. As a consequence of the

assertion of that defense, the federal court in Florida ordered production of those documents, finding that Procter & Gamble had waived any privilege or immunity by asserting the advice of counsel defense. Amway now seeks discovery of those documents on the same basis.

In response, Procter & Gamble relies on the proposition that [HN1] a court-ordered disclosure of otherwise privileged documents does not operate as a waiver of the privilege. This principle is unobjectionable. A waiver is voluntary relinquishment of a known right. Consequently, courts hold that a party does not lose the protection of a privilege if disclosure was compelled erroneously or if the holder had no opportunity to [*9] assert the privilege. 3 JACK B. WEINSTEIN & MARGARET A. BERGER, FEDERAL EVIDENCE P 512[01] (2d ed. 2000); *see Shields v. Sturm, Ruger & Co., 864 F.2d 379, 382 (5th Cir. 1986); Leonen v. Johns-Manville, 135 F.R.D. 94, 99-100 (D.N.J. 1990).*

This principle, however, is unavailable to Procter & Gamble in the present case. The source of waiver is not the compelled disclosure, erroneous or otherwise, directed by the federal court in Florida. Rather, Procter & Gamble itself waived the privilege by its assertion of the advice-of-counsel defense in the Florida litigation. This court has had previous occasion to analyze the advice-of-counsel defense in the present case. It suffices for present purposes to reiterate that [HN2] a party waives its attorney-client privilege by affirmatively injecting its attorney's advice into the case. *See, Steelcase v. Haworth, 954 F. Supp. 1195 (W.D. Mich. 1997); accord Glenmede Trust Co. v. Hutton, 56 F.3d 476, 486-87 (3d Cir. 1995); Sedco Int'l, S.A. v. Cory, 683 F.2d 1201, 1206 (8th Cir. 1982)* (client waives privilege by implication "when a client asserts reliance on an attorney's [*10] advice as an element of the claim or defense."). The Florida federal court merely declared and enforced the waiver. Consequently, the privilege was lost not by virtue of the court's order, but was as a result of Procter & Gamble's voluntary assertion of the advice-of-counsel defense to a malicious prosecution action.

Procter & Gamble pleads alternatively that the scope of its waiver should be limited to the Florida case and not the present one. The prevailing rule is to the contrary. [HN3] Having claimed advice-of-counsel as a defense in one judicial proceeding, a party waives the privilege in any subsequent judicial proceeding. *See Salomon Bros.*

2001 U.S. Dist. LEXIS 4561, *10

*Treas. Litig. v. Steinhardt Partners, L.P. (In re Steinhardt Partners, L.P.), 9 F.3d 230, 234-35 (2d Cir. 1993); Permian Corp. v. United States, 214 U.S. App. D.C. 396, 665 F.2d 1214, 1221 (D.C. Cir. 1981).* The federal courts note that recognizing only a limited and selective waiver allows a party to "manipulate use of the privilege through selective assertion." *Steinhardt, 9 F.3d at 235.* The Fifth Circuit's decision in *Diversified Indus., Inc. v. Meredith, 572 F.2d 596 (5th Cir. 1977)* [*11] *(en banc)* does not compel a different result. In that case, the Fifth Circuit recognized a limited waiver arising from voluntary disclosure of documents to the SEC in connection with an official investigation. The Fifth Circuit's stated rationale was to encourage corporations to undertake internal investigations and to cooperate with government agencies. *572 F.2d at 611.* Subsequent decisions have either rejected the *Diversified Industries* approach or have limited it to those situations in which the prior disclosure was made to government agencies. *See United States v. Massachusetts Inst. Tech., 129 F.3d 681, 685 (1st Cir. 1997); Genentech v. United States Int'l Trade Comm'n, 122 F.3d 1409, 1417 (Fed. Cir. 1997); Steinhardt, 9 F.3d at 235-36; Permian, 665 F.2d at 1220-21; Westinghouse Elec. Corp. v. Republic of the Philippines, 951 F.2d 1414 at 1424 (3d Cir. 1991).* The Sixth Circuit Court of Appeals has discussed this split of authority without resolving it for this circuit. *See In re Perrigo Co., 128 F.3d 430, 441 n.9 (6th Cir. 1997); see also In re Columbia/HCA Healthcare Corp., 192 F.R.D. 575, 577 (M.D. Tenn. 2000).* [*12] In *Perrigo,* the Sixth Circuit merely noted that the case involved interests similar to those considered in *Diversified Industries. Id.* The court made this comment because *Perrigo* involved a report disclosed pursuant to Michigan statute. The *Perrigo* court quoted a passage from *Diversified Industries* expressing concern that a broad waiver arising from such disclosure would have the effect of thwarting future investigations. Obviously, the present case does not involve the same concerns as were presented in *Diversified Industries* or *Perrigo.* I conclude that the Sixth Circuit would not apply the limited rule of *Diversified Industries* to the facts of this case, but would follow the majority rule as enunciated by the First, Second, Third, Federal, and D.C. Circuits.

