IN THE UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF ARKANSAS
TEXARKANA DIVISION

| | | |
|---|---|---|
| JOHN WARD, JR. | § | |
| | § | |
| Plaintiff | § | |
| | § | C.A. NO. 4:08cv4022 |
| v. | § | JURY TRIAL DEMANDED |
| | § | |
| CISCO SYSTEMS, INC. | § | |
| | § | |
| Defendant | § | |

**PLAINTIFF WARD'S MOTION TO COMPEL
DEFENDANT CISCO SYSTEMS, INC., TO PRODUCE
<u>DOCUMENTS PRODUCED IN PRIOR LITIGATION</u>**

Comes now, Plaintiff John Ward, Jr., ("Ward") and files this motion to compel Defendant Cisco Systems Inc. ("Cisco") to produce documents provided to an adversary in prior litigation.

## I.  INTRODUCTION

Cisco is withholding twenty-two documents from Ward, claiming privilege. But, in a related case, Cisco produced these same documents to its adversary. Under binding Eighth Circuit law, once documents are produced to an adversary, privilege is waived. Whether the documents were produced under a protective order or other confidentiality agreement is irrelevant. Ward properly requested the twenty-two documents. They are relevant to this litigation — indeed, they bear on critical issues in the case — and they are not available from any other source. Accordingly, as Cisco cannot claim privilege in light of its past production, this Court should order Cisco to produce the documents to Ward.

## II.  BACKGROUND

Briefly, Ward is suing Cisco for defamation and related causes of action stemming from publications on the internet blog www.trolltracker.blogspot.com. In October 2007, then Cisco in-house counsel Richard Frenkel published entries on the blog accusing Ward and Eric

Albritton, Ward's co-counsel in the *ESN v. Cisco* litigation, of criminal and unethical conduct in connection with filing ESN's complaint.

In the wake of these very public accusations, Ward and Albritton filed separate lawsuits against Cisco. Early in the *Albritton* case, the parties entered into an agreement regarding the production of documents in that litigation. Under the Albritton agreement, Cisco could produce documents it deemed relevant but for which it claimed privilege. Those documents were produced to Albritton but kept hidden from public view under the blanket protective order. The agreement covered the production of documents only and prevented Albritton from seeking other discovery by arguing subject-matter waiver.

Cisco produced several documents under the Albritton Agreement, though it maintained that the documents were privileged. In all, Cisco produced two sets of allegedly privileged documents, the first set bearing production number range "CISCO PRIVILEGED 000001-000327" and the second set bearing production number range "BB_0001-0033 Privileged." Many of these documents have been produced in the *Ward* case. Some of them Albritton's counsel produced in this litigation after they were pre-admitted as Albritton Trial exhibits; others were produced by order of this Court. Dkt. No. 89 (8/24/09 Order). Ward now seeks production of the remaining twenty-two documents Cisco produced to Albritton under the Albritton Agreement but has not produced to Ward.[1]

For the Court's convince, attached hereto as Exhibit A is a chart of the twenty-two documents at issue in this motion.[2]

Nearly a year ago, Ward, in his very first Request for Production, requested "all documents previously produced in the case of *Albritton v. Cisco, et al* an action pending in the Eastern District of Texas (ED TX 6:08cv89)." Exh. B (Plaintiff's Request for Production of

---

1 The documents Ward seeks pursuant to this motion overlap somewhat with the documents he moved to compel under the now pending Motion for Reconsideration of the Court's Order Regarding the Scope of Cisco's Subject-Matter Waiver of Privilege, Dkt. No. 121, filed 10/19/09. At least the document produced at CISCO PRIVILEGED 000227-28 is the subject of both motions.

2 This chart contains a subset of the entries included in the chart Ward submitted as Plaintiff's Submission Log and Motion for an Order Directing Cisco to Provide Identified Documents to the Court for *In Camera* Review, Dkt. No. 75-1.

