# EX. E

IN THE UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TEXAS
TYLER DIVISION

| | | |
|---|---|---|
| ERIC M. ALBRITTON, | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| v. | § | |
| | § | NO. 6:08-CV-00089 |
| (1) CISCO SYSTEMS, INC., | § | |
| (2) RICHARD FRENKEL, a/k/a | § | |
| "TROLL TRACKER," | § | |
| (3) JOHN NOH and | § | |
| (4) MALLUN YEN, | § | |
| | § | |
| Defendants. | § | |

**PLAINTIFF'S OPPOSITION TO DEFENDANTS' MOTION TO COMPEL**

*TO THE HONORABLE UNITED STATES DISTRICT JUDGE:*

   ***COMES NOW, ERIC M. ALBRITTON***, Plaintiff, and files this, his Response to ***CISCO SYSTEMS, INC.'s*** Motion to Compel Production of Documents, and, in support thereof, would respectfully show unto the Court as follows:

   **I.     Introduction And Factual Background**

   In October of 2007, Richard Frenkel, acting in the course and scope of his employment with Cisco Systems, Inc. and in concert with Defendants Yen and Noh, published outrageous and patently false statements against Eric Albritton. Frenkel and his cohorts continuously published the statements until Plaintiff filed this action for damages in March of 2008. Albritton sued Cisco, Frenkel, Yen and Noh for defamation, seeking to recover damages for his shame, embarrassment, humiliation, mental pain and anguish; damage to his reputation, good name and standing in the community; and exemplary damages.

   Albritton has made no claim for damages from lost earnings, lost earning capacity or medical expenses as a result of defendants' tortuous conduct. To the contrary, in response to Cisco's request for Albritton's medical and financial records, Albritton repeatedly told Cisco that

1

(1) he has not sought any medical treatment because of Defendants' conduct, and (2) he cannot identify any specific lost employment or income attributable to Defendants' conduct. In his deposition testimony, Albritton expressly confirmed that he seeks no such damages in this lawsuit. This testimony should have ended the matter because it removed any doubt that the discovery Cisco seeks is not material to any disputed issue in this case.

Undeterred by the relevance requirement, Cisco moves to compel Albritton to disclose his entire medical history, his firm's balance sheets, income statements and statements of cash flows for every year since 2002, all engagement letters executed by the firm since October of 2007, and his firm's federal tax returns since 2002. Because the discovery Cisco seeks is not relevant to any claim or defense in this case, is unnecessary, unreasonably cumulative and duplicative, unduly burdensome and sought only for purposes of harassment, Cisco's Motion should be denied.

II. **Legal Standards**

It is axiomatic that discovery is limited to those matter that are relevant to a party's claim or defense. FED. R. CIV. P. 26(b)(1). As the party seeking discovery, Cisco must establish the relevance of the documents it seeks. See *Choate v. Potter,* No. 3-06-cv-2146-L, 2008 U.S. Dist. LEXIS 27209, at *2 (N.D. Tex. Apr. 3, 2008) (internal citation omitted) ("To place the burden of proving that the evidence sought is not reasonably calculated to lead to the discovery of admissible evidence on the opponent of discovery is to ask that party to prove a negative. This is an unfair burden, as it would require a party to refute all possible alternative uses of the evidence, possibly including some never imagined by the proponent."). Only if Cisco is able to demonstrate that its requests fall within the permissible scope of discovery does the burden shift back to Albritton to show why discovery should not be permitted. See *id.*

All discovery is subject to the limitations imposed by Rule 26(b)(2)(i)-(iii). See *Walker v. Rent-a-Center, Inc.*, No. 5:02CV3, 2006 U.S. Dist. LEXIS 72232, at *4 (E.D. Tex. Oct. 3, 2006). The rules expressly provide that the court "must" limit the frequency or extent of discovery when "the discovery sought is unreasonably cumulative or duplicative or can be

2

obtained from some other source that is more convenient, less burdensome or less expensive" or "the burden or expense of the proposed discovery outweighs its likely benefit, considering the needs of the case, the amount in controversy, the parties resources, the importance of the issues at stake in the action and the importance of the discovery in resolving the issues." *See* Fed. R. Civ. P. 26(b)(2)(C)(i)-(iii).

