## IN THE UNITED STATES DISTRICT COURT
### WESTERN DISTRICT OF ARKANSAS
### TEXARKANA DIVISION

| | | |
|---|---|---|
| **JOHN WARD, JR.** | § | |
| | § | |
| **Plaintiff** | § | No.  4:08cv4022 JLH |
| | § | |
| **V.** | § | JURY TRIAL DEMANDED |
| | § | |
| **CISCO SYSTEMS, INC.** | § | |
| | § | |
| **Defendant.** | § | |

## PLAINTIFF'S CORRECTED SUR-REPLY TO DEFENDANT CISCO SYSTEMS, INC.'S MOTION TO COMPEL RESPONSES TO CISCO SYSTEM, INC.'S FIRST REQUEST FOR PRODUCTION AND BRIEF IN SUPPORT THEREOF

Dockets.Justia.com

**TABLE OF CONTENTS**

Pages

I.   INTRODUCTION.........................................................................................1

II.  ARGUMENT..............................................................................................1

A.   Cisco Did Not Meet And Confer Before Bringing Its Motion ...............1

B.   Argument In Sur-Reply...........................................................................2

1    Ward's Objections Are Not Untimely And Cisco Has Failed to Brief
     The Issue With The Specificity Required To Allow The Court To
     Rule On Its Motion ...............................................................................2

2.   Cisco Missed The Mark With Respect To Its Complaint About
     Plaintiff's Premature Objections And Its Motion Should
     Be Denied..............................................................................................3

3.   Cisco's Argument About Privileged Documents Already Produced Or
     Third-Party Privileged Documents It Should Seek Elsewhere Should Be
     Overruled ..............................................................................................4

4.   Cisco's Unspecified Complaints Concerning Ward's Custody and Control
     Objections Should Be Overruled ..........................................................6

5.   Cisco's Motion to Compel Ward's Financial Records Should Be Denied
     Because They Are Moot, Not Relevant, And Because Cisco Cannot
     Demonstrate Compelling Need Or Heightened Relevance Required To
     Overcome Ward's Privacy Objections....................................................10

     a.   Cisco's Request Nos. 4 & 5 Are Moot and Irrelevant ........................10

     b.   Cisco Has Not Demonstrated The Type Of "Compelling Need"
          Required To Compel Plaintiff To Produce His Tax Returns,
          Particularly In Light Of Cisco's Grossly Overbroad Requests............11

          i.    This Court Should Follow The Same Reasoning Employed By The
                Texas Court's Order In Denying Cisco's Motion To Compel The
                Same Documents In the Albritton v. Cisco Litigation...................12

          ii.   Cisco Has Not Shown A Compelling Need For Ward's Tax
                Returns ..........................................................................................14

          iii.  Cisco Has Not Shown The Type Of Heightened Relevance
                Required To Order Ward To Produce His Other Private Financial
                Records To Cisco.........................................................................18

iv.  Cisco Is Not Entitled To Ward's Confidential And Propriety Client Lists That May Result In The Disclosure Of Confidential Client Information ...................................................................................19

v.  The Discovery Cisco Seeks Is Unnecessary, Unreasonably Cumulative, Overly Broad And Sought For The Purpose Of Harassing Ward.....................................................................................21

6.  Cisco's Motion to Compel Document The Credit Card Receipt For The Filing Of The ESN Complaint Is Moot.....................................................22

7.  Cisco Is Not Entitled To An Unlimited Medical Release To Four Years Of Ward's Medical Records For Treatment He Has Told Cisco He Did Not Seek.................................................................................................22

8.  Any Concern Cisco Has With Ward's Production of ESN Documents Is The Result of Cisco's Overly Broad Requests .........................................25

9.  Cisco's Motion To Compel Documents Evidencing Ward's Communications With The EDTX Court Clerks Should Be Denied ........27

10.  Ward Has Already Provided A Complete Response to Request No. 18. ...28

11.  Cisco's Motion To Compel Documents Responsive To Request Nos. 23-25 Should Be Denied...........................................................................29

12.  Cisco's Motion To Compel Documents Responsive To Request Nos. 26 and 26 (Incorrectly Numbered) Should Be Denied .................................. 30

III.    CONCLUSION ...........................................................................................................31

## TABLE OF AUTHORITIES

**CASES**                                                                                    **Page(s)**

*Barton v. Cascade Regional Blood Servs.*,
   2007 U.S. Dist. LEXIS 59424 (W.D. Wash., Aug. 6, 2007) ...........................................14

*Batiste-Davis v. Lincare, Inc.*,
 526 F.3d 377, 381 (8th Cir. Ark. 2008) ...........................................................................24

*Brown Sheet Iron & Steel Co. v. Maple Leaf Oil & Refining Co.*,
   68 F.2d 787, 788 (8th Cir. 1934) .................................................................................10

*Camp v. Correctional Med. Servs.,* Civ. Act. No. 2:08cv227-WKW,
   2009 U.S. Dist. LEXIS 12034 (M.D. Ala., Feb. 17, 2009)..........................................14, 18

*Doe v. Oberweis Dairy*,
456 F.3d 704, 718 (7th Cir. 2006) .................................................................................24

*EEOC v. Ceridian Corp.*,
   610 F. Supp. 2d 995 (D. Minn. 2008) ...........................................................................14

*Ellis v. Price*,
   337 Ark. 542, 990 S.W.2d 543 (1999)...........................................................................15

*Garcel Inc. v. Hibernia Nat. Bank,* Civ. No. 01-0772,
   2002 U.S. Dist. LEXIS 2390 (E.D. La., Jan. 23, 2002)...................................................21

*HIT Servs., L.P. v. Caddo Energy Co.*, LLC,
   2009 U.S. Dist. LEXIS 12235 (W.D. Ark. Jan. 23, 2009)..................................................2

*Hutchinson v. Proxmire*,
   443 U.S. 111 (1979)...........................................................................................29, 31

 *In re Grand Jury Proceedings*,
   73 F.R.D. 647 (M.D. Fla. 1977)......................................................................................5

*In re Chrysler Motors Corp. Overnight Evaluation Program Litigation*,
   860 F.2d 844 (8th Cir. 1988) ........................................................................................9

*McElroy v. Benefield*,
   229 Ark. 112 (1989)....................................................................................................15

*Migis v. Pearle Vision*,
   135 F.3d 1041 (5th Cir. Tex. 1998) ...............................................................................24

*Miles v. Century 21 Real Estate*, No. 4:05-cv-1088 GTE,
    2006 U.S. Dist. LEXIS 67974 (E.D. Ark., Sept. 21, 2006) ...............................................24

*Oppenheimer Fund v. Sanders*,
    437 U.S. 340 (1978)...........................................................................................................10

*Patterson v. P.H.P. Healthcare Corp.*,
    90 F.3d 927 (5th Cir. 1996) .............................................................................................24

*Payne v. Howard*,
    75 F.R.D. 465 (D.D.C. 1977)............................................................................................14

*Schoenbaum v. E.I. Dupont De Nemours and Co.*, No. 4:05CV01108 ERW,
    2009 U.S. Dist. LEXIS 7208 (E.D. Mo., Feb. 2, 2009).....................................................14

*St. Croix Printing Equip., Inc. v. Sexton*, Civil No. 06-4273,
    2008 LEXIS 81918 (D. Minn., Jul. 18, 2008) ...........................................................16, 18

*State Farm Fire & Cas. Co. v. Benson*, 2008 U.S. Dist. LEXIS 21867
    (W.D. Ark. Mar. 19, 2008),. ............................................................................................10

*State Farm Fire & Cas*,
    2008 U.S. Dist. LEXIS 21867 .........................................................................................14

*Walker v. Rent-A-Car, Inc.*, No. 5:02CV3, 2006
    U.S. Dist. LEXIS 72232 (E.D. Tex., Oct. 3, 2006) ....................................................9, 14

Fed. R. Civ. P. 26(b) ................................................................................................... *passim*

Fed. R. Evid. 403 ...................................................................................................................18

Fed. R. Evid. 501 ...................................................................................................................23

Ark. R. Evid. 503 ...................................................................................................................23

## I.   INTRODUCTION

Cisco raises a litany of document requests in its Motion, asking the Court to sort through numerous requests and issues to determine what, if any, categories of documents should be produced.  As even a cursory review reveals, the requests are objectionable for many reasons, as Plaintiff's objections reflect.  Instead of meeting and conferring in an attempt to itself sort through the requests and reach compromise or, at the very least, clarity of the parties' disputes, Cisco chose prematurely to seek Court resolution.  For all but one of the issues Cisco raises to the Court, its failure to meet and confer to resolve the overwhelming majority of issues should in and of itself result in a denial of the relief it seeks. But, as Plaintiff details below, Cisco's motion, and the categories of documents it seeks to compel, can and should be denied on several additional bases.

## II.   ARGUMENT

### A.   Cisco Did Not Meet And Confer Before Bringing Its Motion

Cisco filed its motion before meeting and conferring with Plaintiff about the substantive of all but one of the issues raised in its motion to compel.  That Cisco's motion was not ripe for consideration is likely obvious to the Court after winding its way through the parties' briefing of the unframed issues.

The Local Rules require a good faith effort to meet and confer about the "specific" issues in advance of motion practice for good reason — so that the issues may be narrowed for concise presentation to the court.  *See* Local Rule 7.2(g).  This Court should not be forced to sift through the briefing, rather, with the exception of number 3 (privilege documents), it should deny all the issues raised in Cisco's brief pursuant to Local Rule 7.2(g).  Cisco's failure to meet and confer in advance of filing its motion is detailed in the Peden Declaration, attached hereto as Exhibit A.

