# EX. B

```
           IN THE UNITED STATES DISTRICT COURT
              WESTERN DISTRICT OF ARKANSAS
                   TEXARKANA DIVISION
```

| | |
|---|---|
| JOHN WARD, JR., | * |
| | * |
| V. | *  C.A. NO. 08-4022 |
| | *  JURY TRIAL DEMANDED |
| CISCO SYSTEMS, INC. | * |

---

ORAL AND VIDEOTAPED DEPOSITION OF

THOMAS JOHN WARD, JR.

AUGUST 10, 2009

---

ORAL AND VIDEOTAPED DEPOSITION of THOMAS JOHN WARD, JR., produced as a witness at the instance of the Defendant, and duly sworn, was taken in the above-styled and -numbered cause on the 10th day of August, 2009, from 9:44 a.m. to 1:21 p.m., before Stacy L. Jordan, CSR in and for the State of Texas, reported by machine shorthand, taken in the law offices of John Ward, Jr., 111 West Tyler Street, City of Longview, County of Gregg, State of Texas, pursuant to the Federal Rules of Civil Procedure.

```
 1                He said:  Try taking Tylenol PM before you
 2    get to something harder.
 3        Q.   What's the name of the doctor?
 4        A.   Brian Mendenhall, a good friend of mine, ER
 5    doctor.
 6        Q.   And when did you talk to Dr. -- Mendenhall,
 7    did you say?
 8        A.   Mendenhall.  I know it was when we lived at
 9    101 Fountain Valley Court.  I want to say it was over a
10    year ago.
11        Q.   Have you been taking Tylenol PM for a year
12    every night?
13        A.   Yeah, one.
14        Q.   One -- one tablet?
15        A.   One tablet.
16        Q.   Okay.  And now are you sleeping through the
17    night every night?
18        A.   I didn't last night, but pretty much, yeah.
19    I've had --
20        Q.   You were worried about me, right?
21        A.   Well, I was worried about my wife, what -- how
22    my wife was going to --
23        Q.   She seemed --
24        A.   -- hold up.
25        Q.   She seemed okay.
```

```
 1    rereading them?
 2        A.   No.  It's a result of what they accused me of,
 3    I think.
 4        Q.   Well -- but you don't have a ritual where you
 5    sit down every couple of weeks and read these articles,
 6    do you?
 7        A.   Oh, no.  I put them -- I try to put them out
 8    of my mind.
 9        Q.   Okay.  And the only reason that you have to
10    answer discovery is because of this lawsuit, right?
11        A.   That's right.
12        Q.   Okay.  But prior to your taking the Tylenol
13    PM -- which you said, I think, was maybe a year ago?
14        A.   I think so.
15        Q.   Okay.  Prior to that, was the only thing
16    causing your sleepless nights the Troll Tracker
17    articles?
18        A.   No.
19        Q.   Okay.  What -- what else?
20        A.   Stresses of practice, stresses of life.
21        Q.   What -- what stressful events in your life do
22    you have other than the stress of your practice?
23        A.   I've got kids.  I've got three kids.  I worry
24    about my kids.  I worry about my family.  The people at
25    church, they have tough things going on in their lives
```

| | |
|---|---|
| 1 | Q.   Is -- Mr. Chiaviello is the lawyer at |
| 2 | Fulbright -- |
| 3 | A.   Chiaviello (pronunciation). |
| 4 | Q.   Chiaviello.  Sorry.  He is the lawyer at |
| 5 | Fulbright, correct? |
| 6 | A.   Correct. |
| 7 | Q.   And he's the one that told you about a |
| 8 | conversation he'd had with somebody else about you? |
| 9 | A.   Correct. |
| 10 | Q.   Okay.  Are you working with him on any case? |
| 11 | A.   Yes. |
| 12 | Q.   Are -- is he a -- an attorney on the Ward |
| 13 | versus Cisco case? |
| 14 | A.   No. |
| 15 | Q.   Okay.  Okay. |
| 16 | A.   But I'm in -- I'm in a number of cases with |
| 17 | Mr. Chiaviello and his firm. |
| 18 | Q.   Is Mr. Pridham, who you referenced earlier, an |
| 19 | attorney in the Ward versus Cisco case? |
| 20 | A.   No. |
| 21 | Q.   Is he a client? |
| 22 | A.   He's an attorney for a client -- former client |
| 23 | who I'm no longer working for. |
| 24 | Q.   Okay.  Do you recall talking to him about |
| 25 | litigation strategy regarding Ward versus Cisco? |

1      MS. PEDEN: Objection to form.
2      A.   I -- I can't reveal to you what we've talked about without revealing attorney-client communications dealing with the client that he worked for.
5      Q.   (BY MR. BABCOCK) Okay. Bruce Lagerman, who is he -- or Lagerman (pronunciation)?
7      A.   He was a gentleman who contacted me about potential representation who I did not end up working for, I believe.
10     Q.   Okay. Are your conversations with him -- do you view them as privileged?
12          MS. PEDEN: Objection to form.
13     A.   I do. If he was seeking legal representation, yes, sir.
15     Q.   (BY MR. BABCOCK) Okay. So anything he said in that conversation would be covered by the attorney-client privilege?
18          MS. PEDEN: Objection to form.
19     A.   I -- I don't know that anything he says in the conversation with me, when he's seeking legal representation, would be privileged.
22     Q.   (BY MR. BABCOCK) Okay. Did he -- did you have any discussion with Mr. Lagerman about Cisco?
24          MS. PEDEN: Objection to form. And, also, I -- you know, I don't know -- because I don't