# EX. D

Dockets.Justia.com

IN THE UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TEXAS
TYLER DIVISION

| | | |
|---|---|---|
| ERIC M. ALBRITTON | § | |
| | § | |
| | § | |
| v. | § | |
| | § | C. A. NO. 6:08-CV-00089 |
| CISCO SYSTEMS, INC., | § | |
| RICK FRENKEL, MALLUN YEN & | § | |
| JOHN NOH | § | |

## CISCO SYSTEMS, INC.'S MOTION TO COMPEL PRODUCTION OF DOCUMENTS

TO THE HONORABLE JUDGE:

Defendant Cisco Systems, Inc. ("Cisco") hereby files this Motion to Compel the Production of Documents ("Motion") pursuant to Rule 37 of the Federal Rules of Civil Procedure, this Court's Scheduling Order, and Local Rule 26(d) and would show the Court the following.

### I.  FACTUAL BACKGROUND

Eric Albritton ("Albritton") alleges in his Original Complaint ("Complaint") (a true and correct copy of the Complaint is attached as Exhibit A) that the Defendants published defamatory statements about Albritton that damaged his reputation and caused him "shame, embarrassment, humiliation, and mental pain and anguish." (Exhibit A at ¶39). He alleges that he "has and will in the future be seriously injured in his business reputation, good name and standing in the community" and " will, in all likelihood, be exposed to the hatred, contempt, and ridicule of the public in general as well as of his business associates, clients, friends and relatives." Defendants bring this motion to seek discovery of documents related to those claims because Albritton refuses to produce them.

1

On March 31, 2008, the then-presiding judge in this lawsuit, Judge Michael H. Schneider, issued an Order for Scheduling Conference ("Order").  A true and correct copy of the Order is attached as <u>Exhibit B</u>.  Pursuant to the Order, Judge Schneider ordered that within 60 days of the order the parties produce all documents that are "relevant to the claims or defenses of <u>any</u> party." (<u>Exhibit B</u> at p. 2).  The Court directed the parties to Local Rule CV 26(d) to define "Relevant to the Claim or Defense." (*Id.* at p. 2).  Local Rule CV 26(d) provides that "in evaluating whether a particular piece of information is 'relevant to the claim or defense of any party," the disclosing party must produce "information that would not support the disclosing parties' contentions," "information that is likely to have an influence on or affect the outcome of a claim or defense," "information that deserves to be considered in the preparation, evaluation or trial of a claim or defense," and "information that reasonable and competent counsel would consider reasonably necessary to prepare, evaluate or try a claim or defense." LR CV26 (d) (1), (3), (4), (5).

Judge Schneider further ruled that in light of this requirement, "requests for production under Fed. R. Civ. P. 34 will not be allowed, and the parties are directed to conduct discovery through the process of disclosures." (<u>Exhibit B</u> at p. 3).  Therefore, Albritton was required to produce all documents that are relevant to his claims and Defendants' defenses on or before May 30, 2008.

The parties agreed to an extension of that deadline, and Albritton produced some responsive documents.  However, Albritton did not produce any documents that relate to his claimed damages.  On August 26, 2008, counsel for Cisco sent Albritton a letter setting out specific categories of documents.  However, Albritton refuses to produce any documents related to his claimed damages.

2

The parties have conducted a meet and confer, and Albritton still refuses to produce certain documents. Specifically, Albritton refuses to produce the following documents:

- Documents evidencing Eric Albritton's damages;

- Documents evidencing Eric Albritton's mental anguish;

- A medical authorization for Eric Albritton's medical records;

- Documents evidencing all of Albritton's new matters or clients since October 16, 2007, including but not limited to engagement letters concerning such clients and matters;

- Eric Albritton and the Albritton Law Firm's tax returns for 2002 through the present; and

- Annual and interim balance sheets, income statements, and statements of cash flows for the Albritton Law Firm for 2002 through the present.

Defendants seek an order from the Court compelling Albritton to produce these relevant documents.

## II. ARGUMENTS AND AUTHORITIES

Defendants seek an order compelling Albritton to produce the requested documents, which relate directly to his damage claims for mental anguish and damage to his reputation as set forth in his Complaint. Albritton has refused to produce documents related to Albritton's claim for mental anguish and his claim of damage to his business reputation. (*See* Exhibit A at ¶39).

