## IN THE UNITED STATES DISTRICT COURT
## WESTERN DISTRICT OF ARKANSAS
## TEXARKANA DIVISION

| | | |
|---|---|---|
| **JOHN WARD, JR.** | § | |
| | § | |
| **Plaintiff** | § | No.  4:08cv4022 JLH |
| | § | |
| **V.** | § | JURY TRIAL DEMANDED |
| | § | |
| **CISCO SYSTEMS, INC.** | § | |
| | § | |
| **Defendant.** | § | |


## PLAINTIFF'S OPPOSITION TO CISCO'S MOTION FOR LEAVE
## TO FILE FIRST AMENDED ANSWER

**TABLE OF CONTENTS**

Page(s)

I.    INTRODUCTION ...................................................................................... 1

II.   FACTUAL BACKGROUND .................................................................... 3

III.  ARGUMENT ............................................................................................ 6

    A.    Cisco's Motion Should Be Denied Because Cisco Cannot
        Meet Fed. R. Civ. P 15(a)'s Standard For Leave To Amend................................ 6

        1.   Cisco Has Unduly Delayed In Seeking Leave to Amend Its Answer.......... 7

        2.   Cisco Has Acted In Bad Faith And With A Dilatory Motive
           In Seeking Leave to Amend Its Answer For A Second Time..................... 9

        3.   Cisco's Prior Amendment Weighs Against Granting
           Leave To Amend.................................................................................. 9

        4.   Allowing Cisco's Proposed Amendment Would Prejudice
           Plaintiff, But Denying The Amendment Would Not Prejudice Cisco........ 10

        5.   Cisco's Proposed Amendment Would Be Futile ........................................ 13

    B.    Cisco's Motion Should Be Denied For Failure To Comply With
        Local Rule 5.5(e) ............................................................................................ 15

V.    CONCLUSION......................................................................................... 15

**TABLE OF AUTHORITIES**

**CASES**                                                                    **PAGE(S)**

Bediako v. Stein Mart,
    354 F.3d 835 (8th Cir. 2004) ........................................................................11

Bell v. Allstate Life Ins. Co.,
    160 F.3d 452 (8th Cir. 1998) ..............................................................7, 8, 10

Doe v. Cassel,
    403 F.3d 986 (8th Cir. 2005) ...............................................................7, 9, 11

Elite Enter., Inc. v. Khela,
    227 F.R.D. 444 (E.D. Va. 2005) .....................................................................8, 13

Goodwin v. Conagra Poultry Co., No. 03-CV-1187,
    2006 U.S. Dist. LEXIS 21965, (W.D. Ark., Mar. 28, 2006) ............................14

Int.'l Brotherhood of Elec. Workers Local Union No. 22, No. 8:05cv523,
    2006 U.S. Dist. LEXIS 59821 .........................................................................11

Lundell Mfg. Co. v. ABC, Inc.,
    98 F.3d 351 (8th Cir.1996) .............................................................................12

McLaurin v. Prater,
    30 F.3d 982 (8th Cir. 1994) ............................................................................6

Monarch Const., Inc. v. Boyd,
    2005 U.S. Dist. LEXIS 40535 (D. Neb., Dec. 27, 2005).....................................10, 13, 15

New Hampshire v. Maine, 532 U.S. 742 (2001) ....................................................14

Thompson-El v. Jones,
    876 F.2d 66 (8th Cir. 1989) ..............................................................7, 8, 9, 13

TVI, Inc. v. Infosoft Tech., Inc.,
    No. 4:06-CV-697, 2007 U.S. Dist. LEXIS ....................................................9

Valor Healthcare, Inc. v. Divinda Pinkerton, No. 08-6015,
    2008 U.S. Dist. LEXIS 95672,  (W.D. Ark., Nov. 17, 2008).........................6, 7

Vitale v. Aetna Cas. & Surety Co.,
    814 F.2d 1242 (8th Cir. 1987) ........................................................................8

Williams v. Little Rock Mun. Water Works,
    21 F.3d 218 (8th Cir. 1994) ..........................................................................13

**LOCAL RULES**

Local Rule 5.5(e) ...................................................................................................................15

Local Rule 7.2(a) .............................................................................................................1, 3, 5

**FEDERAL RULES**

Federal Rule Civil Procedure Rule 15(a)............................................................................6, 7, 13

**ARKANSAS CODE**

Ark.  Code Ann. § 16-55-208 ...........................................................................................................3

Ark. Code Ann. § 16-63-504 ............................................................................................................3

Ark. Code. Ann. §16-63-505 ...........................................................................................................5

Ark. Code Ann. § 16-63-506 ...........................................................................................................3

Ark. Code. Ann. §16-63-507  ..........................................................................................................5

**INTRODUCTION**

Cisco's Motion for Leave to file a First Amended Answer[1] seeks to assert that Texas law applies 19 months after this case was filed, after much of the relevant discovery has been taken, after important discovery motions have been briefed under Arkansas law, after the dispositive motion deadline has passed, on the eve of expert reports, and just three months before trial. Cisco offers no explanation for seeking to change the legal framework of this case at this late date.

