IN THE UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF ARKANSAS
TEXARKANA DIVISION

| | | |
|---|---|---|
| JOHN WARD, JR. | § | |
| | § | |
| | § | C.A. NO. 08-4022 |
| v. | § | JURY TRIAL DEMANDED |
| | § | |
| CISCO SYSTEMS, INC | § | |

## CISCO SYSTEMS, INC.'S ANSWER TO PLAINTIFF'S
## FIRST AMENDED COMPLAINT AND COUNTERCLAIM

TO THE HONORABLE COURT:

Cisco Systems, Inc. ("Cisco") files this Answer to Plaintiff's First Amended Complaint ("Complaint") filed by Plaintiff John Ward, Jr. ("Ward" or "Plaintiff") and Counterclaim subject to Cisco's Motion to Dismiss for Failure to State a Claim Upon Which Relief May be Granted[1] and without waiving same, states as follows.

In answering, Cisco will cite the Plaintiff's allegations and follow with its response. Cisco then pleads its affirmative defenses, other defensive matters, and counterclaim.

### THE PARTIES

1.      Plaintiff is an individual who has resided in Gregg County, Texas at all times relevant to the causes of action alleged in this pleading.

**RESPONSE:**

Admitted.

2.      Defendant Cisco Systems, Inc. ("Cisco") is a corporation organized and existing under the laws of the State of California, with its principal place of business in San Jose, California.  It may be served with process by delivering a copy of the complaint to its registered agent, Prentice Hall Corporation System, 300 Sprint Building, Suite 900, Little Rock, AR 72201.

---

[1] Cisco also files this answer and counterclaim subject to his Motion to Dismiss for Improper Venue, or in the Alternative, Motion to Transfer Venue.  The Court has already ruled on this issue, and we keep this for appellate purposes only.

1

**RESPONSE:**

Admitted.

## JURISDICTION

3.      Subject matter jurisdiction over this dispute is conferred upon this Court by 28 U.S.C. § 1332.

**RESPONSE:**

Admitted.

4.      This Court has jurisdiction over Cisco because Cisco is subject to general jurisdiction in the State of Arkansas. Cisco has minimum contacts with the State of Arkansas such that this Court's exercise of personal jurisdiction over Cisco will not offend traditional notions of fair play and substantial justice.

**RESPONSE:**

Admitted that this Court has jurisdiction over Cisco.

## VENUE

5.      Venue in this district is proper pursuant to 28 U.S.C. § 1391.

**RESPONSE:**

Denied.

## FACTUAL BACKGROUND

6.      Plaintiff has resided in and practiced law in the State of Texas since 1995. Prior to the defamatory remarks by the Defendant, the Plaintiff enjoyed an excellent reputation. The Plaintiff's reputation for integrity and sound business judgment had earned him an AV rating by his peers. Plaintiff has enjoyed a sterling reputation for ethical and responsible representation of clients. Neither the State Bar of Texas nor any state or federal court has ever taken any disciplinary action against Plaintiff. In addition, Plaintiff's license to practice law has never been suspended or revoked for any reason.

**RESPONSE:**

2

Cisco is without knowledge or information sufficient to form a belief as to the truth of the averments in paragraph 6 and therefore they are denied.

7.     In furtherance of his practice of law, on October 16, 2007, Plaintiff filed a patent infringement suit against Cisco on behalf of ESN, LLC ("ESN").

**RESPONSE:**

Admitted that Plaintiff filed a patent infringement suit against Cisco on behalf of ESN, LLC ("ESN") but denied that such suit was filed on October 16, 2007.

8.     The *ESN v. Cisco* litigation is a private intellectual property dispute between two business entities, ESN and Cisco.

**RESPONSE:**

Admitted that the *ESN v. Cisco* litigation is an intellectual property dispute between Cisco and ESN, which are both business entities.  Cisco is unable to determine what is meant by referring to the dispute as "private" and therefore denies the averment.

9.     In October of 2007, Plaintiff was local counsel for ESN in the *ESN v. Cisco* litigation.

**RESPONSE:**

Admitted that Plaintiff was one of ESN's counsel.  In all other respects, denied.

10.     United States Patent Number 7,283,519 ("the `519 Patent"), asserted by ESN against Cisco, was duly issued and made available electronically by the United States Patent and Trademark Office at 12:01 a.m., Eastern Daylight Time, on October 16, 2007.

**RESPONSE:**

Cisco admits that ESN claimed that Cisco infringed United States Patent Number 7,283,519 ("the `519 Patent") and that the Patent was issued by the United States Patent and Trademark Office on October 16, 2007.  Cisco is without knowledge or information sufficient to form a belief as to the truth of the remaining averments in paragraph 10 and therefore denies the same.

3

11.     Beginning November 1, 2006, attorneys in the Eastern District of Texas were permitted to electronically file complaints. In October of 2007, the procedure for electronically filing a complaint in the Eastern District of Texas required counsel to email a Civil Cover Sheet (JS44), a prepared summons, and a list of parties in the exact order they are listed on the complaint to the appropriate court clerk email address. The clerk's office used the information provided by counsel to create a shell case file. The Court clerk would later contact counsel via email with a case number. After receiving the case number from the clerk's office, counsel was required to pay the filing fee and file the complaint (or other initiation document) within 24 hours.

**RESPONSE:**

Admitted.

12.     In October of 2007, the Court's procedure for opening a case file was explained on the Court's website and in a document entitled "How to Electronically File A New Case." That document was available and accessible to Cisco on October 17th, 18th and 19th of 2007. The "How to Electronically File A New Case." document has been publically available to Cisco at all times subsequent to October of 2007, and remains publically available on the Internet by accessing the internet archive files for the Eastern District of Texas's official website.

**RESPONSE:**

Cisco is without knowledge or information sufficient to form a belief as to the truth of the

averments in the first two sentences of paragraph 12 and therefore it is denied. Cisco has been

unable to locate a document titled "How to Electronically File A New Case" on the Eastern

District of Texas's official website and therefore denies that it is publically available.

13.     In October of 2007, the Eastern District of Texas's Local Rule CV-5 "strongly encouraged" attorneys to electronically file complaints using the Court's Electronic Filing System.

**RESPONSE:**

Admitted.

14.     On October 15, 2007, ESN's local counsel sent a Civil Cover Sheet via email to the Eastern District of Texas court clerk who then prepared a shell case file into which ESN could later (within 24 hours) electronically file its Complaint. The Civil Cover Sheet for the ESN case was signed and emailed on October 15. The Civil Cover Sheet in the ESN v. Cisco case does not state that the ESN Complaint was filed on October 15, 2007.

**RESPONSE:**

4

Cisco admits the first two sentences of Paragraph 14. In all other respects, denied.

15.    On the evening of October 15, 2007 the legal assistant responsible for filing the ESN complaint logged on to the Eastern District of Texas's Electronic Filing System and began to upload the documents needed to electronically file the ESN Complaint. The legal assistant paid the filing fee for the ESN Complaint via credit card on October 16, 2007. Thereafter, she sent the ESN complaint to the Court for electronic filing.

**RESPONSE:**

Cisco admits the first sentence of paragraph 15. In all other respects, denied.

