IN THE UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF ARKANSAS
TEXARKANA DIVISION

JOHN WARD, JR.                        §
                                      §
                                      §
                                      §        C.A. NO. 08-4022
v.                                    §        JURY TRIAL DEMANDED
                                      §
CISCO SYSTEMS, INC.                   §

## DEFENDANT CISCO SYSTEMS, INC.'S RESPONSE TO PLAINTIFF'S MOTION TO COMPEL CISCO TO PRODUCE DOCUMENTS PRODUCED IN PRIOR LITIGATION AND BRIEF IN SUPPORT

TO THE HONORABLE COURT:

Defendant Cisco Systems, Inc. ("Cisco") files Response to Plaintiff's Motion to Compel Cisco to Produce Documents Produced in Prior Litigation and Brief in Support (the "Motion") as set forth below.

### INTRODUCTION

In the Motion, Ward attempts to rehash the same arguments that have already been briefed and which this Court has already denied.  Nothing has changed since this Court denied Ward's motion to compel these same documents based on the same theories and the same case law, and Ward does not even argue that the Court erred in applying that precedent.  Ward has not brought anything new to the table that would warrant a change in the Court's original decision on this issue.  And Ward certainly cannot argue that he has not had a sufficient opportunity to argue this issue, given that he made the exact same arguments before.  (Docket No. 64).  Ward knows this because he even cites to his previous briefing on the exact same issue in the Motion.  (Motion at p. 8, citing

docket No. 64).   The Court should deny the Motion simply because Plaintiff has presented no valid reason to reconsider the issue.

Even if the Court reconsiders the issue, the Motion should be denied for the same reasons the Court denied the requested relief before—production to someone other than Plaintiff under a Protective Order and non-waiver agreement where Plaintiff's counsel specifically agreed not argue waiver does not waive privilege.  It is ironic that Plaintiff's counsel argues that "Cisco should have anticipated that its production to Albritton would be discoverable by Ward and should have guarded against privilege waiver appropriately" when the very same counsel entered into agreements with Cisco that (1) they would not argue waiver based on the production; (2) that the documents would never been seen by Ward; (3) that the documents would be returned to Cisco or destroyed after the Albritton case was over.  It would be fundamentally unjust to hold that Cisco waived privilege on the basis of the production of documents that was induced by Plaintiff's counsel's own agreement that he would not argue waiver of privilege.

Moreover, the Court should order Plaintiff to discontinue this barrage of motions on privilege despite the Court's earlier rulings on these issues, which is a waste of both the court's and the parties' time and resources.

## FACTUAL BACKGROUND

**The Court has already decided this issue.**  The Court is familiar with the arguments in the Motion because of the voluminous briefings both parties have filed in response to Ward's Motion to Compel and related briefing, in which he asked the Court to order Cisco to produce these documents.  Ward argued that (1) Cisco had waived privilege under an "at issue" theory and (2) by producing the documents under the

Protective Order in the Albritton case and because some of the documents would be used in the *Albritton v. Cisco* trial, which was a public trial[1] (Docket No. 64 at pp. 3-5). The parties briefed these issues extensively. (See Docket Nos. 57-59, 61, 63-64, 67-69, 75, 76, 77, and 80). Ward also argued these issues in a telephonic hearing on June 12, 2009. (*see* <u>Exhibit A</u> transcript of telephonic hearing at p. 7-9, 21).

The Court reviewed all of the documents at issue *in camera* and found as an initial matter that they are privileged, but that privilege had been waived with respect to some of the documents. (Docket No. 89). The Court denied Ward's Motion to Compel with respect to waiver by production in the *Albritton* case but granted the motion with respect to an "at issue" waiver. (*Id.*). Accordingly, Cisco was ordered to produce "all documents, emails and written communications written or received by Frenkel prior to October 19, 2007" (the "Frenkel Documents"). (*Id.*). Cisco produced those documents to Plaintiff.

There is no legitimate dispute that the documents at issue in the Motion are protected by the attorney-client privilege and/or work product protection. Plaintiff has not challenged their privileged status but rather argued that there has been a waiver of privilege. Though he has misrepresented to this Court that his intentions are not to gain access to privileged documents in for the *ESN v. Cisco* litigation, which is pending, it is clear that Plaintiff wants access to those documents because he represents ESN in that lawsuit and wishes to use Cisco's attorney-client and work-product in that case against Cisco—exactly the use that both the attorney-client and work-product doctrines were designed to prevent. Cisco offered to permit Ward to use the documents at issue in this

---

[1] It is undisputed that Cisco opposed use of its privileged documents at trial and requested that if such documents were used, that the courtroom be closed to the public.

case provided that he and ESN agree that they would not be used in the ESN case, and he refused. Plaintiff's intentions are clear; immediately after the production of privileged documents ordered by this Court previously, those documents began appearing in the *ESN v. Cisco* lawsuit. (Exhibit B). There is no question where they came from—Ward.[2] Ward is using this lawsuit to get discovery for the *ESN v. Cisco* case.

