IN THE UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF ARKANSAS
TEXARKANA DIVISION

| | | |
|---|---|---|
| JOHN WARD, JR. | § | |
| | § | |
| | § | C. A. NO. 08-4022 |
| v. | § | JURY TRIAL DEMANDED |
| | § | |
| CISCO SYSTEMS, INC. | § | |

**DEFENDANT CISCO SYSTEMS, INC.'S RESPONSE TO PLAINTIFF'S
MOTION FOR PARTIAL SUMMARY JUDGMENT AND CISCO'S
CROSS-MOTION FOR SUMMARY JUDGMENT AND BRIEF IN SUPPORT**

TO THE HONORABLE COURT:

Defendant Cisco Systems, Inc. ("Cisco") hereby files this Response to Plaintiff's Motion for Partial Summary Judgment ("Motion") and Cross-Motion for Summary Judgment and Brief in Support ("Cross-Motion") pursuant to Rule 56 of the Federal Rules of Civil Procedure and the Local Rules of this Court:

## I. INTRODUCTION AND FACTUAL BACKGROUND

Plaintiff John Ward, Jr. ("Ward") seeks summary judgment on the issue of his status as a defamation plaintiff. Specifically, Ward contends that he is a private figure and not a limited purpose public figure, as Cisco contends by its Cross-Motion. If the Court determined that Ward is a limited purpose public figure, he will have to prove that the articles Cisco published were false and were published with actual malice; if Ward is determined to be a private figure, he will not have to prove malice in order to prevail on his defamation claim. In addition, one of the tests for determining whether Ward is a public figure is whether Cisco's articles constituted commentary on a matter of public concern. If the Court finds that Cisco's articles were about a matter of public concern, then Ward will have to prove that Cisco acted with actual malice in order to receive punitive damages.

Before addressing the merits of Ward's motion, a discussion of the events upon which this case are based is appropriate.

Ward was retained, along with Eric Albritton, as local counsel to file a patent infringement lawsuit on behalf of ESN against Cisco Systems, Inc. in the United States District Court for the Eastern District of Texas. ESN planned to file the suit one minute after midnight on October 16, 2007, the date ESN's patent was expected to issue. The midnight filing was designed to fix venue in the United States District Court for the Eastern District of Texas before Cisco could file a declaratory judgment suit in some other jurisdiction.

But, from ESN's standpoint, something went wrong. The federal docket sheet for the ESN case and the file stamp or header affixed to the top of every page of ESN's complaint reflected a filing date of October 15, 2007.[1] This was a significant problem for ESN because an October 15 filing—a day too early—would deprive the federal court of subject matter jurisdiction over the patent suit and would allow Cisco's suit, filed in Connecticut on October 16, to proceed.[2] ESN's local counsel set about to correct the problem *not* by filing a motion with the court but through private telephone conversations with several employees of the court clerk's office without notice to Cisco.[3]

ESN's lawyer spoke with the office of the District Clerk for the United States Court for the Eastern District of Texas five times on the telephone in an effort to alter the official court docket's "Date Filed" entry for the Complaint from October 15, 2007 to October 16, 2007 in the *ESN v. Cisco* litigation. What ESN accomplished, through its local counsel, is not contested. The Clerk of Court, David Maland, was persuaded to alter a federal docket sheet and the stamps

---

[1] Exhibit 3, Maland Deposition at 65:12-19, 127:18-24; Exhibit 1, Frenkel Declaration at ¶ 2.

[2] Exhibit 1, Frenkel Declaration at ¶ 5.

[3] Exhibit 2, Albritton Deposition at 38:22-25; Exhibit 4, Mathis Deposition at 50:15-21, 51:24-52:3; Exhibit 5, Deposition Exhibit 14.

or headers, which are electronically affixed to court records—in this case, the 74 page complaint with exhibits that ESN filed against Cisco.[4]   District Clerk David Maland now admits that the alteration should have been done by motion and that he should not have altered the docket and related flings; it "should have been a judicial determination."[5]

On October 15, 2007, Rick Frenkel, who at that time wrote a blog, or web log, called Patent Troll Tracker, saw the *ESN v. Cisco* case open on the ECF system.[6]   Frenkel's blog focused on patent law issues, particularly his perceived need for patent law reform to combat abusive litigation in venues like the Eastern District of Texas by non-practicing patentees.  Later that day, Frenkel saw that the complaint had been filed.[7]   The docket sheet, complaint and civil cover sheet all indicated that the complaint had been filed on October 15, 2007.[8]   The next day (October 16, 2007), Professor Dennis Crouch noted the ESN filing on his blog, Patently-O, pointing out that the case was filed too early.[9]   Another internet publication, IP Law 360, commented on ESN's premature filing the same day.[10]   Following the Crouch and IP Law 360 articles, Frenkel decided to write his own article about ESN "jumping the gun" in his Patent Troll Tracker blog.  Frenkel's first article was posted on October 17, 2007 at 7:00 p.m. EST.[11] ("The Oct. 17 Article").

