# EXHIBIT 10

LEXSEE 2006 U.S. TRANS. LEXIS 29

Go to Supreme Court Opinion      Go to Supreme Court Brief(s)

EBAY INC., ET AL., Petitioners *v.* MERCEXCHANGE, L.L.C.

No. 05-130

SUPREME COURT OF THE UNITED STATES

2006 U.S. TRANS LEXIS 29

March 29, 2006, Wednesday, Washington, D.C.

**NOTICE:**

JW.000642

2006 U.S. TRANS LEXIS 29, *

[*1] Transcribed by Alderson Reporting Company, Inc., 1111 14th Street, N.W., Suite 400, Washington D.C. 20005-5603, Telephone Number: 202-289-2260

The above-entitled matter came on for oral argument before the Supreme Court of the United States at 11:31 a.m.

APPEARANCES: CARTER G. PHILLIPS, ESQ., Washington, D.C.; on behalf of the Petitioners.

JEFFREY P. MINEAR, ESQ., Assistant to the Solicitor General, Department of Justice, Washington, D.C.; on behalf of the United States, as amicus curiae, supporting the Respondent.

SETH P. WAXMAN, ESQ., Washington, D.C.; on behalf of the Respondent.

**OPINION:** PROCEEDINGS

(11:31 a.m.)

CHIEF JUSTICE ROBERTS: We'll hear argument next in eBay v. MercExchange.

Mr. Phillips.

ORAL ARGUMENT OF CARTER G. PHILLIPS

ON BEHALF OF THE PETITIONERS

MR. PHILLIPS: Thank you, Mr. Chief Justice, and may it please the Court:

The fundamental question that's posed in this particular case is whether or not the court of appeals by adopting a rule that declares categorically that three out of the four traditional factors for deciding whether or not to grant permanent injunctive relief will be irrebuttably presumed to be satisfied whenever a jury has found

JW.000643

2006 U.S. TRANS LEXIS 29, *

[*2]  that a patent is valid and has been infringed.

The rule in the Federal Circuit for at least 20 years has been that if you have validity and infringement decided by the jury, that then there is irrebuttable finding of -- of irreparable injury, of inadequate remedy at law, and that the balance of harms decidedly favors the plaintiff, and that the only issue that remains available to the defendant in that circumstance is a heightened scrutiny on the standard of whether or not the -- the public interest commands that an injunction be denied in a particular case. And even in that context, the Federal Circuit's rule is extraordinarily stringent because not just any public interest can -- will satisfy, but instead, it has to be a public interest that endangers the public health.

JUSTICE GINSBURG: Is that all in Judge Bryson's decision? I certainly didn't see it there.

MR. PHILLIPS: That -- that is precise -- I think it's the only way to read Judge Bryson's decision, Justice Ginsburg, where the court says, at page 26a, that a permanent injunction will issue once infringement and validity have been adjudged, and then say, to be sure, it will not be so to protect the public interest. And

JW.000644

2006 U.S. TRANS LEXIS 29, *

[*3]  we all know the traditional rule with respect to the grant of injunctive relief is that it's a four-factor test.

JUSTICE GINSBURG: I didn't see anything about irrebuttable presumption.

MR. PHILLIPS: Well, the point is that if an injunction follows with a finding of -- of validity and infringement, then that means that there has to be -- there has to be irreparable injury, inadequate remedy at law, and that the balance of hardships has to tilt in -- in favor of the plaintiff. And then the only issue that remains is whether or not the public interest justifies not granting an injunction under the circumstances of this case. It seems to me there's no other way to read that.

And if you read it in the context of the -- of the previous 20 years of decisions from the Federal Circuit, it is absolutely clear. We don't have the opportunity to come back as a defendant in an infringement action and say, Your Honor, in the specific facts of this case, this is someone for whom money damages is a completely adequate remedy.

And -- and it seems to me quite clear that section 283 is designed to be exactly the opposite of the way the Federal Circuit has interpreted this -- this scheme. Section

JW.000645

[*4] 283 says explicitly -- and this is at page 1 of the blue brief -- district courts, quote, may -- not shall -- grant injunctions in accordance with principles of equity. And principles of equity, as Justice Story said almost 200 years ago, systematically reject the idea that you will act on a categorical basis in deciding whether or not to grant or withdraw the injunctive relief in -- in particular circumstances. And to the contrary, you have to look at each specific issue.

And in that regard --

JUSTICE SCALIA: Is -- is that so with -- with respect to someone else's use of -- of your property? It seems to me very rare where -- where someone takes your property, that the court wouldn't -- wouldn't give you the property back and -- and simply say, you know -- I can think of a few extraordinary examples. If somebody makes a statue out of stolen gold, you know, the -- the old classic, I guess you'd get the money back. But ordinarily we're talking about a property right here, and -- and the property right is -- is explicitly the right to exclude others from -- from use of that. That's what the patent right is. And all he's asking for is give me my property back.

MR. PHILLIPS: Right. And

JW.000646

2006 U.S. TRANS LEXIS 29, *

[*5]  -- and Congress already made the -- the balance, Justice Scalia, with respect to that because Congress obviously identified the property right as the right to exclude. And then Congress did not confer upon the district courts no discretion to act in -- in a situation where the property right has been violated. Instead, Congress expressly adopts in 283 a very broad grant of equitable discretion. To be sure, in the ordinary case, you -- you very well may have irreparable injury proved, but the question is, do you -- do you eliminate any inquiry and any specific facts of the case and instead not only presume it, which I think is a mistake, although the district court did that and found that in this case the presumption was rebutted, but to -- but to say irrebuttably it's presumed that you have irreparable injury, irrebuttably presumed that you don't have an adequate remedy at law, and irrebuttably presume that the balance of equities tilt in favor of the plaintiff. And that, it seems to me, cannot be squared with the language of the statute.

And, indeed, on that score, the United States sort of magically ends up on our side of the -- of the table because the United States says the same

JW.000647

2006 U.S. TRANS LEXIS 29, *

[*6] thing. There is no way --

JUSTICE BREYER: On Justice Scalia's question, I was trying to think of some, and I was trying to think the analogy might -- you might find some analogy in the public utilities field, the -- or a ferris wheel or something. What you want is a person who uses his property not at all himself, but licensed the public generally. And now would a -- would a court issue an injunction there? And as I think about that, I don't realize I don't know the answer.

MR. PHILLIPS: I don't know of any. I mean, I certainly wouldn't categorically declare that you have to I guess is the way I would respond to that.

JUSTICE BREYER: Yes, that's what -- I mean, that -- that's what you're trying to analogize this case to, I guess, is a person who licenses others to use his property and never uses it himself.

MR. PHILLIPS: That's precisely what this case involves.

JUSTICE BREYER: And there, I don't know how courts do normally act in other areas of property law.

MR. PHILLIPS: Well, I don't know that there are a whole lot of them like that, but the one thing that -- I mean, there are two things to think about the property concept in the statute.

