# EXHIBIT 17

# AMERICAN LAWYER ON THE WEB

### Taming Texas

It took six years, but the IP defense bar finally broke the runaway juries of the Lone Star State.

By Nate Raymond
The American Lawyer
March 1, 2008

Ask the people working at the bars, restaurants, and hotels of Marshall, Texas, about April 13, 2006-the day TiVo Inc. won a $73.9 million patent infringement verdict against EchoStar Communications Corporation-and they'll reminisce about a river of money the way managers at Macy's talk about Christmas. To them, it didn't matter which side TiVo was on, only that Marshall was sharing in the good fortune of the patent litigants who came to their courthouse and lavished money on their town. The first thing one TiVo lawyer from Irell & Manella asked after the jury came back was the location of the nearest bar, so the celebration could begin.



The joyous mood, however, wasn't shared by all. While the Irell lawyers partied at OS2 Restaurant & Pub, Marshall's one downtown bar, EchoStar's lawyers from Morrison & Foerster straggled out of the town's small federal courthouse and returned to the Comfort Suites hotel, where the lawyers drank and watched cartoons. The looming question wasn't just how they could have suffered such a devastating loss-Marshall was, after all, part of a plaintiff-friendly district once described by U.S. Supreme Court justice Antonin Scalia as "a renegade jurisdiction"-but how they could prevent it from happening again: MoFo partner Rachel Krevans was scheduled to return to the Eastern District of Texas in early 2007 to defend EchoStar against Forgent Networks, Inc.'s $200 million patent claim.

After a week off, Krevans and Harold McElhinny, the lead lawyer in the TiVo case, met in San Francisco to figure out what to do differently the second time around. In later court filings, the Morrison & Foerster lawyers would argue that Irell & Manella had made impermissible arguments at trial and that some TiVo evidence shouldn't have been admitted. But in private, the MoFo attorneys conceded they'd been beaten. They needed a new approach. A year later, in May 2007, their rejiggered strategy proved successful: The jury delivered a complete defense

...

verdict for EchoStar.

MoFo's journey from that $73.9 million loss to TiVo in 2006 to the defense win against Forgent a year later exemplifies the startling transformation that has taken place in the courtrooms of Marshall and nearby Tyler in the last 18 months. After the spring of 2006, when it was beginning to seem as though a patent plaintiff could not lose a case in East Texas, MoFo and its counterparts at such firms as Wilmer Cutler Pickering Hale and Dorr and Kirkland & Ellis refined their trial techniques-and won. Defense lawyers adopted tactics the plaintiffs knew well. They paid thousands of dollars to consultants who taught them how to speak Texan to juries. They simplified complex cases. Well-established first-chair lawyers deferred at trial to hired guns from Texas, in several cases elevating them from local to cocounsel. And it didn't hurt that a pair of Supreme Court rulings in 2005 and 2006 favored patent defendants.

In 2007, after three straight years without a defense win in the Eastern District of Texas, defendants won seven of the nine patent cases that were tried to a verdict, according to Michael Smith, an attorney in the Marshall office of Siebman, Reynolds, Burg, Phillips & Smith who tracks trial outcomes. "The conventional wisdom is that defendants can't win in the Eastern District, and that's not accurate anymore," he says. (Plaintiffs can still win big, though: On February 11 Dickstein Shapiro won a $439.1 million jury verdict against Boston Scientific Corporation in Marshall.)

The newfound parity for defendants has come to East Texas at a time when Congress is considering patent reform. A bill already passed by the House of Representatives and now before the Senate is intended to dry up the patent wellspring in East Texas [see ""Waiting for the End of the World" www.law.com/jsp/tal/PubArticleTAL.jsp?hubtype=Inside&id=1204631582896]-though defendants no longer seem to need the congressional bailout. And the business owners? They don't care who's winning. They just want the good times to continue to roll.

