# EXHIBIT 21

# InsideCounsel

Small Town Attracts High Stakes IP Case

From *InsideCounsel Magazine* | July 2006 Issue

By Julie Miller

July 1, 2006
Research In Motion's (RIM) legal department could probably use a round of stiff drinks. After reaching a $612.5 million settlement with Canada-based patent holder NTP in March, the BlackBerry manufacturer has been slammed with yet another infringement suit by California-based Visto Corp. As if that wasn't bad enough, Visto filed the case in a district that Supreme Court Justice Antonin Scalia calls a "renegade jurisdiction."

RIM, welcome to Marshall, Texas.

The U.S. District Court for the Eastern District of Texas is famous for reeling off huge jury verdicts against defendants, such as a recent $3.6 million verdict against Seven Networks in an infringement case. Visto, as well as other big name patent holders such as TiVo Inc., Intel and z4 Technologies, have played their cards well by filing suit there. Patent holders from around the world have found a new home in Marshall's courtrooms.

"I would estimate that in the past six or seven years there have been about 400 or 500 patent cases filed in the district," says Michael Smith, a partner at Marshall-based Roth Law Firm. Out of those cases, Smith says, 80 percent have come back with a plaintiff verdict—a scary figure compared to the nationwide win rate of approximately 62 percent.

**The Marshall Way**

Although RIM filed a countersuit May 8 to have the case transferred to Dallas, it seems an unlikely bet. The venue rules are such that if a company is doing business nationally and is getting the benefit of selling its product all over the U.S., then it is likely subject

to jurisdiction anywhere in the U.S.

Marshall is so appealing to patent plaintiffs for three reasons. It's a so-called "rocket docket" that schedules, hears and resolves cases quickly; it's plaintiff friendly; and the judges have set firm guidelines to alleviate the strain of long, unorganized trials that commonly afflict IP cases.

"They can get a quick trial in Marshall because we don't have a large criminal docket," Smith says. "About 10 percent of the docket is criminal, which is extraordinarily low for a

federal court."

http://www.insidecounsel.com/print.php?article=538

JW.000758

Ark.000737

What this means is that the court hears civil cases sooner because there are fewer criminal cases that bump them down the docket.

Not only does Marshall get cases to trial quickly, but it's a jurisdiction "that is viewed as a very pro-plaintiff both in terms of the bench and in terms of juries down there," says David Callahan, a partner at Kirkland & Ellis in Chicago.

Smith agrees.

"They are very protective of property rights," he adds. "If you can persuade them that you own this piece of intellectual property and that it covers what the defendant does, they are with you all the way."

Pro-plaintiff juries are only one problem defendants face in Marshall. The judges in the Eastern District have a reputation as well. Marshall Judge T. John Ward is known for setting high standards in his courtroom and being tough on out-of-towners.

"I had a hearing to construe some claim terms in one of my first patent cases," Ward says. "The lawyers came prepared to argue, but they essentially agreed with each other on the proper construction once they heard the other side's position. This seemed to me to be something that could have been sorted out before the hearing if there had been more structure in place."

To find structure, Ward looked at rules for patent cases the Northern District of California adopted, which reduce the time allowed for discovery in patent cases, among other timesaving measures. "I reviewed those rules, modified them, and added some of the procedures I was using in other civil cases to better manage the pending patent cases," Ward says. Since becoming a judge in 1999, Ward has been overruled only once in a patent case.

**Now What?**

Despite some of the horror stories, however, the picture is not completely grim for defendants in patent cases in Marshall. The key to handling patent litigation in the Eastern District is knowing the venue, knowing the judges and knowing what you're up against.

"You need to get quality counsel, get organized and get after it," Callahan advises. If you are in the Eastern District of Texas as a defendant, the first step is to hire local counsel. "A lot of things are handled more informally down there and you need quality local counsel to make sure you're a full participant in that process."

The second thing you need to do is realize that you won't have much time to prove your case. According to Smith, who has fought hundreds of cases in Ward's court, a patent case tends to receive between nine and 15 hours per side for evidence, unlike most courts, where a case could go on for a month or more.

"It puts a premium on being able to simplify your case," Smith said. "I kind of think it's a blessing because it forces both sides to prioritize."

For Charles "Chip" Babcock, a partner at Jackson Walker in Houston, pretrial jury research also is key. During a recent case he defended, Babcock says his team spent a lot of time and energy testing local attitudes about IP rights.

"I thought that they were largely conservative and defense oriented and the plaintiff obviously thought

http://www.insidecounsel.com/print.php?article=538

JW.000759

Ark.000738

so too because the judge sent us out to try to settle the case and their price of playing poker dropped from the sky almost to the ground," Babcock says. Knowing local sentiment, he says, is key to winning in the district.

Also, you need to learn the rules of the court and be prepared to actually stand in front of a jury. If you find yourself in Ward's court, Smith warns, be prepared for what he calls the "rattlesnake speech"—the warning Ward likes to issue to out-of-towners at the beginning of the trial about how things work in his courtroom. According to Smith, Ward is not the kind of judge who wants to sanction people and strike defenses, but he wants everyone to play by the rules.

Finally, you need to ensure your team actually has trial experience. "And not litigation experience." Smith says. "I'm talking about people who have stood up before a jury numerous times □ I see a lot of really great law firms but when they get to trial they don't know how to explain things to a jury and that is absolutely deadly if you are up against someone that does. It is not a fair fight and it's going to be a blood bath."

(c) 2008 *InsideCounsel*. A Highline Media publication. All rights reserved.