# EXHIBIT 22

POWERED BY
BNET.com

FindArticles > Daily Record and the Kansas City Daily News-Press > Jun 6, 2006 > Article > Print friendly

**IP plaintiffs flocking to small town of Marshall in eastern Texas**

Dick Dahl

(This article was originally published in Lawyers USA, Boston, MA, another Dolan Media publication.)

There's nothing in the outward appearance of this small east Texas city to suggest its prominent role in the world of intellectual property.

Lying 150 miles east of Dallas in the state's Piney Woods region, Marshall is a nondescript place of inexpensive strip malls, pawn shops and a largely abandoned downtown core. Its primary employers are industrial and only 11 percent of its 25,000 citizens hold college degrees.

But it is home to one of the busiest federal courthouses in the country for intellectual-property litigation, attracting litigants from Silicon Valley, the northeastern megalopolis, and even Asia.

Plaintiffs' attorneys say the reason litigants are flocking to Marshall is simple: IP cases move faster here than in any other federal court in the nation. Speed favors plaintiffs by reducing their legal costs, and works against defendants because the burden of untangling complex technical issues tends to fall harder on the defense.

But others say the reason for Marshall's sudden popularity is more complicated. They note that plaintiffs benefit from a largely uneducated jury pool and strong local feelings in favor of property rights. They also note that there are few restrictions to discourage distant plaintiffs from selecting Marshall as their trial venue.

For these reasons, this tiny Texas backwater has become the destination of choice for patent holders who want to sue companies they believe are infringing.

Patent suit filings in Marshall have skyrocketed over the last four years, from 13 in 2001 to 102 last year, according to LegalMetric, a St. Louis company that tracks IP litigation.

Meanwhile, the IP cases have begun to spill over to other federal courts in the Eastern District of Texas, making it the fourth busiest district in the country after the Central District of California, the Northern District of California and the Southern District of New York.

Since the explosion of filings has been fairly recent and most patent cases don't go to trial, there have only been eight Marshall jury verdicts in recent years. But all eight were for the plaintiff.

The national average, according to Greg Upchurch of LegalMetric, is 67 percent. The total number of jury trials will increase dramatically [in Marshall] over the next two or three years, Upchurch said. We will see if the jury win-rate remains this high.

The most recent verdict in Marshall came on April 13, when TiVo, Inc. won $74 million in a patent infringement suit against EchoStar Communications Corp. for copying technology to pause and rewind live TV. The verdict was soon surpassed when a jury in nearby Tyler, Texas, returned a $133 million verdict for Z4 Technologies, which had sued Microsoft and Autodesk for patent infringement.

It wasn't an accident that we filed in the Eastern District of Texas, said TiVo's lead attorney, Morgan Chu.

What's attractive to plaintiffs' counsel in patent cases - or any other kind of case for that matter - is that the courts operate in an orderly and timely fashion, said Chu, a partner in the Los Angeles law firm of Irell & Manella. The Marshall court has an excellent reputation for being very orderly and timely.

The 'rocket docket'

The federal courthouse in Marshall is a one-story brick building tucked away behind the far more impressive Harrison County Courthouse. The presiding judge is T. John Ward, who was known as the one of the best insurance-defense litigators in eastern Texas before he took the bench seven years ago.

On a warm afternoon in mid-May, the white-haired Ward was presiding in a patent infringement case brought against several defendants by O2Micro, a maker of power-management and security components for computers. The company's lead attorney, Henry C. Bunsow, was questioning a defense expert about how a feedback signal in a competing technology worked.

Bunsow won the case - his fourth victory in five trials in the Marshall courthouse - and he said he looks forward to coming back to Marshall for the half dozen more cases he has in the pipeline.

The O2Micro case took place at breathtaking speed compared to California, where Bunsow is the managing partner of 560-lawyer Howrey LLP's northern California offices.

The time between the case-management conference and the verdict was 14 months, less than half of what it would have been in northern California, according to Bunsow.

He attributed the speediness of the Marshall court to Ward's ability to contol discovery battles by applying strict rules to motion practice. The judge also places constraints on the trials themselves. In the O2Micro case, for instance, Ward told both sides that they had 12 hours each to present their cases, including cross- examination. That meant that both sides were forced to limit their experts to their best three or four, according to Bunsow.

It is interesting to note that Ward was not a plaintiffs' lawyer before he was named to the bench and he had only limited patent experience.

But in 1999, the same year he became a judge, Ward defended Hyundai Electronics in a patent suit filed by Texas Instruments. Although he was on the losing end of a $25.2 million verdict, lawyers in Marshall say the future judge was intrigued by patent law and sought to streamline the process for IP cases when he took the bench. (Ward was not available to be interviewed for this story.)

He ordered lawyers on both sides to shorten discovery. He required both sides to find areas of agreement so they could focus only on areas of dispute. Lawyers found that if they didn't move quickly enough, they faced sanctions.

Obviously, the speed with which plaintiffs can get to trial is incredibly attractive, said Richard Anderson, a Marshall lawyer. Plaintiffs want trials as quickly as possible and the defense wants to delay.

When you try cases quickly, people are going to find your courthouse, said Marshall lawyer Michael C. Smith, who practices regularly in Ward's court. That's why people are coming here.

Others point to the region's history of siding with plaintiffs.

The Eastern District has been pro-plaintiff for years, said James P. Bradley, managing partner of Sidley Austin's Dallas office. Now that IP lawyers are bringing cases there, it's become pro-plaintiff in the patent area as well.

