LEXSEE


Positive
As of: Nov 05, 2009

ADVANCED MEDICAL, INC. v. ARDEN MEDICAL SYSTEMS, INC., ORTHO DIAGNOSTIC SYSTEMS, INC. and JOHNSON & JOHNSON and JOHNSON & JOHNSON PROFESSIONAL DIAGNOSTICS, INC.

Civil Action No. 87-3059

UNITED STATES DISTRICT COURT FOR THE EASTERN DISTRICT OF PENNSYLVANIA

1990 U.S. Dist. LEXIS 11819

September 5, 1990, Decided
September 6, 1990, Filed

**CASE SUMMARY:**

**PROCEDURAL POSTURE:** Defendant manufacturers filed a motion for judgment not withstanding the verdict (JNOV), a new trial, or to amend the verdict in the breach of contract action brought by plaintiff distributor. The manufacturers also requested that the court vacate its memorandum and order that awarded attorney's fees and costs to the distributor.

**OVERVIEW:** The distributor and the manufacturer entered into a distributorship agreement granting the distributor exclusive distributorship rights to a product. A dispute arose regarding the agreement, and the distributor filed an action against the manufacturer and a company that acquired the manufacturer for breach of contract and tortious interference with existing contractual relationships. The manufacturers filed counterclaims, and a jury returned a verdict in favor of the distributor. The manufacturers filed a variety of post-trial motions, which the court denied. The court held that the extrinsic evidence was properly admitted to clarify ambiguities in the contract's terms and to ascertain the meaning given to the terms by the parties. The court was not convinced that a mitigating jury instruction was appropriate. The court found that the distributor could increase its sales, but never recovered the loss from the agreement because those sales and profits had been removed from them by the breach of contract. The court held that evidence of the distributor's other lawsuits in order to show that the manufacturers feared the distributor would likely cause the jury great confusion and bias.

**OUTCOME:** The court denied the manufacturers' motion for JNOV, a new trial, or to amend the verdict in the breach of contract action brought by the distributor. The court reinstated its memorandum and order that awarded attorney's fees and costs to the distributor.

**CORE TERMS:** new trial, choice of law, punitive damages, waived, attorney's fees, jury's verdict, instructing, lawsuits, billed, error of law, judgment notwithstanding, damages award, plain error, compensatory damages, litigiousness, interrogatories, compensatory, convinced, admitting evidence, distributorship, matter of law, new lines, medical equipment, reasonable inferences, manifest injustice, clear and convincing evidence, properly instructed, adverse inference, inconsistency, withstanding

**LexisNexis(R) Headnotes**

*Civil Procedure > Trials > Judgment as Matter of Law > Judgments Notwithstanding Verdicts*
[HN1]Judgment notwithstanding the verdict (JNOV), pursuant to Fed. R. Civ. P. 50 is appropriate only where, as a matter of law, a jury's verdict is not supported by sufficient evidence to allow a reasonable juror to arrive at the verdict. In making the determination to grant

JNOV, the court must find that as a matter of law, the record is critically deficient of the minimum quantity of evidence from which the jury might reasonably afford relief. The party prevailing at trial is entitled to the benefit of all reasonable inferences that can be drawn from the evidence in order to determine that there is any rational basis for the verdict. JNOV is only appropriate when there is no evidence or reasonable inference that can be drawn supporting the verdict.

*Civil Procedure > Trials > Judgment as Matter of Law > Directed Verdicts*
*Civil Procedure > Judgments > Relief From Judgment > Motions for New Trials*
*Civil Procedure > Judgments > Relief From Judgment > Motions to Alter & Amend*
[HN2]The purpose of a motion for a new trial, pursuant to Fed. R. Civ. P. 59, is to allow the court to reevaluate the basis for an earlier decision. Since granting a motion for a new trial acts to overturn a jury verdict, the court will not set aside the jury's verdict unless manifest injustice will result if the verdict is allowed to stand. To grant a motion for a new trial, the court must find that the verdict is against the clear weight of the evidence, or is based upon evidence which is false, or will result in a miscarriage of justice, even though there may be substantial evidence that would prevent the direction of a verdict. Therefore, a new trial may be granted even where judgment notwithstanding the verdict is inappropriate. Fed. R. Civ. P. 50(b) allows a motion for judgment not withstanding the verdict to be joined with a motion for a new trial.

