# EXHIBIT "B"



IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TEXAS
TYLER DIVISION

| | | |
|---|---|---|
| ERIC ALBRITTON, | § § § | |
| Plaintiff, | § § | |
| v. | § § | Case No. 6:08-CV-89 |
| CISCO SYSTEMS, INC., RICHARD FRENKEL, MALLUN YEN and JOHN NOH, | § § § § § | **SEALED** |
| Defendants. | § § | |

## MEMORANDUM OPINION AND ORDER GRANTING IN PART DEFENDANTS' MOTION FOR SUMMARY JUDGMENT AND GRANTING IN PART PLAINTIFF'S CROSS-MOTION FOR SUMMARY JUDGMENT

The following are pending before the court:

1. Defendants' motion for summary judgment (docket entry #97)[1];

2. Plaintiff's corrected response to Defendants' motion for summary judgment [and cross-motion for summary judgment] (docket entry #115);

3. Defendants' reply to Plaintiff's response to Defendants' motion for summary judgment (docket entry #125); and

4. Plaintiff's sur-reply in response to Defendants' motion for summary judgment (docket entry #130).

Having considered the parties respective motions for summary judgment and the responsive briefing thereto, the court finds that the motions for summary judgment should be granted in part.

Additionally pending before the court are the following motions:

---

[1] Defendants Yen and Noh filed their motion for summary judgment subject to their respective motions to dismiss for lack of personal jurisdiction.

-1-

1. Plaintiff's objections and motion to strike summary judgment evidence (docket entry #111);

2. Defendants' motion to strike Plaintiff's amended (corrected) response to Defendants' motion for summary judgment (docket entry #121);

3. Defendants' motion to strike Plaintiff's cross-motion for summary judgment (docket entry #122);

4. Defendants' objections and motion to strike Plaintiff's evidence cited in response to Defendants' motion for summary judgment (docket entry #123); and

5. Defendants' objections to and motion to strike with respect to Plaintiff's sur-reply to Defendants' motion for summary judgment (docket entry #154).

Having considered the above-referenced motions and the respective responsive briefing thereto, the court finds that the motions should be denied.

## OBJECTIONS AND MOTIONS TO STRIKE

The parties filed objections to the summary judgment evidence. Having considered the objections, the court notes that it will review the evidence provided in accordance with the appropriate summary judgment and evidentiary standards.

Further, the Defendants filed motions to strike the Plaintiff's corrected summary judgment response because (1) the corrected response contains an "actual malice" argument that was not raised in the Plaintiff's original summary judgment response, and (2) the corrected response contains an untimely filed cross-motion for summary judgment. As discussed in detail below, the court concludes that the Plaintiff is not required to establish actual malice; therefore, the Defendants' motion to strike with respect to the Plaintiff's actual malice argument is denied. Additionally, the court denies the Defendants' motion to strike with respect to the Plaintiff's cross-motion for summary judgment. Although the Plaintiff should have moved for summary judgment by the

deadline imposed by the court, in the interest of justice, the court declines the Defendants' invitation to strike the Plaintiff's cross-motion for summary judgment on the purely procedural basis of untimeliness because the issue of whether the Plaintiff is a public or private figure is a legal question that the court must decide anyway.

## BACKGROUND

In October 2007, the Plaintiff herein, Eric Albritton, an attorney, filed a patent lawsuit on behalf of his client, ESN, styled *ESN, LLC v. Cisco Systems, Inc.*, 5:07-cv-156, in the Texarkana Division of the United States District Court for the Eastern District of Texas.[2] The filing of the *ESN* lawsuit sparked an interest with Defendant Frenkel ("Frenkel"), an attorney employed by Defendant Cisco ("Cisco"). Frenkel posted an article on his web log ("blog") – the Patent Troll Tracker – about the *ESN* lawsuit on October 17, 2007 in pertinent part as follows:

