Ward v. Cisco Systems, Inc. et al | Doc. 147 Att. 2
Case 4:08-cv-04022-JLH   Document 147-3   Filed 11/15/09   Page 1 of 9
Case 6:08-cv-00089-RAS   Document 97   Filed 11/26/2008   Page 1 of 31

IN THE UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TEXAS
TYLER DIVISION

| | |
|---|---|
| ERIC M. ALBRITTON § § § | |
| v. § § § | C. A. NO. 6:08-CV-00089 |
| CISCO SYSTEMS, INC., § RICK FRENKEL, MALLUN YEN & § JOHN NOH § | |

## DEFENDANTS' MOTION FOR SUMMARY JUDGMENT

TO THE HONORABLE COURT:

Defendants Cisco Systems, Inc. ("Cisco"), Richard Frenkel ("Frenkel"), Mallun Yen[1] ("Yen") and John Noh[2] ("Noh"), hereby file this Motion for Summary Judgment ("Motion") pursuant to Rule 56 of the Federal Rules of Civil Procedure and the local rules of this Court:

## I. INTRODUCTION

Eric Albritton ("Albritton") was retained as local counsel to file a lawsuit on behalf of ESN against Cisco Systems, Inc.[3] ESN planned to file the suit one minute after midnight on October 16, 2007, the date ESN's patent, which was the basis for the suit, issued.[4] The midnight filing was designed to fix venue in the United States District Court for the Eastern District of Texas before Cisco could file a declaratory judgment suit in some other jurisdiction.[5]

But, from ESN's standpoint, something went wrong. The federal docket sheet for the case and the file stamp or header affixed to the top of every page of ESN's complaint reflected a

---

[1] Subject to her Motion to Dismiss for Lack of Personal Jurisdiction, Docket #37.
[2] Subject to his Motion to Dismiss for Lack of Personal Jurisdiction, Docket #35.
[3] Exhibit 2, Albritton Deposition at 93:24-94:1.
[4] Exhibit 2, Albritton Deposition at 26:19-23, 120:4-9, 146:20-147:2.
[5] Exhibit 2, Albritton Deposition at 120:4-14, 146:20-147:2.

1

(21) The Chief Clerk of the Eastern District of Texas now acknowledges that the changing of the date should have been done by motion and "should have been a judicial determination."[58]

(22) The Articles were about Frenkel's perception of the abuse of the patent system by non-practicing entities in the Eastern District of Texas.[59]

(23) Albritton has actively lobbied[60] Congress on the issue of patent reform, asking them not to pass patent reform bills, particularly on the issue of venue.[61]

(24) Albritton was also one of the top filers of patent cases on behalf of non-practicing entities in the Eastern District of Texas from May of 2006 through December of 2007.[62]

(25) Albritton did not consider the "banana republic" comment, which was removed from Frenkel's blog within "a day or two" to be defamatory of him.[63]

(26) Frenkel relied on the docket entry showing the complaint was filed on 10/15/07 on the ECF system, the stamp (header) at the top of the complaint showing it was "Filed: 10/15/07" on the ECF system, the Civil Cover Sheet showing "Filed:10/15/2007" and Albritton's signature dated "10/15/07" and a report from Baker Botts that Albritton's office had called the clerk to have them change the file date from 10/15 to 10/16.[64]

(27) Albritton is not claiming lost wages, money damages or economic damages as a result of the complained-of statements.[65]

(28) Albritton has not lost any friends because of the articles.[66]

(29) Albritton has no evidence that his family thinks differently of him because of the Articles.[67]

---

[58] Exhibit 3, Maland Deposition at 74:20-75:24, 78:10-15, 119:11-15.

[59] Exhibit 11, Frenkel Deposition at 12:5-13:15; Exhibit 1, Frenkel Declaration Exhibits F and J.

[60] Albritton did not call what he did "lobbying" because he is "not a lobbyist," but admits that he "was just there for these meetings, but I would broadly, you know, in fairness, say that they had to do with lobbying." (Exhibit 2, Albritton Deposition at 65:1-7). Regardless of the label, Albritton admits petitioning government with regard to patent reform.

[61] Exhibit 2, Albritton Deposition at 63:15-67:13.

[62] Defendants request that the Court take judicial notice of this, as evidenced by publicly available case information on the Electronic Filing System. It is common practice for courts to take judicial notice of filing dates on official court documents, as such records are "not subject to reasonable dispute." *In re James*, 300 B.R. 890 (W.D. Tex. 2003).

