IN THE UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF ARKANSAS
TEXARKANA DIVISION

JOHN WARD, JR.         §
        §
    Plaintiff         §
        §       C.A. NO. 4:08cv4022
v.         §       JURY TRIAL DEMANDED
        §
CISCO SYSTEMS, INC.         §
        §
    Defendant         §

**PLAINTIFF WARD'S REPLY TO CISCO'S RESPONSE TO
COMPEL DOCUMENTS PRODUCED IN PRIOR LITIGATION**

Comes now, Plaintiff John Ward, Jr., ("Ward") and files his Reply to Defendant Cisco

Systems, Inc.'s ("Cisco") Response to Plaintiff's Motion to Compel Production of Documents

Produced in Prior Litigation.

## I.     INTRODUCTION

Ward moves to compel documents responsive to his Request for Production No. 1.

Nowhere in Cisco's twenty-two page Response brief, however, does Cisco address the document

request at issue. This omission is telling. Instead of addressing the discovery request, Cisco

accuses Ward of bringing a veiled motion for reconsideration and accuses Ward's counsel of

violating a Protective Order and other agreements in a separate case. Cisco then unsuccessfully

attempts to distinguish the facts in this case from binding case law and authority supporting

Ward's motion. And Cisco even argues choice of law as it relates to the case and/or this single

discovery dispute. Cisco's unfocused Response is unsurprising as its arguments against

producing the documents Ward seeks are meritless and Ward's motion should be granted.

Dockets.Justia.com

## II.       AUTHORITY AND ARGUMENT

Cisco is withholding twenty-two documents from Ward, claiming privilege.  Amended

Exh. A, Dkt. No. 128-1 (chart of documents Ward seeks to compel).  But Cisco produced these

same documents, voluntarily, and with the intent that they be received for review, to a litigation

adversary in a separate case.  According to Eighth Circuit case law, by these actions, Cisco

waived any claim of privilege as to the produced documents.  Motion at 4-5, principally citing *In*

*re Chrysler Motors Corp. Overnight Evaluation Program Litigation,* 860 F.2d 844, 847 (8th Cir.

1988).  In the present case, however, Cisco refuses to produce the requested documents again

claiming privilege.  But because the documents cannot be privileged in light of their prior

production, Cisco's privilege claim is baseless.  As Cisco's sole reason for withholding the

documents is privilege, the documents should be produced.

### A)       Ward's Present Motion Cannot Be A Motion For Reconsideration As It Is Based On A Discovery Request Never Before Raised With the Court

As set forth in Ward's moving brief, Ward moves to compel documents responsive to its

Request for Production No. 1, "all documents previously produced in the case of *Albritton v.*

*Cisco, et al* an action pending in the Eastern District of Texas (ED TX 6:08cv89)."  Exh. B

(Plaintiff's Request for Production of Documents to Defendant Cisco Systems, Inc., served

December 12, 2008) (hereinafter "RFP No. 1").  Instead of addressing this document request,

Cisco argues that Ward's motion must be one for reconsideration of prior discovery motions and

orders, citing Dkt. Nos. 57-59, 61, 63-64, 67-69, 75-77, 80 and 89.  Response at 3, 8.  The cited

briefing and order uniformly address Ward's interrogatories, and the arguments regarding

relevance are made in the context of those discovery requests.  Here, a different request is at

issue.  Indeed, the past briefing cited by Cisco nowhere addresses RFP No. 1.  Ward cited some

of the same authority in support of the present motion as he cited in support of other discovery

1

motions, but that authority can bear on more than one motion is hardly surprising.   Similarly,

that Ward may have argued that the documents at issue here could be responsive to other

discovery requests is also not surprising.  But this hardly makes Ward's present motion one for

reconsideration.  This Court has never been asked to consider, or issued an order, addressing

Ward's RFP No. 1.  Therefore, this cannot be a motion for reconsideration.

