IN THE UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF ARKANSAS
TEXARKANA DIVISION

| | | |
|---|---|---|
| JOHN WARD, JR. | § | |
| | § | |
| | § | C. A. NO. 08-4022 |
| v. | § | JURY TRIAL DEMANDED |
| | § | |
| CISCO SYSTEMS, INC. | § | |

**CISCO SYSTEMS, INC.'S MOTION AND BRIEF FOR DISTRICT JUDGE
TO RECONSIDER MAGISTRATE JUDGE'S ORDER DENYING
CISCO'S MOTION TO COMPEL PRODUCTION OF DOCUMENTS**

TO THE HONORABLE DISTRICT JUDGE:

Defendant Cisco Systems, Inc. hereby files this Motion and Brief to Reconsider Magistrate Judge's Order Denying Cisco's Motion to Compel Production of Documents (the "Order") pursuant to 28 U.S.C. § 636(b)(1)(A). Simultaneously with this Motion, Cisco is filing a Motion for Magistrate Judge Setser to Reconsider the Order ("Motion to Reconsider") because of misrepresentations made by Plaintiff's counsel upon which the Order was based. Cisco requests that the Court rule on this Motion with respect to financial records only in the event that Judge Setser denies Cisco's Motion to Reconsider. Cisco is required to file this Motion within 10 days of the Order pursuant to 28 U.S.C. § 636(b)(1)(A).

## I.     INTRODUCTION

In a desperate attempt to avoid any discovery concerning his damage claims, Plaintiff's counsel made misrepresentations to the Court regarding his allegations in this lawsuit in an effort to avoid legitimate discovery by Cisco. First, Plaintiff's counsel represented to Judge Setser that he was not seeking damage to his professional reputation:

Peden (on behalf of Plaintiff):  [W]e are not seeking lost profit damages in this case.

Parker (on behalf of Cisco):  So, what about professional reputation?

1

5661841v.1

Peden: <u>We are not seeking damages for that</u>.

Judge Setser:   <u>For professional reputation</u>?

Peden: <u>Right</u> […]   We are not going to go in front of the jury and tell them that Mr. Ward lost business because of

Judge Setser:  Okay.

Peden:  these articles.

(Transcription of the Court's electronic recording of the hearing, <u>Exhibit A</u> at 17-18).  (emphasis added).  Based upon these representations, the Court denied Cisco the sought after discovery. However, just days after this statement was made to the Court, Plaintiff's counsel admitted that Plaintiff was in fact seeking damage to his professional reputation and all other aspects of his reputation.

"Ward will claim to the jury that his reputation has been harmed.  His claim will include all aspects of his reputation.

(<u>Exhibit B</u> at p. 2).

Counsel for Plaintiff also represented to the Court that Plaintiff would not present expert testimony concerning damage to his reputation.

Judge Setser:  Next, it's sort of another group I've put together.  It's request numbers 4 and 5, "Documents relating to plaintiff's contention that he sustained monetary damages"… numbers 9 and 11, "the tax returns for the plaintiff and his firm, balance sheets, income statements…" basically all documents… the defendant has requested relating to plaintiff's damages basically… [T]his is to the plaintiff.-- are you going to have an expert on the damages issue?

Peden: No, your honor.

(<u>Exhibit A</u> at 13-14).  Judge Setser denied the Motion to Compel based on these representations.

Notwithstanding Plaintiff's representations to the Court, Plaintiff's counsel advised Cisco after the hearing that he <u>was</u> seeking damage to his reputation including his professional reputation.  (Exhibit B).  In addition, less than a week after representing to Judge Setser that he

would not designate an expert on damages, Plaintiff designated an expert who will testify concerning Plaintiff's allegation of damage to his reputation. (Exhibit C). The Court should reconsider the Motion because it was denied based on these fraudulent representations to Judge Setser.

