# EXHIBIT E

Dockets.Justia.com

Westlaw

Not Reported in S.W.3d, 2007 WL 2713580 (Ark.App.)
(Cite as: 2007 WL 2713580 (Ark.App.))

Page 1

**H**
Only the Westlaw citation is currently available.

NOTICE: THIS DECISION WILL NOT APPEAR IN THE SOUTHWESTERN REPORTER. SEE REVISED SUPREME COURT RULE 5-2 FOR THE PRECEDENTIAL VALUE OF OPINIONS.

Court of Appeals of Arkansas,
Division II.
Edmundo ROGERS, Appellant
v.
Cynthia ROGERS, Appellee.
**No. CA06-848.**

Sept. 19, 2007.
Rehearing Denied Oct. 24, 2007.

An Appeal from Benton County Circuit Court, [NO. DR2000-1602-4]; John Scott, Circuit Judge.

KAREN R. BAKER, Judge.

*1 This is the fifth opinion we have issued in this long-running divorce case. In our last opinion, we ordered the trial court to enforce the child-support and alimony awards contained in a 2001 divorce decree. *Rogers v. Rogers,* 90 Ark.App. 321, 205 S.W.3d 856 (2005) (*Rogers IV*). Upon remand, the trial court did so and entered judgment against appellant Edmundo Rogers for $32,455 in past-due child support and $9200 in past-due alimony. Edmundo appeals, challenging the propriety of these awards and raising numerous other issues. We affirm.

*Procedural History*

The parties' original divorce decree was entered on February 26, 2001. It gave Cynthia custody of the couple's three children and ordered Edmundo to pay $1000 per month in child support and $9200 in alimony ($350 per month for twelve months, plus a $5000 lump sum).

Edmundo appealed from the divorce decree, and we reversed and remanded, ruling that the parties' failure to offer corroborating evidence of residency deprived the trial court of jurisdiction to dissolve the marriage. *Rogers v. Rogers,* CA01-790 (Ark.App. June 19, 2002) (not designated for publication) (*Rogers I*). However, while that appeal was pending, the trial court held Edmundo in contempt for failure to pay child support and alimony, and the court entered past-due judgments against him of $1080 for child support and $1400 for alimony. Edmundo appealed, but the appeal reached us after we had handed down *Rogers I.* We were therefore required to decide whether the trial court maintained the authority to enforce its child-support and alimony awards, despite our holding in *Rogers I* that it lacked authority to dissolve the marriage. We held that the court did have the power to enforce the awards, and we affirmed the contempt orders and the past-due judgments. *See Rogers v. Rogers,* 80 Ark.App. 430, 97 S.W.3d 429 (2003) (*Rogers II*); *Rogers v. Rogers,* No. CA02-699 (Ark.App. Aug. 27, 2003) (not designated for publication) (*Rogers III*).

Following our remand in *Rogers I,* the trial court heard testimony corroborating Cynthia's Arkansas residency. The court also re-tried several aspects of the case, including alimony and child support. As a result, Cynthia was awarded no alimony, and Edmundo was ordered to pay $300 per month in child support. Cynthia appealed, and, in *Rogers IV,* we ordered the trial court to enforce the original alimony and child-support awards contained in the 2001 decree. The court did so, setting child support at $1000 per month and awarding Cynthia $9200 in unpaid alimony and $32,455 in unpaid child support. The court also struck two of Edmundo's motions as a discovery sanction for failing to answer Cynthia's interrogatories in aid of execution. Edmundo now appeals, raising thirteen issues and various sub-issues, which we will address in a con-

© 2009 Thomson Reuters. No Claim to Orig. US Gov. Works.

Not Reported in S.W.3d, 2007 WL 2713580 (Ark.App.)
(Cite as: 2007 WL 2713580 (Ark.App.))

Page 2

solidated manner where possible.

*Trial Court's Failure to Follow Mandate in Rogers IV*

Edmundo argues as his eighth point on appeal that the trial court's order was contrary to our mandate in *Rogers IV* because the court allowed Cynthia "to use the remand for collection efforts," awarded Cynthia attorney fees and costs, and determined whether certain credits should be applied to the child-support and alimony awards. We address this issue first because it involves a question of jurisdiction.

