IN THE UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF ARKANSAS
TEXARKANA DIVISION

| | | |
|---|---|---|
| JOHN WARD, JR. | § | |
| | § | C.A. NO. 08-4022 |
| v. | § | |
| | § | JURY TRIAL DEMANDED |
| CISCO SYSTEMS, INC. | § | |

**PLAINTIFF'S REPLY IN SUPPORT OF ITS MOTION FOR RECONSIDERATION
OF THE COURT'S ORDER REGARDING THE SCOPE OF CISCO'S
SUBJECT-MATTER WAIVER OF PRIVILEGE**

**I.     Introduction:**

Plaintiff seeks reconsideration to address a misunderstanding concerning the publication
dates of Cisco's libelous posts. Although the Court ordered a waiver for communications known
to Frenkel before the last of the accused posts was published, the Court incorrectly found that the
last publication was on October 18, 2007, rather than October 19, 2007. The Court's date
limitation appears to be based on erroneous statements made in the submission log Cisco
provided the Court. Plaintiff seeks to correct that error. Plaintiff also seeks to include within the
scope of the Court's Order three Cisco employees, Yen, Noh, and Beckwith, who provided
Frenkel with information upon which he relied and who were instrumental in the publication of
the accused posts. An Order that omits these Cisco employees will deprive Plaintiff of the full
range of discovery envisioned by the Court's waiver Order.

Ensuring that the scope of the Court's waiver includes October 19th and Yen, Noh, and
Beckwith is just, fair, and consistent with the Court's ruling, which was intended to remedy the
fundamental unfairness of permitting Cisco to rely on communications with counsel while at the
same time withholding those communications from Ward.[1] Expanding the scope to include one

---

[1] *See United States v. Workman*, 138 F.3d 1261, 1263-64 (8th Cir. 1998) (at its core, waiver is designed to prevent
the fundamental unfairness of allowing a party to rely on communications with counsel to benefit its cause, while at
the same time depriving its adversary of the evidence needed to test, challenge, and rebut its claims); *Burress v.
Union Pac. R.R.*, 2007 U.S. Dist. LEXIS 1749, at *4-5 (E.D. Ark. Jan. 8, 2007) ("[A] defendant may not use the
privilege to prejudice his opponent's case by disclosing selected communications for self-serving purposes.").

1

Dockets.Justia.com

additional day and three additional Cisco employees is sufficiently limited so as not to run afoul of the Court's concern about not giving Plaintiff an unlimited waiver.  Plaintiff respectfully requests that Court grant his motion.

## II.     Legal Argument

Federal Rule of Civil Procedure 60(b) permits the Court to reconsider an Order that results from mistake, inadvertence, fraud, misconduct, misrepresentation by an opposing party, newly discovered evidence that, with reasonable diligence, could not have been discovered before, or any other reason that justifies relief.  *See* Fed. R. Civ. P. 60(b)(1), (2) (3), and (6). Reconsideration of the Court's waiver Order is justified in this case.  The date limitation imposed in the Court's Order is the result of the Court's reliance on incorrect facts contained in Cisco's submission log.  Cisco's misleading statements led this Court to incorrectly conclude that the last accused post was published on October 18, 2007, when, in fact, the last publication was on October 19, 2007.

There is no doubt that the Defendant's representation[2] to the Court that documents created on October 18th and 19th post-dated the accused articles resulted in this Court's erroneous belief that the last post was published on October 18th rather than October 19th.  The Court's Order expressly relies on Cisco's submissions to the Court to conclude that "the last of the postings occurred on October 17 and 18, 2007."  *See* D.E. 89 at ¶ 8.  Cisco's submission log claims that documents created on October 18th and October 19th were "created <u>after the articles at issue</u>."[3] (emphasis added).  The Response makes no serious attempt to justify this false representation, and for good reason.[4]  There is no dispute in this case that the last accused article

---

[2] Plaintiff believes Defendant's submission log misrepresented the facts underlying this case.  However, Plaintiff will not use the terms "fraud" or "misconduct" to describe Cisco's conduct because he has no way of knowing if Cisco's mischaracterization was intentional.  Casting dispersions on opposing counsel is not a prerequisite for relief. Either way, reconsideration of the Court's Order as a result of the incorrect representations is warranted.

