Frenkel Rough ASCII.txt


        ROUGH DRAFT          ROUGH DRAFT            ROUGH DRAFT


  1                    IMPORTANT INFORMATION!!

  2

  3        This realtime transcript is provided for your

  4     immediate review of the proceedings and is not

  5     provided for, nor meant to be used or cited in any

  6     type of court proceedings.

  7

  8        MR. MCWILLIAMS:  This is a housekeeping

  9     matter so I avoid interrupting you during your

 10     examination.  I notice that some privileged documents

 11     which have been produced may be used in this

 12     deposition and just for the purpose of the record and

 13     on behalf of Rick Frenkel, we are not waiving any of

 14     the privileges that may be attached to those

 15     documents.  And would you agree that I don't have to

 16     restate that each time a document is used.

 17        MR. HOLMES:  Yes.

 18        MR. MCWILLIAMS:  Thank you.

 19        MR. GRIFFIN: And that's also true for Cisco,

 20     they want to preserve the privilege that has -- for

 21     these documents that has previously been stated on the

 22     record and I think presented to the court and the

 23     court has overruled for the time being those

 24     objections but we want to renew them and have a

 25     continuing objection.


                         Page 1


Dockets.Justia.com

Frenkel Rough ASCII.txt
ESQUIRE SOLUTIONS - UNCERTIFIED AND UNEDITED   1


ROUGH DRAFT          ROUGH DRAFT          ROUGH DRAFT


1           MR. HOLMES:  Very good, gentlemen.
2                       EXAMINATION
3     BY MR. HOLMES:
4           Q    Mr. Frenkel, would you give me your full
5     name, please?
6           A    It's Richard Gregory Frenkel.
7           Q    And you go by Rick; is that right?
8           A    Yes.
9           Q    Is it okay if I call you Richard today?
10          A    Yes.
11          Q    We've worked around each other, but I'll
12    introduce myself.  I'm James Holmes from east Texas.
13    I represent Johnny Ward in this case.
14               Do you understand who I am and who I
15    represent?
16          A    You represent Johnny Ward, yes.
17          Q    You and I have actually worked around each
18    other a bit in this matter but we've never actually
19    spoken to each other I don't think, have we?
20          A    This matter, no; the Albritton matter, yes.
21          Q    But I've never had the opportunity to sit
22    around and ask you questions on my mind about what
23    happened or to ask you to explain things to me so that
24    I can understand it?
25          A    You personally.

Frenkel Rough ASCII.txt

23    aren't you?

24        A   I don't remember writing this but it looks

25    like that is speculation.


          ESQUIRE SOLUTIONS - UNCERTIFIED AND UNEDITED   74


          ROUGH DRAFT          ROUGH DRAFT          ROUGH DRAFT


1         Q   Okay.  So do you think you had been thinking

2    during the day why is the complaint online

3    ***fix record***?

4         A   I might have been thinking that.

5         Q   Can you tell me anything you did to try and

6    find out why the complaint wasn't available online?

7         A   No.

8         Q   Didn't call the clerk?

9         A   No.

10        Q   Didn't call Eric or Johnny?

11        A   No.

12        Q   You didn't call any of Cisco's Texas lawyers,

13    did you, and ask them?

14        A   Yes, I did.

15        Q   On the 15th?

16        A   Yes.

17        Q   Who did you call?

18        A   Baker & Botts.

19        Q   Who did you talk to there?

20        A   I don't remember exactly who I talked to on

21    the 15th but I do recall talking to somebody.

