IN THE UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF ARKANSAS
TEXARKANA DIVISION

| | | |
|---|---|---|
| JOHN WARD, JR. | § | |
| | § | |
|   Plaintiff | § | No.  4:08cv4022 JLH |
| | § | |
| v. | § | JURY TRIAL DEMANDED |
| | § | |
| CISCO SYSTEMS, INC. | § | |
| | § | |
|   Defendant | § | |

**PLAINTIFF'S RESPONSE TO CISCO'S MOTION FOR DISTRICT JUDGE TO
RECONSIDER MAGISTRATE JUDGE'S ORDER DENYING CISCO'S MOTION TO
COMPEL PRODUCTION OF DOCUMENTS**

1

Dockets.Justia.com

## <u>TABLE OF CONTENTS</u>

Page(s)

I.    Introduction ................................................................................................1

II.   Legal Argument and Authorities ................................................................3

    A.    Cisco's Motions for Reconsideration Should Be Resolved
        By The District Court Under the Clearly Erroneous
        Standard of Review ................................................................................3

    B.    The Magistrate Judge Was Not Clearly Erroneous In
        Denying Cisco's Motion to Discover Plaintiff's
        Private Financial Records ......................................................................5

        1.   Because Plaintiff Is Not Seeking Lost Damages, Cisco
            Is Not Entitled To Plaintiff's Private Tax Returns And
            Other Financial Documents ..............................................................9

            a.   There Is No Merit To Cisco's Allegations That Plaintiff's
                Counsel Misrepresented That Plaintiff Is Not Seeking
                To Recover Damages For Harm To His "Professional"
                Reputation As Plaintiff Does Not See Such Damages.................9

            b.   There Is No Merit To Cisco's Allegations That Plaintiff's
                 Counsel Misrepresented That Plaintiff Would Not Offer
                 A Damages Expert To Testify About His Alleged Damages
                 As Plaintiff Does Not Have A Damages Expert...........................16

            c.   Cisco's Newly Offered Argument And Authorities Are
                Improper In A Motion For Reconsideration ................................18

    C.    The Magistate Judge Was Not Clearly Erroneous In Denying
        Cisco's Request That Plaintiff Sign A Full Medical Release ....................20

III.  Conclusion ................................................................................................21

## <u>TABLE OF AUTHORITIES</u>

**CASES**                                                                 **Page(s)**

*Burcham v. Murphy,*
    331 Ark. 364 (1998)................................................................6

*Ellis v. Price,*
    337 Ark. 542 (1999)................................................................7

*Erick Bowman Remedy Co., Inc. v. Jensen Salsbery Labs., Inc.,*
    17 F.2d 255 (8th Cir. 1926) ................................................10, 11

*Ferguson v. United States,*
    484 F.3d 1068 (8th Cir. 2008) ................................................4

*Gertz v. Robert Welsh, Inc.,*
    418 U.S. 323 (1974)................................................6, 8, 10, 11

*Hagerman v. Yukon Energy Corp.,*
    839 F.2d 407 (8th Cir. 1988) ................................................18

*Harrington v. Wilber,*
    384 F. Supp. 2d 1321 (S.D. Iowa 2005) ................................................18

*Hogue v. Ameron, Inc.*
    286 Ark. 481 (1985)................................................................7

*Hormel Foods Corp. v. Cereol, S.A.,*
2003 U.S. Dist. LEXIS 10389 (D. Minn. June 16, 2003)................................4

*Little Rock Newspapers, Inc. v. Fitzhugh,*
    330 Ark. 561 (1997)................................................7, 10, 11

*Lundell Mfg Co. Inc. v. American Broadcasting Co, Inc.,*
    98 F.3d 351 (8th Cir. 1996) ................................................7, 8, 17

*Napolitano v. Omaha Airport Auth.,*
    2009 U.S. Dist. LEXIS 50586 (D. Neb. June 15, 2009)................................4

*Northport Health Servs. v. Owens,*
    356 Ark. 630 (2004)................................................7, 8

*Parkway Co. v. Woodruff,*
    901 S.W.2d 434 (Tex. 1995)................................................18

*Paterson-Leitch Co. v. Massachusetts Municipal Wholesale Elec. Co.*,
840 F.2d 985 (1st Cir. Mass. 1988) ............................................................................18, 19

*People's Bank & Trust Co.*,
786 F. Supp. 791 (W.D. Ark. 1992)......................................................................................7

*Saenz v. Fidelity & Guaranty Ins. Underwriters*,
925 S.W.2d 607 (Tex. 1996) ...............................................................................................18

*Smith v. BMI, Inc.*,
957 F.2d 462 (7th Cir. 1992) ................................................................................................4

*Suggs v. Stanley*,
324 F.3d 672 (8th Cir. 2003) ..............................................................................................7

*Universe Life Ins. Co. v. Giles*,
950 S.W.2d 48 (Tex. 1977)..................................................................................................18

*United Ins. Co. of America v. Murphy*,
331 Ark. 364 (1998)..............................................................................................................6

*Wal-Mart Stores, Inc. v. Lee*,
348 Ark. 707 (2002)..........................................................................................................7, 8

**OTHER AUTHORITIES:**

28 U.S.C. § 636(b)(1)(A) ................................................................................................3, 4

Federal Rule of Civil Procedure 72(a) .................................................................................3

Local Rule 72.1 VII (B) .......................................................................................................3

**OTHER:**

C. Nance, The Uniform Correction or Clarification of Defamation Act:  How Not to Reform
Arkansas Defamation Law, 51 Ark. L. Rev. 721, 729 (1998).........................................5

I.      **Introduction**

Its latest motion for reconsideration follows Cisco's now familiar course of seeking to undo this Court's Orders.  Cisco's campaign to override unfavorable orders has taken different guises — "supplementing the record," requesting "clarification," seeking reconsideration, or appealing the Court's discovery orders to the Eighth Circuit on a writ of mandamus.  Apparently every order that issues from this Court is one Cisco believes merits reconsideration. Now, though Cisco partially prevailed on the discovery motion underlying its present challenge, the resulting Order is no different.

