IN THE UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF ARKANSAS
TEXARKANA DIVISION

JOHN WARD, JR.                    §
                                  §
        Plaintiff                 §
                                  §        No. 4:08cv4022
v.                                §
                                  §        JURY TRIAL DEMANDED
CISCO SYSTEMS, INC.               §
                                  §
        Defendant                 §


**PLAINTIFF'S RESPONSE TO CISCO'S MOTION FOR MAGISTRATE JUDGE TO
RECONSIDER ORDER DENYING CISCO'S MOTION TO COMPEL BASED ON
ALLEGED MISREPRESENTATIONS TO THE COURT**

1

Dockets.Justia.com

## <u>TABLE OF CONTENTS</u>

Page(s)

I.    Introduction ................................................................................................1

II.    Legal Argument ..........................................................................................2

        A.    Cisco is Not Entitled to Reconsideration .................................................2

        B.    Cisco's Renewed Motion to Compel Plaintiff's Private Financial
             Records Should Be Denied ........................................................................3

        C.    Cisco's Three Bases For Reconsideration Are Demonstratively
             Meritless .....................................................................................................7

               1.    There Is No Merit To Cisco's Allegations That Plaintiff's
                      Counsel Misrepresented That Plaintiff Is Not Seeking
                      To Recover Damages For Harm To His "Professional
                      Reputation" As Plaintiff Does Not See Such Damages ....................................7

               2.    There Is No Merit To Cisco's Allegations That Plaintiff's
                      Counsel Misrepresented That Plaintiff Would Not Offer A
                      Damages Expert To Testify About His Alleged Damages As
                      Plaintiff Does Not Have A Damages Expert ......................................14

               3.    There Is No Merit To Cisco's Request That The Court Reconsider
                      Its Order Finding That Cisco Had Not Demonstrated A
                      Compelling Need For Plaintiff's Tax Returns And Other
                      Financial Records ................................................................................16

        D.    Cisco's Newly Offered Argument And Authorities Are Improper
             In A Motion For Reconsideration ...........................................................17

III.    Conclusion ................................................................................................18

i

## <u>TABLE OF AUTHORITIES</u>

**CASES**                                                                    **Page(s)**

*Burcham v. Murphy*,
    331 Ark. 364 (1998)...................................................................................................4

*Ellis v. Price*,
    337 Ark. 542 (1999)...................................................................................................5

*Erick Bowman Remedy Co., Inc. v. Jensen Salsbery Labs., Inc.*,
    17 F.2d 255 (8th Cir. 1926) ...............................................................................8, 9, 10

*Gertz v. Robert Welsh, Inc.*,
    418 U.S. 323 (1974)...................................................................................4, 5, 6, 8, 9

*Hogue v. Ameron, Inc.*
    286 Ark. 481 (1985)...................................................................................................5

*Little Rock Newspapers, Inc. v. Fitzhugh*,
    330 Ark. 561 (1997).............................................................................................5, 8, 9

*Lundell Mfg Co. Inc. v. American Broadcasting Co, Inc.*,
    98 F.3d 351 (8th Cir. 1996) ..............................................................................5, 6, 15

*Northport Health Servs. v. Owens*,
    356 Ark. 630 (2004)................................................................................................5,6

*Parkway Co. v. Woodruff*,
    901 S.W.2d 434 (Tex. 1995)...................................................................................17

*People's Bank & Trust Co.*,
786 F. Supp. 791 (W.D. Ark. 1992)...............................................................................5

*Saenz v. Fidelity & Guaranty Ins. Underwriters*,
    925 S.W.2d 607 (Tex. 1996)...................................................................................17

*Suggs v. Stanley*,
    324 F.3d 672 (8th Cir. 2003) ....................................................................................5

*United Ins. Co. of America v. Murphy*,
    331 Ark. 364 (1998)...................................................................................................5

*Wal-Mart Stores, Inc. v. Lee*,
    348 Ark. 707 (2002).............................................................................................5, 6

ii

**OTHER AUTHORITIES:**

28 U.S.C. § 636(b)(1)(A) .................................................................................................2

Federal Rule of Civil Procedure 72(a) .............................................................................2

Local Rule 72.1 VII (B) ....................................................................................................2

**OTHER:**

C. Nance, The Uniform Correction or Clarification of Defamation Act:  How Not to Reform
Arkansas Defamation Law, 51 Ark. L. Rev. 721, 729 (1998) ..........................................3

## I.    Introduction

Nothing has changed since this Court ruled on Cisco's motion to compel.  The controlling Eighth Circuit authority cited in both parties' briefing is unchanged.  Likewise, the facts presented to the Court weeks ago are the same today.

In an attempt to justify its latest request for reconsideration, Cisco manufactured an argument that Plaintiff's counsel misled the Court with respect to Plaintiff's claimed damages. Cisco's meritless argument rests on the false premise there is a separate category (or sub-category) of damages entitled "harm to professional reputation," and that Plaintiff has alleged that category of special damages in this case.  As Plaintiff's counsel made clear, Plaintiff is not claiming special damages for lost profits.  Instead, Plaintiff seeks to recover general damages for harm to his reputation, mental anguish, and an award of punitive damages.  Plaintiff's damages theories require no showing of out-of-pocket losses, lost revenue, or decreased revenue, and Cisco's misguided attempt to equate Plaintiff's damages as lost revenue damages by recasting them as damages for "harm to professional reputation" cannot withstand scrutiny.

