IN THE UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF ARKANSAS
TEXARKANA DIVISION

| | | |
|---|---|---|
| JOHN WARD, JR. | § | |
| | § | |
| Plaintiff | § | No. 4:08cv4022 JLH |
| | § | |
| v. | § | JURY TRIAL DEMANDED |
| | § | |
| CISCO SYSTEMS, INC. | § | |
| | § | |
| Defendant | § | |

**PLAINTIFF WARD'S RESPONSE TO CISCO SYSTEMS, INC.'S
MOTION FOR PROTECTION AND MOTION TO QUASH THE
DEPOSITION NOTICE OF MARK CHANDLER**

Dockets.Justia.com

## <u>TABLE OF CONTENTS</u>

Page(s)

I.      INTRODUCTION ................................................................................................ 1

II.     FACTUAL BACKGROUND ............................................................................... 2

        A.      Evidence Show Chandler's Direct Connection To The Events
                Underlying This Lawsuit ........................................................................ 2

        B.      There Is No Evidence That Chandler Is Unavailable For
                Deposition Or Would Be Inconvenienced By Sitting
                For A Deposition .................................................................................... 5

        C.      Chandler's Albritton Deposition Was Taken Without The
                Evidence Available To Ward And Under Time Constraints ................... 5

III.    APPLICABLE LAW AND ARGUMENT .......................................................... 6

        A.      Cisco's Motion Should Be Denied Because Chandler Has Unique
                Personal Knowledge Of The Facts At Issue .......................................... 6

        B.      Sitting For A Deposition Will Not Subject Chandler To
                An Undue Burden Or Abuse .................................................................. 9

        C.      Taken Before Availability Of The Albritton Trial Record And
                Substantial Document Discovery, The Albritton Deposition Transcript
                Is An Unacceptable Substitute For Chandler's Deposition ................... 10

        D.      Because Chander Is A Cisco Officer He Is Subject To Deposition
                By Notice ............................................................................................ 11

IV.     CONCLUSION ................................................................................................ 12

## TABLE OF AUTHORITIES

**CASES**                                                                **PAGE(S)**

*Brittain v. Stroh Brewery Co.,*
 136 F.R.D. 408 (M.D.N.C.1991) ...................................................................................10

*Celerity v. Ultra Clean Holding*
 No. C05-4374, 2007 WL 205067 (N.D. Cal. Jan. 25, 2007) ....................................6, 9, 12

*Criterion 508 Solutions, Inc. v. Lockheed Martin Services, Inc.,*
 255 F.R.D. 489 (S.D.Iowa 2008) ..................................................................................12

*General Dynamics Corp. v. Selb Mfg. Co.,*
 481 F.2d 1204, 1212 (8th Cir.1973) ..............................................................................6

*Gulf Oil v. Bernard,* 452 U.S. 89,
 102 n. 16, 101 S.Ct. 2193, 68 L.Ed.2d 693 (1981) .........................................................10

*In re McCorhill Publishing, Inc.,*
 91 B.R. 223 (Bankr. S.D.N.Y 1988) ................................................................................6

*Iowa Beef Processors, Inc. v. Bagley,*
 601 F.2d 949, 954 n 5 (8th Cir.) .....................................................................................6

*Iowa Beef Processors, Inc. v. Smith,*
 441 U.S. 907, 99 S.Ct. 1997, 60 L.Ed.2d 376 (1979);......................................................6

*Medlin v. Andrew,*
 113 F.R.D. 650, 653 (M.D.N.C.1987) .............................................................................6

*Miscellaneous Docket Matter No. 1 v. Miscellaneous Docket Matter No. 2,*
 197 F.3d 922, 925-26 (8th Cir. 1999);.............................................................................9

*Motsinger v. Flynt,*
 119 F.R.D. 373 (M.D.N.C.1988) .....................................................................................6

*Oppenheimer Fund, Inc. v. Sanders,*
 437 U.S. 340 (1978).......................................................................................................8

