# EXHIBIT "C"

Dockets.Justia.com

### Page 1

IN THE UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF ARKANSAS
TEXARKANA DIVISION

---

REPORTER'S TRANSCRIPT

---

JOHN WARD, JR., )
        )
   Plaintiff, )
        )
vs )  No. 08-4022
        )
CISCO SYSTEMS, INC. AND )
RICK FRENKEL, )
        )
   Defendants. )

---

The above-entitled matter came on for telephone hearing on Wednesday, November 4, 2009 at 11:00 a.m. before the HONORABLE ERIN L. SETSER, District Judge.

APPEARANCES

FOR THE PLAINTIFF:   PATRICIA L. PEDEN
                            NICHOLAS PATTON

FOR THE DEFENDANT:   CRYSTAL PARKER
                              RICHARD GRIFFIN

### Page 2

1   MS. PARKER: -- and so it looks like counsel
2   -- you know, it looks like we need to talk with
3   plaintiff's counsel to figure out what that document
4   is. We don't have it so it's hard for me to tell you
5   which one it is.
6   THE COURT: Okay. Well, this is part of the
7   problem. Even before today's conference call, after
8   you saw that the Court ordered the production of the
9   wrong document, you guys should be talking yourselves
10  to figure it out. It shouldn't take getting on the
11  phone with the Court to figure that out. If you --
12  MS. PARKER: Your Honor, I -- go ahead.
13  THE COURT: If you saw that that was the
14  wrong document, make a phone call. You all try to
15  cooperate in this without Court involvement. Make a
16  phone --
17  MS. PARKER: Your Honor, I --
18  THE COURT: -- and say no, this is really the
19  one we need and decide whether there's a dispute about
20  it, okay?
21  MS. PARKER: Your Honor, we would absolutely
22  have done that. We do have an email saying that
23  plaintiff agrees to produce 2, 6, and 13 on the
24  privilege log and not 14. And I had no idea that 14
25  wasn't the one that was at dispute or I absolutely

### Page 3

1   would have called counsel to work it out. And I --
2   THE COURT: Okay. Okay. So, what -- have 2,
3   6, and 13 been provided?
4   MS. PEDEN: I don't believe so, Your Honor.
5   And I'm looking at Ms. Parker's emails, and I think the
6   confusion is is that we asked them to produce the
7   document number 14, and they're referring to their
8   document.
9   THE COURT: Okay.
10  MS. PEDEN: So there's no email that tracks
11  these. There's only four documents on the privilege
12  log, and we produced three of them. And so I think
13  what we ought to do is have Cisco look at the three
14  that we produced, identify the one that's missing, let
15  us know, and we'll give it to the Court.
16  THE COURT: Okay.
17  MR. GRIFFIN: Well, Your Honor, they know
18  what they've produced. If they'll send the one they
19  haven't produced to the Court and not play shell games
20  with us, then we'll know what we're talking about.
21  THE COURT: Well -- I mean, I can't know what
22  you're talking about. You guys do so --
23  MS. PEDEN: (Indiscernible) identify our
24  numbers with Cisco so that -- so that we know exactly
25  what it is they think we haven't produced.

### Page 4

1   THE COURT: Okay. What I'm going to do then
2   is deny that part of the motion to compel, ask you all
3   to confer, figure out if there is a document left that
4   has not been produced. And if you cannot agree on that
5   one document, then you can file another motion to
6   compel. But at this point, I'm going to deny that
7   motion to compel. And I urge you all again to confer,
8   work in good faith on this. Now, if there's a
9   legitimate claim to privilege, then I can understand
10  there's a dispute and you can file another motion to
11  compel regarding that, okay?
12  MS. PARKER: Okay. Thank you.
13  THE COURT: Okay. Now, let's move on -- give
14  me just a second here.
15  Okay. The next set of documents that I have
16  on my list are -- I've sort of grouped them together.
17  It's documents relating to the plaintiff's allegation
18  that Frenkel's statements were purposely calculated to
19  cause damage to the plaintiff's reputation and
20  business, to maximize the dissemination of statements,
21  acted with knowledge that the statements were false or
22  were negligent in failing to determine the truth of the
23  statements, acted with malice. Sort of -- those seem
24  to be sort of all in the same category. As I
25  understand it, the plaintiff is asserting that these

