IN THE UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF ARKANSAS
TEXARKANA DIVISION

JOHN WARD, JR.                          §
                                        §
        Plaintiff                       §           No. 4:08cv4022
                                        §
v.                                      §           JURY TRIAL DEMANDED
                                        §
CISCO SYSTEMS, INC.                     §
                                        §
        Defendant                       §


**PLAINTIFF WARD'S MOTION TO COMPEL DEFENDANT'S
RESPONSE TO PLAINTIFF'S SECOND SET OF REQUEST
FOR PRODUCTION AND BRIEF IN SUPPORT**

Dockets.Justia.com

## TABLE OF CONTENTS

**Page(s)**

I.  Introduction ..............................................................................................................1

II.  Arguments In Support Of Motion To Compel.................................................1

    A.  Documents Concerning Cisco's Investigation Into The
Facts Surrounding The Accused Posts.......................................................1

    B.  Documents Concerning The Disclosure Of The Fact That
Frenkel Was A Cisco Employee .................................................................8

    C.  Cisco's Participation In The Creation, Content, and Publication
Of Other Troll Tracker Blog Posts............................................................9

    D.  Dissemination of the Accused Posts And The Accusations
Contained In Those Posts...........................................................................13

    E.  Documents From Cisco Employees Concerning The Facts
Underlying the Above-Captioned Lawsuit ..............................................18

    F.  Documents Concerning The Eastern District of Texas.........................20

III.  Conclusion ............................................................................................................21

## I.      Introduction

Plaintiff, John Ward Jr. brings this motion seeking to compel Cisco to produce documents relevant to the issues in this case.  Plaintiff has worked with Cisco to narrow the scope of the parties' disputes before seeking relief from the Court.  For many of Plaintiff's requests, the parties have reached an impasse.  Plaintiff does not seek to compel all documents that Cisco has refused to produce; rather, plaintiff seeks only those documents he believes are most important to his case.  The documents Plaintiff seeks are relevant to the issues in this case, or are likely to lead to the discovery of admissible evidence.  The objections that Cisco relies on to withhold the requested documents are baseless.  Thus, Plaintiff respectfully requests this Court order Cisco to produce the documents identified below.

## II.     Arguments In Support Of Motion To Compel

### A.      Documents Concerning Cisco's Investigation Into The Facts Surrounding The Accused Posts

Plaintiff served several requests aimed at discovering whether Cisco believed its employees were untruthful or acted improperly in requesting, publishing, approving, ratifying and/or disseminating the accused posts.

*The Document Requests*:[1]

Plaintiff's Request Numbers 31 and 32 asked Cisco to produce all documents after October 14, 2007 concerning any Cisco policy, procedure, rule, guidelines, code of conduct, term of employment or company norm violated by any Cisco employee concerning the accused posts or the ESN v. Cisco litigation.

Plaintiff's Request Number 49 asked Cisco to produce all documents after October 14, 2007 concerning whether any Cisco employee should be disciplined, reprimanded, chastised, admonished, warned or corrected concerning the posting of the Troll Tracker blog posts.

---

[1] Plaintiff has attached the relevant document requests and Cisco's complete responses in an appendix to this motion.  The requests at issue here are set forth in the appendix at section A.

Plaintiff's Request Numbers 35-37 asked Cisco to produce all documents concerning whether or not the accusations made in the posts were true and whether they were accusations of criminal and/or unethical conduct.

Plaintiff's requests defined "concerning" as "analyzing, addressing, consisting of, constituting, regarding, referring to, relating to, refuting, discussing, describing, evidencing, memorializing, reflecting, commenting on, or otherwise having any logical or factual connection to the subject matter of the request."

*The Requests Seek Relevant Evidence, Or Are Likely To Lead To Relevant And Admissible Evidence*

In a defamation case, the plaintiff must address the truth or falsity of the accused statements.  Plaintiff sought documents from Cisco to show that Cisco knew that the accusations made in the Troll Track posts were not true,[2] and that those accusations falsely accused plaintiff of criminal and unethical conduct, despite Cisco's claims to the contrary.  Plaintiff also sought documents to show that Cisco did nothing to reprimand its employees for making the libelous statements because they were published at Cisco's request and to benefit Cisco's litigation position in the ESN v. Cisco case.  Documents showing that Cisco investigated the facts underlying this case and found that the statements made in the posts were not true, were serious accusations, and did not reprimand its employees are relevant to the truth/falsity, negligence, malice and punitive damages issues in this case.[3]  The documents are also highly relevant to the critical issue of credibility.  Production of the requested documents will substantially enhance the search for the truth.  *See U.S. v. Nobles*, 422 U.S. 225, 232 (1975).

Plaintiff also served an interrogatory to Cisco concerning this topic.  Plaintiff's Interrogatory No. 8 asked Cisco to "Identify all communications and documents concerning whether any Cisco employee should be disciplined, reprimanded, chastised, admonished, warned

---

[2] Cisco has pleaded that the accused Troll Tracker Blog posts are true.  *See* D.E. 71 at ¶¶ 51-52.

