# Exhibit M

| | |
|---|---|
| From: | Patricia L. Peden [ppeden@pedenlawfirm.com] |
| Sent: | Wednesday, August 19, 2009 5:46 PM |
| To: | 'Parker, Crystal' |
| Cc: | Nick Patton; 'Flynn-DuPart, Mary Lou'; 'Babcock, Chip'; 'Adair, Kathy' |
| Subject: | RE: Agreement regarding privilege |

Crystal:
I think we have a difference in opinion about the analytical approach to logging privileged documents.

First, agreed that the lawyers do not have to log their communications with their client or among the attorneys working for the client. In these cases that means:
Albritton—no need to log communications between Albritton, Patton, Holmes and Peden.
Ward—no need to log communications between Ward, Patton and Peden.
Cisco—no need to log communications between Cisco employees and Jackson Walker. Cisco is not represented in this case by Baker Botts, Morgan Lewis, McDermott Will, etc. Documents between Cisco and lawyers not representing Cisco in this case must be logged. The log should state the basis of the privilege. To be clear, we are not at this point debating whether they are discoverable; only that they must be on Cisco's log so we know they exist and the basis upon which they are being withheld.

I don't understand your argument about communications where we are wearing "both hats." Nick and I are counsel for the Plaintiff in both cases. If we are discussing one or both of the cases, it is a communication between Patton and Peden, which in either case falls within the category of documents that need not be logged. That does not hold true for Cisco, particularly where Cisco has been adamant in its discovery responses that Baker Botts, Noh and Frenkel are "third parties." Baker Botts cannot be a Cisco lawyer for purposes of the privilege log, but then be a third party when it comes time to respond to discovery. Same for Frenkel and Noh.

As to your assertion that there is a JDA privilege. If you believe documents are properly withheld under a JDA, then the underlying privilege and the JDA must be on Cisco's log. That is because a JDA is not itself a privilege. Nor does a JDA morph an unretained lawyer into a Cisco attorney. Rather, a JDA is a mechanism to share an otherwise valid attorney/client communication with a third party without triggering a disclosure waiver. In other words, it rests on top of and extends an otherwise valid claim of privilege. If the underlying privilege goes away, so does the JDA protection. Obviously, that may become an issue depending on how Judge Hendren rules on the waiver issue pending before him.

It is highly problematic that at this stage of these cases, we don't know who Cisco claims to have a JDA with, when the JDA came to be, and what documents have been withheld on that basis. The point of requiring a privilege log is to alert the other side that you are withholding documents as privileged. Cisco's failure to log documents exchanged with parties other than Cisco and its lawyers has violated the rules, leaving us with no way to determine what documents Cisco is withholding or why. We cannot evaluate the merit of a JDA privilege that we don't know exists until it gets sprung on us in deposition. Cisco has not produced a single document that would put us on notice that a JDA is in place with anyone.

We have not been able to agree on any privilege issue in this case thus far and I don't expect that we will agree on this one either. Please let me know whether you will agree to log the documents as requested. If not, we can bring our dispute before Judge Hendren should it be necessary after he rules on the privilege issue currently before him.

Regards,
Patty

1

**From:** Parker, Crystal [mailto:cparker@jw.com]
**Sent:** Tuesday, August 18, 2009 7:34 AM
**To:** Patricia L. Peden
**Cc:** Nick Patton; Flynn-DuPart, Mary Lou; Babcock, Chip; Adair, Kathy
**Subject:** RE: Agreement regarding privilege

That was not our agreement. We do not think the Rules require us to log communications among Cisco and its attorneys or among its attorneys in this case for purposes of the rendition of legal services. That would include those with whom Cisco has a joint defense agreement. Why do you think a different rule applies to those communications? Indeed, it would be inconsistent for you to ask us to log those communications when you represent both Ward and Albritton. Are you saying you are required to log all communications where you were wearing both hats--that is representing Ward and Albritton? Or where you and Nick discussed both cases? Or all of your communications with Jamey Holmes? For example, what about your "communication" as Albritton's lawyer sharing documents with Ward's lawyer that were covered by a Protective Order? What about notes or discussions about how strategy in one case affected the other case?


