IN THE UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF ARKANSAS
TEXARKANA DIVISION

JOHN WARD, JR.                          §
                                        §
        Plaintiff                       §        No. 4:08cv4022
                                        §
v.                                      §        JURY TRIAL DEMANDED
                                        §
CISCO SYSTEMS, INC.                     §
                                        §
        Defendant                       §

**PLAINTIFF'S SURY-REPLY REGARDING DEFENDANT'S
CROSS-MOTION FOR SUMMARY JUDGMENT**

Dockets.Justia.com

TABLE OF CONTENTS

Page(s)

I.      Introduction .................................................................................................1

II.     Legal Argument .........................................................................................1

        A.      Cisco's Cross-Motion Should Be Denied For Failure To
                Comply With Local Rule 56.1 ...............................................................1

        B.      Cisco's Cross-Motion Should Be Denied For Failure To
                 Comply With the Court's Scheduling Order ..........................................2

        C.      Cisco Fails To Allege Facts Sufficient To Meet Its Burden
                 Of Proving Ward is a Public Figure.....................................................2

        D.      Ward Is A Private Figure .......................................................................8

                1.      The Filing of the ESN Complaint Was a Private
                         Matter Until Cisco Defamed Ward ..........................................9

                2.      Ward Has Not Voluntarily Thrust Himself Into the
                        Vortex of Any Public Debate In an Effort To Influence
                        the Outcome of the Debate ......................................................17

                        a.      Cisco's Assertion That Ward Is A Public Figure Because He
                                Is A Top Filer Of Patent Cases On Behalf of Non-Practicing
                                Entities In The Eastern District of Texas Is Meritless ..............17

                        b.      Cisco's Argument That Ward Need Not Have Injected
                                Himself Into The Controversy In Order To Be A Public
                                Figure Is Meritless ...............................................................20

                        c.      Cisco's Argument That Ward Is A Public Figure Because
                                 He Could Have Responded To Cisco's Anonymous
                                Attacks Is Meritless................................................................22

III.    Conclusion ................................................................................................23

## TABLE OF AUTHORITIES

CASES                                                                  Page(s)

*Am. Family Mut. Ins. Co. v. Meill,*
    2006 U.S. Dist. LEXIS 72551 (N.D. Iowa Oct. 4, 2006) ................................................. 3

*Brown v. Farmland Foods, Inc.,*
    178 F. Supp. 2d 961 (N.D. Iowa 2001)................................................................................4

*Am. Prairie Constr. Co. v. Hoich,*
    560 F.3d 780, 797 (8th Cir. 2009) ........................................................................5,6,18,19

*Bair v. Atlantis LLC,*
    2008 U.S. Dist. LEXIS 100939 (W.D. Mo. Dec. 15, 2008) .............................................2

*Connick v. Myers,*
    461 U.S. 138, (1983).........................................................................................................3

*Dun & Bradstreet, Inc. v. Greenmoss Builders, Inc.,*
    472 U.S. 749 (U.S. 1985).............................................................................................4,11,13

*Gertz v. Robert Welch, Inc.,*
    418 U.S. 323, (1974)................................................................1,4,6,8,19,21,22,23

*Hutchinson v. Proxmire,*
    443 U.S. 111 (1979).............................................................................3,4,7,8,9,10,21,22

*In re IBP Confidential Business Documents Litigation (Bagley v. Iowa Beef Processors),*
    797 F.2d 632 (8th Cir.1986) .........................................................................................11

*Little Rock Newspapers Inc. v. Fitzhugh,*
    330 Ark. 561 (1997).........................................................................................6,8,20,21,22

*Lundell Mfg. Co. Inc. v. America Broadcasting Co.,*
    98 F.3d 351 .................................................................................................8,17,19,20,21

*Porous Media Corp. v. Pall Corp.,*
    173 F.3d 1109 (8th Cir. 1999) ......................................................................................13

*Posters ' N Things, Ltd. v. United States,*
    511 U.S. 513 (1994)........................................................................................................4

*Richardson v. Sugg,*
    448 F.3d 1046 (8th Cir. 2006) .......................................................................................16

*Rosanova v. Playboy Enters.*,
    580 F.2d 859 (5th Cir. 1978) ........................................................................20

*Snead v. Redland Aggregates, Ltd.*,
    998 F.2d 1325 (5th Cir. 1993) ................................................................10,13

*Time, Inc. v. Firestone*,
    424 U.S. 448 (1976).......................................................................................4

*Waldbaum v. Fairchild Pubs., Inc.*,
    627 F.2d 1287 (D.C. Cir. 1980) ................................................3,4,8,9,12,21

*Wilson v. Daily Gazette Co.*,
    214 W. Va. 208 (W. Va. 2003) ....................................................................21

*Wolston v. Reader's Digest Assoc. Inc.*,
    443 U.S. 157 (1979).................................................................................4,8,11

## I.      Introduction:

Cisco bears the burden of proving that Ward is a limited-purpose public figure.  As the Cross-movant on this issue, Cisco was required both to support its independent motion with record evidence, and to demonstrate that it is entitled to judgment in its favor.  Cisco's Cross-Motion fails on all fronts.  Not only are there no facts supporting Cisco's Cross-Motion, as a result of its failure to follow the Court's Local Rules, but the motion is untimely and fails on the merits.

The Reply offers nothing to save Cisco's lost cause.  The Reply cites no facts to show that Ward has voluntarily and purposefully interjected himself into the public spotlight on the issue of "the abuse of patent system by non-practicing entities in the Eastern District of Texas" because there are none; Ward has done nothing to thrust himself into the public spotlight on that issue, let alone attempt to influence the outcome of the alleged debate.  Ward's representation of ESN or other clients in the Eastern District of Texas is not enough to make him a public figure as the Supreme Court's landmark holding in *Gertz* clearly holds.  Cisco has utterly failed to meet its burden of proving that Ward should be elevated to public figure status and its Cross-Motion must therefore be denied.

## II.     Legal Argument:

A.      Cisco's Cross-Motion Should Be Denied For Failure To Comply With Local Rule 56.1

Cisco does not dispute its failure to follow Local Rule 56.1.  Instead, the Reply argues Cisco can ignore the Local Rule because "the Clerk of Court has not issued any notice of deficiency regarding the Cross-Motion."  Reply at 1.  It is not the Court Clerk's job to ensure that Cisco follow this Court's rules.  As a litigant in this Court, Cisco is charged with knowing and following the Court's rules, even if the Court Clerk does not issue a notice of deficiency.  Cisco's argument to the contrary is an unreasonable attempt the shift the blame of its continued non-compliance with the Court's Summary Judgment Rule onto the Court's staff.

