IN THE UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF ARKANSAS
TEXARKANA DIVISION

JOHN WARD, JR.                          §
                                        §
                                        §
                                        §       C.A. NO. 08-4022 JLH
v.                                      §       JURY TRIAL DEMANDED
                                        §
CISCO SYSTEMS, INC.                     §

**CISCO SYSTEM, INC.'S RESPONSE TO PLAINTIFF'S MOTION
TO COMPEL DEFENDANT'S REPSONSE TO PLAINTIFF'S
SECOND SET OF REQUESTS FOR PRODUCTION AND BRIEF IN SUPPORT**

TO THE HONORABLE COURT:

Cisco hereby files its Response to Plaintiff's Motion to Compel Defendant's

Response to Plaintiff's Second Set of Requests for Production and Brief in Support.

### INTRODUCTION

Plaintiff now asks the Court yet again to order Cisco to turn over its privileged

documents, even after the Court has already reviewed *in camera* all of Cisco's privileged

documents that are relevant to this case, and denied the relief Plaintiff seeks in his

Motion. (Docket No. 89). Yet Plaintiff presses on, this time also asking the Court to

reveal core work product from this litigation. His latest attempt should be denied.

Moreover, as set forth in more detail below, Cisco has already produced the

relevant documents at issue. Indeed, in many instances Cisco advised Plaintiff of this,

yet he filed his Motion anyway without any argument whatsoever about why he thinks

Cisco is withholding documents—a waste of the Court's and the parties' time and

resources. Plaintiff's Motion is baseless and should be denied, and the Court should

1

Dockets.Justia.com

order Plaintiff to seek leave to file any additional motions asking the Court to turn over privileged documents, given that the Court has already ruled on this issue.

## ARGUMENT AND AUTHORITIES

**A.     Plaintiff's Motion with respect to Requests 31-32, 35-37 and 49 should be denied because no employees were sanctioned and because any responsive documents would be privileged.**

There is no reason to compel responses to Request Nos. 31, 32 and 49, seeking documents concerning any Cisco policy, procedure, rule, guideline, code of conduct, term of employment or company norm violated by any Cisco employee concerning the complained-of articles, ESN litigation, or John Ward, Jr., and concerning warnings, discipline, reprimand, chastise of any employee because, as Cisco has advised Plaintiff repeatedly, Cisco has produced all responsive documents (except privileged documents concerning this litigation, as set forth below). Cisco has repeatedly advised Plaintiff that there was no violation of a Cisco policy, procedure, rule, guideline, code of conduct, term of employment or company norm. Indeed, Plaintiff cites the testimony of Cisco concerning this issue in his Motion. Recently, Cisco's corporate representative again testified that no employee had been sanctioned:

>     Q.      What did you do to investigate this investigation?
>     A.      I spoke with Mr. Ruben.  I spoke with Mr. Babcock.
>     Q.      Were there any documents regarding this investigation?
>     A.      No.
>     Q.      And who was investigated?
>     A.      The circumstances of the -- of the – the complaint were being investigated.
>     Q.      Specifically, were Frenkel's actions being investigated?
>     A.      Yes.  That was part of it.
>     Q.      Ms. Yen?
>     A.      Yes.
>     Q.      Mr. Noh?
>     A.      Yes.
>     Q.      Anyone else?
>     A.      I don't believe so.

2

Q.     What was the purpose of the investigation?
A.     To evaluate the -- the allegations in the complaint.
Q.     What conclusions were reached?
A.     Conclusions were reached that --
MR. BABCOCK:  Wait a second.
THE WITNESS:  I just got to --
MR. BABCOCK:  If you're talking about conclusions that were reached by your counsel --
THE WITNESS:  Okay.
MR. BABCOCK:  -- and communicated to the client, don't answer that.  But I think her question was, were conclusions reached.
MS. TOWLE:  It was.
MR. BABCOCK:  And you can answer that.
THE WITNESS:  Yes.
BY MS. TOWLE: **Q.   And at the conclusion of this second investigation, was anyone reprimanded or otherwise rebuked?**
**A.     No.**
**Q.     Were there any actions taken with regard to employees investigated as a part of either Yen's first investigation or counsel's investigation of the Troll Tracker's activities?**
**A.     There were no personnel actions taken.**

(Deposition of Mark Michels, Cisco's corporate representative, Exhibit A at 109:2-110:21) (emphasis added).  Indeed, Plaintiff's counsel knows this because he recently deposed Mallun Yen, who was Frenkel's supervisor, for the second time.  She confirmed again that nobody was disciplined or reprimanded:

Q     Was anyone ever disciplined or reprimanded as a result of this investigation and what happened?
A     I'm not aware of anyone being disciplined.
Q     What about discipline of Mr. Frenkel because of what he had written, did that ever happen?
A     I'm not aware that he was disciplined.
Q     Was anyone ever fired, suspended or punished in any way over what happened?
A     Not to my knowledge.
Q     You weren't ever disciplined in any way?
A     No.

