# EXHIBIT "D"

```
 1                UNITED STATES DISTRICT COURT
 2                 EASTERN DISTRICT OF TEXAS
 3                      SHERMAN DIVISION
 4
 5   ---------------------------------------------------------
 6   ERIC ALBRITTON                ] CASE NO. 6:08CV89
 7   VS.                           ] 9 AM, SEPTEMBER 14, 2009
 8   CISCO SYSTEMS, INC.           ] TYLER, TEXAS
 9   ---------------------------------------------------------
10
11      REPORTER'S SAME-DAY DELIVERY TRANSCRIPT OF JURY TRIAL
12
13            VOLUME 1 OF 6, PAGES 1 THROUGH 248
14
15                   TABLE OF CONTENTS, 1106
16
17   THE HONORABLE RICHARD SCHELL, U.S. DISTRICT JUDGE, PRESIDING
18
19
20
21
22
23
24   PROCEEDINGS REPORTED USING COMPUTERIZED STENOTYPE,
25   TRANSCRIPT PRODUCED USING COMPUTER-AIDED TRANSCRIPTION.
```

1  Q.  AND IT WAS CISCO DOING THE INVESTIGATION?

2  A.  YES, SIR.

3  Q.  ALL RIGHT. AND HOW LONG DID THE INVESTIGATION TAKE?

4  A.  WELL, IT STARTED--IT STARTED AROUND MARCH 10TH AND WENT

5  THROUGH ABOUT THE END OF--MIDDLE TO END OF APRIL.

6          MR. PATTON: YOUR HONOR, I HAVE AN INQUIRY MORE

7  THAN AN OBJECTION. THERE'S SOMETHING UP ON THE SCREEN THAT

8  MR. BABCOCK DOESN'T SEEM TO BE QUESTIONING HIM ABOUT--

9          MR. BABCOCK: DO YOU WANT ME TO TAKE IT DOWN?

10         MR. PATTON: YES.

11         MR. BABCOCK: SURE. NO PROBLEM.

12         THE WITNESS: SO IT WAS ABOUT SIX WEEKS, I WOULD

13 SAY, GIVE OR TAKE.

14         MR. BABCOCK: OKAY.

15 Q.  AND WERE YOU INTERVIEWED AS PART OF THAT INVESTIGATION?

16 A.  YES, I WAS.

17 Q.  AND DID CISCO--CAN YOU TELL THE LADIES AND GENTLEMEN

18 OF THE JURY WHETHER CISCO THOUGHT YOUR ONE-DAY BANANA REPUBLIC

19 COMMENT WAS A NEAT THING OR NOT?

20 A.  OH, NO, THEY DID NOT LIKE THAT. AND I DON'T BLAME

21 THEM. I DIDN'T LIKE IT EITHER WHEN I RECALLED THAT I HAD

22 DONE IT. I HAD NOT REMEMBERED WHEN I FIRST GOT SUED BY

23 MR. ALBRITTON, BUT THE LAWSUIT BROUGHT ALL THAT BACK.

24 Q.  ALL RIGHT.

25         I BELIEVE YOU SAID, IN RESPONSE TO MR. PATTON, THAT

1  Q.    OKAY. AND SO YOU HAD POSSESSION OF IT, I TAKE IT.
2  SO DID ANYBODY EDIT IT?
3  A.    NO.
4  Q.    DID ANYBODY SNEAK IN AND--
5  A.    NO. I HAD POSSESSION OF THE COMPUTER, YES, YES.
6  Q.    OKAY. AND DID ANYBODY AT CISCO EDIT THE--
7  A.    NO, NOBODY AT CISCO EDITED THIS.
8  Q.    WE HAVEN'T TALKED TOO MUCH ABOUT THE OCTOBER 17TH
9  ARTICLE, BUT THE SAME THING WITH RESPECT TO THAT. DID ANYBODY
10 AT CISCO WRITE, REVIEW OR EDIT THAT ARTICLE?
11 A.    NO, NO WRITING, REVIEWING, EDITING WHATSOEVER.
12 Q.    ALL RIGHT.
13        TO YOUR KNOWLEDGE, DID ANYBODY AT CISCO SEND OUT--
14 PUBLISH THE OCTOBER 18TH ARTICLE OUTSIDE CISCO, OTHER THAN
15 YOURSELF, OF COURSE?
16 A.    NOT TO MY KNOWLEDGE.
17 Q.    ALL RIGHT. SAME TRUE OF THE OCTOBER 17TH ARTICLE?
18 A.    YES. I DON'T KNOW OF ANYONE EVER SENDING IT TO
19 ANYBODY.
20 Q.    ALL RIGHT.
21        I WANT TO PUT UP DEFENDANT'S EXHIBIT 11, WHICH IS
22 FROM THE BLOG THAT YOU WERE DISCUSSING WITH--OR THE ARTICLE
23 THAT YOU WERE DISCUSSING WITH MR. MCWILLIAMS, THE LAST ONE,
24 ON FEBRUARY 23RD, 2008. DO YOU RECOGNIZE THIS AS COMING FROM
25 THAT?

