IN THE UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF ARKANSAS
TEXARKANA DIVISION

| | | |
|---|---|---|
| **JOHN WARD, JR.** | § | |
| | § | |
| **Plaintiff** | § | No.  4:08cv4022 JLH |
| | § | |
| **V.** | § | JURY TRIAL DEMANDED |
| | § | |
| **CISCO SYSTEMS, INC.** | § | |
| | § | |
| **Defendant.** | § | |

**PLAINTIFF'S RESPONSE TO DEFENDANT CISCO SYSTEMS, INC.'S AMENDED
MOTION TO SUBSTITUTE EXPERT WITNESS**

**TABLE OF CONTENTS**

**Page(s)**

I. Introduction..................................................................................................................1

II. Factual Background .....................................................................................................2

III. Legal Argument ...........................................................................................................7

    A. Cisco's Cannot Show Good Cause To Substitute Its Expert After the Court's Deadline For Disclosing Expert Testimony.........................................8

    B. Plaintiff Is Prejudiced By Cisco's Late Disclosure................................................11

    C. Allowing Cisco's Late Report Will Disrupt Preparations For Trial ......................13

    D. Cisco's Late Expert Report Is Cumulative Of Other Record Evidence.................13

IV. Conclusion ..................................................................................................................14

I.  **Introduction**

Cisco's Amended Motion to Substitute Expert Witness should be denied because Cisco has not shown "good cause" to serve a new expert report after the deadline set in this Court's Scheduling Order. Cisco's motion should be denied for the following reasons:

First, Cisco failed to even attempt to show the good cause required under Federal Rule of Civil Procedure 16(b) to serve a new expert report after the Court's scheduling deadline. Cisco's failure to address Rule 16(b) or its good cause requirement is grounds alone for denying its motion.

Second, Cisco cannot show good cause. Cisco waited 20 months after this case was filed, and four days before its expert report was due, to begin preparing Mr. DeLoach's expert report. Cisco's neglect left it with an expert not prepared to go the distance. That is something Cisco could have learned and corrected if it had not waited until the last minute to prepare its expert report. After Cisco learned Mr. DeLoach would not be offering expert testimony, it kept that information to itself. Egregiously, Cisco affirmatively represented to Plaintiff that it was working on scheduling Mr. DeLoach's deposition long after Cisco knew that Mr. DeLoach would not be an expert. Nearly a month after the deadline, Cisco informed Plaintiff that it was granting itself leave to file a late expert report. Cisco's failure to act promptly to substitute its expert report, to seek leave from the Court before serving the new report, or to consult Plaintiff when Cisco knew he would be devoting resources to rebutting its non-existent expert report prevents a finding of good cause.

Third, Cisco's late disclosure has prejudiced Plaintiff. Cisco's late disclosure deprived Plaintiff the opportunity to serve a rebuttal expert report. If Cisco is permitted to substitute its expert, Plaintiff will also lose valuable impeachment testimony it has for Cisco's prior expert. Plaintiff has been prejudiced by Cisco's lack of candor, which left Plaintiff preparing a rebuttal report to, and the deposition of, a non-existent expert witness. Plaintiff has also been prejudiced by the manner in which Cisco addressed its new expert report. Cisco's new expert purports to have considered its prior expert's report; the result of which is that Cisco could benefit from its

1

dilatory conduct by offering two expert opinions at trial. Plaintiff cannot know which opinions from which experts Cisco intends to offer, so he is forced to duplicate his pretrial efforts. With trial five weeks away, Cisco's duplication and delay has caused, and will continue to cause, prejudice to Plaintiff.

Cisco should bear the brunt of its lack of diligence. Through its Motion, Cisco seeks to shift the fallout from its hasty decisions onto Plaintiff's shoulders. The Court should not permit that result. Thus, Plaintiff respectfully requests that the Court deny Cisco's motion.

## II.    Factual Background

On December 9, 2008, the Court entered a Scheduling Order that required the parties to make initial expert disclosures no later than ninety (90) days prior to the trial date and rebuttal expert disclosures must be made *within thirty (30) days thereafter*. *See* D.E. 47 at ¶ 7. The Court's Order expressly stated that "**[t]he parties may not amend or deviate from the schedule set out herein without the prior express permission of the Court, which permission will be granted only on a showing of good cause.**" *Id*. at ¶ 11 (emphasis in original).

