IN THE UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF ARKANSAS
TEXARKANA DIVISION

| | | |
|---|---|---|
| JOHN WARD, JR. | § § § | |
| Plaintiff | § § | C.A. NO. 4:08cv4022 |
| v. | § § | JURY TRIAL DEMANDED |
| CISCO SYSTEMS, INC. | § § § | |
| Defendant | § | |

# PLAINTIFF WARD'S REPLY IN SUPPORT OF HIS MOTION FOR PROTECTION FROM DEFENDANT CISCO SYSTEMS, INC.'S THIRD REQUEST FOR PRODUCTION AND "THIRD" REQUEST FOR ADMISSIONS


**TABLE OF CONTENTS**

**Page(s)**

I.    Introduction ................................................................................................................. 1

II.   Argument .................................................................................................................... 2

      A.    Protection Is Necessary To Prevent Imposing An Undue
            Burden On Ward From Cisco's Insistence On Pursuing
            Discovery Contrary to Prior Court Orders ................................................... 3

      B.    There Is Good Cause For Protection From Cisco's Abusive
            Attempts to Discover Privileged Information That is Irrelevant
            and Based on Unsupported Allegations ....................................................... 8

      C.    Because Cisco's Admissions Requests And Document
            Requests Are Unreasonably Cumulative of Prior Discovery,
            Good Cause Exists for a Protective Order ................................................. 11

      D.    Cisco Fails to Refute That Several of Its Production Requests
            Are Unjustifiably Irrelevant and Overbroad, Thereby Presenting
            an Undue Burden ........................................................................................ 12

III.  Conclusion ................................................................................................................ 14

# TABLE OF AUTHORITIES

**Cases**                                                              **Page(s)**

*Batiste-Davis v. Lincare, Inc.*,
    526 F.3d 377 (8th Cir. 2007) ................................................................. 6

*Buckeye Union Ins. Co. v. McGraw*,
    413 N.E.2d 864 (Ohio Mun., 1980) ......................................................... 10

*Cleveland Trust Co. v. Willis*,
    485 N.E.2d 1052 (Ohio, 1985) ................................................................. 10

*Continental Ill. Nat. Bank & Trust Co. of Chicago v. Caton,*
    136 F.R.D. 682 (D. Kan. 1991) .................................................................. 6

*Kozloyski v. Sears, Roebuck & Co.*,
    73 F.R.D. 73 (D.Mass. 1976) ..................................................................... 2

*Schoffstall v. Henderson*,
    223 F.3d 818 (8th Cir. 2000) ................................................................. 6

## OTHER AUTHORITIES

Fed. R. Civ. P. 26(c)(1) ........................................................................... 10

Fed. R. Civ. P. 26 (b)(2)(c)(i) ................................................................. 10

Fed. R. Civ. P. 36 ................................................................................... 10

TO THE HONORABLE DISTRICT COURT JUDGE:

Comes now, Plaintiff John Ward, Jr., ("Ward") and files this reply to Cisco's response to Ward's Motion for Protection from Defendant Cisco Systems Inc.'s ("Cisco") Third Request for Production and "Third" Request for Admissions.[1]

## I.  INTRODUCTION

With its Response, Cisco demonstrates the merit of Ward's motion for protection. Cisco's Response categorically illustrates its misunderstanding of this Court's discovery orders and its misunderstanding of the issues in this case. For example, Cisco earlier propounded a document request seeking the identity of Ward's clients. Taking up this request, the Court found that: "[Ward] is not seeking damages for lost income. Further, **plaintiff shall not be required to produce *any documents* relating to new matters or clients** since October 16, 2007." Dkt. No. 138 (Order) at 2 (emphasis added). In its present document requests, Cisco seeks documents showing the number of Ward's new clients for 2005 through 2009. This request explicitly asks for "documents relating to new matters or clients," discovery this Court denied because lost profits are not an issue in the case. Cisco justifies the new request, crafted after its earlier discovery request was denied, stating that the request is "specifically tailored to avoid Plaintiff's complaint that [Cisco's earlier request] called for privileged information…" Response at 9. Cisco ignores that the earlier request, as well as its present request, ask for documents unrelated to any issue in this case. The Court has already ruled as much. Cisco instead proceeds as if the Court had never taken up this discovery issue, exemplifying why Ward must seek an end to Cisco's unreasonable and duplicitous discovery demands.

