IN THE UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF ARKANSAS
TEXARKANA DIVISION

| | | |
|---|---|---|
| JOHN WARD, JR. | § § § | |
| Plaintiff | § § | C.A. NO. 4:08cv4022 |
| v. | § § | JURY TRIAL DEMANDED |
| CISCO SYSTEMS, INC. | § § § | |
| Defendant | § | |

**PLAINTIFF WARD'S REPLY IN SUPPORT OF HIS MOTION TO COMPEL
DEFENDANT'S RESPONSE TO PLAINTIFF'S SECOND SET OF REQUESTS FOR
PRODUCTION AND BRIEF IN SUPPORT**

Dockets.Justia.com

## **TABLE OF CONTENTS**

**Page(s)**

I.   Introduction ................................................................................................................. 1

II.  Argument .................................................................................................................... 2

    A.  Documents Concerning Cisco's Investigation Into The
        Facts Surrounding The Accused Posts ............................................................ 2

    B.  Documents Concerning The Disclosure Of
        The Fact That Frenkel Was A Cisco Employee ............................................. 4

    C.  Cisco's Participation In The Creation, Content, and
        Publication Of Other Troll Tracker Blog Posts .............................................. 6

    D.  Dissemination of the Accused Posts And The Accusations
        Contained In Those Posts ................................................................................ 9

    E.  Documents From Cisco Employees Concerning The Facts
        Underlying the Above-Captioned Lawsuit .................................................. 12

    F.  Documents Concerning The Eastern District of Texas ................................. 12

III. Conclusion ............................................................................................................... 13

# TABLE OF AUTHORITIES

**Cases**                                                                            **Page(s)**

*Chapman v. Journal Concepts, Inc.,*
    No. 07-00002 JMS/LEK, 2009 WL 1561567, (D. Haw. June 3, 2009) ...............................7

*Dun & Bradstreet, Inc v. Greenmoss Builders, Inc.,*
    472 U.S. 749 (1985)................................................................................................................12

*In re Grand Jury Subpoena Duces Tecum,*
    112 F.3d 910 (8th Cir. 1997) .......................................................................................3, 5

*Pittman v. Frazer,*
    129 F.3d 983 (8th Cir. 1997) .........................................................................................3

*Rabushka v. Crane Co.,*
    122 F.3d 559 (8th Cir.1997), cert. denied, 523 U.S. 1040 (1998) ...................................3,5

*State v. Carpenter,*
    171 P.3d 41 (Alaska 2007)...............................................................................................7

*Tavoulareas v. Piro,*
    93 F.R.D. 35 (D.D.C. 1981)..............................................................................................7

TO THE HONORABLE DISTRICT COURT JUDGE:

Comes now, Plaintiff John Ward, Jr., ("Ward") and files this Reply to Cisco's Response to Ward's Motion to Compel Defendant's Response to Plaintiff's Second Set of Requests for Production and Brief in Support.

## I.   INTRODUCTION

In its Response, Cisco claims that Ward asks it to turn over its privileged documents even though the Court reviewed those document *in camera* and denied Ward discovery of those documents. Not only does Cisco misstate this Court's prior Order, but Cisco also mistakenly tries to cast that Order as governing the discovery sought in Ward's current motion. First, earlier motion was granted. Finding Cisco waived privilege when responding to Ward's interrogatories, the Court ordered discovery of communications former Cisco-employee Rick Frenkel received prior to posting the last of the accused blog entries. Dkt. No. 89 at 3-4. Second, that Order dealt with a waiver issue distinct from the issues Plantiff now raises to the Court. That Cisco earlier waived privilege and work product protection regarding documents responsive to one issue does not preclude Ward from seeking discovery of other issues where Cisco claims the responsive documents are either privileged or protected by the work product doctrine.

