IN THE UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF ARKANSAS
TEXARKANA DIVISION

| | | |
|---|---|---|
| JOHN WARD, JR. | § | |
| | § | |
| | § | |
| | § | C.A. NO. 08-4022 |
| v. | § | JURY TRIAL DEMANDED |
| | § | |
| CISCO SYSTEMS, INC. | § | |
| | § | |

**PLAINTIFF JOHN WARD JR.'S THIRD SET OF REQUESTS FOR PRODUCTION OF
DOCUMENTS AND THINGS TO DEFENDANT CISCO SYSTEMS, INC.**

Pursuant to Rule 34(a)(1) of the Federal Rules of Civil Procedure, Plaintiff John Ward
Jr., requests that Defendant Cisco Systems, Inc. produce documents responsive to the following
Requests for Production within thirty (30) days of service hereof.

All document requests propounded by Plaintiff are deemed to be continuing in nature and
therefore will require prompt supplementation upon the discovery of additional information by
Defendant.

## I.      DEFINITIONS

For purposes of responding to the following requests for production:

1.      The use of a verb in any tense shall be construed as the use of that verb in all
other tenses necessary to bring within the scope of the request anything that might otherwise be
construed as outside its scope.

2.      A plural noun shall be construed as a singular noun and a singular noun shall be
construed as a plural noun whenever necessary to bring within the scope of the request anything
that might otherwise be construed outside its scope.

3.      As used herein, "all" means "any and all" and "any" means "any and all."

4.      As used herein, the Albritton v. Cisco case means case number 6:08-cv-00089 filed in the United States District Court for the Eastern District of Texas.

5.      As used herein, "and" and "or" encompass both "and" and "or," and references shall be construed either a singular or plural, as necessary to bring within the scope of these requests any information or DOCUMENTS and things that might otherwise be construed to be outside their scope.

6.      As used herein, the term Baker Botts shall mean the law firm of Baker Botts, INCLUDING past or present directors, officers, agents, representatives, EMPLOYEES, consultants, attorneys, entities acting in partnership relationships with Baker Botts and others acting on behalf of Baker Botts, INCLUDING individuals and/or companies who have participated in Cisco's defense in this case.

7.      As used herein, the terms Cisco Systems, Inc., Cisco or "you" or "your" shall mean Cisco Systems, Inc., INCLUDING its subsidiaries, parents, divisions and and all past or present directors, officers, agents, representatives, EMPLOYEES, consultants, attorneys, entities acting in partnership relationships with Cisco and others acting on behalf of Cisco, INCLUDING individuals and/or companies who have participated in Cisco's defense in this case.

8.      As used herein, "COMPANY" or "ENTITY" means any company, business, or legal entity, including corporations, proprietorships, partnerships, joint-ventures, businesses, consortiums, associations, foundations, governmental agencies or instrumentalities and INCLUDES that company or entity's agents, representatives, affiliates, parents, predecessors and successors in interest, servants, EMPLOYEES, attorneys, and all other persons or entities, over whom that company or entity has control or who have been hired, retained, or employed for any purpose by that company or entity.  When the term "COMPANY" is used in the context of a question to Cisco, the term means CISCO.

9.      As used herein, "CONCERNING" means analyzing, addressing, consisting of, constituting, regarding, referring to, relating to, refuting, discussing, describing, evidencing,

memorializing, reflecting, commenting on, or otherwise having any logical or factual connection to the subject matter of the request.

10.     As used herein, "COMMUNICATION" means any transmittal of information from one PERSON to another by any means, INCLUDING letters, correspondence, notes, records, reports, papers, facsimiles, electronic mail, electronic mail generated from a hand held personal device INCLUDING a Blackberry or iPhone, instant messaging, internet relay chat, news group, group or collaboration servers, electronic bulletin boards, electronic discussion boards, dictation tapes, video recordings, audio recordings, digital recordings, memoranda, telegrams, telecopies and telexes, teleconference, collaboration servers (including share point servers), web-based or software virtual meetings INCLUDING Web-X and any other meeting software and share point servers, and oral contact such as face-to-face meetings, telephone conversations and voice mail messages.

11.     As used herein, the term "DATE" shall mean the exact day, month and year, if ascertainable, or, if not, the closest approximation thereto.