Under the foregoing authorities, Procter & Gamble's assertion of an advice-of-counsel defense in the *Moore* litigation acted as an implicit waiver of its attorney-client privilege and work-product immunity. The Florida district court determined the scope of that waiver and

ordered production. Procter & Gamble has not established any basis not to apply the consequences of its waiver in this [*13] action as well. Procter & Gamble will therefore be compelled to produce the *Moore* documents.

## C. Category I Documents

Procter & Gamble withheld ten documents in Category I: documents numbered 78, 82, 94, 101, 212, 216, 230, 233, 244, and 247. In violation of this court's order, Procter & Gamble has not submitted any affidavit or other sworn evidence to support its claim of attorney-client privilege or work-product immunity with regard to these documents. [HN4] The burden of establishing an attorney-client privilege rests with the person asserting it. *United States v. Dakota, 188 F.3d 663, 667 (6th Cir. 1999).* Likewise, the burden of establishing that a document was generated in anticipation of litigation rests upon the party opposing discovery. *Toledo Edison Co. v. G.A. Tech., Inc., 847 F.2d 335, 339 (6th Cir. 1988).* Such a showing must be made by deposition, affidavit, or in any other manner in which facts are established in pretrial proceedings. *Id.* Such privileges and immunities do not prove themselves. "Simply offering documents to the court for an *in camera* inspection will not be sufficient to carry the party's burden." *Atlantis Group, Inc. v. Rospatch Corp. (In re Rospatch Securities Lit.), 760 F. Supp. 1239, 1991 WL 574963,* [*14] at *5 (W.D. Mich. 1991); accord Delco Wire & Cable, Inc. v. Weinberger, 109 F.R.D. 680, 688 (E.D. Pa. 1986).* The risk of nonpersuasion arising from a failure to establish facts supporting a claim of privilege falls upon the party asserting it. *Glidden Co. v. Jandernoa, 173 F.R.D. 459, 476 (W.D. Mich. 1997); see Marens v. Carrabba's Italian Grill, Inc., 196 F.R.D. 35, 37-38 (D. Md. 2000).* Procter & Gamble has failed to meet this burden with regard to any document in Category I.

Additionally, the court has reviewed these documents and finds most of them to be transmittal letters, devoid of substance. [HN5] In general, transmittal letters from counsel are not privileged where they contain no facts tending to reveal the client's confidences. *See Republican Party of N.C. v. Martin, 136 F.R.D. 421, 428 (E.D.N.C. 1991); Softview Comp. Prods. v. Haworth Corp., 2000 U.S. Dist. LEXIS 4254, No. 97 CIV 8815, 2000 WL 351411 at *9 (S.D.N.Y. Mar. 31, 2000).*

Procter & Gamble's assertion of attorney-client

privilege or work-product immunity will therefore be overruled for all Category I documents.