Documents to Defendant Cisco Systems, Inc. served December 12, 2008). Despite nearly identical issues being raised in this case as well as in the Albritton case, Cisco has not produced a complete set of the Albritton documents.[3] Cisco does not deny withholding documents produced to Albritton but refuses to produce those documents to Ward claiming attorney-client privilege and work product protection. *See* Dkt. No, 77-4 (Cisco's Submission Log, Exhibit A, submitted on June 30, 2009 in connection with this Court's *in camera* review) column labeled "Privilege".

As the *Albritton* litigation progressed, present counsel became counsel of record for Plaintiff in that case.[4] As Albritton's counsel, present counsel accessed and reviewed documents Cisco produced as privileged under the Albritton agreement. Accordingly, counsel is familiar with the document production in both this and the related *Albritton* case, including the documents Cisco produced under the Albritton Agreement.[5] Without revealing more information than is contained in Cisco's own submission log, the documents include emails between Cisco in-house, and sometimes outside, counsel generally regarding the identity of the Patent Troll Tracker, the timing of events with respect to the Patent Troll Tracker articles, and the publicity surrounding the filing of ESN's complaint. The emails are dated from late October 2007 to November 2007, at or near the time of the Troll Tracker blog postings at issue here, and in February 2008, around the time Frenkel revealed his identity as the Patent Troll Tracker.

This Court is familiar with the twenty-two withheld documents. Cisco lodged and submitted these documents to the Court for its *in camera* review in connection with Ward's Motion to Compel Compliance With the Court's March 30, 2009 Order. *See* Dkt. No. 81, at 3 (July 9, 2009 Order) (Ordering Cisco to produce for *in camera* review "all documents listed in plaintiff's submission log"); Exh. C (7/14/09 letter to Chief Judge Hendren from

---

[3] Dkt. No. 114, at 5 n.1 (Cisco Systems, Inc.'s Motion for Partial Summary Judgment and Brief In Support) (stating that Albritton's case "was based on the exact same factual allegations against Cisco" as Ward's case).
4 Ward's lead counsel, Nicholas H. Patton and Patricia L. Peden, represented Albritton though they did not join the case until several months after it was filed. Cisco's lead counsel in this case also represented Cisco in *Albritton*.
5 There is no protective order in *Ward*. Over Ward's protestations, Cisco has repeatedly tried to impose the Albritton Agreement in Ward because the agreement would permit Cisco to decide what documents get produced according to Cisco's terms.

Babcock)(stating that Cisco's submission to the Court contained "all documents listed in plaintiff's submission log").

After reviewing the documents *in camera*, the Court ordered Cisco to produce additional documents, some of which Cisco produced in the *Albritton* litigation. Dkt. No. 89 (8/24/09 Order). That Order was directed to the production of documents responsive to Plaintiff's interrogatories Nos. 5 and 6. Dkt. No. 89 (8/24/09 Order). It did not address the documents at issue here — relevant documents produced in the *Albritton* litigation but not produced to Ward because of Cisco's insistence that its privilege claims survived their prior production.

### III.   ARGUMENT

Under Eighth Circuit precedent, the twenty-two documents Cisco is withholding from Ward cannot be protected by privilege. The documents are relevant — of critical import — and discoverable. And these Cisco documents are unavailable from any other source. Accordingly, Cisco should be ordered to produce the documents.

*A.   Cisco Cannot Claim Privilege For Documents Produced to a Litigation Adversary*

Eighth Circuit law is clear — once documents are produced to an adversary, even if produced pursuant to a protective order or other agreement, privilege and work product protection is destroyed. *In re Chrysler Motors Corp. Overnight Evaluation Program Litigation,* 860 F.2d 844, 847 (8th Cir. 1988). Cisco produced the twenty-two documents Ward now seeks to Albritton, its litigation adversary. Thus, for those documents, Cisco has no claim of privilege left to assert.