Further, upon a showing of good cause, the court may issue orders necessary to "protect a party or person from annoyance, embarrassment, oppression, or undue burden or expense." *See* Fed. R. Civ. P. 26(b)(5)(c)(1). Although the discovery rules are given liberal treatment to affect their purpose of informing litigants, those rules have "ultimate and necessary boundaries." *Garcel, Inc. v. Great Am. Asset Mgmt.*, No. 01-0772, 2002 U.S. Dist. LEXIS 2390, at *8 (E. D. La. Jan. 24, 2002). The discovery sought must have some evidentiary value before an order to compel disclosure of otherwise inadmissible material will issue. *Id.* at *7. Courts have likewise recognized the legal tenet that the rules should not be misapplied so as to allow "fishing expeditions in discovery." *Id.* In such circumstances, courts will enter a protective order preventing the propounding party from abusing the discovery process. *See id.* at *8.

**III.   Argument**

Cisco argues that Albritton's private medical and financial records must be produced because in order to recover for mental anguish, Albritton must offer (1) evidence of compensable mental anguish and (2) evidence to justify the amount awarded. *See* Mot. at 4. According to Cisco, because Albritton must put on some evidence of his mental anguish to support his allegations, all documents remotely concerning his health or financial position are relevant. Cisco's argument lacks merit. Albritton has not put his medical or financial history at issue in this case. The Court should reject Cisco's attempt to manufacture relevance where none exists so that it can undertake an unlimited search through Albritton's most sensitive documents.

A.  <u>The Documents Cisco Seeks Are Not Relevant</u>

The documents Cisco seeks are not relevant to Albritton's claim for damages.  Under Texas law, compensatory damages allowable for defamation are divided into two categories: general and specific.  *See Peshak v. Greer*, 13 S.W.3d 421, 427 (Tex. App. Corpus Christi 2000). General damages include compensation for "injury to character or reputation, injury to feelings, mental anguish and similar wrongs." *Bentley v. Bunton*, 94 S.W.3d 561, 604 (Tex. 2002).  A plaintiff may also elect to recover additional, "special damages" that flow from the libel including loss of earning capacity, *Peshak*, 13 S.W.3d at 427, loss of past and future income, *Shearson Lehman Hutton, Inc. v. Tucker*, 806 S.W.2d 914, 922 (Tex. App. – Corpus Christi 1991, writ dism'd), and loss of employment, *Houston Belt & Terminal Ry. v. Wherry*, 548 S.W.2d 743, 753 (Tex. App. Houston [1st Dist.] 1976, writ ref'd n.r.e.).

When the actionable statements injure the plaintiff in his office, profession or occupation, *Knox v. Taylor*, 992 S.W.2d 40, 50 (Tex. App. – Houston [14th Dist.] 1999, no pet.), or charge him with the commission of a crime, *Leyendecker & Assocs., Inc. v. Wechter*, 683 S.W.2d 369, 374 (Tex. 1984), they are defamatory *per se*.  *See e.g., Texas Disposal Sys. Landfill, Inc. v. Waste Mgmt. Holdings, Inc.*, 219 S.W.3d 563, 581(Tex. App – Austin 2007, pet. denied).  In such cases, Texas law presumes that the plaintiff is entitled to recover general damages even in the absence of specific evidence of harm to the plaintiff's reputation.  *Id., see also Peshak*, 13 S.W.3d at 427 ("In actions of libel *per se*, the law presumes the existence of some actual damages, requiring no independent proof of general damages.").  In fact, the Texas Supreme Court has held that a plaintiff injured in his office or profession is entitled to recover actual damages for injury to his reputation and for mental anguish as a matter of law.  *See Bentley*, 94 S.W.3d at 604 ("Our law presumes that statements that are defamatory *per se* injure the victim's reputation and entitle him to recover general damages, including damages for loss of reputation and mental anguish."); *see also Smith v. Lowe's Home Centers, Inc.*, No. SA-03-CA-1118-XR, 2005 U.S. Dist. LEXIS 12812, at *12 (W.D. Tex. June 29, 2005) (citing *Bentley* and holding

4

"statements which are defamatory *per se* entitle a plaintiff, as a matter of law, to recover actual damages for injury to reputation.").