Because of its flouting of the Local Rules, Cisco leaves this Court with ample room to deny Cisco's motion on the merits as Cisco's requests remain egregiously overbroad — for example, as detailed below, Cisco seeks Ward's financial documents and tax returns from <u>five years before</u> the accused articles were ever published.  Cisco's requests for Ward's financial

1

documents also rest on a null Complaint that cannot provide a relevant basis for compelling the documents it seeks.  For other issues, Cisco seeks to compel documents that do not exist, a fact it would have known if it had narrowed its requests during meet and confer to the extent it ultimately had done in Reply.  Those issues too can be denied on the merits.

Cisco's Reply defensively attempts to create a history of substantive meet and confer where there was none — as evidenced by the very documents attached in support.  Reply, Exh. A and Exh. B (including attachments thereto)-.  The ambiguity of Cisco's representations cannot overcome the facts — Cisco cannot backup its claims with documents because it doesn't have any.  There was no substantive meet and confer.  As detailed in the Peden Declaration, Cisco hastily filed this motion after only non-substantive conferences that could hardly meet its obligations under the Local Rule.  *See HIT Servs., L.P. v. Caddo Energy Co.*, LLC, 2009 U.S. Dist. LEXIS 12235 (W.D. Ark. Jan. 23, 2009) ("Simply demanding compliance with a discovery request does not amount to a good faith effort to resolve a discovery dispute.  Further, merely attaching such demands as exhibits to the Motion does not comply with Rule 7.2(g)).  This Court should deny Cisco's motion to send a clear signal that the meet and confer rule in this district is not optional.

### B.    Argument In Sur-Reply

1.    Ward's Objections Are Not Untimely And Cisco Has Failed To Brief The Issue With The Specificity Required To Allow The Court To Rule On Its Motion

Cisco's Motion argued that some unspecified objections in Plaintiff's responses to Cisco's document requests are untimely.  *See* Mot. at 3-4.  Plaintiff's response demonstrated that his supplemental responses were made in a good-faith effort to identify the basis of Plaintiff's objections at Cisco's request,[1] he did not waive his objections because they were made within 30 days of Cisco's requests, that Local Rule 33.1(b)'s requirement that objections be made with

---

[1] The parties continue to disagree about the agreement reached with respect to Plaintiff's supplemental responses. Cisco claims that it demanded that Plaintiff withdraw all objections, whether or not they were timely made as general objections or not.  Plaintiff did not agree to waive objections otherwise timely made.  Instead, Plaintiff agreed to remove the "blanket objections" and make them specific to each request to comply with the Local Rule and to give Cisco the information it needed to understand the basis of Plaintiff's objections.

specificity has been complied with, and that Cisco knows the factual basis of each of Plaintiff's objections.

In Reply, Cisco makes the same meritless "absolute waiver" argument that it made in its motion. The Reply adds nothing new. Importantly, the Reply fails to address Plaintiff's assertion that Cisco's motion seeks to strike "unspecified" objections. Neither Plaintiff nor the Court can tell from Cisco's motion or its reply exactly what objections Cisco complains about. Because Cisco did not identify the objections it believes are untimely, Plaintiff cannot respond to those objections or demonstrate why the objections were timely made. Nor can the Court determine what objections are specifically at issue for each request. This Court is not required to sift through the parties' discovery in order to determine the basis of Cisco's motion. The Court should deny Cisco's motion for failure to specifically brief the issue. Alternatively, Plaintiff's objections should be addressed the same way the Court considered Cisco's general objections to Plaintiff's discovery; by taking them up in the context of each request. *See* D.E. #60 at 4.

2.    Cisco Missed The Mark With Respect To Its Complaint About Plaintiff's Premature Objections And Its Motion Should Be Denied.

To the extent that Cisco identified any of Plaintiff's objections for which it complains, it does so by taking issue with Plaintiff's "premature" objections. *See* Mot. at 4-5. Plaintiff's Response explained that Ward is not withholding responsive documents based on a premature objection. Instead, his premature objection was intended to cover the production of responsive documents that may be identified later, including documents obtained by experts during the course of preparing their expert reports. *See* Response at 8-9. Ward explained that he had to make a premature objection in his responses or face the same type of absolute waiver argument Cisco makes above. *See id.*

In Reply, Cisco says nothing. *See* Reply at 5. Cisco should have admitted that its failure to meet and confer about this issue led it to the wrong conclusion. Cisco should have acknowledged Ward's representation that he is not withholding documents currently in his possession based on this objection. Instead, Cisco sidesteps its unripe motion by recasting

3

Ward's Response as some admission by Plaintiff that his objection is improper.  To be clear: Plaintiff's position has not changed.  Cisco's motion should be denied because it has no merit, and never did.

        3.      Cisco's Argument About Privileged Documents Already Produced Or Third-Party Privileged Documents It Should Seek Elsewhere Should Be Overruled

Cisco's motion complained about four documents withheld on Ward privilege log.  *See* Mot. at 5-6.  In Response, Ward told the Court that he had already agreed to produce three of the four documents identified in Cisco's motion, and that Cisco's insistence in raising that issue with the Court was petty.  Ward also explained that he could not agree to produce the fourth document, even if he wanted to, because its author—a client of Mr. Ward's—expressly claimed an attorney-client privilege with respect to the document's contents.  *See* Response at 9-10.

Cisco's Reply is defensive; claiming that Plaintiff mislead the Court in an attempt to make Cisco look unreasonable.  *See* Reply at 5-6.  Plaintiff did not have to try — Cisco is unreasonable.  Cisco first asked Plaintiff to produce the documents underlying its motion on August 24, 2009.  At that time, both parties were knee-deep in pretrial filings in the *Albritton v. Cisco* case.  Additionally, Ward was traveling at the time of Cisco's request.  There were no depositions scheduled and no apparent urgency to Cisco's request.  So, Plaintiff's counsel agreed to discuss the issue with Ward when he returned and to then respond to Cisco.  Despite numerous calls between the parties discussing any number of other issues in the interim, Cisco didn't raise the issue of Ward's privileged documents.

Cisco said nothing more about the issue until September 8, 2009, when counsel for Cisco wrote an email demanding an immediate response to her earlier request for those documents.  Interestingly, Cisco's counsel never mentioned that she was planning to file a motion to compel, let alone tell Plaintiff's counsel that if the documents were not produced that day the issue would be included in Cisco's undisclosed motion.  Cisco's claims to the contrary in its Reply, telling this Court that Cisco's counsel, Ms. Parker, wrote to Ms. Peden telling her Cisco would file a

motion to compel if the documents were not produced.  *See* Reply at 6, citing Exh. B-6.  Cisco's attempt to justify its motion fails on its face:  Exhibit B-6 does not mention a motion to compel.

Although there was no apparent urgency, Plaintiff's counsel responded to Cisco's "tell me now" demand the next day and agreed to produce three of the four documents.  Two days later, Cisco filed its stealth motion to compel and included in its motion the documents Plaintiff had agreed to produce.  It seems that the better course would have been for Cisco to simply share with Plaintiff its plans to file a motion to compel — motions that by Local Rule are supposed to be disclosed and discussed before filing anyway — and at least let Plaintiff's counsel know that immediate production is demanded or Cisco will raise the issue with the Court.  In this case, Cisco never once told Plaintiff that it was planning to file a motion to compel *on any issue*, let alone tell Plaintiff that immediate document production (a process that typically has a delay time in litigation) was demanded.  Cisco was unreasonable in asking the Court to intervene and order three documents produced when the issue was entirely moot.

The only remaining dispute here is the one document Plaintiff could not agree to produce because it includes an express claim of attorney-client privilege by the author, who is a client of Mr. Ward's.  For this document, Cisco should have at least asked the author to produce the document in spite of his claim of privilege before asking this court to strip a non-party of his asserted privileged.  In Response, Cisco argues that the document is not privileged, it if it were privileged Ward should produce a redacted copy, and that the Court should examine the document *in camera*.  Each of Cisco's response arguments lacks merit.

The Reply argues that Mr. Ward admitted during deposition that the document Cisco seeks is not privileged.  *See* Reply 5.  Not so.  In truth, Cisco never asked him whether the communication on his privilege log was privileged.  *See* Exh. B (Ward Depo. at 130:18-131:4).

Nonetheless, Cisco's insistence that the document is not privileged is meritless because that is not Cisco's or Mr. Ward's decision to make.  The privilege asserted belongs to the author of the email.  *See In re Grand Jury Proceedings*, 73 F.R.D. 647, 652 (M.D. Fla. 1977) (the

attorney client privilege belongs to the client, not the attorney).  Mr. Ward is not free to ignore or waive his client's claim of privilege, and, in fact, is ethically obligated to honor it.[2]

Cisco's insistence that Ward should have agreed to produce a redacted version of the document is also misguided.  As Plaintiff's counsel explained, Plaintiff is not in a position to unilaterally decide what part of the document is or is not privileged; therefore Plaintiff's counsel cannot redact the document; only its author can.  Nor can Plaintiff simply conclude that he would not have claimed privilege as to that document and produce it over his client's express claim to the contrary.