Texas law provides that medical records and records related to the plaintiff's finances are relevant to a plaintiff's mental anguish claim. In order to recover for mental anguish, there must be (1) evidence of compensable mental anguish and (2) evidence to justify the amount awarded. *Saenz v. Fidelity & Guaranty Ins. Underwriters*, 925 S.W.2d 607, 614 (Tex. 1996). With respect to the requirement that the plaintiff show evidence of mental anguish itself, the Texas Supreme Court has noted the difficulty of distinguishing "between shades and degrees of emotion."

3

*Parkway Co. v. Woodruff*, 901 S.W.2d 434, 444 (Tex. 1995) (holding that the disruption caused by the flooding of the plaintiff's home disrupted the plaintiff's lives temporarily but that "this type of disruption will not support an inference that compensable mental anguish occurred.") The court further held that "direct evidence of the nature, duration and severity of mental anguish, thus establishing a substantial disruption in the plaintiff's daily routine" is relevant to show mental anguish and "can be readily supplied or procured by the plaintiff." *Id.*

Here, Defendants have sought the exact evidence that the Texas Supreme Court has held is relevant to a claim for mental anguish. Albritton's medical records, which would show whether he met with medical professionals concerning his alleged mental anguish or other factors that could have led to his alleged mental anguish, are directly relevant to the nature, duration and severity of his mental anguish. *See Patterson v. P.H.P. Healthcare Corp.*, 90 F.3d 927, 940 (5th Cir. 1996) *cert. denied*, 519 U.S. 1091 (1997) (holding that evidence of mental anguish "may include corroborating testimony or medical or psychological evidence"); *Montemayor v. Ortiz*, 208 S.W.3d 627, 719 (Tex. App.—Corpus Christi 2006, pet. denied) (noting as a reason for holding that there was insufficient evidence of mental anguish that "[r]emarkably, in this case not one plaintiff presented medical or psychological expert testimony as to the emotional harm that was purportedly suffered"). In particular, Albritton's medical records are relevant to other possible causes of Albritton's alleged mental distress. Similarly, records of Albritton's personal and business finances are direct evidence of whether his mental anguish disrupted his daily routine, as they are direct evidence of whether Albritton's mental anguish took any toll on his work life and whether his alleged mental anguish was caused by or related to financial distress.

4

Defendants' requests for financial information and costs of any medical care are also proper under Texas law to show damages or lack of damages. Texas law provides that when it comes to damages for mental anguish, the jury "cannot simply pick a number and put it in the blank," but rather must provide evidence of fair and reasonable compensation. *Saenz v. Fidelity & Guaranty Ins. Underwriters*, 925 S.W.2d 607, 614 (Tex. 1996) (reversing the award of mental anguish damages because "there is no evidence in this case that Saenz suffered mental anguish or that $250,000 would be fair and reasonable compensation"). The Texas Supreme Court has held that evidence of mental anguish must not be simply a disapprobation of the plaintiff's conduct, but rather a "fair assessment" of the defendants' injury. *Bentley v. Bunton*, 94 S.W.3d 561, 605 (Tex. 2002) (reversing an award of $7 million in mental anguish on the basis there was insufficient evidence that the amount would "fairly and reasonably compensate" the plaintiff for his loss). In doing so, the Court held that "there must be evidence that the amount found is fair and reasonable compensation, just as there must be evidence to support any other jury finding." *Id.* at 606.

Defendants are seeking exactly the type of evidence the Texas Supreme Court has held is relevant to determine damages resulting from Albritton's alleged mental anguish. Albritton has produced no evidence of any damages resulting from his mental anguish. Evidence of the amount spent for medical care resulting from his mental anguish as well as any monetary loss he has suffered as a result of his mental anguish (or lack thereof) are directly related to his damages claims.

Similarly, evidence of an actual injury is directly related to Albritton's claim of damage to his business reputation. Certainly evidence of the financial condition of an attorney's practice is relevant to his claim that his business reputation has been injured. The very definition of libel

under Texas law acknowledges that financial injury is evidence of defamation. *See* TEX. CIV. PRAC. & REM. CODE § 73.001 (defining libel as "defamation expressed in written or other graphic form that tends to ... injure a living person's reputation and thereby expose the person to public hatred, contempt or ridicule, or financial injury.")