Most egregiously, Cisco seeks leave to plead Texas law after it has filed two prior Answers affirmatively asserting Arkansas law. Cisco's original Answer pleaded Arkansas law as the foundation for its affirmative defenses and counterclaims. Cisco amended its Answer to plead specific provisions of the Arkansas Slapp Statute and to insert references to the Arkansas Constitution. Moreover, in every submission it has filed in this Court, Cisco has represented that the applicable law is that of Arkansas and the Eight Circuit Court of Appeals.[2] Now, at the eleventh hour, Cisco would have the Court ignore that this case has been litigated under Arkansas law for nearly two years and allow Cisco to replead its case to assert Texas law at trial.

Cisco never explains its undue delay in seeking to apply Texas law. Instead, it tries to convince the Court that it seeks only to "clarify" its position regarding the applicable law. See D.E. No. 120 at ¶ 1. If by "clarify" Cisco means a "change," or a "do-over," then Cisco seeks to "clarify." Cisco's proposed amendment relegates it prior assertion of Arkansas law to an "alternative" theory and adds for the first time an assertion that Texas's substantive law controls. See Exh. A (redline comparison) at ¶ 63. Under any reasonable definition, that is not a clarification—it is a change. The Court is familiar with Cisco's definition of "clarify"; Cisco made the same disingenuous argument when it sought to "clarify" this Court's waiver Order.

---

[1] Cisco styles its motion as asking for leave to file a "first" amended answer. See D.E. No. 120. To be clear: Cisco has amended its answer once before, and Cisco's motion seeks leave to file a second amended answer. See D.E. Nos. 8 and 71.

[2] Local Rule 7.2(a) requires parties' submissions to the Court cite the "applicable law." Every brief Cisco has filed in this Court has relied on Arkansas law and the law of the Eighth Circuit. Cisco did not assert Texas law applied until the dispositive motions deadline six days before seeking leave to amend. See D.E. No. 114.

1

The Court understood then, as it must now, that when Cisco says "clarify" it means "change." See D.E. No. 72 at 15:16-24.

The timing of Cisco's proposed amendment evidences bad faith and a dilatory motive. Cisco's last Amended Answer added a defense based on a provision of Arkansas's Slapp Statute that may have permitted Cisco to stay these proceedings. Cisco sought to leverage Arkansas's Slapp Statute to bar Ward's efforts to obtain important discovery withheld by Cisco under a claim of privilege. Now that the Court has ordered Cisco's documents produced and discovery is coming to a close, the purpose for which Cisco embraced Arkansas law has run its course. So, on the heels of trial, Cisco wants to amend its Answer to switch to Texas law to claim the benefits of Texas's punitive damages caps. Yet, Cisco cannot seriously contend that it was unaware for the last 19 months that it could argue that Texas law applies.[3] Cisco offers the Court no explanation for its undue delay, and there is none. Cisco cannot be permitted to manipulate its pleadings to apply one state's law for discovery, and another for trial.

Allowing Cisco's proposed amendment would be highly prejudicial to Plaintiff. If Cisco were permitted to manipulate the legal framework of this case, Ward would be forced to reevaluate his discovery and trial plans, serve additional written discovery, amend expert disclosures, refile his motion for summary judgment, all the while he is trying to take depositions delayed by Cisco's failure to comply with the Court's wavier Order, serve expert reports and prepare for trial. On the other hand, denying Cisco's motion will not prejudice Cisco. Cisco will still have the same defenses to assert under the Arkansas law that it embraced until two weeks ago.

Moreover, given Cisco's affirmative assertion of Arkansas law in this case, its amendment is futile because it cannot withstand a judicial estoppel challenge.

---

[3] Plaintiff disagrees that Texas law applies, but that issue will be addressed in Plaintiff's Response to Cisco's Motion for Summary Judgment and is not critical to the Rule 15(a) issue addressed here.

**FACTUAL BACKGROUND**

On March 13, 2008, Ward filed his original Complaint against Cisco.  See D.E. No. 1.

Ward's original Complaint alleged a cause of action for defamation.

On April 8, 2008, Cisco filed its original Answer to Ward's Complaint.  See D.E. No. 8.

Cisco's Answer pleaded affirmative defenses and counterclaims pursuant to Arkansas law.

Cisco's Answer alleged that Cisco was immune from liability pursuant to Ark. Code Ann § 16-

63-504 and the Arkansas Constitution (¶ 25), that Ward's claim should be stricken for failure to

comply with Ark. Code § 16-63-506 (¶ 26), and that any punitive damages awarded to Ward

were subject to the cap set forth in Ark. Code Ann. § 16-55-208 (¶ 34).  Cisco's Answer did not

plead Texas law or assert that Texas law applied to Ward's cause of action.  See D.E. No. 8.;

Exh. B (highlighted version of Cisco's original Answer).