16.    The ESN Complaint was received by the Court on October 16, 2007. After the complaint was filed, ESN received a Notice of Electronic Filing, which is automatically generated by the Court's Electronic Filing System.

**RESPONSE:**

Denied that the ESN Complaint was received by the Court on October 16, 2007. Cisco

admits the second sentence of Paragraph 16.

17.    The Notice of Electronic Filing contains an encrypted Electronic Document Stamp. The encrypted Electronic Document Stamp is the official record of the date and time that a document is received by the Court. Under the Local Rules of the Eastern District of Texas, the Electronic Document Stamp is dispositive of the date a document is received by the Court. Richard Frenkel has represented clients in the Eastern District of Texas. Frenkel is presumed to know the Eastern District of Texas's Local Rules and procedures.

**RESPONSE:**

Admitted that the Notice of Electronic Filing contains the words "Electronic document

Stamp" and that what follows those words "encrypted," that is in an illegible code. Admitted

that Richard Frenkel has represented clients in the Eastern District of Texas and in the course and

scope of representing those clients he was presumed to know the Eastern District of Texas's

Local Rules and procedures. In all other respects, denied.

18.    The Electronic Document Stamp cannot be altered. The Electronic Document Stamp associated with the filing of the *ESN v. Cisco* Complaint was not altered.

**RESPONSE:**

Cisco is without knowledge or information sufficient to form a belief as to the truth of the averment first sentence of Paragraph 18, and therefore it is denied. Denied that the Electronic Document Stamp on the Complaint in the *ESN v. Cisco* case was not altered.

19.     The encrypted Electronic Document Stamp contained on the Electronic Notice of Filing of the ESN complaint has at all times shown that the ESN complaint was received by the Court on October 16, 2007.

**RESPONSE:**

Denied.

20.     On October 16, 2007, Cisco did not have counsel of record for the ESN v. *Cisco* litigation. ESN properly served Cisco with a Summons and the ESN Complaint as required by Federal Rule of Civil Procedure 4 and Eastern District of Texas Local Rule 4.

**RESPONSE:**

Admitted that on October 16, 2007, Cisco did not have counsel "of record" in the *ESN v. Cisco* litigation, although ESN was aware of Cisco's counsel with respect to the *ESN v. Cisco* litigation. In all other respects, denied.

21.     On October 16, 2007 at 11:32 am Eastern, Cisco filed a declaratory judgment action in the District of Connecticut seeking a judicial determination that no valid and enforceable claim of the ESN 519 patent is infringed by Cisco. Cisco's Declaratory Judgment Complaint alleged that ESN filed its infringement suit in the Eastern District of Texas on October 15, 2007. Cisco stated that it intended to move to dismiss the infringement case filed by ESN in the Eastern District of Texas for lack of subject matter jurisdiction because ESN did not have a property right in the 519 Patent at the time the ESN Complaint was filed.

**RESPONSE:**

The first two sentences of paragraph 21 are admitted. Cisco admits that the Complaint stated that Cisco intended to move to dismiss the patent infringement case filed by ESN in the Eastern District of Texas for lack of subject matter jurisdiction. In all other respects, denied.

22.     On October 17, 2007, ESN filed an Amended Complaint to include a copy of the `519 patent that had newly issued on October 16, 2007 as an exhibit to the Complaint.

6

**RESPONSE:**

Admitted.

23. On October 17, 2007, ESN's counsel, Peter McAndrews, contacted the legal assistant who filed the ESN Complaint to find out why Cisco's Declaratory Judgment Complaint alleged that the ESN Complaint had been filed on October 15, 2007, when he knew that it had been filed on October 16, 2007.

**RESPONSE:**

Cisco is without knowledge or information sufficient to form a belief as to the truth of

the averments in paragraph 23 and therefore it is denied.

24. The Court's official website directs persons who have questions about the Court's Electronic Case Filing system to contact the clerk's office in the district in which the case is filed. It is common practice in the Eastern District of Texas to call the administrative court clerks to ask questions about case filings.

**RESPONSE:**

Admitted that the Court's official website directs persons who have questions about the

Court's Electronic Case Filing system to contact the clerk's office and that it is common practice

in the Eastern District of Texas to call court clerks to ask questions about how to properly file a

case, but denied that the Local Rules or common practice in the Eastern District of Texas permit

a litigant to ask a court clerk to change a case dispositive date on the Court's Electronic Case

Filing system.

25. The legal assistant contacted the clerk's office in Texarkana in an effort to determine why the document banner for the ESN Complaint incorrectly reflected a 10/15/07 date.

**RESPONSE:**

Denied.

26. The "banner" or "header" is not an official record of filing. It is automatically generated by the Court's electronic filing software and is an optional feature which users can turn on or off according to personal preference.

7

**RESPONSE:**

Denied that the "banner" or "header" stamped at the top of pleadings is not an official record of filing. Admitted that it is automatically generated by the Court's electronic software and that users may opt to print or view pleadings without the "banner" or "header" stamped on pleadings. In all other respects, denied.

27.   The same software that automatically creates the "banner" or "header" automatically generates a docket entry. The court's docket entry is not the official record of when a document is filed with the Court. Before the filing of the ESN Complaint, Frenkel admitted in his Troll Tracker Blog that information contained in docket entries can be wrong.

**RESPONSE:**

Admitted that the same software (the Court's official software) that automatically creates the "banner" or "header" stamped on pleadings (and the Notice of Electronic Filing) automatically generates the Court's docket entry. Denied that the docket entry is not the official record of when a document is filed with the Court. Admitted that Frenkel stated in a the Patent Troll Tracker that summaries of orders prepared by clerks of the court could be incorrect, but denied that Frenkel ever stated that docket entries indicating file dates could be incorrect. In all other respects, denied.

28.   The Eastern District of Texas Chief Clerk, David Maland reviewed the Notice of Electronic Filing for the ESN Complaint including the encrypted Electronic Document Stamp and the Court's system transaction log for the ESN case that details the date and time of case filing events. Mr. Maland was able to determine that the Court received the ESN complaint after midnight, making the official file date October 16, 2007. Because the official record of the filing showed that the ESN Complaint was filed on October 16, 2007, Mr. Maland directed a clerk in his office to correct the docket entry to show the official filing date of ESN Complaint. The clerk's correction was noted on the publically available docket sheet.

**RESPONSE:**

Admitted that Mr. Maland directed a clerk in his office to alter the docket entry to change the "filed" date for the complaint. Admitted that the altered docket sheet stated "modified on

8

10/17/2007." In all other respects, denied.

29.     Later in the *ESN v. Cisco* litigation, the parties agreed to dismiss the case in an attempt to reach a settlement.   Upon information and belief, upon refiling of ESN's infringement lawsuit, Cisco stipulated to jurisdiction in the Eastern District of Texas.

**RESPONSE:**

Admitted that shortly after the *ESN v. Cisco* case was filed, the parties agreed to dismiss

the case in an attempt to reach a settlement.   Admitted that Cisco agreed and stipulated that if

ESN was to file a new case against Cisco, Cisco would agree to litigate that case in the Eastern

District of Texas.   In all other respects, denied.

30.     In October of 2007, an internet blogger known anonymously as the Troll Tracker, posted false, scandalous, and defamatory allegations about Plaintiff on his internet site located at http://trolltracker.blogspot.com.