Cisco has already provided a detailed privilege log of the documents at issue along with an affidavit supporting the privileged nature of the documents.[3] Indeed, this Court has already reviewed the very documents at issue, heard the same argument Plaintiff presents in the Motion, and denied the requested relief (Docket No. 89). Plaintiff presents no reason for the Court to change its prior ruling and never appealed the Court's denial of his waiver-by-production argument. Ward admits that production of documents protected by the Protective Order and non-waiver agreement would be a violation of both. (Docket No. 126 at n. 7).

**Plaintiff's second attempt to overcome the Albritton Protective Order and Agreement fails.** The documents at issue were produced in the *Albritton v. Cisco* lawsuit under both a Protective Order and non-waiver agreement that was designed to prevent the use of the documents at issue in any other litigation. The Protective Order was signed on June 5, 2008 by Judge Schneider, the then-presiding judge. (Exhibit C). The order specifically states that "the parties may designate extremely sensitive proprietary 'Confidential' information as 'Highly Confidential,'" including "privileged documents." (Exhibit C at p. 3). Pursuant to the Protective Order, Highly Confidential documents may

---

[2] Cisco is currently meeting and conferring with opposing counsel concerning a Protective Order that would prevent this abuse.

[3] Cisco incorporates by reference its previous *in camera* production and affidavit in support of privilege.

only be viewed by a party's counsel of record (including their staff), Eric Albritton, in-house attorneys and a few other limited individuals. (Exhibit C at pp. 3-4). The Protective Order's intent was clear—the documents produced pursuant to the Order were not intended to be used for any other purposes, even after trial. Indeed, the Order specifically stated that it survived the conclusion of the litigation and that the documents must be destroyed or returned to counsel upon the conclusion of the lawsuit:

> 19.    Within 30 calendar days of the conclusion of this action… all materials containing "Confidential" information that have been produced in this action shall be (i) destroyed, with a certificate of destruction provided to the Producing Party, or (ii) at the option of the Receiving Party, returned to counsel for the Producing Party, provided that counsel of record for each party may maintain, under seal, one copy of the specific pleadings, correspondence and documents filed with the Court that contain "Confidential" information. The seal shall be lifted only upon Court order…

> 20.    The final determination of this action shall not relieve any person who has received "Confidential" information from the obligations imposed by this Order. This Order shall survive the final conclusion of this litigation and continue in full force and effect…

(Exhibit C at pp. 10-11).

In addition to the Protective Order, the parties entered several non-waiver agreements. (Exhibit D). One of the agreements in particular provided that

> Eric Albritton **agrees… not to move to de-designate [as Highly Confidential under the Protective Order]** (1) any documents that were the subject of Plaintiff's Motion Challenging Designation of Certain Documents as Confidential or to Modify the Protective Order ("the Motion") and (2) any documents that are the subject of this agreement. In exchange, Cisco agrees to produce the following documents within three business days with the redactions indicated below. Eric Albritton expressly agrees that all of **the following documents will be treated as privileged and are being produced as Highly Confidential documents pursuant to the Protective Order** entered in this case because of the unique nature of this case.

(*Id.*) (emphasis added). Another agreement provided with respect to the documents at issue that:

> The parties agree that the production of documents does not constitute a subject matter or other waiver of privilege or work product protection as to other documents or information, and further the parties agree that they will not argue waiver of privilege or work product protection of other documents or information based on documents produced.

(*Id.*) (emphasis added). An additional one provided that:

> The parties... agree that any answer given at a deposition will not waive the attorney/client or attorney work product privileges and that the parties may designate any answer given at a deposition as confidential under the protective order which allows protection of privileged information.

(*Id.*). These agreements were signed by James Holmes, who represents Ward in this case.

At the time Cisco produced the documents under the Protective Order and non-waiver agreements, Eric Albritton was represented by Holmes, and Ward was represented by Nick Patton and Patricia Peden, so there was no risk that Ward's attorneys would gain access to the documents because of any mutual representation. However, in October of 2008, Patricia Peden and Nick Patton entered an appearance on behalf of Albritton. Accordingly, they gained access to the privileged documents produced under the Protective Order even though they also represented Ward. However, they understood and agreed that they were bound by the previous orders and agreements. (Exhibit E). Holmes has now entered an appearance as counsel for Ward.