The Oct. 17 Article reported that ESN had "jumped the gun" by suing Cisco "too early." It provided information about the Plaintiff ESN and described a federal circuit opinion holding that a patent lawsuit could not be filed before the patent issued because "later events may not

---

[4] Exhibit 7, Provines Deposition at 13:2-14:2; Exhibit 3, Maland Deposition at 29:1-3.

[5] Exhibit 3, Maland Deposition at 9:13-17, 74:20-75:24, 78:10-15, 97:15-22, 119:9-16; 196:17-22.

[6] Exhibit 11, Frenkel Deposition at 34:20-35:1.

[7] Exhibit 1, Frenkel Declaration at ¶ 2.

[8] Exhibit 11, Frenkel Deposition at 46:4-8; Exhibit 1, Frenkel Declaration Exhibits A, B and C.

[9] Exhibit 1, Frenkel Declaration at ¶ 4; Exhibit 1, Frenkel Declaration Exhibit D.

[10] Exhibit 1, Frenkel Declaration at ¶ 5; Exhibit 1, Frenkel Declaration Exhibit E.

[11] Exhibit 1, Frenkel Declaration at ¶¶ 2 and 7; Exhibit 1, Frenkel Declaration Exhibit F.

create jurisdiction where none existed at the time of filing," citing *GAF Building Materials Corp. v. Elk Corp. of Texas*, 90 F.3d 479, 483 (Fed. Cir. 1996). The Oct. 17 Article went on to note, correctly, that Cisco had filed a declaratory judgment action in Connecticut.

ESN's counsel, including Ward, are listed in the Oct. 17 Article.

Then Frenkel saw that the docket changed.[12] Now, instead of showing that the complaint was filed on the 15th,[13] the docket indicated that the complaint was filed on the 16th.[13] So too did the stamp or header on the complaint.[14] Whereas before it said "Filed 10/15/2007", now it said "Filed 10/16/2007".[15] The complaint with the October 15th stamp on it had disappeared from the system.[16] The docket entry stating the Complaint had been filed on October 15 had also disappeared from the system, though the ECF records still stated (and do to this day) that the case had been filed on October 15. No reason was ever provided for the change of the court records and no reason has been given for those changes to this day.

Frenkel then learned that ESN's local counsel had convinced the clerk to change the date and decided to write another article on October 18, 2007 regarding the *ESN v. Cisco* litigation (the "Oct. 18 Article").[17] Frenkel learned, as he reported, that "ESN's local counsel called the Eastern District of Texas court clerk, and convinced him/her to change the docket to reflect an October 16 filing date, rather than the October 15 filing date." As Frenkel correctly pointed out, "that's exactly what happened." He also reported, again accurately, that "only the Eastern District of Texas Court Clerk could have made such a change." Frenkel also correctly noted that

---

[12] Exhibit 11, Frenkel Deposition at 46:8-12.

[13] Exhibit 1, Frenkel Declaration at ¶ 8; Exhibit 1, Frenkel Declaration Exhibit G.

[14] Exhibit 11, Frenkel Deposition at 137:7-12.

[15] Exhibit 1, Frenkel Declaration Exhibit H.

[16] Exhibit 3, Maland Deposition at 114:20-115:6. Although Frenkel did not see it at the time (because it was sent only to the plaintiff's counsel), the Notice of Electronic Filing ("NEF") states that the complaint was "filed" on October 15th and "entered" on the 16th. (Exhibit 12, NEF).

[17] Exhibit 1, Frenkel Declaration at ¶¶ 8 and 9; Exhibit 1, Frenkel Declaration Exhibit J.

Mr. Ward's co-counsel, Mr. Albritton, signed the civil cover sheet which bore the date of October 15, 2007. Frenkel then expressed his opinion concerning these disclosed facts. It's "outrageous," he wrote, that the Eastern District of Texas is "wittingly or unwittingly" "conspiring" with a non-practicing entity "to try to manufacture subject matter jurisdiction." In sum, Frenkel used the ESN filing as yet another example of what he perceived as court-sanctioned improper litigation tactics justifying patent law reform.

As noted in Ward's Motion for Partial Summary Judgment,[18] Mr. Albritton filed a defamation lawsuit against Cisco in the eastern District of Texas, *Eric Albritton v. Cisco Systems, Inc., and Richard Frenkel*, No. 6:08-CV-89. As Ward states, that lawsuit arose "from the same articles and accusation at issue in this case[.]"[19] Also, as Ward states in his Motion, in the *Albritton* case Cisco moved for summary judgment on the issue of Albritton being a public figure, and Judge Richard A. Schell denied that motion.[20] In the course of Judge Schell's Memorandum Opinion and Order, Judge Schell wrote that the "*ESN* lawsuit was not a matter of public concern."[21] But that was not the end of the matter.

At the close of Albritton's case and indeed, all of the evidence, Cisco moved for Judgment as a Matter of Law ("JMOL") on the issue of character of the defendant's speech – that is, Cisco moved for a determination that the Articles that Plaintiff asserts are defamatory were speech about a matter of public concern.[22] Judge Schell granted Cisco's JMOL from the bench, as follows:

---

[18] *See* Plaintiff's Motion for Partial Summary Judgment, at p. 1, fn. 1.