First of all, Congress does not

JW.000648

2006 U.S. TRANS LEXIS 29, *

[*7] declare that the property interest here is a real property interest, which traditionally has been protected differently. It's a personal property interest, which is traditionally given -- accorded less protection under this kind of a scheme. And so there -- and -- and again, Congress in any event struck the balance. It didn't say, as it could have, that there is presumed -- there's a presumption that we have an injunction. It didn't say, as it could have, that we shall have a -- shall have either a presumption or an injunction in any particular case. And so under the statutory scheme here, it seems to --

CHIEF JUSTICE ROBERTS: Well, but -- but the exercise of discretion is channeled over time, as -- as judges apply it in -- in similar cases. You're not suggesting that in a typical run-of-the-mine patent case, no special considerations, it would be wrong to say that in those cases you typically would grant an injunction?

MR. PHILLIPS: I think in those cases, the irreparable injury and the inadequacy of the remedy at law will be -- will be easy to demonstrate, as they have been for hundreds of years.

The -- the fundamental difference -- this is important to have this in mind. The

[*8] Federal Circuit adopted this rule of law some 20 years ago. That's before the high-tech boom, before the explosion in the number of patents. And so the opportunity to deal with these issues on an individualized basis that might give rise to some kinds of rules that you could, in fact, apply to the generality of cases based on an experience has never been there. We have been dealing with an irrebuttable presumption for 20 years in a way that has -- has completely stultified the ability to develop any of those kinds of rules.

And what we're asking this Court to do at this point is to say, no, enough is enough. We need to go back to a time where the -- go back to the language of the statute, confer the discretion on the district courts.

And it's important not just for a case like this one, but it -- but it distorts tremendously the settlement value and the process and the relationship between the patent holder and all of the potential licensees because we're in a -- in a world -- and I don't think the Court can ignore this because it's in the amicus briefs. We're in a world where if a patent holder files a lawsuit in Marshall, Texas, no patent has ever been declared invalid in that

JW.000650

2006 U.S. TRANS LEXIS 29, *

[*9] jurisdiction, and no patent has never been found not to infringe. And then you take that finding automatically and you turn it into an injunction. Any person who has been threatened under those circumstances and told that we're going to face a lawsuit in Marshall, Texas is going to have a very different negotiating posture than in a situation where --

JUSTICE SCALIA: You know, I mean, that's -- that's a problem with Marshall, Texas, not with the patent law. I mean, maybe -- maybe we should remedy that problem.

MR. PHILLIPS: Well, I hope you --

JUSTICE SCALIA: But I don't think we should write -- write our patent law because we have some renegade jurisdictions.

Why -- why isn't the -- the free market normally adequate to solve any problems you're talking about? Everybody is in this for the money. Nobody is going to hold off giving the license beyond the point where -- where it makes financial sense.

MR. PHILLIPS: Well --

JUSTICE SCALIA: Why can't -- why can't we let the market take care of the problem?

MR. PHILLIPS: Well, I think the -- the market will take care of the problem. The question is under what standards are you going to apply. Are you going to say that there is

JW.000651

[*10] no effective check on the jury system, that it goes automatically from a jury's finding to injunctive relief, or are you going to implement it against the backdrop of what Congress specifically provides, which is that the district courts should exercise equitable discretion in deciding how best to proceed.

JUSTICE GINSBURG: One of the problems with the district court exercising equitable discretion without a close review by the Federal Circuit is just the thing that the Federal Circuit was created to handle, that is, to get a tremendous disparity among district judges. I don't know that it's only in Marshall, Texas that you have a tilt in one direction or in the other. So the Federal Circuit is put there not to say that the district judges have no discretion, but to try to rein it in somewhat so that you won't have wide disparities, which you very well might have if you just say discretion to the district judges and very light review on appeal.

MR. PHILLIPS: But, Justice Ginsburg, the -- the problem with that is that that's not the scheme that Congress created with respect to the remedial aspects of -- of the patent laws. I mean, it is surely the case that Congress meant, as --

JW.000652

2006 U.S. TRANS LEXIS 29, *

[*11] as substantive patent law is generally enforced and implemented, that the Federal Circuit would play a signifi-cant role in ensuring some kind of uniformity, but Congress didn't then go the extra step and say, and when it comes time to decide whether or not injunctive relief ought to be granted, that it will -- that we will presume it or that we will deal with it in a categorical way. Congress granted that discretion to the district courts and with good reason because district --

JUSTICE SCALIA: I think maybe you exaggerate the -- the extent of equitable discretion. I mean, it wasn't as though it's just left up to the judge, seems like a good idea or not a good idea. There are a lot of rules for when -- when you would give injunctive relief and not. And -- and I -- you know, I'm not sure you're going to get into the kind of wide-ranging allowance that -- that you seem to be arguing for.

MR. PHILLIPS: Well, I don't know that I need a wide-ranging allowance with respect to this. What I need is elimi-nation of the irrebuttable presumption that doesn't allow any consideration of whether money damages are adequate in a particular case.

And -- and here, it's very important to focus. The

JW.000653

2006 U.S. TRANS LEXIS 29, *

[*12] -- the district judge didn't just say, I woke up this morning and I felt really good about the defendant, and therefore, I'm not granting an injunction. The district court here said, I'm making specific findings of fact with regard to the adequacy of money damages to deal --

CHIEF JUSTICE ROBERTS: Well, but he said other things too, and one thing he said is, I don't like business method patents very much, and so I'm not going to give an injunction here.

MR. PHILLIPS: Well, that's --

CHIEF JUSTICE ROBERTS: Do you think that was proper or improper?

MR. PHILLIPS: That's -- that's not precisely what he said, Mr. Chief Justice. What he said was that business method patents stand on a somewhat different footing because they're subject --

CHIEF JUSTICE ROBERTS: He said there's a growing concern over the issuance of business method patents.

MR. PHILLIPS: Right.

CHIEF JUSTICE ROBERTS: Is that an appropriate consideration to take into account in determining whether to grant an injunction or not?

MR. PHILLIPS: I think probably, at the end of the day, it wouldn't be, but the bottom line is that he did that in the context of analyzing the public interest consideration and he said that

JW.000654

2006 U.S. TRANS LEXIS 29, *

[*13] didn't --

CHIEF JUSTICE ROBERTS: Well, then he went on and he said --

MR. PHILLIPS: -- tilt in favor.

CHIEF JUSTICE ROBERTS: -- another -- another consideration is that this patentee does not practice its patents. But, I mean, isn't that just saying he's, you know, the -- the guy in the garage and he's an inventor and the way he's going to market his discoveries is by getting some firm that basically speculates on patents.

MR. PHILLIPS: Sure. And --

CHIEF JUSTICE ROBERTS: And if he's denying that inventor, you know, the -- what he'd give to Bell Labs -- or whatever Bell Labs is these days -- that does practice the inventions --

MR. PHILLIPS: I should know that actually, but --

(Laughter.)

MR. PHILLIPS: But, Mr. Chief Justice, I -- I think you can -- it's -- it's not fair to pick apart each one of his findings and say does that finding enough or is that finding enough.