When out-of-town lawyers began showing up in his courtroom in Marshall in 2001, federal district court judge T. John Ward would recommend, only half-jokingly, that they watch a low-budget 1997 documentary called Hands on a Hard Body. The movie chronicles an endurance contest in Longview, Texas, 23 miles west of Marshall, in which people compete for a new Nissan truck by keeping one of their hands on it for as long as possible. "I think some lawyers still use it with clients to say, 'We will not have Ph.D.s on this jury,' " says Ward, 64, a white-haired former trial lawyer. Ward, himself a Longview resident, was first stationed in Tyler, but when a judge in Marshall took senior status in 2001, he volunteered to relocate. At the time, Marshall was just a speck on the litigation map. Its patent docket was notable only for the frequent appearances of Dallas-based Texas Instruments Incorporated, which enjoyed a home court advantage as a plaintiff before Marshall juries. Not long before Ward's judicial appointment, when he was in private practice at Brown McCarroll, he had been on the losing side of a $29 million verdict for Texas Instruments. Ward describes the case as a bloodletting filled with motions for sanctions and discovery requests that dragged on for months. But lawyers who practice in East Texas say Ward seemed to get a kick out of the litigation. "I think he found

verdict for EchoStar.

MoFo's journey from that $73.9 million loss to TiVo in 2006 to the defense win against Forgent a year later exemplifies the startling transformation that has taken place in the courtrooms of Marshall and nearby Tyler in the last 18 months. After the spring of 2006, when it was beginning to seem as though a patent plaintiff could not lose a case in East Texas, MoFo and its counterparts at such firms as Wilmer Cutler Pickering Hale and Dorr and Kirkland & Ellis refined their trial techniques-and won. Defense lawyers adopted tactics the plaintiffs knew well. They paid thousands of dollars to consultants who taught them how to speak Texan to juries. They simplified complex cases. Well-established first-chair lawyers deferred at trial to hired guns from Texas, in several cases elevating them from local to cocounsel. And it didn't hurt that a pair of Supreme Court rulings in 2005 and 2006 favored patent defendants.

In 2007, after three straight years without a defense win in the Eastern District of Texas, defendants won seven of the nine patent cases that were tried to a verdict, according to Michael Smith, an attorney in the Marshall office of Siebman, Reynolds, Burg, Phillips & Smith who tracks trial outcomes. "The conventional wisdom is that defendants can't win in the Eastern District, and that's not accurate anymore," he says. (Plaintiffs can still win big, though: On February 11 Dickstein Shapiro won a $439.1 million jury verdict against Boston Scientific Corporation in Marshall.)

The newfound parity for defendants has come to East Texas at a time when Congress is considering patent reform. A bill already passed by the House of Representatives and now before the Senate is intended to dry up the patent wellspring in East Texas [see ""Waiting for the End of the World" www.law.com/jsp/tal/PubArticleTAL.jsp?hubtype=Inside&id=1204631582896]-though defendants no longer seem to need the congressional bailout. And the business owners? They don't care who's winning. They just want the good times to continue to roll.

When out-of-town lawyers began showing up in his courtroom in Marshall in 2001, federal district court judge T. John Ward would recommend, only half-jokingly, that they watch a low-budget 1997 documentary called Hands on a Hard Body. The movie chronicles an endurance contest in Longview, Texas, 23 miles west of Marshall, in which people compete for a new Nissan truck by keeping one of their hands on it for as long as possible. "I think some lawyers still use it with clients to say, 'We will not have Ph.D.s on this jury,' " says Ward, 64, a white-haired former trial lawyer. Ward, himself a Longview resident, was first stationed in Tyler, but when a judge in Marshall took senior status in 2001, he volunteered to relocate. At the time, Marshall was just a speck on the litigation map. Its patent docket was notable only for the frequent appearances of Dallas-based Texas Instruments Incorporated, which enjoyed a home court advantage as a plaintiff before Marshall juries. Not long before Ward's judicial appointment, when he was in private practice at Brown McCarroll, he had been on the losing side of a $29 million verdict for Texas Instruments. Ward describes the case as a bloodletting filled with motions for sanctions and discovery requests that dragged on for months. But lawyers who practice in East Texas say Ward seemed to get a kick out of the litigation. "I think he found

it interesting," says Houston-based Howrey partner Floyd Nation.