Smith grew up in Marshall, and he thinks he knows why.

First, he said, people in Marshall have a high regard for property rights. When a patent holder argues that someone is infringing on its property, it's a message that resonates with Marshall jurors, he said.

Second, he said the Marshall jury pool is relatively uneducated - and he believes many IP defense lawyers fail to frame their arguments accordingly.

Most IP cases are filed in urban areas where you have a more sophisticated jury pools in terms of education, he said. To me, that puts a premium on the ability to present the case as simply as you can. This doesn't mean Marshall jurors are unintelligent - they're as intelligent as I am. It just means that they're uneducated.

Finally, Smith said litigants can be reasonably certain their cases won't be bumped by criminal cases because Marshall has historically had a small criminal docket.

As a result, defense lawyers avoid Marshall like the plague.

I have a lot of experience in counseling people how to stay out of the Eastern District of Texas and the 'rocket docket' if they're going to be sued for patent infringement, said Neil A. Smith, a partner in the San Francisco office of Sheppard Mullin. It's become a bit of a haven [for plaintiffs] down there.

A slowdown looming?

Tort reformers say venues like Marshall are examples of a judicial problem that needs fixing.

Congressional action in the 1990s broadened the general venue statute for patent law so that plaintiffs could sue a company in any jurisdiction where it does business. Prior to 1990, defendants could only be sued in venues where they were located.

Now, there is a movement afoot to return to the earlier rules.

Supreme Court Justice Antonin Scalia, for one, has publicly criticized Marshall as a renegade jurisdiction. And Congress is considering legislation that would reduce forum shopping by limiting patent suits to venues where a defendant company actually has a place of business.

Michael Smith contends that this would be disastrous for companies with extensive patent portfolios because that means they would have to go to a slow court somewhere and wait five years, which would do irreparable damage to their licensees.

But if history is any guide, Marshall's sudden infusion of legal dollars from far-flung places will recede even without legislative action. It has already happened in the Eastern District of Virginia and other districts, which became hot venues until their dockets got clogged and plaintiffs began looking elsewhere.

In Marshall, though, they are making a concerted effort to keep the cases coming. The federal courthouse recently added a

second courtroom in the basement. And the majestic county courthouse, which is undergoing a comprehensive renovation, will include a third courtroom that will be available to the federal court.

Even so, lawyers believe Marshall's day in the legal sun will end someday. The only question, they say, is when.

Someday there will be more cases than the court here can handle, Smith said. Then people will stop filing and they'll just go someplace else.

A cottage industry

Although the massive verdicts themselves have little direct impact on Marshall, locals say the steady parade of out-of-town lawyers - who often arrive in large numbers for a high-stakes trial - has created a regular flow of money into the city.

We're absolutely delighted that they're coming here and taking advantage of our quality, well-run system, said Connie Ware, director of the Marshall Chamber of Commerce. We're also delighted that they're spending their money here.

The impact on restaurants and providers of accommodations is pretty substantial, said Marshall attorney Richard Anderson, who is also counsel to the Downtown Economic Development Council. It's become somewhat of a cottage industry.

The downtown still has a number of vacant storefronts, but it also has several restaurants that may owe their existence to the courthouse activity, according to Ware.

The biggest impact has been on office rentals.

Clay Allen, a Marshall real-estate broker and consultant, said out-of-town law firms are anything but tight-fisted with their money. He recently rented a building to a law firm for three months that paid in advance and also paid to upgrade the building's electrical and security systems - and they never occupied the building because they settled the case.

He constantly receives queries about short-term office rentals - a month or two when a legal team will be in town for a trial - and he thinks it may be time to raise the rates for them.

In talking with other people in Marshall, Allen sometimes hears stories of disappointment. He recently met a caterer who told him that a firm had arranged to have her deliver four meals a day to them for 30 days - and then dropped the deal because they settled.

She said it would have made her year, Allen said.

But despite the occasional disappointments, people in Marshall are happy about the rocket docket traffic.

This whole legal thing is the equivalent of tourism, he said. It's a clean industry. They don't pollute, they don't have kids in the school system, they don't bitch about taxes. They come in, they spend their money, and then they go.

Meanwhile, the IP boom in Marshall has been very good to some members of the local bar.

Like other lawyers who have been hurt by tort reform in Texas, Blake Erskine sees the advent of IP cases as a welcome addition.

As local counsel, you may not be as well-versed in the technical aspects of patent law, he said. But you're still able to select the jury, put on evidence, do arguments. My preference, when I'm local counsel is to take an active role. I don't like to be a chair filler.

Erskine's firm has rented more space in Marshall to accommodate the out-of-towners who have hired Erskine as local counsel.

Michael Smith is a partner in the six-lawyer Roth Law Firm, which also provides work space for out-of-towners. Smith said the firm is a descendant of one that specialized in representing injured employees of the Texas & El Paso Railroad, which was headquartered in Marshall until the 1940s.

But when the railroad left, the firm switched its focus to personal injury until the first patent cases started arriving a few years ago. In the last five years, the Roth Law Firm's case distribution has gone from 75 percent plaintiff tort cases to 75 percent IP - mostly for the defense. Smith said this is because patent cases typically name several defendants, meaning there's more work for local counsel on the defense side.

Copyright 2006 Dolan Media Newswires
Provided by ProQuest Information and Learning Company. All rights Reserved.