*Contracts Law > Contract Interpretation > Parol Evidence > General Overview*
*Contracts Law > Defenses > Ambiguity & Mistake > General Overview*
[HN3]Extrinsic evidence is proper to clarify ambiguities in the terms of a contract and to ascertain the meaning given to the terms by the parties.

*Civil Procedure > Federal & State Interrelationships > Choice of Law > General Overview*
[HN4]A party is entitled to be aware of the potential choice of law question so that the party can then make an informed choice whether or not to pursue the question.

*Civil Procedure > Trials > Jury Trials > Jury Instructions > General Overview*
*Civil Procedure > Remedies > Damages > Punitive Damages*

*Contracts Law > Remedies > Punitive Damages*
[HN5]Under Pennsylvania law, the court instructs the jury to determine, by a preponderance of the evidence, the amount of punitive damages necessary to punish and deter the defendant, considering the character of the defendant's act, the nature and extent of the harm caused and the defendant's wealth. Minnesota law requires, by clear and convincing evidence, an analysis of nine factors. Minn. Stat. § 549.20. While the nine factors are contained within the less specific factors under Pennsylvania law, Minnesota's clear and convincing evidence requirement does create a true conflict.

*Civil Procedure > Federal & State Interrelationships > General Overview*
*Civil Procedure > Trials > Jury Trials > Jury Instructions > Objections to Instructions*
*Civil Procedure > Appeals > Reviewability > Preservation for Review*
[HN6]Fed. R. Civ. P. 51 provides in part that no party may assign as error the giving or the failure to give an instruction unless that party objects thereto before the jury retires to consider its verdict, stating distinctly the matter objected to and the grounds of the objection.

*Civil Procedure > Federal & State Interrelationships > Choice of Law > General Overview*
*Civil Procedure > Trials > Jury Trials > Jury Instructions > Objections to Instructions*
*Civil Procedure > Appeals > Reviewability > Preservation for Review*
[HN7]A party can waive a potentially valid choice of law issue, but not due to inaction alone. This protects against a party being unduly surprised and prejudiced by the unexpected or unknown application of a particular state's law while protecting the stability of judgments. Application of the proper law is a factor in a case that is neither the extreme of a pro forma consideration nor an extreme that challenges the power of the court to hear a case. Therefore, where a choice of law question has been previously raised in a case but the actions of a party can only be interpreted as acquiescence in the application of the law of a particular state, resolution of the choice of law issue is waived. This is particularly true where a party has failed to comply with Fed. R. Civ. P. 51.

*Civil Procedure > Trials > Jury Trials > Jury Instructions > General Overview*
*Civil Procedure > Appeals > Standards of Review > Plain Error > General Overview*
*Criminal Law & Procedure > Jury Instructions > General Overview*

[HN8]The plain error doctrine is rarely applied in civil cases. Its use is limited to circumstances in which the jury was not properly instructed on an element essential to the claim such that they would have no guidance as to how to analyze that element. The absent witness instruction only presents the jury with guidance on an evidentiary issue. Since it in no way affects the legal elements of any claim, resort to the plain error doctrine is not appropriate.

***Civil Procedure > Trials > Jury Trials > Province of Court & Jury***
***Civil Procedure > Appeals > Standards of Review > General Overview***
[HN9]Where a jury's verdict appears to be internally inconsistent and the jury is no longer available to correct the apparent inconsistency, it is the court's constitutional duty to reconcile the apparent inconsistencies if at all possible.

**COUNSEL:** [*1] Lee A. Rosengard, Esq., STRADLEY RONON STEVENS & YOUNG, Philadelphia, Pennsylvania.

Jeffrey Lutsky.

ARDEN MEDICAL SYSTEMS, INC. ORTHO DIAGNOSTIC SYSTEMS, INC., JOHNSON & JOHNSON by: Alan M. Lieberman, Esq., Philadelphia, Pennsylvania.

Gerald J. St.John, Esq.

JOHNSON & JOHNSON PROFESSIONAL DIAGNOSTICS, INC. BY: Alan M. Lieberman, Esq., Philadelphia, Pennsylvania.

Gerard J. St. John, Esq.