> **Troll Jumps the Gun, Sues Cisco Too Early**
>
> Well, I knew the day would come. I'm getting my troll news from Dennis Crouch now. According to Dennis, a company called ESN sued Cisco for patent infringement on October 15th, while the patent did not issue until October 16th. I looked, and ESN appears to be a shell entity managed by the President and CEO of DirectAdvice, an online financial website. And, yes, he's a lawyer. He clerked for a federal judge in Connecticut, and was an attorney at Day, Berry & Howard. Now he's suing Cisco on behalf of a non-practicing entity.
>
> I asked myself, can ESN do this? I would think that the court would lack subject matter jurisdiction, since ESN owned no property right at the time of the lawsuit, and the passage of time should not cure that. And, in fact, I was right:
>
> ---
>
> One other interesting tidbit: Cisco appeared to pick up on this, very quickly. Cisco filed a declaratory judgment action (in Connecticut) yesterday, the day after ESN

---

[2] Central to the dispute here is whether the complaint was filed on October 15 or 16, 2007. The parties do not agree on the date the complaint was filed.

-3-

filed its null complaint. Since Cisco's lawsuit was filed after the patent issued, it should stick in Connecticut.

Perhaps realizing their fatal flaw (as a couple of other bloggers/news items have pointed out), ESN (represented by Chicago firm McAndrews Held & Malloy and local counsel Eric Albritton and T. Johnny Ward) filed an amended complaint in Texarkana today – amending to change absolutely nothing at all, by the way, except the filing date of the complaint. Survey says? XXXXXX (insert "Family Feud" sound here). Sorry, ESN. You're on your way to New Haven. Wonder how Johnny Ward will play there?

Thereafter, on October 18, 2007, Frenkel posted the following article on his blog:

### ESN Convinces EDTX Court Clerk To Alter Documents To Try To Manufacture Subject Matter Jurisdiction Where None Existed

I got a couple of anonymous emails this morning, pointing out that the docket in ESN v. Cisco (the Texas docket, not the Connecticut docket), had been altered. One email suggested that ESN's local counsel called the EDTX court clerk, and convinced him/her to change the docket to reflect and October 16 filing date, rather than the October 15 filing date. I checked, and sure enough, that's exactly what happened – the docket was altered to reflect an October 16 filing date and the complaint was altered to change the filing date stamp from October 15 to October 16. Only the EDTX Court Clerk could have made such changes.

Of course, there are a couple of flaws in this conspiracy. First, ESN counsel Eric Albritton signed the Civil Cover Sheet stating that the complaint had been filed on October 15. Second, there's tons of proof that ESN filed on October 15. Heck, Dennis Crouch may be subpoenaed as a witness!

You can't change history, and it's outrageous that the Eastern District of Texas is apparently, wittingly or unwittingly, conspiring with a non-practicing entity to try to manufacture subject matter jurisdiction. This is yet another example of the abusive nature of litigating patent cases in the Banana Republic of East Texas.[3]

(n.b.: don't be surprised if the docket changes back once the higher-ups in the Court

---

[3] Frenkel subsequently removed the sentence referencing the "Banana Republic of Texas" and replaced it with the following:

Even if this was a "mistake," which I can't see how it could be, given that someone emailed me a printout of the docket from Monday showing the case, the proper course of action should be a motion to correct the docket.

-4-

get wind of this, making this post completely irrelevant.

The Plaintiff subsequently filed the instant action seeking damages for defamation, negligence and gross negligence against Frenkel, Cisco, Mallun Yen[4] and John Noh[5]. The parties are now before the court on their respective motions for summary judgment.

## LEGAL STANDARD

The purpose of summary judgment is to isolate and dispose of factually unsupported claims or defenses. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 327 (1986). Summary judgment is proper if "the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56(c). A dispute about a material fact is genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). The trial court must resolve all reasonable doubts in favor of the party opposing the motion for summary judgment. *Casey Enterprises, Inc. v. American Hardware Mut. Ins. Co.*, 655 F.2d 598, 602 (5th Cir. 1981)(citations omitted). The substantive law identifies which facts are material. *See id.* at 248.