[63] Exhibit 2, Albritton Deposition at 69:9-19, 72:22-25, 73:5-7; Complaint at ¶26, Docket #17.

[64] Exhibit 1, Frenkel Declaration at ¶¶ 2, 3 and 8; Exhibit 1, Frenkel Declaration Exhibits A, B and C.

[65] Exhibit 2, Albritton Deposition at 76:21-24.

[66] Exhibit 2, Albritton Deposition at 79:23-80:9.

[67] Exhibit 2, Albritton Deposition at 83:15-19.

817 F.2d 507, 509 (9th Cir.1987) ("[c]ontext can be determinative that a statement is opinion and not fact," especially when "the surrounding circumstances of a statement are those of a heated political debate, where certain remarks are necessarily understood as ridicule or vituperation, or both, but not as descriptive of factual matters."). Therefore, summary judgment is appropriate.

## V. ALBRITTON IS A PUBLIC FIGURE WHO MUST DEMONSTRATE BY CLEAR AND CONVINCING EVIDENCE THAT THE ARTICLES WERE PUBLISHED WITH ACTUAL MALICE, WHICH IS NEGATED AS A MATTER OF LAW.

### A.   Albritton is a limited-purpose public figure.

The Court should grant summary judgment that Albritton is a limited-purpose public figure. Whether an individual is a public figure is a matter of law for the court. *Trotter v. Jack Anderson Enters., Inc.*, 818 F.2d 431, 433 (5th Cir. 1987). The Fifth Circuit has adopted a three-part test to determine whether an individual is a limited-purpose public figure: (1) the controversy at issue must be public both in the sense that people are discussing it and people other than the immediate participants in the controversy are likely to feel the impact of its resolution; (2) the plaintiff must have more than a trivial or tangential role in the controversy; and (3) the alleged defamation must be germane to the plaintiff's participation in the controversy. *Id.* at 433-34. The Court should grant summary judgment because each of these elements is satisfied as a matter of law.

### 1.   The controversy at issue is a public issue.

The first prong of the *Trotter* test is met in this case because the controversy at issue is one that is public in the sense that people are discussing it and people other than the immediate participants in the controversy are likely to feel the impact of its resolution. The Articles at issue in this lawsuit addressed the public controversy regarding <u>the abuse of the patent system by non-</u>

practicing entities in the Eastern District of Texas,[87] including the issue of non-practicing entities attempting to maintain venue in the Eastern District of Texas because of advantages of maintaining their case there.

The evidence in this case clearly shows that this was a public controversy, as it was a topic of widespread public debate. *See id.* at 434 holding that the case was a public controversy because it "captured the attention of a diverse and broadly-based audience" and citing to numerous news articles about the issue.

Justice Scalia, during oral argument in *eBay v. MercExchange*,[88] (a patent case) referred to Marshall, Texas (which is in the Eastern District of Texas) as a "renegade jurisdiction" and noted that "maybe we should remedy that problem."[89]

This, along with other concerns about the patent law system has led to proposed legislation to deal with abuses of the patent law system. On September 28, 2006, the U.S. House of Representatives passed House Resolution 5418, which, among other things, requires tracking of any "evidence indicating that litigants select certain of the [designated] judicial districts [...] in an attempt to ensure a given outcome."[90]

Numerous law review articles have also discussed this public issue. *See* Yan Leychkis, *Of Fire Ants and Claim Construction: An Empirical Study of the Meteoric Rise of the Eastern District of Texas as a Preeminent Forum for Patent Litigation*, 9 Yale J. L. & Tech. 193 (2007) (discussing forum shopping by patentee plaintiffs in the Eastern District of Texas and proposing legislative solutions "to the problem of forum shopping gone awry" and stating that "the judges

---

[87] Albritton admits that the Articles were "focused on the Eastern District of Texas." Complaint at ¶ 30, Docket #17.
[88] Transcript of Oral Argument at 10-11, *Ebay Inc. v. MercExchange, L.L.C.*, 547 U.S. 388 (Mar. 29, 2006).
[89] Exhibit 25.
[90] Exhibit 26.

are actually helping to institutionalize the district's pro-patentee bias");[91] David A. Fitzgerald II, *Saving Alternative Dispute Resolution in Patent Law: Counteracting the Effects of the Patent Troll Revolution*, OHIO ST. J. ON DISP. RES. (2008) (discussing exploitation of the patent system by "patent trolls" and proposing legislative solutions);[92] Stephen Schreiner and Andrew J. Baca, *Status of Intellectual Property Reform Legislation in the Congress and How It May Affect How Banks Acquire and Enforce Patents*, THE BANKING LAW JOURNAL 920 (Nov./Dec. ed. 2007), *available at* GoodwinProctor.com (discussing patent reform over the past five years "due in large part to the chorus of voices demanding that Congress reform the patent laws to eliminate perceived abuses and failures of the current patent system," particularly forum shopping in the Eastern District of Texas).[93]