**B)      Because of Its Prior Production Under the *Albritton* Protective Order and Agreements, Cisco Cannot Assert Privilege**

Cisco's attempt to invoke the Protective Order and ancillary agreements in the *Albritton*

case is unavailing.[1]  Again, as Ward's cited authority demonstrates, the existence of a protective

order or other confidentiality agreements cannot save privilege as to documents produced to a

litigation opponent.  *In re Chrysler Motors Corp. Overnight Evaluation Program Litigation,* 860

F.2d 844, 847 (8th Cir. 1988).  As Ward's authority dictates, it is well founded that once a party

voluntarily produces documents to a litigation opponent — whether or not under some sort of

agreement or protective order — privilege is waived as to those documents.  Motion at 4-8.

Cisco was not compelled by court order to produce the documents Ward seeks here; instead

Cisco willingly produced the documents to a litigation opponent, Albritton, and privilege with

regard to those documents has therefore been waived with regard to a later litigation opponent,

Ward.[2]  *See* Response at 7 (Cisco voluntarily produced the documents to Albritton).

Cisco's attempts to tie Ward's hands with the *Albritton* Protective Order and agreements

by arguing that its production to Albritton did not spoil privilege because the same counsel

appears in both cases.  Cisco's argument does not accord with the facts.  When Cisco's and

---

1 Eric Albritton's case, Albritton v. Cisco, No. 6:08cv00089, was filed in the United States District Court for the Eastern District of Texas.  The case was tried to a jury in September 2009.  Before the jury rendered a verdict, the parties reached a settlement.

2 Cisco accuses Ward of "discussing [the] content" of the documents sought in his motion.  Ward, however, discusses no more than is disclosed in an earlier publicly-filed version of Cisco's privilege log.  *See* Dkt. 76 filed on June 29, 2009.

Albritton's counsel reached agreement regarding document production, Ward was represented by different counsel.  As in *Chrysler*, Cisco's production to Albritton — regardless of any agreements — waived the privilege as to those documents.  That at some later time Ward and Albritton were represented by the same counsel does not save or reinstate privilege, and Cisco cites no authority in support of this proposition.

Cisco wrongly accuses Albritton's counsel of failing to abide by the Protective Order's document destruction clause, claiming that the case "ended" on September 21, 2009, and that "it is now clear that Patton and Peden have not complied with the Order."  Response at 7.  Cisco intimates that Patton and Peden did not comply with the Protective Order requirement that documents produced under the Order be destroyed within 30 days after the conclusion of the action.  Response Exh. C (Protective Order) at ¶ 19.  Without explanation, Cisco pegs the "conclusion" of the Albritton case to September 21, 2009.  The case did not close, however, until November 5, 2009, and Peden has repeatedly assured Cisco that, as dictated by the Protective Order, Albritton's counsel will destroy the documents.  Exh. A (Albritton Dkt. No. 311, Dismissal Order).

C)      **Cisco Cannot Assert Either Attorney Client Privilege Or Work Product Protection to Documents It Previously Produced To An Adversary**

Cisco argues that the requested documents are "protected by the attorney-client privilege and/or work product protection". [3] Response at 3, *see also* 9.  As Ward explains at length, however, because these documents were produced in prior litigation to an adversary, neither of these protections is available.  Motion at 5-6 (waiver of both attorney-client and work product privilege).  Therefore, Cisco cannot claim attorney-client privilege or work product protection as

---

3 Cisco accuses Ward of seeking these documents for use in the ESN v. Cisco case, citing a letter from ESN's counsel to Cisco's counsel that attaches this Court's Order, Dkt. 89, implying ESN's counsel should not be allowed access to public court orders.  Response at 3-4.  This position is baseless.

to the twenty-documents.  Cisco disingenuously asserts that "Plaintiff does not dispute that the documents at issue are privileged in the first instance, but rather argues that privilege was waived by production…".  Response at 9.  Ward does not address whether Cisco ever could have claimed these documents were privileged, which is Cisco's burden, because the fact is Cisco simply cannot assert privilege as to these documents.