It is often the case that plaintiffs who have not suffered damages will attempt to shield from discovery documents relating to their damages. That is exactly what has happened here. Plaintiff has gone to great lengths, including misrepresentations to the Court, to avoid the production of documents that Cisco believes will show that (1) his reputation has not been damaged by the articles, and that indeed his professional reputation has improved since the articles were published; (2) he did not suffer any mental anguish as a result of the articles; (3) any mental anguish he has suffered was caused by something other than the articles, (4) the sleeping problems he complains about are nothing more than the stress experienced in everyday life as an attorney; and (5) his sleeping problems predated the articles and were not caused by the articles.

Certainly if Plaintiff had sued Cisco for breaking his leg, seeking mental anguish damages but not seeking medical expenses, the Court would still require production of his medical documents to show whether his leg was broken, whether the defendant was the cause of the injury or whether there was some other cause, and the nature and extent of the injury for purposes of assessing damages. Indeed, it would be absurd to allow a plaintiff to obtain damages from a defendant for worrying about a broken leg where his leg was never broken, or where the broken leg was not caused by the defendant. Similarly, it is clearly erroneous or contrary to law to permit Plaintiff to base his claims on an injury to his reputation as a lawyer and alleged mental

3

anguish, then permit him to shield from discovery all documents that will dispute, disprove or mitigate against those claims.

According to the American Psychological Association's report on Stress in America for 2008 (Exhibit D), the top ten causes of stress include money, work, health problems affecting one's family, relationships, personal health concerns, and job stability. Notably, issues related to one's job (money, economy, work, and job stability) occupy four of the top ten causes of stress. Plaintiff failed to produce any documents concerning his finances. Plaintiff's refusal to produce any documents relating to these top four causes of stressors deprives Cisco of powerful, probative evidence in its defense.

Cisco requests that the Court reconsider Magistrate Judge Setser's ruling denying Cisco the documents it needs to rebut Plaintiff's claims, as "[i]t is elementary that a witness may be impeached by contradictory evidence." *Batiste-Davis v. Lincare, Inc.*, 526 F.3d 377, 381 (8th Cir. 2007). Indeed, Judge Setser's ruling was premised on Plaintiff's misrepresentations concerning his claims in this lawsuit, and that had she been provided accurate information, she would have granted Cisco's Motion to Compel with respect to Plaintiff's financial and medical records. Cisco requests that the Court order Plaintiff to produce documents relating to his damage claims as set forth below. The Order is clearly erroneous or contrary to law because it was based on Plaintiff's misrepresentations to the Court and because it deprives Cisco of powerful, probative evidence in its defense.

## II.    FACTUAL BACKGROUND

**Plaintiff's allegations.** Plaintiff is an attorney practicing law in the Eastern District of Texas. It is clear that his damage claims in this case are based on allegations that the articles at issue harmed his professional reputation. Plaintiff alleges that Cisco published defamatory

4

statements about him that damaged his reputation as an attorney and caused him severe mental anguish. (Docket No. 66 at ¶¶33-35, 69, 74). He claims that the complained-of statements allege offenses "for which he could be professionally reprimanded and/or disbarred, and conduct that would lead others to view him as an unethical attorney" (*Id.* at ¶33). He specifically claims that the article "directly attacks Plaintiff in his profession." (*Id.* at ¶74). Plaintiff acknowledges that the blog was read only by the legal community; he claims that the readers of the blog included "Congress, persons at the U.S P.T.O., judges, large law firm lawyers, inventors, and other members of the legal community—the same community in which its attacks of Plaintiff would do the most harm." (Docket No. 66 at ¶83).

In his First Supplemental Disclosures, Plaintiff designated 10 witnesses concerning "Plaintiff's reputation in the legal community." (Exhibit E). Not a single witness was designated to testify concerning Plaintiff's personal reputation, though 2 witnesses were designated concerning the "damage done to Plaintiff's reputation by Cisco's statements." Cisco has deposed both of those witnesses (Bob Chiavello and Raymond Niro), and both testified only about harm to Plaintiff's professional reputation. It is undisputed that Plaintiff intends to offer testimony (albeit through multiple layers of hearsay) that clients chose not to hire Plaintiff because of the complained-of articles.