*2 A trial court, upon remand, is vested with jurisdiction only to the extent conferred by the appellate court's opinion and mandate. See *Smith v. AJ & K Operating Co.*, 365 Ark. 229, 227 S.W.3d 899 (2006); *Dolphin v. Wilson*, 335 Ark. 113, 983 S.W.2d 113 (1998); *Turner v. N.W. Ark. Neurosurgery Clinic*, 91 Ark.App. 290, 210 S.W.3d 126 (2005). Any proceedings on remand that are contrary to the directions contained in the appellate court's mandate may be considered null and void. *Turner, supra.*

Our opinion in *Rogers IV* directed the trial court to enforce the alimony and child-support awards contained in the 2001 decree and re-calculate the child-support arrearage. The court did precisely that.[FN1] It naturally follows that, upon deciding the amount of support and alimony owed, the court would resolve matters concerning execution of judgments, costs and attorney fees, and credits for payments made. Accordingly, these matters were not contrary to our mandate but arose in the due course of implementing our mandate. We therefore conclude that the trial court acted within its jurisdiction. See *Smith, supra* (holding that an inferior court cannot vary the mandate or judicially examine it *for any other purpose than execution* ) (emphasis added). See also 30 AM.JUR.2D *Executions* § 1 (2d ed.2005) (stating that, so long as a judgment remains unsatisfied, all means available by law are open to the creditor for satisfying the debt and aiding in enforcement of the judgment); 5 C.J.S. *Appeal & Error* § 1146 (2007) (stating that, after remand, the lower court has the power, by execution or otherwise, to enforce a judgment); 5 C.J.S. *Appeal & Error* §§ 1144, 1156 (2007) (recognizing that, where a case has been remanded, the trial court has the power to award attorney fees and costs or calculate credits for payments made).

> FN1. We also ordered the court to enforce the parties' stipulated property agreements, which, despite Edmundo's claim to the contrary, the court addressed in its order and during a hearing.

*Issues Arising From Counsel's Failure to Appear at Hearings*

Edmundo makes several arguments concerning his counsel's failure to appear at hearings held December 16, 2005, and January 18, 2006. These arguments require additional factual exposition.

After our remand in *Rogers IV*, Cynthia filed a "Motion for Order on the Mandate," asking the trial court to enter judgment against Edmundo for child support and alimony. Edmundo responded with his own "Motion for Order on the Mandate" seeking offsets for appeal costs following *Rogers I* and offsets for judgments previously awarded to Cynthia. He also filed a "Motion to Modify and Reduce Child Support," asserting a change of circumstances following entry of the 2001 decree. All motions were set for a hearing on October 25, 2005, which was continued to January 18, 2006, at the request of Edmundo's attorney, Alvin Clay.

In September 2005, Mr. Clay had entered what he termed a "limited appearance" for the purpose of "defending the motion to enforce mandate, prosecuting the motion to enforce mandate and offset, and motion to modify and reduce child support." This limited appearance was apparently undertaken because Edmundo's previous attorney, Darrell Brown,

© 2009 Thomson Reuters. No Claim to Orig. US Gov. Works.

Not Reported in S.W.3d, 2007 WL 2713580 (Ark.App.)
(Cite as: 2007 WL 2713580 (Ark.App.))

Page 3

informed the court in July 2005 that he had been suspended from the practice of law yet intended to maintain his status as Edmundo's counsel.

**\*3** After Clay's entry of appearance, Cynthia's attorney, Marshall Evans, sent Clay two sets of interrogatories in aid of execution seeking information about the income and assets of Edmundo and his law practice. Evans told Clay that the first set had been sent to Darrell Brown but had not been answered. The second set was being sent to Clay for the first time. When neither set was answered by November 14, 2005, Evans wrote to Clay again requesting responses. He also noticed Edmundo for a deposition. Thereafter, still having received no response, Evans filed a motion to compel, which was set for a hearing on December 16, 2005.