[3] The representations that the Court is apparently referring to are made in Cisco's submission log, wherein Cisco states that documents created on October 18th and October 19th were created after the publication of the accused posts.  *See* Exh. A. (Group 1 submission log) at 27b, 27c, 36a, 36b, 36c, 36d, 36e, 36f, 40a, 40b, 40c; Exh. B (Group 2 submission log) at 7a, 16a, 24a, 27a, 31a, 31b, 37a, 37b, 37c, 53a, 53b, 53c, 65a, 66a, 66b, 66c, 68a.

[4] As discussed later, the Response now claims that it was making a disingenuous argument that the documents on its privilege log were made after the "complained of statements" and since the statements about Ward did not change in

was published on October 19th.  That fact has been admitted in Cisco's Amended Answer.  *See*

D.E. #34.  In is also clear from Plaintiff's Amended Complaint and Cisco's Answer that the

October 19th post is one of the three accused publications pleaded in this case.  *See id*.  Thus, the

Court's waiver should have included October 19, 2007, and likely would have but for the

statements made in Cisco's submission log.

The Court's Order should also include three Cisco employees, in addition to Frenkel,

who were instrumental in the publication of the defamatory posts.  Reconsideration of the

persons who fall within the Court's waiver order is warranted in light of newly produced

documents and deposition testimony showing that Frenkel was not acting alone in publishing the

accused posts and that he relied on information provided to him by Cisco employees Mallun Yen

and Marta Beckwith to make his false accusations.  Documents showing that Frenkel was acting

in concert with Yen and John Noh in publishing the accused posts were not available to Plaintiff

at the time of the waiver briefing because Cisco was withholding them under a claim of privilege

and by asserting the Albritton Protective Order.[5]  Now that the evidence set forth in Plaintiff's

motions is available to the Court, Plaintiff respectfully requests that the Court reconsider whether

Yen Noh and Beckwith's participation in the publications at issue and Frenkel's reliance on

information provided by those employees warrant including them within the Court's waiver

Order.

The Response argues that only exceptional circumstances justify reconsideration, citing

Plaintiff's briefing in response to Cisco's many motions for reconsideration.  *See* Response at 1.

Plaintiff's counsel agrees that motions for reconsideration are almost never justified, but

respectfully submits that this is one of those rare cases.  Plaintiff brought his motion with great

reluctance and only because Plaintiff genuinely believes the Court meant to include the dates of

all of the accused posts within the metes and bounds of its waiver order.  *See* D.E. 89 at ¶ 8.

---

the October 19th post, its representation was technically correct.  Cisco omits, of course, that it made no such
distinction in its submission log, in its prior briefing to the Court, or during meet and confer with Plaintiff's counsel.
[5] One of those documents was clearly not privileged.  *See* Exh. A (Cisco Privilged.000014).  Cisco withdrew that
document from its submission log before it was provided to the Court.  However, by then, the briefing on this issue
had closed.

Plaintiff understands the herculean effort expended by the Court to come to its ruling.[6]  The

Response argues, and it is true, that this issue has been extensively briefed.[7]  *See* Response at 1.

Plaintiff's counsel was inclined not to burden the Court with this issue again.  However, the

documents at issue are the most critical documents to Plaintiff's case; particularly those

documents showing what Yen and Beckwith knew and did (or did not) covey to Frenkel before

he wrote the defamatory posts.  Thus, Plaintiff's counsel felt compelled to raise the issue with the

Court in order to obtain the communications Plaintiff's counsel firmly believes the Court

intended to include within the scope of its waiver.

Plaintiff's respectfully asks the Court to reconsider its Order to make clear that the Court

intended the scope of the subject-matter waiver to include all the information known to the

Frenkel through October 19, 2007, and to consider including Cisco employees Yen, Noh, and

Beckwith within the scope of the Court's waiver Order.