Page 76

```
                    Frenkel Rough ASCII.txt
22        Q   Nor did you call to find out why the
23   complaint wasn't showing up online ***fix record***?
24             MR. GRIFFIN: Objection.  That's
25   attorney-client privileged communication.


            ESQUIRE SOLUTIONS - UNCERTIFIED AND UNEDITED  75



          ROUGH DRAFT        ROUGH DRAFT       ROUGH DRAFT


 1             MR. HOLMES:  I think we're beyond that aren't
 2   we.
 3             MR. GRIFFIN: Hu.
 4             MR. HOLMES:  Don't we have a waiver on all
 5   the communication that he had when he posted up to the
 6   18th.
 7             MS. PARKER:  There has been no waiver -- no
 8   ruling on waiver of testimony.
 9             MS. PEDEN:  A privilege waiver is a waiver.
10   It documents testimony.  It's a subject matterance
11   waiver.  I think judge collarance has been very clear
12   about that ** [spelling].
13             MR. GRIFFIN: Well, I haven't made all the
14   hearings and all the --
15             MS. PARKER:  I have.
16             MR. GRIFFIN: Well, it clearly normally
17   privileged.
18             MR. HOLMES:  Clearly normally would be
19   privileged.
20             MS. PARKER:  Can you repeat your question.
21             MR. HOLMES:  Well --
                         Page 77
```

Frenkel Rough ASCII.txt

22          MR. GRIFFIN: You all, let's try to find out
23     what's right and do the right thing.
24          MS. PARKER:  Can you repeat your question.
25          MR. HOLMES:  Yeah.  I like that resolution.


          ESQUIRE SOLUTIONS - UNCERTIFIED AND UNEDITED  76



     ROUGH DRAFT          ROUGH DRAFT          ROUGH DRAFT


1      BY MR. HOLMES:
2          Q    First question is you said you called
3      somebody at Baker & Botts, right?
4          A    Yes.
5          Q    Second question was, are you calling to find
6      out why the complaint is not yet online?
7               MR. GRIFFIN: I object to that as attorney
8      client.  That's his thought process, his -- as the
9      attorney why and what he called for and what
10     information he was after.  Now, whether that's waived
11     or not we'll have to decide.
12              MS. PARKER:  I think the ruling was that what
13     Rick can do at the time of the posting Judge Hendren
14     found what Rick can do at the time of the posting was
15     relevant and he ruled that waiver with respect to
16     documents -- there had been a waiver with respect to
17     documents because that was what Rick knew before the
18     posting was at issue.  So his conversation -- you're
19     asking him why he called Baker & Botts?
20              MR. HOLMES:  That's the only question I've
                          Page 78

Frenkel Rough ASCII.txt
21    got to so far.

22         MS. PARKER:  I think that's a strategy issue

23    and that has nothing to do with what he knew at the

24    time he posted the documents so I don't think it would

25    be under any waiver order.


          ESQUIRE SOLUTIONS - UNCERTIFIED AND UNEDITED  77



          ROUGH DRAFT      ROUGH DRAFT       ROUGH DRAFT


 1         MR. HOLMES:  Well, the next question is going

 2    to be what did they tell you so we're going to be

 3    right back where we started.

 4         MS. PEDEN:  If I can just go on the record

 5    and say my understanding of Judge Hendren's ruling is

 6    we brief these issues about what would be work

 7    product, what would be attorney-client privilege and

 8    Judge Hendren said that there was a subject matter

 9    waiver as to privilege and at least at this point

10    anything that Mr. Frenkel received, sent or was copied

11    on through October 18th is subject to the waiver.  I

12    don't think his waiver was limited to documents.

13         MS. PARKER:  Can we go off the record.  I

14    need to talk with Richard for a minute.

15         MR. HOLMES:  Yeah, let's take a break.

16         THE VIDEOGRAPHER:  We are off the record at

17    4:22 p.m.

18         (Recess.)

19         THE VIDEOGRAPHER:  We are back on the record

20    at 4:40 p.m.
                        Page 79

Frenkel Rough ASCII.txt
21          MR. HOLMES:  Mr. Frenkel, before we get back
22     to my questions and your answers the lawyers have had
23     a discussion off the record.  The question on the
24     record I believe from me to you why did you call Baker
25     & Botts on the 15th and have that discussion and the