In an attempt to justify Cisco's latest request for reconsideration, Cisco manufactures an argument that Plaintiff's counsel has misled the Magistrate Judge with respect to Plaintiff's claimed damages.  Cisco's meritless argument rests on the false premise there is a separate category (or sub-category) of damages entitled "harm to professional reputation" that can be equated to lost profit damages and that Plaintiff has alleged those special damages in this case. As Plaintiff's counsel made clear to the Magistrate Judge, Plaintiff is not claiming special damages for lost profits.  Instead, Plaintiff is seeking to recover general damages for harm to his reputation, mental anguish, and an award of punitive damages.[1]  Cisco's misguided attempt to equate Plaintiff's damages as lost revenue damages by recasting them as damages for "harm to professional reputation" cannot withstand scrutiny.

Cisco's argument is designed to get around the case law holding that Plaintiff's tax returns and other financial documents are not discoverable absent a compelling need for disclosure.[2]  Cisco's creative "professional reputation" argument is designed to concoct a compelling need for Plaintiff's financial documents, but Cisco's efforts must fail because Plaintiff has repeatedly stated he is not seeking lost profit damages in this case.  As discussed

---

[1] In the *Albritton v. Cisco* case Cisco moved to compel the same financial records from Albritton that it sought without success from Ward.  After the Texas Court denied Cisco's motion, it sought reconsideration from the District Court *twice*, losing both times.
[2] The "compelling need" standard and authority demonstrating why Cisco's request for Plaintiff's tax returns and financial records must be denied was extensively briefed in filings before Magistrate Judge Setser.  *See* D.E. No. 113 at 14-26; and No. 130 at 11-22.

below, Plaintiff' damages model mirrors Arkansas law, which permits a defamation Plaintiff to recover general damages for harm to his reputation without showing out-of-pocket expenses. Magistrate Judge Setser understood the damages theories at issue in this case, correctly decided the discovery motion based on those theories, and nothing in Cisco's motion meets the exceedingly high burden of proving the Magistrate Judge's Order was clearly erroneous or contrary to law.

Moreover, Cisco's limited argument fails to address the big picture issues before Magistrate Judge Setser.  Not only are Plaintiff's claimed damages insufficient to require production of Plaintiff's tax returns and private financial documents (which also implicate privacy concerns of persons not connected to this case) because Plaintiff has not put his lost income at issue, Cisco's motion to compel was doomed for other reasons.  Cisco cannot avoid the egregious over breath of its discovery requests, which asked Plaintiff to produce his law firm's balance sheets, income statements and statements of cash flows for every year since 2002, his firm's federal tax returns for every year since 2002—five years before the defamatory statements were even published.  Cisco's claimed need for financial information is also undermined by the fact that Cisco has already obtained the discovery it needs from Plaintiff. During his deposition, Plaintiff testified that he was not claiming damages to his business and that he made more money the year after the defamatory articles were published than he did the year before.  Plaintiff's testimony is more than sufficient to ensure Cisco that Plaintiff is not seeking to recover lost profit damages in this case.

Cisco's motion also ignores the herculean effort undertaken by the Magistrate Judge to resolve the unframed issues presented in Cisco's motion.[3]  Magistrate Judge Setser addressed each of the issues raised in Cisco's motion, considered the privacy interests implicated by Cisco's requests, considered the legitimate privacy interests of third parties whose private

---

[3] During the November 4, 2009 hearing, Judge Setser began by telling the parties that the briefing surrounding Cisco's Motion to Compel was a mess.  Plaintiff believes that the briefing was unwieldy and unfocused because Cisco did not meet and confer before bringing its motion to compel, thus the issues were not sufficiently narrowed for the Court's review.  Interestingly, Judge Setser's comments regarding Cisco's motion to compel is omitted from the transcript Cisco provided as Exh. A. in support of its motion for reconsideration.

financial information is contained in the documents Cisco seeks, weighed those privacy concerns against Cisco's overly broad requests, the deposition testimony available to Cisco undermining any claim of compelling need, and the minimal relevance of the financial documents in light of the fact that Plaintiff was not seeking to recover lost profit damages, and then properly denied Cisco's motion.

The Magistrate Judge's Order was well reasoned, supported by the law, and is not clearly erroneous or contrary to law as is required for reversal.  Judge Setser clearly understood the damages issues in this case as evident from her Order, which denied Cisco production of Plaintiff's financial documents, which could only be relevant to lost-profit damages, but granted Cisco discovery related to the reputational damages at issue in this case.  *See* D.E. 138 at 2.  The Magistrate Judge's Order should be affirmed.

## II.      Legal Argument And Authorities

A.      Cisco's Motions for Reconsideration Should Be Resolved By The District Court Under  The Clearly Erroneous Standard of Review

Federal Rule of Civil Procedure 72(a), Local Rule 72.1 VII (B), and 28 U.S.C. § 636(b)(1)(A) provide the proper framework for appealing a Magistrate Judge's Order resolving a non-dispositive motion.  Pursuant to those Rules, the Magistrate Judge's decision is "final and binding and is subject only to a right of appeal to the District Judge to whom the case has been assigned."  *See* Local Rule 72.1 VII (B).  Magistrate Judge Setser's Order was final on November 5, 2009.  On November 16, 2009, Cisco invoked this Court's review authority under Federal Rule of Civil Procedure 72(a).  Cisco's appeal to this Court means that it "shall" resolve Cisco's Motion for Reconsideration.  *See* Federal Rule Civ. P. 72(a).  Thus, this Court should resolve Cisco's pending motion for reconsideration, bringing finality to the issues.

Considerations of judicial efficiency also dictate that this Court resolve Cisco's motion.[4] This Court should not encourage Cisco to file dual motions for reconsideration in the hope that at

---

[4] Plaintiff does not object to Magistrate Judge Setser's review of her Order as he is confident that she understands the damages issues involved and properly resolved Cisco's motion to compel.  However, Cisco should not be

least one judge will give Cisco the discovery it wants.  The same day Cisco filed the present motion for reconsideration before this Court, it also filed a motion for reconsideration before Judge Setser requesting reconsideration of portions of her Order. *See* D.E. 151.  Now, the same Order is simultaneously before two judges for review.  Cisco should either file a motion for reconsideration before the Magistrate Judge, wait for it to be resolved, and then seek review from this Court, or file its motion directly with this Court.[5]

There is no legitimate basis for overruling Magistrate Judge Setser's Order.  A district court may reconsider a magistrate judge's ruling on non-dispositive pretrial matters upon a showing that that the ruling is "clearly erroneous or contrary to law." *Ferguson v. United States*, 484 F.3d 1068, 1077 (8th Cir. 2008) (citing 28 U.S.C. § 636(b)(1)(A)).  Clearly erroneous is a high standard to meet; Cisco bears the burden of convincing this Court that the Magistrate Judge made a mistake.  *Napolitano v. Omaha Airport Auth.,* 2009 U.S. Dist. LEXIS 50586 (D. Neb. June 15, 2009), citing *Smith v. BMI, Inc*., 957 F.2d 462, 463 (7th Cir. 1992).  The law requires a District Court to grant the Magistrate Judge's Order substantial deference, and the Court reviews the Magistrate Judge's Order not to determine whether it would reach a different conclusion but rather only to correct clear mistakes.  *Hormel Foods Corp. v. Cereol, S.A*., 2003 U.S. Dist. LEXIS 10389 (D. Minn. June 16, 2003).