Cisco's creative "professional reputation" argument is designed to concoct a compelling need for Plaintiff's financial documents, but its efforts must fail because Plaintiff has repeatedly stated he is not seeking to recover lost profit damages in this case.  As discussed below, Plaintiff' damages model mirrors Arkansas law, which permits a defamation Plaintiff to recover general damages for harm to his reputation—a damages model that does not require a showing of out-of-pocket expenses and therefore cannot compel production of Plaintiff's private financial documents.  This Court clearly understood the damages theories at issue in this case and correctly decided Cisco's motion based on Plaintiff's claimed damages.  Nothing in Cisco's motion requires this Court to reconsider its Order.

1

II.     **Legal Argument**

A.      <u>Cisco Is Not Entitled To Reconsideration[1]</u>

The Federal Rules of Civil Procedure do not recognize a "motion to reconsider." *See Carroll v. Sisco*, No. 4:00cv00864, 2007 U.S. Dist. LEXIS 39130, at *4-5 (E.D. Mo. May 29, 2007) (internal citation omitted). Courts are understandably concerned that motions for reconsideration will result in an endless chain of motions preventing a final resolution on the merits. *See id.* (noting motions for reconsideration are frequently a futile waste of time for both the parties and the trial court.) (internal citation omitted), *see also Broadway v. Norris*, 193 F.3d 987, 990 (8th Cir. 1999) (a motion for reconsideration should not be used as a vehicle for simple reargument on the merits). Thus, motions for reconsideration are disfavored.

Cisco attempts to justify its request for reconsideration by alleging that Plaintiff's counsel hoodwinked the Court into denying Cisco's motion. Cisco's argument fails because this Court clearly understood the distinction Plaintiff's counsel made between the lost profit and reputational damages issues implicated by Cisco's motion. The Court understood the damages issues involved; denying Cisco's request for financial documents because Plaintiff is not seeking lost profit damages in this case, and granting Cisco's motion for discovery related to reputational damages. *See* D.E. 138 at 2.

Cisco is not happy with the Court's approach because absent a claim to lost profit damages, Cisco cannot demonstrate the type of compelling need required to override Plaintiff's

---

[1] Considerations of judicial efficiency suggest that this Court should deny Cisco's motion as moot. Federal Rule of Civil Procedure 72(a), Local Rule 72.1 VII (B), and 28 U.S.C. § 636(b)(1)(A) provide the proper framework for appealing a Magistrate Judge's Order resolving a non-dispositive motion. Cisco invoked the District Court's review authority under Federal Rule of Civil Procedure 72(a) by separately filing a motion for reconsideration of the same order directed to the District Court. *See* D.E. 150. This Court should not encourage Cisco to file dual motions for reconsideration in the hope that at least one judge will give Cisco the discovery it seeks. Cisco should either file a motion for reconsideration, wait for it to be resolved, and then seek review from the District Court, or file its motion directly with the District Court.

To be sure, this Court's double effort will not dissuade Cisco from seeking review of this Court's Order even if it is resolved in Cisco's favor. That fact is made clear by Cisco's decision not to brief to this Court its request for reconsideration of the Court's Order denying Cisco's request that Plaintiff sign an unlimited medical waiver. Cisco will still seek reconsideration of that issue from the District Court.

2

statutory right to keep his tax returns private and to protect his other private financial records (and those of his wife and law partners) from public view.  Plaintiff has made no claim to lost profit damages, and Cisco cannot make it for him by substituting its own terminology for Plaintiff's claimed damages.

The facts underlying the Court's Order have not changed.  Ward is still not seeking to recover lost profits damages.  Nor will he offer an expert at trial to quantify his non-existent lost profit damages for the jury.  There is nothing new in Cisco's motion.  Thus Cisco has not shown the exceptional circumstances necessary to overturn this Court's prior Order.  *See id.*; *Carroll*, 2007 U.S. Dist. LEXIS 39130, at 4-5.

      B.    <u>Cisco's Renewed Motion To Compel Plaintiff's Private Financial Records Should Be Denied</u>

Cisco's reconsideration argument mischaracterizes the law of damages in defamation cases.  To understand where Cisco goes wrong, it is first necessary to set forth the applicable law.

The common law of defamation divided damages recoverable for defamation into two types: (1) "general damages" which include injury to the plaintiff's general reputation and standing in the community, humiliation and emotional distress caused by the defamation, and any physical injury associated with the defamation; and (2) "special damages" which included specific economic loss such as lost income resulting from the defamatory statements.  *See* C. Nance, The Uniform Correction or Clarification of Defamation Act:  How Not to Reform Arkansas Defamation Law, 51 Ark. L. Rev. 721, 729 (1998).  In Arkansas, special damages were recoverable for such pecuniary losses as harm to professional reputation, loss of business, lost of employment or loss of credit.  *See id*.  On the other hand, general damages compensated Plaintiff for all damages except pecuniary loss, including harm to reputation and emotional harm.  *See id*.  Special damages required a showing of actual out-of-pocket losses, while general damages did not.