*Patterson v. Avery Dennison Corp.,*
 281 F.3d 676 (7th Cir. 2002) ..........................................................................................9

*Salter v. Upjohn Co.,*
 593 F.2d 649 (5th Cir. 1979) .......................................................................................6, 9

*Travelers Rental Co., Inc. v. Ford Motor Co.,*
    116 F.R.D. 140 (D. Mass. 1987)........................................................................12

*Tri-Star Pictures, Inc. v. Unger,*
    171 F.R.D. 94 (S.D.N.Y. 1997) ...........................................................................8

*Wal-Mart Stores, Inc. v. Vidalakis,*
    2007 WL 4591596 (W.D. Ark. 2007)....................................................................9

**OTHER AUTHORITIES:**

8 *Wright & Miller, Federal Practice and Procedure* § 2037 (1986 Supp.) .....................................6

Comes now, Plaintiff John Ward, Jr., ("Ward") and files this response to Cisco Systems, Inc.'s ("Cisco") Motion for Protection and Motion to Quash the Deposition Notice of Mark Chandler.

## I.      Introduction

Ward properly noticed Mark Chandler's deposition — clearly a Cisco officer as he is defendant's Senior Vice President, General Counsel, and Secretary.  Instead of producing him for deposition, Cisco argues he needed to be subpoenaed.  Regardless, Cisco argues Chandler should not be deposed because he has no relevant knowledge, making a deposition overly burdensome and harassing.  These arguments are false and self-serving.

Cisco simply cannot meet the high burden it faces in its present motion and cannot demonstrate that Chandler's deposition is merely abusive or harassment. Chandler, as documents, deposition testimony, and trial testimony demonstrates, was directly involved with the Cisco employees responsible for the defamatory blog postings at the center of this case. Evidence also indicates Chandler may be the only source of information on several topics.  As set forth below, it is clear Chandler was not simply an executive far-removed from the actions central to this case but rather a key figure and that he likely has unique relevant information. Cisco cries undue burden, but proffers nothing but a conclusory statement that Chandler is busy tending to Cisco's legal needs and therefore cannot sit for deposition. This argument is baseless.

Cisco also tries to tie Ward's hands offering him use of Chandler's deposition in the *Albritton* case in exchange for foregoing Chandler's deposition.  But this offer ignores the substantial discovery in Ward's case which Albritton did not have and therefore could not address in Chandler's deposition.  The offer is simply an attempt to stick Ward with a poor substitute for proper discovery.

Lastly, Cisco's argument that Chandler has to be subpoenaed is meritless.  As a Cisco officer, Chandler's deposition was properly noticed.  Cisco's own cited authority accords.  And Cisco's motion itself is evidence that it realized Chandler, by not appearing, could be subjected to sanctions under Rule 37 absent its filing.

Cisco's attempt at prevent Ward from pursuing proper discovery and deposing Chandler is baseless, without good cause, and should be denied.

## II.    Factual Background

### A. *Evidence Shows Chandler's Direct Connection To The Events Underlying This Lawsuit*

Mark Chandler is Cisco's Senior Vice President, General Counsel, and Secretary.  Exh. A (Chandler Biography). He has been since 2001, well before Richard Frenkel anonymously published the accused Troll Tracker blog postings in October 2007, and remains in that position today.  *Id.*  Despite his impressive title, he was not far removed from the issues in this case. From the time of the accused postings through the time Frenkel revealed his identity as the Troll Tracker and then left Cisco, Chandler was directly involved with Frenkel and other Cisco employees who knew of and encouraged the Troll Tracker's postings.

The accused October 18, 2009 post resulted from a suggestion to Frenkel by Mallun Yen and John Noh. Exh. B (Cisco Privileged.000011-13).