17

1  THE COURT: But then I thought later on the
2  court granted a motion in limine saying that Albritton
3  couldn't present damages as to his reputation because
4  he didn't provide discovery on the issue.
5  MS. PEDEN: Because he didn't disclose them
6  in his disclosures. In truth he -- in truth, Cisco
7  took six or seven depositions of reputational
8  witnesses. And we argued (indiscernible) that Cisco
9  did have discovery. And, in fact, that, you know --
10 they did. They took discovery of Mr. Albritton's
11 reputational witnesses. The problem was a violation of
12 a disclosure.
13 THE COURT: Well, I just think this is sort
14 of a tough one. I'm inclined to deny the motion to
15 compel if, you know, the plaintiff is saying I'm not
16 going to present any evidence as to lost income,
17 lost --
18 MS. PEDEN: We'll stipulate to that, Your
19 Honor.
20 MALE: Professional reputation?
21 MS. PEDEN: That we are not seeking lost
22 profit damages in this case.
23 MS. PARKER: So, what about professional
24 reputation?
25 MS. PEDEN: We're not seeking damages for

18

1  that.
2  THE COURT: For professional reputation?
3  MS. PEDEN: Right. I mean, obviously
4  Mr. Ward was attacked in a -- by opposing counsel in a
5  litigation. I mean, the facts are what they are.
6  There's going to be some factual information about this
7  happening in the course of a litigation, but --
8  THE COURT: So -- wait a minute, did you say
9  you are not seeking damages for professional -- injury
10 to professional reputation?
11 MS. PEDEN: We are not seeking damages for
12 his -- for injury -- I don't know how to answer the
13 Court's question because Mr. Ward's reputation has been
14 damaged.
15 THE COURT: So you are seeking damages for
16 his professional reputation?
17 MS. PEDEN: We're seeking damages to his
18 reputation, him as a person. He as a person happens to
19 be a lawyer. What we are not seeking, and I think what
20 was at issue in the Albritton case and in the cases we
21 cited is we're not seeking any damages to his
22 reputation for lost profits. We are not going to go in
23 front of the jury and tell them that Mr. Ward lost
24 business because of these articles.
25 THE COURT: Okay. Mr. Ward's deposition has

19

1  been taken in this case, correct?
2  MS. PEDEN: Yes.
3  THE COURT: And did Cisco's attorneys get
4  into the issue of how he intended to prove this damage
5  to his professional reputation?
6  MS. PEDEN: Yes.
7  THE COURT: And maybe the -- Cisco's
8  attorneys probably need to address this, what were his
9  responses? How's he going to testify at trial that his
10 professional reputation has been damaged?
11 MS. PARKER: Your Honor, he had a few things
12 in his testimony about that issue. One of the major
13 things that he discussed in his deposition was that he
14 had lost potential clients. Although it was through
15 multiple layers of hearsay, he testified that he had
16 been told that individuals had spoken with prospective
17 clients who said I won't hire him because of the
18 articles. And so we think we're entitled to discover
19 who those clients are, whether they ever hired Ward,
20 whether they couldn't hire Ward because of conflicts of
21 interest.
22 MR. GRIFFIN: Whether he was too busy.
23 MS. PARKER: Yeah, whether he was too busy to
24 take those cases. Another thing that's different in
25 this case about Ward that was not present in the

20

1  Albritton case is Ward has made a claim for outrage.
2  And to support that claim, he has to show that he
3  suffered mental anguish that was so severe a reasonable
4  person could not be expected to endure it. And that
5  kind of claim, I think is relevant to show how much he
6  worked, if his income, you know, increased by fifty
7  percent, you know, the year after the articles, that's
8  probative evidence of whether he was suffering this
9  terrible mental anguish. Not to mention whether it
10 actually damaged his reputation in any way.
11 MS. PEDEN: Your Honor, I have in front of me
12 Mr. Ward's deposition.
13 THE COURT: Okay.
14 MS. PEDEN: At page seven, Cisco asks him,
15 "Are you claiming damages to T. John Ward, Jr., P.C.
16 indirectly in this case?" His business. He answered,
17 "No." At page eight they ask question: "Since October
18 of 2007, have your paychecks decreased?" Answer: "No,
19 I made more in 2008 than I did in 2007."
20 THE COURT: Okay. I think that resolves the
21 income issue. So I'm going to deny the motion to
22 compel with regard to the tax records, income
23 statements. As to the client list, in his deposition,
24 did Cisco ask him when he said that he lost clients,
25 some people said they wouldn't hire him, did you ask