[3] Cisco has denied that it is liable for exemplary damages, claiming that it did not ratified or approve of the conduct of Frenkel, Yen, and Noh, and other Cisco employees acting within the course and scope of their employment at Cisco.  *See* D.E. 71 at ¶ 102.

or corrected concerning the posting of the Troll Tracker October 17, 2007, October 18, 2007 and revised October 18, 2007 posts . . ."  *See* Exh. A.  Cisco refused to provide a full response and plaintiff moved to compel.  This Court found that the information plaintiff sought *was relevant* and ordered Cisco to provide a full response.  *See* Exh. A.  Cisco's amended response stated "Cisco does not believe that Rick Frenkel being placed on administrative leave at full pay after the Albritton case was filed pending the company's investigation, as he was, fits into the areas inquired about ("disciplined, reprimanded etc.").[4]  In any event, the communications relating to that decision have been testified about by Mallun Yen in her deposition in the Albritton case and counsel for Ward has a copy of that deposition."  *See* Exh. A.

This is what Ms. Yen had to say on the subject during her Albritton deposition:

| | |
|---|---|
| Plaintiff's Counsel: | Well, why was he at home during this period of time? |
| Ms. Yen: | Actually, I don't know whether he was at home. |
| Plaintiff's Counsel: | On vacation, absent from the premises from Cisco, however you want to describe it. |
| Ms. Yen: | I believe he was taking time to focus on this lawsuit which was very distracting and time consuming to him. |

*See* Exh. B (Yen Albritton Depo.) at 249:1-9.

Cisco's response to Plaintiff's interrogatory seemed suspect, so Plaintiff's counsel raised the issue with Cisco's counsel during meet and confer before Plaintiff's motion for compliance and for sanctions for Cisco's failure to comply with this Court's March 30, 2009 Order granting plaintiff's motion to compel.  Plaintiff's counsel said that it didn't make sense that Cisco would give Frenkel time off to focus on the defamation lawsuits, and that it was much more likely that Cisco was concerned about Frenkel's conduct.  Cisco responded that plaintiff's counsel was in no position to tell Cisco how to run its business.

---

[4] Cisco's response ignores that plaintiff defined "concerning" to mean connected to and therefore the investigation did not have to actually result in disciplinary action to be responsive to the request.

Five months later, while testifying at the Albritton v. Cisco trial, Frenkel provided a different explanation for his time off at Cisco.  In responding to questions asked by *Cisco's counsel*, Frenkel told the Albritton jury that he had suffered repercussions at work as a result of publishing the accused posts, although he was ultimately not terminated or sanctioned by Cisco.  That exchange was as follows:

| | |
|---|---|
| Cisco's Counsel: | You said that you weren't terminated.  Did Cisco do anything—did they just let you keep going on at work after this lawsuit happened? |
| Frenkel: | No, things changed. |
| Cisco's Counsel: | And how did it change? |
| Frenkel: | Well, for one, there was a period of time that there was an investigation and that I was asked to back off from all the patent-litigation cases while they looked into not only this post but every post I had ever written, all 185 of them. |
| Cisco's Counsel: | And it was Cisco doing the investigation? |
| Frenkel: | Yes, Sir. |
| Cisco's Counsel: | All right.  And how long did the investigation take? |
| Frenkel: | Well, it started—it started around March 10th and went through about the end of—middle to end of April. |

* * * * * * * * * *

| | |
|---|---|
| Cisco's Counsel: | And were you interviewed as part of that investigation? |
| Frenkel: | Yes, I was |
| Cisco's Counsel: | And did Cisco—can you tell the ladies and gentlemen of the jury whether Cisco thought your one-day Banana Republic comment was a neat thing or not? |
| Frenkel: | Oh, no, they did not like that.  And I don't blame them.  I didn't like it either when I recalled that I had done it.  I had not remembered when I first got sued by Mr. Albritton, but the lawsuit brought all that back. |
| Cisco's Counsel: | All right.  I believe you said in response to Mr. Patton, that you were not terminated or sanctioned in any way after this investigation? |

4

| | |
|---|---|
| Frenkel: | That is correct. |
| Cisco's Counsel: | Can you tell the ladies and gentleman of the jury from your perspective whether Cisco reacted responsibly after hearing these allegations made by Mr. Albritton? |
| Frenkel: | I absolutely think Cisco acted responsibly.  I would have done the same thing if it was my employee that had been sued over something that he wrote in a blog. |
| Cisco's Counsel: | All right, Sir. |

*See* Exh. C (Albritton 9/16/09 Tr. Trans.) at 702:1-704:10.

Not only did Cisco's questioning of Frenkel on the stand result in a different explanation of his "time off" from work than Cisco offered in discovery, either as explained in interrogatory responses or by Yen in her sworn deposition testimony, but at trial Cisco sought to convince the jury that Cisco fully investigated the facts and exonerated Frenkel.  Plaintiff has every reason to believe that Cisco will seek to offer the same testimony to the jury in this case.  Cisco cannot refuse to produce documents concerning Cisco's investigation of the facts and then argue to the jury that Cisco investigated the issue, determined that no Cisco employee acted improperly, and suggest that Cisco is not at fault because it acted responsibly in investigating the accused posts.

*Cisco's Objections Are Meritless*[5]

Cisco's primary objection to producing the requested documents is its assertion of privilege.  Cisco's privilege objection cannot withstand scrutiny.