Crystal J. Parker
Jackson Walker L.L.P.
713-752-4217



**From:** Patricia L. Peden [mailto:ppeden@pedenlawfirm.com]
**Sent:** Thursday, August 13, 2009 1:00 PM
**To:** Parker, Crystal
**Cc:** 'Nick Patton'; Flynn-DuPart, Mary Lou
**Subject:** RE: Agreement regarding privilege

Crystal:
Your email is correct in that our agreement is that neither party must log communications between attorney and client or among the client's attorneys that were generated for the purpose of rendering legal services for this case. So in this case, Ward need not log communications with his lawyers or between his lawyers. Cisco need not log communications with its lawyers or between its lawyers.

That being said, we need to know if there are documents exchanged between Cisco and Baker Botts that Cisco has not produced or logged on its privilege log. I understand that Cisco and Baker Botts claim to have a joint defense agreement but because Baker Botts does not represent Cisco in this case, communications between Baker Botts and Cisco concerning this litigation should be logged on your privilege log with a notation that they are being withheld under a JDA. That is also true for communications between Cisco and third parties and attorneys representing third parties, such as Rick Frenkel and John Noh. Documents exchanged with third parties and/or their attorneys should either be produced or logged along with an explanation of the basis of the privilege asserted. Please confirm that you have logged all such documents or that no such documents exist. If you need to discuss the issue further, let me know.

Thanks,
Patty

**From:** Parker, Crystal [mailto:cparker@jw.com]
**Sent:** Friday, August 07, 2009 1:54 PM
**To:** Parker, Crystal; ppeden@pedenlawfirm.com; Nick Patton
**Cc:** Babcock, Chip; Flynn-DuPart, Mary Lou; Adair, Kathy
**Subject:** RE: Agreement regarding privilege

2

Patty,

Today in our call you explained that my email below reflects what we agreed.  Will you please confirm that this is our agreement.  That is, that neither party must is required to log communications among the client and attorneys or among the client's attorneys regarding the Ward v. Cisco litigation for purposes of rendering legal services.  For example, we do not require that you log communications you had with Johnny or communications you and Nick had regarding the Ward v. Cisco litigation for purposes of providing legal services to Ward.

Thank you,


Crystal J. Parker
Jackson Walker L.L.P.
713-752-4217



_____
**From:** Parker, Crystal
**Sent:** Friday, July 31, 2009 1:08 PM
**To:** ppeden@pedenlawfirm.com; Nick Patton
**Cc:** Babcock, Chip; Flynn-DuPart, Mary Lou; Adair, Kathy
**Subject:** Agreement regarding privilege

Patty,

I noticed in your discovery responses you state on numerous occasions that "Per party agreement, documents exchanged between Ward and his counsel need not be included on Ward's privilege log."  There is no such agreement.  You and I agreed in a phone conversation that the Federal Rules of Civil Procedure do not require Plaintiff or Defendant to log communications between the client and attorneys or among their attorneys regarding this litigation; there was no agreement beyond that.  Presumably all responsive documents came from Ward and thus were "exchanged" between Ward and his counsel, so the "agreement" you mention goes beyond what we discussed.

If you don't agree that this was our agreement, please let me know in writing before our call next Monday.

Thank you,

Crystal J. Parker
Jackson Walker L.L.P.
1400 McKinney, Suite 1900
Houston, TX 77010
713-752-4200 (main)
713-752-4217 (direct)
713-752-4221 (main fax)
713-754-6717 (direct fax)
Email:  cparker@jw.com

Internet Email Confidentiality

Privileged/Confidential Information may be contained in this message.  If you are not the addressee indicated in this message (or responsible for delivery of the message to the addressee), you may not copy or deliver this message to anyone.  In such case, you should destroy this message and kindly notify the sender by reply email.  The statements contained herein are not intended to and do

3

not constitute an opinion as to any tax or other matter.  They are not intended or written to be used, and may not be relied upon, by you or any other person for the purpose of avoiding penalties that may be imposed under any Federal tax law or otherwise.

No virus found in this incoming message.
Checked by AVG - www.avg.com
Version: 8.5.409 / Virus Database: 270.13.58/2309 - Release Date: 08/19/09 18:06:00