Even if a notice of deficiency were required, the Court Clerk brought Local Rule 56.1 to Cisco's attention before it filed its Cross-Motion.  *See* D.E. 117.  Cisco chose to simply ignore

1

the Court.[1]  Cisco is not entitled to a special exception from following the rules that every other litigant in this Court must follow.  Having failed to set out the facts its Cross-Motion as required, it is well within the Court's discretion to deny the motion on this basis alone because Cisco's motion is left unsupported by facts.  *Bair v. Atlantis LLC,* 2008 U.S. Dist. LEXIS 100939, *3-6 (W.D. Mo. Dec. 15, 2008) (denying plaintiffs' motions for summary judgment where plaintiffs failed to include a statement of uncontroverted material facts as required by local rule; failure to comply left motion unsupported by facts).

B.      Cisco's Cross-Motion Should Be Denied For Failure To Comply With the Court's Scheduling Order

Plaintiff's Response to Cisco's Cross-Motion demonstrated that Cisco's Cross-Motion was untimely.  This Court's Scheduling Order required that motions for summary judgment be filed on or before October 12, 2009.  Cisco's motion was filed on November 5, 2009. Though it had ample opportunity to do so, Cisco did not seek leave of Court to late file a summary judgment motion, and cannot therefore show good cause under Rule 16 for its late filing.  The Reply does not dispute that Cisco's motion is late.  Thus, the Court should deny Cisco's motion for failure to comply with the Court's Scheduling Order.

C.      Cisco Fails To Allege Facts Sufficient To Meet Its Burden Of Proving Ward is a Public Figure

Plaintiff objected to Cisco's non-existent statement of facts because Cisco's Cross-Motion paraded legal argument and conclusory allegations as "facts," leaving plaintiff to guess the facts Cisco asserts supports its motion.[2]  In Reply, Cisco restates its "facts" without any

---

[1] Cisco failed to comply with the Court Clerk's notice of deficiency for its own independent motion for summary judgment, in responding to Plaintiff's motion for summary judgment, and again here.  *See* D.E. Nos. 114, 117, 140. At some point, Cisco must be held accountable for its blatant and repeated violation of this Court's rules.

[2] Cisco's Cross-Motion included a long "Introduction and Factual Background" section, presenting Cisco's biased take on the "facts," rather than the straight-forward statement of facts required by Local Rule 56.1.  Plaintiff could not be sure if Cisco contended those "facts" supported its Cross-Motion.  The Reply does not include Cisco's factual background in its purported "statement of facts" and it is now apparent that Cisco's six-page "summary" is not factual support for its Cross-Motion.  *See* Reply at 2-3.  Therefore, as the "facts" alleged by Cisco are demonstrably wrong, plaintiff does not address them in this sur-reply, choosing not to burden the Court with argument that is irrelevant to the summary judgment record before it.

evidentiary support.[3]  Cisco's refusal to isolate and identify the facts is not accidental.  Cisco has no facts that would show that Ward is a limited-purpose public figure, so it seeks to enhance its "facts" with conclusory attorney argument.

Plaintiff cannot respond to facts Cisco has not identified, but will attempt to do so here to shed light on where Cisco's alleged "facts" go awry.

(1)    Denied.  Cisco's statement of its alleged public controversy is not a fact, but rather attorney argument.  Cisco's argument was rejected by the Texas Court.  The Texas Court's Order reads:

> "The Defendants argue that the blog postings address the public controversy regarding the abuse of the patent system by non-practicing entities in the Eastern District of Texas, including the issue of non-practicing entities attempting to maintain venue in the Eastern District of Texas. The Plaintiff counters that the matter at issue, the lawsuit between ESN and Cisco, did not involve a public controversy. The court agrees with the Plaintiff. The *ESN* lawsuit was not a matter of public concern. There is no evidence that the private dispute between ESN and Cisco constituted a public controversy."  (internal citation omitted).[4]

Cisco's Vice President, Mallun Yen testified that the accused posts were not about patent reform.[5]  Moreover, even if Cisco's alleged public controversy were accepted by this Court, it is insufficient to elevate Ward to public figure status.  *See Waldbaum v. Fairchild Pubs., Inc*., 627 F.2d 1287, 1296-97 (D.C. Cir. 1980) (a general concern or interest will not suffice to create a public controversy)*; Hutchinson v. Proxmire*, 443 U.S. 111 (1979) (same).

(2)    Denied.  Cisco's conclusory statement that the articles at issue are a matter of public concern is not a fact, but rather attorney argument about an issue of law.  The inquiry into the protected status of speech is an issue of law.  *See Connick v. Myers*, 461 U.S. 138, 148 n.7 (1983).  Cisco's Cross-Motion fails to brief for the Court the legal test for determining whether an issue is a matter of public concern, and should be denied on this ground.  *See Am. Family Mut. Ins. Co. v. Meill*, 2006 U.S. Dist. LEXIS 72551 (N.D. Iowa Oct. 4, 2006) ("The court

---

[3] Cisco's Cross-Motion is a separate motion for summary judgment and it was required to provide a statement of facts and evidentiary citations for its alleged facts.  It has not done so and its motion must therefore fail.
[4] *See* Exh. A at 10.
[5] *See* Exh. B (Yen Albritton Depo) at 218:22-219:10.

agrees with American Family that Miell failed to adequately brief this claim."); *see also Brown v. Farmland Foods, Inc.*, 178 F. Supp. 2d 961, 974 (N.D. Iowa 2001) (granting motion where non-movant failed to adequately brief issue in response, citing *Posters' N Things, Ltd. v. United States*, 511 U.S. 513, 527 (1994)).   In any event, Cisco's defamatory posts were written to advance Cisco's interests in the ESN v. Cisco litigation and are therefore not a matter of public concern.  *See Dun & Bradstreet, Inc. v. Greenmoss Builders, Inc*., 472 U.S. 749, 762 (U.S. 1985) (speech solely in the individual interest of the speaker is not a matter of public concern).

(3)     Denied.  Cisco's conclusory assertion that the matter at issue in the Articles was the topic of widespread debate and was discussed in 16 separate articles is a distortion of the record.  The articles Cisco cites discuss patent reform generally, or the Eastern District of Texas generally, and do not discuss the filing of the ESN complaint, ESN, Ward, or any alleged misconduct by plaintiff or the clerk's office.  The alleged generalized public controversy cannot support Cisco's position.  *See Wolston v. Reader's Digest Assoc. Inc*., 443 U.S. 157, 167-168 (1979) ("A liable defendant must show more than mere newsworthiness to justify application of the demanding burden of *New York Times*" and "A private individual is not automatically transformed into a public figure just by becoming involved in or associated with a matter that attracts public attention."); *Hutchinson*, 443 U.S. at 135 (general public concerns are not a sufficient basis upon which to classify a defamation plaintiff as a limited-public figure); *Time, Inc. v. Firestone*, 424 U.S. 448,454 (1976) (stating that "public interest" is not the same as a "public controversy" and holding publicized court proceedings of private litigants were not the sort of "public controversy" referred to in *Gertz.*); *Gertz v. Robert Welch, Inc.*, 418 U.S. 323, 346, 352 (1974) (rejecting "general interest" test and holding attorney representing client to be a private figure.); *Waldbaum*, 627 F.2d at1296-97 (a general concern or interest will not suffice to create a public controversy).