(Deposition of Mallun Yen, Exhibit B at 105:4-14).  Frenkel also testified that he was not disciplined:

3

> Q      But you were confident at trial that he did not tell you that he was going to fire you?
> A      Right.
> Q      And he never did fire you?
> A      Right.
> Q      They never disciplined you in any way, did they?
> A      That's right.

(Deposition of Rick Frenkel, Exhibit C at 188:14-21).   Indeed, even the testimony of Frenkel cited by Plaintiff states that Frenkel was not "terminated or sanctioned in any way."   (Motion at pp. 4-5).   Therefore, there are no responsive documents concerning reprimand of a Cisco employee, as Cisco stated in its responses and has repeatedly advised Plaintiff.

Plaintiff's argument that Cisco should be required to produce its attorney-client and work-product privileged documents concerning investigation of this lawsuit also fails.   First, Plaintiff's request asked for documents concerning reprimand of employees, and since there was no reprimand of any employee, there are no responsive documents.

Second, Plaintiff cannot overcome Cisco's privilege and work-product protection. Plaintiff relies on *Hickman v. Taylor*, 329 U.S. 495, 512 (1947), yet *Hickman* supports Cisco's assertion of work product.   Indeed, in *Hickman*, the Court held that "[n]ot even the most liberal of discovery theories can justify unwarranted inquiries into the files and the mental impressions of an attorney," which is exactly what Plaintiff seeks to do here. *Id.* at 510.   The *Hickman* Court went on to explain that it is "essential that a lawyer work with a certain degree of privacy, free from unnecessary intrusion by opposing parties and their counsel."   *Id.*   The Court explained that production of work product documents containing essential facts would only be justified "where the witnesses are no longer available or can be reached only with difficulty."   *Id.* at 511.   The Court went on to

4

clarify that the "policy against invading the privacy of an attorney's course of preparation is so well recognized and so essential to an orderly working of our system of legal procedure that a burden rests on the one who would invade that privacy to establish adequate reasons to justify production…" *Id.* at 512. Because the plaintiff had failed to meet this burden with respect to an attorney's written statements concerning his interview of witnesses, the Court held that the lower court should have sustained the objection to the discovery request. *Id.* Similarly, the Court should deny Plaintiff's request to compel work product in this case.

Indeed, if Plaintiff's logic were applied, the attorney-client privilege and work-product protection would be obliterated because by Plaintiff's logic, the very act of defending oneself against a lawsuit is sufficient to "waive" privilege. Of course, Plaintiff cites no legal authority for this argument.

Many cases in addition to *Hickman* have rejected the very argument made by Plaintiff and held that documents concerning investigations in anticipation of litigation are not discoverable on the basis of privilege and/or work-product protection. *See Gagnon v. Sprint Corp.*, 284 F.3d 839, 856 (8th Cir. 2002) (*cert. denied* 537 U.S. 1001 (2002) and 537 U.S. 1014 (2002)) (superseded by statute on other grounds) (affirming the finding that documents concerning an in-house investigation were covered by the attorney-client and work-product privileges); *U.S. v. Shyres*, 898 F.2d 647, 655 (8th Cir. 1989) ("the attorney-client privilege clearly applies to communications made to corporate counsel in the course of conducting an internal investigation"); *Pittman v. Frazer*, 129 F.3d 983, 988 (8th Cir. 1997) (denying discovery of documents prepared in anticipation of litigation); *McGhee v. Northwest Airlines, Inc.*, 149 F.3d 1187 at *1 (8th Cir. 1998)

(affirming refusal to compel production of notes taken during the internal investigation of the Plaintiff's claims even where the defendant claimed that it took immediate remedial action); *Hutchins v. Fordyce Bank and Trust Co.*, 216 B.R. 11, 14-15 (E.D. Ark.) (holding that communications concerning the investigation of a director of a company were protected under the attorney-client and work-product privileges and therefore not discoverable); *Schipp v. Gen. Motors Corp.*, 457 F.Supp.2d 917, 923-24 (E.D. Ark. 2006) (documents created in anticipation of litigation, including notes taken during witness interviews and provided to an attorney, are protected by the work-product doctrine).  As these cases set forth, the Court should deny Plaintiff's Motion to compel Cisco's internal documents concerning its investigation regarding this litigation.

Plaintiff is also incorrect that Cisco is withholding documents concerning an investigation that was taken for business purposes, rather than litigation.  Mallun Yen, Frenkel's supervisor, did investigate Frenkel's blog before Cisco anticipated litigation, and therefore those documents are not work product and have been produced.[1]  However, after the lawsuit was filed, Cisco conducted an investigation concerning this lawsuit, which involved both in-house and outside counsel.  Cisco's corporate representative testified that this investigation was "to evaluate the -- the allegations in the complaint." (Exhibit A at 109:22-23).  That investigation is clearly privileged.  (*See* case law cited above).[2]

_____

[1] This is the sort of pre-lawsuit, business investigation that was involved in the case cited by Plaintiff, *Soeder v. General Dynamics Corp.*, 90 F.R.D. 253, 255 (D. Nev. 1980), which clearly does not apply to an investigation in response to a lawsuit.