1   "HEY, I'VE READ THAT YOU HAVE COMMITTED SOME SORT OF CRIME AND

2   WE'RE INVESTIGATING IT"?

3   A.      THAT'S CORRECT.

4   Q.      ALL RIGHT.

5           AND YOU DIDN'T GET AN APOLOGY, BUT YOU DIDN'T REACH

6   OUT TO MR. FRENKEL'S BLOG, TO THE PATENT TROLL TRACKER, EITHER,

7   DID YOU?

8   A.      YOU DON'T WRESTLE WITH A SNAKE, YOU CUT ITS HEAD OFF.

9   AND THAT'S WHAT WE DID.

10  Q.      WELL, HE'S STILL GOT HIS HEAD, SO YOU ARE A LITTLE

11  PREMATURE IN THAT.

12  A.      WELL, NO, WE SHUT THE BLOG DOWN IS WHAT WE DID.  AND I

13  WASN'T GONNA ENGAGE WITH HIM ON HIS HOME TURF WHERE HE COULD

14  SPIN WHATEVER HE WAS GONNA SPIN.

15  Q.      YOU SHUT THE BLOG DOWN, AND THAT WAS ONE OF YOUR

16  OBJECTIVES, OF COURSE?

17  A.      MY OBJECTIVE WAS TO GET THE ARTICLES THAT WERE ACCUSING

18  ME OF A CRIME TAKEN DOWN.  HE TOOK THE WHOLE THING DOWN ON HIS

19  OWN ONCE CISCO GOT OUTED.

20  Q.      THE ANSWER TO MY QUESTION A MINUTE AGO WAS:  YOU DID

21  NOT REACH OUT TO HIM BY E-MAILING HIM EVEN THOUGH THERE'S A

22  BUTTON RIGHT THERE, RIGHT?

23  A.      ABSOLUTELY NOT.  NEVER WOULD.

24  Q.      YOU NEVER WOULD?

25  A.      NO WAY.

1      POINT NUMBER 7, THE ARTICLES AT ISSUE INVOLVE A
2  MATTER OF PUBLIC CONCERN. MS. PEDEN, ANYTHING ELSE YOU WANT TO
3  SAY ON THAT?
4      MS. PEDEN: NO, YOUR HONOR. I THINK THAT WE GOT
5  YOUR RULING A LITTLE BIT AGO. YOU THINK THEY ARE, AND . . .
6      THE COURT: YEAH. I THINK I SAID THAT LAST WEEK. I
7  THINK WHAT I SAID IN MY ORDER ON SUMMARY JUDGMENT WAS I WAS
8  RESPONDING TO WHAT YOU ARGUED AND WHAT CISCO AND MR. FRENKEL
9  ARGUED, AND -- LET'S SEE. I CAN PROBABLY FIND IT HERE.
10     I SAID THE DEFENDANTS ARGUE THAT THE BLOG POSTINGS
11 ADDRESS THE PUBLIC CONTROVERSY REGARDING THE ABUSE OF THE
12 PATENT SYSTEM BY NONPRACTICING ENTITIES IN THE EASTERN DISTRICT
13 OF TEXAS. INDEED, THE BLOG POSTS DO TALK ABOUT THAT, TOO. THE
14 PLAINTIFF COUNTERS THAT THE MATTER AT ISSUE, THE LAWSUIT
15 BETWEEN ESN AND CISCO, DID NOT INVOLVE A PUBLIC CONTROVERSY. I