On August 26, 2009, the Court entered an Amended Scheduling Order, resetting the trial date in this above-captioned case to February 8, 2010, resetting the discovery cut-off, dispositive motions deadlines, and deadline for leave to amend, but leaving all other deadlines in place. *See* D.E. 89. Pursuant to the new schedule, the parties were required to serve expert reports on or before November 10, 2009.

Cisco waited until November 7th to begin working on the expert report that would be offered by Mr. DeLoach. *See* Exh. A (Deloach.00198).

On November 10, 2009 at 2:23 p.m.—the day his expert report was due—Mr. DeLoach gave Cisco a signed expert report. *See* Exh. B (Deloach.00013). Mr. DeLoach's expert report stated that four documents associated with the ESN filing were "*filed* after midnight or at 0:01 AM CDT on 10/16/2007." Mr. DeLoach's opinion in this regard supports Plaintiff's case. Cisco's counsel asked Mr. DeLoach change his opinion to state that the documents were not

"filed" on October 16th, but were instead "entered" on that date. *See* Exh. C (email from DeLoach to Patton). Mr. DeLoach quickly made the requested change and sent a revised report to Cisco's counsel.

Cisco served Mr. DeLoach's report on November 10, 2009. *See* Exh. D.

On November 11, 2009—the day after his expert report was served—Mr. DeLoach wrote to Cisco's counsel telling them that he would not serve an expert for Cisco. *See* Exh. E (Deloach.00007). Mr. DeLoach told Cisco that he agreed to provide expert testimony without much time to consider the scope of the obligation, and that it was his final decision not to be an expert witness in this case. *See id.* Mr. DeLoach offered to help Cisco find a replacement expert. *See id.*

On November 12, 2009, Plaintiff's counsel asked Cisco to provide a date for Mr. DeLoach's deposition. *See* Exh. G (Nov. 12, 9:32 am email from Peden to Parker). Although Cisco's counsel knew that Mr. DeLoach would not be serving as an expert, she did not provide that information to Plaintiff's counsel.

On November 18, 2009, Mr. DeLoach again wrote to Cisco's counsel about his decision not to serve as an expert witness. He told Cisco's counsel that he didn't have the time or inclination to be Cisco's expert witness and that he did not want to subject himself to deposition and that serving as Cisco's expert was not in his best interest for a number of reasons. *See* Exh. H (Deloach.00004). Again, Mr. DeLoach offered to help Cisco find a replacement expert witness. *See id.*

From the record available to Plaintiff, it appears that Cisco did not ask Mr. DeLoach's assistance in finding a replacement expert witness until November 23, 2009, nearly two weeks after he told Cisco he would not be an expert and offered his assistance in finding a replacement. *See* Exh. I (Deloach.00003).

On November 24, 2009—nearly two weeks after first asking Cisco to provide a date for Mr. DeLoach's deposition, Plaintiff's counsel again wrote to Cisco's counsel seeking a date for Mr. DeLoach's deposition. *See* Exh. J (Nov. 24, 12:03 email from Peden to Parker). Again,

Cisco did not tell Plaintiff's counsel that Mr. DeLoach would not be an expert in this case or that Cisco was looking for a replacement expert. Instead, she responded that "Chip is handling that" and told Plaintiff's counsel to contact Cisco's lead attorney. *See* Exh. J (Nov. 25, 2009 10:59 email from Parker to Peden).

On November 25, 2009, Plaintiff's counsel wrote to Cisco's counsel, Chip Babcock, asking him to provide a date for Mr. DeLoach's deposition. *See* Exh. J (Nov. 25, 2009 11:35 email from Peden to Babcock). Mr. Babcock did not respond to Plaintiff's counsel.