Apart from outright ignoring the scope of its earlier requests and this Court's orders on the issues in the case, Cisco attempts to justify its more inflammatory requests with baseless accusations. For example, justifying its quest for information about when Ward consulted attorneys, which attorneys, and when representation began, Cisco charges that such discovery is

---

[1] Though Cisco titled its Request for Admission as its "Third" set, it earlier propounded three sets of Requests for Admission making its November 5, 2009 set its fourth. To avoid confusion, it will be addressed in this motion as Cisco's "Third" set of Requests for Admission.

1

probative of "Plaintiff's discovery abuses." Response at 14, 15. Though Ward asked Cisco to explain the factual basis for its repeated allegations of discovery abuse, Cisco provided none and sets forth no basis in its Response. Yet Cisco presses forward, seeking "[A]ll documents demonstrating when **Nick Patton [and Patricia Peden] first began giving legal advice or participating in work product to or on behalf of Eric Albritton** in the Eric Albritton v. Cisco lawsuit in the Eastern District of Texas…." Request Nos. 32 and 33 (emphasis added). Cisco's attempt to justify its discovery as probative of its "entitlement to attorneys' fees pursuant to Ark. Code § 16-63-506(a)(2)" is at the very least misplaced as, should Cisco prevail, it could recover *its* attorney's fees, not fees for Ward's attorneys let alone fees for Eric Albritton's attorneys. Thus, as Ward set forth in his motion, Cisco wants discovery of privileged information, irrelevant to any issue in the case, with the purpose of harassing Ward as it pursues baseless allegations.

Responding to unreasonably cumulative discovery requests imposes an undue burden. Responding to discovery requests aimed at discovery of subjects that this Court has already found are not at issue is unduly burdensome. Responding to requests for admission, where a party has already answered a cumulative question either in response to a prior admission request or in deposition, creates an undue burden. As set forth in detail in Ward's moving papers, Cisco's third sets of discovery requests are contrary to orders governing this case, are abusive and harassing, are irrelevant to issues in this case, are unreasonably cumulative, and for all these reasons impose an undue burden on Ward. Cisco's Response reinforces Ward's arguments and further demonstrates that there is good cause for the protection Ward seeks.

## II.   ARGUMENT

In his moving papers, Ward addressed each discovery request at issue and explained why there was good cause for a protective order. He does not argue simply that responding to the requests would be costly or time-consuming. *Kozloyski v. Sears, Roebuck & Co.,* 73 F.R.D. 73, 76 (D.Mass. 1976). Instead, in detail, Ward sets out how the requests are irrelevant, not reasonably calculated to lead to the discovery of admissible evidence, or unduly burdensome.

2

*Continental Ill. Nat. Bank & Trust Co. of Chicago v. Caton,* 136 F.R.D. 682, 684-5 (D. Kan. 1991). Without repeating the arguments in his motion, Ward addresses the misrepresentations and baseless arguments Cisco makes in its Response.[2]

### A. Protection Is Necessary To Prevent Imposing An Undue Burden On Ward From Cisco's Insistence On Pursuing Discovery Contrary to Prior Court Orders

Cisco makes the same failed argument in defense of its third discovery requests that it made to this Court when moving for reconsideration of Judge Setser's November 5, 2009 discovery Order — that the documents it seeks are relevant and therefore discoverable. Response at 2; *see* Dkt. No. 164 at 3. Unsurprisingly, Cisco makes this argument to defend pursuing discovery of the same issues that it earlier sought and was denied. Chief among those issues, Cisco's continued pursuit of lost profit damages. Cisco admits lost profits underlie its current discovery requests, using its adopted code of "professional reputation" damages: "Plaintiff insists he can make unsupported damage claims such as claiming that the articles harmed his professional reputation, yet avoid all discovery concerning his professional reputation." Response at 4-5 (emphasis added). But the Court has already dealt with Cisco's request for "professional reputation" discovery, discussing this with the parties in detail during its November 4, 2009 hearing on Cisco's Motion to Compel. Dkt. No. 162 at 2-3 (Order Denying Motion For Reconsideration)(discussing "professional reputation" damages).