In his present motion, Ward's moves on requests that seek relevant documents or that may lead to the discovery of relevant and admissible evidence. Ward demonstrated this in his opening brief. Nothing more is required for discovery. The burden then shifted to Cisco to justify to this Court why discovery cannot be had. Each of Cisco's proffered excuses for refusing to produce the relevant evidence is meritless. Ward's motion was narrowly tailored to obtain those documents he believes are most relevant and important to his case. Indeed, rather than move on every document request on which Cisco has refused discovery — though the requested discovery is relevant and important to Ward's case — Ward took care to move only on his most vital discovery requests. Cisco cannot refuse to provide discovery by unilaterally deciding what is or is not relevant to Ward's case. Cisco fails to demonstrate the type of substantial burden necessary to escape its discovery obligations. There is no excuse for refusing

1

to produce the requested documents, which Ward first asked for on January 16, 2009, nearly a year ago. Ward has explained to Cisco, repeatedly, over the last several months during the course of extensive meet and confer (spanning days) why it must provide the requested discovery. Cisco continues to refuse. The Court should now order Cisco to comply with its discovery obligations.

II.     Argument

    *A. Documents Concerning Cisco's Investigation Into The Facts Surrounding The Accused Posts*

Ward's motion explained why the documents he seeks are relevant and/or likely to lead to the discovery of relevant evidence. *See* Mot. at 2.

In response, Cisco does not dispute that the documents are relevant. Instead, Cisco makes a contradictory argument that undermines its cause. First, Cisco argues that Plaintiff doesn't need the documents because there are no responsive documents. *See* Response at 4 ("because there was no reprimand of any employee, there are no responsive documents."). Then, Cisco argues that it does have responsive documents but it is withholding those documents under a claim of privilege. *See* Response at 6, n. 2 (arguing that Cisco's investigation was undertaken in connection with this lawsuit and are therefore privileged.). Cisco's Response takes Plaintiff to task for "wasting the Court's time" with his motion, but given Cisco's double talk on this issue, absent Court intervention, Ward will never know what responsive documents Cisco has and whether they are being withheld.

Cisco's first argument is that Plaintiff doesn't need Cisco's documents because Cisco told Plaintiff that no employee was disciplined. *See* Response at 2. With all due respect, the Federal Rules do not require a party to accept opposing counsel's representation of facts in lieu of discovery. Plaintiff is entitled to documents to investigate for himself whether any Cisco employee was disciplined, chastised or admonished as defined by Plaintiff, not by Cisco. Moreover, the documents will show the reason why disciplinary action did or did not occur, information that is probative of Cisco's involvement with the accused posts (Cisco denies it was

2

involved at all) because the documents are likely to show that Cisco believed that it could not reprimand Frenkel given the participation by other Cisco employees, including its Vice President, Mallun Yen, in the defamatory posts. Ward is entitled to discover those documents to decide for himself what benefit they have to his case.

Cisco's remaining argument against production is privilege. Here, Cisco bears the burden of proving its privilege. *In re Grand Jury Subpoena Duces Tecum,* 112 F.3d 910, 925 (8th Cir. 1997); *Rabushka v. Crane Co.,* 122 F.3d 559, 565 (8th Cir.1997), cert. denied, 523 U.S. 1040 (1998). Cisco has not identified the alleged "privileged" documents, has not provided a declaration in support of his privilege claims, and has made no effort to show that the documents it is withholding qualify for privilege. Cisco's citation to case authority concerning privilege is worthless here where it has made no showing of privilege upon which this Court could evaluate whether the case law applied. Neither the Court nor Plaintiff can identify what documents are responsive and being withheld, and on what basis. For that reason alone, Cisco's motion should be denied.

Even if Cisco had met its initial burden of proving its privilege claim—and it hasn't—its argument would still fail. First, Cisco' claim of work product protection is overcome because Ward clearly has a substantial need for the documents concerning Cisco's investigation. *Pittman v. Frazer,* 129 F.3d 983, 988 (8th Cir. 1997) (citations omitted). Cisco's testimony at the Albritton trial demonstrates its intent to try to convince this jury that Cisco acted in good faith by investigating the Troll Tracker Blog. Plaintiff cannot prepare to rebut Cisco's argument when he has no access to documents concerning Cisco's investigation. That is the epitome of substantial need. *Id.*

Moreover, even if Cisco had a privilege to assert, Cisco waived privilege when it affirmatively disclosed its investigation during public testimony in the Albritton trial. Cisco would have this Court believe that it can lift the privilege veil far enough to expose the testimony that helps Cisco (Frenkel testifying that Cisco acted with the best intentions and in good faith in investigating the Troll Tracker Posts) but foreclose Ward from responding to that argument

3

because Cisco is withholding documents from which to test its assertions. That is exactly the kind of sword and shield use of privilege that Cisco has employed in this case from the beginning, and that this Court has rightly refused to condone.