12.     As used herein, "DESCRIBE" or "DESCRIPTION" means to IDENTIFY and explain with a description sufficient to ascertain the background, origin, nature, characteristics of and all facts and circumstances responsive to the question posed.

13.     DOCUMENT(S) is defined to be synonymous in meaning and equal in scope to the use of that term in Fed. R. Civ. Proc. 34, and INCLUDES all tangible things, all originals (or, if originals are not available, identical copies thereof), all non-identical copies of any document, all drafts of final DOCUMENTS, all other written, printed, or recorded matter of any kind, and all other data compilations from which information can be obtained and translated if necessary, that are or have been in your actual or constructive possession or control, regardless of the medium on which they are produced, or stored (INCLUDING without limitation computer programs and files containing any requested information), and any recording or writing.  Any document bearing marks, INCLUDING without limitation, initials, stamped initials, comments,

or notations not part of the original text or photographic reproduction thereof, is a separate DOCUMENT.

14.     As used herein, "DOCUMENT(S)" means any written, printed, typed, recorded, magnetic, punched, copied, graphic or other tangible thing in, through, or from which information may be embodied, translated, conveyed, or stored INCLUDING COMMUNICATIONS, correspondence, memoranda, notes, records, books, papers, telegrams, telexes, electronic mail, group or collaboration servers (INCLUDING share point servers), electronic bulletin boards, electronic discussion boards, dictation tapes, video recordings, audio recordings, digital recordings, computer tapes (INCLUDING back-up tapes), computer disks (INCLUDING backup disks), computer printouts, microfilm, microfiche, worksheets, diaries, calendars, photographs charts, drawings, sketches and all other writings or drafts thereof.

15.     As used herein, "EMPLOYEE" means any director, trustee, officer, employee, partner, corporate parent, subsidiary, affiliate, contract employee, or retained employee or servant of the designated entity, whether active, retired, full-time, part-time, current or former, and compensated or not.

16.     As used herein, "ESN" means the Plaintiff if the ESN V. CISCO LITIGATION.

17.     As used herein, "THE ESN V. CISCO LITIGATION" means the original patent infringement lawsuit filed in the United States District Court for the Eastern District of Texas, case number 5:07-cv-00156-DF-CMC CISCO's action for a declaratory judgment, filed in the United States District Court for the District of Connecticut, case number 3:07-CV-01528 and the ESN v. Cisco litigation currently pending in the United States District Court for the Eastern District of Texas, case number 5:08-CV-00020.

18.     As used herein, "THE HERTZ V. ENTERPRISE LITIGATION" means case number 1:07-CV-11793-RGS filed in the United States District Court for the District of Massachusetts.

19.     As used herein, "INCLUDE" means "include without limitation"

20.     As used herein, "INCLUDING" means "including but not limited to."

4

21.     As used herein, IDENTIFY means produce the DOCUMENT or COMMUNICATION.  If the COMMUNICATION is an oral COMMUNICATION, IDENTIFY means produce time records, calendars, telephone logs, notes, emails or other DOCUMENTS sufficient to IDENTIFY the DATE and TIME of the COMMUNCATION.

22.     As used herein, "NOTICE OF ELECTRONIC FILING" means the Court Generated Notice of Electronic filing receipt generated for documents filed in the ESN v. CISCO case no. 5:07-cv-00156-DF-CMC

23.     As used herein, "PERSON" or "PERSONS" means any natural person and other cognizable entity, including corporations, proprietorships, partnerships, joint-ventures, businesses, consortiums, clubs, associations, foundations, governmental agencies or instrumentalities, societies, and orders.

24.     As used herein, the term "PUBLICATION' means any printed or recorded DOCUMENT distributed INCLUDING any magazine, newspaper, trade journal, article, dissertation, presentation, lecture, white paper, presentation handout, slide, drawing, graphical representation, book, web page, abstract, catalogue, advertisement, newsletter, electronic bulletin board, and electronic newsgroup.

25.     As used herein, the term "TIME" shall mean the exact time of day, with time zone indicated, if ascertainable, or, if not, the closest approximation thereto.

26.     As used herein, "YOU" and "YOUR" means CISCO and all of its agents, representatives, EMPLOYEES, or attorneys.

## II.     INSTRUCTIONS

1.     The Definitions, Rules, and Instructions set forth in Federal Rule of Civil Procedure 34(a) are incorporated herein by reference.