## C. Category II Documents

The documents [*15] grouped under Category II reflect the work of a group of Procter & Gamble employees formed to deal with the public relations aspects of the Satanism rumors. The affidavits resubmitted to this court from the Utah litigation do not even mention 40 of the Category II documents. Therefore, this court holds that Procter & Gamble has completely failed to establish a factual basis for the assertion of attorney-client privilege or work-product immunity as to the following documents, which are not covered by any affidavit: 48, 49, 50, 52, 54, 56, 58, 63, 79, 89, 90, 98, 102, 103, 104, 136, 202, 224, 229, 234, 237, 249, 282, 332, 333, 551, 553, 555, 612, 633, 634, 636, 637, 638, 643, 644, 789, 795, 849, and 854.

The remaining documents in Category II are at least mentioned in the Utah affidavits. *In camera* examination of these documents leads the court to make several general findings. These documents chronicle the public relations efforts of Procter & Gamble in response to the Satanism rumor, which circulated at least as early as 1980. The employees assigned to this task were generally frustrated, in that the persons repeating the rumor were often members of the clergy or other unlikely [*16] targets for a lawsuit. Frequently, persons disseminating the rumor would immediately apologize and retract their statements when confronted by Procter & Gamble. Procter & Gamble wanted to avoid the public relations problems in pursuing "obviously sympathetic defendants." By the same token, the company was eager to blame a competitor for fostering the rumor, principally (but perhaps not solely) to enhance Procter & Gamble's competitive and public relations position in the marketplace. Although pending and prospective lawsuits are mentioned in these documents, or the redacted portions thereof, the purpose of the discussion was to assess the public relations aspects of the lawsuits, not their legal import or merit. *See, e.g.,* Document 12 ("At that time, we will have another week's experience on the number of phone calls and will want to assess the need for more publicity, which is the primary objective of these lawsuits.") (emphasis added); document 798 ("Our objective is to have a minimum of at least [sic] three additional, geographically dispersed, cases in making our next press release."). The Category II documents were

produced for public relations and other business purposes. [HN6]

[*17] The attorney-client privilege shields only communications made in confidence by the client to the attorney in connection with seeking or rendering legal advice. *See Reed v. Baxter, 134 F.3d 351, 355-56 (6th Cir. 1998).* Additionally, communications from the attorney to the client are protected to the extent that the attorney-to-client communication constitutes legal advice or tends to directly or indirectly reveal the substance of the confidences of the client. *See Guy v. United Health Care Corp., 154 F.R.D. 172, 179 (S.D. Ohio 1993).* At the core of the privilege is the concept that the giving of *legal* advice protects communications from compelled disclosure. [HN7] A lawyer's communications, and those of the client, when the lawyer functions in any other capacity are not protected from compelled disclosure. Thus, for the privilege to be applicable, the proponent must demonstrate that the lawyer has acted in a legal capacity rather than in any of the other functions that legally trained individuals perform in our society. The mere fact that a certain function is performed by an individual with a law degree will not render the communications made to the [*18] individual privileged. *See North Am. Mort. Inv. v. First Wisconsin Nat'l Bank, 69 F.R.D. 9, 11 (E.D. Wis. 1975).* Where, as here, in-house counsel appears as one of many recipients of an otherwise business-related memo, the federal courts place a heavy burden on the proponent to make a clear showing that counsel is acting in a professional legal capacity and that the document reflects legal, as opposed to business, advice. *See, e.g., In re Feldberg, 862 F.2d 622, 626-27 (7th Cir. 1988); Hardy v. New York News, Inc., 114 F.R.D. 633, 643-44 (S.D.N.Y. 1987)* ("When the ultimate corporate decision is based both on a business policy and a legal evaluation, the business aspects of the decision are not protected simply because legal considerations are also involved."); *In re Sealed Case, 237 U.S. App. D.C. 312, 737 F.2d 94, 99 (D.C. Cir. 1984).*