The *Chrysler* case is instructive and binding. There, defendant faced both a civil and criminal lawsuit stemming from the same alleged facts. *Id.* To aid its defense efforts, defendant created a database of select information. *Id.* at 844. After settling the civil lawsuit, defendant provided opposing counsel with access to the database. *Id.* Prior to production, defendant and plaintiff agreed the database constituted work product and that defendant's production would not waive privilege. *Id.* Despite the agreement, the Eighth Circuit upheld the district court's order to provide the database to opposing counsel in the criminal case. *Id.* at 846.

4

The Circuit found that by voluntarily disclosing the database to a litigation adversary, defendant waived any work product protection. *Id.* at 846. Whether the database constituted ordinary or opinion work product was irrelevant. *Id.* Defendant's non-waiver agreement was also irrelevant. *Id.* "Confidentiality is the dispositive factor in deciding whether [material] is privileged." *Id.* at 847 (internal citations omitted).

Similar to the parties in *Chrysler*, Cisco and its litigation adversary, Albritton, entered into an agreement whereby they agreed to produce relevant documents without waiving privilege. The defendant and civil plaintiff in *Chrysler* reached a similar agreement. Cisco then voluntarily produced documents to Albritton. Similarly, the *Chrysler* defendant provided civil plaintiffs with its work product. Now, Ward, also Cisco's adversary, seeks the allegedly privileged documents Cisco produced to Albritton. Again, as in *Chrysler*, criminal-plaintiff sought the allegedly privileged database defendant provided to civil-plaintiffs.

In *Chrysler*, the Circuit found defendant waived privilege by producing to an adversary. Following *Chrysler*, Cisco waived any claim of privilege over the documents at issue here by producing them to Albritton, regardless of those parties' agreement. Cisco cannot now withhold the previously produced documents from Ward on privilege grounds. Disclosure of the disputed material to Albritton waived any claim to work product protection as to Ward.

B. Under *Chrysler*, Cisco Waived Both Work Product Protection and Attorney-Client Privilege

Whether Cisco claims the twenty-two documents are protected by attorney-client privilege or by the work product doctrine, both protections are waived. Once the documents are produced in litigation, these protections are no longer available. The *Chrysler* court found specifically that work product protection — whether ordinary or opinion work product — was waived by defendant's voluntary production. *Chrysler* at 846 ("[defendant] waived **any** work product protection by voluntarily disclosing the computer tape to its adversaries") (emphasis added). Production to an adversary also waives attorney-client privilege. *See Mass. Inst. of Tech.,* 129 F.3d 681, 687 (1st Cir. 1987) (holding that disclosure of work product and attorney-

5

client materials to auditing arm of DoD waived any such protections as to IRS); *see also* Ark. R. Evid. 510 (privilege waived by voluntary disclosure).  The very cornerstone of the attorney-client privilege is confidentiality.  Once confidentiality has been intentionally breeched, the communication can no longer be said to be privileged.

The *Chrysler* decision is in line with other courts, which find voluntary production waives both work product protection and attorney-client privilege.  *Wood v. Archbold Med. Ctr., Inc.,* 2009 U.S. Dist. LEXIS 84866, 13-14 (M.D. Ga. Sept. 17, 2009) ("[T]he overwhelming majority of the persuasive authority from other circuits holds that voluntary disclosure of work product information to an adversary waives work product protection as to that information.") (collecting cases)[6] attached hereto as Exh. D. "All courts which have addressed the question agree that once a party discloses information protected by the attorney client privilege to an outside party, the privilege is destroyed." *Adams Land & Cattle Co. v. Hartford Fire Ins. Co.,* 2008 U.S. Dist. LEXIS  4089, at *4-*6 (D. Neb. Jan. 18, 2008) attached hereto as Exh. E.  Accordingly, Cisco cannot claim the documents at issue here are covered by either work product protection or attorney-client privilege.