In this case, Defendants attacked Albritton in his profession. The false statement that Albritton had "conspired" with the clerk of the court to falsify official documents is so outrageous and undeniably harmful that Texas law presumes that Albritton has suffered damage to his reputation and mental anguish. Further, Albritton has expressly disclaimed any recovery for special damages attributable to loss of income and loss of earning capacity. Because Texas law entitles Albritton to an award of damages for reputational injury and mental anguish as a matter of law, there is no need or requirement that Albritton introduce specific evidence in support of these damages. *See Peshak*, 13 S.W.3d at 427 ("In actions of libel *per se*, the law presumes the existence of some actual damages, requiring no independent proof of general damages."); *see e.g., Parkway Co. v. Woodruff*, 901 S.W.2d 434, 443-44 (Tex. 1995)(a plaintiff may recover damages for mental anguish based on evidence sufficient to establish a "substantial disruption in the plaintiff's daily routine."). Here, Albritton need not offer any evidence other than his own testimony to prove the extent and nature of his damages. *See Williams v. Trader Publ'g Co.*, 218 F.3d 481, 486 (5th Cir. 2000)(holding that plaintiff's testimony alone was sufficient to support the jury's award for mental anguish damages); *Migis v. Pearle Vision, Inc.*, 135 F.3d 1041, 1047 (same); *Smith*, 2005 U.S. Dist. LEXIS 12812, at *16 (evidence of mental anguish need not be corroborated by doctors, psychologists, or other witnesses).

Because Albritton's general damages are presumed, and the extent of those damages can be supported by his own testimony at trial, his medical and financial records are not relevant to the damages issues in this case.

B.  <u>Cisco Is Not Entitled to Albritton's Medical Records</u>

Cisco incorrectly argues that the very fact that Albritton has claimed he suffered mental anguish is enough to require production of his medical records. In support of its position, Cisco cites to *Patterson v. P.H.P. Healthcare Corp.*, 90 F.3d 927, 940 (5th Cir. 1996). *See* Mot. at 4. But as this Court has previously held in an opinion omitted from Cisco's brief, *Patterson* does

5

not address the relevance question. *See Burrell v. Crown Central Petroleum, Inc.*, 177 F.R.D. 376, 381 (E.D. Tex. 1997)(*Patterson* does not give specific instructions on which evidence is subject to disclosure, or even what evidence may or may not be relevant). Instead the holding in that case is directed to the *amount of proof* needed to recover mental anguish damages. *Id.*[1] Moreover, *Patterson* does not hold that medical evidence or corroborating testimony is required for an award of mental anguish damages, as argued by Cisco. *See Migis*, 135 F.3d at 1047. Far from requiring medical evidence, this Circuit has specifically held that no such evidence is required and that a plaintiff's own testimony, if sufficiently detailed, is sufficient to prove the extent and nature of the plaintiff's damages. *See id.; Williams*, 218 F.3d at 486.

The question before this Court is not the sufficiency of Albritton's evidence, but whether the documents Cisco demands are relevant in light of the fact that Albritton has repeatedly stated he will offer no medical evidence or evidence of lost profits in this case. In *Burrell*, this Court answered that question, holding that unless a plaintiff's mental condition is somehow at the "crux of the case," medical records and testimony not relied upon by Plaintiff need not be produced. *See* 177 F.R.D. at 384. This Court was understandably concerned that a "tremendous potential for abuse exists when a defendant has unfettered access to a plaintiff's medical records" and "that potential is even greater where . . . the plaintiffs' physical or mental conditions have not been placed in controversy." *Id.* at 383. In *Burrell*, this Court rejected the relevance arguments presented in Cisco's motion and instead held that "[i]f plaintiffs are not going to use medical records or medical testimony at trial in order to prove up the claims for mental anguish, then the court sees no reason why the records must be disclosed." *Id.* at 384.