Cisco's request for *in camera* review should also be denied.  This Court should be hesitant to open up for discovery every document exchanged between Ward and one of his clients simply because Cisco wants to see it.  The document Cisco seeks is not a "smoking gun" document, and this Court is obviously free to review it *in camera* if it so chooses.  The issue, however, will remain whether this Court is willing to disregard a privilege claimed by a non-party with no connection to this case, and to do so when that party has had no opportunity to raise his claim of privilege with the Court.  The proper way for Cisco to obtain the document it seeks, if it is truly interested in having the document, is to subpoena it from the author so that he is afforded some say in protecting ***his*** privilege.

4.     Cisco's Unspecified Complaints Concerning Ward's Custody and Control Objections Should Be Overruled

Cisco's motion raised a generic complaint about Plaintiff's objections to producing documents not within his custody and control.  In Response, Plaintiff told the Court and Cisco he would investigate Cisco's concerns about his custody and control objections, if he knew what documents Cisco thinks should have been produced but were not.  *See* Response at 12.  The Reply makes no attempt to specifically identify the documents at issue, choosing instead to

---

[2] An attorney's ethical obligation to maintain client confidences is broader than the attorney-client privilege.  Attorneys have an ethical obligation to maintain client confidences, even if they are not privileged.  *See* Canon Four of the ABA Model Code of Professional Responsibility (A lawyer should preserve the confidence and secrets of a client).

repeat the same generalized complaint made in its motion.[3]  *See* Reply at 6-7.  After Cisco has filed two briefs on this subject, Plaintiff still cannot decipher what documents Cisco contends are in his possession but have not been produced.  Nor does Cisco make any effort to tether its overly broad complaint to any specific document request.  Thus, Plaintiff and the Court are left at sea trying to determine which documents Cisco complains have not been produced.

The two categories of documents generally discussed in the Reply are "documents in the litigation file of ESN" and "documents produced in the *Albritton v. Cisco* litigation."  *See* Reply at 7.  To the extent that Cisco wants all "ESN documents," the public non-privileged case file is publicly available to Cisco using the government's Pacer System, and in fact, should already be in Cisco's files since it is the defendant in that case.  To the extent that Cisco wants non-public documents, its request is grossly overbroad.  For example, hypothetically, the *ESN v. Cisco* litigation file could include documents from ESN's patent application, pre-suit investigation, or other documentation created long before Mr. Ward was retained by ESN or before the events relevant to this case transpired.  Plaintiff does not have those documents, and Cisco has not attempted to demonstrate why those documents would be relevant in this case.  Ward has made a reasonable search of his files and has produced or logged the responsive documents he has.  If Cisco wants additional documents, it should seek them from third-party ESN.  What Cisco cannot do is serve up overly broad requests for all "ESN documents"—unlimited in date or subject matter—and then and then take Ward to task for not producing documents in response to Cisco's overbroad request.  Cisco's argument to the contrary seeks this Court's permission to undertake the preverbal "fishing expedition."

Cisco's insistence that Ward has not produced Albritton's documents is equally meritless.  As Plaintiff explained in his Response, he does not have the same documents as Albritton.  Cisco

---

[3] The Reply argues that Plaintiff should know what documents Cisco seeks.  *See* Reply at 7.  However, given Cisco's position that "all ESN documents" and "all Albritton documents" need be produced, how is Plaintiff to respond?  Cisco cannot seriously contend that Plaintiff is required to ask ESN to make a complete copy set of its files, or ask Albritton to do the same, and then produce the entire file to Cisco.  This is a perfect example of where Cisco's failure to narrow its requests—or even apprise Plaintiff of what documents Cisco really seeks—should be denied as being overly broad and unreasonably burdensome.

knows this is true because many of the emails it has from the Albritton case were not sent to Ward. Nonetheless, Cisco marches forward with its generalized complaint. Plaintiff recently produced to Cisco additional documents from the Albritton case that had only became available to Ward when those documents were made part of the public record at the Albritton trial. Plaintiff has no reason not to produce documents from the Albritton litigation, as those documents only support Plaintiff's cause. But, Plaintiff cannot produce documents he does not have. If Cisco contends otherwise, it was incumbent on Cisco to identify specific documents to Plaintiff before filing its motion, or at a bare minimum, identify the documents in its motion. Cisco has done neither.

The Reply also argues that Plaintiff is taking inconsistent positions with respect to the custody and control issue because Plaintiff successfully argued that Cisco had to produce documents from Richard Frenkel[4] and Baker Botts. *See* Reply at 7. Cisco's argument rests on broken logic. Plaintiff argued that Cisco had control over Frenkel's and Baker Botts' documents because Frenkel and Baker Botts gave their documents to <u>Cisco</u>, and <u>Cisco</u> produced those documents to Albritton in the Albritton case. The documents that Ward sought from Cisco, were documents created by Cisco's agents and were in <u>Cisco's</u> files or could be accessed by Cisco given its history of being able to obtain documents it wanted from Frenkel and Baker Botts. Moreover, Cisco is the defendant in both cases, and therefore the documents Ward sought were in the a party's possession. Thus, documents in <u>Cisco</u>'s possession in the Albritton case are also in <u>Cisco</u>'s possession in this case.

In comparison, Ward and Albritton's document production has not been comingled. Albritton did not give his documents to Ward. Albritton's documents are not in Ward's files. Albritton's legal fees and legal work is not being done by Ward. Albritton is not Ward's agent

---

[4] Cisco takes issue with Plaintiff telling the Court that Frenkel has served as a Rule 30(b)(6) witness for Cisco. To be clear, Plaintiff never suggested that Frenkel served in that capacity in this case. It is beyond dispute that he served in that capacity in the *Albritton* case. The issue with respect to Frenkel was whether Cisco had to produce Frenkel's documents in the *Albritton* case, where Frenkel's document production was handled by Cisco and where he gave deposition testimony for Cisco.

or employee.  And, Ward and Albritton are different parties in different cases, unlike Cisco who is the defendant in both cases.

Cisco tries to muddy the waters by suggesting that because Ward and Albritton have the same legal counsel, that they share documents because the documents are accessible by the same law firms.  But, as Plaintiff pointed out in Response, document requests are served on *parties*; not their counsel.  The Reply does nothing to rebut that straightforward point.  Ward could not demand that Jackson Walker produce documents about the Troll Tracker blog from its other clients simply because they represent Cisco in this case.  Such an approach would be ridiculous.  Cisco's attempt to leverage an argument about documents that <u>Cisco has</u> into one that requires production based on what <u>Ward's counsel has</u> is absurd.

Cisco's argument is also perplexing.  In this motion, Cisco argues because Ward and Albritton have the same legal counsel, documents in the Albritton case are deemed to be in Ward's control by default.  *See* Mot. at 7.  At the same time, however, Cisco takes the opposite position for documents that Ward's counsel would like to produce from the Albritton case, claiming that Ward's counsel cannot produce those documents because they are covered under a protective order in the Albritton case.[5]  Cisco should take a consistent approach.  If Cisco wants Ward's counsel to produce all of the Albritton documents in their files, they will do so.  However, to ensure that all documents are produced, this Court must rule that Cisco's demand for the Albritton documents means that Ward's counsel's compliance with Cisco's request does not violate the Albritton Protective Order.

---

[5] Plaintiff has filed a separate motion to compel production of the documents disclosed by Cisco to Albritton in the prior litigation.  This motion further demonstrates why case law, including binding Eighth Circuit authority directly on point, holds that a party cannot disclose documents to one litigation adversary and withhold the same documents from another litigation adversary.  *In re Chrysler Motors Corp. Overnight Evaluation Program Litigation,* 860 F.2d 844, 847 (8th Cir. 1988).  The arguments Cisco raises in its motion to compel only further highlights that all documents from the Albritton case should be available to both parties in this case.  In fact, Cisco's insistence that it too is being denied documents in needs from the Albritton case should compel this Court to order those documents produced to both parties.  *See* Reply at 21.

5.      Cisco's Motion to Compel Ward's Financial Records Should Be Denied Because They Are Moot, Not Relevant, And Because Cisco Cannot Demonstrate Compelling Need Or Heightened Relevance Required To Overcome Ward's Privacy Objections

a.   Cisco's Request Nos. 4 & 5 Are Moot and Irrelevant

Demonstrating how long these issues had been setting stale before Cisco sprung its motion to compel, Cisco's motion seeks documents based on a complaint that has been null and void since June 2, 2009.  *See* D.E. # 66.  Plaintiff's Response explained that Cisco's document request numbers 4 & 5 are moot, and that there is no basis to compel Ward to produce documents for requests that expressly incorporate paragraphs in Ward's null complaint.  *See* Response at 12-13, citing *State Farm Fire & Cas. Co. v. Benson*, 2008 U.S. Dist. LEXIS 21867 (W.D. Ark. Mar. 19, 2008), *citing Brown Sheet Iron & Steel Co. v. Maple Leaf Oil & Refining Co.*, 68 F.2d 787, 788 (8th Cir. 1934).

In Reply, Cisco does not address the mootness of its requests.  Instead, Cisco cites a case for the definition of relevancy.  *See* Reply at 7-8*, citing Oppenheimer Fund v. Sanders*, 437 U.S. 340, 351 (1978).  But the same case cited by Cisco demonstrates that relevancy is not so broad as to compel discovery on moot claims.   The *Oppenheimer* case states "[a]t the same time, 'discovery, like all matters of procedure, has ultimate and necessary boundaries.' Discovery of matter not 'reasonably calculated to lead to the discovery of admissible evidence' is not within the scope of Rule 26 (b)(1). Thus, it is proper to deny discovery of matter that is relevant only to claims or defenses that have been stricken . . ."  *Id.* at 352 (internal citation omitted).