Simply put, Albritton should not be permitted to allege mental anguish and damage to his business reputation, yet refuse to produce the most obvious evidence concerning those claims. Accordingly, Defendants respectfully request an order requiring Albritton to produce the following:

- Documents evidencing Eric Albritton's damages;

- Documents evidencing Eric Albritton's mental anguish;

- A medical authorization for Eric Albritton's medical records;

- Documents evidencing all of Albritton's new matters or clients since October 16, 2007, including but not limited to engagement letters concerning such clients and matters;

- Eric Albritton and the Albritton Law Firm's tax returns for 2002 through the present; and

- Annual and interim balance sheets, income statements, and statements of cash flows for the Albritton Law Firm for 2002 through the present.

6

5307093v.3

Defendants also request such further relief to which they may be justly entitled.

Respectfully submitted,

JACKSON WALKER L.L.P.

By: /s/ Charles L. Babcock
      Charles L. Babcock
      Federal Bar No.: 10982
      Email: cbabcock@jw.com
      Crystal J. Parker
      Federal Bar No.: 621142
      Email: cparker@jw.com
      1401 McKinney
      Suite 1900
      Houston, Texas 77010
      (713) 752-4200
      (713) 752-4221 – Fax

ATTORNEYS FOR DEFENDANT
CISCO SYSTEMS, INC.

## CERTIFICATE OF SERVICE

This is to certify that on this 14th day of October, 2008, a true and correct copy of the foregoing was via electronic mail upon:

George L. McWilliams
406 Walnut
P.O. Box 58
Texarkana, Texas 75504-0058
*Attorney for Defendant Richard Frenkel*

James A. Holmes
605 South Main Street, Suite 203
Henderson, Texas 75654
*Attorney for Plaintiff Eric Albritton*

 /s/ Charles L. Babcock
Charles L. Babcock

7

5307093v.3

**Exhibit A**

*IN THE UNITED STATES DISTRICT COURT*
*FOR THE EASTERN DISTRICT OF TEXAS*
*TYLER DIVISION*

| | | |
|---|---|---|
| ERIC M. ALBRITTON, | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| v. | § | |
| | § | NO. 6:08-CV-00089 |
| (1)CISCO SYSTEMS, INC., (2)RICHARD | § | |
| FRENKEL, (3)MALLUN YEN & (4)JOHN | § | |
| NOH, | § | |
| | § | |
| Defendants. | § | |

<u>*PLAINTIFF'S ORIGINAL COMPLAINT*</u>

*TO THE HONORABLE UNITED STATES DISTRICT JUDGE:*

   *COMES NOW, ERIC M. ALBRITTON*, Plaintiff, and complains of *CISCO SYSTEMS, INC., RICHARD FRENKEL, MALLUN YEN & JOHN NOH*, Defendants, and would respectfully show unto the Court as follows:

*I.*

*PARTIES*

1.   *ERIC M. ALBRITTON ("ALBRITTON")* is an individual residing in Gregg County, Texas.

2.   *CISCO SYSTEMS, INC. ("CISCO")* is a corporation organized and existing under the laws of the State of California with its principal place of business in San Jose, California. CISCO has been duly served and has placed itself before this Court for all purposes.

3.   *RICHARD FRENKEL ("FRENKEL")* is an individual who, upon information and belief, resides in the State of California. FRENKEL has been duly served with process and has placed himself before this Court for all purposes.


Exhibit ___A___

4.  **_MALLUN YEN ("YEN")_** is an individual who, upon information and belief, resides in the State of California.  She may be served with process by delivering a copy of the petition and a citation to her at her usual place of business located at 170 West Tasman Drive, M/S SJC-10/2/1, San Jose, California 95134-1700.

5.  **_JOHN NOH ("NOH")_** is an individual who, upon information and belief, resides in the State of California.  He may be served with process by delivering a copy of the petition and a citation to him at his place of business located at 170 West Tasman Drive, M/S SJC-10/2/1, San Jose, California 95134-1700.

## _II._

### _VENUE & JURISDICTION_

6.  This Court has jurisdiction over this dispute pursuant to 28 U.S.C. § 1332 (West 2008), in that Plaintiff and Defendants are citizens of different states and the amount in controversy exceeds $75,000.00.

7.  Venue is proper in the Eastern District of Texas in that all or a substantial portion of the occurrences giving rise to Plaintiff's claims occurred in the Eastern District of Texas.

## _III._

### _FACTUAL BACKGROUND_

8.  ALBRITTON is a licensed attorney representing clients in the United States District Courts for the Eastern District of Texas since 1996.  Since 1998, he has practiced law, almost exclusively, in the Eastern District of Texas.  In addition, he has resided in and been licensed to practice law in the State of Texas since November 4, 1994.