On April 8, 2008, Cisco also filed a Motion to Dismiss for Improper Venue, or in the

Alternative, Motion to Transfer Venue.  See D.E. No. 4.

On April 24, 2008, Ward filed his Response to Cisco's Motion to Transfer wherein he

stated that he may assert claims unique to Arkansas law.  See D.E. No. 15 at 8.  Although choice

of law is a relevant factor underlying a transfer of venue analysis, Cisco did not argue that Texas

law applied.  See D.E. No. 21.

During February and March 2009, both parties filed numerous briefs relating to whether

Cisco had waived privilege by asserting reliance on communications with counsel.  This Court's

Local Rule 7.2(a) requires that all motions filed with the Court include a brief citing the

"applicable law."  Cisco's briefs relied on Arkansas law.  See D.E. No. 63 at 10-16 (citing 8th

Circuit law for malice, privilege and sanctions issues) and 67 at 4-6 (citing 8th Circuit cases,

Arkansas Slapp Statute and Arkansas Constitution).  Plaintiff argued that Cisco's assertion of the

Arkansas Slapp Statute was an affirmative defense for purposes of the waiver issue before the

Court.  See D.E. No. 64 at 13-14.  Cisco did not dispute Plaintiff's argument that it had

affirmatively asserted Arkansas law and in fact expressly invoked the Arkansas Slapp Statute to

3

argue its cause.  See D.E. 67 (generally not disputing reliance on Arkansas law) and at 6 (invoking Arkansas Slapp Statute for its argument).

On April 9, 2009, Cisco advised Plaintiff that it would seek to file an Amended Answer. See Exh. D (email from C. Parker to N. Patton).  Cisco's Amended Answer sought to further specify Cisco's reliance on Arkansas law by including additional provisions of the Arkansas Slapp Statute and references to the Arkansas Constitution.  See Exh. C (highlighted version of Cisco's Amended Answer). Interestingly, on the same day Cisco told Plaintiff it would seek to amend to specifically plead the Arkansas statute in this case, Cisco was working on the jury instructions in the *Albritton v. Cisco* case, which were based on Texas law.  See Exh. E.  And, long before Cisco amended its Answer in this case it filed an Answer in the Albritton case asserting Texas law.  Thus, if Cisco had wanted to plead Texas law in this case, it could have easily done so when it amended its Answer the first time.  Instead, Cisco amended its Answer to include additional references to Arkansas law.  See Exh. C.

In April of 2009, Plaintiff and Cisco agreed that Plaintiff would not oppose Cisco's motion to file an Amended Answer, so long as Cisco did not oppose Plaintiff filing an Amended Complaint.  See Exh. F.  Plaintiff provided Cisco with a copy of his proposed Amended Complaint, which added new claims under Arkansas law for the torts of false light, invasion of privacy, and outrage.  Cisco was fully aware that Ward would be adding additional causes of action under Arkansas law before it agreed to Ward's Amended Complaint.[4]  On June 2, 2009, Plaintiff filed his Amended Complaint including his additional Arkansas-based causes of action. See D.E. No. 66.

On June 6, 2009, Cisco filed its Amended Answer.  See D.E. No. 71.  Cisco's Answer did not assert that Ward's newly-pleaded claims were barred under Texas law.  See id.  Instead, Cisco replied to Ward's new Arkansas-based causes of action and then pleaded additional

---

[4] Cisco has since tried to attack Plaintiff's causes of action for the tort of invasion of privacy and the tort of outrage.  But Cisco's conduct is telling.  Cisco filed a motion to dismiss Ward's Arkansas-based claim citing Arkansas law (because Cisco's motion on that issue was earlier in the case), never mentioning Texas law.  See D.E. No. 70.  Then, at the summary judgment stage, Cisco argued that Texas law applied.  See D.E. No. 114.

4

affirmative defenses and counterclaims based on Arkansas law.  <u>See</u> D.E. No. 71.  Specifically,

Cisco's Amended Answer newly pleaded Ark. Code. Ann. 16-63-507; a code provision that may

have allowed Cisco to stay all pending hearings and motions in this case.[5]  <u>See</u> Exh. C at ¶ 61.