**RESPONSE:**

Denied.

31.     True and correct copies of the defamatory writings appearing on the Troll Tracker Blog are attached to this petition as Exhibits A, B, and C and are incorporated by reference.

**RESPONSE:**

Denied that Exhibits A and C are in the form that they originally appeared.   Admitted as to Exhibit B.

32.     On October 17, 2007 at 7:00 p.m. Eastern Daylight Time, the Troll Tracker published a blog post entitled "Troll Jumps the Gun, Sues Cisco Too Early" ("the October 17" post"). That post falsely asserts, among other things, that ESN did not have subject matter jurisdiction when it filed the Complaint against Cisco in the Eastern District of Texas and that ESN's counsel, including Ward, filed an Amended Complaint in the ESN case in an attempt to manufacture subject matter jurisdiction where none otherwise existed. The post states that ESN's local counsel, including Ward, attempted to void its "null complaint" by filing an Amended Complaint "amending to change absolutely nothing at all, by the way, except the filing date of the complaint." The Troll Tracker implied that Ward needed to change the filing date of the Complaint to keep the case in Texarkana because he wouldn't "play" well in another venue. The Troll Tracker specifically identified Ward, saying "Sorry, ESN. You're on your way to New Haven. Wonder how Johnny Ward will play there?"  The false statements made in the October 17, 2007 post, individually, collectively, and in combination with the two Troll Tracker posts dated October 18, 2007, are defamatory of Plaintiff, and create a false defamatory impression of

9

Plaintiff by omitting material facts and juxtaposing other facts. The false and defamatory accusations made about Ward accuse him of criminal conduct, unethical conduct, offenses for which he could be professionally reprimanded and/or disbarred, and conduct that would lead others to view Ward as an unethical attorney. Those statements tend to, (and/or were reasonably calculated to) cause harm to Ward's reputation and to cause him emotional distress.

**RESPONSE:**

Cisco admits the first sentence. Admitted that the October 17 post contained the words

"Troll Jumps the Gun, Sues Cisco Too Early," "null complaint," "amending to change absolutely

nothing at all, by the way, except the filing date of the complaint" and "Sorry, ESN. You're on

your way to New Haven. Wonder how Johnny Ward will play there?" In all other respects,

denied.

33. On October 18, 2007 at 1:13 Eastern Daylight Time, the Troll Tracker published a blog post entitled "ESN Convinces EDTX Court Clerk To Alter Documents To Try To Manufacture Subject Matter Jurisdiction Where None Existed." In the October 18, 2007 post the Troll Tracker alleged, among other things, that Plaintiff had "conspired" with the court to alter the ESN v. *Cisco* docket and the fling date stamp on the ESN Complaint. The Troll "Tracker alleged that Plaintiff engaged in felonious activity in order to create subject matter jurisdiction against Cisco, to benefit himself and his client at Cisco's expense. The October 18, 2007 post falsely claims, among other things, that ESN convinced the Court clerk to alter official governmental records. The post falsely claims that "ESN's counsel Eric Albritton signed the Civil Cover Sheet stating that the complaint had been fled on October 15," 2007, when in fact ESN's counsel had made no such claim. The post specifically chose words to convey that Ward engaged in criminal behavior, including stating that "there's tons of proof" of Ward's criminal conduct that can be proven through "evidence" "subpoenas," and "witnesses." The post asserts that Ward's conduct is "yet another example of the abusive nature of litigating patent cases in the Banana Republic of East Texas." The false statements made in the October 18, 2007 post, individually, collectively, and in combination with the two Troll Tracker posts dated October 17 and 18, 2007, are defamatory of Plaintiff, and create a false defamatory impression of Plaintiff by omitting material facts and juxtaposing facts. Defendant's false and defamatory accusations accuse Ward of criminal conduct, unethical conduct, offenses for which he could be professionally reprimanded and/or disbarred, and conduct that would lead others to view him as an unethical attorney. Those statements tend to (and/or were reasonably calculated to) cause harm to Ward's reputation and to cause him mental anguish.

**RESPONSE:**

Cisco admits the first sentence of Paragraph 33. Cisco admits that the article contained

the words "ESN Convinces EDTX Court Clerk To Alter Documents To Try To Manufacture

Subject Matter Jurisdiction Where None Existed," "there's tons of proof," "evidence" "subpoena," "witness" and "yet another example of the abusive nature of litigating patent cases in the Banana Republic of East Texas." In all other respects, denied.

34.    Upon information and belief, on October 19, 2007 sometime after 10:18 p.m. Pacific Time, the Troll Tracker revised the original October 18, 2007 post. The revised post ("the Revised October 18, 2007 post") continued to make the same false and defamatory accusations about Ward set forth in the paragraphs above. The Troll Tracker added new language stating that "Even if this was a `mistake,' which I can't see how it could be, given that someone emailed me a printout of the docket from Monday showing the case, the proper course of action should be a motion to correct the docket." At the time the Troll Tracker made this statement he knew that there had been an error in the Court's Electronic Filing System. Nonetheless, he claimed that there couldn't have been a mistake, and continued to state false facts and to create the false and defamatory impression that Ward had engaged in criminal conduct, unethical conduct, offenses for which he could be professionally reprimanded and/or disbarred, and conduct that would lead others to view Ward as an unethical attorney. The false and defamatory statements made in the revised October 18, 2007 post, individually, collectively, and in combination with the two Troll Tracker posts dated October 17th and 18th, 2007, are defamatory of Ward and create a false defamatory impression by omitting material facts and juxtaposing other facts. Those statements tend to (and/or were reasonably calculated to) cause harm to Ward's reputation and to cause him mental anguish.

**RESPONSE:**

Admitted that on October 19, 2007, the Troll Tracker revised the original October 18, 2007 post by deleting certain language and adding new language. Admitted that the October 19 Article contained the following words: "Even if this was a `mistake,' which I can't see how it could be, given that someone emailed me a printout of the docket from Monday showing the case, the proper course of action should be a motion to correct the docket." In all other respects, denied.

35.    The Troll Tracker's blog posts individually, collectively and in combination accuse Plaintiff of committing a crime (for example 18 U.S.C. § 1001, 18 U.S.C. § 1512, Texas Penal Code 37.10(a)(1)). The Troll Tracker's blog posts accuse Plaintiff of engaging in conduct that could result in disciplinary proceedings before the State Bar of Texas, subject him to suspension from the practice of law, or disbarment. The Troll Tracker's posts contain

11

accusations that would lead a reasonable person to question Plaintiff's honesty, integrity, virtue, or ethics. Those accusations expose Plaintiff to public hatred, shame, and ridicule, have harmed his reputation, and have caused Plaintiff mental anguish.

**RESPONSE:**

Denied.

36.     In February of 2008, the anonymous Troll Tracker voluntarily disclosed his identity to the public. The Troll Tracker is Richard Frenkel, an in-house lawyer at Cisco; the defendant in *the ESN v. Cisco* litigation. At the time he posted the false and defamatory statements about Ward's conduct in filing the ESN Complaint, he was working on the ESN case on behalf of Defendant Cisco.

**RESPONSE:**

Admitted that in February of 2008, Richard Frenkel voluntarily disclosed his identity as

the Patent Troll Tracker to the public. Admitted that Cisco was a defendant in the *ESN v. Cisco*

case. In all other respects, denied.