The *Albritton v. Cisco* case ended by agreement on September 21, 2009. On September 23, 2009, Cisco sent Patton, Holmes, and Peden a letter reminding them of their obligations under the Protective Order and requesting that they destroy the documents. (Exhibit F). James Holmes indicated that he had destroyed the documents in

an email that same day.  (Exhibit G).  However, it is now clear that Patton and Peden have not complied with the Order.

It is important to note that neither Albritton nor his attorneys (and thus Plaintiff) would ever have seen these documents without specifically agreeing to maintain their confidentiality.  They were produced by Cisco in the *Albritton v. Cisco* case with the express understanding that "privileged" documents would not be seen by anyone except the Court and the parties and would be destroyed or returned at the conclusion of the case in accordance with the Protective Order.  (Exhibit C).  Under that Order, Ward should not even have access to those documents, much less be discussing their content in a Motion to Compel.

Notwithstanding orders from both Courts on this issue, Ward seeks another order from this Court.  The Court should order, as it already has, that Ward cannot have access to the documents at issue because they are privileged.

## ARGUMENT AND AUTHORITIES

Although Ward feigns that this is the first time, briefing on his previous motion to compel made the very same arguments.  (Docket No. 64 at pp. 7-8) (arguing that "[t]he privilege Cisco claims has been lost by disclosing documents and testimony to Albritton.")  Much of Ward's Motion is copied and pasted from Docket No. 64, and Plaintiff relies on the same case, *In re Chrysler Motors Corp. Overnight Evaluation Program Litigation*, 860 F.2d 844, 847 (8th Cir. 1988).  In response to these arguments, the Court ordered Cisco to produce *in camera* the documents it produced in the Albritton case to Ward so the Court could determine "whether they are still subject to any privileged or whether they are not."  (*Id.* at p. 28).  Cisco produced the documents *in*

*camera*, and the Court reviewed them. (Docket No. 89 at ¶6). Plaintiff admits that the Court has already reviewed the documents. (Motion at p. 3).

Although this Court granted Plaintiff's motion with respect to its claim of "at issue" waiver, it denied the very argument presented in the Motion that Cisco waived privilege by production of documents in the *Albritton v. Cisco* case. (Docket No. 89). Accordingly, Plaintiff's Motion is one for reconsideration or relief from the Court's prior Order.

**A.    The Motion should be denied because there is no basis for reconsideration of the Court's Order.**

Ward cites no rule or legal authority in support of its motion for reconsideration, which motions Plaintiff has previously advised this Court is a "futile waste of time for both the parties and the trial court." (Docket No. 36 at p. 2). Indeed, the Eighth Circuit has held that a motion for reconsideration should not be used as a vehicle for simple reargument on the merits. *Broadway v. Norris*, 193 F.3d 987, 989-90 (8th Cir. 1999). Even where courts take up such motions, they demand that counsel identify the rule under which the motion is brought so as not to leave the Court relying on its own "somewhat enlightened guess" as to the basis of the request. *See In re Trout*, 984 F.2d 977, 978 (8th Cir. 1993). Plaintiff has failed to do so here.

Defendant can only assume that Plaintiff seeks reconsideration under FED. R. CIV. P. 60(b). If the Court considers the Motion, it should be denied for failure to meet the requirements of that rule. The extraordinary relief permitted under Rule 60(b) may be granted only upon a showing of certain enumerated circumstances (such as fraud, changed conditions, newly discovered evidence and the like). Plaintiff's motion should be denied because he merely reargues what he argued in his previous motion and fails to

state the grounds for his motion. *See Broadway*, 193 F.3d at 990 (this is sufficient reason alone to deny the Motion); *Broadux v. Moore*, No. 93-1885, 1993 WL 243100, at *1 (8th Cir. July 7, 1993) ("A motion can be considered under Rule 60(b)… only if it states the grounds for relief under the rule") (citing *Reyher v. Champion Int'l Corp.*, 975 F.2d 483, 488 (8th Cir. 1992) (attached as Exhibit H).

Plaintiff's request does not meet any of the requirements of Rule 60(b) and therefore should be denied. Plaintiff has simply not shown the exceptional circumstances required to overcome the Court's prior ruling.

**B.      The Motion should be denied because the documents at issue are privileged.**

Plaintiff does not dispute that the documents at issue are privileged in the first instance, but rather argues that privilege was waived by production in the Albritton case pursuant to the Protective Order and Non-Waiver agreements in that case. There are two types of privilege at issue here: attorney-client privilege and work-product privilege. They are subject to different rules and therefore are addressed separately below.