[19] *Id.*

[20] *See* Plaintiff's Motion for Partial Summary Judgment, Exs. A, B.

[21] Plaintiff's Motion for Partial Summary Judgment, Ex. B, at p. 10.

[22] Exhibit 6, Defendants' Motion for Judgment as a Matter of Law and Brief in Support and Defendants' Renewed Motion for Judgment as a Matter of Law

| | |
|---|---|
| The Court: | Point number 7, **the articles at issue involve a matter of public concern.** Ms. Peden, anything else you want to say on that? |
| Ms. Peden: | No, Your Honor.  I think that we got your ruling a little bit ago.  **You think they are**, and . . . |
| The Court: | **Yeah.  I think I said that last week**.  I think what I did in my order on summary judgment was I was responding to what you argued and what Cisco and Mr. Frenkel argued, and -- let's see.  I can probably find it here. |

I said the defendants argue that the blog postings address the public controversy regarding the abuse of the patent system by nonpracticing entities in the Eastern District of Texas.  Indeed, the blog posts do talk about that, too.  The plaintiff counters that the matter at issue, the lawsuit between ESN and Cisco, did not involve a public controversy.  I agree.  That lawsuit doesn't involve a public controversy.  **But I think the matter at issue here is what's going on in the clerk's office.  I think that's really the heart of it.**  I didn't say anything about that.  I probably should have.  I don't know -- maybe I'm wrong.  Maybe you talked about that issue and I just missed it, but I think what you talked about in your briefing on the summary-judgment issue -- on the summary-judgment motion was what I responded to on page 10 of my order on the motion for summary judgment, **but the real heart of the matter here is the oversight of electronic case records by the district clerk, and that is a matter of public concern.**

**So I think that's primarily what the blog posts are about.  There is a motion for judgment as a matter of law on that.  I'm happy to state it.  As a matter of law, it is a matter of public concern.**  I think that's what you're asking me to do, Mr. Moran.

| | |
|---|---|
| Mr. Moran: | Yes.  Sounds like I'm one for seven so far, Your Honor. |
| The Court: | Okay. |
| Mr. Moran: | You granted Number 7. |
| The Court: | Yes.  Yeah, I'll grant number 7.[23] |

---

[23] Exhibit 8, Transcript of Jury Trial, *Eric Albritton v. Cisco Systems, Inc.*, No. 6:08-CV-89, at pp. 1072:1-1073:11 (emphasis added).

## II.  UNDISPUTED FACTUAL BACKROUND

(1)     The Articles at issue in this lawsuit addressed the public controversy regarding *the abuse of the patent system by non-practicing entities in the Eastern District of Texas*, including the issue of non-practicing entities attempting to maintain venue in the Eastern District of Texas because of advantages of maintaining their cases in that forum.

(2)     The Articles at issue are a matter of public concern.

(3)     The matter at issue in the Articles was the topic of widespread debate and was discussed in the following: Oral argument in *eBay v. MercExchange*,[24] (a patent case) referred to Marshall, Texas (which is in the Eastern District of Texas), in which Justice Scalia referred to the district as a "renegade jurisdiction" and noted that "maybe we should remedy that problem." This, along with other concerns about the patent law system has led to proposed legislation to deal with abuses of the patent law system; U.S. House of Representatives House Resolution 5418, which, among other things, requires tracking of any "evidence indicating that litigants select certain of the [designated] judicial districts [...] in an attempt to ensure a given outcome"[25]; numerous law review articles including Yan Leychkis, *Of Fire Ants and Claim Construction:  An Empirical Study of the Meteoric Rise of the Eastern District of Texas as a Preeminent Forum for Patent Litigation*, 9 Yale J. L. & Tech. 193 (2007) (discussing forum shopping by patentee plaintiffs in the Eastern District of Texas and proposing legislative solutions "to the problem of forum shopping gone awry" and stating that "the judges are actually helping to institutionalize the district's pro-patentee bias");[26] David A. Fitzgerald II, *Saving Alternative Dispute Resolution in Patent Law:  Counteracting the Effects of the Patent Troll*

---

[24] Exhibit 10, Transcript of Oral Argument at 10-11, *Ebay Inc. v. MercExchange, L.L.C.*, 547 U.S. 388 (Mar. 29, 2006).
[25] Exhibit 13.
[26] Exhibit 19.