The truth is the district court made a series of four findings that overlap, and one of which was, obviously, he doesn't -- he doesn't practice his patent. He also doesn't effectively license. He's willing to license his patent to eBay. He's willing to license this patent to anybody under these circumstances.

JW.000655

2006 U.S. TRANS LEXIS 29, *

[*14]

JUSTICE KENNEDY: Well, but --

MR. PHILLIPS: And candidly, most of the licensing arrangements don't even exist, and they're -- I'm sorry, Justice Kennedy.

JUSTICE KENNEDY: Well, I'm -- I interrupted you.

But the -- the business process point you give away fairly quickly. I -- I thought that was rather substantial. The whole point is, is that a business process patent is -- is difficult to define and could be very -- it can be very restrictive.

MR. PHILLIPS: I -- I think in -- in a proper case -- and I don't think you can do it under the -- under the public interest analysis. I think you'd probably end up doing it under the balance of the hardships. But in any event -- and -- and what you -- you know, obviously, this case is -- is more complicated because --

JUSTICE KENNEDY: My concern is if you take that away, I don't know if you've got a lot left for the -- saying no injunction in this case.

MR. PHILLIPS: Well, I -- I mean, there's plenty left because he doesn't practice this invention. He has no intention of practicing this invention beyond the receipt of money. Money damages are a completely adequate remedy under these particular circumstances, given -- given especially

JW.000656

[*15] the fact that if -- if the infringement continues -- and remember, this is not a situation where he proposes to continue to infringe. We propose to work around it, but if the infringement continues, we're then subject to enhanced damages and all of the deterrent power that that has, plus the possibility, obviously, down the road that the district court could, on a rule 54 motion, now come back and say, well, no, now I've decided that injunctive relief is warranted under these circumstances.

JUSTICE GINSBURG: Well, isn't it a concern that Congress didn't provide for compulsory licensing which this seems to have a very strong resemblance to? It says eBay wants to do this, so they're going to have to pay for it, but the patentee can't stop them. It just has -- in effect, has to license them to do it.

MR. PHILLIPS: But -- but we're not asking for a compulsory license because it is not our intention, going forward, to infringe this patent. We've made it very clear to the district court and the district court recognizes that we not only intend to but have, in fact, implemented a design-around or a work-around to this particular patent. And that's what we expect will happen. So we're not

JW.000657

Ark.000636

2006 U.S. TRANS LEXIS 29, *

[*16] asking for the right to continue to infringe and the willingness to pay as we go.

Our concern -- and this does go to the business method patent because it does go to the -- to the uncertainty. The problem we have here is we don't know where the line is going to be drawn. That's why the district court said specifically, you know, there's going to be unending litigation on this because it's very difficult to define the metes and bounds of this particular patent, and we're going to have to fight over that, so that the traditional reason for injunctive relief, which is to bring peace, isn't available in this case. We're not going to have peace under these circumstances.

And when you have that situation and you have the kind of uncertainty, not because of business method patents generally -- that's -- that's where I was I think probably giving up too much immediately. I don't think the fact of a business method patent is per se a problem, but I think analyzing the specific business method patent and its uncertainty is a legitimate consideration for the district court to take into account in deciding whether or not, in a particular circumstance, we are better off saying, pay the plaintiff

JW.000658

2006 U.S. TRANS LEXIS 29, *

[*17] the money for the past injury, let's see how the work-around develops, and take it into account, but without the sort of --

JUSTICE KENNEDY: Well -- well, tell me how -- how this work. It seems to me that an injunctive hearing is -- might be the cheapest, most effective way to -- to sort out whether there's going to be a violation. You call the parties in and they indicate what -- what they propose to do, and the judge says, well, this is within it or it's without it. It's -- it's much cheaper than a -- a new lawsuit.

MR. PHILLIPS: Well, of course, the consequences of the -- of the process are significantly different because, obviously, the remedies for -- for contempt are significantly more draconian than -- than just a finding of a -- of a violation.

But more -- more important than that, Justice Kennedy --

JUSTICE KENNEDY: Well, but this gives you the advantage of coming in in advance saying, I want -- I -- I want a ruling in advance that I'm not going to violate the injunction. You've got a cheap lawsuit.

MR. PHILLIPS: Well, and the reality is the district court already looked at this and said that it -- it is the district court's judgment that they're going to require full

JW.000659

2006 U.S. TRANS LEXIS 29, *

[*18] infringement trials. I mean, that was the finding it made with respect to the balance of hardships. And -- and nei-ther the court of appeals nor the -- nor the respondent in this case has -- has challenged that particular finding. So the reality is the district court has made the determination that that's not -- that process is either not available or not practical in the context of this particular case, which of course, goes back to why it's important to make sure that you look at each of these cases on their individual facts rather than across the board on a -- on these -- on an irrebuttable presumption basis.

The -- the additional point that I think it's important I at least spend a minute on, because the Court asked for us to deal with Continental Paper Bag, is that it does seem to me quite clear that, at least at this stage, the parties are pretty much in sync, that -- that the Court need not revisit Continental Paper Bag. The holding in that case is actually almost a sort of quintessential situation where you have two participants in the market, one of whom would like to take advan-tage of a patent that will improve that participant's ability to produce a product. The patent holder

JW.000660

2006 U.S. TRANS LEXIS 29, *

[*19] is not ready yet to develop that product using that particular method and, therefore, sues to stop his competitor from entering into that market. I mean, that's the classic kind of situation where you have a -- you know, where you -- where you've got the potential infringer is looking at what's going on and making a decision and copying it and then trying to implement it. And the Court said, under those circumstances, you get an injunction.

But here, of course, we're dealing with a vastly different situation, as we -- as we point out that -- in our brief, where the -- at page 9 where the district court specifically found that not any of eBay's success is attributable to anything in the patents of the plaintiff in this case and that nothing in the patents that were put forward by the plaintiff in this case provide any basis on which anyone could build a business model. So this is, to my mind, the antithesis of the situation in Continental Paper Bag.

But in any event, the holding there is clearly not implicated here. It's been codified by Congress. There's no basis for the Court to reconsider it.

To the extent that there is -- is dicta in there that talks about the right to exclude,

JW.000661

2006 U.S. TRANS LEXIS 29, *

[*20] Justice Scalia, I think, in general, the right to exclude is one that you do, in fact, enforce with injunctive relief in many cases, but the question here is whether or not the Federal Circuit should have adopted a rule that says you -- you enforce it in every case irrebuttably as to three of the four factors, and as to the fourth factor, you don't go any further than requiring the plaintiff to show that there's a -- an imminent public health crisis.

Under those circumstances, it seems to me the Court should reverse the court of appeals. And, indeed, if there were ever a case in which the Court ought to uphold the district court on a -- under the abuse of discretion standard, it is this case.

CHIEF JUSTICE ROBERTS: Why should we -- if I can get back to one of the factors. Why should we draw a distinction between the -- the sole inventor who needs a patent speculation firm to market his discovery and -- and somebody else? Why -- why should he lose the leverage of the normal injunction and have substituted for that a duel of experts over what a reasonable royalty should be?