Ward's first pretrial hearing on patent claims as a judge convinced him that the rules for patent cases had to change. He'd spent several hours reading up on the claim terms for the patent at issue, assuming that lawyers on both sides would wrangle over the meaning of key words in the patent. But when the hearing began, defense lawyers acceded to each term the plaintiffs argued. Ward called a recess and told the attorneys to negotiate. When he returned, only two claims remained contested. "I wasted all this preparation time getting ready," Ward recalls saying.

So he dug up a set of rules that he heard the Northern District of California had adopted to streamline patent cases. Ward borrowed from and tweaked the California rules, instituting new procedures that he thought would make his job easier. Instead, when patent holders realized that the wait for a trial in Marshall was only 12-14 months, Ward's docket was flooded: from five patent cases in 2000 to 87 in 2006, according to LegalMetric. "I had no idea that was going to be the result of adopting the rules," Ward says.

Other judges in the district-Leonard Davis in Tyler, David Folsom in Texarkana, and Ronald Clark in Beaumont and Lufkin-followed Ward's lead, and courtrooms that were no longer crowded with personal injury cases were quickly restocked with patent disputes. Streamlined pretrial proceedings and short trials meant lower costs, crucial for plaintiffs attorneys working on contingency. By the time Ward's rules went districtwide in February 2005, Marshall and its neighbors had become the prime venue for patent trials nationally, with more than 860 patent cases filed since 2000.

Local firms like McKool Smith; Ireland, Carroll & Kelley; and Brown McCarroll were among the first to capitalize on the district's advantages for patent holders. They filed suits on behalf of small tech companies and so-called patent trolls (shell companies that exist to litigate on behalf of patent-holding individuals or corporations). Soon after, bigger firms in Texas and beyond-including Howrey; Susman Godfrey; Fish & Richardson; and Fulbright & Jaworski-took notice of the plaintiffs' successes and also began filing in Marshall and Tyler.

The jurors who heard the plaintiffs' cases were inclined to agree with them. Only about 20 percent of Marshall's population in 2000 held a bachelor's degree, according to the Census Bureau. Compared to jurors in a tech-friendly city like Boston, where more than 40 percent of the jury pool holds at least a bachelor's degree, folks in Marshall and its neighbors were receptive to the simple, nontechnical presentations that local plaintiffs lawyers preferred. Moreover, the East Texas economy has suffered since a downturn in oil and gas production in the mid-1980s. The townspeople, who are accustomed to fighting with oil companies over royalties for their mineral rights, tend to be strong believers in property rights. "People here respect the underdog because people here have been stepped on over the years," says Douglas Green, a jury consultant who often works for Wilmer Cutler Pickering Hale and Dorr.

Plaintiffs had an additional advantage in the disinclination of East Texas judges to grant

summary judgment. "They thought trial was the American way of doing things," says Paul Janicke, a law professor at the University of Houston. Ward readily admits his own preference for letting juries, rather than judges, decide cases; he says that's been the custom in East Texas since he started practicing in 1968. "Most of the time we feel like there are fact questions," he says. "I don't strain to get a summary judgment if I believe there's a fact question."

So in the first years of the East Texas patent boom, trial results were starkly one-sided. From 2001 to mid-2006 plaintiffs won nearly 90 percent of the district's patent trials. Defendants lost 17 trials during that stretch of time, according to research by local lawyer Michael Smith. And the damages awards were big. In April 2006, the same month that TiVo won its $73.9 million verdict against EchoStar in a fight over television recording technology, Microsoft Corporation was hit with a $133 million verdict in a case involving antipiracy software. Two months later, in a dispute over patents for high-speed data networks, Finisar Corporation won a $78.9 verdict against The DirecTV Group, Inc.