**JUDGES:** James McGirr Kelly, United States District Judge.

**OPINION BY:** KELLY

**OPINION**

*MEMORANDUM AND ORDER*

Presently before the court are a variety of post-trial motions in this matter stemming from a distribution agreement gone wrong. Defendants have filed a motion for judgment not withstanding the verdict (JNOV), a new trial or to amend the verdict. Oral argument was held on these motions on May 5, 1990. Defendants also requested that the court vacate its memorandum and order of March 29, 1990, in which attorney's fees and costs were awarded to plaintiff. The order was vacated and an evidentiary hearing was held on this matter on June 5, 1990.

I. *BACKGROUND*

Plaintiff in this action, Advanced Medical, Inc. (Advanced) and defendant Arden Medical Systems, Inc. (Arden) originally entered into a distributorship agreement granting [*2] Advanced exclusive distributorship rights to Arden's product, the Chempro 1000. Subsequent to the agreement between Advanced and Arden, Johnson and Johnson (J&J) acquired Arden, which became a subsidiary of Johnson & Johnson. The other defendants, Ortho Diagnostic Systems, Inc. and Johnson & Johnson Professional Diagnostics, Inc. (collectively J&J defendants) are also subsidiaries of Johnson & Johnson. Following Arden's acquisition, this dispute arose regarding the distributorship agreement.

The jury returned a verdict in favor of Advanced and against Arden for $ 181,250.00 on the breach of contract claim. The jury awarded $ 543,750.00 to Advanced against J&J and the J&J defendants on the tortious interference with existing contractual relationships claim and an additional $ 7,150,000.00 in punitive damages. The jury found for Advanced on the counterclaims.

II. *JNOV or NEW TRIAL*

[HN1]Judgment notwithstanding the verdict (JNOV), pursuant to Fed. R. Civ. P. 50 is appropriate only where, as a matter of law, a jury's verdict was not supported by sufficient evidence to allow a reasonable juror to arrive at the verdict. *Link v. Mercedes-Benz of North America*, 788 F.2d 918, 921 (3d Cir. [*3] 1986). In making the determination to grant JNOV, the court must find that as a matter of law, "the record is critically deficient of the minimum quantity of evidence from which the jury might reasonably afford relief." *Simone v. Golden Nugget Hotel and Casino*, 844 F.2d 1031, 1034 (3d Cir. 1988). The party prevailing at trial is entitled to the benefit of all reasonable inferences that can be drawn from the evidence in order to determine that there is any rational basis for the verdict. *Bhaya v. Westinghouse Electric Co.*, 832 F.2d 258, 259 (3d Cir. 1987), cert. denied, 109 S. Ct. 782 (1989). JNOV is only appropriate when there is no evidence or reasonable inference that can be drawn supporting the verdict. *SCNO Barge Lines, Inc. v. Anderson Clayton & Co.*, 745 F.2d 1188, 1192-93 (8th Cir. 1984).

[HN2]The purpose of a motion for a new trial, pursuant to Fed. R. Civ. P. 59, is to allow the court to reevaluate the basis for an earlier decision. *Tevelson v. Life and Health Insurance Co. of America*, 643 F. Supp. 779,

782 (E.D. Pa. 1986), *affirmed*, 817 F.2d 753 (3d Cir. 1987). Since granting a motion for a new trial acts to overturn a jury verdict, the court will not set [*4] aside the jury's verdict unless "manifest injustice will result if the verdict is allowed to stand." *Emigh v. Consolidated Rail Corp.*, 710 F. Supp. 608, 609 (W.D. Pa. 1989). To grant a motion for a new trial, the court must find "that the verdict is against the clear weight of the evidence, or is based upon evidence which is false, or will result in a miscarriage of justice, even though there may be substantial evidence which would prevent the direction of a verdict." *Nebel v. Avichal Enterprises, Inc.*, 704 F. Supp. 570, 574 (D.N.J. 1989). Therefore, a new trial may be granted even where judgment notwithstanding the verdict is inappropriate. *Roebuck v. Drexel University*, 852 F.2d 715, 735-36 (3d Cir. 1988). Fed. R. Civ. P. 50(b) allows a motion for judgment not withstanding the verdict to be joined with a motion for a new trial. *See Montgomery Ward & Co. v. Duncan*, 311 U.S. 243, 250-51 (1940).

Defendants have listed a multitude of reasons why either JNOV or a new trial should be granted. As the court finds that the jury's verdict was supported by evidence such that the verdict was neither an error of law nor a manifest injustice requiring either JNOV or a new trial, [*5] this memorandum shall be limited to the following legal arguments presented by defendants:

(1) The court committed an error of law by admitting parol evidence concerning terms of the contract. Without the parol evidence, there is no evidence of a breach of the contract.