The party moving for summary judgment has the burden to show that there is no genuine issue of material fact and that it is entitled to judgment as a matter of law. *See id.* at 247. If the movant bears the burden of proof on a claim or defense on which it is moving for summary judgment, it must come forward with evidence that establishes "beyond peradventure *all* of the essential elements of the claim or defense." *Fontenot v. Upjohn Co.*, 780 F.2d 1190, 1194 (5th Cir.

---

[4] Yen is an attorney employed by Cisco and is Cisco's vice-president of intellectual property.

[5] Noh formerly served as Cisco's senior public relations manager.

-5-

1986). But if the nonmovant bears the burden of proof, the movant may discharge its burden by showing that there is an absence of evidence to support the nonmovant's case. *Celotex*, 477 U.S. at 323, 325; *Byers v. Dallas Morning News, Inc.*, 209 F.3d 419, 424 (5th Cir. 2000). Once the movant has carried its burden, the nonmovant must "set out specific facts showing a genuine issue for trial." FED. R. CIV. P. 56(e)(2). The nonmovant must adduce affirmative evidence. *See Anderson*, 477 U.S. at 257.

## DISCUSSION AND ANALYSIS

"To establish a defamation claim, a plaintiff must demonstrate: (1) the defendant published a factual statement; (2) that was capable of defamatory meaning; (3) concerning the plaintiff; (4) while acting with either negligence, if the plaintiff is a private individual, or actual malice, if the plaintiff is a public figure or public official, concerning the truth of the statement." *Houseman v. Publicaciones Paso del Norte, S.A. DE C.V.*, 242 S.W.3d 518, 523-24 (Tex. App. – El Paso 2007, no pet.). "Defamation is a false statement about a person, published to a third party, without legal excuse, which damages the person's reputation." *Fiber Systems International, Inc. v. Roehrs*, 470 F.3d 1150, 1161 (5th Cir. 2006). "To be defamatory, words must be false." *Alaniz v. Hoyt*, 105 S.W.3d 330, 345 (Tex. App. – Corpus Christi 2003, no pet.). "Words are defamatory if they tend to harm a person's reputation." *Id.* "Words that expose a person to public hatred, contempt, ridicule, or financial injury harm a person's reputation." *Id.*

"Generally, there are two types of defamatory words: (1) defamation per se, or words that are actionable in and of themselves, which does not require any allegation of special damages; and (2) defamation per quod, or words that are actionable only on allegations and proof of special damages." *Id.* While "[p]leading libel *per se* eliminates the requirement of pleading or proving special

damages, [ ] it does not shift the plaintiff's burden of proving the elements of its cause of action, . . ." *UTV of San Antonio, Inc. v. Ardmore, Inc.*, 82 S.W.3d 609, 610 (Tex. App. – San Antonio 2002, no pet.).

"Defamation is actionable per se if it injures a person in his office, business, profession, or occupation." *Morrill v. Cisek*, 226 S.W.3d 545, 549 (Tex. App. – Houston [1st Dist.] 2006, no pet.). "A false statement that charges a person with the commission of a crime is also libelous per se." *Id.* at 549-50. Here, the Plaintiff alleges that Frenkel's October 17 and 18, 2007 blog posts are both false and defamatory per se. The Defendants counter that the blog posts are either substantially true or merely rhetoric, hyperbole or opinion and, therefore, not actionable.

### 1.   WERE FRENKEL'S BLOG POSTS DEFAMATORY?

"Whether words can be interpreted as defamatory is a question of law for the court." *Alaniz*, 105 S.W.3d at 346. "The court applies an objective standard by construing the words as a whole, in light of surrounding circumstances, based on how a person of ordinary intelligence would perceive the words." *Id.* "If the court determines that the words are ambiguous or of doubtful import, a factfinder should decide the words' meaning and the effect of the words on an ordinary person." *Id.*

Initially, the court must determine whether Frenkel's posts were statements of opinion or statements of fact because a defamatory expression is not actionable unless it constitutes a statement of false fact. *See Koch v. Prostep, Inc.*, 2002 WL 31360404, *5 (N.D. Tex. 2002) (citations omitted). "Falsity 'for constitutional purposes [depends upon] the meaning a reasonable person would attribute to a publication, and not on a technical analysis of each individual statement.'" *Id.* (citation omitted). "Whether a publication makes a statement of fact that is false and defamatory depends upon a reasonable person's perception of the entirety of the publication, not merely on

individual statements." *Id.* (citations omitted).