The subject has been the focus of numerous news articles, including the following: *Eastern District Rocket Docket Decelerates in Marshall Division*, TEXAS LAWYER, Aug. 18, 2008 at 20 (noting that the "Eastern District of Texas had the highest number of patent suits filed in the United States in the last fiscal year, which ended Sept. 30, 2007" and that "the U.S. Congress has tried in its last three sessions to pass legislation that included provisions to limit forum-shopping by plaintiffs."),[94] *'Rocket Dockets' Gaining on Popular E. Texas Court*, IP LAW 360, Feb. 20, 2008, *available at* http://ip.law360.com (stating that "the Eastern District of Texas has also become exceedingly popular [for patent cases] because it is perceived as pro-plaintiff," but stating that "if the Patent Reform Act becomes law, it could change things dramatically");[95] *East Texas Now Busiest Patent Litigation Venue*, The NATIONAL LAW JOURNAL, Nov. 12, 2007,

---

[91] Exhibit 32.
[92] Exhibit 40.
[93] Exhibit 41.
[94] Exhibit 27.
[95] Exhibit 28.

at 6, *available at* www.nlj.com (stating that the Eastern District of Texas is now the busiest patent litigation venue in the county for "reasons that are controversial," but that "patent reform legislation now being considered in Congress would change what is now viewed as patent forum shopping");[96] *Taming Texas*, THE AMERICAN LAWYER, Mar. 1, 2008 at 1, *available at* www.law.com (stating that "in the first years of the East Texas patent boom, trial results were starkly one-sided"—that is "plaintiffs won nearly 90 percent of the district's patent trials" but that "a bill already passed by the House of Representatives and now before the Senate is intended to dry up the patent wellspring in East Texas");[97] *Patent Attorneys Sue Cisco and Blogging In-House Lawyer for Defamation*, LAW.COM, March 17, 2008, *available at* www.uk.us.biz.yahoo.com/law (stating that "The Eastern District is a nationally known forum for patent litigation because of rules that allow suits to progress speedily through the court system");[98] *Eastern District of Texas Applies KSR v. Teleflex in Invalidating Patent*, VINSON & ELKINS FIRM NEWS, Aug. 31, 2007, *available at* www.vinson-elkins.com (stating that "the Eastern District of Texas, especially over the past year, has been criticized by many who believe that defendants are at an extreme disadvantage in patent infringement cases filed there.");[99] *Small Town Attracts High Stakes IP Case*, INSIDE COUNSEL, July 1, 2006, *available at* www.insidecounsel.com (stating that Marshall is appealing to plaintiffs because it is a "rocket docket," is "plaintiff friendly," and the judges have firm guidelines to shorten IP trials);[100] *IP Plaintiffs Flocking to Small Town of Marshall in Eastern Texas*, DAILY RECORD, KANSAS CITY DAILY NEWS-PRESS, and LAWYERS USA, June 6, 2006, *available at* www.findarticles.com

---

[96] Exhibit 29.
[97] Exhibit 30.
[98] Exhibit 31.
[99] Exhibit 33.
[100] Exhibit 34.

21

(discussing the rise of patent litigation in the Eastern District of Texas and proposed reform to address venue issues);[101] *Will the 5th Circuit Ground an Eastern District of Texas Rocket Docket?*, LAW.COM, May 23, 2008, *available at* www.biz.yahoo.com/law (noting the Eastern District of Texas's reputation for being "pro-plaintiff" and discussing case law that could affect venue);[102] *Volkswagen Lawyers Raise Challenge to Texas's 'Rocket Docket,'* THE WALL STREET JOURNAL BLOGS, *available at* www.blogs.wsj.com (discussing case law that could affect venue in the "plaintiff-friendly district" of the Eastern District of Texas);[103] *A Litigation Boom*, AUSTIN-AMERICAN STATESMAN, May 22, 2008 *available at* www.statesman.com (discussing that the Eastern District of Texas has "emerged as an unlikely venue for high stakes lawsuits over patent rights").[104]