### 1)   Cisco Cannot Claim Attorney-Client Privilege Because It Voluntarily Produced the Documents In Prior Litigation

Cisco argues that it can assert attorney client privilege to the documents it produced in *Albritton* because the Protective Orders and non-waiver agreements are enforceable.  Response at 13.  In support, Cisco cites recently amended FED. R. EVID. 502 (2009) for the proposition that agreements like those in the *Albritton* litigation are "binding on the parties to the agreement."  *Id.* That the *Albritton* agreement is binding on the parties to it is true regardless; FED. R. EVID. 502 does not apply to the present situation.[4]  The revisions to the Rule were aimed at protecting parties from waiver in the event of *inadvertent disclosure*, not from the intentional disclosure of privileged documents as is the case here.  As the Advisory Committee Notes State:

> This new rule has two major purposes:  1) It resolves some longstanding disputes…. specifically those disputes involving inadvertent disclosure and subject matter waiver…. 2)  It responds to… the concern that any disclosure (however innocent or minimal) will operate as a subject matter waiver of all protected communications or information.

Committee Notes to FED. R. EVID. 502, http://www.law.cornell.edu/rules/fre/ACRRule502.htm (last viewed on March 30, 2009).[5]  Cisco's citation to *Alcon Manuf., Ltd. v. Apotex, Inc.,* is

---

[4] The revised Rule is effective in cases filed after September 19, 2008.  P.L. 110-322, 122 Stat. 3537, 3538, Sept. 19, 2008.  This case, however, was filed in March 2008 so the Rule, by its own terms does not apply to this case.  Cisco makes no showing otherwise.
5 Cisco's argument that Ward's cited case are inapplicable as they were published before the revisions to Rule 502 is meritless as the Rule does not apply to this case and, even if it did, it does not apply to the facts presented here, and it does not overrule case law.  *See* Response at 14-15 n.4.

misplaced as that case dealt with an inadvertent production, and found privilege was not waived pursuant to the terms of FED. R. EVID. 502.  Ca. 1:06-CV-1642, 2008 WL 5070465 at *3-4 (S.D. Ind. Nov. 26, 2008) Response Exh. J.[6]

*Whitaker Chalk Swindle & Sawyer, LLP,* cited by Cisco, demonstrates that the documents produced to Albritton are not privileged.  Ca. No. 4:08-CV-684, 2009 WL 464989 (N.D. Tex. Feb. 23, 2009), Response Exh. I.  In that case, one party sought documents the other party withheld claiming privilege.  The withholding party also argued that production in that litigation would waive its assertions of privilege as to those documents in a separate but related litigation. *Id.*  Compelling production, the court fashioned an order under the new FED. R. EVID. 502, ensuring no privilege waiver.  *Id.* at *5.  Notably, *Whitaker* recognizes the "attorney-client privilege may also be waived through voluntary disclosure of the privileged information."  *Id.* at *2, *see also* *4 ("a party waives a privilege against disclosure if the party '*voluntarily* discloses or *consents* to disclosure' of the privileged matter") (citations omitted) (emphasis in original).

Unlike *Whitaker,* where privilege was protected when a court compelled production under a Rule 502 order, Cisco's production in *Albritton* was not compelled, nor was it made under a Rule 502 order.  As *Whitaker* recognizes, voluntary production waives attorney-client privilege.  *Id.* at *2 & *4.  Cisco's authority demonstrates that it cannot assert attorney-client privilege to the twenty-two documents it voluntarily produced in Albritton.

### 2)  Cisco Cannot Claim Work Product Protection Because It Voluntarily Produced the Documents In Prior Litigation

As the documents at issue were produced in the Albritton litigation, Cisco cannot now claim work product privilege. *Chrysler* at 846 ("[defendant] waived **any** work product protection

---

[6] *Ginther v. O'Connell,* also cited by Cisco, is similarly distinguishable as there, a party's intentional public disclosure of another party's protected materials raised questions of contempt.  791 F.2d 1151, 1154 at n. 2 (5th Cir. 1986).

by voluntarily disclosing the computer tape to its adversaries") (emphasis added).[7]

As none of the documents can be protected by work product privilege, Ward need not

demonstrate that they are both discoverable under Fed. R. Civ. P. 26(b)(1) and that he has a

substantial need for the documents. Regardless, as set forth in his Motion at pages 8-9, Ward

makes this showing. Cisco's claims that the documents are not relevant or can be elsewhere

discovered are disingenuous and fail to overcome Ward's showing. Response at 15-17. The

documents, from and retained by Cisco, bear on Cisco's knowledge of and discussion about

Frenkel's blogging activities as they relate to the articles at the center of this case. They cannot

be obtained elsewhere nor recreated in deposition testimony.