Plaintiff also claims that he suffered severe mental anguish as a result of the articles at issue. Plaintiff testified in his deposition that he experienced difficulty sleeping because of the articles and had to take over-the-counter medication recommended by a doctor to help him sleep. (Exhibit F at 18:3-20:18). He also testified that he had sleeping problems before the articles at issue were published. (Exhibit F at 18:3-15).

**The discovery.**   In order to rebut these allegations, Cisco sought discovery concerning Plaintiff's finances and Plaintiff's clients and matters since the complained-of articles.   (Cisco's First Request for Production, Exhibit G).   Cisco believes that these documents will show that: (1) Plaintiff's income increased dramatically after the articles at issue were published and at the same or higher rate that it increased in past years; (2) clients who Plaintiff claims would not hire him either have hired him or could not be hired by Plaintiff because of conflicts of interest; (3) Plaintiff was fully engaged in his work because of the number of matters he was handling and therefore couldn't have taken on any more cases;  (4) Plaintiff's alleged mental anguish was not so severe that it kept him from working; and (5) that indeed Plaintiff worked hard enough following the complained-of-articles that he made substantially more money after the articles than he made in preceding years.

Also in order to rebut these allegations, Cisco sought discovery concerning Plaintiff's medical records.  (Exhibit G).  Cisco expects that Plaintiff's medical records will show that (1) Plaintiff's alleged mental anguish and sleeping problems were no more than the normal stress of life for an attorney; (2) Plaintiff's alleged mental anguish and sleeping problems were not caused by the articles at issue; and (3) Plaintiff did not suffer mental anguish so severe that no reasonable person could be expected to endure it.  Because Cisco recognizes the private nature of these documents and therefore has agreed to a protective order that would limit the use of the documents, so long as they could be used at trial to rebut Plaintiff's claims.

**Ruling on Cisco's motion to compel.**   Plaintiff failed to produce any of these documents, so Cisco moved to compel the documents.  The Motion was referred to Magistrate Judge Setser, and on November 4, 2009, Judge Setser conducted a telephonic hearing on the Motion.  In an obvious effort to avoid producing these documents, Plaintiff's counsel made

misrepresentations concerning Plaintiff's claims, including the representation that Plaintiff was not seeking damage to his professional reputation, (Exhibit A at 17-18) and that Plaintiff would not present expert testimony concerning damage to his reputation (Exhibit A at 13-14). Judge Setser denied the Motion to Compel with respect to Plaintiff's financial and medical documents based on these misrepresentations.

Notwithstanding Plaintiff's representations to the Court, Plaintiff's counsel advised Cisco after the hearing that he _was_ seeking damage to his professional reputation. (Exhibit B). In addition, less than a week after representing to Judge Setser that he would not designate an expert on damages, Plaintiff designated an expert who will testify concerning Plaintiff's allegation of damage to his reputation. (Exhibit C). It is clear that his report is based on allegations of harm to Plaintiff's reputation as a lawyer, as the expert admits that his report is based on search engine searches of terms such at "Johnny Ward Texas lawyer" and "john ward attorney texas." (_Id._) Plaintiff also admits that he will offer testimony that potential clients refused to hire Plaintiff because of the articles (and therefore that he lost business).

The ruling denying Cisco this probative evidence to rebut Plaintiff's claims is clearly erroneous and contrary to law. Wards's medical and financial records are probative of (1) whether he has suffered mental anguish; (2) the cause of his alleged mental anguish, including alternative causes; (3) the nature and extent of his mental anguish for purposes of assessing damages; (4) whether Plaintiff's reputation has actually been harmed or has improved; (5) the extent of any harm to Plaintiff's reputation and the amount of money (if any) that harm has caused him to lose; (6) whether Plaintiff suffered mental anguish as a result of worrying about his reputation; and (7) whether Plaintiff could have taken on more work irrespective of the

articles.  The Court should therefore order Plaintiff to respond fully to the requests as set forth more fully below.