Prior to the hearing, Clay sent letters to Evans and to the court stating that his "limited appearance" did not involve the collection of debts or judgments but only certain, specific motions. Therefore, he said, he was not the proper person on whom to serve the interrogatories, nor was Darrell Brown, whose license to practice law had been suspended. Clay further informed Evans that he had not contacted Edmundo regarding the December 14 deposition and that Edmundo probably would not attend. In his letter to the court, Clay attached an affidavit from Darrell Brown stating that Brown had previously represented Edmundo until his law license was suspended and that he had never seen the interrogatories in aid of execution.

The hearing on the motion to compel was held on December 16, 2005, as scheduled. Edmundo did not appear, nor did any counsel on his behalf. After the hearing, the court ruled that Cynthia's interrogatories were "material to [Clay's] alleged limited appearance" in that Edmundo's motion to reduce child support, which Clay had filed, raised issues "specifically germane to the discovery propounded...." An order was entered on December 20, 2005, directing that both sets of interrogatories be answered by December 30, 2005, and directing Edmundo to submit to a deposition on January 9, 2006. Edmundo was also ordered to pay Cynthia $350 in attorney fees. Clay was fined $150 for failure to appear.

On the same day that the order was entered, Clay wrote to the court, saying that the order was "unfair and inaccurate." He raised various objections, requested findings of fact and conclusions of law, reasserted his limited entry of appearance, and argued that the interrogatories had not been served on a proper person. The court did not respond.

A few days before the January 9 deposition, Evans sent an email reminder to Clay. Nevertheless, neither Edmundo nor Clay appeared at the deposition, nor did they respond to the interrogatories. On January 11, Cynthia filed a motion to strike Edmundo's Motion for Order on the Mandate and his Motion to Reduce Child Support, citing his failure to comply with discovery orders.

On January 13, 2006, attorney Jack Kearney wrote a letter to the court stating that Edmundo had asked him to make an appearance at the January 18 hearing "for the limited purpose of addressing whether he defaulted on an appearance at a hearing in December and whether he is in contempt for failing to comply with orders issued to him regarding discovery...." Kearney said that he already had a trial scheduled for January 18, and he enclosed a "Provisional Motion For Continuance." On January 17, 2006, the day before the hearing, Clay also filed several pleadings on Edmundo's behalf: 1) a motion to compel Cynthia to give more complete answers to interrogatories that Clay had sent her; 2) a motion to set aside the December 20, 2005 order; and 3) a motion for a continuance, seeking, *inter alia,* "additional time to prepare."

**\*4** The hearing was held on January 18. Edmundo appeared, but no attorney appeared on his behalf. Edmundo asked for a continuance, which was denied except for a brief recess. He then proceeded pro se under a continuing objection. After hearing testimony from Cynthia, Edmundo, and Leonard Krissell (Edmundo's accountant), the court denied

© 2009 Thomson Reuters. No Claim to Orig. US Gov. Works.

Not Reported in S.W.3d, 2007 WL 2713580 (Ark.App.)
(Cite as: 2007 WL 2713580 (Ark.App.))

Page 4

Edmundo's motion to compel, finding that Cynthia's answers to interrogatories had been appropriate; struck Edmundo's Motion for Order on the Mandate and Motion to Reduce Child Support based on Edmundo's disobedience to discovery orders; and made the child-support and alimony awards previously mentioned.

Edmundo now argues that he was denied his constitutional right to counsel of his choice when Clay "inexplicably did not appear" at the December 16, 2005, and January 18, 2006 hearings. The right to counsel of one's choice is grounded in the Sixth Amendment of the United States Constitution and in art. 2, § 10 of the Arkansas Constitution. *Bullock v. State,* 353 Ark. 577, 111 S.W.3d 380 (2003). However, while constitutionally guaranteed, the right to counsel of one's choosing is not absolute and may not be used to frustrate the inherent power of the court to command an orderly, efficient, and effective administration of justice. *Id.*