A.    The Scope Of The Court's Waiver Should Include October 19, 2007

There is no dispute in this case that the last of the accused articles was published on

October 19th 2007.  *See* Motion at 4.  There is no dispute that the October 19th publication (which

incorrectly bears an October 18th date) has been identified in Plaintiff's pleadings as one of the

three articles defamatory of Plaintiff.  *See* D.E. 71 at ¶ 34.  The October 19th article was at issue

in the Albritton case (although Cisco tried very hard to have it eliminated from the case), was

specifically pleaded in Ward's Amended Complaint and Cisco's Amended Answer, was

identified in Ward's interrogatory responses to Cisco, was separately identified in Cisco's

interrogatory responses that gave rise to Plaintiff's motion for compliance and for sanctions, and

it has been the subject of discovery served by both Plaintiff and Defendant.  Cisco has known

from day one that the October 19th post is an "accused post."  Telling, the Response never argues

otherwise.

---

[6] The Response argues that Plaintiff's motion raises the same arguments that the Court has already denied.  *See* Response at 1.  The opposite is true; the Court granted Plaintiff's motion.
[7] The Response cites docket entries showing the multiple briefs filed on this issue.  *See* Response at 1.  Cisco omits, however, that most of that briefing was the result of Cisco's refusal to comply with the Court's March 30th Order.  The blame for the extensive briefing of this issue cannot fall at Plaintiff's feet.

The only place that any party has ever claimed to the contrary is in Cisco's submission log to the Court. Cisco's log incorrectly identified documents created on both October 18, 2007 and October 19, 2007 as post-dating the accused posts. Cisco's representations are belied by the record, which is replete with evidence demonstrating that the October 19th post has been accused by Plaintiff as one of the three accused posts. Because Cisco refused to share its submission log with Plaintiff before submitting it to the Court, Plaintiff had no opportunity to address the incorrect statements before the Court relied upon them in issuing its Order.[8]

The Court's Order relied on Cisco's representations to cut the time frame of the waiver off one day too early. *See* D.E. 89 at ¶ 8. The Court clearly intended the waiver Order to be coextensive with the publication dates of the accused articles. The Court's Order stated: "The Court believes it appropriate to permit Ward to discover any and all communications shown by the submissions to have been received by him on or before he made the last of the blog postings at issue. (Based upon Frenkel's affidavit and other submissions, the Court believes the blog postings occurred on October 17 and 18, 2007.). *See* D.E. 89 at ¶ 8. (emphasis added).[9] The Response acknowledges that Cisco's accusations about Ward were published on October 19th. Again, there is no dispute that the last accused post was published on October 19th. The Court meant to include the time period including the October 19th Order, both parties know that is true, and the Court should order Cisco to immediately produce documents through October 19, 2007.[10]

In Response to Plaintiff's Motion for Reconsideration, Cisco should have just come clean. It should have told the Court that the last of the accused articles was in fact published on October 19th and that any representation to the contrary in its submissions to the Court was

---

[8] Although the Court ordered the parties to meet and confer about a joint submission log to the Court, Cisco feigned meet and confer and then, at the night before the joint submission log was due, informed Plaintiff that it would not be making a joint submission. *See* Exh. B. Therefore, Plaintiff could not know that Cisco would represent to the Court that the last article was published on October 18th until it was too late. Additionally, Plaintiff had no opportunity to respond to Cisco's submission log.

[9] Frenkel's declaration is silent as to the dates of the accused articles. Frenkel has admitted that he published the third accused article on October 19, 2007. *See* Exh. C

[10] Ward is already taking depositions without having the benefit of these documents.

inadvertent and mistaken. Cisco has not taken that approach. Instead, the Response takes the outrageous position that Cisco gets to decide which statements are at issue in Plaintiff's case. Cisco then argues that it has determined that the statements at issue in the October 19th post are not novel enough, in Cisco's opinion, to support a finding of waiver. The arguments made in Response are easily dismissed.

First, the Response does not dispute that the last of the accused posts was published on October 19th. For this reason alone, the Court should grant Plaintiff's motion and include October 19th within the scope of the Court's subject-matter waiver, as that was clearly the Court's intent. *See* D.E. 89 at ¶ 8.

Second, the Response's attempt to sidestep the issue by arguing that the post was not novel enough, in Cisco's opinion, to count as a defamatory article should be summarily rejected. *See* Response at 3. Cisco cannot seriously contend that it gets to dictate Plaintiff's case or the scope of the Court's waiver Order.