          ESQUIRE SOLUTIONS - UNCERTIFIED AND UNEDITED  78


          ROUGH DRAFT          ROUGH DRAFT          ROUGH DRAFT

 1     next questions were going to be about what they told
 2     you and Mr. Griffin has raised an objection and I'll
 3     let you put your position on the record.
 4          MR. GRIFFIN: My objection is that's
 5     attorney-client privilege and work-product privilege
 6     and it would be -- it goes to his employer and client
 7     at the time, Cisco and they do not wish to wave that
 8     privilege so we would object to him answering the
 9     question.
10          MS. PEDEN:  And plaintiff's position is that
11     the issue's already been briefed multiple times to
12     Judge Hendren and Judge Hendren has found that there's
13     been a subject matter waiver and the subject matter
14     waiver is anything Mr. Frenkel wrote received or was
15     copied on at least through the dates of October 18,
16     2007, and 1 of the issues that was briefed to Judge
17     Hendren specifically was the need for testimony which
18     was one of the reasons we asked for subject matter
19     waiver so I think our position is we're going to leave
                              Page 80

Frenkel Rough ASCII.txt

20  Mr. Frenkel's depo open at the end of the day and

21  we'll raise the issue with Judge Hendren and reserve

22  our rights for fees and cost if necessary.

23       MR. MCWILLIAMS:  Let me add on behalf of

24  Mr. Frenkel although this is Cisco's privilege he does

25  not intend in any form or fashion to waive that


           ESQUIRE SOLUTIONS - UNCERTIFIED AND UNEDITED   79



           ROUGH DRAFT        ROUGH DRAFT        ROUGH DRAFT


1   privilege by any of that testimony and I'm instructing

2   him to follow the instructions of Cisco's counsel.

3        MR. HOLMES:  Okay.  Very good.

4   BY MR. HOLMES:

5        Q   All right.  Mr. Frenkel, let's see if we can

6   get back to where we were.  We were walking through

7   the list of things that you relied upon in drafting

8   your original October 18th article and we had gotten

9   through the two anonymous e-mails and you had

10  explained to me your conversations with Ms. Yen or

11  Ms. Beckwith.  According to Exhibit 5 you also

12  reviewed the original complaint bearing the 10/16 it

13  says stamp.  For clarity that's the banner at the top

14  that you're referencing.  I'm on page 50.  Am I right

15  about that?

16       A   In the shuffling of the papers I didn't hear

17  your question.

18       Q   Let me do it again.  We covered the first

19  three things on page 50.  Number four is you say you

                        Page 81

Frenkel Rough ASCII.txt

14     Q   So that's what you heard?

15     A   Right, but now I don't remember if it's -- I

16  heard that before the 18th or after.

17     Q   Was there only one conversation before the

18  18th postbetween you and either Ms. Beckwith or

19  Ms. Yen about this?

20     A   I don't know if there was only one.

21     Q   But your best recollection is that they for

22  sure told you they'd been talking to some people and

23  Eric's office had called the clerk?

24     A   Yes.

25     Q   And you're not sure whether they told you

ESQUIRE SOLUTIONS - UNCERTIFIED AND UNEDITED   91

ROUGH DRAFT     ROUGH DRAFT     ROUGH DRAFT

1  anything about Mr. Meek in that information?

2     A   My recollection as to when I learned that, I

3  just couldn't even tell you right now.

4     Q   Let's do this part again.  Anything else that

5  you can remember about that conversation with either

6  Yen or Beckwith?

7     A   No.

8     Q   Nothing else they told you?

9     A   I can't remember anything else right now.

10     Q   There are a couple things that are not on

11  this list of things you relied on.  Let me run through

12  them with you real quickly.  You did mention direct

13  advice of Baker & Botts.  Did you receive any direct

Page 93

Frenkel Rough ASCII.txt

14      advise of Baker & Botts in preparing the 18th posting?
15              MR. GRIFFIN: Objection.
16              THE WITNESS:  Legally --
17              MR. GRIFFIN: Objection.  Attorney-client
18      privilege.
19              MR. HOLMES:  Back where we were earlier.
20              MR. GRIFFIN: Yeah.
21              THE WITNESS:  I guess I can't answer that.
22              MR. MCWILLIAMS:  I'm instructing you not to
23      answer it.
24      BY MR. HOLMES:
25          Q   You didn't review the NEF?