There is no legitimate argument that Magistrate Judge Setser's Order is clearly erroneous or contrary to law.  Judge Setser spent well over a day preparing for the hearing on Cisco's motion, sifting through Cisco's unfocused motion to compel—filed without meet and confer— reading the lengthy briefing regarding the disputed issues, and was well prepared to address those issues.  It was clear that Judge Setser understood the two types of damages at issue in Cisco's motion, as demonstrated by her questioning during the hearing.  Judge Setser first took

---

permitted to waste judicial resources by asking both the District Court and the Magistrate Judge to simultaneously review the same Order.

[5] To be sure, asking this Court to duplicate its efforts will not dissuade Cisco from seeking review of Magistrate Judge Setser's Order even if she ruled in Cisco's favor.  That fact is made clear by Cisco's decision not to brief to the Magistrate Judge its request for reconsideration of her Order denying Cisco's request for a medical waiver.  Thus, even in the unlikely event that Magistrate Judge Setser reconsidered her ruling concerning Plaintiff's financial records, Cisco will still seek reconsideration from this Court concerning the medical waiver its seeks from Plaintiff.

up Cisco's requests for tax returns and financial documents and determined that Cisco's motion to compel should be denied because Plaintiff is not seeking lost profit damages.  *See* D.E. 138 (Magistrate Judge Sester's Order) at 2.  Then, Judge Setser considered the discovery sought by Cisco with respect to Plaintiff's claimed reputational damages.  There, she found that Plaintiff was seeking to recover damages for harm to his reputation and thus granted Cisco's motion to compel with respect to the documents relevant to Plaintiff's reputational damages.  *See* D.E. 138 at 2.  Magistrate Judge's Setser's Order demonstrates her clear understanding of the facts and the law.  Her Order is on solid footing, it's not clearly erroneous, and should not be overturned.

> B.     The Magistrate Judge Was Not Clearly Erroneous In Denying Cisco's Motion To Discover Plaintiff's Private Financial Records

Cisco's reconsideration argument mischaracterizes the law of damages in defamation cases.  To understand where Cisco goes wrong, it is first necessary to set forth the applicable law.

The common law of defamation divided damages recoverable for defamation into two types: (1) "general damages" which include injury to the plaintiff's general reputation and standing in the community, humiliation and emotional distress caused by the defamation, and any physical injury associated with the defamation; and (2) "special damages" which included specific economic loss such as lost income resulting from the defamatory statements.  *See* C. Nance, The Uniform Correction or Clarification of Defamation Act:  How Not to Reform Arkansas Defamation Law, 51 Ark. L. Rev. 721, 729 (1998).  In Arkansas, special damages were recoverable for such pecuniary losses as harm to professional reputation, loss of business, lost employment or loss of credit.  *See id*.  On the other hand, general damages compensated Plaintiff for all damages except pecuniary loss, including harm to reputation and emotional harm.  *See id*.  Special damages required a showing of actual out-of-pocket losses and a calculation of those losses, while general damages did not.

The common law also created two categories of general damages; "actual" and "presumed."  *See id*.  Under common law, when a defamatory statement involved a charge of a

crime, loathsome disease, unchastity of a woman, or was injurious to the plaintiff's trade or business, the statement was considered defamatory "per se."  *See Burcham v. Murphy*, 331 Ark. 364, 368 (1998).  In defamation per se cases, damages were presumed and awarded without any evidence of injury to plaintiff's reputation because injury was presumed from the nature of the statements.  *See id.*

The Arkansas common law legal framework changed after the Supreme Court's holding in *Gertz v. Robert Welsh, Inc.,* 418 U.S. 323, 349-50 (1974).  In *Gertz*, the Court heard the case of a lawyer defamed in connection with his representation of a client.  Mr. Gertz filed suit against the publisher of the false statements, claiming damage to his *reputation as a lawyer and a citizen*.  The *Gertz* Court recognized the strong and legitimate state interest in compensating private individuals for "actual injury."  The Court declined to define "actual injury," finding that "trial courts have wide experience in framing appropriate jury instructions in tort actions."  The *Gertz* Court held as follows:

> Suffice it to say that actual injury is not limited to out-of-pocket loss. Indeed, the more customary types of actual harm inflicted by defamatory falsehood include impairment of reputation and standing in the community, personal humiliation, and mental anguish and suffering. Of course, juries must be limited by appropriate instructions, and all awards must be supported by competent evidence concerning the injury, <u>although there need be no evidence which assigns an actual dollar value to the injury</u>.

*Gertz*, 418 U.S. at 350 (emphasis added).

Thus, the *Gertz* Court questioned the wisdom of state laws permitting recovery of damages based on a presumption of injury in defamation per se cases, although the Court did not abolish defamation *per se* and some states still recognize a separate category for per se falsehoods.  On the issue of non-presumed damages or "actual damages," the Court deferred to state courts to decide how to define general damages but specifically noted that no showing of out-of-pocket losses was required.

After *Gertz*, the Arkansas Supreme Court abolished the doctrine of presumed damages in defamation per se cases, finding that in all cases a plaintiff in a defamation case must prove reputational injury before recovering damages.  *See United Ins. Co. of Am. v. Murphy*, 331 Ark.