The common law also created two categories of general damages; "actual" and "presumed." *See id*. Under common law, when a defamatory statement involved a charge of crime, loathsome disease, unchastity of a woman, or was injurious to the plaintiff's trade or business, the statement was considered defamatory "per se." *See Burcham v. Murphy*, 331 Ark. 364, 368 (1998). In defamation per se cases, damages were presumed and awarded without any evidence of injury to plaintiff's reputation because injury was presumed from the nature of the statements. *See id.*

The common law legal framework in Arkansas was changed after the Supreme Court's holding in *Gertz v. Robert Welsh, Inc.,* 418 U.S. 323, 349-50 (1974). In *Gertz*, the Court heard the case of a lawyer defamed in connection with his representation of a client. Mr. Gertz filed suit against the publisher of the false statements, claiming damage to his *reputation as a lawyer and a citizen*. The *Gertz* Court recognized the strong and legitimate state interest in compensating private individuals for "actual injury." The Court declined to define "actual injury," finding that "trial courts have wide experience in framing appropriate jury instructions in tort actions." The *Gertz* Court held as follows:

> Suffice it to say that actual injury is not limited to out-of-pocket loss. Indeed, the more customary types of actual harm inflicted by defamatory falsehood include impairment of reputation and standing in the community, personal humiliation, and mental anguish and suffering. Of course, juries must be limited by appropriate instructions, and all awards must be supported by competent evidence concerning the injury, although there need be no evidence which assigns an actual dollar value to the injury.

*Gertz*, 418 U.S. at 350.

Thus, the Court's Opinion in *Gertz* questioned the wisdom of state laws permitting recovery of damages based on a presumption of injury in defamation per se cases, although the Court did not abolish defamation *per se* and some states still recognize a separate category for per se falsehoods. On the issue of non-presumed damages or "actual damages," the Court deferred to the state courts to decide how to define general damages but specifically noted that no showing of out-of-pocket losses was required.

4

After *Gertz*, the Arkansas Supreme Court abolished the doctrine of presumed damages in defamation per se cases, finding that in all cases a plaintiff in a defamation case must prove reputational injury before recovering damages. *See United Ins. Co. of Am. v. Murphy*, 331 Ark. 364 (1998). Under modern Arkansas defamation law, a plaintiff must show actual injury to his reputation, although "the showing of harm is slight." *See Ellis v. Price,* 337 Ark. 542 (1999). To prove injury, a plaintiff must prove that the defamatory statements have been communicated to others and that the statements have detrimentally affected the plaintiff's relations with persons who read the defamatory comments. *See id.* Testimony from witnesses that they knew of other people who changed their view of the Plaintiff for the worse after the false statements were published is evidence of reputational injury. *See Wal-Mart Stores, Inc. v. Lee*, 348 Ark. 707, 738 (2002). Evidence that people believed Plaintiff to be guilty of the conduct alleged in the publication or that people thought less of Plaintiff as a result of the publication is also proof of injury to reputation. *See Suggs v. Stanley,* 324 F.3d 672, 680 (8th Cir. 2003); *Little Rock Newspapers, Inc. v. Fitzhugh*, 330 Ark. 561, 574 (1997). Plaintiff's testimony alone may be sufficient to establish the injury to his reputational. *Ellis,* 337 Ark. at 542; *Hogue v. Ameron, Inc*. 286 Ark. 481, 483 (1985). Proof of actual out-of-pocket expenses is not required to demonstrate that Plaintiff's reputation has been injured. *See Northport Health Servs. v. Owens,* 356 Ark. 630, 642 (2004).

Once a defamation plaintiff demonstrates injury to his reputation, he may recover damages. A defamation Plaintiff can recover several categories of damages including lost profit damages, damages for harm to reputation, mental anguish damages, and punitive damages. *See Lundell Mfg Co. Inc. v. Am. Broadcasting Co, Inc*., 98 F.3d 351, 364 (8th Cir. 1996) (recognizing separate categories of damages for harm to reputation and lost profits). Following the common law tradition, a plaintiff seeking general damages for harm to his reputation and for mental anguish need not calculate those damages with procession. *See People's Bank & Trust Co*., 786 F. Supp. 791, 795 (W.D. Ark. 1992) (mental anguish damages does not require special damages

5

in terms of out-of-pocket expenses and exact pecuniary measurement is not required); *Northport Health Servs. v. Owens,* 356 Ark. 630, 642 (2004) (harm to reputation does not require a showing of out-of-pocket expenses).  However, if a plaintiff seeks to recover special damages for lost profits or loss of revenue, he is required to provide evidence of his lost income.  *See Lundell*, 98 F.3d at 365.

In this case, Ward will prove as part of his liability case that his reputation has been injured (as an individual, a member of the community, a member of his church, as a lawyer—all facets of his reputation), just as alleged by the plaintiff in *Gertz*.  Ward will prove reputational injury by showing that Cisco's defamatory statements have been communicated to others and have detrimentally affected the plaintiff's relations with persons who read the defamatory statements.  Plaintiff will provide testimony from witnesses (all of whom have been deposed by Cisco) that know of other people who changed their view of Ward for the worse after the false statements were published.  *See Wal-Mart Stores, Inc. v. Lee*, 348 Ark. 707, 738 (2002).  However, Plaintiff will not assert that he can show injury to his reputation by offering proof of lost revenue.  Nor is Plaintiff required to do so to support his defamation claim as proof of actual out-of-pocket expenses is not required to show reputational injury.  *See Northport,* 356 Ark. at 642.