A suggestion to Frenkel by Mallun Yen and John Noh triggered Frenkel to post the accused October 18, 2009 blog. Exh. B (Cisco Privileged.000011-13).  Chandler was in constant contact with each of  these  Cisco employees.  Chandler was, and is, Yen's direct supervisor. Exh. C (11/18/09 Yen Deposition Tr. (rough) at pg. 18:15-17).  Head of the legal department, Frenkel not only worked for Chandler, but emailed with Chandler and was someone Frenkel sought advice from. Exh. D (11/19/09 Noh Deposition Tr. (rough) at pp. 90-91); Exh. E (11/18/09 Frenkel Deposition Tr. (rough) at pg. 181).  Frenkel was but one degree removed from directly reporting to Chandler as a direct report to Yen. Exh. F (11/18/08 Chandler Deposition Tr. from the *Albritton* case at 94:10-12).  And Cisco Public Relations guru John Noh was, at the time of the accused blog postings through at least the time Frenkel outed himself, Chandler's primary public relations liaison.  Exh. D (11/19/09 Noh Deposition Tr. (rough) at pg. 20).

Cisco's own documents demonstrate not only the relationship generally between these Cisco players, but also that Chandler was in the loop and weighing in as soon as Frenkel raised issue with ESN filing a lawsuit against Cisco.

- On 10/17/07, Chandler and Yen began discussing possible counsel and strategy for the ESN case. Exh. B (Cisco Privileged.000178-180)

- On 10/18/07, Yen emailed Chandler regarding the filing of the ESN complaint, suggesting the filing was newsworthy, and directly informing Chandler that Yen contacted potential local counsel about the filing. Exh. B (Cisco Privileged.000015-16)

Following this email, on a "forward", Yen, Noh, and Frenkel decided that the Troll Tracker should blog about the ESN filing. Exh. B (Cisco Privileged.000011-13). Shortly thereafter, the accused October 18, 2007 post appeared — which Yen forwarded to other Cisco employees and Noh commented was "brilliant". Exh. G (Ward 001223, Ward 001220-21).

On more than one occasion, Chandler received patent-litigation statistics from Frenkel, statistics he complied as both a Cisco employee and as the Troll Tracker:

- 10/18/07 email string including Chandler, Frenkel, and Yen wherein Frenkel compiles and discusses a "Fair Comparison of Patent Litigation Statistics, 1990 v. 2006 v. 2007". Exh. B (Cisco Privileged.000119-121)

- 12/10/07 email string including Chandler, Noh, and Frenkel wherein the Troll Tracker blog is discussed and statistics from the blog are cited for use in a Chandler interview with the Washington Post. Exh. G (Ward 001199-1201)

In this last document, Noh wrote to Chandler and copied Frenkel, setting up an interview and citing patent litigation statistics published by the Troll Tracker. In his email, Chandler raises no question as to why Frenkel — and no other attorney — is copied. Responding to Noh, and copying Frenkel, Chandler comments about imbalances in the patent system. *Id.* According to Noh, Chandler is the only one who can testify about what he meant. Exh. D (11/19/09 Noh Deposition Tr. (rough) at pg. 86-87). And Noh admitted Chandler and Frenkel agreed as to problems with the patent system. Exh. D (11/19/09 Noh Deposition Tr. (rough) at pg. 93-94).

3

That Chandler's and Frenkel's views on patent litigation and the Eastern District of Texas are aligned is demonstrated elsewhere.  In a December 11, 2007 email string, again including Noh and Frenkel, they discuss the Troll Tracker blog and Frenkel raised a concern about litigation settlements in the Eastern District.  Noh suggests Chandler raise that concern in a press interview and Frenkel states Chandler already knows about it. Exh. G (Ward 001194-98).