**Page 21**

1  him to identify the potential clients that he lost?
2      MS. PARKER: Yes, Your Honor, and he -- with
3  respect to some he said he didn't know, and with
4  respect to one he said he would not identify that
5  person.
6      MS. PEDEN: So, Your Honor, at page nine of
7  Mr. Ward's deposition, the question was, "Do you think
8  your practice has suffered since October 17th and 18th
9  of 2007?" And then the follow up question, he says,
10 "Well" -- Ward says, "Well, what do you mean by
11 suffered?" The follow up question is, "Well, are you
12 sitting in your office twiddling your thumbs waiting
13 for the next case to come in?" The answer is, "No, I
14 stay very busy."
15     MS. PARKER: Your Honor, that --
16     MS. PEDEN: (Indiscernible) --
17     MS. PARKER: (Indiscernible) --
18     MS. PEDEN: Ms. Parker, if I may --
19     THE COURT: Please speak one at a time.
20     MS. PEDEN: So, Cisco asked a series of
21 questions and have through this case asking people
22 whether or not Mr. Ward's business -- whether he's lost
23 clients. And in response to Cisco's question, some
24 witnesses have answered truthfully that that's likely
25 the case. That's a different issue. We have never put

**Page 22**

1  that at issue. Those were Cisco's questions trying to
2  get discovery for Cisco's case to establish that
3  Mr. Ward hasn't lost clients.
4      THE COURT: So, you don't anticipate that
5  Mr. Ward is going to get on the stand and say I lost
6  clients? Is that what you're --
7      MS. PEDEN: I think -- well, I think that
8  there are -- I think there is testimony, and certainly
9  testimony that came out in the Albritton trial from
10 other witnesses that people who had heard about these
11 articles thought less of Mr. Ward. So I think that
12 there may be some testimony about his business, you
13 know, about whether or not --
14     THE COURT: I'm asking you what he's --
15 what's within the realms of his testimony.
16     MS. PARKER: Your Honor, if I may --
17     THE COURT: Well let her answer that please.
18     MS. PARKER: I'm sorry, I didn't hear the
19 question.
20     THE COURT: I'm talking about what Mr. Ward
21 is going to testify to. Is he going to testify that he
22 lost clients?
23     MS. PEDEN: No, what Mr. Ward will expressly
24 testify to is it's impossible for him to know whether
25 or not he lost clients. People don't call you up and

**Page 23**

1  tell you they're not hiring you.
2      THE COURT: Okay.
3      MS. PEDEN: There's no basis to offer that
4  testimony.
5      THE COURT: And then are you going to offer
6  other witnesses to testify on that issue?
7      MS. PEDEN: It's hard to say at this
8  juncture, but I believe that witnesses will testify
9  that certain people who heard about these articles or
10 read the articles thought less of Mr. Ward which
11 translated into not wanting to consider hiring him.
12 But to be clear, that's not a damages issue. That goes
13 to whether or not people believed that these articles
14 were accusation of criminal or unethical behavior. It
15 goes to the defamtory contents of the articles, not to
16 damages.
17     THE COURT: Well, I don't know that you can
18 separate it. The jury's not going to be instructed
19 that it only goes to that issue. I think if a jury
20 hears that certain people heard about these posts and
21 thought less of him and didn't want to hire him,
22 they're certainly going to think that goes to damages.
23 Do you not agree?
24     MS. PEDEN: I -- well, no, because I think
25 that the way to address that is in jury instructions to

**Page 24**

1  tell the jurors that Mr. Ward is not making a claim for
2  lost profit damages.
3      THE COURT: Well, I just think the scope of
4  discovery is far broader than that. If there's going
5  to be testimony offered that certain people who heard
6  about these posts thought less of him and would not
7  hire him, I think the defendant's entitled to know who
8  those people are. That's a vague statement that Cisco
9  cannot defend.
10     MS. PEDEN: Well, and the truth is, Your
11 Honor, that they know who has hired Mr. Ward.
12     THE COURT: I'm not talking about who has
13 hired. You told me there's going to be testimony that
14 certain people heard about these posts, thought less of
15 him and would not hire him. Do you know who those
16 people are?
17     MS. PEDEN: Yes, and so does Cisco.
18     THE COURT: Cisco, do you agree?
19     MS. PARKER: No.
20     MR. GRIFFIN: No, Your Honor. We have no
21 idea. And we don't know who's hired him. We know --
22     THE COURT: Well, I'm not going to get into
23 who's hired him. I think what's at issue is who didn't
24 hire him because of these posts. So I'm not going to
25 require the plaintiff to provide his financial