First, facts are not privileged.  The work product doctrine does not preclude the discovery of attorney-prepared documents if they contain relevant and non-privileged facts.  *See Hickman v. Taylor,* 329 U.S. 495, 512 (1947).  To the extent that Cisco's internal investigation uncovered facts, those facts are discoverable and must be produced because they are essential to plaintiff's trial preparation.  Cisco obviously misunderstands the distinction between facts, which are not

---

[5] Cisco's responses make a host of blanket objections to each of Plaintiff's requests.  Cisco's objection have no merit and it would greatly increase the volume of briefing, confuse the issues, and burden the Court to address each in Plaintiff's motion.  Therefore, Plaintiff will address those objections that he feels are necessary to frame the issues for the Court.

privileged, even if shared with an attorney, and communications, which may be privileged.
Here, Cisco seeks to hide the facts. That is apparent because Cisco never disclosed to plaintiff
*the fact* that an internal investigation occurred.

Second, Cisco's internal investigation appears to have been undertaken for business
purposes, not for the purpose of preparing for litigation, and thus is not work product protected.
The work product doctrine cannot be used to shield documents from discovery unless they were
prepared because of the litigation. *See Simon v. G.D.. Searle & Co*., 816 F.2d 397, 401 (8th Cir.
1987). The Eighth Circuit has articulated the applicable test for determining whether a document
was prepared in anticipation of litigation as follows:

> "[W]hether, in light of the nature of the document and the factual situation in the
> particular case, the document can fairly be said to have been prepared or obtained
> because of the prospect of litigation. But the converse of this is that even though
> litigation is already in prospect, there is no work product immunity for documents
> prepared in the regular course of business rather than for purposes of litigation."

*Id.*

The fact that Cisco's in-house lawyers were involved in Cisco's internal investigation
does not make it *de facto* privileged. Here, Cisco's internal investigation appears to be related to
Cisco's business interests. Cisco's investigation included a review of all 185 Patent Troll
Tracker blog posts; not just those at issue in this case. The purpose of the investigation was to
determine whether Frenkel and other Cisco employees violated company policies. Additionally,
the investigation appears to have been undertaken with the goal of determining whether Cisco
should revise its corporate blogging policy, which Cisco ultimately did. *See* Exh. D. Cisco's
business investigation is not privileged. *See Soeder v. General Dynamics Corp*, 90 F.R.D. 253,
255 (D. Nev. 1980).

Investigating employee misconduct and reevaluating company policies are business
functions; not litigation work product. Cisco employees with knowledge of the facts in this case
were not interviewed during Cisco's investigation, including Mallun Yen and John Noh who
were, at the time, named defendants in the Albritton v. Cisco litigation. *See* Exh. E (Yen Depo.)

at 104:11-14; Exh. F (Noh Depo.) at 52:6-10.  If Cisco's investigation were for the purpose of preparing for litigation, one would expect that Yen and Noh would have been interviewed. These facts show that Cisco's investigation was the result of a business management function, reviewing the conduct of the Cisco employees.

Third, Cisco cannot hide relevant facts by claiming work product protection because the documents plaintiff seeks are critical to Plaintiff's ability to address this issue at trial and rebut Cisco's arguments, and he therefore has a substantial need for the documents.  *See* Fed. R. Civ. P. 26(b)(3).  The documents plaintiff seeks from Cisco are not available from any other source.[6]

Finally, even if the documents were privileged at one time, they are not now.  Any conceivable privilege was waived when Cisco purposefully elicited testimony about Cisco's investigation from Frenkel during the public Albritton trial.  Cisco voluntarily offered specific testimony about the substance of the investigation, including that it lasted nearly six weeks, included an investigation into every blog post that Frenkel had ever published, and was critical of Frenkel's reference to the "Banana Republic of East Texas."  Moreover, Frenkel testified (at Cisco's urging) that he was taken off of his case-related assignments and put on a leave until the investigation was complete.  Having offered public testimony about those aspects of Cisco's internal investigation that Cisco wants to rely on to argue its cause to a jury, it cannot now prevent Ward from discovering the extent of Cisco's investigation.  *Nobels*, 422 U.S. at 239 & n.14 (work product privilege waived when the defense elected to make testimonial use of material contained in the work product); *Pamida, Inc. v. E.S. Originals, Inc*. 281 F.3d 726, 732 (8th Cir. 2002) ("When a party seeks a greater advantage from its control over work product than the law must provide to maintain a healthy adversary system, the privilege should give way)(internal citation omitted); *see also Wells v. Liddy*, 37 Fed. Appx. 53, 65, 2002 WL 331123, at *9 (4th Cir. 2002), citing *Nobels*, 422 U.S. at 239 ("When a party makes testimonial use of work product, 'the normal rules of evidence come into play with respect to cross-examination

---

[6] This is particularly true where plaintiff has already served an interrogatory on this issue and received a less than candid response.

and production of documents'"); *Chavis v. North Carolina*, 637 F.2d 213, 223-24 (4th Cir. 1980) (party waived work product privilege when testifying witness referred to and relied upon the evidence it claimed was work product); *United States v. Salsedo*, 607 F.2d 318, 320-21 (9th Cir. 1979) (same); *Brown v. Trigg*, 791 F.2d 598, 601 (7th Cir. 1986) (same).

Cisco understands that it cannot claim privilege with respect to information that it voluntarily disclosed. Cisco made the same argument to this Court in support of its own motion to compel deposition testimony from a third party, Mr. Robert Chiaviello, Jr. *See* D.E. 109. Although Cisco later withdrew its motion, recognizing that it filed in the wrong court, the argument Cisco sought to make to this Court demonstrates why it must produce the documents plaintiff seeks. Cisco's motion argued that by giving deposition testimony that exposed some aspects of the discussions he had with clients, Mr. Chiaviello "waived any privilege which may have attached to the information sought by Cisco" and that the information was "no longer privileged." *See* D.E. 109 at 9-10. Cisco knows that its voluntary disclosure of allegedly privileged communications waives the entirety of the privilege on that subject matter. That is exactly what Cisco has done here by eliciting trial testimony from Frenkel about Cisco's internal investigation. Cisco cannot now be heard to complain that it must produce documents concerning the investigation it voluntarily disclosed.