(4)     Denied.  Cisco's conclusory assertion that the articles were critical of the Eastern District of Texas is contradicted by Cisco's assertions to the contrary.  Although one of the articles refers to the "Banana Republic of East Texas," Frenkel testified that he does not

remember writing that statement in the post, and cannot recall why he included that comment, and he removed that comment from his post.[6]  Cisco has publically stated that it has the highest respect for the judiciary of the Eastern District of Texas.[7]  Cisco cannot claim that it did not mean to be critical of the Eastern District of Texas for the purpose of mending its image with the Court and then turn around and claim that it was being critical of the Court for the purpose of its Cross-Motion for Summary Judgment.

(5)     Admitted.   However, the fact that people read the Troll Tracker blog is completely irrelevant to the issue before this Court, which is plaintiff's status as a private figure plaintiff.

(6)     Denied.  With respect to the issue before this Court—the public controversy used for determining plaintiff's status, Judge Schell ruled that the controversy at issue was not a public controversy.[8]

(7)     Denied.  Cisco's assertion that Ward was one of the top filers of patent cases of patent cases on behalf of non-practicing entities in the Eastern District of Texas at the time of publication is unsupported attorney argument.  Cisco offers no evidence in support of its "fact".  Cisco's request for judicial notice is improper under Fed. R. Evid. 201.[9]  Cisco's reliance on this alleged fact suffers from both a procedural and substantive defect that precludes this asserted fact from being considered in support of Cisco's Cross-Motion.  *See Am. Prairie Constr. Co. v. Hoich*, 560 F.3d 780, 797 (8th Cir. 2009).

(8)     Denied.  Cisco's assertion that Ward was counsel of record in 129 patent cases pending in the Eastern District of Texas is unsupported attorney argument.  More importantly, it is immaterial to the issues before this Court.  To the extent that Cisco claims that Ward is a

---

[6] *See* Exh. C (Frenkel Albritton Depo.) at 27:23-28:23.
[7] *See* Exh. D.
[8] *See* Exh. A at 10.
[9] When taking judicial notice of adjudicative facts, the judge is required to use the procedures set forth in Fed. R. Evid. 201.  *See Am. Prairie Constr. Co. v. Hoich*, 560 F.3d 780, 797 (8th Cir. 2009).  One of the requirements of Rule 201 is procedural, namely, that the parties be given notice and an opportunity to object to the taking of judicial notice.  Rule 201 requires that opposing counsel have prior knowledge of the specific documents at issue and the specific documents for which the Court would take judicial notice.  *See id.* Cisco has not followed procedure in this regard.  Moreover, the Court is precluded from taking judicial notice of Cisco's argument.  *See id.*

public figure because he represents non-practicing entities, Cisco has not identified those cases in which Ward's represents non-practicing entitles.   Instead, Cisco simply offers the Court a printout of the cases in which Ward represents clients—both plaintiffs and defendants, and without a description of which cases include representation of non-practicing entities.  Cisco asks the Court to overlook its lack of evidence, and the lack of relevance of that purported evidence, and simply take judicial notice of its argument.  Cisco's request for judicial notice is improper. *See Am. Prairie Constr. Co.*, 560 F.3d at 797.  In any event, the asserted fact is immaterial because Ward cannot be a public figure simply because he represents clients in the Eastern District of Texas.  *Gertz*, 418 U.S. at 346, 352; *Little Rock Newspapers Inc. v. Fitzhugh*, 330 Ark. 561, 579-583 (1997) (discussing in depth the limited public figure test as applied to attorneys, chronicling cases holding that attorneys are private figures, and holding that former federal prosecutor was a private figure).

(9)     Denied.  Cisco's statement of fact is unsupported by the testimony it cites.  Ward testified that 95% of his business is contingency-fee litigation.  That business includes matters other than patent litigation.[10]  Plaintiff's billing practices are not relevant to the private/public figure issue before the Court and Cisco has cited no authority to the contrary.

(10)    Denied.  Cisco's assertion that Ward took action to shut down the Patent Troll Tracker because it was speech he didn't like is twisted attorney argument.  Ward testified that he sought to have the Troll Tracker's posts *about him* taken down because they falsely accused him of criminal and unethical conduct.[11]  Cisco's assertion of this alleged fact demonstrates the futility of its argument.  Cisco cannot seriously contend that a victim of a libelous writing is a public figure if he seeks to have the false accusations removed from public view.  Cisco's argument is all the more ridiculous given that it simultaneously argues that Ward should be a public figure because he could have availed himself of self-help to address the false accusations. *See* Reply at 7.

---

[10] *See* Exh. E (09/16/09 Albritton Trial Trans.) at 793:18-22.
[11] *See* Exh. E (09/16/09 Albritton Trial Trans.) at 778:5-19.

(11)    Denied.  After Cisco defamed Ward and he was forced to file a lawsuit to defend his reputation, the press covered the story.  The press that Cisco cites to was created by Cisco's false accusations and cannot be used by Cisco to elevate Ward to public figure status.  *See Hutchinson*, 443 U.S. at 130, 136 (before a plaintiff can be considered a limited purpose public figure, he must be involved in a public controversy *before* the defamatory statement is published, for "those charged with defamation cannot, by their own conduct, create their own defense by making the claimant a public figure.").

(12)    Denied.  Ms. Mathis did not undertake "numerous" efforts and did not seek to "persuade the court to change the court's record."[12]  In fact, the Court's official record was never changed.[13]  Cisco's coloring of events is not a "fact" but rather attorney argument.  Moreover, the alleged facts have nothing to do with Ward's public or private figure status.

(13)    Admitted that Ward believes there is nothing abusive about patent litigation in the Eastern District of Texas, but that others are entitled to their opinions on the issue.  This "fact" is not relevant to Ward's status as a public or private figure.  To the extent that Cisco's argument is intended to imply that Frenkel was entitled to make false accusations that Ward conspired with the court clerk to alter government records because some people hold negative opinions about the Eastern District of Texas, Cisco is widely off the mark.  While Cisco and Frenkel may be entitled to their opinion about the Eastern District of Texas, they are not entitled to publish lies about opposing counsel under a cloak of anonymity and then seek to justify their conduct because Ward practices in the Eastern District of Texas.  Cisco's argument in this regard does not pass the straight-face test.