[2] Plaintiff's argument that the investigation was "concerning employee misconduct" fails for the obvious reason that the litigation concerned alleged employee misconduct, so of course that investigation was in response to litigation and therefore protected. *See Gagnon*, 284 F.3d at 856; *Hutchins*, 216 B.R. at 14.

6

Plaintiff's half-baked attempt to show substantial need to overcome Cisco's work product also fails.  To do so, Plaintiff must prove that it has "substantial need for the materials to prepare its case and cannot, without undue hardship, obtain their substantial equivalent by other means." FED. R. CIV. P. 26(b)(3)(A)(ii).  Plaintiff's only attempt to meet this burden—his claim that the "documents plaintiff seeks from Cisco are not available from any other source"—clearly fails.  Substantial need is shown where the witnesses are not available, not where the documents concerning the activity of the witnesses are not available. *Id.* at 511.  Otherwise, there would always be a substantial need for work product because opposing counsel would never have his opponent's notes. Moreover, Plaintiff fails to explain why he has such a substantial need for the information contained in the investigation documents.  Accordingly, Plaintiff's Motion should be denied because he has failed to meet the high burden of showing substantial need. *See Pittman*, 129 F.3d at 988-89 (noting that work product should be revealed only in rare and extraordinary circumstances).

Moreover, the "mental impressions, conclusions, opinions, or legal theories of a party's attorney or other representative concerning litigation" is never discoverable, and the Court "must protect against disclosure" of such documents.  FED. R. CIV. P. 26(b)(3)(B).  Therefore, the request seeking such documents should be denied on that basis alone.

Plaintiff's argument concerning waiver also fails.  Plaintiff argues that Cisco waived privilege concerning its investigation of Plaintiff's claims because Frenkel testified concerning the fact of the investigation at the trial in the *Albritton v. Cisco* case. However, revealing the fact of an investigation, including who participated, does not

7

waive privilege; indeed such information would be revealed on a privilege log. Tellingly, Plaintiff cannot identify a single detail of the substance of Cisco's post-lawsuit investigation because such investigation was privileged and work product and has never been revealed to Plaintiff. He attempts to do so by citing to a conversation Frenkel had with Mark Chandler, but Frenkel testified that his conversation with Chandler was not related to Cisco's investigation. (Frenkel Deposition, <u>Exhibit C</u> at 174:13-175:15). Accordingly, Cisco has not waived privilege or work product protection by disclosure because there has been no disclosure. (See cases cited above at pp. 4-6 concerning protection of internal investigations).[3]

Cisco has also produced all documents responsive to numbers 35-37, which seek all documents concerning whether the complained-of statements were true and whether they were accusations of criminal and/or unethical conduct, except of course for attorney-client and work-product privileged documents created in response to this case. The only responsive documents that are being withheld are Cisco's attorneys' mental impressions

---

[3] The cases cited by Plaintiff are plainly distinguishable. In *U.S. v. Nobles*, the Court held that an investigator could not "contrast his recollection of the contested statements with that of the prosecutor's witness" then refuse to testify concerning those statements. *Nobels*, 422 U.S. at 234. Indeed, the Nobles Court recognized that documents such as those sought here would not be waived. *Id.* at n. 14 ("Counsel necessarily makes use throughout trial of the notes, documents, and other internal materials prepared to present adequately his client's case, and often relies on them in examining witnesses. When so used, there normally is no waiver.") *Pamida, Inc. v. E.S. Originals*, 281 F.3d 726 (8th Cir. 2002) does not apply because that case was determined under Nebraska law privilege law. *Id.* at 731. Moreover, that case held that there was a waiver because the plaintiff had waived privilege by making an indemnification claim and the protected information had been shown to be "vital" to defend against the Plaintiff's claims. *Id.* at 732. Plaintiff has made no such showing, nor could he because Cisco has made no such claim. *Wells v. Liddy*, 37 Fed. Apx. 53, 2002 WL 331123 (4th Cir. 2002), is also not controlling. In that case, applying Virginia law, the witness "disclosed confidential communications between him and his lawyers" and sent opposing counsel "a detailed analysis" of the investigation at issue and therefore could not claim privilege concerning those issues. *Id.* at *9-10. Similarly, in *Chavis v. North Carolina*, 637 F.2d 213, 223-24 (4th Cir. 1980), *United States v. Salsedo*, 607 F.3d 318, 320-21 (9th Cir. 1979) and *Brown v. Trigg*, 791 F.2d 598, 601 (7th Cir. 1986), the party waived privilege by calling a witness whose sole purpose was to testify concerning the privileged information. Cisco of course has not done so. As mentioned by Plaintiff, Robert Chiavello in this case disclosed the substance of communications and therefore waived the right to avoid disclosure of the identity of the people involved in the communication. There has been no such disclosure in this case by Cisco, as demonstrated by Plaintiff's failure to identify the substance of any of Cisco's privileged investigation, and therefore there has been no waiver.

concerning this lawsuit as a result of depositions and documents produced in this case. Plaintiff cannot possibly show substantial need for such documents when he has access to the same depositions and documents (and moreover, these documents are not discoverable pursuant to FED. R. CIV. P. 26(b)(3)(B) because they are the mental impressions and opinions of Cisco's attorneys). Accordingly, his Motion should be denied.