16 AGREE. THAT LAWSUIT DOESN'T INVOLVE A PUBLIC CONTROVERSY. BUT
17 I THINK THE MATTER AT ISSUE HERE IS WHAT'S GOING ON IN THE
18 CLERK'S OFFICE. I THINK THAT'S REALLY THE HEART OF IT. I
19 DIDN'T SAY ANYTHING ABOUT THAT. I PROBABLY SHOULD HAVE. I
20 DON'T KNOW -- MAYBE I'M WRONG. MAYBE YOU TALKED ABOUT THAT
21 ISSUE AND I JUST MISSED IT, BUT I THINK WHAT YOU TALKED ABOUT
22 IN YOUR BRIEFING ON THE SUMMARY-JUDGMENT ISSUE -- ON THE
23 SUMMARY-JUDGMENT MOTION WAS WHAT I RESPONDED TO ON PAGE 10 OF
24 MY ORDER ON THE MOTION FOR SUMMARY JUDGMENT, BUT THE REAL HEART
25 OF THE MATTER HERE IS THE OVERSIGHT OF ELECTRONIC CASE RECORDS

1   BY THE DISTRICT CLERK, AND THAT IS A MATTER OF PUBLIC CONCERN.

2           SO I THINK THAT'S PRIMARILY WHAT THE BLOG POSTS ARE

3   ABOUT.  THERE IS A MOTION FOR JUDGMENT AS A MATTER OF LAW ON

4   THAT.  I'M HAPPY TO STATE IT.  AS A MATTER OF LAW, IT IS A

5   MATTER OF PUBLIC CONCERN.  I THINK THAT'S WHAT YOU'RE ASKING ME

6   TO DO, MR. MORAN.

7           MR. MORAN:  YES.  SOUNDS LIKE I'M ONE FOR SEVEN SO

8   FAR, YOUR HONOR.

9           THE COURT:  OKAY.

10          MR. MORAN:  YOU GRANTED NUMBER 7.

11          THE COURT:  YES.  YEAH, I'LL GRANT NUMBER 7.

12          LET'S SEE.  NUMBER 8, THE DEFENDANTS ARGUE THAT A

13  JUDGMENT AS A MATTER OF LAW SHOULD BE GRANTED ON THE

14  EXEMPLARY-DAMAGES CLAIM BECAUSE THERE'S NO CLEAR AND CONVINCING

15  EVIDENCE OF CHAPTER 41 MALICE OR GROSS NEGLIGENCE.  I THINK

16  WE'VE ALREADY COVERED THAT.  I THINK THERE ARE FACT ISSUES.

17          NOW, LET ME GO BACK JUST FOR A MOMENT ON THE MATTER

18  OF PUBLIC CONCERN.  LET'S SEE.  THE PLAINTIFF'S POSITION THAT

19  IN A DEFAMATION CASE BROUGHT BY A PRIVATE-FIGURE PLAINTIFF, THE

20  BURDEN OF PROVING FALSITY IS ON THE DEFENDANTS --

21          IN THE DEFENDANTS' REPLY BRIEF, THEY SAY THAT

22  MR. ALBRITTON HAS THE BURDEN OF PROVING FALSITY; THAT EVEN A

23  PRIVATE-FIGURE PLAINTIFF MUST PROVE FALSITY WHEN THE SPEECH IS

24  ONE -- OR INVOLVES A MATTER OF PUBLIC CONCERN.

25          OKAY.  NOW, DOES THAT DEPEND ON WHETHER THE