On December 1, 2009, Plaintiff's counsel again wrote to Cisco's counsel about deposition dates for its expert witnesses. At this time, Cisco had withdrawn a previously offered deposition date for a different expert, telling Plaintiff the expert would not be offered for deposition until a month after the previously agreed date. *See* Exh. K (Nov. 18-Dec. 1, 2009 email string). When Plaintiff's counsel pressed for an explanation of the delay, Cisco's counsel said that its expert "has scheduling conflicts." On the subject of Mr. DeLoach, Plaintiff's counsel asked Cisco's counsel "why do we still not have dates for Mr. DeLouch's deposition?" *See id.* at Dec. 1 12:58 email. Cisco's counsel, Mr. Babcock, responded "**DeLouch is my responsibility and he will not give me dates. I will continue to reach out to him**." *See id.* at Dec. 1, 2009 1:02 email. Of course, by this time Cisco had known for 20 days that Mr. DeLoach would not be an expert. Cisco shared none of that information with Plaintiff's counsel.

Cisco never told Plaintiff's counsel that Mr. DeLoach would not be serving as an expert in this case. Plaintiff discovered that fact by happenstance. Because Cisco had refused to provide timely deposition dates for any of its expert witnesses and withdrew the one deposition date it had offered, with trial looming, Plaintiff served Cisco's experts with subpoenas.[1] On December 3, 2009, after receiving his subpoena, Mr. DeLoach wrote to Plaintiff's counsel telling them that he would not be an expert in this case. *See* Exh. L (Deloach.00001).

---

[1] All of Cisco's experts seem to have insurmountable scheduling conflicts. Mr. Herring's expert report was served on Nov. 10th, but Cisco claimed he was unavailable for deposition until January 12 or 13. After Plaintiff served a subpoena, Mr. Herring found time for an earlier deposition. Mr. Beal's expert report was served on Dec. 10th. Cisco insists that Mr. Beal is unavailable for deposition until January 20th. In the mean time, Plaintiff offered timely deposition dates. The depositions of Plaintiff's affirmative expert witnesses were completed weeks ago.

Between November 11, 2009 and December 3, 2009, Plaintiff's counsel spent case resources researching Mr. DeLoach's work history and personal information in preparation for his deposition. Plaintiff's counsel was also preparing to offer a rebuttal report to Mr. DeLoach's expert report. All the while this work was being undertaken, Cisco knew that Mr. DeLoach would not be an expert in this case.

On December 3, 2009—after learning from Mr. DeLoach that he would not be an expert, and after having been led to believe otherwise for nearly the entire 30-day rebuttal period, Plaintiff's counsel wrote to Cisco's counsel asking when Cisco' first learned that Mr. DeLoach would not be serving as an expert witness. *See* Exh. M (Dec. 3, 2009 email from Peden to Parker).

On December 4, 2009, Cisco's counsel admitted that he had known Mr. DeLoach would not be an expert since November 11th—the day after his expert report was served. *See* Exh. M (Dec. 4, 2009 email from Babcock to Peden). Incredibility, Cisco's response accused Plaintiff of somehow tampering with Mr. DeLoach's testimony, writing "[w]hat communications did Mr. Ward or his agents have with Mr. DeLoach between November 10, 2009 (the date his identify was revealed) and today. Are you aware of any other communications with Mr. DeLoach regarding his testimony by anyone and if so, please identify that person or persons." *Id.* Cisco's accusations were entirely meritless, as they have been throughout this case. Plaintiff's counsel was offended that Cisco would conceal Mr. DeLoach's decision to withdraw, force Plaintiff's counsel to repeatedly hound Cisco for deposition dates that were never going to be offered, allow Plaintiff to spend valuable pre-trial resources preparing to respond to a defunct expert report, and then, somehow, seek to shift the blame to Plaintiff.

On December 8, 2009—nearly a month after the expert disclosure deadline and two days before rebuttal reports were due—Cisco wrote to Plaintiff's counsel telling her that Cisco was going to substitute Mr. Weston as an expert for Mr. DeLoach. *See* Exh. M (Dec. 8, 2009 1:53 email from Babcock to Peden). Cisco did not ask Plaintiff to agree to a substitution. Nor did Cisco offer to extend the time Plaintiff had to rebut Cisco's expert report, which Cisco contends

5

was "timely filed" on November 10, 2009. *See* D.E. 140 at 1. Cisco's position that its expert report was filed on November 10th meant that Plaintiff would have 2 days to serve a rebuttal report, notwithstanding the fact that he had yet to see Mr. Weston's report or do any due diligence on Mr. Weston. Cisco did not seek leave from the Court to file a new expert report, or even to substitute its expert as required by the Court's Scheduling Order. Instead, Cisco simply granted itself an extension of the Court's deadline and then told Plaintiff what Cisco decided it was entitled to do.