In its latest round of discovery requests, Cisco again asks for discovery of lost profits. Cisco wants to know the number of cases Ward filed in 2005-2009, the number of his new clients and new matters from 2005-2009, and the number of times certain third parties have referred business to him. Request Nos. 5-7 and 20. As set forth in Ward's moving papers, and in Exhibit B thereto, these requests are cumulative of earlier requests Cisco propounded and upon which the Court ruled. Motion, Exh. B.[3] These requests target lost profit damages, an

---

[2] Cisco states that Ward "failed to file any responses or objections" to its third sets of discovery. This is untrue. On December 8, 2009, Ward filed responses to three of Cisco's production requests. Exh. A.

[3] In its Response, Cisco repeatedly attempts to fault Ward for identifying cumulative discovery in pleadings that address earlier document requests rather than the individual document requests themselves. Response at 9-10. This is perplexing as each of the pleadings — the briefing on Cisco's earlier Motion to Compel documents — sets forth

3

issue targeted by Cisco's earlier requests and on which discovery was denied by this Court.

Defending its current requests, specifically for discovery of the number of Ward's new clients and new matters from 2005-2009, Cisco accuses Ward of "misleadingly implying that there has been a prior ruling on this issue. There has not. The Magistrate's ruling referenced by Plaintiff concerned *identifying the clients, not the number of clients*." Response at 9 (emphasis added). Cisco's statement is at odds with the facts.

Taking up Cisco's earlier request for the identification of Ward's clients, the Court found that: "[Ward] is not seeking damages for lost income. Further, **plaintiff shall not be required to produce *any documents* relating to new matters or clients**…" Dkt. No. 138 (Order) at 2 (emphasis added). The Court did not merely deny discovery of Ward's clients' identities, the Court denied discovery of *any documents* relating to Ward's clients. Despite this Order, Cisco is before the Court again, asking for documents relating to Ward's matters and clients, this time asking for the number of clients Ward had every year for five years instead of those clients' identities. This Court's prior Order, however, extends not just to discovery of Ward's clients' identities but to **any** documents relating to Ward's clients, particularly because the discovery is for the same non-issue in this case — lost profit damages. How Cisco cannot read this Court's prior Order as reaching its current requests is baffling. Cisco's new requests are clearly an attempt to subvert the Court's ruling on this issue.

If there could be any doubt that lost profit damages are not at issue, taking up one of Cisco's two motions for reconsideration of that very discovery Order, this Court stated that "plaintiff's counsel represented to the undersigned that plaintiff was not seeking damages for *lost profits* arising out of the injury to his reputation." Dkt. No. 162 at 3 (emphasis supplied). In the face of these Orders, Cisco presses forward unwilling to follow this Court's Orders and unwilling to accept that lost profits are not an issue in this case and therefore it cannot pursue

---

the multiple prior requests for which the present requests are cumulative, identifying the issues on which discovery was sought and highlighting where Cisco's earlier and present requests address the same issue. Ward's identification of Cisco's prior discovery in the briefing on Cisco's discovery motion was the most efficient way to present the issue to the Court. Further, most of the pleading excerpts found in Exhibit B to Plaintiff's Motion list the discovery requests asserted therein.

4

related discovery. Cisco instead proceeds as if the Court had never taken up the discovery issues, exemplifying why Ward must seek the Court's assistance in ending Cisco's baseless discovery.

Cisco apparently wants to confine the Court's rulings as reaching only the specific requests, with specific words, but not have those rulings extend to the larger issues also addressed in the Court's Orders. Clearly, this Court has ruled on discovery of lost profit damages. Cisco should not be able to circumvent the Court's ruling merely by rewording its requests and re-serving them, attempting to open the issue anew. Ward has identified the other requests targeting discovery of issues which this Court has already taken up and ruled. He should be granted protection from these requests as — having litigated these issues and followed the Court's Orders — engaging in further discussions on discovery of these issues imposes an undue burden.