That Cisco wants to portray the positive features of its investigation without giving Plaintiff access to counter evidence is evident from Frenkel's testimony at the Albritton trial, cited in Plaintiff's Motion. Exh. A. It is also apparent from Cisco's Response wherein Cisco tells this Court that "Cisco has made clear that it was not happy about Frenkel's reference to the Eastern District of Texas as the Banana Republic of East Texas' when it discovered the statement as a result of this lawsuit." Response at 19-20. That is the kind of argument that Cisco hopes to make to the jury in this case: Cisco did not like the conduct and took appropriate actions, including chastising Frenkel. At the same time, Cisco refuses to tell Plaintiff what it did and why.

Cisco can't have it both ways. If it intends to offer testimony at trial that Cisco investigated the posts, then it must turn over the documents concerning its investigation. Plaintiff respectfully submits that Cisco must either produce the requested documents or this Court should rule that Cisco cannot present any testimony, evidence, or attorney argument at trial about its investigation.

### B. Documents Concerning The Disclosure Of The Fact That Frenkel Was A Cisco Employee

Ward's motion demonstrated why the documents he seeks are relevant. Cisco's Response makes two arguments that are easily dismissed.

First, Cisco argues that the documents are not relevant because "<u>there is no evidence that any Cisco employee other than Frenkel was even aware of the content of the articles at issue in this lawsuit prior to Frenkel's unmasking, and therefore any concerns could not have related to Plaintiff's claims</u>." Response at 9 (emphasis in original).

Cisco must be litigating a different case. Frenkel unmasked himself on February 23, 2008. *See* Exh. B (Frenkel's Troll Tracker Post). One of the articles at issue was written (at

4

Cisco's urging) on October 18, 2007—five months before Frenkel publically revealed he was the Troll Tracker. On the same day it was written, Frenkel sent the October 18, 2007 article to Mallun Yen and John Noh, two Cisco employees. *See* Exh. C (Oct. 18th email string resulting in October 18th post). Noh responded that the article was "brilliant." Exh. D. It is difficult to see how Noh could comment on an article he didn't read. Yen sent a link to the document to Cisco's lobbyist in Washington D.C. Exh. E. It is also difficult to believe that Yen would bother a colleague with an article that she didn't bother to read. It is incredible that Cisco would argue to this Court that there is no evidence that any Cisco employee was "even aware of the content of the articles at issue." Response at 9.

Remarkably, even in the face of this evidence, Cisco insists that Noh and Yen didn't read the articles. It's Cisco's story and they can tell it to the jury as they see fit, but they cannot use their argument to deprive Plaintiff of relevant discovery. Plaintiff is not required to take Cisco's versions of the facts as true, particularly when, as here, they are patently ridiculous. Cisco's insistence that this Court should deny Plaintiff discovery based on Cisco's argument of the facts is baseless. Even if Plaintiff had "no evidence" as Cisco farcically insists, its circular reasoning has no place in the Federal Rules. Cisco cannot refuse to produce responsive evidence and then argue that because Plaintiff has no evidence he is not entitled to compel Cisco to produce documents. The flawed logic in Cisco's circular reasoning is apparent.

Finally, Cisco argues that this Court should protect Cisco from having to produce privileged documents. *See* Response at 10. Again, Cisco doesn't say what those documents are, doesn't identify the documents for the Court, doesn't explain its privilege objections with respect to the implicated documents, and doesn't make any attempt to prove its asserted privilege. As the party seeking to withhold discovery, Cisco was obligated to give the Court something to evaluate. *See In re Grand Jury Subpoena Duces Tecum,* 112 F.3d at 925; *Rabushka,* 122 F.3d at 565. It hasn't and its objection should be overruled.

### C. Cisco's Participation In The Creation, Content, and Publication Of Other Troll Tracker Blog Posts

Plaintiff's motion demonstrated why the documents he seeks are relevant and/or likely to lead to the discovery of admissible evidence and why they should be ordered produced. The Response does nothing to undermine Plaintiff's showing.