2.     These requests extend to all DOCUMENTS in the possession, custody and/or control of CISCO, or in the possession, custody or control of PERSONS or ENTITIES within CISCO's possession, custody, or control.

3.      In the event that more than one copy of a document exists, CISCO shall produce the original and each non-identical copy of each document or other tangible thing requested herein.

4.      Each Request shall be fully responded to unless it is in good faith objected to, in which event the reasons for CISCO's objection shall be stated in detail.  If an objection pertains to only a portion of a Request, or a word, phrase or clause contained therein, CISCO is required to state CISCO's objection to that portion only and to respond to the remainder of the Request, using CISCO's best efforts to do so.

5.      If CISCO or CISCO's counsel assert that any information requested herein is privileged or otherwise protected from discovery, please set forth in CISCO's written response hereto with respect to each DOCUMENT or thing for which a claim of privilege is made:

a.  The place, approximate DATE, approximate TIME, and manner of recording, creating or otherwise preparing the DOCUMENT or thing;

b.  The name (title or position of the authors) of the DOCUMENT;

c.  The general subject-matter of the DOCUMENT

d.  The type of DOCUMENT (e.g., memorandum, letter or report);

e.  The name and organizational position, if any, of each sender of the DOCUMENT, or thing;

f.  The name and organizational position, if any, of each recipient and/or custodian of the DOCUMENT or thing;

g.  A statement of the basis on which privilege is claimed with respect to each DOCUMENT or thing and whether or not its contents are limited solely to legal advice or information provided for the purpose of securing legal advice; and

h.  The specific grounds for withholding the DOCUMENT, including the specific facts upon which CISCO will reply to establish the asserted attorney-client privilege, work product doctrine, or other ground of privilege; and

    i.   The specific document request or requests to which the DOCUMENT or thing is responsive.

    j.   Identify by number of the DOCUMENT on CISCO's privilege log.

6.      All requested DOCUMENTS produced by CISCO shall be organized to correspond to the categories in these Requests.  ALL DOCUMENTS produced shall:

    a.   Be produced with ALL associated file labels, file headings, and file folders together with the responsive DOCUMENTS from each file, and each file shall be identified with the responsive DOCUMENTS for each file, and each file shall be identified as to its owner or custodian; for any DOCUMENTS originally stored in electronic media, the file name, path and directory information for each such DOCUMENTS shall also be provided;

    b.   If produced in hard copy, ALL pages now stapled or fastened together shall be produced stapled or fastened together, and shall include all attachments currently or previously appended to each DOCUMENTS, regardless of whether such attachments themselves are responsive to these requests;

    c.   If produced electronically, ALL attachments currently or previously appended to the electronic file shall be produced, regardless of whether such attachments themselves are responsive to these requests;

    d.   If email correspondence is produced, ALL such DOCUMENTS shall include the computer-generated file headers for each email.  For email correspondence containing multiple emails, email file header information shall be produced for each email in the email string.

    e.   All DOCUMENTS that cannot be legibly copied shall be produced in original form.

7.      If any DOCUMENT or thing identified in response to any of these Requests was, but is no longer in the possession, custody or subject to the control of CISCO and/or its EMPLOYEES, or is no longer in existence, state whether it

    f.   Is missing or lost;

g.  Has been destroyed;

h.  Has been transferred, voluntarily or involuntarily, to others and state the IDENTITY of those PERSONS to whom it has been transferred;

i.  Has been otherwise disposed of, and in each instance, explain the circumstances surrounding such disposition, state the DATE and TIME, or approximate DATE and TIME thereof, and the IDENTITY of the PERSONS with knowledge of such circumstances; and

j.  IDENTIFY the DOCUMENTS or thing that is missing, lost, destroyed, transferred, or otherwise disposed of, by author, DATE or approximate DATE, TIME or approximate TIME, subject matter, addressee and the number of pages.

8.  Pursuant to Rule 26(e) of the Federal Rules of Civil Procedure, these requests are deemed to be continuing in nature to the full extent required by the Federal Rules.  If further responsive DOCUMENTS come into the possession or to the attention of CISCO or its attorneys at any time during the course of this litigation, such DOCUMENTS must be produced as required by the Federal Rules of Civil Procedure.