The work-product doctrine contains similar limitations. [HN8] The protection of work-product immunity applies only to those documents "prepared in anticipation of litigation or for trial" by a party or its representative. *FED. R. CIV. P. 26(b)(3).* The concept of "anticipation of litigation" [*19] embodies both a temporal and motivational aspect. To be in "anticipation of litigation, a document must have been prepared before or during the time of the litigation. That temporal

element, standing alone, is not sufficient, however. The document must have also been prepared for purposes of the litigation and not for some other purpose. Thus, materials may be prepared before or when litigation is imminent or pending without necessarily having been prepared "in anticipation of litigation from a motivational point of view. Consequently, in the seminal case of *Upjohn Co. v. United States, 449 U.S. 383, 386-87, 66 L. Ed. 2d 584, 101 S. Ct. 677 (1981)*, the Supreme Court applied the work-product doctrine even though no proceedings against the company were threatened when the documents were prepared. The pivotal point in *Upjohn* was the company's motivation in conducting an investigation with an eye towards possible litigation. *See also United States v. Davis, 636 F.2d 1028, 1040 (5th Cir. 1981)* (litigation need not be imminent "as long as the primary motivating purpose behind the creation of the documents was to aid in possible future litigation."). [HN9] [*20] The privilege is not applicable, however, unless some specific litigation is fairly foreseeable at the time the work product is prepared. *Resident Advisory Bd. v. Rizzo, 97 F.R.D. 749, 754 (E.D. Pa. 1983)* ("The abstract possibility that an event might be the subject of future litigation will not support a claim of privilege. . . ."). The failure to specify the litigation for which documents were purportedly created is fatal to a claim of work-product protection. *Coastal Corp. v. Duncan, 86 F.R.D. 514, 522 (D. Del. 1980)*. As a necessary corollary, when it is clear that documents "would have been prepared independent of any anticipation of use in litigation (*i.e.*, because some other purpose or obligation was sufficient to cause them to be prepared), no work product can attach." *First Pac. Networks, Inc. v. Atlantic Mut. Ins. Co., 163 F.R.D. 574, 582 (N.D. Cal. 1995)*; *Janicker v. George Washington Univ., 94 F.R.D. 648, 650 (D.D.C. 1982)*; *Rakus v. Erie-Lockawanna R.R. Co., 76 F.R.D. 145 (W.D.N.Y. 1977)*; *see* 8 CHARLES A. WRIGHT, ARTHUR R. MILLER, & RICHARD L. MARCUS, FEDERAL PRACTICE & PROCEDURE [*21] P 2024 at 346 (2d ed. 1994) ("But the converse of this is even though litigation is already in prospect, there is no work-product immunity for documents prepared in the regular course of business rather than for purposes of litigation.").

Applying these concepts, the court finds that only 5 of the Category II documents were properly withheld from discovery: Document nos. 7, 366, 398, 716, and 888. Furthermore, with regard to document no. 7, only the attachment V (document no. 398) and the

corresponding summary of the attachment appearing on page 2 of the 4/8/85 memorandum were properly withheld. The remainder of the documents in Category II for which affidavits were supplied are not entitled to protection under the attorney-client privilege or work-product immunity. As noted, these documents on their face reflect intense public relations activity. The authors and recipients are generally business people, although an attorney may be included in a long list of business recipients. The memo (or redacted portions thereof) sometimes discuss the pending or contemplated lawsuits, but the context of the comments is related to public relations, not legal matters. The conclusory affidavits [*22] provided by Procter & Gamble do nothing to alter these conclusions.

Document no. 127 is typical. It was authored by J.D. Jessee, of Procter & Gamble's corporate security department. The recipients were C.C. Glazerman and H.W. Goodson, all corporate security personnel. Carbon copies were shown to eight other persons, including a senior vice-president of finance, a public affairs employee, and a member of the corporate communications staff. Also shown under the carbon copy list is J.J. Johnson, an in-house lawyer. The affidavit of James Jesse (PP 8, 9) claims in conclusory fashion that the document contains communication between an attorney and client requesting or providing legal advice and additionally reflects the results of investigative activities conducted by or at the request of the company and its counsel relating to ongoing or anticipated litigation or the mental impressions and legal theories of counsel. Neither the attorney-client privilege nor the work-product claim is remotely sustainable. The memo documents public relations strategy, which included the possibility of filing lawsuits. It relates the company's desire to "avoid obviously sympathetic defendants." "However, [*23] we will definitely pursue other areas particularly those showing business connections which may profit from continuation of the rumor. We should continue to direct our energies towards those instances where information has developed indicating a connection with a competitive company. Keep in mind that these investigations are not being done for strictly Public Relations aspects, but that we intend to exercise our full legal rights where appropriate."