### C.  Cisco's Disclosure Under the Albritton Agreement Does Not Save Privilege

The fact that Cisco disclosed some of the documents under the Albritton Agreement cannot be the basis for protecting information it voluntarily disclosed in the *Albritton* case. *Chrysler* at 847.  Producing under a protective order or other confidentiality agreement is irrelevant — privilege is waived.  *See id.,*; *Pittman v. Frazer,* 129 F.3d 983, 988 (8th Cir. 1997) ("If documents otherwise protected by the work-product rule have been disclosed to others with

---

[6] *See, e.g., In re Chrysler Motors Corp. Overnight Evaluation Program Litig.,* 860 F.2d 844, 846 (8th Cir. 1998)("Disclosure to an adversary waives the work product protection as to items actually disclosed, even where disclosure occurs in settlement."); *Westinghouse Elec. Corp. v. Republic of Philippines,* 951 F.2d 1414, 1428 (3rd Cir. 1991) ("Most courts hold that to waive the protection of the work-product doctrine, the disclosure must enable an adversary to gain access to the information."); *U.S. v. Mass. Inst. of Tech.,* 129 F.3d 681, 687 (1st Cir. 1997)("[W]ork product protection is provided against 'adversaries,' so only disclosing material in a way inconsistent with keeping it from an adversary waives work product protection."); *In re Subpoenas Duces Tecum,* 738 F.2d 1367, 1372, 238 U.S. App. D.C. 221 (D.C. Cir. 1984)("Fairness and consistency require that appellants not be allowed to gain the substantial advantages accruing to voluntary disclosure  of work product to one adversary . . . while being able to maintain another advantage inherent in protecting that same work product from other adversaries."); *see also Pahl v. Robinson,* 2009 U.S. Dist. LEXIS 34668, 2009 WL 1097962, at *2 (M.D. Ga. April 22, 2009).

an actual intention that an opposing party may see the documents, the party who made the disclosure should not subsequently be able to claim protection for the documents as work product.") (internal citations omitted); *Bowne of New York City, Inc. v. AmBase Corp.,* 150 F.R.D. 465, 479-81 (S.D.N.Y. 1993) (a party who for tactical reasons chooses to permit discovery of privileged information, even if done under the terms of an agreement preventing other subject-matter waiver, waives its privilege because it cannot be permitted to pick and choose among its opponents, waiving the privilege for some but obstructing others); *Adams Land & Cattle Co.,* 2008 U.S. Dist. LEXIS 4089, at *6 ("turning information over to litigation adversary, even with the stipulation that the confidentiality should be maintained, waives the privilege").

In light of this authority, Cisco could have anticipated that its production to Albritton would be discoverable by Ward and should have guarded against privilege waiver appropriately. However, Cisco cannot now claim privilege as to what it earlier produced.

    D.   *Cisco's Production Results in Waiver of All Privilege As to the Produced Documents*

To find privilege waiver as to the twenty-two documents Ward seeks from Cisco, the Court need not determine whether there has been "subject matter" or "at issue" waiver. Instead, the Court need only determine that there is waiver specific to the previously produced. documents. *Pittman,* 129 F.3d at 988 ("We have stated that disclosure to an adversary waives work product protection **as to items actually disclosed**.") (emphasis added); *see also Wood.,* 2009 U.S. Dist. LEXIS 84866 at *13-14; *In re United Mine Workers of Am. Employee Benefit Plans Litig.,* 159 F.R.D. 307, 310-12 (D.D.C. 1994) (finding waiver of work product protection as to documents produced).

Cisco has repeatedly demonstrated reticence to produce discovery it claims is privileged, even in the face of contrary case law or court order. Cisco's decision to produce its documents to Albritton waives its right to assert any claim of privilege for those documents. *Chrysler* at 847; *Adams Land & Cattle Co.,* at *6 (same). Ward properly propounded a request for production seeking all documents produced in the *Albritton* case. Ward's request is proper under

7

Rule 26(b)(1) which allows "discovery regarding any non-privileged matter that is relevant to any party's claim or defense". Absent privilege, Cisco must produce the documents. As Cisco has no privilege of any kind to assert over the documents it produced to Albritton, there is no justification to keep those documents from Ward.