Like the Plaintiff in *Burrell*, Albritton need not present medical evidence to prove his claim, and has represented that he will not offer any such evidence at trial. Albritton has never asserted any claim for medical expenses. Albritton does not allege that he sought any health care

---

[1] The other cases cited by Cisco are likewise distinguishable. In *Saenz v. Fidelity & Guar. Ins. Underwriters*, 925 S.W.2d 607, 614 (Tex. 1996) and *Parkway Co. v. Woodruff*, 901 S.W.2d 434, 445 (Tex. 1995) the Court reviewed the jury's award to determine the *sufficiency* of the evidence offered at trial.

6

because of Defendants' conduct. He has not designated any physicians or health care providers to corroborate his mental anguish. Indeed, he need not do so since Texas law entitles him to recover such damages as a matter of law upon establishing libel *per se*. As a result, Cisco's request to rummage through Albritton's medical history should be denied. *See id.*

C. Cisco is Not Entitled To Albritton's Tax Returns Or Financial Records

In a similar vein, Cisco seeks to compel Albritton's tax returns and related financial information, although Albritton is not seeking lost profit damages in this case. Like Albritton's medical records, his tax returns and financial documents are not relevant to the damages issues in this case, and the lack of relevance coupled with the highly sensitive nature of those documents weighs heavily against granting Cisco's motion.

Congress has guaranteed that federal income tax returns will be treated as confidential communications between the taxpayer and the government, creating a public policy against the disclosure of those returns. *See* I.R.C. §6103; *Payne v. Howard*, 75 F.R.D. 465, 470 (D.D.C. 1977)(noting that courts have broadly applied a general federal policy against disclosure of tax returns). The Fifth Circuit agrees, stating "[i]ncome tax returns are highly sensitive documents; courts are reluctant to order their routine disclosure as part of discovery." *Walker*, 2006 U.S. Dist. LEXIS 72232, at *7, citing *Natural Gas Pipeline Co. of Am. v. Energy Gathering, Inc.*, 2 F.3d 1397, 1411 (5th Cir. 1993). "Not only are the taxpayer's privacy concerns at stake, but unanticipated disclosure also threatens the effective administration of our federal tax laws given the self-reporting, self-assessing character of the income tax system." *Id.* Courts refuse to order production of a plaintiff's tax returns unless the moving party demonstrates both that the returns are relevant to the subject matter of the action and that there is a compelling need for the tax returns because the information contained therein is not otherwise obtainable. *Id.*

Here, Albritton's tax returns are not relevant because Albritton is not seeking lost profits. Moreover, Cisco's claimed need for Albritton's confidential tax returns is far too tenuous to demonstrate the type of <u>compelling</u> need required to order their production. Increases or

decreases in Albritton's revenue may result from a myriad of reasons unrelated to the defamation disseminated by Cisco. Thus, Albritton's tax returns and related financial information will provide no additional relevant information. To the extent that Cisco seeks information related to Albritton's damaged reputation, that information is available through Albritton's testimony and/or is otherwise available from other less-sensitive sources. Thus, Cisco's request for Albritton's financial documents should be denied. *See id.* at *9.

> D. The Discovery Cisco Seeks Is Unnecessary, Unreasonably Cumulative, Overly Broad And Sought For The Purpose Of Harassing Plaintiff

To the extent that the documents Cisco seeks have any marginal relevance, they are duplicative of the evidence adduced in Albritton's deposition. *Cf.* FED. R. CIV. P. 26(b)(2)(C)(i). Albritton's testimony that he has not sought any medical treatment because of Defendants' conduct and that he cannot identify any specific lost employment or income attributable to Defendants' conduct eliminates Cisco's claimed need to discover his medical records, client lists, engagement letters, tax returns, and confidential financial statements. To the extent that Albritton's claim for mental anguish entitles Cisco to any discovery, Cisco had access to that discovery during Albritton's deposition. Cisco's demand for additional discovery is unreasonably cumulative and oppressive, especially given the sensitive nature of the documents it seeks.