Here, Cisco's requests 4 and 5 are moot because the complaint that expressly serves as the basis of those requests is void, or in the language of *Oppenheimer* "striken."  Cisco's requests cannot survive the amendment of Ward's complaint because they are not stand alone document requests, but are expressly dependent on and tied to paragraphs of Ward's complaint that no longer apply to any of the issues in this case.  Cisco's Request No. 4 asks Ward to:  Produce all documents *relating to paragraph 17 of the Complaint* that as a result of the complained-of Article, "Plaintiff sustained monetary damage," including all documents relating to the amount

of such monetary damages.  Cisco's Request No. 5 asks:  Produce all documents relating *to your contention in paragraph 19 of the Complaint* that as a result of the complained-of Article, Plaintiff has suffered "damages to his business," including all documents relating to the amount of such damage.  *See* Mot. at 7.  Paragraphs 17 and 19 referenced in Cisco's requests are paragraphs set forth in Plaintiff's original complaint.  Those paragraphs no longer exist and document requests based on those nonexistent paragraphs seek documents that, by definition, cannot be relevant.

Cisco has no choice but to rely on its outdated and void requests because Plaintiff's Amended Complaint makes clear that he is not seeking to recover lost profit damages in this case.  The Reply admits that those damages are not at issue.  *See* Reply at 10.  Plaintiff amended his complaint to take out the very paragraphs that Cisco still relies on to argue that Ward must produce documents that are not relevant in light of the amended complaint.  Moreover, Plaintiff's responses to Cisco's Request Nos. 4 & 5 expressly disavows that he is claiming lost profit damages.  *See* Response Exh. C at 7-9.  Plaintiff told Cisco during his deposition that he is not seeking to recover damages to his business or lost profit damages.  *See* Response Exh. G.  Cisco cannot revive Ward's old Complaint to seek documents that the new operable Complaint makes clear are not at issue in this case.  Cisco's motion with respect to Requests number 4 & 5 should be denied as moot.  *State Farm Fire & Cas*, 2008 U.S. Dist. LEXIS 21867 (amended complaint renders the original complaint null and void).

b.     Cisco Has Not Demonstrated The Type Of "Compelling Need" Required To Compel Plaintiff To Produce His Tax Returns, Particularly In Light Of Cisco's Grossly Overbroad Requests

Cisco's motion asked the Court to force Plaintiff to produce his most sensitive and private financial records (and those of his non-party law firm partners) although those documents, including Plaintiff's tax returns, are not relevant to the damages issues in this case.  Cisco admits, as it must, that Plaintiff is not seeking lost-profit damages in this case.  *See* Reply at 10.  Cisco also acknowledges that if Ward is seeking only to clear his good name, his financial records are not relevant.  *See* Reply at 16.  That is exactly what Ward attempts to do; clear his

good name. Ward has merely claimed that his reputation has been harmed—an element of a defamation claim—which is an insufficient basis upon which to require him to produce his financial records to Cisco. To rule otherwise means that any defamation plaintiff forfeits his right to privacy—whether he makes a lost profit claim or not—simply by filing a lawsuit. Such a result cannot be justified under the Federal Rules or the case law. *See* Response at 14-21 (citing cases).

        i.     **This Court Should Follow The Same Reasoning Employed By The Texas Court's Order In Denying Cisco's Motion To Compel The Same Documents In the Albritton v. Cisco Litigation**

Plaintiff's Response pointed out that Cisco sought, and failed, to compel the exact same private financial records it seeks from Ward from Albritton in the *Albritton v. Cisco* case. There, the Texas Court denied Cisco *all* the documents it now seeks from Ward including tax returns, balance sheets, income statements, and statements of cash flow. *See* Exh. C (Albritton D.E. 143). The Texas Court did not grant Cisco's motion on a single request. Understandably, in its reply, Cisco seeks to distinguish the Texas Court's Order. In so doing, however, Cisco is not being candid with the Court. Cisco claims that the Texas Court's ruling in Albritton is not comparable to this case because Albritton was not seeking reputational damages, but Ward is. *See* Reply at 9. Cisco knows that is not true.

Cisco's own motion to compel in the *Albritton* case shows the disingenuousness of its position. Cisco's opening brief argued that it was entitled to Albritton's tax returns and other financial documents because Albritton's Complaint alleged damage to his *reputation*. *See* Exh. D (Albritton D.E. 55 at 1); *see also id.* at 3 (Cisco arguing that it was entitled to documents "which relate directly to [Albritton's] damage claims for mental anguish and damage to his *reputation*"). Cisco expressly argued that "evidence of the financial condition of an attorney's practice is relevant to his claim that this *business reputation* has been injured." *See id.* at 5. In response, Albritton argued that his tax returns and financial documents were not relevant

because, although he was seeking mental anguish[6] and reputational damages, he was not seeking lost profit damages.  *See* Exh. E (Albritton D.E. 74 at 7).  Albritton argued that "to the extent that Cisco seeks information related to Albritton's damaged reputation, that information is available through Albritton's testimony and/or is otherwise available from other less-sensitive sources." *Id.* at 8.

Clearly, Cisco understood that *reputational* damages where at issue in its motion to compel Albritton's financial records; it briefed reputational damages to the Texas Court.  *See* Exh. D (Albritton D.E. 55).  Likewise, the Texas Court understood that reputational damages were at issue in the Albritton motion to compel.  There can be no dispute about that fact because in denying Cisco's motion in its entirety, the Texas Court ruled "Albritton is seeking damage to his *professional reputation*, but seeks no direct economic losses.  In light of these concessions and admissions, the Court finds that Cisco's request should in all things be DENIED."  *See* Exh. C (Albritton D.E. 143 at 1-2.).

Nearly four months <u>after</u> the Texas Court denied Cisco's motion to compel Albritton's tax returns and other financial records, the court ruled on a motion *in limine,* the effect of which eliminated Albritton's reputational damages from the case.  *Compare* Exh. C (Albritton D.E. 143, dated 1/15/09 with Reply Exh. C, dated 5/08/09.).  *See* Reply Exh. C.  The Texas Court's *in limine* order, however, came long after that Court's denial of Cisco's motion to compel, was based on completely separate grounds, and was in no way connected to the Court's prior order denying Cisco's motion.  The Texas Court's ruling is indistinguishable from the facts now before this Court.  Cisco's attempt to convince this Court otherwise is a clear misrepresentation of the record.

The issues before this Court are no different than those before the Texas Court in the Albritton case.  Like Albritton, Ward has repeatedly told Cisco and this Court that he is not seeking lost profit damages.  In light of Ward's concessions and admissions, this Court should

---

[6] This point also covers Cisco's argument about Ward's claim for mental anguish damages.  Those damages were not sufficient to order Albritton's tax returns, balance sheets, income statements, and cash flow statements produced in that case and it is likewise insufficient to do so here.

also find that Cisco's request should in all things be denied.[7]

      ii.      Cisco Has Not Shown A Compelling Need For Ward's Tax Returns

     The Reply admits that Cisco must demonstrate a "compelling need" before this Court can order Ward to produce his tax returns.[8] *See* Reply at 10, n. 11. Moreover, the Reply incorrectly contends that Cisco need only meet the "reasonably calculated to lead to the discovery of admissible evidence" standard set forth in Fed. R. Civ. P. 26(b)(1) to establish the relevance of the documents its seeks. *See* Reply at 11 (Cisco advocating a "may show" standard of relevance). Cisco is wrong. As the cases cited in Ward's Response demonstrate, courts routinely hold parties seeking tax returns to a higher burden and require a showing of clear relevance before they will consider ordering tax returns produced. *See* Response at 16-17.[9] Cisco has not shown that Ward's tax returns are clearly relevant to the damages issues in this case, nor has it demonstrated a compelling need for those documents. Cisco's Reply does nothing to prove otherwise, and only further proves that Cisco's motion should be denied.

     First, the Reply parrots its failed argument that the documents it seeks are relevant

---

[7] Plaintiff understands that this Court is not bound by the Texas Court's ruling. However, Plaintiff contends that fairness and justice dictates that similarly situated plaintiffs responding to the same document requests in response to defamation claims brought against the same defendant should receive substantially the same result.

[8] Plaintiff's Response includes citations to many cases holding that requests like those made by Cisco are often overruled on privacy grounds. Cisco attempts to claim that documents were actually ordered produced in the cases cited by Plaintiff. *See* Reply at 9, n 9. In *Barton v. Cascade Regional Blood Servs.*, 2007 U.S. Dist. LEXIS 59424, at *2 (W.D. Wash., Aug. 6, 2007) the documents the court ordered produced where the defendant's annual reports. Those reports are publically available and do not implicate the same type of privacy issues as do Cisco's requests. Although Cisco claims that documents were ordered produced in *Walker v. Rent-A-Car, Inc.*, No. 5:02CV3, 2006 U.S. Dist. LEXIS 72232, at *9 (E.D. Tex., Oct. 3, 2006), it doesn't provide any explanation for its claim. The *Walker* Court denied defendant's requests for production of tax returns and other financial documents. The documents ordered produced in *Payne v. Howard*, 75 F.R.D. 465, 470 (D.D.C. 1977) were appointment records, not private financial documents.