2

9. Throughout his professional career, ALBRITTON has enjoyed a sterling reputation for ethical and responsible legal representation. Neither the State Bar of Texas nor any state or federal court has ever issued any sanctions against ALBRITTON. Likewise, his law license has never been suspended or revoked for any reason. As a result of this reputation, Plaintiff has developed a successful law practice concentrated largely in intellectual property disputes in the Eastern District of Texas.

10. In furtherance of this practice, ALBRITTON filed a patent infringement suit against CISCO on behalf of ESN, LLC on October 16, 2007.

11. FRENKEL is an attorney licensed to practice law in the State of California. He is employed by CISCO as Director, Intellectual Property – Consumer & Emerging Technologies.

12. YEN is an attorney licensed to practice law in the State of California. She is employed by CISCO as Vice President, Worldwide Intellectual Property.

13. NOH is Senior Public Relations Manager for CISCO.

14. In October of 2007 and for a number of months prior thereto, FRENKEL published an internet "blog" purporting to cover patent litigation, particularly in what FRENKEL and CISCO termed the "Banana Republic of East Texas." At that time, FRENKEL's postings could be found at http://trolltracker.blogspot.com. Until shortly before the filing of this suit, FRENKEL purposefully published his comments anonymously.

15. In October of 2007, while still publishing anonymously, FRENKEL posted scandalous and defamatory allegations about ALBRITTON. As set forth in more detail below, FRENKEL's statements constitute libel and libel per se.

3

16.    In particular, on October 17, 2007, FRENKEL posted a blog entitled "Troll Jumps the
       Gun, Sues Cisco Too Early." In that post, FRENKEL identifies ALBRITTON and "T.
       Johnny Ward" as local counsel for ESN. Further, in that post FRENKEL claims that
       ESN filed suit on October 15, 2007, instead of on October 16, 2007. Finally, FRENKEL
       in this post falsely asserts that ESN subsequently filed an amended complaint "to change
       absolutely nothing at all, by the way, expect for the filing date of the complaint." In fact,
       the amended complaint incorporated by reference the patent whereas the original
       complaint did not.

17.    On October 18, 2007, FRENKEL stated as fact that ALBRITTON had "conspired" with
       the Clerk of the United States District Court for the Eastern District of Texas to "alter
       documents to try to manufacture subject matter jurisdiction where none existed."
       FRENKEL further stated as fact that ALBRITTON's misconduct was simply "another
       example of the abusive nature of litigation in the Banana Republic of East Texas."

18.    A true and correct copy of the defamatory writings distributed by FRENKEL is attached
       hereto as Exhibit A.

19.    It is a felony offense to alter court documents.

20.    FRENKEL amended his post to delete the comments concerning the "Banana Republic of
       East Texas," but did not withdraw his allegation that ALBRITTON engaged in a crime
       until the blog was taken off line in February 2008; as such, FRENKEL continuously
       published the libelous statements concerning ALBRITTON from October 2007 until
       February 2008.

21.   At the time he made these statements, FRENKEL was acting in the course and scope of
his employment with CISCO and in his official capacity as Director, Intellectual Property
– Consumer & Emerging Technologies for CISCO.

22.   In fact, FRENKEL had been charged by CISCO with responsibility for management of
the very case in which he alleged ALBRITTON had conspired with the Clerk to
feloniously alter official documents.

23.   FRENKEL published the blog with the knowledge and consent of CISCO, including
NOH, Senior Public Relations Manager, Corporate Communications and YEN, Vice
President Worldwide Intellectual Property.

24.   In fact, FRENKEL published the libelous statements on October 18, 2007, at the express
request and direction of NOH, CISCO's Senior Public Relations Manager and YEN,
CISCO's Vice President, Worldwide Intellectual Property

25.   After publishing the libelous statements on October 18, 2007, NOH, Senior Public
Relations Manager, Corporate Communications, with the knowledge of YEN,
congratulated FRENKEL for making the libelous statements and describing them as
"brilliant."

26.   FRENKEL published the libelous statements about ALBRITTON and referred to the
United States District Court for the Eastern District of Texas as the "Banana Republic of
East Texas" despite the fact that CISCO has availed itself of the United States District
Court for the Eastern District of Texas by filing an intellectual property lawsuit in this
very same district against a foreign competitor.