The same day Cisco filed its Amended Answer it also filed a motion to dismiss all of

Ward's causes of action, claiming they failed "to meet the requirements of <u>Arkansas</u> law."  <u>See</u>

D.E. No. 70 at 5.  Cisco's Motion to Dismiss did not argue that Texas law applied to any of

Ward's causes of action.  Cisco asked this Court to stay all pending motions or hearings pending

its motion to dismiss pursuant to Ark. Code. Ann. §16-63-507—the very ***Arkansas Statute*** that

Cisco amended its Answer to plead.  Cisco's Motion and Reply relied on case law from the

Eighth Circuit and from Arkansas Courts.  <u>See</u> D.E. No. 70 at 2-4; D.E. No. 74; D.E. No. 82 at 7;

Local Rule 7.2(a).  Cisco also argued that Ward was required to verify his Amended Complaint

under Ark. Code. Ann. §16-63-505, claiming that the code provision was controlling substantive

law[6] that "clearly applied" to this case.[7]  <u>See</u> D.E. No. 70 at 5.

The discovery deadline in this case was October 1, 2009.[8]

On October 5, 2009, Cisco sent a letter to Plaintiff's counsel, again arguing that Arkansas

substantive law controlled Ward's claims.[9]  <u>See</u> Exh. H.

---

[5] The discovery issue before the Court at the time was Ward's motion seeking Cisco's compliance with the Court's March 30, 2008 waiver Order and for sanctions.  The Court held a hearing on Ward's motion the following week.  <u>Compare</u> D.E. No. 70 at 8 with D.E. No. 72.

[6] Cisco argued that the Arkansas Statute was not "merely procedural; it creates substantive rights such as the right to dismissal, compensatory damages and attorney's fees."  <u>See</u> D.E. No. 71 at 6.  Cisco's motion alleged that Arkansas law controlled Ward's claim and that Ark. Code. Ann. § 16-63-506 imposed on Plaintiff a substantive requirement to verify his Complaint or risk having it dismissed.  <u>See</u> D.E. No. 71 at 6-7.  Here too, Cisco embraced and relied on substantive Arkansas law for its motion.

[7] Cisco sought to apply Arkansas law to preserve its right to seek attorney's fees under Ark. Code. Ann. §16-63-506(b)(1).

[8] The discovery deadline was stayed by the Court in light of Cisco's Writ of Mandamus to the Eight Circuit Court of Appeals on the privilege waiver issue.  <u>See</u> D.E. No. 104.  Cisco opposed extending the discovery deadline.  <u>See</u> D.E. No. 103.  If Cisco had prevailed, discovery in this case would have ended before Cisco disclosed its intent to advocate for Texas law.

[9] Cisco was insistent that Ward verify his Complaint, repeatedly asking Ward for verification under Arkansas law, although Plaintiff believed that requirement was procedural and not applicable in Federal Court.  <u>See</u> Exh. G (June 11, 2009 email string); Exh. F (April 29, 2009 email from C. Babcock concerning verification).  To avoid burdening the Court with this issue, Ward filed the verification demanded by Cisco.  <u>See</u> D.E. No. 73.

On October 13, 2009, both parties filed motions for summary judgment in accordance with the Court's Scheduling Order and the deadline for dispositive motions.  Ward's motion for summary judgment relied on Eighth Circuit authority in arguing that Ward is a private figure plaintiff.  See D.E. No. 116.  Cisco's Motion for Partial Summary Judgment, however, argued for the first time in the 19 months this case has been pending, that Texas law governs Ward's claims.  See D.E. No. 114.

On October 16, 2009—the last day before the deadline for amending pleadings—Cisco informed Plaintiff that it was "going to file a motion to amend to clarify its position that Texas law applies and to include more specific citations to Texas law.  For instance, where [Cisco's former Complaint sites] applicable state law caps, [Cisco will] be amending to include the Texas statute."  See Exh. I (10/16/09 email from C. Parker).  Cisco's proposed amendment pleads Arkansas law as an "*alternative*" theory of defense, including the Arkansas code sections that Cisco specifically amended to include in its prior Answer.  See Exh. A (redline of Cisco's proposed amendment) at ¶ 61.

Expert Reports are due in eight days, on November 10, 2009.  See D.E. No. 47.[10]

Trial in this case is set for February 8, 2010.  See D.E. No. 89.

**ARGUMENT**

### A.  Cisco's Motion Should Be Denied Because Cisco Cannot Meet Fed. R. Civ. P 15(a)'s Standard For Leave To Amend

The decision to allow or deny an amendment is a discretionary matter for the district court to resolve based on the facts of each case.  See Valor Healthcare, Inc. v. Divinda Pinkerton, No. 08-6015, 2008 U.S. Dist. LEXIS 95672, *2 (W.D. Ark., Nov. 17, 2008), attached as Exh. J, citing McLaurin v. Prater, 30 F.3d 982, 985 (8th Cir. 1994).

A party seeking leave to amend must show that it has met the standards of Federal Rule Civil Procedure Rule 15(a).  Pursuant to Rule 15(a), when an amendment is not a matter of course, leave to amend should be granted when "justice so requires."  Fed. R. Civ. P. 15(a)(2).

---

[10] This deadline likely will have passed before the Court rules on Cisco's motion.