37.     Defendant Cisco employed Richard Frenkel as its Director of Intellectual Property, Consumer and Emerging Technologies. Frenkel is an attorney licensed to practice law in the State of California.

**RESPONSE:**

Admitted that Cisco at one time employed Richard Frenkel as one of its Directors of

Intellectual Property, Consumer and Emerging Technologies. Admitted that Frenkel is an

attorney licensed to practice law in the State of California. In all other respects, denied.

38.     Upon information and belief, in his role as Cisco's Director of Intellectual Property, Frenkel had been charged by Cisco with responsibility for management of the *ESN v. Cisco* litigation, the case that was the subject matter of Frenkel's false, scandalous, and defamatory anonymous statements about Ward.

**RESPONSE:**

Denied.

39.     Frenkel published the www.trolltracker.blogspot.com with the knowledge and consent, express or implied, of his direct supervisor at Cisco, Mallun Yen. Frenkel sought and obtained permission from Yen, before starting the Troll Tracker Blog. Frenkel has publicly

12

admitted that he posted the accused articles with the full knowledge and consent of his employer Defendant Cisco Systems, Inc.

**RESPONSE:**

Denied.

40.    At the time he published the October 17, 2007 article, Frenkel was acting within the course and scope of his employment at Cisco.

**RESPONSE:**

Admitted.

41.    At the time he published the October 18, 2007 article, Frenkel was acting within the course and scope of his employment at Cisco.

**RESPONSE:**

Admitted.

42.    At the time he published the revised October 18, 2007 article, Frenkel was acting within the course and scope of his employment at Cisco.

**RESPONSE:**

Admitted.

43.    Defendant Cisco employed Mallun Yen as Vice President-Worldwide Intellectual Property.  Yen is an attorney licensed to practice law in the State of California.  Yen is a vice-principal of Cisco. Upon information and belief, Yen directed, advised, encouraged, ratified, adopted, and aided and abetted the publication of false and defamatory statements about Plaintiff.

**RESPONSE:**

Admitted the first and second sentences.  In all other respects, denied.

44.    At all times relevant to the *ESN v. Cisco* litigation and the above-captioned case, Mallun Yen was acting within the scope and course of her employment at Cisco. Yen's actions in connection with the publication of the blog posts at issue were done within the course and scope of her employment at Cisco.

**RESPONSE:**

13

Cisco is without knowledge or information sufficient to form a belief as to the truth of the

averments in Paragraph 44 and therefore they are denied.

45.     Defendant Cisco employed John Noh as a manager in its Public Relations department.  In October of 2007, Noh was a vice-principal of Cisco.  Upon information and belief, Noh directed, advised, encouraged, ratified, adopted, and aided and abetted the publication of false and defamatory statements about Plaintiff.

**RESPONSE:**

Admitted that Cisco formerly employed John Noh as a manager in its Public Relations

department.  In all other respects, denied.

46.     At all times relevant to the *ESN v. Cisco* litigation and the above-captioned case, John Noh was acting within the scope and course of his employment at Cisco.  Noh's actions in connection with the publication of the blog posts at issue were done within the course and scope of his employment at Cisco.

**RESPONSE:**

Cisco is without knowledge or information sufficient to form a belief as to the truth of the

averments in Paragraph 46 and therefore they are denied.

47.     Upon information and belief, persons employed by Cisco, including Yen and Noh independently disseminated copies of Frenkel's false and defamatory statements to others, both orally and by sending Frenkel's defamatory posts to third-parties.  For example, Yen sent a copy of the October 18, 2007 Troll Tracker Blog to Matthew Tanielian, who was the Director of Cisco's Governmental Affairs Group.  Upon information and belief, Mr. Tanielian was not involved in providing legal advice concerning any of the facts or issues surrounding the filing of ESN's complaint against Cisco.

**RESPONSE:**

Admitted that Yen sent a link to the October 18, 2007 Troll Tracker Blog to Matthew

Tanielian, who was the Director of Cisco's Governmental Affairs Group.  In all other respects,

denied.

48.     Upon information and belief at all times relevant to the *ESN v. Cisco* litigation, other Cisco employees directed, advised, encouraged, ratified, adopted, and aided and abetted the publication and/or continued publication of false and defamatory statements about Plaintiff.  Upon information and belief those Cisco employees may include Mark Chandler, Matthew

14

Tanielian, Michael Timmeny, Paul Redifer, John Corcoran, Marta Beckwith, Mark Michels, Michael Ritter, Neal Rubin, Dan Lang, Marnie Willhoft, John Earnhardt, Terry Anderson, Robyn Nicole Blum, Penelope Bruce, Heather Dickinson, Kenneth Lotich, Marc Musgrove, Anita Kirsten Weeks, and Richard Renfree. At all times relevant to the *ESN v. Cisco* litigation and the above-captioned case, each of these employees was acting within the scope and course of his or her employment at Cisco with respect to the Troll Tracker's October 17th, October 18th, and revised October 18th blog posts.

**RESPONSE:**

Denied.

49.     Any negligence or intentional conduct on the part of Cisco's employees, including Frenkel, Yen and Noh is charged to Cisco with respect to Plaintiff's causes of action contained herein. Defendant Cisco is vicariously and directly liable for the tortious conduct of Frenkel, Yen, Noh and other Cisco employees acting within the scope and course of their employment at Cisco in connection with the false and defamatory statements made about Ward.

**RESPONSE:**

Denied.

50.     Frenkel intentionally concealed his identity on his web blog, and identified himself as "(j)ust a lawyer, interested in patent cases, but not interested in publicity." Frenkel specifically sought to mislead his readers into believing that he was not associated with Cisco by making statements in the accused posts such as "One other interesting tidbit: Cisco appeared to pick up on this, very quickly." By making clear that he was not associated with Cisco (although he was not only associated with Cisco, but employed by Cisco to work on the very case he was writing about, and was writing his accusations about Ward at Cisco's direction), Frenkel sought to mislead his readers into believing that his accusations against Ward were objective, verified and true because they were being made by an independent and unbiased source.

**RESPONSE:**

Admitted that Frenkel originally posted the Patent Troll Tracker without identifying his name, stating that he was "(j)ust a lawyer, interested in patent cases, but not interested in publicity." In all other respects, denied.

51.     Starting on October 15, 2007, Cisco was working with the law firm of Baker Botts in connection with the filing of ESN's infringement case against Cisco. On Cisco's behalf, on the morning of October 18, 2007, Baker Botts Partner Kurt Pancratz asked a paralegal in his office, Jillian Powell, to place an *ex parte* call to the Eastern District of Texas's clerk's office to ask why the document header on the ESN Complaint was corrected to reflect an October 16, 2007 filing date. The clerk's office told Baker Botts that ESN had

15

emailed the Civil Cover Sheet on October 15, 2007 to open a shell case file. The clerk's office also told Baker Botts that ESN had logged on to the Court's electronic case filing system before midnight but had not actually filed the Complaint until October 16th. The clerk's office told Baker Botts that it had made a correcting entry to the docket to show the actual date of filing. Baker Botts reported that information to Cisco on the morning of October 18, 2007. Upon information and belief, Baker Botts communicated additional information to Cisco that demonstrated that the accusations made in the accused internet posts were false. Nonetheless, Cisco published and continued to publish false and defamatory statements about Ward and continued to create a false and defamatory impression about Ward by not including the true facts known to Cisco.