1.      Texas law governs this lawsuit and the issues presented by the Motion

"[S]tate law supplies the rule of decision on privilege in diversity cases." *Pamida, inc. v. E.S. Originals, Inc.*, 281 F.3d 726, 731 (8th Cir. 2002), *citing* FED. R. EVID. 501. Because a district court sitting in diversity applies the choice-of-law rules of the state in which it sits, *see Lane v. Celadon Trucking, Inc.*, 543 F.3d 1005 (8th Cir.2008), Arkansas choice-of-law principles will apply in this case.

"Under Arkansas law, first [the Court] must decide which state has the most significant relationship to the parties and the issues." *Id.* at 1010. In this case, it is undisputed that the Plaintiff's office is in Longview, Texas; he alleges the injury to his

business reputation occurred in Texas; the only evidence of injury to reputation concerns his not being hired for cases in Texas; and the articles at issue, as found by Judge Schell in the Albritton case, were about the abuse of the patent system by non-practicing entities in the Eastern District of Texas. These facts all are apparent on the face of Plaintiff's live pleading. *See* Plaintiff's First Amend. Comp. ¶¶ 6, 14-28, 32-35, 51-53, 59, 61, 67, 68, 82, 84. Plaintiff has not even alleged that he is licensed to practice law in Arkansas. In addition, Texas is more convenient for Cisco because it has already tried the Albritton case there (as has Ward's counsel); Texas has a stronger interest in resolving an issue involving a Texas plaintiff regarding a publication about an incident that occurred in Texas; and there are no witnesses in Arkansas.

In addition, the present dispute over Cisco's privileged documents arises wholly out of the Albritton case, *Albritton v. Cisco, et al.*, No. 6:08cv00089, in the United States District Court for the Eastern District of Texas, Tyler Division. That case was brought by Ward's co-counsel in the ESN lawsuit against Cisco, was based on the exact same factual allegations against Cisco as Ward brings in this case, and was tried under Texas substantive law. The orders and agreements in that case were made in Texas and are governed by Texas substantive law, and the privileges asserted and protected in that case are governed by Texas law. Significantly, Plaintiff's whole argument for the disclosure of Cisco's privileged documents is what happened in the Albritton case in Texas.

Furthermore, this case has no material factual connection to Arkansas, as Mr. Ward has never lived in Arkansas or owned property in Arkansas, and he is not a member of any Arkansas bar association. This case's only connection with Arkansas is that

Plaintiff chose to file in Arkansas. Texas plainly has the most significant relationship to the parties and the issues.

The next step under Arkansas conflict-of-law principles is to apply Leflar's five choice-influencing factors. *Lane*, 543 F.3d at 1010, citing *Gomez v. ITT Educ. Services, Inc.*, 348 Ark. 69, 71 S.W.3d 542, 546 (2002). The first factor, predictability of results, "'includes the . . . ideal that the decision in litigation on a given set of facts should be the same regardless of where the litigation occurs, so that forum-shopping will benefit neither party.'" *Id.* at 1010-11, quoting *Gomez*, 71 S.W.3d. at 547 (in turn quoting Robert A. Leflar, AMERICAN CONFLICTS LAW § 103 at 205 (3d ed.1977)). Predictability is particularly important to Cisco. Cisco has already tried a factually identical defamation case brought against it by Ward's co-counsel, Mr. Albritton, and that case was tried under Texas law. Even if venue is proper in the Western District of Arkansas, Cisco should be entitled to defend identical allegations by Mr. Albritton's co-counsel, Mr. Ward, under the same laws that applied to Mr. Albritton's claims. Significantly, the documents at issue are governed by an order and agreements made in Texas under Texas substantive law. The application of Texas law in this case fosters predictability.

When the forum state has little or no contact with a case and nearly all of the significant contacts are with another state, as here, the second factor, maintenance of interstate and international order, suggests that the forum should not apply its own law to the dispute. *Id.* at 1011, citing *Hughes v. Wal-Mart Stores, Inc.*, 250 F.3d 618, 620-21 (8th Cir. 2001). In the present case, this factor points towards application of Texas law because the only contact with Arkansas is the fact that Ward filed suit there; no material facts in this case occurred in Arkansas and Plaintiff has no significant relationship to

Arkansas. In addition, there is absolutely no connection between the present dispute over privileged documents and Arkansas.