7

*Revolution*, OHIO ST. J. ON DISP. RES. (2008) (discussing exploitation of the patent system by "patent trolls" and proposing legislative solutions);[27] Stephen Schreiner and Andrew J. Baca, *Status of Intellectual Property Reform Legislation in the Congress and How It May Affect How Banks Acquire and Enforce Patents*, THE BANKING LAW JOURNAL 920 (Nov./Dec. ed. 2007), *available at* GoodwinProctor.com (discussing patent reform over the past five years "due in large part to the chorus of voices demanding that Congress reform the patent laws to eliminate perceived abuses and failures of the current patent system," particularly forum shopping in the Eastern District of Texas)[28]; numerous news articles, including *Eastern District Rocket Docket Decelerates in Marshall Division*, TEXAS LAWYER, Aug. 18, 2008 at 20 (noting that the "Eastern District of Texas had the highest number of patent suits filed in the United States in the last fiscal year, which ended Sept. 30, 2007" and that "the U.S. Congress has tried in its last three sessions to pass legislation that included provisions to limit forum-shopping by plaintiffs."),[29] *'Rocket Dockets' Gaining on Popular E. Texas Court*, IP LAW 360, Feb. 20, 2008, *available at* http://ip.law360.com (stating that "the Eastern District of Texas has also become exceedingly popular [for patent cases] because it is perceived as pro-plaintiff," but stating that "if the Patent Reform Act becomes law, it could change things dramatically");[30] *East Texas Now Busiest Patent Litigation Venue*, The NATIONAL LAW JOURNAL, Nov. 12, 2007, at 6, *available at* www.nlj.com (stating that the Eastern District of Texas is now the busiest patent litigation venue in the county for "reasons that are controversial," but that "patent reform legislation now being considered in Congress would change what is now viewed as patent forum shopping");[31] *Taming*

---

[27] Exhibit 26.
[28] Exhibit 27.
[29] Exhibit 14.
[30] Exhibit 15.
[31] Exhibit 16.

8

*Texas*, THE AMERICAN LAWYER, Mar. 1, 2008 at 1, *available at* www.law.com (stating that "in the first years of the East Texas patent boom, trial results were starkly one-sided"—that is "plaintiffs won nearly 90 percent of the district's patent trials" but that "a bill already passed by the House of Representatives and now before the Senate is intended to dry up the patent wellspring in East Texas");[32] *Patent Attorneys Sue Cisco and Blogging In-House Lawyer for Defamation*, LAW.COM, March 17, 2008, *available at* www.uk.us.biz.yahoo.com/law (stating that "The Eastern District is a nationally known forum for patent litigation because of rules that allow suits to progress speedily through the court system");[33] *Eastern District of Texas Applies KSR v. Teleflex in Invalidating Patent*, VINSON & ELKINS FIRM NEWS, Aug. 31, 2007, *available at* www.vinson-elkins.com (stating that "the Eastern District of Texas, especially over the past year, has been criticized by many who believe that defendants are at an extreme disadvantage in patent infringement cases filed there.");[34] *Small Town Attracts High Stakes IP Case*, INSIDE COUNSEL, July 1, 2006, *available at* www.insidecounsel.com (stating that Marshall is appealing to plaintiffs because it is a "rocket docket," is "plaintiff friendly," and the judges have firm guidelines to shorten IP trials);[35] *IP Plaintiffs Flocking to Small Town of Marshall in Eastern Texas*, DAILY RECORD, KANSAS CITY DAILY NEWS-PRESS, and LAWYERS USA, June 6, 2006, *available at* www.findarticles.com (discussing the rise of patent litigation in the Eastern District of Texas and proposed reform to address venue issues);[36] *Will the 5th Circuit Ground an Eastern District of Texas Rocket Docket?*, LAW.COM, May 23, 2008, *available at* www.biz.yahoo.com/law (noting the Eastern District of Texas's reputation for being "pro-plaintiff" and discussing case law that

---

[32] Exhibit 17.
[33] Exhibit 18.
[34] Exhibit 20.
[35] Exhibit 21.
[36] Exhibit 22.

5643849v.2

could affect venue);[37] *Volkswagen Lawyers Raise Challenge to Texas's 'Rocket Docket,'* THE WALL STREET JOURNAL BLOGS, *available at* www.blogs.wsj.com (discussing case law that could affect venue in the "plaintiff-friendly district" of the Eastern District of Texas);[38] *A Litigation Boom*, AUSTIN-AMERICAN STATESMAN, May 22, 2008 *available at* www.statesman.com (discussing that the Eastern District of Texas has "emerged as an unlikely venue for high stakes lawsuits over patent rights").[39]

(4)      The articles at issue were critical of the Eastern District of Texas.[40]

(5)      The Patent Troll Tracker blog was read by attorneys practicing in IP litigation and the ABA Journal has said that patent attorneys should read the Patent Troll Tracker blog to know the status of patent litigation in the Eastern District.[41]   The ABA Journal said the Patent Troll Tracker was a "must read."[42]

(6)      Judge Schell ruled that the articles at issue involved an important matter of public concern (the integrity of the court's electronic filing system and the conduct of the Eastern District of Texas' Clerk's office) and also involved a public controversy.[43]

(7)      Ward was one of the top filers of patent cases on behalf of non-practicing entities in the Eastern District of Texas at the time of publication.[44]

(8)      In 2007, Ward was identified as counsel of record in 129 patent cases pending in the Eastern District of Texas.[45]

---

[37] Exhibit 23.

[38] Exhibit 24.

[39] Exhibit 25.

[40] Exhibit 9, Ward testimony at p. 779

[41] *Id.* at p. 785.

[42] *Id.* at p. 784.

[43] Exhibit 8 at pp. 1072:1-1073:11.