MR. PHILLIPS: Because the -- because Congress didn't dictate that he gets that leverage in every situation.

JW.000662

2006 U.S. TRANS LEXIS 29, *

[*21]  And -- and it's quite possible that the -- there are going to be a lot of situations. And the Solicitor General's brief identifies four of them in which an inventor, who doesn't plan to practice the invention, engages in -- in various kinds of licensing schemes that create all kinds of interrelationships among the way the patent is going to be developed, and I think all of those are perfectly legitimate and could easily justify injunctive relief in precisely the kind of case that you pose, Mr. Chief Justice. But that's not this case.

CHIEF JUSTICE ROBERTS: Can I -- maybe I don't understand what it means to practice the invention. If -- if I -- does that -- if -- if I invent something, you know, a new -- better way to make a car engine work and I want to sell that to somebody, that's -- you'd say that's not practicing the invention because I don't build cars?

MR. PHILLIPS: Right. But again, you've licensed it and there are certain rights that, obviously, arise out of the li-censing. None of these factors is alone, I don't believe, sufficient to say you don't get injunctive relief. But I think what the district court said, and I think that this is why the Court ought to affirm the district

JW.000663

2006 U.S. TRANS LEXIS 29, *

[*22] court's under -- under an abuse of discretion standard, which never been applied to this case -- what the Court should say is, look, and where you have no practicing of the invention by the inventor, where you have a complete willingness to license not only to the world, but also to eBay specifically, and where you've never sought preliminary injunctive relief, under all of those -- and where -- and where there's serious question about the lines to be drawn, there's no benefit to be had by -- in the way of trying to eliminate the amount of litigation on an ongoing basis, under all of those circumstances, all of which the district court identified, then it's not appropriate to grant injunctive relief. We'll allow enhanced damages in the interim and even the potential down the road, obviously, of -- of an injunction to serve as enough of a deterrent to protect the right to exclude that the plaintiff has under the statute.

JUSTICE SCALIA: Why -- why does the fact that -- that you're not practicing the invention make a difference? I mean, why -- why should I be in better shape, as far as getting an injunction is concerned, if I produce an automobile engine and -- and make some undeterminate

JW.000664

2006 U.S. TRANS LEXIS 29, *

[*23] profit --

MR. PHILLIPS: Right.

JUSTICE SCALIA: -- from the use of this particular invention in the engine than I would be if I licensed it with a royalty based upon the number of sales of engines? I mean, they're both risking, you know, the same future use of the -- of the device. Why -- why does one situation justify an injunction more than the other?

MR. PHILLIPS: Yes, I think -- I think I ought to modify it slightly because it's not just simply that you don't practice the invention. It's that you're not in the market itself because that's -- that's the Continental Paper Bag case. You know, in Continental Paper Bag, they don't want to -- they don't want to practice the invention either because they want to hold it back in order to be able effectively to use it. If they had wanted to license it, that would have made sense too.

But this is not a competitor in the market. If they were a -- it seems to me you have a much better claim to a need to occupy space. That's what the injunction is trying to say. This is my space. I want to occupy it. But if you choose not to occupy it, it's not to say that you abandon your right to an injunction, but that that ought to be a legitimate,

JW.000665

2006 U.S. TRANS LEXIS 29, *

[*24] individualized consideration, among other considerations --

JUSTICE SCALIA: By not occupying it, you mean including not licensing it to somebody else.

MR. PHILLIPS: Well, if you didn't license it -- and actually we have no relevant licenses here too -- that would be another factor that ought to be -- that ought to count in the mix. Again, it's not -- I'm not looking for a presumption the other way and I'm not looking for categorical rules that say that if you -- if you're a nonperforming entity, that you don't get a license, or even if you're a troll, as that term gets bandied around, that you're never entitled to a -- to an injunction.

JUSTICE KENNEDY: Well, is -- is the troll the scary thing under the bridge, or is it a fishing technique? I -- I want --

(Laughter.)

MR. PHILLIPS: For my clients, it's been the scary thing under the bridge, but --

(Laughter.)

JUSTICE KENNEDY: I mean, is that what the troll is?

MR. PHILLIPS: Yes, I believe that's the -- I think that's what -- what it is, although you -- maybe we should think of it more as Orks, now that we have a new generation, but at this point troll is the word that gets -- that gets used.

If there are no further questions,

JW.000666

[*25]  I'd like to reserve the balance of my time, Your Honors.

CHIEF JUSTICE ROBERTS: Thank you, Mr. Phillips.

Mr. Minear, we'll hear from you.

ORAL ARGUMENT OF JEFFREY P. MINEAR

ON BEHALF OF THE UNITED STATES,

AS AMICUS CURIAE, SUPPORTING THE RESPONDENT

MR. MINEAR: Thank you, Mr. Chief Justice, and may it please the Court:

The United States submits that the right to a patent is an important matter, but it must be considered in the context of the remedies as well.

And the United States further submits the patentee's right to an injunction should be covered by the familiar four-factor test this Court has applied in cases such as Weinberger v. Romero-Barcelo. This Court's express endorsement of the four-factor test would provide disciplined guidance and a framework for the lower courts to evaluate whether or not a patent should issue in any particular case.

The court of appeals in this case did not make express reference to the four-factor test. Nevertheless, it did identify the difficulties with the -- the district court's decisions.

CHIEF JUSTICE ROBERTS: You don't think Mr. -- you don't think Judge Bryson forgot about the four- factor test, do you?

MR. MINEAR: Absolutely

JW.000667

[*26] not.

CHIEF JUSTICE ROBERTS: Sure. And -- and he was just reflecting the reality that in a typical case, this is what happens. It seems to me all you want us to do is edit his opinion and stick in this formulaic paragraph about there are four factors and here they are.

MR. MINEAR: Not exactly, Your Honor. We think that there is some legitimate confusion among the patent bar and in the community about whether or not this test issues nearly automatically or not. Certainly there are many amicus briefs on both sides. And we think it's useful for this Court to make clear that this is an exercise of equitable discretion.

Now, Judge Bryson, I think, was aware of the four-factor test. In fact, both parties cited the four-factor test before the district court.

He was also aware of the abuse of discretion standard. That's a well-established standard and the parties cited that standard to the Federal Circuit in the course of briefing this case below.

But what we think this Court can do is it can provide guidance on how those factors are applied in the patent context in this very important area. We think the court of appeals decision is correct. The judgment is correct. But we think that

JW.000668

[*27]  there's some benefit to this Court explaining why that is so, and I'd like to --

CHIEF JUSTICE ROBERTS: Can I ask you about one factor in particular? What if by the time you get to the injunction stage, the -- the patent office has, you know, rejected all of the underlying claims in a preliminary way? It's not final. Can the district court take that into account in deciding not to issue an injunction?

MR. MINEAR: Well, I think, Your Honor, you're referring to the reexamination process CHIEF JUSTICE ROBERTS: Right.