Defense lawyers say clients began instructing them to stay out of East Texas courtrooms. "If that's the attitude, then you're going to have settlements and not trials there," says Wilmer partner Mark Matuschak. According to Matuschak and other defense lawyers, the risk of litigation in Marshall and Tyler was so daunting that in several instances the mere threat of an injunction filing produced licensing agreements and cash settlements.

The case that broke the plaintiffs' streak was one that had attracted little pretrial attention. In 2004 Sensormatic Electronics Corporation, a subsidiary of Tyco International Ltd., filed suit in Marshall against two start-up security products manufacturers: San Jose-based WG Security Products Inc. and Hollywood-based EAS Sensorsense, Inc. Sensormatic alleged that WG was infringing patents covering the plastic tags that clothing stores use to prevent theft. It was an odd case for Judge Ward's docket. Sensormatic sought $7.3 million in damages-a fraction of what East Texas patent plaintiffs usually wanted. And Sensormatic, the market leader in antitheft tags, was no patent troll; in an unusual role reversal, the defendants cast themselves as the David to Sensormatic's Goliath. The disparity between legal teams bore out the comparison. IP giant Fish & Richardson represented Sensormatic. Sim Israeloff of Dallas's Cowles & Thompson and the Waters Law Office in Louisville were counsel for WG and EAS. Israeloff had never tried a patent case, and Waters was hardly a regular in Marshall's courtrooms.

For a year, defense lawyers fought to move the case to California, where both WG and EAS were based. But Sensormatic's Fish & Richardson lawyers wanted to keep the case in East Texas, which they had come to know well through dozens of patent cases on both sides of the aisle. "We never really had any real opening to resolve [this] on a reasonable basis, so everybody sort of stuck to their guns," says WG counsel Israeloff. (Fish & Richardson partner Thomas Walsh declined to comment.)

The trial took four days in June 2006. After less than half a day of deliberation, the jury ruled for WG and EAS. (For the most part, jurors in this case and others could not be reached for comment because under district rules their identities are kept confidential.) Defense lawyers

immediately took note of the victory. "It was more psychological than anything," says Wilson Sonsini Goodrich & Rosati partner M. Craig Tyler. "That case did allow us to at least tell clients, 'Look, you're not facing a completely stacked deck.'" But the case wasn't a total win for Israeloff and his defense team-the jury declined to invalidate Sensormatic's patent. Patent defendants remained leery of cases filed in Marshall.

[One] month after the WG verdict, Wilmer's Matuschak was sitting in Judge Ward's courtroom, convinced he'd lost his client's case. For five days the 48-year-old partner had defended OutlookSoft Corporation against Hyperion Solutions Corporation's $150 million patent infringment claim. He thought he'd connected with the jury, but as jurors funneled into the courtroom to deliver their verdict, none of them would look at him. "I thought, 'This is bad,'" he recalls. That made the panel's decision a happy surprise: Matuschak had won. (He later learned in the parking lot that jurors were pulling a prank by not looking at him.) "We didn't even have to convince anybody," says jury foreman Alan Holcomb, a 54-year-old Longview boat salesman. "Everybody was on the same page so far as the decision."

OutlookSoft was Matuschak's first trial in East Texas. His two previous cases in the district-defenses of Intel Corporation against Northrop Grumman Corporation and later Analog Devices, Inc., against Texas Instruments-had settled confidentially. But he'd watched enough Marshall trials and conducted enough jury research to know that he'd need an unusual approach if he wanted jurors to find not only that OutlookSoft hadn't infringed Hyperion's patent but also that the patent was invalid. "The scuttlebutt was that you could not put forward an invalidity case with the time limits that the judges imposed in that district," Matuschak says. "But I think that assumes that the kind of invalidity case you're going to put on is one where you're making references to a lot of pieces of prior art and going through an elaborate discussion of those. And if you pick your best shots, you can put on an effective invalidity case there."