(2) The court did not properly instruct the jury how to measure damages. Specifically, defendants argue that the verdict was legally insufficient based upon and the court's refusal to instruct on the duty to mitigate damages.

(3) The award of punitive damages was improper because the court excluded evidence that defendants' conduct was based on its fear of Advanced's litigiousness.

(4) The award of punitive damages was based upon Pennsylvania rather than Minnesota law.

(5) Punitive damages are an unconstitutional deprivation of defendants' property without due process of law.

(6) The court committed prejudicial error by instructing the jury that it must draw an adverse inference from absence of a witness controlled by defendants; by admitting evidence of an offer to pay a witness and instructing the jury that this could be considered as evidence that defendants thought their case was weak; by admitting evidence that [*6] a witness had been instructed to adhere to the company line at his deposition.

A. *Breach of Contract*

Arden contends that the court committed an error of law by admitting extrinsic evidence to interpret the language of the contract. [HN3]Extrinsic evidence was proper here to clarify ambiguities in the terms of the contract and to ascertain the meaning given to the terms by the parties. *Mellon Bank N.A. v. Aetna Business Credit, Inc.*, 619 F.2d 1001, 1009 (3d Cir. 1980).

B. *Mitigation of Damages*

Preliminarily, defendants have met their burden of preserving this objection by requesting this instruction and by having the court refuse to present the instruction at the charging conference. *Bowley v. Stotler & Co.*, 751 F.2d 641, 647 (3d Cir. 1985). However, the court is no more convinced now than it was convinced at that charging conference that a mitigating instruction is appropriate. Defendants suggest that Advanced could lessen its losses under the breach of contract by searching for new lines of medical equipment to carry. This argument ignores the reality of Advanced's business. Advanced is in the business of distributing medical equipment for various manufacturers. By adding [*7] any number of new lines, Advanced can increase its sales but never recover the loss from the Chempro contract because those sales and profits have been removed from them by the breach of the contract. Advanced always has a right to seek to add new products to its line. *See, Storage Technology Corp. v. Trust Company of New Jersey*, 842 F.2d 54 (3d Cir. 1988).

C. *Prior Lawsuits*

Defendants contend that they have been prejudiced by the Court's exclusion of evidence of prior lawsuits by Advanced in order to show that Advanced was highly litigious and Defendants acted out of fear of this litigiousness. The court ruled *in limine* that this evidence was highly prejudicial and lacked probative value under Fed. R. Evid. 403. While defendants argue that evidence of plaintiff's prior lawsuits is probative into their motives for their acts, this evidence does not describe plaintiff's actions in this case. Defendants were allowed to admit evidence of their fear of Advanced's litigiousness based upon acts relevant to the defendants. To embark upon a collateral search through Advanced's other lawsuits in order to show that defendants feared Advanced would be likely to cause the jury to [*8] be greatly confused and create an overall bias based upon factors external to the case.

D. *Choice of Law*

Defendants argue that the court erred by instructing the jury on punitive damages under Pennsylvania law rather than Minnesota law.[1] However, defendants presented no proposed punitive damages instruction under Minnesota law. Their only objection to instructing on punitive damages was that the instruction should not be given. Accordingly, defendants' objection to Pennsylvania choice of law would appear to be waived under Fed. R. Civ. P. 51.[2] Defendants, however, contend that a new trial is compelled by *Parkway Baking Co. v. Freihofer Baking Co.*, 255 F.2d 641, 646 (3d Cir. 1958). In *Parkway Baking*, a choice of law issue was raised first on appeal and was held not to be waived. Defendants contend that *Parkway Baking* states as an irrefutable maxim of Third Circuit law that choice of law can never be waived. Upon reviewing *Parkway Baking* and trying to reconcile it with Rule 51, it appears to the court that defendants have overstated the *Parkway Baking* ruling to the extent that the finality of any judgment could always be challenged on choice of law questions. [*9] The relevant statement in *Parkway Baking* is that a party "cannot be considered to have waived its right to have the contract interpreted under the proper law by failing to raise the question in the District Court." Subsequent analysis of *Parkway Baking* and the cases upon which it relies suggests that less than an absolute guarantee of a correct choice of law determination is required. Rather, [HN4]a party is entitled to be aware of the potential choice of law question so that the party can then make an informed choice whether or not to pursue the question. See *Jannenga v. Nationwide Life Ins. Co.*, 288 F.2d 169, 171 (D.C. Cir. 1961) (plaintiff relying on D.C. law at trial could not assert Ohio law, even if proper, on appeal and collecting cases).