Opinions or ideas that include implied assertions of objective fact may be actionable. *Id.* "Hence, an opinion may be actionable in a defamation case if the statement contains an implied assertion of fact." *Id.* (citations omitted). Here, the court concludes that genuine issues of material fact exist as to the character of Frenkel's October 17 and 18, 2007 blog posts, *i.e.* whether the posts are mere opinions rather than statements constituting implied assertions of fact. *See id.*

As noted below, the Defendants may defeat the Plaintiff's defamation claim by establishing the truth of the alleged defamatory statements. *See id.* at *6. The Plaintiff, however, denies that the statements in Frenkel's blog posts are true. Having reviewed the evidence provided by the parties, the court concludes that the summary judgment evidence discloses conflicting material factual assertions, thus foreclosing the establishment of the defense of truth as a matter of law. *See id.* Accordingly, summary judgment is not appropriate on this issue.

The Plaintiff argues that Frenkel's blog posts are defamatory per se because they attack the Plaintiff in his business and occupation and insinuate criminal conduct. The court, however, is of the opinion that the posts are capable of both innocent hyperbole and defamatory insinuation; accordingly, since a genuine issue of material fact exists as to whether the posts are defamatory per se, summary judgment is foreclosed on this issue as well. Therefore, a jury will be required to determine if the posts are actually defamatory per se.[6]

---

[6]The Defendants argue that there is nothing materially false in the October 17, 2007 post and that summary judgment should be granted with respect to this post. However, as noted by the Plaintiff, the October 17, 2007 post establishes the factual predicate for the October 18, 2007 post. The court declines to grant summary judgment on this issue.

-8-

2.  **IS THE PLAINTIFF A PRIVATE PERSON OR A PUBLIC FIGURE?**

"The degree and burden of proof applied in a defamation case hinges on the status of the plaintiff as either a private individual or a public figure." *Alaniz*, 105 S.W.3d at 346. "The question of public figure status is one of constitutional law for courts to decide." *Koch*, 2002 WL 31360404 at *6, citing *Rosenblatt v. Baer*, 383 U.S. 75, 88, 86 S.Ct. 669, –, 15 L.Ed.2d 597 (1966); *Trotter v. Jack Anderson Enters., Inc.*, 818 F.2d 431, 433 (5th Cir. 1987); *WFAA-TV, Inc. v. McLemore*, 978 S.W.2d 568, 571 (Tex. 1998).

"Fault is a constitutional prerequisite for defamation liability." *WFAA-TV, Inc. v. McLemore*, 978 S.W.2d 568, 571 (Tex. 1998). "Private plaintiffs must prove that the defendant was at least negligent." *Id.* "Public officials and public figures must establish a higher degree of fault. They must prove that the defendant published a defamatory falsehood with actual malice, that is, with 'knowledge that it was false or with reckless disregard of whether it was false or not.'" *Id.* "If the plaintiff is a private person or entity, truth is an affirmative defense to a defamation claim; if the plaintiff is a public figure, falsity is a constitutionally required element of a *prima facie* case for defamation." *Gateway Logistics Group, Inc. v. Dangerous Goods Management Australia Pty, Ltd.*, 2008 WL 1883914, *6 (S.D. Tex. 2008), citing *Hearst Corp. v. Skeen*, 159 S.W.3d 633, 637 n.1 (Tex. 2005) (citing *Bentley v. Bunton*, 94 S.W.3d 561, 586-87 (Tex. 2002)).