Michael Smith, who is an attorney who practices in the Eastern District of Texas, has served as the chair of the Eastern District Rules Committee,[105] has served as president of the Eastern District Bench Bar Association,[106] and maintains a blog concerning practice in the Eastern District of Texas,[107] acknowledges that there is a public controversy about "patent venue specifically focusing on the Eastern District of Texas" and that he has blogged about the issue himself.[108] He also acknowledges that there is public discussion of legislative proposals that would address venue for patent cases in the Eastern District of Texas.[109]

---

[101] Exhibit 35.
[102] Exhibit 36.
[103] Exhibit 37.
[104] Exhibit 38.
[105] Exhibit 20, Smith Deposition at 48:15-18
[106] Exhibit 20, Smith Deposition at 9:17-19.
[107] Exhibit 20, Smith Deposition at 19:19-22.
[108] Exhibit 20, Smith Deposition at 37:12-17.
[109] Exhibit 20, Smith Deposition at 42:4-43:4.

A controversy that is reported so widely in the media and that garners attention from the government is an issue of public concern. *See Trotter*, 818 F.2d at 435. The fact that some of these articles were published after the Articles at issue does not diminish their importance in this determination; as in *Trotter*, the Articles "did not cause the later press coverage of the [public issue], the [public issue] itself did." *See id.* at 434.

2. Albritton had more than a trivial or tangential role in the controversy.

Albritton's role in the public debate over the abuse of the patent system by non-practicing entities in the Eastern District of Texas was certainly more than trivial or tangential. In fact, Albritton thrust himself into this public controversy in several respects. First, he lobbied Congress against patent reform aimed at preventing the very abuses alleged by Frenkel.[110] He admits that he went to Washington D.C. and met with Senator Durbin, Senator Johnson, Senator Cornyn, Senator Boxer or their staff regarding the patent reform effort. (*Id.*) Second, Albritton held an important role in this controversy because he was one of the top filers of patent cases on behalf of non-practicing entities in the Eastern District of Texas.[111] An individual this engrained in a public issue has more than a trivial or tangential role in the controversy even where he does not actively engage the public's attention. *Trotter*, 818 F.2d at 435-436 ("an individual cannot erase his public-figure status by limiting public comment and maintaining a low public profile.") It is sufficient that Albritton "voluntarily engaged in a course that was bound to invite attention and comment." *Rosanova v. Playboy Enters., Inc.*, 580 F.2d 859, 861 (5th Cir. 1978).

3. The Articles are germane to Albritton's participation in the controversy.

---

[110] Exhibit 2, Albritton Deposition at 63:15-68:6.

[111] Defendants request that the Court take judicial notice of this, as evidenced by publicly available case information from May of 2006 through December of 2007 on the Electronic Filing System. It is common practice for courts to take judicial notice of filing dates on official court documents, as such records are "not subject to reasonable dispute." *In re James*, 300 B.R. 890 (W.D. Tex. 2003).

23

The third requirement of the *Trotter* test is also met because the Articles are germane to Albritton's participation in the public controversy. In alleging that Albritton convinced the clerk of the Eastern District of Texas to alter a filing date to create subject-matter jurisdiction, Frenkel was describing Albritton's role in the controversy. The article addresses how Albritton convinced the clerk to change the date of ESN's pleading so that the case would not be transferred to a different venue; Frenkel was describing Albritton's abuse of the patent system in the Eastern District of Texas to maintain venue in the Eastern District of Texas. This satisfies the third element of the *Trotter* test. *See Trotter* at 436 (holding that the third element was satisfied because "[i]n alleging that Trotter was responsible for the anti-union violence, Anderson was also describing Trotter's role in the controversy at Embotelladora.")

## B.     Actual malice is negated as a matter of law.

When a limited-purpose public figure sues a defendant concerning a statement that involves a public issue, the defendant must prove by clear and convincing evidence that the defendant published the statement with actual malice. *Gertz v. Robert Welch, Inc.*, 418 U.S. 323, 342 (1974); *WFAA-TV, Inc. v. McLemore*, 978 S.W.2d 568, 571 (Tex. 1998). The actual malice standard does not mean ill will or spite, but rather means that the defendant published the statement "with knowledge that it was false or with reckless disregard of whether it was false or not." *New York Times*, 376 U.S. at 279-280 (holding that statements that the defendant "don't like you" and "had it out" for the plaintiff were not evidence of actual malice); *see also Church of Scientology of Calif. v. Cazares*, 638 F.2d 1272, 1286 (5th Cir. 1981) (holding that "while most of the articles and cartoons can fairly be described as slanted, mean, vicious, and substantially below the level of objectivity that one would expect of responsible journalism, there is no evidence called to our attention which clearly and convincingly demonstrates that a single one of