Looking outside of the Eighth Circuit, Cisco cites authority distinguishable because the

work product in question was not voluntarily produced to a litigation opponent. *Shields v. Sturm,*

*Ruger & Co.*, 864 F.2d 379, 381-82 (5th Cir. 1989) (finding no waiver where party was

compelled to disclose privileged work product in prior litigation).

Cisco then argues *Chrysler* actually supports its position:

> While the Eighth Circuit has held that disclosure to the **opposing**
> **party** waives work product if the producing party intends that the
> **opposing party** see the documents, the converse applies here; that
> is, because Cisco never disclosed the documents to Plaintiff, never
> intended that Plaintiff see the work product documents, and indeed
> guarded against him seeing them by having a Protective Order and
> non-waiver agreement in place, there has been no waiver with
> respect to Plaintiff.

Response at 19, emphasis supplied. This illogic does not accord with *Chrysler's* holding — that

a party cannot assert privilege to a later litigation opponent where it previously produced

documents to an earlier litigation opponent. *Chrysler* at 847. It did not matter that the latter

---

7 Cisco includes in its Response a discussion about the distinction between ordinary work product and opinion work product. But, as set forth in Cisco's *in camera* submission log to the Court, which included these same documents, Cisco does not assert opinion work product protection as to any of these twenty-two documents. *See* Cisco's Submission Log, submitted to the Court on July 15, 2009.

opponent had not seen the previously disclosed work product, or that the party asserting privilege did not intend for its later opponent to see the previously disclosed work product, or even that the documents were produced under a Protective Order or non-waiver agreement. *Id.* The voluntary production of documents to a litigation opponent spoils any assertion of privilege as to those documents. Cisco's argument that because Ward has not seen and is not intended to see the documents produced to Albritton somehow saves its assertions of privilege is fatally flawed.

Cisco admits that *Gundacker v. Unisys. Corp.,* 151 F.3d 842, 848 (8th Cir. 1998) stands for the proposition that work product protection is waived where there is "an intention that the opposing party see the work product". Response at 19. Exactly. Cisco voluntarily produced documents it claimed were protected by the work product doctrine to an adversary, Albritton; the disclosure was not inadvertent but intended for the adversary's receipt. Thus, the work product protection is waived.

Cisco's citation to *U.S. v. Johnson,* 378 F. Supp. 2d 1041 (N.D. Iowa 2005)[8] does not save its waived work product protection either as there, the disclosure was to a third party as opposed to a litigation adversary. *See* Response at 19. Finally, Cisco's reliance on *St. Paul Reinsurance Co. v. Comm. Financial Corp.,* 197 F.R.D. 620 (N.D. Iowa 2000), only proves Ward's argument. In *St. Paul*, work product protection was waived as to documents actually disclosed to a litigation adversary. 197 F.R.D. at 639-40, citing *In re Chrysler Motors Corp. Overnight Evaluation Program Litigation,* 860 F.2d 844, 846 (8th Cir. 1988).

Cisco cannot shield the twenty-two documents Ward seeks here through either the attorney client privilege or work product protection. These protections were long ago waived by their intentional and voluntary production to a litigation opponent. Now, under *Chrysler* and its progeny, they must be produced to Ward.