### III.   ARGUMENTS AND AUTHORITIES

Cisco requests that the Court reconsider the Order pursuant to 28 U.S.C. § 636(b)(1)(A), which provides that "a judge may reconsider any pretrial matter… where it has been shown that the magistrate's order is clearly erroneous or contrary to law."  Here, Judge Setser denied Cisco the discovery it needs to defend this case.  (Docket No. 138 at p. 2).  As set forth below, the Order is clearly erroneous or contrary to law due to misrepresentations Plaintiff made to Judge Setser at the hearing on Cisco's Motion.  Moreover, both Texas and Arkansas law require that the documents be produced so that Cisco may rebut Plaintiff's claims in this case.

**1.**   **The Court Should Order Plaintiff to Respond to Request Nos. 4-5, 9, 11 and 17.**

Request No. 4 asks:

Produce all documents relating to your contention in paragraph 17 of the Complaint that as a result of the complained-of Article, "Plaintiff sustained monetary damage," including all documents relating to the amount of such monetary damages.

Request No. 5 asks:

Produce all documents relating to your contention in paragraph 19 of the Complaint that as a result of the complained-of Article, Plaintiff has suffered "damages to his business," including all documents relating to the amount of such damage.

Request No. 9 asks:

Produce John Ward, Jr. and Ward & Smith Law Firm's tax returns for 2002 through the present.

Request No. 11 asks:

Produce all annual and interim balance sheets, income statements, and statements of cash flow for the Ward & Smith Law Firm for 2002 through the present.

Requests No. 17 asks:

5661841v.1

Produce all documents relating to all of Plaintiff's new matters or clients since October 16, 2007, including but not limited to engagement letters concerning such clients and matters.

Judge Setser denied Plaintiff's Motion to compel these requests based upon counsel's statements. (Docket No. 138 at p. 2). The Order is clear clearly erroneous or contrary to law because it denies Cisco probative evidence in its defense and because it was based on Plaintiff's misrepresentations to Judge Setser that he was not claiming damage to his professional reputation and he would not present expert testimony concerning his damages.

   a.   The Order denying Cisco documents other than tax returns so that Cisco may
        rebut Plaintiff's claims of reputational harm and mental anguish is clearly
        erroneous or contrary to law.

Despite his representations at the hearing on Cisco's Motion to Compel that Plaintiff was not claiming damages to his reputation, Plaintiff has now made clear that he intends to claim damage to his reputation as an attorney and that he suffered mental anguish. Plaintiff will also argue that he is entitled to damages for reputational harm because of lost business caused by the complained-of articles, though he admits he cannot meet the burden to prove lost income. In Plaintiff's deposition, he alleged as evidence of damage to his reputation that clients would not hire him because of the articles, albeit through several layers of hearsay. (Exhibit F at pp. 81-88). He listed in his disclosures the individuals identified in this testimony as witnesses concerning his damages. (Exhibit E). He also admits that other witnesses will testify that Plaintiff lost business because of the articles.

Notwithstanding his counsel's representation to the Court that Plaintiff was not designating an expert on his alleged damages, Plaintiff has also designated an expert who will testify that the internet articles damaged Plaintiff's reputation as an attorney because individuals doing internet searches for terms like "Johnny Ward Texas lawyer" would locate the

9

5661841v.1

complained-of articles. (Exhibit C). The obvious gist of the report is that Plaintiff's professional reputation as an attorney would be harmed.

The Order is clearly erroneous or contrary to law because it prohibits Cisco from discovery to rebut Plaintiff's claims. Cisco expects that if Plaintiff had been candid about his position, Judge Setser would have required Plaintiff to respond to the discovery regarding those claims. Cisco is clearly entitled to this discovery to rebut Plaintiff's claims of reputational harm and mental anguish. *See Dunlap v. Midcoast-Little Rock, Inc.*, 166 F.R.D. 29, 30 (E.D. Ark.) (holding that tax returns were relevant to the plaintiff's claims of mental anguish damages because of the plaintiff's claim that he suffered depression due to his inability to work and financial problems caused by the Cisco); *Rogers v. Rogers*, Ca. No. DR200-1602-4, 2007 WL 2713580 (Ark. App., Sept. 19, 2007) (Exhibit H) (holding that records regarding the income and assets of a law firm were relevant where an attorney in the firm had put his earning ability at controversy by filing a motion to reduce child support); *FMC Corp. Inc. v. Helton*, 202 S.W.3d 490, 478 (Ark. 2005) (holding that the lower court properly permitted cross examination concerning tax returns where the plaintiff alleged emotional distress).