Putting aside the question of whether the Sixth Amendment and art. 2, § 10 apply in a civil case of this nature, we hold that Edmundo was not deprived of counsel of his choice. He employed not just one but several attorneys of his own choosing, all of whom actively represented him in the case. Darrell Brown claimed to be Edmundo's attorney in July 2005, and Edmundo, in a motion for a new trial filed after the judgment in this case, argued that Brown was still his attorney. Attorneys Clay and Kearney entered appearances on Edmundo's behalf, and each filed pleadings or communicated with the court within days of the January 18 hearing. Yet, they chose not to appear at the hearing. Edmundo has cited no authority, and we have found none, for the proposition that a freely-selected, private attorney's failure to appear at a civil hearing constitutes a deprivation of the right to counsel of one's choice. To the contrary, the nature of the attorney-client relationship generally binds a client to the actions of his chosen counsel. As such, Edmundo was bound by Clay's and Kearney's decision not to appear at the hearing that they had notice would be held. *See*

*Florence v. Taylor,* 325 Ark. 445, 928 S.W.2d 330 (1996) (recognizing that, where an appellant voluntarily chose his attorney as his representative in the action, he could not avoid the consequences of the acts or omissions of his attorney). Likewise, Clay's reliance on his "limited" appearance-which, as best we can tell, has no precedent under Arkansas law for anything other than challenging jurisdiction-was Clay's choice by which Edmundo was bound. *Id.*

Edmundo claims further that he was not prepared to represent himself at the hearing and that he "did not know the evidence against him." However, it was his duty to exercise diligence in keeping up with his case. *See generally Diebold v. Myers Gen. Agency,* 292 Ark. 456, 731 S.W.2d 183 (1987). Moreover, Edmundo was a practicing attorney, and he was able to procure the attendance of his accountant as a witness at the hearing. Further, he knew several days in advance that Clay might not appear at the hearing, which was apparently the reason he asked Jack Kearney to appear. Under these circumstances, we find no due-process or other constitutional violation.

*5 Edmundo also contends that the trial court violated Ark. R. Civ. P. 64(b) (2007), when it allowed the hearing to continue in the absence of counsel. Rule 64(b) governs the circumstances under which a trial court may grant counsel permission to withdraw from a case. However, none of Edmundo's attorneys sought permission to withdraw, nor was their failure to appear an effective withdrawal, as in *Dean v. Williams,* 339 Ark. 439, 6 S.W.3d 89 (1999). There, an attorney unexpectedly abandoned his clients at a hearing. By contrast, under the circumstances in this case, Edmundo should not have been surprised that no attorney appeared at the hearing.

Finally, Edmundo argues that the trial court erred in denying his request for a continuance. The question of whether a trial judge erred in denying a continuance is reviewed under the abuse-of-discretion standard. *See Dorothy v. Dorothy,* 88 Ark.App. 358, 199 S.W.3d 107 (2004). We find no abuse of

© 2009 Thomson Reuters. No Claim to Orig. US Gov. Works.

Not Reported in S.W.3d, 2007 WL 2713580 (Ark.App.)
(Cite as: 2007 WL 2713580 (Ark.App.))

Page 5

discretion here, based on our previous discussions regarding counsels' choosing not to appear at the hearing and Edmundo's duty to exercise diligence in keeping up with his case. We also note that the hearing had been scheduled for several months, having previously been continued at Clay's request and rescheduled to a date agreed on by him.

In light of the above reasons, we find no error on these points.[FN2]

> FN2. We summarily dispose of Edmundo's argument that the trial court violated his right to equal protection when it denied his motion for a continuance, having granted Cynthia's motion for a continuance during a different part of the case. The circumstances were different in each situation, and the trial court obviously exercised its discretion in both instances.

*Errors in Calculating Support Awards and Arrearage*

The trial court calculated the child-support arrearage based on $1000 per month over the sixty-month period between February 2001 (the date of the original decree) and January 2006 (the date of the last hearing). From that $60,000 figure, the court deducted $28,069 in payments made by Edmundo and added back $524 in payments that Cynthia testified she did not receive. This totaled $32,455. The alimony award was calculated based on the terms of the original decree: $350 per month for twelve months, plus $5000, for a total of $9200.

Edmundo argues first that the court should have used fifty-nine months rather than sixty months in calculating child support, i.e., the court should have left out the month of February 2001. However, the $1000-per-month amount was established in the parties' agreement dated January 2001, and Edmundo offers no convincing argument that a child-support payment was not due in February 2001. Edmundo also claims that the court should not have added back $524 in payments that Cynthia said she never received. The court expressly found Cynthia's testimony credible on this point, and Edmundo did not object to her testimony. We defer to the superior ability of the trial court to view and judge the credibility of the witnesses. *Alphin v. Alphin*, 364 Ark. 332, 219 S.W.3d 160 (2005).