Cisco's argument is also belied by the facts. On October 19, 2007, Frenkel logged on to his Patent Troll Tracker Blog and made revisions to the article he published the day before. He removed his reference to the "Banana Republic of East Texas" and removed his allegations of conspiracy with respect to the Eastern District of Texas Court clerks. When making his revisions, however, he left intact and republished Cisco's false accusations about Plaintiff. Moreover, Frenkel added additional language claiming that the date on the ESN docket could not have been a mistake. This article was an independent article that differed from the Original October 18th article in several key respects.[11] But, by October 19th, Frenkel had received an email from Baker Botts telling him that ESN's counsel had explained that there was an error in the court's filing software, he had received the *Hertz v. Enterprise* pleading showing that there is a computer glitch in the ECF system that causes a date error on the online docket when a complaint is filed right after midnight, he had the results of his own legal research showing that

---

[11] Although Cisco argues that there was nothing of material importance in the October 19th Article, Cisco relies on new statements made in the October 19th article as evidence in support of its case.

the complaint was filed on October 16th, and he had received ESN's brief filed in the Eastern

District of Texas showing that his accusations were false.[12]  Cisco had the same information.

Yet, when Frenkel edited his October 19th post, he did not remove Cisco's false accusation about

Plaintiff.  Instead, on October 19th, Frenkel affirmatively republished Cisco's false and

defamatory accusations.

      Cisco's argument that waiver is not necessary because Frenkel didn't change his

accusations about Ward is absurd.  It is precisely Cisco's failure to correct its false accusations

about Ward after learning they were not true that underlies Ward's cause of action for the

October 19th post.  Cisco fully understands the issue as it was pleaded and answered by Cisco.

*See* D.E. 71 at ¶ 34.  In a defamation case, a Plaintiff may be required to show that the statements

were published with knowledge that they were false or with reckless disregard of the truth.

Documents showing what Frenkel and Cisco knew at the time the October 19th post was

published, in which they again accused Plaintiff of criminal and unethical conduct, demonstrate

the falsity of Defendant's statements, and show that the statements were made knowing they

were false or with reckless disregard of the truth.  Thus, all of the information that Frenkel had at

his disposal when he published on October 19th should fall within the Court's subject-matter

waiver.

      Third, Cisco offers this Court a disingenuous argument that Cisco really meant to tell the

Court in its submission log that the accused "***statements***" were not new, as opposed to telling the

Court that the last of the "***articles***" were published on October 18th.  Cisco's newly-minted

argument makes a false distinction between the "statements" in the articles and the "articles"

themselves.  The Response fails to tell the Court that Cisco never made its "only slightly revised

statements" argument during the briefing of this issue to the Court.  If it had, the Court and

---

[12] The Response states that it is baffled by Plaintiff's inclusion of this information in his brief because those documents have already been produced to Plaintiff.  *See* Response at 4.  Those documents would not have been produced to Plaintiff but for this Court's March 30th waiver order.  The point Plaintiff is making here is that there are additional documents that likely show that Frenkel and Cisco gained additional information (similar to the documents already produced) before publishing the October 19th post.  Unless the Court includes October 19, 2007 in its Order, Plaintiff will be deprived those critical documents.

Plaintiff would have been on notice that Cisco was making some disingenuous distinction between publication of the "articles" and "statements" in the articles Cisco claims are worthy enough to warrant liability.  If Cisco intended to make such a distinction, it kept it to itself.

Tellingly, Cisco's submission log does not make a distinction between "articles" and "statements," representing to the Court that documents on the log were "created after the articles" (not "statements").  None of the declarations that Cisco submitted to the Court along with its submission log make any such distinction.  During meet and confer before Plaintiff filed this motion, Cisco never mentioned that it was making some subtle distinction between "statements" and "articles."  Plaintiff submits that Cisco has plucked this argument out of thin air to in an attempt to justify its incorrect representation of the facts to the Court.