            ESQUIRE SOLUTIONS - UNCERTIFIED AND UNEDITED  92



            ROUGH DRAFT        ROUGH DRAFT        ROUGH DRAFT


1           A   I do not think I had seen the NEF by the time
2       I made the October 18th posting, the original
3       October 18th posting, right.
4           Q   You weren't relying on any information
5       directly from the clerks because you didn't call them?
6           A   I did not call the clerks directly, no.
7           Q   The only information you have from the clerk
8       is what you described to me which you received through
9       /AOERT Ms. Yen or Ms. Beckwith?
10          A   That's correct.
11          Q   You weren't relying on any information you
12      received from any of Cisco's Texas local counsel
                            Page 94

Frenkel Rough ASCII.txt
13    outside of the Baker & Botts information?
14            MR. GRIFFIN: Objection.  That's
15    attorney-client privilege also.
16            MR. McWILLIAMS:  Directing the witness not to
17    answer based upon that information.
18            MR. HOLMES:  Okay, guys.
19    BY MR. HOLMES:
20        Q   You weren't relying on any information you
21    got from either Eric or Johnny, you didn't talk to
22    them?
23        A   That's right.
24        Q   Without revealing any contents of any
25    communications, based on all the information you had


                ESQUIRE SOLUTIONS - UNCERTIFIED AND UNEDITED   93



            ROUGH DRAFT        ROUGH DRAFT        ROUGH DRAFT


 1    received when you're about to prepare your
 2    October 18th post, did you make a phone call to any
 3    Texas lawyers to confirm any of these facts or --
 4        A   I did not personally make a phone call, no.
 5    Wait.  Wait a second.  Repeat your question.
 6        Q   You're preparing your post of the 18th --
 7        A   When I was preparing the post of the 18th
 8    immediately before preparing that postI did not make
 9    any phone calls to any Texas lawyers, that's correct.
10        Q   What time are you laying out when you say
11    immediately before?
12        A   On the 18th itself after learning about this
                Page 95

Frenkel Rough ASCII.txt

12    Botts?

13        A    They may have but I don't remember.  I

14    remember that they were -- I don't remember who they

15    told me they called.

16        Q    Do you know if anybody at Cisco contacted any

17    of Cisco's lawyers in the marshal area to ask about

18    this filing date situation?

19            MR. GRIFFIN: I would object.  Again, that's

20    attorney-client privilege.

21            MR. HOLMES:  I'm not asking what anybody said

22    I'm just asking --

23            MR. GRIFFIN: You asked what they called him

24    for and that is work product and attorney client.  It

25    would indicate what some of the response, some of the


                 ESQUIRE SOLUTIONS - UNCERTIFIED AND UNEDITED  95



           ROUGH DRAFT        ROUGH DRAFT         ROUGH DRAFT


1     information would have been.

2             MR. HOLMES:  I don't think so but if you guys

3     are going to draw that broad a line around this, I

4     understand but I'm just telling you we're going to be

5     right back out here to finish this because we're not

6     going to get very much further.

7             MR. GRIFFIN: Well, if these are Cisco lawyers

8     that he was calling to get advice for Cisco about this

9     lawsuit or any other lawsuit, any other legal advice

10    we object as attorney-client privilege and work

11    product.
                         Page 97

Frenkel Rough ASCII.txt

12          MR. HOLMES:  Are you going to tell him not to

13     answer those questions.

14          MR. MCWILLIAMS:  Based upon Cisco's objection

15     as to privilege, I'm instructing him not to answer.

16          MR. HOLMES:  Okay.

17     BY MR. HOLMES:

18          Q    Did either Ms. Yen or Ms. Beckwith tell you

19     that there had been a conspiracy between Eric and

20     Johnny and the clerk of the court?

21          A    No.

22          Q    Did any of them tell you that the clerk was

23     conspireing with them to manufacture subject matter

24     jurisdiction?

25          A    I don't remember them using those exact


          ESQUIRE SOLUTIONS - UNCERTIFIED AND UNEDITED   96



          ROUGH DRAFT          ROUGH DRAFT          ROUGH DRAFT


1     words.  Those were my words if those were my words.

2     It's wittingly or unwittingly conspireing with a

3     non-practicing entity.

4          Q    Nobody told you that, though?

5          A    No that was my opinion.

6          Q    You drew that opinion based on the facts that

7     you saw?

8          A    That was my opinion.

9          Q    But no one reported that to you as a fact,

10     did they?

Page 98