6

364 (1998).  Under modern Arkansas defamation law, a plaintiff must show actual injury to his reputation, although "the showing of harm is slight."  *See Ellis v. Price,* 337 Ark. 542 (1999).  To prove injury, a plaintiff must prove that the defamatory statements have been communicated to others and that the statements have detrimentally affected the plaintiff's relations with persons who read the defamatory comments.  *See id.*  Testimony from witnesses that they knew of other people who changed their view of the Plaintiff for the worse after the false statements were published is evidence of reputational injury.  *See Wal-Mart Stores, Inc. v. Lee*, 348 Ark. 707, 738 (2002).  Evidence that people believed Plaintiff to be guilty of the conduct alleged in the publication or that people thought less of Plaintiff as a result of the publication is also proof of injury to reputation.  *See Suggs v. Stanley,* 324 F.3d 672, 680 (8th Cir. 2003); *Little Rock Newspapers, Inc. v. Fitzhugh*, 330 Ark. 561, 574 (1997).  Plaintiff's testimony alone may be sufficient to establish the injury to his reputational.  *Ellis,* 337 Ark. at 542; *Hogue v. Ameron, Inc*. 286 Ark. 481, 483 (1985).  Proof of actual out-of-pocket expenses is not required to demonstrate that Plaintiff's reputation has been injured.  *See Northport Health Servs. v. Owens,* 356 Ark. 630, 642 (2004).

Once a defamation plaintiff demonstrates injury to his reputation, he may recover damages.  A defamation Plaintiff can recover several categories of damages including lost profit damages, damages for harm to reputation, mental anguish damages, and punitive damages.  *See Lundell Mfg. Co. Inc. v. Am. Broadcasting Co, Inc*., 98 F.3d 351, 364 (8th Cir. 1996) (recognizing separate categories of damages for harm to reputation and lost profits).  Following the common law tradition, a plaintiff seeking general damages for harm to his reputation and for mental anguish need not calculate those damages with procession.  *See People's Bank & Trust Co*., 786 F. Supp. 791, 795 (W.D. Ark. 1992) (mental anguish damages does not require special damages in terms of out-of-pocket expenses and exact pecuniary measurement is not required); *Northport Health Servs. v. Owens,* 356 Ark. 630, 642 (2004) (harm to reputation does not require a showing of out-of-pocket expenses).  However, if a plaintiff seeks to recover special damages

for lost profits or loss of revenue, he is required to provide evidence of his lost income.  *See Lundell*, 98 F.3d at 365.

In this case, Ward will prove as part of his liability case that his reputation has been injured (as an individual, a member of the community, a member of his church, as a lawyer—all facets of his reputation), just as alleged by the plaintiff in *Gertz*.  Ward will prove reputational injury by showing that Cisco's defamatory statements have been communicated to others and have detrimentally affected the plaintiff's relations with persons who read the defamatory statements.  Plaintiff will provide testimony from witnesses (who have been deposed by Cisco) that know of other people who changed their view of Ward for the worse after the false statements were published.  *See Wal-Mart Stores, Inc. v. Lee*, 348 Ark. 707, 738 (2002).  However, Plaintiff will not show injury to his reputation by offering proof of lost revenue.  Nor is Plaintiff required to do so to support his defamation claim as proof of actual out-of-pocket expenses is not required to show reputational injury.  *See Northport,* 356 Ark. at 642.

After Ward shows injury to his reputation, as required for a finding of liability, he can ask the jury for an award of general damages to compensate him for the harm to his reputation, for mental anguish and for punitive damages.  Plaintiff will not seek to recover special damages for lost income.  Plaintiff will not argue to the jury that he lost a certain amount of revenue as a result of Cisco's libelous posts.  Nor will he offer an expert witness to calculate the amount of lost profits or lost business he has suffered.  Instead, Plaintiff's damages are those that are inherently difficult to calculate and for which Arkansas Courts permit the jury to determine the amount awarded.

Plaintiff's liability and damages model is not tricky; it is a straight forward application of Arkansas law.  There is nothing in Plaintiff's damages model that even remotely suggests he is seeking to recover the type of lost profit special damages required for Cisco to demonstrate a compelling need for Plaintiff's tax returns and the myriad of Plaintiff's other private financial documents spanning an eight-year timeframe.

1.  Because Plaintiff Is Not Seeking Lost Profit Damages, Cisco Is Not Entitled To Plaintiff's Private Tax Returns And Other Financial Documents

Cisco's Motion for Reconsideration argues that this Court should find the Magistrate Judge's Order clearly erroneous because Plaintiff's counsel represented to Judge Setser that Plaintiff was not seeking damage to his professional reputation and Plaintiff's counsel represented that Plaintiff would "not designate and expert on damages" but then offered a report from an expert "who will testify regarding Plaintiff's allegations of damage to his reputation." Each of Cisco's arguments is without merit and none demonstrate the type of clear error required to overturn Magistrate Judge Setser's Order.

a.  There Is No Merit To Cisco's Allegations That Plaintiff's Counsel Misrepresented That Plaintiff is Not Seeking To Recover Damages For Harm To His "Professional Reputation" As Plaintiff Does Not Seek Such Damages

Cisco alleges Plaintiff's counsel misrepresented to Judge Setser that Ward would not seek recovery for harm to his "professional reputation" as, after the Court's Order issued, Plaintiff's counsel represented it would seek such damages.  This is demonstrably false. Moreover, Cisco's argument is irrelevant because it misses the key distinction between lost profit damages and general reputational damages that served as the basis of Magistrate Judge Setser's Order.  There is nothing in Cisco's fabricated argument that warrants a conclusion that the Magistrate Judge's Order is clearly erroneous.

Cisco's briefing in support of its underlying motion to compel fabricated a separate category of damages for harm to "professional reputation" in an attempt to make it appear that Plaintiff was seeking lost profits damages.  Cisco's motion to compel stated that Plaintiff will "argue that he is entitled to damages for reputational harm because of <u>lost business</u> because of the complained-of articles, though he admits that he cannot meet the burden to prove <u>lost income</u>."  *See* Motion to Compel D.E. 101 at 8.  Cisco's motion went on to make arguments concerning the fact that Plaintiff's "business has not suffered," that Plaintiff had not "<u>lost business</u>," Plaintiff continues to conduct "a successful law practice", that his "business prospered" and that he is not "struggling financially."  *See* Motion to Compel D.E. 101 at 8-9.

Plaintiff's counsel understood that Cisco was seeking to manufacture a category of damages called "professional reputation," equate those damages to lost profit damages and then to argue that Plaintiff was seeking lost profit damages.  The only Arkansas case Plaintiff's counsel found that directly addresses a claim for harm to professional reputation as a distinct category of damages was *Erick Bowman Remedy Co., Inc. v. Jensen Salsbery Labs., Inc.*, 17 F.2d 255 (8th Cir. 1926).  That ancient case involved business libel and applied the old common law distinction between defamation per se and presumed damages and defamation per quod where lost profit damages must be specifically pleaded.  *See id*. at 257.  There, the Court held that the plaintiff was required to prove its damages, and because the plaintiff was seeking to recover for loss of credit and lost business, it was required to allege with particularity its lost profits and identify the amount of his loss.  *See id*. at 259.  *Erick Bowman*'s characterization of harm to professional reputation is not the type of claim made by Plaintiff in this case because Plaintiff has made no claim for special lost profit damages.