After Ward shows injury to his reputation as required for a finding of liability, he can ask the jury for an award of general damages to compensate him for the harm to his reputation, for mental anguish and for punitive damages.  Plaintiff will not seek to recover special damages for lost income.  Plaintiff will not argue to the jury that he lost a certain amount of revenue as a result of Cisco's libelous posts.  Nor will he offer an expert witness to calculate the amount of lost profits or lost business he has suffered.  Instead, Plaintiff's damages are inherently difficult to calculate and the type that Arkansas Courts permit the jury to determine.

Plaintiff's liability and damages model is not tricky; it is a straight forward application of Arkansas law.  There is nothing in Plaintiff's damages model that even remotely suggests he is

6

seeking to recover the type of lost profit special damages required for Cisco to demonstrate a compelling need for Plaintiff's tax returns and the myriad of Plaintiff's other private financial documents spanning an eight-year timeframe.

      C.      <u>Cisco's Three Basis For Reconsideration Are Demonstratively Meritless</u>

Cisco's Motion for Reconsideration argues that this Court should reconsider its Order because: first, Plaintiff's counsel represented that Plaintiff was not seeking damages to his professional reputation; second, Plaintiff's counsel represented that Plaintiff would "not designate and expert on damages" but then offered a report from a damages expert; and, third, Cisco has a compelling need for Plaintiff's sensitive financial records.  Each of Cisco's arguments is without merit.

      1.      There Is No Merit To Cisco's Allegations That Plaintiff's Counsel Misrepresented That Plaintiff is Not Seeking To Recover Damages For Harm To His "Professional Reputation" As Plaintiff Does Not Seek Such Damages

Cisco alleges Plaintiff's counsel misrepresented to this Court that Ward would not seek recovery for harm to his "professional reputation" as, after the Court's Order issued, Plaintiff's counsel represented it would seek such damages.  This is demonstrably false.  Moreover, Cisco's argument is irrelevant because it misses the key distinction between lost profit damages and general reputational damages that served as the basis of this Court's Order.

Cisco's briefing in support of its underlying motion to compel fabricated a separate category of damages for harm to "professional reputation" in an attempt to make it appear that Plaintiff was seeking lost profits damages.  Cisco's motion to compel stated that Plaintiff will "argue that he is entitled to damages for reputational harm because of <u>lost business</u> because of the complained-of articles, though he admits that he cannot meet the burden to prove <u>lost income</u>."  *See* Motion to Compel D.E. 101 at 8.  Cisco's motion went on to make arguments concerning the fact that Plaintiff's "business has not suffered," that Plaintiff had not "<u>lost</u>

<u>business</u>," Plaintiff continues to conduct "a successful law practice", that his "business prospered" and that he is not "struggling financially."  *See* Motion to Compel D.E. 101 at 8-9.

Cisco sought to manufacture a category of damages called "professional reputation" to argue that Plaintiff was seeking lost profit damages.  The only Arkansas case Plaintiff's counsel had found that directly addresses a claim for harm to professional reputation as a distinct category of damages was *Erick Bowman Remedy Co., Inc. v. Jensen Salsbery Labs., Inc*., 17 F.2d 255 (8th Cir. 1926).  That ancient case involved business libel and applied the old common law distinction between defamation per se and presumed damages and defamation per quod where lost profit damages must be specifically pleaded.  *See id*. at 257.  There, the Court held that the plaintiff was required to prove its damages, and because the plaintiff was seeking to recover for loss of credit and lost business, it was required to allege with particularity its lost profits and then figure its economic loss.  *See id*. at 259.  *Erick Bowman*'s characterization of harm to professional reputation is not the type of claim made by Plaintiff in this case because Plaintiff has made no claim for special lost profit damages.

Instead, Plaintiff seeks to recover general damages for harm to his reputation similar to the damages in *Little Rock Newspapers, Inc. v. Fitzhugh*, 330 Ark. 561, 571 (1997).[2]  In *Fitzhugh*, the plaintiff, Michael Fitzhugh, a lawyer, had the misfortune of having the same last name as Eugene Fitzhugh, a person involved in the Whitewater Scandal during the Clinton Administration.  *See id*. at 561.  The Arkansas Democrat-Gazette ran a story about the Whitewater prosecutions; a story that included a picture of Michael Fitzhugh instead of Eugene Fitzhugh.  Michael Fitzhugh successfully sued for defamation.  *See id.* at 567.  On appeal, the newspaper argued that the jury's verdict should be reversed because Fitzhugh failed to produce any evidence demonstrating that he had suffered injury to his reputation.  *See id.* at 567, 571. The Supreme Court of Arkansas affirmed the jury's verdict.

---

[2] The damages Plaintiff claims in this case resemble those claimed in *Gertz*, wherein Gertz sought to recover damages to his reputation as a lawyer and a citizen.