It is also clear that Chandler knew Frenkel was the Troll Tracker, at least immediately before Frenkel publicly revealed himself.  Exh. F (11/18/08 Chandler Deposition Tr. from the *Albritton* case at 19:7-12).  But Chandler's actions in the wake of this revelation are not clear.  Noh did not remember what actions Chandler took.  Exh. D (11/19/09 Noh Deposition Tr. (rough) at pg. 52).  It is clear that, in the immediate wake of Frenkel's outing, Yen tried to explain to Chandler how the accused blog postings came about.  Exh. G (Ward001267-71)(email string including 2/25/08 emails between Yen and Chandler, copying Frenkel, regarding Frenkel's ESN blog postings)(Yen to Chandler, "I just want you to be aware of the full facts.")

Less than a month thereafter, Cisco launched an internal investigation into Frenkel's blogging activities.  During the *Albritton* trial, Frenkel testified that Cisco investigated his blogging in the wake of his revealing he was the Troll Tracker:

> There was a period of time that there was an investigation and that I was asked to back off from all the patent-litigation cases while they looked into not only this post but every post I had ever written, all 185 of them.

Exh. H (9/16/09 Albritton Trial Transcript, pg. 702:22-25). According to Frenkel, the investigation spanned from about mid-March to late April 2008.  *Id.* at pg. 703:4-5.  Noh didn't know any details about the investigation. Exh. D (11/19/09 Noh Deposition Tr. (rough) at pp. 47 & 77).  Neither did Yen, though it appears Chandler was involved. Exh. C (11/18/09 Yen Deposition Tr. (rough) at pp. 97-99).

Frenkel also testified that after he revealed he was the Troll Tracker, he had a conversation with Chandler and, though he could not remember what was said, he stated it was not pleasant.  Chandler was "not very happy".  Exh. H (9/16/09 *Albritton* Trial Transcript, pg.

716:24, *see also* pp. 716:14-717:9).  Though Frenkel didn't "have very good memories" of their conversation, he testified that he could not remember what was said. *Id.* at 717:3.  Chandler may remember.

Noh testified that he does not know if Chandler has made public statements about this case, the Troll Tracker, Johnny Ward, or the ESN case after Noh left the company in May 2008. Exh. D (11/19/09 Noh Deposition Tr. (rough) at pg. 168-169).  Chandler is the only one who can address this.

> B. *There is No Evidence That Chandler Is Unavailable for Deposition or Would Be Inconvenienced by Sitting For a Deposition*

Cisco, in its motion, states that Chandler could not appear on the noticed deposition date (Motion at 2), but that it could proffer dates for Chandler (*Id.*), and that sitting for a deposition would "place an 'undue burden' on Chandler because he is extremely busy attending to the legal needs of Cisco…"  (Motion at 6).  But Cisco never identifies a specific scheduling conflict or reason that Chandler would be unduly burdened by sitting for a few hours for deposition — no upcoming trial, no illness, nothing specific at all.

> C. *Chandler's Albritton Deposition Was Taken Without the Evidence Available to Ward, and Under Time Constraints*

Chandler, when noticed by plaintiff in the related *Albritton v. Cisco* case, appeared for deposition.  The deposition took place on November 18, 2008, well before Frenkel's September 2009 trial testimony about his conversation with Chandler after Frenkel revealed himself, and prior to Frenkel's testimony about Cisco's investigation into his blogging activities. Chandler's deposition was taken a year before Ward deposed Yen, Noh, and Frenkel in this case.  Further, at the outset of the deposition, Cisco's counsel cautioned Albritton's counsel that plaintiff had less than 10 hours deposition time remaining and eight depositions to take, and that Cisco would not agree to extended time.  Exh. F (11/18/08 Chandler Deposition Tr. from the *Albritton* case at 9:7-22).

### III.      Applicable Law and Argument

Cisco faces a steep burden of demonstrating good cause to prevail on its motion to quash and for protection. *Iowa Beef Processors, Inc. v. Bagley,* 601 F.2d 949, 954 n. 5 (8th Cir.), *cert. denied sub nom. Iowa Beef Processors, Inc. v. Smith,* 441 U.S. 907, 99 S.Ct. 1997, 60 L.Ed.2d 376 (1979); see *General Dynamics Corp. v. Selb Mfg. Co.,* 481 F.2d 1204, 1212 (8th Cir.1973), cert. denied, 414 U.S. 1162, 94 S.Ct. 926, 39 L.Ed.2d 116 (1974).  Nowhere in its motion does Cisco even address this burden, much meet it.