Cisco should be ordered to produce all documents responsive to request numbers 31-32, 35-37 and 49, including all communications concerning Cisco's internal investigation of the Patent Troll Tracker Blog.

B.   Documents Concerning The Disclosure Of The Fact That Frenkel Was A Cisco Employee

As discussed above, Cisco will argue that it investigated Frenkel's conduct and did not terminate him because his statements were true. Cisco will attempt to portray itself to the jury as a company that is defending its employee's right to free speech, that Frenkel did nothing wrong because he told the truth, that Cisco acted responsibly in investigating Frenkel's conduct, and should be applauded for its efforts rather than punished with exemplary damages.

8

But, there is different explanation for the conduct that Cisco will attempt to convince the

jury was respectable.  Cisco knew that once the anonymous Troll Tracker was revealed to be a

Cisco employee, Cisco's public image would be tarnished.  *See* Exh. G (Beckwith Depo.) at

39:18-41:25.  Plaintiff served document requests aimed at gathering evidence to prove the true

motive behind Cisco's investigation and defense of Frenkel.

> *The Document Requests*:[7]

Plaintiff served document request numbers 82-84, asking  Cisco to produce all documents

showing Cisco's concern that the unmasking of the Troll Tracker would reflect negatively upon

Cisco, Cisco's concerns about negative reactions to the content of the Troll Tracker blog, and

Cisco's plan with respect to how to deal with that negative publicity.

> *The Requests Seek Relevant Evidence, Or Are Likely To Lead To Relevant And Admissible Evidence*

As discussed above, the documents plaintiff seeks are relevant to several issues in this

case.  The documents are relevant to show that Cisco does not believe that Frenkel's accusations

are true.  The documents are also relevant to the issues of punitive damages because the jury is

entitled to hear that Cisco does not care that it injured plaintiff's reputation, but is instead

worried only about its own.  Moreover, the documents plaintiff seeks are relevant to rebut

Cisco's assertions of truth, lack of negligence, good faith investigation and response to plaintiff's

claims and to test Cisco's veracity by demonstrating its motive and bias.

> *Cisco's Objections Are Meritless*:

Cisco's relevancy objection is without merit.  "It is insufficient for the party objecting to

discovery based on relevance to simply make conclusory allegations that the request is

irrelevant."  *Creighton Saint Joseph Reg'l Healthcare, LLC v. Lakeland Eng'g Equip. Co*., 2007

U.S. Dist. LEXIS 86752 (D. Neb., Nov. 13, 2007).  That is exactly what Cisco has done in its

responses.  As discussed above, the documents are relevant, or at a minimum are reasonably

---

[7] *See* appendix at section B.

calculated to lead to the discovery of admissible evidence.  Nothing more is required for

discovery, and Cisco should have produced the requested documents.

Cisco also objects based on privilege.  Cisco's privilege objection is meritless.  Not every

document that is created in a legal department is privileged, as much as Cisco would for that to

be the law.  These document requests ask for facts about Cisco's concern for its public image.

There is nothing in the requests that seek communications concerning legal advice.  The subject

matter of the document requests do not seek privileged information and therefore must be

produced.  *See Soeder,* 90 F.R.D. at 255 (documents concerning efforts to guard against adverse

publicity and to further companies own corporate interests are not created in anticipation of

litigation and are therefore discoverable).

Cisco should be ordered to produce all documents responsive to request numbers 82-84.

C.       Cisco's Participation In The Creation, Content, and Publication Of Other Troll
         Tracker Blog Posts

Cisco has taken the position in this case that it cannot be liable for punitive damages

because it did not write, edit, review or ratify Frenkel's writings.  Cisco seeks to convince the

jury that the accused posts were Frenkel's alone and that Cisco had no role in Frenkel's defaming

Ward.  Cisco's argument leaves out, however, that Frenkel's supervisor, Mallun Yen, and

Cisco's Director of Public Relations, John Noh, asked Frenkel to publish at least one of blog

posts at issue in this case.  Yen then sent a link to that post to Cisco's lobbyist for patent reform,

Matthew Tanielian.  *See* Exh H (Cisco privileged 14-16) and (Ark.000456).  Moreover, most of

the Cisco lawyers working on the ESN v. Cisco matter, including Yen, Dan Lang, Marta

Beckwith, Mark Michels, and Michael Ritter knew Frenkel was the Troll Tracker before he

wrote the accused posts, as did Noh and Tanielian.

To obtain evidence of Cisco's participation in defaming Ward and to rebut Cisco's

argument that it was not involved, plaintiff sought documents from Cisco to show that Cisco

employees had a history of using the Patent Troll Tracker as a publicity arm of Cisco.

*The Document Requests*:[8]

Plaintiff's Request No. 60 asked Cisco to produce all documents concerning the dissemination of any Troll Tracker blog post to the media by any Cisco employee.

Plaintiff's Request No. 104 asked Cisco to produce all communications between Cisco and Frenkel concerning any content to be included in or deleted from any Troll Tracker post.