(14) Admitted that publications Patently-O and Patent Law 360 both commented on the ESN filing.  However, neither of those publications accused Ward of wronging or raised concerns about the integrity of the Court.  Moreover, two innocuous "comments" unrelated to the defamatory statements comes nowhere near to creating a public controversy.  That type of

---

[12] *See* Exh. F (Mathis Albritton Depo.) at 37:4-15.
[13] *See* Exh. G (Maland Albritton Depo.) at 153:22-154:16.

minimal comment can hardly qualify as even a "general concern" and certainly cannot rise to the type of public debate required for a public controversy.  *See Waldbaum*, 627 F.2d at 1296-97; *Hutchinson,* 443 U.S. at 135.  The minimal commentary about the ESN filing is insufficient to elevate Ward to public figure status.  *See Waldbaum*, 627 F.2d at 1296-97*; Wolston*, 443 U.S. at 167-168; *Hutchinson*, 443 U.S. at 135; *Firestone*, 424 U.S. at 454; *Gertz*, 418 U.S. at 346, 352.

(15).   Denied.   Ward could not have posted his own comments because the Troll Tracker stopped taking comments the day after he published the last of the accused posts.[14] Moreover, it is absurd for Cisco to argue that Ward was required to defend himself on an internet blog that had just accused him of criminal conduct, especially when he did not know who was behind the posts.  This alleged "fact" does nothing to elevate Ward to public figure status.

In short, Cisco has no facts upon which to make Ward a limited-purpose public figure. The most that can be said for Cisco's alleged "facts" is that Ward practices law in a district that has found itself the subject of public debate, much of it at the behest of companies like Cisco. That is not enough to make Ward a limited-purpose public figure.  Controlling authority from the Supreme Court clearly hold that, on this record, Ward cannot be anything other than a private figure.  *See Gertz*, 418 U.S. at 346, 352; *Wolston*, 443 U.S. at 167-168; *Hutchinson*, 443 U.S. at 135; *Firestone*, 424 U.S. at 454; *Little Rock*, 330 Ark. at 579-583.   Cisco's argument to the contrary invites this Court to reversible error.

D.      Ward Is A Private Figure

The Reply ignores that it is Cisco's burden of proof to demonstrate that Ward is a limited-purpose public figure.  *See Lundell Mfg. Co. Inc. v. America Broadcasting Co.*, 98 F.3d 351, 364 (requiring defendant to prove elements of the public figure test).  Cisco has not—and cannot—meet is burden of proof.  Ward cannot be a limited-purpose public figure because there was no public controversy concerning the filing of the ESN complaint before Cisco created one by defaming Ward in its Troll Tracker blog.  But, even if this Court were to accept Cisco's

---

[14] *See* Exh. H (Frenkel2.000294).

8

improper general characterization of the alleged debate surrounding the abuse of the patent system by non-practicing entities in the Eastern District of Texas as the operable public controversy, Cisco's argument still fails because Ward has done nothing to thrust himself into the vortex of that debate in order to influence its outcome.  Either way, Ward is a private figure plaintiff.

       1.      The Filing of the ESN Complaint Was a Private Matter Until Cisco Defamed Ward

Cisco argues that the public controversy giving rise to the defamatory posts is "the public controversy regarding the abuse of the patent system by non-practicing entities in the Eastern District of Texas, including the issue of non-practicing entities attempting to maintain venue in the Eastern District of Texas because of the advantages of maintaining their cases in that forum." Reply at 2 (fact 1).  Cisco offers the Court the "patent abuse by non-practicing entities" controversy, as it must, because until Cisco posted its defamatory posts about Ward there was no public controversy about Ward, ESN or the Eastern District of Texas's Clerk's office.  Cisco's effort to remake its accusations about Ward into commentary about patent abuse is futile.

First, the accused posts say nothing about litigation reform efforts, the patent reform bill pending before Congress, or any of the number of legislative issues or controversies surrounding patent litigation reform.  But, even if Cisco's posts could somehow be read to have a tangential relationship to abuse of the patent system by non-practicing entities, Cisco is still destined to lose because its alleged controversy is far to general to serve as the public controversy giving rise to the defamatory posts.  *See Waldbaum*, 627 F.2d at 1296-97; *Hutchinson,* 443 U.S. 111.  As the Supreme Court has noted, just because a matter "may be of interest to some portion of the reading public" does not make it a "public controversy," and that any interpretation to the contrary would impermissibly "equate 'public controversy' with all controversies of interest to the public." *Firestone,* 424 U.S. at 454.

Second, there is no evidence that before Cisco published its defamatory statements, the media were concerned with the patent litigation between ESN and Cisco.  There was no public

discussion about corruption in the Eastern District's clerk's office or about Ward's alleged criminal and unethical proclivities.[15]  That is why Cisco asked Frenkel to *create* public interest. The fact that Cisco could easily do so because the Troll Tracker was on Cisco's payroll does not transform a private litigation into a public controversy.  In other words, there was no "controversy at issue" until Yen, Noh, and Frenkel decided that there "maybe a news story here."[16]  Had there already been sufficient public interest, Yen's effort to gin up a news story—a news story that Yen didn't think was related to patent reform[17]—would have been unnecessary. The litany of articles cited in Cisco's brief do nothing to change this conclusion.  Each of those articles discusses the Eastern District of Texas generally, and has nothing to do with Ward, ESN or Ward's role in the *ESN v. Cisco* litigation.

Third, contrary to the position taken by Cisco in Reply, the public controversy that Cisco manufactured cannot count.  As the Supreme Court held in *Hutchinson v. Proxmire*, for a plaintiff to be considered a limited purpose public figure, he must be involved in a public controversy **before** the defamatory statement is published, for "those charged with defamation cannot, by their own conduct, create their own defense by making the claimant a public figure." 443 U.S. at 135.  Cisco has no evidence that Ward was a limited-purpose public figure with regard to the gravamen of the defamatory posts before Cisco published its defamatory statements.  On that basis alone, the Court should rule that Ward is a private figure.  *See id*.

Fourth, the Reply fails to show that anyone other than Cisco and ESN would feel the impact of the resolution of the "controversy" surrounding the date that was file stamped on ESN's complaint.  Because the ESN litigation was an intellectual property dispute between private civil litigants, there is no reasonable argument that a dispute over when a pleading was filed in the ESN case would impact anyone other than the parties to the lawsuit.  This too supports the conclusion that the there was no public controversy.  *See Snead v. Redland*

---

[15] *See* Exh. C (Frenkel Albritton Depo.) at 158:3-7; Exh. I (Smith Albritton Depo.) at 27:3-10.
[16] *See* Exh. J (Cisco Privilege.000012).
[17] *See* Exh. B (Yen Albritton Depo.) at 218:22-219:10.

*Aggregates, Ltd.*, 998 F.2d 1325, 1330 (5th Cir. 1993) (intellectual properly litigation between two private litigants is an ordinary matter of private concern), citing *Dun & Bradstreet*, 472 U.S. at 762; *see also Firestone,* 424 U.S. at 454.