**B.      Plaintiff's Motion with respect to Requests 82-84 should be denied because the requested documents are not relevant and are privileged.**

Plaintiff's requests concerning Cisco's concerns about "backlash" from the unmasking of the Patent Troll Tracker is not "relevant," which is defined by the Federal Rules as reasonably calculated to lead to the discovery of admissible evidence. FED. R. CIV. P. 26(b)(1). As this Court is aware, Frenkel published the Patent Troll Tracker anonymously. The blog related to patent litigation, advocated for patent reform, and was sometimes critical of what the blog had called "patent trolls." There is no doubt that there were those, including Plaintiff, who wished to shut the blog down because they were unhappy about Frenkel's speech. (Plaintiff described his disdain for Frenkel at the Albritton trial, where he said "You don't wrestle with a snake, you cut its head off... We shut the blog down is what we did." Transcript of Trial, <u>Exhibit D</u> at 778:8-12). Yet whether Cisco had concerns when Frenkel revealed himself as the Patent Troll Tracker had nothing to do with the articles at issue in this lawsuit. Indeed, <u>there is no evidence that any Cisco employee other than Frenkel was even aware of the content of the articles at issue in this lawsuit prior to Frenkel's unmasking, and therefore any concerns could not have related to Plaintiff's claims</u>. Indeed, as Cisco has already advised Plaintiff through other discovery, there are no communications about the blog that even mention

Plaintiff.   Because the documents are not relevant (meaning they are not reasonably calculated to lead to the discovery of admissible evidence), they are not discoverable. FED. R. CIV. P. 26(b)(1).

The Court should also protect Cisco's privileged communications with its attorneys.   Cisco sought legal advice concerning its communications to the public regarding Frenkel's unmasking as it related to this lawsuit, and those documents are no doubt privileged and work product.   Indeed, these documents constitute core work product because they contain the mental impressions of Cisco's attorneys, and therefore the Court must guard them from discovery.   FED. R. CIV. P. 26(b)(3)(B).   Plaintiff's Motion should therefore be denied.

## C.      Plaintiff's Motion with respect to Requests 60 and 104 should be denied.

With respect to Request No. 104 for "ALL COMMUNICATIONS between CISCO and Frenkel CONCERNING any content to be included or deleted from ANY of the Troll Tracker Blog posts," Cisco is not withholding responsive documents concerning the articles at issue.   As Frenkel testified, Cisco did not ask him to include or delete any content from the blogs at issue:

> Q.      Did anybody at Cisco edit the---
> A.      No, nobody at Cisco edited this.
> Q.      We haven't talked too much about the October 17[th] article, but the same thing with respect to that.  Did anybody at Cisco write, review or edit that article?
> A.      No, no writing, reviewing, editing whatsoever.

(Frenkel Testimony in *Albritton v. Cisco*, Exhibit D at 705:6-11.)

Plaintiff's arguments concerning Request Nos. 60 and 104 with respect to articles not at issue in this lawsuit defy the bounds of logic.   Plaintiff has already requested all documents concerning whether any Cisco employee wrote, edited, reviewed or

10

distributed any of the Patent Troll Tracker articles. Cisco has already produced all responsive documents, as Plaintiff acknowledges. He is angry that he can't prove republication or participation in the publication of any of <u>those</u> articles, so he seeks documents concerning all 183 other articles on the Patent Troll Tracker website, even though those articles have nothing to do with this lawsuit. There is no evidence inconsistent with Cisco's testimony that it did not write, edit, review or distribute the complained-of articles outside of Cisco. Indeed, <u>Cisco has complied fully with Plaintiff's discovery concerning this issue with respect to the articles Plaintiff complains of</u>. Plaintiff's requests for documents concerning <u>other</u> articles that have nothing to do with him are simply not relevant nor reasonably calculated to lead to the discovery of admissible evidence; they are simply a fishing expedition designed to increase the cost of this litigation and to harass Cisco.

Plaintiff's argument that documents concerning whether Cisco edited or distributed other articles in the Patent Troll Tracker blog would be "strong circumstantial evidence" concerning whether Cisco did so with respect to the articles at issue is absurd. Cisco has already produced all documents relating to whether it edited or distributed the articles at issue outside of Cisco (Cisco did not do so); whether Cisco did so with respect to any other blog that is not at issue in this lawsuit is irrelevant.[4] *See Tavoulareas v. Piro*, 93 F.R.D. 35, 42 (D.D.C. 1981) (limiting discovery to only the "allegedly libelous articles at issue in this lawsuit"); *see also Chapman v. Journal Concepts, Inc.*, No. 07-00002 JMS/LEK, 2009 WL 1561567, *8 (D. Haw. June 3, 2009) (affirming exclusion of testimony concerning article that was "completely unrelated" and irrelevant to allegedly

---

[4] Plaintiff's conspiracy theory that Yen and Noh routinely asked Plaintiff to publish articles for Cisco is also absurd; Plaintiff does not even identify a single other article that discusses Cisco and identified no evidence that Cisco ever asked Frenkel to publish any article apart from the article at issue.