Plaintiff's rebuttal expert reports were due on December 10, 2009. Because Mr. DeLoach would not be serving as an expert witness, Plaintiff did not serve a rebuttal to his report. Cisco served the Expert Report of Ron Weston the same day Plaintiff's rebuttal report would have been due. *See* Exh. N. Mr. Weston's expert is different than the one provided by Mr. DeLoach. *Compare* Exh. O (DeLoach Report) with Exh. P (Weston Report). Plaintiff did not receive Mr. Weston's report in time to serve a rebuttal report.

On December 11, 2009, Cisco filed its Amended Motion to Substitute Expert Witness. *See* D.E. 170. Cisco's motion made no attempt to demonstrate good cause for serving its late expert report. Instead, Cisco resorted to Fed. R. Civ. P. 1 and its now familiar course of feigning shock and outrage at Plaintiff's counsel for not letting Cisco's conduct go unchallenged.[2] Cisco asked the Court to condone its lack of candor and intentional misleading of Plaintiff's counsel because it is somehow "just" that Cisco be allowed to treat the discovery process as it sees fit, including unilaterally granting itself the right to submit a new expert report without prior leave of Court or without conferring with Plaintiff. *See* D.E. 170 at 3.

---

[2] Cisco's "shock" that Plaintiff's counsel would insist that Cisco comply with scheduling deadlines rings hollow in light of the strident tone Cisco has taken when it believed (incorrectly) that Plaintiff missed a deadline. In a recent brief, Cisco's counsel urged the Court to grant Cisco's Motion because Cisco believed Plaintiff filed his Response one day late. *See* D.E. 167. Cisco told the Court "if ever there was a case to disregard a pleading because it was not timely filed in accordance with court rules, this is it." *See* D.E. 167 at 1-2. Cisco was complaining about a filing deadline that in no way prejudiced Cisco. Here, on the other hand, when Cisco missed a deadline that resulted in demonstrable prejudice to Plaintiff, it claims shock that Plaintiff objects and insists that it seek leave to amend, or, at a minimum, seek Plaintiff's consent before unilaterally serving new expert reports.

In emails dated December 10, 2009, Plaintiff's counsel told Cisco's counsel Plaintiff would not agree to Cisco's unilateral decision to file a new expert report, particularly in light of its lack of candor and the prejudice its deceit had caused Plaintiff.  *See* Exh. M.

### III.     Legal Argument

Cisco's Motion to Substitute Expert Witness requires it to demonstrate it has met the "good cause" standard of Federal Rule of Civil Procedure 16(b).  *See Marmo v. Tyson Fresh Meats, Inc.,* 457 F.3d 748, 759 (8th Cir. 2006) (requiring party seeking to substitute expert to meet the requirements of Rule 16); Federal Rule of Civil Procedure 16(b)(scheduling orders "shall not be modified except upon a showing of good cause and by leave of the district judge.") The "good cause" standard should not be taken lightly and must be enforced so as to ensure that litigation reaches a timely end.  *See Bradford v. DANA Corp.,* 249 F.3d 807, 809 (8th Cir. 2001). ("[a]s a vehicle designed to streamline the flow of litigation through our crowded dockets, we do not take case management orders lightly, and will enforce them.").  Because Cisco has failed to show good cause, its motion must fail.  Even if Cisco had made a showing of good cause—and it has not—this Court still has discretion to deny Cisco's motion.  *See id.*

Although Cisco's motion does not address them, the Eight Circuit has identified several factors relevant to determining whether a party should be allowed to designate an expert after the scheduling deadline for doing so has passed.  Those factors include:  (1) the reason for noncompliance; (2) the surprise and prejudice to the opposing party; (3) the extent to which allowing the information or testimony would disrupt the order and efficiency of the trial, and (4) the importance of the information or testimony."  *Wegener v. Johnson*, 527 F.3d 687, 692 (8th Cir. 2008).  The Eighth Circuit's factors are similar to those used in other Federal Courts.  *See e.g., Commonwealth Scientific and Indust. Research Organisation v. Buffalo Technology*, No. 6-06-cv-324, 2009 WL 260953, 1 (E.D. Tex., Feb. 3, 2009) ("In determining whether to allow a party to designate an expert after a deadline, courts consider four factors: (1) the explanation for the failure to identify the witness; (2) the importance of the testimony; (3) potential prejudice in allowing the testimony; and (4) the availability of a continuance to cure such prejudice.").