Cisco disingenuously suggests that it would have taken seriously Ward's claims that its third sets of discovery contained requests cumulative of earlier requests. Response at 10. But even after Ward filed his motion, Cisco refuses to withdraw its cumulative requests. The day after Ward filed his motion, Cisco asked if Ward had any documents not previously produced that would be responsive to request nos. 17 and 22 in its third set of production requests; Cisco stated that if there were not, it would withdraw the requests. Exh. B. In an effort to streamline the requests raised in his motion, Ward responded that, subject to the production limitations Judge Setser imposed on this discovery issue, there were no additional documents. Exh. B. Despite this, Cisco did not withdraw its requests but rather presses forward on them in its motion. Response at 10.[4] Cisco obviously does so hoping to avoid the restrictions on discovery imposed by this Court's previous Order. Cisco's motive is clear — it was denied discovery it wanted and so, despite a Court Order, it will continue to pursue that same discovery.

---

[4] Cisco never responded to Ward's counsel's requests for confirmation that request nos. 17 and 22 were withdrawn. In footnote 1 of its response, Cisco states that it "has withdrawn Nos. 19 and 22". Response at 12. But Cisco's statement is at the least confusing because Ward responded to request no. 19 and because request no. 22, as is true for request 17, are addressed in Cisco's Response and therefore apparently remain contested. Response at 10.

Cisco similarly circumvents this Court's prior Order with regard to discovery of Ward's medical records, pressing for communications with a doctor in its latest round of requests. Cisco, in its earlier motion to compel, sought authorization to discover all of Ward's medical records. Dkt. No. 101 at 12. But this request was denied in part because the Court found that Ward did not seek medical treatment: "[P]laintiff shall not be required to produce a medical authorization for his medical records, as plaintiff concedes that he did not seek medical treatment for his alleged mental anguish." Dkt. No. 138 (Order), 2. Now, Cisco presses for medical records from a doctor Ward spoke with: "Produce all documents relating to communication with Brian Mendenhall [a doctor] regarding the Patent Troll Tracker, the ESN v. Cisco lawsuit or the Second ESN v. Cisco lawsuit, your emotional distress or mental anguish, and your alleged sleeping problems from 2006 to the present." Request No. 8. Cisco defends its request stating that "not a single one of these requests seeks medical records". Response at 10, emphasis omitted. And Cisco defends this request stating that it only wants the communications because Ward described Mendenhall as a "good friend." Response at 11. But Cisco cannot get around that this request is merely a subset of Cisco's earlier request, and strikes at the same issue — Ward's medical records.

Cisco's true motive is revealed by its cited authority. Stating that Ward "refused to produce any records that would show that his alleged sleeping problems predated the articles" (which the Court denied production of because Ward already testified to this fact), Cisco claims it needs such discovery for impeachment. Response at 5. Cisco then cites *Batiste-Davis v. Lincare, Inc.,* where a plaintiff denied seeking ongoing medical treatment and defendant was allowed to impeach her with contrary evidence in her medical records. 526 F.3d 377, 381 (8th Cir. 2007). But here, Ward testified that he had sleepless nights both before and after publication of the accused articles. Exh. C (8/10/09 Ward Depo. Tr. 18:6-19). The Court considered this when it denied Cisco discovery of Ward's medical records. Dkt. No. 138 (Order), 2. Cisco also cites *Schoffstall v. Henderson*, where plaintiff's full medical release was ordered in a sexual discrimination case. 223 F.3d 818, 822-23 (8th Cir. 2000). But Cisco's request for Ward's full

6

medical release has already come before this Court for consideration and was denied. Dkt. No. 138 (Order), 2. Cisco's two bids for reconsideration of that decision were also denied. Now, as Cisco's persistence in the face of those orders has escalated to harassment, Ward should be granted protection from Cisco's fourth attempt at gaining discovery of his medical records.

Accordingly, to prevent Cisco's attempt at subverting this Court's Orders and impose an undue burden on Ward by requiring him to respond to discovery requests governed by those Orders, good cause exists for a protective order from Cisco's document requests nos. 5-8, 20, and 29.