The Response makes three arguments: (1) Cisco has "fully complied" because it has already produced all documents concerning the accused posts; (2) Plaintiff is angry because he can't make a republication case with respect to the accused posts; (3) there is no evidence that Cisco participated in the publication of the accused posts; (4) non-accused articles are not relevant; and (5) it would be overly burdensome for Cisco to produce the requested documents. Each of Cisco's arguments can be dismissed in turn.

First, Cisco has not "fully complied" with Plaintiff's Request. To make this disingenuous argument, Cisco carefully limits each of its claims of compliance to the "article Plaintiff complains of." Response at 11. Cisco knows that the issue with respect to this category of requests is other Troll Tracker Blog posts that, while not defamatory of Plaintiff, contain critical evidence of Cisco's pattern of using the Troll Tracker to do its bidding. Thus, Cisco's claims of compliance ring hollow because they pertain to compliance that Cisco deems sufficient; not to Plaintiff's Requests. To be clear: Cisco has not produced the documents Plaintiff seeks in these Requests.

Second, Cisco argues that Plaintiff is angry because Cisco claims he cannot prove "republication." Response at 11. First, there is nothing about Plaintiff seeking relevant documents that suggests anger. More importantly, Cisco cannot seriously contend its inaccurate portrayal of Plaintiff's emotions is a valid basis to excuse responding to proper discovery requests. There is no such objection in the Federal Rules.

Third, Cisco makes the same circular argument here that it makes throughout its brief— Cisco should not have to produce documents to Plaintiff to be used as evidence in this case because he has no evidence to establish the facts for the documents he seeks. *See* Response at 11

6

("There is no evidence inconsistent with Cisco's testimony that it did not write, edit, review or distribute the complained-of-articles outside of Cisco.")  Cisco's argument misses the mark on several fronts.  Plaintiff is not required to prove his case in discovery.  He certainly need not make a showing of proof sufficient to satisfy Cisco before he is entitled to relevant documents to aid his case.  Moreover, Cisco's argument is again limited to the accused articles when the Request seeks information regarding other Troll Tracker Blogs.  Cisco fails to explain why Plaintiff must prove distribution outside of Cisco of non-accused posts in order to discover them for the issues to which they are relevant in this case—Cisco's pattern of conduct with respect to the Troll Tracker Blog.  The fact that Cisco was suggesting content and distributing other Troll Tracker posts is powerful circumstantial evidence of its conduct with respect to the accused posts.  In fact, Frenkel was acting within the course and scope of his employment at Cisco when he distributed the accused articles over the internet.  Although Plaintiff need not "prove" anything to obtain Cisco's documents, that Frenkel's blogging activities fell within the scope of his employment is more than sufficient evidence of distribution by a Cisco employee outside of Cisco.  But this detracts from Plaintiff's point, that he seeks to discover other instances in which Cisco employees suggested, encouraged, participated in, and distributed other Troll Tracker Blog posts to demonstrate that Cisco repeated this conduct with the posts that defamed Ward.  Plaintiff's discovery is legitimate, relevant, and Cisco has offered nothing of substance that justifies keeping those responsive, non-privileged documents from Plaintiff.

Fourth, Cisco makes the conclusory argument that the documents are not relevant.  The Response does not address the strong relevance argument made in Plaintiff's Motion.  Instead, Cisco cites three cases that do not support its cause.  Response at 11-12.  First, Cisco cites *Tavoulareas v. Piro,* which is specific to discovery upon a media defendant.  Response at 11, citing 93 F.R.D. 35, 42 (D.D.C. 1981).  Cisco is not a media defendant.  Next Cisco cites two cases that do not even address the propriety of pursuing relevant discovery but rather deal with the exclusion of evidence at trial.  Response at 11-12 citing *Chapman v. Journal Concepts, Inc.,* No. 07-00002 JMS/LEK, 2009 WL 1561567, *8 (D. Haw. June 3, 2009) and *State v. Carpenter,*

7

171 P.3d 41, 63-64 (Alaska 2007). Plaintiff is plainly seeking discovery; admission of trial evidence is not here at issue.