### III.    REQUESTS FOR PRODUCTION

1.  DOCUMENTS sufficient to IDENTIFY each PERSON or ENTITY, INCLUDING but not limited to legal counsel, with whom Frenkel had any COMMUNICATION CONCERNING the ESN v. CISCO case INCLUDING the facts CONCERNING the filling of the Complaint in the ESN v. CISCO case through October 19, 2007.

2.  DOCUMENTS sufficient to IDENTIFY each PERSON or ENTITY, INCLUDING but not limited to legal counsel, with whom Mallun Yen had any COMMUNICATION CONCERNING the ESN v. CISCO case INCLUDING the facts

CONCERNING the filling of the Complaint in the ESN v. CISCO case through October 19, 2007.

3.      DOCUMENTS sufficient to IDENTIFY each PERSON or ENTITY, INCLUDING but not limited to legal counsel, with whom John Noh had any COMMUNICATION CONCERNING the ESN v. CISCO case INCLUDING the facts CONCERNING the filling of the Complaint in the ESN v. CISCO case through October 19, 2007.

4.      DOCUMENTS sufficient to IDENTIFY each PERSON or ENTITY, INCLUDING but not limited to legal counsel, with whom Marta Beckwith had any COMMUNICATION CONCERNING the ESN v. CISCO case up to and including October 19, 2007.

5.      DOCUMENTS sufficient to IDENTIFY the amount of money CISCO has spent CONCERNING Frenkel's legal fees and expenses, INCLUDING but not limited to witness fees, lawyer's fees, document production expenses, travel expenses and time paid to compensate him for his time, in the above captioned case.

6.      DOCUMENTS sufficient to IDENTIFY the amount of money CISCO has spent CONCERNING Frenkel's legal fees and expenses, INCLUDING but not limited to witness fees, lawyer's fees, document production expenses, travel expenses and time paid to compensate him for his time, in the ALBRITTON V. CISCO case.

7.      All DOCUMENTS and things CONCERNING any agreement or understanding, whether formal or informal, CONCERNING Frenkel's role, testimony, positions, arguments, acceptance of responsibility, agreement regarding confidentiality, non-disclosure agreements,

promises, assurances, or understandings and/or participation in the above-captioned case or the ALBRITTON V. CISCO case.

8.      All DOCUMENTS concerning any joint defense agreement CISCO may have with Frenkel.

9.      DOCUMENTS sufficient to IDENTIFY the amount of money CISCO has spent CONCERNING John Noh's legal fees and expenses INCLUDING but not limited to witness fees, lawyer's fees, document production expenses, travel expenses and time paid to compensate him for his time, in the above captioned case.

10.     DOCUMENTS sufficient to IDENTIFY the amount of money CISCO has spent CONCERNING John Noh's legal fees and expenses, INCLUDING but not limited to witness fees, lawyer's fees, document production expenses, travel expenses and time paid to compensate him for his time, in the ALBRITTON V. CISCO case.

11.     All DOCUMENTS and things CONCERNING any agreement or understanding, whether formal or informal, CONCERNING John Noh's  role, testimony, positions, arguments, acceptance of responsibility, agreement regarding confidentiality, non-disclosure agreements, promises, assurances, or understandings and/or participation in the above-captioned case or the ALBRITTON V. CISCO case.

12.     All DOCUMENTS concerning any joint defense agreement CISCO may have with John Noh.

13.     DOCUMENTS sufficient to IDENTIFY the amount of money CISCO has spent CONCERNING Mallun Yen's legal fees and expenses, INCLUDING but not limited to witness fees, lawyer's fees, document production expenses, travel expenses and time paid to compensate her for her time, in the ALBRITTON V. CISCO case.

14.     All DOCUMENTS and things CONCERNING any agreement or understanding, whether formal or informal, CONCERNING Mallun Yen's  role, testimony, positions, arguments, acceptance of responsibility, agreement regarding confidentiality, non-disclosure agreements, promises, assurances, or understandings and/or participation in the above-captioned case or the ALBRITTON V. CISCO case.

15.     All DOCUMENTS concerning any joint defense agreement CISCO may have with Mallun Yen.

16.     DOCUMENTS sufficient to IDENTIFY the amount of money CISCO has spent CONCERNING BAKER BOTTS legal fees and expenses INCLUDING but not limited to witness fees, lawyer's fees, document production expenses, travel expenses and time paid to compensate BAKER BOTTS for time spend in the above-captioned case.