Another example is document no. 341, which is claimed to be protected by the work-product immunity. The document, authored on February 21, 1991, by a

public affairs employee, was directed to an employee in corporate communications. One of the three carbon copies was sent to an in-house attorney. The subject matter was a press release announcing a $ 75,000 monetary judgment obtained by the company against two Amway distributors for having spread the Satanism rumor. The redacted portions deal only with the public relations aspects of the press release. Similarly, document no. 343 contains handwritten notes redacted on the basis of alleged work product. These notes refer directly to the public relations aspects of publicizing the out-of-court [*24] settlement.

Document no. 375 is a memorandum dated in 1985, whose author and recipient are both public affairs employees. Among the four carbon copies, one was directed to counsel. Although the author recommends proceeding with legal action, the purpose of the memorandum is obviously to analyze the public relations aspects of bringing a lawsuit. The memorandum reflects the "public relations risks" associated with bringing suit against members of the clergy and defendants who "seem to be poor, uneducated and apparently acting independently." It reiterates Procter & Gamble's desire, for public relations purposes, to tar a competitor with the charge of spreading the rumor: "Obviously, we would prefer to have cases against people who would not engender such sympathies (e.g., competitors, fanatics, someone with his own special interests, etc.), but none are available at this time." The redacted portions of document no. 383 fall in the same category. The redacted discussion of "lawsuits/investigations" reflects that the legal department "has not been able to find a case which satisfied both Legal and Public Relations needs." Similar statements of an ulterior motivation for bringing suit [*25] may be found in other documents. *See, e.g.,* Document no. 515 (analyzing the potential public relations benefits of continuing a lawsuit against an Amway Distributor: "Given the Amway connection, company action should enjoy a positive public and media reaction."); Document no. 375 (memo of public affairs officer reflecting a desire to continue with lawsuits to demonstrate the company's seriousness and "to continue the publicity momentum"); Document no. 127 ("We should continue to direct our energies toward those instances where information has developed indicating a connection with a competitive company.").

The redacted statements do not reflect legal advice or core work product, but merely the public relations

problems that arise from bringing lawsuits against priests, nuns, and other members of the clergy who innocently repeated the Satanism rumor. Although these document are embarrassing to Procter & Gamble, they do not qualify as work product. Rather, the redacted portions merely reflect Procter & Gamble's motivation to look for particularly attractive targets for future lawsuits and to use litigation for public relations ends.

A related concept is reflected in the redacted [*26] portions of document no. 398, for which attorney-client privilege is claimed. Neither the author nor any of the recipients of this document is an attorney. The redacted portions reflect efforts to induce the Archbishop of New York to issue a statement in support of Procter & Gamble. Although the possibility of filing new lawsuits is also mentioned, the context is obviously one of public relations. "We would plan to initiate follow-up publicity about the suits when filed." The assertion of attorney-client protection for the redacted information is frivolous.

The court will not discuss individually the remainder of the withheld or redacted documents. *In camera* inspection of each shows that the context of the Category II documents was public relations and other business strategizing and was not legal in nature, even when lawsuits or the prospect of lawsuits were under discussion. Procter & Gamble has not sustained its burden to show that these documents were generated in connection with the request for or the rendering of legal advice. They are, therefore, not entitled to protection under the attorney-client privilege. Applying the sequential analysis of *Toledo Edison, 847 F.2d at 339,* [*27] I find that the documents fall within the broad definition of discoverable material, but that Procter & Gamble has failed to meet its burden of showing that the document's were produced in anticipation of litigation. Even though litigation was pending, these documents fail the "motivational test," as they are business and not legal documents. In no sense do they qualify as "trial preparation material" under *Rule 26(b)(3),* nor does disclosure work any of the unfairness envisioned by the Supreme Court in *Hickman v. Taylor, 329 U.S. 495, 91 L. Ed. 451, 67 S. Ct. 385 (1947).* Disclosure of these documents exposes Procter & Gamble's public relations strategies, not its litigation strategy. Further, these documents do not reflect core work product of any attorney or other representative concerning the substance of litigation. The court holds that Procter & Gamble has

2001 U.S. Dist. LEXIS 4561, *27

failed to meet its burden of establishing attorney-client privilege or work-product immunity for the Category II documents, for which affidavits were submitted, except for document nos. 366, 398, 716, and 888, and the portion of document no. 7 previously identified.