      *E.    Ward Can Demonstrate Substantial Need for the Twenty-Two Cisco Documents*

When seeking production of another party's privileged work product, the moving party must demonstrate "'substantial need and an inability to secure the substantial equivalent of the items through alternate means without undue hardship' for ordinary work product… and 'only in rare and extraordinary circumstances' for opinion work product…" *Pittman,* 129 F.3d at 988 (citations omitted). In light of Cisco's privilege waiver as to the documents at issue, Ward need not make such a demonstration. However, Ward can demonstrate a substantial need for the requested documents.

The documents Ward seeks contain crucial evidence on key issues in the case for which there is no other source of discovery. *See Brawner v. Allstate Indem. Co.,* 2007 U.S. Dist LEXIS 84801 at *10 (E.D. Ark. Oct. 29, 2007), attached hereto as Exh. F. As this Court has noted, Ward's counsel has already seen the documents at issue here. Exh. G. (6/12/09 transcript. 28:24-29:7). Ward's counsel, as counsel for Albritton, reviewed the Cisco documents. This is not a case where counsel is asking for documents where their import to the case is unknown --- counsel has assessed their importance.[7] They bear on Cisco's knowledge of and discussion about Frenkel's blogging activities as they relate to the articles at the center of this case.

Ward has no other avenue of obtaining Cisco's documents or their substantial equivalent. *See* Fed. R. Civ. P. 26(b)(3). He cannot get discovery about Cisco and Frenkel's state of mind from any other source. *See* Dkt. No. 64 at 11. Ward cannot obtain that evidence from witness testimony because Cisco has instructed deposition witnesses (and will continue to instruct

---

[7] Although Ward's counsel, as Albritton's counsel, has access to the documents, they cannot produce the documents in this case as they would be in violation of the Albritton Agreement and other confidentiality agreements in place in *Albritton*.

8

without a finding of waiver) not to answer Ward's questions on the basis of privilege. *See* Dkt. No. 64, Exh. 9 at 92:22-96:6. Here, Ward is seeking critical evidence on key issues in this case for which there is no other source of discovery. *See Brawner,* 2007 U.S. Dist. LEXIS 84801, at *10 (overruling work product claims and finding that discovery sought was necessary to address bad faith issues in the case). Ward has demonstrated substantial need for the twenty-two documents at issue.

## IV.  CONCLUSION

For all of the forgoing reasons, Plaintiff Ward respectfully requests that his motion in all things be GRANTED, and that Cisco be ordered to produce the twenty-two documents listed in the chart attached as Exhibit A and previously produced in the *Albritton* litigation.

Respectfully Submitted,

Nicholas H. Patton
AR Bar No. 63035
Email: nickpatton@texarkanalaw.com
Courtney Towle
ctowle@texarkanalaw.com
Patton, Tidwell & Schroeder, LLP
4605 Texas Boulevard
Texarkana, Texas 75503
903.792.7080 / 903.792.8233 (Fax)

Patricia L. Peden
LAW OFFICE OF PATRICIA L. PEDEN
610 16th Street, Suite 400
Oakland, California 94612
Telephone: 510-268-8033

ATTORNEYS FOR PLAINTIFF

**CERTIFICATE OF CONFERENCE**

On October 6, 2009, the parties conferred in good faith regarding the matter made the subject of this motion. Discussions have conclusively ended in an impasse, leaving an open issue for the Court to resolve.

_____
Nicholas H. Patton

**CERTIFICATE OF SERVICE**

This is to certify that on this 22nd day of October, 2009, a true and correct copy of the foregoing document was served electronically via the Court's CM/ECF system upon:

| | |
|---|---|
| Richard E. Griffin | Attorney for Defendant Cisco Systems, Inc. |
| Charles Babcock | |
| Crystal Parker | |
| Kurt Schwarz | |
| JACKSON WALKER, LLP | |
| 1401 McKinney | |
| Suite 1900 | |
| Houston, Texas 77010 | |

_____
Nicholas H. Patton