Additionally, "the burden . . . of the proposed discovery outweighs its likely benefit, considering the needs of the case, the amount in controversy, the parties' resources, the importance of the issues at stake in the action and the importance of the discovery in resolving the issues," *Cf.* FED. R. CIV. P. 26(b)(2)(C)(i)-(iii). Here, Cisco seeks <u>all</u> of Albritton's medical records, whether or not they are related to this case. In fact, Cisco seeks a medical authorization giving it unlimited access to Albritton's medical records without any limit as to time and scope. *See* Mot. at 3. Cisco's requests are fatally overbroad, and Cisco has offered no explanation for the breadth of its requests. Albritton's medical records are not relevant, and when weighed

8

against the unreasonable scope of Cisco's request and the sensitive nature of the documents requested, Cisco's motion should be denied.

Cisco also seeks tax returns and a host of financial documents from 2002 forward and all documents evidencing new matters opened in Albritton's law practice, "including but not limited to engagement letters." *See* Mot. at 3. Again, Cisco asks this Court to grant it unfettered access to Albritton's most sensitive information, including documents that would disclose his confidential client lists and potentially privileged client information. Cisco's weak (at best) relevance argument is outweighed by the over breadth and oppressive nature of requiring Albritton to produce those documents. Because Cisco's requests are not limited to the financial information directly related to this case—and cannot be directly related given that Albritton is seeking general damages—Cisco's requests should be denied as overly broad. *See Spiegelberg Manufacturing, Inc. v. Hancock*, No. 3-07-CV-1314-G, 2007 U.S. Dist. LEXIS 88987, at *10-11 (Dec. 3, 2007).

The discovery Cisco seeks should also be denied because it seeks to annoy, embarrass and harass Albritton. *Cf. id.* at 26(b)(5)(c)(1). Under the circumstances presented here, where Albritton has directly testified that he has not sought medical counseling and will not claim a loss in income, Cisco's instance on unlimited access to Albritton's medical records and six years of financial records can only be for the purpose of harassing Albritton. Questioning by Defendant Frenkel's attorney during Albritton's deposition demonstrates that defendants have no intention of limiting discovery to that which is relevant, and instead have every intention of harassing Albritton. Frenkel's Counsel, Mr. McWilliams, asked Albritton whether he had ever represented a murderer or a child molester. Obviously, whether or not Mr. Albritton has represented persons charged with a crime—representation that lawyers have an ethical obligation to provide—is completely irrelevant to any of the issues in this case. Cisco's continued use of discovery to harass Albritton must come to an end.

9

IV. **Conclusion**

**WHEREFORE, PREMISES CONSIDERED, ERIC M. ALBRITTON** respectfully prays that Cisco's Motion to Compel Production of Documents be, in all respects, **DENIED**, and for such other and further relief to which he may be entitled. Alternatively, **ERIC ALBRITTON** prays for a Protective Order directing that the discovery sought be conducted only on terms and conditions established by the Court.

Respectfully Submitted,

*/s/ Nicholas H. Patton*
Nicholas H. Patton (SBN 63035)
PATTON, TIDWELL & SCHROEDER, LLP
4605 Texas Boulevard
Texarkana, Texas 75503
903.792.7080 / 903.792.8233 (Fax)

Patricia L. Peden
LAW OFFICE OF PATRICIA L. PEDEN
610 16th Street, Suite 400
Oakland, California 94612
Telephone: 510-268-8033

James A. Holmes
THE LAW OFFICE OF JAMES HOLMES, P.C.
635 South Main Street
Suite 203
Henderson, TX 75654
903.657.2800 / 903.657.2855 (Fax)

ATTORNEYS FOR PLAINTIFF

**CERTIFICATE OF SERVICE**

     I hereby certify that all counsel of record who are deemed to have consented to electronic service are being served with a copy of this document via the Court's CM/ECF system per Local Rule CV-5(a)(3) on this 31st day of October, 2008.

                               */s/ Nicholas H. Patton*
                               Nicholas H. Patton