[9] The Reply argues that that the cases cited by Plaintiff don't support the proposition that Cisco must show more than the Fed. R. Civ. P. 26(b)(1) standard of relevance before Ward is required to produce his tax returns. *See* Reply at 11, n. 13. Cisco makes a failed attempt to distinguish Plaintiff's cases on various grounds, but Cisco never addresses the issue for which the cases are cited — that because of the privacy interests at issue, Cisco must show that the tax returns are *clearly* relevant *to the subject matter of the action*. *See Response* at 16, citing *Camp v. Correctional Med. Servs.*, Civ. Act. No. 2:08cv227-WKW, 2009 U.S. Dist. LEXIS 12034, at *6 (M.D. Ala., Feb. 17, 2009) (tax returns are ordered produced only when relevance is "clear."); *EEOC v. Ceridian Corp.*, 610 F. Supp. 2d 995, 997 (D. Minn. 2008) (must relate to the subject matter of the action); *Schoenbaum v. E.I. Dupont De Nemours and Co.*, No. 4:05CV01108 ERW, 2009 U.S. Dist. LEXIS 7208, at *8 (E.D. Mo., Feb. 2, 2009) (same); *Walker*, 2006 U.S. Dist. LEXIS 72232, at *8 (same). Cisco's footnote 13 does not address the *EEOC*, *Schoenbaum*, or *Walker* cases at all. Cisco's argument with respect to the two additional cases it attempts to distinguish boil down to a conclusory statement that in those cases the documents were not relevant, but in this case they are. Cisco does not seriously rebut the cases that undermine its argument.

because Ward has sought damages for mental anguish and harm to his reputation.  *See* Reply at 10.  The scope of discovery is defined by the allegations in Ward's complaint, which makes no claim for lost profit damages.  *See* Fed. R. Civ. P. 26(b)(1).  Ward's revenue documents are not relevant in this case because there is no claim for lost revenue damages.  As Cisco knows, this is the same argument the Texas Court rejected in the Albritton case.  Ward's financial documents are not relevant to mental anguish or reputational damages because he need not demonstrate lost profits to recover those damages.  Nor is Ward required to prove up the amount of his damages.  Instead, his testimony alone is sufficient to establish the fact that he has been damaged.  *See Ellis v. Price*, 337 Ark. 542, 990 S.W.2d 543, 546 (1999).  The Reply does not contend otherwise.  From there, it is the province of the jury to determine the amount of the damages awarded.  *See McElroy v. Benefield*, 229 Ark. 112, 117 (1989).  Again, the Reply does not contend otherwise.

Instead, Cisco simply claims it is entitled to this evidence for rebuttal, without ever explaining why it needs revenue documents to rebut damages in this case that will not include lost profit damages.  Reply at 10.  There is no need for Cisco to gather Ward's private financial documents to rebut elements of his case that do not require proof of lost revenue.  Cisco cannot create a "compelling need" simply by arguing that it wants Ward's tax returns and other financial documents to rebut his non-economic claims.  If that were enough, the "compelling need" standard would become a nullity as it is hard to imagine any lawsuit in which a "we need the documents for rebuttal" argument could not be made.

Second, the Reply is incorrect in arguing that Ward has interjected into this case the fact that clients have refused to hire him because of the accused articles.  *See* Reply at 10.  Tellingly, Cisco does not cite a single instance in which Plaintiff has asked a discovery question about lost business opportunities.  Nor does Cisco cite to anything in Ward's Amended Complaint discussing lost clients.  Plaintiff has made no such claims, and has sought no discovery to prove lost profits he does not claim.  The only record evidence Cisco can cite is *Cisco's own questions* on the topic.

During depositions, Cisco has sought to prove that Ward had not lost any clients as a

result of the Troll Tracker Blogs.  Cisco sought that discovery so that it could argue to the jury that Ward has not been harmed by Cisco's libelous posts; a no harm no foul argument.  When Cisco asked its questions, however, the witnesses responded truthfully, telling Cisco that there are people who likely did not hire Ward as a result of the articles.  Cisco dredged up those facts; not Ward.  Now, Cisco seeks to turn the discovery it uncovered into an argument that Ward has somehow put his revenue at issue.  He has not.  Ward could not be clearer:  He is not seeking lost profit damages.  Ward is willing to confirm this by so stipulating or by Court order that Ward will not be permitted to seek lost profits at trial if Cisco's motion is denied.

Third, Cisco's requests are blatantly over broad, oppressive, harassing and unduly burdensome.  Cisco seeks all of Ward's financial records from 2002 to the present—five years before the accused Troll Tracker posts were even published.  Cisco offers no justification for its overly broad requests, stating only that it want to show a "general trend" of increased revenue.  *See* Reply at 15.  Cisco cannot seriously contend that it should be permitted seven years of Ward's tax returns because it wants to have more data points on its trial graphics.  There is no justification for seeking Ward's tax returns at all, but seeking them for seven years is a gross overreach.  Cisco's motion should be denied as overly broad, oppressive, and unreasonably burdensome.

Fourth, the information Cisco seeks is available from other, less intrusive sources.  Cisco claims it needs information demonstrating whether Ward's business declined in the years after the accused articles were published. Ward already testified that it did not, and he has agreed to stipulate to that fact.  Plaintiff's binding representation that he would not seek lost profit damages should end the matter.  *See St. Croix Printing Equip*., *Inc. v. Sexton*, Civil No. 06-4273, 2008 LEXIS 81918, at *16 (D. Minn., Jul. 18, 2008) (refusing to compel the production of general financial documents and tax returns where Plaintiff represented that it would not claim that its general business reputation had been damaged).[10]

---

[10] The Reply admits that it knows the facts it seeks.  *See* Reply at 11 (Plaintiff's financial records will show his revenue increased).  Ward has agreed to stipulate that he made more money in 2008 than in 2007 (the year the accused articles were published), that the articles have not prevented him from making a living, and that he is not

Moreover, the documents Cisco seeks are merely cumulative of Ward's deposition testimony where he has already told Cisco his revenue has not declined.  If the amount of Ward's income from his law practice is truly relevant—and it is not—, and only if this Court does not find that the stipulation offered by Plaintiff is sufficient, Cisco can obtain the information it claims it needs from Ward's law firm W-2s for the year before and after the posting of Cisco's libelous posts, which should only be ordered produced under a protective order.  *See* Reply at 11 (claiming that Cisco needs Ward's law firm income).  There are less intrusive ways for Cisco to obtain this information, as Plaintiff would have explained if Cisco had made even the smallest attempt to discuss its egregiously overly broad and unreasonable requests.  The stipulation that Plaintiff has offered is enough—it is more than Cisco obtained in the Albritton case.

Fifth, the real reason Cisco seeks Ward's tax return information is revealed in the Reply. Cisco is not seeking Ward's tax returns to show the jury that his business revenue has not declined—it can get that information though the offered stipulation.  Instead, Cisco wants to tell the jury how much money Ward makes.  *See* Reply at 11 (stating that Plaintiff's records will show "the amount" of Plaintiff's finances).  It is clear that Cisco wants to prejudice the jury by arguing that Ward is a successful lawyer who should not be compensated for Cisco's libelous posts.  There is no justification for Cisco's insistence that it need present evidence about the amount of money Plaintiff makes.  Cisco might have an argument if Ward were seeking to recover lost profit damages; but he is not.  The only issues that can even remotely be relevant her is whether his business declined, and even that is not relevant because changes in Plaintiff's income can occur for any number of reasons.  In any event, that question can be answered by a stipulation from Plaintiff that his business did not decline after the accused articles were published by Cisco. That is more than sufficient to address Cisco's claimed need.  What Cisco cannot do is harass and punish Plaintiff for bringing this lawsuit against Cisco by making Plaintiff produce his personal and business tax returns, when there is no compelling need for

---

making a claim for lost profit damages.  That stipulation is more than sufficient to meet Cisco's claimed need to rebut Ward's claim to reputational damages.  The Reply tacitly admits as much.  *See* Reply at 12-13.

Cisco to have that information, and Cisco will only use it to make and improper argument to the jury. The evidence that Cisco seeks is inadmissible under Fed. R. Evid. 403, and should not be ordered produced.

> iii.   Cisco Has Not Shown The Type Of Heightened Relevance Required To Order Ward To Produce His Other Private Financial Records To Cisco

Realizing that Ward's tax returns are off limits, Cisco argues that it can still demand production of Ward's other financial documents. Cisco's insistence that it can obtain Ward's financial records, including documents that discuss his law firm partner's income, his investments, his children's college funds, and the host of other personal and irrelevant information contained in his financial documents, simply because they "may be" relevant under the liberal discovery relevance standard. Cisco is mistaken. Courts recognize the serious privacy concerns implicated by production of a private litigant's personal financial information and have required a heightened showing of relevance for financial documents. *See St. Croix Printing Equip.*, 2008 LEXIS 81918, at *16. In many cases, courts deny the type of financial documents Cisco seeks applying the same reasoning to the private financial documents that it applies to the tax returns. That was certainly the Texas Court's approach in the *Albritton* case. *See* Exh. C (Albritton D.E. 143). Moreover, the Federal Rule of Civil Procedure gives this Court the discretion and the obligation to ensure that litigant's privacy concerns are protected. *See* Fed. R. Civ. P. 26(b)(2) and (c)(1); *Camp*, 2009 U.S. Dist. LEXIS 12034, at * 6.

As Plaintiff explained in his Response, his tax returns and other financial documents contain a whole host of confidential information that is simply not relevant to any issue in this case. Ward should not have to produce those documents for a seven year period so that Cisco can determine if there is a "trend" in Ward's revenue, especially here were there are no lost profits at issue. Nor should Ward have to produce his "business income" as Cisco suggests in an attempt to avoid the obvious overreach of its requests. *See* Reply at 15. Ward has business partners who are not parties to this lawsuit. Their confidential documents should not be ordered produced. Instead, if the court is inclined to order any documents—and it should not on this record where

the stipulation is more than sufficient—the documents must be limited to Ward's W-2 for the year proceeding the post and the year following the post, and then only if those documents are produced under a protective order.