27.   Before FRENKEL published his false and defamatory statements regarding
ALBRITTON, FRENKEL and his supervisors, including YEN, had actual knowledge

5

that the statements were false, entertained serious doubts as to the truth of the statements, possessed obvious reasons to doubt the veracity of the statements and/or purposefully avoided the truth in publishing the statements.

28. After FRENKEL published his false and defamatory statements regarding ALBRITTON, he and YEN obtained additional information from various sources, which confirmed that the statements were false or, at a minimum raised a reasonable doubt as to the accuracy of the statements; nevertheless, FRENKEL, YEN and NOH did nothing to correct or retract the libelous statements.

29. FRENKEL, YEN, NOH and CISCO have purposefully maximized the dissemination of the libelous statements and the damage inflicted upon ALBRITTON by, among other things, continuously publishing the libelous statements until the blog was taken off line in February 2008, by providing links to the libelous statements including a link entitled "Eric Albritton" and by directly disseminating the blog to reporters and other members of the media.

30. FRENKEL, YEN, NOH and CISCO purposely elected to publish the statements on a web site devoted to intellectual property litigation and focused on the Eastern District of Texas. In so doing, Defendants knew that ALBRITTON concentrated his practice on patent litigation in the Eastern District of Texas and intended that litigants and attorneys would have ready access to the libelous representations.

31. On information and belief, FRENKEL further employed search engine optimization tools and techniques to direct individuals and entities seeking information about ALBRITTON through popular search engines such as "Google" to the defamatory statements. FRENKEL, YEN, NOH and CISCO have continuously published the libelous statements

from at least October 18, 2007 through February 2008. On January 30, 2008, FRENKEL boasted that his site had hosted its one hundred thousandth (100,000th) visitor.

*IV.*

***CAUSES OF ACTION***

*A.*

***DEFAMATION***

32.    In publishing the false and libelous statements described above, FRENKEL, YEN, NOH and CISCO have defamed ALBRITTON in direct violation of Texas law. In particular, FRENKEL, YEN, NOH and CISCO published—either directly or through their agents—false and defamatory statements of "fact" referring directly to ALBRITTON that caused actual damages to ALBRITTON. In so doing, FRENKEL, YEN, NOH and CISCO acted with actual malice, gross negligence, reckless disregard and/ or in the absence of ordinary care for the truth of the statement and ALBRITTON's reputation.

33.    Further, Defendants' wholly false statement that ALBRITTON "conspired" with the officials of the United States District Court to feloniously alter official documents is libelous per se. More particularly, such an outrageous and unsubstantiated statement invariably tends to injure ALBRITTON's reputation and to expose him to public hatred, contempt, or ridicule; expose ALBRITTON to financial injury; and impeach ALBRITTON's honesty, integrity, virtue or reputation thus exposing him to public hatred and ridicule. *See* Tex. Civ. Prac. & Rem. Code Ann. § 73.001 (West 2008).

7

34.     Likewise, Defendants' statements are libelous per se in that they are of such a character
        as to injure ALBRITTON in his office, profession or occupation and directly accuse him
        of the commission of a crime.

## B.

## *NEGLIGENCE*

35.     Both FRENKEL and CISCO failed to use ordinary care in the representation that
        ALBRITTON had conspired with federal officials to alter official court documents.  In
        particular, neither Defendant used ordinary care to ensure that their statements were true
        or acted with reckless disregard for the truth of their allegations.   Likewise, it was
        foreseeable to Defendants that their statements, if false, would reasonably be expected to
        injure ALBRITTON in his reputation and business relations.

## C.

## *GROSS NEGLIGENCE*

36.     ALBRITTON would show the Court that the conduct of CISCO, FRENKEL, YEN and
        NOH rises to the level of gross negligence in this State.   In particular, CISCO,
        FRENKEL, YEN and NOH acted with the specific intent to injure ALBRITTON in his
        reputation and business.

37.     At a minimum, CISCO, FRENKEL, YEN and NOH acted with conscious indifference to
        ALBRITTON's rights, safety or welfare despite an actual, subjective awareness that such
        conduct posed an extreme degree of risk of harm to ALBRITTON's reputation and
        business relations.

38.    Likewise, CISCO directed, authorized, approved and/or ratified the conduct of FRENKEL, YEN and NOH. Moreover, at the time of the defamation, CISCO employed FRENKEL, YEN and NOH in a managerial capacity, and each of them acted in the course and scope of their employment. CISCO, YEN and NOH have done nothing since the publication of the statements to disclaim them or distance themselves from them..