"However, there is no absolute right to amend." Doe v. Cassel, 403 F.3d 986, 991 (8th Cir. 2005).  Proper justification for denying a motion to amend includes:  undue delay, bad faith, or dilatory motive on the part of the movant, repeated failures to cure deficiencies by prior amendments, undue prejudice to the non-moving party, or futility of the amendment.  See id.; see also Bell v. Allstate Life Ins. Co., 160 F.3d 452, 454 (8th Cir. 1998).  "Any prejudice to the nonmovant must be weighed against the prejudice to the moving party by not allowing the amendment." Bell, 160 F.3d at 454.

Cisco's motion should be denied because Cisco cannot make the required showing under Rule 15(a).  Cisco's proposed amendment demonstrates the type of undue delay, bad faith and dilatory motive that courts in this Circuit have routinely found preclude amendment.  Moreover, Cisco's proposed amendment would be prejudicial to Plaintiff and would be futile given its prior affirmative assertion of Arkansas law.  Thus, this Court should deny Cisco's motion.

### 1.      Cisco Has Unduly Delayed In Seeking Leave to Amend Its Answer[11]

When a considerable amount of time has passed between the filing of the originating complaint and the request for an amendment, courts require the movant to provide some valid justification for the tardiness of its motion.  See Thompson-El v. Jones, 876 F.2d 66, 67 (8th Cir. 1989).

There is no reasonable dispute that Cisco's proposed amendment is tardy.  Cisco's motion comes 19 months after this case was filed, after discovery would have closed but for Cisco's Writ of Mandamus to the Eighth Circuit to avoid producing documents the Court twice ordered it to produce, after much discovery in this case has been taken, after many discovery motions have been briefed under Arkansas law, after the dispositive motions deadline; on the eve of expert reports, and three months before trial.  Cisco's delay weighs against granting its motion.  See Valor Healthcare, 2008 U.S. Dist. LEXIS 95672, *2-3 (delay of seven months after

---

[11] Delay alone is an insufficient justification for denying an amendment; prejudice to the nonmoving party must also be shown.  Bell, 160 F.3d at 454.  Here, Plaintiff's motion does not rest on delay alone, but also alleges bad faith and dilatory motive and that the amendment is futile.  In any event, as discussed below, Plaintiff has also demonstrated sufficient prejudice for this Court to deny Cisco's motion.

case started and 15 months after the defamatory statements were published weighed against granting leave to amend); see also Bell, 160 F.3d at 453 (denying amendment sought four days after dispositive motions deadline); Thompson-El, 876 F.2d at 68 (considering fact that amendment was sought after the case had been pending for 18 months, after date originally set for completion of discovery, and after summary judgment motions were filed).  There is no reason Cisco could not have brought its proposed amendment before now, and its failure to do so means that it must, at a minimum, explain why it waited to the close of this case to bring its proposed amendment to the Court.

Cisco offers no justification for the tardiness of its amendment.  Cisco does not claim that new facts have come to light necessitating an amended answer, or that it recently uncovered Texas law.  See D.E. No. 120; Elite Enter., Inc. v. Khela, 227 F.R.D. 444, 447 (E.D. Va. 2005) (delay is unwarranted and manifest where movant knew of claims from outset of litigation and amendment was not necessitated by later obtained facts).  In truth, there are no new facts; the disputed fact issues have been the same for nearly two years.  Nor, did Cisco just stumble upon Texas law—it has been litigating the *Albritton v. Cisco* case under Texas law for nearly two years, all the while asserting Arkansas law in this case.  Any attempt by Cisco to assert Texas law was ripe when Ward filed his original Complaint on March 13, 2008, and the choice of law issue has remained ripe for amendment for the following 19 months.  Cisco cannot dispute that it could have "clarified" its position at any time since Ward filed this case.  Therefore, Cisco has unduly delayed its seeking its proposed amendment.  See Bell, 160 F.3d at 454 (denying amendment in part where only explanation for untimeliness of the amendment was movant's lack of due diligence); Vitale v. Aetna Cas. & Surety Co., 814 F.2d 1242, 1252 (8th Cir. 1987) (affirming district court's denial of motion to amend where motion was made two months before trial and without explanation as to reason for delay).