**RESPONSE:**

Admitted that as of October 15, 2007, Cisco employed the law firm of Baker Botts in connection with the filing of ESN's infringement case against Cisco. Admitted that at an unknown time on October 18, 2007, Baker Botts Partner Kurt Pancratz asked a paralegal in his office, Jillian Powell, to place a call to the Eastern District of Texas's clerk's office to ask why the stamp on the header of the ESN Complaint and the docket in the *ESN v. Cisco* case had been altered to reflect an October 16, 2007 filing date, whereas previously they had reflected an October 15, 2007 filing date. Admitted that at an unknown time on October 18, Baker Botts reported to Yen or Beckwith that the Court clerk had altered the court records at the request of Eric Albritton. Cisco is without knowledge or information sufficient to form a belief as to the truth of the averments concerning what the clerk told Baker Botts, and therefore denies the same. In all other respects, denied.

52.    At all times relevant hereto, Baker Botts was acting as an agent of Cisco.

**RESPONSE:**

Admitted that at the time Baker Botts called the court clerk as stated in Cisco's response above, Baker Botts was acting as an agent of Cisco.

53.    In the early morning hours of October 18, 2007, an attorney at Baker Botts, Kevin Meek, was in a conference room with Ward. Ward and Meek were co-counsel attending mediation together on behalf of a client. Meek and Ward discussed the filing of

16

the ESN Complaint. Despite this exchange, no one from Baker Botts or Cisco called Ward to discuss the facts surrounding the filing of the ESN Complaint before publishing false and defamatory statements about Ward. Cisco did not attempt to contact Ward, Ward's co-counsel or ESN before publishing false and defamatory statements about Ward.

**RESPONSE:**

Cisco is without knowledge or information sufficient to form a belief as to the truth of the averments in the first two sentences of Paragraph 53 or whether Baker Botts called Ward to discuss the facts surrounding the filing of the ESN Complaint, and therefore they are denied. Admitted that Cisco did not call Ward concerning the statements in the October 18 article. In all other respects, denied.

54.     Upon information and belief, Cisco made an intentional and calculated decision to create negative publicity about Plaintiff's actions in connection with the filing of the ESN complaint. Cisco employees Yen and Noh suggested that Frenkel post an article on his Troll Tracker Blog concerning the filing of the ESN Complaint. After Frenkel posted the October 18, 2007 post, he immediately forwarded a copy to Yen and Noh. Noh responded to Frenkel and copied Yen telling Frenkel that his October 18, 2007 post was "brilliant. Thank you." Yen sent a copy of the false and defamatory October 18, 2007 post to Matthew Tanielian in Cisco's Governmental Affairs Department. Upon information and belief, Frenkel, Yen, and Noh sought to ensure that Cisco's false accusations about Ward be widely and publically disseminated.

**RESPONSE:**

Admitted that Noh suggested that Frenkel post an article on his Troll Tracker Blog concerning the filing of the ESN Complaint. Admitted that after Frenkel posted the October 18, 2007 post, Frenkel forwarded a copy to Yen and Noh and that Noh responded to Frenkel and copied Yen stating "Brilliant. Thank you." Admitted that Yen sent a link to the October 18, 2007 article to Matthew Tanielian in Cisco's Governmental Affairs Department. In all other respects, denied.

55.     Shortly after Frenkel revealed his identity as a Cisco in-house lawyer, Cisco made public statements claiming that Cisco had nothing to do with the false and defamatory accusations Frenkel made about Ward.

17

**RESPONSE:**

Denied.

56.     Cisco knew before Frenkel published false and defamatory statements about Ward that ESN had filed its Complaint on October 16, 2007. Cisco omitted those material facts from the articles accusing Ward of "conspiring" with the clerk's office to alter governmental records to create subject matter jurisdiction where none existed. Frenkel's posts claimed to have investigated and verified his allegations, without ever saying that Baker Bott's investigation uncovered facts demonstrating that ESN and Ward had done nothing wrong. Instead, Frenkel assured the reader that there was "tons of proof of Ward's misdeeds, and that he didn't see how there could have been a mistake.

**RESPONSE:**

Denied.

57.     Some of the Troll Tracker's readers understood Frenkel to accuse ESN's local counsel, including Ward, of criminal conduct. Other lawyers understood Frenkel to accuse ESN's local counsel, including Ward, of engaging in criminal conduct. Frenkel's false and defamatory statements accused Ward of criminal and unethical conduct and attacked Ward in his business and profession.

**RESPONSE:**

Denied.

58.     As lawyers, Frenkel and Yen and other Cisco in-house attorneys were well aware of the serious accusations made in the accused Troll Tracker posts.

**RESPONSE:**

Denied.

59.     Additional information known to Defendant demonstrates the false and defamatory nature of the statements made about Plaintiff. On October 19, 2007, Frenkel received an email from the Chair of the Eastern District of Texas's Rules Committee, Mr. Michael Smith. Mr. Smith cited to Frenkel the local rule for obtaining a Civil Cover Sheet 24 hours in advance of filing a complaint, that the Civil Cover Sheet information is available online before a complaint is filed. Smith told Frenkel that "the court records peg [the filing] time to the millisecond, so there's no doubt about that. If the complaint was e-filed, that is the time that will control under FRCP 3." Smith continued, "what I'm saying is that all the stamping and dating on the materials that were delivered to the clerk's office to set up the case won't matter if they were not the `filing' of the complaint, but merely setting up the file for an online ding the next day, per the local requirements for electronic filing."

18

**RESPONSE:**

Admitted that an email from Michael Smith to Frenkel contained the statements cited in paragraph 59 as well the following: "I really don't know anything about the [ESN] case" and "what happened [in the ESN case] I just don't know." In all other respects, denied.

60. Cisco also learned that the computer glitch involved in the filing of the ESN Complaint had also occurred in another case, *Hertz Corp. v. Enterprise Rent-A-Car Co.,* C.A. No. 1:07-CV-11793 (RGS), pending in the United States District Court for the District of Massachusetts. Cisco obtained the relevant pleadings in the *Hertz v. Enterprise* case. In *Hertz,* the Plaintiff called the Court Clerk because the complaint it filed shortly after midnight ended up with a "header" showing the previous day's date. The pleadings filed in that case explained that the Court's software contains a glitch, resulting in a date error on the header associated with the filing of the complaint when a party files a pleading shortly after midnight. The pleading cited case law holding that a Complaint is not officially filed until it is received by the Court and explained that the electronic filing process and the encrypted file stamp associated with the any pleading filed with the Court. After reviewing the pleadings in the *Hertz* case, Cisco knew that an error had caused the incorrect "header" or "banner" date and docket entry associated with the ESN Complaint. Nonetheless, even after it obtained this information, Cisco made and continued to make false and defamatory statements about Ward accusing him of criminal, unethical, and improper conduct.