The third consideration, simplification of the judicial task, also favors application of Texas law. As already mentioned, the Albritton case was based on the exact same factual allegations against Cisco as Ward brings in this case, and was tried under Texas substantive law. The orders and agreements in that case were made in Texas and are governed by Texas substantive law, and the privileges asserted and protected in that case are governed by Texas law.

The fourth factor, advancement of the forum's governmental interests, clearly favors application of Texas law. Principles of comity argue in favor of a court sitting in Arkansas applying the law of the state, Texas, in which virtually all of the operative events occurred. Furthermore, even if Ward can adduce evidence that he was somehow injured in Arkansas, and he plainly has not, "'even then, courts have recognized that the state's interest is only slight and does not support application of its law to the litigation.'" *Id.* at 1011, quoting *Hughes v. Wal-Mart,* 250 F.3d at 621. And, again, there is no connection between the present dispute over privileged documents and Arkansas, whereas Plaintiff's whole argument for their disclosure is what happened in the Albritton case in Texas.

The fifth and final consideration is the better rule of law. Recognizing that "states often have competing policy considerations for governing similar transactions or events in different manners such that the laws do not necessarily lend themselves to being labeled either 'better' or 'worse,'" the Eighth Circuit has counseled that courts should refrain from pronouncing the better law when the other Leflar factors point decidedly

toward the application of one state's law. *Id.* at 1011, quoting *Hughes v. Wal-Mart*, 250 F.3d at 621. Because the other considerations mandate that Texas law applies in this case, this Court need not undertake the task of ascertaining which state's laws are better.

Accordingly, because Texas has the most significant relationship to the parties and the issues, and because the Leflar factors favor Texas, Texas law applies to this case.

2.      The Motion should be denied because the documents are protected by the attorney-client privilege.

Protective Orders and non-waiver agreements are enforceable, and thus documents produced pursuant to such agreements remain privileged. *See Whitaker Chalk Swindle & Sawyer, LLP*, Ca. No. 4:08-CV-684, 2009 WL 464989 at *4 (N.D. Tex. Feb. 23, 2009) (holding order restricting use of privileged materials to case was enforceable and could not be used in another case) (Attached as Exhibit I); *Ginther v. O'Connell*, 791 F.2d 1151, 1154 at n. 2 (5th Cir. 1986) (holding that privileged documents produced to another under an agreement did not waive privilege, even when the documents had been filed of public record, and ordering the return of the privileged documents). Indeed, the Federal Rules were recently amended to clarify that agreements such as the Albritton Agreements as to the effect of disclosure in a Federal proceeding are binding on the parties to the agreement. FED. R. EVID. 502(e). This rule explicitly applies to both the attorney-client privilege and work-product production and applies in proceedings under state law. *Id.*; FED. R. EVID. 502. The Advisory Committee Notes make clear that the rule is designed "to provide predictable, uniform standards under which parties can determine the consequences of a disclosure of a communication or information covered by the attorney-client privilege or work-product protection. Parties to litigation need to

know, for example, that if they exchange privileged information pursuant to a confidentiality order, the court's order will be enforceable."

This rule is not meant to apply only to inadvertent disclosure as Plaintiff has argued in the past, but rather "the plain language of the rule addresses the 'disclosure of a communication or information covered by the attorney-client privilege or work-product protection' in 'various circumstances.'" *Whitaker.* 2009 WL 464989 at *4 (citing FED. R. EVID. 502).

In this case, the documents were produced to Cisco under both the Protective Order, which provided that only the parties, attorneys and court could see the documents, and the non-waiver agreement, which specifically provided that the production was not a waiver of privilege.   The Protective Order also required Albritton to destroy the documents after the Albritton trial or return the documents to Cisco.   Accordingly, Plaintiff should not even have access to those documents now, since that trial has ended. (See Statement of Facts *infra* at p. 5-6).   Production in the Albritton case therefore did not waive privilege.   FED. R. EVID. 502; *Whitaker.* 2009 WL 464989 at *4; *Ginther*, 791 F.2d at 1154 n. 2; *Alcon Manufacturing, Ltd. v. Apotex Inc.*, Ca. 1:06-CV-1642, 2008 WL 5070465 at *3-4 (S.D. Ind. Nov. 26, 2008) (Attached as <u>Exhibit J</u>) (holding that inadvertent disclosure of privilege documents did not waive privilege pursuant to FED. R. EVID. 502 where the protective order specifically addressed the issue of inadvertent disclosure).[4]   Plaintiff's Motion should therefore be denied.