[44] Defendant requests that the Court take judicial notice of this fact, as evidenced by publicly available case information from May of 2006 through December of 2007 on the Electronic Filing System. It is common practice for courts to take judicial notice of such information on official court documents, as such records are "not subject to reasonable dispute."  *See e.g. In re James*, 300 B.R. 890 (W.D. Tex. 2003).

(9)     90-95% of Ward's law practice was patent infringement litigation.  (Ward p. 745). About 95% of his work is contingent fee patent litigation in the Eastern District of Texas.  (*Id.* p. 793).

(10)    Ward took action to shut down the Patent Troll Tracker because it was speech he did not like.  (*Id.* pp. 773, 779).

(11)    After he filed suit, Ward's lawsuit against Cisco generated significant press coverage and his counsel were quoted widely disputing the articles at issue.  (*Id.* p. 775).

(12)    Ward approves or "stands behind" the action taken by Ms. Amie Mathis in her numerous efforts to persuade the clerk to change the court's record.  (*Id.* pp. 751-807).

(13)    Ward denies that there is an abusive practice in the Eastern District of Texas, but acknowledges others, including Frenkel, are "entitled to their opinion on that" issue.  (*Id.* p. 754).

(14)    The publications Patently-O and Patent Law 360 both commented on the ESN filing before Frenkel.

(15)    Ward could have posted his own explanation or comment to the October Articles on the Patent Troll Tracker itself, which allowed readers to make comments.  His comments could have been seen alongside the very articles he complains about.

## III.  RESPONSE TO PLAINTIFF'S STATEMENT OF MATERIAL FACTS

(1)     Denied.  See the undisputed facts above.

(2)     Denied.  See the undisputed facts above.

(3)     Denied.  Cisco has requested discovery on this issue, which Plaintiff has refused to provide.  Cisco's Motion to Compel is pending.

---

[45] Exhibit 28 (List of cases).  This list of cases was derived from public records on the ECF system, and therefore it is an appropriate matter for judicial notice.  *Id.*  To the extent Ward disputes this list, Cisco will produce official docket sheets for each of the cases.  Cisco has not done so here because the documents are voluminous (more than a box of documents).

(4)      Denied.  Cisco has requested discovery on this issue, which Plaintiff has refused to provide.  Cisco's Motion to Compel is pending.

(5)      Denied.  Cisco has requested discovery on this issue, which Plaintiff has refused to provide.  Cisco's Motion to Compel is pending.

(6)      Denied.  Cisco has requested discovery on this issue, which Plaintiff has refused to provide.  Cisco's Motion to Compel is pending.

(7)      Denied for the reasons set forth in this Response.

## IV.  SUMMARY JUDGMENT STANDARD

Summary judgment is only appropriate if, after viewing the facts and all reasonable inferences in the light most favorable to the nonmoving party, *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.,* 475 U.S. 574, 587, 106 S.Ct. 1348, (1986), the record "show[s] that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law."  Fed.R.Civ.P. 56(c).  The evidence is "viewed in the light most favorable to the non-moving party," here Cisco.  *Thomas v. Union Pac. R.R. Co.,* 308 F.3d 891, 893 (8th Cir. 2002).

In support of his Motion, upon which Ward has the burden of proof to establish conclusively that he is a private figure, Ward submitted only the following evidence:  (1) An order by Judge Richard A. Schell of the United States District Court for the Eastern District of Texas holding, among other things, that Eric Albritton, Ward's co-counsel in the underlying ESN lawsuit, was not a public figure; (2) the motion filed by Cisco in the Albritton lawsuit which resulted in Judge Schell's order; (3) a number of e-mails circulated among Cisco employees about the Eastern District of Texas and the circumstances surrounding the filing of the ESN lawsuit; and (4) two pages from Ward's deposition in this case in which he states that he has

never lobbied for patent law reform in Washington, D.C.  No other summary judgment proof is offered.

Ward's motion for partial summary judgment should be denied.  Cisco agrees with Ward that Judge's Schell's findings and orders in the *Albritton* case deserve deference and should be followed in this case – for reasons of both consistency and comity – as to his holding that the speech at issue involves a matter of public concern.  But Judge Schell's order as to Mr. Albritton's private-figure status is neither relevant nor material to Plaintiff's present motion for the obvious reason that Mr. Albritton is not Mr. Ward.  What is relevant and material to Ward's Motion is Judge Schell's ruling in *Albritton* that the statements that both Albritton and Ward allege defamed them involve speech on a matter of public concern.  In addition, Ward has utterly failed to meet his summary judgment burden on the issue of his role in the public controversy commented on by Frenkel.  Accordingly, Ward's motion should be denied.