MR. MINEAR: -- that, in fact, is ongoing in this case. And we think merely that the Patent and Trademark Office's office action is not sufficient. In this case, if I can speak outside the record, there has been what is called a first office action and a second office action, but no final action by the PTO. But even if there was final action by the PTO, that would still be subject to review by an administrative body, the Board of Patent Appeals and Interferences, and there would be further judicial review. The PTO would not withdraw the patent, would not certify that it's invalid until the conclusion of the judicial process.

So we think for that reason the district court

JW.000669

2006 U.S. TRANS LEXIS 29, *

[*28] should not act precipitously. It may have -- the district court would have discretion to take that into account, whether it should stay further proceedings pending the --

CHIEF JUSTICE ROBERTS: Well, that's what struck me as odd there. Footnote 27 says that's a basis for staying the injunction. It seems to me if it's a basis for staying the injunction, it's a basis not to issue one in the first place.

MR. MINEAR: Well, it also might be a -- a basis in terms of how to structure the injunction. We simply meant to indicate in footnote 27 the district court has discretion on remand to take these factors into account based on where the case is at that time. We're not taking a position one way or another what the Court should do in this particular case. That is an exercise of discretion. It's subject to review for abuse of discretion.

But I would like to talk about the four individual factors in this case because I think it provides helpful guidance in the resolution of the dispute before the Court.

As an initial matter, with regard to irreparable injury, patent infringement normally will result in irreparable injury because it denies the patent holder its statutory right to exclude

JW.000670

2006 U.S. TRANS LEXIS 29, *

[*29]  others from practicing the invention. It's the type of right that is susceptible to irreparable injury because --

JUSTICE STEVENS: But it denies the right subject to being a damage remedy that's available.

MR. MINEAR: That's correct, but the difficulty here is the pragmatic question of whether the district court can determine whether damages are appropriate or not in a particular case.

JUSTICE STEVENS: Is it always -- is it always going to be irreparable injury if the patentee always gets fairly compensated?

MR. MINEAR: No. There -- we certainly recognize there can be cases where there would not be irreparable --

JUSTICE STEVENS: So if there are some cases when he gets fairly compensated and some he does not, why should you say it's always irreparable injury?

MR. MINEAR: Well, my -- our position is not that it's always, but that it normally is irreparable injury. It usually will be. And there are certainly circumstances we can envision where it would not be irreparable injury.

JUSTICE STEVENS: It usually will be because usually damages are not an adequate remedy?

MR. MINEAR: Yes, that's correct. And the reason why damages are not an adequate remedy is because, as Judge Easterbrook

JW.000671

2006 U.S. TRANS LEXIS 29, *

[*30] indicated, it's very difficult for the district court, looking forward, to determine what business opportunities are available to the -- to the licensor or the practitioner in the face of the prospect of continuing infringement. And that is why, as Judge Easterbrook noted in the Catheter case, the injunction harnesses the market to determine what the market value of that patent is. It forces negotiation between the parties, as compared to the court acting to try and develop a reasonable royalty based on the battle of experts.

JUSTICE SCALIA: When you say going forward, I thought we were talking about damages for the past violation, not damages for future violations which will continue. Are we talking about that too?

MR. MINEAR: Yes, that's what we're talking about.

JUSTICE SCALIA: About the court effectively saying, yes, here pay him and -- and go on and skip away and continue violating it.

MR. MINEAR: Well, when a district court --

JUSTICE SCALIA: In this case, they -- they claim not to want to violate it in the future. They're just talking about, you know, the -- the past actions should -- should be compensable by damages and not -- they should not be subjected to a very threatening

2006 U.S. TRANS LEXIS 29, *

[*31] injunction.

MR. MINEAR: Yes, but in this case the district court has awarded the damages for the past -- past actions already, and the question is how will we deal with the threat of continuing infringement. And the difficulty that the district court faces here is it has to, if it takes no action, as it's done now, it will at some later date have to go back and determine what those damages would be.

JUSTICE SCALIA: Which -- when they will be calculable. You're saying it's hard to calculate them into the future. You want the district court to calculate what the future damages will be and say, we think the damages will be this. Here, take your money, and you, God bless you, go continue to violate the patent.

MR. MINEAR: Absolutely not.

JUSTICE SCALIA: Is that what --

MR. MINEAR: We are suggesting what Justice Kennedy suggested; namely, that the injunction proceedings provide an opportunity to determine whether or not the supposed work-around that eBay has will work or will not, and the injunction will be structured to allow it or not, depending on whether or not it's determined to be infringing. That allows the market to go forward with a determination, a certainty that eBay will

JW.000673

[*32] have that its work-around is either violative or it is not. But our view is that by issuing the injunction, the district court, in the proceedings leading up to the injunction, can determine whether or not this work-around is valid or not.

JUSTICE KENNEDY: Is there a classic case where the injunction should not be issued?

MR. MINEAR: Yes. There -- I think there -- this is a four-factor test, and there are questions of balance of hardship and public interest. And certainly equity should be cautious not to inflict unnecessary hardship on parties. In the case of a nonwillful infringer, for instance, that has made good faith investments that might be set aside by the -- by an injunction, there might be grounds in those circumstances not to issue an injunction. There's also a public interest inquiry as well. If the injunction would threaten national security, public health and safety, undermine core aspects of commerce --

JUSTICE KENNEDY: Business processes?

MR. MINEAR: Well, business processes are not -- the district court clearly erred here in saying that the mere debate about business process of patents is a reason for withholding injunctions. That simply is not a sufficient view

JW.000674

[*33]  -- reason in our mind for weighing against the general public interest and the enforceability of patents and the use of injunctions to make sure that those property rights are secure.

JUSTICE BREYER: Suppose --

CHIEF JUSTICE ROBERTS: I'm curious about your nonwillful infringer. You're devaluing the value of a particular patent by denying the injunction simply because the people who infringed it weren't willful, and I wonder why that makes sense.

MR. MINEAR: We're not suggesting that automatically that there is withhold with relief because of a nonwillful infringement. We're simply drawing the -- the distinction between a case, such as this, where there is willful infringement -- and, in fact, the party has been found to have both had notice of the patent and also have known that it did not -- did not have a reasonable basis for concluding it was not infringing or the patent was invalid. In those circumstances, the patentee takes on greater risk than the party that simply is not aware of the -- of the patent and in a sense stepped over a property line without realizing that, in fact, it was there.

This is, again, a four-factor test, and we believe all factors need to be considered

JW.000675

2006 U.S. TRANS LEXIS 29, *

[*34] in order to provide the --

JUSTICE GINSBURG: Why is it your bottom line then, send it back with your four-factor test, because there seems to be some uncertainty whether that was applied?

MR. MINEAR: We don't think that's appropriate because, first of all, the -- the court of appeals did identify the factors the district court relied on that weighed on -- it thought weighed on eBay's side of the balance, and it properly rejected each one of those.

But furthermore, we think that this Court's enunciation of the tests and the application of the tests, much as it did in the patent case Pfaff v. Wells Electronics 3 years ago, could provide very useful guidance in terms of how this test applies in a specific, concrete context.