With two defense verdicts handed down by juries, lawyers could assure clients that it was possible to win a trial in East Texas. "Once the cookie starts to crumble a little bit, people start to think we can win these cases there," Matuschak says.

In retrospect, the victories seem inevitable. With more than 350 patent cases filed in the district in 2007, East Texas now ranks nationally as the busiest jurisdiction for patent litigation. Sheer volume slowed the rocket docket, increasing plaintiffs' costs and giving deep-pocketed defendants a financial advantage at trial. (Once among the five fastest patent venues in the country, East Texas now ranks eighteenth, according to LegalMetric.) Plaintiffs also paid for their own cockiness. "You attracted a lot of weak patent cases," says Irell & Manella's Morgan Chu.

At the same time, Supreme Court rulings in eBay Inc. v. MercExchange, L.L.C., in 2005 and KSR International Co. v. Teleflex, Inc., in 2006 helped patent defendants. The cases made it easier for defendants to argue that patents were invalid because of preexisting technology (known as prior art) and gave judges more discretion over whether to impose an injunction after a finding of infringement. Judge Davis of Tyler is believed to have been the first federal district

JW.000005

Ark.000461

court judge to apply the court's eBay ruling when, in June 2006, he denied a request by z4 Technologies, Inc., to bar Microsoft from selling or making Windows and Office products. (Microsoft later lost at trial.) Last August, Vinson & Elkins partners Brian Buss and Willem Schuurman used KSR precedent to convince Judge Davis to invalidate AdvanceMe, Inc.'s patent in a suit against Reach Financial, LLC, and Merchant Money Tree, Inc.

Despite the favorable Supreme Court rulings and the longer wait for plaintiffs to get to trial, defense counsel still had to invest considerable time and money to change the course of patent litigation in the Eastern District of Texas. And perhaps no firm knew that better than Morrison & Foerster as it prepared for the Forgent trial, EchoStar's second appearance as a defendant in an East Texas courtroom.

MoFo knew that to connect with Texans and to soften EchoStar's image, it needed to make better use of local attorneys than it had in the TiVo trial. Though McElhinny is no fan of Irell's Chu (whom he criticized in his unsuccessful appeal of the TiVo verdict), he did admire Chu's use of his local counsel, Sam Baxter of McKool Smith.

Outside of Texas, Baxter's name may not be familiar. But inside the Marshall courthouse, he's a star-a guy who knows the names of half the town. For more than a decade during the 1970s and 1980s, Baxter was the glad-handing district attorney of Harrison County, where Marshall is located. After a stint as a state district court judge, Baxter went back into private practice in 1989 and began racking up personal injury judgments. But as state tort reform took effect, Baxter transitioned to patents, filing his own cases and taking local duties for lawyers like Chu.

During the TiVo trial, while McElhinny kept EchoStar local counsel, late addition John Pickett of Texarkana's Young, Pickett & Lee, in his seat, Baxter was conducting voir dire in his thick drawl, grilling EchoStar's most important witness, and delivering part of the closing statement. By giving Baxter such a prominent role, McElhinny later realized, Chu was able to limit the jury's prejudice against an out-of-town lawyer representing a big corporation. (Baxter also helped defuse potential bias against Chu's Chinese ancestry in an incident that has become legend among patent litigators: He threw his arm around Chu's shoulder in front of the jury during voir dire and said, "Morgan here is different-Morgan wears a bow tie.")

Wilmer's Matuschak had also made effective use of local counsel-Joe Redden, Jr., of Houston's Beck, Redden & Secrest-in the OutlookSoft case. He asked Redden to handle voir dire, which in Texas can be argumentative, and assigned him to question an expert witness with a tendency to jabber. "Rather than have a fast-talking Boston lawyer and a fast-talking expert competing to see who can speak fastest, [I decided] that would be a good time to put Joe there to sort of enforce the slow-down and make sure that testimony came in [in] a more measured way," Matuschak says.