> 1  [HN5]Under Pennsylvania law, the court instructed the jury to determine, by a preponderance of the evidence, the amount of punitive damages necessary to punish and deter the defendant, considering the character of the defendant's act, the nature and extent of the harm caused and the defendant's wealth. Minnesota law requires, by clear and convincing evidence, an analysis of nine factors. Minn. Stat. § 549.20. While the nine factors are contained within the less specific factors under Pennsylvania law, Minnesota's clear and convincing evidence requirement does create a true conflict.

[*10]

> 2  [HN6]Rule 51 provides, in relevant part:
>
> No party may assign as error the giving or the failure to give an instruction unless that party objects thereto before the jury retires to consider its verdict, stating distinctly the matter objected to and the grounds of the objection.

Subsequent to *Parkway Baking*, the Third Circuit has deemed parties to have waived choice of law issues. *Mellon Bank v. Aetna*, 619 F.2d 1001, 1005, n.1 (3d Cir. 1980). Defendants' contention that *Mellon Bank* sets a standard that allows waiver only when choice of law has not been raised on appeal ignores the basis of that waiver. The *Mellon Bank* court's waiver determination relied upon *Bilancia v. GMC*, 538 F.2d 621 (4th Cir. 1976). In *Bilancia*, 538 F.2d at 622-23, plaintiffs initially asserted New Jersey law applied but expressed that they had no objection to applying Virginia law. Later, plaintiffs again asserted New Jersey law which was rejected by the court. On the eve of a second trial, plaintiffs agreed to withdraw the choice of law question. The court instructed the jury under Virginia law with [*11] no objection from the plaintiffs. Plaintiffs' failure to object was held to be a waiver under Rule 51.

By following a standard whereby [HN7]a party can waive a potentially valid choice of law issue, but not due to inaction alone, a proper balance is struck between *Parkway Baking* and Rule 51. This protects against a party being unduly surprised and prejudiced by the unexpected or unknown application of a particular state's law while protecting the stability of judgments. Application of the proper law is a factor in a case which is neither the extreme of a *pro forma* consideration nor an extreme which challenges the power of the court to hear a case. Therefore, where a choice of law question has been previously raised in a case but the actions of a party can only be interpreted as acquiescence in the application of the law of a particular state, resolution of the choice of law issue is waived. This is particularly true where a party has failed to comply with Rule 51.

In the present case, defendants asserted that Minnesota law should be applied in summary judgment briefs, their pretrial memorandum and in proposed jury instructions. On the motion for summary judgment, the court applied [*12] Pennsylvania law since the parties had identified no true conflict between Minnesota and Pennsylvania law. *Advanced Medical, Inc. v. Arden Medical Systems, Inc.*, No. 87-3059, slip op. at 3, n.2 (E.D. Pa. December 5, 1988). Defendants have neither challenged this determination nor subsequently identified any conflict prior to post trial motions. By neither filing a proposed punitive damages instruction under Minnesota law nor objecting to the application of Pennsylvania punitive damages law, defendants failed to alert the court to a conflict in punitive damages law and accepted the application of Pennsylvania law. Under these circumstances, defendants have waived this argument.

E. *Constitutionality of Punitive Damages*

Defendants contention, that an award of punitive

damages acts as a deprivation of their property without due process of law, provides an interesting academic argument. It is not, however, the long line of punitive damages law which this court must follow. The types of limits which defendants suggest are those best imposed by legislative action rather than judicial modification.

### F. Errors in Evidence or Instructions

The court, in delivering an instruction regarding [*13] an absent witness, inadvertently instructed that the jury must draw an adverse inference from the absence of a witness who was uniquely available to the defendants. See *Advanced Medical, Inc. v. Arden Medical Systems, Inc.*, No. 87-3059 slip op. (E.D. Pa. April 17, 1990). Since defendants did not specifically object to this instruction on this ground, it is now waived under Fed. R. Civ. P. 51 and plaintiffs must now contend that the instruction was plain error and warrants a new trial.