"Public figures fall into two categories: (1) all-purpose, or general-purpose, public figures, and (2) limited-purpose public figures." *McLemore*, 978 S.W.2d at 571. "General-purpose public figures are those individuals who have achieved such pervasive fame or notoriety that they become public figures for all purposes and in all contexts." *Id.* "Limited-purpose public figures, on the other hand, are only public figures for a limited range of issues surrounding a particular public

-9-

controversy."

"To determine whether an individual is a limited-purpose public figure, the Fifth Circuit has adopted a three-part test: (1) the controversy at issue must be public both in the sense that people are discussing it and people other than the immediate participants in the controversy are likely to feel the impact of its resolution; (2) the plaintiff must have more than a trivial or tangential role in the controversy; and (3) the alleged defamation must be germane to the plaintiff's participation in the controversy." *Id.* Here, the Defendants contend that the Plaintiff is a limited-purpose public figure.

To determine the existence of a public controversy, the court "must examine whether persons actually were discussing some specific question. A general concern or interest will not suffice." *Id.* at 572 (citation omitted). The Defendants argue that the blog postings address the public controversy regarding the abuse of the patent system by non-practicing entities in the Eastern District of Texas, including the issue of non-practicing entities attempting to maintain venue in the Eastern District of Texas. The Plaintiff counters that the matter at issue, the lawsuit between ESN and Cisco, did not involve a pubic controversy. The court agrees with the Plaintiff. The *ESN* lawsuit was not a matter of public concern. There is no evidence that the private dispute between ESN and Cisco constituted a public controversy.

To determine if the plaintiff had more than a trivial or tangential role in the controversy, the court considers "(1) whether the plaintiff actually sought publicity surrounding the controversy, (2) whether the plaintiff had access to the media, and (3) whether the plaintiff 'voluntarily engag[ed] in activities that necessarily involve[d] the risk of increased exposure and injury to reputation.'" *Id.* at 573 (internal citations omitted). The Defendants argue that the Plaintiff "thrust" himself into the patent venue controversy by lobbying against patent reform to certain members of Congress.

-10-

Additionally, the Defendants argue that the Plaintiff played an important role in the venue controversy because the Plaintiff was one of the top filers of patent cases on behalf of non-practicing entities in the Eastern District of Texas. Finally, the Defendants argue that since the Plaintiff has published two law review articles, spoken at various seminars and been a guest commentator on Court TV, the Plaintiff has achieved limited-purpose public figure status. Interestingly, the Defendants presented no evidence that the Plaintiff's law review articles, seminars or television appearance were related to the patent venue controversy.[7] Further, while the Plaintiff admits to discussing pending patent legislation with certain elected officials, such discussions apparently did not occur until after Frenkel published the blog posts at issue. However, even if the discussions occurred prior to the postings, there is no evidence before the court that the Plaintiff sought to make his discussions public. Finally, the fact that the Plaintiff files patent lawsuits in the Eastern District of Texas, standing alone, does not elevate the Plaintiff to limited-purpose public figure status. As such, the court finds that the Plaintiff is a private individual for defamation purposes and, therefore, need only show that the Defendants were negligent with respect to the truth of Frenkel's statements.[8] *See Koch*, 2002 WL 31360404 at *7.

As discussed above, to the extent that the parties have proffered controverting evidence regarding the issue of the truth or falsity of Frenkel's blog posts, genuine issues of material fact exist regarding whether Frenkel knew or should have known that his statements were false. *See id.* Accordingly, summary judgment is not appropriate on the issue of fault. *See id.*

---

[7] In fact, the Plaintiff states that the law review articles, seminars and television appearance were wholly unrelated to the controversy at issue.

[8] Based on the foregoing analysis, it is not necessary for the court to examine the remaining prong of the three-part limited-purpose public figure test.