---

8 Cisco incorrectly cited this case as published in F. Supp.; it was instead published in F. Supp. 2nd.

**D)**        **Cisco's Late Attempt To Raise Choice of Law Should Not Be Entertained**

Cisco attempts to invoke Texas law as governing the present motion.  Inserting its now-pending partial summary judgment argument at pages 9-13 of its brief, Cisco adds only that Texas law should apply because "there is no connection between the present dispute over privileged documents and Arkansas, whereas Plaintiff's whole argument for their disclosure is what happened in the Albritton case in Texas."  Response at 12; *see also* Dkt. No. 114, pp. 3-6.  Cisco apparently seeks to invoke Texas law as governing the case, as it argues in its partial summary judgment motion, but in the event the Court disagrees, it advocates in favor of applying Texas law to selective discovery motions.  Cisco's attempt to selectively invoke Texas law over some of the disputes in the case is at best misguided.

As set forth in Ward's response to Cisco's Partial Summary Judgment Motion, the time for Cisco's choice of law challenge has past as for more than twenty-two months, Cisco cited, applied, and asserted Arkansas law.  *See* Dkt. No. 141.  Now, less than three months before trial and after the dispositive motion deadline, on the eve of the close of discovery, Cisco wants to change the rules.  This gamesmanship should not be allowed.  Cisco's last-ditch effort to change the rules governing the case should not succeed either in the face of the doctrines of waiver and judicial estoppel or under Arkansas' choice of law analysis.  But these arguments are clearly made in Ward's Response to Cisco's Motion for Partial Summary Judgment, Dkt. No. 141, and should not distract from deciding the present dispute.

Even a cursory review of the prior discovery briefing Cisco cites as having dealt with issues raised in the present motion demonstrates that Cisco never raised or applied Texas law to discovery disputes.  Instead, with near uniformity, Cisco cited, applied, and urged decision under Arkansas and Eighth Circuit law.  *See* Cisco's filings at Dkt. Nos. 58, 63 at pp. 10-11, 67 at pp.

5-6 and 9-13, and 77 at pp. 6-10.  Further contradicting its own argument that Texas, not

Arkansas law should apply, Cisco cites solely Eighth Circuit case law when arguing that Ward

failed to meet the standard for a motion for reconsideration in the present motion.  Response at 8-

9.  Haphazardly, Cisco argues on the one hand that Eighth Circuit law is controlling in

determining whether the present motion is one for reconsideration — but on the other hand, if

this is not a motion for reconsideration, Texas law should apply, even though Arkansas law

applied up to this point.  Cisco's schizophrenic approach at invoking different applicable law

should not be indulged.

## III.    CONCLUSION

For all of the forgoing reasons, Plaintiff Ward respectfully requests that his motion in all

things be GRANTED, and that Cisco be ordered to produce the twenty-two documents listed in

Ward's chart, Amended Exhibit A (Dkt. No. 128-1), and previously produced in the *Albritton*

litigation.

Respectfully Submitted,

Nicholas H. Patton (SBN: 63035)
Courtney Towle
Patton, Tidwell & Schroeder, LLP
4605 Texas Boulevard
Texarkana, Texas 75503
903.792.7080 / 903.792.8233 (Fax)
Email: nickpatton@texarkanalaw.com
Email: ctowle@texarkanalaw.com

Patricia L. Peden
LAW OFFICE OF PATRICIA L. PEDEN
1316 67th Street
Suite 6
Emeryville, CA 94608
Telephone: 510-268-8033
Email: ppeden@pedenlawfirm.com

James A. Holmes
Texas Bar No. 00784290
THE LAW OFFICE OF JAMES HOLMES, P.C.
635 South Main, Suite 203
Henderson, Texas 75654
903.657.2800 / 903.657.2855 (Fax)

ATTORNEYS FOR PLAINTIFF

## CERTIFICATE OF SERVICE

This is to certify that on this 15th day of November, 2009, a true and correct copy of the foregoing document was served electronically via the Court's CM/ECF system upon:

Richard E. Griffin                          Attorneys for Defendant Cisco Systems, Inc.
Charles Babcock
Crystal Parker
Kurt Schwarz
JACKSON WALKER, LLP
1401 McKinney
Suite 1900
Houston, Texas 77010


Nicholas H. Patton

10