Plaintiff's financial records and records concerning his clients are direct evidence concerning his claim that his reputation as an attorney was harmed by the articles at issue and that the articles have caused him to lose business. Cisco has no doubt that records showing Plaintiff's finances and clients will show that his business has not suffered because of the articles but indeed has flourished, that he has retained many new, large clients since the articles at issue were published, and that his clients continue to come to him for new litigation matters.

Financial records are particularly important to determine damages in defamation cases. The financial records of a plaintiff alleging defamation and resulting reputational damages are

evidence concerning not only the existence of damages, but also the proper amount of damages. *See Northport Health Services, Inc.*, 158 S.W.3d 164 (Ark. 2004) (holding with respect to damage to reputation in a defamation case that "[T]he jury was privy to the base pay and experience of [the plaintiffs] and could calculate appropriate damages in connection with the defamation"). Indeed, it is one of the few, if not the only, tangible thing the jury could evaluate to determine whether Plaintiff was indeed damaged. Plaintiff's financial records and records of new clients are thus relevant and discoverable. *See* Fed. R. Civ. P. 26(b).

The requested documents are also relevant to Plaintiff's claim concerning mental anguish. Courts[1] have historically been hesitant to allow recovery for mental anguish, noting the difficulty of distinguishing "between shades and degrees of emotion," some of which allow for recovery, and others of which do not. *See, e.g., Parkway Co. v. Woodruff*, 901 S.W.2d 434, 444 (Tex. 1995) (holding that the disruption caused by the flooding of the plaintiff's home disrupted the plaintiff's lives temporarily but that "this type of disruption will not support an inference that compensable mental anguish occurred.") If the Court determines that Arkansas law applies,[2] to prove Plaintiff's outrage claim Plaintiff must prove that he suffered mental anguish "so severe that no reasonable person could be expected to endure it." *See Schmidt v. Stearman*, 253 S.W.3d 35, 44 (Ark. App. 2007).

The Texas Supreme Court has acknowledged that "direct evidence of the nature, duration and severity of mental anguish, thus establishing a substantial disruption in the plaintiff's daily routine" must be shown to recover damages for mental anguish and "can be readily supplied or procured by the plaintiff." *Id.* For this reason, to show mental anguish, the plaintiff must show

---

[1] Texas law should apply for the reasons set forth in Cisco's Motion for Summary Judgment and supporting briefing. Cisco cites to both Texas and Arkansas law because this issue has not yet been decided.
[2] Cisco contends Texas law applies, in which case there is no recognizable claim for outrage.

both (1) evidence of compensable mental anguish and (2) evidence to justify the amount awarded. *Saenz v. Fidelity & Guaranty Ins. Underwriters*, 925 S.W.2d 607, 614 (Tex. 1996).

Here, Cisco has sought the exact evidence that is relevant and possibly even case dispositive regarding Plaintiff's claim for mental anguish. Plaintiff's financial records, which would show whether his alleged mental anguish affected his ability to work, are directly relevant to the nature, duration and severity of his mental anguish. *See Doe v. Oberweis Dairy*, 456 F.3d 704, 718 (7th Cir. 2006) ("If a plaintiff by seeking damages for emotional distress places his or her psychological state in issue, the defendant is entitled to discover any records of that state.")[3]