Edmundo further contends that he should have received a $514 credit for alimony paid. At the hearing, he produced a letter from his bank showing that on December 20, 2001, $514 was disbursed from his account by cashier's check to Cynthia. However, the purpose of the disbursal was not stated. Cynthia testified at a prior hearing that she remembered receiving a garnishment of $500, but she could not say exactly what it was for. It is the appellant's burden to demonstrate reversible error. *See Qualls v. Ferritor*, 329 Ark. 235, 947 S.W.2d 10 (1997). Given the vague state of the record on this point, we cannot say that Edmundo has met his burden. We therefore decline to find error.

*6 Edmundo argues next that the trial court miscalculated the $32,445 child-support judgment and the $9200 alimony judgment because the court did not take into account that Cynthia received judgments in 2001 totaling $1080 for child support and $1400 for alimony. Edmundo couches his argument in terms of the law-of-the-case doctrine, asserting that the trial court was bound by the fact that we affirmed the 2001 judgments in prior appeals. However, his practical concern is that he not incur excess liability as the result of being subject to the prior judgments and the current, comprehensive judgments. We see no reason for reversal here. The trial court expressly provided in its order that, if Edmundo paid the amounts from the previous judgments, he would receive credit for his payments. Thus, he has not shown that he was harmed by the trial court's ruling. *See generally Peters v. Pierce*, 314 Ark. 8, 858 S.W.2d 680 (1993) (stating that the appellate court will not reverse in the absence of a showing of prejudice). Additionally, a judgment for a child-support arrearage could logically encompass

© 2009 Thomson Reuters. No Claim to Orig. US Gov. Works.

Not Reported in S.W.3d, 2007 WL 2713580 (Ark.App.)
(Cite as: 2007 WL 2713580 (Ark.App.))

Page 6

prior, un-executed judgments. *See generally Sears v. Burkeen,* 96 Ark.App. 13, 237 S.W.3d 521 (2006) (citing *Stewart v. Norment,* 328 Ark. 133, 941 S.W.2d 419 (1997)) (recognizing that an order for a child-support arrearage is a final judgment subject to garnishment or execution until the order is modified or otherwise set aside). We therefore find no error in the court's handling of this issue.

*Error in Striking Edmundo's Motions*

As a discovery sanction, the trial court granted Cynthia's motion to strike Edmundo's Motion for Order on the Mandate and Motion to Reduce Child Support. Edmundo now argues that the trial court erred because Cynthia did not file her motion to strike until January 11, only seven days before the hearing.

Arkansas Rule of Civil Procedure 6(c) (2007) states that a written motion shall be served not later than twenty days before a hearing. While Cynthia's motion to strike did not meet this requirement, her motion to compel, filed in November 2005, did, and that motion sought discovery sanctions from Edmundo. Further, a court order had been in place since December 20, 2005, directing Edmundo to comply with discovery. Arkansas Rule of Civil Procedure 37(b)(2) (2007) permits a court to make such orders as are just, including striking pleadings, when a party fails to obey an order to provide discovery. Moreover, Cynthia's motion to strike was sent to attorney Alvin Clay on January 10, according to its certificate of service, yet Clay chose not to appear at the hearing and not to respond to the motion, even though he filed several other pleadings on January 17. Given these circumstances, we find no abuse of discretion in the trial court's imposition of discovery sanctions. *See S. College of Naturopathy v. State,* 360 Ark. 543, 203 S.W.3d 111 (2005) (citing abuse-of-discretion standard for discovery sanctions).

*7 Edmundo also argues that the interrogatories in aid of execution, which he failed to answer, were improperly served. He claims that Darrell Brown never received the interrogatories and that Alvin Clay had no authority to deal with the interrogatories in light of his "limited" appearance. However, the trial court found that the interrogatories pertained to the motion to modify child support, which Clay had filed. In addition, we have already expressed doubt that Mr. Clay could limit his representation of Edmundo to the extent he claimed.