Moreover, this Court understood Cisco to have represented that the last of the articles was published on October 18th (not "statements").  *See* D.E. 89 at ¶ 8.  Cisco even tries to twist the Court's Order, stating that the Court has already determined that Frenkel's "state of mind after the complained of statements were written is not 'at issue.'"  *See* Response at 3.  Of course, the Court's Order says no such thing.  The Court's Order held that Ward was entitled to all communications received by Frenkel before "the last of the blog postings at issue."  *See* D.E. 89 at ¶ 8 (emphasis added).  The Court's Order did not evaluate the content of the articles or attempt to make distinctions based on the Court's interpretation of the relative value to be accorded to each of the accused articles.  Instead, the Court entered an Order that was premised on publication dates.  Because the last of the posts was published on October 19th, Cisco had no legitimate basis upon which to withhold documents created before that date.

Finally, even if Cisco could argue that it meant to make a distinction—and it can't—it would not preclude the discovery Ward seeks.  Ward's claims for defamation include allegations that the articles *as a whole* are actionable because they create a false and defamatory impression of Plaintiff.  *See* D.E. 71 at ¶ 34.  Therefore, the entirety of the October 19th article is at issue in this case, whether or not Cisco asserts that it contains only "slight" modifications.

Plaintiff believes that the Court intended to find subject-matter waiver for the dates upon

which all of the accused articles were published.  Cisco's submission log led the Court to

incorrectly omit October 19th from the scope of its Order.  Plaintiff respectfully requests that the

Court correct its Order to include October 19, 2007.

> B.      The Scope Of The Court's Waiver Order Should Include Yen, and Noh Who
>         Participated In The Publication Of The False Statements About Plaintiff,
>         And Then Ratified And Forwarded Those False Accusations

Plaintiff's Motion demonstrated that Frenkel was not acting alone when he published his

libelous posts about Ward.  Frenkel's colleague, John Noh, and Frenkel's boss, Mallun Yen,

commissioned the Troll Tracker's defamatory statements.  After the posts were written, Yen and

Noh adopted and ratified Frenkle's defamatory posts, and in Yen's case, she sent one of the

accused articles to Cisco's lobbyist Washington D.C.[13]  The Response does not dispute Yen and

Noh's participation in publication; only that they did not personally type the allegations.

The Response makes three arguments it claims preclude including Yen and Noh within

the scope of the Court's waiver:  (1) there is no independent cause of action against Yen or Noh;

(2) Yen or Noh's state of mind is not relevant to what Frenkel knew when he published the

accused posts; and (3) there is no evidence that Yen or Noh independently published or

republished the accused articles.

Each of Cisco's arguments rests on the circular reasoning; because there is no evidence to

support Plaintiff's claims (according to Cisco) Plaintiff is not entitled to discovery to support his

claims.  Cisco's flawed reasoning is apparent.  The issue before the Court is a discovery motion.

*See* Fed. R. Civ. P. 26(b) (discovery includes information that is reasonably calculated to lead to

the discovery of admissible evidence).  Therefore, Cisco's arguments based on what it claims the

facts are, or what it asserts are the legal conclusions to be drawn from its self-serving version of

the facts, do nothing to undermine Ward's request for a discovery waiver Order that includes

Yen and Noh.

Each of the Response's other arguments are equally meritless.

---

[13] *See* Exh. D (Ark.000456)

First, Ward need not bring a separate cause of action against Yen and Noh before the discovery he seeks is likely to lead to relevant evidence.  Ward's cause of action is against Cisco.  The actions undertaken by Cisco's employees and the information available to them at the time they worked with Frenkel to craft the defamatory posts are relevant to the good faith/malice issues in this case.  Yen and Noh need not be separately named defendants in order to be found to have relevant and discoverable information concerning their actions as Cisco employees.

The Response argues that Judge Schell already ruled that Yen and Noh's actions were not actionable.  Cisco's argument confuses the issues.  The issue before Judge Schell was whether Yen and Noh could be individual defendants in the Albritton case.  He held that they could not and dismissed them as named defendants.  There is nothing in Judge Schell's Order that even remotely suggests that Yen and Noh's actions are not relevant to show Cisco's liability for the defamatory posts.  Moreover, Judge Schell's ruling was based on arguments made by a different plaintiff and made on a different record.  The Texas Court did not have before it the document showing that Yen sent an accused post to Mr. Tanielian.  *See* Exh. E. (Ark.000318).