Instead, Plaintiff seeks to recover general damages for harm to his reputation similar to the damages in *Little Rock Newspapers, Inc. v. Fitzhugh*, 330 Ark. 561, 571 (1997).[6]  In *Fitzhugh*, the plaintiff, Michael Fitzhugh, a lawyer, had the misfortune of having the same last name as Eugene Fitzhugh, a person involved in the Whitewater Scandal during the Clinton Administration.  *See id*. at 561.  The Arkansas Democrat-Gazette ran a story about the Whitewater prosecutions; a story that included a picture of Michael Fitzhugh instead of Eugene Fitzhugh.  Michael Fitzhugh successfully sued for defamation.  *See id.* at 567.  On appeal, the newspaper argued that the jury's verdict should be reversed because Fitzhugh failed to produce any evidence demonstrating that he had suffered injury to his reputation.  *See id.* at 567, 571.  The Supreme Court of Arkansas affirmed the jury's verdict.

The *Fitzhugh* Court's reasoning is instructive.  First, the Court considered the holding in *Gertz*, finding that in determining the amount of "actual" damages (general damages) "there need

---

[6] The damages Plaintiff claims in this case resemble those claimed in *Gertz*, wherein Gertz sought to recover damages to his reputation as a lawyer and a citizen.

be no evidence which assigns an actual dollar value to the injury." *See id.* at 571, citing *Gertz*, 418 U.S. at 349-50. The Court then held that proof of damage to reputation is sufficient if it demonstrates that people believed the plaintiff to be guilty of the conduct asserted in the publication or that people thought less of the plaintiff as a result of the publication's defamatory content. *See id.* at 574. In *Fitzhugh*, plaintiff testified that he believed that the publication damaged his reputation, people told plaintiff that the article had the effect of damaging his reputation, plaintiff was the subject of conversation at another law firm concerning the published article, friends contacted the plaintiff and told him that they had read the article, plaintiff had been kidded about the article by some people but did not find it funny, and plaintiff testified that he did not want to be associated with an article concerning misconduct that was a stain on the legal profession. *See id.* at 574. Plaintiff testified that he had difficulty sleeping and would wake up during the night thinking about the article. *See id.*

Importantly, in support of his claim for reputational damages, Fitzhugh also offered the testimony of former United States Attorney, and his former boss, Asa Hutchinson. Mr. Hutchinson testified generally as to the effect that the article would have on a lawyer's reputation. *See id.* at 577. He also testified that it takes significant time to build a client base and to generate clients through experience and personal reputation and from both a personal and professional standpoint, a lawyer's chief asset is his reputation. *See id.* The Court concluded that the evidence adduced at trial was sufficient to demonstrate that Fitzhugh's reputation had been injured as a result of the article's publication.

The differences between *Erick Bowman Remedy Co., Inc. v. Jensen Salsbery Labs., Inc.*, and *Little Rock Newspapers, Inc. v. Fitzhugh* illustrates the fallacy of Cisco's attempt to recast Plaintiff's claim as seeking damages for harm to Plaintiff's "professional reputation." The harm to professional reputation at issue in *Erick Bowman* was an euphuism for special damages resulting from lost profits. In contrast, although the testimony presented in support of Fitzhugh's claimed reputational damages included testimony about the importance of a lawyer's reputation, the damages at issue in that case were not special lost profit damages but rather general damages

11

for reputational harm.[7]  The reputational harm in *Fitzhugh* in no way involved calculating lost revenue, but rather supported plaintiff's claim to general damages for harm to his reputation—which included, but was not limited to, his reputation as a lawyer.  Here too, evidence concerning Ward's reputation—including his reputation in his chosen profession, as a member of his community and all other facets of his life—is evidence in support of a general damages claim.  Cisco's labeling Plaintiff's claimed damages as "harm to professional reputation" do not turn his claim for general reputational damages into one for lost profit damages.

During the hearing on Cisco's motion to compel, when Cisco's counsel asked whether Plaintiff was seeking damages for professional reputation, Plaintiff's counsel responded that Plaintiff was not asserting Cisco's fake category of damages or sub-category of damages for harm to "professional reputation."  Plaintiff's counsel's response was based in part on Cisco's briefing which had equated harm to professional reputation with lost profit damages.  It was also terse; a reaction to Cisco's counsel's lack of decorum in interrupting the Magistrate Judge to ask its own questions not properly addressed to the Court.  But, in any event, there was no misrepresentation to the Court as Cisco alleges.  As the hearing continued, Plaintiff's position was clear.  Directly after the snippet cited in Cisco's Motion for Reconsideration, the Court and Plaintiff's counsel had the following exchange concerning Plaintiff's claimed damages:[8]

| | |
|---|---|
| The Court: | So, you are seeking damages for his professional reputation? |
| Plaintiff's counsel: | We're seeking damages to his reputation.  Him as a person.  He is a person that happens to be a lawyer.  What we are not seeking and I think what was at issue in the Albritton case and the cases we cited is that we're not seeking damages to his reputation for <u>lost profits</u>.  We are not going to go in front of the jury and tell that Mr. Ward lost business because of those articles. |
| The Court: | Ok. Mr. Ward's deposition has been taken in this case, correct? |

---

[7] The *Fitzhugh* Court did not make a distinction between "reputational" damages and "professional reputational" damages.