8

The *Fitzhugh* Court's reasoning is instructive.  First, the Court considered the holding in *Gertz*, finding that in determining the amount of "actual" damages (general damages) "there need be no evidence which assigns an actual dollar value to the injury."  *See id.* at 571, citing *Gertz*, 418 U.S. at 349-50.  The Court then held that proof of damage to reputation is sufficient if it demonstrates that people believed the plaintiff to be guilty of the conduct asserted in the publication or that people thought less of the plaintiff as a result of the publications defamatory content.  *See id.* at 574.  In *Fitzhugh*, plaintiff testified that he believed that the publication damaged his reputation, people had told plaintiff that the article had the effect of damaging his reputation, plaintiff was the subject of conversation concerning the article at another law firm, friends contacted plaintiff and told him that they had read the article, plaintiff had been kidded about the article by some people but did not find it funny, and plaintiff testified that he did not want to be associated with an article concerning misconduct that was a stain on the legal profession.  *See id.* at 574.  Plaintiff testified that he had difficulty sleeping and would wake up during the night thinking about the article.  *See id.*

Importantly, in support of his claim for reputational damages, Fitzhugh also offered the testimony of former United States Attorney, and his former boss, Asa Hutchinson.  Mr. Hutchinson testified generally as to the effect that the article would have on a lawyer's reputation.  *See id.* at 577.  He also testified that it takes significant time to build a client base and to generate clients through experience and personal reputation and that from both a personal and professional stand point, a lawyer's chief asset is his reputation.  *See id.*  The Court concluded that the evidence adduced at trial was sufficient to demonstrate that Fitzhugh's reputation had been injured as a result of the article's publication.[3]

The differences between *Erick Bowman Remedy Co., Inc. v. Jensen Salsbery Labs., Inc*., and *Little Rock Newspapers, Inc. v. Fitzhugh* illustrates the fallacy of Cisco's attempt to recast

---

[3] The *Fitzhugh* Court did not make a distinction between "reputational" damages and "professional reputational" damages.

Plaintiff's claim as seeking damages for harm to Plaintiff's "professional reputation." The harm to professional reputation at issue in *Erick Bowman* was a euphuism for special damages resulting from lost profits. In contrast, although the testimony presented in support of Fitzhugh's claimed reputational damages included testimony about the importance of a lawyer's reputation, there was no lost profit damages claimed in that case. The reputational harm in *Fitzhugh* in no way involved calculating lost revenue, but rather supported plaintiff's claim to general damages for harm to his reputation—which included, but was not limited to, his reputation as a lawyer. Here too, evidence concerning Ward's reputation—including his reputation in his chosen profession—is evidence in support of a general damages claim. Cisco's labeling Plaintiff's claimed damages as "harm to professional reputation" does not turn Plaintiff's claim for general reputational damages into one for lost profit damages.

During the hearing on Cisco's motion to compel, when Cisco's counsel asked whether Plaintiff was seeking damages for professional reputation, Plaintiff's counsel responded that Plaintiff was not asserting Cisco's fake category of damages or sub-category of damages for harm to "professional reputation." Plaintiff's counsel's response was based in part on Cisco's briefing which had equated harm to professional reputation with lost profit damages. It was also terse; a reaction to Cisco's counsel's lack of decorum in interrupting this Court to ask its own questions not properly addressed to the Court. But, in any event, there was no misrepresentation to the Court as Cisco alleges in order to justify its motion for reconsideration. As the hearing continued, Plaintiff's position was clear. Directly after the snippet cited in Cisco's Motion for Reconsideration, Plaintiff's counsel had the following exchange with the Court concerning Plaintiff's claimed damages:[4]

The Court:            So, you are seeking damages for his professional reputation?

---

[4] The Court should not rely on Cisco's version of the transcript attached as Exh. A to its motion. In preparing the response to Cisco's motion, Plaintiff's counsel found several errors in the transcript provided by Cisco. Plaintiff objects to the use of the transcript as evidence in support of Cisco's motion as it not an accurate representation of the November 4, 2009 hearing before Judge Setser.

| | |
|---|---|
| Plaintiff's counsel: | We're seeking damages to his reputation. Him as a person. He is a person that happens to be a lawyer. What we are not seeking and I think what was at issue in the Albritton case and the cases we cited is that we're not seeking damages to his reputation for <u>lost profits</u>. We are not going to go in front of the jury and tell that Mr. Ward lost business because of those articles. |
| The Court: | Ok. Mr. Ward's deposition has been taken in this case, correct? |
| Plaintiff's Counsel: | Yes. |
| The Court: | Cisco's attorneys probably need to address this—what were his responses, how is he going to testify at trial about how his professional reputation has been damaged? |
| Defendant's Counsel: | Your honor, he had a few things in his testimony about that issue. One of the major things he discussed in his deposition was that he had lost potential clients. All that was through multiple layers of hearsay. He testified that he had been told that individuals had spoken with prospective clients who said I won't hire him because of the articles and so we think we're entitled to discover who those clients are, whether they ever hired Ward, whether they couldn't hire Ward because of a conflict of interest, whether the was too busy to take their cases. Another thing that is different in this case about Ward that was not present in the Albritton case is Ward made a claim for outrage. And, to support that claim, he has to show that he suffered mental anguish that was so severe a reasonable person could not be expected to endure it. And, that kind of claim, I think is relevant to show how much he worked, if his income, you know, increased by fifty percent, you know, the year after the articles, that probative evidence of whether he was suffering this terrible mental anguish. Not to mention whether it actually damaged his reputation in any way. |
| Plaintiff's Counsel: | Your honor, I have in front of me Mr. Ward's deposition. |
| The Court: | Ok. |
| Plaintiff's Counsel: | At page 7, Cisco asks him "Are you claiming damages to T. John Ward, Jr. PC (his business) indirectly in this case? He answers: No. At page 8, they say" "Since October of 2007 have your paychecks decreased? Answer: No. I made more in 2008 than I did in 2007.[5] |