Cisco's own cited authority demonstrates that it is highly unusual to altogether prohibit a deposition:  "It is very unusual for a court to prohibit the taking of a deposition altogether and absent extraordinary circumstances, such an order would likely be in error." *Celerity v. Ultra Clean Holding,* No. C05-4374, 2007 WL 205067 at *3 (N.D. Cal. Jan. 25, 2007) (citing *Salter v. Upjohn Co.,* 593 F.2d 649, 651 (5th Cir. 1979) Exhibit F to Dkt. No. 152.  Protective orders prohibiting depositions are rarely granted. *Medlin v. Andrew*, 113 F.R.D. 650, 653 (M.D.N.C.1987); *Motsinger v. Flynt,* 119 F.R.D. 373, 378 (M.D.N.C.1988) ("Absent a strong showing of good cause and extraordinary circumstances, a court should not prohibit altogether the taking of a deposition."); *In re McCorhill Publishing, Inc.,* 91 B.R. 223, 225 (Bankr.S.D.N.Y.1988) ("A prohibition against the taking of an oral deposition is a very unusual procedure and a party who seeks a protective order prohibiting such a deposition bears a heavy burden of demonstrating good cause for such an order."); see also 8 *Wright & Miller, Federal Practice and Procedure* § 2037 (1986 Supp.).

As Ward demonstrates below, Cisco has not met the "heavy burden" of demonstrating that this is one of the unusual cases in which altogether prohibiting Chandler's deposition is warranted.

### A. *Cisco's Motion Should Be Denied Because Chandler Has Unique Personal Knowledge of the Facts at Issue*

Chandler has unique personal knowledge as to the facts at issue in this case.  Chandler worked directly with the three Cisco employees — Yen, Frenkel and Noh — that decided the

Troll Tracker should blog about the ESN filing.  He directly supervised Yen and was one report removed from Frenkel.   Noh was Chandler's primary public relations liaison.  Yen suggested to him that ESN's filing may warrant a "news story".  Yen kept him updated on the ESN case, with Chandler weighing in on potential counsel and litigation strategy.

Chandler received patent-litigation statistics both directly from Frenkel, on the same day as one of the accused posts, and less than two months later from Noh, who passed along similar statistics directly from the Troll Tracker website while copying Frenkel.  The Troll Tracker statistics appear in a format similar to those Frenkel earlier sent to Chandler.  Chandler's reliance on Frenkel's and the Troll Tracker's information, conclusions from Frenkel's inclusion on the email from Noh, discussions with Noh (who knew Frenkel was the Troll Tracker) and Frenkel about the Troll Tracker are all topics relevant to Ward's claims.

Documents and testimony show that Chandler's and Frenkel's and the Troll Tracker's views on patent litigation and the Eastern District of Texas align.  Frenkel's trial testimony shows he viewed Chandler as a mentor and sought him out for advice and discussion about his career.  These, too, are relevant discovery topics.

Cisco's six week internal investigation into Frenkel's blogging activities is also a proper topic for Chandler.  Both Frenkel and Yen were in his department.  Yen could not answer questions about the investigation; Frenkel knew the investigation happened but did not have details of it.  Chandler, as head of the department, likely either directed the investigation or can identify who did. The outcome of the investigation is also a ripe discovery topic and one Yen did not answer.  Who decided Frenkel would not face discipline, who decided no one would face discipline, who pulled Frenkel away from his regular duties during the investigation — these questions are unanswered and Ward would put them to Chandler, the head of the department and for whom Yen and Frenkel were working.