*The Requests Seek Relevant Evidence, Or Are Likely To Lead To Relevant And Admissible Evidence*

Relevant information encompasses "any matter that bears on, or that reasonably could lead to other matter that could bear on, any issue that is or may be in the case." *Miles v. Century 21 Real Estate LLC*, 2006 U.S. Dist. LEXIS 67974 (E.D. Ark., Sept. 21, 2006) (*citing Oppenheimer Fund, Inc. v. Sanders*, 437 U.S. 340, 351 (1978). "Relevancy is broadly construed, and a request for discovery should be considered relevant if there is 'any possibility' that the information sought may be relevant to the claim or defense of any party." *Id*. "If the discovery sought appears relevant, the opposing party bears the burden of specifically showing how each discovery request is irrelevant." *Id*.

Documents showing that Cisco employees suggested, edited, asked for or participated in any manner in other Patent Troll Tracker posts are strong circumstantial evidence that Cisco did so with respect to the accused posts in this case.  Documents demonstrating a history of collaboration between Cisco employees and the anonymous Patent Troll Tracker are relevant to the issue of fault and punitive damages because they show that Cisco had a pattern of turning to the Troll Tracker to do its bidding and that it was negligent and/or reckless in doing so in this case.

Documents showing that Yen and Noh participated in the publication other blog posts are strong evidence that, despite Cisco's assertions to the contrary, Yen and Noh intended that Frenkel publish the false accusations about Ward.  It is also strong circumstantial evidence that Yen, Noh and Frenkel all understood that Cisco was, in keeping with past practices, asking the

---

[8] *See* appendix, section C.

Troll Tracker to publish a post beneficial to Cisco.  Similar communications between other Cisco employees and Frenkel are probative of Cisco's endorsement and use of the Patent Troll Tracker blog.

Documents showing communications between Frenkel and Cisco with respect to other Patent Troll Tracker Blogs also may show that Cisco acted with more caution in asking that other information be posted on the Troll Tracker blog but applied different standards in the posts about Ward, demonstrating Cisco's negligence, recklessness, and ill-will and spite toward Ward.  Or, the documents could show that Cisco never attempted to verify any claim made by the Troll Tracker in any post, demonstrating a pattern of reckless use by Cisco of the Troll Tracker blog to publically disseminate Cisco-sponsored information without any attempt to verify that information was true because Cisco believed its statements would never be traced back to Cisco. In either case, the documents are circumstantial evidence of Cisco's conduct in this case.  The requested documents are critical to rebutting Cisco's assertions that it had nothing to do with the posts written about Ward.

   *Cisco's Objections Are Meritless*

Cisco's primary objection to Ward's requests for documents concerning other Patent Troll Tracker Blogs is that they are not relevant.  Cisco's relevancy objection is without merit. "It is insufficient for the party objecting to discovery based on relevance to simply make conclusory allegations that the request is irrelevant."  *Creighton Saint Joseph Reg'l Healthcare*, 2007 U.S. Dist. LEXIS 86752, at *5-6.  That is exactly what Cisco has done in its responses. Moreover, Cisco's relevance objection is baseless.  As discussed above, the documents are relevant, or at a minimum are reasonably calculated to lead to the discovery of admissible evidence.  Nothing more is required for discovery, and Cisco should have produced the requested documents.

Cisco also objects based on burden.  Cisco's burdensome objection can be dismissed out of hand.  Cisco, as the party resisting discovery, has the burden to show *facts* demonstrating that the time or expense involved in responding to requested discovery is unduly burdensome. *See*

12

Local Rule 33.1(b); *Creighton*, 2007 U.S. Dist. LEXIS 86752, at *5-6.  Cisco was required to respond with sufficient detail and provide an explanation about the nature of the burden to Cisco in terms of time, money and procedure required to produce the requested documents.  *See id*. Cisco's response fails to make a specific showing of burden.  Nor can Cisco make this showing given the financial and technical resources at its disposal.  *See* Exh. I.  Cisco's boilerplate burden objection should be denied.

Moreover, Cisco has already investigated each of the Troll Tracker Blog posts.  If Cisco has the resources to investigate for its own benefit, it cannot be overly burdensome for Cisco to undertake the same effort to respond to Plaintiff's discovery.  There is nothing so burdensome about plaintiff's document requests that would permit Cisco to evade its discovery obligations, particularly where no specific burden has been alleged.

Cisco should be ordered to produce all documents response to request numbers 60 and 104.

D.  <u>Dissemination of the Accused Posts And The Accusations Contained In Those Posts</u>

Plaintiff served four document requests aimed at discovering each person to whom Cisco conveyed its defamatory statements about Ward.

*The Document Requests*:[9]

Plaintiff's Request No. 29 asked for "all documents after October 14, 2007 concerning dissemination of the October 17 post, October 18th post, or amended October 19th post to any person or entity.

Plaintiff's Request Nos. 38 and 39 asked for all documents after October 14, 2007 concerning any person or company with whom Cisco or its employees and any communication concerning the accused posts, the filing of the ESN Complaint, Ward's role in that filing and that of his co-counsel.

Plaintiff's Request No. 42 asked for all documents and communications after October 14,

---

[9] *See* appendix, section D.

2007 between Cisco and Dan Webb concerning the filing of the ESN Complaint, Ward's role in the filing of the complaint and that of his co-counsel, and the local rules and practice.