Importantly, the Texas Court's Order that Cisco singularly relies on in Reply to support its Cross-Motion expressly rejected the very argument Cisco advances in this Court, finding that the articles at issue were about the filing of the ESN v. Cisco lawsuit and *were not a matter of public concern*.  The Texas Court's Order reads:

> "To determine the existence of a public controversy, the court "must examine whether persons actually were discussing some specific question. A general concern or interest will not suffice."  The Defendants argue that the blog postings address the public controversy regarding the abuse of the patent system by non-practicing entities in the Eastern District of Texas, including the issue of non-practicing entities attempting to maintain venue in the Eastern District of Texas. The Plaintiff counters that the matter at issue, the lawsuit between ESN and Cisco, did not involve a public controversy. The court agrees with the Plaintiff. The *ESN* lawsuit was not a matter of public concern. There is no evidence that the private dispute between ESN and Cisco constituted a public controversy." (internal citation omitted).[18]

Case law in this Circuit compels the same result.  The Eight Circuit has made clear that *simple newsworthiness alone* will be insufficient to generate such a controversy."  *In re IBP Confidential Business Documents Litigation (Bagley v. Iowa Beef Processors)*, 797 F.2d 632, 645 (8th Cir.1986), citing *Wolston,* 443 U.S. 157 at 167.[19]  "Further, purely private disputes *(such as a lawsuit)* whose impact is limited primarily to the parties involved, while often of interest to the public, will also be insufficient to create a [] public controversy."  *Id*., citing *Firestone,* 424

---

[18] *See* Exh. A at 10.

[19] The Eight Circuit's reasoning in *Bagley* demonstrates that the defamatory posts at issue in this case are not about a matter of public concern.  In *Bagley*, the particular controversy "giving rise" to defendant's defamatory letter was a governmental investigation into the plaintiff's numerous business practices.  That investigation included a number of public hearings, generated substantial public comment and was widely reported in the media.  Bagley's testimony alone generated well over a dozen news articles.  The Court found that the controversy generated by the investigation, "by its very nature, went beyond a purely private dispute that only by mere chance attracted the interest of the public."  In that case, because the investigation had the potential to generate new legislation that might reasonably have been expected to affect both the meat industry and the consumer, the resulting controversy was in fact a 'public' controversy, involving issues of significant public concern."  None of the facts that led the *Bagley* Court to find the issue before it to be a matter of public concern are present in this case.  Here, there was no public investigation into the filing of the ESN complaint, and certainly no public hearings.  The ESN matter was not widely reported in the media, which is why Cisco asked the its in-house blogger to write about the ESN case.  Unlike the controversy in *Bagley*, the ESN filing was entirely a private dispute that had little chance of attracting public attention until Cisco decided it should.

U.S. 448 (emphasis added).  To be a matter of "public concern" the controversy must raise issues that can reasonably be said to have an impact beyond the parties directly involved in the controversy.  *See id.,* citing *Waldbaum,* 627 F.2d at 1296-97 (emphasis added).  The filing of the ESN complaint impacted no one other than ESN and Cisco.

Recognizing that it lost the public controversy issue in the Texas Court, the Reply seeks to prevent this Court from reaching the same conclusion by disingenuously conflating the Texas Court's ruling on the public controversy underlying a determination of plaintiff's status with the separate issue of the character of the speech.  Cisco is not accidently confusing the legal issues; it understands the difference.  During JMOL argument in the Albritton case, Cisco expressly argued that the Texas Court's Order holding that Albritton was a private figure had nothing to do with that Court's resolution of the separate issue concerning the character of the speech.[20]

The Reply argues to this Court that it should substitute the Texas Court's ruling concerning the character of the speech for its ruling concerning the controversy underlying plaintiff's private/public status, and it does so without identifying for this Court the distinction. *See* Reply at 5-6 (starting with an argument about the public controversy underlying the private figure analysis then merging that argument with a discussion of Judge Schell's ruling on the character of the speech without distinguishing the issues).  Cisco's obfuscation of the issues cannot save it from the conclusion that Ward is a private figure.

Whether the Court accepts Cisco's argument that the controversy giving rise to the defamatory speech was the alleged abuse of the patent system by non-practicing entitles in the Eastern District of Texas and accepts the Texas Court's finding that there was no public controversy, or instead considers Cisco's new argument based on Judge Schell's JMOL ruling, Cisco cannot prevail because it cannot prove there was more than a general interest in the alleged controversy at the time of publication as required for a public controversy finding.  *See Waldbaum*, 627 F.2d at 1296-98.  Consequently, whichever "controversy" this Court accepts,

---

[20] *See* Exh. K (09/17/09 Albritton Trial Trans.) at 172:7-173:14.

Cisco cannot meet its burden of proving a public controversy giving rise to the defamatory speech. The "patent abuse" theory is too general and not sufficiently tied to the posts to support finding a public controversy and the "corruption" theory improperly rests on publicity that Cisco created.

Plaintiff's failure to embrace the Texas Court's Order on this issue of the character of the speech is not disingenuous as the Reply asserts. Plaintiff in this case cannot accept the Texas Court's ruling because it was based on an incomplete factual record. Cisco did not produce the same documents to Albritton that it has produced in this case. Thus, the Texas Court was missing critical evidence, including several key emails that demonstrate that Cisco commissioned the Troll Tracker posts—not as a commentary on patent reform—but rather to serve as a covert attack on its opposing counsel to gain a litigation advantage in the ESN case. The documents available to this Court, but not available to the Texas Court, shed an entirely new light on the "matter of public concern issue."

"Whether speech addresses a matter of public concern must be determined by the expression's content, form, and context as revealed by the whole record." *Dun & Bradstreet,* 472 U.S. at 761. In determining the context of the speech, courts seek to determine the motive behind the publications. *See Porous Media Corp. v. Pall Corp.*, 173 F.3d 1109, 1121(8th Cir. 1999) (looking at author's internal communications to determine motivation for publication); *Snead*, 998 F.2d at 1330 (press release about private litigation was unsolicited comment on private litigation and therefore not relating to a matter of public concern).

In this case, Cisco's contemporaneous writings produced to Ward demonstrate that Cisco was not seeking to comment on a topic of public interest or to write for the benefit of the public. Instead, Cisco was bent on impugning the reputation of Texas counsel irreverent enough to represent a client suing Cisco. The accused posts were written for Cisco's benefit alone and were unsolicited (and anonymous) statements about a private litigation; not a matter of public concern.