11

defamatory article at issue in lawsuit); *State v. Carpenter*, 171 P.3d 41, 63-64 (Alaska 2007) (affirming exclusion of compilation of radio show excerpts, none of which were allegedly defamatory, because probative value was substantially outweighed by danger of unfair prejudice).  Plaintiff cannot cite a single case to support his position.  Indeed, it would lead to absurd results, as it would expose media defendants to endless discovery that has no relationship to the litigation.

Not only does the request call for irrelevant information; it is also overly burdensome.   The request asks for "ALL DOCUMENTS CONCERNING the dissemination of any Troll Tracker Blog post to the MEDIA by any CISCO EMPLOYEE."  The request is not limited, as Plaintiff's argument seems to suggest, to Mallun Yen or John Noh, or even to the individuals at Cisco who knew that Frenkel was the Patent Troll Tracker.   Instead, it asks for all documents concerning any Cisco employee.  It would be extremely burdensome and expensive for Cisco to undertake such a search.  The Patent Troll Tracker published 183 articles; to review the communications of all Cisco employees with respect to every article would be grossly burdensome. Moreover, in determining whether the request is unduly burdensome, the Court must consider the "benefit" of the discovery and whether it is outweighed by the burden.  *See* Fed. R. Civ. P. 26(b)(2)(C)(iii).  Here, there is no benefit for the reasons set forth above, and therefore there is no countervailing reason to impose such a burden on Cisco.

Plaintiff implies that Cisco has already located all responsive documents in its investigation of Frenkel's posts, but he is wrong.  As Cisco's representatives have testified, Cisco investigated Frenkel's posts before this lawsuit to determine whether

<u>there had been a violation of Cisco's blogging policy</u>.  Those documents have already been produced.

**D.   Plaintiff's Motion with respect to Request Nos. 29, 38-39, and 42 should be denied.**

Plaintiff's arguments concerning communications of the post to others also fail. First, with respect to No. 29, which requests "ALL DOCUMENTS after October 14, 2007, CONCERNING dissemination of the October 17 post, October 18th post, or amended October 19th post to any PERSON OR ENTITY" and No. 38, requesting "ALL DOCUMENTS after October 14, 2007, CONCERNING any PERSON or COMPANY with whom CISCO or its EMPLOYEES had any COMMUNICATION CONCERNING the Troll Tracker October 17, 2007 Post, the October 18, 2007 Post, and the revised October 18, 2007 Post," Cisco has already produced all non-privileged, responsive documents. Plaintiff presents no evidence that Cisco has not responded fully.

Request No. 39 seeks "ALL DOCUMENTS after October 14, 2007, CONCERNING any PERSON or COMPANY with whom CISCO or its EMPLOYEES had any COMMUNICATION CONCERNING the filing of the ESN complaint, Ward's role in that filing, the role of Ward's co-counsel, Eric Albritton, in that filing, and the role of Ward's co-counsel McAndrews Held & Malloy in that filing." Request No. 42 seeks "ALL DOCUMENTS and COMMUNICATION after October 14, 2007, between CISCO and Dan Webb CONCERNING the filing of the ESN complaint, Ward's role in that filing, the role of Ward's co-counsel, Eric Albritton, in that filing, and the role of Ward's co-counsel McAndrews Held & Malloy in that filing or CONCERNING the Eastern District of Texas's clerk's office or the local rules of the Eastern District of Texas or of local practice in COMMUNICATING with the clerk's office in the Eastern District of

Texas." With respect to these requests, Plaintiff claims that Cisco may have communicated statements from the complained-of article to Cisco's attorneys, and therefore Cisco should be required to produce its attorney-client and work-product privileged documents. Plaintiff's argument fails for several reasons.

First, there is no evidence that anyone other than Frenkel even knew the content of the articles at issue until after this lawsuit was filed. Therefore, Cisco employees could not have republished the complained-of statements. Indeed, Plaintiff tries to misquote Ms. Yen as having admitted to republishing the article in a conversation with Dan Webb, one of Cisco's attorneys. Yet Ms. Yen was not republishing allegations in the article; she was seeking legal advice from Mr. Webb concerning the filing of the *ESN v. Cisco* lawsuit:

> A.   Dan was trying to pitch for the case and was hoping to start representing us in patent litigation.
> Q.   You left a message for Dan Webb – or "left a message for Webb to see what he has to say about this." And the subject matter of this to me seems to be a controversy about when the complaint was filed. Do you not agree with that? What did Dan tell you? Dan Webb, what did he tell you?
> A.   Dan told me that -- Dan was – primarily the purpose of our call was that Dan wanted to represent Cisco in patent litigation and was trying to pitch for the case.
> Q.   Did you talk about the ESN matter when you talked to him?
> A.   That was the matter he was trying to pitch for.
> Q.   Okay. I understand that. But did you tell him about the incident of the filing maybe being made on one day and maybe not and that kind of thing?
> A.   I believe I may have.