7

Case law in this Circuit supports excluding Cisco's untimely expert report because its failure to disclose Mr. Weston's expert testimony in a timely manner was neither substantially justified nor harmless, Plaintiff has been prejudiced by losing his opportunity to serve a rebuttal report, a continuance to allow Plaintiff a rebuttal expert will postpone a much-delayed trial, and the Mr. Weston has been asked to prove a point upon which a substantial amount of other evidence will be presented at trial. *See id.* (denying leave to add new expert for similar reasons).

    A.    <u>Cisco's Cannot Show Good Cause To Substitute Its Expert After the Court's Deadline For Disclosing Expert Testimony</u>

Cisco's motion should be denied because it has not shown good cause to substitute an expert after the Court's scheduling deadline. Cisco's Motion fails for three reasons.

First, Cisco's Motion makes no attempt to demonstrate good cause. Cisco motion does not cite Rule 16, address the good cause showing required by the Rule, or tell the Court how Cisco meets that standard. For that reason alone, Cisco's motion should be denied. *See Bradford*, 249 F.3d at 809 (requiring the moving party to first make the requisite showing of good cause); *see also*, *Hartsfield v. Bradford-White Water Heaters, Inc*., No. 3-03-CV-0114-BDL, 2004 WL 1496591, at *1 (N.D. Tex., Jun. 25, 2004) (denying motion where party's motion did not address Rule 16 good cause standard).

Second, on this record, Cisco could not show good cause even if it had attempted to do so in its Motion. Cisco's dilatory approach to litigating this case caused the problem for which it now seeks relief from the Court. This case was filed in March of 2008. Since that time Cisco has known that the filing date of the ESN complaint—the subject matter of Mr. DeLoach's expert report—was an issue in this case. At any point in the ensuing 20 months, Cisco could have vetted possible experts, inform them of the time commitment involved, and selected an expert with time to dedicate to this case. Cisco is represented by seasoned litigation counsel who surely knows that expert witnesses often need significant lead time to clear their schedules. In most cases, litigation counsel selects their experts early to ensure the expert is on board by the

time their reports are served. That Cisco opted not to do so here resulted in a somewhat predictable result—the selection of an expert witness that counsel later comes to regret.

Cisco waited until four days before its expert report was due before seeking Mr. DeLoach's expert opinion. At best, Cisco's last minute flurry failed to apprise Mr. DeLoach of the extent of the assignment he was undertaking. Or, perhaps, Cisco's last minute rush forced Mr. DeLoach to offer an opinion he was uncomfortable defending in deposition and at trial. In either case, Cisco's delay caused its expert to withdraw from the case. Had Cisco acted with reasonable diligence in working with its expert, it would have not needed to serve its expert report after the deadline had past. Even after Mr. DeLoach had withdrawn, for weeks Cisco failed to take him up on his offer to help find a replacement expert witness. Cisco's delay is not good cause for leave to file a late expert report.

Moreover, Mr. DeLoach's stated reason for withdrawing from this case, the "press of business is just to (sic) great to allow me to do it" is not sufficient grounds for allowing him to withdraw from the case and permitting Cisco to add an new expert. *See* D.E. 170 at 1 (Cisco's stated grounds for needing to substitute Mr. DeLoach's testimony). Once an expert has agreed to serve in that capacity, the party who retains him is obligated to use that expert unless the Court permits a substitution. That is one reason litigation counsel selects experts early and carefully. That Cisco failed to do that with Mr. DeLoach is unfortunate, but it does not give Cisco good cause to find another expert, especially where, as here, the new report will prejudice Plaintiff. Cisco selected Mr. DeLoach as its expert, the problems associated with his schedule are Cisco's to bear; not Plaintiff's.