### B. There Is Good Cause For Protection From Cisco's Abusive Attempts to Discover Privileged Information That is Irrelevant and Based on Unsupported Allegations

Cisco wants discovery of "all" attorneys Ward "consulted or retained" and of "all" the attorneys ESN, a non-party whom Ward represents in separate litigation in which Cisco is the defendant, "consulted or retained." Request Nos. 12-13. In addition, Cisco wants "**all documents** demonstrating when **Nick Patton [and Patricia Peden] first began giving legal advice or participating in work product to or on behalf of Eric Albritton**" in the Eric Albritton v. Cisco lawsuit in the Eastern District of Texas… Request Nos. 33 and 32. And Cisco wants "all documents demonstrating **when James Holmes first began giving legal advice or participating in work product to or on behalf of John Ward, Jr.** in this lawsuit." Request No. 31. Cisco also wants documents reflecting communications between Ward's attorneys: "Produce **all communications between Patricia Peden and/or Nick Patton and James Holmes** regarding the production of privileged documents in the Albritton v. Cisco case." Request No. 34.[5] And Cisco argues that its requests — directly asking for communications between Ward and his attorneys and among his attorneys regarding issues in this case and during the course of this litigation — do not raise privilege issues. Response at 14-15. Cisco's position is incredible.

---

[5] Cisco appears to have omitted Request No. 34 from its Response, apparently determining the request was indefensible. Cisco has not, however, withdrawn this request.

Ignoring the language of its requests, Cisco justifies them arguing they are "aimed at addressing Plaintiff's privilege claims, and simply ask for documents showing attorneys who Ward has consulted or retained in this case and when each attorney was consulted… also designed to seek *discovery of Plaintiff's discovery abuses* in this case." Response at 14, emphasis added. The "privilege claims" Cisco refers to are nowhere explained in its brief, and it is doubtful that this refers to any actual issue in this case. Cisco's allegations of "Plaintiff's discovery abuses" are also puzzling — so much so that Ward asked Cisco what facts support the allegation. Exh. D. Cisco has proffered none. Exh. E.[6] And Cisco, in its Response, does not even address the propriety of trying to discover the attorneys ESN, its present litigation opponent in a separate lawsuit, have consulted with (request nos. 10-11, 23-24).[7]

Nor does Cisco explain why it needs discovery of Eric Albritton's attorneys, a non-party here (request nos. 32-33). Cisco also fails to address why it presses Ward for this discovery instead of ESN or Albritton, who presumably control the requested documents as the requests are for documents reflecting ESN's and Albritton's counsel.

In a last ditch effort to justify this discovery, Cisco argues that it "needs to know who Ward's attorneys are to address his privilege claims" and that the requests are "relevant to Defendants' claim for attorneys' fees under the SLAPP statute." Response at 14-15 discussing requests nos. 12-13, 24, and 31-33.[8] But Ward's attorneys have entered notices of appearance, which are publicly available, and answer Cisco's question about "who Ward's attorneys are."

---

[6] Responding to Ward's request for the factual basis underlying Cisco's accusations of discovery abuse, Cisco filed a revised response brief the day after it filed its initial response brief, the second brief omitting certain statements regarding Ward's counsel. *See* Dkt. Nos. 175 and 176. Cisco did not, however, withdraw its first response brief, Dkt. No. 175, which remains on the docket absent any indication that it was withdrawn or that a revised response brief was filed. Understanding from Cisco's counsel that the second-filed response brief is the brief setting forth Cisco's arguments, Ward replies to that brief.

[7] Cisco argues that its requests do not call for privileged information "because Ward's attorneys in this case are not attorneys in the *ESN v. Cisco* lawsuit." Response at 14, emphasis omitted. But Cisco fails to acknowledge the breadth of its request, which literally call for all communications ranging from scheduling conflicts to the identification of persons with knowledge regarding the filing of ESN's complaint, encompasses privileged information and work product.

[8] Cisco admits that it is trying to have it both ways, contesting the application of Arkansas law to this case, but pursuing an Arkansas statutory defense and related discovery. Response at 15 fn. 3.

Regardless, who Ward's attorneys are has no bearing on any attorney's fees Cisco could be awarded under the SLAPP statute. Under the statue, Cisco could be awarded *its* attorneys fees, not those incurred by Ward's attorneys. Cisco even submitted an expert report on the subject, wherein Cisco's expert, Robert L. Jones, III, opines as to a reasonable hourly attorney rate based on the CVs of Chip Babcock and Richard L. Griffin, *Cisco's* attorneys. Exh. F. at 1 (Jones expert report). Cisco's expert does not consider the CVs or hourly rates of Ward's attorneys. *Id.* Cisco's claims that it needs discovery of who Ward consulted with and when are in no way justified by pointing to the SLAPP statue's attorney fees provisions. As Cisco justifies its request nos. 10, 11, and 23 on the same grounds, that the requests are aimed at "seek[ing] evidence concerning Plaintiff's discovery abuses" and are "probative of Cisco's entitlement to attorney's fees", these requests are improper. Response at 14. Accordingly, Cisco's document requests aiming to gain access to voluminous and privileged information are not only abusive and harassing but unrelated to any issue in this case so that the discovery is wholly irrelevant.