Finally, Cisco argues that it would be too burdensome for Cisco to produce the documents because Plaintiff's request seeks documents from every Cisco employee. Plaintiff does not belief the request is overly burdensome because Cisco has a complex in-house document collection system designed for large-scale litigation. Cisco can run document searches for "Troll Tracker" or for Frenkel's Troll Tracker email account and find the requested documents. But, if the Court finds that the request is overly broad, then Plaintiff is agreeable to limiting the search to the document custodians listed in Cisco's Response to Plaintiff's Interrogatory No. 1. In this case, Cisco has only searched for documents from those custodians and has never had to perform the company-wide search it tells this Court it would be required to undertake. Plaintiff has no disagreement with letting Cisco narrow its search in the same manner that it has all along. Additionally, Cisco has identified each of the Cisco employees who knew that Frenkel was the anonymous Troll Tracker before he made that information available to the public. Nor are the number of blog posts created by Frenkel an obstacle to Cisco's production. If Mallun Yen can review the posts in one day, it is difficult to see how Cisco can complain that it cannot do so with the entire resources of the ligation team at its disposal. Exh. F. (12/18/09 Michels Depo. Tr. 111:2-9; 171:24-173:7). Cisco's overly burdensome objection does not give it a basis upon which to refuse to produce any responsive documents.

Plaintiff's document request is entirely reasonable. It seeks documents that are relevant to the issues in this case or are likely to lead to relevant evidence. Nothing more is required. Cisco has not offered any valid excuse for not producing the non-privileged documents Plaintiff seeks. The fact that Cisco has protested so much over clearly relevant documents is a clear indication that they contain relevant information that should have long ago been produced.

### D. Dissemination of the Accused Posts And The Accusations Contained In Those Posts

Plaintiff's Motion demonstrated why the requested documents are relevant. The Response does not dispute relevance. The Response makes five unconvincing arguments: (1) there is no evidence that anyone other than Frenkel knew the contents of the articles; (2) any statements made by Cisco employees are not independently actionable; (3) Ms. Yen was not deposed on this issue; (4) Cisco's discussion with others about the ESN case had nothing to do with communicating the complained of statements; (5) the documents sought are privileged.

Cisco's first argument has been addressed throughout this Reply. In short, Cisco cannot simply state what it believes the evidence is and use that as a basis upon which to deny Plaintiff discovery.

Cisco's second argument is similar in form. Cisco argues that "Plaintiff cannot sue Cisco concerning its communications with legal counsel because those communications are not actionable." Response at 15. Plaintiff fails to see the point to Cisco's argument. Does Cisco believe that documents have to be capable of supporting an independent cause of action before they are discoverable? That is apparently what Cisco has argued in Response. The documents are discoverable because what Cisco's lawyers were telling people had occurred with respect to the filing of the complaint is relevant to this case. Cisco's statements to others about the core facts at issue in this case are relevant and discoverable. Any argument to the contrary is absurd.

Cisco's third argument is also misguided. Cisco suggests that the Rules require Plaintiff to ask Ms. Yen these questions at deposition before he can claim a right to production of documents. First, the Federal Rules allow litigants to use the tools of discovery independently or collectively, leaving to counsel the judgment about what evidence to obtain through which discovery device. Further, Yen testified that she did not remember several of the events key to this case. For example, Yen repeatedly claimed not to remember the facts at issue in this case: Yen Depo. Tr. at 10:2; 16:1, 7; 12:13; 22:23, 14; 27:4, 7; 29:8, 25; 32:9, 19; 33:13-16. Exh. G. This list is incomplete and captures only about a third of the instances in which Yen claimed no

9

memory. Given her forgetfulness, it would have been pointless to press her for such testimony. Yen even refuses to acknowledge she read the October 18th post though she forwarded it on. Exh. G. (Yen Depo. Tr. at 101:15-102:6).

Cisco argues that the communication at issue had nothing to do with the filing of the ESN Complaint. *See* Response at 15. Cisco is parsing words. Plaintiff is seeking to discover whether anyone at Cisco made statements or accusations about what occurred with the filing of the ESN complaint. He is seeking to discover facts conveyed by the defendant to third parties. Cisco has not asserted that none of the communications at issue concern the facts underlying this case or included in the accused articles. Again, Plaintiff is not required to accept Cisco's representations in lieu of evidence.