17.     DOCUMENTS sufficient to IDENTIFY the amount of money CISCO has spent CONCERNING BAKER BOTTS' legal fees and expenses INCLUDING but not limited to witness fees, lawyer's fees, document production expenses, travel expenses and time paid to compensate BAKER BOTTS for time spend in the ALBRITTON V. CISCO case.

18.     All DOCUMENTS and things CONCERNING any agreement or understanding, whether formal or informal, CONCERNING BAKER BOTTS's role, testimony, positions, arguments, acceptance of responsibility, agreement regarding confidentiality, non-disclosure agreements, promises, assurances, or understandings and/or participation in the above-captioned case or the ALBRITTON V. CISCO case.

19.     ALL DOCUMENTS CONCERNING CISCO's joint defense agreement with BAKER BOTTS.

20.      ALL DOCMENTS and things CONCERNING any joint defense agreement between CISCO and any PERSON OR ENTITY CONCERNING the above-captioned case.

21.      DOCUMENTS sufficient to INDENTIFY when CISCO first anticipated litigation with respected to the above-captioned case.

22.      ALL DOCUMENTS and things CONCERNING ANY action or COMMUNICATION by CISCO CONCERNING Frenkel's search for employment after March 2008, INCLUDING Frenkel's subsequent employment at Wilson Sonsini Goodrich and Rosati.

23.      DOCUMENTS sufficient to IDENTIFY the number of legal matters in which Wilson Sonsini Goodrich and Rosati has been retained, paid, or compensated by CISCO from 2002 to the present, INCLUDING the dates on which Wilson Sonsini Goodrich and Rosati worked on each CISCO matter.

24.      ALL DOCUMENTS and things CONCERNING Frenkel's decision to leave his employment at CISCO.

25.      ALL DOCUMENTS CONCERNING ANY action or COMMUNICATION between CISCO and any PERSON or ENTITY CONCERNING Noh's employment at Brocade Communications.

26.      ALL DOCUMENTS and things CONCERNING Noh's decision to leave his employment at CISCO.

27.      DOCUMENTS sufficient to IDENTIFY the amount of money paid to Frenkel by CISCO, INCLUDING but not limited to, salary, performance bonuses, stock options, and or severance pay in the years he was employed by CISCO.

28.     DOCUMENTS sufficient to IDENTIFY the amount of money paid to Mallun Yen by CISCO, INCLUDING but not limited to, salary, performance bonuses, stock options, in the years she has been employed by CISCO.

29.     ALL DOCUMENTS CONCERNING the amount of money paid by CISCO to John Noh, INCLUDING but not limited to his salary, performance bonuses, stock options, and or severance pay in the years he was employed by CISCO.

30.     ALL DOCUMENTS and things CONCERNING any CISCO investigation into the statements made in the Troll Tracker Blog posts, INCLUDING but not limited to the internal investigation undertaken by CISCO in the March to April 2008 time frame.

31.     ALL DOCUMENTS CONCERNING the results of CISCO's investigation into the accused-posts INCLUDING an IDENTIFICATION of each PERSON or ENTITY who received the results of CISCO's INVESTIGATION.

32.     ALL DOCUMENTS and things CONCERNING any COMMUNICATIONS between Mark Chandler and Frenkel CONCERNING the Troll Tracker Blog.

33.     ALL DOCUMENTS and things CONCERNING CISCO's decision to have Frenkel not work on pending case matters while CISCO undertook and internal investigation of Frenkel's posts on the Troll Tracker Blog.

34.     ALL DOCUMENTS and things CONCERNING any investigation, evaluation, or consideration by CISCO CONCERNING whether any CISCO employee, INCLUDING Frenkel, Yen, or Noh should be fired as a result of their actions CONCERNING the Troll Tracker Blog.

35.     ALL DOCUMENTS and things CONCERNING any statement or assurance by CISCO to Frenkel, Yen or Noh that they would not be fired for their actions CONCERNING the accused Troll Tracker posts.

36.     ALL DOCUMENTS and things from 2006 to the present CONCERNING any agreement or understanding, formal or informal, between CISCO and Mr. Frenkel CONCERNING whether Frenkel would write, cease writing, or resume writing the Troll Tracker Blog.