## D. Report and Recommendation Concerning [*28] Sanctions

Despite being ordered by Magistrate Judge Boyce to produce the subject documents over two years ago, Procter & Gamble has managed to obstruct and delay discovery of the Category II documents until now. Procter & Gamble's desire to do so was understandable. Taken as a whole, the Category II documents are embarrassing and potentially harmful. They tend to establish that Procter & Gamble had ulterior motives in bringing and maintaining its Satanism litigation for the past two decades. Although quelling the Satanism rumor was certainly a goal of Procter & Gamble's litigation effort, the withheld documents tend to show that Procter & Gamble was also motivated by public relations concerns and a desire to use its problems with the Satanism rumor to the disadvantage of its competitors.

I find that Procter & Gamble's assertion of attorney-client privilege and work-product immunity for the withheld documents was not substantially justified. This finding is made inevitable by the history of Procter & Gamble's treatment of these documents. Over two years ago, Magistrate Judge Boyce found, after *in camera* inspection, that Procter & Gamble had no basis for the assertion of privilege [*29] or immunity. When the issue was raised by Amway in the present litigation, Procter & Gamble insisted upon a *de novo* review of the issue, but presented this court with the same affidavits that Judge Boyce found inadequate in 1998. Even worse, Procter & Gamble ignored this court's order directing it to support its claims with an affidavit for each withheld document and it failed to produce document no. 405. In essence, Procter & Gamble was given a second chance to support its claims, but failed to do so. As noted above, the only reasonable inference to be drawn from these facts is that Procter & Gamble knew that its claims were meritless but persisted in pressing them to forestall disclosure of embarrassing and harmful, but not privileged, material.

This is not the first time that Procter & Gamble has advanced meritless claims of privilege or immunity in this litigation. In a memorandum opinion entered September 24, 1999 (docket # 93), I found that Procter &

Gamble's description of a document in a privilege log "borders on fantasy." In the same opinion, I found that Procter & Gamble's description of document no. 997 was false. In a memorandum opinion entered January 31, 2000 (docket [*30] # 171), I found that Procter & Gamble "appears to have asserted immunity without regard to the content or purpose of the communications." I further found that, with regard to withheld document 2016, it "is difficult to conceive of the circumstances in which this document could be considered P&G work product." I found that the assertion of work-product immunity to cover document 2023 "has no conceivable basis in law." The memorandum concluded with this comment: "It is impossible for this court to discern a valid basis for the assertion of work-product immunity by P&G concerning the documents listed above. P&G has apparently proceeded on the basis that any communication between Schwartz and the Dinsmore firm, regardless of its purpose or subject matter, is somehow immune from discovery." Perhaps naively, I believed that such blunt comments would serve to ensure compliance by Procter & Gamble with its discovery obligations in the future.