In Reply, Cisco claims that it is not seeking to harass Ward and that it will agree to redact all of his financial information but for his business income.  However, the income of Ward's business impacts confidential information belonging to his partners—non parties to this litigation.[11]  Cisco's "willingness" to harass less, is still harassing.  There is no justification for ordering Ward to disclose his entire financial records for a seven year time period, including financial information that implicates his partners and his wife's privacy, all to prove that Ward's business did not decline after the libelous posts—a fact that Ward has agreed to stipulate to.  The stipulation offered by Plaintiff is more than sufficient to provide Cisco with the evidence it claims it needs without forcing Ward to turn over his (and others') highly sensitive financial documents that are not relevant to any of the damages issues in this case.  Thus, Cisco's request for Ward's financial documents should be denied.

> iv.  Cisco Is Not Entitled To Ward's Confidential And Propriety Client Lists That May Result In The Disclosure Of Confidential Client Information

Ward's Response argued that his claim that his reputation has been harmed does not make every document in his law firm files, including those for which his clients have a legitimate expectation of privacy and confidentially, open for Cisco's inspection.  In Reply, Cisco argues that Plaintiff has over exaggerated Cisco's request.  Reply at 13.  Cisco request reads:

> Produce all documents relating to all of Plaintiff's new matters or clients since October 16, 2007, including but not limited to engagement letters concerning such clients and matters.

Because Cisco did not narrow its request before bringing its motion, Plaintiff must take Cisco at its word that it wants "all documents relating to all of Plaintiff's new matters."  Read

---

[11] The suggestions that Cisco makes in Reply should have been raised with Plaintiff in a meet and confer discussion but wasn't.  Cisco fails to understand that when it makes unreasonably overbroad and irrelevant requests, it is incumbent on Cisco to attempt to address Plaintiff's legitimate concerns *before* filing a motion to compel.

literally, Cisco requests would require Plaintiff to produce all client intake memoranda, all retainer agreements, new case folders and all engagement letters, and that may be reading Cisco's request too narrowly.  Cisco could have narrowed its request, but didn't.  Now its motion is before the Court on the request it has advanced. That request is overly broad and unduly burdensome.  The Court should deny Cisco's motion on that basis alone.

The Reply stretches to make a relevance argument where one clearly does not exist.  As discussed above, Ward has not sought to introduce evidence that he has lost clients because of Cisco's libelous posts—Cisco did.  The fact that that evidence is now part of the record is Cisco's doing, not Plaintiff's.  Recognizing its relevancy problem in light of the fact that Ward is not seeking lost profit damages, Cisco argues that the documents might be relevant because Ward will likely testify at his trial, as Albritton did at his, that he had a difficult time working on the ESN case.  Reply at 14.  Cisco relevance argument is nothing more than rank speculation.  Moreover, Cisco knows that Ward testified at the Albritton trial and did not offer the testimony that Cisco claims it is afraid will be offered at his trial.  *See* Exh. F (09/16/09 Trial Transcript) at 769:17-23.

The Reply also fails to take seriously the privacy and privilege issues implicated by its request—particularly given the breath of the requests.  The Reply makes no effort to address those concerns, nor did Cisco before filing its motion.  Ward has an ethical obligation to his clients to keep information about their cases confidential, particularly those cases that are in a pre-filing stage.  Cisco has not shown that Ward's client lists are relevant to any issue in this case, and Ward has already testified his income the year after the accused articles were published did not drop.  When Cisco's lack of relevance is weighed against its overly broad request and the implications that request has for Ward's clients, Cisco's motion should be denied.  *See* Fed. R. Civ. P. 26(b)(2).

Plaintiff's Response also told Cisco that the information it seeks is easily accessible on the Court's PACER System.  Cisco apparently agreed; it has since served Plaintiff with 152 Request for Admissions, each of which asks Plaintiff to admit that he represents identified

clients.  *See* Exh. G (Cisco's Second Set of RFAs).  Thus, Cisco has the discovery it needs and

any attempt to obtain Ward's clients confidential files is wholly unnecessary, duplicative and

overly burdensome.  *See* Fed. R. Civ. P. 26(b)(2).

> v.   The Discovery Cisco Seeks Is Unnecessary, Unreasonably Cumulative,
> Overly Broad And Sought For The Purpose Of Harassing Ward

All discovery is subject to the limitations imposed by Rule 26(b)(2). The rules expressly

provide that the court "must" limit the frequency or extent of discovery when "the discovery

sought is unreasonably cumulative or duplicative or can be obtained from some other source that

is more convenient, less burdensome or less expensive" or "the burden or expense of the

proposed discovery outweighs its likely benefit, considering the needs of the case, the amount in

controversy, the parties resources, the importance of the issues at stake in the action and the

importance of the discovery in resolving the issues." *See* Fed. R. Civ. P. 26(b)(2)(C)(i)-(iii).

Further, upon a showing of good cause, the court may issue orders necessary to "protect a

party or person from annoyance, embarrassment, oppression, or undue burden or expense." *See*

Fed. R. Civ. P. 26(b)(5)(c)(1). Although the discovery rules are given liberal treatment to affect

their purpose of informing litigants, those rules have "ultimate and necessary boundaries."

*Garcel Inc. v. Hibernia Nat. Bank,* Civ. No. 01-0772,  2002 U.S. Dist. LEXIS 2390, at *8 (E.D.

La., Jan. 23, 2002).  The discovery sought must have evidentiary value before an order to compel

disclosure of otherwise inadmissible material will issue. *Id.* at *7.  Courts have likewise

recognized the legal tenet that the rules should not be misapplied so as to allow "fishing

expeditions in discovery." *Id.*  In such cases, courts will enter a protective order preventing the

propounding party from abusing the discovery process. *See Id.* at *8.

Ward has demonstrated that Cisco's insistence on seven years of Ward's tax returns and

financial documents, which include private information of third parties and mounds of private

information not remotely relevant to this non-lost-profit case, should be denied.  Moreover, the

client files Cisco seeks are grossly overbroad and cumulative of other discovery Cisco is seeking.

Because the discovery Cisco seeks is not relevant to any claim or defense in this case, is

unnecessary, unreasonably cumulative and duplicative, unduly burdensome and sought only for purposes of harassment, Cisco's Motion should be denied. FED. R. Civ. P. 26(b)(2)(C)(i)-(iii).

> 6.     Cisco's Motion to Compel Document The Credit Card Receipt For The Filing Of The ESN Complaint Is Moot

Cisco's motion seeks to compel Ward to produce a credit card billing statement for a credit card owned by *Mr. Albritton*. *See* Mot. at 11.  Plaintiff's Response argued that Cisco *already had* the credit card statement it included in its motion to compel.  At the time Cisco filed its motion, Ward did not have the credit card receipt Cisco requested.  At the conclusion of the Albritton trial, Ward obtained the exhibits admitted into the public record in that case, which included the credit card receipt Cisco already had but nonetheless requested from Ward.  Ward has produced the Albritton documents to Cisco so it now has (again) the credit card receipt it requested.  The only "communications" concerning that credit card receipt are communications between Ward and his counsel in this case discussing Cisco's Request No. 10.  Those documents are privileged and are not required to be logged on Ward's privilege log.  Thus, Cisco's motion is moot.

> 7.     Cisco Is Not Entitled To An Unlimited Medical Release To Four Years Of Ward's Medical Records For Treatment He Has Told Cisco He Did Not Seek

Plaintiff's Response demonstrated that Cisco's request that Ward sign a complete medical release provided by Cisco, giving it unfettered access to comb through four years of Plaintiff's entire medical history without limitation as to subject-matter was grossly overbroad and unreasonable.  In Reply, Cisco responds only that its request is not overbroad.  Cisco's Request No. 12 asks:

> "Produce a medical authorization for John Ward, Jr.'s medical records (a form is attached)."

*See* Mot. at 12.  The request speaks for itself.

The Reply argues that because Ward testified that he has lost sleep as a result of the Troll Tracker articles, it is entitled to a complete medical release to investigate if there are other reasons that Ward has lost sleep.  Reply at 17.  But, Cisco already has the answer to that

question.  Mr. Ward testified that the Troll Tracker blogs are not the only cause of his sleepless nights, and Cisco questioned Ward about the other causes in his deposition.  *See* Exh. B (Ward Depo. at 22:15-24:4.  Cisco has the discovery it needs.  Nor does Ward's deposition testimony that he spoke to a doctor who recommended that he take an over the counter sleeping aid justify Cisco's request for a complete medical waiver, as the Reply suggests.  Reply at 18.  As Cisco well knows, the doctor with whom Ward spoke is a personal friend, not his treating physician. *See* Exh. B (Ward Depo.) at 20:1-5.  There is nothing in Ward's deposition that warrants giving Cisco an unlimited medical release for Ward's entire medical history.