*V.*

***DAMAGES***

39.    As a direct and proximate result of the conduct of FRENKEL, YEN, NOH and CISCO, ALBRITTON has endured shame, embarrassment, humiliation, mental pain and anguish. Additionally, ALBRITTON has and will in the future be seriously injured in his business reputation, good name and standing in the community. He will, in all likelihood, be exposed to the hatred, contempt, and ridicule of the public in the general as well as of his business associates, clients, friends and relatives. Consequently, ALBRITTON seeks actual damages in a sum within the jurisdictional limits of this Court.

40.    Furthermore, ALBRITTON is entitled to exemplary damages from FRENKEL, YEN, NOH and CISCO. ALBRITTON would show the Court that FRENKEL, YEN, NOH and CISCO acted with the specific intent to injure ALBRITTON in his reputation and business. At a minimum, they acted with conscious indifference to the rights, safety or welfare of ALBRITTON with actual, subjective awareness that such conduct posed an extreme degree of risk of harm to the reputation and well-being of ALBRITTON.

41.     Likewise, CISCO is vicariously liable for the outrageous conduct of FRENKEL, YEN
        and NOH in that it directed, authorized, approved and/or ratified the libelous statements.
        In like fashion, CISCO has done nothing since the publication of the statements to
        disclaim them or distance itself from the conduct of FRENKEL, YEN and NOH.

42.     Moreover, at the time of the defamation, CISCO employed FRENKEL as Director,
        Intellectual Property – Consumer & Emerging Technologies and gave him specific
        responsibility for the ESN litigation.    As a result, FRENKEL was employed in a
        managerial capacity and acted in the course and scope of his employment at the time he
        published the defamatory statements.

43.     Likewise, both YEN and NOH acted at all times in the course and scope of their
        professional employment with CISCO in directing the libelous postings. As CISCO's
        Vice President of Intellectual Property Worldwide and its Senior Public Relations
        Manager, respectively, both YEN and NOH at all times acted as vice-principals of the
        corporation.

## *VI.*

### *CONCLUSION & PRAYER FOR RELIEF*

44.     It has long been said in this State that "libel is the sword of the coward" and "anonymity
        the shield of a dastard." Having anonymously attacked the integrity and reputation of
        ALBRITTON and impugned the dignity of the United States District Court for the
        Eastern District of Texas, FRENKEL, YEN, NOH and CISCO should now be called to
        account for their conduct.

10

**WHEREFORE, PREMISES CONSIDERED,** ERIC M. ALBRITTON respectfully prays that CISCO SYSTEMS, INC., RICHARD FRENKEL, MALLUN YEN and JOHN NOH be cited to appear and answer for their actions and that, upon final trial of this cause, he have Judgment against them for the full amount of his actual damages together with such punitive damages as may be necessary to deter Defendants from similar outrage in the future, pre-judgment and post-judgment interest at the highest lawful rate and all costs of this proceeding.

Respectfully Submitted,

**THE LAW OFFICE OF JAMES HOLMES, P.C.**

By: ___/s/_____
    James A. Holmes
    State Bar No. 00784290

605 SOUTH MAIN, STE. 203
HENDERSON, TEXAS 75654
(903) 657-2800
(903) 657-2855 (fax)
jh@jamesholmeslaw.com

**ATTORNEY FOR PLAINTIFF**



11

## *CERTIFICATE OF SERVICE*

     I hereby certify that a true and correct copy of the foregoing Original Complaint has been duly served on all parties via the electronic filing system of the Eastern District of Texas on this, the 16th day of June 2008.

                                _____/s/_____
                                  James A. Holmes

**Exhibit B**

Case 6:08-cv-00089-RAS   Document 55-34   Filed 10/24/2008   Page 2 of 8

IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TEXAS
TYLER DIVISION

| | | |
|---|---|---|
| **ERIC ALBRITTON** | § | |
| | § | |
| **VS.** | § | **CIVIL ACTION NO.  6:08cv89** |
| | § | |
| | § | |
| **CISCO SYSTEMS, INC. and** | § | |
| **RICHARD FRENKEL** | § | |

## ORDER FOR SCHEDULING CONFERENCE

Based on a review of this case and pursuant to Fed. R. Civ. P. 16, the Court enters the following Order.