8

**2.      Cisco Has Acted In Bad Faith And With A Dilatory Motive In Seeking Leave to Amend Its Answer For A Second Time**

The timing of Cisco's motion bears an indicia of bad faith, and its failure to explain in its motion its decision not to seek to apply Texas law in March of 2008 reinforces that conclusion. See TVI, Inc. v. Infosoft Tech., Inc., No. 4:06-CV-697, 2007 U.S. Dist. LEXIS 89261, at *8-9 (E.D. Mo., Dec. 4, 2007), attached as Exh. K, citing Thompson-El, 876 F.2d at 67-68 (inferring bad faith where party failed to amend as soon as it had enough information to meet the Fed. R. Civ. P. 8 standard).  Cisco could have pleaded Texas law in its first Answer, or in its Amended Answer, or made an argument under Texas law in any of the motions it has filed with the Court. It didn't, and it offers the Court no justification for its failure to raise this issue before now. Cisco's decision to embrace Arkansas law during discovery was a tactical one.  Cisco amended its Answer to specifically plead the Arkansas Slapp Statue and then moved the Court to stay discovery in this case based on that statute.  See D.E. No. 70 at 8.  Cisco hoped to leverage Arkansas law to preclude Ward from discovering documents that Cisco was claiming as privileged and was fighting not to produce.  Now that discovery is coming to a close, and Arkansas law has not provided the benefit Cisco hoped, it is ready to jettison Arkansas law for Texas law.  Cisco's decision to wait until the end of the case to seek to apply Texas law—and to do so after attempting to use Arkansas law to deprive Ward of discovery—evidences bad faith and a dilatory motive for its proposed amendment.

**3.      Cisco's Prior Amendment Weighs Against Granting Leave To Amend**

A court is justified in denying a motion for leave to amend where the moving party has failed to cure the alleged deficiencies in amendments previously allowed.  See Doe, 403 F.3d at 991.  Here, the parties agreed to unopposed amended pleadings that were filed in June of 2009. See Exh. F; D.E. Nos. 62, 66, 71.  Cisco's Amended Answer did not plead Texas law, but rather specifically pleaded additional provisions of Arkansas law.  See Exh. C.  Cisco's prior opportunity to amend once before and its failure to assert Texas law in its prior amendment counsels against allowing Cisco's late amendment now.

9

**4.      Allowing Cisco's Proposed Amendment Would Prejudice Plaintiff, But  Denying The Amendment Would Not Prejudice Cisco**

Before this Court can permit the amendment Cisco seeks, it must weigh the prejudice to Ward in granting the amendment against the prejudice to Cisco if the amendment were denied. Bell, 160 F.3d at 454.  Cisco's proposed amendment would cause undue prejudice to Ward by forcing him to reevaluate his entire case and make across-the-board revisions based on Texas law that has never before been at issue in this case.

It is axiomatic that a litigant begins preparing a case by examining the applicable substantive law, developing a discovery plan based on that law, and then executing that plan to gather evidence needed to prove his case at trial.  Cisco's proposed amendment strikes at the very core of case preparation by changing the legal framework upon which the discovery in this case has been built.  Ward has focused his discovery on proving the elements of his causes of action under Arkansas law.  If Cisco had argued that Texas law applies when this case was filed, or even in June when it amended its Answer to assert the stay provision of the Arkansas Slapp Statute, perhaps Ward would have had time to prepare for and to rebut Cisco's arguments. However, with only three months remaining to trial, and with Cisco's motion for leave to file not even ripe for consideration for several weeks as the parties' finish briefing the issue, Ward will not have time to revaluate—let alone remake—his case between the time Cisco's proposed Second Amended Answer is filed and trial.

Importantly, this is not a case where Cisco is seeking to amend to include facts newly uncovered during discovery or even to add additional claims under the law it has already pleaded.  See Monarch Const., Inc. v. Boyd, 2005 U.S. Dist. LEXIS 40535, at *5-6 (D. Neb., Dec. 27, 2005) (noting that movant did not demonstrated need to amend based on newly discovered facts), attached as Exh. L.  Instead, Cisco seeks to interject new legal issues that differ from those that have been litigated for the prior 19 months.  On these facts, courts have had little difficulty finding that the proposed amendments should not be allowed.  See Bell, 160 F.3d at 454 (denying leave to amend where amendment would interject different legal issues

10

than those alleged in the prior pleading causing nonmoving party to evaluate its case under newly asserted law); Bediako v. Stein Mart, 354 F.3d 835, 840-41 (8th Cir. 2004) (affirming trial court's refusal to allow amendment that would raise new legal theories a year after the lawsuit was filed); Doe, 403 F.3d at 991 (prejudice shown where amendment would hamper non-moving party's ability to mount an effective defense to new claim).