**RESPONSE:**

Admitted that after the Complained-of Statements had been posted, Cisco learned that one of the parties in *Hertz Corp. v. Enterprise Rent-A-Car Co.,* C.A. No. 1:07-CV-11793 (RGS), pending in the United States District Court for the District of Massachusetts, filed a motion with the Massachusetts court requesting that the court change a filing date because, the party argued, the electronic filing system had caused an incorrect filing date in that case. In all other respects, denied.

61. Upon information and belief, Cisco learned additional information from Baker Botts and others from which Cisco knew or reasonably should have known that its accusations about Ward were false. Despite having that information, Cisco knowingly, recklessly and negligently published and continued to publish lies about Ward.

**RESPONSE:**

Denied.

19

62.     Defendant should have withdrawn and retracted their false and defamatory statements. It did neither. Instead, it opted for a continued course of deceit and untruths.

**RESPONSE:**

Denied.

63.     Frenkel and Cisco made the defamatory comments about Ward in an attempt to use the computer glitch involved in the filing of the ESN complaint as settlement leverage against ESN. Cisco's libelous statements were directed at protecting Cisco's financial interests and were motivated by spite and ill will toward ESN and its counsel.

**RESPONSE:**

Denied.

64.     On March of 2008, Cisco made a public statement in which it stated that Cisco "continues to have high regard of the judiciary of the Eastern District of Texas and confidence in the integrity of its judges." However, Cisco did not retract any of its statements about Ward or even insinuate what it had long known; that its serious accusations about Ward were false. Cisco has never offered a public apology to Ward.

**RESPONSE:**

The first sentence of Paragraph 64 is admitted. Admitted that Cisco did not retract any of its statements about Ward (the only statement about him being that he served as local counsel for ESN, which is true), although Frenkel posted an explanatory posting on November 7, 2007 stating that "to the extent the use of the word 'altered' implied that anyone did anything *illegal*, that was not my intent. I'm positive the court clerk was following local custom, as was the ESN Texas lawyer..." In all other respects, denied.

65.     Defendant continued to publish the false and defamatory accusations about Ward on the Troll Tracker Blog post until March of 2008.

**RESPONSE:**

Denied.

66.     Today, even with testimony provided by David Maland in the *Albritton v. Cisco* litigation, and with the true facts available to Cisco, Cisco maintains that Frenkel's

20

statements about Ward are true.

**RESPONSE:**

Admitted.

67.     Cisco continues to make false accusations against Ward.  Most recently, Cisco's counsel made a public statement calling into question Ward's motives for filing this lawsuit to clear his good name. Speaking for Cisco, Mr. Babcock provided a quote to the media stating that he doesn't know why Ward filed this lawsuit and insinuated that Ward's motivation was to "curry favor with the judges."

**RESPONSE:**

Denied.

68.     Cisco intended and continues to seek wide dissemination of its false and defamatory accusations about Ward. Cisco was aware that Plaintiff represents companies involved in patent infringement lawsuits in the Eastern District of Texas, in part because Plaintiff was adverse to Cisco in the *ESN v. Cisco* litigation. Cisco was also aware that it had access to the Troll Tracker Blogger, who could instantly disseminate false information about Ward to thousands of readers, and that those accusations could not be traced to Cisco.

**RESPONSE:**

Admitted that Cisco was aware that Plaintiff represented ESN in the *ESN v. Cisco*

litigation.  In all other respects, denied.

69.     Frenkel and Cisco purposefully maximized the dissemination of Frenkel's false, scandalous, and defamatory statements.  On information and belief, Frenkel further employed search engine techniques and internal linking within the blog to direct persons seeking information about Ward through popular search engines such as "Google" to the defamatory statements. Defendant Cisco, including employees Yen and Noh, knew that many people were reading the defamatory statements.  Frenkel printed the following boast on his blog site on January 30, 2008:

> I have been counting visitors now for a little over 6 months. This
> morning, around 5 am Eastern, visitor # 100,000 came to the bldg,
> from Mendoza, Argentina[.]

**RESPONSE:**

Cisco admits that Frenkel posted the following on the his website on January 30,

2008: "I have been counting visitors now for a little over 6 months. This morning, around 5 am

Eastern, visitor # 100,000 came to the bldg, from Mendoza, Argentina[.]"  In all other respects,

21

denied.

70.    Defendant negligently, knowingly, recklessly, willfully and wantonly defamed Ward, and continues to attack Ward's good name, with the intention and result of causing harm to Ward's reputation and causing him mental anguish.

**RESPONSE:**

Denied.

71.    Cisco's motive to defame Ward, intent to do so for its own financial gain, decision to omit material facts and to falsely portray other facts, the cumulative nature of the information available to Cisco demonstrating the falsity of its accusations that it intentionally ignored, failure to verify the facts in its haste to defame Ward, intentional ignorance of and disregard of contradictory evidence, decision to seek rapid and wide dissemination of its libelous statements, decision to leave its defamatory statements about Ward publically available after learning that they were false, continued efforts to harass Ward and impugn his motives and character, failure to correct, repudiate, or apologize for its tortious conduct, along with all appropriate inferences from that and other evidence demonstrates that Cisco acted with the required degree of fault and intent required to hold it liable for its tortious conduct.

**RESPONSE:**

Denied.

## COUNT 1: DEFAMATION

72.    Plaintiff incorporates each of the statements set forth in paragraphs 7-71 above as if fully set forth herein.

**RESPONSE:**

Cisco incorporates its responses to paragraphs 7-71 of the Complaint.

73.    Defendant published false statements of fact concerning Ward.

**RESPONSE:**

Denied.

74.    Defendant's statements are defamatory of Ward.  Defendant's statements, considered as a whole, and the words taken in their plain and natural meaning would have led a recipient of the statement to reasonably understand the statement in a defamatory sense. Defendant accused Plaintiff of criminal conduct, unethical or improper conduct, and conduct unbefitting of an officer of the Court, which directly attacks Plaintiff in his profession.

22

Defendant libeled Plaintiff by both making false statements of fact and by creating a false and defamatory impression of Plaintiff.

**RESPONSE:**

Denied.

75.    Defendant acted with negligence concerning whether the statements it publically disseminated were false.

**RESPONSE:**

Denied.

76.    Defendant acted with knowledge that the statements were false, and/or with reckless disregard of the truth.

**RESPONSE:**

Denied.

77.    Defendant acted with actual and inferred malice toward Plaintiff. Defendant knew or ought to have known, in light of the surrounding circumstances, that its conduct would naturally and probably result in damage to Ward's reputation and cause him mental anguish. Defendant continued to act with malice and with reckless disregard of the consequences of its actions after knowing that its accusations about Ward were false. Defendant intentionally pursued a course of conduct for the purpose and intent of causing injury to Ward's reputation and to cause him mental distress. Defendant's conduct was motivated by financial gain, malice, spite, and ill will toward Plaintiff.

**RESPONSE:**

Denied.

78.    Defendant's statements tend to or are reasonably calculated to cause harm to Ward's reputation. Defendant's accusations were made with the intent of causing harm to Plaintiff's reputation and to cause him mental anguish. As a result of Defendant's false, scandalous, and defamatory statements, Plaintiff sustained harm to his personal reputation, has suffered humiliation, has endured mental anguish and suffering and Plaintiff's relations with others have been detrimentally effected.

**RESPONSE:**

Denied.

79.    Defendant's publication of the false, scandalous and defamatory statements is a

proximate cause of Plaintiff's claimed damages.