---

[4]     Because Texas state privilege law applies to the attorney-client privilege, none of the cases relied on by Plaintiff even apply to the issue of attorney-client privilege.  Even if Arkansas state law applied, these cases would not be applicable.  Moreover, none of the cases cited by Plaintiff apply to Texas or Arkansas law, and most of them do not even concern the attorney-client privilege.  Plaintiff's preferred case, *In re Chrysler Motors Corp. Overnight Evaluation Program Litigation*, 860 F.2d 844, 847 (8th Cir. 1988), concerned work product, not attorney-client privilege.  *See id.* at 846-47.  (See argument concerning work product, below, for additional reasons why *Chrysler* is not controlling here).  Plaintiff's reliance on

3.     The Motion should be denied because the documents are protected by work product privilege.

Unlike attorney-client privilege, where state law and FED. R. EVID. 502 apply, federal law governs the work-product privilege. *See* Fed. R. Civ. P. 26(b)(3). There are two types of work product—ordinary and opinion—and they are subject to different rules.

**Ordinary work product.** The documents at issue in the Motion are subject to the work-product privilege. (See Privilege Log and supporting documents produced *in camera* to the Court). The Federal Rules of Civil Procedure provide that ordinary work-product documents are only discoverable if (i) they are otherwise discoverable under Rule 26(b)(1); and (ii) the party seeking discovery shows that it has "substantial need for the materials and cannot, without undue hardship, obtain their substantial equivalent by

---

*United States v. Massachusetts. Inst. of Tech.*, 129 F.3d 681, 687 (1st Cir. 1987), and *Boene of New York, Inc. v. AmBase Corp.*, 150 F.R.D. 465 (S.D.N.Y. 1993), is misplaced, as those cases were decided before FED. R. EVID. 502 was enacted. *See Alcon*, 2008 WL 5070465 at *4 (S.D. Ind. Nov. 26, 2008) (Attached as Exhibit J) (noting the lack of relevance of case law decided before FED. R. EVID. 502 became effective). Moreover, in *AmBase* the court noted that "AmBase has not shown that, at the time of the disclosures... its attorneys imposed any requirement of confidentiality on Robitaille and his fellow plaintiffs..." *Id.* at 482. That certainly does not apply here.

Nor does *Pittman v. Frazer*, 129 F.3d 983, 988 (8th Cir. 1997), apply here. That case was also before Rule 502. *Id.* Moreover, in that case there was no protective order and ordinary work product, not attorney-client privilege, was at issue. In *Pittman*, the party waived disclosure by producing the documents to the plaintiff in that case and voluntarily using the documents at issue in trial. Here, Cisco has refused to produce the documents to Ward, opposed the use of the documents at issue in the Albritton trial, and did not introduce any privileged documents into evidence in the Albritton trial.

The other cases cited by Plaintiff also do not apply. In both *Adams Land & Cattle Co. v. Hartford Fire Ins. Co.*, 2008 U.S. Dist. LEXIS 4089, at *4-6 (Exhibit E to the Motion) and *Wood v. Archbold Med. Ctr., Inc.*, 2009 U.S. Dist. LEXIS 84866, 13-14 (M.D. Ga. Sept. 17, 2009) (Exhibit D to the Motion), the Court ordered that disclosure by the defendant to the <u>plaintiff in that case</u> waived attorney-client privilege as to the <u>plaintiff</u>. Here, there has been no production of the documents at issue to Ward, and Cisco intentionally guarded against disclosure to Ward through the Protective Order and non-waiver agreements. Therefore, these cases are inapposite. More importantly, a protective order and non-waiver agreement was not involved in any of these cases.

The Arkansas rule of evidence also does not apply because, as shown above, Texas law applies. The Arkansas Rule also does not apply to work product, as work product is governed by federal law, as set forth below. Even if Arkansas law did apply, FED. R. EVID. 502 protects the privilege. *See Whitaker*, 2009 WL 464989 at *4.

other means." Fed. R. Civ. P. 26(b)(3)(A). Plaintiff has failed to show either here, and therefore the Motion should be denied.

First, the work product documents are not relevant. The Court has already ordered the production of the privileged documents it found relevant—those that show what Frenkel, the author of the articles at issue, knew at the time he posted the complained-of articles. (Docket No. 89). What was known by others who did not write, edit or even read the articles before their publication is simply not relevant. The Court made this finding after extensive briefing on the issue and reviewing the very documents at issue *in camera*. (*Id.*) Ward has made no showing that the Court erred in its finding that the documents Plaintiff seeks by his motion are not relevant, but merely makes the same conclusory allegations that he made before. The Court's previous finding should stand, and the Motion should be denied.