## V.  ARGUMENT AND AUTHORITIES: WARD HAS NOT PROVEN HE IS A PRIVATE FIGURE; WARD IS A LIMITED-PURPOSE PUBLIC FIGURE AS A MATTER OF LAW

The Court should deny summary judgment that Ward is a private figure and should hold that Ward is a limited-purpose public figure as a matter of law.  Whether an individual is a public figure or a private figure is a matter of law for the court.  *Lundell Mfg. Co. v. American Broadcasting Co.*, 98 F.3d 351, 362 (8th Cir. 1996); *Trotter v. Jack Anderson Enters., Inc.*, 818 F.2d 431, 433 (5th Cir. 1987).  The Eighth Circuit has adopted the following test to determine whether an individual is a limited-purpose public figure: (1) the controversy at issue must be public in the sense that it involves questions of public concern; and (2) the plaintiff must inject himself or be drawn into the public controversy.  *Lundell* at 362-63, *citing Gertz v. Robert Welch, Inc.*, 418 U.S. 323, 351, (1974), and *Dun & Bradstreet, Inc. v. Greenmoss Builders, Inc.*,

472 U.S. 749, 761-62 (1985).   After identifying the particular controversy giving rise to the defamation, the court then examines the "nature and extent" of the plaintiff's involvement.   *In re IBP Conf. Bus. Litig. (Bagley v. Iowa Beef Processors),* 797 F.2d 632, 645 (8th Cir. 1986).   This inquiry is necessary to determine whether the plaintiff has "thrust [itself] to the forefront of [this] particular public controvers[y] in order to influence the resolution of the issues involved."   *Gertz,* 418 U.S. at 345, 94 S.Ct. at 3009.

The Court should deny Plaintiff's Motion because Ward has not carried his summary judgment burden on either of these factors.   Moreover, the Court should grant Cisco's Cross-Motion because Ward is a limited-purpose public figure.

1.   **The controversy at issue is a public issue and the speech is about a matter of public concern.**

The first prong of the *Lundell* test is met in this case because, as Judge Schell ruled,[46] the particular controversy at issue is one that is public in the sense that people are discussing it and people other than the immediate participants in the controversy are likely to feel the impact of its resolution.   The Articles at issue in this lawsuit addressed the public controversy regarding *the abuse of the patent system by non-practicing entities in the Eastern District of Texas,* including the issue of non-practicing entities attempting to maintain venue in the Eastern District of Texas because of advantages of maintaining their cases there.   And as to the specific articles at issue, upon which Ward's suit is based, as Judge Schell ruled:

> . . . I think the matter at issue here is what's going on in the clerk's office.  I think that's really the heart of it. . . .[T]he real heart of the matter here is the oversight of electronic case records by the district clerk, and that is a matter of public concern.

---

[46] Exhibit 8 at pp. 1072:1-1073:11.

So I think that's primarily what the blog posts are about.   There is a motion for judgment as a matter of law on that.  I'm happy to state it.  As a matter of law, it is a matter of public concern.[47]

Judge Schell was clearly correct to hold the speech at issue here to involve a matter of "public concern."

As in the *Albritton* case, Ward attempts to portray the controversy as concerning only the allegedly defamatory statements – not the articles in which the supposedly defamatory statements were made – but the  case law does not support his position.  Frenkel's articles were not merely about the filing of the *ESN v. Cisco* suit, but were about perceived problems with litigating in the Eastern District of Texas, the perceived manipulation of the clerk's office by ESN's counsel, and the clerk's agreement to change official court records, absent any notice to the opposing party or involvement of the judge.  That the controversy is far broader than Ward would have it -- for purposes of his present motion -- is also proven by his own live pleading, which quotes Frenkel's blog on topics concerning the Eastern District of Texas, and not merely the comments about Ward (which are, by any standard, minimal).  *See, e.g.*, Plaintiff's First Amended Complaint ¶¶ 24 (discussing the "common practice in the Eastern District of Texas"); 28 (discussing the changing of the filing date of the ESN complaint in the Eastern District of Texas by its Chief Clerk); 33 (complaining of Frenkel's statement about "the abusive nature of litigating" patent cases in "East Texas"); 64  (discussing Cisco's statement that Cisco "continues to have high regard of the judiciary of the Eastern District of Texas and confidence in the integrity of its judges"); 68 ("Plaintiff represents companies involved in patent infringement lawsuits in the Eastern District of Texas").

The evidence in this case clearly shows that this was a public controversy, as it was a topic of widespread public debate.  *See Lundell*, 98 F.3d at 363 (citing *Waldbaum v. Fairchild*

---

[47] *Id.* at pp. 1072:16-1073:5.

*Publications, Inc.,* 627 F.2d 1287, 1296-97 (D.C. Cir.), *cert. denied,* 449 U.S. 898 (1980), for the definition of "public controversy" as "one raising issues that might reasonably be expected to have an impact beyond the parties directly enmeshed in the particular controversy"). The evidence before Judge Schell in the Albritton case included the following: Justice Scalia, during oral argument in *eBay v. MercExchange,*[48] (a patent case) referred to Marshall, Texas (which is in the Eastern District of Texas) as a "renegade jurisdiction" and noted that "maybe we should remedy that problem."[49] This, along with other concerns about the patent law system has led to proposed legislation to deal with abuses of the patent law system. On September 28, 2006, the U.S. House of Representatives passed House Resolution 5418, which, among other things, requires tracking of any "evidence indicating that litigants select certain of the [designated] judicial districts [...] in an attempt to ensure a given outcome."[50]

Numerous law review articles have also discussed this public issue. *See* Statement of Undisputed Facts, Statement (3). The subject has also been the focus of numerous news articles. *See id.*

Ward testified that the articles at issue were critical of the Eastern District of Texas.[51] He admitted the Patent Troll Tracker blog was read by attorneys practicing in IP litigation and that the ABA Journal had said that patent attorneys should read the Patent Troll Tracker blog to know the status of patent litigation in the Eastern District.[52] The ABA Journal said the Patent Troll Tracker was a "must read."[53]

---

[48] Exhibit 10, Transcript of Oral Argument at 10-11, *Ebay Inc. v. MercExchange, L.L.C.*, 547 U.S. 388 (Mar. 29, 2006).