But the factors that the court of appeals relied on here and rejected, found insufficient were really quite right. First of all, there should not be an automatic distinction between a party that practices the patent and one that licenses it. They both have --

JUSTICE BREYER: It isn't an automatic distinction, but a person who licenses a patent and who is licensing a patent that probably won't be developed very much beyond what it is -- it's fairly easy to -- I'll

JW.000676

2006 U.S. TRANS LEXIS 29, *

[*35]  ask Mr. Waxman.

MR. MINEAR: Thank you, Your Honor.

(Laughter.)

CHIEF JUSTICE ROBERTS: Thank you, Mr. Minear.

Mr. Waxman.

ORAL ARGUMENT OF SETH P. WAXMAN

ON BEHALF OF THE RESPONDENT

MR. WAXMAN: Mr. Chief Justice, and may it please the Court:

I -- I can anticipate at least one question.

Let me just state at the outset --

(Laughter.)

MR. WAXMAN: -- that long, perhaps centuries, before Justice Story ever wrote his commentaries on equity, it has been firmly, unequivocally established that a final judgment, not -- we're not talking about an interlocutory order, but a final judgment of patent infringement yields an injunction in all but the very rare case. And that settled regime is not an exception to traditional equitable principles. It's an application of those principles.

Equity, as this Court has reminded us over and over again, including in the Weinberger and the Amoco cases -- equity first takes account of the nature of both the right at stake and the violation. And because the only right that a patent provides under U.S. law is a limited-term right to exclude others from practicing the invention, infringement produces an injury that is both, A, irreparable by its nature

JW.000677

[*36] and, B, continuing in the nature of a continuing trespass to chattels. And under traditional equity principles, a showing of either of those things, either irreparable injury or a continuing harm, warrants an injunction in the owner's favor unless the offending party can marshal very strong equities otherwise. That is the settled rule.

Now, no such showing could be made in this case. The jury found, by clear and convincing evidence, that eBay had willfully infringed the '265 patent, that it knew about it, and it had no good faith belief either that the patent was invalid or that it was not infringed. The jury was told that if it found either of those things, it could not find willfulness, and it found willfulness by clear and convincing evidence.

CHIEF JUSTICE ROBERTS: We also know by now that the patent office has rejected all of the claims of the patent. The staff.

MR. WAXMAN: The -- what we know is that -- that is correct, Mr. Chief Justice, with the following clarification, that the office action, as Mr. Minear has indicated, represents a -- an initial judgment by a staff member in the office.

And what -- what is quite -- and it is -- doesn't represent even the PTO's final

JW.000678

2006 U.S. TRANS LEXIS 29, *

[*37] judgment in the case, but what is really revealing here is that reexamination is a process that was invoked by eBay. And as we point out in our brief, typically if a competitor is concerned or doubts the validity of a patent, it will invoke reexamination, ask the PTO to reexamine it when it first learns about it. eBay not only didn't invoke reexamination, it cited the '265 patent at least 24 times years before. It then came to MercExchange and offered to buy it.

CHIEF JUSTICE ROBERTS: Is that a factor that a district court could take into account in deciding whether to issue an injunction?

MR. WAXMAN: I don't --

CHIEF JUSTICE ROBERTS: Say the injunction question came up right now, today. Could the district court say, well, the patent office staff has rejected every claim of this patent, and I'm going to take that into account in deciding whether to put eBay out of business?

MR. WAXMAN: I think that -- the case that the U.S. cites in its footnote is an example where reexamination processes are underway when the case is first filed or when it's pending in the district court, and the district judge certainly has the discretion to say, I don't want to get into a -- a fight here about

JW.000679

2006 U.S. TRANS LEXIS 29, *

[*38] separation of powers and Hayburns case. Let's let the reexam proceed, and then we'll have a trial.

In this case, eBay waited not only until it was sued and not only until it was found to have willfully infringed this patent, but in the middle of the appeals process. It then comes running in and a rule that would allow a district judge now to give notice of that in denying an injunction would basically be a -- an open invitation for everybody to go ahead and try and win at trial, go through the whole multi- year process, and if you don't, just put it into reexam. This -- although the reexamination is required to be -- is required to proceed with, quote, special dispatch under the statute, this reexamination of the '265 patent has been almost 3 years in the patent office and we still don't have a final action.

So we think, in the circumstances of this case, where the district judge had no reason to consider reexam because eBay hadn't invoked reexam at the time, it would be an abuse of discretion for the court to either refuse an injunction or stay it in light of the fact that it's now proceeding.

But that's not an issue for this Court. It wasn't an issue for the court of appeals

JW.000680

2006 U.S. TRANS LEXIS 29, *

[*39]  because it wasn't part of the district judge's analysis of the requisite equitable factors.

And what -- if I can just get back to the facts of this particular case and then talk about the law. The finding of eBay's willfulness in this case disables eBay from invoking the relative balance of harms. We certainly agree --

JUSTICE BREYER: Why? I mean, I think there are so many factors that could enter into it.

MR. WAXMAN: Well --

JUSTICE BREYER: What I was going to ask was if you have a -- a patentee that does only license and, moreover, licenses only to people who, by and large, will not take that product and develop it further, then it's fairly easy to calculate damages.

Now, couple that with a client or a patentee who also waits for a long time, waits till the invention is embedded in a series of other inventions so that if, in fact, there's an injunction, what will happen is that the patentee will be able to extract far more than this particular invention is worth because the infringer would have to give up the entire invention.

MR. WAXMAN: Justice --

JUSTICE BREYER: Couple that with a patent that, if you read it on page 2 of the red brief, reminds, at least one person who

JW.000681

[*40] read it, namely me, that if this could be patented, maybe A&P could patent their process for a supermarket. I -- I mean, you'd worry about that as a judge. And couple that with all the other things that are here.

Now, special case? Why not?

MR. WAXMAN: I've been asked to couple so many things together, I may forget some of the coupling. Please -- I mean this in seriousness. Please remind me because there is a very good answer in law and on the record to each of your points.

JUSTICE BREYER: The main point -- what I was trying to do is I was trying to take what I'd call the patent troll case.

MR. WAXMAN: Okay. First of all, this is no patent troll. The founder of MercExchange really did invent this innovation. He really did, the record clearly shows, spend years of effort trying to build the system to suit himself, and he is no promiscuous licensor. He has -- it has entered into licenses, which are all in the joint appendix, that are very specialized in terms. He was asked by eBay in 2000 to consider selling them. He offered to license them. The parties couldn't come to terms, and eBay then stole the technology. It willfully infringed it, knowing about it, having cited this as prior

JW.000682

2006 U.S. TRANS LEXIS 29, *

[*41]  art, having had one patent rejected as fully anticipated by the '265.

And the common law and equitable principles have -- are quite clear from Story, Pomeroy, all the way back, that when you -- when you're talking about balancing private harms, which is what equity courts do -- I'm not talking about the public interest, but I mean private harms, when you have an adjudicated, willful infringer -- I mean, the jury found that it had no good faith belief either that it wasn't infringing or that the patent was invalid -- you don't balance private harms.