The firms invited to serve as local counsel in East Texas IP cases are a select club. Along with McKool Smith, other firms include Ireland, Carroll, & Kelley; Parker, Bunt & Ainsworth; and Brown McCarroll. Many were personal injury shops until Texas tort reform limited punitive

damages. That's when, as the joke goes, PI lawyers in East Texas switched to IP. "A trial is a trial," says Baxter, the unofficial president of the unofficial boys club in East Texas. For many of these lawyers, defense work has come to occupy an increasing percentage of their practice. In 2005, for instance, Baxter handled 16 defense cases, according to Westlaw. By early 2008, he had 39.

About three months after the TiVo trial, EchoStar and DirecTV, a codefendant in the Forgent case, went shopping together for a strong local trial lawyer. Like the MoFo team, DirecTV's lead counsel, Jones Day of counsel Victor Savikas, had previously lost big in Texas: a $78.9 million verdict in the June 2006 Finisar trial. He drew the same lesson from his loss as McElhinny. "Both of us concluded that in the Eastern District of Texas, a lawyer by the name of Savikas from Los Angeles or McElhinny from San Francisco, despite our experience, just didn't connect all the time with the local jury," he says. Jones Day and MoFo needed what Savikas calls "our own cowboy."

Savikas had heard about a local attorney named Otis Carroll of Tyler's six-lawyer Ireland, Carroll & Kelley. Carroll had for years litigated insurance defense cases, but in 2001 IP trials began to dominate his practice. Over a chicken-fried steak lunch in Tyler, he learned about how EchoStar and DirecTV planned to defend the Forgent case. "They wanted somebody who would take it shoulder-to-shoulder with them," Carroll says.

MoFo and Jones Day also planned to tailor their trial presentation to fit what they'd learned from mock juries. Early in their preparation for the Forgent case, Krevans, Savikas, and Carroll hired jury consultant George Speckart of Irving's Courtroom Sciences, Inc., one of the consultants whose business has ballooned in the last few years thanks to lawyers willing to spend $30,000-$100,000 a day on mock East Texas juries. A couple months before trial, Krevans, Savikas, and their teams held two mock trials over three days. Krevans says that what she learned from the juries drastically changed her defense.

The MoFo partner opted for an approach that seemed, on the surface, to be very risky. The plaintiff, Forgent, claimed that it owned a patent covering the technology in audio-video digital recorders typically found in cable and satellite television set-top boxes. In pretrial proceedings, lawyers for EchoStar's cable company codefendants argued both that the cable companies didn't infringe the Forgent patent and that the patent was invalid based on obviousness. Krevans and her team signaled in court filings that they'd make the same two-pronged argument. But when MoFo and Jones Day tested it before a mock jury, the lawyers realized that jurors didn't follow the subtleties of the strategy. Even if it was legally sound, mock jurors thought that arguing both noninfringement and invalidity made it seem as though the defendants were lying. "It's like someone . . . accused of beating his wife saying, 'I didn't do it, but if you think I did, she provoked me,' " says Savikas.

After more testing, Krevans, Savikas, MoFo partner Charles Barquist, and local counsel Carroll decided to abandon the infringement defense at trial. Morrison & Foerster and Jones Day would argue only that Forgent's patent was invalid-even though Judge Davis had ruled that their

strongest evidence of invalidity, a recent Patent and Trademark Office decision to reevaluate the validity of the Forgent patent, wasn't admissible at trial.

Forgent's lead counsel, William Fred Hagans of Hagans Burdine Montgomery Rustay & Winchester, says he knew his client would struggle to defend against an invalidity challenge. Forgent's patent was issued in 1991, but the claims relevant to EchoStar's technology were only added in 2001-after EchoStar's product was on the market. He was afraid he'd have a tough time explaining that to a jury. "When everyone mock-tried that, that was a fact that raised eyebrows for any jurors," Hagans says. "We knew that; they knew that."