[HN8]The plain error doctrine is rarely applied in civil cases. Its use is limited to circumstances in which the jury was not properly instructed on an element essential to the claim such that they would have no guidance as to how to analyze that element. *See, Choy v. Bouchelle*, 436 F.2d 319, 325 (3d Cir. 1970). The absent witness instruction only presents the jury with guidance on an evidentiary issue. Since it in no way affects the legal elements of any claim, resort to the plain error doctrine is not appropriate.

The court is not convinced that it committed error in admitting evidence on other matters which defendants assert are grounds for a new trial.

### III. AMENDING THE VERDICT

Defendants [*14] contend that the jury's compensatory damages award of $ 181,250.00 on the breach of contract claim and $ 543,750.00 on the tortious interference with existing contractual relationships claim should be amended to reflect only the award on the contract claim. This award was made by the jury by answering interrogatories to which defendants did not object. While they have attacked the factual basis of the jury's compensatory damages award, defendants do not suggest that the jury was improperly instructed in how to determine compensatory damages.

[HN9]Where a jury's verdict appears to be internally inconsistent and the jury is no longer available to correct the apparent inconsistency, it is the court's "constitutional duty to reconcile the apparent inconsistencies if at all possible." *Diamond Shamrock Corp. v. Zinke & Trumbo, Ltd.*, 791 F.2d 1416, 1431 (10th Cir.) (dissenting in part and concurring in part), *cert. denied*, 479 U.S. 1007 (1986). Defendants suggest that the jury intended $ 181,250.00 to represent the total verdict and that the additional $ 543,750.00 represented a multiplier. However, since the jury was properly instructed on compensatory damages and the total compensatory [*15] damages award reflects a total of $ 725,000.00 divided into four equal shares, it appears that the jury intended to award $ 725,000.00 in compensatory damages. Of course, joint and several liability was not a concern of the jury and while the interrogatories could have been drafted to avoid this problem, neither party objected to the interrogatories or the verdict prior to dismissal of the jury.

### IV. ATTORNEY'S FEES

At the hearing on the award of attorney's fees, Arden retreated from its contention that an award of attorney's must be in proportion to the number of successful claims and attempted to prove that the amount billed was in fact a sham due to the relationship between Advanced's management and the firm of Stradley, Ronon, Stevens & Young (Stradley). Based upon the evidence presented, the court makes the following additional findings of fact:

1. William Sasso, a partner at Stradley, and John Sasso, principal owner of Advanced, are brothers.

2. Advanced was billed $ 915,898.49 by Stradley for fees and costs in this litigation.

3. Advanced has paid $ 183,062.20 of the amount owed to Stradley in this matter. Total payments made, including costs, are $ 315,348.18. The last [*16] payment was made in September, 1988.

4. Stradley has neither pressured Advanced to pay its bills nor instituted collection proceedings.

5. Advanced has paid its bills in other legal matters handled by Stradley.

6. The unpaid portion of the Advanced bill is accruing interest.

7. Stradley has a legitimate business reason for not pressuring Advanced to quickly pay its bills.

8. The full amount billed to Advanced is still due to Stradley.

As the evidence presented at the June 6, 1990 hearing has not in any other way changed the court's findings on attorney's fees, the Memorandum and Order of March 29, 1990 are readopted. Defendants request the court to create a new standard, requiring exacting claim by claim specificity and a billed amount based upon a ratio to the ultimate result, for commercial agreements to pay attorney's fees. The court rejects defendants' invitation to ignore the well settled law of the Third Circuit regarding attorney's fees. The court may have previously been too strict in reducing the costs allowable to Touche Ross,

however, as Advanced chose not to file an objection to the original Memorandum and Order, the court shall not disturb its original finding.

*ORDER*

[*17]   AND NOW, this 5th day of September, 1990, upon consideration of the motion of the defendants for judgment notwithstanding the verdict, new trial or to amend the verdict, the response of the plaintiff, defendants' reply thereto, various supplemental memoranda and a hearing in this matter; And upon reconsideration of the petition for attorney's fees and costs of the plaintiffs, the response of the defendants, and a hearing in this matter, it is ORDERED that:

1. The motion for judgment notwithstanding the verdict of the defendants is DENIED.

2. The motion for a new trial of the defendants is DENIED.

3. The verdict is amended to reflect that all defendants are jointly severally liable for the sum of $ 725,000.00.

4. The court's Memorandum and Order of March 29, 1990 are reinstated. Plaintiffs are awarded $ 819,055.38 in reasonable attorney's fees and costs of litigation.