### 3. DAMAGES

The Defendants argue that, as a matter of law, the Plaintiff has suffered no compensable damages. However, if the jury finds that the blog posts are defamatory per se, the Plaintiff is entitled to damages. "With defamatory per se statements, general damages for injury to character, reputation, feelings, mental suffering or anguish, or other wrongs not susceptible to monetary valuation are presumed." *Texas Disposal Systems Landfill, Inc. v. Waste Management Holdings, Inc.*, 219 S.W.3d 563, 584 (Tex. App. – Austin 2007, pet. denied). "Although the amount of actual general damages remains a question for the jury, when an affirmative finding of defamation per se has been entered and presumed damages are appropriate, the plaintiff is entitled to an award of at least one dollar in nominal damages, even if zero actual damages are awarded." *Id*. The Defendants motion for summary judgment as it pertains to damages is denied.

### 4. NEGLIGENCE

The Defendants further move for summary judgment on the Plaintiff's negligence and gross negligence claims. The Defendant argues that the Plaintiff has merely attempted to repackage his defamation claim as a negligence claim. The court agrees. Although the Plaintiff argues in a footnote that Cisco acted negligently in defaming him, the court does not find the Plaintiff's brief argument compelling. Accordingly, the court grants the Defendants' motion for summary judgment with respect to the Plaintiff's negligence claims.[9]

### 5. DEFENDANTS NOH AND YEN

Finally, the Defendants contend that summary judgment should be granted with respect to Defendants Noh and Yen. In response, the Plaintiff argues that Yen and Noh face liability for

---

[9]The parties offered no argument about the Plaintiff's gross negligence claim.

assisting, encouraging, participating in or ratifying Frenkel's tort. Additionally, the Plaintiff argues that Noh is liable for disseminating the posts.

The Plaintiff appears to be asserting a cause of action for civil conspiracy. "A civil conspiracy is 'a combination by two or more persons to accomplish an unlawful purpose, or to accomplish a lawful purpose by unlawful means.'" *Bentley v. Bunton*, 94 S.W.3d 561, 618 (Tex. 2002) (Baker, J., dissenting) (citations omitted). "'The essential elements are: (1) two or more persons; (2) an object to be accomplished; (3) a meeting of minds on the object or course of action; (4) one or more unlawful, overt acts; and (5) damages as the proximate result.'" *Id*. "Thus, if a conspiracy is proven, it can extend liability in tort beyond the active wrongdoer to those conspirators who may have merely planned, assisted, or encouraged the wrongdoer's acts." *Id*. at 619.

The Plaintiff did not plead civil conspiracy nor did the Plaintiff offer competent summary judgment regarding the same. Accordingly, the court declines to extend liability to Yen and Noh. The Defendants' motion for summary judgment with respect to Yen and Noh is, therefore, granted.[10]

## CONCLUSION

Based on the foregoing, the court hereby **GRANTS IN PART** Defendants' motion for summary judgment (docket entry #97) and **GRANTS IN PART** Plaintiff's cross-motion for summary judgment (docket entry #115). Finally, the court **DENIES** the following motions:

1.   Plaintiff's objections and motion to strike summary judgment evidence (docket entry #111);

2.   Defendants' motion to strike Plaintiff's amended (corrected) response to Defendants'

---

[10]The Plaintiff, in a footnote, also argues that Yen, as Frenkel's direct supervisor, served as Frenkel's principal and master and is therefore liable under the theories of agency and respondeat superior. The court finds that the Plaintiff did not adequately brief these issues and declines to consider the same.

-13-

      motion for summary judgment (docket entry #121);

3. Defendants' motion to strike Plaintiff's cross-motion for summary judgment (docket entry #122);

4. Defendants' objections and motion to strike Plaintiff's evidence cited in response to Defendants' motion for summary judgment (docket entry #123); and

5. Defendants' objections to and motion to strike with respect to Plaintiff's sur-reply to Defendants' motion for summary judgment (docket entry #154).

IT IS SO ORDERED.

**SIGNED this the 27th day of February, 2009.**

*Richard A. Schell* (signature)

RICHARD A. SCHELL
UNITED STATES DISTRICT JUDGE