Such evidence is essential because an award of mental anguish damages must not be simply a disapprobation of the defendants' conduct, but rather a "fair assessment" of the plaintiff's injury. *Bentley v. Bunton*, 94 S.W.3d 561, 605 (Tex. 2002) (reversing an award of $7 million in mental anguish on the basis there was insufficient evidence that the amount would "fairly and reasonably compensate" the plaintiff for his loss). "[T]here must be evidence that the amount found is fair and reasonable compensation, just as there must be evidence to support any other jury finding." *Id.* at 606. Allowing Plaintiff to shield this evidence not only cripples Cisco's defense, but also omits from the record evidence that must be evaluated on appeal. *Universe Life Ins. Co. v. Giles*, 950 S.W.2d 48, 54 (Tex. 1997) ("concerned with the subjective nature of mental anguish damages, we have admonished courts to closely scrutinize [mental anguish] awards"; evidence is required because it "ensures that fact-finders are provided with adequate details to assess mental anguish claims"); *Saenz*, 925 S.W.2d 607, 614 ("the law requires appellate courts to conduct a meaningful evidentiary review" of the amount of mental anguish damage awards); *Bentley*, 94 S.W.3d at 606-07 (reversing an award of mental anguish

---

[3] The Plaintiff certainly puts his psychological state at issue saying the articles caused him sleep problems. Exhibit F at p. 18.

damages in a *per se* defamation case where the evidence did not support the amount of the award).

When it comes to damages for mental anguish, the jury "cannot simply pick a number and put it in the blank," but rather must provide evidence of fair and reasonable compensation. *Saenz*, 925 S.W.2d at 614 (reversing the award of mental anguish damages because "there is no evidence in this case that Saenz suffered mental anguish or that $250,000 would be fair and reasonable compensation"). "Not only must there be evidence of the existence of compensable mental anguish, there must also be some evidence to justify the amount of the award. We disagree with the court of appeals that 'translating mental anguish into dollars is necessarily an arbitrary process for which the jury is given no guidelines'… There must be evidence that the amount is fair and reasonable compensation, just as there must be evidence to support any other jury finding." *Id.* Records of Plaintiff's personal and business finances are direct evidence concerning the appropriate amount of damages, if any, that he should be awarded.

Because the Order deprives Cisco of powerful, critical, probative evidence to rebut Plaintiff's claims, it is clearly erroneous or contrary to law.

      b.     <u>The Order denying Cisco tax returns so that Cisco may rebut Plaintiff's claims of reputational harm and mental anguish is clearly erroneous or contrary to law.</u>

While most financial records are discoverable merely because they are relevant, many courts have held that tax returns (as opposed to the other records also requested by Cisco) are discoverable only when there is a compelling need for the record—that is when the information is not "readily obtainable from another source." *See E.E.O.C. v. Ceridian Corp.*, 610 F. Supp.2d 995, 997 (D. Minn. 2008). The Plaintiff has the burden to show that the information in the tax returns is obtainable elsewhere. *Id.* Only upon such a showing can the plaintiff avoid production of the tax returns. *Id.*

5661841v.1

Plaintiff cannot meet his burden to show that the information in the tax returns is obtainable elsewhere because Cisco has a compelling need for these documents. Plaintiff has refused to produce any discovery regarding his finances, and his attorneys have claimed that they will not permit Plaintiff or his wife to testify regarding their finances. (Email from Patricia Peden, Exhibit I). Indeed, Plaintiff has refused to produce any documents relating to his finances and his claims that he has lost business because of the complained-of articles or that his reputation has been harmed. Therefore, Cisco does not have an alternative source for Plaintiff's financial information, and Plaintiff therefore must produce his tax returns. *Id.* Plaintiff chose to put his finances at issue when he claimed reputational harm in this lawsuit and therefore cannot now complain that this information is too personal. *See Dunlap*, 166 F.R.D. at 30. Moreover, Cisco has already agreed to a protective order that would limit the use of the documents to this lawsuit.

For these reasons, the Order denying Cisco this probative evidence is clearly erroneous or contrary to law. The Court should therefore order Plaintiff to respond fully to Request Nos. 4, 5, 9, 11, and 17.