*Failure to Set Aside December 20, 2005 Order*

On this point, Edmundo argues several reasons why the December 20, 2005 order, which compelled him to answer interrogatories, should have been set aside pursuant to Ark. R. Civ. P. 60(a) (2007) to "correct errors or mistakes or to prevent the miscarriage of justice." We hold that the trial court did not err in letting the order stand.

Edmundo argues first that, because the most recent writ of execution was issued to him in June 2003, the writ had expired pursuant to Ark.Code Ann. § 16-66-104 (Repl.2005), and Cynthia was therefore required to serve an additional writ before propounding interrogatories in aid of execution. Edmundo has not offered a convincing argument that his interpretation of the statute is correct. Section 16-66-104 governs the procedure for issuing writs of execution. It provides in subsection (e) that, if further writs of execution are filed on the same debt, an annual notice must be served by the judgment creditor. However, subsection (e) does not address discovery requirements or prerequisites for filing interrogatories in aid of execution. We therefore decline to reverse on this issue.

Edmundo also argues that the interrogatories were not signed and have no valid certificate of service. *See* Ark. R. Civ. P. 5 and 11 (2007). However, he did not make this argument in his motion to set aside the December 20 order, nor did he file a formal objection to the interrogatories on this basis. We will not address an argument raised for the first time on appeal. *See Hackelton v. Malloy,* 364 Ark.

© 2009 Thomson Reuters. No Claim to Orig. US Gov. Works.

Not Reported in S.W.3d, 2007 WL 2713580 (Ark.App.)
(Cite as: 2007 WL 2713580 (Ark.App.))

Page 7

469, 221 S.W.3d 353 (2006). In any event, we note that the record contains a letter by which Cynthia's attorney transmitted the interrogatories to Mr. Clay, so Edmundo has not shown a basis for prejudice or reversible error. *See Peters, supra* .

Edmundo contends further that he should not have been compelled to answer any interrogatories regarding his law firm. The time for Edmundo to have made this objection was in response to the interrogatories rather than a Rule 60 motion to set aside. Further, Edmundo put his own earning ability in controversy when he filed his motion to reduce child support. It was therefore at least arguable that Cynthia could inquire about the income and assets of Edmundo's law practice. *See generally* Ark. R. Civ. P. 26(b)(1) (2007) (permitting discovery into "any matter, not privileged, which is relevant to the issues in the pending actions"). Certainly, we cannot say that a miscarriage of justice occurred.

*8 Edmundo's remaining arguments concern Mr. Clay's limited appearance, which we have already discussed, and the purported unfairness of the $350 attorney fee awarded to Cynthia upon her motion to compel being granted. For reasons previously cited, we accord little if any significance to Clay's limited appearance. Further, we perceive no inequity in compelling Edmundo to answer the interrogatories, and we find no abuse of discretion in the court's award of an attorney fee. *See* Ark. R. Civ. P. 37(a)(4)(A) (2007) (allowing an attorney fee upon granting a motion to compel).

*Remaining Issues*

Edmundo argues that the trial court violated Ark. R. Civ. P. 52(a) (2007) by not issuing findings of fact and conclusions of law following the December 20, 2005 hearing on the motion to compel. However, Rule 52(a) states that findings of fact and conclusions of law are unnecessary on decisions on motions.

Edmundo also contends that the trial court should have issued findings of fact and conclusions of law following the January 18, 2006 hearing. The court in fact issued a detailed order, and, based on our reading of it, we believe it adequately covers the contested issues in the case. Where a court makes certain findings and clearly states its orders, the court's findings are sufficient, and the court need not address all findings proposed by an appellant. *See S.E. Ark. Landfill, Inc. v. State,* 313 Ark. 669, 858 S.W.2d 665 (1993).

Finally, Edmundo claims that the trial court erred in failing to grant his motion for a new trial. This is an amalgam of prior arguments and requires no further discussion.

Affirmed.

ROBBINS and GLOVER, JJ., agree.
Ark.App.,2007.
Rogers v. Rogers
Not Reported in S.W.3d, 2007 WL 2713580 (Ark.App.)

END OF DOCUMENT

© 2009 Thomson Reuters. No Claim to Orig. US Gov. Works.