Second, Cisco's argument that only Frenkel's state of mind is relevant is nonsensical.  This case is not like the cases cited in Cisco's brief wherein an employee wrote defamatory posts without his employer's knowledge.  Here, Cisco knew what Frenkel was doing.  Cisco has admitted that Frenkel was acting within the course and scope of his employment at Cisco when he wrote the accused posts.  Cisco was also acting through other employees, including Yen and Noh.  Although Frenkel was the scribe, he was not acting alone in crafting the content of the accused articles.

Cisco's argument to the contrary is disproved by the facts.  For example, before Frenkel published the October 18th article, Yen asked Frenkel to attribute the source of the article to "anonymous sources" to avoid the concern raised by John Noh that Frenkel's writing on a Cisco case may "be hitting too close to home."  *See* Exh. A (Cisco Privileged 11-12).  The content offered by Yen is contained in the first line of the October 18th Troll Tracker Blog Post, which begins "I got a couple of anonymous emails this morning, pointing out that the docket in the

ESN case (the Texas docket, not the Connecticut docket), had been altered."   Although Frenkel typed the copy, the words are Yen's.

After Frenkel undertook some legal research and found that he was wrong about the filing date, he sent his conclusions to Yen.  Yen responded "Notwithstanding this, the correct course of action should have been a Motion to Correct the Docket . . ." *See* Exh. A (Cisco Privileged 213).  The October 19th Patent Troll Tracker Post included Yen's statement, stating "[e]ven if this is a mistake and I don't see how it could be . . . the proper course of action should be a motion to correct the docket."  Again, Yen's words were incorporated into Cisco's article, although it was physically written by Frenkel.

Moreover, the Response does not dispute that Cisco has sought to amend is answer to expressly plead that Cisco had no knowledge of what was going to be written in the Troll Tracker articles so fault and damages in this case are not attributable to Cisco.  Ward must be able to show the jury the full extent of Yen and Noh's participation in the accused articles, and therefore they should be included in the Court's waiver Order.

Ward is entitled to discovery to determine what Cisco's employees knew at the time they participated in, ratified, and forwarded the accused articles.  Because the only employees involved in that endeavor (at least as far as Plaintiff knows at this time) were Frenkel, Yen and Noh, those persons should fall within the Court's waiver Order.

Cisco's third argument, that there is no evidence that Yen even read the accused posts, stretches credibility.  On October 18, 2007 at 9:47 a.m., Yen specifically suggested that Cisco generate a "news story" about the ESN case. *See* Exh. A.  Cisco privileged 12.  By 10:06 a.m., Yen tells Frenkel to attribute the article he is going to write to an anonymous source. *See* Exh. A at Cisco Privileged 11.  Seven minutes later, Frenkel begins typing the accused post, which he finished by 10:23 a.m., and he sends the post to Yen and Noh. *See* Exh. A (Cisco privileged 1).[14] Minutes after she receives Frenkel's link to the post, Yen sends a link to the Troll Tracker Blog

---

[14] The exhibit shows 12:26 p.m., but that is Central time.  The email was written at 10:26 a.m. Pacific.

to Cisco's lobbyist, Matthew Tanielian.[15]  Cisco would have the Court believe that Yen specifically asked for a news story, helped Frenkel determine what to include so that it could not be traced back to Cisco, and then forwarded a link to the blog to the Governmental Affairs employee to whom she suggested a news story (presumably to be used in Cisco's patent reform efforts), and that she undertook all of that effort but did not read the post containing the fruits of her efforts.  Plaintiff submits that Cisco's argument is not credible.  Rather, it is a good example of why Plaintiff must have discovery from Yen and Noh.  Plaintiff cannot rebut Cisco's dubious arguments if he is deprived key discovery from Cisco.

The Response also takes Plaintiff to task for failing to mention that Yen did not copy Frenkel on the email she wrote asking for a news story.  *See* Response at 7.  Cisco is half right. Yen did not send the request directly to the Troll Tracker, she sent it to John Noh and other high level Cisco personnel responsible for Cisco's patent reform efforts.  Noh suggested that the Troll Tracker write the story, and Yen agreed.  Yen's request for a news story was forwarded to Frenkel by Noh, but Yen was on the forwarding email chain.  Cisco's parsing of the facts—as it does here—demonstrates why Plaintiff must obtain the necessary waiver in order to get the truth from Cisco.