[8] The Court should not rely on Cisco's version of the transcript attached as Exh. A to its motion.  In preparing the response to Cisco's motion, Plaintiff's counsel found several errors in the transcript provided by Cisco.  Plaintiff objects to the use of the transcript as evidence in support of Cisco's motion as it not an accurate representation of the November 4, 2009 hearing before Judge Setser.

| | |
|---|---|
| Plaintiff's Counsel: | Yes. |
| The Court: | Cisco's attorneys probably need to address this—what were his responses, how is he going to testify at trial about how his professional reputation has been damaged? |
| Defendant's Counsel: | Your honor, he had a few things in his testimony about that issue.  One of the major things he discussed in his deposition was that he had lost potential clients.  All that was through multiple layers of hearsay.  He testified that he had been told that individuals had spoken with prospective clients who said I won't hire him because of the articles and so we think we're entitled to discover who those clients are, whether they ever hired Ward, whether they couldn't hire Ward because of a conflict of interest, whether the was too busy to take their cases.  Another thing that is different in this case about Ward that was not present in the Albritton case is Ward made a claim for outrage.  And, to support that claim, he has to show that he suffered mental anguish that was so severe a reasonable person could not be expected to endure it.  And, that kind of claim, I think is relevant to show how much he worked, if his income, you know, increased by fifty percent, you know, the year after the articles, that probative evidence of whether he was suffering this terrible mental anguish.  Not to mention whether it actually damaged his reputation in any way. |
| Plaintiff's Counsel: | Your honor, I have in front of me Mr. Ward's deposition. |
| The Court: | Ok. |
| Plaintiff's Counsel: | At page 7, Cisco asks him "Are you claiming damages to T. John Ward, Jr. PC (his business) indirectly in this case?  He answers:  No.  At page 8, they say"  "Since October of 2007 have your paychecks decreased?  Answer:  No. I made more in 2008 than I did in 2007.[9] |
| The Court: | Ok.  I think that resolves the income issue.  So, I'm going to deny the motion to compel with regard to the tax records and income statements.  As to the client list in his deposition, did Cisco ask him when he said that he lost clients, some people said they wouldn't hire him, did you ask him to identify the potential clients that he lost? |

Cisco's motion also argues that Plaintiff's admission that he may offer testimony

showing that people were dissuaded from working with him as a result of the accused articles

somehow merits reconsideration.  *See* Mot. at 7.  Cisco appears to be seeking reconsideration of

---

[9] These deposition excerpts also demonstrate that Cisco's allegation that Plaintiff's counsel has refused to permit either Plaintiff or his wife testify about their finances is clearly not true.  *See* Mot. at 14.

an issue that Magistrate Judge Setser resolved in Cisco's favor.  On the relevant issue of plaintiff's reputational damages, the Magistrate Judge found that because Plaintiff would offer testimony at trial that certain people heard about the accused posts, and as a result thought less of Plaintiff and would not hire him, she would require Plaintiff to identify those persons to Cisco. The Court concluded:

> The Court:          Ok.  I think that's what the real issue is who's going to be testifying in regard to the fact that these posts damaged his reputation to the extent that they wouldn't  hire him.  So, that will be my ruling in that regard.  I will not require the disclosure of the financial documents or disclosure of the client lists but I will require the disclosure of the identify of any witnesses that would testify or even if they're not going to be called as witnesses if they're going to be brought up a trial or if somebody else is going to be mentioning them anyone that would say they didn't hire Mr. Ward because of these posts.  (November 4, 2009 hearing at 33-32).

Cisco cannot seriously take issue with the Magistrate Judge's ruling when it was resolved in Cisco's favor.

It is clear from Magistrate Judge Setser's Order that she did her research before the hearing and understood the distinction between general damages for harm to plaintiff's reputation, which does not require proof of financial loss, and special damages claimed for lost profits that require proof of financial loss.  During the hearing, the Court expressly distinguished damages for lost income:

> The Court:          Ok.  So, I tried to do a little a little research on this issue, and I'm not real sure what—I know that an actual economic loss is not required for to prove damage to your reputation.  I'm little leery wondering what plaintiff is going to get into his testimony to try to prove damage to his reputation. I guess I would say at this point I'd be inclined to deny the motion to compel if the plaintiff is saying he's not seeking damages for injury to his business of lost income.

That is precisely what Magistrate Judge Setser did.  She drew the proper distinction between lost profit damages (not claimed in this case) and reputational damages (claimed in this case).  Her written Order reflects that distinction; denying Cisco's motion with respect to Plaintiff's financial documents because he is not seeking to recover lost profit damages and

granting Cisco's motion with respect to discovery relevant to Plaintiff's reputational damages.

The Court's Order states:

> As to Requests for Production 4-5, 9, 11, and 17, plaintiff shall not be required to produce any tax returns or other documentation regarding his finances, <u>as he is not seeking damages for lost income</u>. Further, Plaintiff shall not be required to produce any documents relating to new matters or clients since October 16, 2007. Plaintiff shall, however, be required to identify any individuals who he claims allegedly learned of the statements at issue and thought less of plaintiff or decided not to hire plaintiff because of the statements.

*See* D.E. 138 (Magistrate Judge Setser's November 5, 2009 Order) at 2 (emphasis added).

Cisco's motion characterizes Plaintiff's conduct as springing a claim for harm to professional reputation on Cisco after the Court's hearing. No such thing occurred. Plaintiff did not advise Cisco that it was seeking to revive some claim for harm to professional reputation. To the contrary, Counsel for Cisco sent an email to Plaintiff's counsel alleging that the snippet Cisco pulled from the Court's hearing demonstrated a misrepresentation to the Court. Plaintiff's counsel referred Cisco to the other parts of the hearing transcript and explained that Cisco's attempt to recast Plaintiff's claimed damages into a subcategory of damages for harm to professional reputation was legally incorrect. Nonetheless, Cisco brought its motion for reconsideration but has cited no case law in support of district category of "harm to professional reputation damages" to support its cause.

More importantly, Judge Setser's Order was not based on any alleged misrepresentation about harm to "professional reputation" as Cisco asserts. Instead, it was based on the fact that Plaintiff is not seeking to recover lost profit damages and thus his financial records are not relevant, nor can Cisco show the type of compelling need required to compel Plaintiff to produce those documents. Any minimal relevance Cisco could show is far outweighed by Plaintiff's right to privacy and the right of Plaintiff's wife and business partners to keep their private financial records from public view. That is all the more important here where Cisco sought such a wide range of financial documents spanning the last eight years—including documents created five years before the accused posts were even published. Cisco could not demonstrate the

required compelling need for Plaintiff's financial records.  Cisco lost the motion on the merits,

just as it did in the *Albritton v. Cisco* case.  Cisco's failed motion is not cause for

reconsideration, let alone sufficient to find the Magistrate Judge's Order was clearly erroneous or

contrary to law.

> b.     There Is No Merit To Cisco's Allegations That Plaintiff's Counsel Misrepresented That Plaintiff Would Not Offer A Damages Expert To Testify About His Alleged Damages As Plaintiff Does Not Have A Damages Expert

Cisco's second allegation of misrepresentation also misses the mark.  Cisco argues that,

notwithstanding his counsel's representation to the Court that plaintiff would not designate an

expert on his alleged damages, Plaintiff designated an expert that will testify that plaintiff's

reputation has been injured by Cisco's wide dissemination of the accused articles on the

worldwide internet.