---

[5] These deposition excerpts also demonstrate that Cisco's allegation that Plaintiff's counsel has refused to permit either Plaintiff or his wife testify about their finances is clearly not true. *See* Mot. at 14.

11

The Court:          Ok.  I think that resolves the income issue.  So, I'm going to deny the motion to compel with regard to the tax records and income statements.  As to the client list in his deposition, did Cisco ask him when he said that he lost clients, some people said they wouldn't hire him, did you ask him to identify the potential clients that he lost?

Cisco's motion also argues that Plaintiff's admission that he may offer testimony showing that people were dissuaded from working with him as a result of the accused articles somehow merits reconsideration.  *See* Mot. at 7.  Cisco appears to be seeking reconsideration of an issue that this Court resolved in Cisco's favor.  On the relevant issue of plaintiff's reputational damages, the ruled that that because Plaintiff would offer testimony at trial that certain people heard about the accused posts, and as a result thought less of Plaintiff and would not hire him, Plaintiff must identify those persons to Cisco.  The Court concluded:

The Court:          Ok.  I think that's what the real issue is who's going to be testifying in regard to the fact that these posts damaged his reputation to the extent that they wouldn't' hire him.  So, that will be my ruling in that regard.  I will not require the disclosure of the financial documents or disclosure of the client lists but I will require the disclosure of the identity of any witnesses that would testify or even if they're not going to be called as witnesses if they're going to be brought up at trial or if somebody else is going to be mentioning them anyone that would say they didn't hire Mr. Ward because of these posts.  (November 4, 2009 hearing at 33-32).

Cisco cannot seriously take issue with this Court's ruling when it was resolved in Cisco's favor.

It is clear this Court understood the distinction between general damages for harm to plaintiff's reputation, which does not require proof of financial loss, and special damages claimed for lost profits that require proof of financial loss.  During the hearing, this Court expressly distinguished damages for lost income:

The Court:          Ok.  So, I tried to do a little a little research on this issue, and I'm not real sure what—I know that an actual economic loss is not required to prove damage to your reputation.  I'm little leery wondering what plaintiff is going to get into his testimony to try to prove damage to his reputation.  I guess I would say at this point I'd be inclined to deny the motion to compel if the plaintiff is saying he's not seeking damages for <u>injury to his business of lost income.</u>

This Court made the proper distinction between lost profit damages (not claimed in this case) and harm to reputation (claimed in this case).  The Court's written Order reflects that distinction; denying Cisco's motion with respect to Plaintiff's financial documents because he is not seeking to recover lost profit damages and granting Cisco's motion with respect to discovery relevant to Plaintiff's reputational damages.  The Court's Order states:

> As to Requests for Production 4-5, 9, 11, and 17, plaintiff shall not be required to produce any tax returns or other documentation regarding his finances, <u>as he is not seeking damages for lost income</u>.  Further, Plaintiff shall not be required to produce any documents relating to new matters or clients since October 16, 2007.  Plaintiff shall, however, be required to identify any individuals who he claims allegedly learned of the statements at issue and thought less of plaintiff or decided not to hire plaintiff because of the statements.

*See* D.E. 138 (Magistrate Judge Setser's November 5, 2009 Order) at 2 (emphasis added).

Cisco's motion characterizes Plaintiff's conduct has springing a claim for harm to professional reputation on Cisco after the Court's hearing.  No such thing occurred.  Plaintiff did not advise Cisco that it was seeking to revive some claim for harm to professional reputation.  To the contrary, Counsel for Cisco sent an email to Plaintiff's counsel alleging that the snippet Cisco pulled from the Court's hearing demonstrated a misrepresentation to the Court.  Plaintiff's counsel referred Cisco to the other parts of the hearing transcript and explained that Cisco's attempt to recast Plaintiff's claimed damages into a subcategory of damages for harm to professional reputation was incorrect.  Nonetheless, Cisco brought its motion for reconsideration but has cited no case law in support of district category of "harm to professional reputation damages" to support its cause.

More importantly, this Court's Order was not based on any alleged misrepresentation about harm to "professional reputation" as Cisco asserts.  Instead, it was based on the fact that Plaintiff is not seeking to recover lost profit damages and thus his financial records are not relevant.  Moreover, any minimal relevance is far outweighed by Plaintiff's right to privacy and the right of Plaintiff's wife and business partners to keep their private financial records from

13

public view.  That is all the more the case here where Cisco sought such a wide range of financial documents spanning the last eight years—including documents created five years before the accused posts were even published.  Cisco could not demonstrate the required compelling need for Plaintiff's financial records.  Cisco lost the motion on the merits, just as it did in the *Albritton v. Cisco* case.  Cisco's failed motion is not cause for reconsideration.