Ward's discovery to date plainly demonstrates Chandler was not far removed from the Troll Tracker blogs or Cisco's actions in relation thereto; rather Chandler is likely to have relevant information regarding Frenkel's, Yen's and Noh's activities related to the blog.  And,

for several topics, deposition and trial testimony indicates Chandler is the only potential source of information.

In its motion, Cisco suggests that Chandler's deposition is unnecessary because, in the *Albritton* case, "[p]laintiff did not even offer the testimony of Chandler at trial." Motion at 6. Leaving aside whether the *trial strategy* of a different plaintiff should preclude Ward from seeking *discovery* (which it should not and Cisco cites no authority in support), discovery should not be narrowed to only that evidence that will be used at trial. Rule 26(b)(1) governs the scope of discovery:

> *Parties may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense* — including the existence, description, nature, custody, condition, and location of any documents or other tangible things and the identity and location of persons who know of any discoverable matter. For good cause, the court may order discovery of any matter relevant to the subject matter involved in the action. Relevant information need not be admissible at the trial if the discovery appears reasonably calculated to lead to the discovery of admissible evidence.

(emphasis supplied). The rule allows for broad discovery as opposed to the narrow scope Cisco advocates for in its motion. *Tri-Star Pictures, Inc. v. Unger,* 171 F.R.D. 94, 102 (S.D.N.Y. 1997)("Relevance for discovery purposes is an extremely broad concept which 'has been construed broadly to encompass any matter that bears on, or reasonably could lead to other matters that could bear on, any issue that is or may be in the case.'") (citing *Oppenheimer Fund, Inc. v. Sanders,* 437 U.S. 340, 351 (1978)). Therefore, regardless of whether Albritton called Chandler at his trial, Ward is not precluded from seeking discovery from Chandler.

Likewise, the Court should look past Cisco's self-serving conclusion that, because Chandler testified he did not know Frenkel was the Troll Tracker at the time of the accused posts, his deposition is not needed. Motion at 6. Whether or not Chandler knew as of October 2007 that Frenkel was the Troll Tracker is too narrow a test. Why Chandler adopted information from the Troll Tracker blog and sought to pass it along to the press, why Chandler did not question Frenkel's inclusion on emails discussing the Troll Tracker well before Frenkel outed

himself, whether Chandler led the investigation into Frenkel's blogging activities and determined whether disciplinary action was necessary — these are all topics on which Chandler may have knowledge and which are relevant to Ward's claims.  Cisco's assertion that Chandler "has no discoverable information" and therefore should not be deposed is simply unacceptable.

> B.      *Sitting for a Deposition Will Not Subject Chandler to an Undue Burden or Abuse*

As demonstrated above, Chandler was not far removed from the Cisco employees responsible for the accused blog postings — he supervised them and worked directly with them. After Frenkel revealed himself, Chandler discussed the postings with him.  He may have even spearheaded the investigation into the postings.  Plaintiff is entitled to find out.

Although courts have recognized the potential for abuse inherent in noticing depositions of high level officials, such abuse results where the noticed official is "removed from the daily subjects of the litigation" or where the official "has no unique personal knowledge of the facts at issue".   *Celerity*, 2007 WL 205067 at *3 (citations omitted).  There is no danger for such abuse in deposing Chandler because he was closely involved in the events underlying this action and he has unique personal knowledge.  Thus, Cisco's cited authority is inapposite because those cases address depositions of high-level executives with no personal knowledge of the facts.  *See* Motion at 5 citing *Wal-Mart Stores, Inc. v. Vidalakis,* 2007 WL 4591596 at *1 (W.D. Ark. 2007) attached as Exhibit E to Motion; *Miscellaneous Docket Matter No. 1 v. Miscellaneous Docket Matter No. 2*, 197 F.3d 922, 925-26 (8th Cir. 1999); and *Salter v. Upjohn Co.,* 593 F.2d 649, 651 (5th Cir. 1979).[1]