> *The Requests Seek Relevant Evidence, Or Are Likely To Lead To Relevant And Admissible Evidence*

In a defamation case, it is important for Plaintiff to show the means by which the defamatory statements have been disseminated.  The greater the dissemination, the greater the harm to Plaintiff.  Plaintiff's document requests are designed to discover documents that may show that even if Cisco employees did not directly send the defamatory posts to third-parties, they conveyed to third-parties that the articles existed and directed them to read the defamatory statements.

Documents produced in this case suggest that people working at Cisco disseminated the same false information contained in the accused posts to third-parties.  For example, Cisco's Vice President of Intellectual Property Litigation, Mallun Yen, contacted a Chicago lawyer, Dan Webb, at Winston and Strawn to discuss the facts surrounding the filing of the ESN Complaint. *See* Exh. J.  Ms. Yen testified that she "may have" told Mr. Webb about Cisco's allegations about the filing date of the ESN Complaint but she remembers that he told her that he had never heard of anything like it.  *See* Exh. B (Yen Depo. in Albritton case) at 211:15-213:23. Apparently, Frenkel was not the only person at Cisco spreading false accusations about Ward.

Cisco has argued, and will argue at trial, that Frenkel was acting alone when he wrote and posted the defamatory statements, and that no one at Cisco contributed to the content of the posts in any way.  Documents showing Cisco employees disseminated the same false accusations contained in the accused posts are circumstantial evidence that Cisco understood the accusations that Frenkel was to make in his posts, Cisco condoned and ratified Frenkel's posts, and that Cisco was itself actively engaged in spreading the same malicious lies about Ward.  Thus, the documents Plaintiff seeks are relevant to the standard of fault, the injury to Ward's reputation, whether or not Cisco employees were working in concert with Frenkel's tortious efforts, and to

14

the punitive damages issues in this case.  The requested documents are likely to lead to relevant and admissible evidence, which is all that is required at the discovery stage.

*Cisco's Objections Are Meritless*

Subject to its objections, Cisco agreed to produce non-privileged documents for Requests Nos. 29, 38 and 39, but is withholding responsive documents on its privilege log.

Cisco makes a number of blanket objections to Plaintiff's requests.  Cisco's conclusory objections should be ignored for violating Local Rule 33.1.  In any event, only two of Cisco's objections merit a response.

First, Cisco objects that the documents Plaintiff seeks are not in Cisco's custody, possession, or control.  Cisco need only produce documents that are in its control or in the control of its agents.  If the person to whom Cisco communicated, including but not limited to Mr. Webb, were working for Cisco, they are agents of Cisco and it has the practical ability to obtain and produce their documents.  If they were not, then the documents cannot be privileged.  Cisco cannot both claim that the documents are in the files of third-parties not under Cisco's control and at the same time argue that the documents are privileged because they are communications with persons representing Cisco.

Second, Cisco asserts a grossly overbroad privilege objection.  Facts cannot be withheld from litigation, even under a claim of privilege.  Cisco should be ordered to produce the requested documents to the extent that they contain any discussion concerning the facts surrounding the filing of the ESN complaint, Mr. Ward and his co-counsel's role in that filing, and any factual assertions made by Cisco or its agents about what occurred with the filing.  Plaintiff does not believe that all of the documents Cisco is withholding can possibility qualify for privilege protection as Cisco claims.

It is Cisco's burden to demonstrate that the documents it is withholding are privileged and meet all of the requirements including the requirement that the document be for the purpose of and include legal advice.  *In re Grand Jury Subpoena Duces Tecum*, 112 F.3d 910, 925 (8th Cir. 1997) (the asserting party bears burden of establishing the elements of work product

15

immunity).  As stated above, if the documents were exchanged among persons acting outside an

attorney-client agency relationship, they cannot be privileged.  But, even if they were

"privileged" Cisco had an obligation to log those documents on its privilege log.  *See Goodyear

Tire & Rubber Co. v. Kirk's Tire & Auto Service center of Haverstraw, Inc.*, 2003 WL

22110281, 3 (S.D.N.Y., Sept. 10, 2003) (party waived work-product claims for documents in its

control that were not included on privilege log); *Breon v. Coca-Cola Bottling Co. of New

England*, 232 F.R.D. 49, 55 (D. Conn. 2005) ("The privilege log is not simply a technicality, it is

essential tool which allows the parties and the court to make an intelligent decision as to whether

a privilege or immunity exists.   Preparation of a privilege log is a critical step in discharging

one's burden of establishing the existence of a privilege.") (internal citation omitted).  Cisco has

identified 53 lawyers for which it claims to have had privileged communications.  *See* Exh. K.

But Cisco's privilege log includes no entries for the majority of the counsel identified by Cisco.

Plaintiff has asked Cisco for an updated privilege log, but Cisco has refused to provide one to

plaintiff's counsel.  *See* Exh. L.

Cisco's privilege claim is unreasonably overbroad.  Cisco has not claimed to have a joint

defense agreement with any of the law firms it has identified to plaintiff, except the law firm of

Baker Botts.  Yet, Cisco claims that communications with its extensive list of lawyers are all

privileged.  Cisco appears to be claiming a joint defense privilege with respect to counsel that

represented Cisco in the underlying ESN v. Cisco case, but not in connection with this case.

Cisco's assertion is improper.  Even if a common interest among those law firms existed with

respect to the ESN v. Cisco litigation (and Cisco has never shown that to be true) there is no

shared common interest between Cisco and those firms relating to the tort case before this Court.