The documents produced by Cisco demonstrate the context for the speech was purely private.  Long before any correction to the ESN docket occurred, and in fact before the ESN complaint had been filed, Frenkel was speculating about why the ESN complaint was not on the Court's system.  He immediately assumes that his opposing counsel was up to no good, writing:

> "I'm more and more convinced that McAndrews (one of ESN's counsel) realized the mistake and had Albritton call the court clerk and beg them not to put it (the complaint) on line (its still not there).  I'll bet that at 12:01 am CT, they will efile a new complaint.  I guess we'll see.  I think that either way, if we file a D/J tomorrow first thin in CT, we have a good shot at making it stick."[21]

Frenkel's co-counsel, Bart Showalter, at Baker Botts chimes in:

> "Eric Albritton and Johnny Ward, geez. . . . This may suggest that they intend to go with this theory of jumping the gun, which could indicate that they will not try to fix this….I wouldn't put it past them to file another complaint with the patent attached today, still need to stick with our plan."[22]

Cisco's in-house counsel, including its Senior Vice President and General Counsel, Mark Chandler, and Vice President of Worldwide Intellectual Property, Mallun Yen, devised a "DJ strategy" aimed at finding the "right" people in the Eastern District of Texas, close to the presiding judge so that Cisco can get the ESN case dismissed.[23]  Chandler writes:

> "Dan Webb claims to be a best friend of Judge Folsom and called me about this case, and claims to have "right" local counsel in Texarkana on his team.  I told him the DJ strategy but told him we might want to talk to him about getting the case dismissed."

Cisco's "DJ strategy" did not pan out because ESN had actually filed its complaint on October 16th (the day the patent issued).  After the court clerk corrected the docket to reflect the day the ESN complaint was actually filed pursuant to the Court's Local Rules, Cisco got vindictive.  Yen writes to Mark Chandler (the General Counsel), Matthew Tanielian (Cisco's lobbyist) and John Noh (a Cisco Public Relations Manager), telling them that ESN's counsel had "arranged to have the filing date" of the ESN complaint changed.  The subject matter line of her

---

[21] *See* Exh. J (Cisco Privileged.000215).
[22] *See* Exh. J (Cisco Privileged.000276).
[23] *See* Exh. J (Cisco Privileged.000106).

email reads "ESN" and she suggests that "maybe a news story here", though she recognized that Cisco needed to "keep getting data to track down what happened."[24]

Frenkel understands what Yen and Noh have asked him to write about, and responds to them both staying "stay tuned."[25]   Ten minutes later, Frenkle publishes an internet post accusing ESN's counsel, including Ward, of conspiring with the court clerk to alter government documents to create subject matter jurisdiction where none existed to aid ESN's case to Cisco's determent.   He suggests that the Court may want to change the docket (back to the date Cisco wanted) after learning of the events described in his (Cisco's) post.

Tellingly absent from this chain of events is any discussion of the abuse of the patent system by non-practicing entities in the Eastern District of Texas.   The subject matter of the discussions leading to the publication of the accused posts all focus on ESN, ESN's counsel and Cisco's strategy for dealing with the ESN lawsuit.   The context in which the defamatory statements were made clearly demonstrates that Cisco asked Frenkel to write about the "ESN" matter, to benefit Cisco's "DJ" strategy and for the purpose of prevailing in the venue battle against ESN.

Later, Cisco found out that its accusations about the correction to the court's docket were not true.   After Cisco received documents from another case where a similar glitch in the court's ECF software had occurred, citing cases undermining Cisco's argument, Frenkel did some of his own legal research.   He writes:

> Note that I did some Westlaw research today, and a few courts have held that cases are filed NOT when the Civil Cover Sheet is lodged with the Court, NOT when the attorney logs into ECF to file the complaint, even if that's the date stamped on the complaint, but when the complaint is actually received by the Court.   The only way to verify that is on the Notice of Electronic Filing, which the attorney should have received after e-filing. From what Kurt found today, that Notice of Electronic Filing probably says 12:01 am.
>
> This comes up a lot in the bankruptcy context.   I did find one case that appears to have gone the other way.   Since I have almost forgotten how to use Westlaw, we should get

---

[24] *See* Exh. J (Cisco Privileged.000012).
[25] *See* Exh. J (Cisco Privileged.000014).

whoever we hire to do this case to do a full search, obviously.  But I give us only a 10-20% chance of being the first filed now."[26]

After receiving the news that Cisco had just accused Ward and Albritton of conspiring with the court clerk to alter records to change the filing date of a complaint that was actually filed on the date ESN claimed, Cisco began to sing a different tune.  At this point—after two of the three articles had been published—Yen first suggest to Frenkel that ESN should have filed a motion to correct the docket.[27]  Frenkel incorporates Yen's suggestion into an amended post and publishes it.

Cisco's contemporaneous writings demonstrate that the motive and purpose of the accused Troll Tracker blog posts were to advance Cisco's cause in the ESN v. Cisco case, to further Cisco's "DJ strategy," to get the Court to change the docket entry back to the date that benefitted Cisco, and to further a personal vendetta against ESN's counsel.[28]  That is not a matter of public concern.  That Cisco later decided to manufacture an issue of public concern after defaming Ward does not change that conclusion.  *See Richardson v. Sugg*, 448 F.3d 1046, 1063(8th Cir. 2006) (evaluating the statements made rather than what the speaker alleges the statements to have been about and holding that the speech was not a matter of public concern).  There is no record evidence to the contrary.  Cisco's motivation for writing the defamatory statements about Ward was spite, ill will toward its opposing counsel and its own financial motive to avoid litigation in the Eastern District of Texas.  Cisco's belated attempt to shroud its unconscionable conduct in a cloak of comment for the public good is meritless.

This documentary evidence was not available to Judge Schell in the Texas case.  Had the Texas Court had the opportunity to review the evidence available to this Court, its JMOL ruling concerning the character of the speech, in all likelihood, would have been different.  Thus, Ward can offer this Court a different view into the issue than was before the Texas Court and the Texas Court's ruling cannot be imposed upon the Plaintiff in this case.

---

[26] *See* Exh. J (Cisco Priviledged.000213).
[27] *See* Exh. J  (Cisco Priviledged.000213).
[28] Tellingly absent from any of the writings created contemporaneously with the publication of Cisco's defamatory posts is any mention of the host of patent reform efforts that were part of the public debate concerning that issue.

2.      Ward Has Not Voluntarily Thrust Himself Into the Vortex of Any Public Debate In an Effort To Influence the Outcome of the Debate

Even if this Court where to rule that the alleged abuse of the patent system by non-practicing entitles in the Eastern District of Texas was a "public controversy," the Reply still fails to explain how Ward can be a limited-purpose public figure.  Cisco's position cannot carry the day because it cannot demonstrate the required nexus between the subject of a plaintiff's alleged public activities and the subject of the defamatory statements.  *See Lundell*, 98 F.3d at (before a plaintiff can be considered a limited public figure, he must have voluntarily and purposefully interjected himself *into the defined controversy* in an attempt to influence the resolution of the controversy) (emphasis added).  The Reply entirely ignores the nexus requirement between the controversy and plaintiff's actions, treating the public figure analysis like a "nose of wax," twisting it one way to create an issue of public concern and another to evaluate Ward's alleged public role in the controversy.