(Deposition of Mallun Yen in *Albritton v. Cisco*, Exhibit E at 212:12-213:12) (Objections omitted). Indeed, Yen had not even read the article at issue. (*Id.* at 79:23-81:1). Plaintiff apparently did not find this discovery important, as he did not even ask Yen about this conversation in her deposition in this case.

Second, Plaintiff cannot sue Cisco concerning its communications with its legal counsel for the purpose of legal advice because those communications are not actionable. *See Humann v. KEM Elec. Co-op, Inc.*, 497 F.3d 810, 813 (8th Cir. 2007); *Scott Fetzer Co. v. Williamson*, 101 F.3d 549, 554 (8th Cir. 1996).  Indeed, Plaintiff's own citation to Ms. Yen's deposition confirms her communications with Dan Webb because "Dan wanted to represent Cisco in patent litigation and was trying to pitch for the case."  (Yen Deposition in *Albritton v Cisco*, Exhibit E at 213:1-3).  Such communications are cannot be the subject of a defamation lawsuit. *See id.*

Third, the requests are not limited to communications concerning distribution of the complained-of articles.  Instead, they intentionally seek Cisco's core work product— communications with Cisco's attorneys concerning "the filing of the ESN complaint."  Cisco's discussions concerning seeking legal advice concerning "the filing of the ESN complaint" have nothing to do with communicating the complained-of statements; Cisco communicated with its attorneys concerning legal strategy and representation in the *ESN v. Cisco* lawsuit, not about the articles at issue in this lawsuit.  Those communications are not actionable. *See id.*

Plaintiff's baseless claim that Cisco's documents are not truly privileged also fails.  Cisco has already presented to the Court an affidavit setting forth the basis of that privilege.  This Court has already reviewed the documents *in camera* and found that they are privileged.   Moreover, not one of the privileged documents supports Plaintiff's allegations, and thus he has no need for Cisco's privileged documents.  As the Court can confirm by reviewing Cisco's privileged documents, Cisco did not distribute any of the

complained-of statements to its outside attorneys.  Therefore, the Court should deny the Motion.

Plaintiff is also misrepresenting Cisco's communications concerning privilege. Plaintiff asked Cisco to identify each attorney with which Cisco has had communications concerning any of four lawsuits:  (1) *ESN LLC v. Cisco Systems, Inc et al*, Cause No. 5:07-cv-00156-DF-CMC in the Eastern District of Texas—Texarkana Division (the lawsuit at issue in the complained-of articles), (2) *Cisco Systems, Inc. v. ESN, LLC*, Cause No. 3:07CV01528 in the District Court of Connecticut, (3) *Ward v. Cisco*, or (4) *Albritton v. Cisco* (the "lawsuits").  These include attorneys who: contacted Cisco about <u>possibly representing Cisco</u> in the lawsuits, represented Cisco in pre-litigation discussions, contacted Cisco about advice about who to choose as counsel or local counsel for the lawsuits, who have joint-defense agreements with Cisco and who provided any legal advice concerning the lawsuits.  Plaintiff's argument that Cisco is withholding communications with "53" lawyers concerning the filing of the ESN v. Cisco lawsuit is meritless.  Cisco only consulted with a limited number of attorneys concerning the filing of the *ESN v. Cisco* lawsuit, and all responsive documents have been logged and produced *in camera* to the Court (except, of course, communications between Cisco and its legal counsel concerning this case and the work product of Cisco's attorneys in this case, which Plaintiff has admitted do not need to be logged).

Plaintiff's claim that Cisco has failed to log responsive communications with Baker Botts is also unavailing.  Cisco has logged responsive communications with Baker Botts, as the Court can see because it has Cisco's privilege log.  What Cisco has said it is not required to do is log its communications with Baker Botts concerning <u>this</u> litigation.

Not only are those documents not responsive because they concern <u>this litigation</u> rather than the underlying *ESN v. Cisco* litigation, and they are clearly privileged because Cisco has a joint defense agreement with Baker Botts.  (Deposition of Mark Michels, <u>Exhibit A</u> at 97:1-4).  Plaintiff makes no argument regarding why the Court should override this privilege or require Cisco to log its litigation file in this case.

Indeed, Plaintiff made this same argument at the deposition of a Baker Botts legal assistant, Jillian Powell.  In that case, she argued that Cisco should be required to reveal its privileged communications with Baker Botts concerning this litigation, and counsel for Plaintiff called the Judge for the Court that issued the subpoena, making this same argument.  Judge Ramirez indicated that "there is clearly a related interest" between Baker Botts and Cisco, indicated that she would uphold the privilege.  However, Plaintiff's counsel indicated Plaintiff would not abide by her ruling, so she did not issue a ruling.  Deposition of Jillian Powell, <u>Exhibit F</u> at 15:11-20:13.[5]  Similarly, this Court should find that communications between Cisco and Baker Botts in this case are privileged because Cisco and Baker Botts have a joint defense agreement.  Indeed, the communications were to facilitate discovery served on <u>Cisco</u>, some of which was ordered by this Court.

For these reasons, the Court should deny Plaintiff's Motion with respect to Nos. 29, 38,-39, and 42.