The Eastern District of Texas's recent decision in *Commonwealth Scientific and In Industrial Research Organisation v. Buffalo Tech.*, No. 6:06-CV-324, 2009 WL 260953 (E.D. Tex., Feb. 3, 2009) is instructive. In that case, the defendant contended that it should be permitted to substitute a new expert witness for its prior expert because the prior expert "[did] not want to testify at the trial and only wants to be minimally involved in the case." *Id.* at *1. Defendant also argued that its prior expert had health concerns that prevented him from

9

participating in the case. *See id.* The district court denied the defendant's motion, noting that defendants had provided no evidence of the prior expert's *inability* to testify. *See id.* at 2 (emphasis added). Here too, Cisco has offered nothing to justify its proposed substitution other than conclusory allegations that are insufficient to meet its burden of proving good cause.

Third, even if the Court were inclined to overlook Cisco's delay in retaining Mr. DeLoach and its failure to show that Mr. DeLoach is unable to continue as Cisco's expert, it should not overlook Cisco's intentional deceit and delay. Cisco led Plaintiff to believe that Mr. DeLoach would be Cisco's expert witness long after it knew that was not true. Cisco learned the day after Mr. DeLoach's expert report was served that he would not be an expert in this case. The proper course would have been for Cisco to contact Plaintiff's counsel immediately, explain that its expert had "scheduling conflicts" and seek Plaintiff's consent to permit a substitution. Had Cisco opted for the reasonable course, Plaintiff would not have spent nearly a month preparing to depose and rebut Cisco's non-existent expert report. Cisco could have offered Plaintiff an extension to file a rebuttal report, or offered Plaintiff any number of other reasonable accommodations to address the tardiness of Cisco's disclosure. Cisco should have, at a minimum, sought leave from the Court immediately, as trial in this case is just five weeks away. It opted to take none of those actions.

Cisco made no effort to appraise Plaintiff or the Court of its need to substitute Mr. DeLoach with another expert witness. Instead, Cisco's counsel affirmatively led Plaintiff to believe that Mr. DeLoach was Cisco's expert and that Cisco was working with him to set a date for his deposition. Had Cisco's stonewalling not reached the point where it became necessary to subpoena Mr. DeLoach, Plaintiff may have waited several more weeks before finding out that Mr. DeLoach would not be Cisco's expert. All the while, Cisco knew that Plaintiff's time for serving a rebuttal report was running, and must have known that Plaintiff was spending resources to address Mr. DeLoach's expert report. Cisco also knew by not disclosing its plans to Plaintiff, it was granting itself an unlimited extension of time in which to serve another expert report.
10

To add insult to injury, once Cisco decided to cut Mr. DeLoach loose, it granted itself the right to serve a new expert report, without first seeking leave of Court or consulting with Plaintiff. At no point in the process did Cisco make a single attempt to mitigate the prejudice to Plaintiff. Cisco's bad faith in failing to address the need to substitute its expert immediately upon learning that it would need to do so means that it cannot demonstrate good cause under Rule 16(b).

B.      Plaintiff Is Prejudiced By Cisco's Late Disclosure

Cisco, as the party seeking leave to file a late expert report, bears the burden of showing that its request will not prejudice Plaintiff. *See Transamerica Life Ins. Co. v. Lincoln Nat. Life Ins. Co.*, 592 F.Supp.2d 1087, 1094(N.D. Iowa 2008). In this case, there is concrete evidence of the prejudice Cisco's delay has caused Plaintiff's case.

First, Plaintiff has been prejudice by his inability to serve a rebuttal expert report. After Plaintiff's counsel learned from Mr. DeLoach (not Cisco) that he would not be a testifying expert, Plaintiff stopped all efforts to rebut Mr. DeLoach's expert report. Cisco did not tell Plaintiff it would be offering a new expert report until two days before the rebuttal report deadline. Then, Cisco did not serve Plaintiff with the new expert report until the date rebuttal reports were due. Cisco claims that its "substitute" report was timely filed on November 10, 2009. *See* D.E. 170 at 1. Cisco's insistence that its expert report was filed on November 10th means that, under the Court's Scheduling Order, Plaintiff was required to serve a rebuttal report the same day he received Cisco's new expert report. Obviously, that was not possible. Plaintiff's inability to serve a rebuttal expert report is a concrete demonstration of actual prejudice.