Cisco's claim that it did not ask for "'all documents' but rather only the documents sufficient to show" is untrue. Response at 15; *see also* Response at 13 ("[Request No. 7 was] specifically drafted so [it] did not seek 'all' documents ***so as not to be burdensome***")(emphasis supplied). Cisco requested "all documents showing", request nos. 7, 12-13, and "all documents demonstrating," request nos. 31-33, and "all communications", request no. 34. Indeed, as Cisco apparently concedes, because it repeatedly requested "all" documents its requests are overly burdensome. Cisco's repeated offer to "agree" that "any privileged portions of the responsive documents may be redacted, so long as the documents are sufficient to show the date when [each attorney] first began giving legal advice…" is hardly redeeming. Response at 15; *see also* Response at 13-14 ("Defendant agrees that [privileged information] may be redacted"). As Ward explained in his motion, the volume of documents Cisco literally asks for and the line-by-line redaction Cisco requests of those documents would unduly burden Ward, driving up his costs, and risking privilege and/or work product waiver if any sensitive material in the vast number of documents requested was inadvertently not redacted.

9

Responding to Cisco's requests which are on their face improper presents an undue burden. Good cause exists for protection from responding to document request nos. 10-13, 23-24, and 31-34.

### C. Because Cisco's Admissions Requests And Document Requests Are Unreasonably Cumulative of Prior Discovery, Good Cause Exists for a Protective Order

Ward's moving papers detail the repetitive nature of Cisco's current discovery. Missing the issue, Cisco states that when requests are cumulative, that that "is not even a grounds for a protective order under Fed. R. Civ. P. 26(c)(1)." Response at 9. Cisco ignores Fed. R. Civ. P. 26(b)(2)(c)(i), cited in Ward's motion, which states that the Court must limit discovery where it is "unreasonably cumulative or duplicative."

Cisco defends its admissions requests claiming relevance. Response at 6-8. That is not the issue. As set forth in detail in the moving papers, the issue is that Cisco's latest round of admissions requests are unreasonably cumulative of prior requests and deposition testimony. Ignoring the issue, Cisco attempts to cast Ward's concerns with the requests as based solely on Cisco's failure to raise them at his deposition and failure to earlier raise them. Response at 1. Accordingly, Cisco tries to wholly sidestep the unreasonably repetitive nature of the requests, preferring instead to have Ward spend time and effort to again address topics previously addressed. Cisco's earlier discovery on the topics of the requested RFAs are set forth in Exhibit A to Ward's motion.

Cisco then asks the Court to deem the requests admitted, citing Fed. R. Civ. P. 36. Response at 8. But case law demonstrates that, where a party moves for a protective order from discovery, the requests are not deemed admitted during the pendency of that motion. *See Buckeye Union Ins. Co. v. McGraw,* 413 N.E.2d 864 (Ohio Mun., 1980); *Cleveland Trust Co. v. Willis*, 485 N.E.2d 1052, 1053-54 (Ohio, 1985). Indeed, there would be little point in moving for protection if, instead of resolution of the motion, the moving party were required to also respond to the abusive discovery from which it seeks relief. Therefore, Cisco's admissions requests should not be deemed admitted.

Similar to Cisco's RFAs, Ward in his moving papers and accompanying Exhibit B demonstrates the unreasonably cumulative nature of request nos. 1-3, 9, 17, 21-22, and 26-27. Cisco insinuates that Ward is trying to hide something by moving for protection from these requests. Response at 11. Hardly. Ward's issue is that these request raise the same issues that were raised in prior requests, are unreasonably cumulative, and were already briefed to the Court. Therefore, continuing to engage in discovery over these requests is unduly burdensome.

### D. Cisco Fails to Refute That Several of Its Production Requests Are Unjustifiably Irrelevant and Overbroad, Thereby Presenting an Undue Burden

In his Moving papers, Ward challenged Cisco's document requests nos. 4, 14-16, 25-27, and 30 as egregiously irrelevant and overbroad. Cisco does not refute this in its Response, instead attempting to shift focus to whether responding to the requests would be unduly burdensome.