Cisco's only legitimate argument is privilege. But even here Cisco stretches credibility. Cisco argues that this Court already reviewed Cisco's allegedly privileged documents and found they were privilege. Cisco is casting a wide net over a limited issue. In response to Cisco's waiver of privilege for putting at issue its communications with counsel, this Court reviewed Cisco's documents to determine whether Cisco had documents that should be produced in light of the assertions it was making in this case. Dkt. No. 89. The Court reviewed the documents, found a subject-matter waiver that was tailored to the issue for which Cisco waived privilege, and ordered some documents produced. *Id.* at 3-4. The Court did not decide all privilege issues for all time, as Cisco argues. The privilege issues addressed in this motion are not the same issues that were before the Court with respect to Plaintiff's interrogatory Reponses. Cisco cannot credibly argue that it can never again be ordered to produce a document for which it has improperly claimed privilege because this Court once before found a waiver.

As discussed at length in Plaintiff's moving papers, facts are not privileged. Mot. at 15-17. And any possible privilege was waived in any event as it appears the requested documents were exchanged among persons acting outside of the attorney-client agency relationship. Further, Cisco's privilege log includes no entries for the majority of the counsel identified by Cisco, which alone is grounds for privilege and work product waiver. Mot. at 16.

10

Finally, Cisco again fails to meet it burden of proving privilege. This is Cisco's burden. However, Cisco fails to identify the allegedly protected documents or to state what protection is alleged. With respect to the Baker Botts documents, with whom Cisco claims a Joint Defense Agreement, Cisco should have listed these documents on its privilege log. Asserting a Joint Defense Agreement does not create a separate privilege. It rests on top of an otherwise valid claim or privilege and extends it to third parties for whom sharing information would otherwise waive privilege. Because it rests on other privileges, the allegedly privileged documents must be logged on the privilege log so that Plaintiff and the Court can evaluate the merits of the privilege claim. If Cisco will not produce a privilege log listing the allegedly privileged documents, Cisco waives any privilege claims. Cisco contends that it consulted only a hand-full of attorneys consulted in this case, but Ward cannot determine who these attorneys were without Cisco identifying them. Response at 16.

Distracting the Court from the real issues, Cisco takes the position that a non-ruling from a Judge in a different district recognized Cisco's claimed "joint defense" privilege. Response at 17. This misstates the facts. As Plaintiff has previously explained, during a deposition, Plaintiff learned that Cisco's counsel's prepared a third-party witness for her deposition in this case. *See* Exh. H. (Powell Depo.) at 8:6-25. Ward's counsel sought to question the deponent about her communications with Cisco's counsel. For the first time, Cisco and Baker Botts claimed to have a joint defense agreement. *Id.* at 12:15-15:8. Ward's counsel pointed out that Cisco refused to produce discovery in this case claiming that Baker Botts is a third-party, and that she thought it improper for Cisco's counsel to be preparing third-party witnesses, particularly where Cisco wasn't represented by Baker Botts in this case. *Id.* 15:11-18:7; Exh. I at 8 (Cisco's response to RFA 31 & 32). That issue prompted a call to the court's discovery hotline. When Cisco argued the joint defense privilege, Ward's counsel explained that Ward believed that there had been a subject-matter waiver in this case. Fielding the parties' call, Judge Ramirez said that she thought the issue required briefing, but would give the parties a ruling if they would agree to be bound by her decision. *Id.* at 19:23- 20:13. Because the issue had already been briefed to this Court,

11

declined having Judge Ramirez issue a ruling. Now Cisco asks this Court to recognize the creation of a privilege arising from its Joint Defense Agreement, which Cisco claims was recognized by Judge Ramirez. Cisco's request is baseless.

### E. Documents From Cisco Employees Concerning The Facts Underlying the Above-Captioned Lawsuit

The Response argues that Cisco has fully complied with the document requests with the exception of former employees who are outside their custody and control. The Response fails to explain why Cisco told Plaintiff for a year that it would not produce documents from John Earnhardt and Matthew Tanielian, despite repeated requests that it do so. Cisco should also explain why it failed to cooperate in discovery until after Plaintiff filed his motions. Regarding Tanielian, Cisco in its Response states only that it "asked" him if he had documents relating to this case. Response at 18-19. This is insufficient. Cisco must search its servers for responsive documents and emails sent to or from Tanielian. Cisco should confirm that all document repositories from the individuals listed have been searched and all documents produce.