37.     ALL DOCUMENTS and things CONCERNING any inquiry, investigation, or questions posed by CISCO CONCERNING whether statements made in the October 17, 2007 blog, October 18, 2007 blog post, or the revised October 18, 2007 blog post published on October 19, 2007 may be a violation of CISCO's employees' ethical obligations as attorneys at law.

38.     DOCUMENTS sufficient to IDENTIFY each case filed in the Eastern District of Texas on which Frenkel has worked in any capacity, INCLUDING overseeing outside counsel, while employed at CISCO.

39.     DOCUMENTS sufficient to IDENTIFY each case filed in the Eastern District of Texas on which Mallun Yen has worked in any capacity, INCLUDING overseeing outside counsel, while employed at CISCO.

40.     DOCUMENTS sufficient to IDENTIFY each case filed in the Eastern District of Texas on which Marta Beckwith has worked in any capacity, INCLUDING overseeing outside counsel, while employed at CISCO

41.     DOCUMENTS sufficient to IDENTIFY each case filed in the Eastern District of Texas on which Mark Chandler has worked in any capacity, INCLUDING overseeing outside counsel, while employed at CISCO.

42.     ALL DOCUMENTS CONCERNING the purpose, role, and function of Cisco's Government Affairs Department.

43.     DOCUMENTS sufficient to IDENTIFY the amount of money that CISCO has spent annually from 2002 to the present on campaign donations to individuals running for elected office.

44.     The email Frenkel received threatening to reveal that he was the author of the Troll Tracker Blog if Frenkel did not reveal his identity voluntarily.

45.     ALL DOCUMENTS CONCERNING the identity of the author of the email Frenkel received threatening to reveal that he was the author of the Troll Tracker Blog if Frenkel did not voluntarily reveal his identity.

46.     All DOCUMENTS and things CONCERNING any COMMUNICATION between Frenkel and CISCO about the email he received threatening to reveal his identity as the Troll Tracker Blogger or regarding the author of that email.

47.     ALL DOCUMENTS sufficient to IDENTIFY the number of persons employed by CISCO.

48.     DOCUMENTS sufficient to IDENTIFY the number of lawyers employed by CISCO.

49.     DOCUMENTS sufficient to IDENTIFY each CISCO office world-wide.

50.     CISCO's Code of Business Code for each year from 2006 to the present.

51.     Cisco's Pulse Survey CONCERNING the topics of Honesty and Ethics from 2006 to the present.

52.     DOCUMENTS sufficient to IDENTIFY the number of patents currently owned by CISCO.

53.     DOCUMENTS sufficient to IDENTIFY the number of patents CISCO has purchased..

54.     DOCUMENTS sufficient to show for each year since 2002, the amount of money that CISCO has spent annually to license patents.

55.     DOCUMENTS sufficient to show for each year since 2002, the amount of money that CISCO has paid annually to PERSONS or ENTITIES who claim that CISCO is making, using, or selling products incorporating their patented technology.

56.     DOCUMENTS sufficient to IDENTIFY each lawsuit brought accusing CISCO of patent infringement from 2002 to the present.

57.     DOCUMENTS sufficient to IDENTIFY each instance in which CISCO has COMMUNICATED to a PERSON or ENTITY that it may be infringing a claim of one of CISCO's patents from October 2002 to the present.

58.     DOCUMENTS sufficient to IDENTIFY the number of current patent applications pending by CISCO or CISCO employees.

59.     ALL DOCUMENTS at things CONCERNING CISCO encouraging EMPLOYEE blogging.

60.     ALL DOCUMENTS and things CONCERNING the number of CISCO EMPLOYEES who have personal blogs.

61.     ALL DOCUMENTS and things CONCERNING the number of official CISCO blogs in existence since October 1, 2007.

62.     From November 1, 2007 to the present, ALL DOCUMENTS and things CONCERNING any COMMUNICATION, complaint, allegation of wrong doing, false statements, or unfair statement made on a CISCO blog.

63.     From November 1, 2002 to the present, ALL DOCUMENTS and things CONCERNING any investigation undertaken by CISCO CONCERNING any

COMMUNICATION, complaint, allegation of wrong doing, false statements, or unfair statement made on a CISCO blog.

64.     ALL DOCUMENTS and things CONCERNING value or benefits to CISCO, both financial benefits and other non-monetary benefits, sought, planned, realized or projected from EMPLOYEE internet blogs.