Procter & Gamble's abuse of its discovery obligations in this case clearly calls for the imposition of sanctions. *Rule 37* provides two sources of authority for the imposition of sanctions in the present situation. First, [HN10] *Rule 37(a)(4)* authorizes the [*31] court to impose upon the party whose conduct necessitated a discovery motion the reasonable expenses incurred by the opponent in making the motion, including attorney's fees, unless the court finds that the party's nondisclosure or objection was substantially justified. *FED. R. CIV. P. 37(a)(4)(A).* Second, [HN11] *Rule 37(b)(2)* applies where a party has violated a court's discovery order. *See Brandt v. Vulcan, Inc., 30 F.3d 752, 756 (7th Cir. 1994).* Sanctions available under *Rule 37(b)* go beyond the imposition of expenses and may include the entry of a default judgment, an order striking out claims or defenses, and other substantive relief. The availability of sanctions under *Rule 37* was intended to have a deterrent effect arising from the possibility of serious consequences as a result of discovery abuse. *See National Hockey League v. Metropolitan Hockey Club, Inc., 427 U.S. 639, 643, 49 L. Ed. 2d 747, 96 S. Ct. 2778 (1976)*; 8A CHARLES A. WRIGHT, ARTHUR R. MILLER & RICHARD L. MARCUS, FEDERAL PRACTICE & PROCEDURE § 2281 (2d ed. 1994). Imposition of sanctions in the present case, as in all cases, should be

designed to ensure a party's future compliance with [*32] its discovery obligations and not to punish.

Considering the size and financial strength of Procter & Gamble, one of the world's largest corporations, I conclude that an award of monetary sanctions would have no deterrent effect in the future. An award of expenses, even in the tens of thousands of dollars, would be insignificant to a corporation with an annual income exceeding $ 40 billion. I therefore conclude that one of the more substantive sanctions enumerated in *Rule 37(b)* is necessary if the court hopes to influence Procter & Gamble's future conduct in this litigation. Procter & Gamble is subject to *Rule 37(b)* sanctions because of its failure to comply with this court's discovery order of December 14, 2000, requiring submission of all withheld documents and an affidavit establishing the claim of privilege or immunity with regard to each.

[HN12] *Rule 37(b)* sanctions are discretionary and are reviewed by the court of appeals under an abuse of discretion standard. *Freeland v. Amigo, 103 F.3d 1271, 1276 (6th Cir. 1997)*. The Sixth Circuit has endorsed a sequential approach to discovery sanctions. In determining the appropriate sanction, the trial courts are directed to [*33] consider the following factors (1) whether the party's failure to cooperate in discovery is due to willfulness, bad faith, or fault; (2) whether the adversary was prejudiced by the party's failure to cooperate in discovery; (3) whether the party was warned that failure to cooperate could lead to the sanction; and (4) whether less drastic sanctions were first imposed or considered. *103 F.3d at 1277; accord Regional Refuse Sys., Inc. v. Inland Reclamation Co., 842 F.2d 150, 154 (6th Cir. 1988)*.

Application of these factors counsels in favor of a sanction of significant import to assure future compliance by Procter & Gamble, but no more. The first factor is whether the party's failure to cooperate in discovery is due to willfulness, bad faith, or fault. Here, the previously found facts lead to a conclusion that Procter & Gamble's intransigent insistence upon inapplicable privileges throughout the course of this litigation arises from willfulness and an effort to impede discovery of the truth. Its failure to comply with this court's discovery order requiring an appropriate affidavit is baffling and cannot be due to ignorance or inadvertence. Procter & Gamble [*34] has retained an army of highly competent lawyers to represent it in its legal battles against Amway in the

district and circuit courts of this country. This court must assume that Procter & Gamble was fully capable of complying with its order of December 14, 2000, if it had wanted to.

Second, Amway has clearly been prejudiced. Procter & Gamble has been successful in delaying disclosure of these documents, without substantial justification, until the virtual close of discovery in this case. Third, Procter & Gamble has received warnings of a sort. The findings contained in the previous memorandum opinions dated September 24, 1999, and January 31, 2000, should have served to alert Procter & Gamble that the court would not tolerate the assertion of meritless claims of privilege. In hindsight, explicit warnings and monetary sanctions probably should have been imposed. It is difficult to believe, however, that a corporation of the size and sophistication of Procter & Gamble, which is a frequent litigant in the federal courts, would require more explicit warning.

Finally, the court should make clear its consideration of imposition of less severe sanctions. The Court of Appeals has held [*35] that [HN13] the district court need not expressly articulate its consideration of lesser sanctions in order to meet this requirement. *See Harmon v. CSX Transp., Inc., 110 F.3d 364, 366 (6th Cir. 1997)*. In that case, the Court of Appeals affirmed outright dismissal of an action, even though less drastic sanctions had not been imposed previously.