Here too, Cisco knows that it cannot prevail on its request because it served the same request and the same medical form on Albritton in the Texas Case.  Cisco moved to compel Albritton to sign Cisco's same medical release form, and the Court denied Cisco's motion in its entirety.  *See* Exh. C (Albritton D.E. 143).  As was the situation in the Texas Case, Ward will not offer medical records, counseling records, or expert testimony to prove his emotional distress claims.  Consequently, the documents Cisco seeks are not relevant to any issue in this case and should not be ordered produced.  *See id.*

The Reply is wrong when it argues that the documents it seeks are not privileged.  Reply at 18.  Federal Rule of Evidence 501 requires the court to apply state law to determine the applicability of any evidentiary privileges in diversity actions where state law provides the rule of decision for a claim or defense.  *See* Fed. R. Evid. 501.  Arkansas recognizes both a physician and a psychotherapist-patient privilege.  *See* Ark. R. Evid. 503 ("A patient has a privilege to refuse to disclose and to prevent any other person from disclosing his medical records or confidential communications made for the purpose of diagnosis or treatment.").  Cisco has showed no compelling justification for setting aside this privilege.

Moreover, as the Reply admits, Cisco's request is defectively overbroad.  Reply at 18 (attempting to narrow Cisco's request in light of Plaintiff's Response).  Plaintiff argued that Cisco's requests seeks all of Mr. Ward's medical records, whether or not they have any bearing on mental anguish damages, including every doctor, dentist, and optometrist that he has seen in

the last four years.  In Reply Cisco argues that it only seeks documents from Ward's "medical practitioners" and will stipulate that it won't seek records from "dentists and optometrists". Reply at 18.  Cisco offers no justification for serving such a broad request in the first place, or for not making a reasonable effort to narrow it through a meet and confer process before bringing its motion to this Court.  Cisco's attempt to narrow its request now fails because the term "medical practitioners" is still far too broad and ambiguous.  Plaintiff cannot stipulate to Cisco's terms without discussing with Cisco what it means by "medical practitioners" or why it thinks it is entitled to four years of medical records.  Nor can Plaintiff produce the form provided by Cisco which includes none of the narrowing required to make Cisco's request minimally reasonable.

Plaintiff's position is squarely supported by *Miles v. Century 21 Real Estate*, No. 4:05-cv-1088 GTE, 2006 U.S. Dist. LEXIS 67974, at *9 (E.D. Ark., Sept. 21, 2006).[12]  The Reply attempts to distinguish *Miles* by claiming that the holding in that case was compelled by the fact that the medical release was unlimited in time, whereas Cisco has limited its request to the last four years.[13]  Reply at 17.  The problem is that even with Cisco's narrowed time-frame, Ward's medical records are not relevant given his representation that he will not offer medical records, counseling records or expert testimony to prove his mental anguish.  *Miles* squarely holds that

---

[12] The cases Cisco offers the Court instead are distinguishable.  In *Batiste-Davis v. Lincare, Inc.*, 526 F.3d 377, 381 (8th Cir. Ark. 2008), Plaintiff put her medical condition at issue by calling her treating social worker to testify at trial.  That is not the case here where Ward has said that he will offer no such testimony at trial.  Cisco's citation to *Patterson v. P.H.P. Healthcare Corp.*, 90 F.3d 927, 940 (5th Cir. 1996) is misguided.  Cisco cites that case for the unremarkable proposition that evidence of mental anguish may include medical records.  But as the Fifth Circuit has made clear, it is not required and Plaintiff's testimony alone is sufficient to prove mental anguish.  *Migis v. Pearle Vision*, 135 F.3d 1041, 1046 (5th Cir. Tex. 1998) (distinguishing *Patterson* as follows:  *Patterson* did not hold that medical evidence or corroborating testimony is always required for an award of mental anguish damages).  Because Ward will not offer medical testimony at trial, Cisco's reliance on *Patterson* is misplaced.  *Doe v. Oberweis Dairy*, 456 F.3d 704, 718 (7th Cir. 2006) is distinguishable because that case involved mental trauma for sexual harassment in which the Plaintiff put her counseling records at issue.  Ward has made no affirmative use of medical evidence in this case.

[13] Cisco also argues that *Miles* is distinguishable because in this case Ward "has alleged a specific medical issue that required medication."  Reply at 17.  Again, Cisco is attempting to stretch Ward's deposition testimony that he starting taking Tylenol PM—and over the counter medication—on a friend's recommendation beyond all reasonable bounds.  *See* Exh. B (Ward Depo.) at 20:1-5.  Ward has not alleged that he is suffering from a medical condition or that he has sought out medical treatment for a specific medical condition as a result of Cisco's libelous posts.  Cisco's claims to the contrary stretch credibility.

under those circumstances, Cisco should not be permitted to rake through Plaintiff's medical files.  See id. at *9.  Moreover, Cisco's request is unlimited in subject-matter, which again warrants denying Cisco's motion.  *See id.*

Cisco's motion should be denied because the documents it seeks are not relevant, and any minimal relevance is outweighed by Ward's right to privacy and right to keep his privileged conversations with his medical professionals confidential.  It should also be denied because Cisco has served an egregiously over broad, unreasonable and harassing request that far exceeds the bounds of reasonable discovery.  FED. R. Civ. P. 26(b).

> 8.   Any Concern Cisco Has With Ward's Production of ESN Documents Is The Result of Cisco's Overly Broad Requests

Cisco's request asked Ward to produce all documents regarding the initial filing of the ESN Complaint and the Amended Complaint, and all communications between anyone connected to ESN (without limitation as to time) relating to the ESN lawsuit or Complaint.  *See* Mot. 15.  Cisco again tries to defend its overly broad requests for which it made no attempt to narrow prior to bringing its motion.  Cisco's requests read as follows:

> Request No. 13 asks:  Produce all documents relating to the initial filing of the complaint and the filing of the amended complaint the ESN Texas Case, including but not limited to all correspondence or relating to the initial filing and the filing of the amended complaint in the ESN case.

> Request No. 15 asks:  Produce all documents relating to communications between or among ESN, LLC (including its attorneys, agents, or anyone acting on its behalf) and any other person relating to the filing of the ESN Lawsuit. Include communications between ESN, LLC, Eric M. Albritton, Amie Mathis, T John Ward, Jr., McAndrews Held & Malloy, Ltd., and anyone purporting to act on their behalf."

Cisco's requests are unreasonably overbroad, despite its claims to the contrary.  The Reply argues that the requests are "inherently limited" because the ESN complaint was filed on October 16, 2007.  The Reply, then goes on to acknowledge, however, that the request is no so limited because documents before October 16th are relevant too.  *See* Reply at 19.  The Reply's flip flop highlights the problem with Cisco's requests:  when do they start and when to they end.  Cisco is not even sure.

The Reply does nothing to answer the legitimate questions raised in Plaintiff's response: are communications exchanged between the inventor and counsel months before the patent issued or the complaint is filed, but for which they believe a complaint will be filed "relating" to the complaint?  Are all of the pre-filing negotiations that occurred between ESN and Cisco months before the ESN Complaint was filed documents "relating" to the Complaint?  Plaintiff can't know and Cisco never says.  Because it continues to ignore the breath of its requests, which seek all documents relating to all communications between a company and three law firms and "anyone purporting to act on their behalf," Cisco claims it can't see how the documents it seeks can be confidential, proprietary, or trade secret.[14]  Cisco's requests can be read to include communications between ESN and other law firms that are not parties in this case that may include technical analysis of ESN's technology or patent claims that were later asserted in the ESN Complaint.  If Cisco did not intend its requests to reach that far, the time to resolve the issue was before filing its motion to compel.

Plaintiff has produced the documents that are clearly responsive to Cisco's requests.  However, Cisco is apparently unsatisfied because Plaintiff will not remove his objections.  Plaintiff has no choice given Cisco's requests; if he did not object Cisco would later claim that some document from four years ago should have been produced because Ward made no objection to scope.  Cisco made no attempt to narrow its request or to confer with Plaintiff about his continued objection to its scope before bringing this motion.  Thus, Cisco must now accept the deficiencies in its requests and its motion should be denied under Fed. R. Civ. P. 26(b).

The Reply's remaining argument is the same custody and control argument that it raises above.  Here, however, Cisco apparently drops its insistence that Ward produce to Cisco the Albritton documents it already has in its files.  Cisco also drops its insistence that Ward produce

---

[14] Cisco certainly understands these types of limitations on discovery and, in fact, refused to produce any information about how Cisco stores and maintains its data until the parties agreed to a confidentially agreement.  The fact that companies other than Cisco have confidential and proprietary information can't be a surprise to Cisco.  When Plaintiff requested documents and Cisco objected on the same proprietary information grounds, Plaintiff met and conferred with Cisco to reach a Confidentiality Agreement.   Cisco made no such effort with respect to Plaintiff's documents.

documents that are online at PACER and equally accessible to Cisco.  What remains are "Plaintiff's communications regarding the filing issue in this case."  Reply at 19.  Ward has already produced all non-privileged communications regarding the filing issue in this case.  He has logged others on his privilege log.

9.     Cisco's Motion To Compel Documents Evidencing Ward's
       Communications With The EDTX Court Clerks Should Be Denied

Cisco's Request asks Ward to "[p]roduce all documents relating to communications with the United States District Court or any of its employees (including clerks) regarding the filing of the ESN Lawsuit and/or whether subject matter jurisdiction existed in the ESN Lawsuit."  *See* Mot. at 17.

The Reply continues to complain about Ward's privilege objection, but does not address the fact that its request is not limited to communications "with" the court, it asks for "documents relating to communications" with the court.  The difference is important.  If Cisco wants, as it contends in Reply, documents showing communications Ward had with the clerk's office about the filing of the ESN Complaint:  there are none.[15]  But if Cisco wants "all documents concerning or relating to communications with the court clerk as stated in the requests it actually served, then Cisco is asking for privileged communications between Ward and his counsel in this case and for work product.  Privilege for those documents has not been waived, as Cisco contends, because they are communications with counsel in this case and do not need to be logged on Ward's privilege log.