The attorneys shall appear in Court at **1:30 o'clock p.m.** on the **5th** day of **June, 2008**, for a Scheduling Conference.

Prior to the conference, the parties shall:

A.   Hold a meeting pursuant to Fed. R. Civ. P. 26(f).  At the meeting the attorneys shall prepare a detailed Scheduling Order to be submitted to the Court seven (7) days prior to the Rule 16 Conference.  The Order should be in the form set out in Appendix 1, attached herein, to be signed and entered by the Court at the scheduling conference, if approved.  In preparing the Order, the parties shall include the following mandatory dates:

1.   Jury Trial: **To be announced at Pretrial Conference**

2.   Final Pretrial Conference:  **February 2, 2009**, at 9:00 o'clock a.m.

3.   Submission of Final Pretrial Order following the format in Appendix D

1

Exhibit ___B___

of the Local Court Rules, which shall include and be in lieu of the disclosures required by Fed. R. Civ. P. 26(a)(3), and Submission of Joint Proposed Jury Instructions or Findings of Fact and Conclusions of Law: **January 7, 2009.**

4.   Last date to file dispositive motions or motions challenging expert witnesses: **November 21, 2008**;

B.   Complete the Required Disclosure under Fed. R. Civ. P. 26(a)(1), as modified by this Order, within sixty (60) days of this Order.

<u>Modifications</u>

1.   The scope of the disclosures in Fed. R. Civ. P. 26(a)(1)(A) and Fed. R. Civ. P. 26(a)(1)(B) of "that the disclosing party may use to support its claims or defenses" is modified to read "relevant to the claims or defenses of <u>any</u> party."  The parties are directed to Local Rule CV-26(d) "Relevant to the Claim or Defense," for assistance in determining what information meets this standard.  A party that fails to timely disclose such information will not, unless such failure is harmless, be permitted to use such evidence at trial, hearing or in support of a motion.   A party is not excused from making its disclosures because it has not fully completed its investigation of the case.

2.   A Magistrate Judge is available during business hours to immediately hear discovery disputes and to enforce provisions of the rules.  The

2

hotline is an appropriate means to obtain an immediate ruling on whether a discovery request is relevant to the claims or defenses and on disputes which arise during depositions.  The hotline number is (903) 590-1198.  *See* Local Rule CV-26(e).

3.    The parties are required to provide as part of their disclosures <u>a copy</u> of the documents described in Fed. R. Civ. P. 26(a)(1)(B), as modified by this Order.  By written agreement the parties may agree to alternative methods of production, such as a description by category and location of the documents, exchange of documents in electronic format, or review and copy of disclosure materials at the offices of the parties or their attorneys.

4.    In light of the initial disclosure provisions above, requests for production under Fed. R. Civ. P. 34 will not be allowed, and the parties are directed to conduct document discovery through the process of disclosures.

5.    Documents produced by a party under disclosure requirements or any other method of discovery in this case are presumed to have satisfied the authentication requirements of Fed. R. Evid. 901 unless authenticity is challenged within twenty (20) days of the disclosure/production.

6.    Failure to comply with relevant provisions of the Local Rules, the Federal Rules of Civil Procedure, or this order may result in the exclusion of evidence at trial, the imposition of sanctions by the court,

3

or both. If a fellow member of the Bar makes a just request for cooperation or seeks scheduling accommodation, a lawyer will not arbitrarily or unreasonably withhold consent. However, the court is not bound to accept agreements to extend deadlines imposed by rule or court order. *See* Local Rule AT-3(j).

C.     Be prepared at the Scheduling Conference to discuss the proposed Scheduling Order previously submitted to the Court and any matters mentioned in Fed. R. Civ. P. 16(b-c) and 26(f) that are not included in the proposed Order. Be prepared at the Conference to argue any motions that have been filed twenty (20) days prior to the Conference.

**SO ORDERED.**

**SIGNED this 31st day of March, 2008.**


MICHAEL H. SCHNEIDER
UNITED STATES DISTRICT JUDGE

APPENDIX 1

## IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF TEXAS
## TYLER DIVISION

| | | |
|---|---|---|
| ERIC ALBRITTON | § | |
| | § | |
| VS. | § | CIVIL ACTION NO.  6:08cv89 |
| | § | |
| CISCO SYSTEMS, INC. and | § | |
| RICHARD FRENKEL | § | |

## SCHEDULING ORDER

In accordance with the parties' Rule 26(f) Scheduling Order and the Scheduling Conference held in this action on **June 5, 2008**, the Court enters this case specific order which controls disposition of this action pending further order of the Court.  The following actions shall be completed by the date indicated.