The fact that substantial discovery in this case has already been taken by Plaintiff further demonstrates the prejudice to Ward in allowing Cisco to remake its case at this late date. See Int.'l Brotherhood of Elec. Workers Local Union No. 22, No. 8:05cv523, 2006 U.S. Dist. LEXIS 59821, *4 (D. Neb., Aug. 22, 2006), attached as Exh. M. Ward has served all of his allotted interrogatories and has served document requests and requests for admission seeking to prove his case under Arkansas law. If Cisco is permitted to change the law that applies to Ward's claims, Ward will not have the opportunity to serve additional written discovery to ascertain the facts and legal basis of Cisco's claims, including contention interrogatories. The prejudice to Ward cannot be mitigated. Even if Ward were permitted to serve additional written discovery today, he would not receive Cisco's responses until after key witnesses have been deposed, summary judgment briefs have been filed, and after expert reports have been served. Moreover, Plaintiff would have no mechanism by which to force Cisco to comply with Ward's discovery requests. Cisco would have 30 days to respond to any discovery Plaintiff served, meaning that Plaintiff would not receive responses until two months before trial. Should there be any dispute concerning Cisco's responses—which is likely given the parties' past history—Plaintiff will have run out of time to raise the issue with the Court. See D.E. No. 47 ¶ 2(a). There is no way for Ward to draft and serve additional discovery, receive responses, and force Cisco's compliance with Plaintiff's requests in time to make use of that discovery at trial. Moreover, Plaintiff would have to undertake all of these efforts at the same time he is preparing pretrial submissions and readying his case for trial.

Ward also will be prejudiced by Cisco's belated amendment because the dispositive motions deadline has already passed. See Int'l Brotherhood, 2006 U.S. Dist. LEXIS 59821, at

*4 (prejudice where summary judgment deadline as passed).  Ward filed a motion for summary

judgment asking the Court to find as a matter of law that he is a private figure plaintiff.  See D.E.

No. 116.  Ward's motion rested on Arkansas law.  See id. at 1 (citing Lundell Mfg. Co. v. ABC,

Inc., 98 F.3d 351, 356 (8th Cir.1996) for Eighth Circuit's private versus public figure test).  If

Cisco's amendment is permitted, Ward's summary judgment motion will be undermined because

it will have sought relief under the wrong legal standard.  Thus, Plaintiff will be forced to refile

his motion for summary judgment thereby delaying the relief he has requested.

Ward will also be prejudiced because he has already invested substantial time and

expense in developing his case to make the required proof under Arkansas law.  In addition to

Plaintiff's discovery efforts, he has retained an expert witness to address the requirement under

Arkansas that he prove harm to his reputation.  See Int.'l Brotherhood, 2006 U.S. Dist. LEXIS

59821, at * 4 (prejudice found where Plaintiff had already retained an expert witness and expert

reports had been prepared).  With expert reports due in one week, and with this issue briefed but

not resolved, Ward must assume that the Arkansas law that has governed this case for the prior

19 months will continue to apply.  Thus, he will move forward with his expert disclosures under

Arkansas law.  If Cisco's amendment is permitted after expert reports are served, Ward will be

prejudiced because he will be forced to ask his expert witnesses to resubmit expert reports

applying Texas law.

Finally, permitting Cisco's amendment will prejudice Plaintiff by forcing him to divert

trial resources to address issues raised in Cisco's amendment that could have been raised 19

months ago.  Cisco's refusal to comply with this Court's discovery order has put Plaintiff in the

position of taking depositions right up to the time pretrial preparation will begin.  Now, when

Ward needs to be focused on taking depositions, serving expert reports, and preparing pretrial

filings, Cisco would have him stop and rework his entire case plan to accommodate Cisco's

proposed late amendment.  Plaintiff is not a big multinational company with vast recourses like

Cisco.  His resources are limited and must be used efficiently.  To keep his trial date, Plaintiff

will be forced to devote additional resources to addressing an amendment that Cisco could have made at the outset of this case.

Ward should not be penalized for Cisco's shenanigans.  Plaintiff opposes any effort to delay trial as the trial date has been moved once already to account for Cisco's failure to follow this Court's discovery Order.  Plaintiff should not be forced to wait another six months to a year to publically clear his name because Cisco waited to assert a legal argument that has been at its disposal from day one of this litigation.  See Williams v. Little Rock Mun. Water Works, 21 F.3d 218, 224-25 (8th Cir. 1994) (prejudice found where discovery deadline had previously been extended and trial date continued and amendment would result in further delay of trial); Thompson-El, 876 F.2d at 68 (prejudice found where amendment would likely necessitate additional discovery and further delay); Elite Enter., 227 F.R.D. at 448 (prejudice found where insertion of new legal theories two months before trial would leave little time for discovery of the new claims or preparation for trial); Monarch Const., 2005 U.S. Dist. LEXIS 40535, at *6 (prejudice found where adding new legal claim would delay a case that had already been pending for a year).

While the prejudice to Plaintiff is great, there is no prejudice to Cisco if the Court denies its proposed amendment.  Cisco has already pleaded the same affirmative defenses and counterclaims pursuant to Arkansas law.  In fact, its proposed amendment keeps Cisco's Arkansas defenses in tact as an "alternative theory" of defense.  See Exh. A at ¶ 63 and at pgs. 30-33.  Denying Cisco's motion does not deprive Cisco of any defense—it only means that Cisco will be required to rely at trial on the same legal theories it has been happy to advance for the last 19 months.  The lack of prejudice to Cisco supports denying its motion.