**RESPONSE:**

Denied.

## COUNT 2: TORT OF OUTRAGE

80.    Plaintiff incorporates each of the statements set forth in paragraphs 7-79 above as if fully set forth herein.

**RESPONSE:**

Cisco incorporates its responses to paragraphs 7-79 of the complaint.

81.    Defendant Cisco willfully and wantonly engaged in extreme and outrageous conduct toward Plaintiff. Defendant knew or should have known its conduct would naturally and probably result in emotional distress to the Plaintiff. Despite the obvious harm to the Plaintiff, Defendant continued a campaign to injure Plaintiff's reputation in reckless disregard of the consequences to Plaintiff.

**RESPONSE:**

Denied.

82.    Defendant engaged in extreme and outrageous conduct in order to injure Plaintiff. Defendant sought to ensure that its libelous statements were disseminated to patent lawyers, technology companies, inventors, and other members of the community in which Plaintiff practices. Defendants sought to insure that its libelous statements were read by Plaintiff's colleagues and friends. Defendant sought to ensure that persons reading the Troll Tracker Blog would view Plaintiff as an unethical lawyer practicing law in "The Banana Republic of East Texas." Defendant's accusations that Ward conspired with the Court clerk to alter official government records were made with the specific intent to damage Plaintiff's reputation as an honest and ethical lawyer.

**RESPONSE:**

Denied.

83.    Defendant sought to ensure its libelous accusations about Plaintiff were rapidly disseminated to a wide audience, although Defendant knew that those statements included false facts and created a false impression of the true facts. Defendant knew that the Troll Tracker Blog was read by hundreds of thousands of people, including members of Congress, persons at the U.S P.T.O., judges, large law firm lawyers, inventors, and other members of the legal community--the same community in which its attacks of Ward would do the most harm. Defendant had access to Frenkel's web blog, and chose to use that access to attack

Ward. Defendant's urgency in spreading lies about Ward demonstrates the malice with which it set out to defame him.

**RESPONSE:**

Denied.

84. Cisco damaged Plaintiffs reputation and caused him mental anguish to gain a litigation advantage in the *ESN v. Cisco* litigation. Cisco hoped that the facts and circumstances surrounding the filing of the ESN complaint would give it settlement leverage against ESN.

**RESPONSE:**

Denied.

85. Defendant made anonymous public accusations about opposing counsel in a case in which it was the Defendant. Cisco was acting through the actions of its in-house litigation counsel and agents. As lawyers, Cisco's employees and agents knew or should have known that making public (an anonymous) accusations about opposing counsel-- especially serious allegations of criminal and unethical conduct-is unprofessional, irresponsible, and outrageous.

**RESPONSE:**

Denied.

86. Cisco believed that the false and defamatory statements made anonymously on the Troll Tracker Blog could never be traced back to Cisco. Frenkel was careful to write his posts to intentionally mislead the reader into believing that he was not associated with Cisco and was only providing an objective rendition of true facts. In fact, Defendant was a party to the litigation that was the subject of the posts, and it knew or should have known that its accusations were false.

**RESPONSE:**

Denied.

87. Defendant has continued to attack Ward publically, including questioning his motives for filing this lawsuit against Cisco, which has only been brought in an earnest effort to publically clear Plaintiff's good name. For example, the public statements made by Cisco's counsel accusing Ward of bringing this lawsuit "to curry favor with the local judges" is evidence of Cisco's continued attack on Plaintiffs character.

**RESPONSE:**

25

Denied.

88.    Defendant acted with extreme indifference to the harm to Plaintiff. Defendant's conduct has been and continues to be so extreme in degree as to go beyond all reasonable bounds of decency.

**RESPONSE:**

Denied.

89.    As a result of Defendant's extreme and outrageous conduct, Plaintiff has suffered extreme emotional distress.

**RESPONSE:**

Denied.

90.    Defendant's extreme and outrageous conduct is a proximate cause of Plaintiffs damages.

**RESPONSE:**

Denied.

<u>COUNT 3: FALSE LIGHT INVASION OF PRIVACY</u>

91.    Plaintiff incorporates each of the statements set forth in paragraphs 7-90 above as if fully set forth herein.

**RESPONSE:**

Cisco incorporates its responses to paragraphs 7-90 of the Complaint.

92.    Defendant gave publicity to a matter concerning Plaintiff that placed him before the public in a false light.

**RESPONSE:**

Denied.

93.    Defendant published the false light facts, negligently, knowing it was false or with a high degree of awareness of its probable falsity.

**RESPONSE:**

Denied.

26

5535491v.1 132184/00001

94.     The false light in which Plaintiff was placed would cause a reasonable person to be justified in feeling seriously offended and aggrieved by the publicity generated by Defendants' false statements

**RESPONSE:**

Denied.

95.     Defendant's giving of such publicity was a proximate cause of Plaintiff's damages.

**RESPONSE:**

Denied.

96.     As a result of Defendants' conduct, Plaintiff has sustained damages. Plaintiff's reputation has been damaged, his relations with others have been detrimentally effected, and Plaintiff has suffered mental anguish.

**RESPONSE:**

Denied.

97.     Defendant's tortious conduct is a proximate cause of Plaintiff's damages.

**RESPONSE:**

Denied.

<u>PRAYER FOR RELIEF</u>

98.     Plaintiff incorporates each of the statements set forth in paragraphs 7-97 above as if fully set forth herein.

**RESPONSE:**

Cisco incorporates its responses to paragraphs 7-97 of the Complaint.

99.     As a direct and proximate result of Defendant's conduct as set forth above, Plaintiff has endured shame, embarrassment, humiliation, and mental pain and anguish. Additionally, Plaintiff has and will in the future be seriously injured in his personal reputation, good name, and standing in the community, and has and will be exposed to the hatred, contempt, and ridicule of the public in general.

**RESPONSE:**

27

Denied.

100.   Plaintiff is entitled to exemplary damages from Cisco because it acted with the malice required to support an award of exemplary damages. Cisco acted maliciously with a specific intent to cause injury to Plaintiff and/or conscious indifference to the rights, safety, or welfare of Plaintiff with actual, subjective awareness that its conduct involved an extreme degree of risk of harm to Plaintiff.

**RESPONSE:**

Denied.

101.   Defendant Cisco is liable for exemplary damages as a result of its own tortious conduct.

**RESPONSE:**

Denied.

102.   Defendant Cisco is liable for exemplary damages as a result of the tortious conduct of its employees. Frenkel, Yen and Noh were acting in a managerial capacity at Cisco. In performing the acts described in this petition, they were acting within the course and scope of their employment at Cisco. Defendant Cisco is liable for exemplary damages as it ratified and approved the conduct of Frenkel, Yen, and Noh, and other Cisco employees acting within the course and scope of their employment with Cisco's full knowledge that they were acting negligently, intentionally, and with malice with respect to the causes of action alleged herein.

**RESPONSE:**

Denied.