Second, Ward cannot show substantial need. Plaintiff's only argument for substantial need is that "Ward cannot get discovery about Cisco and Frenkel's state of mind from any other source." Plaintiff's argument fails for two reasons. First, as the Court has already determined, only Frenkel's state of mind is at issue, since Frenkel is the only one who wrote, edited or even read the articles at issue before they were posted. Second, the Court already ordered the production of the documents Frenkel sent or received prior to publishing the articles at issue. (*Id.*) Therefore, Ward already has all the documents he needs. Moreover, Ward has not even attempted to get the information from other sources, such as depositions. Ward simply cannot show substantial need, and therefore the documents protected by ordinary work product are not discoverable.

Indeed, the Court has already heard Plaintiff's "substantial need" argument and denied his previous motion with respect to these documents.

**Opinion work product.**   Cisco's documents are not only protected by the attorney-client privilege, but also opinion work product protection.   (See Cisco's Privilege Log and Declaration in support, provided to the Court *in camera*.)   Opinion work product is entitled to "almost absolute immunity." *Baker v. General Motors Corp.*, 209 F.3d at 1051, 1054-55 (8th Cir. 2000); *In re Grand Jury Proceedings*, 473 F.2d 840, 848 (8th Cir. 1973); *In re Chrysler Motors Corp. Overnight Evaluation Program Litigation*, 860 F.2d at 846 ("opinion work product enjoys a very nearly absolute immunity and can be discovered only in very rare and extraordinary circumstances.") Opinion work product encompasses "counsel's mental impressions, conclusions, opinions or legal theories" prepared in anticipation of litigation. *Baker*, 209 F.3d at 1054.

Ward's attempt to overcome opinion work product by claiming substantial need fails.   Federal Rule of Procedure 26(b)(3)(B) is clear that opinion work product may not be overcome by a showing of relevance and substantial need. *Id.* (court "must protect against disclosure of the mental impressions, conclusions, opinions, or legal theories of a party's attorney or other representatives concerning the litigation.")   The mental impressions of attorneys deserve "special protection" and that simply showing "substantial need and inability to obtain the equivalent without undue hardship" is not sufficient. *Upjohn Co. v. United States,* 449 U.S. 383, 400 (1981); *see also In re Green Grand Jury Proceedings*, 492 F.3d 976, 980 (8th Cir. 2007) ("Opinion work product... enjoys a nearly absolute immunity and can be discovered only in very rare and extraordinary circumstances.")

The Eighth Circuit has held that it was "clear error" to order the production of work product. *Baker*, 209 F.3d at 1054-55. It would be "an intolerable intrusion on the bargaining process to allow one party to take advantage of the other's assessment of his prospects for victory…" *Simon v. G.D. Searle & Co.*, 816 F.2d 397, 406 (8th Cir. 1987) (citations omitted). This "intolerable intrusion" is exactly what Ward, who represents ESN in the underlying *ESN v. Cisco* litigation, seeks to do here. Therefore, the Court should deny Ward's efforts to obtain Cisco's opinion work product.

Even if substantial need could overcome opinion work product, which it cannot, Ward cannot show that he has a "substantial need for the materials to prepare its case and cannot, without undue hardship, obtain their substantial equivalent by other means," as set forth above.

4.   There has been no waiver of work product by production in a different case to a different plaintiff under a Protective Order and non-disclosure agreement.

Plaintiff's Motion also fails because work product (whether ordinary or opinion) protection is not waived by disclosure in another case even where there is no Protective Order or non-waiver agreement. *See Shields v. Sturm, Ruger & Co.*, 864 F.2d 379, 381-82 (5th Cir. 1989). In *Shields*, the plaintiff argued that work product immunity with respect to a report was waived because the report had been disclosed in a prior litigation and was used in open court, despite the defendants' objections to its use. *Id.* at 381. The Court held that privilege was not waived, noting that "[t]he work product privilege… does not exist to protect a confidential relationship but to promote the adversary system by safeguarding the fruits of an attorney's trial preparation materials from the discovery attempts of an opponent… Therefore, **the mere voluntary disclosure to a third person**

**is insufficient in itself to waive the work product privilege**." *Id.* (emphasis added).
Where as here, the documents have **never been disclosed voluntarily to Ward** and were
only used in open trial in the Albritton case over Cisco's numerous objections, work
product is not waived in this case. *Id.* ("one court's disregard of the privileged character
of the material does not waive the privilege before another court.")