[49] *Id.*

[50] Exhibit 13.

[51] Exhibit 9 at p. 779.

[52] *Id.* p. 785.

[53] *Id.* p. 784.

A controversy that is reported so widely in the media and that garners attention from the government is an issue of public concern. *See Lundell*, 98 F.3d at 363. The fact that some of these articles were published after the Articles at issue does not diminish their importance in this determination; the Articles "did not cause the later press coverage of the [public issue], the [public issue] itself did." *See Trotter*, 818 F.2d at 434. Ward cannot credibly claim that the Articles were not about the perceived abuse of the patent system by non-practicing entities in the Eastern District of Texas when he quotes in his live pleading large sections of the Articles which do not mention Ward at all, but rather concern the Eastern District of Texas. A defamation plaintiff cannot "avoid the protection afforded by the Constitution . . . merely by the use of creative pleading." *Beverly Hills Foodland, Inc. v. United Food & Commercial Workers Union,* 39 F.3d 191, 196 (8th Cir.1994). This Court should follow Judge Schell's ruling on this issue and find that the articles at issue involved an important matter of public concern and also involved a public controversy.[54]

The summary judgment evidence conclusively shows that the articles at issue concerned a public controversy and a matter of public concern, so Ward has failed to carry his summary judgment burden on this issue.

## 2.   Ward has not carried his summary judgment burden concerning his role in the controversy, and his undisputed role in the controversy has been shown.

Ward's role in the public debate over the abuse of the patent system by non-practicing entities in the Eastern District of Texas was certainly more than trivial or tangential. In fact, Ward held an important role in this controversy because he was one of the top filers of patent cases on behalf of non-practicing entities in the Eastern District of Texas.[55] Indeed, according to

---

[54] Exhibit 8 at pp. 1072:1-1073:11.

[55] Defendant requests that the Court take judicial notice of this fact, as evidenced by publicly available case information from May of 2006 through December of 2007 on the Electronic Filing System. It is common practice

public records on the ECF system, Ward was identified as counsel of record in 129 patent cases pending in the Eastern District of Texas.[56]  Ward testified that 90-95% of his law practice was patent infringement litigation.[57]  About 95% of his work is contingent fee patent litigation in the Eastern District of Texas.[58]  Moreover, as a result of the Article, Ward took action to shut down the speech he did not like.[59]  Indeed, after he filed suit, his lawsuit against Cisco generated significant press coverage and his counsel were quoted widely disputing the articles at issue.[60]

Moreover, Ward approves or "stands behind" the action taken by Ms. Amie Mathis in her numerous efforts to persuade the clerk to change the court's record.[61]  He denies that there is an abusive practice in the Eastern District of Texas, but acknowledges others, including Frenkel, are "entitled to their opinion on that" issue.[62]

An individual this engrained in a public issue has more than a trivial or tangential role in the controversy even where he does not actively engage the public's attention, so Ward's claim that he is not a public figure simply because he has not sought out media attention – or, more accurately, simply because he has not lobbied for patent reform in Washington, D.C. – is of no moment.  For example, in *Secrist v. Harkin*, 874 F.2d 1244, 1245 (8th Cir. 1989), a Marine Corps officer was held to be a public figure not because of anything he had done, but merely because he was appointed to the office staff of a U.S. Senator.  *See id.* at 1245, 1247 n.2.  *See also*

---

for courts to take judicial notice of such information on official court documents, as such records are "not subject to reasonable dispute."  *See e.g. In re James*, 300 B.R. 890 (W.D. Tex. 2003).

[56] Exhibit 28 (List of cases).  This list of cases was derived from public records on the ECF system, and therefore it is an appropriate matter for judicial notice.  *See e.g. In re James*, 300 B.R. 890 (W.D. Tex. 2003).  To the extent Ward disputes this list, Cisco will produce official docket sheets for each of the cases.  Cisco has not done so here because the documents are voluminous (more than a box of documents).

[57] Exhibit 9 at p. 745.

[58] *Id.* p. 793.

[59] *Id.* pp. 773, 779.

[60] *Id.* p. 775.

[61] *Id.* pp. 751-807.

[62] *Id.* p. 754.