But let's take the case in which you don't have willfulness. It's not this case. Let's take the case of somebody who doesn't try and, quote, practice the patent. That's not this case. Let's take the case of somebody who's a garage inventor who decides the way to exploit the patent is to license it. License -- this -- so far as I'm aware, this is the first case. The district court decision in this case is the first case in the context of a permanent injunction. And I'll explain why preliminary injunctions that seek to preserve the status quo are different. This is the first permanent injunction case I'm aware of that has ever thought that

JW.000683

[*42]  exploiting the patent by licensing it to others to make use of would in -- somehow be costly or disable you from obtaining the relief that section 283 and the -- and tradition provided.

Section -- section 284, which is the damages provision, talks about remedies, remedies for infringement that has already occurred.

The text of section 283 says -- the other side keeps referring to may, may, may not, shall. That's fine. But the purpose of it is to prevent. The operative word in 283 is to prevent. And unless there is an instance in which the patent has expired, the -- the infringer is out of business and can show that it couldn't possibly infringe anymore, an injunction issues to prevent further violation.

JUSTICE BREYER: On that very point, my question there really was -- that was the heart of it -- that I don't think there's a moral or even patent- related value attached to whether you practice it yourself or not. It's just that when you license it, it's easier -- and a lot of other things matter too.

MR. WAXMAN: Well --

JUSTICE BREYER: But it's easier to calculate the damage. Now, at least in some subset of cases.

So if you have a case where, on the one hand, it's easier to

JW.000684

2006 U.S. TRANS LEXIS 29, *

[*43] calculate the damage remedy, and at the same time you fear that to issue and injunction will produce a harm to the other side way out of proportion to, in fact, the value that's being lost by infringing on the patent, then those are two things you'd put in the balance.

MR. WAXMAN: That's --

JUSTICE BREYER: So the -- other things being equal --

MR. WAXMAN: In the case of a nonwillful infringer, a court in --

JUSTICE BREYER: No. Willful, willful. It wouldn't matter willful or nonwillful, because if he's willful, the reason that he might be willful is he thinks that the patentee is holding him up.

MR. WAXMAN: You know, the -- the -- there are 52 self-proclaimed intellectual property professors that filed a brief written by Professor Lemley in support of eBay in this case. Professor Lemley testified under oath to Congress that, even though there are problems with patent trolls, in the case of a willful infringer, the law -- equity doesn't balance private harms.

But even if that were wrong, I acknowledge that in balancing, there may be cases in which you can show a vastly disproportionate harm. Okay? I mean, the other side has amicus briefs that come up with these hypothetical scenarios

JW.000685

[*44] about, you know, one little aspect of a computer chip that has 30,000 components to it. Note, A, that all of those are hypothetical, and B, I'll explain why it's a problem of extremely limited circumstances.

But, of course, equity courts can decide that, just as they can decide whether the -- the, quote, innocent patent holder is guilty of laches, unclean hands, estoppel, all of these other equitable considerations that aren't captured by this formulaic four-factor test but that equity courts, including district courts sitting under -- under 283, consider.

But this is not the case of some profligate licensor. This is somebody who has licensed with specific provisions. The other side says, well, there are no operative licenses, suggesting somehow that the AutoTrader license, which is one of our examples, is in fact invalid. That came up in their brief. It is not correct. It is absolutely true that eBay will not -- the '265 patent is included by that license. It relates to the field of use of auto sales. It provides specifically that eBay -- that MercExchange cannot receive royalties unless it enforces this patent within the field of use. There is no doubt that -- that MercExchange

JW.000686

[*45] will not be able to start getting patent royalties from AutoTrader unless and until it obtains this injunction. And for example --

CHIEF JUSTICE ROBERTS: Mr. Waxman, you mentioned, in -- in responding to the suggestion that we're dealing with a troll, you described -- what exactly is the invention here?

MR. WAXMAN: The -- the invention is a -- it's -- it's not a business method. It doesn't claim methods. It claims a system, an apparatus for an electric market for the sale of goods via a network.

CHIEF JUSTICE ROBERTS: Electric. I mean, it's not like --

MR. WAXMAN: Electronic market.

CHIEF JUSTICE ROBERTS: -- he invented the, you know, internal combustion engine or anything. It's very vague I think, and this is one of the considerations --

MR. WAXMAN: Well --

CHIEF JUSTICE ROBERTS: -- the district court mentioned. The exact parameters of when it was going to be in-fringed and when it wasn't were amorphous. And so isn't that a factor the district court can take into account in deciding whether to issue an injunction because it's going to be hard to issue an injunction to define exactly when it's going to be violated and when it's not?

MR. WAXMAN: Well, Mr. Chief Justice, if it

JW.000687

2006 U.S. TRANS LEXIS 29, *

[*46] turns out that it's too hard and -- and the -- and a specific injunction can't be written, rule 65(d) requires that an injunction not issue. And in fact, as we've cited in pages 17 and 18 and, I think, 19 of our brief, the Federal Circuit has, in fact, overruled injunctions that were insufficiently precise to satisfy rule 65.

But the claim of imprecision here is -- look, I'm not a software developer and I have reason to believe that neither is Your Honor, and I -- I can't --

(Laughter.)

MR. WAXMAN: -- explain specifically what this claims. It's laid out very carefully in --

CHIEF JUSTICE ROBERTS: I may not be a software developer, but as I read the invention, it's displaying pictures of your wares on a computer network and, you know, picking which ones you want and buying them. I -- I might have been able to do that.

MR. WAXMAN: Well --

(Laughter.)

MR. WAXMAN: I'll say respectfully that that is not a fair characterization of the innovation here, the actual innovation.

But let me just say, for purposes of this case, there is no challenge continuing to the validity of this patent. It was challenged before the district court and on appeal on grounds of an inadequate written

JW.000688

2006 U.S. TRANS LEXIS 29, *

[*47]  description, et cetera, et cetera, and upheld. There was a Markman hearing in which the district court construed the patent, added certain claim limitation terms that eBay wanted and we thought were not fairly in it. But significantly, there was never -- never -- a claim to the judge -- and this is an issue for the judge under section 112, paragraph 2 -- of -- of invalidity for indefiniteness.

CHIEF JUSTICE ROBERTS: Well, but the patent office staff has rejected all the claims. I don't know on what grounds.

MR. WAXMAN: The patent office -- none of the claims have been rejected on indefinite grounds. They have been rejected, as I understand it, certainly in this patent, for obviousness under prior art, which is all the same prior art that was presented to an Article III court here and that a jury entered a finding on. There are a host of questions that undoubtedly will be presented in the case, if it ever happens, in which a final -- Patent and Trademark Office, on the validity of patent, contravenes something that a -- final judgment of an Article III court. But that's not this case.