Nevertheless, EchoStar's codefendants were skipping town as fast as they could sign settlement papers. Time Warner Inc. and the cable companies, represented by Alston & Bird, Dewey Ballantine, and Perkins Coie, settled for $20 million in late April, and DirecTV bowed out a day before trial, settling for $8 million.

When the trial began on May 15, 2007, Krevans quickly realized the wisdom of hiring local counsel Carroll. He conducted voir dire, made the opening statement, and cross-examined Forgent's corporate representative. Krevans says he brought a sense of humor to the trial. "He made Fred Hagans, who's from Houston, seem like he's from New York," adds EchoStar associate general counsel Jeffrey Blum.

And the MoFo team became convinced that the decision to argue only invalidity made the case less confusing for jurors. "As lawyers, we know there's nothing inconsistent with saying we don't infringe, but if we do, the patent's invalid," Krevans says. "But to lay people, that can sound inconsistent."

After a five-day trial, the jury spent only an hour deliberating. Krevans had expected a quick verdict, but she says that the minute it took for Judge Davis to receive the form from jurors and read it aloud felt like slow motion. Anxieties bubbled as she wondered if the risks she had taken-conceding infringement and refusing to settle-would result in another defeat for EchoStar. TiVo general counsel Matthew Zinn was in attendance at the Forgent trial, a painful reminder of that previous loss.

The jury vindicated MoFo's strategy, finding that Forgent's patent was invalid. But even after Davis announced the verdict, Krevans could hardly believe she'd won. Back at the Residence Inn in Tyler, while the rest of the defense team broke out beer and Jack Daniels, Krevans pulled up PACER and tried to download the verdict, just to make sure she'd heard Judge Davis correctly.

For defense lawyers, the Forgent win was additional evidence that it was possible to beat the odds-it was possible for a defendant to win in East Texas. MoFo's tactics had succeeded. When Krevans and her team left the hotel, they went to a restaurant, Jake's, to celebrate. For once, defense money would foot the bill.

**Sidebar: The Road Less Travelled**

Kirkland & Ellis partner John Desmarais bucked the trend that swept firms defending patent cases in East Texas. He chose not to use a mock jury to prepare Charter Communications, Inc.'s defense of patent infringement claims by Hybrid Patents, Inc., in July 2007. Desmarais had another way to win over East Texas jurors.

Hybrid sought $176 million in damages stemming from alleged infringement of three patents covering high-speed transmissions over cable modems. Before putting together his trial presentation, Desmarais says, he carefully reviewed opening statements from Microsoft Corporation's loss to z4 Technologies, Inc., and OutlookSoft Corporation's win against Hyperion Solutions Corporation. "One of the things I pulled away from it was [that] the presentation to the jury that seemed most successful was the down-to-earth, colloquial, nice-guy approach, as opposed to too aggressive or too complicated or too technical," he says.

Desmarais also wanted to be sure that cable giant Charter wouldn't look like Microsoft to the Marshall jury. Other large companies had discovered that one way to connect with jurors was to connect with the community. Luckily for Desmarais, Charter had a tower and an office in Marshall.

So in opening statements he flashed photos of Charter's Marshall office and noted that Charter "employs the people here in Marshall." (He also pointed out that the plaintiff, Hybrid, had no business except suing to enforce its patents.) Later in the trial, Desmarais even called to the stand a Charter employee who supervised the Marshall-based facility. Suddenly Hybrid looked like it was the aggressor picking on a hometown little guy. On July 23, 2007, the jury ruled for Charter.

Desmarais proved the win was no fluke, too. In Sherman, Texas, in January, the Kirkland partner readopted his tactics to score Alcatel-Lucent a noninfringement ruling against Dell Inc.- the first East Texas defense win of 2008.

-N.R.

JW.000009

Ark.000465