## 2. The Court Should Order Plaintiff to Respond to Request for Production No. 12

The order denying Cisco's Motion to Compel Plaintiff's medical records is also clearly erroneous or contrary to law.

Request No. 12 asks:

Produce a medical authorization for John Ward, Jr.'s medical records (a form is attached).

Cisco agreed to limit this request to the past four years.

Cisco is entitled to Plaintiff's medical records, including records from his psychotherapists, if any, because Plaintiff has put his mental condition at issue. *See Patterson v.*

14

*P.H.P. Healthcare Corp.*, 90 F.3d 927, 940 (5th Cir. 1996) *cert. denied*, 519 U.S. 1091 (1997) (holding that evidence of mental anguish "may include corroborating testimony or medical or psychological evidence"); *Montemayor v. Ortiz*, 208 S.W.3d 627, 719 (Tex. App.—Corpus Christi 2006, pet. denied) (noting as a reason for holding that there was insufficient evidence of mental anguish that "[r]emarkably, in this case not one plaintiff presented medical or psychological expert testimony as to the emotional harm that was purportedly suffered"); *Schoffstall v. Henderson*, 223 F.3d 818, 823 (8th Cir. 2000); *Batiste-Davis v. Lincare, Inc.*, 526 F.3d 377, 381 (8th Cir. 2007) (holding that it is appropriate to admit evidence of the plaintiff's previous depression and treatment with electroconvulsive therapy where she claimed her mental anguish was caused by subsequent conduct by the defendant, stating that "[i]t is elementary that a witness may be impeached by contradictory evidence.") (citations omitted); *Garrett v. Sprint PCS*, 2002 WL 181364 at *2 (D. Kan. 2002, no pet.) (When a plaintiff seeks damages for mental anguish, "[t]he medical and psychological information sought by… requests for production are relevant as to both causation and the extent of plaintiff's alleged injuries and damages"); *McCarthy v. Se. Pa. Transp. Auth.*, No. CIV. A. 92-7188, 1993 WL 409858, at *2 (E.D.Pa. Oct. 13, 1993, no pet.) ("the medical records sought by Defendants are relevant and may provide evidence concerning whether marital problems were the source of or contributed to Plaintiff's stress which she attributed to the unlawful conduct of Defendants… When she put her stress at issue in this law suit, however, she abandoned whatever privacy interest she had in keeping these records confidential").

Plaintiff's medical records in this case are clearly relevant and discoverable because Plaintiff has put his mental condition at issue by claiming mental anguish.  Cisco is entitled to

5661841v.1

evidence that Plaintiff's mental anguish was not severe or that it was caused by something other than the articles he complains about.

Medical records or testimony regarding medical treatment has proven dispositive of many mental anguish claims because it has demonstrated that the plaintiff's complained-of damages were not caused by the defendant or that the plaintiff had not suffered compensable mental anguish. *See Schmidt*, 253 S.W.3d at 44 (testimony by physician demonstrated that the plaintiff was depressed over medical conditions related to diabetes, not just the conduct of the defendant as alleged, resulting in a directed verdict for the defendant on the claim of outrage); *See Kiersey v. Jeffrey*, 253 S.W.3d 438, 442 (Ark. 2007) (holding that testimony that the party in interest's psychiatrist, who the party had seen since he was three years old, had never said that the party suffered any emotional distress and anything of that sort and had never needed to see a psychiatrist or take medication because of the event at issue in the lawsuit negated plaintiff's claim of emotional distress); *Terrell v. Arkansas Trucking Service, Inc.*, 959 S.W.2d 70, 96-97 (Ark. App. 1998) (noting in a case involving Workers Compensation that the plaintiff's medical records demonstrated that his mental anguish was not caused by his workplace injury); *Ross v. Patterson*, 817 S.W.2d 418, 421-22 (Ark. 1991) (noting that testimony from plaintiff's psychologist showed that her mental anguish stemmed from an event for which the defendant was not liable, not from the complained-of conduct, and dismissing plaintiff's claim of outrage on that basis).