The same holds true for Cisco's assertion that although Noh requested the Troll Tracker write about Ward so that he could share the information with legal reporter and bloggers, and although it was his job at Cisco to disseminate that information, he didn't do it.  *See* Exh. A. (Cisco Privileged 000012).  Plaintiff should not be limited to accepting Cisco's assertions; he should be permitted to discovery to test whether or not they are true.

  C. <u>The Scope Of The Court's Waiver Order Should Include Yen and Beckwith Who Provided Information To Frenkel Upon Which He Relied In Making His False Accusations About Plaintiff</u>

---

[15] Cisco also appears to take the position that Ms. Yen only sent a link to the blog site, not the specific pages.  *See* Response at 8.  But as Frenkel has testified, they are one in the same.  The accused article would have appeared on the front page of the blog, so a link that took the reader to the blog would have displayed the accused October 18th article.  *See* Exh. D.

Plaintiff's Motion discussed a critically important category of information concerning what Frenkel knew at the time he published the accused posts:  communications between Frenkel and Cisco employees Mallun Yen and Marta Beckwith.

Plaintiff has long been concerned about this category of information admittedly relied on by Frenkel, and for good reason.  It has been apparent since Cisco first tried to undo its first interrogatory responses to avoid the Court's waiver Order that it would use Frenkel's communications with Yen or Beckwith to shield discovery from Plaintiff.  Plaintiff's original motion to compel argued that Cisco waived privilege for information known to Frenkel before he published the accused posts because Cisco asserted that Frenkel relied, in part, on advice he received from legal counsel.  The Court agreed with Plaintiff, and on March 30, 2007 entered an Order finding that Cisco waived privilege.

Cisco did not comply with the Court's Order.  Instead it rewrote its interrogatory responses in an attempt to hide that Frenkel obtained information from Cisco's counsel.  The way Cisco attempted to avoid the Court's Order was to claim that Frenkel did not <u>directly</u> rely on information he obtained from counsel, but rather relied on an oral communication with Yen or Beckwith (he can't remember who), who indirectly conveyed to Frenkel the information Cisco learned from counsel.  Plaintiff called foul and brought the issue to the Court's attention.  The Court again agreed with Plaintiff that a waiver was warranted, and its second Order on the waiver issue expressly stated:

> Considering the Court's finding of an at issue waiver with respect to attorney client communications, the Court believes it appropriate to permit Ward to discovery <u>any and all communications</u> shown by the submissions to have been received by him on or before he made the last of the blog postings at issue.

*See* D.E. 89 at ¶ 8 (emphasis added).

At the time Plaintiff brought his Motion for Reconsideration, he was concerned that Cisco would continue to suppress information conveyed to Frenkel by Yen or Beckwith, although Frenkel's reliance on that information was expressly listed in Cisco's amended interrogatory response.  Understanding the importance of what Yen or Beckwith knew and told

(or didn't tell) Frenkel, Plaintiff made a strong argument that omitting Yen and Beckwith from the Court's Order would give Cisco the unfettered ability to withhold from Plaintiff discovery that should be included in the Court's Order.

Plaintiff's fears have come to fruition. Only two days ago, Plaintiff took Mr. Frenkel's deposition. First, Cisco's counsel instructed Frenkel not to answer questions about what <u>he</u> personally learned from Baker Botts before he posted the accused posts. *See* Exh. F (Frenkel rough depo. trans.) at 74:79:2; 91:10-23; 92:4-18. Then, Cisco instructed Frenkel not to answer questions about his conversations with Yen or Beckwith wherein they relied information they obtained from counsel back to Frenkel. *See* Exh. F (Frenkel rough depo. trans.) at 92:24-95:6. Despite two Orders from this Court and an Order from the Eighth Circuit denying Cisco's Writ of Mandamus, Cisco still will not comply with the Court's waiver Order.