Cisco bases its allegations of misrepresentations on the following passage from the

November 4, 2009 hearing:

| | |
|---|---|
| The Court: | Okay.  Okay.  That's on page seven of the motion.  First, how—this is to the plaintiff—are you going to have an expert report on the damages issues? |
| Plaintiff's Counsel: | No, your Honor |
| The Court: | It's just going to be plaintiff testifying about the injury to his reputation and injury to his professional reputation.  <u>He is not seeking lost profit damages or any kind of damages for lost revenues and won't offer an expert to testify about lost profit damages</u>. |

Plaintiff's counsel understood the Court to be asking whether plaintiff would offer the

type of expert testimony offered in most tort cases, wherein an economist or similarly situated

expert takes the stand to tell the jury what plaintiff's damages award should be based on some

economic model generated by the expert.  Plaintiff has not served an expert report to quantify his

claimed damages in this case.

Cisco's argument to the contrary confuses the issue of reputational injury (a requirement

of Plaintiff's liability case) with a calculation of Plaintiff's damages (offered to show the amount

16

of damages to be awarded if the Plaintiff establishes liability).  The issue again implicates remnants of the common law.  Under the common law, statements like those made by Cisco accusing Plaintiff of criminal conduct were classified as defamatory per se and no independent evidence of injury to the plaintiff's reputation was required to establish liability.  In 1998, Arkansas abolished the doctrine of presumed damages in defamation cases.  Now, an Arkansas defamation plaintiff must prove reputational injury as part of his case in chief, before he is ever entitled to recover damages.  *See Fitzhugh*, 330 Ark. at 572.  Plaintiff retained an internet reputation expert to opine that plaintiff's reputation has been injured as a result of Cisco's decision to publish its defamatory statements on the internet.  That expert, Mr. Campbell, is a liability expert on the issue of reputational injury.

Mr. Campbell is not a damages expert.  Mr. Campbell is not an economist.  His report includes no calculation at all, let alone the type of complicated calculation that would be required if he were offering an opinion in support of a claim to lost profit damages.  Nor does Mr. Campbell opine as to the dollar amount that should be awarded for plaintiff's damages.  Plaintiff has been clear:  he intends to leave the amount of the damages awarded to the sound discretion of the jury to be determined upon proof at trial.  Plaintiff's position is in accord with Arkansas law which makes a distinction between proof of injury to reputation and proof of damages.  *See Lundell*, 98 F.3d at 365, n. 12 (courts have recognized a distinction between proof of the fact that damages have been sustained and proof of the amount of those damages).

There was no misrepresentation to the Court concerning Plaintiff's damages claims; he is not seeking to introduce expert testimony concerning the amount of his damages.  Nothing in Cisco's motion compels a different conclusion.  Moreover, even if Plaintiff's statement had been a misstep, it still would not warrant giving Cisco unfettered access to Plaintiff's tax returns or financial documents because there is still no claim to lost profit damages in this case.  Thus, Cisco still cannot demonstrate the type of compelling need required to order eight years of plaintiff's financial records, and those of his wife and law firm partners, produced to Cisco.

c.     Cisco's Newly Offered Argument And Authorities Are Improper In A
       Motion For Reconsideration

Review of a Magistrate's ruling before the District Court does not permit consideration of

issues not raised before the Magistrate because the "magistrate's decision should not be

disturbed on the basis of arguments not presented to [her]."  *Harrington v. Wilber*, 384 F. Supp.

2d 1321, 1325 (S.D. Iowa 2005) (citing cases); *Paterson-Leitch Co. v. Massachusetts Municipal

Wholesale Elec. Co*., 840 F.2d 985, 991 (1st Cir. Mass. 1988) ("[w]e hold categorically that an

unsuccessful party is not entitled as of right to de novo review by the judge of an argument never

seasonably raised before the magistrate.).[10]  Nor should a motion for reconsideration serve as the

occasion to tender new legal theories for the first time.  *See Hagerman v. Yukon Energy Corp*.,

839 F.2d 407, 414 (8th Cir. 1988)

Cisco's Motion for Reconsideration improperly raises arguments before this Court that

were not before Magistrate Judge Setser.  The most egregious example is Cisco's belated

assertion that Texas law controls the issues resolved by Magistrate Judge Setser.  *See* Mot. at 11,

n. 1 & 2.  Cisco's Motion newly cites Texas cases and argues that those cases control the

resolution of the issues presented.  *See* Mot. at 11-12, citing *Parkway Co. v. Woodruff*, 901

S.W.2d 434, 444 (Tex. 1995); *Saenz v. Fidelity & Guaranty Ins. Underwriters*, 925 S.W.2d 607,

614 (Tex. 1996); *Universe Life Ins. Co. v. Giles*, 950 S.W.2d 48, 54 (Tex. 1977).  Cisco ignores

that it never argued to Magistrate Judge Setser that Texas law applied to its motion.  The issues

before Magistrate Setser were resolved on Arkansas law because the vast majority of the cases

cited by Cisco were from Arkansas and the Eighth Circuit.  Now that Cisco has lost its motion

under Arkansas law, it asks this Court to revisit its motion applying Texas law to see if it can

---

[10] The Court's opinion in *Paterson-Leitch Co*., 840 F.2d at 991 illuminates why District Courts should be hesitant to
review arguments not made to the magistrate judge.  That Court stated:  "The role played by magistrates within the
federal judicial framework is an important one. They exist to assume some of the burden imposed on the district
courts by a burgeoning caseload.  The system is premised on the notion that magistrates will relieve courts of
unnecessary work.  Systemic efficiencies would be frustrated and the magistrate's role reduced to that of a mere
dress rehearsal if a party were allowed to feint and weave at the initial hearing, and save its knockout punch for the
second round. In addition, it would be fundamentally unfair to permit a litigant to set its case in motion before the
magistrate, wait to see which way the wind was blowing, and -- having received an unfavorable recommendation --
shift gears before the district judge.  Such a fast shuffling of the orderly processes of federal litigation should not be
encouraged." (internal citation omitted).

obtain a more favorable result.  Cisco's gamesmanship is improper.  The application of Texas law to Cisco's motion to compel was not before the Magistrate Judge and Cisco cannot ask that her Order be overruled based on legal arguments that were not before Judge Setser at the time of her ruling.