> 2.    There Is No Merit To Cisco's Allegations That Plaintiff's Counsel Misrepresented That Plaintiff Would Not Offer A Damages Expert To Testify About His Alleged Damages As Plaintiff Does Not Have A Damages Expert

Cisco's second allegation of misrepresentation also misses the mark.  Cisco argues that, notwithstanding his counsel's representation to this Court that plaintiff would not designate an expert on his alleged damages, Plaintiff designated an expert to testify that his reputation has been injured by Cisco's widespread dissemination of the accused articles on the internet.

Cisco bases its allegations of misrepresentations on the following passage from the November 4, 2009 hearing:

| The Court: | Okay.  Okay.  That's on page seven of the motion.  First, how—this is to the plaintiff—are you going to have an expert report on the damages issues? |
|---|---|
| Plaintiff's Counsel: | No, your Honor |
| The Court: | It's just going to be plaintiff testifying about the injury to his reputation and injury to his professional reputation.  <u>He is not seeking lost profit damages or any kind of damages for lost revenues and won't offer an expert to testify about lost profit damages</u>. |

Plaintiff's counsel understood the Court to be asking whether plaintiff would offer the type of expert testimony offered in most tort cases, wherein an economist or similarly qualified expert takes the stand to tell the jury what plaintiff's damages award should be based on some economic model generated by the expert.  Plaintiff has not served an expert report to quantify his claimed damages in this case.

14

Cisco's argument to the contrary confuses the issue of reputational injury (a requirement of Plaintiff's liability case) with a calculation of Plaintiff's damages (offered to show the amount of damages to be awarded if the Plaintiff establishes liability). The issue again implicates remnants of the common law. Under the common law, statements like those made by Cisco accusing Plaintiff of criminal conduct were classified as defamatory per se and no independent evidence of injury to the plaintiff's reputation was required to establish liability. In 1998, Arkansas abolished the doctrine of presumed damages in defamation cases. Now, an Arkansas defamation plaintiff must prove reputational injury as part of his case in chief, before he is ever entitled to recover damages. *See Fitzhugh*, 330 Ark. at 572. Plaintiff retained an internet reputation expert to opine that plaintiff's reputation has been injured as a result of Cisco's decision to publish its defamatory statements on the internet. That expert, Mr. Campbell, is a liability expert on the issue of reputational injury.

Mr. Campbell is not a damages expert. Mr. Campbell is not an economist. His report includes no calculation at all, let alone the type of complicated calculation that would be required if he were offering an opinion in support of a claim to lost profit damages. Nor does Mr. Campbell opine as to the dollar amount that should be awarded for plaintiff's damages. Plaintiff has been clear: he intends to leave the amount of the damages awarded to the sound discretion of the jury to be determined upon proof at trial. Plaintiff's position is in accord with Arkansas law which makes a distinction between proof of injury to reputation and proof of damages. *See Lundell*, 98 F.3d at 365, n.12 (courts have recognized a distinction between proof of the fact that damages have been sustained and proof of the amount of those damages).

There was no misrepresentation to the Court concerning Plaintiff's damages claims; he is not seeking to introduce expert testimony concerning the amount of his damages. Nothing in Cisco's motion compels a different conclusion. Moreover, even if Plaintiff's statement had been a misstep, it still would not warrant giving Cisco unfettered access to Plaintiff's tax returns or financial documents because there is still no claim to lost profit damages in this case. Thus,

15

Cisco still cannot demonstrate the type of compelling need required to order eight years of plaintiff's financial records, and those of his wife and law firm partners, produced to Cisco.  This Court's prior Order is correct.

> 3.    There Is No Merit To Cisco's Request That The Court Reconsider Its Order Finding That Cisco Had Not Demonstrated A Compelling Need For Plaintiff's Tax Returns And Other Financial Records

Cisco's Motion for Reconsideration asks this Court to reconsider Cisco's "compelling need" argument explaining why it is entitled to reconsideration on that issue.  Unlike Cisco's other arguments, which at least attempt to create a reason for reconsideration, here Cisco simply asks for reconsideration without providing any basis for its request.  The "compelling need" standard and its application to the tax returns and other financial documents Cisco seeks was extensively briefed to the Court in the underlying motion.  *See* D.E. No. 113 at 14-26; and No. 130 at 11-22.  Cisco has simply copied and pasted from its prior briefing on this issue—briefing that the Court has already read, considered, and rejected.  There is nothing new in Cisco's motion warranting the extraordinary relief of reconsideration.