Plaintiff can demonstrate that he sought the requested discovery from other sources, but that discovery from Chandler is necessary.  Plaintiff deposed Noh, Yen, and Frenkel, but they have testified they don't remember the details of conversations with Chandler or that Chandler is the one to address. Thus, unlike the plaintiff in *Patterson v. Avery Dennison Corp.,* 281 F.3d

---

[1] Cisco's citation to *Richardson v. Arco Chem. Co.,* No. 95-6185, 1996 WL 529999 at *2 (E.D. Pa. Sept. 19, 1996) is misplaced as that case addressed a trial subpoena of the president of the defendant company, quashing the subpoena in part because *his deposition transcript was available*.   In the event Cisco's present motion is granted, Ward would be left without even a deposition transcript from Chandler to introduce at trial.

676, 679, 681-82 (7th Cir. 2002), who had not demonstrated the unavailability of discovery from other means, Ward's discovery efforts point to Chandler.   Cisco's own witnesses' testimony points to Chandler.

Cisco argues that "[a]ttending the deposition would place an 'undue burden' on Chandler because he is extremely busy attending to the legal needs of Cisco…".[2]   Motion at 6.   But Cisco's conclusory argument lacks any substance.  In essence, Cisco says that because Chandler has a demanding job, spending less than seven hours sitting for deposition creates an undue burden.  Following this argument, any time someone with a demanding job is compelled to sit for deposition, he faces an undue burden.

This is plainly insufficient to prevail on a motion to quash and for protection.  To prevail, Cisco must "make a specific demonstration of facts in support of the request as opposed to conclusory or speculative statements about the need for a protective order and the harm which will be suffered without one." *Brittain v. Stroh Brewery Co.,* 136 F.R.D. 408, 412 (M.D.N.C.1991). *See also Gulf Oil v. Bernard,* 452 U.S. 89, 102 n. 16, 101 S.Ct. 2193, 2201 n. 16, 68 L.Ed.2d 693 (1981). This requirement "furthers the goal that the Court only grant as narrow a protective order as is necessary under the facts." *Brittain,* 136 F.R.D. at 412.

Cisco fails to identify a specific conflict or reason that Chandler would be unduly burdened by sitting for a few hours for deposition.[3]   That he is busy at work simply cannot be enough of a burden to overcome legitimate discovery.

C. *Taken Before Availability of the Albritton Trial Record and Substantial Document Discovery, The* Albritton *Deposition Transcript is an Unacceptable Substitute for Chandler's Deposition*

In its motion, Cisco states that it offered "to permit Plaintiff to use Chandler's deposition in the Albritton case at trial. Plaintiff cannot complain that counsel in the Albritton case did not do a sufficient job deposing Plaintiff… Ward's lead attorney in this case, took the deposition."

---

[2] Notably, in the *Albritton v. Cisco* case, Chandler's deposition was noticed and, without objection to the notice or claims of undue burden, Chandler appeared.
[3] Though Cisco states that Chandler was unavailable on the date his deposition was noticed for, that date has long since passed and his availability for that date need not be addressed now as it is moot.

Motion at 3.  Though it would deprive Ward of an opportunity to depose Chandler, the offer might appear workable — until examining the circumstances of Chandler's deposition in *Albritton*.

Chandler's *Albritton* deposition was taken under strict time constraints. Exh. H (11/18/08 Chandler Deposition Tr. from the *Albritton* case at 9:7-22).  Ward, however, will have a full seven hours if necessary to thoroughly depose Chandler.   Also, Chandler was deposed in November 2008, well before Frenkel's September 2009 trial testimony about his conversation with Chandler after Frenkel revealed himself, and prior to Frenkel's testimony about Cisco's investigation into his blogging activities. Frenkel's trial testimony was the first time Cisco reveled there was an internal investigation into his blogging. Albritton could not question Chandler about the investigation, but as it is now known, Ward can.   Further, Chandler's deposition was taken a year before Ward deposed Yen, Noh, and Frenkel in this case.  In those depositions, the deponents indicated they had interactions with Chandler but could not recall the details — Ward can explore this with Chandler whereas Albritton could not.