*See Navigators Management Co., Inc. v. St. Paul Fire and Marine Ins. Co*., 2009 WL 465584, 4

(E.D. Mo., Feb. 24, 2009) (although there was a common interest between the parties in the

liability proceeding, there is not the same common interest in this declaratory action regarding

the insurance coverage issues).  Cisco provided nothing in its privilege logs to plaintiff to justify

claiming privilege with respect to legal counsel not involved in this case, and Cisco has never

provided a privilege log claiming a common interest privilege with any counsel. Cisco's conclusory assertions of privilege should be overruled.

Even with respect to the law firm of Baker Botts, hired by Cisco for the purpose of investigating the facts underlying the filing of the ESN complaint, (and with whom Cisco has asserted it has an oral joint defense agreement) Cisco has refused to log responsive documents on its privilege log. *See* Exh. M; Exh. N (Powell Depo.) at 12:15-14:16. A joint defense agreement may protect Baker Botts's documents from discovery, but Plaintiff cannot test Cisco's assertions when it does not log its documents. The fact that the alleged privilege is a joint defense privilege does not relieve Cisco of the obligation to log its privileged documents. *See Hedrick v. Ameristar Casino St. Charle,s* 2009 WL 3300035, 1 (E.D. Mo., Oct. 13, 2009) (requiring common interest privilege documents be logged on privilege log); *GP Industries, LLC v. Bachman,* 2008 WL 4279739, 8 (D. Neb., Sept. 16, 2008) (noting that JDA documents were located on privilege log). In this case, a complete privilege log is of vital importance because this Court has found that Cisco waived privilege for certain communications. Without a privilege log identifying all of the documents for which Cisco claims privilege, Plaintiff cannot determine whether Cisco is withholding documents that the Court has ordered it to produce. Nor can plaintiff be expected to depose the 53 lawyers Cisco claims have provided legal advice in connection with this case.

To the extent that any of the documents Cisco is withholding discuss the facts underlying the filing of the ESN complaint—one of the key issues in this case—those facts must be produced. Cisco cannot withhold relevant facts simply because a document was touched by an attorney, especially where, as here, in the nearly two years this case has been pending, Cisco has not logged those communications on its privilege log.

Cisco should be ordered to produce documents responsive to Plaintiff's request numbers 29, 38-39, and 42.

E.      Documents From Cisco Employees Concerning The Facts Underlying the Above-
        Captioned Lawsuit

Discovery taken in this case to date has shown that there were a small number of Cisco

employees involved in investigating the filing of the ESN complaint, the subsequent decision by

Cisco to ask Frenkel to publically accuse Ward of illegal and unethical conduct in connection

with the filing of the ESN complaint, the dissemination of the information to the public, and

Cisco's continued efforts to convince the media that Cisco had no role in Frenkel's misdeeds.

Plaintiff served several requests designed to discover the facts known to Cisco fact witnesses.

        *The Document Requests*:[10]

        Plaintiff's document request numbers 153-154, 157-158, 161-162, 165-166, 169-170, and

173-174 asked Cisco to produce all publicly disseminated documents concerning the ESN v.

Cisco litigation, and the filing of the ESN complaint, and all documents about ESN's counsel

written in whole or in part by Cisco employees working on the ESN matter, including Rick

Frenkel, Mallun Yen, Mark Chandler, John Earnhardt, and Matthew Tanielian and Michael

Timmeny.

        *The Requests Seek Relevant Evidence, Or Are Likely To Lead To Relevant And
        Admissible Evidence*

        Each of the Cisco employees (or former employees) listed above is a fact witness and the

information they have about the events underlying this lawsuit are discoverable.

        Mr. Frenkel was the author of the accused posts.  Ms. Yen first suggested the filing of

ESNs complaint was newsworthy, actively participated in the decision to publish at least one

accused post on the Troll Tracker blog, was Mr. Frenkel's direct supervisor, and knew he was

the Troll Tracker.

        Mr. Chandler was copied on many of the email strings concerning the filing of the ESN

v. Cisco litigation, was being advised by Ms. Yen about the events in the case, was directly told

by Ms. Yen that ESNs filing may be newsworthy, was at the time both Ms. Yen and Mr.

---

[10] *See* appendix at section E.

Frenkel's boss, and was subsequently involved in determining what occurred with respect to the publication of the accused posts.

Mr. Tanielian was Cisco's Washington D.C. lobbyist; one of the first persons to whom Ms. Yen suggested that there "may be a news story" about the ESN filing.  He too is copied on email chains concerning the filing of the ESN complaint.  Plaintiff must have publicly disseminated documents written in whole or in part by Mr. Tanielian so that he may discover why Ms. Yen sent the accused post to Mr. Tanielian, what he did with the information, and whether he was tasked by Cisco with spreading its false accusations to others.  Mr. Timmeny is another Cisco lobbyist included on email chains concerning the ESN case and he severed the same role at Cisco.

Mr. Earnhardt is a Cisco' public relations manager who made statements in the press on behalf of Cisco claiming that Cisco played no role in Frenkel's publication of the defamatory posts.  Mr. Earnhardt's documents may show that Cisco knew that Yen and Noh had participated in the publication of the accused posts and that other Cisco employees were involved, but that it represented otherwise to the media.  The evidence is relevant to, or may lead to relevant evidence, rebutting Cisco's professed good faith and to demonstrate why an award of punitive damages is justified in this case.