The Reply argues that Ward should be deemed a public figure in this case because:  (1) he was one of the top filers of patent cases on behalf of non-practicing entities in the Eastern District of Texas; (2) he need not have taken any affirmative action to be elevated to public figure status, and (3) Ward could have responded to the attacks on his reputation made in the Troll Tracker Blog.  *See* Reply at 6-7.

Each of the Reply's meritless arguments can be dismissed in turn.

a.      Cisco's Assertion That Ward Is A Public Figure Because He Is A Top Filer Of Patent Cases On Behalf of Non-Practicing Entities In The Eastern District of Texas Is Meritless

The Reply's first argument rests on the slenderest of reeds.  Essentially, Cisco argues that because Ward has a successful law practice in East Texas, he must be a public figure.  In support of its argument, Cisco offers no facts at all.

In response to Plaintiff's motion for summary judgment, Cisco asked the Court to take judicial notice of publically available case information from May of 2006 through December of

2007.[29]  Here, however, Cisco's Cross-Motion does not seek judicial notice of its facts, leaving its Cross-Motion completely unsupported.  But, even if the Court were to assume that Cisco asked for judicial notice, the assumption could not save Cisco's motion.  When taking judicial notice of adjudicative facts, the judge is required to use the procedures set forth in Fed. R. Evid. 201.  *See Am. Prairie Constr. Co.*, 560 F.3d at 797.  One of the requirements of Rule 201 is procedural and Cisco has not followed procedure in this regard.  Cisco's attempt to use judicial notice as a substitute for summary judgment evidence is also substantively defective.  "A judicially noticed fact must be one not subject to reasonable dispute in that it is either (1) generally known within the territorial jurisdiction of the trial court or (2) capable of accurate and ready determination by resort to sources whose accuracy cannot reasonably be questioned."  *Id*. "Because the effect of judicial notice is to deprive a party of the opportunity to use rebuttal evidence, cross-examination, and argument to attack contrary evidence, caution must be used in determining that a fact is beyond controversy under Rule 201(b)."  *Id*.

Cisco invites the Court to err by take judicial notice of Cisco's ***argument***.  The Reply asks the Court to assume that Ward is "one of the top filers of patent cases on behalf of non-practicing entities in the Eastern District of Texas."  Reply at 6.  Far from asking the Court to simply acknowledge a fact that is "beyond controversy," as permitted under Rule 201, Cisco asks this Court to draw several inferences from documents it does cite in the "statement of facts" belatedly set forth in Cisco's Reply, accept Cisco's argument, render a decision based on Cisco's argument and then label it "judicial notice."  This the Court cannot do.

To take judicial notice of Cisco's professed "fact," the Court would first have to define what is meant by a "non-practicing entity."  This is not a self-defining term.  Not even the Troll Tracker has a conclusive definition of the term.[30]  Then, the Court would have to apply its definition of "non-practicing entity" to all patent cases filed in the Eastern District of Texas during the time period alleged by Cisco to determine the number of cases brought by non-

---

[29] *See* D.E. No. 140 at 17, n. 55.
[30] *See* Exh. L (Ark.001803-Ark.001804).

practicing entities.  Next, the Court would have to rank the filers of those cases, and subjectively decide who is at "the top."  This is not the type of fact "beyond controversy" for which judicial notice can be taken.  *See Am. Prairie Constr.*, 560 F.3d at 797.

In *American Prairie Constr. Co. v. Hoich*, the Eighth Circuit reviewed a trial court's decision to take judicial notice of information contained in a book and in business meeting notes, and then to rely on those documents as evidence from which to draw an inference supporting the Court's Order.  *See id*.  The Appellate Court took the trial court to task for taking judicial notice of an ***inference*** drawn from documents to reach a conclusion not directly supported by the documents.  *See id*.  That is precisely what Cisco has asked this Court to do here.

The other "facts" argued by Cisco do nothing to support its position.  The information Cisco cites concerning Ward's practice is not sufficient to prove he is "one of the top filers of patent cases on behalf of non-practicing entitles in the Eastern District of Texas."  *See* Reply at 6.  The "facts" cited by Cisco would require the same type of definition of "non-practicing entity" and ranking to identify a "top filer" inferences Cisco urged with respect to its request for judicial notice.  Moreover, Ward's billing practices are immaterial to the controversy at issue.

Even if Cisco had evidence showing that Plaintiff is a top filer of patent cases on behalf of non-practicing entities—and it does not—Ward cannot be considered a public figure simply because he lives and works in a jurisdiction that has received media attention, much of it at Cisco's behest.  Clearly, something more is required.

What is required is a showing that the plaintiff has taken some affirmative act to voluntarily thrust himself into the vortex of a public debate, and that affirmative act must be more than representing a client.  *Gertz*, 418 U.S. at 351 (categorizing a lawyer who enters a public appearance on behalf of a client as a public figure "would sweep all lawyers under the *New York Time's* [malice] rule as officers of the court and distort the plain meaning of the public official category beyond all recognition."); *Lundell*, 98 F.3d at 362 (the plaintiff must have voluntarily and purposefully injected himself into the public controversy in an attempt to influence its outcome).

19

The Reply argues that an attorney can sometimes become a limited public figure by virtue of representing a client.[31]   Reply at 6.   Although Ward is an attorney, he, like any other defamation plaintiff, can be a limited public figure only if he has "thrust himself into the vortex of the [stated] controversy, or [] had engaged the public's attention in an attempt to influence the outcome of the controversy."   *Little Rock Newspapers*, 330 Ark. 561, 579-583 (discussing in depth the limited public figure test as applied to attorneys, chronicling cases holding that attorneys are private figures, and holding that former federal prosecutor was a private figure). There is no evidence that Ward has done so here, because he has not.

Finally, assuming for the moment that Ward's representation of clients in the district were sufficient to render him a limited public figure, his status as such would be limited to discussions about the patent reform act or his role in connection with that act.   *See id.* at 583.   It would not render Ward a public figure with regard to defamatory statements that have nothing to do with patent reform.   *See id.*   Cisco's defamatory statements were unrelated to the patent reform act or to Ward's activities in connection with patent reform.   Thus, even if Ward could be a limited public figure by virtue of representing clients in the Eastern District of Texas—and he cannot—he cannot be one in this case because there is no nexus between those facts and the accusations made in the Troll Tracker posts.   *See id*.