---

[5] Plaintiff agrees that Cisco need not produce documents that are not in its custody and control, so that issue is resolved.

5679929v.1

E.    **Plaintiff's Motion with respect to Request Nos. 153-154, 157-158, 161-162, 165-166, 169-170 and 173-174 should be denied.**

Notwithstanding Plaintiff's inaccurate characterization of Cisco employees' "involvement" in the complained-of articles, Cisco has complied fully with Request Nos. 157-158, 161-162, 165-166 and 173-175.[6]

Cisco has also produced all documents responsive to Request Nos. 153-154 and 169-170 (which seek documents from former Cisco employees) that are in its custody and control.  Cisco's objection to documents that are not in its custody or control is proper.  With respect to former Cisco employees, Cisco does not have access to those employees' email accounts or documents after they left Cisco, and therefore does not have custody or control of such documents.  As for Frenkel and Noh, Cisco has requested documents and has produced such documents, if any, that it received.  Cisco has also

---

[6] An additional fatal flaw to request numbers 153-154, 158, 161-162, 165-166, 169-170, and 173-174 is that they ask for documents concerning the "*ESN v. Cisco*" litigation rather than the articles at issue.  The requests are not narrowly tailored to lead to the discovery of admissible evidence because the seek documents concerning the *ESN v. Cisco* case, rather than the physical filing of that case, which is the only thing at issue in this litigation.  Plaintiff's Motion fails to identify any reason that all documents concerning the ESN v. Cisco litigation are relevant.

Indeed, Plaintiff argued just last month that Cisco's request seeking documents relating to the filing of the complaint in the *ESN v. Cisco* case was "egregiously overbroad."  (Transcript at pp. 31-34).  Judge Setser narrowed the request to documents concerning the physical filing of the ESN v. Cisco lawsuit, which is the only aspect of the *ESN v. Cisco* lawsuit that is at issue in this case from October 14-19.  (*Id.* at 34, 37).  Plaintiff's request here is much more broad, as it is not even limited to the filing of the complaint of the *ESN v. Cisco* case.  A similar narrowing is appropriate here; the request should be narrowed to communications concerning the physical filing of the *ESN v. Cisco* lawsuit that is at issue in this case from October 14-19.  Indeed, Plaintiff's Motion seems to acknowledge this, as he claims that the documents would be relevant to show whether the employees he mentioned participated in publishing the complained-of article and claims that documents concerning the "filing of the ESN complaint and ESN's counsel's role in that filing are relevant..."  (Motion at p. 19).  The same narrowing that Judge Setser has previously ordered would provide Plaintiff the documents he says are relevant.  Indeed, Cisco has already produced them to the extent they are in Cisco's custody or control (Cisco has no knowledge of responsive documents outside its custody or control).

The request as written is "egregiously overbroad," to use Plaintiff's counsel's words, and overly burdensome; requiring Cisco to undertake the burdensome task of locating documents that are not relevant to this lawsuit would be inconstant with the Federal Rules of Civil Procedure 26(c)(3), which requires the court to balance the burden and the benefit of the discovery.  There is no benefit to documents concerning the *ESN v. Cisco* case that do not relate to the physical filing of the complaint in that case, and therefore the burden outweighs the benefit.  The Motion should therefore be denied.

asked Mr. Tanielian if he had any documents relating to this case, and he responded that he did not.  Therefore, Cisco has fully complied with its obligations, and the Motion should be denied.

**F.      Plaintiff's Motion with respect to Request Nos. 152, 155, 160, 164, 168 and 172 should be denied.**

With respect to Plaintiff's argument concerning relevance of documents seeking "Cisco's statements about the Eastern District of Texas," Plaintiff makes several unsupported and false allegations about individuals from whom he seeks documents, but fails to state how his allegations make Cisco's statements about the Eastern District of Texas relevant except that they may "show that Cisco has held a grudge against the Eastern District of Texas" and therefore was "set on impugning the Court's credibility." In the same section Plaintiff alleges that "the blog posts do not allege corruption in the clerk's office."  Plaintiff's inconsistent positions cannot be reconciled.

Cisco's position concerning the United States District Court for the Eastern District of Texas is not reasonably calculated to lead to the discovery of admissible evidence.  The Court of the Eastern District of Texas is not the plaintiff in this lawsuit. Ward is not a member of the Court of the Eastern District of Texas, so he could not possibly be claiming that the allegation concerning the Eastern District of Texas is of and concerning him for purposes of this lawsuit.

Moreover, there is no reasonable dispute that nobody from Cisco wrote, edited or even reviewed the article before it was written, and therefore the opinions of employees other than Frenkel concerning the Eastern District of Texas could not possibly be relevant (this Court already held that only Frenkel's knowledge prior to the posts is relevant. Docket No. 89).   Indeed, Cisco has made clear that it was not happy about Frenkel's

reference to the Eastern District of Texas as the "Banana Republic of East Texas" when it discovered the statement as a result of this lawsuit.  (Trial Transcript in *Albritton v. Cisco*, Exhibit D at 703:17-23).  Because Cisco did not even know the content of the article at the time it was published, its opinions about the Eastern District of Texas could not possibly be relevant.  Plaintiff merely seeks these documents because he hopes to embarrass Cisco.