Second, if Cisco's substitution is permitted, Plaintiff will be prejudiced in his ability to impeach Cisco's expert witness. Mr. DeLoach made an import change in his expert report, and did so at Cisco's urging. In response to Plaintiff's document subpoena, Mr. DeLoach produced documents and emails from which Plaintiff's counsel learned that Mr. DeLoach believed the ESN filing was received by the Court on October 16th—a fact that supports Plaintiff's case. If

11

Cisco is permitted to substitute Mr. DeLoach with Mr. Weston, Plaintiff will lose the benefit of that impeachment. Not only will Plaintiff be prejudiced by the substitution, but Cisco will benefit from it. That is the case because Mr. Weston's report purports to have considered Mr. DeLoach's expert report in reaching the opinions he is prepared to offer. Thus, Cisco can convey to the jury that Mr. Weston's opinion is consistent with Mr. DeLoach's opinion— including the "filed" date that Cisco asked Mr. DeLoach to change—and Plaintiff will not be able to cross-examine Mr. Weston about the reasons for Mr. DeLoach's changes.

Here too, the *Commonwealth Scientific* case is instructive. *See* 2009 WL 260953, at *2. In that case, the district court found that Plaintiff would be prejudiced by permitting the defendant's proposed substitution because Plaintiff had obtained impeachment evidence that could be used in cross-examining the prior expert but not as effectively with the new expert. *See id*. The Court found that even if the new expert adopted some of the prior expert's opinions, the new expert could not purport to have reached those opinions the same way. *See id.* The Court concluded that impeaching the new expert with the prior expert's statements would have a minimal impact on the jury, given that the statements were attributable to the prior expert. *See id.* The Court held that the lessened impact of the impeachment evidence weighed against allowing the substitution. *See id.*

Third, Mr. Weston's inclusion of Mr. DeLoach's expert report in his own newly offered report prejudices Plaintiff by forcing him to defend two expert reports instead of the one originally disclosed by Cisco. As an expert, Mr. Weston is permitted to rely on and offer hearsay evidence at trial. Mr. Weston has disclosed Mr. DeLoach's report as information he considered in forming his own expert opinions. *See* Exh. P (Weston Report) at 2, ¶ 9. Thus, Mr. Weston may seek to testify that his opinion is consistent with Mr. DeLoach's opinion. To defend against that possibility, Plaintiff must depose both Mr. Weston and Mr. DeLoach. If the Court grants Cisco's motion to file a late expert report, it will be allowing Cisco to introduce dual experts for which Plaintiff will be forced to spend twice the effort to rebut Cisco's expert testimony.

       C.      <u>Allowing Cisco's Late Report Will Disrupt Preparations For Trial</u>

Trial in this case is just five weeks away. Cisco's dilatory conduct, and its intentional decision not to inform Plaintiff of its intent to switch expert witnesses has forced Plaintiff to devote critical pre-trial time to address Cisco's late disclosure. If the Court permits Cisco's requested substitution, and Plaintiff is forced to address the issues associated with dual expert reports in pretrial submissions to the Court, he will be further prejudiced in his ability to devote time preparing for trial. *See Transamerica Life Ins. Co.*, 592 F.Supp.2d at 1099 -1100 ("it [i]s unrealistic to expect [prejudiced party] to analyze the supplemental report, depose the expert, and prepare a rebuttal report within the compressed time available, while pursuing other pretrial preparations."). The Court will also be impacted by Cisco's late disclosure as the presence of two possible expert opinions will double the pretrial submissions to the Court.

A continuance would be insufficient to cure the harm to Plaintiff. First, a continuation would not cure the prejudice to Plaintiff in not having the cross-examination evidence for Cisco's new expert that it has for its prior expert. *See Commonweath Scientific*, 2009 WL 260953, at * 2. Moreover, this case has already been continued once to account for Cisco's refusal to produce documents to Plaintiff. Mr. Ward was defamed by Cisco in 2007, and has waited to publically clear his name since that time. He should not be forced to endure yet another delay that could have been avoided if Cisco had been diligent in preparing its expert reports. This case has been much-delayed and needs to advance to trial.