For example, defending its request no. 15, Cisco argues that the request is relevant to the case for two reasons. First, Cisco argues that the request "relates to Defendant's suspicion that ESN is using this lawsuit to improperly gain discovery for the ESN v. Cisco case." Response at 15. Again raising its baseless accusation of "discovery abuse," Cisco attempts to create a ruse in an effort to pursue irrelevant discovery and to harass Ward. Its efforts should be denied, and Ward should be granted protection from all of the requests Cisco says are based on this theory. Second, Cisco argues that the request "relates to whether Plaintiff's witnesses have a financial stake in the case…" Response at 15. But Cisco already knows the answer to this. Ward responded to Cisco's document request no. 19, which directly asked for this information: Produce all documents sufficient to identify any amounts paid and agreements to pay any amounts to any witnesses in this litigation. Ward responded that, apart from his experts, he was not paying any witnesses in this litigation. Exh. A and Exh. G. Rather than admit it needs no further discovery on the issue, Cisco presses on seeking discovery for which it fails to ascribe any relevance.

11

Request no. 4, which Cisco claims is "narrowly tailored" requests "*all documents* relating to your request to any court for an award of attorneys' fees from October 17, 2007 to the present, *including all expert reports, affidavits, and transcripts* regarding an award of attorneys fees." Response at 16. Producing the entire scope of requested documents for even one claim for attorneys fees would encompass literally an entire case file.  Further, as Cisco knows, ESN has asked for attorneys fees in its case against Cisco and Ward represents ESN.  It appears Cisco is trying to gain access to ESN's litigation files by this request.  Cisco states that the request is aimed at discovery of Ward's reputation because "[i]n the course of arguing for attorneys' fees, attorneys discuss matters such as their reputation…"  Response at 16.  Surely, considering the request and Cisco's purported rational, the burden of producing an entire case file for even one case in which Ward has sought attorneys' fees in the last two years outweighs any conceivable benefit of finding evidence concerning Ward's reputation therein.  Cisco again seems to be using its discovery in this case to inform itself about ESN, asking for information relating to ESN in request nos. 14, 16, 25-27.

Because Cisco presents no more than conclusory justifications for its overbroad and irrelevant discovery requests, and because these requests are designed to, in conjunction with the remaining requests in its third sets of discovery, impose on Ward an undue burden in responding, Ward should be granted protection.

### III.  CONCLUSION

For all of the forgoing reasons, Plaintiff Ward respectfully requests that his motion in all things be GRANTED, and that this Court forbid the discovery sought by Cisco in its Third Request for Production (excluding request nos. 18-19 and 28) and "Third" Request for Admissions.

Respectfully Submitted,

*Nicholas H. Patton*

Nicholas H. Patton
AR Bar No. 63035
Courtney Towle
Patton, Tidwell & Schroeder, LLP
4605 Texas Boulevard
Texarkana, Texas 75503
903.792.7080 / 903.792.8233 (Fax)
Email: nickpatton@texarkanalaw.com
Email**:** ctowle@texarkanalaw.com

Patricia L. Peden
LAW OFFICE OF PATRICIA L. PEDEN
1316 67th Street
Suite 6
Emeryville, CA 94608
Telephone: 510-268-8033
Email: ppeden@pedenlawfirm.com

James A. Holmes
Texas Bar No. 00784290
THE LAW OFFICE OF JAMES HOLMES, P.C.
635 South Main, Suite 203
Henderson, Texas 75654
903.657.2800 / 903.657.2855 (Fax)


ATTORNEYS FOR PLAINTIFF

**CERTIFICATE OF SERVICE**

This is to certify that on this 4th day of January, 2010, a true and correct copy of the foregoing document was served electronically via the Court's CM/ECF system upon:

| | |
|---|---|
| Richard E. Griffin | Attorneys for Defendant Cisco Systems, Inc. |
| Charles Babcock | |
| Crystal Parker | |
| Kurt Schwarz | |
| JACKSON WALKER, LLP | |
| 1401 McKinney | |
| Suite 1900 | |
| Houston, Texas 77010 | |

_____
Nicholas H. Patton