### F. Documents Concerning The Eastern District of Texas

Despite the assertions in Cisco's Response, Plaintiff's motion clearly stated why the requested documents are relevant or are likely to lead to the discovery of relevant evidence. Cisco claims Frenkel's accused blog posts were about alleged improprieties in the Eastern District of Texas's clerk's office, which Cisco will claim is a matter of public concern. Accordingly, Plaintiff served requests aimed at discovering these alleged improprieties. In response, Cisco's makes conclusory and weak assertions that Plaintiff's requests are irrelevant and that his assertions cannot overcome the permissive standard of relevancy for the purposes of discovery.

As Cisco well knows, in a defamation case the character of the accused speech, and whether it addresses a matter of private or public concern, is an issue resolved by focusing on the "form, content, and context" of the speech as revealed by the entire record. *See Dun & Bradstreet, Inc v. Greenmoss Builders, Inc.,* 472 U.S. 749, 761 (1985). Therefore, Cisco's

motives are relevant to this determination. Discovery of Cisco's allegations of impropriety is therefore not only relevant to the issues in the case but is key its resolution. *See e.g.* Exh. J. (Judge Schell's Summary Judgment Order) at 10.

Cisco's objection that Plaintiff's document requests are unlimited in time and thus over burdensome are invalid. Cisco failed to make this objection in its responses to the requests, thereby waiving it. Should this Court find it necessary to limit Plaintiff's requests, however, Plaintiff will agree that that only documents from October 2005 forward need be produced, thereby spanning only two years before publication of the accused posts.[1]

### III.   CONCLUSION

For all of the forgoing reasons, Plaintiff Ward respectfully requests that his motion in all things be granted, and that Cisco be ordered to produce the requested documents within ten (10) days of this Court's Order.

Respectfully Submitted,

*/s/ Nicholas H. Patton*

Nicholas H. Patton
AR Bar No. 63035
Courtney Towle
Patton, Tidwell & Schroeder, LLP
4605 Texas Boulevard
Texarkana, Texas 75503
903.792.7080 / 903.792.8233 (Fax)
Email: nickpatton@texarkanalaw.com
Email**:** ctowle@texarkanalaw.com

---

[1] Plaintiff's motion inadvertently included request no. 155 instead of 156. This "typo" is apparent from an examination of the remaining requests Plaintiff addresses in Section F of his motion — request nos. 152, 160, 164, 168 and 172 — all of which target discovery of documents concerning the Eastern District of Texas. As Cisco was on notice that Plaintiff sought documents concerning the Eastern District of Texas from particular Cisco employees, it can make no claim of prejudice. Because Plaintiff's motion included a clearly identifiable typo, Cisco's argument that Plaintiff was not "forthcoming" with the Court is unwarranted. Response at 21.

>Patricia L. Peden
>LAW OFFICE OF PATRICIA L. PEDEN
>1316 67th Street
>Suite 6
>Emeryville, CA 94608
>Telephone: 510-268-8033
>Email: ppeden@pedenlawfirm.com
>
>James A. Holmes
>Texas Bar No. 00784290
>THE LAW OFFICE OF JAMES HOLMES, P.C.
>635 South Main, Suite 203
>Henderson, Texas 75654
>903.657.2800 / 903.657.2855 (Fax)
>
>ATTORNEYS FOR PLAINTIFF

## CERTIFICATE OF SERVICE

This is to certify that on this 4th day of January, 2010, a true and correct copy of the foregoing document was served electronically via the Court's CM/ECF system upon:

| | |
|---|---|
| Richard E. Griffin | Attorneys for Defendant Cisco Systems, Inc. |
| Charles Babcock | |
| Crystal Parker | |
| Kurt Schwarz | |
| JACKSON WALKER, LLP | |
| 1401 McKinney | |
| Suite 1900 | |
| Houston, Texas 77010 | |

_____
Nicholas H. Patton