65.     ALL DOCUMENTS and things CONCERNING any CISCO EMPLOYEE blog or blog post CONCERNING patent venue reform.

66.     ALL DOCUMENTS and things CONCERNING any report, research or estimate by CISCO of the number of PERSONS who can be reached via an internet blog post.

67.     ALL DOCUMENTS and things CONCERNING each instance in which CISCO has edited a blog post written by a CISCO EMPLOYEE.  This Request applies to all blog posts, including employee blogs authorized by CISCO and personal employee blogs.

68.     ALL DOCUMENTS and things CONCERNING whether the October 17, 2007, October 18, 2007 or October 19, 2007 Troll Tracker blog posts are still available on the internet.

69.     All COMMUNICATIONS between Dennis Crouch and CISCO from October 2007 to the present.

70.     ALL DOCUMENTS and things from October 2002 to the present CONCERNING any instance in which CISCO has asked a PERSON or ENTITY to not make a public statement or to remove a public statement CONCERNING CISCO, INCLUDING its products, employees, a business decision, or conduct.

71.     ALL DOCUMENTS and things CONCERNING CISCO's knowledge that U.S. Patent number 7,283,519 would issue on October 16, 2007.

72.     DOCUMENTS sufficient to IDENTIFY Cisco's annual expenses CONCERNING patent venue reform efforts from 2002 to the present.

73.     DOCUMENTS sufficient to IDENTIFY each person paid by CISCO to lobby for patent reform from 2005 to the present.

74.     ALL DOCUMENTS CONCERNING any COMMUNICATION to or from Frenkel CONCERNING patent reform.

75.     ALL DOCUMENTS CONCERNING Frenkel's role at CISCO CONCERNING patent reform.

76.     ALL DOCUMENTS CONCERNING any trip, meeting, conference or event concerning patent reform wherein Frenkel represented CISCO.

77.     ALL DOCUMENTS authored in whole or in part by Frenkel CONCERNING patent reform.

78.     ALL DOCUMENTS CONCERNING any COMMUNICATION to or from Mallun Yen CONCERNING patent reform.

79.     ALL DOCUMENTS CONCERNING Mallun Yen's role at CISCO CONCERNING patent reform.

80.     ALL DOCUMENTS CONCERNING any trip, meeting, conference or event concerning patent reform wherein Mallun Yen represented CISCO.

81.     ALL DOCUMENTS authored in whole or in part by Mallun Yen CONCERNING patent reform.

82.     ALL DOCUMENTS CONCERNING any COMMUNICATION to or from John Noh CONCERNING patent reform.

83.     ALL DOCUMENTS CONCERNING John Noh's role at CISCO CONCERNING patent reform.

84.     ALL DOCUMENTS CONCERNING any trip, meeting, conference or event concerning patent reform wherein John Noh represented CISCO.

85.     ALL DOCUMENTS authored in whole or in part by John Noh CONCERNING patent reform.

86.     ALL DOCUMENTS CONCERNING any effort by CISCO to obtain the Notice of Electronic Filing for the ESN v. Cisco Complaint.

87.     ALL performance reviews or employment evaluations performed by Mallun Yen of Frenkel from 2006 to the present.

88.     The attachment to the document produced at Cisco Privileged 000001

89.     Documents sufficient to IDENTIFY the "the press" referred to in Cisco privilege document 000001.

90.     ALL DOCUMENTS and things CONCERNING  Frenkel's suggestion that CISCO move to strike the filing of the ESN Complaint as referenced in Cisco privileged document number 000002.

91.     The attachment referred to as the form that the court clerk has to submit to the PTO referenced in Cisco privilege number 000002.

92.     ALL DOCUMENTS CONCERNING the following statement in Cisco privilege document number 000005:  "From the court clerk:  Albritton claims the filing date was an error. They submitted the Civil Cover Page on Monday, which I believe opened up electronic filing for the case.  He logged in and began submitting the complaint before midnight on Monday, but did

not finalize until after midnight (if this happens, you will get the earlier day's date).  This will be muddy.," INCLUDING ALL DOCUMENTS that provide the factual basis for those statements.

93.     ALL DOCUMENTS CONCERNING the statement in Cisco privilege number 000006 stating that "I got a tip from a colleague here in town this morning and have been looking into this," INCLUDING the IDENTITY of the tipster and the activities taken to look into the events discussed.