Consideration of the relevant factors leads me to conclude that drastic sanctions, such as the entry of a default or the striking out of pleadings, are not justified at present. By the same token, as noted above, mere monetary sanctions, while justified, would not be effective. The most appropriate sanction in the circumstance is that contemplated in *Fed. R. Civ. P. 37(b)(2)(A)*: an order that designated facts shall be taken as established for purposes of the action. It is clear to this court that Procter & Gamble attempted to erect an unjustified shield of privilege to obscure its ulterior motive in pursuing Satanism litigation against Amway and others. The withheld documents disclose that, well before Procter & Gamble had any basis to believe that Amway was in any way involved with the spreading of the Satanism rumor, Procter & Gamble [*36] had determined to target competitors for lawsuits involving the rumors, in order to further its public relations and competitive goals. The least punitive sanction in the

circumstance is an order taking the foregoing fact as admitted for purposes of this litigation. This fact, although relevant to the present case, is not claim-dispositive of either Amway's complaint or Procter & Gamble's counterclaim. Consequently, an order deeming this fact as admitted is not a severe sanction. Furthermore, the withheld documents fairly establish this fact in any event. The proposed sanction order would merely preclude Procter & Gamble from attempting to argue at trial that the documents mean something different from what they plainly say.

Although the contemplated order would not dispose of any claim or defense, it is unclear whether the Sixth Circuit would nevertheless consider the entry of such an order beyond the power of a magistrate judge under *28 U.S.C. § 636(b)(1)(A). Cf. Bennett v. General Caster Servs. of N. Gordon Co., Inc., 976 F.2d 995, 997 (6th Cir. 1992)* (magistrate judge does not have authority to issue final order for sanctions under Rule [*37] 11). In the exercise of caution, I am not ordering the imposition of sanctions, but recommending to Judge Bell that Procter & Gamble be sanctioned as set forth above. Therefore, on the sole issue of sanctions, this document should be treated by the parties as a report and recommendation under *Fed. R. Civ. P. 72(b).*

**Conclusion**

Procter & Gamble will be ordered to produce all withheld documents except document nos. 366, 398, 716, and 888, and the paragraph on page 2 of document no 7 describing the substance of document no. 398.

In addition, I recommend that the following order of sanctions be issued pursuant to *Fed. R. Civ. P. 37(b):*

IT IS HEREBY ORDERED that the following fact is taken as established for purposes of this action: Well before Procter & Gamble had any basis to believe that Amway was in any way involved with the spreading of the Satanism rumor, Procter & Gamble had determined to

target competitors for lawsuits involving the rumors, in order to further its public relations and competitive goals.

Dated: April 3, 2001

Joseph G. Scoville

United States Magistrate Judge

**NOTICE TO PARTIES**

Any objections to the recommendation contained in section [*38] D above must be filed and served within ten days of service of this notice on you. *28 U.S.C. § 636(b)(1)(C); FED. R. CIV. P. 72(b).* All objections and responses to objections are governed by W.D. MICH. LCIVR 72.3(b). Failure to file timely objections may constitute a waiver of any further right of appeal. *See Thomas v. Arn, 474 U.S. 140, 88 L. Ed. 2d 435, 106 S. Ct. 466 (1985); Neuman v. Rivers, 125 F.3d 315, 322-23 (6th Cir. 1997); United States v. Walters, 638 F.2d 947 (6th Cir. 1981).*

**ORDER**

For the reasons set forth in the accompanying memorandum opinion:

IT IS ORDERED that plaintiff's motion to compel defendant Procter & Gamble to produce documents responsive to document request no. 105 (docket # 231) be and hereby is GRANTED. Defendant is ordered to produce, within five days of the date of this order, all previously withheld responsive documents, with the exception of documents 366, 398, 716, 888, and the paragraph on page 2 of document no. 7 describing the substance of document no. 398.

DONE AND ORDERED this 3rd day of April, 2001.

Joseph G. Scoville

[*39] United States Magistrate Judge