Contrary to the Reply's "inherently limited" argument, this Request is overly broad.  Cisco's request does not include a date restriction and asks for information that may implicate issues in the ongoing ESN v. Cisco case.  Ward should not have to be worried about continually producing ESN v. Cisco documents to Cisco (that are not relevant to this case) because Cisco

---

[15] It is interesting that Cisco takes the position that Ward would have to produce any documents evidencing any communication with the Court clerk concerning the filing of the ESN case, if they existed, because it would not be privileged.  At the same time Cisco is withholding as privileged a document evidencing the communication that Jillian Powell at Baker Botts had with the court clerk when she called on behalf of Cisco to ask about the filing of the ESN Complaint.

refuses to put reasonable date restrictions on its requests.  For the ESN documents that are relevant to the filing of the ESN Complaint, Ward identified those documents to the best of his ability and has produced them to Cisco.

The Reply's argument regarding the Albritton documents is something the parties can come to an agreement about.  Cisco claims that Ward must produce documents he has from the Albritton litigation because the protective order in that case impedes Cisco's ability to use the Albritton documents in this case.  Reply at 21.  Ward has similar complaints and has asked Cisco to produce all documents from the Albritton case.  *See* D.E.126.  The Court can resolve this dispute by ordering both parties to produce all documents from the *Albritton v. Cisco* litigation — then the Court will not have to take up competing arguments about who has the burden of producing Albritton's documents.

          10.        Ward Has Already Provided A Complete Response To Request No. 18

The Reply reprimands Plaintiff for a statement made in his Response wherein he tells Cisco that "additional documents will be produced in Ward's upcoming document production." *See* Reply at 21.  Cisco demands that those "additional documents" (Cisco's quotes) be produced "immediately," insinuating that Ward was intentionally withholding documents from Cisco.  The Reply's irritate tone is unwarranted.  The documents to which Plaintiff referred were documents from the public Albritton trial, which Plaintiff did not have until shortly before his Response was filed.  Document production takes some time and Plaintiff has since produced those documents to Cisco.

The Reply refuses to admit that its overly broad and vague responses forces Plaintiff to decipher what documents Cisco seeks.  Reply at 21.  The Reply does not believe that Cisco's request requires Plaintiff to make judgment calls about its amorphous request.  Fair enough.  If the request is not ambiguous, Plaintiff will assume that he has read it the same way as Cisco and his document production is complete.

11.     Cisco's Motion To Compel Documents Responsive To Request Nos. 23-25 Should Be Denied

The parties have a dispute about the time period that applies to Cisco's request. Plaintiff objected to Cisco's request because they were not reasonably limited in time.[16] Plaintiff's Response argued that Ward's private/public figure status must be determined as of the time he was libeled by Cisco. Plaintiff cited *Hutchinson v. Proxmire*, 443 U.S. 111, 135 (1979) (for a plaintiff to be considered a limited purpose public figure, he must be involved in a public controversy ***before*** the defamatory statement is published, for "those charged with defamation cannot, by their own conduct, create their own defense by making the claimant a public figure."). Here, the operative date is October 17, 2007. Only documents before that date are relevant.

The Reply asserts that Plaintiff is wrong. The Reply cites no authority for its argument. Nor does the Reply dispute the authority cited by Plaintiff. There is no legitimate dispute that Ward's status as a private/public figure is determined as of the time of Cisco's libelous posts. *See id.* Ward need not produce any documents after October 19, 2007 because the burden of producing those documents clearly outweighs Cisco's need for non-relevant documents. Cisco's refusal to concede this issue is unreasonable.

The Reply concedes that its requests are overly broad and agrees to limit all of its requests to the last five years. Cisco concession on this point further demonstrates that the issues in Cisco's motion were not ripe for resolution by the Court. This issue is a simple date restriction issue that could have been dealt with before briefing on a motion to compel. Nonetheless, Cisco's requests are still overly broad because they seek documents for the two years after Cisco's defamation, dates that are not relevant to Ward's status as a private or public figure.

Cisco is also being wholly unreasonable in pressing these requests in light of Ward's position that he does not have the copies of the documents Cisco seeks and to the extent that those documents may be in the public domain, Ward doesn't know where they are. The Federal

---

[16] The Reply's argument that Ward did not object on this basis is unfounded. *See* Reply at 22.

Rules do not require Plaintiff to track down documents that may or may not be publicly available, somewhere unknown to him, to satisfy Cisco's requests.  Cisco simply won't accept that Ward doesn't have responsive documents, insisting that he "has offered no evidence proving these documents are not in his custody or control."  Reply at 22.  Ward has told this Court he does not have the documents and nothing more is required.  Cisco may not like the facts, but Plaintiff is not required to take a lie detector test or have his office searched by Cisco to give Cisco "evidence" proving his responses.

> 12.  Cisco's Motion To Compel Documents Responsive To Request Nos. 26 and 26 (Incorrectly Numbered) Should Be Denied.

Plaintiff's Response showed that Cisco's requests are fatally overbroad and unduly burdensome in asking Ward for "all documents relating to any effort to influence patent reform without limitation to specific persons, time periods or reasonably narrow subject matter.

In Reply, Cisco contends that its requests about any trips Ward took to Washington D.C. to lobby for patent reform are relevant to show that Cisco's patent reform lobbying is not any more nefarious than conduct that Ward has engaged in.  *See* Reply at 20.  First, as set forth in the response, Ward has not traveled to Washington D.C.—or anywhere else—to lobby for patent reform.  Second, Cisco has refused to produce discovery on this very topic, undermining its relevance argument.

The Reply concedes that its requests are overly broad and has made one concession to narrow its requests, stating that Cisco is not seeking Ward's voting history.  Reply at 20.  Cisco misses the point.  Plaintiff pointed to his voting history as one example of categories of documents that can be read to fall within the scope of Cisco's overly broad requests, which ask for Ward's efforts to "influence any legislation."  There are many other examples of documents that could conceivably be covered by Cisco's request for all documents—unlimited in time—and "any efforts" to "influence any legislation."  For example, would Ward's work on behalf of a local ballot initiative fifteen years ago fall in within the scope of this request?  Or a letter that he wrote to his congressperson about the current health care debate?  Ward cannot simply ignore the

over breath of Cisco's request and produce the document he thinks Cisco meant to request.  If Cisco's requests are left unchecked, Cisco can later argue that Ward failed to comply with Cisco's request as drafted.

The Reply also fails to address the fact that Cisco's requests are over broad because they are not limited to the relevant time period before October 19, 2007.[17]  *See Hutchinson*, 443 U.S. at 135.  Cisco's Requests must fail for being impermissibly over broad.  Fed. R. Civ. P. 26(b).

The proper course is to narrow the request, and then have Ward confirm that no responsive documents exist, produce documents and/or log documents on his privilege log.[18] Ward cannot be expected to make binding statements about what documents fall within the scope of Cisco's requests until he knows the scope of those requests.  Ward does not believe that he has any responsive documents if Cisco's requests are properly narrowed.  However, if Cisco's requests are left this broad, Plaintiff will have to make sure he didn't pass out flyers for the local city assemblyperson when he was ten before he can confirm that he has no documents to produce.

III.     Conclusion:

For all the forgoing reasons, Plaintiff respectfully requests that Cisco's motion be in all things DENIED.

---

[17] To the extent that Cisco is afforded any relief, the Court should at least force Cisco to narrow its Requests to seek only pre-Oct, 19 2007 documents and expressly limit Cisco's requests to the topic of patent reform.

[18] Cisco argues throughout the Reply that Ward is required to "respond to the part of the request to which he does not object."  *See e.g*., Reply at 22-23.  Cisco's approach is irrational.  According to Cisco, Ward should interpret Cisco's requests and then produce documents to Cisco based on his interpretation of Cisco's requests.  The proper course is for Ward to make his objections and then Cisco meet and confer in good faith with Cisco to reach agreements with respect to the production of documents, including narrowing and rephrasing inartful requests so that the parties are both clear about what is requested and what is being produced.  Then, any remaining and legitimate disputes can be raised with the Court.

Respectfully Submitted,

Nicholas H. Patton
AR Bar No. 63035
Email: nickpatton@texarkanalaw.com
Email: Courtney Towle
ctowle@texarkanalaw.com
Patton, Tidwell & Schroeder, LLP
4605 Texas Boulevard
Texarkana, Texas 75503
903.792.7080 / 903.792.8233 (Fax)

Patricia L. Peden
LAW OFFICE OF PATRICIA L. PEDEN
1316 67th Street
Suite 6
Emeryville, CA 94608
Telephone: 510-268-8033
Email: ppeden@pedenlawfirm.com

James A. Holmes
Texas Bar No. 00784290
THE LAW OFFICE OF JAMES HOLMES, P.C.
635 South Main, Suite 203
Henderson, Texas 75654
903.657.2800 / 903.657.2855 (Fax)


ATTORNEYS FOR PLAINTIFF

## CERTIFICATE OF SERVICE

This is to certify that on this 28th day of October, 2009, a true and correct copy of the foregoing document was served electronically via the Court's CM/ECF system upon:

Richard E. Griffin                           Attorneys for Defendant Cisco Systems, Inc.
Charles Babcock
Crystal Parker
Kurt Schwarz
JACKSON WALKER, LLP
1401 McKinney
Suite 1900
Houston, Texas 77010


Nicholas H. Patton