### DEADLINES

_____        Deadline to join additional parties.

_____        Plaintiff's disclosure of expert testimony pursuant to Fed.R.Civ.P. 26(a)(2) and Local Rule CIV-26(b).  Expert report due.

_____        Defendant's disclosure of expert testimony pursuant to Fed. R. Civ. P. 26(a)(2) and Local Rule CV-26(b).  Expert report due.

_____        Deadline  for amended pleadings. (A motion for leave to amend is not necessary before this deadline.)

_____        Discovery deadline.

_____        Mediation completed by this date.  *The Court refers most cases to mediation.   The parties should discuss proposed mediators and timing of mediation*

5

<br>

*prior to the Scheduling Conference and be prepared with a recommendation for the Court.*

*_____(name, address and phone number) is appointed as mediator in this case. The mediator shall be deemed to have agreed to the terms of Court Ordered Mediation Plan of the United States District Court of the Eastern District of Texas by going forth with the mediation in accordance with this order. (See General Order 99-2.)*

_____     Plaintiff to Identify Trial Witnesses.

_____     Defendant to Identify Trial Witnesses.

**November 21, 2008**     Deadline for filing dispositive motions and any other motions that might require a hearing.

**January 7, 2009**     Joint Pretrial Order and Proposed Jury Instructions/Form of Verdict (or Proposed Findings of Fact and Conclusions of Law). Counsel and unrepresented parties are each responsible for contacting opposing counsel and unrepresented parties to determine how they will prepare the Joint Final Pretrial Order (*See* Local Rule CV-16(b)) and Joint Proposed Jury Instructions and Verdict Form (or Proposed Findings of Fact and Conclusions of Law in nonjury cases).

_____     Video Deposition Designation Due. Each party who proposes to offer a deposition by video shall file a disclosure identifying the line and page numbers to be offered. All other parties will have ten days to file a response requesting cross examination line and page numbers to be included. Any objections to testimony must be filed ten days prior to the Final Pretrial Conference. The party who filed the initial Video Deposition Designation is responsible for preparation of the final edited video in accordance with all parties designations and the court's rulings on objections.

_____     Trial Exhibits due.

_____          Objections to Trial Exhibits due.

_____          Motions in limine due

**February 2, 2009**                       Pretrial Conference at 9:00 a.m.
                                                 Date for Jury Trial to be announced
                                                 at the Pretrial Conference.

                                                 Trial is anticipated to last _____ days.


        This Scheduling Order shall not be modified except by leave of Court upon showing of good cause, and shall be binding on all parties.

        **SO ORDERED**.

IN THE UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TEXAS
TYLER DIVISION

ERIC M. ALBRITTON                          §
                                            §
                                            §
v.                                          §
                                            §        C. A. NO. 6:08-CV-00089
CISCO SYSTEMS, INC.,                        §
RICK FRENKEL, MALLUN YEN &                  §
JOHN NOH                                    §

## PROPOSED ORDER GRANTING CISCO SYSTEMS, INC.'S
## MOTION TO COMPEL PRODUCTION OF DOCUMENTS

Came on for consideration Cisco Systems, Inc.'s Motion to Compel Production of Documents ("Motion") in the above-referenced matter. The Court, having considered said Motion, GRANTS the Motion and ORDERS as follows:

It is ORDERED that, within ten days of the signing of this order, Eric M. Albritton shall produce the following documents:

1. Documents evidencing Eric Albritton's damages;

2. Documents evidencing Eric Albritton's mental anguish;

3. A medical authorization for Eric Albritton's medical records;

4. Documents evidencing all of Albritton's new matters or clients since October 16, 2007, including but not limited to engagement letters concerning such clients and matters;

5. Eric Albritton and the Albritton Law Firm's tax returns for 2002 through the present; and

6. Annual and interim balance sheets, income statements, and statements of cash flows for the Albritton Law Firm for 2002 through the present.

ORDER GRANTING CISCO SYSTEMS, INC.'S MOTION TO COMPEL PRODUCTION OF DOCUMENTS

SO ORDERED.

This _____ day of _____, 2008.


_____
JUDGE PRESIDING

ORDER GRANTING CISCO SYSTEMS, INC.'S MOTION TO COMPEL PRODUCTION OF DOCUMENTS