### 5.    Cisco's Proposed Amendment Would Be Futile

Cisco's motion should also be denied under Rule 15(a) because the proposed amendment would be futile.  Should this Court permit Cisco to amend, Plaintiff would respond to Cisco's amendment with a claim that Cisco's pleading is barred by judicial estoppel (also known as

estoppel by inconsistent positions).  On this record, Plaintiff's judicial estoppel argument would prevail and Cisco's amendment would be stricken.

Judicial estoppel is an equitable remedy fashioned "to protect the integrity of the judicial process by prohibiting parties from deliberately changing positions according to the exigencies of the moment."  New Hampshire v. Maine, 532 U.S. 742, 749-50 (2001) (internal citations and quotations omitted).  "[T]he doctrine of judicial estoppel applies when there has been a deliberate manipulation of the judicial process which can be inferred from the record."  Goodwin v. Conagra Poultry Co., No. 03-CV-1187, 2006 U.S. Dist. LEXIS 21965, at *7 (W.D. Ark., Mar. 28, 2006), attached as Exh. N.  In deciding whether to apply judicial estoppel, courts in this district consider:  (1) whether the present position is "clearly inconsistent" with an earlier position taken by the party; (2) whether the party succeeded in persuading the court to accept the earlier position; and (3) whether the party's conduct can be excused as inadvertent.  See id.

Judicial estoppel bars Cisco's proposed amendment.  Cisco's proposed amendment claiming that Texas law controls is clearly inconsistent with its two prior Answers asserting Arkansas law and with the briefs it has filed in this Court citing Arkansas and Eighth Circuit law as controlling authority.  In every instance Cisco has made a representation of law to the Court, it has cited Arkansas law or Eighth Circuit law, and continued to do so right up to the dispositive motions deadline in this case.  This Court has accepted Cisco's pleadings and has resolved key disputes in this case pursuant to Arkansas and Eight Circuit law.  On this record, it is not difficult to infer that Cisco has undertaken a deliberate manipulation of the judicial process and its conduct is not the result of inadvertence or excusable neglect.  Thus, judicial estoppel should bar Cisco's proposed amendment.  See id.

Accordingly, Cisco's amendment should be denied as futile because its amended pleading would only be later stricken under the doctrine of judicial estoppel.

14

**B.** **Cisco's Motion Should Be Denied For Failure To Comply With Local Rule 5.5(e)**

Local Rule 5.5(e) requires a party seeking to amend a pleading to set forth in its motion "a concise statement setting out what exactly is being amended in the new pleading - e.g. added defendant X, adding a claim for X, corrected spelling."  Cisco's motion does not comply with the Local Rule.  See D.E. No. 120.  If Cisco had included the information required, it would be obvious that Cisco's proposed amendment seeks to recast Cisco's prior reliance on Arkansas law as an "alternative" legal theory and replace it with allegations that Texas's law controls after Cisco had advanced Arkansas law for 19 months.[12]  Cisco's failure to comply with the Local Rule is sufficient in and of itself to deny Cisco's motion.  See Monarch Const., 2005 U.S. Dist. LEXIS 40535, at *4.

## CONCLUSION

For the foregoing reasons, Ward respectfully requests that the Court deny Cisco's motion for leave to file a Second Amended Answer.

Respectfully Submitted,

Nicholas H. Patton (SBN: 63035)
Patton, Tidwell & Schroeder, LLP
4605 Texas Boulevard
Texarkana, Texas 75503
903.792.7080 / 903.792.8233 (Fax)

Patricia L. Peden
LAW OFFICE OF PATRICIA L. PEDEN
1316 67th Street
Suite 6
Emeryville, CA 94608
Telephone: 510-268-8033
Email: ppeden@pedenlawfirm.com

---

[12] Nor does Cisco provide the Court with a redlined Amended Answer from which the Court can discern with specificity what Cisco seeks to change in its pleading.  Plaintiff asked Cisco for Word versions of its documents and has prepared a redline version of Cisco's proposed amendment for the Court.  See Exh. A.

15

James A. Holmes
Texas Bar No. 00784290
THE LAW OFFICE OF JAMES HOLMES, P.C.
635 South Main, Suite 203
Henderson, Texas 75654
903.657.2800 / 903.657.2855 (Fax)

ATTORNEYS FOR PLAINTIFF

## CERTIFICATE OF SERVICE

I hereby certify that on 2nd day of November, 2009 I electronically filed the foregoing with the Clerk of Court using the CM/ECF System which will send notification of such filing to the following:

Richard E. Griffin            Attorney for Defendant Cisco Systems, Inc.
Charles Babcock
Crystal Parker
Kurt Schwarz
JACKSON WALKER, LLP
1401 McKinney
Suite 1900
Houston, Texas 77010

Nicholas H. Patton