103.   Plaintiff requests that Defendant be cited to appear and answer, and that on final trial the Plaintiff have the following:

- Judgment against Defendant for damages in excess of $75,000;
- Judgment against Defendant to compensate Plaintiff for the past and future harm to his reputation and past and future mental anguish caused him by Defendant's tortious conduct;
- Judgment for exemplary damages against Defendant in a sum determined by the trier of fact and in an amount that will deter Defendant from similar outrageous conduct in the future;
- Prejudgment and post judgment interest as provided by law;
- All costs of suit, including attorneys fees;

28

- A public retraction of the false, scandalous and defamatory statements made against Plaintiff;
- Any other relief the Court finds just and proper.

**RESPONSE:**

This allegation does not require a response, but in any event, denied.

29

## AFFIRMATIVE DEFENSES, OTHER DEFENSIVE MATTERS, AND COUNTERCLAIM

In further response to the Complaint, Cisco asserts the following affirmative defenses, other defensive matters and counterclaim. When referring to the statements Plaintiff challenges as false and defamatory, disparaging or otherwise actionable, Cisco will refer to them collectively as the "Complained-of Statements."

49.    For further answer, if necessary, Plaintiff's claim should be stricken pursuant to Section 16-63-506 of the Arkansas Code for failure to verify the petition pursuant to Section 16-63-505 of the Arkansas Code.

50.    For further answer, if necessary, Plaintiff fails to state a claim upon which relief may be granted.

51.    For further answer, if necessary, Plaintiff fails to state a claim upon which relief may be granted because the Complained-of Statements are true (Defendant believes that Plaintiff bears the burden of proving falsity).

52.    For further answer, if necessary, Plaintiff fails to state a claim upon which relief may be granted to the extent the Complained-of Statements are substantially true (Defendant believes that Plaintiff has the burden of proving material falsity).

53.    For further answer, if necessary, Plaintiff fails to state a claim upon which relief may be granted because the Complained-of Statements are not actionable per se.

54.    For further answer, if necessary, Plaintiff has not suffered any actual, special, consequential or other damages.

55.    For further answer, if necessary, Plaintiff has not suffered any damage to his reputation.

56.    For further answer, if necessary, the Complained-of Statements are privileged.

30

57.     For further answer, if necessary, any award of damages in this case for the claims alleged would be unconstitutional under the applicable state constitution and/or the First Amendment to the United States Constitution.

58.     For further answer, if necessary, Defendant alleges that Plaintiff is not entitled to punitive or exemplary damages because punitive damages are not warranted and their imposition in this case would violate the applicable statute constitution and/or the First Amendment to the United States Constitution.   Moreover, any punitive damages award (and none is warranted) would be subject to all statutory, constitutional, and common law caps and limits, including but not limited to A.C.A. § 16-55-208.

59.     Plaintiff's damages, if any, which are denied, are mitigated by the following factors: (1) On November 7, 2007, Frenkel published a clarification of the October 18, 2007 posting as follows: "To the extent the word 'altered' implied that anyone did anything *illegal*, that was not my intent.  I'm positive the court clerk was following local custom, as was the ESN Texas lawyer."  This serves to mitigate Plaintiff's damages, if any, and demonstrates that the Complained-of Statements are not defamatory, and are certainly not per se defamatory; (2) On or about October 19, 2007 Frenkel modified the October 18, 2007 posting and deleted or changed several of the Complained-of Statements; and (3) In or about March of 2008, Frenkel removed the Complained-of Statements from the internet.

60.     Cisco further alleges that Plaintiff failed to mitigate his damages, if any, and took actions with respect to the Complained-of Statements that caused the damages he complains of, if any.  Plaintiff and his counsel, Nick Patton, caused repeated publication of the Complained-of Statements, including an article in the Texarkana Gazette, which Plaintiff solicited, and in which

31

Mr. Patton called Cisco a bully and Mr. Frenkel a coward. These comments were authorized and/or ratified by Plaintiff.

61.     Cisco further alleges that the Complained-of Statements are a privileged communication and an act in furtherance of the right of free speech or the right to petition government for a redress of grievances under the Constitution of the United States or the Constitution of the State of Arkansas in connection with an issue of public interest or concern pursuant to A.C.A. § 16-63-501 through § 16-63-508. Cisco alleges that pursuant to the same statute, Cisco is immune from liability and is entitled to dismissal of this action, reasonable expenses and attorneys' fees, and compensatory damages as a result of this claim, which was commenced or continued for the purpose of harassing, intimidating, punishing or maliciously inhibiting a person or entity from making a privileged communication or an act in furtherance of the right of free speech or the right to petition government for a redress of grievances under the Constitution of the United States or the Constitution of the State of Arkansas in connection with an issue of public interest or concern.

62.     Cisco further alleges that Plaintiff's causes of action are barred by the applicable statute of limitations.

## COUNTERCLAIM

63.     Cisco is the counter-plaintiff. Ward is the counter-defendant.

64.     In this case, each of the claims Ward asserts against Cisco arise from a privileged communication or an act in furtherance of the right of free speech under the Constitution of the United States or the Constitution of the State of Arkansas in connection with an issue of public interest or concern. Ward commenced or continued this case for the purpose of harassing, intimidating, punishing, or maliciously inhibiting Cisco from making privileged communications

32

or performing acts in furtherance of the right of free speech or the right to petition government for redress of grievances under the United States or the Constitution of the State of Arkansas in connection with an issue of public interest or concern.

65. Cisco is immune from civil liability and is entitled to dismissal of this action, reasonable expenses and attorneys' fees, and compensatory damages as a result of Ward's claims, which were commenced or continued for the purpose of harassing, intimidating, punishing or maliciously inhibiting a person or entity from making a privileged communication or an act in furtherance of the right of free speech or the right to petition government for a redress of grievances under the Constitution of the United States or the Constitution of the State of Arkansas in connection with an issue of public interest or concern.

66. Defendant Cisco prays that Plaintiff's claims be dismissed with prejudice, that a take nothing judgment be entered in favor of Cisco, that Cisco be awarded its reasonable expenses, attorneys' fees, costs and compensatory damages as set forth herein, and for such other and further relief as to which it may be justly entitled.

33

JACKSON WALKER L.L.P.

By: */s/ Charles L. Babcock*
    Richard E. Griffin
    Arkansas Bar No.: 63020
    Email: rgriffin@jw.com
    Charles L. Babcock
    Federal Bar No.: 10982
    Email: cbabcock@jw.com
    Crystal J. Parker
    Federal Bar No.: 621142
    Email: cparker@jw.com
    1401 McKinney
    Suite 1900
    Houston, Texas 77010
    (713) 752-4200
    (713) 752-4221 – Fax

ATTORNEY FOR DEFENDANT
CISCO SYSTEMS, INC.

## CERTIFICATE OF SERVICE

This is to certify that on this **12**th day of June, 2009, a true and correct copy of the foregoing Cisco Systems, Inc.'s Answer to Plaintiff's First Amended Complaint and Counterclaim was served electronically, upon:

Patricia L. Peden
Law Offices of Patricia L. Peden
5901 Christie Avenue
Suite 201
Emeryville, CA 94608
***Attorney for Plaintiff John Ward, Jr.***

Nicholas H. Patton
Patton, Tidwell & Schroeder, LLP
4605 Texas Boulevard
P.O. Box 5398
Texarkana, Texas 75505-5398
***Attorney for John Ward, Jr.***

*/s/ Charles L. Babcock*
Charles L. Babcock

5535491v.1 132184/00001