Eighth Circuit law also supports this conclusion.  While the Eighth Circuit has
held that disclosure to the **opposing party** waives work product if the producing party
intends that the **opposing party** see the documents, the converse applies here; that is,
because Cisco never disclosed the documents to Plaintiff, never intended that Plaintiff see
the work product documents, and indeed guarded against him seeing them by having a
Protective Order and non-waiver agreement in place, there has been no waiver with
respect to Plaintiff.  *See Gundacker v. Unisys. Corp.*, 151 F.3d 842, 848 (8th Cir. 1998)
(disclosure only waives work product where there is "an intention that the opposing party
see the work product"); *U.S. v. Johnson*, 378 F. Supp. 1041, 1047 (N.D. Iowa) (holding
that disclosure to a third party other than the person seeking waiver did not waive the
work product protection because work product is premised on the vitality of the
adversary system rather than simply seeking to preserve confidentially, which is the goal
of the attorney-client privilege); *St. Paul Reinsurance Co. v. Commercial Financial
Corp.*, 197 F.R.D. 620, 639 (N.D. Iowa) (waiver by production only applies when there
was an intent upon production that the person claiming waiver actually see the documents
produced).  Ward's reliance on inapposite case law is unavailing; he cannot cite a single
case where work product was waived in an applicable case where documents were
produced to a non-party under a Protective Order and non-waiver agreement, and he

certainly cannot cite a case after the enactment of Rule 502.[5]   His Motion should be denied.

Production of privileged documents to a non-party in this case was certainly not a waiver of privilege where there was a Protective Order and non-waiver agreement preventing Ward from ever seeing the documents at issue, ordering the destruction or return of the documents, and explicitly agreeing that production did not waive privilege. As set forth above at pp. 10-11, the Federal Rules of Evidence require enforcement of these agreements.  It would be fundamentally unfair for the same counsel who agreed that production would not result in waiver to induce Cisco to produce privilege document was now permitted to cause a waiver of privilege based on that production.

For these reasons, Cisco requests that the Court deny the Motion.  Cisco also requests that the Court order Plaintiff to discontinue this repetitive barrage of motions on the same privilege issues despite the Court's earlier rulings on these issues, which is a waste of both the court's and the parties' time and resources.

---

[5] *In re Chrysler Motors Corp. Overnight Evaluation Program Litigation*, 860 F.2d 844, 847 (8th Cir. 1988), is clearly distinguishable because the Chrysler Court explicitly found that opinion work product was not at issue and, unlike this case, the attorneys (who are also Ward's attorneys) and ESN expressly agreed in the Albritton case not to argue waiver of privilege on the basis of the production. (Docket No. 67 at Exhibit C). *Id.* at 846.  In addition, whereas here there is an enforceable Protective Order, in that case the Court had modified the protective order, which made the privileged tape discoverable. *Id.* at 845.

Respectfully submitted,

JACKSON WALKER L.L.P.

By: /s/ Charles L. Babcock
      Charles L. Babcock
      Federal Bar No.: 10982
      Email: cbabcock@jw.com
      Richard E. Griffin
      Arkansas Bar No.: 63020
      Email: rgriffin@jw.com
      Crystal J. Parker
      Federal Bar No.: 621142
      Email: cparker@jw.com
      1401 McKinney
      Suite 1900
      Houston, Texas 77010
      (713) 752-4200
      (713) 752-4221 – Fax

ATTORNEYS FOR DEFENDANT
CISCO SYSTEMS, INC.

## CERTIFICATE OF SERVICE

This is to certify that on this 5th day of November, 2009, a true and correct copy of the foregoing was served upon via electronic service:

Patricia L. Peden
Law Offices of Patricia L. Peden
5901 Christie Avenue
Suite 201
Emeryville, CA 94608
*Attorney for Plaintiff John Ward, Jr.*

Nicholas H. Patton
Patton, Tidwell & Schroeder, LLP
4605 Texas Boulevard
P.O. Box 5398
Texarkana, Texas 75505-5398
*Attorney for Plaintiff John Ward, Jr.*

Courtney Towle
Patton, Tidwell & Schroeder, LLP
4605 Texas Boulevard
P.O. Box 5398
Texarkana, Texas 75505-5398
*Attorney for Plaintiff John Ward, Jr.*

Geoffrey P. Culbertson
Patton, Tidwell & Schroeder, LLP
4605 Texas Boulevard
P.O. Box 5398
Texarkana, Texas 75505-5398
*Attorney for Plaintiff John Ward, Jr.*

James Holmes
Law Office of James Holmes, P.C.
605 South Main, Suite 203
Henderson, Texas 75654
*Attorney for Plaintiff John Ward, Jr.*

/s/ Charles L. Babcock
Charles L. Babcock