18

*Lundell*, 98 F.3d at 362 (citing *Gertz* in noting that it is possible for a person to become a public figure through no purposeful action of his own). *Trotter*, 818 F.2d at 435-436 ("an individual cannot erase his public-figure status by limiting public comment and maintaining a low public profile").   It is sufficient that Ward "voluntarily engaged in a course that was bound to invite attention and comment."  *Rosanova v. Playboy Enters., Inc.,* 580 F.2d 859, 861 (5th Cir. 1978). That he did is undisputed; Frenkel, after all, was far from the first person to publicly comment about the abuse of the patent system by non-practicing entities in the Eastern District of Texas, and about the suspicious filing of the ESN case – Patently-O and Patent Law 360 both commented on the ESN filing before Frenkel.  It is also well established that an attorney may become a public figure with respect to his representation where the attorney goes beyond his representation of his client in a way that relates to the public controversy.  *See Marcone v. Penthouse International Magazine for Men,* 754 F.2d 1072, 1086 (3rd Cir. 1984) (holding that even though the plaintiff lawyer's associations with his client were not intended to attract attention, they nevertheless were sufficient to render him a limited-purpose public figure regarding his connection to the gang's drug trafficking); *Schwartz v. Worrall Publications, Inc.,* 258 N.J. Super. 493, 499, 610 A.2d 425, 428 (1992) (lawyer representing many public-school districts was found to be a public figure for purposes of an education-related controversy).

Finally, Ward had access to the very same media outlet that he claims defamed him.  One of the two rationales articulated by the U.S. Supreme Court for the limited-purpose public figure status is that a limited-purpose public figure presumably has media access.  *See, e.g., Suriano v. Gaughan* 480 S.E.2d 548, 561 (Vir. 1996) (noting in support of its finding that the plaintiff was a limited-purpose public figure that the plaintiff could have responded in the same forum that was used to make the allegedly defamatory statement).  Here, Ward could have posted his own

19

explanation or comment to the October Articles on the Patent Troll Tracker itself, which allowed readers to make comments. His comments could have been seen alongside the very articles he complains about. As *Gertz* made clear, public figures are given less protection because "the first remedy of any victim of defamation is self-help—using available opportunities to contradict the lie or correct the error and thereby minimize its adverse impact on reputation." *Gertz v. Robert Welch, Inc.,* 418 U.S. at 344. And, indeed, Ward filed suit against Cisco, and responded to the articles, through his attorneys, and challenged the articles at issue.[63] He also garnered widespread press in doing so.[64] Indeed, he agrees he was able to exercise enough power and influence to "shut down" the Patent Troll Tracker blog.[65]

Ward's only evidence about the nature of his involvement in the public controversy surrounding patent litigation in the Eastern District of Texas is two pages from his deposition where he states that he has not lobbied for patent reform in Washington, D.C. This is insufficient. Viewing that scant evidence in the light most favorable to Cisco, it is plain that Ward has not carried his summary judgment burden on this issue. Moreover, the undisputed facts demonstrate that Ward's role in the controversy at issue was more than trivial or tangential, and thus Cisco's Cross-Motion should be granted.

## VI. CONCLUSION:
## WARD'S MOTION FOR SUMMARY JUDGMENT SHOULD BE DENIED AND CISCO'S CROSS-MOTION SHOULD BE GRANTED

"[A] party who moves for summary judgment has a heavy burden of persuasion," *Steele v. Armour & Co.,* 583 F.2d 393, 394 (8th Cir. 1978), and in this instance Ward has failed to carry his burden. There is no question that the controversy about which Frenkel's articles were written

---

[63] *Id.* at p. 775.
[64] Exhibit 29.
[65] *Id.* at p. 773, 779.

5643849v.2

was in fact a public controversy, and a matter of public concern.  As to Ward's involvement in the controversy, he simply fails to carry his summary judgment burden of establishing that he was not involved and is just a private figure.

Moreover, the undisputed facts demonstrate that Ward is indeed a limited-purpose public figure, and therefore the Court should grant Cisco's Cross-Motion.  Accordingly, Plaintiff's Motion for Partial Summary Judgment should be denied and Cisco's Cross-Motion should be granted.

5643849v.2

Respectfully submitted,

JACKSON WALKER L.L.P.

By: /s/ Charles L. Babcock
      Charles L. Babcock
      Federal Bar No.: 10982
      Email: cbabcock@jw.com
      Crystal J. Parker
      Federal Bar No.: 621142
      Email: cparker@jw.com
      1401 McKinney
      Suite 1900
      Houston, Texas 77010
      (713) 752-4200
      (713) 752-4221 – Fax

ATTORNEYS FOR DEFENDANT
CISCO SYSTEMS, INC.

## CERTIFICATE OF SERVICE

This is to certify that on this November 5, 2009, a true and correct copy of the foregoing was served via ECF upon:

Patricia L. Peden
Law Offices of Patricia L. Peden
5901 Christie Avenue
Suite 201
Emeryville, CA 94608
*Attorney for Plaintiff John Ward*

Nicholas H. Patton
Patton, Tidwell & Schroeder, LLP
4605 Texas Boulevard
P.O. Box 5398
Texarkana, Texas 75505-5398
*Attorney for Plaintiff John Ward*

James A. Holmes
605 South Main Street, Suite 203
Henderson, Texas 75654
*Attorney for Plaintiff John Ward*

/s/ Charles L. Babcock
Charles L. Babcock

5643849v.2