And we certainly agree with the United States that when -- if the judgment is affirmed, the

JW.000689

[*48] case will go back and the district court will then have to address a point it hasn't addressed yet, which is is the -- is the -- the permanent injunction proposed by MercExchange adequate or inadequate and how can it be made specific, and this supposed work-around -- does it or doesn't it violate the terms of the injunction. I mean, the district judge actually found bad faith -- this is page, I think, 71 of the petition appendix -- of eBay in its conduct in the district court of proclaiming that for $ 8,000 -- its experts testified that for $ 8,000, they could work around or design around this problem and there wouldn't be an infringement. But they didn't do it. And they didn't -- they certainly didn't appear to have done it in the Federal Circuit because their brief in the Federal Circuit never mentions it, and the Federal Circuit opinion surely would have said, they've designed around this problem and, you know, therefore this, that, or the other. Even in this Court, eBay has said in its -- in its opening brief at page 43, here there is a possibility that the infringer can develop a work- around. Well --

JUSTICE STEVENS: Mr. Waxman, could you help me with something I just realized

JW.000690

[*49]  I have no conception of here? What kind of -- what do these injunctions say? Do they just say don't infringe patent '265 anymore, or do they give a list of things you cannot do and a list of articles you cannot make and so forth?

MR. WAXMAN: You couldn't just say don't infringe anymore because rule 65(d) requires specificity and precision. Ordinarily what happens in these cases is there's -- you know, there's usually been a claimed -- a detailed, claimed construction following a Markman hearing. There have been jury instructions. The jury instructions have to specifically describe to the jury on what basis it's to conclude who is right --

JUSTICE STEVENS: The thought just occurs to me and I -- frankly, with all the briefs we've had, I feel kind of stupid not to have thought it before. But it seems to me a great difference might turn on what exactly the injunction provided. Some injunctions must be -- might be much more burdensome than some others. If they're not all fungible, that's certainly true.

MR. WAXMAN: Certainly not. And the terms of an injunction are appealable, and the Federal Circuit has reviewed actual terms of permanent injunctions and reversed a number of them and

JW.000691

2006 U.S. TRANS LEXIS 29, *

[*50]  said this is -- this doesn't satisfy rule 65 or it doesn't meet other requirements.

But in the -- in the context of this case, it is so critical that the judgment be affirmed, not vacated, because this is a real inventor. This is somebody who really did try to put it in place. This is somebody who eBay approached and then, when they didn't buy it, appropriated the technology, and the validity and infringement are final. They aren't even challenged in this Court.

And any suggestion that uncertainty exists on the facts of this case would dramatically destabilize settled law, licensing practices, and the investment-backed expectations of patent holders, large and small, the sole -- you know, hall of fame inventors that are in the Cooper brief filed in support of us and big, integrated companies like GE and Johnson & Johnson that have also filed on our side.

JUSTICE STEVENS: May I ask this?

MR. WAXMAN: These are patent portfolios --

JUSTICE STEVENS: One -- one short question. Is the draft of the injunction that you want in the record?

MR. WAXMAN: It is in the court of appeals record, but not the joint appendix. But it certainly will have to be changed because the court of appeals

JW.000692

2006 U.S. TRANS LEXIS 29, *

[*51] invalidated the '176 patent, which the jury found had been infringed, and therefore, it's -- it will need to be revisited when the case goes back for the entry of an injunction.

Thank you, Your Honor.

CHIEF JUSTICE ROBERTS: Thank you, Mr. Waxman.

Mr. Phillips, you have 6 minutes remaining.

REBUTTAL ARGUMENT OF CARTER G. PHILLIPS

ON BEHALF OF THE PETITIONERS

MR. PHILLIPS: Thank you, Mr. Chief Justice. I realize I'm the only thing standing between you and lunch, so I'll try to be brief at this point.

Justice Stevens, with respect to the place in the record, this is in the joint appendix and the court of appeals at A6523 -- 62523. That's the proposed permanent injunction, and I won't purport to read the whole thing, but it starts off with anything directly or indirectly, and it goes on for three pages. It is, I think, fairly characterized as a very broad injunction.

The -- I think it's important, after Mr. Waxman's challenge to the conduct of eBay in this case, to -- to recognize that willfulness in the patent context has a meaning different from willfulness in any other context. And it is recognized that we're talking about simply a failure to satisfy a duty to check out and

JW.000693

2006 U.S. TRANS LEXIS 29, *

[*52]  find a lawyer's opinion that a particular infringement has not taken place or that the patent is not valid. And when you do that, you of course incur the risk that you will also waive your attorney-client privilege. So there's a risk to it. And that's the willfulness that we're talking about here.

With respect to the notion of stealing this patent, let's go back to what the district court specifically held on page 68 of the appendix. Where the defendants maintain that their success did not arise from the use of anything contained in the plaintiff's patents and the defendants argued that the patents offered no business or engineering guidance which the defendants could copy, and this court agrees with that. That's not the kind of bad faith or willfulness -- it's the reason why the court didn't grant enhanced damages. It's the reason why the court didn't grant attorney's fees in this particular case, and it doesn't provide a reason for simply jettisoning three out of the four factors that ought to be applied in the traditional -- in the traditional test.

And, Justice Breyer, you asked the question, what are you going to do with a situation where you have the embedded patent and you

JW.000694

2006 U.S. TRANS LEXIS 29, *

[*53]  have the case like this one where we're going along with our process and we've got our source code and we've done all of the hard work, and they go along and come up with some sort of more vague idea and show up at our door-step and, one, claim that we've got to stop doing what we're doing, or, worse in other cases, we're going to find situations where it's embedded in a manufacturing process. Mr. Waxman says, well, in that situation equity will step in. Not so under the Federal Circuit's approach because that's a balance of the equities kind of a consideration, and that's irrebuttably presumed to favor the plaintiff under the Federal Circuit's approach.

Mr. Chief Justice, I know, as well as you know, that Judge Bryson understands the four-factor test and the abuse of discretion standard. And what he did in this case was to go through each of the findings of the district court with respect to the use of the -- of the licensing arrangements, the failure to commercialize this, not being in the business, and said, does any of these rise to the level of the kind of public interest concern that is the only legitimate consideration this court will use in deciding whether or not the district

JW.000695

2006 U.S. TRANS LEXIS 29, *

[*54] court can justify not granting an injunction in a particular case, instead of what is clearly the traditional approach of equity, which is to say, look at the -- the primary two issues, you know, the flip side of the same thing, so I'll just treat it the one way. Are money damages adequate in the specific case? That's the fundamental question that equity asks. That's the fundamental question that the district court found to be satisfied in this case. Money damages will get the job done. The right to exclude will be adequately protected by enhanced damages and even potentially injunctive relief in the future. Beyond that, nothing more is required.

That's the kind of decision that a district court who has sat in a 5-week trial and has overseen this entire litigation is uniquely suited to make a judgment. That judgment is entitled to respect on a classic abuse of discretion standard. The court of appeals long ago jettisoned that approach, and the time has come for this Court to say no, that's not what this Patent Act requires. The Patent Act says the right to exclude is important, but it's only protected by the principles of equity under section 283. That wasn't given here. We urge

JW.000696

[*55]  you to reverse the court of appeals.

If there are no further questions, thank you, Your Honor.

CHIEF JUSTICE ROBERTS: Thank you, counsel.

The case is submitted.

(Whereupon, at 12:30 p.m., the case in the above-entitled matter was submitted.)

JW.000697