In this case, Plaintiff has alleged that he had trouble sleeping and had to take medication (Tylenol PM) based on the advice of a doctor to help him sleep because of his alleged mental anguish. (Exhibit F at pp. 19-20). Cisco is certainly entitled to medical records before the articles at issue were published that would show that Plaintiff's sleeping problems, if any,

predated the articles at issue, thus rebutting causation.  The jury should hear the whole story, especially if that story includes that Plaintiff had reported to his doctors the same problem he claims was caused by the articles <u>before</u> the articles had even been written or acknowledged to his doctors that the reason for his sleeping issue was something other than the articles.  Indeed, many medical problems alone can cause sleeping problems or mental anguish.

Here, where Plaintiff claims that his mental injury was caused by Cisco, Cisco is entitled to rebut that claim by showing that (1) there is no such mental injury and (2) if there is such a mental injury, it was not caused by Cisco.  *See Clark v. Bakker, D.D.S.*, 1999 WL 349808, Ca. No. 95-976 (Ark. App. May 26, 2006) (affirming admission of medical records to rebut plaintiff's claim that mental anguish was caused by Cisco and stating that "[w]hen a proponent opens the door to a line of questioning, the opposing party may fight fire with fire by introducing rebuttal evidence on that issue.")  Denying Cisco's motion to compel would deprive Cisco of this probative rebuttal evidence.  Indeed, "[i]t is elementary that a witness may be impeached by contradictory evidence." *Batiste-Davis*, 526 F.3d at 381.

Simply put, Plaintiff should not be permitted to allege mental anguish, yet refuse to produce the most obvious evidence concerning his claim.  Therefore, the Order denying Cisco essential evidence is clearly erroneous and contrary to law.

For these reasons, Cisco respectfully requests an order requiring Plaintiff to comply with Request No. 12.  Cisco also requests such further relief to which it may be justly entitled.

Respectfully submitted,

JACKSON WALKER L.L.P.

By: */s/ Charles L. Babcock*
    Charles L. Babcock
    Federal Bar No.: 10982
    Email: cbabcock@jw.com

17

5661841v.1

Crystal J. Parker
Federal Bar No.: 621142
Email: cparker@jw.com
1401 McKinney
Suite 1900
Houston, Texas 77010
(713) 752-4200
(713) 752-4221 – Fax

ATTORNEYS FOR DEFENDANT
CISCO SYSTEMS, INC.

18

## CERTIFICATE OF CONFERENCE

The parties have conferred in good faith on the specific issues in dispute in this Motion, and they are not able to resolve their disagreements without the intervention of the Court.

*/s/ Charles L. Babcock*
Charles L. Babcock

Attorney in Charge for Cisco Systems, Inc.

## CERTIFICATE OF SERVICE

This is to certify that on this 16th day of November, 2009, a true and correct copy of the foregoing was served via electronic mail upon:

Patricia L. Peden
Law Offices of Patricia L. Peden
5901 Christie Avenue
Suite 201
Emeryville, CA 94608
***Attorney for Plaintiff John Ward, Jr.***

Nicholas H. Patton
Patton, Tidwell & Schroeder, LLP
4605 Texas Boulevard
P.O. Box 5398
Texarkana, Texas 75505-5398
***Attorney for Plaintiff John Ward, Jr.***

Courtney Towle
Patton, Tidwell & Schroeder, LLP
4605 Texas Boulevard
P.O. Box 5398
Texarkana, Texas 75505-5398
***Attorney for Plaintiff John Ward,Jr.***

Geoffrey P. Culbertson
Patton, Tidwell & Schroeder, LLP
4605 Texas Boulevard
P.O. Box 5398
Texarkana, Texas 75505-5398
***Attorney for Plaintiff John Ward,Jr.***

James Holmes
Law Office of James Holmes, P.C.
605 South Main, Suite 203
Henderson, Texas 75654
***Attorney for Plaintiff John Ward, Jr.***

*/s/ Charles L. Babcock*
Charles L. Babcock

5661841v.1