Cisco's new position appears to be that this Court's waiver Order is limited to documents and does not cover testimonial evidence. *See* Exh. F (Frenkel rough depo. trans.) at 77:4-8; 79:1-14; 81:3. Cisco's position is demonstrably wrong. The fact that Cisco would seek to claim privilege with respect to oral communications was addressed in the briefing underlying this Court's Order. *See* D.E. 64 at 23. Plaintiff highlighted for the Court that Cisco would attempt to claim privilege during deposition and therefore an Albritton-type Protective Order was unworkable in this case.[16] *See id.* Plaintiff's counsel knew from prior experience that Cisco would produce documents only to assert privilege when a witness was asked about the document. Based on Cisco's prior litigation conduct, Plaintiff sought and obtained a ***subject-matter*** waiver in this case, which he sought for the express purpose of preventing Cisco from blocking deposition discovery. The Court fully understood the issue and entered an Order expressly stating that it covered "communications"—not merely documents. *See* D.E. 89 at ¶ 8.

---

[16] The Response makes serious accusations that Plaintiff's counsel in this case has violated the Albritton Protective Order. See Response at 8, n. 5. Not only is that statement not true, it is a gratuitous attack on opposing counsel that has nothing to do with the issues presented to this Court. Certainly, Cisco's seasoned counsel, Mr. Babcock, understands that these types of attacks are not proper.

Cisco's attempt to make a distinction between documents and testimony cannot be justified on this record.

Moreover, Cisco's argument fundamentally misunderstands that when there has been a waiver of privilege the waiver applies to "subject matter."  It is not a document by document waiver, as Cisco continues to assert, although it must understand by now that its position has no merit.  The Response fails to address the cases cited by Plaintiff demonstrating that a subject-matter waiver is just that:  a waiver as to the *subject matter*.  Here, the subject matter in the Court's Order is anything Frenkel knew before he posted the last of the accused posts.  The information known to Frenkel includes documents and oral communications.  Cisco cannot seriously contend otherwise.

Cisco's continued efforts to stymie discovery that the Court has now twice ordered Cisco to provide must come to an end.  The Court should include Mallun Yen and Marta Beckwith within the scope of the waiver so that Plaintiff can finally obtain the discovery he has been seeking since January of this year.[17]

D.      The Court's Waiver Order Is Already Sufficiently Narrow

The Response argues that the Court's waiver should be narrowed to avoid disclosing anything other than communications concerning whether the ESN v. Cisco case was timely filed. *See* Response at 10.  This Court has already narrowed the scope of the waiver to the dates of the accused articles, and has therefore implicitly limited the scope of the waiver to the events at issue.  That narrowed definition has also been used by Judge Setser in deciding the parties' discovery motion.  It is a workable solution.  Plaintiff cannot accept the definition offered in the Response because it would exclude any communications showing the posts accused Plaintiff of criminal or unethical conduct.

III.    Conclusion

For all of the foregoing reasons, Plaintiff respectfully requests that his motion be granted.

---

[17] Plaintiff will not respond to Cisco's complaint about a "barrage of motions" on the same privilege issues other than to say that if Cisco will comply with the Court's Orders additionally briefing will be unnecessary. *See* Response at 10.

Respectfully Submitted,

Nicholas H. Patton
AR Bar No. 63035
Courtney Towle
Patton, Tidwell & Schroeder, LLP
4605 Texas Boulevard
Texarkana, Texas 75503
903.792.7080 / 903.792.8233 (Fax)
Email: nickpatton@texarkanalaw.com
Email: ctowle@texarkanalaw.com

Patricia L. Peden
LAW OFFICE OF PATRICIA L. PEDEN
1316 67th Street
Suite 6
Emeryville, CA 94608
Telephone: 510-268-8033
Email: ppeden@pedenlawfirm.com

James A. Holmes
Texas Bar No. 00784290
THE LAW OFFICE OF JAMES HOLMES, P.C.
635 South Main, Suite 203
Henderson, Texas 75654
903.657.2800 / 903.657.2855 (Fax)

ATTORNEYS FOR PLAINTIFF

## <u>CERTIFICATE OF SERVICE</u>

This is to certify that on this 20th day of November, 2009, a true and correct copy of the foregoing document was served electronically via the Court's CM/ECF system upon:

Richard E. Griffin                          Attorneys for Defendant Cisco Systems, Inc.
Charles Babcock
Crystal Parker
Kurt Schwarz
JACKSON WALKER, LLP
1401 McKinney
Suite 1900
Houston, Texas 77010


_____
Nicholas H. Patton