Cisco's Motion for Reconsideration contains a host of other new arguments.  Cisco's new briefing includes a factual background section that includes new argument not briefed to the Magistrate Judge.  *Compare* Mot. at 4-5 with D.E. 101 at 1-2 and D.E. 15 at 1.  Cisco's briefing regarding the "[t]he discovery" at issue also includes new arguments not before the Magistrate Judge, including a belated offer to agree to a protective order now that its motion has been denied.[11]  Cisco was required to make its arguments to the Magistrate Judge; not save its best efforts for this Court.  *See Paterson-Leitch Co*., 840 F.2d at 990 ("A party has a duty to put its best foot forward before the magistrate: to spell out its arguments squarely and distinctly.  One should not be allowed to defeat the system by seeding the record with mysterious references to unpled claims, hoping to set the stage for an ambush should the ensuing ruling fail to suit.")  Magistrate Judge Setser waded through Cisco's poorly crafted discovery motion, read the cited authority and entered a well-reasoned decision.  Cisco cannot undermine her efforts by repackaging its motion to this Court.

Moreover, Cisco's motion for reconsideration fails on the merits.  The issue squarely presented with respect to Cisco's request to compel the production of Plaintiff's tax returns and other private financial records was whether Plaintiff had a right to privacy in those documents, and if so, whether Cisco had demonstrated the request "compelling need" to order those documents produced.  *See* D.E. No. 113 at 14-26; and No. 130 at 11-22.  The Magistrate Judge resolved the privacy issues in Plaintiff's favor, finding that Cisco had not shown a compelling

---

[11] Cisco also newly claims that it would agree to a protective order—an offer Cisco failed to make until after it lost its motion to compel.  See Mot. at 6.  Cisco's belated argument, not before the Magistrate Judge, is not properly before this Court on review.  Moreover, Cisco's belated offer does nothing to undermine the minimal relevance of Cisco's request given that Plaintiff is not seeking lost profit damages or that Cisco's request fails for over breath.  A protective order cannot substitute for Plaintiff's statutory right to keep his financial records private, particularly where, as here, those documents implicate the privacy interests of third parties.  Moreover, Cisco's proposed protective order would not prevent the use of Plaintiff's tax returns during the upcoming public trial.

need for the documents in light of the fact that Plaintiff was not seeking lost profit damages.  *See* D.E. 138 at 2.  That undisturbed finding overrides any attempt by Cisco to reargue its lost cause.  *See* Mot. at 14 (rearguing that Plaintiff will claim lost business, although Magistrate Judge Setser found otherwise, and rearguing that Cisco has no alternative source of financial discovery, although Magistrate Judge Setser was persuaded that Plaintiff had provided sufficient deposition testimony regarding his finances).

The Magistrate Judge's Order is not clearly erroneous or contrary to law simply because she failed to adopt Cisco's arguments.  Cisco's motion for reconsideration does not even attempt to demonstrate that Judge Setser misapplied the facts to Arkansas law; choosing instead to make new arguments based Texas law.  Cisco's "do-over" is insufficient to show that the Magistrate Judge clearly erred in resolving Cisco's motion.

C.      The Magistrate Judge Was Not Clearly Erroneous In Denying Cisco's Request That Plaintiff Sign A Full Medical Release

Cisco's Motion for Reconsideration of Judge Setser's Order denying its request for a medial release does not even purport to explain how Judge Setser clearly erred in denying Cisco's motion.  Instead, Cisco has simply copied and pasted from its prior briefing, added additional case authority, and then proffers the Court a one-line summation that Judge Setser's "Order denying Cisco essential evidence is clearly erroneous and contrary to law."  *See* Mot. at 17.  Cisco's conclusory arguments are insufficient to demonstrate the type of clear error required to reverse the Magistrate Judge's Order.

Judge Setser's Order was not clearly erroneous or contrary to law; it was a correct balancing of the interests all courts are required to undertake pursuant to Fed. R. Civ. P. 26(b).  Cisco's motion asked the Court to give it unfettered access to Plaintiff's entire medical history without limitation as to any of the issues in this case.  Plaintiff argued that Cisco's request was egregiously over broad and were outweighed by privacy considerations.  Judge Setser agreed.  She found that Plaintiff's difficulty sleeping coupled with his deposition testimony that his sleepless nights were not solely attributable to the defamatory posts undermined Cisco's need for

a complete authorization to obtain all of Plaintiff's medical records.  The Magistrate Judge found that any minimal relevance articulated by Cisco was far outweighed by privacy considerations. Moreover, Judge Setser understood that Plaintiff had not sought medical treatment for his mental anguish and therefore there was no relevant discovery to which Cisco would be entitled.  Judge Setser's reasoned application of Fed. R. Civ. P. 26(b) is not clearly erroneous or contrary to law, and Cisco has not demonstrated otherwise.

## III.    Conclusion

For all of the forgoing reasons and those briefed in Plaintiff's Response and Reply to Cisco's Motion to Compel, Plaintiff respectfully requests that this Court deny Cisco's motion for reconsideration in its entirety.

Respectfully Submitted,

Nicholas H. Patton
AR Bar No. 63035
Courtney Towle
Patton, Tidwell & Schroeder, LLP
4605 Texas Boulevard
Texarkana, Texas 75503
903.792.7080 / 903.792.8233 (Fax)
Email: nickpatton@texarkanalaw.com
Email: ctowle@texarkanalaw.com

Patricia L. Peden
LAW OFFICE OF PATRICIA L. PEDEN
1316 67th Street
Suite 6
Emeryville, CA 94608
Telephone: 510-268-8033
Email: ppeden@pedenlawfirm.com

James A. Holmes
Texas Bar No. 00784290
THE LAW OFFICE OF JAMES HOLMES, P.C.
635 South Main, Suite 203
Henderson, Texas 75654
903.657.2800 / 903.657.2855 (Fax)

ATTORNEYS FOR PLAINTIFF

## CERTIFICATE OF SERVICE

This is to certify that on this 30th day of November, 2009, a true and correct copy of the foregoing document was served electronically via the Court's CM/ECF system upon:

Richard E. Griffin                    Attorneys for Defendant Cisco Systems, Inc.
Charles Babcock
Crystal Parker
Kurt Schwarz
JACKSON WALKER, LLP
1401 McKinney
Suite 1900
Houston, Texas 77010


_____
Nicholas H. Patton