Moreover, Cisco's copied "compelling need" argument entirely ignores the countervailing interests this Court considered in denying Cisco's motion.  The Court was persuaded by the fact that Plaintiff is not seeking to recover lost profit damages, and consequently his financial records are not relevant.  Moreover, any minimal relevance is far outweighed by Plaintiff's right to privacy and the right of Plaintiff's wife and business partners to keep their private financial records from public view.  Denial of Cisco's motion was entirely correct, particularity in light of the fact that Cisco sought such a wide range of financial documents spanning the last eight years—documents created five years before the accused posts were even published.  Cisco could not demonstrate the required compelling need for Plaintiff's financial records when it first moved the Court.  Cisco lost its motion on the merits, just as it did in the *Albritton v. Cisco* case.  Cisco's failed motion is not cause for reconsideration.

16

D.    Cisco's Newly Offered Argument And Authorities Are Improper In A Motion For
      Reconsideration

Cisco's Motion for Reconsideration improperly raises arguments not raised in its

underlying motion to compel.  The most egregious example is Cisco's belated assertion that

Texas law controls the issues previously decided by this Court.  *See* Mot. at 6, n. 1 & 2.  Cisco's

Motion newly cites Texas cases and argues that those cases control the resolution of the issues

presented.  *See* Mot. at 5-6, citing *Parkway Co. v. Woodruff*, 901 S.W.2d 434, 444 (Tex. 1995);

*Saenz v. Fidelity & Guaranty Ins. Underwriters*, 925 S.W.2d 607, 614 (Tex. 1996).  Cisco

ignores that it never before asserted to this Court that Texas law applied to its motion.  The

issues before this Court were resolved on Arkansas law because the vast majority of the cases

cited by Cisco were from Arkansas and the Eighth Circuit.  Now that Cisco has lost its bid under

Arkansas law, it asks this Court to revisit its motion applying Texas law to see if it can obtain a

more favorable result.  Cisco's gamesmanship is improper.[6]

Moreover, Cisco's motion for reconsideration must fail on the merits.  The issue squarely

presented with respect to Cisco's request to compel the production of Plaintiff's tax returns and

other private financial records was whether Plaintiff had a right to privacy in those documents,

and if so, whether Cisco had demonstrated the requisite "compelling need" to order those

documents produced.  *See* D.E. No. 113 at 14-26; and No. 130 at 11-22.  This Court resolved the

privacy issues in Plaintiff's favor, finding that Cisco had not shown a compelling need for the

documents in light of the fact that Plaintiff was not seeking lost profit damages.  *See* D.E. 138 at

2.  Cisco's motion does not address the Court's Order in this respect, choosing instead to remake

the same failed arguments it previously briefed to the Court.  *See* Mot. at 5-8 (rearguing that

Plaintiff will claim lost business, rearguing Cisco's need for Plaintiff's financial documents, and

---

[6] Cisco also newly claims that it would agree to a protective order—an offer Cisco failed to make until after it lost
its motion to compel.  See Mot. at 8.  Cisco's belated argument is an improper basis upon which to grant
reconsideration.  Moreover, it does nothing to undermine the minimal relevance of Cisco's request given that
Plaintiff is not seeking lost profit damages or that Cisco's request fails for over breath.  A protective order cannot
substitute for Plaintiff's statutory right to keep his financial records private, particularly where, as here, those
documents implicate the privacy interests of third parties.  Moreover, Cisco's proposed protective order would not
prevent the use of Plaintiff's tax returns during the upcoming public trial.

rearguing that Cisco has no alternative source of financial discovery).  Cisco's arguments are no more meritorious now, repackaged as a motion for reconsideration, than they were the first time Cisco raised them before this Court.

This Court is not required to reconsider its Order simply because it failed to adopt Cisco's arguments.  Cisco's motion for reconsideration does not even attempt to demonstrate that this Court misapplied the facts to Arkansas law; choosing instead to make new arguments based Texas law.  Cisco's "do-over" is an insufficient basis upon which to undo this Court's prior Order.

**III.    Conclusion**

For all of the forgoing reasons and those briefed in Plaintiff's Response and Reply to Cisco's Motion to Compel, Plaintiff respectfully requests that this Court deny Cisco's motion for reconsideration in its entirety.

Respectfully Submitted,

Nicholas H. Patton (SBN: 63035)
Courtney Towle
Patton, Tidwell & Schroeder, LLP
4605 Texas Boulevard
Texarkana, Texas 75503
903.792.7080 / 903.792.8233 (Fax)
Email: nickpatton@texarkanalaw.com
Email: ctowle@texarkanalaw.com

Patricia L. Peden
LAW OFFICE OF PATRICIA L. PEDEN
1316 67th Street
Suite 6
Emeryville, CA 94608
Telephone: 510-268-8033
Email: ppeden@pedenlawfirm.com

18

James A. Holmes
Texas Bar No. 00784290
THE LAW OFFICE OF JAMES HOLMES, P.C.
635 South Main, Suite 203
Henderson, Texas 75654
903.657.2800 / 903.657.2855 (Fax)

ATTORNEYS FOR PLAINTIFF

## CERTIFICATE OF SERVICE

This is to certify that on this 30th day of November, 2009, a true and correct copy of the foregoing document was served electronically via the Court's CM/ECF system upon:

Richard E. Griffin                              Attorneys for Defendant Cisco Systems, Inc.
Charles Babcock
Crystal Parker
Kurt Schwarz
JACKSON WALKER, LLP
1401 McKinney
Suite 1900
Houston, Texas 77010

_____
Nicholas H. Patton