Because Ward has benefit of additional information that Albritton did not have in advance of his Chandler deposition, and because Ward does not have the time constraints imposed on Albritton during the Chandler deposition, Chandler's deposition in the *Albritton* case is an unacceptable substitute for Chandler's deposition testimony in this case.

D.  *Because Chandler is a Cisco Officer, He is Subject to Deposition by Notice*

There is no dispute that Chandler is a high-level executive at Cisco — he is Cisco's Vice President, General Counsel, and Secretary.  And as a Cisco officer, he is subject to deposition by notice (Rule 30(b)(1)), and can be sanctioned for not appearing (Rule 37(d)). Indeed, Cisco's present motion appears aimed at avoiding sanctions.  *See* Rule 37(d)(2)(requiring filing a motion for protective order prior to the time the deposition is noticed).  As Rule 37(d)(1)(A)(i) details, a court may order sanctions where "a party or *party's officer, director, or managing agent*… fails, after being served with *proper notice*, to appear for that person's deposition…".  As a Senior

Vice President at Cisco, Chandler falls into the category of defendant's "officer, director, or managing agent".[4]

Cisco's own authority demonstrates that high level executives of a party to a lawsuit are subject to deposition by notice. *Celerity,* 2007 WL 205067 at *1, *3, and *5 (deferring *noticed depositions* of plaintiff's top two executives)("Virtually every court that has addressed *deposition notices* directed at an official at the highest level or "apex" of corporate management…")(emphasis supplied). The authority Ward cited to Cisco during meet and confer demonstrates the same. *Travelers Rental Co., Inc. v. Ford Motor Co.,* 116 F.R.D. 140, 114 (D. Mass. 1987)(considering *noticed depositions* of several high-ranking executives at defendant company); *see also Criterion 508 Solutions, Inc. v. Lockheed Martin Services, Inc.,* 255 F.R.D. 489, 493 (S.D. Iowa 2008)(considering sanctions where plaintiff's properly noticed officer failed to attend deposition).

As Chandler is a high-ranking executive at Cisco, Ward properly compelled his deposition by notice.

## IV.    Conclusion

For all the forgoing reasons, Plaintiff respectfully requests that Cisco's motion be in all things DENIED and that the Court order Cisco to provide dates for Chandler's deposition.

Respectfully Submitted,

Nicholas H. Patton (AR Bar No. 63035)
Email: nickpatton@texarkanalaw.com
Courtney Towle
Email:  ctowle@texarkanalaw.com
Patton, Tidwell & Schroeder, LLP
4605 Texas Boulevard
Texarkana, Texas 75503
903.792.7080 / 903.792.8233 (Fax)

---

[4] As Chandler was not subpoenaed and was properly noticed, Cisco's citation to Rule 45 is misplaced.

12

Patricia L. Peden
LAW OFFICE OF PATRICIA L. PEDEN
1316 67th Street, Suite 6
Emeryville, CA 94608
Telephone: 510-268-8033
Email: ppeden@pedenlawfirm.com

James A. Holmes
Texas Bar No. 00784290
THE LAW OFFICE OF JAMES HOLMES, P.C.
635 South Main, Suite 203
Henderson, Texas 75654
903.657.2800 / 903.657.2855 (Fax)

ATTORNEYS FOR PLAINTIFF

## CERTIFICATE OF SERVICE

This is to certify that on this 3rd day of December, 2009, a true and correct copy of the foregoing document was served electronically via the Court's CM/ECF system upon:

Richard E. Griffin                              Attorneys for Defendant Cisco Systems, Inc.
Charles Babcock
Crystal Parker
Kurt Schwarz
JACKSON WALKER, LLP
1401 McKinney
Suite 1900
Houston, Texas 77010

Nicholas H. Patton