Documents created by these individuals concerning the filing of the ESN complaint and ESN's counsel's role in that filing are relevant to the truth/falsity, negligence, malice and punitive damages issues in this case and for impeachment evidence of bias and motive to cover Cisco's tracks.  It is reasonable to request documents in the files of fact witnesses, as plaintiff has done here.  Cisco's refusal to produce the requested documents cannot be justified on the basis of a relevance objection.

*Cisco's Objections Are Meritless*

Cisco's form objections have no merit.  Cisco claims that it would be overly burdensome for it to produce the requested documents, but Cisco provides no description of its alleged burden.  Cisco's conclusory statement is not a sufficient basis upon which to refuse to produce

the requested documents. *See Csiszer v. Wren*, 2008 U.S. Dist. LEXIS 100583, 4-5 (W.D. Ark. Nov. 25, 2008); Local Rule 33.1(b) (A blanket objection to a set of interrogatories, requests for admissions, or requests for production will not be recognized.).

Cisco claims that the requests seek documents from persons outside of Cisco's custody and control.  Cisco has made this claim even with respect to current Cisco employees.  *See* Appendix at D, Cisco's responses to RFPs.  The documents requested were written by Cisco employees and, if they exist, Cisco has the practical ability to obtain and produce those documents to plaintiff.

Cisco should be ordered to produce documents responsive to Plaintiff's request numbers 153-154, 157-158, 161-162, 165-166, 169-170 and 173-174.

F.      Documents Concerning The Eastern District of Texas

Cisco claims that Frenkel was writing about a matter of public concern when he made his false accusations about Ward.  According to Cisco, the Patent Troll Tracker blogs were about alleged improprieties in the Eastern District of Texas's clerk's office.  Leaving aside the fact that the blog posts do not allege corruption in the clerk's office but are instead anonymous attacks by Cisco on the reputation of its opposing counsel, Plaintiff served document requests aimed at discovering what Cisco believed to be the problem with the Eastern District of Texas.

*The Document Requests*:[11]

Plaintiff's request numbers 152, 155, 160, 164, 168, and 172 asked Cisco to produce all publically disseminated documents written by various Cisco employees concerning the Eastern District of Texas.

*The Requests Seek Relevant Evidence, Or Are Likely To Lead To Relevant And Admissible Evidence*

The allegations in the accused Patent Troll Tracker posts and the position that Cisco has taken regarding the actions of the court clerk with respect to the ESN complaint makes Cisco's prior statements about the Eastern District of Texas relevant.  To the extent that the documents

---

[11] See appendix at section F.

show that Cisco has held a grudge against the Eastern District of Texas, those documents tend to show that Cisco was set on impugning the Court's credibility long before the ESN complaint was filed.  That evidence would tend to show that Frenkel was not writing about an issue that he deemed to be a matter of public concern, but rather was using his anonymous web blog to spread lies about a Court that Cisco held with contempt.  Those documents are relevant to show the jury that Cisco is not entitled to immunity from suit for writing about a matter of public concern, but was rather acting with malice in spreading lies about its litigation opponent and the Court in which Cisco did not want to have to litigate its case.

*Cisco's Objections Are Meritless*

Cisco's responses raise the same form objections discussed above.  Cisco claims that it would be overly burdensome for Cisco to produce the requested documents, but Cisco provides no explanation of its burden.  Cisco's conclusory statement is not a sufficient basis upon which to refuse to produce the requested documents.  *See Csiszer*, 2008 U.S. Dist. LEXIS 100583, at 4-5; Local Rule 33.1(b).  Cisco's objections should be overruled and the Court should order the documents produced to Plaintiff.

## III.    Conclusion

For all of the forgoing reasons, Plaintiff Ward respectfully requests that his motion in all things be granted, and that Cisco be ordered to produce the requested documents within ten (10) days of this Court's Order.

Respectfully Submitted,

Nicholas H. Patton
AR Bar No. 63035
Courtney Towle
Patton, Tidwell & Schroeder, LLP
4605 Texas Boulevard
Texarkana, Texas 75503
903.792.7080 / 903.792.8233 (Fax)
Email: nickpatton@texarkanalaw.com
Email: ctowle@texarkanalaw.com

21

Patricia L. Peden
LAW OFFICE OF PATRICIA L. PEDEN
1316 67th Street
Suite 6
Emeryville, CA 94608
Telephone: 510-268-8033
Email: ppeden@pedenlawfirm.com

James A. Holmes
Texas Bar No. 00784290
THE LAW OFFICE OF JAMES HOLMES, P.C.
635 South Main, Suite 203
Henderson, Texas 75654
903.657.2800 / 903.657.2855 (Fax)


ATTORNEYS FOR PLAINTIFF


## CERTIFICATE OF SERVICE

This is to certify that on this 9th day of December, 2009, a true and correct copy of the foregoing document was served electronically via the Court's CM/ECF system upon:

Richard E. Griffin                Attorneys for Defendant Cisco Systems, Inc.
Charles Babcock
Crystal Parker
Kurt Schwarz
JACKSON WALKER, LLP
1401 McKinney
Suite 1900
Houston, Texas 77010



Nicholas H. Patton

## **CERTIFICATE OF CONFERENCE**

The parties conferred in good faith regarding the matter made the subject of this motion. Discussions have conclusively ended in an impasse, leaving an open issue for the Court to resolve.

_____

Nicholas H. Patton