> b.   Cisco's Argument That Ward Need Not Have Injected Himself Into The Controversy In Order To Be A Public Figure Is Meritless

In this Circuit, a plaintiff must have voluntarily and purposefully sought publicity to affect the outcome of a public debate in order to be classified a limited purpose public figure. *See Lundell*, 98 F.3d. at 362; *Little Rock Newspapers*, 330 Ark. at 582.   Cisco knows that there are no facts upon which to make that argument with respect to Ward.   The Reply tries to make up

---

[31] The case Cisco cites in Reply for the proposition that an attorney can be held to public figure status by going beyond his representation of a client in a manner that relates to a public controversy is clearly distinguishable.   *See* Reply at 6.   In *Rosanova v. Playboy Enters.*, 580 F.2d 859, 861 (5th Cir. 1978), the plaintiff was a known member of organized crime identified by the Senate and law enforcement officials.   He had been the subject of over forty articles relating to his criminal contacts.   *See Rosanova v. Playboy Enters.*, 411 F. Supp. 440, 444 (S.D. Ga. 1976). There is no evidence that Ward has been the subject of any such public scrutiny, and Cisco offers none in support of its Cross-Motion.

lost ground by arguing that Ward can be elevated to public figure status because he has engaged in a course of conduct that was bound to invite attention and comment. *See* Reply at 6. But, Cisco fails to identify what "course of conduct" Ward has undertaken to invite public scrutiny. It is not enough that he practices law in the Eastern District of Texas or that he found himself the victim of Cisco's anonymous attacks because he had the nerve to represent a company suing Cisco. There are no facts to support Cisco's argument.

Cisco's "invited comment" argument is also unsupported by the law. As this Circuit has held, "hypothetically, it may be possible for someone to become a public figure through no purposeful action of his own, but the instances of truly involuntary public figures must be exceedingly rare." *Lundell*, 98 F. 3d at 362, citing *Gertz*, 418 U.S. at 345. Only a handful of courts have found a plaintiff to be an involuntary public figure since *Gertz* was decided in 1974. *See Wilson v. Daily Gazette Co*., 214 W. Va. 208, 219 (W. Va. 2003). Ward is not that exceedingly rare plaintiff, and Cisco has not shown otherwise. *See Little Rock Newspapers*, 330 Ark. at 579-583 (listing attorney private figure cases).

The Reply argues that the Troll Tracker (acting at Cisco's request) was not the first to write about the abuse of the patent system by non-practicing entities and the ESN filing, noting that two other bloggers "commented" on it before Frenkel. First, the Reply's continues to improperly rest its argument on the general discussion of patent reform. As discussed above, that generalized public controversy cannot support Cisco's argument. *See Waldbaum*, 627 F.2d at 1296-97; *Hutchinson,* 443 U.S. at 135. Moreover, two innocuous "comments" unrelated to the defamatory statements cannot come close to creating a public controversy. That type of minimal comment doubtfully even qualifies as a "general concern" and certainly does not rise to the type of public debate required for a public controversy. *See id*.

Cisco cannot evade this Circuit's requirement that Ward must have voluntarily and purposefully sought the public spotlight before he can be a limited purpose public figure. *See Lundell*, 98 F.3d at 362*; Little Rock Newspapers*, 330 Ark. at 579-583. He has not done so, Cisco knows he had not, and it cannot prove otherwise.

21

      c.     Cisco's Argument That Ward Is A Public Figure Because He Could Have Responded To Cisco's Anonymous Attacks Is Meritless

The Reply argues that because Ward could have defended himself on the Troll Tracker Blog, he should be held to public figure status.  *See* Reply at 7.  Setting aside the absurdity of requiring Ward to defend his reputation on an anonymous blog when the author (who he could not know) had just called him criminal and unethical, Cisco's argument is not supported by *Gertz* as it claims.  *See* Reply at 7.  In *Gertz*, the Court held that private figures are more deserving of protection, in part, because public figures have greater access to the media through which they can counteract defamatory statements.  In *Hutchinson*, the Court addressed *Gertz's* holding concerning access to the media, finding that Hutchinson was a private figure because, although he had some access to the media as a result of the defamatory statements, he did not have the regular and continuing access to the media that is one of "the accouterments of having become a public figure."  443 U.S. at 136.

In this case, Ward does not have the type of access to the media afforded celebrities and politicians.  He certainly does not have access to the international press that would be required to counteract the reach of the defamatory posts.  *See Little Rock Newspapers*, 330 Ark. 561, 583 (plaintiff did not have general notoriety in the geographic area where the defamatory statements were circulated).  The ability to write a reply on the Troll Tracker Blog (assuming Frenkel would have posted it or not made further comment that would make the matter worse) is not the type of "media access" contemplated in *Gertz*.

The Reply's insinuation that Ward should be found to have access to the media because Ward's attorney responded to media inquires about the pending lawsuit fails for the same reason that argument was rejected in *Hutchinson*; access to the press as a result of the defamation does not count.  443 U.S. at 135. Ward would have much preferred never to have to discuss public accusations of criminal and unethical conduct.  Cisco did not give him that choice.

Finally, Cisco's argument places far too much emphasis on a minor point.  In *Gertz*, the Court explained that the "more important" consideration is that private figures have not

voluntarily assumed the consequences of involvement in public affairs.  418 U.S. at 344.  Ward is not a person of such notoriety as to have preexisting media contacts or to have assumed the risk of public lies.  He does not have the type of access to the media through which he could seek to undo the lies Cisco disseminated worldwide. As the *Gertz* Court recognized, "[a]n opportunity for rebuttal seldom suffices to undo harm of defamatory falsehood."  *Id.* at 344, n. 9.

**III.    Conclusion**

For all the foregoing reasons and those set forth in Plaintiff's Motion for Summary Judgment, Ward respectfully requests that the Court grant his motion for partial summary judgment that for purposes of this case, he is a private individual and not a public figure and deny Cisco's Cross-Motion.

Respectfully Submitted,

Nicholas H. Patton
AR Bar No. 63035
Courtney Towle
Patton, Tidwell & Schroeder, LLP
4605 Texas Boulevard
Texarkana, Texas 75503
903.792.7080 / 903.792.8233 (Fax)
Email: nickpatton@texarkanalaw.com
Email: ctowle@texarkanalaw.com

Patricia L. Peden
LAW OFFICE OF PATRICIA L. PEDEN
1316 67th Street
Suite 6
Emeryville, CA 94608
Telephone: 510-268-8033
Email: ppeden@pedenlawfirm.com

James A. Holmes
Texas Bar No. 00784290
THE LAW OFFICE OF JAMES HOLMES, P.C.
635 South Main, Suite 203
Henderson, Texas 75654
903.657.2800 / 903.657.2855 (Fax)


ATTORNEYS FOR PLAINTIFF




## CERTIFICATE OF SERVICE

This is to certify that on this 10th day of December, 2009, a true and correct copy of the foregoing document was served electronically via the Court's CM/ECF system upon:

Richard E. Griffin                          Attorneys for Defendant Cisco Systems, Inc.
Charles Babcock
Crystal Parker
Kurt Schwarz
JACKSON WALKER, LLP
1401 McKinney
Suite 1900
Houston, Texas 77010



_____
Nicholas H. Patton

24