Plaintiff also claims that documents about Cisco's views concerning the Eastern District of Texas would show that the article was not about a matter of public concern. Plaintiff's argument makes no sense.  When Courts determine whether an article is a matter of public concern, they look to the content, form and circumstances of the statement at issue, not other communications. *See Gunter v. Morrison*, 497 F.3d 868, 872 (8th Cir. 2007).

Here, as Judge Schell found, a simple reading of the article shows that it was about what was going on in the clerk's office in the Eastern District of Texas.  At the close of Albritton's case and indeed, all of the evidence, Cisco moved for Judgment as a Matter of Law ("JMOL") that the Articles that Plaintiff asserts are defamatory were speech about a matter of public concern.  Judge Schell granted Cisco's JMOL from the bench, as follows:

| The Court: | Point number 7, **the articles at issue involve a matter of public concern.**  Ms. Peden, anything else you want to say on that? |
| --- | --- |
| Ms. Peden: | No, Your Honor.  I think that we got your ruling a little bit ago.  **You think they are,** and . . . |
| The Court: | **Yeah.  I think I said that last week… But I think the matter at issue here is what's going on in the clerk's office.  I think that's really the heart of it… the real heart of the matter here is the oversight of electronic** |

> **case records by the district clerk, and that is a matter of public concern.**
>
> **So I think that's primarily what the blog posts are about.  There is a motion for judgment as a matter of law on that.  I'm happy to state it.  As a matter of law, it is a matter of public concern.**  I think that's what you're asking me to do, Mr. Moran.

Mr. Moran:    Yes.  Sounds like I'm one for seven so far, Your Honor.

The Court:    Okay.

Mr. Moran:    You granted Number 7.

The Court:    Yes.  Yeah, I'll grant number 7.

(Transcript of Trial in *Albritton v. Cisco*, Exhibit D at 1072:1-1073:11 (with omissions and emphasis added).  Other communications are simply irrelevant to that inquiry, and Plaintiff cannot find any support for his position that the opinions of someone who did not even publish the articles at issue are relevant to the public concern issue.

The request is also unlimited in time, making it even more burdensome, especially given the lack of relevance.  Because the requested documents are not reasonably calculated to lead to the discovery of admissible evidence, the Motion should be denied.  Moreover, even if there was some marginal relevance, it would be outweighed by the burden of locating and producing responsive documents, especially where the employees at issue had no input into the content complained-of publication.

Nor is Plaintiff forthcoming with the Court about what his requests seek.  He says 152, 155, 160, 164, 168 and 172 seek documents relating to "the Eastern District of Texas," yet 155 actually seeks documents "ALL publically disseminated DOCUMENTS CONCERNING patent litigation reform written, in whole or in part, by Mallun Yen."  Plaintiff makes <u>no</u> argument concerning why patent reform is relevant, nor why Ms.

Yen's views concerning patent reform would be relevant.  Indeed, he has argued to the Court that the articles at issue are not about patent reform.  Because he has failed to show relevance or why Cisco's other objections are not merited, his Motion with respect to Request No. 155 should be denied.

Again, Cisco does not have custody and control of documents of its former employees, as set forth above.  Plaintiff's Motion should therefore be denied to the extent it calls for such documents.

## CONCLUSION

For the reasons set forth above, Plaintiff's Motion should be denied, the Court should order Plaintiff to seek leave to file any additional motions asking the Court to turn over privileged documents, given that the Court has already ruled on this issue.

Cisco also seeks such other and further relief to which it may be entitled.

Respectfully submitted,

JACKSON WALKER L.L.P.

By:   */s/ Charles L. Babcock*
      Charles L. Babcock
      Federal Bar No.: 10982
      Email: cbabcock@jw.com
      Richard E. Griffin
      Arkansas Bar No.: 63020
      Email: rgriffin@jw.com
      Crystal J. Parker
      Federal Bar No.: 621142
      Email: cparker@jw.com
      1401 McKinney
      Suite 1900
      Houston, Texas 77010
      (713) 752-4200
      (713) 752-4221 – Fax

ATTORNEYS FOR DEFENDANT
CISCO SYSTEMS, INC.

5679929v.1

## CERTIFICATE OF SERVICE

This is to certify that on the 23rd day of December, 2009, a true and correct copy of the foregoing was served electronically, facsimile and/or via U.S. First Class Mail upon:

Patricia L. Peden
Law Offices of Patricia L. Peden
5901 Christie Avenue, Suite 201
Emeryville, CA 94608
***Attorney for Plaintiff John Ward, Jr.***

Nicholas H. Patton
Geoffrey P. Culbertson
Courtney Towle
Patton, Tidwell & Schroeder, LLP
4605 Texas Boulevard
P.O. Box 5398
Texarkana, Texas 75505-5398
***Attorney for Plaintiff John Ward, Jr.***

*/s/  Charles L. Babcock*
Charles L. Babcock

5679929v.1