       D.      <u>Cisco's Late Expert Report Is Cumulative Of Other Record Evidence</u>

Cisco does not need Mr. Weston's late disclosed expert report to support its theory of the case at trial. Mr. Weston's report essentially offers one opinion: the ESN complaint was filed on October 15, 2007. *See* Exh. P (Weston Report) at 1. Mr. Weston bases his opinion primarily on two documents, the Notice of Electronic Filling and on the Eastern District of Texas's Local Rules in effect in October of 2007. *See id.* It is difficult to see how Mr. Weston's report adds anything of value to a jury comprised of persons capable of reading the Notice of Electronic Filing and the Local Rules for themselves. *See* Fed. R. Evid. 702 (expert opinion is admissible if

it <u>will assist the trier of fact</u> to understand the evidence or to determine a fact in issue).  Mr. Weston's expert report adds little value to Cisco's case.

But, even if one were to assume that expert testimony that simply tells the jury what it can learn from reading the documents is proper, Cisco still does not need Mr. Weston's testimony.  Cisco has designated two other expert witnesses to testify about the filing date of the ESN complaint.  *See* Exh. Q (Cisco's expert disclosures).  Those witnesses are more than sufficient to provide the expert testimony Cisco seeks.  Additionally, Cisco has obtained an agreement from Mr. Maland, the Chief Duty Clerk in the Eastern District of Texas, to testify live at trial.  He too will offer testimony about the filing date of the ESN complaint.  Cisco will likely call Shelly Moore, another East Texas court clerk, to testify at trial and can ask her about the filing date of the ESN complaint.  Rick Frenkel will offer testimony about the filing date of the ESN complaint.  Several of Plaintiff's witnesses will testify about the filing date of the ESN complaint.  For many of Plaintiff's witnesses, Cisco has already taken deposition testimony it will seek to introduce at trial.  Adding two additional expert witnesses (Mr. Weston and by incorporation Mr. DeLoach) is overkill.  Cisco does not need the late testimony because it is more than cumulative of other witness testimony—including Cisco's other expert witness testimony—available to Cisco in this case.

## IV.     Conclusion

Cisco's motion fails to demonstrate the good cause required to substitute an expert witness after the Court's scheduling deadline has passed.  Far from good cause, the record in this case is replete with evidence showing why Cisco's motion must be denied.  Cisco's late disclosure resulted for Cisco's negligence and dilatory conduct, and its late disclosure has prejudiced Plaintiff's case.  On the other hand, Cisco's will not be prejudiced by the exclusion of testimony that is duplicative of testimony that will be offered by multiple witnesses in this case.  Therefore, Plaintiff respectfully submits that Cisco's Motion should in all things be denied.

Respectfully Submitted,

*Nicholas H. Patton* (signature)

Nicholas H. Patton
AR Bar No. 63035
Courtney Towle
Patton, Tidwell & Schroeder, LLP
4605 Texas Boulevard
Texarkana, Texas 75503
903.792.7080 / 903.792.8233 (Fax)
Email: nickpatton@texarkanalaw.com
Email: ctowle@texarkanalaw.com

Patricia L. Peden
LAW OFFICE OF PATRICIA L. PEDEN
1316 67th Street
Suite 6
Emeryville, CA 94608
Telephone: 510-268-8033
Email: ppeden@pedenlawfirm.com

James A. Holmes
Texas Bar No. 00784290
THE LAW OFFICE OF JAMES HOLMES, P.C.
635 South Main, Suite 203
Henderson, Texas 75654
903.657.2800 / 903.657.2855 (Fax)


ATTORNEYS FOR PLAINTIFF

**CERTIFICATE OF SERVICE**

    This is to certify that on this 31st day of December, 2009, a true and correct copy of the foregoing document was served electronically via the Court's CM/ECF system upon:

| | |
|---|---|
| Richard E. Griffin | Attorneys for Defendant Cisco Systems, Inc. |
| Charles Babcock | |
| Crystal Parker | |
| Kurt Schwarz | |
| JACKSON WALKER, LLP | |
| 1401 McKinney | |
| Suite 1900 | |
| Houston, Texas 77010 | |

_____
Nicholas H. Patton