94.     ALL DOCUMENTS CONCERNING legal research done by Frenkel regarding the provisional rights under 35 USC 154(d) referred to in Cisco Privilege document number 000007, INCLUDING Westlaw records regarding Frenkle's research.

95.     The anonymous tip referenced by Mallun Yen in Cisco privileged document number 000011.

96.     The information on ESN and Girard attached to the email produced at Cisco Privileged 00035.

97.     The note referenced in Cisco Privileged 000035 wherein Frenkel says "I saw you posted a note on it."

98.     The attachments to the October 17, 2007 2:41 email written by Frenkel and produced at Cisco Privileged 000099.

99.     The documents Marta Beckwith asked Tony Downs for and Mallun Yen asked Beatrice for as referenced in Cisco Privileged 000103-104.

100.     The draft of the letter to the clerk requested by Frenkel on October 18, 2007 and referenced in Cisco Privileged 000104.

101.     ALL DOCUMENTS CONCERNING the call between Dan Webb and Mark Chandler referenced in Cisco Privileged 000106.

102.    Exhibit B of Marta's email as referenced in Cisco Privileged 000145.

103.    ALL attachments to Anthony Down's email to Marta Beckwith produced at Cisco privileged 000145.

104.    ALL ATTACHMENTS to Frenkel's email dated October 18, 2007 at 11:30 p.m. produced at Cisco privileged 000170.

105.    ALL DOCUMENTS CONCERNING the "DJ strategy" as stated by Mark Chandler in Cisco Privilege Document number 000179.

106.    The attachments (both the DJ and Exh. A) to the October 16, 2007 8:59 am email written by Kurt Pankratz and produced at Cisco Privileged 000197.

107.    The attachments to the October 16, 2007 6:53 am email written by Michael Bucci and produced at Cisco Privileged 000196.

108.    The attachments to the October 18, 2007 6:53 am email written by Marta Beckwith to Bart Showalter and Kurt Pankratz and produced at Cisco Privileged 000212.

109.    ALL DOCUMENTS CONCERNING the legal research done by Frenkel as referenced in Cisco Privileged document number 000213, INCLUDING a Westlaw report of Frenkel's legal research on October 18, 2007.

110.    ALL DOCUMENTS CONCERNING the statement made by Frenkel that "from what Kurt found today, that Notice of Electronic Filing probably says 12:01 a.m." as referenced in Cisco Privileged document number 000213 INCLUDING ALL COMMUNICATIONS CONCERNING what Pankratz learned on October 18th.

111.    The *Nuance* case referenced in Cisco Privileged document number 00213.

112.    The one case that Frenkel found that appears to go the other ways as referenced Cisco Privileged document number 000213.

21

113.    The cases referred to by Frenkel when he says that a few courts have held that cases are filed NOT when the Civil Cover Sheet is lodged with the Court, NOT when the attorney logs into ECF to file the complaint, even if that the date stamped on the complaint, but when the complaint is actually received by the Court as referenced Cisco Privileged document number 000213.

114.    ALL DOCUMENTS CONCERNING the *Nuance* case referenced in Cisco Privileged document number 262.

115.    DOCUMENTS sufficient to specifically IDENTIFY CISCO's net worth in October of 2007.


Respectfully Submitted,


_____
Nicholas H. Patton  (SBN 63035)
Patton, Tidwell & Schroeder, LLP
P.O. Box 5398 / 4605 Texas Boulevard
Texarkana, Texas 75505-5398
Tel:     (903) 792-7080 / Fax: (903) 792-8233

Patricia L. Peden
LAW OFFICE OF PATRICIA L. PEDEN
610 16th Street, Suite 400
Oakland, California 94612
Telephone: 510-268-8033

ATTORNEYS FOR PLAINTIFF

**<u>CERTIFICATE OF SERVICE</u>**

This is to certify that on this 13th day of October, 2009, a true and correct copy of the foregoing Plaintiff's Second Set of Request for Production to Defendant Cisco Systems, Inc. was served electronically and/or via U.S. First Class Mail upon:

Richard E. Griffin                                      Attorney for Defendant Cisco Systems, Inc.
Charles Babcock
Crystal Parker
JACKSON WALKER, LLP
1401 McKinney, Suite 1900
Houston, Texas 77010


_____
Nicholas H. Patton